ILYA ALEKSEYEFF [CA 242462]
  ilya@loia.legal
LOIA, INC. (APLC)
727 W 7th St PH 1-13
Los Angeles, CA 90017
Tel: (213)537-4592

Attorney for Artur Elizarov

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GOLDWATER BANK, NA**, <br> *Plaintiff,* | **5:21-cv-616-JWH-SP** |
| **vs.** <br><br> **ARTUR ELIZAROV, ET AL.**, <br> *Defendant.* | MEMORANDUM SUPPORTING ARTUR ELIZAROV'S MOTION TO QUASH SUBPOENAS *DUCES TECUM* TO RITE CARE HOSPICE, INC. AND ECIVIS, INC. |
| | Date: 09/13/2022 <br> Time: 9:00 am <br> Court: Hon. Sheri Pym <br><br> Date filed: 04/06/2021 <br> Amendment filed: 05/24/2021 <br> Discovery cut-off: 10/14/2022 <br> Status conference: 02/03/2023 <br> Jury trial: 02/27/2023 |

i

1

2

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ............................................................................................... 1

STATEMENT OF THE FACTS ........................................................................... 3

STANDARD OF REVIEW ................................................................................. 8

ARGUMENT ..................................................................................................... 11

I.      Elizarov's employment records and income history are privileged ........ 11

II.     Elizarov's income in 2020 is *immaterial* and, therefore, does not support
        a claim of fraud because the CARES Act did not allow Goldwater to
        consider or rely on Elizarov's income when granting forbearance ......... 12

III.    Goldwater may not obtain income information before or after May 2020
        ........................................................................................................... 15

IV.     The court should protect Elizarov from harassment and prohibit
        Goldwater from rifling through Elizarov's constitutionally protected
        information because Goldwater has never had evidence to support its
        fraud claim .......................................................................................... 16

V.      The court should stay discovery pending the resolution of Elizarov's
        motion for sanctions under Rule 11 ....................................................... 18

CONCLUSION ................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Airbus DS Optronics GmbH v. Nivisys LLC*,

No. CV-14-02399-PHX-JAT (D. Ariz. May 28, 2015)

(https://casetext.com/case/gmbh-v-nivisys-llc) .................................................11

*Allen v. Woodford*,

No. CVF051104OWWLJO 2007 WL 309485 (E.D. Cal., Jan. 30, 2007)..........12

*Barrenda L. v. Superior Court*,

65 Cal.App.4th 794 (Cal. Ct. App. 1998)...........................................................12

*Board of Trustees v. Superior Court*,

119 Cal.App.3d 516 (Cal. Ct. App. 1981)...........................................................11

*Bogard Constr. v. Oil Price Info. Serv.*,

22-mc-80104-JSC (N.D. Cal. May 31, 2022) (https://casetext.com/case/bogard-

constr-v-oil-price-info-serv-1) ...........................................................................11

*Corker v. Costco Wholesale Corp.*,

Cause No. C19-0290RSL (W.D. Wash. Dec. 4, 2020)

(https://casetext.com/case/corker-v-costco-wholesale-corp-5).............................9

*Cortinas v. Vasquez*,

1:19-cv-00367-JLT-SKO (PC) (E.D. Cal. Apr. 7, 2022)

(https://casetext.com/case/cortinas-v-vasquez-15) ...............................................8

*Ebeid ex rel. U.S. v. Lungwitz*,

616 F.3d 993 (9th Cir. 2010)...............................................................................10

*El Dorado Savings & Loan Assn. v. Superior Court*,

190 Cal.App.3d 342 (Cal. Ct. App. 1987)...........................................................11

*Engalla v. PermanenteMedical Group, Inc.*,

15 Cal.4th 951 (Cal. 1997)..................................................................................12

*Gamez v. United States*,

iii

No. CV-17-02044-PHX-JJT (ESW) (D. Ariz. July 19, 2018)

(https://casetext.com/case/gamez-v-united-states-10) ..........................................8

*Harris v. Superior Court*,

3 Cal.App.4th 661 (Cal. Ct. App. 1992)............................................................11

*Hoffman v. 162 North Wolfe LLC*,

228 Cal.App.4th1178 (Cal. Ct. App. 2014)........................................................12

*In re iPhone/iPad Application Consumer Privacy Litigation*,

Case No.: 11-MD-2250-LHK (PSG) (N.D. Cal. Nov. 21, 2012)

(https://casetext.com/case/in-re-iphoneipad-application-consumer-privacy-litig-

4)...........................................................................................................................9

*In re Rule 45 Subpoenas Issued to Google LLC*,

No. 20-mc-80141-VKD (N.D. Cal. Dec. 7, 2020) (https://casetext.com/case/in-

re-rule-45-subpoenas-issued-to-google-llc)........................................................11

*Jacobson v. Persolve, LLC*,

No. C14-00735 LHK (HRL) (N.D. Cal. Apr. 1, 2015)

(https://casetext.com/case/jacobson-v-persolve-llc-1)........................................10

*Kaur v. City of Lodi*,

No. 2:14-cv-0828 GEB AC PS (E.D. Cal. Mar. 16, 2015)

(https://casetext.com/case/kaur-v-city-of-lodi-5) ................................................9

*Look v. Penovatz*,

34 Cal.App.5th 61 (Cal. Ct. App. 2019)............................................................12

*Malibu Media, LLC* v. *Does 1-25*,

Civil No. 12-cv-0362-LAB (DHB) (S.D. Cal. June 21, 2012)

(https://casetext.com/case/malibu-media-154) .....................................................9

*MAXA v. COUNTRYWIDE LOANS, INC.*,

No. CV10-8076-PCT-NVW (D. Ariz. July 16, 2010)

(https://casetext.com/case/maxa-v-countrywide-loans)......................................16

*Mills v. Jpmorgan Chase Bank, N.A.*,

iv

No. 1:16-cv-00665-DAD-EPG (E.D. Cal. Nov. 22, 2016)

(https://casetext.com/case/mills-v-jpmorgan-chase-bank-na-1) .........................10

*Monte H. Greenawalt Revocable Trust v. Brown*,

2:12-cv-01983-LRH-VCF (D. Nev. Dec. 18, 2013)

(https://casetext.com/case/monte-h-greenawalt-revocable-trust-v-brown).........10

*Neubronner v. Milken*,

6 F.3d 666 (9th Cir. 1993)................................................................................10

*Olivier v. R. Grounds*,

C 12-0176 SBA (PR) (N.D. Cal. Feb. 3, 2014) (https://casetext.com/case/olivier-

v-r-grounds) .......................................................................................................19

*Panola Land Buyers Ass'n v. Shuman* ,

762 F.2d 1550 (11th Cir. 1985).........................................................................19

*Parcell v. Wright Med. Tech., Inc.*,

No. CV 12-0368-PHX-JAT (D. Ariz. July 6, 2012)

(https://casetext.com/case/parcell-v-wright-med-tech).......................................10

*Rodrigues v. Ryan*,

No. CV-16-08272-PCT-DGC (ESW) (D. Ariz. Feb. 28, 2018)

(https://casetext.com/case/rodrigues-v-ryan-13) ..................................................8

*Saterbak v. Nat'l Default Servicing Corp.*,

No. 15cv956-WQH-BGS (S.D. Cal. Aug. 22, 2016)

(https://casetext.com/case/saterbak-v-natl-default-servicing-corp-1).................10

*SCC Acquisitions, Inc. v. Superior Court (Western Albuquerque Land Holdings,*

*LLC)*, 243 Cal.App.4th 741 (Cal. Ct. App. 2015) .............................................11

*Scroggins v. Air Cargo, Inc.*,

534 F.2d 1124 (5th Cir. 1976)............................................................................19

*Strike 3 Holdings, LLC v. Doe*,

No. 4:18-cv-04993-KAW (N.D. Cal. Feb. 6, 2019)

(https://casetext.com/case/strike-3-holdings-llc-v-doe-206) ..............................11

*TRAN v. TYCO ELECTRONICS, CORPORATION*,

06-CV-1810-BR (D. Or. May 7, 2008) (https://casetext.com/case/tran-v-tyco-

electronics-7).......................................................................................................9

*Trustees of the Constr. Indus. & Laborers Health & Welfare Trust v. Las Vegas*

*Metro. Police Sheryl Archie*, 2:12-cv-00225-JCM-VCF (D. Nev. July 15, 2013) .

(https://casetext.com/case/trustees-of-the-constr-indus-laborers-health-welfare-

trust-v-las-vegas-metro-police-sheryl-archie ) .....................................................9

*U.S. v. Contreras*,

895 F.2d 1241 (9th Cir. 1990)............................................................................13

*Wahoo International, Inc. v. Phix Doctor, Inc*.,

No. 13cv1395-GPC (BLM) (S.D. Cal. July 18, 2014)

(https://casetext.com/case/wahoo-intl-inc-v-phix-doctor-3).................................8

*Wiener v. NEC Electronics, Inc*.,

848 F. Supp. 124 (N.D. Cal. 1994).....................................................................10

**Statutes**

15 U.S.C. § 9056............................................................................................ 13, 14

Cal. Const. art. I § 1 ...............................................................................................11

**Rules**

Fed.R.Civ.P. 11 .......................................................................................................17

Fed.R.Civ.P. 26........................................................................................... 9, 10, 16

Fed.R.Civ.P. 45.........................................................................................................8

Fed.R.Civ.P. 9 .........................................................................................................10

**INTRODUCTION**

Goldwater issued a subpoena *duces tecum* to Elizarov's employers Rite Care Hospice, Inc. and eCivis, Inc. The subpoenas fished for constitutionally protected information: Elizarov's personnel records and wage history. Goldwater claimed that Goldwater needed the information to prove its allegation of fraud, *to wit:* In May 2020, Elizarov lied in a mortgage assistance application when Elizarov reported his income as $1,050 per week in unemployment benefits and reported assets as $3,500 cash on hand. Goldwater alleged this claim even though Goldwater had *no facts or evidence* showing that Elizarov's income and assets in May 2020 exceeded $1,050 per week and $3,500 cash on hand, respectively. Nor did Goldwater limit its subpoenas to a search for Elizarov's income in May 2020 – the only period when Goldwater alleged that Elizarov misrepresented his income. Goldwater instead demanded the disclosure of Elizarov's income going back to 2019 and for months after May 2020.

Goldwater also alleged that Elizarov lied in his loan application because Elizarov failed to disclose his marital status, his status as a plaintiff in a lawsuit with BMW, or his outstanding debt to the IRS. Unlike Goldwater's allegations relating to the mortgage assistance application, which were based on nothing, Goldwater's claims relating to the mortgage application were based on a lie: Elizarov disclosed both his marital status and his BMW lawsuit (which was settled two months before Elizarov applied for the loan) via text to Goldwater's loan officer Gregory Hill and paid off the alleged IRS debt 18 months earlier when Elizarov sold a house in Valley Village, California.

The type of information that Goldwater seeks – employment records and wage history – is protected from disclosure by the California constitution. These records may be accessed *only if* Goldwater can prove that the information is *directly relevant* to an issue in the case. Elizarov now objects to Goldwater's attempt to invade Elizarov's constitutionally protected zone of privacy.

1

1    First, the evidence regarding Elizarov's income and assets is irrelevant

2 because Elizarov's income and assets were *immaterial* to Goldwater's forbearance

3 decision as a matter of law.  A claim for fraud by misrepresentation is viable only

4 if the misrepresented information was material.  The information was material only

5 if a reasonable bank in Goldwater's position would have considered the

6 information in making the forbearance decision.  By corollary, if a bank *could not*

7 *have* considered the information and had to grant the forbearance regardless of

8 Elizarov's income or assets, then the information is immaterial, and evidence

9 regarding Elizarov's income and assets becomes irrelevant.

10    Here, the information regarding Elizarov's income and assets was

11 immaterial. Under the CARES Act, Goldwater had to grant a forbearance based on

12 Elizarov's request and an affirmation of hardship.  Goldwater could not ask for or

13 consider any other information, including the information regarding Elizarov's

14 income and assets.

15    But even if the court disagrees, Goldwater still cast the net too wide.

16 Goldwater could not, in general, use discovery to uncover evidence of wrongs not

17 alleged in the complaint.  Goldwater also could not base a claim of fraud on

18 discovery; Goldwater had to have facts and evidence supporting its fraud claim at

19 the time Goldwater filed the complaint.  Here, the complaint alleged that Elizarov

20 misrepresented his income only one time: May 2020, when Elizarov submitted the

21 mortgage assistance application.  Goldwater did not allege that Elizarov

22 misrepresented his income at any other time, including July 2019 when Elizarov

23 applied for the loan or after May 2020 when Elizarov was in forbearance.  And yet

24 the subpoenas sought Elizarov's income from Rite Care Hospice since 2019 and

25 sought Elizarov's income from eCivis for the entire period of Elizarov's

26 employment.  Goldwater claimed that Goldwater needed to confirm Elizarov's

27 income as reported in the loan information and to confirm Elizarov's income

28 during forbearance.  Therefore, the subpoenas are overbroad and should be

2

1  quashed to the extent the subpoenas seek information not relevant to any issues
2  raised in the pleadings, including the entirety of Elizarov's personnel files.

3       The court should also stay discovery until the court resolved Elizarov's
4  forthcoming motion for sanctions under Rule 11 against Goldwater and its counsel.
5  The motion (which Elizarov will file on September 2, 2022, unless Goldwater
6  withdraws its fraud claims by September 1, 2022) seeks a dismissal of the case (or,
7  at the very least, the fraud allegation) as a sanction. If the court grants the motion,
8  Goldwater's subpoenas will be moot.

9       Finally, Rule 9 required Goldwater to have all the supporting evidence
10 *before* Goldwater filed the claim. By presenting the case to the court, Goldwater
11 implied that such evidence existed. Its counsel similarly certified to the court that
12 the fraud claims had evidentiary support. But none of these representations were
13 true: Goldwater has never had such evidence. Goldwater brought the claim based
14 on nothing but its unfounded beliefs, hunches, and suppositions. Under these
15 circumstances, Goldwater should not be allowed to invade Elizarov's
16 constitutionally protected zone of privacy *unless and until* Goldwater can show the
17 court that Goldwater already has evidence of fraud, just as Goldwater and its
18 counsel represented and certified to the court.

19      Therefore, the court should grant this motion and either quash the subpoena
20 entirely or, at the very least, limit Goldwater's access to the records *unless and*
21 *until* Goldwater can demonstrate to the court that Goldwater has evidence to
22 support its allegation as Goldwater and its counsel represented and certified to the
23 court when Goldwater filed the complaint.

24                     **STATEMENT OF THE FACTS**
25      The Internal Revenue Service (IRS) filed a tax lien against Elizarov relating
26 to 2014 taxes on October 16, 2017. <u>Ex. O-1.</u> At the time, Elizarov owned a
27 residence in Valley Village, California. When Elizarov sold the residence in
28 January 2018, Elizarov paid off the outstanding balance to the IRS from the

3

1   proceeds of the sale.  Ex. U (IRS demand); Exhibit V (escrow payment to the IRS);
2   Exhibit W (escrow final settlement statement).  This payment occurred 18 months
3   before Elizarov obtained a loan from Goldwater in July 2019.

4        Elizarov filed a lawsuit against BMW Financial Services, NA in Los
5   Angeles Superior Court on March 11, 2019.  Ex. Z.  The lawsuit settled
6   unconditionally on May 22, 2021, two months before Elizarov obtained a loan
7   from Goldwater.  Ex. Y.  Elizarov's counsel, Ilya Alekseyeff, filed a notice of
8   unconditional settlement with the court the same day.  Ex. X.  The lawsuit was
9   dismissed on August 14, 2021.  Ex. Z.

10       Elizarov contacted Goldwater's loan officer Gregory Hill about a loan
11  around June 24, 2019.  Ex. S-1.  When discussing the application with Gregory
12  Hill via text, Elizarov disclosed information about Elizarov's husband "Ilya," Ex.
13  S-5, 9; and disclosed his BMW lawsuit and its settlement, Ex. S-8.  (See Figure A
14  and Figure B on the following pages for a screen capture of those messages.)
15  Elizarov also disclosed to Gregory Hill that his IRS debt was paid off in January
16  2018.  (The conversation with Gregory Hill alerted Elizarov that the IRS had not
17  yet removed the lien and prompted Elizarov to contact the IRS.  The IRS
18  subsequently released the lien on December 18, 2019, after Elizarov's prompting.
19  Ex. O.)

20       Based on the information that Elizarov provided Gregory Hill over the
21  phone, email, and text messages, Gregory Hill completed the Fannie Mae Uniform
22  Loan Application.  Ex. K.

23       After Goldwater approved the loan, Elizarov signed a Fannie Mae uniform
24  deed of trust and a Fannie Mae uniform note.  Ex. L; Ex. M; Ex. N.

25       In May 2020, Elizarov requested forbearance from Goldwater.  At
26  Goldwater's request, Elizarov completed the Fannie Mae standard Mortgage
27  Assistance Application.  Ex. G.

28

4

**Figure A**



**Figure B**



Elizarov notified Gregory Hill that Elizarov was selling the house on

February 3, 2021. Ex. S-23. On February 4, 2021, Elizarov sent Gregory Hill the

escrow officer's contact information. Ex. S-24. Therefore, Goldwater knew since

February 4, 2021, that Elizarov was selling the house and had the escrow officer's

5

1    contact information.

2        On March 3, 2021, Elizarov emailed Peter Hill a copy of the purchase

3    agreement for the property. Ex. H.

4        On March 25, 2021, Elizarov discovered that Goldwater's deed of trust was

5    unrecorded. Ex. AA-2, 3. This discovery was significant because Goldwater had

6    not complied with the deed of trust, which required Goldwater to give Elizarov a

7    30-day notice of acceleration *before* Goldwater could require payment in full at the

8    time of the sale. Ex. C-7 (¶ 71, First Affirmative Defense).

9        The transaction closed on March 29, 2021. Ex. FF. After the transaction

10   closed, Elizarov refused to repay the entire balance but conceded that Elizarov

11   remained liable to Goldwater for the scheduled periodic payments under the

12   existing amortization schedule. Rather than accept the payments, Goldwater sued.

13       In its amended verified complaint, Goldwater made several baseless

14   allegations. First, Goldwater claimed that Elizarov failed to disclose his marital

15   status, BMW lawsuit, or IRS debt. Ex. B-5 (¶¶ 25-31). These allegations were

16   lies. Goldwater *knew* that Elizarov had a husband, "Ilya," knew that Elizarov was

17   involved in a lawsuit with BMW that settled in May, and knew that Elizarov paid

18   off his IRS lien 18 months earlier. Goldwater knew this information because

19   Elizarov disclosed it to Goldwater's loan officer Gregory Hill. Not willing to let

20   facts and evidence stand in its way, Goldwater lied to the court under oath and

21   alleged the claims anyway[1].

22       Goldwater also alleged that Elizarov misrepresented his income and assets in

23   the assistance application when he claimed his income as $1,050.00 per week in

24   unemployment benefits and his assets as $3,500 cash on hand. Ex. B-6 (¶¶ 38-41).

25   In making this allegation, Goldwater represented to the court that Goldwater had

26   evidence to show that Elizarov's income *exceeded* $1,050 per week and assets

27   *exceeded* $3,500 cash on hand. Goldwater's counsel similarly certified that an

28

---

[1]    Peter Hill verified the complaint on Goldwater's behalf. Ex. B-20.

6

evidentiary basis existed to support these claims.  But none has ever existed.  Not only did Goldwater fail to *allege* what made Elizarov's allegations false (i.e., what Elizarov's income and assets were), but Goldwater subsequently failed to recite any facts or evidence to support these claims.  Therefore, the fraud claim was based on absolutely nothing despite Goldwater's and its counselors' representation to the contrary.

Goldwater subpoenaed Elizarov's personnel file and income history from Elizarov's employers Rite Care Hospice, Inc. and eCivis, Inc to try to prove its baseless claim of fraud.

The subpoena to eCivis sought the following:

> 1. Any and all documents, communications, or records reflecting or related to any and all COVID-19 pandemic furlough or other change in employment status of Artur Elizarov during the Relevant Period.

> 3. [sic] Any and all documents, communications, or records reflecting or relating to any and all compensation provided by You to Artur Elizarov, including but not limited to annual salary records and employee bonus payments during the Relevant Period.

Ex. A-5.  The "relevant period" was defined as February 1, 2020, through April 1, 2021.  Ex. A-5.

The subpoena to Rite Care Hospice sought the following records:

> 1. Any and all documents, records, or communications reflecting the beginning and ending of Elizarov's employment with You.

> 2. Any and all documents, records, or communications related to the status of Your employment of Artur Elizarov during the Relevant Period.

> 3. Any and all documents and records pertaining to any and all compensation provided to Artur Elizarov, including but not limited to annual salary records and employee bonus payments, during the Relevant Period.

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ex. J-5. The "Relevant time period" was defined as January 1, 2019, through September 31, 2019. Ex. J-6.

In anticipation of this motion to quash, Elizarov filed an *ex parte* application to stay the subpoenas until the court could consider the motion. EFD # 171 (filed 07/31/2022). The court denied the application as requested but ordered Goldwater to sequester the records if any were received. Ex. BB-3. The court also ordered the parties to meet and confer by August 9, 2022 (which the parties did), exempted the motion from Rule 37, ordered Elizarov to file his motion no later than August 16, 2022, and pre-scheduled the motion to be heard on the Court's motion calendar on September 13, 2022. Ex. BB-3.

## STANDARD OF REVIEW

"Federal Rule of Civil Procedure 45 governs subpoenas, which are the mechanism for obtaining discovery and testimony from non-parties." *Cortinas v. Vasquez*, 1:19-cv-00367-JLT-SKO (PC), at *1 (E.D. Cal. Apr. 7, 2022); Fed.R.Civ.P. 45. After a subpoena is served, "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that...requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed.R.Civ.P. 45(d)(3)(A)(iii).

"A subpoena issued pursuant to Federal Rule of Civil Procedure 45 is subject to the permissible scope of discovery set forth in Federal Rule of Civil Procedure 26." *Gamez v. United States*, No. CV-17-02044-PHX-JJT (ESW), at *3 (D. Ariz. July 19, 2018). See also *Rodrigues v. Ryan*, No. CV-16-08272-PCT-DGC (ESW), at *4 (D. Ariz. Feb. 28, 2018) (same); *Wahoo International, Inc. v. Phix Doctor, Inc*., No. 13cv1395-GPC (BLM), at *5 (S.D. Cal. July 18, 2014) (same).

"As a general rule, a party does not have standing to challenge a subpoena issued to a third party, unless the party has some personal right or privilege relating

8

1   to the information sought." *Wahoo International,* No. 13cv1395-GPC (BLM), at

2   *9, citing cases.  See also *Kaur v. City of Lodi*, No. 2:14-cv-0828 GEB AC PS, at

3   *7 n.4 (E.D. Cal. Mar. 16, 2015) (same); *Malibu Media, LLC v. Does 1-25*, Civil

4   No. 12-cv-0362-LAB (DHB), at *3 (S.D. Cal. June 21, 2012) (same).

5        The scope of discovery under Rule 26 is broad.  The rule allows parties to

6   "obtain discovery regarding any nonprivileged matter that is relevant to any party's

7   claim or defense and proportional to the needs of the case, considering the

8   importance of the issues at stake in the action, the amount in controversy, the

9   parties' relative access to relevant information, the parties' resources, the

10   importance of the discovery in resolving the issues, and whether the burden or

11   expense of the proposed discovery outweighs its likely benefit."  Fed.R.Civ.P.

12   26(b)(1).  "Information within this scope of discovery need not be admissible in

13   evidence to be discoverable."  *Id.*  Information is discoverable if the information is

14   " admissible at trial *or* is reasonably calculated to lead to admissible evidence."

15   *TRAN v. TYCO ELECTRONICS, CORPORATION*, 06-CV-1810-BR, at *1 (D. Or.

16   May 7, 2008), italics added.

17        Although the scope of discovery is broad, it is not unlimited.  ***First***,

18   discovery must be "relevant to any party's claim or defense."  Fed.R.Civ.P.

19   26(b)(1).  This necessarily means that discovery may not be obtained to support an

20   allegation that does not appear in the pleadings.  *Corker v. Costco Wholesale*

21   *Corp.*, Cause No. C19-0290RSL, at *3 (W.D. Wash. Dec. 4, 2020) ("Plaintiffs may

22   not use discovery to develop new claims or defenses that are not asserted in the

23   pleadings"); *Trustees of the Constr. Indus. & Laborers Health & Welfare Trust v.*

24   *Las Vegas Metro. Police Sheryl Archie*, 2:12-cv-00225-JCM-VCF, at *6 (D. Nev.

25   July 15, 2013) ("the parties 'have no entitlement to discovery to develop new

26   claims or defenses that are not already identified in the pleadings'"); *In re*

27   *iPhone/iPad Application Consumer Privacy Litigation*, Case No.: 11-MD-2250-

28   LHK (PSG), at *8 (N.D. Cal. Nov. 21, 2012) (same); *Monte H.  Greenawalt*

1  *Revocable Trust v. Brown*, 2:12-cv-01983-LRH-VCF, at *5 (D. Nev. Dec. 18,

2  2013) (same); *Jacobson v. Persolve, LLC*, No. C14-00735 LHK (HRL), at *3

3  (N.D. Cal. Apr. 1, 2015) (same).

4      The rule is even more strict in cases that allege fraud.  Claims of fraud are

5  subject to the heightened pleading standard under Rule 9.  This rule requires a

6  party alleging fraud to "state with particularity the circumstances constituting fraud

7  or mistake." Fed.R.Civ.P. 9(b).  To comply, "plaintiff alleging a fraud claim must,

8  in the complaint, also 'set forth what is false or misleading about a statement, and

9  why it is false.'" *Mills v. Jpmorgan Chase Bank, N.A*., No. 1:16-cv-00665-DAD-

10 EPG, at *7 (E.D. Cal. Nov. 22, 2016), citing *Ebeid ex rel. U.S. v. Lungwitz*, 616

11 F.3d 993, 998 (9th Cir. 2010).  "The pleading requirements of Rule 9(b) are

12 designed 'to give defendants notice of the particular misconduct which is alleged

13 to constitute the fraud charged so that they can defend against the charge and not

14 just deny that they have done anything wrong.'" *Id.,* citing *Neubronner v. Milken*,

15 6 F.3d 666, 671 (9th Cir. 1993).  Therefore, "Plaintiffs will not be permitted 'to

16 conduct a discovery fishing expedition before properly stating any fraud-based

17 claim.'" *Parcell v. Wright Med. Tech., Inc*., No. CV 12-0368-PHX-JAT, at *9 n.3

18 (D. Ariz. July 6, 2012), internal citations omitted.  See also *Neubronner,* 6 F.3d at

19 p. 671 ("one purpose of Rule 9(b)'s requirement that plaintiffs plead fraud with

20 particularity is to 'prevent the filing of a complaint as a pretext for the discovery of

21 unknown wrongs"); *Saterbak v. Nat'l Default Servicing Corp*., No. 15cv956-

22 WQH-BGS, at *19 (S.D. Cal. Aug. 22, 2016) ("Plaintiff cannot use her claim of

23 fraud 'as a pretext for the discovery of unknown wrongs' because her claim is not

24 pleaded with particularity").

25      ***And second,*** parties may not obtain discovery of privileged information.

26 *Wiener v. NEC Electronics, Inc*., 848 F. Supp. 124, 128 (N.D. Cal. 1994) ("Under

27 the Federal Rules of Civil Procedure, parties may not obtain discovery of relevant

28 documents if those documents are 'privileged.'"); Fed.R.Civ.P. 26(b)(1).  The

court applies privileges under the law of the state where records must be produced. *Bogard Constr. v. Oil Price Info. Serv.*, 22-mc-80104-JSC *6 (N.D. Cal. May 31, 2022).

"The moving party bears the burden of persuasion on a motion to quash, but the party issuing the subpoena must demonstrate that the discovery is relevant." *In re Rule 45 Subpoenas Issued to Google LLC*, No. 20-mc-80141-VKD, at *7 (N.D. Cal. Dec. 7, 2020), citing cases.  See also *Strike 3 Holdings, LLC v. Doe*, No. 4:18-cv-04993-KAW, at *3 (N.D. Cal. Feb. 6, 2019) (same); *Airbus DS Optronics GmbH v. Nivisys LLC*, No. CV-14-02399-PHX-JAT, at *18 (D. Ariz. May 28, 2015) (same).

## ARGUMENT

### I.   Elizarov's employment records and income history are privileged

"All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and *privacy*."  Cal. Const. art. I § 1, italics added.  " 'Personal financial information comes within the zone of privacy protected by article I, section 1 of the California Constitution.' "  *SCC Acquisitions, Inc. v. Superior Court (Western Albuquerque Land Holdings, LLC)*, 243 Cal.App.4th 741, 754 (Cal. Ct. App. 2015), citing *Harris v. Superior Court*, 3 Cal.App.4th 661, 664 (Cal. Ct. App. 1992).   Employee personnel records are also protected.  *El Dorado Savings & Loan Assn. v. Superior Court*, 190 Cal.App.3d 342, 345 (Cal. Ct. App. 1987), disapproved of on other grounds in *Williams v. Superior Court of L.A. Cnty.*, 3 Cal.5th 531, 558 n.8 (Cal. 2017); *Board of Trustees v. Superior Court*, 119 Cal.App.3d 516, 525-526 (Cal. Ct. App. 1981), disapproved of on other grounds in *Williams v. Superior Court of L.A. Cnty.*, 3 Cal.5th 531, 558 n.8 (Cal. 2017).

Despite the constitutional foundation for the right, Article 1 § does not absolutely bar discovery.  *Allen v. Woodford*, No. CVF051104OWWLJO 2007 WL

1  309485, at *6–7 (E.D. Cal., Jan. 30, 2007). "In the face of an objection based on

2  privacy, the party seeking discovery of the information must show that the

3  information is '*directly relevant'* to a cause of action or defense, such that

4  disclosure is 'essential to the fair resolution of the lawsuit.' " *Look v. Penovatz*, 34

5  Cal.App.5th 61, 73 (Cal. Ct. App. 2019), internal citations omitted. "The party

6  seeking the constitutionally protected information has the burden of establishing

7  that the information sought is directly relevant to the claims." *Barrenda L. v.*

8  *Superior Court*, 65 Cal.App.4th 794, 801-02 (Cal. Ct. App. 1998).

9      Here, the subpoenas sought private financial information (i.e., income) and

10  personnel files in general. The California Constitution protects these types of

11  records from disclosure. Therefore, the court should deny Goldwater access to

12  these records unless Goldwater (as the party with the burden of proof)

13  demonstrates that the evidence is directly relevant to an issue in the case.

14

15  **II.  Elizarov's income in 2020 is *immaterial* and, therefore, does not support**

16         **a claim of fraud because the CARES Act did not allow Goldwater to**

17         **consider or rely on Elizarov's income when granting forbearance**

18      Goldwater can pursue a fraud claim against Elizarov for allegedly

19  misrepresenting his income *only if* Goldwater justifiably relied on the information.

20  *Engalla v. PermanenteMedical Group, Inc.,* 15 Cal.4th 951, 974 (Cal. 1997). To

21  establish justifiable reliance, "the plaintiff must show that the reliance was

22  reasonable by showing that (1) the matter was material in the sense that a

23  reasonable person would find it important in determining how he or she would act,

24  and (2) it was reasonable for the plaintiff to have relied on the misrepresentation."

25  *Hoffman v. 162 North Wolfe LLC*, 228 Cal.App.4th1178, 1194 (Cal. Ct. App.

26  2014). Under this standard, Elizarov's income in May 2020 was "material" only if

27  a reasonable bank would find Elizarov's income important in determining whether

28  to grant forbearance. By corollary, if a reasonable bank could not rely on

12

1 Elizarov's income and had to grant forbearance regardless of Elizarov's income,
2 then the information is *immaterial* as a matter of law.

3    Here, Elizarov's income was immaterial to Goldwater's forbearance
4 decision because the CARES Act did not allow Goldwater to require or rely on
5 proof of hardship but required Goldwater to grant forbearance based on Elizarov's
6 request and affirmation of hardship.

7    On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security
8 Act (CARES Act) Act became law.  134 STAT. 281, Public Law No. 116-136.[5]
9 Under the CARES Act, "[u]pon a request by a borrower for forbearance…, such
10 forbearance *shall be granted* for up to 180 days, and *shall be extended* for an
11 additional period of up to 180 days at the request of the borrower… ."  15 U.S.C. §
12 9056(b)(2) (italics added).  "Upon receiving a request for forbearance from a
13 borrower…, the service *shall with no additional documentation required other*
14 *than the borrower's attestation to a financial hardship caused by the COVID-19*
15 *emergency*…, provide the forbearance for up to 180 days, which may be extended
16 for an additional period of up to 180 days at the request of the borrower… ."  15
17 U.S.C. § 9056(c)(1) (italics added).  The word "shall" as used in the statute implied
18 a mandatory obligation.  *U.S. v. Contreras*, 895 F.2d 1241, 1243 (9th Cir. 1990).
19 So, to qualify for forbearance under the CARES Act, a borrower like Elizarov
20 needed to *attest* to financial hardship but did not have to *prove* the existence of
21 hardship.

22    Consumer guidance from the Consumer Financial Protection Bureau also
23 made this point clear: "You are not required to submit documentation to prove
24 your financial hardship to enter a forbearance under the CARES Act." Ex. E-2.
25 As did Fannie Mae: "The CARES Act states that a forbearance plan must be
26 provided to any borrower who requests a forbearance with an attestation of the
27 financial hardship caused by the COVID-19 emergency; and no additional
28 documentation other than the borrower's attestation to a financial hardship caused

1
2
3

by the COVID-19 emergency is required." Ex. D-7. Fannie Mae also explained that Form 710 – the forbearance application Goldwater asked Elizarov to complete – could not be used in connection with the Covid-19 forbearance requests. Ex. F.

4
5
6
7
8
9

Here, Elizarov requested forbearance based on a natural disaster. This request satisfied the only requirement under the CARES Act. To comply with the CARES Act, Goldwater had to grant the request without requiring or considering proof of hardship, including Elizarov's income and assets. Therefore, Elizarov's income was *immaterial* to Goldwater's forbearance decision, and evidence of Elizarov's income is *irrelevant.*

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

In opposition, Goldwater is not expected to deny Elizarov's, CFPB's, or Fannie Mae's interpretation of the CARES Act. Goldwater intends to assert that the CARES Act did not apply because Elizarov's loan was not "federally backed." See 15 U.S.C. § 9056(b)(1) (the Act applies to borrowers "with a Federally backed mortgage loan"); 15 U.S.C. § 9056(a)(2)(B) ("The term 'Federally backed mortgage loan' includes any loan which is secured by a first or subordinate lien on residential real property...designed principally for the occupancy of from 1- to 4-families that is—purchased or securitized by the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association.") This claim contradicts the evidence in Goldwater's files. *First,* every loan document Goldwater provided to Elizarov was a Fannie Mae document: Fannie Mae Uniform Mortgage Loan Application, Ex. K; Fannie Mae Mortgage Assistance Application, Ex. G; Fannie Mae uniform note and rider, Ex. M, Ex. N; and Fannie Mae Deed of Trust, Ex. L. *Second,* the loan servicing documents identified "FNMA" (an acronym for Federal National Mortgage Association, or Fannie Mae) as the investor. Ex. P; Ex. T. *Finally*, the loss-mitigation inspectors identified the loan as an "FNMA" loan. Ex. R.

27
28

All these records, which came directly from Goldwater's files,

14

1
2
3
unequivocally show that Elizarov's was a Fannie Mae loan.[2]  Therefore, the loan was subject to CARES Act, and Goldwater could not require or consider Elizarov's income or assets in its forbearance decision.

4

5
### III.    Goldwater may not obtain income information before or after May 2020

6
7
8
9
10
11
12
13
14
15
16
17
Goldwater alleged in its complaint that Elizarov misrepresented his income in May 2020 when Elizarov submitted the mortgage assistance application. Goldwater did not allege that Elizarov misrepresented his income at any other time, including 2019, when Elizarov submitted his loan application or after May 2020, when Elizarov was in forbearance.  Although Goldwater alleged misrepresentations in the loan application (which were all lies because Elizarov disclosed those facts to Goldwater), income was not one of the items that Elizarov supposedly misrepresented.  Goldwater also alleged that Elizarov continued to communicate with Goldwater after May 2020 but did not allege that Elizarov continued to misrepresent his income during those contacts.  Goldwater did not even allege that Goldwater *asked* Elizarov to report his income during those subsequent contacts.

18
19
20
Therefore, evidence of Elizarov's income before or after May 2020 is not "directly relevant" to any issue raised by the pleadings, and Goldwater's fishing expedition for that information is not permitted.

21
22
23
Nor is information contained in Elizarov's employment records in general. Goldwater alleged nothing in the complaint making Elizarov's personnel files relevant.

24

25

26
27
28
[2]    If Goldwater insists that the loan was not a Fannie Mae loan, then Elizarov will seek leave to file a counterclaim for fraud against Goldwater because Goldwater represented that the loan was a Fannie Mae loan and has never corrected those representations, and Elizarov would not have borrowed the funds had he known that the truth.

15

1
2
3
4

**IV.    The court should protect Elizarov from harassment and prohibit
Goldwater from rifling through Elizarov's constitutionally protected
information because Goldwater has never had evidence to support its
fraud claim**

5
6
7
8
9
10
11
12
13
14
15
16
17
18

Rule 26 allows the court to limit Goldwater's access to discovery to protect
Elizarov against "annoyance, embarrassment, oppression." Fed.R.Civ.P. 26(c)(1).
The rule allows the court a choice of options, including "forbidding the disclosure
or discovery," Fed.R.Civ.P. 26(c)(1)(A); and "forbidding inquiry into certain
matters, or limiting the scope of disclosure or discovery to certain matters,"
Fed.R.Civ.P. 26(c)(1)(D).  Here, Elizarov seeks the following order: Goldwater
shall not seek or obtain Elizarov's income or asset information until and unless
Goldwater can demonstrate to the court that Goldwater had evidence to show that
Elizarov's income and assets in May 2020 exceeded $1,050 per week and $3,500
cash on hand, respectively, as alleged *under oath* in the verified complaint.  This
order of protection is necessary because Goldwater alleged a claim of fraud
relating to the misrepresentation in the loan application based on a lie and alleged a
claim of fraud relating to misrepresentations in the assistance application based on
nothing but Goldwater's hunch.

19
20
21
22
23
24
25
26
27
28

Goldwater seeks to dig through Elizarov's constitutionally protected records
*even though* Goldwater has never had evidence to show that Elizarov's income or
assets in May 2020 exceeded $1,050 per week and $3,500 cash on hand
respectively, as Goldwater alleged in the complaint.  By presenting this claim,
Goldwater misled the court into believing that Goldwater had evidence to support
these claims.  See *MAXA v. COUNTRYWIDE LOANS, INC*., No. CV10-8076-PCT-
NVW, at *9 (D. Ariz. July 16, 2010) ("Each element [of fraud] must be supported
by sufficient evidence").  Goldwater's counsel similarly certified that Goldwater's
fraud claim – i.e., that Elizarov misrepresented his income and assets because the
income and assets exceeded the amount stated in the assistance application – had

16

1   evidentiary support.  Fed.R.Civ.P. 11(b)(3).  And yet when asked to produce its

2   evidence in discovery, Goldwater identified no facts or records to support its

3   claims.

4       Consider interrogatories.  In discovery, Elizarov asked Goldwater to disclose

5   all facts, evidence, and witnesses who can support Goldwater's claim that Elizarov

6   made false statements of fact in the forbearance application that Goldwater found

7   important in deciding whether to approve the application.  Ex. CC-2 (Rog. 2).

8   Goldwater responded as follows:

10      Goldwater contends that Elizarov's statement that his current financial assets
        only included $3,500 in checking accounts and cash on hand was false,
11      based on evidence of other accounts in Elizarov's name, including the JP
        Morgan savings account reported on his loan application. Elizarov also
12      falsely represented to Goldwater that the Palm Springs property was his
        primary residence, when he had already signed a 12-month lease for an
13      apartment in Florida just weeks prior.
14

15      Evidence of these, as well as other, false statements can be ascertained
        through the business records being produced in response to Elizarov's
16      discovery requests pursuant to Fed. R. Civ. P. 33(d).
17

18      Employees Amanda Uhrig, Melanie Gonzales, Leticia Aguilar, and Renita
        Nolan communicated with Elizarov regarding his forbearance application
19      and have knowledge of the same. These individuals are employees of
        Weststar Mortgage Corporation ("Weststar"), an entity affiliated with
20      Goldwater that handled the servicing of Elizarov's loan. Goldwater
        employee Pete Hill also has general knowledge of Elizarov's forbearance
21      application. They can be reached through undersigned counsel.
22

23  Ex. CC-3.  This answer is telling.  First, Goldwater did not describe any facts to

24  show that Elizarov's income or assets exceeded what Elizarov reported in the

25  assistance application.  Goldwater did not even cite the income misrepresentation

26  as one of the "material facts" that Goldwater considered in making its forbearance

27  decision.  (This is significant because Goldwater's subpoenas rely on its allegation

28  regarding misrepresentation of income.)  Second, Goldwater did not name a single

17

1  witness who had information about Elizarov's income or assets.  Each identified

2  witness knew about the *application*, but none could testify to Elizarov's actual

3  income or assets.  Finally, Goldwater did not describe any evidence supporting its

4  claim.  Although Goldwater referred to some unspecified responses to requests for

5  production, Request No. 2, which directly related to the above interrogatory,

6  promised to produce the records but described none.  Nor has Goldwater produced

7  any of these records.[3]  Ex. DD-2-3.

8  Therefore, it is clear that Goldwater alleged a claim for fraud based on

9  nothing but hunches and suspicions and now seeks to invade Elizarov's

10  constitutionally protected zone of privacy as a part of a fishing expedition to

11  support its baseless allegations.  Rule 9 and Rule 26 do not allow Goldwater to

12  engage in these tactics.

13

14  **V.**      **The court should stay discovery pending the resolution of Elizarov's**

15  **motion for sanctions under Rule 11**

16  When they filed Goldwater's verified complaint, Goldwater's counselors

17  certified that the following allegations had evidentiary support: Elizarov failed to

18  disclose his marital status, his BMW lawsuit, or his debt to the Internal Revenue

19  Service.  Ex. B-5.  These allegations were lies.  Elizarov disclosed his marital

20  status and his BMW lawsuit to Goldwater's loan officer Gregory Hill in early July

21  2019 and paid off his IRS debt 18 months earlier (which Elizarov also disclosed to

22  Gregory Hill).  Ex. S-5, 8, 9; Ex. O; Ex. U; Ex. V; Ex. X; Ex. Y; Ex. Z.  Therefore,

23  these allegations not only lacked evidentiary support but contradicted clear and

24  undisputable evidence.

25  Counselors also certified that the following allegation had evidentiary

26  support: Elizarov's income and assets in May 2020 exceeded $1,050 per week and

27

28  [3]      If Goldwater has produced these records, Goldwater will undoubtedly attach
   a copy of the records (with appropriate bates stamps) as an exhibit in opposition.

18

1   $3,500 cash on hand, respectively. <u>Ex. B-6.</u>  During discovery, it became evident

2   that Goldwater had no evidence to support these claims: Goldwater did not identify

3   Elizarov's true income (in fact, Goldwater abandoned the income-

4   misrepresentation claim entirely) or assets, did not describe a single piece of

5   evidence that showed Elizarov's "true" income, and did not identify a single

6   witness who knew what Elizarov's "true" income was.  <u>Ex. CC-2-3;</u> <u>Ex. DD-2-3.</u>

7         Consequently, Elizarov noticed a motion for sanctions under Rule 11, which

8   sought, among other things, an order dismissing the wrongfully alleged allegations

9   from the complaint.  <u>Ex. EE-2.</u>  At this time, Goldwater has until next Thursday,

10  September 1, 2022, to withdraw its false allegation, or Elizarov will file the motion

11  on September 2, 2022. <u>Ex. EE-5.</u>

12        "A district court has broad discretion to stay discovery pending the

13  disposition of a dispositive motion." *Olivier v. R. Grounds*, C 12-0176 SBA (PR),

14  at *1 (N.D. Cal. Feb. 3, 2014), citing *Panola Land Buyers Ass'n v. Shuman* , 762

15  F.2d 1550, 1560 (11th Cir. 1985) and *Scroggins v. Air Cargo, Inc.* , 534 F.2d 1124,

16  1133 (5th Cir. 1976).  The Rule 11 motion seeks a dismissal of the causes of action

17  for fraud.  Goldwater's subpoenas seek records ostensibly related to the allegations

18  of fraud.  If the motion is granted, the evidence will become irrelevant and non-

19  discoverable.  And since the information sought is within the Constitutionally

20  protected zone of privacy, the court should delay disclosing Elizarov's highly

21  sensitive information until the court rules on the motion.

22

23                              **CONCLUSION**

24        Goldwater filed several baseless fraud allegations against Elizarov.

25  Goldwater's claim that Elizarov lied about Elizarov's income and assets in the

26  assistance application was based on nothing.  Goldwater had no facts, witnesses, or

27  evidence to support this allegation.  Goldwater's claim that Elizarov lied in the

28  mortgage application was based on perjury.  Elizarov disclosed his marital status

19

MEMORANDUM SUPPORTING ARTUR ELIZAROV'S MOTION TO QUASH SUBPOENAS *DUCES TECUM*
TO RITE CARE HOSPICE, INC. AND ECIVIS, INC

and BMW litigation to Goldwater's loan officer Gregory Hill.  Elizarov also had no IRS debt because Elizarov paid off the debt 18 months earlier.  Goldwater knew this information but resorted to perjury to allege it against Elizarov.

Goldwater had no legitimate reason to turn a simple breach of a contract case into a grant conspiracy theory.  Goldwater alleged these baseless claims to cast Elizarov in a false light and to get an excuse to invade Elizarov's constitutionally protected private affairs.

But Goldwater does not intend to stop.  Goldwater intends to ask this Court to deny the motion and give Goldwater unrestricted access to Elizarov's most private information.  In doing so, Goldwater will necessarily ask this Court to condone perjury, excuse Goldwater's lies and misrepresentations, and ignore years of precedent.  Elizarov, on the other hand, asks the court to rein Goldwater's relentless witch hunt in and protect Elizarov against Goldwater's unyielding avalanche of false allegations.

The court should grant the motion.

Dated: 08/16/2022

LOIA, INC. (APLC)

By: Ilya Alekseyeff, Esq.

Attorney for Artur Elizarov

20