**SEAN C. WAGNER** (*Pro Hac Vice*)
Sean.Wagner@wagnerhicks.law
**DEREK M. BAST** (*Pro Hac Vice*)
Derek.Bast@wagnerhicks.law
**WAGNER HICKS PLLC**
831 East Morehead Street, Suite 860
Charlotte NC 28202
Tel: (704) 705-7538; Fax: (704) 705-7787
Attorneys for Plaintiff,
**GOLDWATER BANK, N.A.**

**W. KEITH WYATT (S.B.N.: 80859)**
**MARIE MAURICE (S.B.N.: 258069)**
mmaurice@imwlaw.com
**IVIE McNEILL WYATT PURCELL & DIGGS**
444 S. Flower Street, Suite 1800
Los Angeles, CA 90071-2919
Tel: (213) 489-0028; Fax (213) 489-0552

Local Counsel for Plaintiff,
**GOLDWATER BANK, N.A.**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Goldwater Bank, N.A.<br><br>    *Plaintiff,*<br><br>vs.<br><br>ARTUR ELIZAROV; UNISON AGREEMENT CORP.; SCOTT HOWLETT; BANK OF THE WEST; and ILYA ALEKSEYEFF<br><br>    *Defendants.* | Case No. 5:21-cv-00616-JWH-SP<br><br>**VERIFIED AMENDED COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT**<br>2. **UNJUST ENRICHMENT**<br>3. **FRAUD**<br>4. **FRAUDULENT TRANSFER**<br>5. **CIVIL CONSPIRACY**<br>6. **INJUNCTIVE RELIEF**<br>7. **QUIET TITLE**<br>8. **DECLARATORY JUDGMENT** |

Plaintiff Goldwater Bank, N.A. ("Goldwater"), pursuant to Fed. R. Civ. P. 15(a), hereby files this Amended Complaint and alleges the following:[1]

## PARTIES

1. Plaintiff Goldwater Bank, N.A. is a national association with its principal place of business in Phoenix, Arizona.

2. Defendant Artur Elizarov, is an individual who resided in Riverside County, California at certain times at issue in this matter.

3. Defendant Unison Agreement Corp. is a corporation organized under the laws of the state of Delaware with its principal place of business in San Francisco, California.

4. Defendant Scott Howlett is an individual and resident of San Francisco County, California.

---

[1] The Court's pending decision on Goldwater's request for a preliminary injunction need not be affected by the filing of this Amended Complaint. "Where the claim and prayer for injunctive [relief] forming the basis for a motion for preliminary injunction remains in an amended pleading and the motion for injunctive relief does not rely on factual allegations that substantially differ between the superseded and amended complaint, construing a motion for injunctive relief as relying on the amended pleading is appropriate." *JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC*, No. CV20-2299-CAS (SKX), 2020 WL 3963863, at *6 (C.D. Cal. July 13, 2020). Here, Goldwater's motion for TRO and preliminary injunction sought relief based on Goldwater's claims for breach of contract, unjust enrichment, and constructive trust, which are still present in this amended complaint, and Goldwater is not asking the Court to rule on the pending motion for preliminary injunction based on the new causes of action asserted herein. Additionally, Goldwater's motion did not rely on the factual allegations of a verified Complaint but on separate declarations from Goldwater regarding the facts at issue. Goldwater contends the Court can and still should rule on the request for preliminary injunction based on Goldwater's claims for breach of contract, unjust enrichment, and constructive trust. "Requiring the refiling of the Motion and related documents would be a needless waste of party and judicial resources." *Id.* (construing a pending motion for preliminary injunction to relate to the amended complaint as the operative complaint with respect to the claims at issue in the motion).

5. Defendant Bank of the West is a corporation organized under the laws of the state of California with its principal place of business in San Francisco, California.

6. Defendant Ilya Alekseyeff is an individual and resident of Los Angeles County, California.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over Goldwater's claims pursuant to 28 U.S.C. § 1332, as complete diversity of citizenship exists between Goldwater and Defendants and the amount in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

8. A large portion of the conduct giving rise to the claims against Defendants, as more fully described below, occurred in the Central District of California.

9. In addition, the real property over which Plaintiff claims a security interest at issue in this action is located in Riverside County, California within the Central District of California.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## DEMAND FOR JURY TRIAL

11. Plaintiff Goldwater hereby demands a trial by jury on all issues so triable.

## BACKGROUND

*The Goldwater Loan and the Unison Lien*

12. On or around July 31, 2019, Goldwater, as lender, originated a mortgage loan to Elizarov in the amount of $686,250.00 (the "Goldwater Loan") to be secured by certain real property located at 291 W. Overlook Road, Palm Springs, California 92264 (the "Subject Property").

13. Elizarov is a real estate broker holding an active license from the the California Department of Real Estate, and his license ID number is 01954357.

14. The Goldwater Loan was memorialized in an Adjustable Rate Note (the "Note") and a Deed of Trust (the "Deed of Trust"), both dated July 31, 2019. A true and

accurate copy of the Note and Deed of Trust are attached and incorporated herein as **Exhibit A** and **Exhibit B**, respectively.

15. The Deed of Trust created a valid and enforceable lien between Goldwater and Elizarov.

16. Also on or around July 30, 2019, Elizarov entered into another deed of trust with Unison as trustee, which was also secured by the Subject Property (the "Unison Lien").

17. Elizarov informed Unison of the Goldwater Loan and Goldwater's lien.

18. Upon information and belief, Elizarov purchased the Subject Property for $915,000 using proceeds of both the Goldwater Loan and funds from Unison, and Unison agreed to subordinate the Unison Lien in exchange for an equity share in the value of the Subject Property upon re-sale.

19. Specifically, Unison and Elizarov entered into a document titled Unison Homebuyer Uniform Subordination Agreement (the "Subordination Agreement") on or around July 31, 2019. A true and accurate copy of the Subordination Agreement is attached hereto as **Exhibit C**.

20. The Subordination Agreement identifies Unison as a Subordinating Lien Holder of a Junior Lien on the Subject Property.

21. The Subordination Agreement further identifies the Goldwater lien as the First Mortgage on the Subject Property by reference to Goldwater's loan number, the date of the Note, and the principal amount of $686,250.00.

22. The Subordination Agreement was recorded with the Riverside County Recorder's office on or around August 7, 2019.

*Elizarov's Mortgage Application*

23. To obtain the Goldwater Loan, Elizarov submitted a Uniform Residential Loan Application (the "Loan Application") to Goldwater on or around July 3, 2019.

24. In the Loan Application, Elizarov made several material misrepresentations of fact.

25. In the Loan Application, Elizarov did not identify himself as "Married (include registered domestic partners)." Rather, Elizarov identified himself as "Unmarried."

26. This was a misrepresentation of fact because Elizarov and Defendant Alekseyeff have been in a domestic partnership, which is registered with the state of California, since May 2003.

27. In the Loan Application, Elizarov also identified his total assets, separate from his income, as $227,103.00 in a JP Morgan savings account.

28. Elizarov also stated in the Loan Application that he was not a party to any lawsuit.

29. This was a misrepresentation of fact because Elizarov was in fact a named plaintiff at that time in litigation in the Superior Court of California, Los Angeles County, which was captioned *Artur Elizarov v. BMW Financial Services NA, LLC* (19STCV08507). Elizarov was represented by Alekseyeff in that action.

30. Elizarov stated on the loan application that he was not "presently delinquient or in default on an Federal debt[.]"

31. Upon information and belief, this was a misrepresentation of fact because, at the time, Elizarov was subject to a federal tax lien of $107,787.69.

32. In signing the Mortgage Application, Elizarov represented, agreed, and acknowledged that "the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, *et seq.*"

33. Elizarov's multiple misrepresentations were material to the transaction because they are directly relevant to Elizarov's reliability and financial position.

34. Elizarov's marital status was material to the transaction because California is a community property state, meaning that Elizarov could be held responsible for his domestic partner's liabilities incurred during the span of the domestic partnership.

35. Goldwater relied on Elizarov's misrepresentations in approving him for and making the Goldwater Loan.

### *Elizarov's Payment History*

36. Elizarov defaulted on the Goldwater Loan and is delinquent on the payment obligations as of April 1, 2020, meaning that the payments that Elizarov has made only satisfy his ordinary payment obligations through April 1, 2020.

37. On or around May 2020, Goldwater transferred responsibilities for servicing the Goldwater Loan to an affiliated entity named Weststar Mortgage Corporation.

38. On or around May 5, 2020, Elizarov completed a Mortgage Assistance Application (the "Assistance Application") requesting assistance based on reduction in income and disaster.

39. In the Assistance Application, Elizarov represented that his only form of income was $1,050.00 per week in unemployment benefit income.

40. In the Assistance Application, Elizarov represented that his only assets, excluding retirement funds, was $3,500 in cash on hand.

41. Upon information and belief, Elizarov misrepresented the full extent of his assets and income.

42. Noticeably, Elizarov failed to report the JP Morgan savings account on his Assistance Application, despite reporting it on his Mortgage Application. Upon information and belief, the JP Morgan savings account was still in existence at the time Elizarov completed the Assistance Application.

43. In signing the Assistance Application, Elizarov certified and acknowledged that "all of the information in this Mortgage Assistance Application is truthful . . . [and that] [k]nowingly submitting false information may violate Federal and other applicable law."

44. In reliance on the information reported in Elizarov's Assistance Application, Elizarov was approved for forbearance. Elizarov was required to make reduced monthly payments of $1,101.31, which reflected the escrow amount of his ordinary payments.

45. Elizarov continued to report that he still suffered from the same hardships, and he continued to receive forbearance extensions. However, Elizarov failed to regularly and timely make his reduced monthly payments.

46. During the time when Elizarov was seeking and receiving forbearance, Alekseyeff communicated with Goldwater regarding Elizarov's forbearance.

### *Elizarov Sells the Subject Property*

47. At some point following the default, Elizarov decided to sell the Subject Property, and Elizarov communicated that intent to Goldwater in March 2021.

48. On March 3, 2021, the escrow company for the pending sale, Escrow of the West, Inc., made contact with Goldwater regarding the payoff of Goldwater's lien on the Subject Property in connection with a pending sale of the Subject Property.

49. During the course of the escrow relationship and prior to the closing of the sale, Escrow of the West, Inc., as escrow agent for Elizarov as seller and Howlett as buyer of the Subject Property, learned that Goldwater's Deed of Trust was had never been recorded in the Riverside County Register of Deed's office.

50. On or around March 24, 2021, Goldwater provided Escrow of the West with its payoff calculations, which noted a complete payoff amount of $729,354.80 and daily interest of $101.46. A true and accurate copy of the Payoff Calculations is attached hereto as **Exhibit D.**

51. On March 25, 2021, Escrow of the West provided Goldwater with an estimated settlement statement showing that the proceeds of the sale would pay off a $491,000.00 lien to Unison, a mechanic's lien in the amount of $107,270.00, various closing costs, and a final payout of $677,074.53 in proceeds to Elizarov.

52. Goldwater thereafter communicated with Elizarov on March 25, 2021 by email and by phone regarding the disbursement of the proceeds of the pending sale, which

would have been insufficient to pay off the Goldwater Loan, the Unison Lien, and the mechanic's lien in full.

53. In the communications on March 25, 2021, Elizarov represented that, despite Goldwater's Deed of Trust being unrecorded, Goldwater would recieve $675,000 of the proceeds following the sale of the Subject Property, which would have paid off a substantial majority of the Goldwater Loan.

54. Elizarov sold the Subject Property to Scott Howlett on or around March 25, 2021, by a Grant Deed that was recorded on or around March 29, 2021. A true and accurate copy of the Grant Deed is attached and incorporated herein as **Exhibit E**.

55. Elizarov never informed Goldwater that the sale occurred and continued communicating with Goldwater after March 25, 2021 regarding what amount of the proceeds Goldwater would receive.

56. On or around March 29, 2021, Goldwater asked Elizarov about the status of the closing, and Elizarov denied that the sale occurred.

57. To date, Goldwater has received none of the proceeds from the sale of the Subject Property.

58. Elizarov made these representations about the insufficiency of the proceeds to pay off the Goldwater Loan in full and the promise that Goldwater would nevertheless receive a $675,000 payout with the intent that Goldwater would rely on the misrepresentations and not interfere with the sale.

59. Goldwater did in fact rely on Elizarov's representations.

60. Elizarov's statement that the Subject Property was subject to a $107,270.00 mechanic's lien was a misrepresentation of material fact. The Seller's Final Settlement Statement from Escrow of the West indicates that Unison was the only lienholder paid with the proceeds of the sale. A true and accurate copy of the Seller's Final Settlement Statement is attached hereto as **Exhibit F**.

61. Elizarov's representations that the sale of the Subject Property would yield insufficient funds to pay off the Goldwater Loan was a misrepresentation of material fact.

Elizarov in fact received $785,741.36 in proceeds from the sale, <u>Ex. F</u>, which is in excess of Goldwater's payoff demand of $729,354.80.

62. Following the sale of the property, Goldwater also discovered a flyer advertising the Subject Property for sale identifies Artur Elizarov and his firm DreamHome Realty Group, Inc. as the realtor to be contacted about the property. A true and accurate copy of this flyer is attached hereto as **<u>Exhibit G</u>**.

63. Because of Elizarov's status as a licensed real estate broker in the State of California and his role in marketing the Subject Property for sale, Elizarov cannot deny that he was aware of the validity of the Deed of Trust and Goldwater's right to the proceeds of the sale of the Subject Property.

64. Goldwater's status as a secured creditor with regard to Elizarov is now at risk, and Goldwater faces a significant likelihood that it will effectively become an unsecured creditor of Elizarov.

65. If Goldwater is an unsecured creditor of Elizarov, there is a high risk that Goldwater will not be made whole, as the evidence of Elizarov's insolvency is well documented.

66. At the time of the sale of the Subject Property, Elizarov was already almost a year behind in his payments on the Goldwater Loan, which is significant in light of the fact that he owned the Subject Property for less than two years.

67. Additionally, on December 18, 2019, Elizarov was discharged from an IRS tax lien in the amount of $107,787.69.

68. Elizarov's recent history of carrying significant debts suggests that the proceeds of the sale of the Subject Property will be wasted and disposed of prior to the entry of a final judgment in this matter.

69. On April 1, 2021, Goldwater demanded that Elizarov return the promised funds and advised that it intended to pursue its full legal remedies if the funds were not returned.

*The Validity of Goldwater's Deed of Trust*

70. Goldwater's unrecorded Deed of Trust is valid between Goldwater, Elizarov, and any other party with notice of the Deed of Trust. Cal. Civ. Code § 1217.

71. Upon information and belief, Unison had actual knowledge of Goldwater's Deed of Trust as evidenced by the Subordination Agreement.

72. Howlett and Bank of the West had, at minimum, constructive knowledge or inquiry notice of the Goldwater Lien by virtue of the duly-recorded Subordination Agreement.

73. Howlett and Bank of the West also had imputed knowledge of the Goldwater Lien because Escrow of the West obtained knowledge of Goldwater's adverse interest while acting within the course and scope of its authority as an agent of Elizarov, Howlett, and Bank of the West.

74. On March 29, 2021, a deed of trust was recorded in the Riverside County Recorder's office describing a lien given by Howlett to Bank of the West secured by the Subject Property.

*Elizarov's Dissipation of the Proceeds of the Sale of the Subject Property*

75. Following the sale of the Subject Proceeds, Elizarov received $785,741.36, which was wired to an account with Ally Bank ending in account number -8480 (the "Proceeds Account") on or around March 30, 2021.

76. On April 6, 2021, one week after receiving the proceeds, Elizarov entered into a contract for the purchase of real property for $630,000 in cash in Wilton Manors, Florida (the "Wilton Manors Property").

77. Elizarov paid approximately $19,000 in cash out of the Proceeds Account as a down payment for the Wilton Manors Property on April 7, 2021.

78. Elizarov closed on the purchase of the Wilton Manors Property on April 16, 2021 and paid the remaining $613,000.00 out of the Proceeds Account to complete the sale.

79. On April 20, 2021, allegedly within hours of being restrained from further transferring assets from the Proceeds Account Elizarov transferred $84,843.22 from the Proceeds Account to pay off a loan that belonged to Alekseyeff.

80. At the time that Elizarov transferred the $84,843.22, he was aware of Goldwater's claims and the pending request for an order to prohibit the transfer of those assets.

81. On May 12, 2021, Goldwater sent a Notice of Acceleration to Elizarov informing him that Goldwater was accelerating the Note and demanding payment in full within thirty (30) days. As of this date, Goldwater has not received payment in full. A true and accurate copy of the Notice of Acceleration is attached hereto as **Exhibit H**.

82. As a result of Elizarov's conduct, Goldwater Bank has been damaged in an amount in excess of $75,000, exclusive of interest and costs.

## FIRST CAUSE OF ACTION
### (Breach of Contract, as to Elizarov)

83. Goldwater incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

84. Goldwater had an agreement with Elizarov to make the Goldwater Loan in exchange for his obligations in the Note and the Deed of Trust.

85. The Note and Deed of Trust is a valid and binding contract between the parties.

86. Pursuant to the Note and Deed of Trust, Goldwater is entitled to the proceeds from a sale of the Subject Property.

87. Elizarov breached the Note and Deed of Trust by failing to make all payments when due, including by failing to provide Goldwater with the proceeds of the sale of Subject Property.

88. Rather than pay the proceeds from the sale of the Subject Property to Goldwater, Elizarov has wrongfully retained those proceeds in an amount of approximately $675,000.

89. Elizarov agreed in the Note that in the event of a default and acceleration of the Goldwater Loan, Goldwater would be entitled to recover its costs and expenses incurred in enforcing the Note, including its reasonable attorney's fees. (Ex. A, Note, § 7(E)).

90. As a direct and proximate result of Elizarov's breach, Goldwater has been directly and proximately damaged in an amount to be determined at trial.

91. As a direct and proximate result of the foregoing acts and conduct, Goldwater has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendants will continue to infringe on Plaintiff

92. Goldwater additionally seeks the entry of an order declaring that Elizarov holds, in constructive trust as trustee for the benefit of Goldwater, such amounts as were transferred to him personally in connection with the sale of the Subject Property, as well as an order directing Elizarov to disgorge and transfer any and all such amounts to Goldwater.

## SECOND CAUSE OF ACTION

### (Unjust Enrichment)

93. Goldwater incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

94. By engaging in the acts described above, Elizarov has and continues to benefit from his wrongdoing and has been unjustly enriched by reaping the benefits of his unlawful activities to the damage and irreparable harm of Goldwater.

95. As a direct and proximate result of Elizarov's misconduct, Goldwater has been damaged in an amount to be proven at trial, but in excess of $675,000.

## THIRD CAUSE OF ACTION

### (Fraud, as to Elizarov)

96. Goldwater incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

97. By providing incorrect information and omitting information on the Mortgage Application and the Assistance Application, Elizarov made false representations of material facts on both the Mortgage Application and the Assistance regarding his financial status.

98. Elizarov made other false representations as described above, including the misrepresentations that the sale of the Subject Property would result in insufficient proceeds to pay off the Goldwater Loan in full and that Goldwater would nevertheless receive a payout of $675,000.00.

99. Elizarov's misrepresentations were reasonably calculated to deceive Goldwater.

100. Elizarov's misrepresentations were made with the intent to deceive Goldwater and with the intent that Goldwater would rely on the misrepresentations and enter into the Goldwater Loan.

101. Elizarov's misrepresentations were made with the intent to deceive Goldwater and with the intent that Goldwater would rely on the misrepresentations and approve Elizarov's request for mortgage assistance.

102. Elizarov's misrepresentations were made with the intent to deceive Goldwater and with the intent that Goldwater would rely on the misrepresentations and not interfere with the sale of the Subject Property or rush to record its Deed of Trust.

103. Elizarov's misrepresentations did in fact deceive Goldwater.

104. Goldwater's reliance on Elizarov's representations was reasonable.

105. Elizarov's actions proximately caused Goldwater damages exceeding $75,000 exclusive of interest and costs.

### FOURTH CAUSE OF ACTION

**(Fraudulent Transfer as to Elizarov and Alekseyeff)**

106. Goldwater incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

107. On April 20, 2021, Elizarov transferred $84,843.22 from the Proceeds Account to a third-party creditor to pay off a loan on Alekseyeff's behalf.

108. At the time Elizarov made the transfer, Elizarov acted with actual intent to hinder, delay, or defraud Goldwater, and his intent is reflected by, among other things, the fact that the transfer was made after Goldwater had already instituted litigation against Elizarov, Elizarov concealed assets, and Elizarov had previously made representations of insolvency to Goldwater.

109. As such, the transfer of the $84,843.22 for Alekseyeff was fraudulent pursuant to California Civil Code § 3439.04 and Goldwater is entitled to void the transfer and pursue all other remedies set forth in §3439.07.

## FIFTH CAUSE OF ACTION

**(Conspiracy as to Elizarov and Alekseyeff)**

110. Goldwater incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

111. Elizarov and Alekseyeff entered into an agreement with each other to defraud Goldwater, to dissipate the proceeds of the sale of the Subject Property, and to otherwise make misrepresentations to Goldwater so as to induce it to make the Goldwater Loan and subsequently approve Elizarov for mortgage assistance.

112. Elizarov and Alekseyeff took overt actions in furtherance of the conspiracy, including by misrepresenting Elizarov's marital status and financial position, by instructing Escrow of the West not to communicate with Goldwater, by purchasing the Wilton Manors Property in an all-cash deal shortly after receiving the proceeds and while on notice of Goldwater's claims, and by taking further steps to dissipate the proceeds of the sale of the Subject Property.

113. Elizarov and Alekseyeff's actions proximately caused Goldwater damages exceeding $75,000, exclusive of interest and costs.

## SIXTH CAUSE OF ACTION

**(Injunctive Relief, as to Elizarov)**

114. Goldwater incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

115. As of the date of filing of this Complaint, Goldwater faces significant exposure with regard to the Goldwater Loan, as Elizarov has sold the Subject Property and wrongfully retained the proceeds of the sale in an amount in excess of $675,000.

116. Goldwater's status as a secured creditor of Elizarov has been threatened, and the likelihood of Goldwater being able to recover in full as an unsecured creditor is low.

117. Goldwater justifiably fears that it will sustain significant losses and irreparable harm as a result of Elizarov's misappropriation of the proceeds of the sale of the Subject Property.

118. Unless Elizarov's assets, including the proceeds of the sale of the Subject Property, are marshalled, accounted for, and preserved, Goldwater's security interest in the Goldwater Loan will not be adequately secured with respect to Elizarov.

119. Goldwater is without a plain, speedy, or adequate remedy at law which would serve to immediately exonerate, indemnify, and save it harmless for its actual and anticipated losses, and Goldwater would be irreparably and permanently injured unless this Court grants immediate injunctive and equitable relief.

## SEVENTH CAUSE OF ACTION

**(Quiet Title, as to Unison, Howlett, and Bank of the West)**

120. Goldwater incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

121. Goldwater held and now holds a first-priority security interest in the Subject Property pursuant to the July 31, 2019 Note and Deed of Trust between Goldwater and Elizarov.

122. Goldwater seeks to quiet title against the claims of any and all defendants who claim to have an interest in the Subject Property, which has the following legal description:

the real property in the City of Palm Springs, County of Riverside, State of California described as: Lot 8 of Block 7, Palm Canyon Mesa Tract as per map recorded in Book 12, Pages 52 to 56 both inclusive of Maps, in the office of the County of said county. Also Known as: 291 W. Overlook Road, Palm Springs, CA 92264

123. Elizarov granted Goldwater a lien in the Subject Property through Goldwater's Deed of Trust.

124. At the sale of the Subject Property, the Goldwater Lien was not paid off, and Goldwater's security interest has not been extinguished because all other parties who have claimed an interest in the Subject Property, including Unison, Howlett, and Bank of the West, had notice of Goldwater's Deed of Trust.

125. Union had actual knowledge of Goldwater's Deed of Trust and agreed to subordinate its lien to Goldwater's.

126. Howlett had constructive knowledge or was on inquiry notice of the Goldwater Deed of Trust by virtue of the duly-recorded Subordination Agreement and the knowledge obtained by Escrow of the West during the course of their role as agent for Elizarov, Howlett, and Bank of the West.

127. Bank of the West had constructive knowledge or was on inquiry notice of the Goldwater Deed of Trust by virtue of the duly-recorded Subordination Agreement and by Howlett's knowledge.

128. Goldwater seeks a determination that, as of March 29, 2021, Goldwater held a first-priority security interest in the Subject Property, that Howlett took the Subject Property subject to the Goldwater Lien, and that Bank of the West's security interest in the Subject Property is subordinate to the Goldwater Lien.

129. The claims of Unison, Howlett, and Bank of the West, each of them adverse to Goldwater's interest, are without any right whatever and such defendants' rights are all subject to Goldwater's superior security interest.

130. For the reasons stated above, Goldwater requests an Order from this Court pursuant to Cal. Code of Civil Procedure § 760.020 *et seq.*, quieting title in the Subject Property and declaring that Goldwater holds a first-priority security interest in the Subject Property.

### EIGHTH CAUSE OF ACTION

**(Declaratory Judgment, as to Unison, Howlett, and Bank of the West)**

131. Goldwater incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

132. There exists an actual, definite, and concrete controversy between Goldwater, Unison, Howlett, and Bank of the West related to the priority of Goldwater's security interest relative to those defendant's interests in the Subject Property.

133. Goldwater contends that it has a first-priority lien on the Subject Property based upon all Defendant's notice of Goldwater's unrecorded Deed of Trust, and Goldwater is informed and believes that Defendants Unison, Howlett, and Bank of the West dispute these contentions.

134. A judicial determination is necessary and appropriate at this time in order that the parties may ascertain their rights and duties with respect to the Subject Property.

### PRAYER FOR RELIEF

**WHEREFORE**, Goldwater requests the Court order relief, as follows:

1. Preliminary and permanent injunctive relief (i) enjoining Elizarov from alienating or disposing of the proceeds of the sale of the Subject Property and (ii) requiring Elizarov to make an accounting of his assets following the sale of the Subject Property;

2. Actual, compensatory, consequential, punitive, and exemplary damages in an amount to be determined at trial for all losses and damages suffered as a result of the acts and transactions complained of herein;

3. A constructive trust for the benefit of Goldwater over the proceeds received by Elizarov in connection with the sale of the Subject Property;

4. All costs and expenses incurred by Goldwater Bank in enforcing its rights under the Note and Deed of Trust;

5. An order quieting title and declaring that Goldwater holds a first-priority security interest in the Subject Property.

6. Declaratory relief stating that Goldwater holds a first-priority security interest in the Subject Property.

Dated: May 27, 2021

                                  IVIE McNEILL WYATT
                                  PURCELL & DIGGS

                                  /s/ Marie Maurice
                                  W. Keith Wyatt, Esq.
                                  Marie Maurice, Esq.

                                        AND

                                  WAGNER HICKS PLLC

                                  /s/ Derek M. Bast
                                  Sean C. Wagner, Esq.
                                  Derek M. Bast, Esq.
                                  *ATTORNEYS FOR PLAINTIFF GOLDWATER BANK N.A.*

# CERTIFICATE OF SERVICE

I certify that all counsel of record who has consented to electronic notification is being served on May 27, 2021 with a copy of **PLAINTIFF'S AMENDED COMPLAINT** via the Court's CM/ECF system. Pursuant to Local Rule 5-3.1.2, I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all non-CM/ECF participants listed below:

> Unison Agreement Corp.
> First Corporate Solutions, Inc., Registered Agent
> 650 California Street, Suite 1800
> San Francisco, CA 94108

/s/ Derek M. Bast
Derek M. Bast

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

Goldwater Bank, N.A.

    *Plaintiff,*

vs.

ARTUR ELIZAROV; UNISON AGREEMENT CORP.; SCOTT HOWLETT; BANK OF THE WEST; and ILYA ALEKSEYEFF

    *Defendants.*

Case No. 5:21-cv-00616-JWH-SP

**VERIFICATION**

    I, Peter Hill, an authorized agent of Goldwater Bank, N.A., pursuant to 28 U.S.C. § 1746, do hereby verify under penalty of perjury that the foregoing allegations contained in this Verified Complaint are true and correct to the best of my current knowledge.

Dated: May 27, 2021.

_____
Peter Hill

---

PLAINTIFF'S AMENDED COMPLAINT - 1

**Exhibit B - 20**