ILYA ALEKSEYEFF [CA 242462]
  ilya@loia.legal
LOIA, INC. (APLC)
727 W 7th St PH 1-13
Los Angeles, CA 90017
Tel: (213)537-4592

Attorney for Artur Elizarov

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GOLDWATER BANK, NA**, *Plaintiff,* | **5:21-cv-616-JWH-SP** |
| vs. | **MEMORANDUM SUPPORTING MOTION FOR SANCTIONS UNDER RULE 11** |
| **ARTUR ELIZAROV ET AL**, *Defendant.* | Date: 10/21/2022 |
| **AND RELATED CROSS-ACTION.** | Time: 9:00 AM |
| | Court: Hon. John W. Holcomb |

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iv

INTRODUCTION ...............................................................................................1

STANDARD OF REVIEW ..................................................................................1

FACTUAL ALLEGATIONS.................................................................................4

ARGUMENT.......................................................................................................5

I.     Counselors had no evidentiary or legal basis to allege fraud in the loan

       application....................................................................................................5

              Fraud under California law ..................................................................5

              BMW lawsuit........................................................................................6

              Default on a federal debt.....................................................................7

              Marital status .......................................................................................8

II.    Counselors had no evidentiary or legal basis to allege fraud in the

       forbearance application.............................................................................11

III.   Counselors had no evidentiary or legal basis to allege fraud during

       settlement negotiations.............................................................................14

IV.    Counselors had no evidentiary or legal basis to allege the conspiracy claim

       .....................................................................................................................19

V.     The allegations in the complaint conclusively negate a claim for "unjust

       enrichment".................................................................................................21

VI.    Counselors had no evidentiary or legal basis to allege the fraudulent-transfer

       claim ...........................................................................................................22

VII.   Sanctions....................................................................................................24

ii

1

CONCLUSION ........................................................................................................ 24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iii

1

# TABLE OF AUTHORITIES

2 **Cases**

3  *999 v. C.I.T. Corp.*,

4      776 F.2d 866 (9th Cir. 1985)...............................................................16

5  *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,

6      7 Cal.4th 503 (Cal. 1994)....................................................................20

7  *Awani v. Nationstar Mortg. LLC*,

8      B282732 (Cal. Ct. App. June 25, 2019) ............................................17

9  *Bader v. Itel Corp. (In re Itel Sec. Litig.)*,

10      791 F.2d 672 (9th Cir. 1986)................................................................3

11  *Barber v. Miller*,

12      146 F.3d 707 (9th Cir. 1998)..............................................................25

13  *Berger v. Lane,*

14      190 Cal. 443 (Cal. 1923) ....................................................................17

15  *Bernstein v. Vocus, Inc.*,

16      No. 14-cv-01561-TEH (N.D. Cal. July 23, 2014) ................................6

17  *Botha v. Wright Med. Tech., Inc.*,

18      No. CV 12-8037-PCT-JAT (D. Ariz. July 6, 2012) ............................6

19  *Byrnes v. Lockheed-Martin, Inc.*,

20      No. C-04-03941 RMW, Re Docket No. 34. (N.D. Cal. Dec. 28, 2005) ...............3

21  *City of Los Angeles v. Conway*,

22      No. B205763 (Cal. Ct. App. Jan. 4, 2010) ........................................24

23  *Coonts v. Potts*,

24      316 F.3d 745 (8th Cir. 2003)................................................................2

25  *Cooter Gell v. Hartmarx Corp.*,

26      496 U.S. 384 (1990)..............................................................................1

27  *Crossfit Inc. v. Martin*,

28

iv

No. CV-14-02277-PHX-JJT (D. Ariz. Sep. 22, 2017) .......................................25

*Doctors' Co. v. Superior Court*,

    49 Cal.3d 39 (Cal. 1989) ......................................................................................20

*Engalla v. Permanente Medical Group, Inc.*,

    15 Cal.4th 951 (Cal. 1997) ....................................................................................5

*Fleishman v. Blechman,*

    148 Cal.App.2d 88 (Cal. Ct. App. 1957) .............................................................22

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.,*

    No. 1:11-CV-00030-AWI-SMS, 2012 WL 6097105 (E.D. Cal. Dec. 7, 2012)....6

*Habib v. Matson Navigation Co.*,

    No. C12-1906RSM (W.D. Wash. Aug. 26, 2014) .................................................3

*Hale v. Harney*,

    786 F.2d 688 (5th Cir. 1986) .................................................................................2

*Hammler v. Dir. of CDCR*,

    No. 2:17-cv-1949 MCE DB P (E.D. Cal. June 12, 2019) ....................................25

*Hess v. Reg-Ellen Mach. Tool Corp.*,

    367 Fed. Appx. 687 (7th Cir. 2010) ......................................................................3

*Hoffman v. 162 N. Wolfe LLC*,

    228 Cal.App.4th 1178 (Cal. Ct. App. 2014) ........................................................22

*Hoffman v. 162 North Wolfe LLC*,

    228 Cal. App. 4th 1178 (Cal. Ct. App. 2014) ...............................................6, 11

*Holgate v. Baldwin*,

    425 F.3d 671 (9th Cir. 2005) .............................................................................2, 3

*Hultman v. Tevis*,

    82 F.2d 940 (9th Cir. 1936) .................................................................................24

*In re Connetics Corp. Sec. Litig.*,

    542 F.Supp.2d 996 (N.D. Cal. 2008) .....................................................................2

v

*In re Keegan Management Co., Securities Litigation*,

    154 F.R.D. 237 (N.D. Cal. 1994) .......................................................25

*International Union, United Auto. v. Aguirre*,

    410 F.3d 297 (6th Cir. 2005)................................................................2

*Kidron v. Movie Acquisition Corp.*,

    40 Cal.App.4th 1571 (Cal. Ct. App. 1995).........................................20

*Lyons v. Security Pacific Nat. Bank*,

    40 Cal.App.4th 1001 (Cal. Ct. App. 1995).........................................24

*McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*,

    339 F.3d 1087 (9th Cir. 2003).............................................................22

*Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,

    94 Cal.App.4th 151 (Cal. Ct. App. 2001)...........................................22

*Mejia v. Bank of Am., N.A.*,

    B257879 (Cal. Ct. App. Apr. 29, 2016) ..............................................17

*Millard v. Epsteen*,

    58 Cal.App.2d 612 (Cal. Ct. App. 1943)............................................25

*Orcilla v. Big Sur, Inc.*,

    244 Cal.App.4th 982 (Cal. Ct. App. 2016).........................................19

*Pan-Pac. & Low Ball Cable Television Co. v. Pac. Union Co.*,

    987 F.2d 594 (9th Cir. 1993)................................................................3

*Paracor Finance, Inc. v. Gen. El. Cap. Corp.*,

    96 F.3d 1151 (9th Cir. 1996)..............................................................22

*Perez-Mejia v. Holder*,

    641 F.3d 1143 (9th Cir. 2011).............................................................23

*Perry v. S.Z. Rest. Corp.*,

    45 F. Supp. 2d 272 (S.D.N.Y.) ............................................................2

*Portillo v. Sarneveslit*,

MEMORANDUM SUPPORTING MOTION FOR SANCTIONS UNDER
RULE 11

No. C08-00190 HRL (N.D. Cal. Feb. 11, 2009) ....................................................3

*Reiniger v. W.L. Gore & Assocs., Inc.,*

No. CV-09-8185-PCT-PGR, 2010 WL 1948588 (D. Ariz. May 12, 2010)..........6

*Robert P. Mosier, Grp. Inc. v. Stonefield Josephson, Inc.*,

815 F.3d 1161 (9th Cir. 2016)..............................................................................22

*Secrest v. Security National Mortgage Loan Trust 2002-2*,

167 Cal.App.4th 544 (Cal. Ct. App. 2008).........................................................17

*Spokane Law Enforcement Fed. Credit Union v. Barker (In re Barker)*,

839 F.3d 1189 (9th Cir. 2016)..............................................................................23

*Stewart v. RCA Corp.*,

790 F.2d 624 (7th Cir. 1986)..................................................................................2

*Superior Consulting Servs., Inc. v. Steeves-Kiss*,

No. 17-cv-06059-EMC, at *10 (N.D. Cal. May 11, 2018)....................................3

*Teledyne Mid-America Corp. v. HOH Corp.*,

486 F.2d 987 (9th Cir. 1973)................................................................................17

*Tenzer v. Superscope, Inc.*,

39 Cal.3d 18 (Cal. 1985)......................................................................................16

*U.S. v. Contreras*,

895 F.2d 1241 (9th Cir. 1990)..............................................................................14

*Wal-Noon Corp. v. Hill*,

45 Cal.App.3d 605 (Ct.App. 1975) .....................................................................22

*Williams v. Wraxall*,

33 Cal.App.4th 120 (Cal. Ct. App. 1995)............................................................18

*Wyzard v. Goller*,

23 Cal.App.4th 1183 (Cal. Ct. App. 1994)..........................................................24

1

**Statutes**

2

15 U.S.C. § 1691 ............................................................................................. 11

3

15 U.S.C. § 9056 ............................................................................................. 14

4

Cal. Civ. Code, § 1624 ................................................................................... 16

5

Cal. Civ. Code, § 3439.04 .............................................................................. 24

6

7

**Other Authorities**

8

CACI 3600 ....................................................................................................... 21

9

10

**Rules**

11

Fed. R. Civ. P. 11 ....................................................................................... 1, 3

12

13

**Regulations**

14

12 C.F.R. § 202.13 .......................................................................................... 12

15

12 C.F.R. § 202.5 ............................................................................................ 12

16

12 C.F.R. § 202.6 ............................................................................................ 11

17

12 C.F.R. § 202.7 ............................................................................................ 11

18

12 C.F.R. 202.7 ............................................................................................... 11

19

20

21

22

23

24

25

26

27

28

MEMORANDUM SUPPORTING MOTION FOR SANCTIONS UNDER
RULE 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Counselors[1] representing Goldwater alleged a claim for fraud, conspiracy, fraudulent transfer, and unjust enrichment against Elizarov.[2]  When they filed the case, counselors represented that each claim was warranted by California law and that counselors had evidence to establish every element of those claims.  Counsels did not identify any of those allegations as likely to have evidentiary support following discovery.  Except that counselors lacked any evidence to prove their claims and many of the claims were not viable under California law.  Therefore, counselors violated Rule 11 and should be sanctioned.

**STANDARD OF REVIEW**

"Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.' "  *Cooter Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).  An attorney must certify these facts "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances… ."  Fed. R. Civ. P. 11(b).

"[T]he central purpose of Rule 11 is to deter baseless filings in district court… ."  *Cooter Gell,* 496 U.S. at p. 393.

A frivolous claim violates the attorney's certification that the claim has evidentiary support.  Fed. R. Civ. P. 11(b)(3) ("the factual contentions [must have] evidentiary support").  "When, as here, a 'complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective

---

[1]   In this memorandum, "counselors" refer to attorneys Derek Bast, Marie Maurice, Joseph LeVota, and their respective law firms.

[2]   Elizarov does not challenge the claim for breach of a contract, which was also alleged in the complaint.

1

1  perspective, and (2) if the attorney has conducted a reasonable and competent

2  inquiry before signing and filing it.' [Citation]." *Holgate v. Baldwin*, 425 F.3d

3  671, 676 (9th Cir. 2005). "As shorthand for this test, we use the word 'frivolous'

4  'to denote a filing that is *both* baseless *and* made without a reasonable and

5  competent inquiry.' [Citation]." *Id.* (original italics). "The reasonable inquiry test

6  is meant to assist courts in discovering whether an attorney, after conducting an

7  objectively reasonable inquiry into the facts and law, would have found the

8  complaint to be well-founded." *Id.* at p. 677 (internal citations omitted). "To

9  constitute a reasonable inquiry, the prefiling investigation must uncover a factual

10  basis for the plaintiff's allegations, as well as a legal basis." *Coonts v. Potts*, 316

11  F.3d 745, 753 (8th Cir. 2003). "Rule 11 requires lawyers to think first and file

12  later, on pain of personal liability." *Stewart v. RCA Corp.*, 790 F.2d 624, 633 (7th

13  Cir. 1986). This requirement imposes a "nondelegable responsibility to personally

14  . . . validate the truth and legal reasonableness of the papers filed . . . and to

15  conduct a reasonable factual investigation." *In re Connetics Corp. Sec. Litig.*, 542

16  F.Supp.2d 996, 1005 (N.D. Cal. 2008) "The day is past when our notice pleading

17  practice . . . [and] liberal discovery rules invited the federal practitioner to file suit

18  first and find out later whether he had a case or not." *Hale v. Harney*, 786 F.2d

19  688, 692 (5th Cir. 1986).

20  Sanctions under Rule 11 may be appropriate even if the complaint

21  previously survived a motion to dismiss. *International Union, United Auto. v.

22  Aguirre*, 410 F.3d 297 (6th Cir. 2005) (motion for sanctions granted after the

23  complaint survived a motion for judgment on the pleadings). See also *Perry v. S.Z.

24  Rest. Corp.*, 45 F. Supp. 2d 272, 274-75 (S.D.N.Y.), appeal dismissed, 201 F.3d

25  432 (2d Cir. 1999) (sanctions appropriate for pursuing claim that had survived two

26  summary judgment motions; information plaintiffs received from defendants

27  would have prompted an objectively reasonable attorney to make a more thorough

28  investigation of his client).

2

1    Sanctions may be imposed "on any attorney, law firm, or party that violated
2    the rule or is responsible for the violation.  Fed. R. Civ. P. 11(c)(1).  The rule not
3    only applies to the attorney who initially signed, filed, or submitted the pleading
4    but also to an attorney who later advocated the pleading.  Fed. R. Civ. P. 11(b).
5    Accordingly, "[s]anctions may be imposed against the client alone, the attorney
6    alone, or both the client and the attorney based on their relative responsibility."
7    *Superior Consulting Servs., Inc. v. Steeves-Kiss*, No. 17-cv-06059-EMC, at *10
8    (N.D. Cal. May 11, 2018) (citing *Pan-Pac. & Low Ball Cable Television
9    Co. v. Pac. Union Co.*, 987 F.2d 594 (9th Cir. 1993)).

10    An attorney who signed the pleading but subsequently withdrew from the
11    case before the sanctions motion was made remains liable under rule 11.  *Holgate
12    v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005) ("The fact that [counsel] was
13    allowed to withdraw as counsel due to a conflict of interest does not protect him
14    from sanctions based on a filing that he made before that withdrawal"); *Bader v.
15    Itel Corp. (In re Itel Sec. Litig.)*, 791 F.2d 672, 675 (9th Cir. 1986) (the law
16    provides "absolutely no hint . . . that a lawyer may escape sanctions for misconduct
17    simply by withdrawing from a case before opposing counsel applies for
18    sanctions").

19    "Rule 11 not only obligates an attorney to conduct a reasonable pre-filing
20    investigation, but also to review, examine, and re-evaluate his position as the facts
21    of the case come to light."  *Byrnes v. Lockheed-Martin, Inc.*, No. C-04-03941
22    RMW, Re Docket No. 34., 39, 44, at *12 (N.D. Cal. Dec. 28, 2005).  So, counsel
23    have "an affirmative duty to evaluate the claims being made and a continuing duty
24    to dismiss any claims that were no longer viable."  *Habib v. Matson Navigation
25    Co.*, No. C12-1906RSM, at *11 (W.D. Wash. Aug. 26, 2014), citing *Hess v. Reg-
26    Ellen Mach. Tool Corp.*, 367 Fed. Appx. 687, 691 (7th Cir. 2010).  See also
27    *Portillo v. Sarneveslit*, No. C08-00190 HRL, at *5 (N.D. Cal. Feb. 11,
28    2009) ("Plaintiffs have a continuing duty to dismiss the claim if it becomes

3

apparent in the discovery process that it is not legally tenable under the circumstances.")

## FACTUAL ALLEGATIONS

Elizarov applied for a loan to Goldwater in June 2019. Elizarov initially contacted Greg Hill, Goldwater's loan officer, about the loan. Over a series of phone calls, text messages, and emails, Elizarov disclosed that Elizarov was married, disclosed a BMW lawsuit that was settled in May, and disclosed the IRS debt, which Elizarov paid in January of 2018. G. Hill then completed the Uniform Loan Application using only the information that G. Hill deemed essential according to Goldwater's underwriting and lending standards. Once completed, Elizarov signed the application.

Elizarov did not complete the application himself.

In May 2020, Elizarov reported a financial hardship due to the worldwide pandemic. Although the application did not require any proof of documentation, Elizarov also reported his income and assets. Consistent with CARES Act, Goldwater approved the application based solely on Elizarov's request and affirmation of hardship.

Elizarov hired Mr. William Cook to list the property for sale in November 2020. Elizarov notified G. Hill about the sale on February 2, 2021, and sent G. Hill the escrow officer's contact information on February 3, 2021. After Elizarov signed a sale agreement with Scott Howlett on March 3, 2021, Elizarov sent the purchase agreement to G. Hill as well.

On March 25, 2021, Elizarov discovered that Goldwater had never recorded the deed of trust nor given Elizarov notice of Goldwater's intent to require the immediate repayment of the loan. Consequently, Elizarov refused to repay the entire loan and insisted on paying down the loan according to the existing amortization schedule under the note.

4

1   Goldwater subsequently sued Elizarov in this court.  In its verified
2   complaint, which Goldwater's executive Peter Hill signed under penalty of perjury,
3   Goldwater accused Elizarov of fraud in the loan application, fraud in the
4   forbearance application, fraud during settlement negotiations, fraudulent transfer,
5   breach of contract, and "unjust enrichment."

6   On August 8, 2022, Elizarov gave a tentative notice of this motion to
7   counselors.  The notice allowed Counselors until September 1, 2022 (twenty-four
8   days after service) to withdraw the allegation.

9   <center>**ARGUMENT**</center>

10  **I.   Counselors had no evidentiary or legal basis to allege fraud in the loan**
11  **application**

12  In the verified complaint, Goldwater alleged under oath that Elizarov lied to
13  Goldwater in the loan application in three ways: Elizarov failed to disclose that
14  Elizarov was a party to a pending civil lawsuit against BMW Financial Services,
15  Elizarov failed to disclose that Elizarov was in default on a federal tax debt, and
16  Elizarov failed to disclose that Elizarov had a registered domestic partner. These
17  allegations were demonstrably false, Goldwater had no evidence to prove these
18  allegations, and the claim of "materiality" was not supported by California law.

19  *Fraud under California law*

20  To certify the allegations of fraud, counselors had to have an evidentiary
21  basis to show "(a) misrepresentation (false representation, concealment, or
22  nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to
23  induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v.*
24  *Permanente Medical Group, Inc*., 15 Cal.4th 951, 974 (Cal. 1997), internal
25  citations and quotations omitted.  Evidentiary basis also had to "show that the
26  reliance was reasonable by showing that (1) the matter was material in the sense
27  that a reasonable person would find it important in determining how he or she
28  would act, and (2) it was reasonable for the plaintiff to have relied on the

<center>5</center>

1   misrepresentation." *Hoffman v. 162 North Wolfe LLC*, 228 Cal. App. 4th 1178,

2   1194 (Cal. Ct. App. 2014).

3        In alleging fraud in federal court, "[a] plaintiff must identify the complete

4   facts supporting a fraud claim before alleging fraud in its complaint: allegations of

5   fraud may not depend on facts to be uncovered in discovery." *Bernstein v. Vocus,*

6   *Inc.*, No. 14-cv-01561-TEH, at *10 (N.D. Cal. July 23, 2014), citing *Foster Poultry*

7   *Farms v. Alkar-Rapidpak-MP Equip., Inc.,* No. 1:11-CV-00030-AWI-SMS, 2012

8   WL 6097105, at *6 (E.D. Cal. Dec. 7, 2012).  "Plaintiff will not be permitted 'to

9   conduct a discovery fishing expedition before properly stating any fraud-based

10   claim.' [Citations]." *Botha v. Wright Med. Tech., Inc.*, No. CV 12-8037-PCT-JAT,

11   at *7 n.3 (D. Ariz. July 6, 2012), citing *Reiniger v. W.L. Gore & Assocs., Inc.,* No.

12   CV-09-8185-PCT-PGR, 2010 WL 1948588, at *3 (D. Ariz. May 12, 2010).

13        ***BMW lawsuit***

14        Counselors alleged that Elizarov failed to report a pending lawsuit *Artur*

15   *Elizarov v. BMW Financial Services NA*.  EX. OO, p. 5, ¶¶ 28-29.  This claim is

16   demonstrably false.

17        Elizarov sued BMW Financial Services, NA on March 11, 2019.  Ex. V.

18   The parties settled the lawsuit on May 22, 2019.  Ex. A.  Elizarov's counsel Ilya

19   Alekseyeff filed a notice of unconditional settlement the same day, Ex. C, and

20   dismissed the case after the court retained jurisdiction to enforce the settlement,

21   Ex. A, Ex. B, Ex. D, Ex. E.  All these records were publicly available for

22   counselors' review.  Ex. U (LASC website); Ex. V (case docket, highlighted).

23        Elizarov reported both the existence of this lawsuit and its dismissal to G.

24   Hill on July 10, 2021, by text.  Ex. HH-8.  (See Figure A on p. 7.)  Elizarov also

25   sent the settlement agreement (Ex. A) and the notice of settlement (Ex. C) to G.

26   Hill by email.  All these records were available to counselors who had the duty to

27   view the records before falsely accusing Elizarov of fraud.

28

**Figure A**



Therefore, the allegation of fraud based on the failure to disclose the BMW lawsuit lacked evidentiary support, and counselors violated Rule 11(b)(3) when counselors certified otherwise.

### *Default on a federal debt*

The complaint alleged that Elizarov failed to disclose that Elizarov was "in default" on a federal debt, *to wit:* "a federal tax lien of $107,787.69." EX. OO, p. 5, ¶¶ 30-31. This allegation was also demonstrably false.

On November 30, 2015, the Internal Revenue Service assessed $107,787.69 relating to 2014 tax liability. Ex. O-1. On October 16, 2017, the Internal Revenue Service recorded a lien against Elizarov to secure this liability. Ex. O-1. At that time, Elizarov owned a house in Valley Village, California. On January 19, 2018, Elizarov sold the property. Elizarov had to satisfy the lien to close the sale of the property. https://www.irs.gov/newsroom/what-if-there-is-a-federal-tax-lien-on-my-home accessed 07/20/2022, accessed 08/07/2022. During escrow, Elizarov paid off $91,567.25 to the IRS. Ex. K-2 (IRS demand to escrow, highlighted); Ex. L-1

7

1   (escrow payment to the IRS); Ex. M-1 (Escrow final settlement statement,

2   highlighted).  The Internal Revenue Service released the lien on December 18,

3   2019.[3]  Ex. O-1.  Elizarov applied for a loan to Goldwater in July of 2019, more

4   than a year after paying off the IRS debt.  Therefore, by the time Elizarov applied

5   to Goldwater for a loan in July 2019, Elizarov no longer owed any funds to the

6   Internal Revenue Service, and counselors cannot possibly find evidentiary support

7   for their federal-default claim.

8       Goldwater also lacked independent evidence to prove its allegation that

9   Elizarov was in default of *any* federal debt.  In discovery, Goldwater admitted that

10  Goldwater had *no evidence* to prove this allegation.  Ex. Z, p. 4, RFA 7.  Therefore,

11  counselors lacked an evidentiary basis to support this allegation and violated Rule

12  11 when counselors certified otherwise.[4]

13      ***Marital status***

14      Finally, counselors alleged that Elizarov falsely claimed that Elizarov was

15  "single" when Elizarov had a registered domestic partner.  Ex. OO, p. 5, ¶¶ 25-26.

16  By alleging this claim, counselors certified that (a) Elizarov did not disclose that he

17  had a domestic partner in communications with Goldwater and (b) the information

18  was material to Goldwater's lending decision.  Both certifications were false.

19      Elizarov disclosed his marital status to Gregory Hill in a series of text

20  messages between July 9 and July 11, 2019.  Ex. HH-5; Ex. HH-9.  (See Fig. B on

21  p. 9 and Fig. C on p. 10.)  At Hill's request, Elizarov also sent Hill tax information

22  about Alekseyeff's *mother*.  Ex. X.

23

24  _____

25  [3]    Elizarov does not know why the IRS took nearly two years to release the
    lien when the State of California, which also had a recorded lien, released the lien

26  on January 29, 2018, Document Number 20180089719, following the sale. Ex. Y

27  [4]    Even if counselors can assert some excuse for falsely accusing Elizarov of
    fraud, counselors have since learned the truth and have the duty under Rule 11 to

28  withdraw the allegation.

8

1

## **Figure C**

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24



25

26      These messages and emails unequivocally show that Elizarov not just

27 disclosed his marital status but also identified his partner by name, "Ilya," and even

28 described "Ilya's" creditworthiness.

9

**Figure C**



7/11/19, 3:12 PM

Greg is that going to cause a huge problem

Ilya is saying it's his chase account

Therefore, counselors lacked an evidentiary basis to support the fraud claim and violated Rule 11 when counselors certified otherwise.

In the complaint, counselors alleged that Goldwater relied on Elizarov's failure to disclose his marital status.  This allegation is true *if and only if* a reasonable bank in Goldwater's circumstances would have denied Elizarov's application based on his marital status.  See *Hoffman*, 228 Cal. App. 4th at p. 1194.  On the other hand, if a bank in Goldwater's circumstances could not have legally considered Elizarov's marital status in making the lending decision, then the information was immaterial as a matter of law.

The ECOA *prohibited* Goldwater from soliciting or relying on Elizarov's marital status.

"It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction…on the basis of…marital status… ."  15 U.S.C. § 1691(a)(1).  Under ECOA, "[a] creditor shall not refuse to grant an individual account to a creditworthy applicant on the basis of… marital status… ."  12 C.F.R. § 202.7(a).  "To comply with the statute, "a creditor shall evaluate married and unmarried applicants by the same standards… ."  12 C.F.R. § 202.6(b)(8).

"[A] creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested."  12 C.F.R. 202.7(d)(1).  "A creditor that receives an application for credit primarily for the purchase or refinancing of a dwelling

10

occupied or to be occupied by the applicant as a principal residence, where the extension of credit will be secured by the dwelling" must request information about the applicant's marital status. 12 C.F.R. § 202.13(a)(1)(iii).  However, information about the marital status may be used for "monitoring purposes only," 12 C.F.R. § 202.5(a)(2), the applicant cannot be "required to supply the requested information" about marital status, 12 C.F.R. § 202.13(b).  In fact, creditors like Goldwater are required to inform borrowers like Elizarov that "information regarding ethnicity, race, sex, *marital status*, and age is being requested by the federal government for the purpose of monitoring compliance with federal statutes that prohibit creditors from discriminating against applicants on those bases," 12 C.F.R. § 202.13(c), which Goldwater *did not* do in this case.

Elizarov applied for a mortgage loan.  Although Goldwater had to solicit Elizarov's marital status for statistical purposes, Elizarov had no duty to disclose the information, and Goldwater could not have legally considered it in its lending decision.  Therefore, the information about Elizarov's marital status was *immaterial* to Goldwater's lending decision, and counselors violated Rule 11 when counselors certified otherwise.

## II.     Counselors had no evidentiary or legal basis to allege fraud in the forbearance application

Counselors alleged that Elizarov lied in the forbearance application when Elizarov reported his income as "1,050.00 per week in unemployment benefits" and that Elizarov's "only assets, excluding retirement funds, was $3,500 in cash on hand." EX. OO, p. 6, ¶¶ 39-40.  By alleging this claim, counselors certified that as of May 2020, (a) Elizarov's income *exceeded* $1,050.00 per week, (b) Elizarov's assets *exceeded* $3,500 cash on hand, and (c) Goldwater relied on the information in granting the forbearance request.  These certifications were false.

Goldwater had no evidence at all to show Elizarov's income or assets as of May 2020.  During discovery, Elizarov asked Goldwater to identify all facts on

11

1    which Goldwater based its fraud-in-forbearance claim, including the identification

2    of each false statement and facts showing that the statement was false. Goldwater

3    provided none. Ex. AA, Rog. 2. First, when asked about this issue, Goldwater no

4    longer claimed that Elizarov misrepresented Elizarov's income. Goldwater now

5    only claimed that "Elizarov's statement that his current financial assets only

6    included $3,500 in checking accounts and cash on hand was false… ." Ex. AA

7    (pp. 4-5). Therefore, counselors lacked any evidentiary basis to allege the

8    misrepresentation regarding income. Nor did Goldwater explain what Elizarov's

9    assets actually were. All Goldwater could offer was "evidence of other accounts in

10   Elizarov's name, including the JP Morgan savings account reported on his loan

11   application." Ex. AA (pp. 4-5). But the existence of an account is meaningless.

12   Counselors did not allege that Elizarov failed to identify a bank account or that

13   Goldwater relied on that failure. Counselors instead alleged that Elizarov

14   misrepresented his assets. A bank account is not an asset. Funds on deposit at the

15   bank are assets. Here, after identifying the existence of some mysterious bank

16   account, Goldwater failed to state that Elizarov had more than $3,500 on deposit in

17   that account or that Elizarov had *any funds* in that account at all.

18        Therefore, Goldwater did not have *any evidence* to prove that Elizarov lied

19   about his assets, and counselors violated Rule 11 when counselors certified

20   otherwise.

21        The information was *immaterial* as a matter of law. The CARES Act

22   prohibited Goldwater from demanding or relying on information about Elizarov's

23   income or assets and required Goldwater to grant the request based on the

24   affirmation of hardship alone.

25        On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security

26   Act (CARES Act) Act became law. 134 STAT. 281, Public Law No. 116-136.[5]

27

28   ⁵    See for history and text.

                                    12

Under the CARES Act, "[u]pon a request by a borrower for forbearance…, such forbearance *shall be granted* for up to 180 days, and *shall be extended* for an additional period of up to 180 days at the request of the borrower… ."  15 U.S.C. § 9056(b)(2) (italics added).  "Upon receiving a request for forbearance from a borrower…, the service *shall with no additional documentation required other than the borrower's attestation to a financial hardship caused by the COVID-19 emergency*…, provide the forbearance for up to 180 days, which may be extended for an additional period of up to 180 days at the request of the borrower… ."  15 U.S.C. § 9056(c)(1) (italics added).  The word "shall" as used in the statute implied a mandatory obligation.  *U.S. v. Contreras*, 895 F.2d 1241, 1243 (9th Cir. 1990).  So, to qualify for forbearance under the CARES Act, a borrower like Elizarov merely needed to *attest* to financial hardship but did not have to *prove* the existence of hardship.  Consumer guidance from the Consumer Financial Protection Bureau made this point clear as well: "You are not required to submit documentation to prove your financial hardship to enter a forbearance under the CARES Act."  Ex. DD (p. 2, highlighted).  As did Fannie Mae: "The CARES Act states that a forbearance plan must be provided to any borrower who requests a forbearance with an attestation of the financial hardship caused by the COVID-19 emergency; and no additional documentation other than the borrower's attestation to a financial hardship caused by the COVID-19 emergency is required."  Ex. CC (p. 7, highlighted).  Fannie Mae also explained that Form 710 – the forbearance application that Goldwater asked Elizarov to complete – cannot be used in connection with the Covid-19 forbearance requests.  Ex. DD[6].  Even Form 710

---

[6]  https://servicing-guide.fanniemae.com/COVID-19/COVID-FAQs/1957530251/Is-Form-710-Mortgage-Assistance-Application-required-to-verify-hardship-for-putting-a-borrower-on-a-COVID-19-related-forbearance-plan.htm, accessed 07/26/2022

MEMORANDUM SUPPORTING MOTION FOR SANCTIONS UNDER
RULE 11

itself also stated that no documentation was required to qualify for a disaster-related forbearance.  Ex. KK-2 (application, highlighted).

Elizarov requested forbearance and affirmed that the forbearance was based on a disaster.  Ex. KK-2.  The CARES Act required Goldwater to grant the forbearance based on the affirmation alone.  Although Elizarov also disclosed his income and assets, that information was *not* required, and Goldwater could not have considered or relied on the information in making the forbearance decision.

Therefore, the information regarding Elizarov's income and assets in May 2020 was *immaterial* as a matter of California law, and counselors violated Rule 11 when counselors certified otherwise.

## III.   Counselors had no evidentiary or legal basis to allege fraud during settlement negotiations

Goldwater alleged that (a) on March 25, 2021, Elizarov offered to pay Goldwater $675,000 from the sale proceeds because the proceeds would be insufficient to pay off all outstanding lien, including a mechanic's lien of $107,270.00, and (b) Elizarov made the representations "with the intent that Goldwater would rely on the misrepresentations and not interfere with the sale." EX. OO, pp. 7-8, ¶¶ 51-59.

At that time, Elizarov did not know that Goldwater had not recorded its deed of trust.  Elizarov learned this fact by email from escrow officer Andrea Cross at 2:00 pm on March 25, 2021. Ex. LL.

Goldwater had no evidence to prove fraudulent intent.  Goldwater admitted that it had no evidence to show that Elizarov made the allegedly false representations because Elizarov wanted to prevent Goldwater from interfering with the sale rather than because Elizarov wanted to pay Goldwater less.  Ex. Z, p. 54, RFA 191.  Therefore, counselors had no evidentiary basis to support this allegation.

\\\

14

1   Counselors also alleged the claim with no legal basis because California did

2   not allow Goldwater to enforce an unenforceable agreement by means of a fraud

3   claim.

> [A]n action for fraud cannot be maintained where the allegedly fraudulent
> promise is unenforceable as a contract due to the statute of frauds. The rule
> was stated in *Kroger* v. *Baur* (1941) 46 Cal.App.2d 801, 803, as follows:
> "Appellant contends that his action is not upon the invalid agreement, but is
> an action for damages for fraud, upon the theory that the oral promise to pay
> him a commission was made without any intention of performing it and for
> the purpose of inducing him to waive a written memorandum. If the law can
> be thus nullified by the transparent device of predicating a tort action upon
> the invalid oral promise on the ground that the promisor did not intend to
> perform it, then the section might just as well be stricken from the statute.
> To license such a circuitous procedure to evade the provisions of such
> legislation would be to nullify and destroy its wholesome effect and the
> protection it affords against fraud."

*Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 29 (Cal. 1985), internal citations omitted.

The settlement negotiations did not result in an enforceable agreement.

**First,** Goldwater explicitly denied that "the discussions [between Goldwater

and Elizarov regarding the payoff] progressed to the stage where it was an offer to

extinguish pre-existing debt… ." Ex. Z, p. 17, RFA # 54.  See *999 v. C.I.T. Corp.*,

776 F.2d 866, 869 (9th Cir. 1985) ("any matter admitted in response to a request

for admission is 'conclusively established'"); Fed. R. Civ. P. 36(b).  Therefore, by

Goldwater's admission, no enforceable agreement between the parties was ever

formed.

**Second,** Elizarov's alleged oral promise to pay Goldwater is unenforceable

under the statute of frauds.  Under California law, an interest for the sale of an

interest in real property must be in writing and subscribed by the party to be

charged.  Cal. Civ. Code, § 1624, subd. (a)(4).  "A mortgage or deed of trust also

comes within the statute of frauds." *Secrest v. Security National Mortgage Loan*

15

*Trust 2002-2*, 167 Cal.App.4th 544, 552 (Cal. Ct. App. 2008). "An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds." *Id.* So, an agreement to modify the terms of an existing mortgage loan must be in writing and signed by the parties. *Id.* Accord, *Awani v. Nationstar Mortg. LLC*, B282732, at \*22 (Cal. Ct. App. June 25, 2019) ("an agreement to modify a mortgage loan must be in writing and signed by the party to be charged, otherwise it is not enforceable under California's statute of frauds"); *Mejia v. Bank of Am., N.A.*, B257879, at \*17 (Cal. Ct. App. Apr. 29, 2016) ("because a mortgage agreement or deed of trust is required to be in writing, an agreement for modification of the debt must also be in writing.")

Here, the parties proposed to modify the terms of the note and reduce the principal amount to $675,000.00. This agreement had to be in writing and signed by Elizarov to be enforceable. But Elizarov never signed any such writing. Ex. Z, p. 19, RFA # 61. Therefore, no enforceable agreement was realized from the parties' negotiations.

***Third,*** Elizarov's promise to pay Goldwater less than Elizarov owed was unenforceable for lack of consideration. "Without an honest dispute an agreement to take a lesser amount in payment for the liquidated claim is without consideration and void." *Berger v. Lane,* 190 Cal. 443, 448 (Cal. 1923). In order for there to be an accord and satisfaction, "there must first be a 'bona fide dispute' between the parties regarding the amount owed." *Teledyne Mid-America Corp. v. HOH Corp.*, 486 F.2d 987, 992 (9th Cir. 1973). Here, Elizarov did not allegedly promise to pay $675,000 because of a bona fide dispute regarding the amount owed. Elizarov promised to pay less because of a conflicting mechanic's lien. Therefore, the contract required consideration. Here, Goldwater received none. Therefore, the contract was unenforceable for lack of consideration.

Goldwater's fallback position – that Elizarov lied about the mechanic's lien – similarly fails. Goldwater did not allege that Goldwater relied on Elizarov's

16

representation regarding the lien.  Goldwater instead alleged *under oath* that
Goldwater relied on both the "representations about the insufficiency of the
proceeds to pay off the Goldwater Loan in full *and* the promise that Goldwater
would nevertheless receive a $675,000 payout… ."  EX. OO, p. 8, ¶¶ 58-59, italics
added.  See also EX. OO, p. 13, ¶ 98 ("Elizarov made…misrepresentations that the
sale of the Subject Property would result in insufficient proceeds to pay off the
Goldwater Loan in full *and* that Goldwater would nevertheless receive a payout of
$675,000.00," italics added).  The allegedly false claim regarding the mechanic's
lien alone did not compel Goldwater to do anything.  Goldwater did not have to
accept less than owed regardless of Elizarov's other liens.  Rather, Goldwater
chose "not [to] interfere with the sale of the [Palm Springs house] or rush to record
its Deed of Trust" because Elizarov promised to pay $675,000.  EX. OO, p. 13, ¶
102.  The mechanic's lien was not the impetus for Goldwater's alleged failure to
act; the promise to pay $675,000 was.  The representation regarding the
mechanic's lien was the *reason* for the reduced amount, which ultimately
influenced Goldwater's actions.

Therefore, Goldwater's creative pleadings notwithstanding, the gravamen of
Goldwater's action against Elizarov is based on the failure to pay $675,000 from
the sale proceeds.  That agreement was unenforceable.  A claim of fraud could not
be used as a substitute.  Therefore, the claim was not viable as a matter of law.

Goldwater also suffered no direct reliance damages because Goldwater
would not have received any funds from the sale of the house *even if* Elizarov
engaged in no settlement discussions and made no representations to Goldwater.

To support a claim of fraud, "A 'complete causal relationship' between the
fraud or deceit and the plaintiff's damages is required."  *Williams v. Wraxall* (1995)
33 Cal.App.4th 120, 132 (Cal. Ct. App. 1995), internal citations omitted.  "If the
defrauded plaintiff would have suffered the alleged damage even in the absence of
the fraudulent inducement, causation cannot be alleged and a fraud cause of action

17

1  cannot be sustained." *Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 1008

2  (Cal. Ct. App. 2016).

3  Here, Goldwater would not have received anything from the sale *even if*

4  Elizarov had never engaged in settlement discussions with Goldwater. At the

5  hearing on May 3, 2021, Bast could explain why Goldwater didn't record the deed

6  of trust "as soon as it realized that it had been unrecorded." Ex. MM-5. Bast also

7  could not even state the exact date when Goldwater discovered that the deed had

8  not been recorded. Ex. MM-5. These evasive answers are telling because

9  Goldwater located and recorded the deed of trust in Riverside County on April 20,

10  2021, two weeks prior to Bast's appearance in court. Ex. FF. By then, Bast should

11  have known exactly when and how Goldwater discovered that the deed of trust had

12  not been recorded. And yet Bast could only say that Goldwater learned that the

13  deed had not been recorded around March 24, 2021, when Escrow of the West

14  stopped communicating with Goldwater. Ex. MM-5-6.

15  These circumstances make it clear that Goldwater discovered its grievous

16  and incompetent error – the failure to record the deed of trust – only because

17  Elizarov had chosen to engage in settlement discussions. Had Elizarov never

18  reached out to Goldwater about a compromise, Goldwater would not have

19  discovered its error until *after* the transaction closed without a payout to

20  Goldwater. It means, of course, that even if Elizarov did not make allegedly false

21  representations about a mechanic's lien or promise to pay Goldwater $675,000,

22  Goldwater would have been in the same exact position: with no payoff after the

23  sale of the house. And if Goldwater would have been in the same position – and

24  would have suffered the same damages – regardless of Elizarov's allegedly false

25  representations, then Goldwater suffered no reliance damages as a direct result of

26  the representations.

27  \\\

28

18

1  Therefore, Elizarov's representations did not substantially cause Goldwater
2  any damages, and counselors violated Rule 11 when counselors certified
3  otherwise.

4  **IV.   Counselors had no evidentiary or legal basis to allege the conspiracy**
5  **claim**

6  " 'The basis of a civil conspiracy is the formation of a group of two or more
7  persons who have agreed to a common plan or design to commit a tortious act.'
8  The conspiring defendants must also have actual knowledge that a tort is planned
9  and concur in the tortious scheme with knowledge of its unlawful purpose.
10 [Citations.]  However, actual knowledge of the planned tort, without more, is
11 insufficient to serve as the basis for a conspiracy claim.  Knowledge of the planned
12 tort must be combined with intent to aid in its commission. 'The sine qua non of a
13 conspiratorial agreement is the knowledge on the part of the alleged conspirators of
14 its unlawful objective and their intent to aid in achieving that objective.'" *Kidron*
15 *v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1582 (Cal. Ct. App. 1995),
16 internal citations omitted.  Finally, "[a] cause of action for civil conspiracy may not
17 arise . . . if the alleged conspirator, though a participant in the agreement
18 underlying the injury, was not personally bound by the duty violated by the
19 wrongdoing . . . ." *Doctors' Co. v. Superior Court*, 49 Cal.3d 39, 44 (Cal. 1989).
20 "Conspiracy is not an independent tort; it cannot create a duty or abrogate an
21 immunity.  It allows tort recovery only against a party who already owes the duty
22 and is not immune from liability based on applicable substantive tort law
23 principles. " *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503,
24 514 (Cal. 1994), citing *Doctor's Co.*

25 When they alleged the conspiracy claim, counselors certified that they had
26 evidence to show that (a) Elizarov was aware that Elizarov planned to misrepresent
27 material facts to Goldwater, (b) agreed with Elizarov and intended that Elizarov

28

19

1    misrepresent material facts to Goldwater, and (c) owed an independent duty to
2    Goldwater to tell the truth.  None of these facts were true.  CACI 3600.

3          Alekseyeff did not conspire with Elizarov.  Alekseyeff did not read
4    Elizarov's loan application or Elizarov's forbearance application before Elizarov
5    submitted those to Goldwater; did not know what information Elizarov disclosed in
6    the application; and did not encourage Elizarov to report any false information to
7    Goldwater.  Similarly, Alekseyeff was not involved in Elizarov's subsequent
8    negotiations with Goldwater, did not know what Elizarov represented to
9    Goldwater, and did not encourage Elizarov to report any false information to
10   Goldwater during those negotiations.  Finally, Alekseyeff had no prior relationship
11   with Goldwater and, therefore, owed no duty to make any representations to
12   Goldwater, truthful or not.  Although Alekseyeff contacted WestStar as Elizarov's
13   attorney, Alekseyeff only contacted WestStar to discuss the illegal negative credit
14   reports that WestStar continued to submit during the period of forbearance.
15   Alekseyeff did not discuss any of the information that Elizarov included in the
16   forbearance application.

17         Therefore, counselors had no basis to allege a claim of fraud against
18   Alekseyeff.

19         Goldwater also had no evidence to prove these facts.  In discovery,
20   Goldwater admitted that Goldwater had no evidence to show that Alekseyeff knew
21   or planned to help Elizarov include any false information in the loan application,
22   Ex. Z, pp. 27-33, 34-37, FRAs 91-115, 118-130; or in the forbearance application,
23   Ex. Z, pp. 38-45, 46-47, RFAs 132-157, 161-162; or during settlement discussions,
24   Ex. Z, pp. 48-54, RFAs 167-171, 173-181, 184-190.  Goldwater also admitted that
25   Alekseyeff had never discussed the loan application with Goldwater, Ex. Z, pp. 33-
26   34, RFAs 116-117; had never directly participated in the settlement discussions,
27   Ex. Z, p. 47, RFA 166; and had never discussed the settlement negotiations with
28   Goldwater, Ex. Z, p. 52, RFAs 182-183.

1    Therefore, counselors lacked an evidentiary basis to support the conspiracy

2    claim and violated Rule 11 when counselors certified otherwise.

3    Alekseyeff also owed no duty to provide any information to Goldwater.

4    Alekseyeff had no relationship with Goldwater and, therefore, owed no duty to

5    provide information to Goldwater. See *Hoffman v. 162 N. Wolfe LLC*, 228

6    Cal.App.4th 1178, 1190 n.12 (Cal. Ct. App. 2014) ("[Defendant] had no

7    relationship with [plaintiff] and owed no duty to him upon which a claim for

8    nondisclosure/suppression of facts may be based").

9    Therefore, the claim of conspiracy was not warranted by California law, and

10   counselors violated Rule 11 when counselors certified otherwise.

11   **V.    The allegations in the complaint conclusively negate a claim for "unjust**

12   **enrichment"**

13   Under California law, "constructive or resulting trust… is a remedial device

14   created to prevent unjust enrichment." *Fleishman v. Blechman,* 148 Cal.App.2d

15   88, 93 (Cal. Ct. App. 1957). "Under … California … law, unjust enrichment is an

16   action in quasi-contract, which does not lie when an enforceable, binding

17   agreement exists defining the rights of the parties." *Paracor Finance, Inc. v. Gen.*

18   *El. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (citing *Wal-Noon Corp. v. Hill*,

19   45 Cal.App.3d 605, 613 (Ct.App. 1975); accord, *Robert P. Mosier, Grp. Inc. v.*

20   *Stonefield Josephson, Inc.*, 815 F.3d 1161, 1172 (9th Cir. 2016) ("[A]s a matter of

21   law, a quasi-contract action for unjust enrichment does not lie where, as here,

22   express binding agreements exist and define the parties' rights") (citing *Cal. Med.*

23   *Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.,* 94 Cal.App.4th 151, 172 (Cal.

24   Ct. App. 2001)); *McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*, 339

25   F.3d 1087, 1089 (9th Cir. 2003) ("The equitable remedy McKesson seeks —

26   recovery for unjust enrichment — is potentially available only if there is no

27   governing contract between the parties"). The court has previously agreed with

28

these principles.  Ex. NN, p. 3 (highlighted) ("Mr. Elizarov is correct in arguing that a party cannot recover under both express contract and quasi-contract").

When counselors alleged this claim, counselors certified that counselors can establish that Goldwater's contract with Elizarov was unenforceable.  That certification was false.  ***First***, Goldwater admitted, under oath, in its complaint that "[t]he Note and the Deed of Trust is [sic] a valid and binding contract between the parties."  EX. OO, p. 11, ¶ 85.  Under the doctrine of judicial admission, these allegations in Goldwater's pleadings "are conclusively binding" on Goldwater.  *Spokane Law Enforcement Fed. Credit Union v. Barker (In re Barker)*, 839 F.3d 1189, 1195 (9th Cir. 2016) (internal citations omitted). See also *Perez-Mejia v. Holder*, 641 F.3d 1143, 1151 (9th Cir. 2011) ("Factual assertions in pleadings . . . are considered judicial admissions conclusively binding on the party who made them").  ***Second***, Goldwater also admitted in discovery that the contract was valid and enforceable.  Ex. Z, p. 25, RFAs 81-84.

Therefore, the claim for unjust enrichment is not warranted by existing law, and counselors violated Rule 11 when counselors certified otherwise.

## VI.    Counselors had no evidentiary or legal basis to allege the fraudulent-transfer claim

In June of 2020, Alekseyeff borrowed $80,000 from Shatar Capital secured by a deed of trust.  Ex, G; Ex. BB.  The loan carried interest-only payments and a balloon payment of $80,000 due on December 31, 2020. Ex. BB.  Following unsuccessful attempts to re-finance the loan, Alekseyeff paid $84,843.22 to satisfy the outstanding balance and accrued interest.  Ex. H.  Shatar Capital subsequently released the lien.  Ex. J.  Elizarov's decision to prefer Shatar over Goldwater was not made with fraudulent intent.

"A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the

22

obligation…[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code, § 3439.04, subd. (a).

> [F]or over 400 years, the rule has been that an insolvent or failing debtor can prefer one creditor over another. [Citation]. Civil Code section 3432, enacted in 1872, provides, "A debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand in preference to another." This is because " '. . . it is difficult to perceive how the payment of a debt which [is] justly owed, and which was past due, can be tortured into an act to hinder, delay, and defraud creditors[.]' [Citation.]" [Citation]. Therefore, a preferential transfer, made for proper consideration, although made with the recognition that the transfer will prevent another creditor from collecting on his debt, "is not for that reason a transfer made to 'hinder, delay or defraud'" that creditor.

*Lyons v. Security Pacific Nat. Bank*, 40 Cal.App.4th 1001, 1019-20 (Cal. Ct. App. 1995), internal citations omitted.  So, "[t]he applicable rule is that payment of a debt cannot be deemed 'an act to hinder, delay, and defraud creditors,' even if the transfer is to an insider, and even if the transfer will prevent another creditor from collecting on his debt." *City of Los Angeles v. Conway*, No. B205763, at *1 (Cal. Ct. App. Jan. 4, 2010). See also *Wyzard v. Goller*, 23 Cal.App.4th 1183, 1185 (Cal. Ct. App. 1994) ("an encumbrance by a debtor to an attorney, made for value in the form of an antecedent obligation for legal services, is not fraudulent as to another creditor, under applicable provisions of the Uniform Fraudulent Transfer Act [Citation], and that this is true even though the transfer was a preference that resulted in the debtor being unable to satisfy debts of other creditors."); *Hultman v. Tevis*, 82 F.2d 940 (9th Cir. 1936) (payments made to the bankrupt's son to repay a pre-existing debt were not made with fraudulent intent.)  Stated differently, "the law of this state expressly permits a debtor to pay one creditor in preference to another [Citation] and while under certain circumstances, a transfer resulting in a preference may be set aside for the benefit of all creditors in a bankruptcy proceeding, such transfer may not be set aside in action of this kind [under

23

1   Fraudulent Transfers Act] solely because a preference may have resulted." *Millard*
2   *v. Epsteen*, 58 Cal.App.2d 612, 616 (Cal. Ct. App. 1943).

3          Here, Elizarov paid a legitimate debt that Alekseyeff incurred nearly a year
4   before Elizarov sold the property and which became due three months before the
5   sale.  Therefore, this transfer was not made with the intent to hinder, delay, or
6   defraud Goldwater.  Elizarov merely preferred another lender – Shatar Capital –
7   over Goldwater.  California law explicitly allowed Elizarov (and Alekseyeff) to
8   make this preferential payment.

9          Therefore, the claim was not warranted by California law, and counselors
10  violated Rule 11 when counselors alleged otherwise.

11  **VII.   Sanctions**

12         "District courts have broad discretion to sanction a party or attorney under
13  Rule 11." *Crossfit Inc. v. Martin*, No. CV-14-02277-PHX-JJT, at *8 (D. Ariz. Sep.
14  22, 2017), citing *Barber v. Miller*, 146 F.3d 707, 709 (9th Cir. 1998).  Monetary
15  sanctions may be appropriate so long as the sanctions are calculated "to deter
16  baseless filings and dilatory or abusive pretrial tactics." *In re Keegan Management*
17  *Co., Securities Litigation*, 154 F.R.D. 237, 243 (N.D. Cal. 1994), citing cases.
18  "Sanctions for violation of Rule 11(b) may [also] include dismissal of the
19  plaintiff's case."  *Hammler v. Dir. of CDCR*, No. 2:17-cv-1949 MCE DB P, at *4
20  (E.D. Cal. June 12, 2019).  Here, Elizarov asks the court to dismiss the baseless
21  allegations of fraud, fraudulent transfer, and unjust enrichment; order counsel to
22  self report the violation to their respective bar associations; and impose a
23  reasonable sanction to compensate Elizarov for litigating these baseless
24  allegations.

25                          **CONCLUSION**

26         The court should grant the motion because the allegations in the complaint
27  lacked evidentiary support and were not warranted by existing law.

28

                                    24

1    Dated: 08/08/2022                          LOIA, INC. (APLC)
2
3                                               By: Ilya Alekseyeff, Esq.
4                                               Attorney for Artur Elizarov
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM SUPPORTING MOTION FOR SANCTIONS UNDER
RULE 11

# CERTIFICATE OF SERVICE

I, Ilya Alekseyeff, certify that on August 8, 2022, I served the attached "MEMORANDUM SUPPORTING MOTION FOR SANCTIONS UNDER RULE 11" by mail as follows:

| | |
|---|---|
| Derek Bast<br>Wagner Hicks, PLLC<br>831 E Morehead St Ste 860<br>Charlotte, NC 28202 | Joseph LeVota<br>Hilbert Satterly LLP<br>409 Camino del Rio St Ste 104<br>San Diego, CA 92108 |
| Marie Maurice<br>Ivie McNeill Wyatt Purcell & Diggs,<br>444 S Flower St Fl 18<br>Los Angeles, CA 90071-2919 | |

I further certify that on that on August 8, 2022, I also served the attached "MEMORANDUM SUPPORTING MOTION FOR SANCTIONS UNDER RULE 11" by email as follows:

1.  Derek Bast, derek.bast@waghernicks.law
2.  Marie Maurice, mmaurice@imwlaw.com
3.  Joseph LeVota, jlevota@hscallaw.com
4.  Ryan Thomason, rthomason@hallgriffin.com
5.  Nabil Bisharat, nbisharat@orsusgate.com

I declare under penalty of perjury under the laws of the United States that the above certification is true and correct.

Date: 08/08/2022                Signature: *Ilya Alekseyeff*