



# Lender Letter (LL-2020-02)

*Please note this Lender Letter has been replaced by LL-2021-02*

**Updated: Dec. 9, 2020**
Oct. 14, 2020
Aug. 27, 2020
Jul. 15, 2020
Jun. 24, 2020
Jun. 10, 2020
May 14, 2020
Apr. 29, 2020
Apr. 8, 2020
Mar. 25, 2020
Mar. 18, 2020

## To: All Fannie Mae Single-Family Servicers
## Impact of COVID-19 on Servicing

We are actively monitoring reports about the spread of COVID-19 (coronavirus) in the United States and understand that there are concerns about its potential impact on borrowers. At the direction of the Federal Housing Finance Agency (FHFA) and in alignment with Freddie Mac, we are communicating temporary policies in this Lender Letter to enable servicers to better assist borrowers impacted by COVID-19. The policies in this Lender Letter are effective immediately and are effective until Fannie Mae provides further notice, unless otherwise stated.

**We are releasing information to our servicers as quickly as possible and will update and republish this Lender Letter as new guidance becomes available.**

Additions to Lender Letter on Dec. 9

- Mortgage Insurance Termination: Temporary policy change related to verifying an acceptable payment record for borrowers that experience a financial hardship related to COVID-19.

  We also extended suspension of foreclosure activities.

Additions to Lender Letter on Jul. 15, updated Oct. 14

- Disbursing insurance loss proceeds: Clarifying servicer requirements related to disbursing insurance loss proceeds for borrowers impacted by COVID-19.

- Impact of COVID-19 on Fannie Mae Home Affordable Modification Program (HAMP) "Pay for Performance" incentives: Clarifying when a borrower on a COVID-19 related forbearance plan maintains good standing. **UPDATED Oct. 14** to clarify when a borrower impacted by COVID-19 remains eligible for any future HAMP "Pay for Performance" incentives.

Additions to Lender Letter on Jun. 24

- Modifying seller/servicer financial liquidity requirements for mortgage loans in forbearance: Temporary policy change for calculating non-depository seller/servicer eligibility minimum liquidity requirement for mortgage loans in forbearance due to COVID-19.

Additions to Lender Letter on Jun. 10

- Sending a payment reminder notice: Clarifying that the servicer is authorized to not send a payment reminder notice to the borrower during an active forbearance plan term.

Additions to Lender Letter on May 1

- Reclassification of MBS mortgage loans: Updating our reclassification process for mortgage loans pooled under the Amended and Restated 2007 Single-Family Master Trust Agreement in response to the Coronavirus Aid, Relief, and Economic Security Act on Mar. 27, 2020 ("CARES Act"), when a borrower impacted by COVID-19 is provided a forbearance plan.

Additions to Lender Letter on Apr. 29

- Principal & interest advances on delinquent mortgage loans: In response to a recent news release from FHFA, we are informing servicers of our intent to limit servicer obligations to advance scheduled monthly principal

**Exhibit CC - 1**



and interest payments for certain delinquent loans.

Additions to Lender Letter on Apr. 8

- **Complying with law**: In response to the recent enactment of the CARES Act, we are updating certain servicing requirements and reminding servicers of their responsibility to comply with law.

Additions to Lender Letter on Mar. 25, updated Apr. 8, May 14, Jul. 15

- **Attempting to establish QRPC**: Reminding servicers of acceptable methods in attempting to achieve quality right party contact (QRPC). **UPDATED Apr. 8** in response to the CARES Act to clarify the servicers responsibilities related to achieving QRPC for a borrower impacted by COVID-19 for a forbearance plan.

- **Reporting a reason for delinquency code**: Providing a specific "reason for delinquency" code for use in reporting a delinquent mortgage loan associated with a borrower impacted by COVID-19 to Fannie Mae. **UPDATED Jul. 15** to clarify reporting the "reason for delinquency" code when the borrower experiences concurrent hardships.

- **Property inspections and preservation**: Providing flexibility with regard to inspections and preservation in light of COVID-19 concerns. **UPDATED May 14** to clarify when the servicer must not complete property inspections and preservation activities for a property securing a mortgage loan where the borrower is experiencing a hardship related to COVID-19.

- **Submission of financial statements and reports**: Extending the deadline for submission of financial statements and Form 582 to Apr. 30, 2020.

Lender Letter content published Mar. 18, updated Mar. 25, Apr. 8, May 14, Jun. 24, Aug. 27, Dec. 9

- **Forbearance plan terms**: Expanding eligibility for a forbearance plan for borrowers impacted by COVID-19. **UPDATED Apr. 8** in response to the CARES Act to clarify the servicers responsibilities related to providing a forbearance plan to a borrower impacted by COVID-19.

- **Evaluating the borrower for a payment deferral or mortgage loan modification after a forbearance plan**: Clarifying the mortgage loan modifications that must be considered near the conclusion of a forbearance plan term. **UPDATED Mar. 25** to require that a borrower be evaluated for payment deferral prior to these mortgage loan modifications. **UPDATED Apr. 8** to eliminate the requirement that the servicer determine the occupancy status of the property when achieving QRPC and evaluating a borrower impacted by COVID-19 for a workout option prior to expiration of the forbearance plan. **UPDATED May 14** to clarify the evaluation hierarchy with the introduction of COVID-19 payment deferral and to reflect the effective date of the National Emergency declaration related to COVID-19 in the eligibility criteria (rather than the declaration date of Mar. 13).

- **Credit bureau reporting**: Clarifying that servicers must suspend credit reporting when the hardship is related to COVID-19. **UPDATED Apr. 8** to require that the servicer comply with the requirements of the Fair Credit Reporting Act ("FCRA"), as amended by the CARES Act for borrowers affected by the COVID-19 pandemic.

- **Suspension of foreclosure activities and certain bankruptcy requirements**: Instructing servicers to not allow any foreclosure sales within the next 60 days. **UPDATED Apr. 8** to require that the servicer suspend foreclosure-related activities in accordance with the requirements of the CARES Act and suspend the requirement that servicers file motions for relief from the automatic stay in bankruptcy cases. **UPDATED May 14** to extend the suspension of foreclosure-related activities and the requirement that servicers file motions for relief from the automatic stay in bankruptcy cases. **UPDATED Jun. 24** to extend the suspension of foreclosure-related activities. **UPDATED Aug. 27** to extend the suspension of foreclosure-related activities. **UPDATED Dec. 9** to extend the suspension of foreclosure-related activities.

- **Additional resources**: Providing information about our Disaster Response Network as a reference for Fannie Mae borrowers and a listing of COVID-19 policy communications and resources.

Exhibit CC - 2

© 2020 Fannie Mae   LL-2020-02   Page 2 of 11



## Mortgage Insurance Termination

When verifying an acceptable payment record for a borrower that has had a financial hardship related to COVID-19 in which the servicer provided

- a COVID-19 related forbearance plan, repayment plan, or Trial Period Plan and the borrower complied with the terms of such plan;
- a payment deferral; or
- a COVID-19 payment deferral and the borrower made three consecutive monthly payments following completion of the payment deferral,

the servicer must not consider any payment that is 30 or more days past due in the last 12 months, or 60 or more days past due in the last 24 months that is attributable to the COVID-19 financial hardship. The mortgage loan must be current when the termination is requested, which means the mortgage loan payment for the month preceding the date of the termination request was paid.

> **N O T E:** *These requirements apply when reviewing the borrower's request for termination of conventional MI based on either original or current value of the property.*

This policy change is effective for borrower-initiated requests for termination initiated through Fannie Mae's servicing solutions system on or after March 1, 2021. For assistance prior to that date, contact loss_mitigation@fanniemae.com.

## Disbursing insurance loss proceeds UPDATED Oct. 14

In response to servicer inquiries and in an effort to repair properties that experience an insured loss event as expeditiously as possible, we are updating our requirements for determining the mortgage loan status for disbursing insurance loss proceeds for a borrower impacted by COVID-19. The servicer must consider the loan to be current or less than 31 days delinquent for purposes of disbursing insurance loss proceeds if

- the borrower experienced a COVID-19 related hardship;

- the mortgage loan was current or less than two months delinquent as of Mar. 1, 2020, the effective date of the National Emergency declaration related to COVID-19; and

- at the time of the loss event, the borrower is performing on a COVID-19 related forbearance plan, repayment plan, or Trial Period Plan.

The servicer must otherwise disburse the proceeds in accordance with *Servicing Guide* B-5-01, Insured Loss Events.

The servicer must document in the mortgage loan servicing file the date that the COVID-related hardship began and the date of the insured loss event.

## Impact of COVID-19 on Fannie Mae Home Affordable Modification Program (HAMP) "Pay for Performance" incentives UPDATED Oct. 14

In LL-2020-07, COVID-19 Payment Deferral, we clarified that if the mortgage loan was previously modified pursuant to a HAMP modification under which the borrower remains in "good standing," then the borrower will not lose any "pay for performance" incentives if the borrower was on a COVID-19 related forbearance plan or had a COVID-19 related hardship immediately preceding the COVID-19 payment deferral. We are clarifying that, additionally, the borrower will not lose any future HAMP "pay for performance" incentives if the borrower

- immediately reinstates the mortgage loan upon expiration of the COVID-19 related forbearance plan, or

- transitions directly from a COVID-19 related forbearance plan to a repayment plan.



## Modifying seller/servicer financial liquidity requirements for mortgage loans in forbearance

In response to the national emergency, we are announcing a temporary modification of the non-depository seller/servicer minimum liquidity requirement for seriously delinquent (SDQ) mortgage loans. We are implementing the changes indicated below beginning with the financial quarter ending Jun. 30, 2020.

As stated in *Selling Guide* A4-1-01, Maintaining Seller/Servicer Eligibility, the minimum liquidity requirement is equal to 0.035% of the unpaid principal balance (UPB) of mortgage loans serviced by a non-depository seller/servicer for Fannie Mae, Freddie Mac, and Ginnie Mae if the Agency SDQ rate is 6% or less. If the Agency SDQ rate is above 6%, the seller/servicer must also maintain at least an SDQ add-on of 2% of the UPB of Agency SDQ rate over 6%.

Under the existing seller/servicer eligibility requirements, the Agency SDQ Rate is defined as 100 multiplied by (the UPB of mortgage loans 90 days or more delinquent or in foreclosure for Fannie Mae, Freddie Mac, and Ginnie Mae/Total UPB of mortgage loans serviced for Fannie Mae, Freddie Mac, and Ginnie Mae). Beginning with the financial quarter ending Jun. 30, 2020, the Agency SDQ Rate will include an adjustment for mortgage loans in a COVID-19-related forbearance plan that are 90 days or more delinquent and were current at the inception of the COVID-19-related forbearance plan. The UPB of such mortgage loans shall be multiplied by .30 and added to the UPB for SDQ mortgage loans for the purposes of determining the numerator in the calculation of the Agency SDQ Rate. Refer to the Appendix link for examples.

When the COVID-19-related forbearance period ends for a mortgage loan, the mortgage loan's status will become subject to, by the end of the quarter following the end of the COVID-19 related forbearance period, the minimum financial seller/servicer eligibility requirements in place at that time.

To accommodate these changes, the Mortgage Bankers Financial Reporting Form (MBFRF) Form 1002) will be modified by Jun. 30, 2020 to capture forbearance activity.

## Sending a payment reminder notice

*Servicing Guide* D2-2-03, Sending a Payment Reminder Notice requires the servicer to send a payment reminder notice to the borrower no later than the 17th day of delinquency if the payment has not been received.

In response to servicer inquiries, we are clarifying that the servicer is authorized to not send a payment reminder notice to the borrower during an active forbearance plan term. This applies to active forbearance plans without regard to whether the borrower's monthly payment is reduced or suspended during the forbearance plan term.

## Reclassification of MBS mortgage loans

The Amended and Restated 2007 Single-Family Master Trust Agreement (the "2007 Trust Agreement") applies to MBS mortgage loans with pool issue dates on or after June 1, 2007 through December 1, 2008. As described in F-1-26, Reclassifying or Voluntary Repurchasing an MBS Mortgage Loan and in accordance with the 2007 Trust Agreement, we remove such mortgage loans from the MBS pool after the sixth consecutive month of continuing forbearance. Selection for reclassification is based on the servicer's monthly delinquency status reporting to Fannie Mae.

 In response to the CARES Act, we are updating our reclassification process for mortgage loans in these MBS pools when a borrower impacted by COVID-19 is provided a forbearance plan. Such mortgage loans will not be removed from the MBS pool for the duration of the forbearance plan under the CARES Act, in accordance with the 2007 Trust Agreement, which permits mortgage loans to remain in trust longer than six consecutive months when the forbearance plan is required by applicable law.

 These changes will be effective beginning with the June 2020 monthly delinquency status reporting cycle and will apply when the servicer reports delinquency status code 09 (Forbearance) and reason for delinquency code 022 (Energy-Environment Costs), as reassigned pursuant to this Lender Letter for reporting a hardship associated with COVID-19.



### Principal & interest advances on delinquent mortgage loans

*Servicing Guide* A2-1-01, General Servicer Duties and Responsibilities requires the servicer of a scheduled/scheduled or scheduled/actual remittance type mortgage loan to remit funds to us when scheduled to be remitted even when these funds are not actually collected.  The servicer is required to remit the scheduled funds until the mortgage loan becomes current, is removed from our active accounting records, or is purchased from the MBS trust, as applicable.

In response to the national emergency, FHFA published a News Release on Apr. 21, 2020, *FHFA Addresses Servicer Liquidity Concerns, Announces Four Month Advance Obligation Limit for Loans in Forbearance*, aligning policies between Fannie Mae and Freddie Mac to limit servicer obligations to advance scheduled monthly payments to four months for scheduled/scheduled remittance type mortgage loans. We are currently evaluating operational changes to discontinue servicer advances of scheduled remittances of principal and interest payments for delinquent scheduled/scheduled remittance mortgage loans (delinquency advances) after the four consecutive missed monthly payments for mortgage loans serviced under the special servicing option. These changes will become effective for Aug. 2020 remittance activity (based on Jul. 2020 reporting activity). Additional guidance will be provided in the coming weeks.  For further details, refer to LL-2020-08, Changes to Servicer Principal and Interest Advance Requirements.

### Complying with law

In response to the CARES Act, Fannie Mae is updating requirements relating to forbearance plans, achieving QRPC with a borrower in regard to a forbearance plan, credit bureau reporting, and suspension of foreclosure activities and certain bankruptcy requirements. Servicers are reminded that in accordance with *Servicing Guide* A2-1-08, Compliance with Requirements and Laws, they must comply with applicable law even where a provision of the *Servicing Guide* may conflict with applicable law.

### Attempting to establish QRPC UPDATED Apr. 8, May 14, Jul. 15

As described in *Servicing Guide* D2-2-01, Achieving Quality Right Party Contact with a Borrower, QRPC is a uniform standard for communicating with the borrower, co-borrower, or a trusted advisor (collectively referred to as "borrower") about resolution of the mortgage loan delinquency. We reaffirm the applicability of QRPC when working with a borrower impacted by COVID-19 to ensure the servicer understands the borrower's circumstances and determines the best possible workout option for resolving the borrower's delinquency. In the event that the servicer is unable to achieve full QRPC and offers a forbearance plan to a borrower impacted by COVID-19 in compliance with the CARES Act, the servicer is considered to be in compliance with our *Servicing Guide*.

In response to servicer inquiries and in accordance with *Servicing Guide* A4-2.1-04, Establishing Contact with the Borrower, among other requirements, the servicer is authorized to use various outreach methods to contact the borrower as permitted by applicable law, including, but not limited to:

- mail,
- email,
- texting, and
- voice response unit technology.

### Reporting a reason for delinquency code UPDATED Jul. 15

The servicer must report delinquency status information to Fannie Mae through Fannie Mae's servicing solutions system in accordance with *Servicing Guide* D2-4-01, Reporting a Delinquent Mortgage Loan to Fannie Mae and F-1-22, Reporting a Delinquent Mortgage Loan via Fannie Mae's Servicing Solutions System.

In an effort to enable us to identify mortgage loans where the borrower has experienced a hardship associated with COVID-19 while not resulting in a systems impact for us or you, the servicer must report reason for delinquency code 022, Energy- Environment Costs, when reporting the delinquency status of such mortgage loans to us . If the borrower's COVID-19 related hardship remains unresolved and the borrower experiences another hardship concurrently (for example, a disaster event), the servicer must continue to report reason for delinquency code 022, Energy- Environment Costs, regardless of the reason for delinquency associated with the concurrent hardship.



For mortgage loans where the servicer would have otherwise reported reason for delinquency code 022 due to Energy-Environment Costs, the servicer must now use reason for delinquency code 007, Excessive Obligations.

## Property inspections and preservation  UPDATED May 14

As a result of the impact of COVID-19, we are temporarily providing flexibility with respect to the completion of property inspections and preservation, including:

- inspections for properties securing a delinquent mortgage loan as described in *Servicing Guide* D2-2-10, Requirements for Performing Property Inspections;
- inspections related to hazard loss repairs as described in *Servicing Guide* B-5-01, Insured Loss Events; and
- property preservation activities as described in *Servicing Guide* E-3.2-12, Performing Property Preservation During Foreclosure Proceedings.

The following table describes when the servicer must not conduct property inspections and property preservation activities for a property securing a mortgage loan where the borrower is experiencing a hardship related to COVID-19, depending on the status of the mortgage loan at the time of the effective date of the National Emergency declaration related to COVID-19.

| If on March 1, 2020, the mortgage loan was… | Then the servicer must… |
|---|---|
| current or less than 30 days delinquent and the borrower becomes delinquent | not complete property inspections during the forbearance plan or an active post-forbearance plan workout option. |
| delinquent and the property was not vacant or abandoned | |
| delinquent and the property was reported as vacant or abandoned | follow the property inspection requirements in *Inspecting a Property Securing a Delinquent Mortgage Loan* in *Servicing Guide* D2-2-10, Requirements for Performing Property Inspections and property preservation requirements in *Servicing Guide* E-3.2-12, Performing Property Preservation During Foreclosure Proceedings. |

> **N O T E:** *For mortgage loans that are delinquent and not on a forbearance plan, servicers must continue to follow the inspection requirements in in Inspecting a Property Securing a Delinquent Mortgage Loan in Servicing Guide* D2-2-10, Requirements for Performing Property Inspections.

If the mortgage loan is not brought current upon expiration of the forbearance plan, or if the borrower is not approved for a post-forbearance workout option as determined based on QRPC, the servicer must follow the property inspection requirements in *Inspecting a Property Securing a Delinquent Mortgage Loan* in *Servicing Guide*  D2-2-10, Requirements for Performing Property Inspections.

If the servicer is unable to complete a property inspection or property preservation activity in accordance with the *Servicing Guide*, it must document their efforts and the reason for any exception in the mortgage loan file.

> **N O T E:** *The servicer's inability to complete property inspections due to COVID-19 related impacts must not impact the servicer's disbursement of insurance loss proceeds.*

As a reminder, *Servicing Guide* D2-2-10, Requirements for Performing Property Inspections authorizes a curbside (drive-by) inspection if there is potential danger to the inspector. Additionally, the *Property Preservation Matrix and Reference Guide* authorizes servicers to utilize alternative data or other means available to determine occupancy status when inspection results are unknown due to lack of access.

For additional questions, contact

- Property_Preservation@fanniemae.com regarding property inspections for delinquent mortgage loans

Exhibit CC - 6
© 2020 Fannie Mae   LL-2020-02   Page 6 of 11



- Hazard_Loss@fanniemae.com regarding hazard loss inspections

## Submission of financial statements and reports

Per *Selling Guide* A4-2-01, sellers/servicers must submit financial statements and the *Lender Record Information* (Form 582) within 90 days after the end of their fiscal year. While we encourage submission of this information in a timely manner and by the Mar. 31, 2020 deadline (for those with a Dec. 31 fiscal-year end), we are extending the due date to Apr. 30, 2020.

## Forbearance plan terms  UPDATED Apr. 8, May 14, Jun. 24, Aug. 27

With the Mar. 18, 2020 Lender Letter, we communicated that servicers must achieve QRPC with the borrower prior to offering a forbearance plan, that the property securing the mortgage loan may be either a principal residence, a second home, or an investment property, and that the servicer must otherwise follow the requirements in *Servicing Guide* D2-3.2-01, Forbearance Plan. In response to the CARES Act, the servicer must approve forbearance plans for borrowers impacted by COVID-19 in accordance with the CARES Act.

The CARES Act states that a forbearance plan must be provided to any borrower who requests a forbearance with an attestation of the financial hardship caused by the COVID-19 emergency; and no additional documentation other than the borrower's attestation to a financial hardship caused by the COVID-19 emergency is required.  Such a borrower must be provided an initial forbearance plan for a period up to 180 days, and that forbearance period may be extended for up to an additional 180 days at the request of the borrower.  In accordance with the *Servicing Guide* D2-3.2-01, Forbearance Plan, the servicer may provide an initial forbearance period, and any extended forbearance period, in separate, shorter increments. If the borrower's COVID-19 related hardship has not been resolved during an incremental forbearance period, the servicer must extend the borrower's forbearance period, not to exceed 12 months total. For a borrower impacted by COVID-19, we are temporarily eliminating the requirement that the servicer must receive our prior written approval for a forbearance plan that would result in the mortgage loan becoming greater than 12 months delinquent.

As a reminder, servicers must inform the borrower that the payments which are the subject of a forbearance plan have only been delayed or reduced, not forgiven, and that once the forbearance plan is complete, one of the following must occur:

- the mortgage loan must be brought current through a reinstatement,
- the borrower is approved for another workout option,
- the mortgage loan is paid in full, or
- the servicer refers the mortgage loan to foreclosure in accordance with applicable law.

The servicer must also inform the borrower that he or she may shorten a forbearance plan term at any time to reduce the amount of payments which are being delayed or reduced.

As stated in the *Servicing Guide* D2-3.2-01, Forbearance Plan, the forbearance plan terms must be provided to the borrower using the appropriate Evaluation Notice, which must be revised in accordance with applicable law. In addition, the servicer must document in the individual mortgage loan file the borrower's request for forbearance and attestation as to a financial hardship caused by the COVID-19 emergency, and the terms of the initial and any extended forbearance, including the duration of the forbearance period.

## Evaluating the borrower for a payment deferral or mortgage loan modification after a forbearance plan  UPDATED May 14

For borrowers who have received a forbearance plan in response to COVID-19, the servicer must begin attempts to contact the borrower no later than 30 days prior to the expiration of the forbearance plan term, and must continue outreach attempts until either QRPC is achieved or the forbearance plan term has expired. When evaluating the borrower for a workout option prior to expiration of the forbearance plan, we are providing flexibility with regard to achieving QRPC. We are eliminating the requirement that the servicer determine the occupancy status of the property and will consider the servicer obtaining the following as

Exhibit CC - 7



achieving QRPC for purposes of evaluating a borrower who has experienced a hardship resulting from COVID-19:

- determining the reason for the delinquency and whether it is temporary or permanent in nature;
- determining whether or not the borrower has the ability to repay the mortgage loan debt;
- educating the borrower on the availability of workout options, as appropriate; and
- obtaining a commitment from the borrower to resolve the delinquency.

With LL-2017-09R we introduced the Fannie Mae Extend Modification for Disaster Relief (Extend Mod), a temporary post-disaster forbearance mortgage loan modification, as well as the order of evaluation for Extend Mod and other post-forbearance mortgage loan modifications when the property securing the mortgage loan or the borrower's place of employment is located in a FEMA-Declared Disaster Area eligible for Individual Assistance. While COVID-19 is not a disaster as defined in the *Servicing Guide*, with this Lender Letter, we are extending the availability of these post-disaster forbearance mortgage loan modifications to borrowers impacted by COVID-19. The servicer must analyze each case carefully in accordance with the requirements in the following table before determining which mortgage loan modification is most appropriate for the borrower.

| If the servicer is… | And… | Then the servicer must evaluate the borrower for… |
|---|---|---|
| able to establish QRPC with the borrower during the forbearance plan | determines that the borrower is capable of maintaining the current contractual monthly PITI payment, including any escrow amounts disbursed by the servicer during the forbearance plan term and escrow shortage needed to pay future escrow that is required to be repaid by the borrower over the 60-month escrow repayment period | an Extend Mod; and if eligible, offer the borrower the Extend Mod. The servicer must disclose how the escrow analysis was determined, and that disbursed escrow amounts will not be capitalized but will be added to the escrow shortage needed to pay future escrow amounts resulting in an increase of the borrower's current contractual monthly PITI payment over the 60-month escrow repayment period. |
| | determines that the borrower can maintain the current contractual monthly PITI payment, but cannot manage the additional escrow repayment obligation to cover amounts disbursed by the servicer during the forbearance plan term | a Fannie Mae Cap and Extend Modification for Disaster Relief; and if eligible, offer the borrower a Fannie Mae Cap and Extend Modification for Disaster Relief (see D2-3.2-05, Fannie Mae Cap and Extend Modification for Disaster Relief). |
| | determines that the borrower is not capable of maintaining the current contractual monthly PITI payment | a Fannie Mae Flex Modification based on the *Unique Requirements for a Borrower Impacted by a Disaster Event* (see D2-3.2-08, Fannie Mae Flex Modification); and if eligible, offer a Fannie Mae Flex Modification. |
| not able to establish QRPC during the forbearance plan | the mortgage loan is 90 or more days delinquent | a Fannie Mae Flex Modification based on the *Unique Requirements for a Borrower Impacted by a Disaster Event* (see D2-3.2-08, Fannie Mae Flex Modification); and if eligible, solicit the borrower for a Fannie Mae Flex Modification. |



For these mortgage loan modifications, the following changes to the eligibility criteria apply:

| Current Requirement | Requirement for Borrowers Impacted by COVID-19 |
|---|---|
| The property securing the mortgage loan or the borrower's place of employment must be located in a FEMA-Declared Disaster Area eligible for Individual Assistance. | The borrower must have experienced a hardship resulting from COVID-19 (for example, unemployment, reduction in regular work hours, or illness of a borrower/co-borrower or dependent family member), which has impacted their ability to make their monthly mortgage loan payment.<br><br>**N O T E:** *The servicer is not required to obtain documentation of the borrower's hardship.* |
| The mortgage loan must have been current or less than 31 days delinquent when the disaster occurred | The mortgage loan must have been current or less than 31 days delinquent as of Mar. 1, 2020, the effective date of the National Emergency declaration related to COVID-19. |

**N O T E:** *The servicer must make appropriate changes to the Flex Modification Solicitation Cover Letter and Evaluation Notices, including the applicable Frequently Asked Questions, when using for a borrower impacted by COVID-19.*

In Lender Letter [LL-2020-07, COVID-19 Payment Deferral](#) we introduced COVID-19 payment deferral, a new home retention workout option jointly developed with Freddie Mac at the direction of FHFA, to assist borrowers who have resolved their COVID-19 related hardship. Once the servicer implements COVID-19 payment deferral, it must evaluate borrowers impacted by COVID-19 for a COVID-19 payment deferral in accordance with the eligibility requirements and evaluation hierarchy described in Lender Letter [LL-2020-07, COVID-19 Payment Deferral](#). This supersedes our guidance on Mar. 25, 2020 which instructed that once the servicer implemented payment deferral, to evaluate borrowers impacted by COVID-19 for a payment deferral in accordance with the eligibility requirements and workout option hierarchy described in Lender Letter [LL-2020-05, Payment Deferral](#) prior to evaluating the borrower for a post-forbearance mortgage loan modification as described above.

## Credit bureau reporting  UPDATED Apr. 8

In response to the CARES Act, we are acknowledging that the servicer must report the status of the mortgage loan to the credit bureaus in accordance with the FCRA, including as amended by the CARES Act, for borrowers affected by the COVID-19 emergency. This supersedes our guidance on Mar. 18, 2020, which instructed servicers to suspend reporting the status of a mortgage loan to credit bureaus during an active forbearance plan, or a repayment plan or Trial Period Plan where the borrower is making the required payments as agreed, even though payments are past due, as long as the delinquency is related to a hardship resulting from COVID-19.

## Suspension of foreclosure activities and certain bankruptcy requirements
UPDATED May 14, Jun. 24, Aug. 27, Dec. 9

On Mar. 18, 2020, we instructed servicers that they must suspend all foreclosure sales for the next 60 days, unless the property securing the mortgage loan had been determined to be vacant or abandoned.

In response to the CARES Act, on Apr. 8, 2020, we acknowledged that the servicer was required to suspend foreclosure-related activities in accordance with the requirements of the CARES Act , which provides: "Except with respect to a vacant or abandoned property, a servicer of a Federally backed mortgage loan may not initiate any judicial or non-judicial foreclosure process, move for a foreclosure judgment or order of sale, or execute a foreclosure-related eviction or foreclosure sale for not less than the 60-day period beginning on Mar. 18, 2020."

We previously extended the suspension of foreclosure-related activities through Jun. 30, 2020 and subsequently through Dec. 31, 2020.  We are now further extending the suspension of the following foreclosure-related activities through Jan. 31, 2021:  During the period of the extension, servicers may not, except with respect to a vacant or abandoned property, initiate any judicial or non-judicial foreclosure process, move for a foreclosure judgment or order of sale, or execute a foreclosure sale.  This suspension does not apply to mortgage loans secured by properties that have been determined to be vacant or abandoned.

We generally require servicers to file motions for relief from the automatic stay in bankruptcy cases upon certain milestones. In



light of the CARES Act and other impacts resulting from the COVID 19 National Emergency, on Apr. 8, 2020, we temporarily relieved servicers of the obligation to meet these timelines. We are continuing this temporary suspension. Servicers must continue to work with their bankruptcy counsel to determine the appropriate time to file such motions.

## Use of Fannie Mae's Disaster Response Network

Our Disaster Response Network (DRN) is operational and can be used to assist borrowers who are financially impacted by COVID-19. The DRN has trained financial counselors who will work with borrowers to create a workable budget based upon the borrower's present financial situation and assist in explaining options including obtaining unemployment benefits and any new special assistance. We encourage servicers to refer Fannie Mae borrowers to our Disaster Response Network at 1-877-542-9723.

## Additional resources

As a reminder, we have published other Lender Letters and helpful information regarding policies related to COVID-19.

- [LL-2020-03, Impact of COVID-19 on Originations](#)
- [LL-2020-04, Impact of COVID-19 on Appraisals](#)
- [COVID-19 Frequently Asked Questions](#) (Selling)
- [Ask Poli Selling](#)

- [LL-2020-06, Selling Loans in Forbearance Due to COVID-19](#)
- [LL-2020-07, COVID-19 Payment Deferral](#)
- [COVID-19 Frequently Asked Questions](#) (Servicing)
- [Ask Poli Servicing](#)

> We will continue to monitor the situation and alert you of any additional policy updates. Servicers who have questions about this Lender Letter should contact their Fannie Mae Account Team, Portfolio Manager, or Fannie Mae's Single-Family Servicer Support Center at 1-800-2FANNIE (1-800-232-6643).
> Have Guide questions?  Get answers to all your policy questions, straight from the source. [Ask Poli](#).

Exhibit CC - 10

© 2020 Fannie Mae    LL-2020-02    Page 10 of 11



# Appendix

Refer to the examples below related to calculating the non-depository seller/servicer minimum liquidity requirement.

**Example #1:**

> Agency Servicing UPB: $50,000,000
> Agency Servicing SDQ UPB: $3,500,000 (7% SDQ rate)
>
> COVID-19 Portion of Agency Servicing SDQ UPB$^{1}$: $1,000,000
> The base liquidity requirement is .035% of the Agency Servicing UPB calculated as follows:
> $$0.035\% * \$50,000,000 = \$17,500$$
>
> In the example above, the Agency Servicing SDQ rate is above the 6% threshold for the Liquidity Add-On. Under the temporary guidance, the portion of Agency SDQ loans shown above that is related to COVID-19 forbearance loans is multiplied by .30 to derive the numerator used for calculating the adjusted Agency SDQ Rate of 5.6% as follows:
> $$\$2,500,000 + (\$1,000,000 *.30) = \$2,800,000/\$50,000,000 * 100$$
>
> As shown above, the $2.5 million represents the difference between Total Agency SDQs and COVID-19-related SDQs. The $1 million * .30 is the calculation adjustment to COVID-19 SDQ loans. The combined $2.8 million is the numerator used to calculate the Agency Servicing SDQ rate. In this example, the Agency Servicing SDQ rate decreases from 7% to 5.6%-- less than 6% SDQ threshold to trigger the Liquidity Add-on.  The Liquidity Add-on is *not* applicable in this example.
>
> Base Liquidity Requirement:        **$17,500**
> Liquidity Add-on:                             **Not Applicable**
> **Minimum Liquidity Requirement   $17,500**

**Example #2:**

> Agency Servicing UPB: $50,000,000
> Agency Servicing SDQ UPB: $7,000,000 (14% SDQ rate)
>
> COVID-19 Portion of Agency Servicing SDQ UPB$^{1}$: $3,000,000
> The base liquidity requirement is .035% of the Agency Servicing UPB calculated as follows:
> $$0.035\% * \$50,000,000 = \$17,500$$
>
> In the example above, the Agency Servicing SDQ rate is above the 6% threshold for the Liquidity Add-on. Under the temporary guidance, the portion of Agency SDQ loans show above that is related to COVID-19-related forbearance loans is multiplied by .30 to derive the numerator for calculating the adjusted Agency SDQ Rate of 9.8% as:
> $$\$4,000,000 + (\$3,000,000 *.30) = \$4,900,000/\$50,000,000 * 100$$
>
> As shown above, the $4 million represents the difference between Total Agency SDQs and COVID-19-related SDQs. The $3 million * .30 is the calculation adjustment to COVID-19 SDQ loans. The combined $4.9 million is the numerator used to calculate the Agency Servicing SDQ rate. In this example, the Agency Servicing SDQ rate decreases from 14% to 9.8%-- which is above the 6% threshold to trigger the Liquidity Add-on. The Liquidity Add-on is applicable only on the UPB portion above 6% SDQ rate calculated as follows:
> $$2\%*\$50,000,000*(9.8\%-6.0\%)= \$38,000$$
>
> Base Liquidity Requirement:        **$17,500**
> Liquidity Add-on:                             **$38,000**
> **Minimum Liquidity Requirement   $55,500**

[1] COVID-19 SDQ refers to mortgage loans in a COVID-19-related forbearance plan that are 90 days or more delinquent and were current at the inception of the COVID-19-related forbearance plan.

Exhibit CC - 11
© 2020 Fannie Mae   LL-2020-02   Page 11 of 11