Sean C. Wagner (Pro Hac Vice)
Derek M. Bast (Pro Hac Vice)
**WAGNER HICKS PLLC**
831 East Morehead Street, Suite 860
Charlotte, North Carolina 28202
Tel: (704) 705-7538
Fax: (704) 705-7787

John Forest Hilbert, Esq. (SBN 105827)
Joseph A. LeVota, Esq. (SBN 226760)
**HILBERT & SATTERLY LLP**
409 Camino del Rio S. #104
San Diego, California 92108
Telephone:  (619) 795-0300
Facsimile:   (619) 501-6855

Counsel for Plaintiff
GOLDWATER BANK, N.A.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDWATER BANK, N.A.,<br><br>               Plaintiff,<br><br>     v.<br><br>ARTUR ELIZAROV, ET AL.<br><br>               Defendants. | Case No. 5:21-cv-00616-JWH-SPx<br><br>**PLAINTIFF GOLDWATER BANK, N.A.'S RESPONSES TO ARTUR ELIZAROV'S FIRST SET OF REQUESTS FOR ADMISSION** |

PROPOUNDING PARTY:     Defendant Artur Elizarov

ANSWERING PARTY:       Plaintiff Goldwater Bank, N.A.

SET NO.:               One

NOW COMES Plaintiff Goldwater Bank, N.A. ("Goldwater"), by and through counsel, and responds to Defendant Artur Elizarov's ("Elizarov") First Set of Requests for Admissions (the "RFAs") as follows:

## PRELIMINARY STATEMENT

**Exhibit Z - 1**

All responses and objections contained herein are based upon such information as is presently available and specifically known to Goldwater. These responses are given without prejudice to Goldwater's right to produce evidence of any subsequently-discovered facts, including any and all subsequently-discovered information. Accordingly, Goldwater specifically reserves the right to change any and all responses contained herein as the result of further investigation, research, and discovery become known. The responses made herein reflect Goldwater's good faith efforts to respond as completely as possible based on the information that is currently available, and shall not be used to prejudice Goldwater's right to investigate and rely upon such other information as it is ascertained as a result of such further investigation or discovery.

Goldwater reserves the right to use at trial and make reference to any evidence, facts, documents, or information not discovered at this time, omitted through good faith error, mistake, or oversight, or the relevance of which has not presently been identified by Brown. Brown also reserves the right to further modify these responses as a result of subsequently discovered information.

<u>**RESPONSES TO REQUESTS FOR ADMISSION**</u>

**1.** At the time GOLDWATER approved LOAN APPLICATION, GOLDWATER knew that ELIZAROV was a plaintiff in CIVIL ACTION.

**ANSWER: Denied. Goldwater relied on Elizarov's acknowledgement in the loan application that the information he provided was true and correct and that Goldwater was entitled to rely on the information provided by Elizarov in the application.**

**2.** Before GOLDWATER approved LOAN APPLICATION, GOLDWATER had searched for any lawsuits that involved ELIZAROV as a party.

**ANSWER: Denied. Goldwater relied on Elizarov's acknowledgement in the loan application that the information he provided was true and correct and that Goldwater was entitled to rely on the information provided by Elizarov in the application.**

3.      As matter of business practice, prior to the date GOLDWATER approved LOAN APPLICATION, GOLDWATER had routinely searched for any pending lawsuit that included mortgage applicants as parties.

**ANSWER:  Goldwater objects to this Request for Admission as irrelevant and overbroad, as Goldwater's routine business practices are not at issue in this litigation, and the scope of this request is so broad that it cannot fairly be responded to under Rule 36 of the Federal Rules of Civil Procedure.  Subject to and without waiving its objections, Goldwater denies this Request for Admission.  Goldwater uses uniform loan applications issued by Fannie Mae and Freddie Mac, in which the applicant agrees and acknowledges that all information in the application is true and that the lender may rely on the information in the application.**

4.      GOLDWATER would have approved LOAN APPLICATION even if GOLDWATER had known that ELIZAROV was a plaintiff in CIVIL ACTION.

**ANSWER:  Goldwater objects to this Request for Admission because it is an incomplete hypothetical that does not state enough facts for Goldwater to make a reasonable inquiry sufficient to enable it to admit or deny, in part because loan applications are approved or denied based on a number of factors.**

5.      Before GOLDWATER approved LOAN APPLICATION, GOLDWATER had never denied an application for a mortgage loan because the applicant was a plaintiff in a pending civil lawsuit.

**ANSWER:  Goldwater objects to this Request for Admission as irrelevant and overbroad, as Goldwater's entire history of mortgage lending is not at issue in this litigation and is not proportional to the needs of this case.**

6.      CIVIL ACTION was dismissed with prejudice on August 15, 2019.

**ANSWER:  Goldwater admits that the Civil Action was dismissed on August 15, 2019.  After making a reasonable review of the electronic docket of the Civil Action, Goldwater lacks knowledge or information sufficient to admit or deny whether or not the dismissal was with prejudice.**

**7.** At the time ELIZAROV submitted LOAN APPLICATION to GOLDWATER, ELIZAROV was not in default of any federal debt.

**ANSWER: Goldwater lacks knowledge or information sufficient to admit or deny whether or not Elizarov was in default, which is a legal conclusion, at the time of the loan application. In answering this request, Goldwater conducted a reasonable inquiry of the documents in its possession, custody, or control, but information regarding the legal status of Elizarov's tax debt would be in the possession, custody, or control of Elizarov and the federal government. Goldwater admits that at the time of the loan application, Elizarov was subject to a federal tax lien, which was discharged after the date of the loan application on December 18, 2019.**

**8.** At the time ELIZAROV submitted LOAN APPLICATION to GOLDWATER, ELIZAROV was current on ELIZAROV's payment obligations to the Internal Revenue Service.

**ANSWER: Goldwater lacks knowledge or information sufficient to admit or deny the status of Elizarov's payment obligations on his federal tax debt at the time of the loan application. In answering this request, Goldwater conducted a reasonable inquiry of the documents in its possession, custody, or control, but information regarding the legal status of Elizarov's tax debt would be in the possession, custody, or control of Elizarov and the federal government. Goldwater knows that at the time of the loan application, Elizarov was subject to a federal tax lien, which was discharged after the date of the loan application on December 18, 2019.**

**9.** The phrase "in default of any federal debt" as used in LOAN APPLICATION means that the mortgage applicant was not paying the periodic payments on the debt as the payments came due.

**ANSWER: Goldwater objects to this Request for Admission because it seeks a pure legal conclusion regarding the meaning of a contract phrase, which is not an**

**Exhibit Z - 4**

**appropriate matter for inquiry pursuant to Fed. R. Civ. P. 36(a)(1).  Subject to and without waiving its objections, Goldwater denies this request.**

10.    At the time GOLDWATER approved LOAN APPLICATION, GOLDWATER knew that ELIZAROV had a recorded lien in favor of the Internal Revenue Service.

**ANSWER:  Denied.  Elizarov did not report his federal tax lien in his mortgage application, and Goldwater did not learn of Elizarov's federal tax debt until after this litigation began.**

11.    Before GOLDWATER approved LOAN APPLICATION, GOLDWATER had searched for any outstanding liens against ELIZAROV.

**ANSWER:  It is admitted that Goldwater obtained a third-party credit report in connection with Elizarov's loan application, although such reports do not reflect federal tax liens as a matter of law.  Goldwater relied on Elizarov's acknowledgement in the loan application that the information he provided was true and correct and that Goldwater was entitled to rely on the information provided by Elizarov in the application.  Except as expressly admitted, Goldwater denies this request.**

12.    As matter of business practice, before GOLDWATER approved LOAN APPLICATION, GOLDWATER had routinely searched for any liens recorded against mortgage applicants.

**ANSWER:  Goldwater objects to this Request for Admission as irrelevant and overbroad, as Goldwater's routine business practices are not at issue in this litigation, and the scope of this request is so broad that it cannot fairly be responded to under Rule 36 of the Federal Rules of Civil Procedure.  Subject to and without waiving its objections, Goldwater admits that it regularly obtains third-party credit reports in connection with mortgage applications, although such reports do not reflect federal tax liens as a matter of law.  Except as expressly admitted, Goldwater denies this request.**

**13.** The recording lien against ELIZAROV in favor of the Internal Revenue Service was evidence of an outstanding debt but not evidence of a default on any debt.

**ANSWER:  Goldwater objects to this Request for Admission because it seeks a pure legal conclusion regarding the legal impact of a recorded lien, which is not an appropriate matter for inquiry pursuant to Fed. R. Civ. P. 36(a)(1).**

**14.** A person who is current with a repayment plan approved by the Internal Revenue Service is not in default on a federal debt.

**ANSWER:  Goldwater objects to this Request for Admission because it seeks a pure legal conclusion regarding the legal impact of an IRS repayment plan, which is not an appropriate matter for inquiry pursuant to Fed. R. Civ. P. 36(a)(1). Goldwater also objects to this request as an incomplete hypothetical that does not contain sufficient facts to allow Goldwater to admit or deny the request.**

**15.** At the time ELIZAROV submitted LOAN APPLICATION to GOLDWATER, ELIZAROV was current on a repayment plan approved by the Internal Revenue Service.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny the status of Elizarov's payment obligations on his federal tax debt at the time of the loan application.  In answering this request, Goldwater conducted a reasonable inquiry of the documents in its possession, custody, or control, but information regarding Elizarov's payment history on his tax debt would be in the possession, custody, or control of Elizarov and the federal government.**

**16.** GOLDWATER would have approved LOAN APPLICATION even if GOLDWATER had known that ELIZAROV was paying down an outstanding text debt to the Internal Revenue Service.

**ANSWER:  Goldwater objects to this Request for Admission as improperly compound and as an incomplete hypothetical that does not state enough facts for Goldwater to make a reasonable inquiry sufficient to enable it to admit or deny, in part because loan applications are approved or denied based on a number of factors.**

17.    GOLDWATER would have approved LOAN APPLICATION even if GOLDWATER had known that ELIZAROV had a recorded tax lien in favor of the Internal Revenue Service.

**ANSWER:  Goldwater objects to this Request for Admission as improperly compound and as an incomplete hypothetical that does not state enough facts for Goldwater to make a reasonable inquiry sufficient to enable it to admit or deny, in part because loan applications are approved or denied based on a number of factors.**

18.    At the time GOLDWATER approved LOAN APPLICATION, GOLDWATER had never denied an application for a mortgage loan because the applicant had a recorded federal tax lien.

**ANSWER:  Goldwater objects to this Request for Admission as irrelevant and overbroad, as Goldwater's entire history of mortgage lending is not at issue in this litigation and is not proportional to the needs of this case.**

19.    At the time GOLDWATER approved LOAN APPLICATION, GOLDWATER had never denied an application for a mortgage loan because the applicant was paying down an outstanding tax debt to the Internal Revenue Service.

**ANSWER:  Goldwater objects to this Request for Admission as irrelevant and overbroad, as Goldwater's entire history of mortgage lending is not at issue in this litigation and is not proportional to the needs of this case.**

20.    GOLDWATER would have approved LOAN APPLICATION even if GOLDWATER had known that ELIZAROV was not single but had a registered domestic partner.

**ANSWER:  Goldwater objects to this Request for Admission because it is an incomplete hypothetical that does not state enough facts for Goldwater to make a reasonable inquiry sufficient to enable it to admit or deny, in part because loan applications are approved or denied based on a number of factors.**

**Exhibit Z - 7**

21.     GOLDWATER would not have denied LOAN APPLICATION based solely on ELIZAROV's marital status.

**ANSWER:  Goldwater objects to this Request for Admission because it is an incomplete hypothetical that does not state enough facts for Goldwater to make a reasonable inquiry sufficient to enable it to admit or deny, in part because loan applications are approved or denied based on a number of factors.**

22.     At the time GOLDWATER approved LOAN APPLICATION, GOLDWATER had never denied an application for a mortgage loan based on the applicant's marital status.

**ANSWER:  Goldwater objects to this Request for Admission as irrelevant and overbroad, as Goldwater's entire history of mortgage lending is not at issue in this litigation and is not proportional to the needs of this case.**

23.     At the time GOLDWATER approved LOAN APPLICATION, GOLDWATER had never denied a married applicant's mortgage application solely because the married applicant did not rely on or disclose the spouse's financial information in the loan application.

**ANSWER:  Goldwater objects to this Request for Admission as irrelevant and overbroad, as Goldwater's entire history of mortgage lending is not at issue in this litigation and is not proportional to the needs of this case.  Goldwater further objects to this request as impermissibly compound.**

24.     Had GOLDWATER known, at the time GOLDWATER approved LOAN APPLICATION, that ELIZAROV had a registered domestic partner in California, GOLDWATER would still have approved LOAN APPLICATION based solely on ELIZAROV's personal information.

**ANSWER:  Goldwater objects to this Request for Admission as impermissibly compound and as incomplete hypothetical that does not state enough facts for Goldwater to make a reasonable inquiry sufficient to enable it to admit or deny, in part because loan applications are approved or denied based on a number of factors.**

**25.**    Had GOLDWATER known, at the time GOLDWATER approved LOAN APPLICATION, that ELIZAROV had a registered domestic partner in California, GOLDWATER would not have required ELIZAROV's registered domestic partner's personal information to approve LOAN APPLICATION.

**ANSWER:  Goldwater objects to this Request for Admission as impermissibly compound and as incomplete hypothetical that does not state enough facts for Goldwater to make a reasonable inquiry sufficient to enable it to admit or deny.**

**26.**    At the time GOLDWATER approved LOAN APPLICATION, GOLDWATER had not, as matter of business practice, require married applicants to provide both spouses' financial information in the mortgage-loan application.

**ANSWER:  Goldwater objects to this Request for Admission as irrelevant and overbroad, as Goldwater's entire history of mortgage lending is not at issue in this litigation and is not proportional to the needs of this case.  Goldwater further objects to this request as impermissibly compound.**

**27.**    GOLDWATER did not consider ALEKSEYEFF's personal or financial information when GOLDWATER approved LOAN APPLICATION.

**ANSWER:   It is admitted that Goldwater considered the information provided by Elizarov on the loan application and that such information appears not to include Alekseyeff's information.  Except as expressly admitted, denied.**

**28.**    GOLDWATER approved LOAN APPLICATION based solely on ELIZAROV's personal information.

**ANSWER:  It is admitted that Goldwater relied on the information provided by Elizarov in his loan application, as well as a third-party credit report and other materials related to the transaction.  Except as expressly admitted, denied.**

**29.**    At the time ELIZAROV submitted LOAN APPLICATION to GOLDWATER, ELIZAROV intended to pay the resulting loan.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of**

the materials in its possession, custody, or control related to Elizarov's loan
application, but the information revealing Elizarov's intent will ultimately depend
on information obtained from Elizarov and others in discovery.

30.    Had ELIZAROV paid GOLDWATER $675,000.00 at the time ELIZAROV
sold PALM SPRINGS HOUSE to defendant Scott Howlett, GOLDWATER would not
have alleged any claims of fraud against ELIZAROV based on any allegedly false
statements that ELIZAROV included in LOAN APPLICATION.

ANSWER:  Goldwater objects to this Request for Admission as impermissibly
compound and an incomplete hypothetical that does not state enough facts for
Goldwater to make a reasonable inquiry sufficient to enable it to admit or deny.
Goldwater further objects to the speculation of how the pleadings in this case may
have differed under different circumstances as irrelevant and outside the scope of
Fed. R. Civ. P. 26 and 36.

31.    Had ELIZAROV paid GOLDWATER $675,000.00 at the time ELIZAROV
sold PALM SPRINGS HOUSE to defendant Scott Howlett, GOLDWATER would not
have sought any damages from ELIZAROV based on any allegedly false statements that
ELIZAROV included in LOAN APPLICATION.

ANSWER:  Goldwater objects to this Request for Admission as impermissibly
compound and an incomplete hypothetical that does not state enough facts for
Goldwater to make a reasonable inquiry sufficient to enable it to admit or deny.
Goldwater further objects to the speculation of how the pleadings in this case may
have differed under different circumstances as irrelevant and outside the scope of
Fed. R. Civ. P. 26 and 36.

32.    Had ELIZAROV paid GOLDWATER the outstanding balance under NOTE
at the time ELIZAROV sold PALM SPRINGS HOUSE to defendant Scott Howlett,
GOLDWATER would not have alleged any claims of fraud against ELIZAROV based
on any false statements that ELIZAROV included in LOAN APPLICATION.

**Exhibit Z - 10**

**ANSWER: Goldwater objects to this Request for Admission as impermissibly compound and an incomplete hypothetical that does not state enough facts for Goldwater to make a reasonable inquiry sufficient to enable it to admit or deny. Goldwater further objects to the speculation of how the pleadings in this case may have differed under different circumstances as irrelevant and outside the scope of Fed. R. Civ. P. 26 and 36.**

33.    Had ELIZAROV paid GOLDWATER the outstanding balance under NOTE at the time ELIZAROV sold PALM SPRINGS HOUSE to defendant Scott Howlett, GOLDWATER would not have sought any damages based on any allegedly false statements that ELIZAROV included in LOAN APPLICATION.

**ANSWER: Goldwater objects to this Request for Admission as impermissibly compound and an incomplete hypothetical that does not state enough facts for Goldwater to make a reasonable inquiry sufficient to enable it to admit or deny. Goldwater further objects to the speculation of how the pleadings in this case may have differed under different circumstances as irrelevant and outside the scope of Fed. R. Civ. P. 26 and 36.**

34.    GOLDWATER suffered no damages as a direct result of GOLDWATER's reliance on any allegedly false statements that ELIZAROV made in LOAN APPLICATION.

**ANSWER: Denied. Elizarov obtained a loan from Goldwater in the principal amount of $686,250.00 in part by making false statements on his loan application.**

35. None of the allegedly false statements that ELIZAROV included in LOAN APPLICATION substantially caused GOLDWATER's damages.

**ANSWER: Denied. Elizarov obtained a loan from Goldwater in the principal amount of $686,250.00 in part by making false statements on his loan application.**

36.    As of May 27, 2021, GOLDWATER had no information that lead GOLDWATER to believe that ELIZAROV misrepresented his income in FORBEARANCE APPLICATION.

**ANSWER:  Denied.  As of May 27, 2021, Goldwater had sufficient evidence of misrepresentations in the forbearance application that caused Goldwater to believe that Elizarov may have misrepresented his income in the forbearance application.**

**37.**   As of May 27, 2021, GOLDWATER had no information that lead GOLDWATER to believe that ELIZAROV misrepresented his assets in FORBEARANCE APPLICATION.

**ANSWER:  Denied.  As of May 27, 2021, Goldwater had sufficient evidence of misrepresentations in the forbearance application that caused Goldwater to believe that Elizarov may have misrepresented his assets in the forbearance application.**

**38.** GOLDWATER would have approved FORBEARANCE APPLICATION regardless of ELIZAROV's income.

**ANSWER:  Goldwater objects to this Request for Admission because it is an incomplete hypothetical that does not state enough facts for Goldwater to make a reasonable inquiry sufficient to enable it to admit or deny, in part because forbearance applications are approved or denied based on a number of factors.**

**39.**   GOLDWATER would have approved FORBEARANCE APPLICATION regardless of ELIZAROV's assets.

**ANSWER:  Goldwater objects to this Request for Admission because it is an incomplete hypothetical that does not state enough facts for Goldwater to make a reasonable inquiry sufficient to enable it to admit or deny, in part because forbearance applications are approved or denied based on a number of factors.**

**40.**   As of April 1, 2021, all of GOLDWATER's outstanding residential mortgage loans in California were in forbearance due to the pandemic caused by the novel coronavirus COVID-19.

**ANSWER: Goldwater objects to this Request for Admission as overbroad and irrelevant because the universe of all of Goldwater's mortgage loans in**

California is not relevant to the claims or defenses in this litigation.  Subject to and without waiving his objections, Goldwater denies this Request for Admission, as not every single borrower applied for forbearance due to COVID-19.

**41.**    At the time GOLDWATER approved FORBEARANCE APPLICATION, GOLDWATER had no written standards for evaluating borrowers' applications for forbearance due to the COVID-19 pandemic.

**ANSWER:  Denied.**

**42.**    Under the emergency measures enacted in California in response to the global pandemic caused by the COVID-19 virus, between April 2020 and March 2021, GOLDWATER could not foreclose on PALM SPRINGS HOUSE after ELIZAROV stopped making his regular mortgage payments in April 2020.

**ANSWER:  Goldwater objects to this Request for Admission as unduly vague, as it does not specify or define the "emergency measures" that underly the request. Goldwater further objects to this request as improperly compound.  Subject to and without waiving its objections, Goldwater denies that Elizarov was making his regular mortgage payments through April 2020, as Elizarov was already behind on his payments in February 2020, prior to the widespread impact of COVID-19 in the United States.  Goldwater further denies that there was no set of facts under which it could have moved forward with foreclosure.  The remaining allegations of this request are denied.**

**43.**    Under the emergency measures enacted in California in response to the global pandemic caused by the COVID-19 virus, between April 2020 and March 2021, ELIZAROV's statutory right to redemption under California Law was extended until the declaration of emergency was rescinded after ELIZAROV stopped paying the regular monthly payments called for in NOTE as of April 2020.

**ANSWER:  Goldwater objects to this Request for Admission as unduly vague, as it does not specify or define the "emergency measures" that underly the request. Goldwater further objects to this request as improperly compound.  Subject to and**

**without waiving its objections, Goldwater denies that Elizarov was making his regular mortgage payments through April 2020, as Elizarov was already behind on his payments in February 2020, prior to the widespread impact of COVID-19 in the United States.  The remaining allegations of this request are denied.**

44.     Since April 1, 2020, GOLDWATER had borrowers other than ELIZAROV who stopped making payments on loans secured by residential property in California due to the worldwide pandemic caused by COVID-19 virus.

**ANSWER: Goldwater objects to this Request for Admission as overbroad and irrelevant because the universe of all of Goldwater's mortgage loans in California is not relevant to the claims or defenses in this litigation.  Subject to and without waiving his objections, Goldwater admits that other residential borrowers in California missed mortgage payments due to the COVID-19 pandemic.  Except as expressly admitted, denied.**

45.     Since April 1, 2020, GOLDWATER has not foreclosed on any residential property in California that secured a mortgage loan after the borrower stopped making the loan payments.

**ANSWER: Goldwater objects to this Request for Admission as overbroad and irrelevant because the universe of all of Goldwater's mortgage loans in California is not relevant to the claims or defenses in this litigation.**

46.     The loss of the regularly scheduled interest and principal payments called for by NOTE was the only harm that GOLDWATER suffered as a direct result of GOLDWATER's decision to approve FORBEARANCE APPLICATION.

**ANSWER:  Denied.  As a result of Elizarov's forbearance status, Goldwater refrained from initiating foreclosure, which made it easier for Elizarov to sell the Palm Springs property and abscond with the proceeds that should have paid off Goldwater's loan.**

**Exhibit Z - 14**

47.     After April 6, 2020, GOLDWATER would have lost the regularly scheduled interest and principal payments called for by NOTE even if GOLDWATER had denied FORBEARANCE APPLICATION.

**ANSWER:  Goldwater objects to this Request for Admission as impermissibly compound and as incomplete hypothetical that does not state enough facts for Goldwater to make a reasonable inquiry sufficient to enable it to admit or deny.**

48.     Had ELIZAROV paid GOLDWATER $675,000.00 at the time ELIZAROV sold PALM SPRINGS HOUSE to defendant Scott Howlett, GOLDWATER would not have alleged any claims of fraud against ELIZAROV based on any allegedly false statements that ELIZAROV included in FORBEARANCE APPLICATION.

**ANSWER:  Goldwater objects to this Request for Admission as impermissibly compound and an incomplete hypothetical that does not state enough facts for Goldwater to make a reasonable inquiry sufficient to enable it to admit or deny. Goldwater further objects to the speculation of how the pleadings in this case may have differed under different circumstances as irrelevant and outside the scope of Fed. R. Civ. P. 26 and 36.**

49.     Had ELIZAROV paid GOLDWATER $675,000.00 at the time ELIZAROV sold PALM SPRINGS HOUSE to defendant Scott Howlett, GOLDWATER would not have sought any damages from ELIZAROV based on any allegedly false statements that ELIZAROV include in FORBEARANCE APPLICATION.

**ANSWER:  Goldwater objects to this Request for Admission as impermissibly compound and an incomplete hypothetical that does not state enough facts for Goldwater to make a reasonable inquiry sufficient to enable it to admit or deny. Goldwater further objects to the speculation of how the pleadings in this case may have differed under different circumstances as irrelevant and outside the scope of Fed. R. Civ. P. 26 and 36.**

50.     Had ELIZAROV paid GOLDWATER the outstanding balance under NOTE at the time ELIZAROV sold PALM SPRINGS HOUSE to defendant Scott Howlett,

**Exhibit Z - 15**

GOLDWATER would not have alleged any claims of fraud against ELIZAROV based on any allegedly false statements that ELIZAROV included in FORBEARANCE APPLICATION.

**ANSWER:  Goldwater objects to this Request for Admission as impermissibly compound and an incomplete hypothetical that does not state enough facts for Goldwater to make a reasonable inquiry sufficient to enable it to admit or deny. Goldwater further objects to the speculation of how the pleadings in this case may have differed under different circumstances as irrelevant and outside the scope of Fed. R. Civ. P. 26 and 36.**

**51.**     Had ELIZAROV paid GOLDWATER the outstanding balance under NOTE at the time ELIZAROV sold PALM SPRINGS HOUSE to defendant Scott Howlett, GOLDWATER would not have sought any damages from ELIZAROV based on any allegedly false statements that ELIZAROV include in FORBEARANCE APPLICATION.

**ANSWER:  Goldwater objects to this Request for Admission as impermissibly compound and an incomplete hypothetical that does not state enough facts for Goldwater to make a reasonable inquiry sufficient to enable it to admit or deny. Goldwater further objects to the speculation of how the pleadings in this case may have differed under different circumstances as irrelevant and outside the scope of Fed. R. Civ. P. 26 and 36.**

**52.**     GOLDWATER suffered no damages as a direct result of GOLDWATER's reliance on any allegedly false statements in FORBEARANCE APPLICATION.

**ANSWER:  Denied.  As a result of Elizarov's forbearance status, Goldwater refrained from initiating foreclosure, which made it easier for Elizarov to sell the Palm Springs property and abscond with the proceeds that should have paid off Goldwater's loan.**

**53.**     At the time GOLDWATER agreed to accept $675,000 from ELIZAROV following the sale of PALM SPRINGS HOUSE to defendant Scott Howlett,

GOLDWATER claimed that ELIZAROV owed GOLDWATER a greater amount under NOTE.

**ANSWER:  Goldwater admits that the total balance due under the Note at the time of the sale of the Palm Springs House was in excess of $675,000.  Goldwater further admits that it engaged in discussions with Elizarov to potentially accept a payment of $675,000 in reliance on Elizarov's misrepresentations to Goldwater that there would be insufficient proceeds from the sale on account of a superior mechanic's lien in the amount of approximately $107,000.  Except as expressly admitted, denied.**

54.   GOLDWATER's offer to accept $675,000 from ELIZAROV to extinguish a pre-existing debt of a greater amount under NOTE lacked consideration.

**ANSWER:  Goldwater objects to this Request for Admission as improperly compound.  Goldwater admits that it engaged in discussions with Elizarov to potentially accept a payment of $675,000 in reliance on Elizarov's misrepresentations to Goldwater that there would be insufficient proceeds from the sale on account of a superior mechanic's lien in the amount of approximately $107,000.  However, Goldwater denies that the discussions progressed to the stage where it was an offer to extinguish pre-existing debt and denies that it was required to be supported by consideration.  Except as expressly admitted, denied.**

55.   GOLDWATER received no benefit in exchange for its offer to accept $675,000 from ELIZAROV to extinguish the pre-existing debt of a greater amount under NOTE.

**ANSWER:  Goldwater objects to this Request for Admission as improperly compound.  Goldwater admits that it engaged in discussions with Elizarov to potentially accept a payment of $675,000 in reliance on Elizarov's misrepresentations to Goldwater that there would be insufficient proceeds from the sale on account of a superior mechanic's lien in the amount of approximately $107,000.  However, Goldwater denies that the discussions progressed to the stage**

where it was an offer to extinguish pre-existing debt and denies that it was required to be supported by a benefit in exchange.  Except as expressly admitted, denied.

56.     ELIZAROV suffered no detriment from his offer to pay GOLDWATER $675,000 to extinguish the pre-existing debt of a greater amount under NOTE.

**ANSWER:  Goldwater objects to this Request for Admission as improperly compound.  Goldwater admits that it engaged in discussions with Elizarov to potentially accept a payment of $675,000 in reliance on Elizarov's misrepresentations to Goldwater that there would be insufficient proceeds from the sale on account of a superior mechanic's lien in the amount of approximately $107,000.  However, Goldwater denies that the discussions progressed to the stage where it was an offer to extinguish pre-existing debt.  Goldwater lacks knowledge or information sufficient to admit or deny whether Elizarov suffered any detriment. Except as expressly stated above, denied.**

57.     After March 25, 2021, GOLDWATER could not have done anything to interfere with ELIZAROV's sale of PALM SPRINGS HOUSE to defendant Scott Howlett.

**ANSWER:  Goldwater objects to this Request for Admission as vague because the scope of conduct that would amount to "interference" is not clear.  Goldwater further objects to this Request for Admission because it is an incomplete hypothetical that does not state enough facts for Goldwater to make a reasonable inquiry sufficient to enable it to admit or deny.**

58.     On and after February 1, 2021, GOLDWATER did not have DEED OF TRUST bearing ELIZAROV's original notarized signature.

**ANSWER:  Denied.  During the course of this litigation, Goldwater located the Deed of Trust bearing Elizarov's original notarized signature in the files of its mortgage servicer, and Goldwater believes it was there as of February 1, 2021.**

59.     On and after February 1, 2021, GOLDWATER could not have recorded DEED OF TRUST with Riverside County Clerk/Recorder.

**ANSWER:  Denied.  During the course of this litigation, Goldwater located the Deed of Trust bearing Elizarov's original notarized signature in the files of its mortgage servicer, and Goldwater believes it was there as of February 1, 2021.**

**60.**   GOLDWATER refused to sign a written document evidencing GOLDWATER's agreement to accept $675,000 from ELIZAROV to extinguish the pre-existing debt of a greater amount under NOTE.

**ANSWER:  Goldwater objects to this Request for Admission as improperly compound.  Subject to and without waiving its objections, Goldwater denies this Request for Admission.**

**61.** ELIZAROV did not agree in writing to pay GOLDWATER $675,000 from the sale of PALM SPRINGS HOUSE.

**ANSWER:  Admitted.**

**62.** GOLDWATER did not agree in writing to accept $675,000 from ELIZAROV to extinguish the pre-existing debt of a greater amount under NOTE.

**ANSWER:  Admitted.**

**63.** At the time ELIZAROV offered to pay GOLDWATER $675,000 from the sale of PALM SPRINGS HOUSE, ELIZAROV had a pre-existing duty to pay GOLDWATER a greater amount under NOTE.

**ANSWER:  Admitted.**

**64.** GOLDWATER did nothing in reliance on any allegedly false statements that ELIZAROV made to GOLDWATER during SETTLEMENT DISCUSSIONS.

**ANSWER:  Denied.**

**65.** GOLDWATER suffered no damages as a direct result of GOLDWATER's reliance on any allegedly false statements that ELIZAROV made to GOLDWATER during SETTLEMENT DISCUSSIONS.

**ANSWER:  Denied.**

**66.** Since July 24, 2013, every deed of trust that GOLDWATER's executed with California residential borrowers included the following language: "If all or any part of

**Exhibit Z - 19**

the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower."

**ANSWER: Goldwater objects to this Request for Admission as irrelevant and overbroad, as Goldwater's routine business practices are not at issue in this litigation, and the scope of this request is so broad that it cannot fairly be responded to under Rule 36 of the Federal Rules of Civil Procedure.**

**67.** Since July 24, 2013, every note relating to a residential mortgage loan included the following language: "If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower."

**ANSWER: Goldwater objects to this Request for Admission as irrelevant and overbroad, as it does not reference Goldwater. Goldwater further objects to this**

**request as irrelevant and overbroad because Goldwater's routine business practices
are not at issue in this litigation, and the scope of this request is so broad that it
cannot fairly be responded to under Rule 36 of the Federal Rules of Civil Procedure.**

**68.** Since July 24, 2013, GOLDWATER has never given any GOLDWATER's
mortgagee in California a notice of acceleration required under the mortgagee's deed of
trust before GOLDWATER demanded that the borrower repay GOLDWATER the
outstanding loan balance at the time the borrower sold the property that secured
GOLDWATER's mortgage loan.

**ANSWER:  Goldwater objects to this Request for Admission as irrelevant and
overbroad, as Goldwater's routine business practices are not at issue in this
litigation, and the scope of this request is so broad that it cannot fairly be responded
to under Rule 36 of the Federal Rules of Civil Procedure.  Goldwater further objects
to this request as improperly compound.**

**69.** Since July 24, 2013, GOLDWATER has never given any GOLDWATER's
mortgagee in California a notice of acceleration required under the mortgagee's note
before GOLDWATER demanded that the borrower repay GOLDWATER the
outstanding loan balance at the time the borrower sold the property that secured
GOLDWATER's mortgage loan.

**ANSWER:  Goldwater objects to this Request for Admission as irrelevant and
overbroad, as Goldwater's routine business practices are not at issue in this
litigation, and the scope of this request is so broad that it cannot fairly be responded
to under Rule 36 of the Federal Rules of Civil Procedure.  Goldwater further objects
to this request as improperly compound.**

**70.** Had GOLDWATER recorded DEED OF TRUST with the Riverside County
Clerk/Recorded, GOLDWATER would have insisted that ELIZAROV repay, at the time
ELIZAROV sold PALM SPRINGS HOUSE to defendant Scott Howlett, the outstanding
loan balance secured by DEED OF TRUST even though GOLDWATER had never given
ELIZAROV a notice of acceleration required under paragraph 18 of DEED OF TRUST.

**ANSWER:  Goldwater objects to this Request for Admission as impermissibly compound and an incomplete hypothetical.**

**71.** Had GOLDWATER recorded DEED OF TRUST with the Riverside County Clerk/Recorded, GOLDWATER would have insisted that ELIZAROV repay, at the time ELIZAROV sold PALM SPRINGS HOUSE to defendant Scott Howlett, the outstanding loan balance secured by DEED OF TRUST even though GOLDWATER had never given ELIZAROV a notice of acceleration required under Paragraph 11 of NOTE.

**ANSWER:  Goldwater objects to this Request for Admission as impermissibly compound and an incomplete hypothetical.**

**72.** Had GOLDWATER recorded DEED OF TRUST with the Riverside County Clerk/Recorded, GOLDWATER would have refused to record a reconveyance of DEED OF TRUST at the time ELIZAROV sold PALM SPRINGS HOUSE to defendant Scott Howlett unless ELIZAROV repaid GOLDWATER the outstanding loan balance secured by DEED OF TRUST even though GOLDWATER had never given ELIZAROV the notice of acceleration required under paragraph 18 of DEED OF TRUST.

**ANSWER:  Goldwater objects to this Request for Admission as impermissibly compound and an incomplete hypothetical.**

**73.** Had GOLDWATER recorded DEED OF TRUST with the Riverside County Clerk/Recorded, GOLDWATER would have refused to record a reconveyance of DEED OF TRUST at the time ELIZAROV sold PALM SPRINGS HOUSE to defendant Scott Howlett unless ELIZAROV repaid GOLDWATER the outstanding loan balance secured by DEED OF TRUST even though GOLDWATER had never given ELIZAROV the notice of acceleration required under Paragraph 11 of NOTE.

**ANSWER:  Goldwater objects to this Request for Admission as impermissibly compound and an incomplete hypothetical.**

**74.** ELIZAROV informed GOLDWATER that ELIZAROV had listed PALM SPRINGS HOUSE for sale on February 2, 2021.

**ANSWER: Goldwater admits that Elizarov communicated with Goldwater loan officer Gregory Hill in early February 2021 about his intention to sell the Palm Springs house.  Except as expressly admitted, denied.**

75. ELIZAROV sent a copy of the Residential Purchase Agreement that ELIZAROV signed with Scott Howlett to GOLDWATER on March 3, 2021.

**ANSWER: Goldwater objects to this Request for Admission because it references a specific document that has not been defined or produced by Elizarov. Subject to and without waiving its objections, Goldwater states that it presently lacks knowledge or information sufficient to admit or deny this Request for Admission.**

76. ELIZAROV discovered that GOLDWATER had not recorded DEED OF TRUST with the Riverside County Clerk/Recorded on March 25, 2021.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information regarding the precise date when Elizarov discovered that the Deed of Trust was unrecorded ultimately resides with Elizarov and other third parties.**

77. Prior to April 1, 2021, GOLDWATER had not given ELIZAROV the notice of acceleration required under Paragraph 18 of DEED OF TRUST. f

**ANSWER:  Goldwater objects to this Request for Admission as improperly compound.  Subject to and without waiving its objections, Goldwater admits that Goldwater had not provided Elizarov with a notice of acceleration prior to April 1, 2021.  It is denied, however, that Goldwater was required to provide such notice at that time under Paragraph 18 of the Deed of Trust.  Except as expressly admitted, denied.**

78. Prior to April 1, 2021, GOLDWATER had not given ELIZAROV the notice of acceleration required under Paragraph 11 of NOTE.

**ANSWER:  Goldwater objects to this Request for Admission as improperly compound.  Subject to and without waiving its objections, Goldwater admits that Goldwater had not provided Elizarov with a notice of acceleration prior to April 1, 2021.  It is denied, however, that Goldwater was required to provide such notice at that time under Paragraph 11 of the Deed of Trust.  Except as expressly admitted, denied.**

79. GOLDWATER did not allege a claim for fraud against ELIZAROV in GOLDWATER's original complaint (which GOLDWATER filed in this action as Document Number 1) but alleged a claim for fraud against ELIZAROV in GOLDWATER's amended complaint (which GOLDWATER filed in this action as Document Number 44) solely to retaliate against ELIZAROV after ELIZAROV filed CIVIL ACTION against GOLDWATER and GOLWATER's counsel.

**ANSWER:  Goldwater objects to this Request for Admission as outside the scope of Fed. R. Civ. P. 36 because it is not related to the facts, the application of law to the facts, opinions about either, or the genuineness of any documents. Goldwater further objects to this request as improper because it seeks privileged and speculative information about the rationale behind Goldwater's pleading history.  Subject to and without waiving its objections, denied.**

80. Except for ELIZAROV's marital status, at the time GOLDWATER filed GOLWATER's original complaint (which GOLDWATER filed in this action as Document Number 1), GOLDWATER had known all the information that served as a basis for GOLDWATER's claim for fraud against ELIZAROV that GOLDWATER asserted in GOLDWATER's amended complaint (which GOLDWATER filed in this action as Document Number 44).

**ANSWER:  Goldwater objects to this Request for Admission as improperly compound.  Subject to and without waiving its objections, denied.**

**81.** NOTE is a valid and enforceable contract.

**ANSWER:  Admitted.**

**82.** GOLDWATER does not contend that NOTE is unenforceable.

**ANSWER:  Admitted.**

**83.** DEED OF TRUST is a valid and enforceable contract.

**ANSWER:  Admitted.**

**84.** GOLDWATER does not content that DEED OF TRUST is unenforceable.

**ANSWER:  Admitted.**

**85.** GOLDWATER collected the information for LOAN APPLICATION from ELIZAROV over the telephone.

**ANSWER:  Admitted that Elizarov provided certain information to Goldwater by telephone in connection with the Loan Application.  Except as expressly admitted, denied.**

**86.** GOLDWATER's employee completed LOAN APPLICATION based on the information that ELIZAROV provided to GOLDWATER over the telephone.

**ANSWER:  Denied.  The loan application was not completed until Elizarov had reviewed and signed the application, certifying that its contents were truthful and that Goldwater was entitled to rely on its contents.**

**87.** None of ALEKSEYEFF's personal information appeared on LOAN APPLICATION.

**ANSWER:  Goldwater objects to this request as vague because it is unclear what information Elizarov considers to be "Alekseyeff's personal information." Subject to and without waiving its objections, Goldwater admits that the loan application does not appear to include information related to Alekseyeff.  Except as expressly admitted, denied.**

**88.** At the time ELIZAROV submitted LOAN APPLICATION to GOLDWATER, ALEKSEYEFF had no reason to review LOAN APPLICATION because none of ALEKSEYEFF's personal information appeared on LOAN APPLICATION.

**ANSWER:  Goldwater objects to this Request for Admission as impermissibly compound.  Goldwater further objects to this request as vague because it is unclear what Elizarov considers to be "Alekseyeff's personal information."  Subject to and without waiving its objections, Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating Alekseyeff's motivations ultimately resides with Alekseyeff, Elizarov, and third parties.**

**89.** At the time ELIZAROV submitted LOAN APPLICATION to GOLDWATER, ALEKSEYEFF had no reason to review LOAN APPLICATION because ALEKSEYEFF had no business relationship with GOLDWATER.

**ANSWER:  Goldwater objects to this Request for Admission as impermissibly compound.   Subject to and without waiving its objections, Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission. Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating Alekseyeff's motivations ultimately resides with Alekseyeff, Elizarov, and third parties.**

**90.** In GOLDWATER's experience, at the time ELIZAROV submitted LOAN APPLICATION to GOLDWATER, it was common for a married person to apply for a mortgage loan based solely on the person's personal information without also including the spouse's personal information.

**ANSWER:  Goldwater objects to this Request for Admission as an incomplete hypothetical.  Goldwater further objects to this request as irrelevant and overbroad, as Goldwater's routine business practices are not at issue in this litigation, and the scope of this request is so broad that it cannot fairly be responded to under Rule 36 of the Federal Rules of Civil Procedure.**

**91**. At the time ELIZAROV submitted LOAN APPLICATION to GOLDWATER, ALEKSEYEFF was not aware that ELIZAROV had planned to include any false statements of fact in LOAN APPLICATION.

**ANSWER: Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission. Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's knowledge ultimately resides with Alekseyeff and Elizarov.**

**92**. At the time ELIZAROV submitted LOAN APPLICATION to GOLDWATER, ALEKSEYEFF was not aware that ELIZAROV had planned to omit from LOAN APPLICATION a reference CIVIL ACTION.

**ANSWER: Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission. Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's knowledge ultimately resides with Alekseyeff and Elizarov.**

**93**. At the time ELIZAROV submitted LOAN APPLICATION to GOLDWATER, ALEKSEYEFF was not aware that ELIZAROV had planned to omit from LOAN APPLICATION a reference to ELIZAROV's outstanding debt to the Internal Revenue Service.

**ANSWER: Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission. Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's knowledge ultimately resides with Alekseyeff and Elizarov.**

**94**. At the time ELIZAROV submitted LOAN APPLICATION to GOLDWATER, ALEKSEYEFF was not aware that ELIZAROV had planned to report ELIZAROV's marital status as "single."

**ANSWER: Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission. Goldwater has conducted a reasonable inquiry of**

the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's knowledge ultimately resides with Alekseyeff and Elizarov.

**95.** At the time ELIZAROV submitted LOAN APPLICATION to GOLDWATER, ALEKSEYEFF had not assisted ELIZAROV to complete LOAN APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's actions ultimately resides with Alekseyeff and Elizarov.**

**96.** No WITNESS saw ALEKSEYEFF help ELIZAROV complete any information in LOAN APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to any witnesses to Alekseyeff's actions ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**97.** No WITNESS heard ALEKSEYEFF help ELIZAROV complete any information in LOAN APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to any witnesses to Alekseyeff's actions ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**98.** ALEKSEYEFF has never verbally told any WITNESS that ALEKSEYEFF helped ELIZAROV complete any information in LOAN APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information**

relating to Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.

**99.** ALEKSEYEFF has never told any WITNESS in writing that ALEKSEYEFF helped ELIZAROV complete any information in LOAN APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**100.** ELIZAROV has never verbally told any WITNESS that ALEKSEYEFF helped ELIZAROV complete any information in LOAN APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Elizarov's communications with third parties ultimately resides with Elizarov and those third parties.**

**101.** ELIZAROV has never told any WITNESS in writing that ALEKSEYEFF helped ELIZAROV complete any information in LOAN APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Elizarov's communications with third parties ultimately resides with Elizarov and those third parties.**

**102.** At the time ELIZAROV submitted LOAN APPLICATION to GOLDWATER, ALEKSEYEFF had not read LOAN APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of**

the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's actions ultimately resides with Alekseyeff and Elizarov.

**103.** No WITNESS saw ALEKSEYEFF read LOAN APPLICATION before ELIZAROV submitted LOAN APPLICATION to GOLDWATER.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to witnesses of Alekseyeff's actions ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**104.** ALEKSEYEFF has never verbally told any WITNESS that ALEKSEYEFF had read LOAN APPLICATION before ELIZAROV submitted LOAN APPLICATION to GOLDWATER.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**105.** ALEKSEYEFF has never told any WITNESS in writing that ALEKSEYEFF had read LOAN APPLICATION before ELIZAROV submitted LOAN APPLICATION to GOLDWATER.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**106.** ELIZAROV has never verbally told any WITNESS that ALEKSEYEFF had read LOAN APPLICATION before ELIZAROV submitted LOAN APPLICATION to GOLDWATER.

**ANSWER: Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission. Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Elizarov's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**107.** ELIZAROV has never told any WITNESS in writing that ALEKSEYEFF had read LOAN APPLICATION before ELIZAROV submitted LOAN APPLICATION to GOLDWATER.

**ANSWER: Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission. Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Elizarov's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**108.** At the time ELIZAROV submitted LOAN APPLICATION to GOLDWATER, ALEKSEYEFF had not discussed, orally or in writing, the contents of LOAN APPLICATION with ELIZAROV.

**ANSWER: Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission. Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to communications between Alekseyeff and Elizarov ultimately resides with Alekseyeff, Elizarov, and any witnesses to those communications.**

**109.** No WITNESS heard ALEKSEYEFF discuss the content of LOAN APPLICATION with ELIZAROV before ELIZAROV submitted LOAN APPLICATION to GOLDWATER.

**ANSWER: Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission. Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information**

relating to communications between Alekseyeff and Elizarov ultimately resides with Alekseyeff, Elizarov, and any witnesses to those communications.

**110.** ALEKSEYEFF has never verbally told any WITNESS that ALEKSEYEFF had discussed the contents of LOAN APPLICATION with ELIZAROV before ELIZAROV submitted LOAN APPLICATION to GOLDWATER.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**111.** ALEKSEYEFF has never told any WITNESS in writing that ALEKSEYEFF had discussed the contents of LOAN APPLICATION with ELIZAROV before ELIZAROV submitted LOAN APPLICATION to GOLDWATER.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**112.** ELIZAROV has never verbally told any WITNESS that ALEKSEYEFF had discussed the contents of LOAN APPLICATION with ELIZAROV before ELIZAROV submitted LOAN APPLICATION to GOLDWATER.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Elizarov's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**113.** ELIZAROV has never told any WITNESS in writing that ALEKSEYEFF had discussed the contents of LOAN APPLICATION with ELIZAROV before ELIZAROV submitted LOAN APPLICATION to GOLDWATER

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Elizarov's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**114.** Prior to April 1, 2021, ALEKSEYEFF had never orally discussed the contents of LOAN APPLICATION with any WITNESS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**115.** Prior to April 1, 2021, ALEKSEYEFF had never discussed the contents of LOAN APPLICATION with any WITNESS in writing.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**116.** Prior to April 1, 2021, ALEKSEYEFF had never verbally discussed the contents of LOAN APPLICATION with GOLDWATER.

**ANSWER:  Admitted.**

**117.** Prior to April 1, 2021, ALEKSEYEFF had never discussed the contents of LOAN APPLICATION with GOLDWATER in writing.

**ANSWER:  Admitted.**

**118**. At the time ELIZAROV submitted LOAN APPLICATION to GOLDWATER, ALEKSEYEFF had not orally agreed with ELIZAROV that ELIZAROV include any false statements in LOAN APPLICATION.

**ANSWER: Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission. Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to agreements between Alekseyeff and Elizarov ultimately resides with Alekseyeff and Elizarov.**

**119**. At the time ELIZAROV submitted LOAN APPLICATION to GOLDWATER, ALEKSEYEFF had not agreed with ELIZAROV in writing that ELIZAROV include any false statements in LOAN APPLICATION.

**ANSWER: Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission. Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to agreements between Alekseyeff and Elizarov ultimately resides with Alekseyeff and Elizarov.**

**120**. No WITNESS was present when ALEKSEYEFF agreed with ELIZAROV, at any time before ELIZAROV submitted LOAN APPLICATION to GOLDWATER, that ELIZAROV include any false statements in LOAN APPLICATION.

**ANSWER: Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission. Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to agreements between Alekseyeff and Elizarov ultimately resides with Alekseyeff and Elizarov, and any witnesses thereto.**

**121.** ALEKSEYEFF has never verbally told any WITNESS that ALEKSEYEFF had agreed with ELIZAROV, at any time before ELIZAROV submitted LOAN APPLICATION to GOLDWATER, that ELIZAROV include any false statements in LOAN APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

122. ALEKSEYEFF has never told any WITNESS in writing that that ALEKSEYEFF had agreed with ELIZAROV, at any time before ELIZAROV submitted LOAN APPLICATION to GOLDWATER, that ELIZAROV include any false statements in LOAN APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

123. ELIZAROV has never verbally told any WITNESS that ALEKSEYEFF had agreed with ELIZAROV, at any time before ELIZAROV submitted LOAN APPLICATION to GOLDWATER, that ELIZAROV include any false statements in LOAN APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Elizarov's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

124. ELIZAROV has never told any WITNESS in writing that that ALEKSEYEFF had agreed with ELIZAROV, at any time before ELIZAROV submitted LOAN APPLICATION to GOLDWATER, that ELIZAROV include any false statements in LOAN APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Elizarov's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

125.    At the time ELIZAROV submitted LOAN APPLICATION to GOLDWATER, ALEKSEYEFF had not agreed with ELIZAROV that ELIZAROV fail to report, on LOAN APPLICATION, that ELIZAROV was a plaintiff in CIVIL ACTION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to agreements between Alekseyeff and Elizarov ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

126.    At the time ELIZAROV submitted LOAN APPLICATION to GOLDWATER, ALEKSEYEFF had not agreed with ELIZAROV that ELIZAROV fail to report, in LOAN APPLICATION, that ELIZAROV owed a tax debt to the Internal Revenue Service.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to agreements between Elizarov and Alekseyeff ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

127.    At the time ELIZAROV submitted LOAN APPLICATION to GOLDWATER, ALEKSEYEFF had not agreed with ELIZAROV that ELIZAROV report ELIZAROV's marital status as "single."

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of**

**the materials in its possession, custody, or control, but discoverable information relating to agreements between Alekseyeff and Elizarov ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**128.** At the time ELIZAROV submitted LOAN APPLICATION to GOLDWATER, ALEKSEYEFF did not intend that ELIZAROV include any false statements in LOAN APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating Alekseyeff's intentions ultimately resides with Alekseyeff, Elizarov, and third parties.**

**129.** At the time ELIZAROV submitted LOAN APPLICATION to GOLDWATER, ALEKSEYEFF did not intend that ELIZAROV fail to report, on LOAN APPLICATION, that ELIZAROV was a plaintiff in CIVIL ACTION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating Alekseyeff's intentions ultimately resides with Alekseyeff, Elizarov, and third parties.**

**130.** At the time ELIZAROV submitted LOAN APPLICATION to GOLDWATER, ALEKSEYEFF did not intend that ELIZAROV report ELIZAROV's marital status as "single."

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating Alekseyeff's intentions ultimately resides with Alekseyeff, Elizarov, and third parties.**

**131.** GOLDWATER alleged a conspiracy claim against ALEKSEYEFF relating to ELIZAROV'S statements in the LOAN APPLICATION based solely on ALEKSEYEFF's status as ELIZAROV's registered domestic partner in California.

**ANSWER: Goldwater objects to this Request for Admission as improperly compound.  Subject to and without waiving its objections, Goldwater denies this Request for Admission.  Goldwater's conspiracy claim was based on credible evidence of a conspiracy, which was outlined in the Amended Complaint.**

**132.** At the time ELIZAROV submitted FORBEARANCE APPLICATION, ALEKSEYEFF was not aware that ELIZAROV had planned to include any false information on FORBEARANCE APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating Alekseyeff's knowledge ultimately resides with Alekseyeff, Elizarov, and third parties.**

**133.** At the time ELIZAROV submitted FORBEARANCE APPLICATION, ALEKSEYEFF had not assisted ELIZAROV to complete FORBEARANCE APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating Alekseyeff's actions ultimately resides with Alekseyeff, Elizarov, and third parties.**

**134.** No WITNESS was present when ALEKSEYEFF assisted ELIZAROV to complete FORBEARANCE APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information**

relating Alekseyeff's actions and any witnesses of such ultimately resides with Alekseyeff, Elizarov, and those witnesses.

**135.** ALEKSEYEFF has never verbally told any WITNESS that ALEKSEYEFF assisted ELIZAROV to complete FORBEARANCE APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**136.** ALEKSEYEFF has never told any WITNESS in writing that ALEKSEYEFF assisted ELIZAROV to complete FORBEARANCE APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**137.** ELIZAROV has never verbally told any WITNESS that ALEKSEYEFF assisted ELIZAROV to complete FORBEARANCE APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Elizarov's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**138.** ELIZAROV has never told any WITNESS in writing that ALEKSEYEFF assisted ELIZAROV to complete FORBEARANCE APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information**

relating to Elizarov's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.

**139.** At the time ELIZAROV submitted FORBEARANCE APPLICATION, ALEKSEYEFF had not read FORBEARANCE APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's actions ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**140.** No WITNESS was present when ALEKSEYEFF read FORBEARANCE APPLICATION before ELIZAROV submitted FORBEARANCE APPLICATION to GOLDWATER.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to any witnesses to Alekseyeff's actions ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**141.** ALEKSEYEFF has never verbally told any WITNESS that ALEKSEYEFF had read FORBEARANCE APPLICATION before ELIZAROV submitted FORBEARANCE APPLICATION to GOLDWATER.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**142.** ALEKSEYEFF has never told any WITNESS in writing that ALEKSEYEFF had read FORBEARANCE APPLICATION before ELIZAROV submitted FORBEARANCE APPLICATION to GOLDWATER.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**143.** ELIZAROV has never verbally told any WITNESS that ALEKSEYEFF had read FORBEARANCE APPLICATION before ELIZAROV submitted FORBEARANCE APPLICATION to GOLDWATER.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Elizarov's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**144.** ELIZAROV has never told any WITNESS in writing that ALEKSEYEFF had read FORBEARANCE APPLICATION before ELIZAROV submitted FORBEARANCE APPLICATION to GOLDWATER.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Elizarov's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**145.** At the time ELIZAROV submitted FORBEARANCE APPLICATION, ALEKSEYEFF had not discussed, orally or in writing, the contents of FORBEARANCE APPLICATION with ELIZAROV.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information**

relating to Alekseyeff's communications with Elizarov ultimately resides with Alekseyeff, Elizarov, and any witnesses.

**146.** No WITNESS was present when ALEKSEYEFF discussed, orally or in writing, the contents of FORBEARANCE APPLICATION with ELIZAROV before ELIZAROV submitted FORBEARANCE APPLICATION to GOLDWATER.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to witnesses of Alekseyeff's actions ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**147.** ALEKSEYEFF has never verbally told any WITNESS that ALEKSEYEFF had discussed, orally or in writing, the contents of FORBEARANCE APPLICATION with ELIZAROV before ELIZAROV submitted FORBEARANCE APPLICATION to GOLDWATER.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**148.** ALEKSEYEFF has never told any WITNESS in writing that ALEKSEYEFF had discussed, orally or in writing, the contents of FORBEARANCE APPLICATION with ELIZAROV before ELIZAROV submitted FORBEARANCE APPLICATION to GOLDWATER.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**149.** ELIZAROV has never verbally told any WITNESS that ALEKSEYEFF had discussed, orally or in writing, the contents of FORBEARANCE APPLICATION with ELIZAROV before ELIZAROV submitted FORBEARANCE APPLICATION to GOLDWATER.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Elizarov's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**150.** ELIZAROV has never told any WITNESS in writing that ALEKSEYEFF had discussed, orally or in writing, the contents of FORBEARANCE APPLICATION with ELIZAROV before ELIZAROV submitted FORBEARANCE APPLICATION to GOLDWATER.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Elizarov's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**151.** At the time ELIZAROV submitted FORBEARANCE APPLICATION, ALEKSEYEFF had not agreed with ELIZAROV that ELIZAROV include any false statement of act in FORBEARANCE APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to agreements between Alekseyeff and Elizarov ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**152.** No WITNESS was present when ALEKSEYEFF agreed with ELIZAROV, before ELIZAROV submitted FORBEARANCE APPLICATION to GOLDWATER,

that ELIZAROV include any false statement of fact in FORBEARANCE
APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or
deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of
the materials in its possession, custody, or control, but discoverable information
relating to witnesses to agreements between Alekseyeff and Elizarov ultimately
resides with Alekseyeff, Elizarov, and any witnesses.**

**153.** ALEKSEYEFF has never verbally told any WITNESS that ALEKSEYEFF
had agreed with ELIZAROV, before ELIZAROV submitted FORBEARANCE
APPLICATION to GOLDWATER, that ELIZAROV include any false statement of fact
in FORBEARANCE APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or
deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of
the materials in its possession, custody, or control, but discoverable information
relating to Alekseyeff's communications with witnesses ultimately resides with
Alekseyeff, Elizarov, and any witnesses.**

**154.** ALEKSEYEFF has never told any WITNESS in writing that ALEKSEYEFF
had agreed with ELIZAROV, before ELIZAROV submitted FORBEARANCE
APPLICATION to GOLDWATER, that ELIZAROV include any false statement of fact
in FORBEARANCE APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or
deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of
the materials in its possession, custody, or control, but discoverable information
relating to Alekseyeff's communications with witnesses ultimately resides with
Alekseyeff, Elizarov, and any witnesses.**

**155.** ELIZAROV has never verbally told any WITNESS that ALEKSEYEFF had
agreed with ELIZAROV, before ELIZAROV submitted FORBEARANCE

APPLICATION to GOLDWATER, that ELIZAROV include any false statement of fact in FORBEARANCE APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Elizarov's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**156.** ELIZAROV has never told any WITNESS in writing that ALEKSEYEFF had agreed with ELIZAROV, before ELIZAROV submitted FORBEARANCE APPLICATION to GOLDWATER, that ELIZAROV include any false statement of fact in FORBEARANCE APPLICATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Elizarov's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**157.** At the time ELIZAROV submitted FORBEARANCE APPLICATION, ALEKSEYEFF had not intended that ELIZAROV include any false statement of fact in FORBEARANCE INFORMATION.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating Alekseyeff's intentions ultimately resides with Alekseyeff, Elizarov, and third parties.**

**158.** None of ALEKSEYEFF's personal information appeared on FORBEARANCE APPLICATION.

**ANSWER:  Goldwater objects to this request as vague because it is unclear what information Elizarov considers to be "Alekseyeff's personal information."**

**Subject to and without waiving its objections, Goldwater states that the forbearance application appears to contain information related to Elizarov.  Except as expressly admitted, denied.**

**159.** ALEKSEYEFF had no reason to review FORBEARANCE APPLICATION before ELIZAROV submitted FORBEARANCE APPLICATION to GOLDWATER because none of ALEKSEYEFF's information appeared on FORBEARANCE APPLICATION.

**ANSWER:  Goldwater objects to this Request for Admission as impermissibly compound.   Subject to and without waiving its objections, Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission. Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating Alekseyeff's motivations ultimately resides with Alekseyeff, Elizarov, and third parties.**

**160.** ALEKSEYEFF had no reason to review FORBEARANCE APPLICATION before ELIZAROV submitted FORBEARANCE APPLICATION to GOLDWATER because none of ALEKSEYEFF had no business relationship with GOLDWATER.

**ANSWER:  Goldwater objects to this Request for Admission as impermissibly compound.   Subject to and without waiving its objections, Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission. Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating Alekseyeff's motivations ultimately resides with Alekseyeff, Elizarov, and third parties.**

**161.** Prior to April 1, 2021, ALEKSEYEFF had not verbally discussed ELIZAROV's statements in FORBEARANCE APPLICATION with any WITNESS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information**

relating to Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.

**162.** Prior to April 1, 2021, ALEKSEYEFF had not discussed in writing ELIZAROV's statements in FORBEARANCE APPLICATION with any WITNESS.

**ANSWER: Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission. Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

**163.** Prior to April 1, 2021, ALEKSEYEFF had not verbally discussed ELIZAROV's statements in FORBEARANCE APPLICATION with GOLDWATER.

**ANSWER: Denied. On occasion, Alekseyeff discussed Elizarov's forbearance status with Goldwater, which necessarily includes the information contained in his forbearance application, with Goldwater employees.**

**164.** Prior to April 1, 2021, ALEKSEYEFF had not discussed in writing ELIZAROV's statements in FORBEARANCE APPLICATION with GOLDWATER.

**ANSWER: Denied. On occasion, Alekseyeff discussed Elizarov's forbearance status with Goldwater, which necessarily includes the information contained in his forbearance application, with Goldwater employees.**

**165.** GOLDWATER alleged a conspiracy claim against ALEKSEYEFF relating to ELIZAROV'S statements in the FORBEARANCE APPLICATION based solely on ALEKSEYEFF's status as ELIZAROV's registered domestic partner in California.

**ANSWER: Goldwater objects to this Request for Admission as improperly compound. Subject to and without waiving its objections, Goldwater denies this Request for Admission. Goldwater's conspiracy claim was based on credible evidence of a conspiracy, which was outlined in the Amended Complaint.**

**166.** ALEKSEYEFF did not directly participate in SETTLEMENT NEGOTIATIONS.

**ANSWER:  Goldwater objects to this Request for Admission to the extent that the word "participate" is vague.  It is admitted that Alekseyeff did not communicate with Goldwater's employees in the conversations between Goldwater and Elizarov in the last weeks of March 2021.  Except as expressly admitted, denied.**

167. No WITNESS was present when ALEKSEYEFF directly participated in SETTLEMENT NEGOTIATIONS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to witnesses of Alekseyeff's actions ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

168. ALEKSEYEFF has never verbally told any WITNESS that ALEKSEYEFF directly participated in SETTLEMENT NEGOTIATIONS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

169. ALEKSEYEFF has never told any WITNESS in writing that ALEKSEYEFF directly participated in SETTLEMENT NEGOTIATIONS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

170. ELIZAROV has never verbally told any WITNESS that ALEKSEYEFF directly participated in SETTLEMENT NEGOTIATIONS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Elizarov's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

171. ELIZAROV has never told any WITNESS in writing that ALEKSEYEFF directly participated in SETTLEMENT NEGOTIATIONS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Elizarov's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and any witnesses.**

172. ALEKSEYEFF has never said anything to GOLDWATER, orally or in writing, concerning ELIZAROV's financial ability to pay GOLDWATER the outstanding loan balance due under the NOTE from the proceeds of the sale of PALM SPRINGS HOUSE.

**ANSWER:   Denied.  As defined in Elizarov's Requests for Admission, the term "Goldwater" could be construed to include Goldwater's counsel, and Alekseyeff has communicated with Goldwater's counsel regarding Elizarov's financial ability to satisfy the outstanding balance due under the Note.**

173. Prior to April 1, 2021, ALEKSEYEFF was not aware that ELIZAROV had planned to make false statements of fact to GOLDWATER during SETTLEMENT NEGOTIATIONS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's knowledge ultimately resides with Alekseyeff, Elizarov, and third parties.**

**174.** Prior to April 1, 2021, ALEKSEYEFF had not discussed with ELIZAROV, orally or in writing, any statements that ELIZAROV made to GOLDWATER SETTLEMENT NEGOTIATIONS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating to Alekseyeff's communications with Elizarov ultimately resides with Alekseyeff, Elizarov, and third parties.**

**175.** No WITNESS was present when ALEKSEYEFF discussed with ELIZAROV, prior to April 1, 2021, any statements that ELIZAROV made to GOLDWATER during SETTLEMENT NEGOTIATIONS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information regarding any witnesses to Alekseyeff's communications with Elizarov ultimately resides with Alekseyeff, Elizarov, and third parties.**

**176.** ALEKSEYEFF has never verbally told any WITNESS that ALEKSEYEFF had discussed with ELIZAROV, prior to April 1, 2021, any statements that ELIZAROV made to GOLDWATER during SETTLEMENT NEGOTIATIONS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information regarding Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and third parties.**

**177.** ALEKSEYEFF has never told any WITNESS in writing that ALEKSEYEFF had discussed with ELIZAROV, prior to April 1, 2021, any statements that ELIZAROV made to GOLDWATER during SETTLEMENT NEGOTIATIONS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information regarding Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and third parties.**

178. ELIZAROV has never verbally told any WITNESS that ALEKSEYEFF had discussed with ELIZAROV, prior to April 1, 2021, any statements that ELIZAROV made to GOLDWATER during SETTLEMENT NEGOTIATIONS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information regarding Elizarov's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and third parties.**

179. ELIZAROV has never told any WITNESS in writing that ALEKSEYEFF had discussed with ELIZAROV, prior to April 1, 2021, any statements that ELIZAROV made to GOLDWATER during SETTLEMENT NEGOTIATIONS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information regarding Elizarov's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and third parties.**

180. Prior to April 1, 2021, ALEKSEYEFF had not verbally discussed with any WITNESS any statements that ELIZAROV made to GOLDWATER during SETTLEMENT NEGOTIATIONS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information**

regarding Alekseyeff's communications with witnesses ultimately resides with
Alekseyeff, Elizarov, and third parties.

**181.** Prior to April 1, 2021, ALEKSEYEFF had not discussed in writing with any
WITNESS any statements that ELIZAROV made to GOLDWATER during
SETTLEMENT NEGOTIATIONS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or
deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of
the materials in its possession, custody, or control, but discoverable information
regarding Alekseyeff's communications with witnesses ultimately resides with
Alekseyeff, Elizarov, and third parties.**

**182.** Prior to April 1, 2021, ALEKSEYEFF had not verbally discussed with
GOLDWATER any statements that ELIZAROV made to GOLDWATER during
SETTLEMENT NEGOTIATIONS.

**ANSWER:  Admitted.**

**183.** Prior to April 1, 2021, ALEKSEYEFF had not discussed in writing with
GOLDWATER any statements that ELIZAROV made to GOLDWATER during
SETTLEMENT NEGOTIATIONS.

**ANSWER:  Admitted.**

**184.** Prior to April 1, 2021, ALEKSEYEFF had not agreed with ELIZAROV that
ELIZAROV make any false statements of fact to GOLDWATER during SETTLEMENT
NEGOTIATIONS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or
deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of
the materials in its possession, custody, or control, but discoverable information
regarding agreements between Alekseyeff and Elizarov ultimately resides with
Alekseyeff, Elizarov, and third parties.**

**185.** No WITNESS was present when ALEKSEYEFF agreed with ELIZAROV, prior to April 1, 2021, that ELIZAROV make any false statements of fact to GOLDWATER during SETTLEMENT NEGOTIATIONS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information regarding witnesses to any agreements between Alekseyeff and Elizarov ultimately resides with Alekseyeff, Elizarov, and third parties.**

**186.** ALEKSEYEFF has never verbally told any WITNESS that ALEKSEYEFF had agreed with ELIZAROV, prior to April 1, 2021, that ELIZAROV make any false statements of fact to GOLDWATER during SETTLEMENT NEGOTIATIONS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information regarding Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and third parties.**

**187.** ALEKSEYEFF has never told any WITNESS in writing that ALEKSEYEFF had agreed with ELIZAROV, prior to April 1, 2021, that ELIZAROV make any false statements of fact to GOLDWATER during SETTLEMENT NEGOTIATIONS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information regarding Alekseyeff's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and third parties.**

**188.** ELIZAROV has never verbally told any WITNESS that ALEKSEYEFF had agreed with ELIZAROV, prior to April 1, 2021, that ELIZAROV make any false statements of fact to GOLDWATER during SETTLEMENT NEGOTIATIONS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information regarding Elizarov's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and third parties.**

189. ELIZAROV has never told any WITNESS in writing that ALEKSEYEFF had agreed with ELIZAROV, prior to April 1, 2021, that ELIZAROV make any false statements of fact to GOLDWATER during SETTLEMENT NEGOTIATIONS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information regarding Elizarov's communications with witnesses ultimately resides with Alekseyeff, Elizarov, and third parties.**

190. Prior to April 1, 2021, ALEKSEYEFF did not intend that ELIZAROV make any false statements of fact to GOLDWATER during SETTLEMENT NEGOTIATIONS.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating Alekseyeff's intentions ultimately resides with Alekseyeff, Elizarov, and third parties.**

191. ELIZAROV made statements to GOLDWATER during SETTLEMENT NEGOTIATIONS because ELIZAROV wanted to pay GOLDWATER less than the outstanding principal balance under THE LOAN and not because ELIZAROV wanted to prevent GOLDWATER from interfering with the sale of PALM SPRINGS HOUSE to Scott Howlett.

**ANSWER:  Goldwater objects to this Request for Admission as impermissibly compound.   Subject to and without waiving its objections, Goldwater lacks**

knowledge or information sufficient to admit or deny this Request for Admission. Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating Elizarov's intentions ultimately resides with Alekseyeff, Elizarov, and third parties.

**192.** GOLDWATER alleged a conspiracy claim against ALEKSEYEFF relating to ELIZAROV'S statements to GOLDWATER during SETTLEMENT NEGOTIATIONS based solely on ALEKSEYEFF's status as ELIZAROV's registered domestic partner in California

**ANSWER: Goldwater objects to this Request for Admission as improperly compound.  Subject to and without waiving its objections, Goldwater denies this Request for Admission.  Goldwater's conspiracy claim was based on credible evidence of a conspiracy, which was outlined in the Amended Complaint.**

**193.** Had ELIZAROV paid GOLDWATER $675,000.00 from the sale of PALM SPRINGS HOUSE to Scott Howlett, ELIZAROV would have had sufficient remaining proceeds to pay PRIOR DEBT in full.

**ANSWER:  Goldwater objects to this Request for Admission as improperly compound and as an incomplete hypothetical that does not state enough facts for Goldwater to make a reasonable inquiry sufficient to enable it to admit or deny this Request for Admission.  Subject to and without waiving its objections, Goldwater admits that Elizarov received $785,741.36 in proceeds from the sale of the Palm Springs house, which would have been sufficient to pay off the full balance of the Goldwater loan.  Except as expressly admitted, denied.**

**194.** Had ELIZAROV paid GOLDWATER the outstanding balance under NOTE from the sale of PALM SPRINGS HOUSE to Scott Howlett, ELIZAROV would have had independent funds to pay PRIOR DEBT in full.

**ANSWER:  Goldwater objects to this Request for Admission as improperly compound and as an incomplete hypothetical that does not state enough facts for Goldwater to make a reasonable inquiry sufficient to enable it to admit or deny this**

request.  Subject to and without waiving its objections, admits that Elizarov received $785,741.36 in proceeds from the sale of the Palm Springs house, which would have been sufficient to pay off the full balance of the Goldwater loan.  Goldwater states that it lacks knowledge or information sufficient to admit or deny the portion of this request related to Elizarov's independent funds.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information regarding Elizarov's finances ultimately resides with Elizarov and third parties.

**195.** ELIZAROV paid PRIOR DEBT because PRIOR DEBT matured in December 2020.

**ANSWER: Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information relating Elizarov's motivations ultimately resides with Elizarov, Alekseyeff, and third parties.**

**196.** ELIZAROV paid PRIOR DEBT without actual intent to hinder GOLDWATER.

**ANSWER:  Denied.  Evidence of Elizarov's intent to hinder Goldwater include the fact that the payment was made for the benefit of an insider, namely Alekseyeff.  At the time of the payment, this litigation had already commenced.  At the time of the payment, Elizarov had absconded and removed assets by purchasing a house for $630,000 cash in Florida using the proceeds from the sale of the Palm Springs House.**

**197.** ELIZAROV paid PRIOR DEBT without actual intent to delay GOLDWATER.

**ANSWER:  Denied.  Evidence of Elizarov's intent to hinder Goldwater include the fact that the payment was made for the benefit of an insider, namely Alekseyeff.  At the time of the payment, this litigation had already commenced.  At**

the time of the payment, Elizarov had absconded and removed assets by purchasing a house for $630,000 cash in Florida using the proceeds from the sale of the Palm Springs House.

**198.** ELIZAROV paid PRIOR DEBT without actual intent to defraud GOLDWATER.

**ANSWER:  Denied.  Evidence of Elizarov's intent to hinder Goldwater include the fact that the payment was made for the benefit of an insider, namely Alekseyeff.  At the time of the payment, this litigation had already commenced.  At the time of the payment, Elizarov had absconded and removed assets by purchasing a house for $630,000 cash in Florida using the proceeds from the sale of the Palm Springs House.**

**199.** ELIZAROV has no personal relationship with PRIOR LENDER.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information regarding Elizarov's relationship with the prior lender ultimately resides with Elizarov and the prior lender.**

**200.** ALEKSEYEFF has no personal relationship with PRIOR LENDER.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information regarding Alekseyeff's relationship with the prior lender ultimately resides with Alekseyeff and the prior lender.**

**201.** ALEKSEYEFF's relationship with PRIOR LENDER was that of lender-borrower and nothing else.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information**

regarding Alekseyeff's relationship with the prior lender ultimately resides with Alekseyeff and the prior lender.

**202.** ELIZAROV retained no control over the funds used to pay PRIOR DEBT.

**ANSWER:  Goldwater objects to this request as vague because it is not apparent if the request is discussing Elizarov's control of the funds prior to paying the debt or after.  Subject to and without waiving its objections, Goldwater admits that Elizarov had control over the funds used to pay the Prior Debt up until the time when the Prior Debt was paid.  Goldwater admits that Elizarov did not retain control over the funds after the payment was made.  Except as expressly admitted, denied.**

**203.** ALEKSEYEFF retained no control over the funds used to pay PRIOR DEBT.

**ANSWER:  Goldwater objects to this request as vague because it is not apparent if the request is discussing Elizarov's control of the funds prior to paying the debt or after.  Subject to and without waiving its objections, Goldwater admits that Alekseyeff had control over the funds used to pay the Prior Debt up until the time when the Prior Debt was paid.  Goldwater admits that Alekseyeff did not retain control over the funds after the payment was made.  Except as expressly admitted, denied.**

**204.** The payment of PRIOR DEBT did not transfer substantially all of ELIZAROV's assets.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny the portion of this request related to Elizarov's independent funds.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information regarding Elizarov's finances ultimately resides with Elizarov and third parties.**

**205.** ALEKSEYEFF received reasonably equivalent value for the funds used to pay PRIOR DEBT.

**ANSWER:  Goldwater objects to this request to the extent it suggests that Alekseyeff is the relevant individual for purposes of determining whether the payment of the Prior Debt was for reasonably equivalent value.  Subject to and without waiving its objections, Goldwater admits that Alekseyeff received the value of the $84,843.22, since Elizarov's payment of those funds satisfied a debt in the equivalent amount for the benefit of Alekseyeff.**

206. ELIZAROV received reasonably equivalent value for the funds used to pay PRIOR DEBT.

**ANSWER:  Denied.**

207. GOLDWATER does not contend that ELIZAROV paid PRIOR DEBT without receiving a reasonably equivalent value in exchange for the payment under California Civil Code section 3439.04, subdivision (a)(2).

**ANSWER:  Denied.  Goldwater contends that Elizarov did not receive reasonably equivalent value because Elizarov was not liable for the debt, which belonged to Alekseyeff.**

208. GOLDWATER does not contend that ELIZAROV paid PRIOR DEBT without receiving a reasonably equivalent value in exchange for the payment under California Civil Code section 3439.05.

**ANSWER:  Denied.  Goldwater contends that Elizarov did not receive reasonably equivalent value because Elizarov was not liable for the debt, which belonged to Alekseyeff.**

209. ELIZAROV did not participate in the transaction that resulted in the sale of PALM SPRINGS HOUSE to Scott Howlett in ELIZAROV's capacity as a licensed California Real Estate Broker.

**ANSWER:  Goldwater objects to this request as vague because it is unclear what conduct amounts to "participation."  Goldwater admits that Elizarov was not identified as a realtor on the transaction when the sale of the Palm Springs House to Howlett occurred.  Goldwater denies that Elizarov had no involvement**

whatsoever in his capacity as a broker, based on documents showing that Elizarov at one point appeared on marketing materials for the property.  Except as expressly admitted, denied.

210. At the time ELIZAROV paid PRIOR DEBT, ELIZAROV did not know that GOLDWATER had applied to the United States District Court for a temporary restraining order designed to freeze the proceeds from the sale of PALM SPRINGS HOUSE to Scott Howlett.

ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information regarding Elizarov's knowledge of the this litigation relationship with the prior lender ultimately resides with Alekseyeff and Elizarov.

211. GOLDWATER presented NOTE to ELIZAROV on a take-it-or-leave- it basis.

ANSWER:  Goldwater objects to the use of the phrase "take-it-or-leave-it" as vague.  Elizarov was not forced to obtain a mortgage from Goldwater, and Elizarov received substantial benefit in the form of a mortgage loan that enabled him to purchase the Palm Springs house.  Subject to and without waiving its objections, Goldwater admits that the Note was a standard document that, apart from the information specific to Elizarov's loan, was not drafted by Elizarov.  Except as expressly admitted, denied.

212. GOLDWATER drafted all the terms in NOTE.

ANSWER:  It is admitted that the Note was a standard document that, apart from the information specific to Elizarov's loan, was not drafted by Elizarov. Except as expressly admitted, denied.

213. ELIZAROV did not contribute any terms to NOTE.

ANSWER:  Goldwater objects to the word "contributed" as vague, because the Note did contain terms specific to Elizarov's loan.  Subject to and without

**waiving its objections, Goldwater admits that the Note was a standard document that, apart from the information specific to Elizarov's loan, was not drafted by Elizarov.  Except as expressly admitted, denied.**

214. GOLDWATER presented DEED OF TRUST to ELIZAROV on a take-it-or-leave-it basis.

**ANSWER:  Goldwater objects to the use of the phrase "take-it-or-leave-it" as vague.  Elizarov was not forced to obtain a mortgage from Goldwater, and Elizarov received substantial benefit in the form of a mortgage loan that enabled him to purchase the Palm Springs house.  Subject to and without waiving its objections, Goldwater admits that the Deed of Trust was a standard document that, apart from the information specific to Elizarov's loan, was not drafted by Elizarov.  Except as expressly admitted, denied.**

215. GOLDWATER drafted all the terms in DEED OF TRUST.

**ANSWER:  It is admitted that the Deed of Trust was a standard document that, apart from the information specific to Elizarov's loan, was not drafted by Elizarov.  Except as expressly admitted, denied.**

216. ELIZAROV did not contribute any terms to DEED OF TRUST.

**ANSWER:  Goldwater objects to the word "contributed" as vague, because the Deed of Trust did contain terms specific to Elizarov's loan.  Subject to and without waiving its objections, Goldwater admits that the Deed of Trust was a standard document that, apart from the loan terms specific to Elizarov's loan, was not drafted by Elizarov.  Except as expressly admitted, denied.**

Dated:  April 22, 2022.

WAGNER HICKS PLLC
By: ___/s/ Derek M. Bast_____
     Sean C. Wagner, Esq.
     Derek M. Bast, Esq.

     And

HILBERT & SATTERLY LLP
By: /s/ Joseph A. Levota_____
     John Forest Hilbert, Esq.
     Joseph A. LeVota, Esq.

*ATTORNEYS FOR GOLDWATER BANK, N.A.*

Exhibit Z - 62

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing by email and by United States Postal Service, addressed to the following person(s) at the following address(es):

Ilya Alekseyeff, Esq.
Loia, Inc. (APLC)
8721 Santa Monic Blvd., #119
West Hollywood, CA 90096
(213) 537-4592
Ilya@loia.legal
*Attorney for Defendant Artur Elizarov and Defendant pro per*

Howard D. Hall
Damian P. Richard
Hall Griffin, LLP
1851 East First Street, 10th Floor
Santa Ana, CA 92705-4052
hdhall@hallgriffin.com
drichard@hallgriffin.com
(714) 918-7000; Fax: (714) 918-6996
*Attorneys for Defendant Scott Howlett and Bank of the West*

Denis Shmidt
Nabil Bisharat
Orsus Gate, LLP
16 N Marengo Ave, Suite 316
Pasadena, CA 91101
(213) 973-2052
dshmidt@orsusgate.com
nbisrahat@orsusgate.cm
*Attorneys for Defendant Unison Agreement Corp.*

Date:  April 22, 2022

/s/ Derek M. Bast
Derek M. Bast

**Exhibit Z - 63**