Sean C. Wagner (Pro Hac Vice)
Derek M. Bast (Pro Hac Vice)
**WAGNER HICKS PLLC**
831 East Morehead Street, Suite 860
Charlotte, North Carolina 28202
Tel: (704) 705-7538
Fax: (704) 705-7787

John Forest Hilbert, Esq. (SBN 105827)
Joseph A. LeVota, Esq. (SBN 226760)
**HILBERT & SATTERLY LLP**
409 Camino del Rio S. #104
San Diego, California 92108
Telephone:  (619) 795-0300
Facsimile:   (619) 501-6855

Counsel for Plaintiff
GOLDWATER BANK, N.A.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDWATER BANK, N.A.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ARTUR ELIZAROV, ET AL.<br><br>　　　　　Defendants. | Case No. 5:21-cv-00616-JWH-SPx<br><br>**GOLDWATER BANK, N.A.'S OPPOSITION TO ARTUR ELIZAROV'S MOTION FOR SANCTIONS UNDER RULE 11**<br><br>Date:  October 21, 2022<br>Time:  9:00 A.M.<br>Judge:  Hon. John W. Holcomb |

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................... 5

II. BACKGROUND ........................................................................................... 6

  A. Allegations in the Complaint ................................................................... 6

  C. Procedural Posture ................................................................................... 8

III. LEGAL STANDARD .................................................................................. 10

IV. ARGUMENT AND AUTHORITIES ......................................................... 11

  A. Goldwater Performed a Reasonable Investigation Prior to Filing the Amended Complaint ................................................................................ 11

    1. Misrepresentations on the Loan Application ..................................... 12

    2. Misrepresentations on the Mortgage Assistance Application ......................... 14

    3. Misrepresentations at the Sale of the Subject Property .................................. 16

  B. Goldwater's Conspiracy Claim Satisfies Rule 11 Standards. ............................. 18

  C. Elizarov's Arguments Regarding the Unjust Enrichment Claim Repeats His Motion to Dismiss Arguments. ............................................................... 21

  D. Goldwater's Fraudulent Transfer Claim Satisfies Rule 11 Standards. ................ 22

  IV. Sanctions Against Goldwater Are Unwarranted .................................................. 24

  V. Sanctions Should be Entered Against Elizarov. ................................................... 26

VI. CONCLUSION .......................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F2d 32 (2nd Cir. 1992)............ 24

*Black v. Sullivan*, 48 Cal. App. 3d 557 (1975) ................................................................ 19

*Burnette v. Godshall,* 828 F. Supp. 1439 (N.D. Cal. 1993), *aff'd sub nom. Burnette v.*
  *Lockheed Missiles & Space Co.*, 72 F.3d 766 (9th Cir. 1995)..................................... 11

*Conn v. Borjorquez*, 967 F2d 1418 (9th Cir. 1992)........................................................ 24

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S. Ct. 2447, 110 L. Ed. 2d 359
  (1990)............................................................................................................... 10, 11

*CSC Consulting, Inc. v. Tosco Ref. Co.*, 19 F. App'x 698 (9th Cir. 2001) .................... 23

*Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, 260 Cal.Rptr. 183, 775 P.2d 508 21

*Douglas v. TD Bank USA*, No. 3:20-CV-00395-JR, 2021 WL 5861558 (D. Or. Aug. 11,
  2021)................................................................................................................. 10, 11

*Eisen v. Tavangarian*, 36 Cal. App. 5th 626, 248 Cal. Rptr. 3d 744 (2019)................. 23

*Estate of Blue v. Cty. of Los Angeles*, 120 F.3d 982 (9th Cir. 1997)............................. 10

*GN Resound A/S v. Callpod, Inc.,* No. C 11-04673 SBA, 2013 WL 5443046 (N.D. Cal.
  Sept. 30, 2013).................................................................................................... 11

Golden Eagle Distrib. Corp. v. Burroughs Corp., 801 F.2d 1531 (9th Cir. 1986). ........ 10

*Golden Gate Way, LLC v. Stewart*, No. C 09-04458 DMR, 2011 WL 3667496 (N.D.
  Cal. Aug. 22, 2011) ........................................................................................ 11, 14

*Grant v. Aurora Loan Servs., Inc.,* 736 F. Supp. 2d 1257 (C.D. Cal. 2010).................. 18

*Halaco Engineering Co. v. Costle* 843 F2d 376 (9th Cir. 1988)................................... 25

*Healey v. Chelsea Resources, Ltd.*, 947 F.2d 611 (2d Cir.1991) ................................. 10

*Hohu v. Hatch*, 940 F. Supp. 2d 1161 (N.D. Cal. 2013) ................................................ 9

*In re Landes*, 627 B.R. 144 (Bankr. E.D. Cal. 2021) .................................................... 23

*Kroger v. Baur*, 46 Cal.App.2d 801, 117 P.2d 50 (Cal. App. 1941) ............................ 17

*Lyons v. Sec. Pac. Nat. Bank*, 40 Cal. App. 4th 1001 (1995), *as modified on denial of*
  *reh'g* (Nov. 30, 1995).......................................................................................... 24

*Massengale v. Ray* 267 F.3d 1298 (11th Cir. 2001) ........................................ 25

*Mosier v. Southern Cal. Phys. Ins. Exch.*, 63 Cal. App. 4th 1022, 74 Cal.Rptr.2d 550
  (Cal. App. 1998) ...................................................................... 21

*Operating Eng'r Pension Tr. v. A-C Co.*, 859 F.2d 1336 (9th Cir. 1988).... 10, 22, 23, 24

*Patelco Credit Union v. Sahni* 262 F3d 897 (9th Cir. 2001)............................ 26

*Patterson v. Aiken*, 841 F.2d 386 (11th Cir. 1988)........................................ 25

*Pavicich v. Santucci*, 85 Cal. App. 4th 382, 102 Cal. Rptr. 2d 125 (2000)................ 21

*Rachel v. Banana Rep. Inc.*, 831 F.2d 1503 (9th Cir.1987) ............................ 11

*Rickley v. Goodfriend*, 212 Cal. App. 4th 1136 (2013) ............................ 19, 20

*Small v. Fritz Companies, Inc.,* 30 Cal. 4th 167, 65 P.3d 1255 (2003)........................ 18

*Storz Mgmt. Co. v. Carey*, No. 2:18-CV-00068-TLN-DB, 2021 WL 795678 (E.D. Cal.
  Mar. 2, 2021) ........................................................................ 23

*Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 702 P.2d 212 (1985)............................ 17, 18

*Thrasio, LLC v. Boosted Commerce Inc.*, No. 21-CV-01337-CBM-SK, 2022 WL
  2285514 (C.D. Cal. Apr. 22, 2022) ................................................ 22

*U.S. v. Shaffer Equip. Co.*, 11 F3d 450 (4th Cir. 1993)................................ 25

*Yoo v. Arnold,* No. CV0907483MMMCWX, 2010 WL 11597358 (C.D. Cal. Aug. 13,
  2010) .................................................................................. 18

**Other Authorities**

Committee Notes on Amendments to Federal Rules of Civil Procedure (1993) 146 FRD
  401 .............................................................................. 24, 25, 26

**Rules**

FED.R. CIV. P. 11 .................................................................. passim

# I.  INTRODUCTION[1]

Defendant Artur Elizarov's ("Elizarov's") Motion for Sanctions under Rule 11 (the "Motion") is an egregious abuse of the standard for sanctions. Presumably unable to defeat Goldwater's claims on the merits, Elizarov has resorted to attacking the basis for Goldwater's pleadings under Rule 11 by presenting one-sided evidence to the Court and asking for dispositive sanctions as to most of the claims against him. The fundamental flaw with Elizarov's arguments is that he simply ignores key facts, rehashes legal arguments previously rejected by this Court, and attempts to transmogrify disputed fact issues into a vehicle to seek Rule 11 sanctions. Even more, Elizarov argues that there is absolutely no evidentiary basis to support Goldwater's claims, while at the same time refusing to respond to written discovery requests seeking the very evidence he claims does not exist on various grounds, including the Fifth Amendment, which the Court recently rejected.  As set forth more fully herein, the evidence obtained following the Court's ruling demonstrates that Elizarov has been in possession and is aware of evidence that squarely supports the very claims he demanded that Goldwater dismiss as part of his Rule 11 correspondence. The reality is that Goldwater conducted a reasonable investigation prior to filing the Amended Complaint and, notwithstanding Elizarov's attempts to stonewall in discovery, Goldwater has obtained significant evidence in support of its claims, further supporting its allegations that Elizarov, with the assistance of his spouse and attorney, Mr. Alekseyeff, engaged in a coordinated, fraudulent course of conduct, which ultimately culminated in the diversion and expeditious dissipation of $785,741.36 of sale proceeds that Goldwater seeks in this litigation.  As set forth below, the Court should deny Elizarov's unwarranted, frivolous Motion and award Goldwater its fees and costs.

---

[1] In citing to filings in this matter, this brief uses the pagination accorded each document in CM-ECF, rather than the pagination used in the party documents themselves.

## II. BACKGROUND

### A.   ALLEGATIONS IN THE COMPLAINT

This matter arises from a mortgage loan made by Goldwater to Elizarov on July 31, 2019 and secured by real property located at 291 W. Overlook Road, Palm Springs, California, 92264 (the "Palm Springs Property").  (Am. Compl., ¶ 12, ECF No. 44).  In relevant part, Goldwater alleges that Elizarov made numerous material misrepresentations to Goldwater, including (1) as part of his initial loan application, Elizarov misrepresented his marital status, whether he was party to litigation, and whether he was delinquent or in default on federal debt (Am. Compl., ¶¶ 25–26, 28-31, ECF No. 44); (2) after falling behind on his mortgage, Elizarov misrepresented his income and assets, as well as his intent to utilize the property as his primary residence, in his Mortgage Assistance Application (Am. Compl., ¶¶ 36, 38-46, ECF No. 44); and (3) as part of discussions regarding Elizarov's sale of the Palm Springs Property, Elizarov falsely claimed that the property was subject to a $107,270.00 mechanics' lien, there were insufficient funds to complete the closing, that the transaction had fallen through, and that he would pay Goldwater a short payoff amount to facilitate the close of the transaction (Am. Compl. ¶¶ 51-69, ECF No. 44).  Goldwater alleges both that these representations were false, material, and reasonably relied upon to Goldwater's detriment.  (Am. Compl. ¶¶ 59-69, ECF No. 44).  Elizarov ultimately sold the Palm Springs Property to Defendant Scott Howlett on March 25, 2021, by a Grant Deed that was recorded on or around March 29, 2021. (Am. Compl., ¶ 54, ECF No. 44).   In subsequent communications with Goldwater, Elizarov denied that the sale had in fact occurred, and Goldwater never received any of the proceeds from the sale of the Subject Property.  (Am. Compl., ¶ 56–57, ECF No. 44).  Elizarov in fact received a payout of $785,741.37 in proceeds from the sale of the Subject Property, which is in excess of Goldwater's full payoff demand to the escrow company. (Am. Compl., ¶ 61, ECF No. 44).

After discovering the circumstances of the sale of the Subject Property, Goldwater made a demand on Elizarov on April 1, 2021, to return the promised funds.  (Am. Compl.,

¶ 69. ECF No. 44). Elizarov ignored Goldwater's demand and instead, just five days later, on April 6, 2021, entered into a contract for the all-cash purchase of real property in Wilton Manors, Florida (the "Wilton Manors Property") for an amount of $630,000.00. (Am. Compl., ¶ 76, ECF No. 44). The purchase of the Wilton Manors Property closed on April 16, 2021, and Elizarov used the proceeds of the sale of the Subject Property for the purchase. (Am. Compl., ¶¶ 77–78, ECF No. 44). Four days later, on the same day the Court entered an Temporary Restraining Order prohibiting the further dissipation of the proceeds of the Palm Springs Property, Elizarov spent $84,843.22 of the remaining proceeds to pay off a loan that belonged to Alekseyeff. (Am. Compl., ¶¶ 79–80, ECF No. 44).

Throughout the litigation thus far, Elizarov has repeatedly stated that Elizarov had no obligation to repay Goldwater until Goldwater formally accelerated the amounts due under the Deed of Trust. While Goldwater contends that Elizarov's actions clearly indicated he never had any intention of repaying the Goldwater Loan, Goldwater nevertheless send a Notice of Acceleration to Elizarov on May 12, 2021. (Am. Compl., ¶ 81, ECF No. 44). The Notice of Acceleration demanded that Elizarov make payment in full of all amounts owed under the Note and Deed of Trust within thirty (30) days, and Elizarov never paid those amounts. (Am. Compl., ¶ 81, ECF No. 44). On the basis of the above allegations, Goldwater's Amended Complaint asserts claims against Elizarov for (1) breach of contract, (2) unjust enrichment, (3) fraud, (4) fraudulent transfer, and (5) conspiracy.

**B.    Pre-Filing Investigation**

As an initial matter, Goldwater disputes the unsupported contention that it failed to perform a reasonable investigation under the circumstances prior to filing the Amended Complaint. Prior to filing the Amended Complaint, Goldwater performed a detailed investigation into the facts of this case, including (1) conducting interviews with relevant witnesses, (2) reviewing the loan origination and servicing files, (3) reviewing communications between Goldwater personnel and Elizarov in the possession, custody,

and/or control of Goldwater, (4) reviewing account records produced by Ally Bank, (5) reviewing documents produced by Escrow of the West, (6) discussing the background history of the loan, as well as communications with Elizarov and his counsel, with Unison representatives, (7) reviewing the six declarations filed by Defendant Alekseyeff and Defendant Elizarov prior to the date of the Amended Complaint (*see* ECF Nos. 30-1, 30-2, 38-1, 38-2, 40, 40-1), (8) reviewing publicly available court dockets and records, and (9) analyzing representations made by Defendant Allekseyeff as part of early hearings in this matter.[2]  Based on the information discovered during this investigation, as well as reasonable inferences based on such information, Goldwater filed its Amended Complaint in this matter.

## C.   PROCEDURAL POSTURE

On September 7, 2022, Alekseyeff filed this Motion seeking Rule 11 sanctions against Goldwater and its counsel, and contends that Goldwater's Amended Complaint lacks a factual or legal basis for Goldwater's claims of (1) fraud with regard to the loan application, (2) fraud with regard to the Mortgage Assistance Application, (3) fraud with regard to Elizarov's actions during the sales transaction, (4) civil conspiracy, (5) unjust enrichment, and (6) fraudulent transfer.  The Motion names three attorneys who have represented Goldwater in this action and requests sanctions against those attorneys and their law firms. Alekseyeff served Goldwater with notice of Elizarov's draft Rule 11 Motion on August 8, 2022, and Counsel for Elizarov and Goldwater conducted a meet-and-confer on August 25, 2022.  Prior to the August 25, 2022 meet-and-confer, Goldwater's counsel from the firm Hilber & Satterly, LLP sent Alekseyeff a letter detailing Goldwater's position on the impropriety of Elizarov's Motion.  (August 25, 2022 Letter, ECF No. 183-38).  The following day, on August 26, 2022, Alekseyeff sent

---

[2] If the Court deems it necessary, counsel for Goldwater is ready and willing to submit for the Court's *in camera* review (to avoid the waiver of work product and attorney-client privilege) specific records detailing actions taken to investigate the factual background of the Amended Complaint.

Goldwater's counsel a letter following up on points discussed during the meet-and-confer. On August 31, 2022, Goldwater's counsel from the firm Hilbert & Satterly, LLP sent a letter on behalf of Goldwater to Alekseyeff responding to issues raised in Alekseyeff's August 26 Letter and advising Alekseyeff of the impropriety of the Rule 11 Motion. (August 31, 2022 Letter, ECF No. 183-42). On September 1, 2022, counsel from the firm Wagner Hicks, PLLC sent a letter on behalf of Goldwater to Alekseyeff separately responding to issues raised in Alekseyeff's August 26 Letter and advising against filing the Rule 11 Motion. A true and accurate copy of Wagner Hicks' September 1, 2022 letter is attached as **Exhibit A**. Despite Goldwater's extended efforts to demonstrate to Elizarov the frivolity of the Motion, Alekseyeff states that, "Nothing . . . persuaded me to change my position on the motion." (Alekseyeff Decl., ¶¶ 24, 27, ECF No. 183-2). Alekseyeff filed the Motion the following week on September 7, 2022.[3]

Elizarov's Motion largely relies on arguments that Goldwater lacks evidence for its claims. Startlingly, however, in the months leading up to Elizarov's Rule 11 Motion he was actively working to frustrate Goldwater's discovery efforts. Elizarov and Alekseyeff asserted numerous improper objections to Goldwater's discovery requests, leading Goldwater to ultimately bring a broad motion to compel further discovery responses against Elizarov and Alekseyeff. (ECF No. 178). On September 21, 2022, the Court granted Goldwater's motion to compel. (ECF No. 190). Similarly, Elizarov filed motions to quash Goldwater's third-party subpoenas that sought information regarding Elizarov's income and assets surrounding the time period of the loan application and the

---

[3] Elizarov also filed a copy of his Rule 11 Motion in support of his Motion to Quash certain third party subpoenas on August 16, 2022. (ECF No. 177-13). Elizarov's Motion to Quash argued that the Court should quash certain third-party subpoenas on the basis of his forthcoming Rule 11 Motion. (ECF No. 177, pp. 24-25). The Court ultimately denied Elizarov's Motion to Quash. (ECF No. 191). By filing and seeking relief on the basis of his Rule 11 Motion on August 16, 2022, Elizarov violated the Rule 11 safe harbor provision requiring that the motion "must not be filed or be presented to the court . . . within 21 days after service." FED. R. CIV. P. 11(c)(2). The Rule 11 safe harbor provision "imposes mandatory obligations upon the party seeking sanctions, so that failure to comply with the procedural requirements precludes the imposition of the requested sanctions." *Hohu v. Hatch*, 940 F. Supp. 2d 1161, 1177 (N.D. Cal. 2013). This is another basis for the denial of the Motion and the award of fees to Goldwater.

mortgage assistance application.  (ECF No. 176).  The Court also denied Elizarov's motion to quash in its entirety, noting that Goldwater "is entitled to discovery defendant's employment and income records for the periods stated in the subpoenas." (ECF No. 191). Elizarov's efforts to frustrate the discovery process while simultaneously bringing a Rule 11 motion alleging that Goldwater's claims lack factual evidence is a clear example of bad faith and harassment.

### III.  LEGAL STANDARD

Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and "not interposed for any improper purpose." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S. Ct. 2447, 2454, 110 L. Ed. 2d 359 (1990).  Imposing sanctions under Rule 11 "is an extraordinary remedy, one to be exercised with extreme caution."  *Operating Eng'r Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). The purpose of Rule 11 is to deter dilatory or abusive pretrial tactics and to streamline litigation by excluding baseless filings.  *See Cooter*, 496 U.S. at 393, 110 S. Ct. at 2454.  In other words: "Rule 11 targets situations where it is patently clear that a claim has absolutely no chance of success."  *Healey v. Chelsea Resources, Ltd.*, 947 F.2d 611, 626 (2d Cir.1991) (citations omitted).

"A Rule 11 motion for sanctions is ***not*** an appropriate substitute for summary judgment proceedings."  *Douglas v. TD Bank USA*, No. 3:20-CV-00395-JR, 2021 WL 5861558, at *3 (D. Or. Aug. 11, 2021) (emphasis added).  The Court may sanction an attorney under Rule 11 for filing a pleading or paper that is "frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. Cty. of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997).  However, "[i]f, judged by an objective standard, a reasonable basis for the position exists in both law and in fact at the time that the position is adopted, then sanctions should not be imposed." *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986).

In fact, Rule 11 explicitly permits the scenario where factual contentions in a pleading "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."   FED. R. CIV. P. 11(b)(3).   Moreover, "circumstantial evidence, and the reasonable inferences drawn from that evidence, are treated as evidentiary support for purposes of Rule 11." *Douglas*, 2021 WL 5861558, at *2; *Rachel v. Banana Rep. Inc*., 831 F.2d 1503, 1508 (9th Cir.1987) (reversing order for sanctions because of the existence of circumstantial evidence plaintiffs relied upon in their complaint); *Golden Gate Way, LLC v. Stewart*, No. C 09-04458 DMR, 2011 WL 3667496, at *4 (N.D. Cal. Aug. 22, 2011) ("inference, reasonably drawn from the undisputed circumstantial evidence, suffices to provide evidentiary support" sufficient to defeat Rule 11 motion)).   A Rule 11 motion that requires examination of both direct and circumstantial evidence and the resolution of disputed facts and inferences drawn therefrom should be denied. *See, e.g., Id.*; *GN Resound A/S v. Callpod, Inc.,* No. C 11-04673 SBA, 2013 WL 5443046, at *4 (N.D. Cal. Sept. 30, 2013) (denying Rule 11 motion premised on factual arguments that plaintiff's claims failed on the merits)).

"[T]he imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Id.* (quoting *Cooter*, 496 U.S. at 396 (brackets in original/internal quotations omitted). When ruling on any Rule 11 motion, the Court "must resolve all doubts in favor of the signer of the pleading or paper." *Burnette v. Godshall,* 828 F. Supp. 1439, 1447 (N.D. Cal. 1993), *aff'd sub nom. Burnette v. Lockheed Missiles & Space Co.*, 72 F.3d 766 (9th Cir. 1995).

## IV.  ARGUMENT AND AUTHORITIES

### A.  GOLDWATER PERFORMED A REASONABLE INVESTIGATION PRIOR TO FILING THE AMENDED COMPLAINT

At the core of Elizarov's motion for sanctions is the unsupported contention that Goldwater failed to perform a reasonable investigation prior to filing the Amended Complaint.  (*See, e.g.,* Elizarov Mem. Supp. Mot. Sanctions, p. 13, n.4, ECF No. 183).

In support of this contention, Elizarov points to non-dispositive publicly available information, information not available to Goldwater at the time of filing the Amended Complaint, and mischaracterizations of Goldwater's responses to poorly drafted requests for admission. Goldwater's fraud claim alleges a pattern of fraudulent misrepresentations made by Elizarov to Goldwater in connection with (1) Elizarov's initial loan application, (2) Elizarov's Mortgage Assistance Application, and (3) Elizarov's sale of the Subject Property. While fraudulent misrepresentations from any of these categories might sustain a fraud verdict against Elizarov, Elizarov's Motion treats each of these three time periods as a separate fraud claim. As set forth below, Goldwater's fraud claim remains legally viable and sufficient regardless of any evidence that Elizarov has developed and which he believes supports his defenses.

### 1. Misrepresentations on the Loan Application

Goldwater's Amended Complaint alleges that Elizarov's misrepresentations on his loan application included (1) Elizarov's failure to identify his correct marital status, (2) Elizarov's failure to report a pending lawsuit, (3) Elizarov's failure to report his default on a federal debt. Elizarov signed an initial loan application on July 3, 2019. (Loan Application, ECF No. 179-1). Elizarov also signed a loan application on July 31, 2019 in connection with the closing, a true and accurate copy of which is attached as **Exhibit B**. Both versions contain the same misrepresentations at issue in the Motion. Goldwater sets out the following evidence that supports the allegations in the Amended Complaint:

a) It is undisputed that this loan application states that Elizarov is "Unmarried (include single, divorced, widowed)" rather than "Married (include registered domestic partners)." (Ex. B, p. 1).

b) Elizarov, however, has been in a registered domestic partnership with Alekseyeff since May 2003. (May 24, 2021 Elizarov Decl., ¶ 5, ECF No. 40-1).

c) Elizarov's loan application answered "No" in response to the question, "Are you a party to a lawsuit?" (Ex. B, p. 3).

d) As a matter of public record, however, Elizarov was a plaintiff in a matter captioned *Artur Elizarov v. BMW Financial Services NA, LLC* (19STCV08507) pending in the Superior Court of California, Los Angeles County. A copy of the public docket for this litigation is attached hereto as **Exhibit C**. The litigation was not dismissed until August 16, 2019.

e) At the time Elizarov signed the Mortgage Application, he answered "No" to the question, "Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee?" (Ex. B, p. 3).

f) As a matter of public record, the IRS recorded a $107,787.69 tax lien against Elizarov in the Los Angeles County Recorder's Office on October 16, 2017. A true and accurate copy of the recorded Notice of Tax Lien is attached as **Exhibit D**.

g) As a matter of public record, the IRS did not record a release of the same tax lien in the Los Angeles County Recorder's Office until January 6, 2020. A true and accurate copy of the Certificate of Release of Federal Tax Lien is attached as **Exhibit E**.

In the face of this objective evidence, Elizarov contends that Goldwater's allegations are frivolous because Elizarov sent text messages to Goldwater loan officer Greg Hill referencing his marital status and the pending lawsuit. (Elizarov Mem. Supp. Mot. Sanctions, pp. 15-17, ECF No. 183). In advancing this argument, Elizarov points to text messages sent to Greg Hill's personal cell phone that allude to Mr. Elizarov's marital status and reference the resolution of a lawsuit with BMW, but those text messages post-date Mr. Elizarov's initial loan application. (Elizarov Mem. Supp. Mot. Sanctions, pp. 15, 17-18, ECF No. 183). Furthermore, the significance of those text messages against Goldwater's evidence is ultimately an issue of weighing evidence, which is not the purpose of Rule 11. With regard to the misrepresentations regarding default on a federal tax debt, Elizarov offers his own evidence to argue that he had in fact paid off the tax debt prior to filling out the loan application and that the IRS simply failed

to timely file the discharge. (Elizarov Mem. Supp. Mot. Sanctions, pp. 15-16, ECF No. 183) To be sure, there was no way for Goldwater to know whether the federal tax lien that was of records was invalid at the time Goldwater filed the Amended Complaint.[4] Accordingly, it is clear that Goldwater has a good faith basis to support the allegations that Elizarov committed fraud in his loan application.

### 2. Misrepresentations on the Mortgage Assistance Application

Goldwater's Amended Complaint alleges that Elizarov made misrepresentations on his application for Mortgage Assistance in May 2020 when he represented that (1) he was experience a reduction in income and was receiving only $1,050 per week in unemployment benefits and (2) he only had $3,500 cash on hand at the time. (Am. Compl. at ¶¶ 39-40, ECF No. 44). Elizarov's Motion argues that Goldwater's claim is frivolous because Goldwater did not have actual evidence that these statements were misrepresentations at the time it filed its Amended Complaint. (Elizarov Mem. Supp. Mot. Sanctions, pp. 19-20, ECF No. 183). As set out above, this is an incorrect view of the Rule 11 standard. Rule 11 is satisfied so long as a party has some evidence to support its claims, and even circumstantial evidence is appropriate for Rule 11 purposes. *Golden Gate Way*, 2011 WL 3667496, at *4. The undisputed evidence in the record demonstrates that Goldwater had, and has, evidence supporting its contentions that Elizarov's statements were misrepresentations. Goldwater sets out the following evidence that supports the allegations in the Amended Complaint:

a) On the Mortgage Assistance Application, Elizarov stated that he experienced a "Reduction in income: a hardship that has caused a decrease in your income due

---

[4] As demonstrated above, Goldwater's allegations are supported by evidence. Moreover, discovery is ongoing and it would be premature to evaluate the parties' competing evidence, particularly where the Court has recently compelled Elizarov and Alekseyeff to withdraw improper discovery objections and provide full and complete responses to Goldwater's discovery requests. (*See,* Order, ECF No. 190).

to circumstances outsde your control."  (Mortgage Assistance Application, p. 2, ECF No. 183-23).

b) Elizarov's Mortgage Assistance Application further explains that his only income was "$1,050 per week" in unemployment benefit income.  (Mortgage Assistance Application, p. 3, ECF No. 183-23).

c) Elizarov's Mortgage Assistance Application also stated that his only assets were a $3,500 in "checking account(s) and cash on hand."  (Mortgage Assistance Application, p. 3, ECF No. 183-23).

d) Elizarov's Mortgage Assistance Application also states that the property is a "primary residence" that is "[o]wner occupied."  (Mortgage Assistance Application, p. 1, ECF No. 183-23).

e) At the same time, however, Elizarov stated in a declaration that he had actually "moved to the State of Florida in May 2020, months before I decided to sell my Palm Springs home."  (May 24, 2021 Elizarov Decl., ¶ 8, ECF No. 40-1).

f) Elizarov also introduced a copy of a 12-month lease for an apartment in Wilton Manors, Florida beginning on May 9, 2020.  (ECF No. 40-3).

g) Elizarov also stated in a declaration that he was approved for an SBA pandemic relief loan of at least $60,000 on May 24, 2020.  (May 24, 21 Elizarov Decl., ¶ 31-35, ECF No. 40-1).

Elizarov's declarations demonstrate that he had sufficient assets to move across the country and commit to a 12-month apartment lease at the same time he told Goldwater that he had experienced a significant reduction in income and was only receiving unemployment income.  Similarly, Elizarov's SBA loan implies that he had a small business with sufficient assets to be approved for a loan in excess of $60,000.

Additionally, Goldwater has obtained direct evidence confirming that Elizarov's Mortgage Assistance Application did contain misrepresentations regarding his income. In response to a third-party subpoena to Gables Residential Services, Inc. ("Gables"), Gables produced a copy of Elizarov's May 7, 2020 lease application (the "Lease

Application") for the Florida apartment, wherein Elizarov stated that his monthly income was $15,000. A true and accurate copy of the lease application is attached as **Exhibit F**. In response to a third-party subpoena to eCivis, Inc. (Elizarov's employer, "eCivis"), eCivis produced records related to Elizarov's compensation around the time of the Mortgage Assistance Application. Attached as **Exhibit G** is a true and accurate copy of Elizarov's June 15, 2020 paystub showing that he was in fact receiving income from his employer well in excess of $1,050 in unemployment benefits. Thus, not only was Goldwater's Amended Complaint sufficiently factually supported at the time of filing, but it remains well supported.

Elizarov also contends that Goldwater's fraud claim with regard to the Mortgage Assistance Application is baseless because the CARES Act required Goldwater to offer mortgage forbearance solely based on Elizarov's representation of hardship. Put differently, Elizarov contends that the CARES Act somehow insulates him from making fraudulent representations in his quest to obtain pandemic relief related to his mortgage, because Goldwater was allegedly not permitted to request documentation to substantiate Elizarov's representations regarding his financial situation. (Elizarov Mem. Supp. Mot. Sanctions, pp. 20-22, ECF No. 183). But Elizarov's loan was not a federal loan subject to the CARES Act provision to which he cites and, even if it was, the argument that he would have been permitted to make fraudulent misrepresentations to obtain loan relief without recourse pursuant to the CARES Act defies reason. Accordingly, Elizarov's contention that Goldwater lacks support for its fraud claim as it relates to his misrepresentations in his Mortgage Assistance Application is simply not supported by the objective evidence.

### 3. Misrepresentations at the Sale of the Subject Property

Goldwater's claim for fraud against Elizarov is based on among other things, his promise to ensure Goldwater would be paid out of the escrow for his sale of the secured Subject Property. Regardless of whether Elizarov may have evidence supporting his defense against other misrepresentations, his arguments regarding the promissory fraud

arising from his representations regarding the proceeds of the sale are legally untenable, as are his attempts to sanction Goldwater on the basis of its fraud claim.    Based on Elizarov's misrepresentations regarding the existence of a purported mechanic's lien and the likelihood that there would be insufficient proceeds to pay off Goldwater in full, Goldwater discussed with Elizarov the possibility of accepting a $675,000 short payment. Acting in reliance on these statements, Goldwater did not further intervene to prevent the sale of the Subject Property.  Given Elizarov's efforts to then close the transaction without paying Goldwater, his hasty repudiation of his promise to pay Goldwater, and his complete failure even to attempt performance, at a minimum there is circumstantial evidence that Elizarov made his promises with a fraudulent intent. *See Tenzer v. Superscope, Inc*., 39 Cal. 3d 18, 30, 702 P.2d 212 (1985). Goldwater's fraud claim is legitimate and likely to succeed.

In fact, Elizarov does not dispute his hasty repudiation of his promise to pay Goldwater out of the escrow for his sale of the secured property.  And, he does not dispute that he has not repaid Goldwater or dispute that he used the funds that should have gone to Goldwater to purchase a home in Florida.  Instead, Elizarov argues that Goldwater cannot maintain its fraud claim because "Elizarov's alleged oral promise to pay Goldwater is unenforceable under the statute of frauds."  (Elizarov Mem. Supp. Mot. Sanctions, p. 15, ECF No. 183)  This is an incorrect statement of law.  Elizarov's legal basis for this argument is premised on a quote from *Tenzer v. Superscope, Inc.,* 39 Cal. 3d 18, 29, 702 P.2d 212 (1985) ("*Tenzer*"): "[A]n action for fraud cannot be maintained where the allegedly fraudulent promise is unenforceable as a contract due to the statute of frauds." (*See* Elizarov Mem. Supp. Mot. Sanctions p. 15, ECF No. 183).

The rule of law that Elizarov offers, a block quotation from *Tenzer*, was itself a quote from *Kroger v. Baur*, 46 Cal.App.2d 801, 803, 117 P.2d 50 (Cal. App. 1941). *Id.* at 29. Critically, *Tenzer*, the case Elizarov actually cites, expressly overruled the very statement of law upon which Elizarov relies. *Id.* at 31. Thus, in a motion seeking Rule 11 sanctions, Elizarov and his counsel and co-Defendant Alekseyeff have inarguably

misrepresented controlling authority to this Court.  Regardless of Elizarov's intent in blatantly misrepresenting the rule from *Tenzer*, the law is clear that the statute of frauds is not a bar to an action based on promissory fraud even if the action involves an oral agreement that is unenforceable under the statute of frauds.  *Tenzer*, *supra*, 39 Cal.3d at pp. 29-31; *see also Grant v. Aurora Loan Servs., Inc.,* 736 F. Supp. 2d 1257, 1271 (C.D. Cal. 2010) (discussing elements of promissory fraud).

This tracks with decisions from California courts recognizing the legal sufficiency of fraud claims under similar circumstances where a defendant's conduct induces a plaintiff to refrain from acting. *See Small v. Fritz Companies, Inc.,* 30 Cal. 4th 167, 174, 65 P.3d 1255, 1259 (2003); *cf. also Yoo v. Arnold,* No. CV0907483MMMCWX, 2010 WL 11597358, at *9 (C.D. Cal. Aug. 13, 2010) (discussing equitable estoppel where defendant, by affirmative acts, induces plaintiff to refrain from filing an action). As such, Elizarov's attempt to tie the legal sufficiency of Goldwater's promissory fraud claims to the formation of some contract is contrary to law.  Rather, Goldwater relied on Elizarov's promises of payment out of the escrow[5] and suffered damages when Elizarov failed to perform as promised.  Goldwater is likely to prevail on its fraud claim based in this aspect of it alone, and Elizarov's motion for sanctions under Rule 11 should be denied.

## B.   GOLDWATER'S CONSPIRACY CLAIM SATISFIES RULE 11 STANDARDS.

Elizarov's Motion argues that Goldwater's civil conspiracy claim is frivolous because Goldwater lacked evidence of the conspiracy at the time it filed the Amended Complaint.   To be sure, "[c]onspiracies are typically proved by circumstantial

---

[5] Elizarov's motion argues that Goldwater cannot establish the reliance element of its fraud claim because of a hypothetical whereby Elizarov never mentions Goldwater to the escrow company. (Elizarov Mem. Supp. Mot. Sanctions, p. 18, ECF No. 183).  This argument (that is not based on any citation to law) lacks merit.  While Elizarov can imagine a situation in which he completely ignores his contractual obligations to Goldwater and his buyer, Scott Howlett, and sells the property – such a hypothetical does not speak to Goldwater's reliance on Elizarov's actual promise to pay Goldwater from his sale of the property.

evidence. . . . 'Since such participation, cooperation or unity of action is difficult to prove by direct evidence, it can be inferred from the nature of the act done, the relation of the parties, the interests of the alleged conspirators, and other circumstances.'" *Rickley v. Goodfriend*, 212 Cal. App. 4th 1136, 1166 (2013) (quoting *Black v. Sullivan*, 48 Cal. App. 3d 557, 566 (1975)).  Here, the undisputed evidence is more than sufficient to establish that Goldwater's conspiracy claim has evidentiary support, will likely have evidentiary support after discovery, and are warranted by existing law.  FED. R. CIV. P. 11(b).  The undisputed evidence shows the following:

a) Elizarov and Alekseyeff are domestic partners.  (*See, e.g.,* Decl. of Elizarov Supp. Mot. Sanctions, ¶ 6, ECF No. 183-3).

b) When Goldwater sent Elizarov its prelitigation demand letter, Elizarov immediately forwarded it to Alekseyeff, putting both parties on notice of Goldwater's claims as early as April 1, 2021.  (Exhibit C to Elizarov Decl., ECF No. 30-5).

c) Elizarov received $785,741.36 in proceeds from the sale of the Palm Springs Property.  (Seller's Final Settlement Statement, ECF No. 44-6).

d) On April 16, 2021, Elizarov purchased the Wilton Manors Property for $630,000 in proceeds from the sale of the Subject Property.  (April 28, 2021 Elizarov Decl., ¶ 26, ECF No. 30-2).

e) Elizarov was the only individual on the purchase agreement for the Wilton Manors Property, (Ex. J. to Elizarov Decl. ECF No. 30-11), yet Alekseyeff received an interest in the Wilton Manors Property.  A true and accurate copy of the publicly recorded Wilton Manors Warranty Deed is attached hereto as **Exhibit H**.

f) Four days later, and just prior to the entry of the Temporary Restraining Order, Elizarov stated that <u>he</u> paid $84,843.22 from the proceeds from the sale of the Palm Springs Property to pay a preexisting debt.  (April 28, 2021 Elizarov Decl., ¶ 28, ECF No. 30-2).

g) Alekseyeff has also stated in a declaration that <u>he</u> was the individual who initiated the $84,843.22 loan payoff from the proceeds of the sale of the Palm Springs Property.  (May 24, 2021 Alekseyeff Decl., ¶ 14, ECF No. 40-7).

h) According to Alekseyeff, the debt was in Alekseyeff's name, and the home secured by the debt is also in Alekseyeff's name.  (May 24, 2021 Alekseyeff Decl., ¶¶ 11-12).

This evidence is precisely the type of evidence of "the nature of the act done, the relation of the parties, [and] the interests of the alleged conspirators," that can support a civil conspiracy claim.  *Rickley*, 212 Cal. App. 4th at 1166.

Elizarov and Alekseyeff challenge this evidence and the factual sufficiency of the claim based only on the self-serving "testimony" of Alekseyeff himself that he did not assist his domestic partner Elizarov. (Elizarov Mem. Supp. Mot. Sanctions, pp. 27-29, ECF No. 183).  At a minimum, the circumstances surrounding the discussions and promises made regarding Elizarov's sale of the Subject Property, combined with the professional and personal relationship between the parties and the subsequent diffusion of the proceeds of that sale benefitting both Elizarov and Alekseyeff as domestic partners, raise a reasonable inference of a conspiracy between those parties to commit the acts alleged that passes Rule 11 muster. Alekseyeff's unsworn factual averments that he had no knowledge are merely testimony, the credibility of which a jury is entitled to adjudge and ultimately weigh against the circumstantial and any other direct evidence uncovered in ongoing discovery.

Likewise, Elizarov's legal arguments that Goldwater's conspiracy claim is frivolous because Alekseyeff owed Goldwater no duty is meritless.  As an initial matter, this is not an argument that Goldwater's claim is not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  FED. R. CIV. P. 11(b)(2).  Instead, this is an exact repetition of arguments made in Alekseyeff's Rule 12(b)(6) motion.  (*See* Alekseyeff's Mem. Supp. Mot. Dismiss Am. Compl., pp. 13-14, ECF No. 60-1).  The Court previously rejected that

argument and denied Alekseyeff's Motion to Dismiss.  (*See* Minute Order on Mot. Dismiss, ¶ 2, ECF No. 93) ("The motion to dismiss of Defendant Ilya Alekseyeff [ECF No. 60] is **DENIED** in its entirety.").

Nevertheless, Alekseyeff's argument regarding an independent duty is inapposite. The Motion relies on *Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, 260 Cal.Rptr. 183, 775 P.2d 508 ("*Doctors' Co*."), which was based in part on the "agent's immunity rule" that holds "an agent is not liable for conspiring with the principal when the agent is acting in an official capacity on behalf of the principal." *Pavicich v. Santucci*, 85 Cal. App. 4th 382, 394, 102 Cal. Rptr. 2d 125, 134-35 (2000).  The rule does not apply "when the participant acts in furtherance of its own financial gain."  *Mosier v. Southern Cal. Phys. Ins. Exch.*, 63 Cal. App. 4th 1022, 1048 74 Cal.Rptr.2d 550 (Cal. App. 1998). Goldwater's conspiracy claim does not rest on Alekseyeff's actions in his capacity as attorney or agent, but in his own capacity and for his own financial gain as Elizarov's domestic partner.  Goldwater's claim alleges that Alekseyeff assisted his *spouse* Elizarov at some point in perpetrating the fraud upon Goldwater and the subsequent dissipation of proceeds for his own personal financial benefit, evidenced here by Alekseyeff's interest in the Wilton Manors Property and the payoff of his personal debt.

Elizarov and Alekseyeff's attempt to relitigate their Motions to Dismiss as to the conspiracy claim must fail.  Goldwater's claim is properly asserted and not subject to Rule 11 sanctions.

## C. ELIZAROV'S ARGUMENTS REGARDING THE UNJUST ENRICHMENT CLAIM REPEATS HIS MOTION TO DISMISS ARGUMENTS.

Elizarov's arguments regarding Goldwater's unjust enrichment claim are repetitive of arguments he made when moving to dismiss Goldwater's claim. (*See*, *e.g.*, Memo. Supp. Def.'s Mot. To Dismiss, ECF No. 78). Elizarov's argument depends on the following statement in the Motion's memorandum: "When counselors alleged this claim, counselors certified that counselors can establish that Goldwater's contract with Elizarov was unenforceable. That certification was false." (Elizarov Mem. Supp. Mot. Sanctions, p. 22, ECF No. 183). Yet, Elizarov does not cite to any part of Goldwater's Amended

Complaint in support of this statement. Likewise, Elizarov fails to acknowledge that Goldwater previously argued to the Court that the unjust enrichment and the breach of contract claim can proceed together under alternative pleading. (Goldwater's Resp. to Def.'s Mot. To Dismiss, p. 12, ECF No. 71). The Court ultimately agreed with Goldwater and denied Elizarov's Motion to Dismiss the unjust enrichment claim. (Min. Order on Mot. To Dismiss, ECF No. 93). Elizarov's instant Rule 11 Motion simply resurrects his arguments that failed at the Motion to Dismiss stage, and he offers no new basis to justify his request for Rule 11 sanctions.

The Court's prior rejection of Elizarov's argument at the Motion to Dismiss phase indicates that Goldwater's claim is well-pleaded and not subject to Rule 11 sanctions. *Thrasio, LLC v. Boosted Commerce Inc.*, No. 21-CV-01337-CBM-SK, 2022 WL 2285514, at *2 (C.D. Cal. Apr. 22, 2022) ("[T]he Court previously denied Defendants' Motion to Dismiss . . . and found that Plaintiffs' claims were plausible and sufficiently pleaded. . . . Thus, this is not a 'rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation'") (citing *Operating Eng'rs Pension*, 859 F.2d at 1344). Elizarov's Motion raises the same argument that was previously rejected, and his Rule 11 Motion is an abuse of the Court's and the parties' time.

## D. GOLDWATER'S FRAUDULENT TRANSFER CLAIM SATISFIES RULE 11 STANDARDS.

Elizarov's Motion argues that Goldwater's fraudulent transfer claim lacks any evidentiary or legal basis, claiming that Elizarov was making a "preferential payment" to a creditor because he could have been liable for the $84,843.22 Shatar Holdings loan under California community property rules. (Elizarov Mem. Supp. Mot. Sanctions, pp. 22-24, ECF No. 183). However, Elizarov's analysis of the impact of California's community property rules are an overstatement at best. "California is a community property law state, with the 'community' being about the property acquired during a marriage, and not a 'community obligation' state in which a husband (in the matter before

the court) binds his spouse to whatever obligations he chooses to unilaterally impose on [him]." *In re Landes*, 627 B.R. 144, 156 (Bankr. E.D. Cal. 2021).

Thus, while the debts of one spouse may encumber the couple's community property, a spouse is not necessarily separately liable for the unilateral debts incurred by his husband. *Id.* Elizarov contends that Goldwater is somehow "bound" by a judicial admission on this issue in paragraph 34 of the Amended Complaint, but the cited paragraph merely identified the possibility that Elizarov *could* be liable for certain liabilities incurred by Alekseyeff by virtue of their domestic partnership. (Am. Compl. at ¶ 34, ECF No. 44,). Moreover, that statement is not a binding judicial admission because it cannot change the law itself. *CSC Consulting, Inc. v. Tosco Ref. Co.*, 19 F. App'x 698, 701 (9th Cir. 2001) ("Judicial admissions are *factual* assertions") (emphasis in original); *Eisen v. Tavangarian*, 36 Cal. App. 5th 626, 637, 248 Cal. Rptr. 3d 744, 753–54 (2019) ("To be considered a binding judicial admission, 'the declaration or utterance must be one of fact and not a legal conclusion, contention, or argument'").

Whether or not Elizarov was personally liable for the Shatar Holdings loan is a disputed question of fact. Elizarov's domestic partner (and counsel), Ilya Alekseyeff took title to the Shatar Property in his own name and incurred the obligation individually "as a single man." (*See* Deed of Trust, ECF No. 183-17; Promissory Note, ECF No. 183-8). These facts and remaining questions regarding same, combined with Elizarov's and Alekseyeff's continued resistance to valid discovery, serve to evidence Goldwater's contention that Elizarov fraudulently transferred his separate property to pay Alekesyeff's separate debts obviating any application of Rule 11. *Storz Mgmt. Co. v. Carey*, No. 2:18-CV-00068-TLN-DB, 2021 WL 795678, at *2 (E.D. Cal. Mar. 2, 2021) ("the Court declines to impose the 'extraordinary remedy' of Rule 11 sanctions based on what is essentially a factual dispute") (citing *Operating Engineers Pension Tr*, 859 F.2d at 1345).

On the basis of Elizarov's community property argument, he also contends that the Fraudulent Transfer claim lacked legal and factual support because the payment of the

Shatar Loan using the proceeds from the Subject Property would have been a valid preferential payment to one creditor over another rather than a fraudulent transfer. However, "[t]he above stated rule that a debtor may prefer one creditor over another (Civ. Code, § 3432) *has long been subject to exceptions based on fraud*." *Lyons v. Sec. Pac. Nat. Bank*, 40 Cal. App. 4th 1001, 1020 (1995), *as modified on denial of reh'g* (Nov. 30, 1995) (emphasis added).  Here, Goldwater has alleged fraud by Elizarov. In other words, argument about Elizarov's alleged preference of Shatar Holdings is another instance where the parties have competing factual contentions and there is no basis for Elizarov's assertion that the fraudulent transfer claim is frivolous and subject to Rule 11 sanctions.

## IV. SANCTIONS AGAINST GOLDWATER ARE UNWARRANTED.

As discussed above, Goldwater's amended complaint asserts legitimate claims and is not subject to Rule 11 sanctions, particularly in light of the significant threshold to obtain Rule 11 sanctions.  "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution. Such sanctions can have an unintended detrimental impact on an attorney's career and personal well-being." *Conn v. Borjorquez*, 967 F2d 1418, 1421 (9th Cir. 1992). Because of the potentially chilling effect on innovative lawyering, sanctions are reserved "for the rare and exceptional case where the action is *clearly* frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Eng'rs Pension Tr.*, 859 F2d at 1344 (emphasis added).

When a court examines a motion for sanctions, it must resolve all doubts in favor of the signer of the pleading or paper. This is required as the court must determine when the argument "turns from merely 'losing' to losing *and* sanctionable." *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F2d 32, 34 (2nd Cir. 1992) (emphasis in original). Accordingly, Goldwater should not be subject to sanctions for asserting colorable claims against Elizarov.  Further, Rule 11 sanctions are discretionary. The court is *not* required to impose a monetary sanction or even any sanction at all. Even if a violation has clearly occurred, the court may decide to impose no sanction. Committee Notes on Amendments to Federal Rules of Civil Procedure (1993) 146 FRD 401, 587.

Elizarov's is not entitled to his requested sanction of complete dismissal of Goldwater's claims asserted against him, as it is likely an abuse of discretion to order dismissal or default unless "a party *deceives* a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or *undermines the integrity of the court.*" *U.S. v. Shaffer Equip. Co.*, 11 F3d 450, 462 (4th Cir. 1993) (emphasis added); *Halaco Engineering Co. v. Costle* 843 F2d 376, 380 (9th Cir. 1988). Goldwater has not deceived the court or abused any process and certainly has not acted in a manner that is utterly inconsistent with the orderly administration of justice or undermine the integrity of the court. Accordingly, Rule 11 does not entitled Mr. Elizarov to the dismissal of Goldwater's claims against him

Further, while Goldwater obviously believes that no sanctions are appropriate, it is clear that monetary sanctions against Goldwater are unwarranted.  To warrant monetary sanctions, it must be shown that the improper claims or allegations *increased the cost of litigation* to the opposing party: "The district court was within its discretion in imposing Rule 11 sanctions as to a single count of a multiple count complaint, *where the effect and cost of that count could be separated* from that of the other counts." *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988) (emphasis added); see Committee Notes on Amendments to Federal Rules of Civil Procedure (1993) 146 FRD 401, 588.  And, because fees awards under Rule 11 are limited to fees "incurred" as the result of a Rule 11 violation, no award may be ordered in favor of a litigant who does not incur any fees: "[W]here a lawyer represents himself, legal fees are not truly a 'cost' of litigation—no independent lawyer has been hired (or must be paid)." *Massengale v. Ray* 267 F.3d 1298, 1303 (11th Cir. 2001).  Here, Elizarov has not presented any evidence that he incurred any increase in costs as a result of the purported Rule 11 violations, as Elizarov is enjoying free representation from his domestic partner Ilya Alekseyeff. Further, Alekseyeff's self-interest in this case, being both a Defendant and interested as a community property holder in any judgment against Elizarov, should foreclose Alekseyeff and Elizarov from benefitting from case law permitting attorneys' fees in

legitimate *pro bono* representations.  Accordingly, even if Elizarov could point to conduct violating Rule 11, which he cannot, monetary sanctions are not appropriate.

### V. SANCTIONS SHOULD BE ENTERED AGAINST ELIZAROV.

Given the frivolous nature of Elizarov's instant motion (and his attempts to provide incorrect statements of applicable law), the Court should deny Elizarov's Rule 11 Motion and award Goldwater, as the prevailing party, "the reasonable expenses, including attorney's fees, incurred for the motion." FED. R. CIV. P. 11(c)(2).  Indeed, the filing of a motion for sanctions is itself subject to Rule 11 requirements, yet service of a cross-motion is usually not required (nor is there a "safe harbor") because the court may award fees to the *prevailing party* on the sanctions motion. *See Patelco Credit Union v. Sahni* 262 F3d 897, 913 (9th Cir. 2001); Committee Notes on Amendments to Federal Rules of Civil Procedure (1993) 146 FRD 401, 524-525.

Elizarov's Motion is precisely the kind of frivolous filing that Rule 11 seeks to eliminate.  The purpose of a monetary sanction under Rule 11 is to effect "deterrence." FED. R. CIV. P. 11(c)(4).  At this point in the litigation, it is necessary to impose a monetary sanction and award Goldwater its prevailing party attorney's fees in order to deter future similar conduct.  This Court previously admonished Elizarov and Alekseyeff three times for advancing frivolous arguments.  (*See* Order on Motions to Dismiss, ECF No. 148, pp. 8, 10, 11).  The vast majority of the instant Motion does not advance legitimate arguments about Rule 11 but instead improperly deploys merits arguments, ignores the well-pleaded allegations in the Complaint, and seeks to relitigate Elizarov and Alekseyeff's motions to dismiss.  Goldwater should be awarded the fees incurred in opposing Elizarov's baseless Motion, as permitted under Rule 11.

### VI.  CONCLUSION

For the foregoing reasons, Goldwater respectfully requests that Elizarov's Motion for Sanctions be denied and Goldwater be awarded its reasonable attorney's fees as allowed pursuant to FED. R. CIV. P. 11(c)(2).

Dated:  September 30, 2022

HILBERT & SATTERLY LLP

By: /s/ Joseph A. Levota

John Forest Hilbert, Esq.
Joseph A. LeVota, Esq.

AND

WAGNER HICKS PLLC

By:    /s/ Derek M. Bast

Sean C. Wagner, Esq.
Derek M. Bast, Esq.

*ATTORNEYS FOR GOLDWATER BANK, N.A.*

### CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Goldwater's Opposition to Artur Elizarov's Motion for Sanctions Under Rule 11 with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered CM/ECF users.

This the 30th day of September, 2022.

/s/ Derek M. Bast
Derek M. Bast