ILYA ALEKSEYEFF [CA 242462]
ilya@loia.legal
LOIA, INC. (APLC)
727 W 7th St PH 1-13
Los Angeles, CA 90017
Tel: (213)537-4592

Attorney for Artur Elizarov

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GOLDWATER BANK, NA**, *Plaintiff,* vs. **ARTUR ELIZAROV, ET AL.**, *Defendant.* | 5:21-cv-616-JWH-SPx  MEMORANDUM SUPPORTING MOTION FOR REVIEW OF MAGISTRATE JUDGE'S RULING ON A NON-DISPOSITIVE MOTION, *TO WIT*: TO QUASH SUBPOENA *DUCES TECUM* TO RITE CARE HOSPICE, INC. [191]  Date: 11/18/2022 Time: 9:00 am Court: Hon. John W. Holcomb |

i

MEMORANDUM SUPPORTING MOTION FOR REVIEW OF MAGISTRATE JUDGE'S RULING ON A NON-DISPOSITIVE MOTION, *TO WIT*: TO QUASH SUBPOENA *DUCES TECUM* TO RITE CARE HOSPICE, INC. [191]

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION ..................................................................................................... 1

FACTS ........................................................................................................................ 2

STANDARD OF REVIEW ....................................................................................... 6

ARGUMENT .............................................................................................................. 7

    A.    The records sought are not directly relevant to any issue in the case ........................................................................................................... 8

    B.    The subpoena is an illegal fishing expedition designed to satisfy Goldwater's unfounded hunch ............................................................... 11

CONCLUSION ....................................................................................................... 14

ii

MEMORANDUM SUPPORTING MOTION FOR REVIEW OF MAGISTRATE JUDGE'S RULING ON A NON-DISPOSITIVE MOTION, *TO WIT*: TO QUASH SUBPOENA *DUCES TECUM* TO RITE CARE HOSPICE, INC.
[191]

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Woodford*, No. CVF051104OWWLJO 2007 WL 309485 (E.D. Cal., Jan. 30, 2007) ..................................................................................................... 8

*Barrenda L. v. Superior Court*, 65 Cal.App.4th 794 (Cal. Ct. App. 1998) .............. 9

*Board of Trustees v. Superior Court*, 119 Cal.App.3d 516 (Cal. Ct. App. 1981) ..... 8

*Burlington Northern v. Weyerhaeuser Co.*, 719 F.2d 304 (9th Cir. 1983) ............... 6

*Corker v. Costco Wholesale Corp.*, Cause No. C19-0290RSL (W.D. Wash. Dec. 4, 2020) ........................................................................................................ 12

*Cortinas v. Vasquez*, 1:19-cv-00367-JLT-SKO (PC), 2022 WL 1053298, (E.D. Cal. Apr. 7, 2022) ........................................................................................ 12

*El Dorado Savings & Loan Assn. v. Superior Court*, 190 Cal.App.3d 342 (Cal. Ct. App. 1987) ................................................................................................... 8

*Gamez v. United States*, No. CV-17-02044-PHX-JJT (ESW), 2018 WL 3471074, (D. Ariz. July 19, 2018) ................................................................................ 12

*GW Grundbesitz AG v. Gunn*, 221CV02074CDSNJK, 2022 WL 4359131 (D. Nev. Sept. 20, 2022) .............................................................................................. 12

*Harris v. Superior Court*, 3 Cal.App.4th 661 (Cal. Ct. App. 1992) ......................... 8

*Kahaku v. Wallace*, 2:20-CV-1807 KJN P, 2022 WL 2333725 (E.D. Cal. June 28, 2022) .............................................................................................................. 12

*Kayes v Pacific Lumber Co*, 51 F.3d 1449 (9th Cir 1995) ........................................ 9

*Kulas v. Flores,* 255 F.3d 780 (9th Cir. 2001) .......................................................... 7

*Look v. Penovatz*, 34 Cal.App.5th 61 (Cal. Ct. App. 2019) ..................................... 8

*Monte H. Greenawalt Revocable Trust v. Brown*, 2:12-cv-01983-LRH-VCF (D. Nev. Dec. 18, 2013) ..................................................................................... 13

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803 (9th Cir. 2018) . 6

*Osband v. Woodford*, 290 F.3d 1036 (9th Cir. 2002) ............................................... 7

iii

MEMORANDUM SUPPORTING MOTION FOR REVIEW OF MAGISTRATE JUDGE'S RULING ON A NON-DISPOSITIVE MOTION, *TO WIT*: TO QUASH SUBPOENA *DUCES TECUM* TO RITE CARE HOSPICE, INC.
[191]

| | |
|---|---|
| 1 | *Ritter v. Morton*, 513 F.2d 942 (9th Cir. 1975) ............................................................6 |
| 2 | *SCC Acquisitions, Inc. v. Superior Court (Western Albuquerque Land Holdings,* |
| 3 | *LLC)*, 243 Cal.App.4th 741 (Cal. Ct. App. 2015) ....................................................8 |
| 4 | *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170 (9th Cir. 1996)................................6 |
| 5 | *Trustees of the Constr. Indus. & Laborers Health & Welfare Trust v. Las Vegas* |
| 6 | *Metro. Police Sheryl Archie*, 2:12-cv-00225-JCM-VCF (D. Nev. July 15, 2013) |
| 7 | .................................................................................................................................13 |

**Statutes**

28 U.S.C. § 636................................................................................................................6
Cal. Const. art. I § 1 .......................................................................................................8

**Rules**

Fed.R.Civ.P. 26 ............................................................................................................12
Fed.R.Civ.P. 72 ..............................................................................................................6

iv

MEMORANDUM SUPPORTING MOTION FOR REVIEW OF MAGISTRATE JUDGE'S RULING ON A NON-DISPOSITIVE MOTION, *TO WIT*: TO QUASH SUBPOENA *DUCES TECUM* TO RITE CARE HOSPICE, INC.
[191]

## INTRODUCTION

Among other allegations, Goldwater Bank, National Association (Goldwater) asserted in its verified complaint, which Goldwater's president Peter Hill executed under penalty of perjury, that Elizarov lied in his original mortgage application as follows: Elizarov misrepresented his marital status, failed to disclose a pending lawsuit against BMW, and failed to disclose a default on a debt to the Internal Revenue Service. Goldwater also claimed that Elizarov misrepresented his income and assets as of May 2020 when Elizarov applied to Goldwater for mortgage assistance (i.e., forbearance). During discovery, subpoenaed employment and income records from Elizarov's former employer Rite Care Hospice, Inc. (Rite Care) for the entire year 2019. The magistrate subsequently denied Elizarov's motion to quash the subpoena because the magistrate found that Elizarov's employment and income records from 2019 were "directly relevant" to help Goldwater "assess" the allegations of fraud in the loan application and mortgage assistance application as well as to assess "fraud claims generally."

The ruling was wrong as a matter of law.

First, the court could allow Goldwater to invade Elizarov's constitutionally protected zone of privacy just because Goldwater wanted to "assess" its claims. Discovery could be permitted *if and only if* the records were "directly relevant" to prove a disputed issue of fact in the case. Therefore, the magistrate used the wrong standard.

Second, employment and income records from 2019 were *not* directly relevant to the claim of fraud in the loan application because the complaint *did not allege* that Elizarov lied about his income in that application.

Finally, the records were not directly relevant to prove the claim of fraud in the assistance application because the application did not require Elizarov to disclose his income from 2019. The application instead required Elizarov to disclose his *then current income*.

1

MEMORANDUM SUPPORTING MOTION FOR REVIEW OF MAGISTRATE JUDGE'S RULING ON A NON-DISPOSITIVE MOTION, *TO WIT*: TO QUASH SUBPOENA *DUCES TECUM* TO RITE CARE HOSPICE, INC.
[191]

Therefore, the court should sustain Elizarov's objections, set the magistrate's ruling aside, and enter a new order GRANTING Elizarov's motion to quash.

**FACTS**

The Internal Revenue Service (IRS) filed a tax lien against Elizarov relating to 2014 taxes on October 16, 2017.  Ex. O-1.  At the time, Elizarov owned a residence in Valley Village, California.  When Elizarov sold the residence in January 2018, Elizarov paid off the outstanding balance to the IRS from the proceeds of the sale.  Ex. U (IRS demand); Exhibit V (escrow payment to the IRS); Exhibit W (escrow final settlement statement).  This payment occurred 18 months before Elizarov obtained a loan from Goldwater in July 2019.

Elizarov filed a lawsuit against BMW Financial Services, NA in Los Angeles Superior Court on March 11, 2019.  Ex. Z.  The lawsuit settled unconditionally on May 22, 2021, two months before Elizarov obtained a loan from Goldwater.  Ex. Y.  Elizarov's counsel, Ilya Alekseyeff, filed a notice of unconditional settlement with the court the same day.  Ex. X.  The lawsuit was dismissed on August 14, 2021.  Ex. Z.

Elizarov contacted Goldwater's loan officer Gregory Hill about a loan around June 24, 2019.  Ex. S-1.  When discussing the application with Gregory Hill via text, Elizarov disclosed information about Elizarov's husband "Ilya," Ex. S-5, 9; and disclosed his BMW lawsuit and its settlement, Ex. S-8.  (See Figure A and Figure B on the following pages for a screen capture of those messages.) Elizarov also disclosed to Gregory Hill that his IRS debt was paid off in January 2018.  (The conversation with Gregory Hill alerted Elizarov that the IRS had not yet removed the lien and prompted Elizarov to contact the IRS.  The IRS subsequently released the lien on December 18, 2019, after Elizarov's prompting. Ex. O.)

Based on the information that Elizarov provided Gregory Hill over the phone, email, and text messages, Gregory Hill completed the Fannie Mae Uniform

2

MEMORANDUM SUPPORTING MOTION FOR REVIEW OF MAGISTRATE JUDGE'S RULING ON A NON-DISPOSITIVE MOTION, *TO WIT*: TO QUASH SUBPOENA *DUCES TECUM* TO RITE CARE HOSPICE, INC.
[191]

Loan Application.  Ex. K.

After Goldwater approved the loan, Elizarov signed a Fannie Mae uniform deed of trust and a Fannie Mae uniform note.  Ex. L; Ex. M; Ex. N.

In May 2020, Elizarov requested forbearance from Goldwater.  At Goldwater's request, Elizarov completed the Fannie Mae standard Mortgage Assistance Application.  Ex. G.

**Figure A**



**Figure B**



3

MEMORANDUM SUPPORTING MOTION FOR REVIEW OF MAGISTRATE JUDGE'S RULING ON A NON-DISPOSITIVE MOTION, *TO WIT*: TO QUASH SUBPOENA *DUCES TECUM* TO RITE CARE HOSPICE, INC.
[191]

Elizarov notified Gregory Hill that Elizarov was selling the house on February 3, 2021. Ex. S-23. On February 4, 2021, Elizarov sent Gregory Hill the escrow officer's contact information. Ex. S-24. Therefore, Goldwater knew since February 4, 2021, that Elizarov was selling the house and had the escrow officer's contact information.

On March 3, 2021, Elizarov emailed Peter Hill a copy of the purchase agreement for the property. Ex. H.

On March 25, 2021, Elizarov discovered that Goldwater's deed of trust was unrecorded. Ex. AA-2, 3. This discovery was significant because Goldwater had not complied with the deed of trust, which required Goldwater to give Elizarov a 30-day notice of acceleration *before* Goldwater could require payment in full at the time of the sale. Ex. C-7 (¶ 71, First Affirmative Defense).

The transaction closed on March 29, 2021. Ex. FF. After the transaction closed, Elizarov refused to repay the entire balance but conceded that Elizarov remained liable to Goldwater for the scheduled periodic payments under the existing amortization schedule. Rather than accept the payments, Goldwater sued.

In its amended verified complaint, Goldwater made several baseless allegations. First, Goldwater claimed that Elizarov failed to disclose his marital status, BMW lawsuit, or IRS debt. Ex. B-5 (¶¶ 25-31). These allegations were lies. Goldwater *knew* that Elizarov had a husband, "Ilya," knew that Elizarov was involved in a lawsuit with BMW that settled in May, and knew that Elizarov paid off his IRS lien 18 months earlier. Goldwater knew this information because Elizarov disclosed it to Goldwater's loan officer Gregory Hill. Not willing to let facts and evidence stand in its way, Goldwater lied to the court under oath and alleged the claims anyway[1].

Goldwater also alleged that Elizarov misrepresented his income and assets in

---

[1] Peter Hill verified the complaint on Goldwater's behalf. Ex. B-20.

4

the assistance application when he claimed his income as $1,050.00 per week in unemployment benefits and his assets as $3,500 cash on hand. Ex. B-6 (¶¶ 38-41). In making this allegation, Goldwater represented to the court that Goldwater had evidence to show that Elizarov's income *exceeded* $1,050 per week and assets *exceeded* $3,500 cash on hand. Goldwater's counsel similarly certified that an evidentiary basis existed to support these claims. But none has ever existed. Not only did Goldwater fail to *allege* what made Elizarov's allegations false (i.e., what Elizarov's income and assets were), but Goldwater subsequently failed to recite any facts or evidence to support these claims. Therefore, the fraud claim was based on absolutely nothing despite Goldwater's and its counselors' representation to the contrary.

Goldwater subpoenaed Elizarov's personnel file and income history from Elizarov's employers Rite Care Hospice, Inc. to try to prove its baseless claim of fraud. The subpoena to Rite Care Hospice sought the following records:

1. Any and all documents, records, or communications reflecting the beginning and ending of Elizarov's employment with You.

2. Any and all documents, records, or communications related to the status of Your employment of Artur Elizarov during the Relevant Period.

3. Any and all documents and records pertaining to any and all compensation provided to Artur Elizarov, including but not limited to annual salary records and employee bonus payments, during the Relevant Period.
Ex. J-5. The "Relevant time period" was defined as January 1, 2019, through September 31, 2019. Ex. J-6.

On August 16, 2022, Elizarov filed a motion to quash Goldwater's subpoena to Rite Care [176].[2] The court heard the motion on September 13, 2022, and

---

[2] The motion also sought an order quashing Goldwater's subpoena to Elizarov's employer eCivis, Inc. Elizarov is not objecting to the magistrate's adverse ruling on that part of the motion.

5

subsequently denied the motion in a written order on September 21, 2022 [191].

## STANDARD OF REVIEW

"When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision." Fed.R.Civ.P. 72(a).  If a party is dissatisfied with the magistrate judge's ruling, the party must object to the ruling to the district judge within 14 days.  *Id.*  The party's failure timely to object forfeits review on appeal.  *Id.* ("A party may not assign as error a defect in the order not timely objected to"); *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174 (9th Cir. 1996) ("a party who fails to file timely objections to a magistrate judge's nondispositive order with the district judge to whom the case is assigned forfeits its right to appellate review of that order").

Upon review, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed.R.Civ.P. 72(a).  *See also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter…where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law").

"A finding of fact is clearly erroneous if it is implausible in light of the record, viewed in its entirety," *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 820 (9th Cir. 2018) (internal citations omitted), "if the record contains no evidence to support [the finding]," *Id*, "if [the finding] was induced by an erroneous view of the law," *Ritter v. Morton*, 513 F.2d 942, 949 (9th Cir. 1975), or "when although there is evidence to support [the finding], the reviewing court is left with a definite and firm conviction that a mistake has been committed," *Burlington Northern v. Weyerhaeuser Co.*, 719 F.2d 304, 307 (9th Cir. 1983) (internal citations omitted).

6

MEMORANDUM SUPPORTING MOTION FOR REVIEW OF MAGISTRATE JUDGE'S RULING ON A NON-DISPOSITIVE MOTION, *TO WIT*: TO QUASH SUBPOENA *DUCES TECUM* TO RITE CARE HOSPICE, INC. [191]

Questions of law are reviewed *de novo*. *Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002), citing *Kulas v. Flores,* 255 F.3d 780, 783 (9th Cir. 2001).

# ARGUMENT

In its subpoena to Elizarov's former employer Rite Care, Goldwater sought all documents, records, and communications reflecting the beginning and ending of Elizarov's employment with Rite Care, relating to Elizarov's employment status during 2019, and a record of compensation that Elizarov received from Rite Care in 2019.  The subpoena did not seek records for any other time period.

Under California Constitution, Elizarov's employment records are protected from disclosure in civil litigation.  To obtain these records, Goldwater had to specifically identify an issue in litigation and explain how the subpoenaed evidence was *directly relevant* to that particular issue.

To protect his privacy, Elizarov promptly moved to quash the subpoena.  In his motion, Elizarov argued that Goldwater was not entitled to the subpoenaed materials because they were not relevant to any issue raised by the pleadings. Although Goldwater alleged in its complaint that Elizarov lied in the mortgage application about his marital status, pending lawsuits, and tax liens (allegations that have since proven to be based on perjury), Goldwater *did not* allege any misrepresentations regarding Elizarov's income or employment.  Therefore, Goldwater's subpoena was an unlawful "fishing expedition" designed to satisfy Goldwater's unfounded hunch, not to obtain evidence supporting specific allegations in the complaint.

This court previously assigned all discovery matters to The Honorable Sheri Pym, Magistrate Judge, for adjudication.  After a full briefing and an oral argument, Judge Pym denied the motion.

On review, the court should find, on the record before the magistrate, that

7

MEMORANDUM SUPPORTING MOTION FOR REVIEW OF MAGISTRATE JUDGE'S RULING ON A NON-DISPOSITIVE MOTION, *TO WIT*: TO QUASH SUBPOENA *DUCES TECUM* TO RITE CARE HOSPICE, INC.
[191]

Goldwater failed to establish direct relevance and should set aside the magistrate's order as contrary to the law.

### A. The records sought are not directly relevant to any issue in the case

"All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and *privacy*." Cal. Const. art. I § 1, italics added. " 'Personal financial information comes within the zone of privacy protected by article I, section 1 of the California Constitution.' " *SCC Acquisitions, Inc. v. Superior Court (Western Albuquerque Land Holdings, LLC)*, 243 Cal.App.4th 741, 754 (Cal. Ct. App. 2015), citing *Harris v. Superior Court*, 3 Cal.App.4th 661, 664 (Cal. Ct. App. 1992). Employee personnel records are also protected. *El Dorado Savings & Loan Assn. v. Superior Court*, 190 Cal.App.3d 342, 345 (Cal. Ct. App. 1987), disapproved of on other grounds in *Williams v. Superior Court of L.A. Cnty.*, 3 Cal.5th 531, 558 n.8 (Cal. 2017); *Board of Trustees v. Superior Court*, 119 Cal.App.3d 516, 525-526 (Cal. Ct. App. 1981), disapproved of on other grounds in *Williams v. Superior Court of L.A. Cnty.*, 3 Cal.5th 531, 558 n.8 (Cal. 2017).

Despite the constitutional foundation for the right, Article 1 § does not absolutely bar discovery. *Allen v. Woodford*, No. CVF051104OWWLJO, 2007 WL 309485, at *6–7 (E.D. Cal., Jan. 30, 2007). "In the face of an objection based on privacy, the party seeking discovery of the information must show that the information is '*directly relevant*' to a cause of action or defense, such that disclosure is 'essential to the fair resolution of the lawsuit.' " *Look v. Penovatz*, 34 Cal.App.5th 61, 73 (Cal. Ct. App. 2019), internal citations omitted.

Evidence is directly relevant if " **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of

consequence in determining the action." Fed.R.Evid. 401.

"The party seeking the constitutionally protected information has the burden of establishing that the information sought is directly relevant to the claims." *Barrenda L. v. Superior Court*, 65 Cal.App.4th 794, 801-02 (Cal. Ct. App. 1998).

Goldwater's subpoena sought Elizarov's employment records and income history from Elizarov's former employer Rite Care for the entire year 2019. To obtain these records consistent with the California Constitution, Goldwater had to prove – and the magistrate had to find – that the information in these records made a fact in dispute "more probable" than in the absence of the evidence. In her ruling, the magistrate found these records to be directly relevant because Goldwater sought "employment and income history records in order to assess whether defendant misrepresented the state of his finances in his initial Mortgage Application and his Mortgage Assistance Application." *Ruling at p. 4 (highlighted)*.

This conclusion is wrong as matter of law.

First, the magistrate applied the wrong standard. In her ruling, the magistrate concluded that the records were necessary to "assess" whether Goldwater's allegations were true. That, however, is not the standard. California constitution does not permit Goldwater access to Elizarov's private employment and income information just because Goldwater wants to "assess" its allegations. Rather, Goldwater had to prove – and the magistrate had to find – that the records contained "directly relevant" information. Therefore, the magistrate used the wrong standard in her ruling. *Kayes v Pacific Lumber Co*, 51 F.3d 1449, 1464 (9th Cir 1995) (the court commits clear error by applying the wrong legal standard).

Second, the complaint did not allege that Elizarov misrepresented his income *in the loan application*. The complaint merely alleged that Elizarov misrepresented his marital status, failed to disclose a pending BMW lawsuit, and

9

MEMORANDUM SUPPORTING MOTION FOR REVIEW OF MAGISTRATE JUDGE'S RULING ON A NON-DISPOSITIVE MOTION, *TO WIT*: TO QUASH SUBPOENA *DUCES TECUM* TO RITE CARE HOSPICE, INC.
[191]

failed to disclose his IRS tax lien. *Exhibit B [27-28] ¶¶ 23-31 (highlighted)*. The complaint did not also allege that Elizarov misrepresented his *income*. Therefore, only records that relate to marital status, BMW lawsuit, and IRS tax lien are relevant. Income, however, is not. (It is also shocking that the magistrate ignored irrefutable evidence that Goldwater *lied under oath* when Goldwater alleged fraud in the mortgage application[3] and, on top of that, *still* relied on those perjury-based allegation to justify magistrate's allowing Goldwater to pry, without any justification, into Elizarov's constitutionally protected zone of privacy.)

Therefore, the magistrate erred as matter of law when the magistrate concluded that Elizarov's employment and income records *from 2019* were directly relevant to Goldwater's "fraud in the loan application" allegations.

And third, nothing about Elizarov's employment records *from 2019* will help Goldwater establish that Elizarov's lied about his income *in May 2020.* Goldwater's theory of fraud goes as follows: to justify forbearance, Elizarov had to report his current income and assets as of May 2020. Elizarov misrepresented Elizarov's *then current income and assets*. Therefore, Elizarov committed fraud. *Exhibit B [29] ¶¶ 38-41.*

Under this theory, only the income that Elizarov had in May 2020 when Elizarov applied for forbearance was material because only Elizarov's then current income was arguably used to justify the forbearance.[4] Elizarov did not have to report his income from earlier employment, including his 2019 Rite Care income.

---

[3] Elizarov disclosed his marital status, the BMW lawsuit, and the IRS tax lien to Goldwater's loan officer Gregory Hill in early July 2019. Furthermore, at the time Elizarov applied for the loan, Elizarov no longer had the IRS tax debt because Elizarov paid it in full in July 2018, full 18 months earlier, when Elizarov sold a residence in Valley Village, California.

[4] Elizarov also argued that the income and assets information was *not* material because the CARES Act did not allow Goldwater to consider this information in granting the forbearance. However, Elizarov does not need to raise this issue in this motion.

10

MEMORANDUM SUPPORTING MOTION FOR REVIEW OF MAGISTRATE JUDGE'S RULING ON A NON-DISPOSITIVE MOTION, *TO WIT*: TO QUASH SUBPOENA *DUCES TECUM* TO RITE CARE HOSPICE, INC.
[191]

But if Elizarov's income was not material to Goldwater's forbearance decision, which Goldwater based on Elizarov's May 2020 income *alone*, then nothing in the 2019 Rite Care records could possibly make Goldwater's fraud allegations against Elizarov more likely.

Therefore, the magistrate erred as matter of law when the magistrate concluded that Elizarov's employment records *from 2019* were directly relevant to Goldwater's "fraud in assistance application" allegations.

Finally, the magistrate's fallback position – that "[d]efendant's employment and income are relevant to assessing plaintiff's fraud claims generally, including plaintiff's claims of fraudulent transfer and fraud during the escrow process," *Ruling, p. 5 (highlighted)* is deeply flawed. One, as mentioned earlier, the court could not expose Elizarov's constitutionally protected information just because Goldwater wanted "to assess" Goldwater's allegations. Rather, discovery could only be allowed if the records were "directly relevant" to an issue in the case. And second, to allow discovery, Goldwater had to identify – and the magistrate had to find – a specific issue of fact in the case and explain how the records would make the existence of that fact more likely than without the evidence. Referring to some non-specified "fraud claims generally" does not satisfy the California constitutional standard.

For these reasons, this court should find that the magistrate's order as cleary erroneous and contrary to law, set the order aside, and enter a new order GRANTING Elizarov's motion to quash.

**B.    The subpoena is an illegal fishing expedition designed to satisfy Goldwater's unfounded hunch**

"Federal Rule of Civil Procedure 45 governs subpoenas, which are the mechanism for obtaining discovery and testimony from non-parties." *Cortinas v. Vasquez*, 1:19-cv-00367-JLT-SKO (PC), at *1, 2022 WL 1053298, (E.D. Cal. Apr.

11

7, 2022). "A subpoena issued pursuant to Federal Rule of Civil Procedure 45 is subject to the permissible scope of discovery set forth in Federal Rule of Civil Procedure 26." *Gamez v. United States*, No. CV-17-02044-PHX-JJT (ESW), at *3, 2018 WL 3471074, (D. Ariz. July 19, 2018); *accord*, *GW Grundbesitz AG v. Gunn*, 221CV02074CDSNJK, 2022 WL 4359131, at *3 (D. Nev. Sept. 20, 2022).

The scope of discovery under Rule 26 is broad. The rule allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

"Relevance for purposes of discovery is defined very broadly" [Citation.]. The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections. [Citation.]" *Kahaku v. Wallace*, 2:20-CV-1807 KJN P, 2022 WL 2333725, at *3 (E.D. Cal. June 28, 2022) (internal quotations omitted).

Although the right to discovery is broad, it is not unlimited: it must, by design, be limited to facts that are "relevant to any party's claims or defenses." Fed.R.Civ.P. 26(b)(1). This limitation necessarily implies that parties may not obtain discovery as a "fishing expedition" to support an allegation that does not appear in the pleadings. *Corker v. Costco Wholesale Corp.*, Cause No. C19-0290RSL, at *3, 2020 WL 712284 (W.D. Wash. Dec. 4, 2020) ("Plaintiffs may not use discovery to develop new claims or defenses that are not asserted in the

12

MEMORANDUM SUPPORTING MOTION FOR REVIEW OF MAGISTRATE JUDGE'S RULING ON A NON-DISPOSITIVE MOTION, *TO WIT*: TO QUASH SUBPOENA *DUCES TECUM* TO RITE CARE HOSPICE, INC.
[191]

pleadings"); *Trustees of the Constr. Indus. & Laborers Health & Welfare Trust v. Las Vegas Metro. Police Sheryl Archie*, 2:12-cv-00225-JCM-VCF, at *6, https://casetext.com/case/trustees-of-the-constr-indus-laborers-health-welfare-trust-v-las-vegas-metro-police-sheryl-archie (D. Nev. July 15, 2013) ("the parties 'have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings'"); *Monte H. Greenawalt Revocable Trust v. Brown*, 2:12-cv-01983-LRH-VCF, at *5, 2013 WL 6844760 (D. Nev. Dec. 18, 2013) ("the parties have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings").

Setting the constitutional privacy issue aside, even the generous relevance standard under Rule 26 did not permit Goldwater to seek Elizarov's employment and income records from 2019. Rule 26 permits Goldwater to obtain records that are either directly admissible or could lead to the discovery of admissible evidence. By corollary, if the records could help Goldwater assess some claims that Goldwater has not yet alleged in the complaint, then the subpoena is tantamount to an illegal "fishing expedition."

Goldwater's subpoena sought employment and income history from Elizarov's former employer Rite Care for the entire year 2019. To be relevant under the Rule 26 standard, these records must either be directly admissible *or* calculated to lead to admissible evidence needed to prove an allegation of fact in the complaint. But as mentioned earlier, *nothing* in Goldwater's complaint related to Elizarov's income in 2019. Although Goldwater alleged (i.e., lied) that Elizarov misrepresented his marital status, failed to disclose a pending BMW lawsuit, and failed to disclose his IRS tax lien[5]. Income was not mentioned. Therefore, by seeking records about Elizarov's *income* for 2019, Goldwater is not seeking to

---

[5] It's worth mentioning that the loan application did not require Elizarov to disclose any liens. The application instead required Elizarov to disclose whether Elizarov was in default on any federal debt.

13

prove existing allegations. Goldwater instead seeks "to develop new claims…that are not asserted in the pleadings," *to wit*: that, perhaps, Elizarov misrepresented his income in the loan application as well. *See Corker, supra,* 2020 WL 712284. Rule 26 does not permit Goldwater to use discovery for this purpose. If Goldwater claims that Elizarov also lied about his income, and Goldwater's counsel has evidentiary basis to support this claim[6], then Goldwater should first seek leave to amend the complaint to allege this new claim. Until then, Goldwater has no right to access these records, and the magistrate committed clear error of law when the magistrate rules otherwise.

## CONCLUSION

Goldwater sought Elizarov's income and employment records from 2019. Contrary to the magistrate's findings, these records were not directly relevant to the claim of fraud in the loan application because the complaint did not allege that Elizarov misrepresented his income in that application. The records were also not directly relevant to the claim of fraud in the assistance application because the application did not require Elizarov to disclose his 2019 income. Rather, the application required Elizarov to disclose his *then current income*.

Therefore, the court should find that the magistrate made a clear error, set the order aside, and enter a new order GRANTING Elizarov's motion to quash the subpoena.

Dated: 10/04/2022　　　　　　　　　　LOIA, INC. (APLC)

*Ilya Alekseyeff*

By: Ilya Alekseyeff
Attorney for Artur Elizarov

---

[6] Counselors are reminded about their obligation to allege only those claims that have evidentiary support. Fed.R.Civ.P. 11(b)(3).

14
MEMORANDUM SUPPORTING MOTION FOR REVIEW OF MAGISTRATE JUDGE'S RULING ON A NON-DISPOSITIVE MOTION, *TO WIT*: TO QUASH SUBPOENA *DUCES TECUM* TO RITE CARE HOSPICE, INC.
[191]