ILYA ALEKSEYEFF [CA 242462]
  ilya@loia.legal
LOIA, INC. (APLC)
727 W 7th St PH 1-13
Los Angeles, CA 90017
Tel: (213)537-4592

Attorney for Artur Elizarov

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GOLDWATER BANK, NA**, _Plaintiff_, <br><br> **vs.** <br><br> **ARTUR ELIZAROV, ET AL.**, _Defendant._ | **5:21-cv-616-JWH-SPx** <br><br> RECORD FOR REVIEW SUPPORTING ARTUR ELIZAROV'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER ON A NON-DISPOSITIVE MOTION, _TO WIT_: TO QUASH A SUBPOENA _DUCES TECUM_ TO RITE CARE HOSPICE, INC. <br><br> Date: 11/18/2022 <br> Time: 9:00 am <br> Court: Hon. John W. Holcomb |

As the record for review, defendant Artur Elizarov submits the following materials, which were presented to the magistrate judge supporting the motion to quash:

**Page      Description**

4................Alekseyeff declaration

12...............Elizarov declaration

18...............Exhibit A – Goldwater SDT to eCivis

1

1   24...............Exhibit B – verified complaint

2   44...............Exhibit C – Elizarov answer to verified complaint

3   54...............Exhibit D – Fannie Mae lender letter LL-2020-02

4   65...............Exhibit E – CFPB guidance

5   69...............Exhibit F – Fannie Mae servicing guide

6   71...............Exhibit G – mortgage assistance application

7   75...............Exhibit H – Elizarov email to Peter Hill dated 03.03.21

8   76...............Exhibit J – Goldwater SDT to Rite Care Hospice, Inc.

9   82...............Exhibit K – Uniform Residential Loan Application (excerpt)

10   83...............Exhibit L – Goldwater deed of trust recorded 04.20.21

11   84...............Exhibit M – Adjustable Rate Rider (excerpt)

12   85...............Exhibit W – Amended seller settlement statement (mislabeled as M)

13   87...............Exhibit N – Adjustable Rate Note (excerpt)

14   88...............Exhibit O – IRS lien release

15   91...............Exhibit P – Loss mitigation documents

16   94...............Exhibit R – Mortgage inspection reports

17   123..............Exhibit S – Gregory Hill text messages

18   148..............Exhibit T – Appraisal reports (mislabeled as O)

19   152..............Exhibit U – IRS demand

20   157..............Exhibit V – IRS payment

21   158..............Exhibit X – notice of unconditional settlement

22   160..............Exhibit Y – settlement agreement

23   169..............Exhibit Z – court docket

24   173..............Exhibit AA – Andrea Cross emails to Elizarov ending on 03.25.2021

25   182..............Exhibit BB – minute order re *ex parte* for temporary stay

26   185..............Exhibit CC – Goldwater response to interrogatories

27   190..............Exhibit DD – Goldwater response to production demands

28   194..............Exhibit EE – tentative notice of motion for Rule 11 sanctions

RECORD FOR REVIEW SUPPORTING ARTUR ELIZAROV'S OBJECTION TO MAGISTRATE JUDGE'S ORDER ON A NON-DISPOSITIVE MOTION, *TO WIT*: TO QUASH A SUBPOENA *DUCES TECUM* TO RITE CARE HOSPICE, INC.

200..............Exhibit FF – Howlett grant deed

202..............Exhibit GG – Alekseyeff email to Bast dated 08.08.22

204..............Exhibit HH – Alekseyeff email to Bast dated 08.08.22

206..............Exhibit JJ – Alekseyeff emails to Bast ending on 08.12.22

208..............Requests for judicial notice

212..............Goldwater Exhibit 1 – Loan application

Dated: 10/04/2022                    LOIA, INC. (APLC)


*Ilya Alekseyeff*
_____

By: Ilya Alekseyeff
Attorney for Artur Elizarov

RECORD FOR REVIEW SUPPORTING ARTUR ELIZAROV'S OBJECTION TO MAGISTRATE JUDGE'S ORDER ON A NON-DISPOSITIVE MOTION, *TO WIT:* TO QUASH A SUBPOENA *DUCES TECUM* TO RITE CARE HOSPICE, INC.

ILYA ALEKSEYEFF [CA 242462]
   ilya@loia.legal
LOIA, INC. (APLC)
727 W 7th St PH 1-13
Los Angeles, CA 90017
Tel: (213)537-4592

Attorney for Artur Elizarov

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GOLDWATER BANK, NA,**<br>*Plaintiff,*<br><br>vs.<br><br>**ARTUR ELIZAROV ET AL,**<br>*Defendant.*<br><br>**AND RELATED CROSS-ACTION.** | **5:21-cv-616-JWH-SP**<br><br>DECLARATION OF ILYA ALEKSEYEFF SUPPORTING ARTUR ELIZAROV'S MOTION TO QUASH GOLDWATER BANK, NA'S SUBPOENAS *DUCES TECUM* TO RITE CARE HOSPICE, INC. AND ECIVIS, INC<br><br>Date: 09/13/2022<br>Time: 9:00 am<br>Court: Hon. Sheri Pym<br><br>Date filed: 04/06/2021<br>Amendment filed: 05/24/2021<br>Discovery cut-off: 10/14/2022<br>Status conference: 02/03/2023<br>Jury trial: 02/27/2023 |

1.    My name is Ilya Alekseyeff.

2.    I am an attorney and a member in good standing of the California State Bar and the bar of this District Court for the Central District of California.

3. I have represented Mr. Artur Elizarov in these proceedings.

### *BMW Lawsuit*

4. In 2019, I represented Artur Elizarov in a lawsuit entitled *Artur Elizarov v. BMW Financial Services NA, LLC, Los Angeles Superior Court case 19STCV08507*.

5. I filed the lawsuit on March 11, 2019.

6. The lawsuit was settled on May 22, 2019.

7. I examined the document in **Exhibit Y** and recognized the document as the exact duplicate of the settlement agreement, which Mr. Elizarov signed in my presence and which I subsequently received counter-signed from BMW's counsel Ms. Caley.

8. On May 22, 2019, after I received the countersigned settlement agreement from Ms. Caley, I filed a notice of unconditional settlement with the court.

9. I examined the document in **Exhibit X** and recognized the document as the exact duplicate of the Notice of Settlement, which I personally filed with the court in the BMW action on May 22, 2019.

10. The court finally dismissed the case on my request on August 14, 2019.

11. I examined the document in **Exhibit Z** and recognized the document as the printout of the court's docket in Los Angeles Superior Court case *19STCV08507*.

### *Forbearance process*

12. In preparing this case, I research guidance materials regarding the forbearance process relating to hardships caused by COVID-19 virus.

13. I examined the document in **Exhibit D** and recognized the document as a Lender Letter (LL-2020-02), which I personally downloaded from Fannie Mae's website, https://singlefamily.fanniemae.com/media/22261/display, on July

26, 2022, stating on page 7 the following: "The CARES Act states that a forbearance plan must be provided to any borrower who requests a forbearance with an attestation of the financial hardship caused by the COVID-19 emergency; and no additional documentation other than the borrower's attestation to a financial hardship caused by the COVID-19 emergency is required."

14. I highlighted the above text in Exhibit D for emphasis.

15. I examined the document in **Exhibit E** and recognized the document as the information published by the Consumer Financial Protection Bureau, CFPB, which I personally downloaded from CFPB's website https://files.consumerfinance.gov/f/documents/cfpb_csbs_consumers-forbearance-guide_2020-05.pdf, stating on page 2 as follows: "You are not required to submit documentation to prove your financial hardship to enter a forbearance under the CARES Act."

16. I highlighted the above text in Exhibit E for emphasis.

17. I examined the document in **Exhibit F** and recognized the document as a printout of an answer to frequently asked questions published by Fannie Mae, which I personally downloaded from Fannie Mae's website https://servicing-guide.fanniemae.com/COVID-19/COVID-FAQs/1957530251/Is-Form-710-Mortgage-Assistance-Application-required-to-verify-hardship-for-putting-a-borrower-on-a-COVID-19-related-forbearance-plan.htm, answering the question, "Is Form 710 (Mortgage Assistance Application) required to verify hardship for putting a borrower on a COVID-19 related forbearance plan," as follows: "For COVID-19 impacted borrowers, no additional documentation other than the borrower's attestation to a financial hardship caused by the COVID-19 emergency is required for the borrower receiving a forbearance plan."

18. I examined the document in **Exhibit G** and recognized the document as a copy of Artur Elizarov's supposed mortgage assistance application, which I received in discovery from Goldwater's attorney Derek Bast.

### *Gregory Hill text messages*

19.    I examined the document in **Exhibit S** and recognized the messages as a conversation between Mr. Elizarov and Gregory Hill, which I personally created from the contents of Mr. Elizarov's cellular telephone as follows:

20.    I used a commercially available program iMazing.

21.    This program allows users to create an easy-to-read extraction of text messages from the iPhone.

22.    I completed the task as follows:

23.    I connected Mr. Elizarov's unlocked iPhone to my computer and extracted the text messages from the phone.

24.    I located the conversation with Gregory Hill and saved all the messages in the conversation into a single easy-to-read PDF file.

25.    The document in Exhibit S is the file that I created using iMazing software.

26.    The information in the footer of each page, including the date of the extraction and the serial number of the phone, was automatically generated by iMazing.

### *Discovery responses*

27.    I examined the document in **Exhibit CC** and recognized the document as an exact duplicate of Goldwater Bank's response to Mr. Artur Elizarov's interrogatories, which I received from Goldwater's attorney Derek Bast in discovery by email.

28.    I examined the document in **Exhibit DD** and recognized the document as an exact duplicate of Goldwater Bank's response to Mr. Artur Elizarov's requests for production, which I received from Goldwater's attorney Derek Bast in discovery by email.

29.    I examined the document in **Exhibit G** and recognized the document as an exact duplicate of a document described as Mortgage Assistance Application

purportedly signed by Mr. Elizarov, which I received from Goldwater's attorney Derek Bast in discovery by email.

     30.    I examined the document in **Exhibit K** and recognized the document as an except from a document described as Uniform Residential Loan Application, which I received from Goldwater's attorney Derek Bast in discovery by email.

     31.    I examined the document in **Exhibit L** and recognized the document as an excerpt from a document described as Deed of Trust, which I received from Goldwater's attorney Derek Bast in discovery by email.

     32.    I examined the document in **Exhibit M** and recognized the document as an excerpt from a document described as Adjustable Rate Rider, which I received from Goldwater's attorney Derek Bast in discovery by email.

     33.    I examined the document in **Exhibit N** and recognized the document as an excerpt from a document described as Adjustable Rate Note, which I received from Goldwater's attorney Derek Bast in discovery by email.

     34.    I examined the document in **Exhibit P** and recognized the document as a collection of three documents entitled Loss Mitigation 90-120 Days Delinquency Review Checklist, which I received from Goldwater's attorney Derek Bast in discovery by email.

     35.    I examined the document in **Exhibit R** and recognized the document as a collection of documents that appeared to include house inspection information, which I received from Goldwater's attorney Derek Bast in discovery by email.

     36.    I examined the document in **Exhibit T** and recognized the document as an excerpt from a document described as Deed of Trust, which I received from Goldwater's attorney Derek Bast in discovery by email.

     37.    I examined the document in **Exhibit T** and recognized the document as a collection of document that appear to show Freddie Mac and Fannie Mae appraisal reports, which I received from Goldwater's attorney Derek Bast in discovery by email.

38.     I examined the document in **Exhibit AA** and recognized the document as a printout of a chain of emails between Artur Elizarov and Andrea Cross.

39.     Exhibit AA was also used during Andrea Cross' deposition.

### *Subpoenas*

40.     I examined the document in **Exhibit A** and recognized the document as a subpoena *duces tecum* to eCivis, Inc., which I received from Goldwater's attorney Derek Bast by email.

41.     I examined the document in **Exhibit J** and recognized the document as a subpoena *duces tecum* to Rite Care Hospice, Inc., which I received from Goldwater's attorney Derek Bast by email.

### *Court documents*

42.     I examined the document in **Exhibit B** and recognized the document as an exact copy of Goldwater's verified amended complaint, which was filed in this case on May 27, 2021, as document number 44.

43.     I examined the document in **Exhibit C** and recognized the document as an exact copy of Mr. Elizarov's answer to Goldwater's verified complaint, which I personally filed in this case on December 10, 2021, as document number 98.

44.     I examined the document in **Exhibit C** and recognized the document as an exact copy of the court's order regarding Mr. Elizarov's *ex parte* application for stay, which the Court issued and filed on August 3, 2022, as document number 175.

### *Additional documents*

45.     I examined the document in **Exhibit EE** and recognized the document as an exact duplicate of a notice of motion under Rule 11 that I served on all parties' attorneys in this case on August 8, 2022.

\\\

### *Meet and confer*

46.     Per order of this court, I spoke to Goldwater's attorney Derek Bast on the phone on Monday, August 8, 2022.

47.     Following the meeting, I sent Bast an email that summarized our discussions.

48.     I examined the document in **Exhibit GG** and recognized the document as a printout of the email that I sent to Bast at 1:05 pm on Monday, August 8, 2022, after speaking to Bast on the phone.

49.     The email in Exhibit GG accurately described our conversation.

50.     Minutes later, I sent another email to Bast, which included authorities regarding the scope of discovery that I discussed with Bast on the phone.

51.     I felt compelled to send these authorities because Bast told me during the call that he knew of no authorities that limited discovery only to those claims that were alleged in the complaint and did not allow parties to fish for evidence of some additional, yet unalleged claims.

52.     I examined the document in **Exhibit HH** and recognized the document as a printout of the email that I sent to Bast at 1:36 pm on Monday, August 8, 2022.

53.     Since that email, Bast has not responded to my authorities, has not sent me any contrary authorities, and has not agreed to limit the scope of the subpoenas.

54.     On Friday, August 12, 2022, I followed up with Bast regarding the CARES Act issue.

55.     Bast responded and offered me his "belief" that the loan was not a federally-backed loan.

56.     In my reply, I questioned why Bast offered me his belief rather than send me the records, especially when the records that Goldwater had previously disclosed had "Fannie Mae" written on them.

57.     I examined the document in **Exhibit JJ** and recognized the document as a printout of the email conversation that I had with Bast on August 12, 2022.

58.     Since that email, Bast has not sent me any documents or other proof to support his "belief" that the CARES Act did not apply.


I declare under penalty of perjury under the laws of the United State that the foregoing statements are true on my own personal knowledge.


Dated: 08/16/2022              Signature: _Ilya Alekseyeff_____

ILYA ALEKSEYEFF [CA 242462]
   ilya@loia.legal
LOIA, INC. (APLC)
727 W 7th St PH 1-13
Los Angeles, CA 90017
Tel: (213)537-4592

Attorney for Artur Elizarov

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GOLDWATER BANK, NA**, *Plaintiff,* vs. **ARTUR ELIZAROV ET AL**, *Defendant.* | **5:21-cv-616-JWH-SP** |
| | DECLARATION OF ARTUR ELIZAROV SUPPORTING ARTUR ELIZAROV'S MOTION TO QUASH SUBPOENAS *DUCES TECUM* TO RITE CARE HOSPICE, INC. AND ECIVIS, INC. |
| | Date: 09/13/2022 Time: 9:00 am Court: Hon. Sheri Pym |
| | Date filed: 04/06/2021 Amendment filed: 05/24/2021 Discovery cut-off: 10/14/2022 Status conference: 02/03/2023 Jury trial: 02/27/2023 |

1.   My name is Artur Elizarov.

2.   I am a defendant in the above-entitled civil cause.

\\\

### *Goldwater loan application*

3.     I contacted Goldwater Bank, National Association about a mortgage loan in late June 2019.

4.     I primarily spoke to Gregory Hill who introduced himself as Goldwater's loan officer.

5.     When I applied for the loan, I provided information to Gregory Hill by phone, text messages, email.

6.     During one of the early phone calls, I disclosed to Gregory Hill that I had a registered domestic partner Ilya Alekseyeff.

7.     I also disclosed to Gregory Hill that I was a party to a lawsuit with BMW, which was settled as of May 2019.

8.     I also disclosed to Gregory Hill that I no longer had a debt to the Internal Revenue Service because I paid off the debt in January 2018 when I sold a residence in Valley Village.

9.     In fact, Gregory Hill's question about the IRS lien prompted me to contact the IRS about getting the lien officially released.

10.     The IRS followed up on my call and recorded the release in December of 2019.

11.     Gregory Hill subsequently prepared a loan application.

12.     Gregory Hill advised me that he included only the information that Goldwater required for my type of mortgage loan.

13.     Gregory Hill told me that I did not have to include the information about Ilya Alekseyeff because I qualified for the loan on my own; did not have to report the BMW lawsuit because I settled the case in May; and did not have to disclose the IRS issue because I paid off the balance in January 2018.

14.     Mr. Gregory Hill's approach to the application was similar to my earlier experience applying for mortgage loans.

\\\

15.   I did not personally complete any of the information in the loan information.

16.   I examined the document in **Exhibit S** and recognized the document as an accurate printout of my entire text conversation with Gregory Hill between June 24, 2019, and February 5, 2021.

17.   To confirm accuracy, I compared the contents of Exhibit S with the contents of my phone and verified that Exhibit S included all my individual text messages that I exchanged with Gregory Hill between June 24, 2019, and February 5, 2021.

18.   Page 5 of Exhibit S included a discussion of my husband's creditworthiness.

19.   Page 9 of Exhibit S references my husband by name, "Ilya."

20.   I expected Gregory Hill to recognize the name because I previously identified my husband Ilya Alekseyeff by name to Gregory Hill during phone calls.

21.   Page 8 of Exhibit S shows the information about the BMW lawsuit that I sent to Gregory Hill.

22.   I also sent Gregory Hill the settlement agreement and the notice of settlement from that lawsuit as well.

23.   I examined the documents in **Exhibit Y** and **Exhibit Z** and recognized those as the two documents that I sent to Gregory Hill as discussed on Page 8 of Exhibit S.

### *Tax lien*

24.   On October 16, 2017, the Internal Revenue Service recorded in Los Angeles County a notice of lien regarding a balance of $107,787.69 regarding 2014 tax return.

25.   At the time, I owned a house located at 11623 Morrison Street in Valley Village, California.

\\\

26. I sold the house to Cao Thu and Solomon Aman Demoz on January 19, 2018.

27. During escrow regarding the sale of the Morrison house, I requested a demand from the IRS because I had to extinguish the IRS lien to close the transaction.

28. On January 17, 2018, the Internal Revenue Service transmitted a demand for the outstanding balance of $91,567.25.

29. I examined the document in **Exhibit U** and recognized the document as an exact duplicate of the payoff demand from the Internal Revenue Service dated January 17, 2018.

30. I highlighted the amount due in Exhibit K for emphasis.

31. I subsequently instructed the escrow officer, Andrea Cross, to satisfy this demand.

32. I examined the document in **Exhibit V** and recognized the document as an exact duplicate of a check for $91,567.25 that Andrea Cross issued to the Internal Revenue Service per my instructions.

33. I examined the document in **Exhibit W** and recognized the document as an exact duplicate of the Amended Seller's Final Settlement Statement regarding the sale of the Morrison house, which I received from Andrea Cross, which shows a payment to the Internal Revenue Service of $91,567.25.

34. I highlighted the relevant information in Exhibit W for emphasis.

35. I also redacted certain information from Exhibit W to protect the privacy of my personal financial information.

36. I examined the document in **Exhibit O** and recognized the document as an exact duplicate of the Certificate of Release of Federal Tax Lien, which I received from the Internal Revenue Service in December 2019.

\\\

37.     I contacted the Internal Revenue Service about this document after Gregory Hill advised me that the lien remained active despite the payment that I made to the IRS in January 2018.

### The sale

38.     I hired real estate broker Will Cook to market the Palm Springs property for sale in November 2020.

39.     I informed Gregory Hill by text message that I had put the property for sale on February 3, 2021.

40.     These messages are reflected on page 23 of Exhibit S.

41.     At Gregory Hill's request, I promptly shared the escrow officer's information with Gregory Hill.

42.     Page 24 of Exhibit S reflects my efforts to share the information about escrow with Gregory Hill.

43.     On February 3, 2021, I also transmitted the escrow officer's contact information to Goldwater's agent Peter Hill.

44.     On March 3, 2021, I sent Peter Hill at Goldwater a copy of my residential purchase agreement with Scott Howlett.

45.     I examined the document in **Exhibit H** and recognized the document as an exact duplicate of an email that I sent to Peter Hill on March 3, 2021.

46.     I also highlighted the attachment, "291 W Overlook, PS_RPA.pdf," which referred to the purchase agreement between Mr. Howlett and me, which I previously identified as Exhibit T.

47.     I discovered that Goldwater had never recorded the deed of trust in Riverside county on March 25, 2021, from communications with escrow officer Andrea Cross.

48.     I examined the document in **Exhibit AA** and recognized the document as an exact duplicate of my email exchange with escrow officer Andrea Cross.

49.     I examined the document in **Exhibit FF** and recognized the document as an exact duplicate of the grant deed, which transferred title to the property in Palm Springs from me to Scott Howlett.

### *BMW lawsuit*

50.     I sued BMW Financial Services NA, LLC in Los Angeles Superior Court on March 3, 2019.

51.     I settled the lawsuit on May 22, 2019.

52.     I examined the document in **Exhibit Y** and recognized the document as an exact copy of my settlement agreement with BMW Financial Services NA, LLC.

I declare under penalty of perjury under the laws of the United State that the foregoing statements are true on my own personal knowledge.

Dated: 08/16/2022          Signature: _____

6

DECLARATION OF ARTUR ELIZAROV SUPPORTING ARTUR ELIZAROV'S MOTION TO QUASH
SUBPOENAS *DUCES TECUM* TO RITE CARE HOSPICE, INC. AND ECIVIS, INC



WAGNER HICKS PLLC
831 E. Morehead Street, Suite 860
Charlotte, NC 28202
(704) 705-7787

**DEREK M. BAST**
Attorney at Law
(704) 705-8311
derek.bast@wagnerhicks.law

**VIA PERSONAL SERVICE**

July 28, 2022

Escrow of the West, Inc.
c/o Galit Ofengart, registered agent
9440 Santa Monica Blvd, Suite 310
Beverly Hills, CA 90210

> **Re:** **Goldwater Bank, N.A., v. Elizarov, et al.** No. 5:21-cv-00616 (C.D. Cal.)
> Service of Subpoena *Duces Tecum* and Stipulated Protective Order

To Whom It May Concern:

Enclosed please find a Subpoena *Duces Tecum* in the above-referenced lawsuit. Additionally, please find enclosed a copy of a Stipulated Protective Order entered by the Court in this matter on June 8, 2022, which permits the designation of subpoenaed materials as "Confidential" upon production.

To facilitate your response by August 18, 2022, you may produce documents to Goldwater Bank, N.A.'s counsel by email, using the contact information below. If producing documents by this date is unfeasible, please contact counsel to discuss an alternative production date.

Derek M. Bast
Wagner Hicks PLLC
T: (704) 705-8311
derek.bast@wagnerhicks.law

Please do not hesitate to contact me with any questions or concerns.

Sincerely,

Derek M. Bast
Attorney

Enclosures



AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Central District of California

| | |
|---|---|
| Goldwater Bank, N.A. | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No.   5:21-cv-00616-JWH-SP |
| Artur Elizarov, Unison Agreement Corp., Scott Howlett, Bank of the West, and Ilya Alekseyeff | ) |
| _Defendant_ | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:             eCivis, Inc. c/o Registered Agents Inc., registered agent
              1401 21st Street, Suite R, Sacramento, CA 95811

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
        See Attachment 1.

| Place: Huseby Global Litigation<br>        700 Webster Street<br>        Fairfield, CA 94533 | Date and Time:<br><br>    08/18/2022 4:00 pm |
|---|---|

❑ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    07/28/2022

               _CLERK OF COURT_
                                 OR

                                                 /s/ Derek M. Bast
         _Signature of Clerk or Deputy Clerk_                                   _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
Plaintiff Goldwater Bank, N.A. _____ , who issues or requests this subpoena, are:

Derek Bast, 831 E Morehead St, Ste 860, Charlotte, NC 28202; derek.bast@wagnerhicks.law; (704) 705-8311

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   5:21-cv-00616-JWH-SP

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $       0.00       .

I declare under penalty of perjury that this information is true.

Date: _____              _____
                                                    *Server's signature*

                                          _____
                                                    *Printed name and title*

                                          _____
                                                    *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT 1

## LIST OF ITEMS FOR PRODUCTION

Pursuant to the foregoing Subpoena, please produce the following documents (please refer to the instructions and definitions below for information concerning how to respond to the following items):

1.    Any and all documents, communications, or records reflecting or related to any and all COVID-19 pandemic furlough or other change in employment status of Artur Elizarov during the Relevant Period.

3.    Any and all documents, communications, or records reflecting or relating to any and all compensation provided by You to Artur Elizarov, including but not limited to annual salary records and employee bonus payments during the Relevant Period.

## INSTRUCTIONS & DEFINITIONS

The foregoing Subpoena requires that you produce the above-listed items for inspection. You may satisfy such requirement either by (1) producing the original of any responsible item for inspection and copying or (2) **producing a true, accurate, and complete copy of the original via electronic mail to the requesting attorney (derek.bast@wagnerhicks.law)**. To comply with the Subpoena, such production must occur by, on, or before the date and time indicated on the foregoing Subpoena.

In preparing your response, please note that the words in the List of Items for Production and in these Instructions and Definitions have the meaning ordinarily attributed to them in common usage, except that the following words have the following meanings:

1.    **"Relevant Period"** refers to February 1, 2020 through April 1, 2021.

Page **1** of **2**

2.    "**Document**" includes any and all records, or written, readable, graphic, or visual materials, or any kind or character, and shall include, without limitation, correspondence, memoranda, notes, emails, files, bills, invoices, electronically stored information, and any other data compilation stored in any medium from which information can be obtained.

3.    "**Communication**" or "**communications**" includes, without limitation, all statements, representations, expressions of fact or opinion, correspondence, reports, memoranda, emails, text messages, and other transmissions of information, made in any manner whatsoever.

4.    "**You**" or "**Your**" means eCivis, Inc., along with its affiliates and subsidiaries, and anyone working on eCivis, Inc.'s behalf.

**SEAN C. WAGNER** (*Pro Hac Vice*)
Sean.Wagner@wagnerhicks.law
**DEREK M. BAST** (*Pro Hac Vice*)
Derek.Bast@wagnerhicks.law
**WAGNER HICKS PLLC**
831 East Morehead Street, Suite 860
Charlotte NC 28202
Tel: (704) 705-7538; Fax: (704) 705-7787
Attorneys for Plaintiff,
**GOLDWATER BANK, N.A.**


**W. KEITH WYATT (S.B.N.: 80859)**
**MARIE MAURICE (S.B.N.: 258069)**
mmaurice@imwlaw.com
**IVIE McNEILL WYATT PURCELL & DIGGS**
444 S. Flower Street, Suite 1800
Los Angeles, CA  90071-2919
Tel: (213) 489-0028; Fax (213) 489-0552

Local Counsel for Plaintiff,
**GOLDWATER BANK, N.A.**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Goldwater Bank, N.A. | Case No. 5:21-cv-00616-JWH-SP |
| *Plaintiff,* | **VERIFIED AMENDED COMPLAINT FOR:** |
| vs. | |
| ARTUR ELIZAROV; UNISON AGREEMENT CORP.; SCOTT HOWLETT; BANK OF THE WEST; and ILYA ALEKSEYEFF | **1. BREACH OF CONTRACT** |
| *Defendants.* | **2. UNJUST ENRICHMENT** |
| | **3. FRAUD** |
| | **4. FRAUDULENT TRANSFER** |
| | **5. CIVIL CONSPIRACY** |
| | **6. INJUNCTIVE RELIEF** |
| | **7. QUIET TITLE** |
| | **8. DECLARATORY JUDGMENT** |

Plaintiff Goldwater Bank, N.A. ("Goldwater"), pursuant to Fed. R. Civ. P. 15(a), hereby files this Amended Complaint and alleges the following:[1]

## PARTIES

1.      Plaintiff Goldwater Bank, N.A. is a national association with its principal place of business in Phoenix, Arizona.

2.      Defendant Artur Elizarov, is an individual who resided in Riverside County, California at certain times at issue in this matter.

3.      Defendant Unison Agreement Corp. is a corporation organized under the laws of the state of Delaware with its principal place of business in San Francisco, California.

4.      Defendant Scott Howlett is an individual and resident of San Francisco County, California.

---

[1] The Court's pending decision on Goldwater's request for a preliminary injunction need not be affected by the filing of this Amended Complaint. "Where the claim and prayer for injunctive [relief] forming the basis for a motion for preliminary injunction remains in an amended pleading and the motion for injunctive relief does not rely on factual allegations that substantially differ between the superseded and amended complaint, construing a motion for injunctive relief as relying on the amended pleading is appropriate." *JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC*, No. CV20-2299-CAS (SKX), 2020 WL 3963863, at *6 (C.D. Cal. July 13, 2020). Here, Goldwater's motion for TRO and preliminary injunction sought relief based on Goldwater's claims for breach of contract, unjust enrichment, and constructive trust, which are still present in this amended complaint, and Goldwater is not asking the Court to rule on the pending motion for preliminary injunction based on the new causes of action asserted herein. Additionally, Goldwater's motion did not rely on the factual allegations of a verified Complaint but on separate declarations from Goldwater regarding the facts at issue. Goldwater contends the Court can and still should rule on the request for preliminary injunction based on Goldwater's claims for breach of contract, unjust enrichment, and constructive trust. "Requiring the refiling of the Motion and related documents would be a needless waste of party and judicial resources." *Id.* (construing a pending motion for preliminary injunction to relate to the amended complaint as the operative complaint with respect to the claims at issue in the motion).

5. Defendant Bank of the West is a corporation organized under the laws of the state of California with its principal place of business in San Francisco, California.

6. Defendant Ilya Alekseyeff is an individual and resident of Los Angeles County, California.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over Goldwater's claims pursuant to 28 U.S.C. § 1332, as complete diversity of citizenship exists between Goldwater and Defendants and the amount in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

8. A large portion of the conduct giving rise to the claims against Defendants, as more fully described below, occurred in the Central District of California.

9. In addition, the real property over which Plaintiff claims a security interest at issue in this action is located in Riverside County, California within the Central District of California.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## DEMAND FOR JURY TRIAL

11. Plaintiff Goldwater hereby demands a trial by jury on all issues so triable.

## BACKGROUND

### *The Goldwater Loan and the Unison Lien*

12. On or around July 31, 2019, Goldwater, as lender, originated a mortgage loan to Elizarov in the amount of $686,250.00 (the "Goldwater Loan") to be secured by certain real property located at 291 W. Overlook Road, Palm Springs, California 92264 (the "Subject Property").

13. Elizarov is a real estate broker holding an active license from the the California Department of Real Estate, and his license ID number is 01954357.

14. The Goldwater Loan was memorialized in an Adjustable Rate Note (the "Note") and a Deed of Trust (the "Deed of Trust"), both dated July 31, 2019. A true and

accurate copy of the Note and Deed of Trust are attached and incorporated herein as **Exhibit A** and **Exhibit B**, respectively.

15.    The Deed of Trust created a valid and enforceable lien between Goldwater and Elizarov.

16.    Also on or around July 30, 2019, Elizarov entered into another deed of trust with Unison as trustee, which was also secured by the Subject Property (the "Unison Lien").

17.    Elizarov informed Unison of the Goldwater Loan and Goldwater's lien.

18.    Upon information and belief, Elizarov purchased the Subject Property for $915,000 using proceeds of both the Goldwater Loan and funds from Unison, and Unison agreed to subordinate the Unison Lien in exchange for an equity share in the value of the Subject Property upon re-sale.

19.    Specifically, Unison and Elizarov entered into a document titled Unison Homebuyer Uniform Subordination Agreement (the "Subordination Agreement") on or around July 31, 2019.  A true and accurate copy of the Subordination Agreement is attached hereto as **Exhibit C**.

20.    The Subordination Agreement identifies Unison as a Subordinating Lien Holder of a Junior Lien on the Subject Property.

21.    The Subordination Agreement further identifies the Goldwater lien as the First Mortgage on the Subject Property by reference to Goldwater's loan number, the date of the Note, and the principal amount of $686,250.00.

22.    The Subordination Agreement was recorded with the Riverside County Recorder's office on or around August 7, 2019.

*Elizarov's Mortgage Application*

23.    To obtain the Goldwater Loan, Elizarov submitted a Uniform Residential Loan Application (the "Loan Application") to Goldwater on or around July 3, 2019.

24.    In the Loan Application, Elizarov made several material misrepresentations of fact.

25.     In the Loan Application, Elizarov did not identify himself as "Married (include registered domestic partners)."     Rather, Elizarov identified himself as "Unmarried."

26.     This was a misrepresentation of fact because Elizarov and Defendant Alekseyeff have been in a domestic partnership, which is registered with the state of California, since May 2003.

27.     In the Loan Application, Elizarov also identified his total assets, separate from his income, as $227,103.00 in a JP Morgan savings account.

28.     Elizarov also stated in the Loan Application that he was not a party to any lawsuit.

29.     This was a misrepresentation of fact because Elizarov was in fact a named plaintiff at that time in litigation in the Superior Court of California, Los Angeles County, which was captioned *Artur Elizarov v. BMW Financial Services NA, LLC* (19STCV08507).  Elizarov was represented by Alekseyeff in that action.

30.     Elizarov stated on the loan application that he was not "presently delinquient or in default on an Federal debt[.]"

31.     Upon information and belief, this was a misrepresentation of fact because, at the time, Elizarov was subject to a federal tax lien of $107,787.69.

32.     In signing the Mortgage Application, Elizarov represented, agreed, and acknowledged that "the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, *et seq.*"

33.     Elizarov's multiple misrepresentations were material to the transaction because they are directly relevant to Elizarov's reliability and financial position.

34.     Elizarov's marital status was material to the transaction because California is a community property state, meaning that Elizarov could be held responsible for his domestic partner's liabilities incurred during the span of the domestic partnership.

35.     Goldwater relied on Elizarov's misrepresentations in approving him for and making the Goldwater Loan.

### *Elizarov's Payment History*

36.     Elizarov defaulted on the Goldwater Loan and is delinquent on the payment obligations as of April 1, 2020, meaning that the payments that Elizarov has made only satisfy his ordinary payment obligations through April 1, 2020.

37.     On or around May 2020, Goldwater transferred responsibilities for servicing the Goldwater Loan to an affiliated entity named Weststar Mortgage Corporation.

38.     On or around May 5, 2020, Elizarov completed a Mortgage Assistance Application (the "Assistance Application") requesting assistance based on reduction in income and disaster.

39.     In the Assistance Application, Elizarov represented that his only form of income was $1,050.00 per week in unemployment benefit income.

40.     In the Assistance Application, Elizarov represented that his only assets, excluding retirement funds, was $3,500 in cash on hand.

41.     Upon information and belief, Elizarov misrepresented the full extent of his assets and income.

42.     Noticeably, Elizarov failed to report the JP Morgan savings account on his Assistance Application, despite reporting it on his Mortgage Application.  Upon information and belief, the JP Morgan savings account was still in existence at the time Elizarov completed the Assistance Application.

43.     In signing the Assistance Application, Elizarov certified and acknowledged that "all of the information in this Mortgage Assistance Application is truthful . . . [and that] [k]nowingly submitting false information may violate Federal and other applicable law."

44.    In reliance on the information reported in Elizarov's Assistance Application, Elizarov was approved for forbearance.  Elizarov was required to make reduced monthly payments of $1,101.31, which reflected the escrow amount of his ordinary payments.

45.    Elizarov continued to report that he still suffered from the same hardships, and he continued to receive forbearance extensions.  However, Elizarov failed to regularly and timely make his reduced monthly payments.

46.    During the time when Elizarov was seeking and receiving forbearance, Alekseyeff communicated with Goldwater regarding Elizarov's forbearance.

*Elizarov Sells the Subject Property*

47.    At some point following the default, Elizarov decided to sell the Subject Property, and Elizarov communicated that intent to Goldwater in March 2021.

48.    On March 3, 2021, the escrow company for the pending sale, Escrow of the West, Inc., made contact with Goldwater regarding the payoff of Goldwater's lien on the Subject Property in connection with a pending sale of the Subject Property.

49.    During the course of the escrow relationship and prior to the closing of the sale, Escrow of the West, Inc., as escrow agent for Elizarov as seller and Howlett as buyer of the Subject Property, learned that Goldwater's Deed of Trust was had never been recorded in the Riverside County Register of Deed's office.

50.    On or around March 24, 2021, Goldwater provided Escrow of the West with its payoff calculations, which noted a complete payoff amount of $729,354.80 and daily interest of $101.46.  A true and accurate copy of the Payoff Calculations is attached hereto as **Exhibit D.**

51.    On March 25, 2021, Escrow of the West provided Goldwater with an estimated settlement statement showing that the proceeds of the sale would pay off a $491,000.00 lien to Unison, a mechanic's lien in the amount of $107,270.00, various closing costs, and a final payout of $677,074.53 in proceeds to Elizarov.

52.    Goldwater thereafter communicated with Elizarov on March 25, 2021 by email and by phone regarding the disbursement of the proceeds of the pending sale, which

would have been insufficient to pay off the Goldwater Loan, the Unison Lien, and the mechanic's lien in full.

53.    In the communications on March 25, 2021, Elizarov represented that, despite Goldwater's Deed of Trust being unrecorded, Goldwater would recieve $675,000 of the proceeds following the sale of the Subject Property, which would have paid off a substantial majority of the Goldwater Loan.

54.    Elizarov sold the Subject Property to Scott Howlett on or around March 25, 2021, by a Grant Deed that was recorded on or around March 29, 2021.  A true and accurate copy of the Grant Deed is attached and incorporated herein as **Exhibit E**.

55.    Elizarov never informed Goldwater that the sale occurred and continued communicating with Goldwater after March 25, 2021 regarding what amount of the proceeds Goldwater would receive.

56.    On or around March 29, 2021, Goldwater asked Elizarov about the status of the closing, and Elizarov denied that the sale occurred.

57.    To date, Goldwater has received none of the proceeds from the sale of the Subject Property.

58.    Elizarov made these representations about the insufficiency of the proceeds to pay off the Goldwater Loan in full and the promise that Goldwater would nevertheless receive a $675,000 payout with the intent that Goldwater would rely on the misrepresentations and not interfere with the sale.

59.    Goldwater did in fact rely on Elizarov's representations.

60.    Elizarov's statement that the Subject Property was subject to a $107,270.00 mechanic's lien was a misrepresentation of material fact.  The Seller's Final Settlement Statement from Escrow of the West indicates that Unison was the only lienholder paid with the proceeds of the sale.  A true and accurate copy of the Seller's Final Settlement Statement is attached hereto as **Exhibit F**.

61.    Elizarov's representations that the sale of the Subject Property would yield insufficient funds to pay off the Goldwater Loan was a misrepresentation of material fact.

Elizarov in fact received $785,741.36 in proceeds from the sale, Ex. F, which is in excess of Goldwater's payoff demand of $729,354.80.

62.     Following the sale of the property, Goldwater also discovered a flyer advertising the Subject Property for sale identifies Artur Elizarov and his firm DreamHome Realty Group, Inc. as the realtor to be contacted about the property. A true and accurate copy of this flyer is attached hereto as **Exhibit G**.

63.     Because of Elizarov's status as a licensed real estate broker in the State of California and his role in marketing the Subject Property for sale, Elizarov cannot deny that he was aware of the validity of the Deed of Trust and Goldwater's right to the proceeds of the sale of the Subject Property.

64.     Goldwater's status as a secured creditor with regard to Elizarov is now at risk, and Goldwater faces a significant likelihood that it will effectively become an unsecured creditor of Elizarov.

65.     If Goldwater is an unsecured creditor of Elizarov, there is a high risk that Goldwater will not be made whole, as the evidence of Elizarov's insolvency is well documented.

66.     At the time of the sale of the Subject Property, Elizarov was already almost a year behind in his payments on the Goldwater Loan, which is significant in light of the fact that he owned the Subject Property for less than two years.

67.     Additionally, on December 18, 2019, Elizarov was discharged from an IRS tax lien in the amount of $107,787.69.

68.     Elizarov's recent history of carrying significant debts suggests that the proceeds of the sale of the Subject Property will be wasted and disposed of prior to the entry of a final judgment in this matter.

69.     On April 1, 2021, Goldwater demanded that Elizarov return the promised funds and advised that it intended to pursue its full legal remedies if the funds were not returned.

### *The Validity of Goldwater's Deed of Trust*

70.     Goldwater's unrecorded Deed of Trust is valid between Goldwater, Elizarov, and any other party with notice of the Deed of Trust.  Cal. Civ. Code § 1217.

71.     Upon information and belief, Unison had actual knowledge of Goldwater's Deed of Trust as evidenced by the Subordination Agreement.

72.     Howlett and Bank of the West had, at minimum, constructive knowledge or inquiry notice of the Goldwater Lien by virtue of the duly-recorded Subordination Agreement.

73.     Howlett and Bank of the West also had imputed knowledge of the Goldwater Lien because Escrow of the West obtained knowledge of Goldwater's adverse interest while acting within the course and scope of its authority as an agent of Elizarov, Howlett, and Bank of the West.

74.     On March 29, 2021, a deed of trust was recorded in the Riverside County Recorder's office describing a lien given by Howlett to Bank of the West secured by the Subject Property.

### *Elizarov's Dissipation of the Proceeds of the Sale of the Subject Property*

75.     Following the sale of the Subject Proceeds, Elizarov received $785,741.36, which was wired to an account with Ally Bank ending in account number -8480 (the "Proceeds Account") on or around March 30, 2021.

76.     On April 6, 2021, one week after receiving the proceeds, Elizarov entered into a contract for the purchase of real property for $630,000 in cash in Wilton Manors, Florida (the "Wilton Manors Property").

77.     Elizarov paid approximately $19,000 in cash out of the Proceeds Account as a down payment for the Wilton Manors Property on April 7, 2021.

78.     Elizarov closed on the purchase of the Wilton Manors Property on April 16, 2021 and paid the remaining $613,000.00 out of the Proceeds Account to complete the sale.

79.     On April 20, 2021, allegedly within hours of being restrained from further transferring assets from the Proceeds Account Elizarov transferred $84,843.22 from the Proceeds Account to pay off a loan that belonged to Alekseyeff.

80.     At the time that Elizarov transferred the $84,843.22, he was aware of Goldwater's claims and the pending request for an order to prohibit the transfer of those assets.

81.     On May 12, 2021, Goldwater sent a Notice of Acceleration to Elizarov informing him that Goldwater was accelerating the Note and demanding payment in full within thirty (30) days.  As of this date, Goldwater has not received payment in full.  A true and accurate copy of the Notice of Acceleration is attached hereto as **Exhibit H**.

82.     As a result of Elizarov's conduct, Goldwater Bank has been damaged in an amount in excess of $75,000, exclusive of interest and costs.

## FIRST CAUSE OF ACTION

### (Breach of Contract, as to Elizarov)

83.     Goldwater incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

84.     Goldwater had an agreement with Elizarov to make the Goldwater Loan in exchange for his obligations in the Note and the Deed of Trust.

85.     The Note and Deed of Trust is a valid and binding contract between the parties.

86.     Pursuant to the Note and Deed of Trust, Goldwater is entitled to the proceeds from a sale of the Subject Property.

87.     Elizarov breached the Note and Deed of Trust by failing to make all payments when due, including by failing to provide Goldwater with the proceeds of the sale of Subject Property.

88.     Rather than pay the proceeds from the sale of the Subject Property to Goldwater, Elizarov has wrongfully retained those proceeds in an amount of approximately $675,000.

89.     Elizarov agreed in the Note that in the event of a default and acceleration of the Goldwater Loan, Goldwater would be entitled to recover its costs and expenses incurred in enforcing the Note, including its reasonable attorney's fees.  (Ex. A, Note, § 7(E)).

90.     As a direct and proximate result of Elizarov's breach, Goldwater has been directly and proximately damaged in an amount to be determined at trial.

91.     As a direct and proximate result of the foregoing acts and conduct, Goldwater has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants will continue to infringe on Plaintiff

92.     Goldwater additionally seeks the entry of an order declaring that Elizarov holds, in constructive trust as trustee for the benefit of Goldwater, such amounts as were transferred to him personally in connection with the sale of the Subject Property, as well as an order directing Elizarov to disgorge and transfer any and all such amounts to Goldwater.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

93.     Goldwater incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

94.     By engaging in the acts described above, Elizarov has and continues to benefit from his wrongdoing and has been unjustly enriched by reaping the benefits of his unlawful activities to the damage and irreparable harm of Goldwater.

95.     As a direct and proximate result of Elizarov's misconduct, Goldwater has been damaged in an amount to be proven at trial, but in excess of $675,000.

## THIRD CAUSE OF ACTION
### (Fraud, as to Elizarov)

96.     Goldwater incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

97.     By providing incorrect information and omitting information on the Mortgage Application and the Assistance Application, Elizarov made false representations of material facts on both the Mortgage Application and the Assistance regarding his financial status.

98.     Elizarov made other false representations as described above, including the misrepresentations that the sale of the Subject Property would result in insufficient proceeds to pay off the Goldwater Loan in full and that Goldwater would nevertheless receive a payout of $675,000.00.

99.     Elizarov's misrepresentations were reasonably calculated to deceive Goldwater.

100.    Elizarov's misrepresentations were made with the intent to deceive Goldwater and with the intent that Goldwater would rely on the misrepresentations and enter into the Goldwater Loan.

101.    Elizarov's misrepresentations were made with the intent to deceive Goldwater and with the intent that Goldwater would rely on the misrepresentations and approve Elizarov's request for mortgage assistance.

102.    Elizarov's misrepresentations were made with the intent to deceive Goldwater and with the intent that Goldwater would rely on the misrepresentations and not interfere with the sale of the Subject Property or rush to record its Deed of Trust.

103.    Elizarov's misrepresentations did in fact deceive Goldwater.

104.    Goldwater's reliance on Elizarov's representations was reasonable.

105.    Elizarov's actions proximately caused Goldwater damages exceeding $75,000 exclusive of interest and costs.

## FOURTH CAUSE OF ACTION

### (Fraudulent Transfer as to Elizarov and Alekseyeff)

106.    Goldwater incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

107.   On April 20, 2021, Elizarov transferred $84,843.22 from the Proceeds Account to a third-party creditor to pay off a loan on Alekseyeff's behalf.

108.   At the time Elizarov made the transfer, Elizarov acted with actual intent to hinder, delay, or defraud Goldwater, and his intent is reflected by, among other things, the fact that the transfer was made after Goldwater had already instituted litigation against Elizarov, Elizarov concealed assets, and Elizarov had previously made representations of insolvency to Goldwater.

109.   As such, the transfer of the $84,843.22 for Alekseyeff was fraudulent pursuant to California Civil Code § 3439.04 and Goldwater is entitled to void the transfer and pursue all other remedies set forth in §3439.07.

## FIFTH CAUSE OF ACTION

### (Conspiracy as to Elizarov and Alekseyeff)

110.   Goldwater incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

111.   Elizarov and Alekseyeff entered into an agreement with each other to defraud Goldwater, to dissipate the proceeds of the sale of the Subject Property, and to otherwise make misrepresentations to Goldwater so as to induce it to make the Goldwater Loan and subsequently approve Elizarov for mortgage assistance.

112.   Elizarov and Alekseyeff took overt actions in furtherance of the conspiracy, including by misrepresenting Elizarov's marital status and financial position, by instructing Escrow of the West not to communicate with Goldwater, by purchasing the Wilton Manors Property in an all-cash deal shortly after receiving the proceeds and while on notice of Goldwater's claims, and by taking further steps to dissipate the proceeds of the sale of the Subject Property.

113.   Elizarov and Alekseyeff's actions proximately caused Goldwater damages exceeding $75,000, exclusive of interest and costs.

## SIXTH CAUSE OF ACTION

### (Injunctive Relief, as to Elizarov)

114. Goldwater incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

115. As of the date of filing of this Complaint, Goldwater faces significant exposure with regard to the Goldwater Loan, as Elizarov has sold the Subject Property and wrongfully retained the proceeds of the sale in an amount in excess of $675,000.

116. Goldwater's status as a secured creditor of Elizarov has been threatened, and the likelihood of Goldwater being able to recover in full as an unsecured creditor is low.

117. Goldwater justifiably fears that it will sustain significant losses and irreparable harm as a result of Elizarov's misappropriation of the proceeds of the sale of the Subject Property.

118. Unless Elizarov's assets, including the proceeds of the sale of the Subject Property, are marshalled, accounted for, and preserved, Goldwater's security interest in the Goldwater Loan will not be adequately secured with respect to Elizarov.

119. Goldwater is without a plain, speedy, or adequate remedy at law which would serve to immediately exonerate, indemnify, and save it harmless for its actual and anticipated losses, and Goldwater would be irreparably and permanently injured unless this Court grants immediate injunctive and equitable relief.

## SEVENTH CAUSE OF ACTION

### (Quiet Title, as to Unison, Howlett, and Bank of the West)

120. Goldwater incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

121. Goldwater held and now holds a first-priority security interest in the Subject Property pursuant to the July 31, 2019 Note and Deed of Trust between Goldwater and Elizarov.

122. Goldwater seeks to quiet title against the claims of any and all defendants who claim to have an interest in the Subject Property, which has the following legal description:

the real property in the City of Palm Springs, County of Riverside, State of California described as: Lot 8 of Block 7, Palm Canyon Mesa Tract as per map recorded in Book 12, Pages 52 to 56 both inclusive of Maps, in the office of the County of said county. Also Known as: 291 W. Overlook Road, Palm Springs, CA 92264

123. Elizarov granted Goldwater a lien in the Subject Property through Goldwater's Deed of Trust.

124. At the sale of the Subject Property, the Goldwater Lien was not paid off, and Goldwater's security interest has not been extinguished because all other parties who have claimed an interest in the Subject Property, including Unison, Howlett, and Bank of the West, had notice of Goldwater's Deed of Trust.

125. Union had actual knowledge of Goldwater's Deed of Trust and agreed to subordinate its lien to Goldwater's.

126. Howlett had constructive knowledge or was on inquiry notice of the Goldwater Deed of Trust by virtue of the duly-recorded Subordination Agreement and the knowledge obtained by Escrow of the West during the course of their role as agent for Elizarov, Howlett, and Bank of the West.

127. Bank of the West had constructive knowledge or was on inquiry notice of the Goldwater Deed of Trust by virtue of the duly-recorded Subordination Agreement and by Howlett's knowledge.

128. Goldwater seeks a determination that, as of March 29, 2021, Goldwater held a first-priority security interest in the Subject Property, that Howlett took the Subject Property subject to the Goldwater Lien, and that Bank of the West's security interest in the Subject Property is subordinate to the Goldwater Lien.

129. The claims of Unison, Howlett, and Bank of the West, each of them adverse to Goldwater's interest, are without any right whatever and such defendants' rights are all subject to Goldwater's superior security interest.

130.   For the reasons stated above, Goldwater requests an Order from this Court pursuant to Cal. Code of Civil Procedure § 760.020 *et seq.*, quieting title in the Subject Property and declaring that Goldwater holds a first-priority security interest in the Subject Property.

## EIGHTH CAUSE OF ACTION

### (Declaratory Judgment, as to Unison, Howlett, and Bank of the West)

131.   Goldwater incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

132.   There exists an actual, definite, and concrete controversy between Goldwater, Unison, Howlett, and Bank of the West related to the priority of Goldwater's security interest relative to those defendant's interests in the Subject Property.

133.   Goldwater contends that it has a first-priority lien on the Subject Property based upon all Defendant's notice of Goldwater's unrecorded Deed of Trust, and Goldwater is informed and believes that Defendants Unison, Howlett, and Bank of the West dispute these contentions.

134.   A judicial determination is necessary and appropriate at this time in order that the parties may ascertain their rights and duties with respect to the Subject Property.

## PRAYER FOR RELIEF

**WHEREFORE**, Goldwater requests the Court order relief, as follows:

1.     Preliminary and permanent injunctive relief (i) enjoining Elizarov from alienating or disposing of the proceeds of the sale of the Subject Property and (ii) requiring Elizarov to make an accounting of his assets following the sale of the Subject Property;

2.     Actual, compensatory, consequential, punitive, and exemplary damages in an amount to be determined at trial for all losses and damages suffered as a result of the acts and transactions complained of herein;

3.     A constructive trust for the benefit of Goldwater over the proceeds received by Elizarov in connection with the sale of the Subject Property;

4. All costs and expenses incurred by Goldwater Bank in enforcing its rights under the Note and Deed of Trust;

5. An order quieting title and declaring that Goldwater holds a first-priority security interest in the Subject Property.

6. Declaratory relief stating that Goldwater holds a first-priority security interest in the Subject Property.

Dated:      May 27, 2021

                             IVIE McNEILL WYATT
                             PURCELL & DIGGS

                             /s/ Marie Maurice                    
                             W. Keith Wyatt, Esq.
                             Marie Maurice, Esq.

                                      AND

                             WAGNER HICKS PLLC

                             /s/ Derek M. Bast                    
                             Sean C. Wagner, Esq.
                             Derek M. Bast, Esq.
                             ATTORNEYS FOR PLAINTIFF GOLDWATER BANK N.A.

# CERTIFICATE OF SERVICE

I certify that all counsel of record who has consented to electronic notification is being served on May 27, 2021 with a copy of **PLAINTIFF'S AMENDED COMPLAINT** via the Court's CM/ECF system. Pursuant to Local Rule 5-3.1.2, I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all non-CM/ECF participants listed below:

> Unison Agreement Corp.
> First Corporate Solutions, Inc., Registered Agent
> 650 California Street, Suite 1800
> San Francisco, CA 94108

/s/ Derek M. Bast
Derek M. Bast

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

Goldwater Bank, N.A.        )

           *Plaintiff,*     )     Case No. 5:21-cv-00616-JWH-SP

           vs.          )     _____

ARTUR ELIZAROV; UNISON )
AGREEMENT CORP.; SCOTT )
HOWLETT; BANK OF THE WEST; )
and ILYA ALEKSEYEFF      )     **VERIFICATION**

           *Defendants.*     )

                             )

_____ )

     I, Peter Hill, an authorized agent of Goldwater Bank, N.A., pursuant to 28 U.S.C. § 1746, do hereby verify under penalty of perjury that the foregoing allegations contained in this Verified Complaint are true and correct to the best of my current knowledge.

     Dated: May 27, 2021.

                      _____

                      Peter Hill

ILYA ALEKSEYEFF, ESQ. [242462]
   ilya@loia.legal
LOIA, INC. (APLC)
8721 Santa Monica Blvd #119
West Hollywood, CA 90069
Tel: (213)537-4592

Attorney for ARTUR ELIZAROV

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDWATER BANK, NATIONAL ASSOCIATION,<br><br>*Plaintiff,*<br><br>vs.<br><br>ARTUR ELIZAROV, ET AL.,<br><br>*Defendants.* | 5:21-CV-00616-JWH-SP<br><br>ANSWER, AFFIRMATIVE DEFENSES, AND DEMAND FOR JURY TRIAL |

Defendant ARTUR ELIZAROV (ELIZAROV) answers the allegations in amended verified complaint filed by plaintiff GOLDWATER (GOLDWATER) as follows[1]:

---

[1]    Although the plaintiff filed a <u>verified</u> complaint, Artur Elizarov files an <u>unverified</u> answer because, unlike California Code of Civil Procedure rule 446, no rule or federal statute requires an answer to a complaint alleging causes of action for breach of contract, unjust enrichment, fraud, fraudulent transfer, and civil conspiracy to be verified just because the complaint was verified.  (Fed. R. Civ. P. 11(a).)

1.      In responding to the allegations in paragraph 1, ELIZAROV admits that GOLDWATER has its principal place of business in Phoenix, Arizona and denies all other allegations in paragraph 1 not specifically admitted.

2.      ELIZAROV admits the allegations in paragraphs 2 and 3.

3.      In responding to the allegations in paragraph 4, ELIZAROV admits that defendant Scott Howlett is an individual but lacks information and belief to admit or deny the rest of the allegations in that paragraph and, therefore, denies those allegations.

4.      ELIZAROV admits the allegations in paragraphs 5 through 10.

5.      ELIZAROV does not need to admit or deny the statement in paragraph 11 because that paragraph did not allege any facts.

6.      ELIZAROV admits the allegations in paragraphs 12 through 16.

7.      ELIZAROV denies the allegations in paragraph 17.

8.      In responding to the allegations in paragraph 18, ELIZAROV admits that ELIZAROV purchased the Subject Property for $915,000 using, in part, the proceeds of both the Goldwater Loan and funds from Unison and denies all other allegations in paragraph 18 not specifically admitted.

9.      ELIZAROV admits the allegations in paragraphs 19 and 20.

10.     In responding to the allegations in paragraph 21, ELIZAROV admits that the Subordination Agreement identified a superior lien by loan number, the date of the note, and the principal amount of $686,250.00 and denies all other allegations in paragraph 21 not specifically admitted.

11.     ELIZAROV admits the allegations in paragraph 23.

12.     ELIZAROV denied the allegations in paragraph 24.

13.     ELIZAROV admits the allegations in paragraph 25.

14.     ELIZAROV denies the allegations in paragraph 26.

15.     ELIZAROV admits the allegations in paragraphs 27 and 28.

16.     In responding to the allegation in paragraph 29, ELIZAROV admits

that ELIZAROV was a named plaintigg in litigation in the Superior Court of California, Los Angeles County, entitled *Artur Elizarov v. BMW Financial Services NA, LLC* (19STCV08507) and that Alekseyeff represented ELIZAROV in that action and denies all other allegations in paragraph 29 not specifically admitted.

17. ELIZAROV admits the allegations in paragraph 30.

18. In responding to the allegations in paragraph 31, ELIZAROV admits that ELIZAROV was subject to a federal tax lien of $107,787.69 and denies all other allegations in paragraph 31 not specifically admitted.

19. ELIZAROV denies the allegations in paragraph 32 through 35.

20. In responding to the allegations in paragraph 36, ELIZAROV admits that ELIZAROV made payments that satisfied ELIZAROV's ordinary payment obligations through April 1, 2020 and denies all other allegations in paragraph 36 not specifically admitted.

21. ELIZAROV lacks information or belief sufficient to admit or deny the allegation in paragraph 37 and, therefore, denies those allegations.

22. ELIZAROV admits the allegations in paragraphs 38 through 40.

23. ELIZAROV denies the allegations in paragraphs 41 through 43.

24. ELIZAROV denies the allegations in paragraph 44 on information and belief.

25. ELIZAROV denies the allegation in paragraph 45.

26. ELIZAROV does not need to admit or deny the allegations in paragraph 46 because that paragraph did not assert any allegations against ELIZAROV. (Fed. R. Civ. P. 8(b)(1)(B).) However, to the extent that an answer is required, ELIZAROV denies the allegations in paragraph 46 on information and belief.

27. In responding to the allegations in paragraph 47, ELIZAROV admits that ELIZAROV decided to sell the Subject Property and denies all other

allegations in paragraph 47 not specifically admitted.

28.     ELIZAROV admits the allegations in paragraphs 48 and 49 on information and belief.

29.     ELIZAROV lacks information or belief to admit or deny the allegations in paragraphs 50 and 51 and, therefore, denies those allegations.

30.     In responding to the allegations in paragraph 52, ELIZAROV admits that GOLDWATER communicated with ELIZAROV by email and telephone on March 25, 2021, regarding the disbursement of the proceeds of the pending sale and denies all other allegations in paragraph 52 not specifically admitted.

31.     ELIZAROV denies the allegations in paragraph 53.

32.     In responding to the allegations in paragraph 54, ELIZAROV admits that the Grant Deed was recorded on or around March 29, 2021, and that Exhibit F is a true and accurate copy of the Grant Deed and denies all other allegations in paragraph 54 not specifically admitted.

33.     ELIZAROV denies the allegations in paragraphs 55 and 56.

34.     ELIZAROV admits the allegations in paragraph 57.

35.     ELIZAROV denies the allegations in paragraph 58.

36.     ELIZAROV denies the allegations in paragraph 59 on information and belief.

37.     ELIZAROV denies the allegations in paragraphs 60 and 61.

38.     In responding to the allegations in paragraph 62, ELIZAROV admits that Exhibit G is a true and correct copy of an advertisement flier and denies all other allegations in paragraph 62 not specifically admitted.

39.     ELIZAROV denies the allegations in paragraphs 63 through 66.

40.     ELIZAROV admits the allegations in paragraph 67.

41.     ELIZAROV does not have to admit or deny the allegations in paragraph 68 because those allegations relate to the dismissed claim for injunctive relief.  However, to the extent that an answer is required, ELIZAROV denies the

allegations in paragraph 68.

42.     In responding to the allegations in paragraph 69, ELIZAROV admits that on April 1, 2021, Goldwater demanded that ELIZAROV return the funds from the sale of Subject Property and denies all other allegations in paragraph 69 not specifically admitted.

43.     ELIZAROV does not have to admit or deny the allegations in paragraph 70 to 74 because those paragraphs did not assert any allegations against ELIZAROV.  (Fed. R. Civ. P. 8(b)(1)(B).)  However, to the extent that an answer is required, ELIZAROV denies the allegations in paragraphs 70 to 74 on information and belief.

44.     ELIZAROV admits the allegations in paragraphs 75 through 78.

45.     ELIZAROV denies the allegations in paragraphs 79 and 80.

46.     ELIZAROV admits the allegations in paragraph 81 on information and belief, except for the allegation that GOLDWATER had not received payment in full, which ELIZAROV admits.

47.     ELIZAROV denies the allegations in paragraph 82.

48.     In responding to the allegations in paragraph 83, ELIZAROV incorporates by reference his responses to the allegations contained in the preceding paragraphs of the amended verified complaint.

49.     ELIZAROV denies the allegations in paragraph 84.

50.     ELIZAROV admits the allegations in paragraph 85.

51.     ELIZAROV denies the allegations in paragraphs 86 through 88.

52.     ELIZAROV denies the allegations in paragraph 89.

53.     ELIZAROV denies the allegations in paragraph 90.

54.     ELIZAROV does not need to admit or deny the allegations in paragraphs 91 and 92 because those allegations relate to a dismissed claim for injunctive relief.  However, to the extent that an answer is required, ELIZAROV denies the allegations in paragraphs 91 and 92.

55.    In responding to the allegations in paragraph 93, ELIZAROV incorporates by reference his responses to the allegations contained in the preceding paragraphs of the amended verified complaint.

56.    ELIZAROV denies the allegations in paragraphs 94 and 95.

57.    In responding to the allegations in paragraph 96, ELIZAROV incorporates by reference his responses to the allegations contained in the preceding paragraphs of the amended verified complaint.

58.    ELIZAROV denies the allegations in paragraph 97 through 102.

59.    ELIZAROV denies the allegations in paragraph 103 and 104 on information and belief.

60.    ELIZAROV denies the allegations in paragraph 105.

61.    In responding to the allegations in paragraph 106, ELIZAROV incorporates by reference his responses to the allegations contained in the preceding paragraphs of the amended verified complaint.

62.    ELIZAROV denies the allegations in paragraphs 107 through 109.

63.    In responding to the allegations in paragraph 110, ELIZAROV incorporates by reference his responses to the allegations contained in the preceding paragraphs of the amended verified complaint.

64.    ELIZAROV denies the allegations in paragraphs 111 through 113.

65.    In responding to the allegations in paragraph 114, ELIZAROV incorporates by reference his responses to the allegations contained in the preceding paragraphs of the amended verified complaint.

66.    ELIZAROV does not need to admit or deny the allegations in paragraphs 115 through 119 because those allegations relate to a dismissed claim for injunctive relief.  However, to the extent that a response is required, ELIZAROV denies the allegations in paragraphs 115 through 119.

67.    In responding to the allegations in paragraph 120, ELIZAROV incorporates by reference his responses to the allegations contained in the

preceding paragraphs of the amended verified complaint.

68.    ELIZAROV does not have to admit or deny the allegations in paragraphs 121 through 130 because those paragraphs did not assert any allegations against ELIZAROV.  (Fed. R. Civ. P. 8(b)(1)(B).)  However, to the extent that a response is required, ELIZAROV denies the allegations in paragraphs 121 through 130 on information and belief.

69.    In responding to the allegations in paragraph 131, ELIZAROV incorporates by reference his responses to the allegations contained in the preceding paragraphs of the amended verified complaint.

70.    ELIZAROV does not have to admit or deny the allegations in paragraphs 132 through 134 because those paragraphs did not assert any allegations against ELIZAROV.  (Fed. R. Civ. P. 8(b)(1)(B).)  However, to the extent that a response is required, ELIZAROV denies the allegations in paragraphs 132 through 134 on information and belief.

## **AFFIRMATIVE DEFENSES**

### **FIRST AFFIRMATIVE DEFENSES TO THE FIRST CAUSE OF ACTION (WAIVER)**

71.    GOLDWATER, failed to give ELIZAROV a 30-days' notice of acceleration as required by Paragraph 18 of The Deed of Trust.  GOLDWATER, instead gave notice to ELIZAROV 42 days after ELIZAROV sold the Subject Property to defendant Scott Howlett and 22 days after ELIZAROV used the proceeds from the sale to purchase a property in Florida for $630,000.00.  Since GOLDWATER knew, at the time Goldwater Bank mailed the notice of acceleration to ELIZAROV on May 12, 2021, that ELIZAROV had used the proceeds to acquire another property and no longer had the funds available, Goldwater Bank waived its contractual right to accelerate the repayment of the

Goldwater Loan principal by Goldwater Bank's failure to give the timely notice.

## SECOND AFFIRMATIVE DEFENSE TO THE FIRST CAUSE OF ACTION
### (UNCLEAN HANDS)

72.     ELIZAROV is informed and believes that GOLDWATER, as matter of its general business practice, has consistently and repeatedly violated its obligation to give notice of acceleration to its borrowers and instead extorted a payment from its borrowers, at the time the borrowers sold the property secured by Goldwater Bank's mortgage lien, by threatening not to release the lien unless the borrower paid Goldwater Bank the outstanding loan principal.  In this case, Goldwater Bank had intended to employ the same general practice, except that Goldwater Bank could not extort the unlawful payment from ELIZAROV because Goldwater Bank had never recorded its lien and, therefore, could not have extorted a payment from ELIZAROV.  Goldwater Bank instead filed a lawsuit seeking to recover a balance of the loan that Goldwater Bank was not entitled to.  Therefore, Goldwater Bank did not come to this court with clean hands and cannot recover from ELIZAROV for breach of contract.

## THIRD AFFIRMATIVE DEFENSE TO THE FIRST CAUSE OF ACTION
### (PRIVILEGE)

73.     ELIZAROV's offer to pay GOLDWATER $675,000.00 and any statements that ELIZAROV made to GOLDWATER at the time the parties discussed this payment are privileged under California Evidence Code section 1152, subdivision (a).

## FOURTH AFFIRMATIVE DEFENSE TO THE FIFTH CAUSE OF ACTION
### (PRIVILEGE)

74.     To the extent GOLDWATER seeks to prove its conspiracy allegations against ELIZAROV based on any communication that ELIZAROV had with defendant Ilya Alekseyeff *after* ELIZAROV submitted Loan Application and Assistance Application and after ELIZAROV sold Subject Property to defendant Scott Howlett, those communications are privileged under Evidence Code sections 971 and 980.

## FIFTH AFFIRMATIVE DEFENSE TO THE FIRST, SECOND, THIRD, FOURTH, AND FIFTH CAUSES OF ACTION
## (FAILURE TO STATE A CLAIM)

75.     The first, second, third, fourth, and fifth causes of action failed to state a claim upon which relief can be granted.

## COUNSEL'S STATEMENT UNDER RULE 11

All denials of the allegations in the amended verified complaint and all allegations in affirmative defenses, in counterclaim, and in crossclaim made on information and belief may presently lack evidentiary support but are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## DEMAND FOR JURY TRIAL

Defendant Artur Elizarov demands jury trial.

## PRAYER FOR RELIEF

Let plaintiff Goldwater Bank, NA, take nothing by its claim against defendant Artur Elizarov, and let defendant Artur Elizarov recover his costs of suit and attorney's fees under California Civil Code section 7171.

\\\

Dated: 12/10/2021.                 Respectfully submitted,

LOIA, Inc. (APLC)

ILYA ALEKSEYEFF, ESQ.
Attorney for ARTUR ELIZAROV





# Lender Letter (LL-2020-02)

*Please note this Lender Letter has been replaced by LL-2021-02*

**Updated: Dec. 9, 2020**
**Oct. 14, 2020**
**Aug. 27, 2020**
**Jul. 15, 2020**
**Jun. 24, 2020**
**Jun. 10, 2020**
**May 14, 2020**
**Apr. 29, 2020**
**Apr. 8, 2020**
**Mar. 25, 2020**
**Mar. 18, 2020**

## To: All Fannie Mae Single-Family Servicers
## Impact of COVID-19 on Servicing

We are actively monitoring reports about the spread of COVID-19 (coronavirus) in the United States and understand that there are concerns about its potential impact on borrowers. At the direction of the Federal Housing Finance Agency (FHFA) and in alignment with Freddie Mac, we are communicating temporary policies in this Lender Letter to enable servicers to better assist borrowers impacted by COVID-19. The policies in this Lender Letter are effective immediately and are effective until Fannie Mae provides further notice, unless otherwise stated.

**We are releasing information to our servicers as quickly as possible and will update and republish this Lender Letter as new guidance becomes available.**

Additions to Lender Letter on Dec. 9

- Mortgage Insurance Termination: Temporary policy change related to verifying an acceptable payment record for borrowers that experience a financial hardship related to COVID-19.

  We also extended suspension of foreclosure activities.

Additions to Lender Letter on Jul. 15, updated Oct. 14

- Disbursing insurance loss proceeds: Clarifying servicer requirements related to disbursing insurance loss proceeds for borrowers impacted by COVID-19.

- Impact of COVID-19 on Fannie Mae Home Affordable Modification Program (HAMP) "Pay for Performance" incentives: Clarifying when a borrower on a COVID-19 related forbearance plan maintains good standing. **UPDATED Oct. 14** to clarify when a borrower impacted by COVID-19 remains eligible for any future HAMP "Pay for Performance" incentives.

Additions to Lender Letter on Jun. 24

- Modifying seller/servicer financial liquidity requirements for mortgage loans in forbearance: Temporary policy change for calculating non-depository seller/servicer eligibility minimum liquidity requirement for mortgage loans in forbearance due to COVID-19.

Additions to Lender Letter on Jun. 10

- Sending a payment reminder notice: Clarifying that the servicer is authorized to not send a payment reminder notice to the borrower during an active forbearance plan term.

Additions to Lender Letter on May 1

- Reclassification of MBS mortgage loans: Updating our reclassification process for mortgage loans pooled under the Amended and Restated 2007 Single-Family Master Trust Agreement in response to the Coronavirus Aid, Relief, and Economic Security Act on Mar. 27, 2020 ("CARES Act"), when a borrower impacted by COVID-19 is provided a forbearance plan.

Additions to Lender Letter on Apr. 29

- Principal & interest advances on delinquent mortgage loans: In response to a recent news release from FHFA, we are informing servicers of our intent to limit servicer obligations to advance scheduled monthly principal



and interest payments for certain delinquent loans.

Additions to Lender Letter on Apr. 8

- [Complying with law](#): In response to the recent enactment of the CARES Act, we are updating certain servicing requirements and reminding servicers of their responsibility to comply with law.

Additions to Lender Letter on Mar. 25, updated Apr. 8, May 14, Jul. 15

- [Attempting to establish QRPC](#): Reminding servicers of acceptable methods in attempting to achieve quality right party contact (QRPC). **UPDATED Apr. 8** in response to the CARES Act to clarify the servicers responsibilities related to achieving QRPC for a borrower impacted by COVID-19 for a forbearance plan.

- [Reporting a reason for delinquency code](#): Providing a specific "reason for delinquency" code for use in reporting a delinquent mortgage loan associated with a borrower impacted by COVID-19 to Fannie Mae. **UPDATED Jul. 15** to clarify reporting the "reason for delinquency" code when the borrower experiences concurrent hardships.

- [Property inspections and preservation](#): Providing flexibility with regard to inspections and preservation in light of COVID-19 concerns. **UPDATED May 14** to clarify when the servicer must not complete property inspections and preservation activities for a property securing a mortgage loan where the borrower is experiencing a hardship related to COVID-19.

- [Submission of financial statements and reports](#): Extending the deadline for submission of financial statements and Form 582 to Apr. 30, 2020.

Lender Letter content published Mar. 18, updated Mar. 25, Apr. 8, May 14, Jun. 24, Aug. 27, Dec. 9

- [Forbearance plan terms](#): Expanding eligibility for a forbearance plan for borrowers impacted by COVID-19. **UPDATED Apr. 8** in response to the CARES Act to clarify the servicers responsibilities related to providing a forbearance plan to a borrower impacted by COVID-19.

- [Evaluating the borrower for a payment deferral or mortgage loan modification after a forbearance plan](#): Clarifying the mortgage loan modifications that must be considered near the conclusion of a forbearance plan term. **UPDATED Mar. 25** to require that a borrower be evaluated for payment deferral prior to these mortgage loan modifications. **UPDATED Apr. 8** to eliminate the requirement that the servicer determine the occupancy status of the property when achieving QRPC and evaluating a borrower impacted by COVID-19 for a workout option prior to expiration of the forbearance plan. **UPDATED May 14** to clarify the evaluation hierarchy with the introduction of COVID-19 payment deferral and to reflect the effective date of the National Emergency declaration related to COVID-19 in the eligibility criteria (rather than the declaration date of Mar. 13).

- [Credit bureau reporting](#): Clarifying that servicers must suspend credit reporting when the hardship is related to COVID-19. **UPDATED Apr. 8** to require that the servicer comply with the requirements of the Fair Credit Reporting Act ("FCRA"), as amended by the CARES Act for borrowers affected by the COVID-19 pandemic.

- [Suspension of foreclosure activities and certain bankruptcy requirements](#): Instructing servicers to not allow any foreclosure sales within the next 60 days. **UPDATED Apr. 8** to require that the servicer suspend foreclosure-related activities in accordance with the requirements of the CARES Act and suspend the requirement that servicers file motions for relief from the automatic stay in bankruptcy cases. **UPDATED May 14** to extend the suspension of foreclosure-related activities and the requirement that servicers file motions for relief from the automatic stay in bankruptcy cases. **UPDATED Jun. 24** to extend the suspension of foreclosure-related activities. **UPDATED Aug. 27** to extend the suspension of foreclosure-related activities. **UPDATED Dec. 9** to extend the suspension of foreclosure-related activities.

- [Additional resources](#): Providing information about our [Disaster Response Network](#) as a reference for Fannie Mae borrowers and a listing of COVID-19 policy communications and resources.

© 2020 Fannie Mae   LL-2020-02   Page 2 of 11



## Mortgage Insurance Termination

When verifying an acceptable payment record for a borrower that has had a financial hardship related to COVID-19 in which the servicer provided

- a COVID-19 related forbearance plan, repayment plan, or Trial Period Plan and the borrower complied with the terms of such plan;
- a payment deferral; or
- a COVID-19 payment deferral and the borrower made three consecutive monthly payments following completion of the payment deferral,

the servicer must not consider any payment that is 30 or more days past due in the last 12 months, or 60 or more days past due in the last 24 months that is attributable to the COVID-19 financial hardship. The mortgage loan must be current when the termination is requested, which means the mortgage loan payment for the month preceding the date of the termination request was paid.

> **N O T E :** *These requirements apply when reviewing the borrower's request for termination of conventional MI based on either original or current value of the property.*

This policy change is effective for borrower-initiated requests for termination initiated through Fannie Mae's servicing solutions system on or after March 1, 2021.  For assistance prior to that date, contact loss_mitigation@fanniemae.com.

## Disbursing insurance loss proceeds UPDATED Oct. 14

In response to servicer inquiries and in an effort to repair properties that experience an insured loss event as expeditiously as possible, we are updating our requirements for determining the mortgage loan status for disbursing insurance loss proceeds for a borrower impacted by COVID-19. The servicer must consider the loan to be current or less than 31 days delinquent for purposes of disbursing insurance loss proceeds if

- the borrower experienced a COVID-19 related hardship;

- the mortgage loan was current or less than two months delinquent as of Mar. 1, 2020, the effective date of the National Emergency declaration related to COVID-19; and

- at the time of the loss event, the borrower is performing on a COVID-19 related forbearance plan, repayment plan, or Trial Period Plan.

The servicer must otherwise disburse the proceeds in accordance with *Servicing Guide* B-5-01, Insured Loss Events.

The servicer must document in the mortgage loan servicing file the date that the COVID-related hardship began and the date of the insured loss event.

## Impact of COVID-19 on Fannie Mae Home Affordable Modification Program (HAMP) "Pay for Performance" incentives UPDATED Oct. 14

In LL-2020-07, COVID-19 Payment Deferral, we clarified that if the mortgage loan was previously modified pursuant to a HAMP modification under which the borrower remains in "good standing," then the borrower will not lose any "pay for performance" incentives if the borrower was on a COVID-19 related forbearance plan or had a COVID-19 related hardship immediately preceding the COVID-19 payment deferral. We are clarifying that, additionally, the borrower will not lose any  future HAMP "pay for performance" incentives if the borrower

- immediately reinstates the mortgage loan upon expiration of the COVID-19 related forbearance plan, or

- transitions directly from a COVID-19 related forbearance plan to a repayment plan.

© 2020 Fannie Mae    LL-2020-02    Page 3 of 11



## Modifying seller/servicer financial liquidity requirements for mortgage loans in forbearance

In response to the national emergency, we are announcing a temporary modification of the non-depository seller/servicer minimum liquidity requirement for seriously delinquent (SDQ) mortgage loans. We are implementing the changes indicated below beginning with the financial quarter ending Jun. 30, 2020.

As stated in *Selling Guide* A4-1-01, Maintaining Seller/Servicer Eligibility, the minimum liquidity requirement is equal to 0.035% of the unpaid principal balance (UPB) of mortgage loans serviced by a non-depository seller/servicer for Fannie Mae, Freddie Mac, and Ginnie Mae if the Agency SDQ rate is 6% or less. If the Agency SDQ rate is above 6%, the seller/servicer must also maintain at least an SDQ add-on of 2% of the UPB of Agency SDQ rate over 6%.

Under the existing seller/servicer eligibility requirements, the Agency SDQ Rate is defined as 100 multiplied by (the UPB of mortgage loans 90 days or more delinquent or in foreclosure for Fannie Mae, Freddie Mac, and Ginnie Mae/Total UPB of mortgage loans serviced for Fannie Mae, Freddie Mac, and Ginnie Mae). Beginning with the financial quarter ending Jun. 30, 2020, the Agency SDQ Rate will include an adjustment for mortgage loans in a COVID-19-related forbearance plan that are 90 days or more delinquent and were current at the inception of the COVID-19-related forbearance plan. The UPB of such mortgage loans shall be multiplied by .30 and added to the UPB for SDQ mortgage loans for the purposes of determining the numerator in the calculation of the Agency SDQ Rate. Refer to the Appendix link for examples.

When the COVID-19-related forbearance period ends for a mortgage loan, the mortgage loan's status will become subject to, by the end of the quarter following the end of the COVID-19 related forbearance period, the minimum financial seller/servicer eligibility requirements in place at that time.

To accommodate these changes, the Mortgage Bankers Financial Reporting Form (MBFRF Form 1002) will be modified by Jun. 30, 2020 to capture forbearance activity.

## Sending a payment reminder notice

*Servicing Guide* D2-2-03, Sending a Payment Reminder Notice requires the servicer to send a payment reminder notice to the borrower no later than the 17th day of delinquency if the payment has not been received.

In response to servicer inquiries, we are clarifying that the servicer is authorized to not send a payment reminder notice to the borrower during an active forbearance plan term. This applies to active forbearance plans without regard to whether the borrower's monthly payment is reduced or suspended during the forbearance plan term.

## Reclassification of MBS mortgage loans

The Amended and Restated 2007 Single-Family Master Trust Agreement (the "2007 Trust Agreement") applies to MBS mortgage loans with pool issue dates on or after June 1, 2007 through December 1, 2008. As described in F-1-26, Reclassifying or Voluntary Repurchasing an MBS Mortgage Loan and in accordance with the 2007 Trust Agreement, we remove such mortgage loans from the MBS pool after the sixth consecutive month of continuing forbearance. Selection for reclassification is based on the servicer's monthly delinquency status reporting to Fannie Mae.

In response to the CARES Act, we are updating our reclassification process for mortgage loans in these MBS pools when a borrower impacted by COVID-19 is provided a forbearance plan. Such mortgage loans will not be removed from the MBS pool for the duration of the forbearance plan under the CARES Act, in accordance with the 2007 Trust Agreement, which permits mortgage loans to remain in trust longer than six consecutive months when the forbearance plan is required by applicable law.

These changes will be effective beginning with the June 2020 monthly delinquency status reporting cycle and will apply when the servicer reports delinquency status code 09 (Forbearance) and reason for delinquency code 022 (Energy-Environment Costs), as reassigned pursuant to this Lender Letter for reporting a hardship associated with COVID-19.

© 2020 Fannie Mae    LL-2020-02    Page 4 of 11



## Principal & interest advances on delinquent mortgage loans

*Servicing Guide* A2-1-01, General Servicer Duties and Responsibilities requires the servicer of a scheduled/scheduled or scheduled/actual remittance type mortgage loan to remit funds to us when scheduled to be remitted even when these funds are not actually collected. The servicer is required to remit the scheduled funds until the mortgage loan becomes current, is removed from our active accounting records, or is purchased from the MBS trust, as applicable.

In response to the national emergency, FHFA published a News Release on Apr. 21, 2020, *FHFA Addresses Servicer Liquidity Concerns, Announces Four Month Advance Obligation Limit for Loans in Forbearance*, aligning policies between Fannie Mae and Freddie Mac to limit servicer obligations to advance scheduled monthly payments to four months for scheduled/scheduled remittance type mortgage loans. We are currently evaluating operational changes to discontinue servicer advances of scheduled remittances of principal and interest payments for delinquent scheduled/scheduled remittance mortgage loans (delinquency advances) after the four consecutive missed monthly payments for mortgage loans serviced under the special servicing option. These changes will become effective for Aug. 2020 remittance activity (based on Jul. 2020 reporting activity). Additional guidance will be provided in the coming weeks. For further details, refer to LL-2020-08, Changes to Servicer Principal and Interest Advance Requirements.

## Complying with law

In response to the CARES Act, Fannie Mae is updating requirements relating to forbearance plans, achieving QRPC with a borrower in regard to a forbearance plan, credit bureau reporting, and suspension of foreclosure activities and certain bankruptcy requirements. Servicers are reminded that in accordance with *Servicing Guide* A2-1-08, Compliance with Requirements and Laws, they must comply with applicable law even where a provision of the *Servicing Guide* may conflict with applicable law.

## Attempting to establish QRPC UPDATED Apr. 8, May 14, Jul. 15

As described in *Servicing Guide* D2-2-01, Achieving Quality Right Party Contact with a Borrower, QRPC is a uniform standard for communicating with the borrower, co-borrower, or a trusted advisor (collectively referred to as "borrower") about resolution of the mortgage loan delinquency. We reaffirm the applicability of QRPC when working with a borrower impacted by COVID-19 to ensure the servicer understands the borrower's circumstances and determines the best possible workout option for resolving the borrower's delinquency. In the event that the servicer is unable to achieve full QRPC and offers a forbearance plan to a borrower impacted by COVID-19 in compliance with the CARES Act, the servicer is considered to be in compliance with our *Servicing Guide*.

In response to servicer inquiries and in accordance with *Servicing Guide* A4-2.1-04, Establishing Contact with the Borrower, among other requirements, the servicer is authorized to use various outreach methods to contact the borrower as permitted by applicable law, including, but not limited to:

- mail,
- email,
- texting, and
- voice response unit technology.

## Reporting a reason for delinquency code UPDATED Jul. 15

The servicer must report delinquency status information to Fannie Mae through Fannie Mae's servicing solutions system in accordance with *Servicing Guide* D2-4-01, Reporting a Delinquent Mortgage Loan to Fannie Mae and F-1-22, Reporting a Delinquent Mortgage Loan via Fannie Mae's Servicing Solutions System.

In an effort to enable us to identify mortgage loans where the borrower has experienced a hardship associated with COVID-19 while not resulting in a systems impact for us or you, the servicer must report reason for delinquency code 022, Energy-Environment Costs, when reporting the delinquency status of such mortgage loans to us . If the borrower's COVID-19 related hardship remains unresolved and the borrower experiences another hardship concurrently (for example, a disaster event), the servicer must continue to report reason for delinquency code 022, Energy- Environment Costs, regardless of the reason for delinquency associated with the concurrent hardship.

© 2020 Fannie Mae   LL-2020-02   Page 5 of 11



For mortgage loans where the servicer would have otherwise reported reason for delinquency code 022 due to Energy-Environment Costs, the servicer must now use reason for delinquency code 007, Excessive Obligations.

## Property inspections and preservation  UPDATED May 14

As a result of the impact of COVID-19, we are temporarily providing flexibility with respect to the completion of property inspections and preservation, including:

- inspections for properties securing a delinquent mortgage loan as described in *Servicing Guide* D2-2-10, Requirements for Performing Property Inspections;

- inspections related to hazard loss repairs as described in *Servicing Guide* B-5-01, Insured Loss Events; and

- property preservation activities as described in *Servicing Guide* E-3.2-12, Performing Property Preservation During Foreclosure Proceedings.

The following table describes when the servicer must not conduct property inspections and property preservation activities for a property securing a mortgage loan where the borrower is experiencing a hardship related to COVID-19, depending on the status of the mortgage loan at the time of the effective date of the National Emergency declaration related to COVID-19.

| If on March 1, 2020, the mortgage loan was... | Then the servicer must... |
|---|---|
| current or less than 30 days delinquent and the borrower becomes delinquent | not complete property inspections during the forbearance plan or an active post-forbearance plan workout option. |
| delinquent and the property was not vacant or abandoned | |
| delinquent and the property was reported as vacant or abandoned | follow the property inspection requirements in *Inspecting a Property Securing a Delinquent Mortgage Loan* in *Servicing Guide* D2-2-10, Requirements for Performing Property Inspections and property preservation requirements in *Servicing Guide* E-3.2-12, Performing Property Preservation During Foreclosure Proceedings. |

> **N O T E :** *For mortgage loans that are delinquent and not on a forbearance plan, servicers must continue to follow the inspection requirements in in Inspecting a Property Securing a Delinquent Mortgage Loan in Servicing Guide D2-2-10, Requirements for Performing Property Inspections.*

If the mortgage loan is not brought current upon expiration of the forbearance plan, or if the borrower is not approved for a post-forbearance workout option as determined based on QRPC, the servicer must follow the property inspection requirements in *Inspecting a Property Securing a Delinquent Mortgage Loan* in *Servicing Guide* D2-2-10, Requirements for Performing Property Inspections.

If the servicer is unable to complete a property inspection or property preservation activity in accordance with the *Servicing Guide*, it must document their efforts and the reason for any exception in the mortgage loan file.

> **N O T E :** *The servicer's inability to complete property inspections due to COVID-19 related impacts must not impact the servicer's disbursement of insurance loss proceeds.*

As a reminder, *Servicing Guide* D2-2-10, Requirements for Performing Property Inspections authorizes a curbside (drive-by) inspection if there is potential danger to the inspector. Additionally, the *Property Preservation Matrix and Reference Guide* authorizes servicers to utilize alternative data or other means available to determine occupancy status when inspection results are unknown due to lack of access.

For additional questions, contact

- Property_Preservation@fanniemae.com regarding property inspections for delinquent mortgage loans

© 2020 Fannie Mae    LL-2020-02    Page 6 of 11



- [Hazard_Loss@fanniemae.com](mailto:Hazard_Loss@fanniemae.com) regarding hazard loss inspections

## Submission of financial statements and reports

Per *Selling Guide* A4-2-01, sellers/servicers must submit financial statements and the *Lender Record Information* (Form 582) within 90 days after the end of their fiscal year. While we encourage submission of this information in a timely manner and by the Mar. 31, 2020 deadline (for those with a Dec. 31 fiscal-year end), we are extending the due date to Apr. 30, 2020.

## Forbearance plan terms  UPDATED Apr. 8, May 14, Jun. 24, Aug. 27

With the Mar. 18, 2020 Lender Letter, we communicated that servicers must achieve QRPC with the borrower prior to offering a forbearance plan, that the property securing the mortgage loan may be either a principal residence, a second home, or an investment property, and that the servicer must otherwise follow the requirements in *Servicing Guide* D2-3.2-01, Forbearance Plan. In response to the CARES Act, the servicer must approve forbearance plans for borrowers impacted by COVID-19 in accordance with the CARES Act.

The CARES Act states that a forbearance plan must be provided to any borrower who requests a forbearance with an attestation of the financial hardship caused by the COVID-19 emergency; and no additional documentation other than the borrower's attestation to a financial hardship caused by the COVID-19 emergency is required.  Such a borrower must be provided an initial forbearance plan for a period up to 180 days, and that forbearance period may be extended for up to an additional 180 days at the request of the borrower.  In accordance with the *Servicing Guide* D2-3.2-01, Forbearance Plan, the servicer may provide an initial forbearance period, and any extended forbearance period, in separate, shorter increments. If the borrower's COVID-19 related hardship has not been resolved during an incremental forbearance period, the servicer must extend the borrower's forbearance period, not to exceed 12 months total. For a borrower impacted by COVID-19, we are temporarily eliminating the requirement that the servicer must receive our prior written approval for a forbearance plan that would result in the mortgage loan becoming greater than 12 months delinquent.

As a reminder, servicers must inform the borrower that the payments which are the subject of a forbearance plan have only been delayed or reduced, not forgiven, and that once the forbearance plan is complete, one of the following must occur:

- the mortgage loan must be brought current through a reinstatement,

- the borrower is approved for another workout option,

- the mortgage loan is paid in full, or

- the servicer refers the mortgage loan to foreclosure in accordance with applicable law.

The servicer must also inform the borrower that he or she may shorten a forbearance plan term at any time to reduce the amount of payments which are being delayed or reduced.

As stated in the *Servicing Guide* D2-3.2-01, Forbearance Plan, the forbearance plan terms must be provided to the borrower using the appropriate Evaluation Notice, which must be revised in accordance with applicable law. In addition, the servicer must document in the individual mortgage loan file the borrower's request for forbearance and attestation as to a financial hardship caused by the COVID-19 emergency, and the terms of the initial and any extended forbearance, including the duration of the forbearance period.

## Evaluating the borrower for a payment deferral or mortgage loan modification after a forbearance plan  UPDATED May 14

For borrowers who have received a forbearance plan in response to COVID-19, the servicer must begin attempts to contact the borrower no later than 30 days prior to the expiration of the forbearance plan term, and must continue outreach attempts until either QRPC is achieved or the forbearance plan term has expired. When evaluating the borrower for a workout option prior to expiration of the forbearance plan, we are providing flexibility with regard to achieving QRPC. We are eliminating the requirement that the servicer determine the occupancy status of the property and will consider the servicer obtaining the following as



achieving QRPC for purposes of evaluating a borrower who has experienced a hardship resulting from COVID-19:

- determining the reason for the delinquency and whether it is temporary or permanent in nature;
- determining whether or not the borrower has the ability to repay the mortgage loan debt;
- educating the borrower on the availability of workout options, as appropriate; and
- obtaining a commitment from the borrower to resolve the delinquency.

With LL-2017-09R we introduced the Fannie Mae Extend Modification for Disaster Relief (Extend Mod), a temporary post-disaster forbearance mortgage loan modification, as well as the order of evaluation for Extend Mod and other post-forbearance mortgage loan modifications when the property securing the mortgage loan or the borrower's place of employment is located in a FEMA-Declared Disaster Area eligible for Individual Assistance. While COVID-19 is not a disaster as defined in the *Servicing Guide*, with this Lender Letter, we are extending the availability of these post-forbearance mortgage loan modifications to borrowers impacted by COVID-19. The servicer must analyze each case carefully in accordance with the requirements in the following table before determining which mortgage loan modification is most appropriate for the borrower.

| If the servicer is... | And... | Then the servicer must evaluate the borrower for... |
|---|---|---|
| able to establish QRPC with the borrower during the forbearance plan | determines that the borrower is capable of maintaining the current contractual monthly PITI payment, including any escrow amounts disbursed by the servicer during the forbearance plan term and escrow shortage needed to pay future escrow that is required to be repaid by the borrower over the 60-month escrow repayment period | an Extend Mod; and if eligible, offer the borrower the Extend Mod. The servicer must disclose how the escrow analysis was determined, and that disbursed escrow amounts will not be capitalized but will be added to the escrow shortage needed to pay future escrow amounts resulting in an increase of the borrower's current contractual monthly PITI payment over the 60-month escrow repayment period. |
| | determines that the borrower can maintain the current contractual monthly PITI payment, but cannot manage the additional escrow repayment obligation to cover amounts disbursed by the servicer during the forbearance plan term | a Fannie Mae Cap and Extend Modification for Disaster Relief; and if eligible, offer the borrower a Fannie Mae Cap and Extend Modification for Disaster Relief (see D2-3.2-05, Fannie Mae Cap and Extend Modification for Disaster Relief). |
| | determines that the borrower is not capable of maintaining the current contractual monthly PITI payment | a Fannie Mae Flex Modification based on the *Unique Requirements for a Borrower Impacted by a Disaster Event* (see D2-3.2-08, Fannie Mae Flex Modification); and if eligible, offer a Fannie Mae Flex Modification. |
| not able to establish QRPC during the forbearance plan | the mortgage loan is 90 or more days delinquent | a Fannie Mae Flex Modification based on the *Unique Requirements for a Borrower Impacted by a Disaster Event* (see D2-3.2-08, Fannie Mae Flex Modification); and if eligible, solicit the borrower for a Fannie Mae Flex Modification. |

© 2020 Fannie Mae   LL-2020-02   Page 8 of 11



For these mortgage loan modifications, the following changes to the eligibility criteria apply:

| Current Requirement | Requirement for Borrowers Impacted by COVID-19 |
|---|---|
| The property securing the mortgage loan or the borrower's place of employment must be located in a FEMA-Declared Disaster Area eligible for Individual Assistance. | The borrower must have experienced a hardship resulting from COVID-19 (for example, unemployment, reduction in regular work hours, or illness of a borrower/co-borrower or dependent family member), which has impacted their ability to make their monthly mortgage loan payment.<br><br>**N O T E :** *The servicer is not required to obtain documentation of the borrower's hardship.* |
| The mortgage loan must have been current or less than 31 days delinquent when the disaster occurred | The mortgage loan must have been current or less than 31 days delinquent as of Mar. 1, 2020, the effective date of the National Emergency declaration related to COVID-19. |

**N O T E :** *The servicer must make appropriate changes to the Flex Modification Solicitation Cover Letter and Evaluation Notices, including the applicable Frequently Asked Questions, when using for a borrower impacted by COVID-19.*

In Lender Letter LL-2020-07, COVID-19 Payment Deferral we introduced COVID-19 payment deferral, a new home retention workout option jointly developed with Freddie Mac at the direction of FHFA, to assist borrowers who have resolved their COVID-19 related hardship. Once the servicer implements COVID-19 payment deferral, it must evaluate borrowers impacted by COVID-19 for a COVID-19 payment deferral in accordance with the eligibility requirements and evaluation hierarchy described in Lender Letter LL-2020-07, COVID-19 Payment Deferral. This supersedes our guidance on Mar. 25, 2020 which instructed that once the servicer implemented payment deferral, to evaluate borrowers impacted by COVID-19 for a payment deferral in accordance with the eligibility requirements and workout option hierarchy described in Lender Letter LL-2020-05, Payment Deferral prior to evaluating the borrower for a post-forbearance mortgage loan modification as described above.

## Credit bureau reporting  UPDATED Apr. 8

In response to the CARES Act, we are acknowledging that the servicer must report the status of the mortgage loan to the credit bureaus in accordance with the FCRA, including as amended by the CARES Act, for borrowers affected by the COVID-19 emergency. This supersedes our guidance on Mar. 18, 2020, which instructed servicers to suspend reporting the status of a mortgage loan to credit bureaus during an active forbearance plan, or a repayment plan or Trial Period Plan where the borrower is making the required payments as agreed, even though payments are past due, as long as the delinquency is related to a hardship resulting from COVID-19.

## Suspension of foreclosure activities and certain bankruptcy requirements
UPDATED May 14, Jun. 24, Aug. 27, Dec. 9

On Mar. 18, 2020, we instructed servicers that they must suspend all foreclosure sales for the next 60 days, unless the property securing the mortgage loan had been determined to be vacant or abandoned.

In response to the CARES Act, on Apr. 8, 2020, we acknowledged that the servicer was required to suspend foreclosure-related activities in accordance with the requirements of the CARES Act , which provides: "Except with respect to a vacant or abandoned property, a servicer of a Federally backed mortgage loan may not initiate any judicial or non-judicial foreclosure process, move for a foreclosure judgment or order of sale, or execute a foreclosure-related eviction or foreclosure sale for not less than the 60-day period beginning on Mar. 18, 2020."

We previously extended the suspension of foreclosure-related activities through Jun. 30, 2020 and subsequently through Dec. 31, 2020.  We are now further extending the suspension of the following foreclosure-related activities through Jan. 31, 2021:  During the period of the extension, servicers may not, except with respect to a vacant or abandoned property, initiate any judicial or non-judicial foreclosure process, move for a foreclosure judgment or order of sale, or execute a foreclosure sale.  This suspension does not apply to mortgage loans secured by properties that have been determined to be vacant or abandoned.

We generally require servicers to file motions for relief from the automatic stay in bankruptcy cases upon certain milestones. In



light of the CARES Act and other impacts resulting from the COVID 19 National Emergency, on Apr. 8, 2020, we temporarily relieved servicers of the obligation to meet these timelines. We are continuing this temporary suspension. Servicers must continue to work with their bankruptcy counsel to determine the appropriate time to file such motions.

## Use of Fannie Mae's Disaster Response Network

Our Disaster Response Network (DRN) is operational and can be used to assist borrowers who are financially impacted by COVID-19. The DRN has trained financial counselors who will work with borrowers to create a workable budget based upon the borrower's present financial situation and assist in explaining options including obtaining unemployment benefits and any new special assistance. We encourage servicers to refer Fannie Mae borrowers to our Disaster Response Network at 1-877-542-9723.

## Additional resources

As a reminder, we have published other Lender Letters and helpful information regarding policies related to COVID-19.

- LL-2020-03, Impact of COVID-19 on Originations
- LL-2020-04, Impact of COVID-19 on Appraisals
- COVID-19 Frequently Asked Questions (Selling)
- Ask Poli Selling

- LL-2020-06, Selling Loans in Forbearance Due to COVID-19
- LL-2020-07, COVID-19 Payment Deferral
- COVID-19 Frequently Asked Questions (Servicing)
- Ask Poli Servicing

> We will continue to monitor the situation and alert you of any additional policy updates. Servicers who have questions about this Lender Letter should contact their Fannie Mae Account Team, Portfolio Manager, or Fannie Mae's Single-Family Servicer Support Center at 1-800-2FANNIE (1-800-232-6643).
> Have Guide questions?  Get answers to all your policy questions, straight from the source. Ask Poli.



# Appendix

Refer to the examples below related to calculating the non-depository seller/servicer minimum liquidity requirement.

## Example #1:

Agency Servicing UPB: $50,000,000
Agency Servicing SDQ UPB: $3,500,000 (7% SDQ rate)

COVID-19 Portion of Agency Servicing SDQ UPB[1] : $1,000,000
The base liquidity requirement is .035% of the Agency Servicing UPB calculated as follows:
$$0.035\%* \$50,000,000 = \$17,500$$

In the example above, the Agency Servicing SDQ rate is above the 6% threshold for the Liquidity Add-On. Under the temporary guidance, the portion of Agency SDQ loans shown above that is related to COVID-19 forbearance loans is multiplied by .30 to derive the numerator used for calculating the adjusted Agency SDQ Rate of 5.6% as follows:
$$\$2,500,000 + (\$1,000,000 *.30) = \$2,800,000/\$50,000,000 * 100$$

As shown above, the $2.5 million represents the difference between Total Agency SDQs and COVID-19-related SDQs. The $1 million * .30 is the calculation adjustment to COVID-19 SDQ loans. The combined $2.8 million is the numerator used to calculate the Agency Servicing SDQ rate. In this example, the Agency Servicing SDQ rate decreases from 7% to 5.6%--  less than 6% SDQ threshold to trigger the Liquidity Add-on.  The Liquidity Add-on is *not*  applicable in this example.

| | |
|---|---|
| Base Liquidity Requirement: | **$17,500** |
| Liquidity Add-on: | **Not Applicable** |
| **Minimum Liquidity Requirement** | **$17,500** |

## Example #2:

Agency Servicing UPB: $50,000,000
Agency Servicing SDQ UPB: $7,000,000 (14% SDQ rate)

COVID-19 Portion of Agency Servicing SDQ UPB[1] : $3,000,000
The base liquidity requirement is .035% of the Agency Servicing UPB calculated as follows:
$$0.035\%* \$50,000,000 = \$17,500$$

In the example above, the Agency Servicing SDQ rate is above the 6% threshold for the Liquidity Add-on. Under the temporary guidance, the portion of Agency SDQ loans show above that is related to COVID-19-related forbearance loans is multiplied by .30 to derive the numerator for calculating the adjusted Agency SDQ Rate of 9.8% as:
$$\$4,000,000 + (\$3,000,000 *.30) = \$4,900,000/\$50,000,000 * 100$$

As shown above, the $4 million represents the difference between Total Agency SDQs and COVID-19-related SDQs. The $3 million * .30 is the calculation adjustment to COVID-19 SDQ loans. The combined $4.9 million is the numerator used to calculate the Agency Servicing SDQ rate. In this example, the Agency Servicing SDQ rate decreases from 14% to 9.8%-- which is above the 6% threshold to trigger the Liquidity Add-on. The Liquidity Add-on is applicable only on the UPB portion above 6% SDQ rate calculated as follows:
$$2\%*\$50,000,000*(9.8\%-6.0\%)= \$38,000$$

| | |
|---|---|
| Base Liquidity Requirement: | **$17,500** |
| Liquidity Add-on: | **$38,000** |
| **Minimum Liquidity Requirement** | **$55,500** |

[1]COVID-19 SDQ refers to mortgage loans in a COVID-19-related forbearance plan that are 90 days or more delinquent and were current at the inception of the COVID-19-related forbearance plan.

© 2020 Fannie Mae   LL-2020-02   Page 11 of 11

 

**Consumer Relief Guide – Your Rights to Mortgage Payment Forbearance and Foreclosure Protection Under the Federal CARES Act**

The COVID-19 pandemic is causing financial hardship for millions of American homeowners. If you, or someone you know, is experiencing financial hardship, you or they may have access to help under a new federal law known as the Coronavirus Aid, Relief, and Economic Security Act (CARES Act). This guide has information to help you make important decisions about your financial obligations.

**Quick Facts**

- You have the right to obtain a 180 day pause in paying your mortgage or temporarily lower mortgage payments if you are a borrower on a federally backed mortgage loan and affirm that you are experiencing a financial hardship due directly or indirectly to the COVID-19 emergency. This program is called mortgage forbearance or mortgage relief.  Your mortgage servicer (the company you send your payments to each month) can tell you if your loan is federally backed.
- The decision to request forbearance should be considered carefully; however, Congress has made the actual request process very easy. See *The Decision to Request Forbearance* below.
- Forbearance is a temporary reduction or suspension of your monthly payment to help you through a difficult period. You will need to repay any missed or reduced payments in the future through one of numerous options. While in forbearance, you can still choose to make partial payments, which will reduce the amount you would need to repay in the future.
- At the end of the forbearance period you and your servicer will discuss repayment options. In most cases you should receive multiple options to repay the monthly payments that were not paid during forbearance over time.
- There are no fees associated with obtaining forbearance. Be wary of anyone offering to help you with forbearance for a fee.
- Foreclosure actions on loans federally backed by Fannie Mae, Freddie Mac and HUD, which includes single family FHA loans and reverse mortgage HECM loans, are frozen until June 30, 2020.

**Steps to request forbearance under the CARES Act**

First, you will need to contact your mortgage servicer.

If you don't know if you have a federally backed mortgage, call your mortgage servicer. You can find your servicer on your monthly mortgage statement or by searching the Mortgage Electronic Registration Systems (MERS) website: mers-servicerid.org/sis.

*Eligible Loan Types*

To be eligible for protections under the CARES Act, your mortgage must be backed by one of the federal agencies and entities listed below.

Loan types that are federally backed include:

- Conventional loans purchased or securitized by Fannie Mae and Freddie Mac (combined, GSEs) To find out if your loan is owned by one of the GSEs, please visit the following webpages:
  - Fannie Mae Loan Lookup: https://www.knowyouroptions.com/loanlookup

- o Freddie Mac Loan Lookup: https://ww3.freddiemac.com/loanlookup
- Federal Housing Administration (FHA), including Home Equity Conversion Mortgage (HECM)
- U.S. Department of Veterans Affairs (VA)
- U.S. Department of Agriculture (USDA), including USDA Direct and USDA Guaranteed

Privately held loans are not eligible for forbearance relief under the CARES Act, but you should still contact your mortgage servicer to ask about assistance programs.

*Terms of the Forbearance Program*

The next step is to tell your servicer that you are experiencing financial hardship due to the COVID-19 emergency and are requesting a forbearance. Check the company website for an online form or phone number.

The CARES Act grants you the right to forbearance by submitting a request to your mortgage servicer for forbearance due to financial hardship during the COVID-19 emergency.

You are not required to submit documentation to prove your financial hardship to enter a forbearance under the CARES Act. And, you are eligible regardless of delinquency status, so it does not matter if you are delinquent at the time of application or were delinquent before the President's March 13, 2020, emergency declaration.

Under the new law, forbearance shall be granted for up to 180 days at your request, and shall be extended for an additional 180 days at your request.[1] Remember to make the second 180-day request before the end of the first forbearance period. Most servicers are required under federal regulations to notify you about applying for other mortgage relief options.

You will **not** accrue fees, penalties, or interest beyond the amounts already scheduled or calculated based on the terms of your mortgage. However, you will have to pay the payments that were missed during forbearance, including taxes and insurance, back to the mortgage company in the future and after the forbearance period ends. At the end of your forbearance period, you and your servicer will determine how you will repay any missed payments or deficiencies related to reduced payments, especially in your escrow account. In most cases, you will be given multiple options for repaying the forbearance;  a lump-sum repayment will typically not be the only option. Some options may include:

- Establishing a repayment plan that would spread your missed payments over a specified number of months, which would increase your monthly payment until the missed forbearance payments were fully repaid and would be based on your ability to make the new monthly payments.
- Extending the term of the loan for some amount of time to pay back the missed payments. For example, if provided a six-month period where you don't make a mortgage payment, your mortgage servicer could add six months of payments on to the date when the loan is scheduled to be paid off (the maturity date). This would be one form of a loan modification.
- Modifying your loan to catch up the missed payments over time through a specified modification program offered by the owner of your loan.

---

[1] H.R. 748 – CARES Act, Sec. 4022: https://www.congress.gov/bill/116th-congress/house-bill/748/text#H34DE53614AC745A8889A13E7D3460DB4

Note: Any loan modification after your forbearance term will likely require your servicer to document your income and expenses to ensure you qualify for a modification program. The servicer will contact you about this prior to the end of your forbearance period.

You should arrange a forbearance that works for you. To prepare to call your mortgage servicer for a forbearance request, you will want to gather your account information. You can review publicly available mortgage servicer call scripts so that you will know the types of questions your servicer may ask when discussing forbearance with you. Commonly used call scripts and resource documents include:

- Fannie Mae Forbearance Call Script: LINK
- Freddie Mac COVID-19 Call Script: LINK
- FHA COVID-19 Questions and Answers: LINK
- VA Circular 26-20-12: LINK

**The Decision to Request Forbearance**

If your loan is eligible for relief and you are having financial hardship due to COVID-19, you are entitled to lower payments or forbearance that is provided in the CARES Act. If you are still able to make your full monthly payment, you may wish to keep doing so because interest continues to grow as scheduled and you will eventually have to repay the amount of any forbearance.

When discussing forbearance with your mortgage servicer, be sure to discuss all repayment options available to you before entering a forbearance program. Repayment options may differ depending on your loan type, and you should know before entering forbearance how you will be expected to repay your paused payments.

If you and your servicer disagree on forbearance relief options, please remember that the CARES Act entitles you to a forbearance of up to 180 days at your request, and an extension of an additional 180 days at your request. Keep detailed notes on your conversations and check any documentation sent by your servicer to make sure the terms of your forbearance are clear.

**Forbearance Attestations on Newly Closed Mortgage Loans**

Mortgage lenders are currently requiring new borrowers to sign COVID Attestations confirming that income has not changed and that they are not aware of future changes in employment or the need to request forbearance. Lenders may also inform you that your loan is not immediately federally backed and therefore does not qualify for CARES Act forbearance.

These attestations do not limit your rights under the CARES Act as described above. However, it may be true that your loan is not immediately federally backed and therefore will not qualify under the CARES Act until it becomes federally backed, which can take days or in some cases weeks.

This does not mean that you cannot request forbearance information and many lenders and servicers are providing forbearance benefits regardless of federally backed status. If you have recently closed on a loan and already find yourself in need of assistance, you should contact your servicer to determine your options.

**Credit Protection During COVID-19**

The CARES Act also protects you from some negative information on your credit report because of any mortgage relief or assistance related to the COVID-19 emergency. During the period covered by the CARES Act, the CARES Act requires your mortgage servicer to report your account as current if your account was current at the time of the forbearance and if you meet the terms of your mortgage relief; or if your account was delinquent before the COVID-19 emergency, to maintain the same delinquent status. If you bring your account current during the forbearance, your mortgage servicer must report the loan as current.

**Additional Resources on CARES Act Forbearance**

If you need help working with your mortgage servicer or understanding your options, you may want to reach out to a non-profit housing or credit counseling agency, or other professional to help you with your specific situation. Contact information for filing a complaint with and requesting assistance from the CFPB or your state regulator is included below.

Mortgage regulators at both the state and federal level have websites with information about what governments are doing to protect consumers during this national emergency. These websites include:

- Unified Agency Website: www.cfpb.gov/housing
- CFPB COVID-19 Mortgage and Housing Assistance Page: LINK
- CSBS COVID-19 Consumer Resources Page: LINK
- American Association of Residential Mortgage Regulators (AARMR): LINK

Relevant statutory provisions appear mainly in Sections 4021 and 4022 of the CARES Act, the full text of which is available HERE. Section 4021 covering consumers credit protection during COVID-19 can be found HERE. Section 4022 covering consumers' rights to request forbearance can be found HERE.

If you need to file a complaint related to your loan, contact your state financial regulator or the CFPB.

- CFPB Complaint Portal can be accessed HERE.
- Find your state mortgage regulator on the CSBS website HERE.

If you need additional help getting mortgage relief or understanding your rights, benefits and protections from CARES Act mortgage assistance please visit the National Consumer Law Center (NCLC) webpage. A summary of foreclosure alternatives for borrowers with COVID-19 hardships can be found HERE.

# Servicing Guide

⬇ **Download PDF Guide** (Published: July 13 2022 )

## Search the Guide          *(For best result, pose your search like a question.)*

> Search the Guide... e.g. How do I know if my borrower qualifies for forbearance?

Home / COVID-19 / COVID FAQs

Share

**Is Form 710 (Mortgage Assistance Application) required to verify hardship for putting a borrower on a COVID-19 related forbearance plan?**

For COVID-19 impacted borrowers, no additional documentation other than the borrower's attestation to a financial hardship caused by the COVID-19 emergency is required for the borrower receiving a forbearance plan.

| **Note:** This FAQ is from the Fannie Mae COVID-19 Frequently Asked Questions. Form 710 can be downloaded here.

**See below for more information on COVID-19:**

- Fannie Mae's COVID-19 page
- The Impact of COVID-19 on Servicing
- Fannie Mae Servicing Lender Letter LL 2021 02

Was this article helpful? **Yes** / No

## Have You Tried Ask Poli?



**Poli knows. Just ask.**

Ask Poli features exclusive Q&As and
more—plus official *Selling & Servicing
Guide* content.

Try Ask Poli ›

## Related Articles

AskPoli

Customers Recommend Ask Poli

If you have additional questions, Fannie Mae customers can **visit Ask Poli** to get information from other Fannie Mae published sources.

Guide Resources

For a comprehensive list of resources such as access forms, announcements, lender letters, notices and more.

**Visit Selling and Servicing Guide Communications and Forms**

7/26/22, 7:27 PM

Case 5:21-cv-00616-JWH-SP Document 202-1 Filed 08/05/22 Page 2 of 2 Page ID #:1970

Is Form 710 Mortgage Assistance Application required to verify hardship for putting a borrower on a COVID-19-related forbearance plan?

**Working with Fannie Mae**

Customer Login

Password Reset

Not a customer? Get Started

**Support & Resources**

Customer Service

News & Events

Learning Center

Guide Forms

**Products & Solutions**

Mortgage Products & Options

Technology Apps & Solutions

**Other Sites**

The Marketing Center

Know Your Options

Duty to Serve

HomePath

© 2020 Fannie Mae

Suppliers

Careers

Contact Us

Legal

Privacy

Loan number: _____

# Mortgage Assistance Application

If you are having mortgage payment challenges, please complete and submit this application, along with the required documentation, to [servicer name] via mail: [address], fax: [fax #], or online: [website/email address]. We will contact you within five business days to acknowledge receipt and let you know if you need to send additional information or documents.

We will use the information you provide to help us identify the assistance you may be eligible to receive. If you need help completing this application, please contact [servicer name] at [phone #].

For a list of HUD-approved housing counseling agencies that can provide foreclosure prevention information, contact one of the following federal government agencies:

- The U.S. Department of Housing and Urban Development (HUD) at (800) 569-4287 or www.hud.gov/counseling
- The Consumer Financial Protection Bureau (CFPB) at (855) 411-2372 or www.consumerfinance.gov/mortgagehelp

If you need assistance with translation or other language assistance, HUD-approved housing counseling agencies may be able to assist you. These services are provided without charge.

## Borrower Information

Borrower's name: Artur Elizarov _____

Social Security Number (last 4 digits): _____

E-mail address: _____

Primary phone number: _____ ☒ Cell  ☐ Home  ☐ Work  ☐ Other

Alternate phone number: _____ ☐ Cell  ☐ Home  ☐ Work  ☐ Other

Co-borrower's name: _____

Social Security Number (last 4 digits): _____

E-mail address: _____

Primary phone number: _____ ☐ Cell  ☐ Home  ☐ Work  ☐ Other

Alternate phone number: _____ ☐ Cell  ☐ Home  ☐ Work  ☐ Other

Preferred contact method (choose all that apply): ☐ Cell phone  ☐ Home phone  ☐ Work phone  ☐ Email  ☐ Text—checking this box indicates your consent for text messaging

Is either borrower on active duty with the military (including the National Guard and Reserves), the dependent of a borrower on active duty, or the surviving spouse of a member of the military who was on active duty at the time of death? ☐ Yes  ☐ No

## Property Information

Property Address: 291 S Overlook Road, Palm Springs CA 92264 _____

Mailing address (if different from property address): _____

- The property is currently: ☒ A primary residence  ☐ A second home  ☐ An investment property

- The property is (select all that apply): ☒ Owner occupied  ☐ Renter occupied  ☐ Vacant

- I want to: ☒ Keep the property  ☐ Sell the property  ☐ Transfer ownership of the property to my servicer  ☐ Undecided

Is the property listed for sale? ☐ Yes  ☒ No – If yes, provide the listing agent's name and phone number—or indicate "for sale by owner" if applicable: _____

Is the property subject to condominium or homeowners' association (HOA) fees? ☐ Yes  ☒ No – If yes, indicate monthly dues:
$ _____

## Hardship Information

The hardship causing mortgage payment challenges began on approximately (date) `02/21/2020` and is believed to be:

☒ Short-term (up to 6 months)
☐ Long-term or permanent (greater than 6 months)
☐ Resolved as of (date) _____

| TYPE OF HARDSHIP (CHECK ALL THAT APPLY) | REQUIRED HARDSHIP DOCUMENTATION |
|---|---|
| ☐ Unemployment | • Not required |
| ☒ Reduction in income: a hardship that has caused a decrease in your income due to circumstances outside your control (e.g., elimination of overtime, reduction in regular working hours, a reduction in base pay) | • Not required |
| ☐ Increase in housing-related expenses: a hardship that has caused an increase in your housing expenses due to circumstances outside your control (e.g., uninsured losses, increased property taxes, HOA special assessment) | • Not required |
| ☒ Disaster (natural or man-made) impacting the property or borrower's place of employment | • Not required |
| ☐ Long-term or permanent disability, or serious illness of a borrower/co-borrower or dependent family member | • Written statement from the borrower, or other documentation verifying disability or illness **Note:** Detailed medical information is not required, and information from a medical provider is not required |
| ☐ Divorce or legal separation | • Final divorce decree or final separation agreement **OR**<br>• Recorded quitclaim deed |
| ☐ Separation of borrowers unrelated by marriage, civil union, or similar domestic partnership under applicable law | • Recorded quitclaim deed **OR**<br>• Legally binding agreement evidencing that the non-occupying borrower or co-borrower has relinquished all rights to the property |
| ☐ Death of borrower or death of either the primary or secondary wage earner | • Death certificate **OR**<br>• Obituary or newspaper article reporting the death |
| ☐ Distant employment transfer/relocation | • **For active duty service members**: Permanent Change of Station (PCS) orders or letter showing transfer.<br>• **For employment transfers/new employment**: Copy of signed offer letter or notice from employer showing transfer to a new location or written explanation if employer documentation not applicable, **AND**<br>• Documentation that reflects the amount of any relocation assistance provided (not required for those with PCS orders) |
| ☐ Other – hardship that is not covered above: | • Written explanation describing the details of the hardship and any relevant documentation |

GOLDWATER_000491

**Exhibit G - 2**

DocuSign Envelope ID: 5F5B1367-5C06-4661-99MH-E8P-DZ0A598

## Borrower Income

Please enter all borrower income amounts in middle column.

| MONTHLY TOTAL BORROWER INCOME TYPE & AMOUNT | | REQUIRED INCOME DOCUMENTATION |
|---|---|---|
| Gross (pre-tax) wages, salaries and overtime pay, commissions, tips, and bonuses | $ 0 | ■ Most recent pay stub and documentation of year-to-date earnings if not on pay stub **OR** <br> ■ Two most recent bank statements showing income deposit amounts |
| Self-employment income | $ 0 | ■ Two most recent bank statements showing self-employed income deposit amounts **OR** <br> ■ Most recent signed and dated quarterly or year-to-date profit/loss statement **OR** <br> ■ Most recent complete and signed business tax return **OR** <br> ■ Most recent complete and signed individual federal income tax return |
| Unemployment benefit income | $ 1,050.00 PER WEEK | No documentation required |
| Taxable Social Security, pension, disability, death benefits, adoption assistance, housing allowance, and other public assistance | $ 0 | ■ Two most recent bank statements showing deposit amounts **OR** <br> ■ Award letters or other documentation showing the amount and frequency of the benefits |
| Non-taxable Social Security or disability income | $ | ■ Two most recent bank statements showing deposit amounts **OR** <br> ■ Award letters or other documentation showing the amount and frequency of the benefits |
| Rental income (rents received, less expenses other than mortgage expense) | $ | ■ Two most recent bank statements demonstrating receipt of rent **OR** <br> ■ Two most recent deposited rent checks |
| Investment or insurance income | $ | ■ Two most recent investment statements **OR** <br> ■ Two most recent bank statements supporting receipt of the income |
| Other sources of income not listed above (Note: Only include alimony, child support, or separate maintenance income if you choose to have it considered for repaying this loan) | $ | ■ Two most recent bank statements showing receipt of income **OR** <br> ■ Other documentation showing the amount and frequency of the income |

## Current Borrower Assets

Exclude retirement funds such as a 401(k) or Individual Retirement Account (IRA), and college savings accounts such as a 529 plan.

| | |
|---|---|
| Checking account(s) and cash on hand | $ 3500 |
| Savings, money market funds, and Certificates of Deposit (CDs) | $ 0 |
| Stocks and bonds (non-retirement accounts) | $ |
| Other: | $ |

GOLDWATER_000492

**Exhibit G - 3**

## Borrower Certification and Agreement

1. I certify and acknowledge that all of the information in this Mortgage Assistance Application is truthful, and the hardship I identified contributed to my need for mortgage relief. Knowingly submitting false information may violate Federal and other applicable law.

2. I agree to provide my servicer with all required documents, including any additional supporting documentation as requested, and will respond in a timely manner to all servicer or authorized third party* communications.

3. I acknowledge and agree that my servicer is not obligated to offer me assistance based solely on the representations in this document or other documentation submitted in connection with my request.

4. I consent to the servicer or authorized third party* obtaining a current credit report for the borrower and co-borrower.

5. I consent to the disclosure by my servicer, authorized third party,* or any investor/guarantor of my mortgage loan(s), of any personal information collected during the mortgage assistance process and of any information about my relief I receive, to any third party that deals with my first lien or subordinate lien (if applicable) mortgage loan(s), including Fannie Mae, Freddie Mac, or any investor, insurer, guarantor, or servicer of my mortgage loan(s) or any companies that provide support services to them, for purposes permitted by applicable law. Personal information may include, but is not limited to: (a) my name, address, telephone number, (b) my Social Security number, (c) my credit score, (d) my income, and (e) my payment history and information about my account balances and activity.

6. I agree that the terms of this borrower certification and agreement will apply to any modification trial period plan, repayment plan, or forbearance plan that I may be offered based on this application.  If I receive an offer for a modification trial period plan or repayment plan, I agree that my first timely payment under the plan will serve as acceptance of the plan.

7. I consent to being contacted concerning this application for mortgage assistance at any telephone number, including mobile telephone number, or email address I have provided to the lender, servicer, or authorized third party.*

* An authorized third party may include, but is not limited to, a housing counseling agency, Housing Finance Agency (HFA) or other similar entity that is assisting me in obtaining a foreclosure prevention alternative.

Borrower signature: _____ Date: _____5/20/2020_____

Co-Borrower signature: _____ Date: _____

**Please submit your completed application, together with the required documentation, to [servicer name] via mail: [address], fax: [fax #], or online: [website/email address]. We will contact you within five business days to acknowledge receipt and let you know if you need to send additional information or documents.**

**We will use the information you provided to help us identify the assistance you may be eligible to receive.**

GOLDWATER_000493

Exhibit G - 4

| From: | **"Artur Elizarov" <arthur.elizarov@gmail.com>** |
|---|---|
| To: | **"Peter Hill" <PHill@goldwaterbank.com>** |
| Date: | 3/3/2021 12:44:38 PM |
| Subject: | Fwd: CONGRATS!! New Escrow 291 W Overlook, Palm Springs |
| Attachments: | 291 W Overlook,PS_Termite Report.pdf |
| | 291 W Overlook, PS_RPA.pdf |
| | 291 W Overlook, PS_ADM1.pdf |
| | 291 W Overlook, PS_CR1.pdf |

---

**WARNING!** WIRE FRAUD ADVISORY

Before sending funds, always call your Escrow team to verify wire information





**Andrea Cross**

Escrow Officer

---

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210

**P**. (310) 402-5555 ext. 2071 | **E-Fax**. (310) 402-5556

**Direct**. (310) 402-5470

**www.escrowofthewest.com**



**click here for disclosure**

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.

Rate Your Experience

ELIZAROV PRODUCTION - 0573



**WAGNER HICKS PLLC**
831 E. Morehead Street, Suite 860
Charlotte, NC 28202
(704) 705-7787

---

**DEREK M. BAST**
Attorney at Law
(704) 705-8311
derek.bast@wagnerhicks.law

**VIA PERSONAL SERVICE**

July 28, 2022

Rite Care Hospice, Inc.
c/o Vartan Akopyan, registered agent
14144 Ventura Blvd, Suite 260
Sherman Oaks, CA 91423

> *Re:* ***Goldwater Bank, N.A., v. Elizarov, et al.*** No. 5:21-cv-00616 (C.D. Cal.)
> Service of Subpoena *Duces Tecum* and Stipulated Protective Order

To Whom It May Concern:

Enclosed please find a Subpoena *Duces Tecum* in the above-referenced lawsuit. Additionally, please find enclosed a copy of a Stipulated Protective Order entered by the Court in this matter on June 8, 2022, which permits the designation of subpoenaed materials as "Confidential" upon production.

To facilitate your response by August 18, 2022, you may produce documents to Goldwater Bank, N.A.'s counsel by email, using the contact information below. If producing documents by this date is unfeasible, please contact counsel to discuss an alternative production date.

Derek M. Bast
Wagner Hicks PLLC
T: (704) 705-8311
derek.bast@wagnerhicks.law

Please do not hesitate to contact me with any questions or concerns.

Sincerely,



Derek M. Bast
Attorney

Enclosures

**WH**

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

<table>
<tr><td>Goldwater Bank, N.A.</td><td>)</td><td></td></tr>
<tr><td><em>Plaintiff</em></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>Civil Action No.   5:21-cv-00616-JWH-SP</td></tr>
<tr><td>Artur Elizarov, Unison Agreement Corp., Scott Howlett, Bank of the West, and Ilya Alekseyeff</td><td>)<br>)</td><td></td></tr>
<tr><td><em>Defendant</em></td><td>)</td><td></td></tr>
</table>

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Rite Care Hospice, Inc. c/o Vartan Akopyan, registered agent
       14144 Ventura Boulevard, Suite 260, Sherman Oaks, CA 91423

<em>(Name of person to whom this subpoena is directed)</em>

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

     See Attachment 1

<table>
<tr><td>Place: Regus Business Center<br>       777 S. Alameda, 2nd Floor<br>       Los Angeles , CA  90021</td><td>Date and Time:<br><br>08/18/2022 4:00 pm</td></tr>
</table>

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

<table>
<tr><td>Place:</td><td>Date and Time:</td></tr>
</table>

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    07/28/2022

<table>
<tr><td align="center"><em>CLERK OF COURT</em></td><td></td><td></td></tr>
<tr><td></td><td>OR</td><td></td></tr>
<tr><td align="center">_____<br><em>Signature of Clerk or Deputy Clerk</em></td><td></td><td align="center">/s/ Derek M. Bast<br>_____<br><em>Attorney's signature</em></td></tr>
</table>

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Plaintiff Goldwater Bank, N.A. _____ , who issues or requests this subpoena, are:

Derek Bast, 831 E Morehead St, Ste 860, Charlotte, NC 28202; derek.bast@wagnerhicks.law; (704) 705-8311

<strong>Notice to the person who issues or requests this subpoena</strong>

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 5:21-cv-00616-JWH-SP

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                                *Server's signature*

                               _____
                                                *Printed name and title*

                               _____
                                                *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c)  Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT 1

## LIST OF ITEMS FOR PRODUCTION

Pursuant to the foregoing Subpoena, please produce the following documents (please refer to the instructions and definitions below for information concerning how to respond to the following items):

1.    Any and all documents, records, or communications reflecting the beginning and ending of Elizarov's employment with You.

2.    Any and all documents, records, or communications related to the status of Your employment of Artur Elizarov during the Relevant Period.

3.    Any and all documents and records pertaining to any and all compensation provided to Artur Elizarov, including but not limited to annual salary records and employee bonus payments, during the Relevant Period.

## INSTRUCTIONS & DEFINITIONS

The foregoing Subpoena requires that you produce the above-listed items for inspection. You may satisfy such requirement either by (1) producing the original of any responsible item for inspection and copying or (2) **producing a true, accurate, and complete copy of the original via electronic mail to the requesting attorney (derek.bast@wagnerhicks.law)**. To comply with the Subpoena, such production must occur by, on, or before the date and time indicated on the foregoing Subpoena.

In preparing your response, please note that the words in the List of Items for Production and in these Instructions and Definitions have the meaning ordinarily attributed to them in common usage, except that the following words have the following meanings:

1. **"Relevant Period"** refers to January 1, 2019 through and including September 31, 2019.

2. "**Document**" includes any and all records, or written, readable, graphic, or visual materials, or any kind or character, and shall include, without limitation, correspondence, memoranda, notes, emails, files, bills, invoices, electronically stored information, and any other data compilation stored in any medium from which information can be obtained.

3. "**Communication**" or "**communications**" includes, without limitation, all statements, representations, expressions of fact or opinion, correspondence, reports, memoranda, emails, text messages, and other transmissions of information, made in any manner whatsoever.

4. "**You**" or "**Your**" means Rite Care Hospice, Inc., along with its affiliates and subsidiaries, and anyone working on Rite Care Hospice, Inc.'s behalf.

Goldwater Bank, National Association

LOAN #: 909216931

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☒ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

DocuSigned by: [signature]

7/3/2019 | 14:01:38 PDT

Borrower AP0300B8494                        Co-Borrower

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA ☒ Conventional ☐ Other (explain): ☐ FHA ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number 909216931 |
|---|---|---|---|

| Amount $ 686,250.00 | Interest Rate 5.000 % | No. of Months 360 | Amortization Type: | ☐ Fixed Rate ☐ GPM | ☐ Other (explain): ☒ ARM (type): 1YLWSJ |
|---|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) 291 W. Overlook Road, Palm Springs, CA 92264-8934 County: Riverside | No. of Units 1 |
|---|---|

| Legal Description of Subject Property (attach description if necessary) See title | Year Built 1945 |
|---|---|

| Purpose of Loan ☒ Purchase ☐ Construction ☐ Other (explain): ☐ Refinance ☐ Construction-Permanent | Property will be: ☒ Primary Residence ☐ Secondary Residence ☐ Investment |
|---|---|

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a + b) $ |
|---|---|---|---|---|---|

**Complete this line if this is a refinance loan.**

| Year Acquired | Original Cost $ | Amount Existing Liens $ | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made Cost: $ |
|---|---|---|---|---|

| Title will be held in what Name(s) Artur Elizarov | Manner in which Title will be held To be decided in escrow | Estate will be held in: ☒ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain)
**Checking/Savings, Unison assisted**

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

| Borrower's Name (include Jr. or Sr. if applicable) **Artur Elizarov** | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|

| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School 16 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married (include registered domestic partners) ☒ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. 0 ages 0 | ☐ Married (include registered domestic partners) ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no. ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☐ Own ☒ Rent No. Yrs. 2Y 1M **828 Westmount Drive West Hollywood, CA 90069** | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address **828 Westmount Drive West Hollywood, CA 90069** | Mailing Address, if different from Present Address |
|---|---|

**If residing at present address for less than two years, complete the following:**

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

| Name & Address of Employer ☐ Self Employed **Rite Care Hospice 14144 Ventura Blvd Ste 304 San Francisco, CA 94123** | Yrs. on this job 0Y 6M Yrs. employed in this line of work/profession 15 | Name & Address of Employer ☐ Self Employed | Yrs. on this job Yrs. employed in this line of work/profession |
|---|---|---|---|

| Position/Title/Type of Business **EVP Operations** | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

*If employed in current position for less than two years or if currently employed in more than one position, complete the following:*

**Uniform Residential Loan Application**
Freddie Mac Form 65  7/05 (rev.6/09)

Ellie Mae, Inc.

Page 1 of 6

**Fannie Mae Form 1003  7/05 (rev.6/09)**
GURLA09CA_S  0917
GURLA09S (POD)
GOLDWATER 000005
07/02/2019 02:17 PM PST

82

DOC # 2021-0245826
04/20/2021 03:02 PM Fees: $147.00
Page 1 of 17
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: ELENA #448

**RECORDING REQUESTED BY**
**STEWART TITLE OF CA, INC.**

**When recorded, mail to:**
**Goldwater Bank, N.A.**
**Attn: Final Document Department**
**P.O. Box 25064**
**Albuquerque, NM 87125**
**844-799-4653**

Title Order No.: 0625-5974427
Escrow No.: 0625-5974427
LOAN #: 909216931

—————————— [Space Above This Line For Recording Data] ——————————

# DEED OF TRUST

Accommodation Recording

| MIN 1009209-4100147547-4 |
| --- |
| MERS PHONE #: 1-888-679-6377 |

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
**(A)** **"Security Instrument"** means this document, which is dated **July 31, 2019**, together with all Riders to this document.
**(B)** **"Borrower"** is **ARTUR ELIZAROV, AN UNMARRIED MAN.**

Borrower's address is **828 Westmount Drive, West Hollywood, CA 90069.**

Borrower is the trustor under this Security Instrument.
**(C)** **"Lender"** is **Goldwater Bank, N.A..**

Lender is **a Corporation,** organized and existing under the laws of
**The United States of America.** Lender's address is **2525 E. Camelback Rd, Suite**
**1100, Phoenix, AZ 85016.**

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3005 1/01**
Ellie Mae, Inc. Page 1 of 13

CAEDEDL 0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST

GOLDWATER_000117

LOAN #: 909216931
MIN: 1009209-4100147547-4

# ADJUSTABLE RATE RIDER
**(LIBOR One-Year Index (As Published In The Wall Street Journal-Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this **31st** day of **July, 2019,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **Goldwater Bank, N.A.**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at: **291 W. Overlook Road, Palm Springs, CA 92264-8934.**

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MINIMUM AND MAXIMUM RATES THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of **5.375 %.** The Note provides for changes in the interest rate and the monthly payments as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A) Change Dates**
The interest rate I will pay may change on the **1st** day of **August, 2024,** and on that day every **12th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated

**MULTISTATE ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR**-Single Family-**Fannie Mae UNIFORM INSTRUMENT**
Form 3189 6/01 (rev. 6/16)
Ellie Mae, Inc.
Page 1 of 4
F3189RLU  0816
F3189RLU (CLS)
07/31/2019 10:36 AM PST



GOLDWATER_000130



9440 Santa Monica Blvd., #310
Beverly Hills, CA 90210

Phone:  (310) 402-5555
Fax:  (310) 424-4041
www.escrowofthewest.com

### AMENDED SELLER'S FINAL SETTLEMENT STATEMENT

**PROPERTY:**  11623 Morrison Street
Los Angeles, CA 91601

**SELLER:**  Artur Elizarov

**DATE:**  January 19, 2018

**CLOSING DATE:**  January 19, 2018
**ESCROW NO.:**  02-028633-AC

| | DEBITS | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Total Consideration | | 2,030,000.00 |
| | | |
| **PAYOFF CHARGES - Luther Burbank Savings** | | |
| **[Total Payoff $1,345,324.96]** | | |
| Principal Balance | 1,342,500.00 | |
| Interest on Principal Balance to 01/19/2018 | 2,656.96 | |
| Recording Fee | 18.00 | |
| Payoff Demand | 30.00 | |
| Reconveyance Fee | 45.00 | |
| Other | 75.00 | |
| | | |
| **PAYOFF CHARGES - Internal Revenue Service** | | |
| **[Total Payoff $91,567.25]** | | |
| Principal Balance | 91,567.25 | |
| | | |
| **PRORATIONS/ADJUSTMENTS** | | |
| County Taxes at $11,016.90/semi-annually from 01/01/2018 to 01/19/2018 | 1,101.69 | |
| | | |
| **COMMISSION CHARGES** | | |
| | | |
| **OTHER DEBITS/CREDITS** | | |
| | | |
| Transfer Tax - County to Los Angeles County | 2,233.00 | |
| Transfer Tax - City to City of Los Angeles | 9,135.00 | |

Date:  January 19, 2018 Escrow No.:  02-028633-AC

Page 2 of 2:

|  | DEBITS | CREDITS |
|---|---|---|
| **Net Proceeds** |  |  |
| **TOTAL** | $ 2,032,380.00 | $ 2,032,380.00 |

**SAVE THIS STATEMENT FOR INCOME TAX PURPOSES**

LOAN #: 909216931
MIN: 1009209-4100147547-4

# ADJUSTABLE RATE NOTE
(LIBOR One-Year Index (As Published In The Wall Street Journal)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MINIMUM AND MAXIMUM RATES I MUST PAY.

July 31, 2019          Palm Springs,          California
[Date]          [City]          [State]

291 W. Overlook Road, Palm Springs, CA 92264-8934
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$686,250.00**      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Goldwater Bank, N.A..**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.375 %.**      The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st**    day of each month beginning on   **September 1, 2019.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **August 1, 2049,**      I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **2525 E. Camelback Rd, Suite 1100**
         **Phoenix, AZ 85016**

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. **$3,842.80.**      This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the **1st**    day of   **August, 2024**      and on that day every **12th**    month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in **The Wall Street Journal.** The most recent Index value available as of the date 45 days before each Change Date is called the "Current Index," provided that if the Current Index is less than zero, then the Current Index will be deemed to be zero for purposes of calculating my interest rate.

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **THREE**      percentage point(s) ( **3.000 %**    ) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

MULTISTATE ADJUSTABLE RATE NOTE – WSJ One-Year LIBOR – Single Family – **Fannie Mae UNIFORM INSTRUMENT Form 3526 6/01 (rev. 6/16)**
Ellie Mae, Inc.          Page 1 of 3          F3526NOT 0816
         F3526NOT (CLS)
         07/31/2019 10:36 AM PST



GOLDWATER_000151

| --*-- **Form 668 (Z)** (Rev. 10-2000) | 1872 | Department of the Treasury - Internal Revenue Service **Certificate of Release of Federal Tax Lien** |
|---|---|---|

| Area: | Serial Number | For Use by Recording Office |
|---|---|---|
| SMALL BUSINESS/SELF EMPLOYED AREA #7 Lien Unit Phone: (800) 913-6050 | 280102417 | |

I certify that the following-named taxpayer, under the requirements of section 6325 of the Internal Revenue Code has satisfied the taxes listed below and all statutory additions. Therefore, the lien provided by Code section 6321 for these taxes and additions has been released. The proper officer in the office where the notice of internal revenue tax lien was filed on _____ **October 16** _____,
____ **2017** , is authorized to note the books to show the release of this lien for these taxes and additions.

002483

Name of Taxpayer  **ARTUR ELIZAROV**

Residence  **11623 MORRISON ST**
**N HOLLYWOOD, CA 91601-4346**

**COURT RECORDING INFORMATION:**

| Liber | Page | UCC No. | Serial No. |
|---|---|---|---|
| n/a | n/a | n/a | 20171178616 |

| Kind of Tax (a) | Tax Period Ended (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2014 | XXX-XX-▮▮▮▮ | 11/30/2015 | 12/30/2025 | 107787.69 |
| ************ | *********** | ************ | ************* | ************ | ************* |

**Place of Filing**

| | | |
|---|---|---|
| COUNTY RECORDER LOS ANGELES COUNTY NORWALK, CA 90650 | **Total** | 107787.69 |

This notice was prepared and signed at _____ **OAKLAND, CA** _____ , on this,

the __**18th**__ day of _____ **December** _____, __**2019**__ .

| Signature *Jean Flash* | Title **Operations Manager, Centralized Lien Operation** |
|---|---|

(**NOTE:** Certificate of officer authorized by law to take acknowledgements is not essential to the validity of Certificate of Release of Federal Tax Lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409

Form **668 (Z)** (Rev. 10-2000)
CAT. NO 600261
**Exhibit O - 1**

This document shows that we have mailed a Certificate of Release of Federal Tax Lien to the place of filing shown on the front of this form.

There is no need to contact the Internal Revenue Service regarding this document. It is a copy for your records.

## KEEP THIS DOCUMENT IN A SAFE PLACE

This document may be helpful in answering future questions about the filing and release of the Notice of Federal Tax Lien.

Este documento muestra que hemos enviado pro correo un Certificado de Relevo de Gravamen del Impuesto Federal, en el área de radicación (presentación) que se muestra en la parte de al frente de ésta forma.

No es necesario que se comunique con el Servicio de Impuestos Internos (IRS) sobre este documento. Esto es una copia para sus récords (archivos).

## GUARDE ESTE DOCUMENTO EN UN LUGAR SEGURO

Este documento puede servirle mas adelante para contestar preguntas futuras acerca de su radicación (presentación) de Relevo de Gravamen del Impuesto Federal.

**Exhibit O - 2**

 **IRS** Department of the Treasury
Internal Revenue Service

PO BOX 145595, STOP 8420G
CINCINNATI, OH 45250-5585

SLID: 280102417
COURT: LOS ANGELES

002483.882256.453609.27184 1 SP 0.500 536



ARTUR ELIZAROV
828 WESTMOUNT DR
W HOLLYWOOD, CA 90069-4610

002483

**Exhibit O - 3**

## Loss Mitigation 90-120 Days Delinquency Review Checklist

Account# 909216931     [X] Checked Note & Mortgage for all cosigners

Borrower: Artur Elizarov     Co-Borrower: _____

Property Address: 828 Westmount Drive, West Hollywood, CA. 90069

Original Balance: $ 686,250.00     Investor: FNMA

Unpaid Principal Balance: $ 679,565.53     Loan Type: Conventional

UA Balance $ 0     Date Closed: 07/31/2019

Interest Rate: 5.3750 %

Payment: $ 4944.11

Next Due: 04/01/2020

**Reason For Default:**

2 Month Letter : N/A

Demand Letter: N/A

FTF (NM only): _____

Last Inspection: 8/10/2020

| | | |
|---|---|---|
| ___ | 1 | Death of Principal Mortgagor/Family Member |
| ___ | 2 | Illness of Principal Mortgagor/Family Member |
| ___ | 3 | Marital Difficulties/Divorce |
| ___ | 4 | Curtailment of Income |
| ___ | 5 | Excessive Obligations |
| ___ | 6 | Property Problem |
| ___ | 7 | Inability To Rent/Sell Property |
| ___ | 8 | Military Service |
| ___ | 9 | Unemployed Date _____ |
| X | 10 | Other (Explain) COVID19 |

Good X Fair_____ Poor_____

Vacant_____ Owner x Tenant_____ UTV_____

Last Lexis Nexis: None

Property Type: SFH _____ (MFH Taxed as Real Estate?): _____

HOA: Yes _____ Last Call: 9/30/2020 _____ Next Call: 10/01/2020

Collector Arrangement (Include Starting date - Ending date, Amounts, Terms, Etc.)

Borrower on a covid19 forbearance extension from 7/01 to 9/30, financial hardship not resolved.

borrower stated he will be needing an extension as he is still in work hours reduction due to covid19, did send request.

Collector Approved: Leticia(Lettie)Aguilar _____ Date: 9/30/2020

Manager Comments: _____

[ ] Ready to Scan     [ ] Needs Further Review See Comments

Home Retention Manager Approved: _____ Date: _____

## Foreclosure Referral

Approved: _____ Date: _____

Approved: _____ Date: _____

Approved: _____ Date: _____

WMC 11/10/2016

GOLDWATER_000531

# Loss Mitigation 90-120 Days Delinquency Review Checklist

Account# 909216931                                    [X] Checked Note & Mortgage for all cosigners

Borrower: Artur Elizarov                              Co-Borrower: _____

Property Address: 828 Westmount Drive, West Hollywood, CA. 90069 _____

Original Balance: $ 686,250.00 _____      Investor: FNMA _____

Unpaid Principal Balance: $679,565.53 _____     Loan Type: Conventional _____

UA Balance $ 0 _____        Date Closed: 07/31/2019

                                                      Interest Rate:              5.3750 %

                                                      Payment: $ 4944.11

**Reason For Default:**                               Next Due: 04/01/2020

___ 1  Death of Principal Mortgagor/Family Member     2 Month Letter : N/A

___ 2  Illness of Principal Mortgagor/Family Member   Demand Letter : N/A

___ 3  Marital Difficulties/Divorce                   FTF (NM only): _____

___ 4  Curtailment of Income                          Last Inspection: 7/14/2020

___ 5  Excessive Obligations

___ 6  Property Problem                               Good  X     Fair_____   Poor_____

___ 7  Inability To Rent/Sell Property   Vacant_____  Owner_X_  Tenant_____  UTV_____

___ 8  Military Service

___ 9  Unemployed Date _____              Last Lexis Nexis: None _____

X  10  Other  (Explain)    No Contact. _____

_____

_____

Property Type: SFH _____ (MFH Taxed as Real Estate?): _____

HOA: Yes _____ Last Call: 7/27/2020 _____ Next Call: 07/30/2020 _____

Collector Arrangement (Include Starting date - Ending date, Amounts, Terms, Etc.)

Borrower on a covid19 forbearance extension from 7/01 to 9/30, financial hardship not resolved.

Forbearance payment is still due for July. _____

_____

    Collector Approved: Leticia(Lettie)Aguilar _____ Date: 7/30/2020 _____

    Manager Comments: _____

_____

[X] Ready to Scan                          [ ] Needs Further Review See Comments

Home Retention Manager Approved: AB _____ Date: 7/30/20 _____

## Foreclosure Referral

Approved: _____ Date: _____

Approved: _____ Date: _____

Approved: _____ Date: _____

## Loss Mitigation 90-120 Days Delinquency Review Checklist

Account# 909216931      [X] Checked Note & Mortgage for all cosigners

Borrower: Artur Elizarov      Co-Borrower: _____

Property Address: 828 Westmount Drive, West Hollywood, CA. 90069

Original Balance: $686,250.00      Investor: FNMA

Unpaid Principal Balance: $679,565.53      Loan Type: Conventional

UA Balance $0      Date Closed: 07/31/2019

Interest Rate: 5.3750 %

Payment: $4944.11

Next Due: 04/01/2020

**Reason For Default:**

   1 Death of Principal Mortgagor/Family Member    2 Month Letter : N/A

   2 Illness of Principal Mortgagor/Family Member    Demand Letter: N/A

   3 Marital Difficulties/Divorce    FTF (NM only): _____

   4 Curtailment of Income    Last Inspection: 06/09/2020

   5 Excessive Obligations

   6 Property Problem    Good X Fair_____ Poor_____

   7 Inability To Rent/Sell Property    Vacant_____ Owner x Tenant_____ UTV_____

   8 Military Service

   9 Unemployed Date _____    Last Lexis Nexis: None

X 10 Other (Explain) No Contact.

Property Type: SF (MFH Taxed as Real Estate?): _____

HOA: Yes    Last Call: 06/25/2020    Next Call: 07/01/2020

Collector Arrangement (Include Starting date - Ending date, Amounts, Terms, Etc.)

Account was recently transfered from GWB HFS to WS GWB effective July payment.

Collector Approved: Leticia(Lettie)Aguilar    Date: 06/29/2020

Manager Comments: _____

[✓] Ready to Scan    [ ] Needs Further Review See Comments

Home Retention Manager Approved: AB    Date: 7/1/20

### Foreclosure Referral

Approved: _____    Date: _____

Approved: _____    Date: _____

Approved: _____    Date: _____

WMC 11/10/2016

GOLDWATER_000533

PO Box 1440, Claremont, NH 03743
Phone: (603) 543-1000
Fax: (603) 543-1818

**NATIONAL FIELD NFR**
**REPRESENTATIVES**

**Property Information** ▼

Loan #:      909216931        Artur Elizarov
Loan Type:   FNMA             291 W. OVerlook Road
                              Palm Springs, CA 92264

Photos for Inspection                                        Inspected on: 02/16/2021

View:                                                        Page
All Photos [3 photos]                    Page:      1    of 1   Size:
                                                             12

|◄  ◄  ►  ►|          Viewing 1 - 3 of 3 photos          Back to originating page



Property Condition (#1)        Property Condition (#2)

Property Condition (#3)

|◄  ◄  ►|          Viewing 1 - 3 of 3 photos          Back to originating page

Updated: 02/18/2021 - 10:10 am                    ©2010-2021 National Field Representatives.  All Rights Reserved.

GOLDWATER_000536

Case 5:21-cv-00616-JWH-SP   Document 107-28   Filed 07/01/22   Page 5 of 216   Page ID #:3001



PO Box 1440, Claremont, NH 03743
Phone: (603) 543-1000
Fax: (603) 543-1818

## Inspection Results

| West Star Mortgage Co | | ATTN: | Leticia Aguilar |
| --- | --- | --- | --- |
| Artur Elizarov | | Loan #: | 909216931 |
| 291 W. OVerlook Road | | Loan Type: | FNMA |
| Palm Springs, CA 92264 | | Insp Type: | Form30 |
| | | Insp Chg: | |

| Occupancy Information | | Property Condition | |
| --- | --- | --- | --- |
| Occ: | Occupied | Condition: | GOOD |
| For Sale: | NO | Prop Type: | SING FAM |
| | | Construction: | STUCCO |
| | | Neighborhood: | Stable |
| Occupied By: | UNKNOWN | House Color: | Gray\Gray |
| How Verified: | VISUAL | # of Stories: | 1 STORY |
| | | Est Value: | 250K |

| Vacancy Information | | Damage / Hazards | |
| --- | --- | --- | --- |
| Elect On: | Y | *Checked only if noted* | |
| Gas On: | Y | | |
| Water On: | Y | Storm: | Neglect: |
| Pers. Prop: | Y | Flood: | Vandalism: |
| Pool On-Site: | U | Fire: | Roof Leak: |
| Pool Secure: | | Freeze: | Env Haz: |
| Prop Secure: | | | Other: |
| Ht of Grass: | 0 | FTV Date: | |

| Interview Information | | | |
| --- | --- | --- | --- |
| Interviewee: | | Tenant Name: | |
| Home Phone: | | Rent Paid To: | |
| Work Phone: | | Tenant Phone: | |
| Reason Del: | | Oblig Type: | |
| Attitude: | | Oblig Name: | |
| Income Type: | | Oblig Bal: | |
| Income Amt: | | Oblig Pmt: | |

| Inspection Information | | | |
| --- | --- | --- | --- |
| Date Insp: | 2/16/2021 | Comments: | |
| Returned: | | Property appears occupied. Exterior lights on | |
| Reps Initials: | RIT-CA | | |
| | | Recommend: | |
| Wint'd: | | | |
| Sec'd: | | | |

GOLDWATER_000537

## Fannie Mae - Property Inspection Report

### L. Loan Information

| Name of mortgagor:<br>Artur Elizarov | Servicer:<br>West Star Mortgage Co | Loan Number: | Servicer Loan number:<br>909216931 |
|---|---|---|---|
| Property Address:<br>291 W. OVerlook Road Palm Springs CA | Property Type:<br>SING FAM | KeyCode: | Lock Box: |
| If mfd home is it permanently attached to the foundation? n/a | | Reason for Inspection: Collections | |

### I. Inspector Information

| Date of inspection: 2/16/2021 | InspectedBy: RIT-CA | |
|---|---|---|
| Inspection company: National Field Reps, Inc | | Inspector signature: |

### A. Access

| Were you able to complete interior Inspection? **No** If no, indicate why: **Interior inspection not ordered** | Did lockbox combo or key code provided work? **n/a** Corrected key code: | If an inspection wasn't able to be completed, why? |
|---|---|---|

### 1. General Information

| 1.1 What is the occupancy status? **Occupied**<br><br>1.2 If occupied, property occupied by: **UNKNOWN**<br><br>1.3 Are there violations posted? **No**<br><br>1.4 If Yes, violations for: | 1.5 Violations Dated:<br><br>1.6 Has the issue cited on the violation been resolved? **n/a**<br><br>1.7 Present at property:<br><br>1.8 Are there any potential hazards at the property that could damage an adjoining property? **No** | 1.9 Is the exterior maintained by an HOA? **No**<br><br>1.10 Is the property connected to sewer or septic? |
|---|---|---|

### 2. Main structure

| 2.1 How many doors are boarded? **0**<br><br>2.2 How many exterior doors are broken? **0**<br><br>2.3 How many exterior doors need to be secured? **0**<br><br>2.4 How many windows are boarded? **0**<br><br>2.5 How many windows are broken? **0**<br><br>2.6 Are any shutters in need of repair? **No** | 2.7 Are there damages to the foundation? **No**<br><br>2.8 Do any decks and/or porches appear to be unacceptable/unsafe? **No**<br><br>2.9 Any handrails damaged or missing from steps? **No**<br><br>2.10 Any damaged gutters or disconnected gutters? **No**<br><br>2.11 Any damaged/disconnected downspouts or extensions? **No** | 2.12 Are there any drainage concerns? **Unk**<br><br>2.13 Do any crawl spaces / vents / lines need to be secured or covered?<br><br>2.14 Are any drain pipes missing or damaged? **Unk**<br><br>2.15 Is there a tarp on the roof of the main dwelling? **No**<br><br>2.16 Is there any obvious roof damage on the main dwelling? **No** |
|---|---|---|

### 3. Detached structures

| 3.1 The following are tarped:<br><br>3.2 The following are boarded:<br><br>3.3 The following are unsecure: | 3.4 The following have exterior surfaces that need repair:<br><br>3.5 The following require roof repairs: | 3.6 The following are in disrepair:<br><br>3.7 The following have graffiti: |
|---|---|---|

Page: 1 of 3

GOLDWATER_000538

### 4. Pool

| | | |
|---|---|---|
| 4.1 Is there a pool present?<br>    [X] Unknown<br><br>Is there a Hot tub / Spa present?<br>    [X] None | 4.2 Does the pool / Hot Tub / Spa need to be treated?<br><br>4.3 Does the pool / hot tub need to be properly secured by a fence / gate / lanai? | 4.4 Is the fence / gate / lanai surrounding the pool damaged?<br><br>4.5 Is pool / hot tub equipment missing?<br>    Unknown |

### 5. Yard

| | | |
|---|---|---|
| 5.1 Is there debris in the yard?    **No**<br><br>5.2 Is there personal property in the yard?    **Yes**<br><br>5.3 Does fencing around property need repair?    **No** | 5.4 Does the lawn need maintenance?    **No**<br><br>5.5 Does the property have overgrown weeds or invasive species?    **No** | 5.6 Do trees and bushes need to be trimmed back from the structure?    **No**<br><br>5.7 Does the lawn need edging?    **No**<br><br>5.8 Are all paved areas free of snow and ice? |

### 6. Utilities

| | | |
|---|---|---|
| 6.1 Which utility meters are present?<br>    [X] Electric [X] Water [X] Gas<br><br>6.2 Which utilities are on?<br>    [X] Electric [X] Water [X] Gas | 6.3 Are there any shared utilities?    **No**<br><br>6.4 Does the water need to be turned off at the curb?    **No** | |

### 7. General Exterior

| | | |
|---|---|---|
| 7.1 Are there any environmental concerns?    **No**<br><br>7.2 Is there a leaking oil tank on the property?    **No** | 7.3 Is there an above ground propane tank on the property?    **No**<br><br>7.4 Is there graffiti on the property?    **No** | 7.5 Are there required exterior repairs?    **No** |

7.6 Comments
    Property appears occupied. Exterior lights on

### 8. Kitchen / Bathroom / Utility

| | | |
|---|---|---|
| 8.1 Is built in microwave present?<br><br>8.2 Is cook top present?<br><br>8.3 Is Dishwasher present?<br><br>8.4 Is Garbage Disposal present?<br><br>8.5 Is Range present?<br><br>8.6 Is Refrigerator present? | 8.7 Is ventilation hood present?<br><br>8.8 Is clothes washer/dryer present?<br><br>8.9 Is any Other appliance present?<br><br>8.10 Are any GFCI outlets missing in wet areas?<br><br>8.11 Are any HVAC components missing (inside or out)? | 8.12 Are any toilets missing?<br><br>8.13 Are any tubs/showers missing?<br><br>8.14 Are any plumbing fixtures or pipe missing?<br><br>8.15 Are any water heaters missing?<br><br>8.16 Is the electrical panel damaged or missing? |

### 9. Basement

| | | |
|---|---|---|
| 9.1 Is a crock present for a sump pump?<br><br>9.2 Is the sump pump | 9.3 Sump pump not operational because:<br><br>9.4 Does the basement appear to have water | |

| operational? | **n/a** | penetration? | |
|---|---|---|---|

Page 2 of 3

GOLDWATER_000540

NFROnline.com - Form 30 Detail                                                                    Page 5 of 5
Case 5:21-cv-00616-JWH-SP   Document 207-28 Filed 00/04/022 Page 9 of 26  Page ID
#:2005

| 10. General Interior | | |
|---|---|---|
| 10.1 Is there Personal Property in the house?    **Yes** | 10.4 If discoloration is present does it appear to be causing further damage? | 10.9 Does the water need to be turned off at the main interior? |
| 10.2 Are cover plates missing or wires uncapped? | 10.5 Are there holes present? | 10.10 Is there raw or perishable garbage present? |
| 10.3 Do the floors have holes or trip hazards that might cause personal injury? | 10.6 Does the attic appear to have damage? | 10.11 Which detectors are present? |
| | 10.7 Does there appear to be a rodent/insect infestation? | 10.12 Which detectors are functioning properly? |
| | 10.8 Winterization status: | 10.13 Are there any required repairs? |

| 10.14 Comments - Interior | | |
|---|---|---|
| **11. General Condition** | | |
| 11.1 Are there signs of insurable damages? | 11.4 General condition of property  [X] C2 Very minor work needed to bring property up to good condition | |
| 11.2 How would you characterize the neighborhood?    **Stable** | | |
| 11.3 How does the property compare to neighborhood standards?    [X] At | | |

I represent and warrant that I have conducted a visual only inspection of this property and that, to the best of my knowledge and belief, the information contained in this report is accurate. I am not a licensed electrician, plumber, mold specialist, HVAC contractor or structural engineer.

Page 3 of 3

Overview | Send Message | Forward Item | 3 photos

Your response: [ Request Inspection | Request Work Order | No Work Needed | Decide Later ]

Updated: 02/18/2021 - 10:08 am                                    ©2010-2021 National Field Representatives.  All Rights Reserved.

GOLDWATER_000541



NATIONAL FIELD REPRESENTATIVES

PO Box 1440, Claremont, NH 03743
Phone: (603) 543-1000
Fax: (603) 543-1818

**Inspection** #909216931                                   **Inspected:** 8/10/2020



Property Condition - #1    Property Condition - #2    Property Condition - #3

Property Condition - #4

Thumbnails [ 1-4 ]  [back to originating page]

**Property Information**  ▲

| | | |
|---|---|---|
| Loan #: | 909216931 | Artur Elizarov |
| Loan Type: | FNMA | 291 W. OVerlook Road |
| Date FTV: | | Palm Springs, CA 92264 |
| Secured: | | |
| Winterized: | | Key Code: |
| | | **Lockbox:** |
| Conv Cond: | | |

Special Forms

Updated: 08/17/2020 - 10:36 pm                    ©2010-2020 National Field Representatives.  All Rights Reserved.

GOLDWATER_000542

https://custweb01a.nfronline.com/cgi-bin/nfrweb.dll/load?Print=true                    8/17/2020

Case 5:21-cv-00666-JWH-SP Document 103-22 Filed 08/26/22 Page 103 of 216 Page ID #:3063



| | PO Box 1440, Claremont, NH 03743 |
|---|---|
| | Phone: (603) 543-1000 |
| | Fax: (603) 543-1818 |

## Inspection Results

| | | | |
|---|---|---|---|
| **West Star Mortgage Co** | | **ATTN:** | Leticia Aguilar |
| Artur Elizarov | | **Loan #:** | 909216931 |
| 291 W. OVerlook Road | | **Loan Type:** | FNMA |
| Palm Springs, CA 92264 | | **Insp Type:** | Form30 |
| | | **Insp Chg:** | 30  5153784 |

## Occupancy Information / Property Condition

| | | | |
|---|---|---|---|
| **Occ:** | Occupied | **Condition:** | GOOD |
| **For Sale:** | NO | **Prop Type:** | SING FAM |
| | | **Construction:** | STUCCO |
| | | **Neighborhood:** | Stable |
| **Occupied By:** | UNKNOWN | **House Color:** | Gray\Gray |
| **How Verified:** | VISUAL | **# of Stories:** | 1 STORY |
| | | **Est Value:** | 250K |

## Vacancy Information / Damage / Hazards

| | | | |
|---|---|---|---|
| **Elect On:** | Y | *Checked only if noted* | |
| **Gas On:** | Y | | |
| **Water On:** | Y | **Storm:** | **Neglect:** |
| **Pers. Prop:** | Y | **Flood:** | **Vandalism:** |
| **Pool On-Site:** | U | **Fire:** | **Roof Leak:** |
| **Pool Secure:** | | **Freeze:** | **Env Haz:** |
| **Prop Secure:** | | | **Other:** |
| **Ht of Grass:** | 0 | **FTV Date:** | |

## Interview Information

| | | | |
|---|---|---|---|
| **Interviewee:** | | **Tenant Name:** | |
| **Home Phone:** | | **Rent Paid To:** | |
| **Work Phone:** | | **Tenant Phone:** | |
| **Reason Del:** | | **Oblig Type:** | |
| **Attitude:** | | **Oblig Name:** | |
| **Income Type:** | | **Oblig Bal:** | |
| **Income Amt:** | | **Oblig Pmt:** | |

## Inspection Information

| | | |
|---|---|---|
| **Date Insp:** | 8/10/2020 | **Comments:** |
| **Returned:** | | Vehicle onsite. No visible house number |
| **Reps Initials:** | RIT-CA | |
| | | **Recommend:** |
| **Wint'd:** | | |
| | | |
| **Sec'd:** | | |

GOLDWATER_000543

## Fannie Mae - Property Inspection Report

### L. Loan Information

| Name of mortgagor: Artur Elizarov | Servicer: West Star Mortgage Co | Loan Number: | Servicer Loan number: 909216931 |
|---|---|---|---|
| Property Address: 291 W. OVerlook Road Palm Springs CA | Property Type: SING FAM | KeyCode: | Lock Box: |
| If mfd home is it permanently attached to the foundation? n/a | | Reason for Inspection: Collections | |

### I. Inspector Information

| Date of inspection: 8/10/2020 | InspectedBy: RIT-CA | |
|---|---|---|
| Inspection company: National Field Reps, Inc | | Inspector signature: |

### A. Access

| Were you able to complete interior Inspection? **No** If no, indicate why: **Interior inspection not ordered** | Did lockbox combo or key code provided work? **n/a** Corrected key code: | If an inspection wasn't able to be completed, why? |
|---|---|---|

### 1. General Information

| 1.1 What is the occupancy status? **Occupied** 1.2 If occupied, property occupied by: **UNKNOWN** 1.3 Are there violations posted? **No** 1.4 If Yes, violations for: | 1.5 Violations Dated: 1.6 Has the issue cited on the violation been resolved? **n/a** 1.7 Present at property: 1.8 Are there any potential hazards at the property that could damage an adjoining property? **No** | 1.9 Is the exterior maintained by an HOA? **No** 1.10 Is the property connected to sewer or septic? |
|---|---|---|

### 2. Main structure

| 2.1 How many doors are boarded? **0** 2.2 How many exterior doors are broken? **0** 2.3 How many exterior doors need to be secured? **0** 2.4 How many windows are boarded? **0** 2.5 How many windows are broken? **0** 2.6 Are any shutters in need of repair? **No** | 2.7 Are there damages to the foundation? **No** 2.8 Do any decks and/or porches appear to be unacceptable/unsafe? **No** 2.9 Any handrails damaged or missing from steps? **No** 2.10 Any damaged gutters or disconnected gutters? **No** 2.11 Any damaged/disconnected downspouts or extensions? **No** | 2.12 Are there any drainage concerns? **Unk** 2.13 Do any crawl spaces / vents / lines need to be secured or covered? 2.14 Are any drain pipes missing or damaged? **Unk** 2.15 Is there a tarp on the roof of the main dwelling? **No** 2.16 Is there any obvious roof damage on the main dwelling? **No** |
|---|---|---|

### 3. Detached structures

| 3.1 The following are tarped: 3.2 The following are boarded: 3.3 The following are unsecure: | 3.4 The following have exterior surfaces that need repair: 3.5 The following require roof repairs: | 3.6 The following are in disrepair: 3.7 The following have graffiti: |
|---|---|---|

GOLDWATER_000544

| 4. Pool | | |
|---|---|---|
| 4.1 Is there a pool present? [X] Unknown  Is there a Hot tub / Spa present? [X] None | 4.2 Does the pool / Hot Tub / Spa need to be treated?  4.3 Does the pool / hot tub need to be properly secured by a fence / gate / lanai? | 4.4 Is the fence / gate / lanai surrounding the pool damaged?  4.5 Is pool / hot tub equipment missing? Unknown |

| 5. Yard | | |
|---|---|---|
| 5.1 Is there debris in the yard?    No  5.2 Is there personal property in the yard?    Yes  5.3 Does fencing around property need repair?    No | 5.4 Does the lawn need maintenance?    No  5.5 Does the property have overgrown weeds or invasive species?    No | 5.6 Do trees and bushes need to be trimmed back from the structure?    No  5.7 Does the lawn need edging?    No  5.8 Are all paved areas free of snow and ice? |

| 6. Utilities | | |
|---|---|---|
| 6.1 Which utility meters are present? [X] Electric [X] Water [X] Gas  6.2 Which utilities are on? [X] Electric [X] Water [X] Gas | 6.3 Are there any shared utilities?    No  6.4 Does the water need to be turned off at the curb?    No | |

| 7. General Exterior | | |
|---|---|---|
| 7.1 Are there any environmental concerns?    No  7.2 Is there a leaking oil tank on the property?    No | 7.3 Is there an above ground propane tank on the property?    No  7.4 Is there graffiti on the property?    No | 7.5 Are there required exterior repairs?    No |

| 7.6 Comments |
|---|
|     Vehicle onsite. No visible house number |

| 8. Kitchen / Bathroom / Utility | | |
|---|---|---|
| 8.1 Is built in microwave present?  8.2 Is cook top present?  8.3 Is Dishwasher present?  8.4 Is Garbage Disposal present?  8.5 Is Range present?  8.6 Is Refrigerator present? | 8.7 Is ventilation hood present?  8.8 Is clothes washer/dryer present?  8.9 Is any Other appliance present?  8.10 Are any GFCI outlets missing in wet areas?  8.11 Are any HVAC components missing (inside or out)? | 8.12 Are any toilets missing?  8.13 Are any tubs/showers missing?  8.14 Are any plumbing fixtures or pipe missing?  8.15 Are any water heaters missing?  8.16 Is the electrical panel damaged or missing? |

| 9. Basement | | |
|---|---|---|
| 9.1 Is a crock present for a sump pump?  9.2 Is the sump pump | 9.3 Sump pump not operational because:  9.4 Does the basement appear to have water | |

GOLDWATER_000545

https://custweb01a.nfronline.com/cgi-bin/nfrweb.dll/load?Print=true                                8/17/2020

| operational? | **n/a** | penetration? | |
|---|---|---|---|

Page 2 of 3

GOLDWATER_000546

Case 5:21-cv-00616-JWH-SP   Document 207-28   Filed 10/04/22   Page 5 of 226   Page ID #:3051

| 10. General Interior | | |
|---|---|---|
| 10.1 Is there Personal Property in the house?   **Yes** | 10.4 If discoloration is present does it appear to be causing further damage? | 10.9 Does the water need to be turned off at the main interior? |
| 10.2 Are cover plates missing or wires uncapped? | 10.5 Are there holes present? | 10.10 Is there raw or perishable garbage present? |
| 10.3 Do the floors have holes or trip hazards that might cause personal injury? | 10.6 Does the attic appear to have damage? | 10.11 Which detectors are present? |
| | 10.7 Does there appear to be a rodent/insect infestation? | 10.12 Which detectors are functioning properly? |
| | 10.8 Winterization status: | 10.13 Are there any required repairs? |

| 10.14 Comments - Interior |
|---|

| 11. General Condition | | |
|---|---|---|
| 11.1 Are there signs of insurable damages? | 11.4 General condition of property  [X] C2 Very minor work needed to bring property up to good condition | |
| 11.2 How would you characterize the neighborhood?   **Stable** | | |
| 11.3 How does the property compare to neighborhood standards?     [X] At | | |

I represent and warrant that I have conducted a visual only inspection of this property and that, to the best of my knowledge and belief, the information contained in this report is accurate. I am not a licensed electrician, plumber, mold specialist, HVAC contractor or structural engineer.

Page 3 of 3

Overview | Send Message | Forward Item | 4 photos

Your response: [ Request Inspection | Request Work Order | No Work Needed | Decide Later ]

Updated: 08/17/2020 - 10:41 pm                    ©2010-2020 National Field Representatives. All Rights Reserved.

GOLDWATER_000547

**NATIONAL FIELD NFR REPRESENTATIVES**

PO Box 1440, Claremont, NH 03743
Phone: (603) 543-1000
Fax: (603) 543-1818

| Inspection Results | | |
|---|---|---|
| **West Star Mortgage Co** | **ATTN:** | Leticia Aguilar |
| Artur Elizarov | **Loan #:** | 909216931 |
| 291 W. OVerlook Road | **Loan Type:** | FNMA |
| Palm Springs, CA 92264 | **Insp Type:** | Form30 |
| | **Insp Chg:** | |

| Occupancy Information | | Property Condition | |
|---|---|---|---|
| **Occ:** | Occupied | **Condition:** | GOOD |
| **For Sale:** | NO | **Prop Type:** | SING FAM |
| | | **Construction:** | STUCCO |
| | | **Neighborhood:** | Stable |
| **Occupied By:** | UNKNOWN | **House Color:** | Gray\Gray |
| **How Verified:** | VISUAL | **# of Stories:** | 1 STORY |
| | | **Est Value:** | 250K |

| Vacancy Information | | Damage / Hazards | |
|---|---|---|---|
| **Elect On:** | Y | *Checked only if noted* | |
| **Gas On:** | Y | | |
| **Water On:** | Y | **Storm:** | **Neglect:** |
| **Pers. Prop:** | Y | **Flood:** | **Vandalism:** |
| **Pool On-Site:** | U | **Fire:** | **Roof Leak:** |
| **Pool Secure:** | | **Freeze:** | **Env Haz:** |
| **Prop Secure:** | | | **Other:** |
| **Ht of Grass:** | 0 | **FTV Date:** | |

| Interview Information | | |
|---|---|---|
| **Interviewee:** | **Tenant Name:** | |
| **Home Phone:** | **Rent Paid To:** | |
| **Work Phone:** | **Tenant Phone:** | |
| **Reason Del:** | **Oblig Type:** | |
| **Attitude:** | **Oblig Name:** | |
| **Income Type:** | **Oblig Bal:** | |
| **Income Amt:** | **Oblig Pmt:** | |

| Inspection Information | |
|---|---|
| **Date Insp:** 7/14/2020 | **Comments:** |
| **Returned:** | Personals onsite. |
| **Reps Initials:** RIT-CA | |
| | **Recommend:** |
| **Wint'd:** | |
| | |
| **Sec'd:** | |

GOLDWATER_000548

https://custweb01a.nfronline.com/cgi-bin/nfrweb.dll/load?Print=true                7/14/2020

| Fannie Mae - Property Inspection Report | | | | |
|---|---|---|---|---|
| **L. Loan Information** | | | | |
| Name of mortgagor:<br>Artur Elizarov | Servicer:<br>West Star Mortgage Co | | Loan Number: | Servicer Loan number:<br>909216931 |
| Property Address:<br>291 W. OVerlook Road Palm Springs CA | Property Type:<br>SING FAM | | KeyCode: | Lock Box: |
| If mfd home is it permanently attached to the foundation? n/a | | | Reason for Inspection: Collections | |
| **I. Inspector Information** | | | | |
| Date of inspection: 7/14/2020 | | InspectedBy: RIT-CA | | |
| Inspection company: National Field Reps, Inc | | | Inspector signature: | |
| **A. Access** | | | | |

| Were you able to complete interior Inspection? **No**<br>If no, indicate why: **Interior inspection not ordered** | Did lockbox combo or key code provided work? **n/a**<br>Corrected key code: | If an inspection wasn't able to be completed, why? |
|---|---|---|

| **1. General Information** | | |
|---|---|---|
| 1.1 What is the occupancy status? **Occupied**<br><br>1.2 If occupied, property occupied by: **UNKNOWN**<br><br>1.3 Are there violations posted? **No**<br><br>1.4 If Yes, violations for: | 1.5 Violations Dated:<br><br>1.6 Has the issue cited on the violation been resolved? **n/a**<br><br>1.7 Present at property:<br><br>1.8 Are there any potential hazards at the property that could damage an adjoining property? **No** | 1.9 Is the exterior maintained by an HOA? **No**<br><br>1.10 Is the property connected to sewer or septic? |

| **2. Main structure** | | |
|---|---|---|
| 2.1 How many doors are boarded? **0**<br><br>2.2 How many exterior doors are broken? **0**<br><br>2.3 How many exterior doors need to be secured? **0**<br><br>2.4 How many windows are boarded? **0**<br><br>2.5 How many windows are broken? **0**<br><br>2.6 Are any shutters in need of repair? **No** | 2.7 Are there damages to the foundation? **No**<br><br>2.8 Do any decks and/or porches appear to be unacceptable/unsafe? **No**<br><br>2.9 Any handrails damaged or missing from steps? **No**<br><br>2.10 Any damaged gutters or disconnected gutters? **No**<br><br>2.11 Any damaged/disconnected downspouts or extensions? **No** | 2.12 Are there any drainage concerns? **Unk**<br><br>2.13 Do any crawl spaces / vents / lines need to be secured or covered?<br><br>2.14 Are any drain pipes missing or damaged? **Unk**<br><br>2.15 Is there a tarp on the roof of the main dwelling? **No**<br><br>2.16 Is there any obvious roof damage on the main dwelling? **No** |

| **3. Detached structures** | | |
|---|---|---|
| 3.1 The following are tarped:<br><br>3.2 The following are boarded:<br><br>3.3 The following are unsecure: | 3.4 The following have exterior surfaces that need repair:<br><br>3.5 The following require roof repairs: | 3.6 The following are in disrepair:<br><br>3.7 The following have graffiti: |

Page: 1 of 3

GOLDWATER_000549

Case 5:21-cv-00616-JWH-SP   Document 207-28   Filed 07/04/22   Page 105 of 216   Page ID #:2860

| 4. Pool | | |
|---|---|---|
| 4.1 Is there a pool present?<br>[X] Unknown<br><br>Is there a Hot tub / Spa present?<br>[X] None | 4.2 Does the pool / Hot Tub / Spa need to be treated?<br><br>4.3 Does the pool / hot tub need to be properly secured by a fence / gate / lanai? | 4.4 Is the fence / gate / lanai surrounding the pool damaged?<br><br>4.5 Is pool / hot tub equipment missing?<br>Unknown |

| 5. Yard | | |
|---|---|---|
| 5.1 Is there debris in the yard?     **No**<br><br>5.2 Is there personal property in the yard?     **Yes**<br><br>5.3 Does fencing around property need repair?     **No** | 5.4 Does the lawn need maintenance?     **No**<br><br>5.5 Does the property have overgrown weeds or invasive species?     **No** | 5.6 Do trees and bushes need to be trimmed back from the structure?     **No**<br><br>5.7 Does the lawn need edging?     **No**<br><br>5.8 Are all paved areas free of snow and ice? |

| 6. Utilities | | |
|---|---|---|
| 6.1 Which utility meters are present?<br>[X] Electric [X] Water [X] Gas<br><br>6.2 Which utilities are on?<br>[X] Electric [X] Water [X] Gas | 6.3 Are there any shared utilities?     **No**<br><br>6.4 Does the water need to be turned off at the curb?     **No** | |

| 7. General Exterior | | |
|---|---|---|
| 7.1 Are there any environmental concerns?     **No**<br><br>7.2 Is there a leaking oil tank on the property?     **No** | 7.3 Is there an above ground propane tank on the property?     **No**<br><br>7.4 Is there graffiti on the property?     **No** | 7.5 Are there required exterior repairs?     **No** |

| 7.6 Comments |
|---|
| Personals onsite. |

| 8. Kitchen / Bathroom / Utility | | |
|---|---|---|
| 8.1 Is built in microwave present?<br><br>8.2 Is cook top present?<br><br>8.3 Is Dishwasher present?<br><br>8.4 Is Garbage Disposal present?<br><br>8.5 Is Range present?<br><br>8.6 Is Refrigerator present? | 8.7 Is ventilation hood present?<br><br>8.8 Is clothes washer/dryer present?<br><br>8.9 Is any Other appliance present?<br><br>8.10 Are any GFCI outlets missing in wet areas?<br><br>8.11 Are any HVAC components missing (inside or out)? | 8.12 Are any toilets missing?<br><br>8.13 Are any tubs/showers missing?<br><br>8.14 Are any plumbing fixtures or pipe missing?<br><br>8.15 Are any water heaters missing?<br><br>8.16 Is the electrical panel damaged or missing? |

| 9. Basement | | |
|---|---|---|
| 9.1 Is a crock present for a sump pump?<br><br>9.2 Is the sump pump | 9.3 Sump pump not operational because:<br><br>9.4 Does the basement appear to have water | |

GOLDWATER_000550

| operational? | **n/a** | penetration? | |
|---|---|---|---|

Page 2 of 3

GOLDWATER_000551

| 10. General Interior | | |
|---|---|---|
| 10.1 Is there Personal Property in the house?   **Yes**<br><br>10.2 Are cover plates missing or wires uncapped?<br><br>10.3 Do the floors have holes or trip hazards that might cause personal injury? | 10.4 If discoloration is present does it appear to be causing further damage?<br><br>10.5 Are there holes present?<br><br>10.6 Does the attic appear to have damage?<br><br>10.7 Does there appear to be a rodent/insect infestation?<br><br>10.8 Winterization status: | 10.9 Does the water need to be turned off at the main interior?<br><br>10.10 Is there raw or perishable garbage present?<br><br>10.11 Which detectors are present?<br><br>10.12 Which detectors are functioning properly?<br><br>10.13 Are there any required repairs? |

| 10.14 Comments - Interior | | |
|---|---|---|
| **11. General Condition** | | |
| 11.1 Are there signs of insurable damages?<br><br>11.2 How would you characterize the neighborhood?   **Stable**<br><br>11.3 How does the property compare to neighborhood standards?<br>    [X] At | 11.4 General condition of property<br><br>[X] C2 Very minor work needed to bring property up to good condition | |

I represent and warrant that I have conducted a visual only inspection of this property and that, to the best of my knowledge and belief, the information contained in this report is accurate. I am not a licensed electrician, plumber, mold specialist, HVAC contractor or structural engineer.

Page 3 of 3

Overview | Send Message | Forward Item | 3 photos

Your response: [ Request Inspection | Request Work Order | No Work Needed | Decide Later ]

GOLDWATER_000552

NATIONAL FIELD **NFR** REPRESENTATIVES

PO Box 1440, Claremont, NH 03743
Phone: (603) 543-1000
Fax: (603) 543-1818

**Inspection** #909216931                    **Inspected:** 7/14/2020



Property Condition - #1      Property Condition - #2      Property Condition - #3

Thumbnails [ 1-3 ]  [back to originating page]

**Property Information**

| | |
|---|---|
| Loan #: | 909216931 |
| Loan Type: | FNMA  Artur Elizarov |
| | 291 W. OVerlook Road |
| Date FTV: | Palm Springs, CA 92264 |
| Secured: | |
| | Key Code: |
| **Winterized:** | **Lockbox:** |
| | |
| Conv Cond: | |

Special Forms

©2010-2020 National Field Representatives.  All Rights Reserved.

GOLDWATER_000553

PO Box 1440, Claremont, NH 03743
Phone: (603) 543-1000
Fax: (603) 543-1818

**NATIONAL FIELD NFR REPRESENTATIVES**

## Inspection Results

| | | |
|---|---|---|
| **West Star Mortgage Co** | **ATTN:** | Leticia Aguilar |
| Artur Elizarov | **Loan #:** | 909216931 |
| 291 W. OVerlook Road | **Loan Type:** | FNMA |
| Palm Springs, CA 92264 | **Insp Type:** | Form30 |
| | **Insp Chg:** | |

## Occupancy Information · Property Condition

| | | | |
|---|---|---|---|
| **Occ:** | Occupied | **Condition:** | GOOD |
| **For Sale:** | NO | **Prop Type:** | SING FAM |
| | | **Construction:** | STUCCO |
| | | **Neighborhood:** | Stable |
| **Occupied By:** | UNKNOWN | **House Color:** | Gray\Gray |
| **How Verified:** | VISUAL | **# of Stories:** | 1 STORY |
| | | **Est Value:** | 250K |

## Vacancy Information · Damage / Hazards

| | | | |
|---|---|---|---|
| **Elect On:** | Y | *Checked only if noted* | |
| **Gas On:** | Y | | |
| **Water On:** | Y | **Storm:** | **Neglect:** |
| **Pers. Prop:** | Y | **Flood:** | **Vandalism:** |
| **Pool On-Site:** | U | **Fire:** | **Roof Leak:** |
| **Pool Secure:** | | **Freeze:** | **Env Haz:** |
| **Prop Secure:** | | | **Other:** |
| **Ht of Grass:** | 0 | **FTV Date:** | |

## Interview Information

| | | |
|---|---|---|
| **Interviewee:** | **Tenant Name:** | |
| **Home Phone:** | **Rent Paid To:** | |
| **Work Phone:** | **Tenant Phone:** | |
| **Reason Del:** | **Oblig Type:** | |
| **Attitude:** | **Oblig Name:** | |
| **Income Type:** | **Oblig Bal:** | |
| **Income Amt:** | **Oblig Pmt:** | |

## Inspection Information

| | | |
|---|---|---|
| **Date Insp:** | 7/14/2020 | **Comments:** |
| **Returned:** | | Personals onsite. |
| **Reps Initials:** | RIT-CA | |
| | | **Recommend:** |
| **Wint'd:** | | |
| **Sec'd:** | | |

GOLDWATER_000554

| Fannie Mae - Property Inspection Report | | | | |
|---|---|---|---|---|
| **L. Loan Information** | | | | |
| Name of mortgagor:<br>Artur Elizarov | Servicer:<br>West Star Mortgage Co | | Loan Number: | Servicer Loan number:<br>909216931 |
| Property Address:<br>291 W. OVerlook Road Palm Springs CA | Property Type:<br>SING FAM | | KeyCode: | Lock Box: |
| If mfd home is it permanently attached to the foundation? n/a | | | Reason for Inspection: Collections | |
| **I. Inspector Information** | | | | |
| Date of inspection: 7/14/2020 | InspectedBy: RIT-CA | | | |
| Inspection company: National Field Reps, Inc | | Inspector signature: | | |
| **A. Access** | | | | |
| Were you able to complete interior Inspection? **No**<br>If no, indicate why: **Interior inspection not ordered** | Did lockbox combo or key code provided work? **n/a**<br>Corrected key code: | | If an inspection wasn't able to be completed, why? | |

| **1. General Information** | | |
|---|---|---|
| 1.1 What is the occupancy status? **Occupied**<br><br>1.2 If occupied, property occupied by:  **UNKNOWN**<br><br>1.3 Are there violations posted?  **No**<br><br>1.4 If Yes, violations for: | 1.5 Violations Dated:<br><br>1.6 Has the issue cited on the violation been resolved?  **n/a**<br><br>1.7 Present at property:<br><br>1.8 Are there any potential hazards at the property that could damage an adjoining property?  **No** | 1.9 Is the exterior maintained by an HOA?  **No**<br><br>1.10 Is the property connected to sewer or septic? |

| **2. Main structure** | | |
|---|---|---|
| 2.1 How many doors are boarded?  **0**<br><br>2.2 How many exterior doors are broken?  **0**<br><br>2.3 How many exterior doors need to be secured?  **0**<br><br>2.4 How many windows are boarded?  **0**<br><br>2.5 How many windows are broken?  **0**<br><br>2.6 Are any shutters in need of repair?  **No** | 2.7 Are there damages to the foundation?  **No**<br><br>2.8 Do any decks and/or porches appear to be unacceptable/unsafe?  **No**<br><br>2.9 Any handrails damaged or missing from steps?  **No**<br><br>2.10 Any damaged gutters or disconnected gutters?  **No**<br><br>2.11 Any damaged/disconnected downspouts or extensions?  **No** | 2.12 Are there any drainage concerns?  **Unk**<br><br>2.13 Do any crawl spaces / vents / lines need to be secured or covered?<br><br>2.14 Are any drain pipes missing or damaged?  **Unk**<br><br>2.15 Is there a tarp on the roof of the main dwelling?  **No**<br><br>2.16 Is there any obvious roof damage on the main dwelling?  **No** |

| **3. Detached structures** | | |
|---|---|---|
| 3.1 The following are tarped:<br><br>3.2 The following are boarded:<br><br>3.3 The following are unsecure: | 3.4 The following have exterior surfaces that need repair:<br><br>3.5 The following require roof repairs: | 3.6 The following are in disrepair:<br><br>3.7 The following have graffiti: |

GOLDWATER_000555

| 4. Pool | | |
|---|---|---|
| 4.1 Is there a pool present? [X] Unknown  Is there a Hot tub / Spa present? [X] None | 4.2 Does the pool / Hot Tub / Spa need to be treated?  4.3 Does the pool / hot tub need to be properly secured by a fence / gate / lanai? | 4.4 Is the fence / gate / lanai surrounding the pool damaged?  4.5 Is pool / hot tub equipment missing? Unknown |

| 5. Yard | | |
|---|---|---|
| 5.1 Is there debris in the yard?    No  5.2 Is there personal property in the yard?    **Yes**  5.3 Does fencing around property need repair?    **No** | 5.4 Does the lawn need maintenance?    **No**  5.5 Does the property have overgrown weeds or invasive species?    **No** | 5.6 Do trees and bushes need to be trimmed back from the structure?    **No**  5.7 Does the lawn need edging?    **No**  5.8 Are all paved areas free of snow and ice? |

| 6. Utilities | | |
|---|---|---|
| 6.1 Which utility meters are present? [X] Electric [X] Water [X] Gas  6.2 Which utilities are on? [X] Electric [X] Water [X] Gas | 6.3 Are there any shared utilities?    **No**  6.4 Does the water need to be turned off at the curb?    **No** | |

| 7. General Exterior | | |
|---|---|---|
| 7.1 Are there any environmental concerns?    **No**  7.2 Is there a leaking oil tank on the property?    **No** | 7.3 Is there an above ground propane tank on the property?    **No**  7.4 Is there graffiti on the property?    **No** | 7.5 Are there required exterior repairs?    **No** |

| 7.6 Comments |
|---|
| Personals onsite. |

| 8. Kitchen / Bathroom / Utility | | |
|---|---|---|
| 8.1 Is built in microwave present?  8.2 Is cook top present?  8.3 Is Dishwasher present?  8.4 Is Garbage Disposal present?  8.5 Is Range present?  8.6 Is Refrigerator present? | 8.7 Is ventilation hood present?  8.8 Is clothes washer/dryer present?  8.9 Is any Other appliance present?  8.10 Are any GFCI outlets missing in wet areas?  8.11 Are any HVAC components missing (inside or out)? | 8.12 Are any toilets missing?  8.13 Are any tubs/showers missing?  8.14 Are any plumbing fixtures or pipe missing?  8.15 Are any water heaters missing?  8.16 Is the electrical panel damaged or missing? |

| 9. Basement | | |
|---|---|---|
| 9.1 Is a crock present for a sump pump?  9.2 Is the sump pump | 9.3 Sump pump not operational because:  9.4 Does the basement appear to have water | |

GOLDWATER_000556

| operational? | **n/a** | penetration? | |
|---|---|---|---|

Page 2 of 3

GOLDWATER_000557

**115**

| 10. General Interior | | |
|---|---|---|
| 10.1 Is there Personal Property in the house?   **Yes** | 10.4 If discoloration is present does it appear to be causing further damage? | 10.9 Does the water need to be turned off at the main interior? |
| 10.2 Are cover plates missing or wires uncapped? | 10.5 Are there holes present? | 10.10 Is there raw or perishable garbage present? |
| 10.3 Do the floors have holes or trip hazards that might cause personal injury? | 10.6 Does the attic appear to have damage? | 10.11 Which detectors are present? |
| | 10.7 Does there appear to be a rodent/insect infestation? | 10.12 Which detectors are functioning properly? |
| | 10.8 Winterization status: | 10.13 Are there any required repairs? |

| 10.14 Comments - Interior | | |
|---|---|---|
| **11. General Condition** | | |
| 11.1 Are there signs of insurable damages? | 11.4 General condition of property  [X] C2 Very minor work needed to bring property up to good condition | |
| 11.2 How would you characterize the neighborhood?   **Stable** | | |
| 11.3 How does the property compare to neighborhood standards?  [X] At | | |

I represent and warrant that I have conducted a visual only inspection of this property and that, to the best of my knowledge and belief, the information contained in this report is accurate. I am not a licensed electrician, plumber, mold specialist, HVAC contractor or structural engineer.

Page 3 of 3

Overview | Send Message | Forward Item | 3 photos

Your response: [ Request Inspection | Request Work Order | No Work Needed | Decide Later ]

Updated: 07/14/2020 - 06:55 pm                                         ©2010-2020 National Field Representatives.  All Rights Reserved.

GOLDWATER_000558



PO Box 1440, Claremont, NH 03743
Phone: (603) 543-1000
Fax: (603) 543-1818

| **Inspection** #909216931 | **Inspected:** 6/09/2020 |
|---|---|

Property Condition - #1     Property Condition - #2     Property Condition - #3

Thumbnails [ 1-3 ] [back to originating page]

**Property Information**

| | | |
|---|---|---|
| **Loan #:** | 909216931 | **FTV:** |
| **Loan Type:** | FNMA | **Secured:** |
| **Mortgagor:** | Artur Elizarov | **Key Code:** |
| | 291 W. OVerlook Road | **Lockbox:** |
| | Palm Springs, CA 92264 | **Winterized:** |
| **Address Corr:** | | **Conv Cond:** |

Special Forms... | Upload files...

Updated: 06/10/2020 - 07:34 pm

©2010-2020 National Field Representatives.  All Rights Reserved.

GOLDWATER_000559



PO Box 1440, Claremont, NH 03743
Phone: (603) 543-1000
Fax: (603) 543-1818

## Inspection Results

| | | | |
|---|---|---|---|
| **West Star Mortgage Co** | | **ATTN:** | Leticia Aguilar |
| Artur Elizarov | | **Loan #:** | 909216931 |
| 291 W. OVerlook Road | | **Loan Type:** | FNMA |
| Palm Springs, CA 92264 | | **Insp Type:** | Form30 |
| | | **Insp Chg:** | 30  5151876 |

| Occupancy Information | | Property Condition | |
|---|---|---|---|
| **Occ:** | Occupied | **Condition:** | GOOD |
| **For Sale:** | NO | **Prop Type:** | SING FAM |
| | | **Construction:** | STUCCO |
| | | **Neighborhood:** | Stable |
| **Occupied By:** | UNKNOWN | **House Color:** | Gray\Gray |
| **How Verified:** | VISUAL | **# of Stories:** | 1 STORY |
| | | **Est Value:** | 250K |

| Vacancy Information | | Damage / Hazards | |
|---|---|---|---|
| **Elect On:** | Y | *Checked only if noted* | |
| **Gas On:** | Y | | |
| **Water On:** | Y | **Storm:** | **Neglect:** |
| **Pers. Prop:** | Y | **Flood:** | **Vandalism:** |
| **Pool On-Site:** | U | **Fire:** | **Roof Leak:** |
| **Pool Secure:** | | **Freeze:** | **Env Haz:** |
| **Prop Secure:** | | | **Other:** |
| **Ht of Grass:** | 0 | **FTV Date:** | |

| Interview Information | | | |
|---|---|---|---|
| **Interviewee:** | | **Tenant Name:** | |
| **Home Phone:** | | **Rent Paid To:** | |
| **Work Phone:** | | **Tenant Phone:** | |
| **Reason Del:** | | **Oblig Type:** | |
| **Attitude:** | | **Oblig Name:** | |
| **Income Type:** | | **Oblig Bal:** | |
| **Income Amt:** | | **Oblig Pmt:** | |

| Inspection Information | | | |
|---|---|---|---|
| **Date Insp:** | 6/09/2020 | **Comments:** | |
| **Returned:** | | Vehicle onsite. | |
| **Reps Initials:** | RIT-CA | | |
| | | **Recommend:** | |
| **Wint'd:** | | | |
| **Sec'd:** | | | |

GOLDWATER_000560

| Fannie Mae - Property Inspection Report | | | |
|---|---|---|---|
| **L. Loan Information** | | | |
| Name of mortgagor:<br>Artur Elizarov | Servicer:<br>West Star Mortgage Co | Loan Number: | Servicer Loan number:<br>909216931 |
| Property Address:<br>291 W. OVerlook Road Palm Springs CA | Property Type:<br>SING FAM | KeyCode: | Lock Box: |
| If mfd home is it permanently attached to the foundation? n/a | | Reason for Inspection: Collections | |
| **I. Inspector Information** | | | |
| Date of inspection: 6/09/2020 | InspectedBy: RIT-CA | | |
| Inspection company: National Field Reps, Inc | | Inspector signature: | |
| **A. Access** | | | |
| Were you able to complete interior Inspection? **No**<br>If no, indicate why: **Interior inspection not ordered** | Did lockbox combo or key code provided work? **n/a**<br>Corrected key code: | | If an inspection wasn't able to be completed, why? |
| **1. General Information** | | | |
| 1.1 What is the occupancy status? **Occupied**<br><br>1.2 If occupied, property occupied by: **UNKNOWN**<br><br>1.3 Are there violations posted? **No**<br><br>1.4 If Yes, violations for: | 1.5 Violations Dated:<br><br>1.6 Has the issue cited on the violation been resolved? **n/a**<br><br>1.7 Present at property:<br><br>1.8 Are there any potential hazards at the property that could damage an adjoining property? **No** | | 1.9 Is the exterior maintained by an HOA? **No**<br><br>1.10 Is the property connected to sewer or septic? |
| **2. Main structure** | | | |
| 2.1 How many doors are boarded? **0**<br><br>2.2 How many exterior doors are broken? **0**<br><br>2.3 How many exterior doors need to be secured? **0**<br><br>2.4 How many windows are boarded? **0**<br><br>2.5 How many windows are broken? **0**<br><br>2.6 Are any shutters in need of repair? **No** | 2.7 Are there damages to the foundation? **No**<br><br>2.8 Do any decks and/or porches appear to be unacceptable/unsafe? **No**<br><br>2.9 Any handrails damaged or missing from steps? **No**<br><br>2.10 Any damaged gutters or disconnected gutters? **No**<br><br>2.11 Any damaged/disconnected downspouts or extensions? **No** | | 2.12 Are there any drainage concerns? **Unk**<br><br>2.13 Do any crawl spaces / vents / lines need to be secured or covered?<br><br>2.14 Are any drain pipes missing or damaged? **Unk**<br><br>2.15 Is there a tarp on the roof of the main dwelling? **No**<br><br>2.16 Is there any obvious roof damage on the main dwelling? **No** |
| **3. Detached structures** | | | |
| 3.1 The following are tarped:<br><br>3.2 The following are boarded:<br><br>3.3 The following are unsecure: | 3.4 The following have exterior surfaces that need repair:<br><br>3.5 The following require roof repairs: | | 3.6 The following are in disrepair:<br><br>3.7 The following have graffiti: |

Page: 1 of 3

GOLDWATER_000561

Case 5:21-cv-00616-JWH-SP Document 207-28 Filed 10/04/22 Page 207 of 226 Page ID #:3820

**4. Pool**

| | | |
|---|---|---|
| 4.1 Is there a pool present?<br>   [X] Unknown<br><br>Is there a Hot tub / Spa present?<br>   [X] None | 4.2 Does the pool / Hot Tub / Spa need to be treated?<br><br>4.3 Does the pool / hot tub need to be properly secured by a fence / gate / lanai? | 4.4 Is the fence / gate / lanai surrounding the pool damaged?<br><br>4.5 Is pool / hot tub equipment missing?<br>   Unknown |

**5. Yard**

| | | |
|---|---|---|
| 5.1 Is there debris in the yard?   **No**<br><br>5.2 Is there personal property in the yard?   **Yes**<br><br>5.3 Does fencing around property need repair?   **No** | 5.4 Does the lawn need maintenance?   **No**<br><br>5.5 Does the property have overgrown weeds or invasive species?   **No** | 5.6 Do trees and bushes need to be trimmed back from the structure?   **No**<br><br>5.7 Does the lawn need edging?   **No**<br><br>5.8 Are all paved areas free of snow and ice? |

**6. Utilities**

| | | |
|---|---|---|
| 6.1 Which utility meters are present?<br>   [X] Electric [X] Water [X] Gas<br><br>6.2 Which utilities are on?<br>   [X] Electric [X] Water [X] Gas | 6.3 Are there any shared utilities?   **No**<br><br>6.4 Does the water need to be turned off at the curb?   **No** | |

**7. General Exterior**

| | | |
|---|---|---|
| 7.1 Are there any environmental concerns?   **No**<br><br>7.2 Is there a leaking oil tank on the property?   **No** | 7.3 Is there an above ground propane tank on the property?   **No**<br><br>7.4 Is there graffiti on the property?   **No** | 7.5 Are there required exterior repairs?   **No** |

7.6 Comments
   Vehicle onsite.

**8. Kitchen / Bathroom / Utility**

| | | |
|---|---|---|
| 8.1 Is built in microwave present?<br><br>8.2 Is cook top present?<br><br>8.3 Is Dishwasher present?<br><br>8.4 Is Garbage Disposal present?<br><br>8.5 Is Range present?<br><br>8.6 Is Refrigerator present? | 8.7 Is ventilation hood present?<br><br>8.8 Is clothes washer/dryer present?<br><br>8.9 Is any Other appliance present?<br><br>8.10 Are any GFCI outlets missing in wet areas?<br><br>8.11 Are any HVAC components missing (inside or out)? | 8.12 Are any toilets missing?<br><br>8.13 Are any tubs/showers missing?<br><br>8.14 Are any plumbing fixtures or pipe missing?<br><br>8.15 Are any water heaters missing?<br><br>8.16 Is the electrical panel damaged or missing? |

**9. Basement**

| | | |
|---|---|---|
| 9.1 Is a crock present for a sump pump?<br><br>9.2 Is the sump pump | 9.3 Sump pump not operational because:<br><br>9.4 Does the basement appear to have water | |

GOLDWATER_000562

https://custweb01a.nfronline.com/cgi-bin/nfrweb.dll/load?Print=true     6/10/2020

Case 5:21-cv-00616-JWH-SP   Document 207-28   Filed 07/04/22   Page 28 of 296   Page ID #:3823

| operational? | **n/a** | penetration? | |
|---|---|---|---|

Page 2 of 3

GOLDWATER_000563

| 10. General Interior | | |
|---|---|---|
| 10.1 Is there Personal Property in the house?   **Yes** | 10.4 If discoloration is present does it appear to be causing further damage? | 10.9 Does the water need to be turned off at the main interior? |
| 10.2 Are cover plates missing or wires uncapped? | 10.5 Are there holes present? | 10.10 Is there raw or perishable garbage present? |
| 10.3 Do the floors have holes or trip hazards that might cause personal injury? | 10.6 Does the attic appear to have damage? | 10.11 Which detectors are present? |
| | 10.7 Does there appear to be a rodent/insect infestation? | 10.12 Which detectors are functioning properly? |
| | 10.8 Winterization status: | 10.13 Are there any required repairs? |

| 10.14 Comments - Interior |
|---|

| 11. General Condition | | |
|---|---|---|
| 11.1 Are there signs of insurable damages? | 11.4 General condition of property [X] C2 Very minor work needed to bring property up to good condition | |
| 11.2 How would you characterize the neighborhood?   **Stable** | | |
| 11.3 How does the property compare to neighborhood standards?   [X] At | | |

I represent and warrant that I have conducted a visual only inspection of this property and that, to the best of my knowledge and belief, the information contained in this report is accurate. I am not a licensed electrician, plumber, mold specialist, HVAC contractor or structural engineer.

Page 3 of 3

Overview | Send Message | Forward Item | 3 photos

Your response: [ Request Inspection | Request Work Order | No Work Needed | Decide Later ]

Updated: 06/10/2020 - 07:37 pm                    ©2010-2020 National Field Representatives. All Rights Reserved.

GOLDWATER_000564

Messages - Greg Loan

iMessage
6/24/19, 8:24 AM

Morning it's Art. Should have those statements shortly. Will forward immodestly after they are received. Let me know if you need anything else. Hopefully rest of application is going well!

6/24/19, 12:04 PM

Statements sent. Working woth HR to get you offer letter

Great. Thank you.





For appraisal

Just getting ahead

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 1 of 25

123

Messages - Greg Loan

6/24/19, 1:28 PM

Also sent Porsche proof of payment

:) 

6/25/19, 1:53 PM

Greg are we all good?

7/1/19, 9:43 AM

Hey Art, can you text me the front and back of your Visa or MasterCard so we get the appraisal ordered?

7/3/19, 8:20 AM



90069 zip

7/5/19, 1:00 PM

I think we discussed this but when you use that 800 number for faxing make sure you use the cover sheet. Greg.

https://documentcloud.adobe.com/link/track?uri=urn%3Aaaid%3Ascds%3AUS%3Ad03162a7-23db-4984-a903-c0007647433b



Scan Jul 5, 2019 (2).pdf

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 2 of 25

124

Messages - Greg Loan

https://documentcloud.adobe.com/link/track?uri=urn%3Aaaid%3Ascds%3AUS%3A003ff75d-601f-4982-8ef1-d7d6a46cba32


Scan Jul 5, 2019 (3).pdf

Scan Jul 5, 2019 (4).pdf

https://documentcloud.adobe.com/link/track?uri=urn%3Aaaid%3Ascds%3AUS%3Abf004214-74a7-4ad0-b899-6dc13a04fb01

7/8/19, 12:31 PM

Give me a call when free

7/8/19, 6:13 PM

Hello Artur, this is Steven from Unison. Congrat on your purchase. I just received a loan approval & purchase contract from Gregory. Could you complete the application for Unison investment? I emailed you the application link, please let me know when you finished.

Is that right?

Ok sent

OK I'll confirm in a sec.

Hey Art I got it thank you

So now we need approval lol

Exactly

Or Steven needs to approve it first lol

Just kidding

Yeah he's the one that makes all the decisions 😊

Clearly

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 3 of 25

125

Messages - Greg Loan

Lol

7/9/19, 10:48 AM

Morning! Did appraisal come back yet lol

Haven't seen it yet but will let you know as soon as I receive it.

Everything else good? Especially Stevens approval?

So far. I need to talk to his boss in another hour or so I don't want him to be a hiccup with misinformation.

Maybe I am the hiccup but if I was a first time buyer I would be confused

Btw gonna start using this program with more buyers and send them to you for preapproval directly

Yeah I'm not gonna bury him I just want to ensure we eliminate any redundancy when we can.

Ya his intentions are good

Yes thank you, that would be great!

Agreed. At least he's responsive 😊

We can do lots of these unison deals

I agree especially in Southern California where it is not as popular, yet!

I wish I could do another one in la

I know. They're not ready for 2nd homes yet.

Can you make them lol

It shouldn't change their position

I'm always asking!

I ll be the first person

Done!

Do you do loans with 5 percent down

Can I buy something else? Lol

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 4 of 25

126

Messages - Greg Loan

I do, but they are all primary residences at that down payment percentage.

Can I say it's a primary

We might have to put some time between the two loans.

That or I can do it in the husbands name who has 3 other investment properties

We are renting at 5600

And have the lease to prove it

That's true!

I ll send you his complete file

His credit score is high too

Over 730

It would be something around 860-950

Sounds good. Great scores.

He has 401k for reserves

Over 300k

It would be nice not to pay rent and do a mortgage even if it's without unisom

Ok. Let's get yours closed first, then work on his.

Sounds good!

Are we close when do I wire the money lol

😄

7/9/19, 5:55 PM

Sent you rent free letter

Copy of the lease

So that they know I am not it

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 5 of 25

127

Messages - Greg Loan

Received them. Thank you.

7/10/19, 10:14 AM



Got it, thanks.

Is that ok

makes sense, looks good thanks.



Might want to use the second letter

It is better they just sent it forward

Yes second letter better

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 6 of 25

128

Messages - Greg Loan

Are we all good?

Do I need to do anything else

Not at the moment

So where is my approval and docs lol just kidding

Did you get appraisal back?

Not yet. Expecting today. Will let you know.

Well I am glad all the initial LOE stuff is done and out of my hands :)

Meeting with Steven at 4 today to go over how the program works apparently it's mandatory so I ll try to teach him lol

You crack me up!  Have a good call and good luck!

Thanks! Get me some good final news by end of this week lol

Sorry butt dial

No worries. This is my week on with my 13-year-old daughter it's Mayhem at best.

Can you chat for a sec

Have a good update

https://mediaserver.navient.com/MediaServer/ecorrespondence507801922.do?attachID=507801922&action=showpdf&r=-913181000



ecorrespondence507801922.do.pdf

https://mediaserver.navient.com/MediaServer/ecorrespondence507801992.do?attachID=507801992&action=showpdf&r=-913181000



ecorrespondence507801992.do.pdf

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 7 of 25

**129**

Messages - Greg Loan

7/10/19, 4:15 PM

I just learned so much about unisom riveting

I'm sure

Steven is studying for his agent exam and wants tips

I said must have pulse to pass

Also did you get appraisal?

Good one. No nothing on the appraisal yet I've reached out to the management company.



Just sent you notice of settlement and settlement agreement for bmw

Ok. I'll look at after this call.

7/11/19, 9:11 AM

Hey Art, we are doing verifications of employment and the most current employers is NPM, inc out of Oakland California. Do they own Rite Care Hospice? We can't find your current employer. Thanks, Greg.

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 8 of 25

130



That's from the sos website

Hey Art do you have an home owners insurance quote contact name etc yet? If not you can send us your insurance person's name and contact information and we will call on your behalf.

7/11/19, 3:12 PM

Greg is that going to cause a huge problem

Ilya is saying it's his chase account

7/12/19, 10:04 AM

Greg I have good news for you

The property appraised lol

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 9 of 25

131

Messages - Greg Loan

Now just the loan is left

Yep. Awesome. Saw that earlier. I'm about to jump on a call I'll reach out a little later.

Hey Art I just got an email from my assistant and we left a couple messages for right care for verification of employment and have not received any calls back could you ask right care to call Jeanette at area code 253-840-5600. Thanks.

They don't have any calls

But she will call them right now

Let me know when she hears from the corporate office

I will be in Monday so worst case scenario I will make them call then but I am sure it will be handled

+1 (323) 545-8888 theycan also call my ceo directly

That's his office number

My boss said he called himself can you confirm so I can stay on it

We had a patient death so things are nuts in the office

7/12/19, 2:27 PM

My assistant received a call from Rite Care and emailed whoever called our form. She has not received the form back yet just FYI.

We get paid on Monday since our payroll is bi monthly. Once I am paid we will fax/email it Monday so that it's the most through pay period. So you will be tit Monday.

Ok. It doesn't really matter because you're paid a fixed amount monthly per the offer letter, but that's fine.

7/14/19, 12:00 PM

As of Friday no email aper Let me see

Direct message from my boss

Let's handle Monday I will call with him so we can get is squared away

Never mind we got it

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 10 of 25

132

Messages - Greg Loan

It was stuck in spam

7/14/19, 3:01 PM

Never mind the one we had was the other loan place. Can you have her send it back

Send it again is what I mean

vartan@ritecaregroup.org



So you know we are not bat shit crazy lol

He just sent me a screen shot only email he has lol

K. Thanks.

Even though I told them to stop so I just assumed it was from you guys lol

No worries. I just want to get the VOE done for the loan.

You know we will handle it I just need it sent to the right place and will handle ASAP

We wanted to get it done today so you guys had it

If you can have even send it first thing am and maybe cc you I ll be in the office and will follow up to make sure it's handled. He know how important the purchase is

Ok. Also, did we get insurance solved?

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 11 of 25

133

Yes my brother sent it to her right away

And confirmed with me but she has not responded

I don't know Greg it might be your assistant lol

Just kidding I can ask him to forward to me and I can forward to you

Ok enough bugging you on the weekend lol

Enjoy the what's left

K. I'll check on that as well with her. Actually Jeanette is really good at what she does. If I have insurance and the appraisal done, I can get that sent over to Unison for part of their process. Thanks for your help.



Bam

Perfect. Thanks.

Forwarded it to you

My people are on it lol

All good

I would kill my brother otherwise lol

Family!

That and he knows I am super type a. Driven him nuts my whole adult life lol

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 12 of 25

134

Messages - Greg Loan

> I drive Vartan nuts too that's why he wants to handle VOE or I ll just nag him to death

I get it, I come from a family of 6 kids.

> 4 here

Yep, pretty much the same.

7/15/19, 8:29 AM

Morning. Expect a call from Credit plus our vendor for credit reports. They just want to discuss the Porsche Lease for clarification. Greg.

> Which lease

> Current or past

> Also were you able to chat to Jannette figure out where she sent the voe or if she can resend to the address I gave you

Most likely both but I suspect specifically the current one given you paid in advance.

Yes emailed Jeanette with the correct email address. I haven't heard back from her yet. I'm sure she's on it.

7/15/19, 10:43 AM

Hey Art. Jeanette sent to the email you gave to RC. I guess she had dropped a letter in the email address which is why it didn't reach him. Additionally can you reach out to gimble and paedae and ask them to respond. We haven't heard from them as yet. Thanks.

> They just called lol and I was like I'll send over the employment dates... just shoot me an email! Lol

Crazy.

> That's from Keith

K

7/15/19, 1:15 PM

Docusign works.

> Can you check with her my boss said he just shot it back

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 13 of 25

135

Messages - Greg Loan

Yep

Yep she got it?

Meaning I will check

Ok cool! Heading out for the day so I want to ride him till it's done but he was on the phone drafting email lol

Ok. I just emailed Jeanette requesting confirmation. I will let you know shortly.

She received it thanks for your help.

Ok one lesss thing to worry about

You know you have to babysit every ceo lol

I'm sure

We have approval yet lol

Not yet. Hopefully something late this afternoon. After 2pmish it starts to look like first thing in the am. I'll keep you updated.

7/15/19, 3:34 PM

Hey Art. Call when you can.

What's up

In calls something bad

Nothing bad.

7/15/19, 5:05 PM

Approval yet just messing with u

7/16/19, 10:33 AM

Give me about 20 minutes

No rush was calling to give you my usual morning shit about approval lol

7/17/19, 10:44 AM

Just got a call from the company about Porsche

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when
extracted: 7/30/22, 2:23 PM

Page 14 of 25

136

Messages - Greg Loan

7/17/19, 5:54 PM

Hey Art, I'm being told I'll have the conditional approval by late morning. Sorry for delay. Greg.

7/18/19, 1:26 PM

Art - have you heard anything from Greg on your loan approval? I have been doing my best to hold off the listing agent but we are now going to need to do another extension on closing.

Senior underwriter is in the file I'm being told within the hour I would call it the better part of an hour. I have every indication it will happen here shortly. I'll check in with them again in 30 minutes thanks for your patience.

7/18/19, 8:03 PM

No update from Greg yet. Listing agent keeps asking me about it. I just texted him again.

He is killing

Me

7/19/19, 8:08 AM

On phone with processor re your conditions. Will reach out in 10 mins.

7/19/19, 12:46 PM

Art. I have Joyce from credit plus on the line. Can I dial you and connect the two of you?

Yes

Do it again

K

It just dropped

Uhhhh


Scan Jul 19, 2019.pdf

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 15 of 25

137

Messages - Greg Loan

Joyce calling me again. Has a question forgot to ask. Dial in ok

Yes

7/22/19, 4:14 PM

Hey Art. The early closing disclosure has been sent to your email. When you have a quick moment can you go in and E sign it with today's date? The authorization code is the last four digits of your Social Security number. Thanks, Greg.

By the way we were able to get the verification of rent. Thanks.

7/25/19, 1:17 PM

Good to go!  Please call when you get a moment. Greg.

Don't tell Will yet call u in a bit

Already told him. He's been pounding me since am. Sorry.

7/26/19, 9:54 AM

Hey Art. As we head toward close, how do you want to take title?  As a single man?

Yes

Thank you

On the line. Will call in a couple of minutes.

7/29/19, 8:58 AM

Hey Art. Will just called. I guess he was reaching out to you last week. Just thought I'd relay the message. Greg.

He called me Friday. Just finally hit me with nieces passing been a tough weekend to swallow. I ll rewatch our

Out

I figured as much Art, and again, so sorry for your loss.

Articles of incorporation got it

7/29/19, 12:31 PM

Auto translate. Appreciate it Greg. In this transitive state can't seem to get my ass up and out of bed

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 16 of 25

138

Messages - Greg Loan

7/30/19, 3:33 PM



So there are new inquiries not that it matters

Unison docs just emailed to escrow. FYI.

7/31/19, 8:16 AM

Hey Art. Please call when you get a quick moment. Greg.

Estela.vcf

7/31/19, 4:37 PM

Why doesn't anyone else run at my or your speed of urgency

Banks are soo slow otherwise! One of my other deals got delayed too

I had a very similar conversation with my mother earlier today. She's a former banker and used to run circles around her competitors. I guess I take after her.

8/1/19, 9:41 AM

Still no package from seller

8/1/19, 1:12 PM

So what's Wills update

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 17 of 25

139

Messages - Greg Loan

He said that escrow will receive the document we need tomorrow morning so we can fund. That escrow suggested August 6 just in case there are any hiccups. If we receive tomorrow morning we should be able to fund.

If we receive tomorrow morning

I don't know if they will have the common sense to get it by guesneed delivery

But ok

8/2/19, 12:29 PM

I wasn't sure if we ended our conversation or not I'll follow up with Will and let you.

8/2/19, 1:57 PM

Spoke to Estela lender did fund

She what's the wire number from you guys

She is calling title to confirm that funds are in

She says there is no way to record since title is in riverside and they have to have original documents to record

There would be two sets of fundings one from us and one from unison. I haven't seen anything on my email that says we have funded I suspect it's unison.

8/5/19, 12:32 PM

Hey Art. We just funded. Suspect we'll go on record today, if not tomorrow. Thanks again for your all your help and your business of course!  Greg.

8/5/19, 4:09 PM

Call me

Estela just received word the wire is in. She emailed us.

Ok Yey

Tell them to record damn it

On it!  Have a good night. 

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 18 of 25

**140**

Messages - Greg Loan

8/5/19, 5:50 PM

I'll ring you in a few minutes

8/6/19, 2:40 PM

Did you record?

Fucking no

I am
So beyond ducking oissed

9/17/19, 10:17 AM





Palm Springs

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 19 of 25

141

Messages - Greg Loan

> Coming along

> Wanted you see the progress

Looks great Art. Is the wall in the bedroom textured or wallpaper or something similar?

> Wallpaper

Like it.

1/9/20, 1:26 PM

Hey Art, can you give me a quick call? My loan servicing team says you are about 38 days late for your December 1 payment I wanted to check in to see how I can help. Thanks, Greg.

> Was on vacation just got back today

> Don't have it set on autopay

Ok. A woman named Amanda has been trying to reach you. Her number is 844-799-5653. Would you mind calling her as soon as possible? She should be able to help you with the auto set up as well. Thanks Art, Greg.

> Sounds good will do!

Thank you!

1/10/20, 6:18 PM

> Greg number you gave me is not in service

> Try calling it

> 3 times

Is your email still the same? I'll send email connecting the both of you.

> No

> Had fraud

> Arthur.elizarov@gmail.com

> I can take care of it Monday or if she calls me rather than mailing a check

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 20 of 25

142

Messages - Greg Loan



Cause I have also asked for them to send me mortgage statement in Weho and they keep sending it to PS

So the email you just sent the new one?

Yes

Had to create it

But intro me please and I will handle

Can you also double check the number you gave me

Will do.

Am I crazy or is it disconnected

Click and call see if you get same message

844-799-4653 direct from her signature page.

Call it PleSe

This one says 4653

Top number is different

Off a digit. I said 5653

You gave me the wrong number

4653 is right.

Blame you then lol

Yep

I ll just tell her your fault lol

If it makes you feel better😊

Yes lol

She working now?

I am still in vacation mode

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 21 of 25

143

Messages - Greg Loan

Hard coming back

From a month in Mexico by the beach

Ok. Let's clear up Monday. She done for day.

I bet.

Will do!

Gnight I ll handle Monday

Night. Have a great weekend!  Thanks.

1/14/20, 10:24 AM

I figured it would th Amanda

I did make dec payment cause it's set up through 3rd party man and it was returned

She said you have had similar problems woth others

She waived the fees

Also had a huge overages

In escrow

So it now further dropped payments

All good! I am no delequent lol

1/14/20, 11:29 AM

Great news Art. I like the part that you are no longer delinquent. 😊. Hey when you can think about it, if you know of anyone with A similar credit profile like yours, who might be eligible for the Unison program please let me know!  Thank you, Greg.

Do you have any other programs btw I want to buy in la rent is 5500

It's a waste

I will search my base I would love to do the real estate transaction and you can do the loan lol

Yes I do all the conventional and jumbo mortgage programs out there but specialize in unison.

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 22 of 25

144

Messages - Greg Loan

Ok what's a special rate one you have

Purchase won't exceed more than 720k conventional loan limit

4/10/20, 5:14 PM

Greg where is my cut on James lol

Glad you closed

😊! Thank you for referring Art! Just closed end of March. I think he was semi surprised we got it done given the timeline pressure from TB! It all worked out. Any other referrals? Am I asking too much? LOL!!!! Have a nice Easter weekend with family. Best, Greg.

4/10/20, 6:25 PM

Yes for free you are lol. Will see if I can do more and if you have real estate purchase ones in Cali please refer

2/3/21, 12:17 PM

Hey Art it's Greg. I got an email from the president of Goldwater Bank and they asked me to get in front of you regarding a forbearance that is coming due and that they're having a challenge getting a response from you. Can you let me know what may be going on and if there is a better phone number or email they can use to connect with you? Thank you.

They have all of that

But sold the property it closes on feb 28 so we should be good

No one has emailed me and I have communicated several times including weststar

They should know you're selling the property. The email they said they are trying to communicate with you is arthur.elizarov@gmail.com. Is that correct? Did you communicate that you're selling the property to anyone? do you have a specific name or email. Can you let Annette Baca know? Her direct line is area code 505-872-7608. Thanks, Greg.

Yes to all

Escrow contacted them to get payoff

It's the most disorganized group ever but I will handle it

Annette is the one I communicate with

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 23 of 25

145

Messages - Greg Loan

> Hey Art I just heard back from my president and he asked me if we can get the name of the escrow company and contact information managing the sale so that we can talk with them directly for payoffs etc. can you text me that information? Thank you, Greg.

2/4/21, 6:04 PM



Andrea Cross

> Thanks Art!

Sorry for the delay

> No worries.

Sale price is 1.35m

So everyone wins

Minus the 20k I spent for improvements

> Sounds like you'll be a net positive. Really appreciate the follow up. Greg.

Ya I bought at 895

450k upside for one year sign me up lol

> Yeah you did well!!!

Right?

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 24 of 25

146

Messages - Greg Loan

All day long

Liked "All day long"

Do you happen to have a copy of the unisom agreement.

They have been unresponsive

And I can't seem to find a copy

Let me see if I can find some thing I'll send it to you.

It should've been part of your loan documents. I'll look

2/5/21, 8:52 AM

Thank you

Read 2/5/21

Exported from Artur's iPhone (FCJD71ANN70L) on 7/30/22, 2:33 PM with iMazing by DigiDNA. Database date when extracted: 7/30/22, 2:23 PM

Page 25 of 25

**147**



| UCDP Submission Summary Report (SSR) | | | |
|---|---|---|---|
| **Doc File ID** | 1101388598 | **Report Date/Time** | 07/12/2019 10:42:41 |
| **Document File Status (FRE)** | Successful | **Seller/Servicer Number** | 0437239 |
| **Lender Name** | Goldwater Bank NA-Collateral Management | **Lender Loan Number** | 909216931 |

| Appraisal 1 | | | |
|---|---|---|---|
| **Original Submitted Date/Time** | 07/12/2019 10:42:06 | **Document Status** | Successful |
| **Number of Resubmissions** | 0 | **Form Type** | FNM 1004/FRE 70 |
| **Last Submission Date/Time** | 07/12/2019 10:42:06 | **Appraised Value** | $915000 |
| **Subject Address** | 291 W Overlook Rd, Palm Springs, CA 92264 | **Appraisal Effective Date** | 2019-07-05 |
| | | **Supervisory Appraiser** | |
| **Appraiser** | SHIRLEY KEECHLER CA / AR041061 | **Borrower Name** | ARTUR ELIZAROV |
| **Comps** | **Comp Address** | | **Adjusted Sale Price** |
| Comp1 | 244 W Camino Buena Vis, Palm Springs, CA 92264 | | $1470025 |
| Comp2 | 1945 S Mesa Dr, Palm Springs, CA 92264 | | $995500 |
| Comp3 | 185 E Palo Verde Ave, Palm Springs, CA 92264 | | $897600 |
| Comp4 | 832 E Mesquite Ave, Palm Springs, CA 92264 | | $873750 |
| Comp5 | 563 S Camino Real, Palm Springs, CA 92264 | | $869050 |
| Comp6 | 1423 S Sunrise Way, Palm Springs, CA 92264 | | $916375 |

**UCDP Hard Stops**

| Message ID | Form Section | Form Field Name | Property Affected | Full Message Description | Severity | Override Request Reason | Override Decision Reason | Override Decision Date/Time |
|---|---|---|---|---|---|---|---|---|
| No findings returned | | | | | | | | |

**Freddie Mac Proprietary Hard Stops**

| FRE000 | N/A | N/A | N/A | Collateral R&W Relief Eligible | Warning | Automated override request | Override automatically approved | 07/12/2019 10:42:18 |
| FRE800 | N/A | N/A | N/A | Freddie Mac Findings (one or more warnings) | Warning | Automated override request | Override automatically approved | 07/12/2019 10:42:18 |

**UAD Compliance Findings**

GOLDWATER_000345

| No findings returned | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Freddie Mac Proprietary Edit Findings** | | | | | | | | |
| FRE4000 | N/A | N/A | N/A | This appraisal is eligible for collateral representation and warranty relief, pending an assessment of the loan. | Warning | N/A | N/A | N/A |
| FRE4020 | N/A | N/A | N/A | LCA Risk is assessed at 1 indicating a Very Low risk of overvaluation. | Warning | N/A | N/A | N/A |

GOLDWATER_000346

 **Fannie Mae**

| UCDP Submission Summary Report (SSR) | | | |
|---|---|---|---|
| Doc File ID | 1101388598 | Report Date/Time | 07/12/2019 10:42:41 |
| Document File Status (FNM) | Successful | Seller/Servicer Number | 293960003 |
| Lender Name | Goldwater Bank NA-Collateral Management | Lender Loan Number | 909216931 |

| Appraisal 1 | | | |
|---|---|---|---|
| Original Submitted Date/Time | 07/12/2019 10:42:06 | Document Status | Successful |
| Number of Resubmissions | 0 | Form Type | FNM 1004/FRE 70 |
| Last Submission Date/Time | 07/12/2019 10:42:06 | Appraised Value | $915000 |
| Subject Address | 291 W Overlook Rd, Palm Springs, CA 92264 | Appraisal Effective Date | 2019-07-05 |
| | | Supervisory Appraiser | |
| Appraiser | SHIRLEY KEECHLER CA / AR041061 | Borrower Name | ARTUR ELIZAROV |

| Comps | Comp Address | Adjusted Sale Price |
|---|---|---|
| Comp1 | 244 W Camino Buena Vis, Palm Springs, CA 92264 | $1470025 |
| Comp2 | 1945 S Mesa Dr, Palm Springs, CA 92264 | $995500 |
| Comp3 | 185 E Palo Verde Ave, Palm Springs, CA 92264 | $897600 |
| Comp4 | 832 E Mesquite Ave, Palm Springs, CA 92264 | $873750 |
| Comp5 | 563 S Camino Real, Palm Springs, CA 92264 | $869050 |
| Comp6 | 1423 S Sunrise Way, Palm Springs, CA 92264 | $916375 |

**UCDP Basic Edit Checks**

| Message ID | Form Section | Form Field Name | Property Affected | Full Message Description | Severity | Override Request Reason | Override Decision Reason | Override Decision Date/Time |
|---|---|---|---|---|---|---|---|---|
| No findings returned | | | | | | | | |

**UAD Compliance Findings**

| No findings returned |
|---|

GOLDWATER_000347

Evaluation Only. Created with Aspose.PDF. Copyright 2002-2014 Aspose Pty Ltd.

| **Fannie Mae Proprietary Edit Findings** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| FNM1000 | N/A | N/A | Appraisal | The Collateral Underwriter Risk Score is 3.3 on a scale of 1 to 5 where 5 indicates highest potential collateral risk. A score of 999 indicates no Collateral Underwriter Risk Score available. | Warning | N/A | N/A | N/A |
| FNM1002 | N/A | N/A | Appraisal | There is a heightened risk of appraisal quality issues. | Warning | N/A | N/A | N/A |
| FNM0421 | N/A | N/A | Comparable 4 | The appraiser has reported a materially different quality for comparable #4 in one or more appraisal reports. | Warning | N/A | N/A | N/A |
| FNM0423 | N/A | N/A | Comparable 4 | The appraiser has reported a materially different condition for comparable #4 in one or more appraisal reports. | Warning | N/A | N/A | N/A |
| FNM0610 | N/A | N/A | Appraisal | The appraiser's wide range of adjusted values indicates potentially inadequate adjustment. | Warning | N/A | N/A | N/A |

GOLDWATER_000348

**INTERNAL REVENUE SERVICE**



# FAX TRANSMISSION
## Cover Sheet

Date: January 17, 2018

# To: MR. ARTUR ELIZAROV

Address/Organization: _____

Fax Number: (888) 303-7686 _____ Office Number: _____

# From: Mr. Galdamez

Address/Organization: Internal Revenue Service _____

Fax Number: (855) 755-3516 _____ Office Number: _____

Number of pages: | 5 | *Including cover page*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Subject:**

This communication is intended for the sole use of the individual to whom it is addressed and may contain confidential information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited by the provisions of the Internal Revenue code. If you have received this communication in error, please contact the sender immediately by telephone. Thank you.

```
COPY - DO NOT MAIL

OGDEN, UT  84201                    In reply refer to:  0477485133
                                   Jan. 17, 2018  LTR 2257C   0
                                   █████████  201412 30 000
                                                         00001
                                                BODC: SB

ARTUR ELIZAROV
11623 MORRISON ST
N HOLLYWOOD  CA  91601-4346




          Social security number:  ████████████
          Your correspondence date:  Jan. 17, 2018

Dear Taxpayer:

As you requested, we are sending a balance due statement for the
accounts listed below:

Form       Tax Period      Tax         Interest    Penalty
```

████████████████████████████████████████████████████████

Total Due $91,567.25

```
Your balance due for the tax period listed above includes interest and
applicable penalties calculated to Jan. 17, 2018. We'll continue to
assess applicable penalties and interest, as provided by law, until
we receive full payment of the balance due. See the enclosed Notice
746, Information About Your Notice, Penalty, and Interest.

We've provided a general explanation of the penalties and/or interest
we may have included in the current balance due on your account. If
you want a specific explanation of how we computed the balance on your
account, call us at the toll-free number in this letter, and we will
send you a detailed computation.

** Filing and/or Paying Late -- IRC Section 6651 **

We assess a 5% penalty for filing your return late and a 1/2% monthly
penalty for not paying the tax you owe by the due date. When both
penalties apply for the same month, the amount of the penalty for
filing late for that month is reduced by the amount of the penalty for
paying late for that month.
```

01/17/2018                        Page 1 of 4

The failure-to-file or failure-to-pay penalty may not apply where
you've shown that the failure is due to reasonable cause and not
willful neglect.

We base the monthly penalty for filing late on the tax required to be
be shown on the return that you didn't pay by the original return due
date, without regard to extensions.

We base the monthly penalty for paying late on the net unpaid tax at
the beginning of each penalty month following the payment due date

======================================================================

                                                    0477485133
                                Jan. 17, 2018  LTR 2257C   0
                                               201412 30 000
                                                        00002
                                               BODC: SB

ARTUR ELIZAROV
11623 MORRISON ST
N HOLLYWOOD CA  91601-4346




for that tax.

We charge the penalties for each month or part of a month the return
or payment is late; however, neither penalty can be more than 25% in
total.

Income tax returns are subject to a minimum late filing penalty when
filed more than 60 days after the due date, including extensions.
The minimum penalty is $205 ($135 for returns due between 1/1/2009
and 12/31/2015, $100 for returns due before 1/1/2009) or 100% of the
tax required to be shown on the return that you didn't pay on time,
whichever is less.

The penalty for paying late applies even if you filed the return
on time. The due date for payment of the tax shown on the return
generally is the return due date, without regard to extensions. You
must pay increases in tax within 21 days of the date of our notice
demanding payment (10 business days if the amount in the notice is
$100,000 or more).

If we issue a Notice of Intent to Levy and you don't pay the balance

01/17/2018                          Page 2 of 4

due within 10 days of the date of the notice, the penalty for paying late increases to 1% per month.

For individuals who filed on time, the penalty decreases to 1/4% per month while an approved installment agreement with the IRS is in effect for payment of that tax.

** Interest -- IRC Section 6601 **

We are required by law to charge interest when you do not pay your liability on time. Generally, we calculate interest from the due date of your return (regardless of extensions) until you pay the amount you owe in full, including accrued interest and any penalty charges. Interest on some penalties accrues from the date we notify you of the penalty until it is paid in full. Interest on other penalties, such as failure to file a tax return, starts from the due date or extended due date of the return. Interest rates are variable and may change quarterly.

                    HOW TO CONTACT US

If you have questions, you can call us toll free at 1-800-829-0115.

If you are out of the country and need assistance, call us at


1-267-941-1000 (not toll-free).

========================================================================

                                        0477485133
                          Jan. 17, 2018  LTR 2257C    0
                          ███████        201412 30 000
                                                   00003
                                        BODC: SB

ARTUR ELIZAROV
11623 MORRISON ST
N HOLLYWOOD  CA  91601-4346




You can also find information on our website at www.irs.gov.

You can get any of the forms or publications mentioned in this letter by calling 1-800-TAX-FORM (1-800-829-3676) or visiting our website at www.irs.gov/formspubs.




01/17/2018                    Page 3 of 4

If you prefer, you can write to us at the address we provided in this letter. When you write, include a copy of this letter and provide, in the spaces below, your telephone number and the hours we can reach you.

Keep a copy of this letter for your records.

Telephone number _____ Hours _____

Thank you for your cooperation.

                                    Sincerely yours,


                                    Lucy Duquette
                                    Operations Manager, ACS

Enclosures:
Envelope
Notice 746
Copy of this letter

01/17/2018                    Page 4 of 4

OLD REPUBLIC
TITLE COMPANY

Major Accounts - Los Angeles — City National Bank
101 North Brand Blvd, 14th Floor      555 S. Flower Street, 17th Floor
Glendale, CA 91203                    Los Angeles, CA 90071
(818) 247-2517                        16-10/1220

7600003359

Loan No. 604-30-10Q - REF 047746133

UNITED STATES TREASURY      ESCROW NO. 2676011438-RC      January 19, 2018

PAY — Ninety One Thousand Five Hundred Sixty Seven and 25/100 DOLLARS **          $91,567.25

TO
THE      INTERNAL REVENUE SERVICES
ORDER    INTERNAL REVENUE SERVICES
OF       OGDEN, UT 84201.

VOID AFTER 120 DAYS - INVALID OVER $1,000,000
ESCROW TRUST ACCOUNT - 26 - 76

THE MULTI-TONE BACKGROUND OF THIS CHECK GRADUALLY AND EVENLY CHANGES FROM BLUE TO GREY TO BLUE

---

Date:20180122 Check:7600003359 Account ▮▮▮▮ Amount:91567.25

Date:20180122 Check:7600003359 Account ▮▮▮▮ Amount:91567.25

CM-200

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ILYA ALEKSEYEFF [242462]
LAW OFFICES OF ILYA ALEKSEYEFF
8721 SANTA MONICA BLVD #119, WEST HOLLYWOOD, CA 90069

TELEPHONE NO.: 213.537.4592    FAX NO. *(Optional):* 888.303.7686
E-MAIL ADDRESS *(Optional):* ILYA@LOIA.LEGAL
ATTORNEY FOR *(Name):* ARTUR ELIZAROV

**FILED**
Superior Court of California
County of Los Angeles

05/22/2019

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____Veronica Ponce_____ Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES
STREET ADDRESS: 111 N HILL ST
MAILING ADDRESS: 111 N HILL ST
CITY AND ZIP CODE: LOS ANGELES 90012
BRANCH NAME: CENTRAL DISTRICT, STANLEY MOSK COURTHOUSE

PLAINTIFF/PETITIONER:  ARTUR ELIZAROV

DEFENDANT/RESPONDENT:  BMW FINANCIAL SERVICES NA, LLC

**NOTICE OF SETTLEMENT OF ENTIRE CASE**

CASE NUMBER:
19STCV08507

JUDGE: LIA MARTIN
DEPT.: 16

---

**NOTICE TO PLAINTIFF OR OTHER PARTY SEEKING RELIEF**

You must file a request for dismissal of the entire case within 45 days after the date of the settlement if the settlement is **unconditional.** You must file a dismissal of the entire case within 45 days after the date specified in item 1b below if the settlement is **conditional.** Unless you file a dismissal within the required time or have shown good cause before the time for dismissal has expired why the case should not be dismissed, the court will dismiss the entire case.

---

**To the court, all parties, and any arbitrator or other court-connected ADR neutral involved in this case:**

1. This entire case has been settled.  The settlement is:

   a. ☑ **Unconditional.**  A request for dismissal will be filed within 45 days after the date of the settlement.
   Date of settlement:  05/22/2019

   b. ☐ **Conditional.**  The settlement agreement conditions dismissal of this matter on the satisfactory completion of specified terms that are not to be performed within 45 days of the date of the settlement.  A request for dismissal will be filed no later than *(date):*

2. Date initial pleading filed:  03/11/2019

3. Next scheduled hearing or conference:

   a. Purpose:  CASE MANAGEMENT CONFERENCE, OSC RE: PROOF OF SERVICE

   b. ☑ (1) Date: 07/29/19

   (2) Time: 9:00 AM

   (3) Department:  16

4. Trial date:

   a. ☑ No trial date set.

   b. ☐ (1) Date:

   (2) Time:

   (3) Department:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 05/22/19

ILYA ALEKSEYEFF
_____
(TYPE OR PRINT NAME OF   ☑ ATTORNEY   ☐ PARTY WITHOUT ATTORNEY)

▶ /s/ *Ilya Alekseyeff*
_____
(SIGNATURE)

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-200 [Rev. January 1, 2007] | **NOTICE OF SETTLEMENT OF ENTIRE CASE** | Cal. Rules of Court, rule 3.1385<br>*www.courtinfo.ca.gov* |
|---|---|---|

Electronically Received 05/22/2019 01:41 PM

| PLAINTIFF/PETITIONER: ARTUR ELIZAROV | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: BMW FINANCIAL SERVICES NA, LLC | 19STCV08507 |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF SETTLEMENT OF ENTIRE CASE

*(NOTE: You cannot serve the Notice of Settlement of Entire Case if you are a party in the action. The person who served the notice must complete this proof of service.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

2. I served a copy of the *Notice of Settlement of Entire Case* by enclosing it in a sealed envelope with postage fully prepaid and *(check one):*

   a. ☐ deposited the sealed envelope with the United States Postal Service.

   b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Settlement of Entire Case* was mailed:

   a. on *(date):*

   b. from *(city and state):*

4. The envelope was addressed and mailed as follows:

   a. Name of person served:          c. Name of person served:

        Street address:                  Street address:
        City:                           City:
        State and zip code:           State and zip code:

   b. Name of person served:          d. Name of person served:

        Street address:                  Street address:
        City:                           City:
        State and zip code:           State and zip code:

   ☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

5. Number of pages attached _____.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶

_____
(TYPE OR PRINT NAME OF DECLARANT)

_____
(SIGNATURE OF DECLARANT)

# MUTUAL RELEASE AND SETTLEMENT AGREEMENT

This Mutual Release and Settlement Agreement ("Agreement") is made and entered into by and between BMW FINANCIAL SERVICES NA, LLC, a Delaware Limited Liability Company ("BMW FS") on the one hand, and Artur Elizarov, an individual, ("ELIZAROV") on the other hand, and also jointly referred to as the "Parties" in this Agreement.

## RECITALS

A.     **WHEREAS,** on or about December 19, 2016, in the City of Thousand Oaks, California, Rite Care Murrietta Home, an unknown business entity ("Rite Care") for valuable consideration, made, executed and delivered a Vehicle Lease Agreement ("Lease") to Rusnak BMW ("Dealer"), for a three-year lease of a 2016 BMW 740i, serial number WBA7E2C5XGG504251, ("Vehicle"). Artur Elizarov ("ELIZAROV") agreed to guaranty the performance by Rite Care of all terms of the Lease. Dealer thereafter assigned all of its rights, title and interest in the Lease and Vehicle to BMW FS. As a result of said assignment, BMW FS thereafter became the lien holder of the Vehicle with the California Department of Motor Vehicles. Rite Care is not a Party to this Agreement.

B.     **WHEREAS,** the Lease thereafter went into payment default and was recovered by BMW FS. Prior to sale, BMW FS gave ELIZAROV notice of the pending sale and the right to have the vehicle appraised, but the Parties dispute whether the notice complied with the Lease or the applicable law. Thereafter, the Parties communicated regarding the appraisal process, but the parties dispute whether BMW FS properly complied with the process. The Vehicle was thereafter sold, and a deficiency balance established in the sum of $41,471.72 ("Deficiency"). BMW FS made demand on ELIZAROV to pay the Deficiency.

C.     **WHEREAS,** on August 7, 2014 ELIZAROV filed a Complaint in Los Angeles Superior Court entitled, "*ARTUR ELIZAROV, an individual v. BMW FINANCIAL SERVICES NA, LLC, a Delaware limited liability company,* bearing Case Number 19STCV08507 and subsequently amended the Complaint alleging Violation of Vehicle Leasing Act; Breach of Contract; Unfair Debt Collection; and, Unfair Competition ("FAC") contesting his liability for the Deficiency. BMW FS answered the complaint denying the allegations of the Complaint and was in the process of filing an Amended Complaint and Cross-Complaint when the Parties Agreed to resolve all disputes.

Page 1 of 7

scty/2030-224/settlement/settlement agreement

D.     The Parties hereby desire to compromise and settle fully and finally all disputed and denied claims, actions and controversies between the Parties as set forth herein which in any way relates to the Contract, Vehicle, Complaint or FAC.

## AGREEMENT

1.     **Consideration**.  In consideration of the promises, covenants and incorporated Recitals herein, the Parties will do the following:

A.     That BMW FS shall make no further claim against ELIZAROV as an individual under the Lease and will release ELIZAROV from its current claim that ELIZAROV may be personally liable for the Deficiency;

B.     That BMW FS shall submit to all the credit reporting agencies ("CRAs") to which it subscribes an instruction to delete its tradeline on ELIZAROV's consumer credit report relating to the Deficiency by so requesting within 10 days of this Agreement being fully executed by all Parties and his/its attorneys.  ELIZAROV expressly understands and acknowledges by executing this Agreement that BMW FS has no direct control over any of the CRAs as to when each CRA will implement said instruction and acknowledges that said instruction can take 60-90 days to be reflected on ELIZAROV's credit report, and on occasion may not being implemented at all.  In the event of an erroneous remark or failure of the CRA to implement the requested instruction, ELIZAROV understands that his only remedy shall be to notify BMW FS pursuant to Paragraph 16 below and that BMW FS shall submit another instruction to said CRA(s) until said deletion is performed.

C.     ELIZAROV represents that he will file a dismissal of BMW FS with prejudice from the Complaint within 10 days of this Agreement being fully executed by all Parties and his/its attorneys.

D.     ELIZAROV agrees to reasonably cooperate with BMW FS' pursuit of Rite Care for the Deficiency.

E.     That each Party shall bear his/its own attorney fees and costs in connection with the Lease, Vehicle, Complaint, FAC, and this Agreement, except as otherwise expressly provided herein.

2.     **Release of All Claims and Liabilities**.  The Parties and each Party's directors, officers, shareholders, owners, employees, agents, representatives, servants, executors, administrators, accountants, investigators, business entities, predecessors in

Page 2 of 7

scty/2030-224/settlement/settlement   agreement

interest, successors in interest, attorneys, attorneys in fact, affiliates, parent companies or corporations, members, subsidiaries (whether or not wholly-owned), companies, units, divisions, partners, insurers, heirs, spouse and assigns, hereby forever release, discharge, acquit and relieve the other Party and each Party's respective directors, officers, shareholders, owners, employees, agents, representatives, servants, executors, administrators, accountants, investigators, business entities, predecessors in interest, successors in interest, attorneys, attorneys in fact, affiliates, parent companies or corporations, members, subsidiaries (whether or not wholly-owned), companies, units, divisions, partners, insurers, heirs, and assigns, from any and all claims, demands, damages, actions, debts, obligations, liabilities, causes of action, costs, expenses, judgments, liens, orders and agreements of whatever kind or nature, existing as of the date of this Agreement, whether known or unknown, suspected or unsuspected, which arise or may arise out of, or are directly or indirectly related to the Contract, Vehicle, Complaint, proposed Cross-Complaint, this Agreement and or the occurrences, acts or omissions that are or were involved in the allegations, facts, circumstances and incident(s) giving rise to this Agreement.

3.    **All Claims Included**. The Parties and each of them, hereby waive any and all rights and benefits conferred upon them by the provisions of Section 1542 of the California Civil Code or by any similar provision of any other state, federal, or local statute, code, ordinance, or law and expressly consents that the releases contained in this Agreement shall be given full force and effect according to each and all express terms and provisions of this Agreement, including as well as those relating to unknown and unsuspected claims, demands, and causes of action which arise from the facts and circumstances as described in the Recitals herein and execution of this Agreement. Section 1542 of the California Civil Code, which is hereby expressly waived, reads as follows:

> **A General Release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

4.    **Retention of Jurisdiction**. Pursuant to California Code of Civil Procedure Section 664.6 (C.C.P. §664.6), the Parties agree and request that the Court retain jurisdiction over the Parties until full and final performance of all the settlement terms. In the event of any material default under this Agreement, a Party may file a motion to enforce this Agreement by way of requesting a judgment against the defaulting Party, including unjunctive relief compelling the defaulting Party to comply with its obligations under this Agreement. Further, that the dismissal as set forth above in Paragraphs 1.B. shall specifically reference the Court's retention of jurisdiction pursuant to California

Page 3 of 7

scty/2030-224/settlement/settlement agreement

Code of Civil Procedure Section 664.6, should further action by the Court be required, notwithstanding the dismissal of the Complaint, even if with prejudice.

5. **No Assignment of Claim**. The Parties warrant and represent that no other person or entity has, or has had, any interest in the claims, demands, obligations, or causes of action that form the Complaint, that each Party has the right and authority to execute this Agreement, and that each Party has not sold, assigned, subrogated, transferred, conveyed, or hypothecated, or purported to assign, subrogate, transfer, or hypothecate, to any other person or entity, any damages, suits, claims, debts, demands, assessments, obligations, liabilities, attorneys' fees, expenses, rights of action or causes of action as released herein.

6. **Successors and Assigns**. This Agreement shall be binding upon and inure to the benefit of the Parties to this Agreement, and each Party's respective directors, officers, shareholders, owners, employees, agents, representatives, servants, executors, administrators, accountants, investigators, business entities, predecessors, successors, attorneys, attorneys in fact, affiliates, parent companies, subsidiaries, component companies, units, divisions, partners, insurers, members, heirs, spouses and assigns.

7. **Execution of Necessary Documents**. The Parties agree to execute any and all other documents necessary to effectuate or carry out the terms and provisions of this Agreement. Failure by any Party to do so, upon reasonable demand, shall constitute a material breach of this Agreement.

8. **Applicable Law, Venue and Breach**. This Agreement shall be construed and enforced in accordance with the laws of the State of California. Any action arising out of the subject matter of this Agreement shall be filed in the Superior Court for the State of California, County of Los Angeles. In the event of any such action, the prevailing Party (as determined by the court) shall be entitled to reasonable attorneys' fees, costs, and any other necessary expenses, including costs of collection, in addition to any other relief to which the prevailing Party may be entitled.

9. **Voluntary Settlement After Consultation with Attorney**. The Parties warrant, represent and agree that they have carefully read this entire Agreement, understand the Agreement and all terms thereof, and are executing and delivering this Agreement freely and voluntarily. The Parties hereto also separately warrant, represent and agree that they are represented by legal counsel or have had a reasonable opportunity to obtain independent legal advice and consultation from their own counsel before executing this Agreement.

Page 4 of 7

scty/2030-224/settlement/settlement agreement

163

10.  **No Admission of Liability**.  It is understood and agreed by the Parties that this Agreement is the compromise of a disputed claim and that payment of the settlement amount is not to be construed as an admission of liability by any Party hereto, which expressly deny any liability.

11.  **Entire Agreement**.  All agreements, covenants, representations and warranties, express and implied, oral and written, of the parties to this Agreement concerning its subject matter are contained herein.  No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any Party to any other Party concerning the subject matter of this Agreement.  All prior and contemporaneous conversations, negotiations, possible and alleged agreements, representations, covenants and warranties concerning the subject matter of this Agreement are merged herein.  This is an integrated Agreement.

12.  **Modification**.  This Agreement cannot be modified except by a writing signed by all of the Parties hereto.

13.  **Severability**.  If any term, provision, covenant or condition of the Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

14.  **Waiver**.  Waiver of any default or breach of this Agreement or of any warranty, representation, covenant or obligation contained herein shall not be construed as a waiver of any subsequent breach.

15.  **Execution in Counterparts, Facsimile Signatures, Copies**.  This Agreement may be executed by duplicate originals or in counterparts, which, when taken together, shall form and constitute one agreement.  A copy of this Agreement or facsimile or electronic signature shall have the same force and effect as if an original.

16.  **Notice.**  Whenever any Party is required or shall desire to give or serve upon the other any notice, demand, request or other communication, each such notice, demand, request or other communication shall be in writing delivered by United States First Class mail, facsimile, electronic transmission over the Internet (email) or overnight delivery that requests tracking and receipt of said notice, to the addresses set forth below. Service of any such notice, demand or request so made shall be deemed complete on the date of the notice.  Any Party may from time to time, by notice in writing served upon the other Party as aforesaid, designate a different mailing address or a different person or

Page 5 of 7

scty/2030-224/settlement/settlement agreement

additional persons to which all such notices, demand or requests are thereafter to be addressed, except that if the designated address is that of the Party's attorney, then the address will be the same as the attorney's public address on file with the California State Bar (if different from the below).

If to BMW FS:

Rebecca A. Caley
CALEY & ASSOCIATES, A.P.C.
265 S. Randolph Avenue, Suite 270
Brea, CA 92821
Tel: (714) 529-1400
Fax: (714) 529-1515
Email: rcaley@caleylaw.com

If to the ELIZAROV:

LAW OFFICES OF ILYA ALEKSEYEFF
Ilya Alekseyeff
8721 Santa Monica Blvd, #119
West Hollywood, CA 90069
Tel: (213) 537-4592
Fax: (888)303-7686
Email: Ilya@loia.legal

Dated: _May 21, 2019_

BMW FINANCIAL SERVICES NA, LLC,
a Delaware limited liability company

By: _____
[Name] Jason P. Bichsel
Its: Corporate Counsel
[Title]

Dated: **May 17, 2019**

By: _Artur Elizarov_____
ARTUR ELIZAROV, an individual

Page 6 of 7

scty/2030-224/settlement/settlement   agreement

**APPROVED AS TO FORM:**

Dated: _5/22/19_

Caley & Associates, A.P.C.

Rebecca A. Caley, Attorney for ALPHERA
FINANCIAL SERVICES, a business unit of
BMW FINANCIAL SERVICES NA, a
Delaware limited liability company

Dated: May 17, 2019

Law Offices of Ilya Alekseyeff

Ilya Alekseyeff, Attorney for ARTUR ELIZAROV
an individual

Page 7 of 7

scty/2030-224/settlement/settlement agreement

1    Rebecca A. Caley, Bar No. 131997
     Christopher M. Domin, Bar No. 273951
2    CALEY & ASSOCIATES
     A Professional Corporation
3    265 S. Randolph Avenue, Suite 270
     Brea, California 92821-5777
4    714/529-1400 - Office
     714/529-1515 - Facsimile
5    rcaley@caleylaw.com
     File No. 2030-224
6

7    Attorneys for Defendant,
     BMW Financial Services NA, LLC
8

9          SUPERIOR COURT OF THE STATE OF CALIFORNIA

10       COUNTY OF LOS ANGELES - STANLEY MOST COURTHOUSE

11

12    ARTUR ELIZAROV,             CASE NO. 19STCV08507

13           Plaintiff,

14      v.                    STIPULATION THAT THE
                          COURT MAY RETAIN
15    BMW FINANCIAL SERVICES NA,     JURISDICTION TO ENFORCE
     LLC,                   THE SETTLEMENT
16                           AGREEMENT PURSUANT TO
          Defendant.            CCP §664.6; AND [PROPOSED]
17                           ORDER THEREON

18

19

20

21        This Stipulation is made and entered into by and among Plaintiff, ARTUR

22    ELIZAROV, and Defendant BMW FINANCIAL SERVICES NA, LLC, a Delaware

23    Limited Liability Company, who hereby voluntarily submit to the jurisdiction of the

     Court for the limited and exclusive purpose of the enforcement of a Settlement
24
     Agreement pursuant to Code of Civil Procedure § 664.6. (The foregoing are signatories
25
     to a Settlement Agreement and are collectively referred to as the "Parties.").
26
       Whereas, the Parties have reached a settlement in this matter and have fully
27
     executed a Settlement Agreement which includes a provision wherein the Parties agree
28

1   that the settlement may be enforced pursuant to Code of Civil Procedure § 664.6.

2          NOW, THEREFORE, the Parties hereby stipulate as follows:

3      1.   The settlement may be enforced pursuant to Code of Civil Procedure §

4           664.6.

5      2.   The Court shall retain jurisdiction over the Parties to enforce the terms of

6           settlement.

7   Dated: May _____, 2019                    ARTUR ELIZAROV

8   May 17, 2019

9                                             By: _Artur Elizarov_____
                                                  Artur Elizarov, an individual

10

11  Dated: May 2l, 219

12                                            BMW FINANCIAL SERVICES NA, LLC

13                                            By: _____
14                                                Name: Jason P. Bichsel
15                                                Title: Corporate Counsel

16                          **[PROPOSED] ORDER**

17         Based upon the foregoing Stipulation That the Court May Retain Jurisdiction to

18  Enforce the Settlement Agreement, it is hereby ordered that the Court will retain

    jurisdiction over the Parties to enforce the settlement pursuant to Code of Civil
19
    Procedure § 664.6.
20

21

22  DATED: _____

23                                            JUDGE OF THE SUPERIOR COURT

24

25

26

27

28

## CASE INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**Case Number:** 19STCV08507

ELIZAROV ARTUR VS BMW FINANCIAL SERVICES NA, LLC

**Filing Courthouse:** Stanley Mosk Courthouse

**Filing Date:** 03/11/2019
**Case Type:** Other Commercial/Business Tort (not fraud/ breach of contract) (General Jurisdiction)
**Status:** Request for Dismissal - Before Trial not following ADR or more than 60 days since ADR 08/14/2019

Click here to access document images for this case

If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page

## FUTURE HEARINGS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

None

## PARTY INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

ALEKSEYEFF ILYA - Attorney for Plaintiff

ARTUR ELIZAROV - Plaintiff

BMW FINANCIAL SERVICES NA LLC - Defendant

CALEY REBECCA - Attorney for Defendant

## DOCUMENTS FILED

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**Documents Filed (Filing dates listed in descending order)**
**08/16/2019** Notice of Entry of Dismissal and Proof of Service
Filed by ELIZAROV ARTUR (Plaintiff)

**08/14/2019** Declaration (of Ilya Alekseyeff re OSC re sanctions for failure to appear)
Filed by ELIZAROV ARTUR (Plaintiff)

**08/14/2019** Request for Dismissal
Filed by ELIZAROV ARTUR (Plaintiff)

**08/08/2019** Notice (of OSC re Sanctions for Plaintiff's Counsel's Failure to Appear at the July 26, 2019 OSC re Dismissal (Settlement) and Continuance of OSC re Dismissal (Settlement))
Filed by BMW FINANCIAL SERVICES NA, LLC (Defendant)

**07/26/2019** Minute Order ( (Order to Show Cause Re: Dismissal (Settlement)))
Filed by Clerk

**07/26/2019** Stipulation and Order (Stipulation That the Court May Retain Jurisdiction to Enforce the Settlement Agreement Pursuant to CCP ¿664.6; and Order Thereon)
Filed by BMW FINANCIAL SERVICES NA, LLC (Defendant)

**05/22/2019** Order to Show Cause re: Dismissal (Settlement)
Filed by Clerk

**05/22/2019** Proof of Service (not Summons and Complaint)
Filed by ELIZAROV ARTUR (Plaintiff)

**05/22/2019** Notice of Settlement
Filed by ELIZAROV ARTUR (Plaintiff)

**05/03/2019** Answer
Filed by BMW FINANCIAL SERVICES NA, LLC (Defendant)

**04/10/2019** Proof of Personal Service
Filed by ELIZAROV ARTUR (Plaintiff)

**04/03/2019** First Amended Complaint
Filed by ELIZAROV ARTUR (Plaintiff); ELIZAROV ARTUR (Plaintiff)

**04/03/2019** Amended Complaint 1st
Filed by ELIZAROV ARTUR (Plaintiff)

**03/22/2019** Order to Show Cause (Hearing)
Filed by Clerk

**03/22/2019** Order to Show Cause Failure to File Proof of Service
Filed by Clerk

**03/22/2019** Notice of Case Management Conference
Filed by Clerk

**03/19/2019** Proof of Personal Service
Filed by ELIZAROV ARTUR (Plaintiff)

**03/13/2019** Summons (on Complaint)
Filed by ELIZAROV ARTUR (Plaintiff)

**03/11/2019** Notice of Case Assignment - Unlimited Civil Case
Filed by Clerk

**03/11/2019** Civil Case Cover Sheet
Filed by ELIZAROV ARTUR (Plaintiff)

**03/11/2019** Complaint
Filed by ELIZAROV ARTUR (Plaintiff)


## PROCEEDINGS HELD

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

### Proceedings Held (Proceeding dates listed in descending order)

**09/06/2019** at 09:00 AM in Department 16
Order to Show Cause Re: (Monetary Sanctions Against Plaintiff's Counsel for Failure to Appear at OSC hearing of 07-26-19) - **Not Held - Vacated by Court**

**09/06/2019** at 09:00 AM in Department 16
Order to Show Cause Re: Dismissal (Settlement) - **Not Held - Vacated by Court**

**07/29/2019** at 09:00 AM in Department 16
Order to Show Cause Re: (Entry of Default;) - **Not Held - Vacated by Court**

**07/29/2019** at 09:00 AM in Department 16
Order to Show Cause Re: Failure to File Proof of Service - **Not Held - Vacated by Court**

**07/29/2019** at 09:00 AM in Department 16
Case Management Conference - **Not Held - Vacated by Court**

**07/26/2019** at 09:00 AM in Department 16
Order to Show Cause Re: Dismissal (Settlement) - **Held - Continued**

## REGISTER OF ACTIONS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

### Register of Actions (Listed in descending order)

**09/06/2019** at 09:00 AM in Department 16
Order to Show Cause Re: Dismissal (Settlement) - **Not Held - Vacated by Court**

**09/06/2019** at 09:00 AM in Department 16
Order to Show Cause Re: (Monetary Sanctions Against Plaintiff's Counsel for Failure to Appear at OSC hearing of 07-26-19) - **Not Held - Vacated by Court**

**08/16/2019** Notice of Entry of Dismissal and Proof of Service
Filed by ELIZAROV ARTUR (Plaintiff)

**08/14/2019** Request for Dismissal
Filed by ELIZAROV ARTUR (Plaintiff)

**08/14/2019** Declaration (of Ilya Alekseyeff re OSC re sanctions for failure to appear)
Filed by ELIZAROV ARTUR (Plaintiff)

**08/08/2019** Notice (of OSC re Sanctions for Plaintiff's Counsel's Failure to Appear at the July 26, 2019 OSC re Dismissal (Settlement) and Continuance of OSC re Dismissal (Settlement))
Filed by BMW FINANCIAL SERVICES NA, LLC (Defendant)

**07/29/2019** at 09:00 AM in Department 16
Case Management Conference - **Not Held - Vacated by Court**

**07/29/2019** at 09:00 AM in Department 16
Order to Show Cause Re: Failure to File Proof of Service - **Not Held - Vacated by Court**

**07/29/2019** at 09:00 AM in Department 16
Order to Show Cause Re: (Entry of Default;) - **Not Held - Vacated by Court**

**07/26/2019** at 09:00 AM in Department 16
Order to Show Cause Re: Dismissal (Settlement) - **Held - Continued**

**07/26/2019** Minute Order ( (Order to Show Cause Re: Dismissal (Settlement)))
Filed by Clerk

**07/26/2019** Stipulation and Order (Stipulation That the Court May Retain Jurisdiction to Enforce the Settlement Agreement Pursuant to CCP ¿664.6; and Order Thereon)
Filed by BMW FINANCIAL SERVICES NA, LLC (Defendant)

**05/22/2019** Proof of Service (not Summons and Complaint)
Filed by ELIZAROV ARTUR (Plaintiff)

**05/22/2019** Notice of Settlement
Filed by ELIZAROV ARTUR (Plaintiff)

**05/22/2019** Order to Show Cause re: Dismissal (Settlement)
Filed by Clerk

**05/03/2019** Answer
Filed by BMW FINANCIAL SERVICES NA, LLC (Defendant)

**04/10/2019** Proof of Personal Service
Filed by ELIZAROV ARTUR (Plaintiff)

**04/03/2019** Amended Complaint 1st
Filed by ELIZAROV ARTUR (Plaintiff)

**04/03/2019** First Amended Complaint
Filed by ELIZAROV ARTUR (Plaintiff); ELIZAROV ARTUR (Plaintiff)

**03/22/2019** Order to Show Cause (Hearing)
Filed by Clerk

**03/22/2019** Notice of Case Management Conference
Filed by Clerk

**03/22/2019** Order to Show Cause Failure to File Proof of Service
Filed by Clerk

**03/19/2019** Proof of Personal Service
Filed by ELIZAROV ARTUR (Plaintiff)

**03/13/2019** Summons (on Complaint)
Filed by ELIZAROV ARTUR (Plaintiff)

**03/11/2019** Complaint
Filed by ELIZAROV ARTUR (Plaintiff)

**03/11/2019** Civil Case Cover Sheet
Filed by ELIZAROV ARTUR (Plaintiff)

**03/11/2019** Notice of Case Assignment - Unlimited Civil Case
Filed by Clerk

**Andrea Cross**

| | |
|---|---|
| **From:** | Andrea Cross |
| **Sent:** | Thursday, March 25, 2021 11:51 AM |
| **To:** | Artur Elizarov |
| **Subject:** | RE: Unisom |

Understood, we'll note our file.

**WARNING! WIRE FRAUD ADVISORY**
Before sending funds, always call your Escrow team to verify wire information





**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
**P.** (310) 402-5555 ext. 2071 | **E-Fax.** (310) 402-5556
**Direct.** (310) 402-5470
www.escrowofthewest.com


click here for disclosure

We are always looking for ways to improve our service. Please take a moment to
complete this short survey about your recent experience.



**From:** Artur Elizarov [mailto:artur.elizarov@gmail.com]
**Sent:** Thursday, March 25, 2021 11:43 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** Re: Unisom

Let's close then. Well now it makes sense. These guys are a mess. No more communication with Peter. That
clears up my agreement with other unisom cause I also didn't understand why the bank is involved Jesus!

Art

On Thu, Mar 25, 2021 at 2:41 PM Andrea Cross <andrea@escrowofthewest.com> wrote:


EXHIBIT
26

Attached is the Prelim –

<mark>As of 3/3/21, Unisom is the only secured lien</mark>

**WARNING!** WIRE FRAUD ADVISORY

Before sending funds, always call your Escrow team to verify wire information





**Andrea Cross**

Senior Escrow Officer

_____

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210

P. (310) 402-5555 ext. 2071 | E-Fax. (310) 402-5556

Direct. (310) 402-5470

www.escrowofthewest.com



click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.

Rate Your Experience

2

EOTW_000147

**From:** Artur Elizarov [mailto:artur.elizarov@gmail.com]
**Sent:** Thursday, March 25, 2021 11:37 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** Re: Unisom

Is coldwater bank on title report? IF not this makes it easier t oclose. This unisom thing is a mess so I dont understand if that is the total payoff.

On Thu, Mar 25, 2021 at 11:24 AM Andrea Cross <andrea@escrowofthewest.com> wrote:

Sent!

**WARNING!** WIRE FRAUD ADVISORY

Before sending funds, always call your Escrow team to verify wire information



ESCROW OF THE WEST

**Andrea Cross**

Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210

EOTW_000148

P. (310) 402-5555 ext. 2071 | E-Fax. (310) 402-5556

Direct. (310) 402-5470

www.escrowofthewest.com

 

click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.



**From:** Artur Elizarov [mailto:artur.elizarov@gmail.com]
**Sent:** Thursday, March 25, 2021 11:20 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** Re: Unisom

Can u send to Peter ASAP please

On Thu, Mar 25, 2021 at 2:19 PM Andrea Cross <andrea@escrowofthewest.com> wrote:

Revised –

Can you send me copy of the mechanic lien? Its not showing on Prelim

**WARNING! WIRE FRAUD ADVISORY**

Before sending funds, always call your Escrow team to verify wire information

4

EOTW_000149





**Andrea Cross**

Senior Escrow Officer



9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210

**P.** (310) 402-5555 ext. 2071 | **E-Fax**. (310) 402-5556

**Direct**. (310) 402-5470

www.escrowofthewest.com



click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.

Rate Your Experience

**From:** Artur Elizarov [mailto:artur.elizarov@gmail.com]
**Sent:** Thursday, March 25, 2021 11:16 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** Re: Unisom

EOTW_000150

Jourymen Construction, LLC

On Thu, Mar 25, 2021 at 11:14 AM Artur Elizarov <artur.elizarov@gmail.com> wrote:

no the 107 is not coldwater its a lean for consturciotn.

On Thu, Mar 25, 2021 at 11:13 AM Artur Elizarov <artur.elizarov@gmail.com> wrote:

Yes please

On Thu, Mar 25, 2021 at 2:12 PM Andrea Cross <andrea@escrowofthewest.com> wrote:

Please see attached and let me know if approved to send?

**WARNING! WIRE FRAUD ADVISORY**

Before sending funds, always call your Escrow team to verify wire information





**Andrea Cross**

Senior Escrow Officer

9440 Santa Monica Blvd, Suite 310, Beverly Hills, CA, 90210

6

EOTW_000151

P. (310) 402-5555 ext. 2071 | E-Fax. (310) 402-5556

Direct. (310) 402-5470

www.escrowofthewest.com

 

click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.



**From:** Artur Elizarov [mailto:artur.elizarov@gmail.com]
**Sent:** Thursday, March 25, 2021 11:06 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** Re: Unisom

anyway to include the incoming lean amount and just send it to them so they can figure out what they are going to waive? The amount is 107,270.

On Thu, Mar 25, 2021 at 10:42 AM Andrea Cross <andrea@escrowofthewest.com> wrote:

Will do!

**WARNING! WIRE FRAUD ADVISORY**

Before sending funds, always call your Escrow team to verify wire information

EOTW_000152





**Andrea Cross**

Senior Escrow Officer

---

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210

P. (310) 402-5555 ext. 2071 | E-Fax. (310) 402-5556

**Direct.** (310) 402-5470

www.escrowofthewest.com



click here for disclosure

We are always looking for ways to improve our service. Please take a moment to
complete this short survey about your recent experience.



**From:** Artur Elizarov [mailto:artur.elizarov@gmail.com]
**Sent:** Thursday, March 25, 2021 10:42 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** Unisom

8

**180**

EOTW_000153

Andrea-

Can you provide the Unisom Letter along with just the closing costs and purchase price to Pete at
coldwater bank. Please tell him you are still working on the the full itemized closing statement and will
provide once its ready.

Art

9

**181**

EOTW_000154

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:21-cv-00616-JWH (SPx) | Date | August 3, 2022 |
|---|---|---|---|
| Title | Goldwater Bank, N.A. v. Artur Elizarov, et al. | | |

| Present: The Honorable | Sheri Pym, United States Magistrate Judge | |
|---|---|---|
| Kimberly Carter | None | None |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings:** **(In Chambers) Order Denying Defendant/Counter-Claimant's Ex Parte Application to Stay Compliance With Subpoenas But Ordering Sequestration of Responsive Information [171]**

On July 31, 2022, defendant/counter-claimant Artur Elizarov filed an ex parte application ("App.") for an order staying compliance with third-party subpoenas. Docket nos. 171-72. The application is supported by the declaration of defendant's counsel Ilya Alekseyeff ("Alekseyeff Decl.") and multiple exhibits. Plaintiff/cross-defendant Goldwater Bank, N.A. opposed the application on August 2, 2022. Opp., docket no. 173. It appears the other parties do not oppose or take a position on the application. Defendant filed a reply on August 2, 2022. Docket no. 174. For the following reasons, the court denies defendant's application, but orders sequestration of responsive information until resolution of defendant's planned motion to quash.

On June 29, 2022, defendant's counsel advised all other counsel in this case that he would be occupied by a criminal trial from approximately July 27 to August 5, 2022. *See* Alekseyeff Decl. ¶¶ 18-22, 27. On July 28, 2022, plaintiff notified defendant of three subpoenas duces tecum served on eCivis, Inc., PaeDae, Inc., and Rite Care Hospice, Inc. *Id.* ¶¶ 4-8. Defendant immediately contacted plaintiff to explain that he intended to object to the subpoenas on privacy grounds. *Id.* ¶¶ 30-32. Defendant asked plaintiff to stay compliance with the subpoenas until defendant could file a motion to quash, which defense counsel would be unable to submit until after the end of his trial. *Id.* ¶ 32. Defense counsel claims he needs until at least August 15, 2022 to file his motion, three days before compliance with the subpoenas is required. App. at 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 5:21-cv-00616-JWH (SPx) | Date | August 3, 2022 |
|---|---|---|---|
| Title | Goldwater Bank, N.A. v. Artur Elizarov, et al. | | |

Plaintiff opposes a stay, arguing that what matters is that defendant will be able to file a motion before August 18, even if it is not ruled on until after compliance with the subpoenas. *See* Opp. at 3. If the subpoenaed entities produce documents, plaintiff offers to keep them sequestered until the court resolves the parties' dispute. *See id.* Plaintiff contends that staying compliance will delay the proceedings unnecessarily. *See id.* Plaintiff also argues the merits of its subpoenas as part of its opposition. *See id.* at 2-5.

In his reply, defendant contends that the information requested by the subpoenas is irrelevant to this case. *See* Reply at 2-3. He also argues that plaintiff's offer to sequester responsive documents is insufficient to protect his privacy because plaintiff's counsel engaged in gamesmanship by serving the subpoenas while defense counsel was busy with his trial. *See id.* at 3. Simply put, defense counsel does not trust plaintiff's counsel's unenforceable promise to not look at responsive documents until the motion to quash is resolved. *See id.*

"Ex parte motions are rarely justified . . . ." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). To justify ex parte relief, the moving party must, at a minimum, show: (1) its "cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492. In addition, Central District of California Local Rule 37-3 provides that "[u]nless the Court in its discretion otherwise allows, no discovery motions may be filed or heard on an ex parte basis absent a showing of irreparable injury or prejudice not attributable to the lack of diligence of the moving party."

Here, starting with the second *Mission Power* factor, defendant acted promptly to preserve his challenge to the subpoenas. Defense counsel is currently trying what appears to be a sensitive criminal case, and so it cannot be persuasively argued that he is at fault in creating the crisis that necessitated the instant application to stay.

As for the first factor, however, the court is not convinced that defendant would be irreparably prejudiced if compliance is allowed subject to sequestration until the motion to quash is resolved. In fact, Federal Rule of Civil Procedure 45 provides that whenever information responsive to a subpoena is subject to a claim of privilege, the subpoenaing party may sequester the information until determination of the privilege claim. *See* Fed.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 5:21-cv-00616-JWH (SPx) | Date | August 3, 2022 |
|---|---|---|---|
| Title | Goldwater Bank, N.A. v. Artur Elizarov, et al. | | |

R. Civ. P. 45(e)(2)(B). This principle is just as applicable to a claim of privacy, which unlike a traditional privilege, is not an absolute bar to discovery. *Allen v. Woodford*, 2007 WL 309485, at *6 (E.D. Cal. Jan. 30, 2007) (citation omitted). The court recognizes that plaintiff's timing in serving the subpoenas was not ideal, but the court is hesitant to find a bad motive simply because of that. Indeed, the discovery cut-off date is fast-approaching, so it is not unreasonable for all parties to pursue any remaining discovery as quickly as possible. Additionally, an order to sequester responsive documents will not be unenforceable as defendant argues. Plaintiff and its counsel may be subject to sanctions if they view or attempt to use any of the responsive documents without the court's prior approval.

Accordingly, because defendant fails to satisfy the first *Mission Power* factor, his ex parte application for an order staying compliance with plaintiff's subpoenas (docket no. 171) is denied. Nevertheless, under its discretion to manage discovery, the court orders plaintiff to sequester all information obtained through the subpoenas until the court rules on defendant's planned motion to quash. Neither plaintiff nor its counsel nor other representative may review, disseminate, or use the subpoenaed information until the court issues an order resolving defendant's privacy claims. To avoid additional delay, the parties are ordered to follow the procedures for non-discovery motions set forth in Local Rules 6-1 and 7. Counsel must meet and confer about defendant's contemplated motion to quash and any potential resolution no later than August 9, 2022. If the parties are unable to resolve their dispute, defendant must file his motion no later than August 16, 2022 and notice it for hearing on September 13, 2022.

Sean C. Wagner (Pro Hac Vice)
Derek M. Bast (Pro Hac Vice)
**WAGNER HICKS PLLC**
831 East Morehead Street, Suite 860
Charlotte, North Carolina 28202
Tel: (704) 705-7538
Fax: (704) 705-7787

John Forest Hilbert, Esq. (SBN 105827)
Joseph A. LeVota, Esq. (SBN 226760)
**HILBERT & SATTERLY LLP**
409 Camino del Rio S. #104
San Diego, California 92108
Telephone:  (619) 795-0300
Facsimile:   (619) 501-6855

Counsel for Plaintiff
GOLDWATER BANK, N.A.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDWATER BANK, N.A., <br><br> Plaintiff, <br><br> v. <br><br> ARTUR ELIZAROV, ET AL. <br><br> Defendants. | Case No. 5:21-cv-00616-JWH-SPx <br><br> **PLAINTIFF GOLDWATER BANK, N.A.'S RESPONSES TO ARTUR ELIZAROV'S FIRST SET OF INTERROGATORIES** |

PROPOUNDING PARTY:      Defendant Artur Elizarov

ANSWERING PARTY:      Plaintiff Goldwater Bank, N.A.

SET NO.:      One

NOW COMES Plaintiff Goldwater Bank, N.A. ("Goldwater"), by and through counsel, and responds to Defendant Artur Elizarov's ("Elizarov") First Set of Interrogatories (the "Interrogatories") as follows:

**2.** Does GOLDWATER contend that ELIZAROV made false statements of fact in FORBEARANCE APPLICATION that GOLDWATER found important in deciding whether to approve FORBEARANCE APPLICATION? If so, state:

    **2.1.** All facts on which GOLDWATER based its contention, including, at the minimum, each false statement of fact, the reasons why GOLDWATER contends that each such statement was false, and the reasons why GOLDWATER found each such statement important in deciding whether to approve FORBEARANCE APPLICATION;

    **2.2.** Legal name and CONTACT INFORMATION of each WITNESS who has personal first-hand knowledge of the facts stated in the answer to subpart 2.1 and a description of the means by which each WITNESS learned those facts;

    **2.3.** A description of all EVIDENCE that supports the existence of the facts stated in the answer to subpart 2.1; and

    **2.4.** Legal name and CONTACT INFORMATION of each PERSON who currently has custody, possession, or control of each item of EVIDENCE stated in the answer to subpart 2.3.

    **RESPONSE:**     **Goldwater objects to Interrogatory No. 2 to the extent it is a contention interrogatory that potentially seeks attorney-client privileged and attorney-work product information. This matter is in the early stage of discovery,**

and Goldwater's views about the application of the facts to the relevant law are subject to change as discovery progresses. Goldwater further objects to this request to the extent it asks for information outside of Goldwater's possession, custody, or control, since evidence of the truthfulness or falsity of Elizarov's statements on his forbearance application is likely to reside with Elizarov or with third parties. In addition, Goldwater objects to this interrogatory as improperly compound, resulting in the total number of interrogatories exceeding the limits of Fed. R. Civ. P. 33(a)(1). Subject to and without waiving its objections, Goldwater contends that Elizarov's statement that his current financial assets only included $3,500 in checking accounts and cash on hand was false, based on evidence of other accounts in Elizarov's name, including the JP Morgan savings account reported on his loan application. Elizarov also falsely represented to Goldwater that the Palm Springs property was his primary residence, when he had already signed a 12-month lease for an apartment in Florida just weeks prior.

Evidence of these, as well as other, false statements can be ascertained through the business records being produced in response to Elizarov's discovery requests pursuant to Fed. R. Civ. P. 33(d).

Employees Amanda Uhrig, Melanie Gonzales, Leticia Aguilar, and Renita Nolan communicated with Elizarov regarding his forbearance application and have knowledge of the same. These individuals are employees of Weststar Mortgage Corporation ("Weststar"), which is an entity affiliated with Goldwater who handled the servicing of Elizarov's loan. Goldwater employee Pete Hill also has general knowledge of Elizarov's forbearance application. They can be reached through undersigned counsel.

Dated:  April 22, 2022.

WAGNER HICKS PLLC
By:  ___/s/ Derek M. Bast_____
        Sean C. Wagner, Esq.
        Derek M. Bast, Esq.

        And

HILBERT & SATTERLY LLP
By: /s/ Joseph A. Levota_____
        John Forest Hilbert, Esq.
        Joseph A. LeVota, Esq.


*ATTORNEYS FOR GOLDWATER BANK, N.A.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

GOLDWATER BANK, N.A.,

Plaintiff,

v.

ARTUR ELIZAROV, ET AL.

Defendants.

Case No. 5:21-cv-00616-JWH-SPx

**VERIFICATION**

I, Peter Hill, an authorized agent of Goldwater Bank, N.A., declare under penalty of perjury that I have reviewed the foregoing answers to interrogatories, and I am personally familiar with the information contained therein. The information contained therein is true and correct to the best of my knowledge and investigation.

This the 22nd day of April, 2022.

Peter Hill

Sean C. Wagner (Pro Hac Vice)
Derek M. Bast (Pro Hac Vice)
**WAGNER HICKS PLLC**
831 East Morehead Street, Suite 860
Charlotte, North Carolina 28202
Tel: (704) 705-7538
Fax: (704) 705-7787

John Forest Hilbert, Esq. (SBN 105827)
Joseph A. LeVota, Esq. (SBN 226760)
**HILBERT & SATTERLY LLP**
409 Camino del Rio S. #104
San Diego, California 92108
Telephone:  (619) 795-0300
Facsimile:   (619) 501-6855

Counsel for Plaintiff
GOLDWATER BANK, N.A.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDWATER BANK, N.A., | Case No. 5:21-cv-00616-JWH-SPx |
| Plaintiff, | |
| v. | **PLAINTIFF GOLDWATER BANK, N.A.'S RESPONSES TO ARTUR ELIZAROV'S FIRST SET OF REQUESTS FOR PRODUCTION** |
| ARTUR ELIZAROV, ET AL. | |
| Defendants. | |

PROPOUNDING PARTY:      Defendant Artur Elizarov

ANSWERING PARTY:      Plaintiff Goldwater Bank, N.A.

SET NO.:      One

NOW COMES Plaintiff Goldwater Bank, N.A. ("Goldwater"), by and through counsel, and responds to Defendant Artur Elizarov's ("Elizarov") First Set of Interrogatories (the "Interrogatories") as follows:

---



2.      All items that GOLDWATER listed in response to interrogatory 2.3 in INTERROGATORIES. If the records include emails, GOLDWATER must produce these emails in one of the following electronic formats: EML, MBOX, or MSG. If GOLDWATER cannot produce the emails in these electronic formats (which is highly unlikely because all modern email systems use at least one of these formats), then GOLDWATER must produce a legible text-searchable PDF copy of the emails organized chronologically with all the header information attached to each email. If the records include Short Message Service (SMS), Multimedia Messaging Service (MMS) messages,

or messages transmitted over the Internet (e.g., through Slack, WhatsApp, Telegram, Facebook Messenger, etc.), GOLDWATER must produce these records in one of these electronic formats: JSON or XML. If GOLDWATER cannot produce the records in one of these formats, then GOLDWATER must produce a continuous text-searchable PDF printout of the messages organized chronologically showing the dates and the times of each message.

**RESPONSE:** **To the extent that this Request relies on Interrogatory No. 2, Goldwater reasserts its objections raised in response to Interrogatory No. 2. Goldwater also objects to the phrase "items listed in response to interrogatory 2.3" because the phrase items is vague, and interrogatory 2.3 refers broadly to "evidence," which would include non-documentary evidence, testimonial evidence, and items not in Goldwater's possession, custody, or control. Goldwater further objects under Fed. R. Civ. P. 34(b)(2)(D) to Elizarov's request that Goldwater produce all responsive emails in native formats with file extension EML, MBOX, or MSG. This matter has already been actively litigated for more than a year, and Goldwater has already collected the vast majority of the relevant emails in searchable PDF format. Additionally, Goldwater has obtained relevant emails from third-parties, which were provided to Goldwater in PDF, rather than native, format as well. As such, Goldwater intends to produce responsive emails in searchable PDF format. Subject to and without waiving its objections, Goldwater will produce all non-privileged, responsive documents supporting Goldwater's contention that Elizarov made false statements of fact in his forbearance application.**

Dated:  April 22, 2022.

                              WAGNER HICKS PLLC
                              By: _____/s/ Derek M. Bast_____
                                        Sean C. Wagner, Esq.
                                        Derek M. Bast, Esq.

                                        And

                              HILBERT & SATTERLY LLP
                              By: /s/ Joseph A. Levota_____
                                        John Forest Hilbert, Esq.
                                        Joseph A. LeVota, Esq.


                              *ATTORNEYS FOR GOLDWATER BANK, N.A.*

ILYA ALEKSEYEFF [CA 242462]
 ilya@loia.legal
LOIA, INC. (APLC)
727 W 7th St PH 1-13
Los Angeles, CA 90017
Tel: (213)537-4592

Attorney for Artur Elizarov

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GOLDWATER BANK, NA**, *Plaintiff,* | **5:21-cv-616-JWH-SP** |
| **vs.** | TENTATIVE NOTICE OF MOTION FOR SANCTIONS UNDER RULE 11 |
| **ARTUR ELIZAROV, ET AL.,** *Defendant.* | Date: TBD Time: 9:00 am Court: Hon. John W. Holcomb |

**To Goldwater Bank, NA, Scott Howlett, Bank of the West, Unison Credit Corp.; attorneys Derek Bast, Marie Maurice, and Joseph LeVota; and law offices of Wagner Hicks, PLLC, Ivie McNeill Wyatt Purcell & Diggs, and Hilbert & Satterly LLP:**

No earlier than 9:00 am on September 30, 2022*, in Courtroom 9D of the United States District Court for the Central District of California located at Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th Street, Santa Ana, California 92701-4516, The Honorable John W. Holcomb, District Judge, defendant Artur Elizarov will move for the following sanctions against plaintiff Goldwater Bank, NA, attorneys Derek Bast, Marie Maurice, and Joseph LeVota,

and law offices of Wagner Hicks, PLLC, Ivie McNeill Wyatt Purcell & Diggs, and Hilbert & Satterly LLP (collectively, "counselors"): monetary sanctions against counselors; an order dismissing the entire verified complaint (EFD # 44) or, at the minimum, dismissing the causes of action for fraud, conspiracy to commit fraud, fraudulent transfer, and unjust enrichment; an order that attorney Derek Bast report the sanction to the North Carolina Bar; and an order that attorneys Maurice and LeVota report the sanction to the California State Bar.

Elizarov will seek the order for the following reasons:

1.      The claims of fraud as alleged in the third cause of action of the amended verified complaint (Ex. OO) lacked evidentiary support and was not warranted by existing law, a violation of Rule 11(b)(2) & (b)(3).

a.      The following allegation is demonstrably false: Elizarov falsely reported his marital status. Elizarov reported that Elizarov had a "husband" to Goldwater's loan officer Gregory Hill on July 9th and July 11th 2019. Therefore, the allegation lacked evidentiary support. Fed. R. Civ. P. 11(b)(3). The allegation was also not warranted by the law. Fed. R. Civ. P. 11(b)(2). The Equal Credit Opportunity Act prohibited Goldwater from considering Elizarov's marital status in making the lending decision. Therefore, the information was immaterial as a matter of law.

b.      The following allegation is demonstrably false: Elizarov did not report the BMW lawsuit. Elizarov reported the lawsuit as well as its settlement to Gregory Hill on July 10th 2019. The notice of unconditional settlement, the request for dismissal, the stipulation and order to retain jurisdiction, and Alekseyeff's declaration regarding the proceedings in the BMW litigation were all publicly available and accessible before counselors filed the lawsuit. Therefore, the allegation lacked evidentiary support. Fed. R. Civ. P. 11(b)(3).

c.      The following allegation is demonstrably false: Elizarov failed to report that Elizarov was in default on a federal debt, including the IRS debt.

Goldwater admitted that Goldwater had no evidence to support this allegation. Goldwater could not identify a single debt that Elizarov had allegedly defaulted on. At the time Elizarov applied for the loan in July 2019, Elizarov no longer had the IRS debt that was subject to the lien. (Goldwater relied on the recorded lien as the sole evidence of the alleged default.) Elizarov paid off the debt in January 2018 when Elizarov sold a house in Valley Village, California. Therefore, the allegation lacked evidentiary support. Fed. R. Civ. P. 11(b)(3).

        d.     By its admission, Goldwater had no evidence to support the following allegations: Elizarov's income and assets in May 2020 (when Elizarov applied for forbearance) exceeded $1,050.00 per week and $3,500 cash on hand, respectively. Therefore, the allegation lacked evidentiary support. Fed. R. Civ. P. 11(b)(3). The information about Elizarov's income and assets was also *immaterial* as a matter of law because the CARES Act did not allow Goldwater to consider this information and instead required Goldwater to grant the forbearance based solely on Elizarov's request and an affirmation of hardship. Therefore, the allegation was not warranted by the law. Fed. R. Civ. P. 11(b)(2).

        e.     (i) Goldwater lacked evidentiary support to support this allegation: With the intent to induce Goldwater not to "interfere with the sale" or "rush to record the Deed of Trust," Elizarov represented that the property was subject to a mechanic's lien and orally promised to pay Goldwater $675,000 from the sale proceeds. Goldwater admitted that it had no evidence to show that Elizarov's intention was to induce reliance rather than to pay Goldwater less than Elizarov owed. This admission negates the fraudulent intent. Goldwater also has no evidence to show reliance damages. Goldwater found out that the deed was unrecorded only because Elizarov engaged in settlement discussion. Had Elizarov told Goldwater nothing about other lien nor promised to pay $675,000, Goldwater still would have received nothing from the sale. Therefore, any losses that Goldwater suffered did not result from Elizarov's alleged misrepresentations

during the settlement discussions but from Goldwater's incompetent failure to record the deed of trust. (ii) The allegation is also not warranted by the law. By Goldwater's admission, the parties did not have an agreement that required Elizarov to pay $675,000 to Goldwater. If the agreement existed, the agreement was unenforceable under the Statute of Frauds. The agreement also lacked consideration. In its fraud claim, Goldwater sought to use tort law to enforce the unenforceable and non-existing agreement. Binding California precedent did not allow Goldwater to use the tort law in this manner.

2.      The claim of conspiracy as alleged in the fifth cause of action of the amended verified complaint (Ex. OO) lacked evidentiary support, a violation of Rule 11(b)(3). Goldwater admitted that Goldwater had no evidence to show that Alekseyeff knew of or agreed that Elizarov should represent anything to Goldwater. The allegation was also not warranted by the law, a violation of Rule 11(b)92). Alekseyeff had no relationship with Goldwater and owed Goldwater no duty to make any statements. Therefore, Alekseyeff is not liable for conspiracy as a matter of law.

3.      The claim for unjust enrichment, as alleged in the second cause of action of the amended verified complaint (Ex. OO) lacked evidentiary support, a violation of Rule 11(b)(3). Goldwater admitted in its pleading and in discovery that the note and the deed of trust were valid and enforceable. A claim under a valid and enforceable agreement cannot support a claim for unjust enrichment as a matter of law. Therefore, Goldwater had no basis to allege the claim.

4.      The legal claim of fraudulent transfer as alleged in the fourth cause of action of the amended verified complaint (Ex. OO) was not warranted by the law, a violation of Rule 11(b)(2). By paying pre-existing debt, Elizarov merely preferred one creditor over another. Such a preference does not support the intent to defraud creditors as a matter of law. Therefore, there is no legal basis to support this allegation.

The motion will be based on this notice, the memorandum supporting this motion, declarations of Ilya Alekseyeff and Artur Elizarov, exhibits A through MM, requests for judicial notice, a reply memorandum, and any evidence submitted in rebuttal.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on _____.*

**To avoid this motion, which Elizarov will file with the court on September 2, 2022, twenty-five days after service, counselors must, no later than 11:59 PM Pacific Time on September 1, 2022, twenty-four days after service, withdraw from the amended verified complaint (EFD # 44) the second cause of action for unjust enrichment, the third cause of action for fraud, the fourth cause of action for fraudulent transfer, and the fifth cause of action for conspiracy.**

*This notice will be amended to reflect the confirmed hearing date and the conference date prior to filing.  Fed. R. Civ. P. 11(c)(2) (safe harbor).

Dated: 08/08/2022                    LOIA, INC. (APLC)


_Ilya Alekseyeff_

By Ilya Alekseyeff
Attorney for Artur Elizarov

## CERTIFICATE OF SERVICE

I, Ilya Alekseyeff, certify that on August 8, 2022, I served the attached "TENTATIVE NOTICE OF MOTION FOR SANCTIONS UNDER RULE 11" by mail as follows:

| | |
|---|---|
| Derek Bast<br>Wagner Hicks, PLLC<br>831 E Morehead St Ste 860<br>Charlotte, NC 28202 | Joseph LeVota<br>Hilbert Satterly LLP<br>409 Camino del Rio St Ste 104<br>San Diego, CA 92108 |
| Marie Maurice<br>Ivie McNeill Wyatt Purcell & Diggs,<br>444 S Flower St Fl 18<br>Los Angeles, CA 90071-2919 | |

I further certify that on that on August 8, 2022, I also served the attached "TENTATIVE NOTICE OF MOTION FOR SANCTIONS UNDER RULE 11" by email as follows:

1. Derek Bast, derek.bast@waghernicks.law
2. Marie Maurice, mmaurice@imwlaw.com
3. Joseph LeVota, jlevota@hscallaw.com
4. Ryan Thomason, rthomason@hallgriffin.com
5. Nabil Bisharat, nbisharat@orsusgate.com

I declare under penalty of perjury under the laws of the United States that the above certification is true and correct.

Date: 08/08/2022          Signature: _____

DOC # 2021-0196602
03/29/2021 04:55 PM Fees: $17.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: REGINA #080

**RECORDING REQUESTED BY:**
Orange Coast Title

**AND WHEN RECORDED MAIL TO:**

Scott Howlett
44 Hartford
San Francisco, CA 94144

THIS SPACE FOR RECORDER'S USE ONLY:

| Title Order No.: 210-2216078-10 | | Escrow No.: 02-035523-AC |
|---|---|---|

APN 513-363-623
TRA 011

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)

### DOCUMENTARY TRANSFER TAX is $1,490.50

[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area   [X] City of Palm Springs **AND**

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Artur Elizarov, a Single Man**

hereby GRANT(s) to:

**Scott Howlett, a Single Man**

the real property in the City of Palm Springs, County of Riverside, State of California,
described as:
Lot 8 of Block 7, Palm Canyon Mesa Tract as per map recorded in Book 12, Pages 52 to 56
both inclusive of Maps, in the office of the County of said county.

Also Known as:  291 W. Overlook Road, Palm Springs, CA  92264
APN#: 513-363-023-2

**DATED: March 22, 2021**

**Signature Page attached hereto
and made a part hereof**

MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE:

GOLDWATER_000162

Title Order No.: 210-2216078-10
Escrow No.: 02-035523-AC

APN# 513-363-023-2

**Signature Page**

_____
Artur Elizarov

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF _Florida_

COUNTY OF _Broward_

On _03/25/21_ before me, _Antonio Perez_ A Notary Public personally appeared _Artur Elizarov_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____ (Seal)

MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS SHOWN

**ANTONIO PEREZ**
Commission # HH 079732
Expires January 12, 2025
Bonded Thru Budget Notary Services

GOLDWATER_000163

Re: Activity in Case 5:21 cv 00616 JWH SP Goldwater Bank, N.A. v. Artur Elizarov et al Order on Ex Parte Application for Relief of Discovery Matter

Ilya ALEKSEYEFF <ilya@loia.legal>

Mon 2022-08-08 1:05 PM

To  Derek Ba t <derek ba t@wagnerhick  law>

Derek,

Thank you for taking my call.

To recap:

1  I will not move to quash PaeDae subpoena because you did not seek Mr  Elizarov's financial information.

2. You affirmed that you had stopped the service of the subpoena on the EDD because you agreed with my privilege claim

3  We discussed the scope of discovery  You told me that Mr  Elizarov's income information from Rite Care was relevant to show that Mr. Elizarov lied about his income in the loan application.  I reminded you that the complaint did not allege any such fraud and represented that the scope of discovery in general and in fraud cases in particular did not allow Goldwater to seek discovery for the purpose of uncovering some additional, unalleged misconduct   I also promised to send you authorities on that point.  I will do so shortly in a separate email.

4. We discussed the CARES Act.  I advised you that *if* the information about income and assets were material (i e , Goldwater could rely on the information in making the forbearance decision), then Goldwater could arguably get discovery on those issues.  However, I also mentioned that the CARES Act did not allow Goldwater to require proof of hardship  Once Mr  Elizarov requested a forbearance and affirmed the existence of hardship, Goldwater *had to* approve the application. When you questioned whether CARES Act applied to the loan, I also mentioned that the discovery that I received from you repeatedly referred to Mr. Elizarov's loan as a "conventional FNMA" loan, which certainly suggests that the loan qualified for CARES Act   I also suggested that you look into this issue because the outcome of the motion may hinge on it.

5. I confirmed that Goldwater's answer to the motion to quash in Florida Southern District was due Monday, August 15, 2022

6  You allowed me until this Friday to send you back my input on the joint stipulation re  Goldwater discovery motions (thank you).

7. We discussed deposition dates.  I am available on these dates in August: 19, 26, 29, 30.  Mr. Elizarov is not available in August   I will send you the date for both Mr  Elizarov and me in September shortly.

Let me know if I missed anything

Thank you.

Sincerely,
**LOIA, Inc. (APLC)**

*Ilya Alekseyeff*

**Mr. Ilya Alekseyeff**
*Attorney at Law (CA, FL & NY)*
727 W 7th St PH 1-13
Los Angeles, CA 90017
Tel: (213)537-4592
E-mail: ilya@loia.legal

---

## Goldwater v. Elizarov, CACD 5:21-cv-616 - additional authorities

Ilya ALEKSEYEFF <ilya@loia.legal>

Mon 2022-08-08 1:36 PM

To: Derek Bast <derek.bast@wagnerhicks.law>
Bcc: Clio Maildrop (1449395076) <e478ba47d+matter1449395076@maildrop.clio.com>

Derek,

Here are the authorities that I promised you:

***Discovery is limited to the issues alleges in the pleading. Discovery may not be obtained to develop new claims not alleged in the complaint.***

"Pursuant to Rule 26 of the Federal Rules of Civil Procedure, parties may obtain discovery regarding any matter that is not privileged, which is relevant to the claim or defense of any party. Parties have no entitlement to discovery to develop new claims or defenses that are not identified in the pleadings."

*In re Remec, Inc. Securities Litigation*, Civil No. 04cv1948 JLS (AJB), at *3 (S.D. Cal. May 30, 2008).

"However, discovery should be used to flesh out claims, not search for new ones."

*Feigel v. F.D.I.C.*, 935 F. Supp. 1090, 1101 n.7 (S.D. Cal. 1996).

"Plaintiffs may not use discovery to develop new claims or defenses that are not asserted in the pleadings."

*Corker v. Costco Wholesale Corp.*, Cause No. C19-0290RSL, at *3 (W.D. Wash. Dec. 4, 2020).

"Plaintiff may not use discovery to develop new claims that are not already identified in the pleadings."

*PARKS v. TAIT*, No. 08-CV-1031-H (JMA), at *7 (E.D. Cal. Dec. 4, 2009).

"parties are not entitled to discovery to develop new claims or defenses that are not identified in the pleadings"

*Jacobson v. Persolve*, LLC, No. C14-00735 LHK (HRL), at *3 (N.D. Cal. Apr. 1, 2015).

I have many more opinions, all saying the same thing. But I think that five citations should be sufficient.

***The rule is even stricter for fraud claims. To allege fraud, the plaintiff must have all the facts supporting the claim before filing the complaint. The claim may not be based on information developed in discovery.***

"A plaintiff must identify the complete facts supporting a fraud claim before alleging fraud in its complaint: allegations of fraud may not depend on facts to be uncovered in discovery."

*Bernstein v. Vocus, Inc.*, No. 14-cv-01561-TEH, at *10 (N.D. Cal. July 23, 2014).

"these heightened pleading requirements [under Rule 9] exist to 'eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed.'"

*Staton v. Bac Home Loans Servicing, L.P.*; No. 6:10-cv-01306-AA, at *15 (D. Or. May 9, 2012), internal citations omitted.

"plaintiffs' speculation that discovery will yield further evidence of fraud is insufficient."

*Johnson v. First Federal Bank of California*, Case No.: C 08-0264 PVT, [and related case C 08-01796 PVT], at *8 (N.D. Cal. Nov. 26, 2008), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("[f]actual allegations must be enough to raise a right of relief above the speculative level . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact.")

In these cases, courts granted Rule 12(b) motions because plaintiffs promised to obtain the information supporting the improperly alleged claim of fraud in discovery. Here, you are seeking to do something worse: you are trying to obtain discovery on the issue of fraud that you did not even bother alleging. Federal rules do not permit such practice. Therefore, you may not obtain Mr. Elizarov's pre-loan application income information to verify whether Mr. Elizarov misrepresented his income.

Thank you.

Sincerely,

**LOIA, Inc. (APLC)**

*Ilya Alekseyeff*

**Mr. Ilya Alekseyeff**
*Attorney at Law (CA, FL & NY)*
727 W 7th St PH 1-13
Los Angeles, CA 90017
Tel: (213)537-4592
E-mail: ilya@loia.legal

## Re: Goldwater v. Elizarov, CACD 5:21-cv-616

Ilya ALEKSEYEFF <ilya@loia.legal>

Fri 2022-08-12 4:05 PM

To: Derek Bast <derek.bast@wagnerhicks.law>
Cc: Sean Wagner <sean.wagner@wagnerhicks.law>

Why offer me your belief? Your client should have records. What I have so far has FNMA written all over it. Doors your client has something to show they FNMA rejected the loan?

I will send you the records that I'm referring to shortly.

Also, many California moans are nonconforming but still FNMA insured.

---

**From:** Derek Bast <derek.bast@wagnerhicks.law>
**Sent:** Friday, August 12, 2022 3:56:35 PM
**To:** Ilya ALEKSEYEFF <ilya@loia.legal>
**Cc:** Sean Wagner <sean.wagner@wagnerhicks.law>
**Subject:** RE: Goldwater v. Elizarov, CACD 5:21-cv-616

Thanks, Ilya.

On the CARES Act, I do believe that Elizarov's loan was not a federally-backed loan subject to the CARES Act. The loan principal was $686,250, which is in excess of the FHFA limits for conforming loans that could be backed by Fannie and Freddie. (https://www.fhfa.gov/Media/PublicAffairs/Pages/FHFA-Announces-Maximum-Conforming-Loan-Limits-for-2019.aspx). The limit for single-family homes in Riverside County, CA in 2019 was $484,350. (2019 spreadsheet of county-by-county limits is available here: https://www.fhfa.gov/DataTools/Downloads/Pages/Conforming-Loan-Limit.aspx)

**Derek M. Bast**
Wagner Hicks PLLC
704.705.8311
derek.bast@wagnerhicks.law

---

**From:** Ilya ALEKSEYEFF <ilya@loia.legal>
**Sent:** Friday, August 12, 2022 3:59 PM
**To:** Derek Bast <derek.bast@wagnerhicks.law>
**Subject:** Goldwater v. Elizarov, CACD 5:21-cv-616

Derek,

Here's my joint stip and my exhibits. Please, send a complete PDF to me for signature after you review these documents.

I plan to file my motion to qash this coming Monday. When we spoke this past Monday, I asked you to get back to me regarding the CARES Act. You have not. If you have a position on the issue or evidence showing that the CARES Act did not apply, please share it with me right away.

Thank you.

Sincerely,

**LOIA, Inc. (APLC)**

*Ilya Alekseyeff*

**Mr. Ilya Alekseyeff**
*Attorney at Law (CA, FL & NY)*
727 W 7th St PH 1-13
Los Angeles, CA 90017
Tel: (213)537-4592
E-mail: ilya@loia.legal

ILYA ALEKSEYEFF [CA 242462]
  ilya@loia.legal
LOIA, INC. (APLC)
727 W 7th St PH 1-13
Los Angeles, CA 90017
Tel: (213)537-4592

Attorney for Artur Elizarov

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GOLDWATER BANK, NA**,<br><br>*Plaintiff,*<br><br>vs.<br><br>**ARTUR ELIZAROV ET AL**,<br><br>*Defendant.* | **5:21-cv-616-JWH-SP**<br><br>REQUESTS FOR JUDICIAL NOTICE SUPPORTING ARTUR ELIZAROV'S MOTION TO QUASH GOLDWATER BANK, NA'S SUBPOENAS *DUCES TECUM* TO RITE CARE HOSPICE, INC. AND ECIVIS, INC.<br><br>Date: 09/13/2022<br>Time: 9:00 am<br>Court: Hon. Sheri Pym<br><br>Date filed: 04/06/2021<br>Amendment filed: 05/24/2021<br>Discovery cut-off: 10/14/2022<br>Status conference: 02/03/2023<br>Jury trial: 02/27/2023 |

Defendant Artur Elizarov request that the court take judicial notice of the following facts:

1.      The case entitled *Artur Elizarov v. BMW Financial Services NA, LLC* was filed in Los Angeles Superior Court under case number 19STCV08507 on March 11, 2022.  Ex. Z-1.  Fed. R. Evid. 201(b)(2) & (c)(2); *Kasey v. Molybdenum Corp. of America*, 336 F.2d 560, 563 (9th Cir. 1964) (court take judicial notice of state court records).

2.      Plaintiff Artur Elizarov filed a notice of unconditional settlement of the entire case in Los Angeles Superior Court case 19STCV08507 entitled *Artur Elizarov v. BMW Financial Services NA, LLC* on May 22, 2019.  Ex. X.  Fed. R. Evid. 201(b)(2) & (c)(2); *Kasey v. Molybdenum Corp. of America*, 336 F.2d 560, 563 (9th Cir. 1964) (court take judicial notice of state court records).

3.      The court dismissed Los Angeles Superior Court case 19STCV08507 entitled *Artur Elizarov v. BMW Financial Services NA, LLC* on August 14, 2019.  Ex. Z-1.  Fed. R. Evid. 201(b)(2) & (c)(2); *Kasey v. Molybdenum Corp. of America*, 336 F.2d 560, 563 (9th Cir. 1964) (court take judicial notice of state court records).

4.      The grant deed from Mr. Artur Elizarov to Mr. Scott Howlett regarding real property located at 291 W Overlook Road in Palm Springs, California, was recorded in Riverside County at 4:55 pm on March 29, 2021, instrument number 2021-0196602.  Ex. FF.  Fed. R. Evid. 201(b)(2) & (c)(2); *Western Federal Sav. & Loan Ass'n v. Heflin Corp.,* 797 F. Supp. 790, 792 (N.D. Cal. 1992) (taking judicial notice of various deeds of trust and a state court foreclosure action file).

5.      The Internal Revenue Service recorded in Los Angeles County a Certificate of Release of Federal Tax Lien on December 18, 2019.  Ex. O.  Fed. R.

Evid. 201(b)(2) & (c)(2); *Western Federal Sav. & Loan Ass'n v. Heflin Corp.,* 797 F. Supp. 790, 792 (N.D. Cal. 1992) (taking judicial notice of various deeds of trust and a state court foreclosure action file).

6.      The contents of the Fannie Mae guidance letter LL-2020-02.  Ex. D. Fed. R. Evid. 201(b)(2) & (c)(2); *Currey v. Homecomings Financial, LLC*, No. C 09-0276 PJH, at *5 (N.D. Cal. May 1, 2009) (taking judicial notice "[a]s to the factual information on Fannie Mae's website"), citing. *O'Toole v. Northrop Grumman Corp*., 499 F.3d 1218, 1224-25 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web"); *DiTech Fin. LLC v. Stonefield II Homeowners Ass'n*, No. 3:16-cv-00227-MMD-WGC, at *2 n.2 (D. Nev. July 3, 2019) ("The Court also takes judicial notice of Fannie Mae's Single-Family Servicing Guide…available on its website").

7.      Fannie Mae response to a frequently asked question.  Ex. F.  Fed. R. Evid. 201(b)(2) & (c)(2); *Currey v. Homecomings Financial, LLC*, No. C 09-0276 PJH, at *5 (N.D. Cal. May 1, 2009) (taking judicial notice "[a]s to the factual information on Fannie Mae's website"), citing. *O'Toole v. Northrop Grumman Corp*., 499 F.3d 1218, 1224-25 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web"); *DiTech Fin. LLC v. Stonefield II Homeowners Ass'n*, No. 3:16-cv-00227-MMD-WGC, at *2 n.2 (D. Nev. July 3, 2019) ("The Court also takes judicial notice of Fannie Mae's Single-Family Servicing Guide…available on its website").

8.      Consumer guide issued by the Consumer Financial Protection Bureau, CFPB.  Ex. E.  Fed. R. Evid. 201(b)(2) & (c)(2); *Kater v. Churchill Downs Inc.,* 886 F.3d 784, 788 n.3 (9th Cir. 2018) (taking judicial notice of government documents on government website); *Ontiveros v. Zamora*, No. CIV. S-08-567

LKK/DAD, at *6 n.3 (E.D. Cal. Feb. 20, 2009) (taking judicial notice of DLSE Manual); *Anderson v. Jamba Juice Co.*, Case No.: 12-CV-01213 YGR, at *3 (N.D. Cal. Aug. 24, 2012) (taking judicial notice of FDA Guidance Document).

Dated: 08/16/2022                    LOIA, INC. (APLC)

*Ilya Alekseyeff*

By Ilya Alekseyeff, Esq.
Attorney for Artur Elizarov

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☒ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

DocuSigned by:

**7/3/2019 | 14:01:38 PDT**

Borrower    D03008849A    Co-Borrower

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☒ Conventional  ☐ Other (explain): ☐ FHA  ☐ USDA/Rural Housing Service | | Agency Case Number | Lender Case Number 909216931 |
|---|---|---|---|---|
| Amount $ 686,250.00 | Interest Rate 5.000 % | No. of Months 360 | Amortization Type: ☐ Fixed Rate ☐ GPM | ☐ Other (explain): ☒ ARM (type): 1YLWSJ |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) 291 W. Overlook Road, Palm Springs, CA 92264-8934 County: Riverside | No. of Units 1 |
|---|---|
| Legal Description of Subject Property (attach description if necessary) See title | Year Built 1945 |

| Purpose of Loan ☒ Purchase  ☐ Construction  ☐ Other (explain): ☐ Refinance  ☐ Construction-Permanent | Property will be: ☒ Primary Residence  ☐ Secondary Residence  ☐ Investment |
|---|---|

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

**Complete this line if this is a refinance loan.**

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made |
|---|---|---|---|---|
| | $ | $ | | Cost: $ |

| Title will be held in what Name(s) Artur Elizarov | Manner in which Title will be held To be decided in escrow | Estate will be held in: ☒ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain) Checking/Savings, Unison assisted |
|---|

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | Artur Elizarov | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| | Borrower | | | | Co-Borrower | | | |
|---|---|---|---|---|---|---|---|---|
| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School 16 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |

| ☐ Married (include registered domestic partners) ☒ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. 0  ages 0 | ☐ Married (include registered domestic partners) ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no.  ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☐ Own ☒ Rent No. Yrs. 2Y 1M | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

**If residing at present address for less than two years, complete the following:**

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| Name & Address of Employer ☐ Self Employed Rite Care Hospice 14144 Ventura Blvd Ste 304 San Francisco, CA 94123 | | Yrs. on this job 0Y 6M  Yrs. employed in this line of work/profession 15 | Name & Address of Employer ☐ Self Employed | Yrs. on this job  Yrs. employed in this line of work/profession |
| Position/Title/Type of Business EVP Operations | | Business Phone (incl. area code) 818-988-9444 | Position/Title/Type of Business | Business Phone (incl. area code) |

*If employed in current position for less than two years or if currently employed in more than one position, complete the following:*

Uniform Residential Loan Application
Freddie Mac Form 65  7/05 (rev.6/09)
Ellie Mae, Inc.

Page 1 of 6

Fannie Mae Form 1003  7/05 (rev.6/09)
GURLA09CA_S  0917
GURLA09S (POD)
GOLDWATER_000005
07/02/2019 02:17 PM PST

212

ULI: 549300X08QKYUH256I8090921693167     LOAN #: 909216931

| | Borrower | IV. EMPLOYMENT INFORMATION | | Co-Borrower | |
|---|---|---|---|---|---|
| Name & Address of Employer   ☐ Self Employed | | Dates (from–to) | Name & Address of Employer   ☐ Self Employed | | Dates (from–to) |
| | | Monthly Income<br>$ | | | Monthly Income<br>$ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |
| Name & Address of Employer   ☐ Self Employed | | Dates (from–to) | Name & Address of Employer   ☐ Self Employed | | Dates (from–to) |
| | | Monthly Income<br>$ | | | Monthly Income<br>$ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |

### V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 20,312.50 | $ | $ 20,312.50 | Rent | $ 2,300.00 | |
| Overtime | | | | First Mortgage (P&I) | | $ 3,683.94 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | 200.16 |
| Dividends/Interest | | | | Real Estate Taxes | | 953.12 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 20,312.50 | $ | $ 20,312.50 | Total | $ 2,300.00 | $ 4,837.22 |

\* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income**     *Notice:*   Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

### VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed   ☐ Jointly   ☒ Not Jointly

| ASSETS<br>Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | |
| | | **LIABILITIES**   Borrower (B), Co-Borrower (C), Joint (J) | **Monthly Payment & Months Left to Pay** | **Unpaid Balance** |
| *List checking and savings accounts below* | | Name and address of Company   **(B)** | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union<br>**JP Morgage** | | ▇▇▇▇▇▇ | 294.00<br>169 | 34,561.00 |
| | | Acct. no. ▇▇▇▇▇ | | |
| Acct. no. ▇▇▇▇ | $ 227,103.00 | Name and address of Company   **(B)** | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | ▇▇▇▇▇▇ | 236.00<br>172 | 31,376.00 |
| | | Acct. no. ▇▇▇▇ | | |
| Acct. no. | $ | Name and address of Company   **(B)** | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | ▇▇▇▇▇▇ | 60.00<br>97 | 46,206.00 |
| | | Acct. no.   1785658 | | |

Uniform Residential Loan Application     Artur Elizarov     Fannie Mae Form 1003   7/05 (rev.6/09)
Freddie Mac Form 65   7/05 (rev.6/09)     Page 2 of 6     GURLA09_S   0817

Ellie Mae, Inc.     GURLA09S (POD)



GOLDWATER_000008<br>07/02/2019 02:17 PM PST



Evaluation Only. Created with Aspose.PDF. Copyright 2002-2019 Aspose Pty Ltd.

ULI: 549300X08QKYUH256I8090921693167      LOAN #: 909216931

## VI. ASSETS AND LIABILITIES (cont'd)

| Acct. no. | $ | Name and address of Company **(B)** | $ Payment/Months | $ |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | | 0.00 / 101 | 8,970.00 |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company **(B)** | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number & description) | $ | | 220.00 / 18 | 3,977.00 |
| | | Acct. no. | | |
| | | Name and address of Company **(B)** | $ Payment/Months | $ |
| Life insurance net cash value | $ | | 1,755.00 / 8 | 1,755.00 |
| Face amount: $ | | | | |
| **Subtotal Liquid Assets** | $    227,103.00 | Acct. no. | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ | Name and address of Company | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | *See Sch Of Liabilities | 1,408.00 | 6,975.00 |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | | | |
| | | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | **Total Monthly Payments** | $    2,741.00 | |
| **Total Assets a.**   $    227,103.00 | | Net Worth (a minus b)    $    94,515.00 | **Total Liabilities b.**   $ | 132,588.00 |

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| | Totals   $ | $ | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

| **VII. DETAILS OF TRANSACTION** | | **VIII. DECLARATIONS** | | | | |
|---|---|---|---|---|---|---|
| a. Purchase Price | $    915,000.00 | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | | Borrower | | Co-Borrower |
| b. Alterations, improvements, repairs | | | | Yes   No | | Yes   No |
| c. Land (if acquired separately) | | a. Are there any outstanding judgments against you? | | ☐   ☒ | | ☐   ☐ |
| d. Refinance (incl. debts to be paid off) | | b. Have you been declared bankrupt within the past 7 years? | | ☐   ☒ | | ☐   ☐ |
| e. Estimated prepaid items | 7,083.89 | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | ☐   ☒ | | ☐   ☐ |
| f. Estimated closing costs | 13,211.92 | | | | | |
| g. PMI, MIP, Funding Fee | | d. Are you a party to a lawsuit? | | ☐   ☒ | | ☐   ☐ |
| h. Discount (if Borrower will pay) | | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | | ☐   ☒ | | ☐   ☐ |
| i. **Total costs (add items a through h)** | 935,295.81 | (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | | | |
| j. Subordinate financing | | | | | | |
| k. Borrower's closing costs paid by Seller | | | | | | |

Uniform Residential Loan Application
Freddie Mac Form 65   7/05 (rev.6/09)

Ellie Mae, Inc.

Artur Elizarov
Page 3 of 6



Fannie Mae Form 1003   7/05 (rev.6/09)

GURLA09_S   0817
GURLA09S (POD)
**GOLDWATER_000001**
07/02/2019 02:17 PM PST

214

ULI: 549300X08QKYUH256I8090921693167

LOAN #: 909216931

| VII. DETAILS OF TRANSACTION | | VIII. DECLARATIONS | | | | | |
|---|---|---|---|---|---|---|---|
| I. Other Credits (explain) | | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | | Borrower | | Co-Borrower | |
| Cash Deposit on sales contract | 27,450.00 | | | Yes | No | Yes | No |
| Seller Credit | 0.00 | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | | | X | | |
| Other (Unison) | 183,000.00 | g. Are you obligated to pay alimony, child support, or separate maintenance? | | | X | | |
| | | h. Is any part of the down payment borrowed? | | | X | | |
| | | i. Are you a co-maker or endorser on a note? | | | X | | |
| | | | | | | | |
| | | j. Are you a U.S. citizen? | | X | | | |
| | | k. Are you a permanent resident alien? | | | X | | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 686,250.00 | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | | X | | | |
| n. PMI, MIP, Funding Fee financed | | m. Have you had an ownership interest in a property in the last three years? | | X | | | |
| o. Loan amount (add m & n) | 686,250.00 | (1) What type of property did you own – principal residence (PR), second home (SH), or investment property (IP)? | | PR | | | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | 38,595.81 | (2) How did you hold title to the home – by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | S | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 7/3/2019 \| 14:01:38 PDT | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | [ ] I do not wish to furnish this information. | | CO-BORROWER | [ ] I do not wish to furnish this information. | |
|---|---|---|---|---|---|
| Ethnicity: | [ ] Hispanic or Latino | [ ] Not Hispanic or Latino | Ethnicity: | [ ] Hispanic or Latino | [ ] Not Hispanic or Latino |
| Race: | [ ] American Indian or Alaska Native [ ] Native Hawaiian or Other Pacific Islander | [ ] Asian [ ] White [ ] Black or African American | Race: | [ ] American Indian or Alaska Native [ ] Native Hawaiian or Other Pacific Islander | [ ] Asian [ ] White [ ] Black or African American |
| Sex: | [ ] Female | [ ] Male | Sex: | [ ] Female | [ ] Male |

**To be Completed by Loan Originator:**

This information was provided:
[ ] In a face-to-face interview
[ ] In a telephone interview
[ ] By the applicant and submitted by fax or mail
[ ] By the applicant and submitted via e-mail or the Internet

| Loan Originator's Signature X Gregory Hill | | Date | 7/2/2019 \| 14:22:02 PDT |
|---|---|---|---|
| Loan Originator's Name (print or type) **Gregory Hill** | Loan Originator Identifier **247349 / State License # - 247349** | Loan Originator's Phone Number (including area code) | |
| Loan Origination Company's Name **Goldwater Bank, National Association** | Loan Origination Company Identifier **452955** | Loan Origination Company's Address **5605 112th Ste. E. # 600 Puyallup, WA 98373** | |

Uniform Residential Loan Application
Freddie Mac Form 65   7/05 (rev.6/09)

Ellie Mae, Inc.

Page 4 of 6

Fannie Mae Form 1003   7/05 (rev.6/09)

GURLA09DI_S   0418
GURLA09S (POD)
GOLDWATER_000008
07/02/2019 02:17 PM PST

215

Evaluation Only. Created with Aspose.PDF. Copyright 2002-2019 Aspose Pty Ltd.

ULI: 549300X08QKYUH256I8090921693167                                Goldwater Bank, National Association                              LOAN #: 909216931

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark **B** for Borrower or **C** for Co-Borrower. | Borrower:<br>**Artur Elizarov** | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number:<br>909216931 |

**** This page may be blank ****

Under California Civil Code 1812.30(j) "**Credit applications for the obtainment of money, goods, labor, or services shall clearly specify that the applicant, if married, may apply for a separate account.**"

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X | 7/3/2019 \| 14:01:38 PDT | X | |

**Uniform Residential Loan Application**
**Freddie Mac Form 65   7/05 (rev.6/09)**
Ellie Mae, Inc.

Page 5 of 6

Fannie Mae Form 1003   7/05 (rev.6/09)
GURLA09CSCA_S   0817
GURLA09S (POD)
GOLDWATER_000609
07/02/2019 02:17 PM PST

216