ILYA ALEKSEYEFF [CA 242462]
  ilya@loia.legal
LOIA, INC. (APLC)
727 W 7th St PH 1-13
Los Angeles, CA 90017
Tel: (213)537-4592

Attorney for Artur Elizarov

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GOLDWATER BANK, NA,** | **5:21-cv-616-JWH-SPx** |
| *Plaintiff,* | REPLY MEMORANDUM SUPPORTING MOTION FOR RULE 11 SANCTIONS |
| **vs.** | |
| **ARTUR ELIZAROV, ET AL.,** | Date: 10/21/2022 |
| *Defendant.* | Time: 9:00 AM |
| | Court: Hon. John W. Holcomb |

i

REPLY MEMORANDUM SUPPORTING MOTION FOR RULE 11 SANCTIONS

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ iii

ADDITIONAL FACTS ...............................................................................1

ARGUMENT ..............................................................................................3

I.   Counselors filed the allegations against Elizarov without an evidentiary or legal basis .................................................................................................3

     A.   Unjust enrichment .......................................................................3

     B.   Fraud in the loan application .......................................................4

     C.   Fraud in assistance application ....................................................5

     D.   Fraud during negotiations ............................................................7

     E.   Conspiracy ..................................................................................10

     F.   Fraudulent transfer .....................................................................11

II.  Monetary sanctions are appropriate..............................................12

REPLY MEMORANDUM SUPPORTING MOTION FOR RULE 11 SANCTIONS

# TABLE OF AUTHORITIES

**Cases**

*Akiona v. United States,*

   938 F.2d 158, 160 (9th Cir. 1991) ..................................................................6

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,*

   7 Cal.4th 503 (Cal. 1994)...........................................................................11

*Bojorquez v. Wells Fargo Bank, NA,*

   2013 WL 6055258 (D.Or. Nov. 7, 2013).....................................................4

*Everest Investors 8 v. Whitehall Real Estate Limited Partnership XI,*

   100 Cal.App.4th 1102, 1106 (Cal. Ct. App. 2002).............................................11

*General Advertising Agency, Inc. v. Komer,*

   251 Cal.App.2d 805 (Cal. Ct. App. 1967) ...........................................................10

*Hoffman v. 162 North Wolfe LLC,*

   228 Cal.App.4th 1178 (Cal. Ct. App. 2014) .........................................................8

*Singh v. I.N.S.,*

   213 F.3d 1050 (9th Cir. 2000) .............................................................................5

*Kidron v. Movie Acquisition Corp.,*

   40 Cal.App.4th 1571 (Cal. Ct. App. 1995 ) .......................................................10

*Mirkin v. Wasserman,*

   5 Cal.4th 1082 (Cal. 1993)..................................................................................7

*Park Inns Intern. v. Pacific Plaza Hotels,*

   5 F. Supp. 2d 762 (D. Ariz. 1998) ......................................................................6

*Rockingham Machine-Lunex Co. v. N.L.R.B.,*

   665 F.2d 303 (8th Cir. 1981) ..............................................................................6

*Runningeagle v. Ryan,*

   686 F.3d 758 (9th Cir. 2012) ..............................................................................6

*State of Or. City of Rajneeshpuram,*

   598 F. Supp. 1208 (D. Or. 1984) ........................................................................3

REPLY MEMORANDUM SUPPORTING MOTION FOR RULE 11
SANCTIONS

*Tenzer v. Superscope, Inc.,*

   39 Cal.3d 18 (Cal. 1985)......................................................................7

*Thrifty Payless, Inc. v. The Americana at Brand, LLC*,

   218 Cal.App.4th 1230 (Cal. Ct. App. 2013).....................................10

*Tristan Justice v. Rockwell Collins, Inc.*,

   117 F. Supp. 3d 1119 (D. Or. 2015) ....................................................4

*Wyatt v. Union Mortgage Co.,*

   24 Cal.3d 773 (Cal. 1979).....................................................................11

*Wyzard v. Goller,*

   23 Cal.App.4th 1183 (Cal. Ct. App. 1994) .........................................11

**Statutes**

Cal. Civ. Code, § 3439.03......................................................................11

Cal. Fam. Code § 910, subd. (a) ...........................................................12

**Rules**

Fed.R.Civ.P. 11 .......................................................................................4

iv

REPLY MEMORANDUM SUPPORTING MOTION FOR RULE 11
SANCTIONS

**ADDITIONAL FACTS**

On or before March 28, 2022, Goldwater had to provide certain records that Elizarov requested in discovery, *to wit*: all internal Goldwater emails relating to this case (request 24), description of the underwriting process (request 28), all internal records relating to Elizarov's loan application (request 29), and records that describe Goldwater's COVID-19 related forbearance process (request 37). *Exhibit XX.*

On September 2, 2022, more than five months after the original due date and just a week prior to Peter Hill's[1] deposition on September 9, 2022, counselors dumped 713 pages of additional documents, including four internal Goldwater emails. *Exhibit YY, ZZ, AAA, BBB & CCC.* These emails showed the following:

As of 6:00 pm on March 25, 2021, Peter Hill knew that the deed of trust was unrecorded, the bank had no title policy, First American Title Company had no record of Goldwater's deed of trust, Riverside would not let the bank record a copy of the deed of trust, and Elizarov was trying to close without paying Goldwater. *Exhibit ZZ-2 (highlighted).* In his subsequent testimony, Hill confirmed that as of March 25, 2021, Hill believed that Elizarov had changed Elizarov's mind about settling with the bank wanted to close without paying the bank in full. *Exhibit FFF-9.*

As of 8:07 am on March 26, 2021, Goldwater had located the original unrecorded deed of trust. *Exhibit AAA-1-2.* At 2:31 pm on March 26, 2021, Hill requested that the original be sent by overnight to Hill in Phoenix. *Exhibit BBB-1.*

The bank sent the original deed of trust to First American for recording on March 30, 2021, for delivery by 8:00 am the next day. *Exhibit CCC-1.*

---

[1] Peter Hill is Goldwater's president and Chief Credit Officer who previously verified Goldwater's amended verified complaint. *Exhibit OO [44].*

1

REPLY MEMORANDUM SUPPORTING MOTION FOR RULE 11 SANCTIONS

Then on September 30, 2022, counselors dumped even more records. *Exhibit DDD.* In addition to records that Goldwater had obtained from third parties, this disclosure included an email from Goldwater's underwriter Joyce Eggli where, on July 24, 2019, Egglie confirmed the following: "Branch has provided a copy of the release and settlement for BMW." *Exhibit EEE-3.*

At his deposition, Hill subsequently confirmed that the bank had the original deed of trust as early as 8:00 am on March 26, 2021, and requested the deed to be sent to him because he "was in contact with First American Title company about recording under their original issued title insurance policy." *Exhibit FFF-12.* Hill also confirmed that Hill started "making…efforts to record the deed of trust with Mr. Elizarov's signature as soon as the deed of trust was located on March 26th." *Exhibit FFF-13.* His efforts were unsuccessful because "First American…took…two or three days to inform [him] that the transaction on the sale had already occurred and that they would not record [the deed of trust]." *Exhibit FFF-13.* Hill made "other attempt to do a recording directly with Riverside County" but ultimately "just ran into a number of obstacles in being able to do that [recording] on a timely basis." *Exhibit FFF-13.*

Finally, Hill testified as follows:

> Fannie Mae is the gold standard, if you will, for all sorts of documentation relating to mortgage loans. It's the accepted standard across the industry. You comply with that standard so that your documentation is proper should you sell it that phone through the secondary markets, being Fannie Mae, Freddie Mac or maybe you have it placed in a Ginnie Mae security. And it's intended for conformity and the industry standard is set my Fannie Mae. We conduct all of our mortgage business to Fannie Mae standards whether we sell it through to the secondary market or retain it in our portfolio here in the bank.

*Exhibit FFF-7.* As a follow up, Hill also confirmed that Elizarov's "loan was underwritten to Fannie Mae standards, documented to Fannie Mae standards *and*

2

REPLY MEMORANDUM SUPPORTING MOTION FOR RULE 11
SANCTIONS

*serviced to Fannie Mae standards*," *Exhibit FFF-16* (italics added), and that the "forbearance process that Weststar implemented on behalf of Goldwater…was intended to be consistent with Fannie standards as well as guidance by the CARES Act," *Exhibit FFF-15*.

To date, Goldwater has deliberately failed to produce any records relating to the underwriting process (request 28) or the forbearance process (request 37).[2] *Exhibit XX*.

## ARGUMENT

### I.   Counselors filed the allegations against Elizarov without an evidentiary or legal basis

#### A.   *Unjust enrichment*

Unjust enrichment is unavailable in a case that seeks to enforce a valid agreement.  In alleging this claim, counselors certified that this claim had evidentiary support.  But then counselors had Peter Hill conclusively allege under oath that Goldwater's agreement was Elizarov was valid and enforceable. Therefore, counselors not only lacked evidence to support this claim *but cannot legally offer* any such evidence.

The court's prior ruling on the motion to dismiss under Rule 12(b) does not change this analysis.  The motion to dismiss was not concerned with evidence. Rather, the motion to dismiss tested "the legal sufficiency of [Goldwater's] complaint, *assuming* the facts as alleged."  *State of Or. City of Rajneeshpuram*, 598 F. Supp. 1208, 1210 (D. Or. 1984) (italics added).  In opposing the Rule 12(b) motion, Goldwater did not have to convince the court that its counsel had an evidentiary basis to support his claim, and the court considered none in ruling as it did.

---

[2]   Elizarov's motion to compel Goldwater's response to these and many other outstanding discovery requests [184] is under submission [196].

3

1   This motion, by contrast, *does* test the *evidentiary basis* for this claim.
2   Fed.R.Civ.P. 11(b)(3).  Therefore, Goldwater's counsel had the duty to present –
3   and this court has the corresponding duty to consider – *the evidentiary basis*
4   supporting counselor's factual assertions in the complaint.

5   ### B.   *Fraud in the loan application*

6   Goldwater claims that Elizarov lied about his marital status, failed to
7   disclose a pending BMW lawsuit, and failed to disclose the IRS tax lien.  In his
8   motion, Elizarov offered uncontroverted evidence that he did disclose both his
9   marital status and the BMW lawsuits in text messages to Goldwater's loan officer,
10  who then completed the application on Elizarov's behalf.  Since then, an email
11  from Goldwater's underwriter Ms. Eggli[3] further confirms that Goldwater knew
12  about the lawsuit.  *Exhibit EEE-3* ("Branch has provided a copy of the release and
13  settlement for BMW.")

14  Counselors had access to these records but failed to review them before they
15  filed the claim.  Therefore, counselors violated rule 11.

16  As for the marital status, Elizarov also explained that the ECOA did not
17  allow Goldwater to consider Elizarov's marital status in making its lending
18  decision.  Before they filed the claim, counselors had the duty to review this
19  statute.  Counselors failed to do so.  (Since counselors failed to address this issue in
20  their opposition, the court may consider the issue conceded.  *Tristan Justice v.*
21  *Rockwell Collins, Inc.*, 117 F. Supp. 3d 1119, 1134  (D. Or. 2015) ("[i]f a party
22  fails to counter an argument that the opposing party makes in a motion, the court
23  may treat that argument as conceded"), citing *Bojorquez v. Wells Fargo Bank,*
24  *NA,* 2013 WL 6055258, *5 (D.Or. Nov. 7, 2013).

25
26
27  [3]   Although Elizarov requested these emails back in February, Goldwater's
28  counsel deliberately and without justification concealed these records until
    September 30th.  *Exhibit DDD.*

4

REPLY MEMORANDUM SUPPORTING MOTION FOR RULE 11
SANCTIONS

Finally, Elizarov offered *overwhelming and irrefutable evidence* that he did not have the IRS debt because he paid it eighteen months earlier when Elizarov sold a residence in Valley Village.  Although counselors may not have known about this fact when they filed the complaint, they know the truth *now* and have the duty not to pursue this claim any further.  However, by not conceding this issue, counselors indicated their desire to pursue this frivolous claim.

### C.      Fraud in assistance application

Goldwater alleged that Elizarov lied about his income and assets in the assistance application and that Goldwater relied on these representations in granting mortgage assistance.  Under the law, counselors could present this claim *if and only if* the information about Elizarov's income and assets was *material* to Goldwater's decision.  The information was material *if and only if* a reasonable bank in Goldwater's circumstances would have considered this information in making the forbearance decision.  By corollary, if a bank like Goldwater could not have considered Elizarov's income or assets in making the assistance decision, then the information is *not material*, and Goldwater could not, as a matter of law, have relied on the information.

In response to the pandemic, Congress enacted – and President Trump signed into law – the CARES Act.  This law *required* certain mortgage lenders to grant borrowers forbearance based on a mere declaration of hardship and *prohibited* lenders from requiring any evidence of hardship, including information about income or assets.

In his motion, Elizarov offered extensive evidence that Goldwater's loan was subject to the CARES Act.  In opposition, Goldwater asserted that "Elizarov's loan was not a federal loan subject to the CARES Act provision" [197 (p. 16 ln. 17)] but offered *no evidence* to support this assertion.  *See Singh v. I.N.S.*, 213 F.3d 1050, 1054 n.8 (9th Cir. 2000) (arguments of counsel it not evidence);

1   *Runningeagle v. Ryan,* 686 F.3d 758, 776 (9th Cir. 2012) (same).  Therefore,

2   Elizarov's evidence controls.

3        Since then, Goldwater's president Gregory Hill (who also signed the

4   complaint under oath on Goldwater's behalf) testified that Elizarov's "loan was

5   underwritten to Fannie Mae standard, documented to Fannie Mae standards *and*

6   *services to Fannie Mae standards*," *Exhibit FFF-16* (italics added), which required

7   lenders to follow the CARES Act, *Exhibit CC-7* (highlighted text); and the bank's

8   forbearance process "was intended to be consistent with Fannie standards *as well*

9   *as guidance by the CARES Act*", *Exhibit FFF-15* (italics added).  So, even if

10  Elizarov's loan was not federally backed, Hill's testimony confirms that the bank

11  voluntarily decided to comply with Fannie Mae guidance, including the CARES

12  Act's requirements.

13       Finally, Goldwater has yet to provide Elizarov any "records that mention or

14  describe the guidelines or criteria for approving the COVID-19 related requests to

15  forbear mortgage loan payments that GOLDWATER used or applied at the time

16  ELIZAROV submitted FORBEARANCE APPLICATION to GOLDWATER,

17  including any drafts that were ultimately rejected," which Elizarov requested in

18  February.  *Exhibit XX-6* (request 37).  If these records exist (and they must), then

19  counselors' failure to disclose these records to Mr. Elizarov can only mean one

20  thing: these records will confirm that the CARES Act applied and that contrary to

21  counselors' allegations, Mr. Elizarov's income and assets were *immaterial* to the

22  assistance decisions.  *See also Park Inns Intern. v. Pacific Plaza Hotels,* 5 F. Supp.

23  2d 762, 765 fn. 2 (D. Ariz. 1998) ("when a party has relevant evidence within its

24  control which it fails to produce, that failure gives rise to an inference that the

25  evidence is unfavorable to the party"), citing *Rockingham Machine-Lunex Co. v.*

26  *N.L.R.B.,* 665 F.2d 303, 304 (8th Cir. 1981) and *Akiona v. United States,* 938 F.2d

27  158, 160-61 (9th Cir. 1991).  And if counselors deliberately concealed this

28

---

6

**REPLY MEMORANDUM SUPPORTING MOTION FOR RULE 11 SANCTIONS**

1   evidence, counselors' conduct shows that counselors *knew* that Goldwater's fraud

2   claim lacks merit but still filed (and continued to pursue) the claim in this case.

3   **D.    *Fraud during negotiations***

4   Citing *Tenzer v. Superscope, Inc.,* 39 Cal.3d 18, 29 (Cal. 1985), Elizarov

5   argued in his motion that the claim for fraud during settlement negotiations was not

6   based on the law because "an action for fraud cannot be maintained where the

7   allegedly fraudulent promise is unenforceable as a contract due to the statute of

8   frauds." [183 (p. 15)]  Although counselors correctly point out that the next

9   paragraph disapproved of this language[4], the court reiterated that "proof that a

10  promise was made and that it was not fulfilled" is not sufficient to constitute fraud.

11  *Id.* at p. 30.  "Rather, 'something more than nonperformance is required to prove

12  the defendant's intent not to perform his promise.' [Citations.]"  *Id.*  So, "if plaintiff

13  adduced no further evidence of fraudulent intent than proof of nonperformance of

14  an oral promise," the claim must fail, and plaintiff "will never reach a jury."  *Id.* at

15  ¶. 30-31.

16  Here, Goldwater claimed that Elizarov promised to pay Goldwater

17  $675,000, Goldwater relied on this promise, but Elizarov reneged.  Therefore,

18  Goldwater's fraud claim is directly based on Elizarov's alleged failure to abide by

19  the oral promise.  This type of fraud remains *invalid* under *Tenzer* because the

20  claim relies solely on Elizarov's nonperformance of the oral promise.

21  But this issue aside, the recently disclosed evidence (which counselors

22  deliberately concealed for months) independently shows that this fraud claim has

23  never had merit.

24  To sue Elizarov for fraud, Goldwater must have evidence that Goldwater

25  *actually relied* on Elizarov's promise to pay.  *Mirkin v. Wasserman,* 5 Cal.4th

26  1082, 1088 (Cal. 1993) ("It is settled that a plaintiff, to state a cause of action for

27

28  [4]   Alekseyeff regrets this embarrassing oversight.

7

REPLY MEMORANDUM SUPPORTING MOTION FOR RULE 11
SANCTIONS

deceit based on a misrepresentation, must plead that he or she actually relied on the misrepresentation"). "After establishing actual reliance, [Goldwater] must [further] show that the reliance was reasonable by showing that … it was reasonable for [Goldwater] to have relied on the misrepresentation." *Hoffman v. 162 North Wolfe LLC*, 228 Cal.App.4th 1178, 1194 (Cal. Ct. App. 2014). In Goldwater's complaint, counselors alleged that Goldwater reasonably relied on the misrepresentations by not rushing to record the Deed of Trust. *Exhibit OO-13* (¶ 102-104). Goldwater re-iterated its position in discovery as well as follows: "Goldwater relied on Elizarov's assurances that Goldwater would receive a substantial payout following the sale of the Palm Springs House. In the absence of these assurances, Goldwater would have sought to record its Deed of Trust prior to the sale of the Palm Springs House." *Exhibit GGG-3* (highlighted text).[5]

      This argument was yet another lie. Here's what Goldwater's recently disclosed records show. By 6:00 pm on March 25, 2021, Peter Hill knew that the bank's "Deed of Trust did not get recorded," the bank had no "title policy," "First American [had] no record of [the bank's] Deed of Trust," "Riverside County California [would] not let [the bank] record a copy of the Deed of Trust," and "Elizarov [was] trying to close without paying [the bank]." *Exhibit ZZ-2* (highlighted text). By 8:07 am on March 26, 2021, the bank had located the original. *Exhibit AAA-1-2* (highlighted text). The same day, Peter Hill requested that the deed be sent to him. *Exhibit BBB-1* (highlighted text). And the bank sent

---

[5]    Alekseyeff did not make this argument in his initial motion because Goldwater's counsel had deliberately concealed Goldwater's emails from Alekseyeff nor Hill's testimony, which, collectively, have exposed Goldwater's reliance argument as a lie. Had *all the requested emails* been timely disclosed, Elizarov would have addressed this argument in his moving papers. Therefore, Goldwater and its counsel cannot fault Elizarov for his failure to address this issue in the moving papers.

REPLY MEMORANDUM SUPPORTING MOTION FOR RULE 11 SANCTIONS

the original deed of trust to First American on March 30, 2021.  *Exhibit CCC-1* (highlighted text).

When presented with these and other records[6], Hill then testified under oath that as of March 25, 2021, Hill believed that "Mr. Elizarov had changed his mind in trying to settle with the bank," *Exhibit FFF-9-10*, and " was trying to close this deal without paying Goldwater the balance due under the note," *Exhibit FFF-9*. He also confirmed that "Goldwater Bank had located the original deed of trust with Mr. Elizarov's original signature that was suitable for recording" on March 26, 2021, *Exhibit FFF-12*; Hill "start[ed] making those efforts to record the deed of trust with Mr. Elizarov's signature as soon as the deed of trust was located on March 26th," *Exhibit FFF-13*; but "First American…took…two or three days to inform [Hill] that the transaction on the sale had already occurred and that they would not record it" while Hill's "other attempts to do a recording directly with Riverside County…ran into a number of obstacles in being able to do that [recording] on a timely basis," *Exhibit FFF-13*.

This evidence conclusively negates Goldwater's claim of reliance.  Contrary to Goldwater's theory of prosecution, Goldwater *did not* delay trying to record the deed of trust in reliance on Elizarov's promise to pay but instead immediately tried to get the deed of trust recorded.  Its efforts failed because Goldwater could not record a *copy* of the deed and sent the deed to First American on March 30th after the transaction in this case had closed on March 29th.  *Exhibit GG* (deed was recorded on March 29th.)  Therefore, Goldwater *did not rely* on Elizarov's allegedly fraudulent promise.

Nor was Goldwater's reliance reasonable.  By Hill's own admission under oath, Hill knew on March 25th that Elizarov had changed his mind about trying to

---

[6]      To reiterate, Elizarov requested these records on February 18, 2022, *Exhibit XX-1*, but did not receive them until September 2, 2022, *Exhibit YY*.

9

REPLY MEMORANDUM SUPPORTING MOTION FOR RULE 11
SANCTIONS

settle with the bank and intended to close the transaction without paying Goldwater. "[I]n light of [Hill's] own intelligence and information,' Goldwater's claim that Goldwater continued to rely on Elizarov's promise to pay after the events on March 25th is "manifestly unreasonable" and cannot possibly support the fraud claim. *Thrifty Payless, Inc. v. The Americana at Brand, LLC*, 218 Cal.App.4th 1230, 1239 (Cal. Ct. App. 2013).

All counselors had access to this evidence, including Peter Hill's statements, but failed to review it before they filed the claim. Therefore, counselors violated Rule 11.

### E.   Conspiracy

To prove conspiracy, counselors had to have evidence that Alekseyeff *knew* that Elizarov had planned to commit fraud, *agreed* with Elizarov to commit fraud, and owed Goldwater duty to disclose *independent* of the conspiracy claim. In discovery, Goldwater made it clear that such evidence did not exist.

In response, counselors did not point to any evidence of conspiracy that they had before they filed their claim. Rather, counselors cited Elizarov's domestic partnership to Alekseyeff and listed actions that Alekseyeff took *after April 1, 2021*, long after the alleged fraud had been committed: July of 2019 for the alleged fraud in the loan application, May 2020 for the alleged fraud in the assistance application, and March 25, 2021, for the alleged fraud during settlement negotiations. None of these facts can support a conspiracy claim because Alekseyeff committed these acts *after* the alleged torts had been completed. *Kidron v. Movie Acquisition Corp.,* 40 Cal.App.4th 1571, 1592-1593 (Cal. Ct. App. 1995 ) (conspiracy to defraud claim failed as defendant could not conspire after the fact to commit an already completed tort); *General Advertising Agency, Inc. v. Komer,* 251 Cal.App.2d 805, 812 (Cal. Ct. App. 1967) (reversing judgment based on conspiracy to commit an already completed tort); *Wyatt v.*

REPLY MEMORANDUM SUPPORTING MOTION FOR RULE 11 SANCTIONS

*Union Mortgage Co.,* 24 Cal.3d 773 (Cal. 1979) (conspiracy to commit a tort is completed when the last act induced by the conspiracy has been completed).

Finally, counselors offered no evidence that Alekseyeff owed an independent duty to Goldwater. *Everest Investors 8 v. Whitehall Real Estate Limited Partnership XI*, 100 Cal.App.4th 1102, 1106, 1107-1108 (Cal. Ct. App. 2002) ("By its nature, tort liability arising from a conspiracy presupposes that the conspirator is legally capable of committing the tort-that he owes a duty to the plaintiff recognized by law and is potentially subject to liability for the breach of that duty"); *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 510-511, 514 (Cal. 1994) (A civil conspiracy cause of action is not an "independent tort;" it allows tort recovery only where the conspirator "is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty.")

Therefore, counselors violated Rule 11.

**F.    *Fraudulent transfer***

In *Wyzard v. Goller,* 23 Cal.App.4th 1183 (Cal. Ct. App. 1994), on which the court in *Lyons* relied, the court had to resolve the following issue: "whether a preferential transfer, *if made for proper consideration* … but with recognition that the transfer will effectively prevent another creditor from collecting on his debt, is one made with 'actual intent to hinder, delay, or defraud' that creditor." *Id.* at p. 1189 (italics added). In answering this issue in the negative, the court affirmed the rule that has existed for over 400 years, recognized in California long before the state adopted the Act, and echoed a similar conclusion in other jurisdictions. *Id.* at p. 1189-1190. Under this rule, the transfer is "fraudulent" only if the transfer was made other than for proper consideration, which includes "value…given for…an obligation if, in exchange for the transfer or obligation, …an antecedent debt is secured or satisfied." Cal. Civ. Code, § 3439.03.

REPLY MEMORANDUM SUPPORTING MOTION FOR RULE 11 SANCTIONS

1    Although Elizarov paid a debt held in Alekseyeff's name, Elizarov was

2    *legally liable* for that debt. "[T]he community estate is liable for a debt incurred by

3    either spouse before or during marriage, regardless of which spouse has the

4    management and control of the property and regardless of whether one or both

5    spouses are parties to the debt or to a judgment for the debt."  Cal. Fam. Code §

6    910, subd. (a).  Elizarov and Alekseyeff had been in a domestic partnership for

7    twenty years.  Alekseyeff incurred the debt in 2020. Under section 910, Elizarov

8    was equally liable for Alekseyeff's debt.  Therefore, at the time of the payment,

9    Elizarov effectively preferred one of legally *his* creditor – Shatar Capital – over

10   another – Goldwater.  California law explicitly allowed Elizarov to do that.

11        Therefore, counselors had no factual or legal basis to assert this claim and

12   violated Rule 11 when they did.

13   ## II.    Monetary sanctions are appropriate

14        To malign Elizarov, Goldwater and its counsel turned a simple collection

15   dispute into a major fraud case.  Since the complaint was filed, nearly *all* discovery

16   and litigation in this case centered around Goldwater's non-contract claims,

17   including fraud, conspiracy, and fraudulent transfer.  Counselors engaged in

18   discovery, including invasive fishing expeditions into Elizarov's and Alekseyeff's

19   private affairs, based on allegations that relied on deliberately false claims made

20   under oath by the bank's president but subsequently contradicted by Goldwater's

21   own records and later testimony under oath *by the same bank president*.  Under

22   these circumstances, if the court concludes that counselors violated Rule 11, then

23   the court should also compensate Elizarov for all the unnecessary work that his

24   counsel Alekseyeff had to do to rebut – *with Goldwater's own evidence* – each of

25   the malicious and deliberately false claims asserted in the complaint.

26

27

28

REPLY MEMORANDUM SUPPORTING MOTION FOR RULE 11
SANCTIONS

1    Dated: 10/06/2022                LOIA, INC. (APLC)

2

3                                     *Ilya Alekseyeff*
                                      _____

4                                     By: Ilya Alekseyeff
                                      Attorney for Artur Elizarov
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                     13
REPLY MEMORANDUM SUPPORTING MOTION FOR RULE 11
                       SANCTIONS