HALL GRIFFIN LLP
HOWARD D. HALL, State Bar No. 145024
  *hdhall@hallgriffin.com*
JEREMY T. KATZ, State Bar No. 267361
  *jkatz@hallgriffin.com*
RYAN C. THOMASON, State Bar No. 325621
  *rthomason@hallgriffin.com*
1851 East First Street, 10th Floor
Santa Ana, California 92705-4052
Telephone: (714) 918-7000
Facsimile: (714) 918-6996

Attorneys for Defendant and Cross-Complainant SCOTT HOWLETT and Defendant BANK OF THE WEST

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| Goldwater Bank, N.A., <br><br>    Plaintiff, <br><br>vs. <br><br>ARTUR ELIZAROV; UNISON AGREEMENT CORP.; SCOTT HOWLETT; BANK OF THE WEST; and ILYA ALEKSEYEFF, <br><br>    Defendants. <br><br>AND RELATED CROSS CLAIMS | CASE NO. 5:21-cv-00616-JWH-SP <br><br> JUDGE:  Hon. John W. Holcomb <br> CTRM.:  9D <br><br> **DEFENDANT AND CROSS-COMPLAINANT SCOTT HOWLETT AND DEFENDANT BANK OF THE WEST'S OPPOSITION TO GOLDWATER BANK, N.A.'S EMERGENCY MOTION FOR LEAVE TO AUGMENT RULE 26 EXPERT DISCLOSURES AND FOR EXPEDITED RULING ON SAME; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> JUDGE: Hon. Sheri Pym <br> CRTRM.:  3 <br><br> Hearing Date: November 22, 2022 <br> Time:  10:00 a.m. <br> CTRM:  3 <br><br> TRIAL DATE:  May 1, 2023 |

/ / /

/ / /

/ / /

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Federal Rule 26 and Judge Holcomb's scheduling order required the parties to exchange their initial expert designations <u>with the expert's initial reports</u> no later than September 19, 2022.  *Goldwater's initial expert disclosure was defective because it did not contain the required initial report from Goldwater's expert, Vicki Crestani.*  That was no accident.  Goldwater made a strategic decision to withhold Ms. Crestani's initial *untempered* opinions until Goldwater could first digest the other parties' timely disclosures.  Then Goldwater belatedly circulated Ms. Crestani's "complete" report under the guise of a Rebuttal Expert Designation, and only a mere two weeks before the cut-off date for all discovery.

But Goldwater's gamesmanship did not end there.  Defendants Howlett and BOTW objected to the defective initial disclosure on September 30, 2022.  Goldwater could have promptly filed a regularly noticed motion for relief.  But instead, Goldwater sat idle for more than a full month, waiting until November 2, 2022. Then and only then did Goldwater file its "emergency" motion, seeking an expedited briefing schedule, and an expedited hearing.  Goldwater has once again failed to do something on time, and Goldwater is once again trying to shift the resulting costs to everyone else.[1]

As discussed below, Goldwater's "emergency" motion is both procedurally and substantively improper, so it should be denied.  This does not leave Goldwater without recourse.  Goldwater timely designated Ms. Crestani as a *rebuttal* expert, and Goldwater is welcome to use Ms. Crestani as a *rebuttal* expert.  But Goldwater strategically elected to withhold her initial opinions, so Goldwater should not be allowed to present Ms. Crestani as an initial or "opening" expert.

---

[1] The root cause of this entire lawsuit is Goldwater's own negligent failure to timely record its lien against the subject real property,.

## II. STATEMENT OF FACTS

Judge Holcomb issued his civil trial scheduling order on February 23, 2022. [ECF 149]. The order set a September 16, 2022 deadline for the initial designation of expert witnesses, and a September 30, 2022 deadline for the designation of rebuttal experts. *Ibid.*

Defendants Howlett and BOTW followed the rules by timely designating Jay Hibert as their initial expert and by timely circulating a copy of Mr. Hibert's initial expert report. [Dkt 149-2]. Goldwater did not follow the rules. Although Goldwater disclosed that Ms. Crestani would be Goldwater's expert, *Goldwater's violated Rule 26(c)(2)(B) because Goldwater's initial expert disclosures failed to include any expert report*. [Dkt 149-1 ("The complete report of Ms. Crestani's opinions will be provided [but only at some unspecified future time].")]. Moreover, Goldwater's initial expert designation did not

On September 30, 2022, Goldwater served all parties its "Rebuttal Expert Designation," which further designated Ms. Crestani as Goldwater's "rebuttal expert witness." [Dkt 149-3] Goldwater's "Rebuttal Expert Designation" included a copy of Ms. Crestani's rebuttal expert report dated September 30, 2022.[2] [Dkt 149-3, at ECF header pages 6–25]. Later that same day, on September 30, 2022, Howlett and BOTW served their objection to Goldwater's use of Ms. Crestani as their initial expert on the grounds that Goldwater's initial expert disclosure had not included the required initial expert report. [Dkt 149-4].

On October 11, 2022, counsel for Goldwater sent a letter to counsel for Howlett and BOTW regarding Howlett and BOTW's objections. The parties participated in a Local Rule 7-3 pre-filing conference of counsel on October 21,

---

[2] Ms. Crestani's September 30, 2022 rebuttal report is not "complete" because it does not list her publications authored in the previous 10 years; it does not identify any cases in the previous 4 years for which she testified as an expert at trial or by deposition. See Dkt. 149-1, at pages 6–25, generally.

1  2022.  There was no resolution to the dispute.  Goldwater then waited until
2  November 2, 2022, when it filed its "Emergency Motion" with following the
3  procedures of Local Rule 37-2.  [See Dkt 219, at 2:22–23.]

### III.  GOLDWATER'S MOTION IS PROCEDURALLY IMPROPER

The FRCP and Central District's local rules provide for only three types of motions: (1) an *ex parte* application; (2) regularly noticed motion; and (3) discovery motions, which also must be noticed.  [C.D. L.R. 6-1; L.R. 7-9; L.R. 7-10; L.R. 7-19; L.R. 37-1, *et al.*].   A proper *ex parte* application must explain why it could not be calendared in the usual fashion, and it must also "establish[] that the moving party is without fault in creating the crisis that requires ex parte relief." *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F.Supp. 488, 492. (C.D. Cal. 1995.)  Goldwater

As explained below, there is no real "emergency" here requiring use of the Court's highly unusual emergency procedures.   Goldwater has not satisfied the requirements for *ex parte* relief.  Nor has Goldwater followed any of the required procedures for a standard-issue discovery motion.  Goldwater's real motive—to get *a second bite at changing Judge Holcomb's scheduling order*—should be heard by Judge Holcomb (if at all), and it should be heard as a regularly noticed motion.

### A.  There is No "Emergency" Requiring Expedited Relief or An Expedited Hearing

Goldwater has styled its application as an "Emergency" motion, which seeks an expedited hearing and unusual relief.   [Dkt. 219.]   Under the Local Rules, an "emergency matter" is one requiring the court's action "prior the next business day" such as a temporary restraining order. LR-77-1.   Goldwater's "Emergency" application does not seek any such next-day relief.   It is not a true "emergency" matter.

**B.     Goldwater Has Not Established Good Cause For Ex Parte Relief**

A party may seek expedited relief through an *ex parte* application. LR-7-19. But per Judge Holcomb's Standing Order:

> Counsel are advised that this Court allows *ex parte* applications solely for extraordinary relief. Sanctions may be imposed for misuse of *ex parte* applications. *See In re Intermagnetics Am., Inc.*, 101 B.R. 191 (Bankr. C.D. Cal. 1989). Counsel also should become familiar with *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488 (C.D. Cal. 1995), regarding ex parte applications.

Dkt. No. 20, at 8:27–9:5.

*Mission Power* teaches that "an ex parte motion should never be submitted by itself. It must always be accompanied by a separate proposed motion for the ultimate relief the party is seeking." *Mission Power, supra,* 883 F.Supp. at 492 (" it must show why the moving party should be allowed to go to the head of the line in front of all other litigants and receive special treatment.")  Mission Power further teaches that the party seeking *ex parte* relief must show two things:

> First, the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures.
>
> Second, it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect.

*Mission Power, supra,* 883 F.Supp. at 492.

Goldwater's "Emergency Motion" fails to meet those standards. Defendants objected to Goldwater's defective initial expert disclosures on September 30, 2022. Dkt 219-4.  Goldwater could have promptly moved for relief at that time.  But

instead, Goldwater sat and waited more than a full month before seeking relief on November 2, 2022. Dkt. 219. In other words, Goldwater could have acted expeditiously and sought relief through a regularly noticed *non-emergency* motion. But for whatever reason, Goldwater elected to delay. Goldwater fails to offer any justification—let alone substantial justification—for its own delay in seeking relief. See Dkt 219, generally.

Under *Mission Power*, Goldwater is not entitled to any expedited or *ex parte* relief. And as Judge Holcomb warned in his Standing Order, Goldwater can be sanctioned for the elective delay and mis-use of the ex parte procedures for non-extraordinary relief. Dkt. 20, at 9:1-3 (citing *In re Intermagnetics Am., Inc.,* 101 B.R. 191 (Bankr. C.D. Cal. 1989).)

### C.  Goldwater Failed To Follow Procedures For a Discovery Motion

All discovery matters in this case have been referred to a United States Magistrate Judge, and specifically to the Hon. Sheri Pym. [Dkt. 20, at 4:1-8.] Judge Pym's procedures for a discovery motion[3] provide: "Strict compliance with Local Rule 37 is required." In turn, Local Rule 37-2 requires the parties to submit the discovery dispute by way of a Joint Stipulation. L.R. 37-2. The counsel for the moving party must circulate the proposed Joint Stipulation at least seven days before filing. L.R. 37-2.2. Subject to exceptions that do not apply here, "[t]he Court will not consider any discovery motion in the absence of a joint stipulation. L.R. 37-2.4.

Goldwater did not comply with L.R. 37 or either of the Judges' standing orders. The Motion is not an *ex parte* application nor is it a properly noticed motion. Goldwater has offered no valid reason as to why it should be allowed to ignore the Central District's local rules in regards to the deficient Motion.

---

[3]  https://www.cacd.uscourts.gov/honorable-sheri-pym (last visited 11/10/22).

### D. This is A Poorly Disguised Non-Discovery Motion

Judge Holcomb's scheduling order imposed a September 19, 2022 deadline to designate initial experts and circulate the initial expert report, and a September 30, 2022 to designate rebuttal experts and circulate rebuttal expert reports. Dkt 149.

On September 30, 2022, Goldwater timely designated Ms. Crestani as a rebuttal expert and circulated her rebuttal report dated September 30, 2022. Dkt 219-3. Goldwater can absolutely use Ms. Crestani as a rebuttal expert.

What Goldwater really wants to do here *is to change Judge Holdcomb's Scheduling Order*, so that Goldwater can use Ms. Crestani's report dated September 30, 2022 as an initial expert report. See Dkt 219.

Goldwater has already applied to Judge Holcomb to modify the scheduling order by extending "all trial and pre-trial deadlines by sixty (60) days." Dkt 192. Judge Holcomb partially granted that application by extended certain deadlines, *but he did not extend the exert disclosure deadlines*. Dkt. 200. Goldwater's instant second application to change the expert disclosure deadlines should likewise be denied—or at least it should be decided by Judge Holcomb and not as a discovery motion.

## IV. GOLDWATER'S MOTION IS SUBSTANTIVELY IMPROPER

### A. Goldwater has Not Met Rule 37(c)'s Requirements For Relief

The rules for expert disclosures are both clear and self-executing. A party's initial expert disclosures must be accompanied by a copy of the designated expert's report. FRCP 26(a)(2)(B). "Parties must make these expert disclosures at the times and in the sequence that the court orders." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011).[4] Rule 26(a)(2) places the

---

[4] *Goodman* was superseded by statute on other grounds as articulated in *Shrader v. Pape Trust*, No. 2:18-cv-00014-KJM-CKD) 2020 U.S.Dist.LEXIS 159441, at *5 and fn.2 (E.D. Cal. Aug. 31, 2020) (discussing retained versus non-retained experts).

burden of disclosure on the party who seeks to use the expert witness. *Messer v. State Farm Fire & Cas. Co.*, Nos. CIV 03-1653 PHX JWS, 38], 2005 U.S. Dist. LEXIS 45983, at *9 (D. Ariz. Aug. 29, 2005). A party who fails to comply with that rule "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FRCP 37(c)(1). "Rule 37 'gives teeth' to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." *Goodman, supra*, 644 F.3d at 826.

Here, the Federal Rules and Judge Holcomb's scheduling order required Goldwater to timely disclose its initial expert report by September 19, 2022. *Goldwater intentionally failed to circulate its initial expert report by that September 19th deadline.* Goldwater knew that it needed to circulate Ms. Crestani's initial expert report because Goldwater wrote on September 19th: "[t]he complete report of Ms. Crestani's opinions will be provided." Dkt 219-1 at page 2, line 16. Indeed, Goldwater later identified Ms. Crestani's "complete report" as the one dated September 30, 2022 that is attached to Goldwater's rebuttal expert designation. Dkt 219-3, at page 2:12-13. In other words, *Goldwater made a strategic decision not to provide the other parties with an initial expert report containing Ms. Crestani's untempered initial opinions*

Goldwater offers no justification—let alone substantial justification—for its failure to timely comply with Rule 26(a) or Judge Holcomb's schedule order with respect to the disclosure of an initial expert report. See Dkt. 219, generally. Instead, Goldwater argues that the error was harmless. Dkt 219, at 7:18–9:2. Goldwater is wrong.

An instructive case is *Wong v. Regents of the Univ. of Cal.* (9th Cir. 2005) 410 F.3d 1052 (9th Cir. 2005). In *Wong*, the scheduling order required the parties to disclose their expert witnesses by June 29, 2000. *Id*. at 1058. After that deadline, the Mr. Wong had one of his previously disclosed experts (Dr. Runyan) perform

new tests with the help of a previously undisclosed expert (Dr. Hirsh). *Id.* at 1058-1059. "[T]he [trial] court limited Dr. Runyan's expert testimony to those opinions which were not based on the [post-deadline] testing conducted by Dr. Hirsh." *Id.* at 1059. The trial court also totally excluded Dr. Hirsh from testifying. *Ibid.* Mr. Wong appealed and argued that it was an abuse of discretion to limit or exclude the expert testimony. The 9th Circuit was not impressed:

> [Mr.] Wong's failure to identify necessary witnesses on a more timely basis was, in the eyes of the district court, and in the words of Rule 37, "without substantial justification," for the reasons discussed above. Nor, it may be inferred, did the district court believe that the tardy identification was harmless, even though the ultimate trial date was still some months away … If [Mr.] Wong had been permitted to disregard the deadline for identifying expert witnesses, the rest of the schedule laid out by the court months in advance, and understood by the parties, would have to have been altered as well. *Disruption to the schedule of the court and other parties in that manner is not harmless*.

*Wong, supra*, 410 F.3d at 1062 (emphasis added); *accord* (*Reynoso v. Constr. Protective Servs.* (9th Cir. Sep. 16, 2008, Nos. 06-56381, 06-56380, 06-56382, 07-55135) 2008 U.S. App. LEXIS 19681, at *8 ("Later disclosure of damages would have most likely required the court to create a new briefing schedule and perhaps re-open discovery, rather than simply set a trial date. *Such modifications to the court's and the parties' schedules supports a finding that the failure to disclose was not harmless*.")

Another instructive case is *Atmel Corp. v. Info. Storage*, 189 F.R.D. 410, 416 (N.D. Cal. 1999). In *Amtel* the plaintiff's designated expert (Mr. Kern) failed to provide a substantive initial expert report. *Id.* at 412–414. Instead, Mr. Kern waited

until he received substantive reports from the defendant's experts, and then Mr. Kern provided a detailed and substantive rebuttal. *Id* at 414.  The *Amtel* court was not impressed:

> [Mr. Kern] decided, at counsel's direction, to sit back and wait to see what the other side came up with and then rebut that limited universe. To allow now Mr. Kern to testify on direct examination to matters deliberately ignored in his Rule 26(a)(2)(B) report would simply encourage litigants to evade the expert-disclosure rules.  It would disrupt the orderly process of trial preparation to require a new round of expert reports and a new round of expert depositions. And the Court does not have resources to spare in order to manage cases in which counsel create foreseeable delay through violation of the rules.

*Atmel*, *supra*, 189 F.R.D. at 416.  "The disruption caused by such tactics is not harmless." *Id.* at 411-412.  "To excuse such intentional conduct by allowing a new round of revised expert reports and a new round of depositions would invite further abuse." *Id.*

In *Lopez v. Lopez,* No. CV 18-6473-MWF-MAA, 2019 U.S. Dist. LEXIS 227227, at (C.D. Cal. Oct. 17, 2019), the plaintiff missed the expert disclosure deadline by twenty (20) days. *Id.* at *7-*8 ("Plaintiff failed to disclose Ms. Kent by the expert deadline of August 16, 2019, instead disclosing her on September 5, 2019").  The defendant immediately objected. *Id*. at *8.  When the plaintiff then tried to use the untimely expert information as part of a motion, the defendant moved to exclude the expert's opinions.  The plaintiff then argued that the measurements in the expert's untimely report should still be admitted because the expert was also a percipient witness.  The *Lopez* Court was not impressed:

> Plaintiff does not even attempt to offer any explanation as to why Ms. Kent was not disclosed by the expert deadline or in the Rule 26 disclosures, nor does he explain why he filed his Motion, which relies on Ms. Kent's expert opinion, four days after receiving notice from Defendants regarding Mr. Kent's belated disclosure. Accordingly, Ms. Kent's opinion and report are EXCLUDED and the Court will not consider them in adjudicating this Motion.

*Lopez, supra*, 2019 U.S. Dist. LEXIS 227227 at *8-*9.

In *Conceptus, Inc. v. Hologic, Inc.*, No. C 09-02280 WHA, 2011 U.S. Dist. LEXIS 109968, at *8 (N.D. Cal. Sep. 27, 2011), the case management order provided for an opening expert opinion, a rebuttal opinion, and a reply opinion, but warned that "reply reports … should not add new material that should have been placed in the opening report." Id. at *3. The defendant's opening opinion report contained "one paragraph" of on-point opinion, the plaintiff provided a detailed rebuttal opinion report, and then the defendant attempted to proffer a seventeen (17) page long "reply" opinion, which did not impress the court:

> Defendant now contends that the detailed reply report is merely a rebuttal to Dr. Webster's report. This is a truism, for all replies will be responsive to opposition arguments. This begs the question. *The question is whether the "reply" material should have been in the opening from the outset*. The new material was foreseeable and should have been provided at the outset so that Dr. Webster would have a fair opportunity to oppose and to rebut. *To allow this voluminous new material now would bless sandbagging*.

*Conceptus, supra*, 2011 U.S. Dist. LEXIS 109968 at *9.

Goldwater argues that its failure to timely disclose Ms. Crestani's expert report was harmless because: (1) Goldwater has now [belatedly] circulated Ms. Crestani's "complete" report; and (2) the court fortuitously extended the discovery cut-off date <u>after</u> Goldwater had already missed the deadline, so Defendants can still take Ms. Crestani's deposition.  Dkt 219 at pages 7-9.  Goldwater's arguments miss the mark in several respects:

> It is not the right of a party who chooses not to comply with those deadlines to be able to restructure them at will. Nor is it the prerogative of the violator to require his victim to accept his largesse in the form of allowing discovery to proceed after the deadline set for the close of discovery by the court. Late disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen discovery.

*Finwall v. City of Chicago* 239 F.R.D. 494, 501 (N.D.Ill. 2006).[5]

---

[5]  Accord , *Bell v. United States* (S.D.Cal. Nov. 25, 2013, No. 12cv1053-CAB (DHB)) 2013 U.S.Dist.LEXIS 196471, at *5 ("Although Rule 26(e) allows a party to 'supplement or correct' disclosures with information acquired later, that provision does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report."); *United States v. 14.3 Acres of Land* (S.D.Cal. Jan. 30, 2009, No. 07cv886-W(NLS)) 2009 U.S.Dist.LEXIS 7148, at *25 (granting motion to strike untimely supplemental reports… "Defendants do not refute the Government's argument that allowing the [belated]  Rosenthal designation would increase the Government's costs in completing its trial preparation"); *Daniel v. Coleman Co*. (9th Cir. 2010) 599 F.3d 1045, 1049 ("Daniel's late [expert] report sought to substantiate deposition testimony that was taken early in the discovery process. The untimeliness was neither justified nor harmless."); *Alvarado v. Fedex Corp*., Nos. C 04-0098 SI, C 04-0099 SI, C 03-2659 SI, 2006 U.S. Dist. LEXIS 45683, at *16-17 (N.D. Cal. June 27, 2006) ("Plaintiffs contend that any error has been harmless. To the contrary, allowing plaintiffs to proceed with Mr. Pratt['s untimely opinions] would encourage parties to evade the expert-disclosure rules."); *Rick,* 1994 U.S. Dist. LEXIS 12546,

Here, it is not just a matter of taking Ms. Crestani's deposition, writing a "reply" report, and calling it a day. Defendants will have to spend more time and more money to ferret out how Ms. Crestani opinions may have changed if she had not first seen and digested Mr. Hibert's timely-disclosed opening expert report. And because Ms. Crestani got a free look at Mr. Hibert's report, she may have withheld certain opinions that would have supported those proffered by Mr. Hibert. We cannot un-ring that bell without substantial time, effort, costs, and credibility determinations.

Moreover, Judge Holcomb's scheduling order provides that discovery other than depositions must be initiated at least 45 days before the discovery cut-off date. Dkt 149, at page 3, 2022. 45 days before the current discovery cut-off date is November 1, 2022. See Dkt. 200. Goldwater could have filed this motion much sooner, which if granted, would have given time for Defendants to seek written discovery about Ms. Crestani's untimely opinion. Goldwater's delay has precluded Defendants from doing so.

Also, Ms. Crestani's "rebuttal" report contains more than just untempered initial opinions. It will take time and more expert fees for Mr. Hibert to provide a proper responding "reply" as Goldwater proposes.

Simply put: Goldwater cannot ignore expert disclosure deadlines with impunity by failing to provide an initial report, asking to recast a rebuttal report as their opening report, and then sandbagging their opponents an opportunity to expend

---

1994 WL 484633, *3 (rejecting reopening discovery as a curative); *Aon Risk Services, Inc. of Illinois v. Shetzer*, 2002 U.S. Dist. LEXIS 16035, No.01-7813, 2002 WL 1989466, *6 (N.D.Ill. Aug. 27, 2002)(rejecting argument that late disclosure was harmless because there was time to conduct deposition before trial; all discovery was required to be completed before the extended discovery); *Gregory v. Oliver,* 2002 U.S. Dist. LEXIS 24730, No. 00-5984, 2002 WL 31972165, *1 (N.D.Ill. Dec. 27, 2002) (opportunity to depose expert does not make up for inadequate expert report).

1 more time and more money to "reply" to that rebuttal report. But if the Court is
2 going to grant Goldwater's motion, it should order Goldwater to pay for the
3 attorneys' fees and expert fees incurred to generate that reply report.

### V. MS. CRESTANI'S REBUTTAL REPORT IS NOT COMPLETE OR COMPLIANT WITH RULE 26

Rule 26(a)(2)(B) provides that, among other things, the expert's initial report "must contain:"

>  (iv)  the witness's qualifications, including a list of all publications authored in the previous 10 years; [and]
>
>  (v)  a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition.de

Here, Ms. Crestani's rebuttal report avers that she has authored "Escrow Manuals, as well as numerous title and escrow policies and procedures. Dkt 219-3 at page 21. The report purports to attached a list of all publications authored in the previous 10 years. Dkt 219-3 at page 19. But no such list of publications in contained in the report. See Dkt 219-3, generally.

The report also purports to attach a list of other cases which Ms. Crestani has provided expert testimony. Dkt. 219-3 at page 19. But that list of "recent case activity" omits any cases from the previous 4 years. See Dkt. 219-3 at page 25. Most of the older cases on that list do not even disclose the full case name or even a case number. *Ibid*.

If Ms. Crestani has not published anything in the prior 10 year and has not testified as an expert in the prior 4 years, then the her report should *expressly* disclose that lack of recent experience. But in its current state, Ms. Crestani's belated report does not comply with Rule 26(a)(2)(B), and it is far from "complete."

Goldwater failed to produce a timely initial expert report in the first instance, and Goldwater cannot cure that defect by way of an *incomplete* rebuttal report. At some point Goldwater should simply try doing things right the first time.

## VI. CONCLUSION

The FRCP and Central District local rules provide that three types of motions may be filed with the Court: an *ex parte* application; a noticed motion; and/or discovery motions (which also must be noticed). Goldwater's Motion is none of these things. As such, the Court should reject the filing of the Motion and admonish Goldwater to follow the established rules of the Court.

And, contrary to Goldwater's contentions, there is nothing harmless about intentionally violating a court-ordered disclosure deadline. If Goldwater's position is accepted, a plaintiff like Goldwater could violate the disclosure rules with impunity just by belatedly offering their opponents the "opportunity" to spend time and money generating a "reply" expert report.

The Court should deny Goldwater's motion, or alternatively, sanction Goldwater pursuant to Rule 37(c)(1)(A) and require Goldwater to pay for Defendant's costs of preparing the "reply" expert report.

DATED: November 10, 2022        HALL GRIFFIN LLP

By:    /s/ Jeremy T. Katz
    Howard D. Hall, Esq.
    Jeremy T. Katz, Esq.
    Ryan C. Thomason, Esq.
Attorneys for Defendant and Cross-Complainant SCOTT HOWLETT and Defendant BANK OF THE WEST

# CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of November , 2022, a true and correct copy of **DEFENDANT AND CROSS-COMPLAINANT SCOTT HOWLETT AND DEFENDANT BANK OF THE WEST'S OPPOSITION TO GOLDWATER BANK, N.A.'S EMERGENCY MOTION FOR LEAVE TO AUGMENT RULE 26 EXPERT DISCLOSURES AND FOR EXPEDITED RULING ON SAME; MEMORANDUM OF POINTS AND AUTHORITIES** was served via the United States District Court CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

By: /s/ Jeremy T. Katz

Jeremy T. Katz

Hall Griffin, LLP