ILYA ALEKSEYEFF [CA 242462]
ilya@loia.legal
LOIA, INC. (APLC)
727 W 7th St PH 1-13
Los Angeles, CA 90017
Tel: (213)537-4592

Attorney for Rite Care Hospice, Inc.[1]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDWATER BANK, NA,<br><br>*Plaintiff,*<br><br>versus<br><br>ARTUR ELIZAROV ET AL.,<br><br>*Defendants.*<br><br>RITE CARE HOSPICE, INC.,<br><br>*Disinterested non-party.* | **5:21-cv-616-JWH-SPx**<br><br>OBJECTIONS TO THE COURT'S INTERIM ORDER AND GOLDWATER'S UNTIMELY SUBMITTED EVIDENCE<br><br>**DISCOVERY MOTION**<br><br>Date: 12/12/2022<br>Time: 10:00 AM<br>Court: Hon. Sheri Pym<br><br>Date: 12/13/2022<br>Time: 10:00 AM<br>Court: Hon. Sheri Pym |

---

[1] Appeared under a limited-scope representation, *to wit*: Goldwater's pending motion to compel the production of documents from Rite Care Hospice, Inc. and related proceedings, including motions for review and appeals.

i
OBJECTIONS TO THE COURT'S INTERIM ORDER AND GOLDWATER'S
UNTIMELY SUBMITTED EVIDENCE

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................1

OBJECTIONS TO THE COURT'S *SUA SPONTE* INTERIM ORDER FOR ADDITIONAL EVIDENCE AND LIVE TESTIMONY ..........................................2

    An order inviting additional evidence was not made on Goldwater's motion supported by a showing of "excusable neglect" and a finding of "good cause" ...............................................................................................3

    Goldwater has not requested Akopyan to testify at the hearing, nor would such testimony be permissible at a hearing to determine the court's jurisdiction ..................................................................................................6

    If the court could not determine whether Rite Care was served, then the court had to find that Goldwater had failed to meet its burden of proof and deny the motion .................................................................................8

OBJECTIONS TO GOLDWATER'S ADDITIONAL EVIDENCE ........................9

    Krysak's and Kim's additional declarations remain untimely and inadmissible because the court's interim order *did not* permit Goldwater to submit these declarations ................................................................10

    Krysak's declaration failed to authenticate the subpoena, included inadmissible hearsay, and described records that Krysak lacked personal knowledge to authenticate ....................................................................10

    Benavides failed to explain his earlier false statement, failed to declare that he served the subpoena at issue in the case, and did not explain how he knew the identity of the person who allegedly received documents from Benavides ...............................................................................13

CONCLUSION ...................................................................................................15

# INTRODUCTION

Goldwater Bank, NA filed a second and successive motion to compel the production of documents from Rite Care Hospice, Inc. on 11/14/2022. Dtk No. 224. The motion recycled Goldwater's earlier motion without any substantive changes. Dkt No. 189. As it did to Goldwater's first motion, Dkt No. 195, Rite Care opposed the successive motion on 11/22/2022 because Goldwater had failed to establish service of the subpoena, service of the motion, or relevance of the records sought. Dtk No. 233. In an interim order dated 11/28/2022, this court noted that the evidence submitted did not allow the court "to determine whether Rite Care was served" and *sua sponte* ordered the parties "to look into this matter further and submit any additional evidence or information that may shed light on whether (and if so, when and where and how) plaintiff served Mr. Akopyan or anyone else at Rite Care with the subpoena at issue." Dkt No. 236. Finally, "[s]hould the court find the additional evidence of information insufficient to determine whether Rite case was served," the court scheduled "an evidentiary hearing on Monday December 12, 2022 at 10:00 am" and ordered "both Daniel Benavides and Vartan Akopyan…to appear [at the hearing], absent further order of the court." *Id.*

Goldwater filed a reply on 11/29/2022, which included new declarations of Benavides, Krysek, and Kim. Dtk No. 238.

Rite Care now OBJECTS to the court's interim order and Goldwater's additional evidence as follows:

Rite Care OBJECTS to the court's *sua sponte* order for three reasons. **1.** The order for leave to file supplemental declarations was not based on a motion supported by a showing of "excusable neglect" and a finding of "good cause." **2.** Goldwater had not requested live testimony, nor is the option available to resolve

jurisdictional disputes.  **3.** The court lacked a valid reason to make its interim order.

Rite Care further OBJECTS to Goldwater's new evidence for three reasons.  **1.** Krysak's and Kim's declarations remain untimely and inadmissible because the court's interim order did not invite additional evidence on any issue *other* than the proper service of the subpoena.  **2.** Krysak's declaration did not authenticate any documents, including the subpoena and photographs, and relayed inadmissible hearsay.  **3.** Benavides did not explain his earlier inconsistent statement, did not testify that he served *the subpoena* at issue in the case, nor explain how he knew the identity and name of the person served.

## OBJECTIONS TO THE COURT'S *SUA SPONTE* INTERIM ORDER FOR ADDITIONAL EVIDENCE AND LIVE TESTIMONY

Goldwater moved the court for an order compelling Rite Care to produce documents described in a subpoena.  "Generally, the court lacks jurisdiction over non-parties unless they are properly served with a valid Rule 45 subpoena." *Carlin v. DairyAmerica, Inc.*, 109CV00430AWIEPG, 2017 WL 4410107, at *4 (E.D. Cal. Oct. 4, 2017); *accord, In re Jee*, 104 B.R. 289, 293 (Bankr. C.D. Cal. 1989).  "A subpoena must be personally served, or it is null and void." *O'Connor v. Perez*, 2:18-CV-1057 DB P, 2020 WL 1974194, at *1 (E.D. Cal. Apr. 24, 2020) (citing *Gillam v. A. Shyman, Inc.*, 22 F.R.D. 475 (D. Alaska 1958).); Fed.R.Civ.P. 45(b)(1).  Therefore, as a threshold issue, to obtain this relief Goldwater had to establish that Rite Care's authorized representative was personals served with the subpoena. Fed.R.Civ.P 45(b)(1).  Here, Goldwater offered no competent evidence on this critical issue of fact.  But rather than deny Goldwater's motion for failure to carry its burden of proof, the court decided to come to Goldwater's rescue and offered Goldwater two options: produce better evidence or, failing that, have both Benavides and Akopyan testify before the court in person.

As a starting matter, "[i]t is the duty of the court to enforce the law, and compel parties to conform to the rules and practice of this court." *Wise v. Nixon*, 76 F. 3, 4 (9th Cir. 1896). These principles apply with even stronger force when the rules of procedure appear in federal rules of civil procedure or the local rules, which both have the force of federal law and must be enforced as such. *See* 28 U.S. Code § 2071 (defines the authority to promulgate national and local rules); *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1162 (9th Cir. 2018) ("The Federal Rules of Civil Procedure have the force of law"); *Alliance of Nonprofits for Ins. v. Kipper,* 712 F.3d 1316, 1327 (9th Cir. 2013) ("District judges must adhere to their court's local rules, which have the force of federal law"). Once the rules of procedure are established, "[a] district court does not have the power to limit [the rules] simply by issuing a[n] order to that effect." *Atchison, Topeka & Santa Fe Railway Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998). After all, "[i]f courts are to require that others follow regular procedures, [then] courts must do so as well." *Hollingsworth v. Perry*, 558 U.S. 183, 199 (2010).

Since no rule or practice of this court authorized the court to receive untimely evidence *nor* order live testimony at a hearing designed to determine preliminary *jurisdictional facts*, Rite Care OBJECTS to the court's interim order inviting further evidence and, alternatively, ordering Akopyan to testify in person.

**An order inviting additional evidence was not made on Goldwater's motion supported by a showing of "excusable <u>neglect" and a finding of "good cause"</u>**

Fed.R.Civ.P. 7 and L.R. 7 provide rules of practice and procedure relating to motions. Rule 7 generally requires all requests for an order to be made by a written motion. Fed.R.Civ.P. 7(b)(1)(A). Local rules elaborate on this nationwide rule and require "the evidence upon which the moving party will rely in support of the motion" to be "served and filed with the notice of motion." L.R. 7-5(a). Accordingly, when evidence that should have been submitted with the

moving papers and not offered solely for rebuttal is filed with the reply, the evidence is untimely and cannot be considered. *See Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.,* 311 F.R.D. 590, 625 (C.D. Cal. 2015) ("the court will not consider evidence raised for the first time on reply") (citing *Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1273 n. 3 (9th Cir. 1993)). *See also FT Travel-New York, LLC v. Your Travel Center, Inc.,* 112 F. Supp. 3d 1063, 1079 (C.D. Cal. 2015) ("Courts decline to consider arguments that are raised for the first time in reply") (citing six supporting cases).

Under these principles, to allow Goldwater submit evidence establishing personal service of a duly issued subpoena (which L.R. 7-5 required Goldwater to submit with the moving papers) in reply, the court had to rely on an existing rule or established practice of this court. The only rule that could *potentially* allow Goldwater to submit its evidence late is Rule 6, which states: "[w]hen an act may or must be done within a specified time, the court may, *for good cause*, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or (B) *on motion made* after the time has expired if the party failed to act because of *excusable neglect*." Fed.R.Civ.P. 6(b)(1) (italics added).

By its terms, rule 6(b)(1) applies in two circumstances. First, the court may extend the deadline without motion or notice *before* the original time expires and then *only if* the court finds "good cause." Fed.R.Civ.P. 6(b)(1)(A). This rule did not apply because the court made its interim order fourteen days *after* Goldwater's time to file its evidence expired, not before.

Second, the court may extend the deadline *after* it expired but *only if* the party moves for relief and demonstrates "excusable neglect," and the court, again, finds "good cause." Fed.R.Civ.P. 6(b)(1)(B). This rule similarly did not apply because Goldwater had never moved to extend the deadline. Rather, the court acted *sua sponte*, which rule 6 did not permit.

1    But even if the court could act *sua sponte*, relief was still unavailable
2    because Goldwater had not – *and could not* – demonstrated "excusable neglect"
3    nor "good cause" justifying leave to file its evidence late.

4    "Attorneys appearing before the federal courts in the Central District of
5    California must adhere to California laws and ethical rules." *Doe v. Fitzgerald*,
6    No. 2:20-10713-MWF (RAOx), 2022 WL 4596557, at *5 (citing *Rodriguez v.
7    Disner*, 688 F.3d 645, 656 (9th Cir. 2012)). See also L.R. 83-2.1.3.3(a)(1) (*pro
8    hac vice* applicant must certify "that the applicant is familiar with the Court's
9    Local Civil and Criminal Rules"). "Generally, counsel's carelessness or ignorance
10   of the law does not constitute excusable neglect." *Stewart v. Wachowski*, 574 F.
11   Supp. 2d 1074, 1120 (C.D. Cal. 2005) (citing *Pincay v. Andrews*, 389 F.3d 853,
12   857 (9th Cir. 2004)). In fact, "a lawyer's failure to read an applicable rule is one of
13   the least compelling excuses that can be offered," *Pincay*, 389 F.3d at p. 857,
14   especially when the rule at issue is "not ambiguous," *Id.* at p. 857.

15   L.R. 7-5 is clear and explicit: if Goldwater had evidence supporting its
16   motion, Goldwater's counsel had to file and serve that evidence with the
17   notice. Here, Goldwater was represented by eight lawyers from three different
18   firms. With so many eyes watching Goldwater's litigation, Goldwater cannot offer
19   any plausible excuse why *none* of its lawyers followed this simple, clear, and
20   unequivocal rule.

21   But most important, Goldwater's lawyers cannot claim ignorance because
22   Rite Care alerted Goldwater's attorneys to the problems with Goldwater's motion –
23   the failure to authenticate records and the defective declaration of service – on
24   September 28th in Rite Care's opposition to Goldwater's first attempt to enforce the
25   subpoena, Dkt No. 195, nearly *two months* before Goldwater current motion on
26   11/14/2022, Dkt No. 224, which remains replete *with the same exact
27   errors*. Under these circumstances, the attorneys' conduct is not only *inexcusable*;
28   the conduct is *so egregious* that it possibly rises to the level of ethical

violation. *See* Cal. Rules of Prof. Conduct, Rule 1.1(a) ("A lawyer shall not intentionally, recklessly, with gross negligence, or repeatedly fail to perform legal services with competence"); L.R. 83-3.1.2 (attorneys admitted *pro hac vice* must comply with California Rules of Professional Conduct); 27 N.C.A.C. Chapter 2, Rule 1.1 (North Carolina attorneys must act competently). *See also* ABA Model Rules 1.1 ("A lawyer shall provide competent representation to a client"); L.R. 83-3.1.2 ("The Model Rules of Professional Conduct of the American Bar Association may be considered as guidance").

Therefore, no matter who could have moved for relief under rule 6(b)(1)(B) – Goldwater or the court – Goldwater could not possibly establish "excusable neglect" justifying relief from Goldwater's failure to file its evidence timely. Nor could the court, under these circumstances, possibly have found "good cause" to justify a deviation from its normal practice requiring Goldwater to file its supporting evidence with the moving papers.

Accordingly, the court erred in inviting Goldwater to submit additional evidence, which remains untimely and inadmissible over Rite Care's objection.

### Goldwater has not requested Akopyan to testify at the hearing, nor would such testimony be permissible at a hearing to determine the court's jurisdiction

Anticipating that Goldwater's counsel might squander the *third* opportunity to present competent evidence, the court offered Goldwater's yet another option to win: the court ordered Benavides and Akopyan to testify live. The court's order was improper for two reasons.

One, the order did not comply with L.R. 7-8, which discussed the availability of live witness testimony at a hearing on the motion. The rule allows personal testimony under two conditions. First, the testimony must relate "to an issue of fact to be determined," which implies an issue of *substantive fact* that would arise in motions like those for a preliminary injunction, to be relieved from

default, or civil contempt, but not to facts that arise in "motions contesting venue and personal jurisdiction… ." *Id.*  Here, however, the court did not order Akopyan and Benavides to testify about a substantive fact.  The court ordered the witnesses to testify about a jurisdictional issue, *to wit*: whether Rite Care was personally served with a duly issued subpoena, the type of fact that the rule explicitly excluded.  And second, live testimony may be ordered *only if* "a party desiring to cross-examine any declarant…serve[s] by hand (or facsimile or by electronic filing) and file[s] a notice of request to cross-examine such declarant." *Id.*  Here, Goldwater had never served nor filed such a request expressing the desire to cross-examine Rite Care's declarant Vartan Akopyan.  Rather, the court acted *sua sponte*, which the rule did not allow since the rule explicitly required a request by made by "a party desiring to cross-examine any declarant." *Id.*  Therefore, the court acted contrary to L.R. 7-8, which rendered the order invalid.

    Nor did the court need Akopyan's testimony.  After he denied receiving the subpoena, Akopyan cannot add anything to his earlier statement.  Even if asked a dozen different ways, Akopyan's testimony would remain the same: Akopyan did not receive any documents relating to this case in August of 2022 and only learned about the alleged subpoena from attorney Alekseyeff soon after Goldwater filed its first motion.  So, if the court wanted Akopyan to appear, it must be because the court needed Benavides to identify Akopyan as the person whom Benavides served with the subpoena, allowing the court to find Benavides more credible than Akopyan and rule for Goldwater.[2]

---

[2] The resulting ruling would also become virtually unreviewable because "[a]n appellate court defers to the district court's credibility findings and its findings of fact even if there are other permissible views of the evidence." *Rudolph v. Ponderosa Village*, 266 F. App'x 687, 688 (9th Cir. 2008) (citing *Allen v. Iranon*, 283 F.3d 1070, 1079 (9th Cir. 2002)).

<u>And two</u>, the order for Akopyan's testimony is *void* because the court does not have personal jurisdiction over Rite Care. "[T]he lack of personal jurisdiction over [the person]…[renders] the…court's order is void to the extent that it affects their rights." *In re Harlow Properties, Inc.*, 56 B.R. 794, 799 (B.A.P. 9th Cir. 1985); *see also Veeck v. Commodity Enter., Inc.,* 487 F.2d 423, 426 (9th Cir. 1973) ("Lack of personal jurisdiction renders a judgment void.")  The court's personal jurisdiction over a non-party requires personal service of a duly issued subpoena.  *Carlin, supra*, 2017 WL 4410107; *In re Jee, supra.* 104 B.R. at p. 293; *O'Connor, supra*, 2020 WL 1974194; *Gillam, supra*, 22 F.R.D. 475.  At the time the court made its interim order on November 28th, Dkt No. 236, the court had not yet determined whether Rite Care was served with a duly issued subpoena and, therefore, had not assumed jurisdiction over Rite Care.  In fact, the entire purpose of the court's proposed evidentiary hearing is to determine *whether* Rite Care was served, which would *then and only then* give the court jurisdiction to make orders affecting Rite Care.

Therefore, the interim order that Rite Care produce Akopyan as a witness at the hearing on December 12, 2022, in invalid under the local rules and *void* for lack of personal jurisdiction.

### If the court could not determine whether Rite Care was served, then the court had to find that Goldwater had failed to <u>meet its burden of proof and deny the motion</u>

The court felt compelled to invite additional evidence and, failing that, ordering live testimony because the court had "two, seemingly contradictory statements made under oath" – Benavides' "stating that on August 8, 2022, he served the 'summons' on an individual named Vartan Akopyan," and Akopyan's stating that he "did not personally receive any documents, including a 'summons,' relating to this case at any time or at any place in the month of August 2022" – and

could not "determine whether Rite Care was served." Dkt No. 236. These justifications were legally insufficient to justify the court's interim order.

<u>One</u>, it was *not* the court's job "to determine whether Rite Care was served" with a subpoena. The court's only role was to determine whether Goldwater had presented sufficient competent evidence to carry its burden of proving proper service. If the court had found itself unable to determine this crucial fact, then it had to be because Goldwater had presented no competent evidence on this issue of fact. If so, then the court had to find that Goldwater had failed to meet its burden and deny the motion for lack of competent proof, not go out of its way to help Goldwater meet its burden.

<u>And two</u>, the court did not have two competing declarations. The court had a proper declaration from Akopyan, which showed the lack of personal service, and an *unsworn statement* from Benavides, which showed nothing. Therefore, the court had no "seemingly contradictory statements made under oath" and could not justify its order on that basis.

***

For these reasons, the court erred in allowing Goldwater to submit its original evidence in reply and requiring Akopyan to testify before the court live. Consistent with its rules and the duty to rule objectively, the court instead had FIND that Goldwater had failed to meet its burden of proof and DENY the motion rather than excuse Goldwater's egregious errors and impose additional costs on Rite Care who, as a disinterested non-party, deserved this court's extra protection. *See* Fed.R.Civ.P. 45(d)(1).

**OBJECTIONS TO GOLDWATER'S ADDITIONAL EVIDENCE**

After it received the court's interim order, Goldwater filed a reply, which included three additional declarations: Benavides', Krysak's, and Kim's. Although Rite Care objects to all these as untimely (as discussed earlier), Rite Care

additionally objects to these declarations as follows.  **1.** Krysak's and Kim's declarations exceeded the scope of the court's interim order because those addressed issues of fact *other than* "when and where and how" Rite Care was served.  **2.** Krysak's declaration failed to authenticate any documents, including the subpoena and photographs, and relayed inadmissible hearsay.  **3.** Benavides failed to explain his earlier false declaration, did not declare that he served *the subpoena* at issue, nor described how he knew the identity and name of the person who allegedly accepted the documents.

### Krysak's and Kim's additional declarations remain untimely and inadmissible because the court's interim order *did not* permit Goldwater to submit these declarations

Assuming it was otherwise lawful, the court's interim order invited the parties to "submit any additional evidence or information that may shed light on whether (and if so, when and where and how) plaintiff served Mr. Akopyan or anyone else at Rite Care with the subpoena at issue."  Dkt No. 236.  The court did not invite nor permit Goldwater to submit additional evidence on any other issue. But the additional declarations from Krysak and Kim did not discuss facts relating to the issue of personal service on Rite Care.  Krysak attempted to authenticate records.  Kim described service of the *motion*, not the subpoena.  Therefore, to the extent that Krysak and Kim described facts other than "when and where and how[] plaintiff served Mr. Akopyan or anyone else at Rite Care with a subpoena at issue," Dkt No. 236, their declarations remained untimely and inadmissible over Rite Care's objection.

### Krysak's declaration failed to authenticate the subpoena, included inadmissible hearsay, and described records that Krysak lacked personal knowledge to authenticate

When evidence supporting a motion is presented by declarations, those "shall contain only factual, evidentiary matter and shall conform as far as possible

to the requirements of F.R.Civ.P. 56(c)(4)." L.R. 7-7.  To comply with Fed.R.Civ.P. 56(c)(4), "[a] declaration…must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the…declarant is competent to testify on the matters stated."  By corollary, "declarations not based on personal knowledge are inadmissible… ."  *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012); *accord, Anhing Corp. v. Thuan Phong Co., Ltd.*, 215 F. Supp. 3d 919, 929 (C.D. Cal. 2015).  No may declarations include "inadmissible hearsay evidence that could not be presented in an admissible form at trial."  *Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d 1094, 1102 (C.D. Cal. 2015) (citing *Bliesner v. Commc'n Workers of Am.,* 464 F.3d 910, 915 (9th Cir.2006)).  A statement is hearsay if made other than by the declarant and offered to prove the truth of the matter asserted.  Fed.R.Evid. 801(c).

      If used to authenticate a document, the declaration must demonstrate that "the matter in question is what its proponent claims" based on "personal knowledge," such as by the person "who wrote it, signed it, used it, or saw others do so… ."  *Laasko v. Xerox Corp,* 566 F. Supp. 2d 1018, 1020-21 (C.D. Cal. 2008) (original citations).

      Krysak's declaration did not meet these standards.

      <u>One</u>, Krysak did not explain how she knew that the document attached to her declaration as "Exhibit A" was the subpoena issued in this case.  In her declaration, she did not state that she personally issued the subpoena and subsequently submitted it for service through ABC Legal.  She instead said that her firm "Wagner Hicks, PLLC, engaged ABC Legal Services through their online portal to effectuate service of a subpoena."  EFD # 238-1 at p. 2 (¶ 2).  This declaration was insufficient because Krysak did not demonstrate personal knowledge since she appeared to have learned about the efforts "to effectuate service" from others, which would make her "testimony" replete with inadmissible hearsay.  If she personally issued the document in "Exhibit A" and then submitted that same

1  document for service to ABC Legal Service, Krysak simply needed to say so. She
2  didn't. Therefore, her declaration was not based on Krysak's personal knowledge
3  and cannot be received over Rite Care's objection.
4  <u>Two</u>, the statements that Krysak "accessed and viewed a written message
5  from an individual purporting to be Mr. Daniel Benavides, and stating he effected
6  service of the Subpoena on August 8, 2022, and that he served the Subpoena on
7  Vartan Akopyan at 2312 W Victory Blvd Ste 202, Burbank, CA 91506," EFD #
8  238-1 at p. 2 (¶ 5), if offered to prove that Daniel Benavides served "the
9  Subpoena" on "Vartan Akopyan" at the address in Burbank, are hearsay.
10 Similarly, to the extent Krysak offered Benavides' "declaration" downloaded from
11 the portal, the statements contained *in that document* constitute hearsay if offered
12 to prove service as described in the document.
13 <u>And three</u>, none of the photographs or location records that Krysak offered
14 as exhibits are admissible because Krysak did not explain what those records were,
15 what they showed, or when, where, or how those were made. EFD # 238-1 at p. 2
16 (¶ 6). Nor could Krysak have offered competent testimony to authenticate these
17 documents because, by her declaration, she downloaded these records from the
18 internet and, therefore, lacked personal knowledge to testify to these essential
19 foundational facts. *Id.*
20 But even if the court were to consider the photographs, those did not support
21 Benavides' declaration because of the three, only *one* depicted a person, and that
22 person was *a blonde female* sitting at a desk, EFD # 238-1 at p. 34, not a middle-
23 aged man that both Benavides and Kim described in their statements. But if the
24 process server (presumably, Benavides) brought a camera to take pictures of the
25 place and persons served, why, then, did he photograph a random blonde female
26 sitting at a desk rather than "Vartan Akopyan" who had just accepted the papers
27 from Benavides? Having a camera, why didn't Benavides photograph the recipient
28 to use as proof of proper service?

The answer, of course, is simple: Benavides did not deliver the papers to Vartan Akopyan (just as Akopyan previously declared) but instead handed the papers (if any) to someone else and then lied about these facts in two separate declarations.

Therefore, aside from being untimely, Krysak's declaration did not include competent testimony based on personal knowledge sufficient to authenticate any documents.

### Benavides failed to explain his earlier false statement, failed to declare that he served the subpoena at issue in the case, and did not explain how he knew the identity of the person who allegedly received documents from Benavides

Benavides submitted two inconsistent declarations. In his first, Benavides testified under oath that Benavides received and subsequently served *a summons*. Dkt No. 224-3.[3] But in the second, Benavides testified that he served *a subpoena*. Dkt No. 238-2 at p. 2. Since these two statements are irreconcilably inconsistent, Benavides committed perjury *per se*.[4] If Benavides claimed that his earlier statement was incorrect, Benavides had to state so explicitly and explain to the court *how* the error had occurred. (Benavides certainly had an opportunity to do so when Goldwater's counsel had reached out to Benavides and asked Benavides to sign another declaration.) But Benavides offered the court none. Absent an adequate explanation, the court has no reason to accept

---

[3] Although Goldwater may not rely on this document because the document lacked a scanned hand-written signature, Benavides remains bound by his statements in this document because Benavides *thought* that he made the statements under oath.

[4] 18 U.S.C. § 1623(a), (c) (italics added); *U.S. v. Jaramillo*, 69 F.3d 388, 390 (9th Cir. 1995) ("a defendant may be convicted of making a false declaration if he or she has made two irreconcilably contradictory declarations such that one of them is necessarily false").

Benavides' latter declaration as more truthful than his earlier (not unless the court *wants to* because Goldwater needs help prevailing on the motion).

But even if the court ignores Benavides' perjury, disregards Benavides' earlier declaration, and accepts the latter as stating the truth, Benavides' latest declaration is still insufficient to show that Benavides served Rite Care with *the subpoena* at issue in the case. Although Benavides declared that he received and served a copy of the subpoena, Benavides did not describe or refer to the exact document that he allegedly received and subsequently served. His declaration merely showed that Benavides received and served *some* subpoena, not *the subpoena* at issue here. All he had to do was say two things: 1) he obtained the document attached to his declaration from Goldwater's counsel through ABC Legal Services' portal and 2) subsequently served *that same document* on Rite Care's representative. But despite help from Goldwater's counsel, Benavides did not.[5] Absent this testimony, the court simply has no idea *what* document Benavides received and served.

Nor is it at all clear why Goldwater had to create its own declaration when the court's subpoena form, AO 88b, which Goldwater supposedly used, included a suitable declaration *on page two*! With eight attorneys assisting Goldwater in this case, it is unclear how *none* of them noticed this basic fact and decided to use their own defective declaration instead.

Finally, although Benavides claimed that he delivered some subpoena to "Vartan Akopyan," Benavides did not explain *how* he knew the recipient's identity. Did Benavides recognize Akopyan because the two were acquainted? Did Akopyan present his identification to Benavides? Did Akopyan say his name to Benavides? Any of these facts would have been sufficient, and yet none

---

[5] If merely attaching documents to a declaration without any reference to those documents in the body of the declaration was sufficient, then Fed.R. Evid. 901, which requires foundational testimony, would be unnecessary.

appeared in the declaration.  (In fact, if the court receives the photographs that Krysak submitted with *her* declaration, then the court will note that Benavides did not even bother taking Akopyan's photograph and instead took a photograph of some random blonde female sitting at a desk.)

Therefore, Benavides' declaration regarding the recipient's identity lacks personal knowledge and is inadmissible.  And without proof that a subpoena was personally delivered to Rite Care's duly authorized representative, the declaration is insufficient to establish lawful service.

## CONCLUSION

Rite Care objects to the court's *sua sponte* invitation for additional evidence and, failing that, ordering Akopyan to testify.  **1.** The order for leave to file supplemental declarations was not based on a motion supported by a showing of "excusable neglect" and a finding of "good cause."  **2.** Goldwater had not requested live testimony, nor is the option available to resolve jurisdictional disputes.  **3.** The court lacked a valid reason to make its interim order.

Rite Care also objects to Goldwater's additional evidence.  **1.** Krysak's and Kim's declarations remain untimely and inadmissible because the court's interim order did not invite additional evidence on any issue *other* than the proper service of the subpoena.  **2.** Krysak's declaration did not authenticate any documents, including the subpoena and photographs, and relayed inadmissible hearsay.  **3.** Benavides did not explain his earlier false statement, did not declare that he served *the subpoena* at issue in the case, nor explained how he knew the recipient's identity.

Therefore, the court should SUSTAIN Rite Care's objections, *not* consider *any* additional evidence that Goldwater submitted with its reply, nor penalize Rite Care for its failure to produce Akopyan (or any other witness) at the hearing on December 12, 2022.

Dated: 12/6/2022                    LOIA, INC. (APLC)

_Ilya Alekseyeff_
By Ilya Alekseyeff, Esq.
Attorney for Rite Care Hospice, Inc.