ILYA ALEKSEYEFF [CA 242462]
 ilya@loia.legal
LOIA, INC. (APLC)
727 W 7th St PH 1-13
Los Angeles, CA 90017
Tel: (213)537-4592

Attorney for Artur Elizarov and
defendant *in pro per*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDWATER BANK, NA, <br><br> *Plaintiff,* <br><br> versus <br><br> ARTUR ELIZAROV ET AL., <br><br> *Defendants.* | **5:21-cv-616-JWH-PSx** <br><br> NOTICE OF AND MOTION TO DISQUALIFY MAGISTRATE JUDGE SHERI PYM; MEMORANDUM <br><br> Date: 1/13/2023 <br> Time: 9:00 am <br> Court: Hon. John W. Holcomb |

**To Goldwater Bank, NA, Scott Howlett, Bank of the West, Unison Contract Corp., and The Honorable Sheri Pym, United States Magistrate Judge:**

At 9:00 am on Friday, January 13, 2023, in the United States District Court for the Central District of California located at Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th Street, Santa Ana, California 92701-4516, Courtroom 9D, Hon. John W. Holcomb, District Judge, defendants Artur Elizarov and Ilya Alekseyeff will MOVE under 28 U.S.C. §§ 144, 455(a) and 455(b)(1),

and L.R. 72-5, for an ORDER disqualifying Magistrate Judge Sheri Pym from further proceedings in this case for the following reason: based on Magistrate Judge Pym's conduct at the settlement conference on November 10, 2021 (as described in declarations of Ilya Alekseyeff and Artur Elizarov), a well-informed, thoughtful observer with knowledge of all the facts would conclude that Magistrate Judge Pym's impartiality might reasonably be questioned and perceive a significant risk that she would resolve the case on a basis other than the merits because Magistrate Judge Pym displayed a deep-seated favoritism toward plaintiff Goldwater Bank, NA or antagonism against defendants Artur Elizarov or Ilya Alekseyeff, or both, that would make fair judgment impossible.

The motion will be based on this notice and the attached memorandum as well as declarations of Ilya Alekseyeff and Artur Elizarov filed concurrently with this notice.

     This motion is made following a conference of counsel which took place on December 1, 2022.

Dated: 12/08/2022       LOIA, INC. (APLC)

*Ilya Alekseyeff*
_____
ILYA ALEKSEYEFF, ESQ.
Attorney for Artur Elizarov and
defendant in *pro per*

# MEMORANDUM

## Legal standard

Federal law requires a magistrate judge to "disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned," including " circumstances...[w]here [she] has a personal bias or prejudice concerning a party... ." 28 U.S.C. § 455(a),(b)(1); *Yagman v. Republic Ins*, 987 F.2d 622, 626 (9th Cir. 1993) ("Section 455 imposes an affirmative duty upon judges to recuse themselves"); *United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. 1980) ("section (b)(1) simply provides a specific example of a situation in which a judge's 'impartiality might reasonably be questioned' pursuant to section 455(a)").

The purpose of these laws is "to promote public confidence in the integrity of the judicial process... ." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860 (1988). Consistent with this purpose, "recusal is appropriate where 'a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *Yagman, supra*, 987 F.2d at p. 626 (internal citations omitted). "Accordingly, recusal will be justified either by actual bias *or the appearance of bias*." *Id.* (italics added) (citing *Preston v. United States*, 923 F.2d 731, 734 (9th Cir. 1991)).

"'Section 455(a) [28 U.S.C. § 455(a)] asks whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits.'" *Clemens v. U.S. Dist. Court for Central*, 428 F.3d 1175, 1178 (9th Cir. 2005) (internal citations omitted). "The 'reasonable person' in this context means a 'well-informed, thoughtful observer,' as opposed to a "hypersensitive or unduly suspicious person." *Id.* (internal citations omitted).

"The alleged prejudice must result from an extrajudicial source; a judge's prior adverse ruling is not sufficient cause for recusal." *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986). So, "'[o]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current

proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *United States v. Hernandez*, 109 F.3d 1450, 1454 (9th Cir. 1997) (internal citations omitted).

"Disqualification under § 455(a) is necessarily fact-driven and may turn on subtleties in the particular case." *U.S. v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008). "Consequently, 'the analysis of a particular section 455(a) [28 U.S.C. § 455(a)] claim must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue.'" *Id.* (internal citations omitted).

"A motion to disqualify a Magistrate Judge pursuant to 28 U.S.C. §§ 144 or 455 shall be made to the assigned District Judge." L.R. 72-5.

**Argument**

Based on Magistrate Judge Pym's conduct at the settlement conference on November 10, 2021, a well-informed, thoughtful observer with knowledge of all the facts would conclude that Magistrate Judge Pym's impartiality might reasonably be questioned and perceive a significant risk that she would resolve the case on a basis other than the merits because Magistrate Judge Pym displayed a deep-seated favoritism toward plaintiff Goldwater Bank, NA or antagonism against defendants Artur Elizarov or Ilya Alekseyeff, or both, that would make fair judgment impossible.

By the order of District Judge Holcomb, on November 10, 2021, defendants Artur Elizarov and his counsel and co-defendant Ilya Alekseyeff appeared at a settlement conference before Magistrate Judge Pym. In her enacting order, Magistrate Judge Pym stated that "[t]he purpose of the Settlement Conference is to permit an informal discussion between the attorneys, parties, non-party indemnitors or insurers, and the settlement judge, of every aspect of the case

*bearing on its settlement value.*" Dkt No. 94 at p. 2 (¶ 1). During the conference, which occurred via Zoom, Magistrate Judge Pym engaged in conduct that had *no bearing on the settlement value of the case* but was designed to bully Elizarov and Alekseyeff to settle the case on the terms favorable only to Goldwater.

**First**, Magistrate Judge Pym impugned Alekseyeff's role in the case "as an officer of the court. " Almost immediately after she joined the conference, Magistrate Judge Pym made the following statement to Alekseyeff: "I've never seen anything like this.  I cannot believe that you, as an officer of the court, would tell me that your client didn't have to pay the bank back just because the bank didn't record its lien."  This conduct was improper for several reasons.  <u>One</u>, Magistrate Judge Pym was wrong because Alekseyeff had *never* suggested that Goldwater's failure to record its deed of trust excused Elizarov's outstanding debt.  Elizarov had always acknowledged that he owed the debt but insisted that Goldwater had to accept the balance in monthly installments rather than as a lump sum.  And <u>two</u>, if Magistrate Judge Pym was unsure about Alekseyeff's position or argument, Magistrate Judge Pym had to ask Alekseyeff to clarify rather than accuse him of impropriety absent a valid basis.  Under these circumstances, any reasonable, well-informed person would think that a judge who decided to attack a lawyer's integrity without a valid reason and in the first moments of a settlement conferenced acted out of antagonism toward that lawyer's client or favoritism toward the lawyer's opponent and, therefore, would unlikely render fair judgments in the case moving forward.

**Second**, to compel a settlement on the terms favorable to Goldwater, Magistrate Judge Pym threatened Elizarov with criminal prosecution and threatened Alekseyeff's license when she said this: "I have to tell you, I've never seen a case like this before.  I've seen criminal cases like this but not civil.  Your client has to think about that.  And you also have to think what you're doing because you may lose your license because of this case."  These comments were

outrageous and inappropriate for several reasons. <u>First</u>, Magistrate Judge Pym must have intended Elizarov to interpret her comment as a threat of prosecution because she had no other reason to mention her experiences with *criminal cases* unless she wanted Elizarov to *think* that like the defendants from those criminal cases, Elizarov might also be prosecuted for some crime unless he paid Goldwater back on the exact terms that Goldwater wanted. This settlement tactic was inappropriate because the risk of prosecution had no "bearing in the [case's] settlement value," which was the stated purpose of the settlement conference. The sole purpose of this outrageous threat was to scare Elizarov and force him to settle the case on the terms favorable only to Goldwater, regardless of the merits of the case.

<u>Second</u>, Magistrate Judge Pym must also have intended that Elizarov *and Alekseyeff* interpret her comment as a threat to Alekseyeff's continued ability to practice law because, once again, she had no reason to mention any consequences for Alekseyeff's license, no matter how unlikely or imaginary, unless she wanted Elizarov to *think* that unless Elizarov paid Goldwater every penny on Goldwater's exact terms, Elizarov attorney *and registered domestic partner* might lose the license to practice law. Again, this comment was offensive and inappropriate because Alekseyeff's continued ability to practice law had no "bearing on the [case's] settlement value."

Needless to say, any reasonable, well-informed person would readily conclude that a judge who, as a settlement tactic, decided to threaten a party with criminal prosecution and to threaten the attorney's law license must have acted out of antagonism toward that lawyer's client or favoritism toward the lawyer's opponent and, therefore, would unlikely render fair judgments in the case moving forward. In fact, had Magistrate Judge Pym remained a practicing attorney in California, her conduct would have jeopardized *her own continued ability to practice law* because the California Rules of Professional Conduct make it

unlawful for attorneys to "threaten to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute." Cal. Rules of Prof. Conduct 3.10(a).

**And third**, Magistrate Judge Pym attempted to interfere with Alekseyeff's attorney-client relationship with Elizarov when she said the following: "I would not take a case like this to a jury." In his long experience as a public defender in Los Angeles County Superior Court, Alekseyeff readily recognized this tactic because state judges in criminal cases had employed this tactic in many of Alekseyeff's criminal cases to drive a "wedge" between Alekseyeff and his client, to discredit Alekseyeff's opinion about the case, and to compel the defendants to accept the *court's* view of the case (which had invariably favored the prosecution) over Alekseyeff's. If Magistrate Judge Pym thought that Goldwater had a strong case or Elizarov had a weak defense, Magistrate Judge Pym could certainly have expressed her views. But she did not merely highlight those strengths or weaknesses to Elizarov in an objective, evenhanded manner. Magistrate Judge Pym instead inserted herself into the litigation directly because wanted to discredit Alekseyeff's opinions, denigrate Alekseyeff's skills and abilities in front of Elizarov, make Elizarov doubt Alekseyeff as a lawyer, and for Elizarov to accept Magistrate Judge Pym's view of the facts and the law, which, limited though it was at the time, nonetheless favored Goldwater exclusively.

As was true with Magistrate Judge Pym's other instances of misconduct, any reasonable, well-informed person would readily conclude that a judge who wanted a litigant to distrust his lawyer to obtain a settlement favorable only to the party's opponent must have acted out of antagonism toward that party or favoritism toward the opponent and, therefore, would unlikely render fair judgments in the case moving forward.

Granted, Alekseyeff and Elizarov do not know (and cannot know) why Magistrate Judge Pym had developed such strong antagonism against them (or

favoritism toward Goldwater) that early in the case. Although Magistrate Judge Pym knew some facts about the case from the parties' filings, those facts were incomplete. But while Magistrate Judge Pym did not know much about the case, she knew exactly *two facts* about Alekseyeff and Elizarov, which could explain her conduct: both Alekseyeff and Elizarov were *gay men* and were in a *domestic partnership*. And if a judge found gay people in general or the state-sanctioned relationship between gay people in particular offensive, that judge may certainly become antagonistic against such litigants early in the litigations because the facts simply would not matter. Only the litigants' status as gay men would matter.

And no, Alekseyeff and Elizarov have not testified that Magistrate Judge Pym made any statements suggesting that she suffered from homophobia. Magistrate Judge Pym had made no such statements. But these circumstances should not be surprising because most professionals who suffer from homophobia act on their unfounded fears in less explicit ways. For example, rather than explicitly disapprove of gay litigants, a homophobic judge may simply threaten one of them with criminal prosecution, threaten the other's law license and baselessly question his actions "as an officer of the court," and try to interfere with their professional attorney-client relationship, exactly as Magistrate Judge Pym did in this case.

But regardless of Magistrate Judge Pym's motives, no reasonable, well-informed person would ever think that a judge could threaten a litigant with criminal prosecution, attack the litigant's lawyer's integrity, threaten the lawyer's law license, and attempt to interfere with the attorney-client relationship, all to compel a settlement favorable only to the opposing party, and then go on to judge the rest of the legal and factual disputes between the parties fairly.

## Conclusion

For these reasons, the court should FIND that a well-informed, thoughtful observer with knowledge of all the facts would conclude that Magistrate Judge

Pym's impartiality might reasonably be questioned and perceive a significant risk that she would resolve the case on a basis other than the merits because Magistrate Judge Pym displayed a deep-seated favoritism toward plaintiff Goldwater Bank, NA or antagonism against defendants Artur Elizarov or Ilya Alekseyeff, or both, that would make fair judgment impossible and ORDER Magistrate Judge Pym disqualified from further proceedings in this case.

Dated: 12/08/2022                                    LOIA, INC. (APLC)

*Ilya Alekseyeff*
_____
ILYA ALEKSEYEFF, ESQ.
Attorney for Artur Elizarov and
defendant in *pro per*