Sean C. Wagner (Pro Hac Vice)
Abbey M. Krysak (Pro Hac Vice)
**WAGNER HICKS PLLC**
831 East Morehead Street, Suite 860
Charlotte, North Carolina 28202
Tel: (704) 705-7538
Fax: (704) 705-7787

John Forest Hilbert, Esq. (SBN 105827)
Joseph A. LeVota, Esq. (SBN 262760)
**HILBERT & SATTERLY LLP**
409 Camino del Rio S. #104
San Diego, California 92108
Telephone:   (619) 795-0300
Facsimile:   (619) 501-6855

Marie B. Maurice (SBN 258069)
Marina Samson (SBN 315024)
**IVIE McNEILL WYATT PURCELL & DIGGS**
444 S. Flower Street, Suite 1800
Los Angeles, California 90071
Telephone:   (213) 489-0028
Facsimile:   (213) 489-0552

Counsel for Plaintiff
GOLDWATER BANK, N.A.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GOLDWATER BANK, N.A.**, | Case No. 5:21-cv-00616-JWH-SPx |
| Plaintiff, | |
| v. | **MEMORANDUM OF POINTS AND AUTHORITES RE: APPLICATION FOR DETERMINATION OF DEFENDANTS ELIZAROV AND ALEKSEYEFF'S PRIVILEGE CLAIMS & FED. R. CIV. P. 45(e)(2)(B) CLAWBACK DEMANDS** |
| **ARTUR ELIZAROV, *ET AL*.** | |
| Defendants. | |

Hearing date:  March 17, 2023
Hearing time:  9:00 a.m.
Courtroom:   Hon. Holcomb, Courtroom 9D

Pre-Trial Conf.: July 14, 2023
Trial Date: August 7, 2023
Discovery Cut-off: March 17, 2023

# TABLE OF CONTENTS

I. Background..................................................................................................1

II. L.R. 37-2.4 Statement ...............................................................................3

III. Contentions, Points, and Authorities .......................................................4

   A.  Defendants have waived all objections and privileges relative to the subpoenaed documents.............................................................................4

     1.  Defendants waived any objection to the Subpoenas..........................5

     2.  No "unusual circumstances" are present and there is no "good cause" for Defendants' willful waiver. ...............................................................6

     3.  The continuing failure to produce a privilege log also effects a waiver......10

   B.  Even absent Defendants' waiver, the documents produced are relevant and discoverable, and not protected by any privilege.................................11

     1.  The relevance of the information sought and Goldwater's need for it supersedes any privacy privilege held by Alekseyeff or Elizarov. ...................11

     2.  Any third-party privacy interests do not overcome Goldwater's discovery interests  and are otherwise secured by the Protective Order.............................14

     3.  None of the information sought is subject to protection as a trade secret...17

   C. Goldwater is entitled to fees and expenses for this Application. ....................18

IV. Conclusion...............................................................................................21

1

# TABLE OF AUTHORITIES

2

## CASES

3

*Bonzani v. Shinseki,* No. 2:11-CV-00007-EFB, 2014 WL 2521849, at *4
(E.D. Cal. June 4, 2014).......................................................................................5

4

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408
F.3d 1142, 1149 (9th Cir. 2005) .......................................................................11

5

*Cameron v. City of El Segundo*, No. 2:20-CV-04689-JFW-JC, 2021 WL
3466324, at *8 (C.D. Cal. Apr. 30, 2021).................................................... 4, 11

6

*Cross v. United Airlines,* No. CV 05-3398 AG (EX), 2010 WL 11475556, at
*4 (C.D. Cal. Aug. 11, 2010), *aff'd*, 510 F. App'x 517 (9th Cir. 2013)......................7

7

*Davis v. Leal*, 43 F. Supp. 2d 1102, 1110 (E.D. Cal. 1999)............................................17

8

*Deleone v. Oregon Mainline Paving, LLC*, No. 09-6189-TC, 2011 WL
3917984, at *2 (D. Or. Sept. 2, 2011).............................................................19

9

*Doe 2 v. Superior Ct.*, 132 Cal. App. 4th 1504, 1511, 34 Cal. Rptr. 3d 458,
462 (2005) .............................................................................................................14

10

*Garcia v. Pine Grant Inv. Co.*, Ltd, No. 21-CV-04916-JST, 2022 WL
472176, at *2 (N.D. Cal. Jan. 21, 2022) ..........................................................9

11

12

*Hardin v. Mendocino Coast Dist. Hosp.*, No. 17CV05554JSTTSH, 2019
WL 1493354, at *5 (N.D. Cal. Apr. 4, 2019) ..................................................6

13

*Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 34, 865 P.2d 633, 654
(1994) .......................................................................................................... 3, 11

14

*Huy Fong Foods, Inc. v. Underwood Ranches, LP*, 66 Cal. App. 5th 1112,
1126, 281 Cal. Rptr. 3d 757, 769 (2021) ........................................................13

15

*I.R. v. City of Fresno*, No. 1:12-CV-00558-AWI, 2014 WL 1419305, at *2
(E.D. Cal. Apr. 11, 2014).....................................................................................5

16

17

*In re Bestwall LLC*, No. 2:22-MC-00220-KJM-DB, 2022 WL 4082140, at
*2 (E.D. Cal. Sept. 6, 2022) ................................................................................6

18

*In re Heritage Bond Litig.,* 2004 WL 1970058, *5 n. 12 (C.D. Cal. July 23,
2004) .......................................................................................................................8

19

*In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486CW(EDL), 2007 WL
1100324, at *1 (N.D. Cal. Apr. 10, 2007 ........................................................15

20

21

*Kalter v. Keyfactor, Inc.*, No. 21-CV-1707-L-DDL, 2022 WL 16752977, at
*2 (S.D. Cal. Nov. 7, 2022) ...............................................................................13

22

*Laub v. Horbaczewski*, 331 F.R.D. 516, 522 (C.D. Cal. 2019).....................................12

23

*Lifschultz v. City of San Juan Capistrano*, No. 81901497JVSADSX, 2020
WL 4342543, at *2 (C.D. Cal. June 23, 2020) ..............................................13

24

*Los Angeles Cnty. Bd. of Supervisors*, 2 Cal. 5th at 299, 386 P.3d at 783.......................9

25

*McCoy*, 211 F.R.D. at 386 .........................................................................................................9

26

*Mengistu v. Forestview Apts, LLC*, No. 2:19-CV-05118-ODW-JC, 2020 WL
12029101, at *2 (C.D. Cal. June 5, 2020)........................................................13

27

28

*Nat.-Immunogenics Corp. v. Newport Trial Grp.*, No.
15CV02034JVSJCGX, 2017 WL 10562985, at *5 (C.D. Cal. Mar. 6,
2017) .................................................................................................................. 1

Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP, 256
F.R.D. 678, 683 (C.D. Cal. 2009) ................................................................. 17

*Neumeyer v. Wawanesa Gen. Ins. Co.,* No. 14CV0181 MMA(RBB), 2014
WL 12498212, at *3 (S.D. Cal. Dec. 16, 2014) .............................................. 5

*Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1297 (9th Cir. 2010) ..................................... 19

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ................................... 12

*Padron v. Watchtower Bible & Tract Soc'y of New York, Inc.*, 16 Cal. App.
5th 1246, 1271, 225 Cal. Rptr. 3d 81, 103-04 (2017).................................... 16

*Pioneer Elecs. (USA), Inc. v. Superior Ct.*, 40 Cal. 4th 360, 370, 150 P.3d
198, 204 (2007) ................................................................................... 12, 15, 16

*Raymond Handling Concepts Corp. v. Superior Ct.,* 39 Cal. App. 4th 584,
590, 45 Cal. Rptr. 2d 885, 888 (1995) .......................................................... 18

*S.L. v. Upland Unified Sch. Dist.*, No. EDCV182122JGBKKX, 2019 WL
8163805, at *2 (C.D. Cal. Oct. 4, 2019) ......................................................... 5

*Scruggs v. Vance*, No. 2:06-CV-0633 KJM KJN, 2011 WL 6368297, at *10
(E.D. Cal. Dec. 19, 2011)......................................................................... 5, 7

*Sierra Club v. Cnty. of San Diego*, No. D079518, 2022 WL 3442027, at *11
(Cal. Ct. App. Aug. 17, 2022) (unpublished/unciteable) ............................... 9

*UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.,* No. CIV S-
042611FCD DAD, 2006 WL 2034689, at *3 (E.D. Cal. July 18, 2006).................... 7

*Valley Bank of Nev. v. Superior Ct.*, 15 Cal. 3d 652, 658, 542 P.2d 977, 980
(1975) ............................................................................................................. 14

*Walters v. Target Corp.,* No. 3:16-CV-1678-L-MDD, 2018 WL 4405419, at
*1 (S.D. Cal. Sept. 17, 2018) ....................................................................... 15

*Weingarten v. Superior Ct.*, 102 Cal. App. 4th 268, 278, 125 Cal. Rptr. 2d
371, 379 (2002) ............................................................................................. 14

*Welle v. Provident Life & Accident Ins. Co.,* No. 312CV3016EMCKAW,
2013 WL 5954731, at *3 (N.D. Cal. Oct. 30, 2013).................................... 15

*Zimmerman v. Superior Ct.,* 220 Cal. App. 4th 389, 396, 163 Cal. Rptr. 3d
135, 140 (2013) .............................................................................................. 9

## RULES

CAL. EVID. CODE § 1060 ...................................................................................... 21

CAL. EVID. CODE § 954 ........................................................................................ 13

FED. R. CIV. P. 15(b)............................................................................................ 12

FED. R. CIV. P. 37(b)(2)(a) .................................................................................. 24

FED. R. CIV. P. 45(c)(2)(B) .................................................................................... 8

FED. R. CIV. P. 45(e)(2)(B) ................................................................... 1, 6, 9, 27

L.R. 26-1 ................................................................................................................ 7

L.R. 37-1 ...................................................................................................7, 11, 22, 24

L.R. 37-2.4(a) ...................................................................................................... 7

L.R. 37-4 .................................................................................................... 22, 24

L.R. 72-2.2 ........................................................................................................ 16

L.R. 79-5.2.2 ....................................................................................................... 7

APPLICATION FOR PRIVILEGE DETERMINATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I. BACKGROUND[1]

This action arises from Defendant Artur Elizarov's breach of a Note and Deed of Trust held by Plaintiff Goldwater Bank, N.A. ("Goldwater") and secured by 291 W. Overlook Road, Palm Springs, California 92264 (the "Subject Property").  After discovering that Goldwater's Deed of Trust was unrecorded, Elizarov sold the Subject Property to Defendant Scott Howlett. Recognizing Goldwater had not yet recorded its first priority Deed of Trust, Elizarov attempted to hide the proceeds of the sale by buying real property for cash in Florida and paying off a loan belonging to Elizarov's domestic partner and counsel herein, Defendant Ilya Alekseyeff ("Alekseyeff"). Goldwater alleges that Defendant Elizarov also conspired with Alekseyeff (collectively "Defendants") to defraud Goldwater on multiple occasions, including in Elizarov's initial application for a mortgage on the subject property as well as in later applications for mortgage assistance. *See, generally*, ECF No. 44, Amd. Complaint.

Beginning late July 2022, Goldwater issued Subpoenas *Duces Tecum* to certain companies representing Elizarov's employers at and around the time of the mortgage application and later mortgage assistance applications. *See*, *e.g.*, ECF No. 191, Order Denying Mot. to Quash. On July 31, 2022, Elizarov filed an *ex parte* Application for a Temporary Stay of Subpoenas Pending a Motion to Quash, attempting to prevent the production of this relevant employment information, essentially asserting an unqualified privacy privilege under CAL. CONST., Art. 1, § 1. *See*, *e.g.*, ECF No. 175, Order Denying *Ex Parte* Appl. Judge Pym ultimately denied Elizarov's *ex parte* Application, ordering the employment materials produced and sequestered until Elizarov's Motion to Quash could be heard. *See* ECF No. 175,

---

[1] This Application is properly made in Central District of California where compliance was required for the attached Subpoenas. *See* **Exhibits 1**, **4**, Subpoenas; *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, No. 15CV02034JVSJCGX, 2017 WL 10562985, at *5 (C.D. Cal. Mar. 6, 2017) (place of compliance rule applies to all Rule 45 motions). Elizarov also objected to a Subpoena to Citibank, N.A., with compliance required in the Western District of North Carolina.

Order Denying *Ex Parte* App. Elizarov filed a Motion to Quash two of the employer Subpoenas on August 16, 2022, again premised upon an overbroad reading of California's privacy privilege and an impossibly narrow conception of relevance. *See*, *e.g.*, ECF No. 191, Order, pp. 1-3. Judge Pym rejected these arguments, finding the financial information sought in the Subpoenas was relevant to the claims and defenses, rejecting Elizarov's attempts to narrow the scope of relevant information, and overruling Elizarov's privacy privilege arguments using the applicable balancing test, expressly finding "Plaintiff's need for this information easily outweighs defendant's privacy interests." *See* ECF No. 191, Order, p. 4.

Upon recognizing previously undisclosed accounts in certain records produced by Ally Bank and the public records available through Venmo, on October 31, 2022, Goldwater timely noticed and issued Subpoenas *Duces Tecum* to financial institutions including JP Morgan Chase Bank, N.A ("JPMC") and PayPal, Inc. d/b/a Venmo ("PayPal") seeking additional financial information, to be produced at Regus Business Center in Los Angeles, Ca. on November 15, 2022. **Exhibit 1**, 10/31/2022 Notices/Subpoenas. On November 14, 2022, Alekseyeff emailed to the parties an "Objection Under Rule 45(e)(2)(B)" relative to the JPMC and PayPal Subpoenas. Importantly, Defendants filed no motion of any kind nor otherwise brought their objection to the attention of the Court. **Exhibits 2-3**, Paypal and Chase Objections.

On November 23, 2022, Goldwater issued Subpoenas *Duces Tecum* to institutions including JP Morgan Securities, LLC ("JPM Securities") and LA Financial Federal Credit Union ("LA Financial"). **Exhibit 4**, 11/23/2022 Notices/Subpoenas. Alekseyeff responded to these Subpoenas by email dated November 29, 2022, which attached additional, lengthy Objections styled "Notices of Privilege" (hereinafter "Objections") exceeding fifteen (15) pages. With these, Alekseyeff expressly stated his intent ***not*** to file a motion to quash or for protective order, but to give a "notice of privilege" under FED. R. CIV. P. 45(e)(2)(B) and to seek to disqualify Judge Pym "for bias." **Exhibit 5**, 11/29/2022 email; **Exhibits 6-7**, JPM

Securities, LA Financial Objections. These cumbersome "notices" were more akin to motions and were premised upon privacy objections and an improperly narrow interpretation of the issues similar to that previously rejected by Judge Pym. These Objections also included unfounded personal attacks on Goldwater's employee Pete Hill and its counsel unrelated to Defendants' objection.

## II. L.R. 37-2.4 STATEMENT

The undersigned hereby declares, under penalty of perjury, that on January 27, 2023, after prior attempts to resolve some of these objections, counsel for Goldwater emailed a letter pursuant to L.R. 26-1 and L.R. 37-1 requesting to meet and confer with Alekseyeff regarding all of his Rule 45 objections. **Exhibit 8**, 01/27/20223 Letter. That same day, Alekseyeff responded that he would not be available to timely meet and confer within the ten days required by L.R. 37-1 because he was "in trial." **Exhibit 9**, 01/27-31/2023 Emails. With the March 17, 2023 discovery deadline fast approaching, Alekseyeff responded with belittling personal attacks on Goldwater's counsel, informing them he simply would not be available until February 10, 2023 or after. **Exhibit 9**, 01/27-31/2023 Emails. Based on Alekseyeff's refusal to timely meet and confer as required by L.R. 37-1, and in an effort to secure a hearing date prior to the current discovery deadline, Goldwater offers this Application without joint stipulation pursuant to L.R. 37-2.4(a)'s exception.

All exhibits attached hereto are true and accurate copies as maintained in the business records of Wagner Hicks, PLLC. *See* **Exhibit 10**, Krysak Declaration. Under Rule 45(e)(2)(B), all documents produced in response to the Subpoenas are to be filed under seal with this Application. In conformance with L.R. 79-5.2.2, Goldwater has sought to seal these documents by separate application filed concurrently herewith. Should the Court determine review of the documents are necessary to its ruling on Defendants' untimely objections, Goldwater will promptly file the produced documents under seal upon this Court's approval of its separate application pursuant to L.R. 79-5.2.2. All Subpoenas subject to Defendants'

Objections, along with the Notices of same, are reproduced herein through true, correct, and complete copies attached hereto at **Exhibits 1** and **4**.

### III. CONTENTIONS, POINTS, AND AUTHORITIES

Rule 45(e)(2)(B) provides that a party may provide notice that information already produced in response to a subpoena is subject to a "claim of privilege or of protection as trial-preparation material," in which case the party in receipt of the purportedly privileged information must sequester the information and may present it to the Court, under seal, for a determination of the privilege claim(s). Here, Defendants forced this Application by wrongfully invoking Rule 45's "clawback" procedure for information they ***knew*** would be produced in response to the Subpoenas, intentionally ignoring the Rules governing ***party*** objections. Those Rules require objections be made ***by motion to the Court <u>prior to the production</u>***. In openly flouting the Rules, Defendants waived any objection they might have relative to the relevant information produced by the third-party financial institutions in response to the Subpoenas. Even absent waiver, Defendants' various privilege objections, including their objection regarding purported third-party privacy interests in ***Defendants'*** financial records, are without merit.

**A. DEFENDANTS HAVE WAIVED ALL OBJECTIONS AND PRIVILEGES RELATIVE TO THE SUBPOENAED DOCUMENTS.**

Under Rule 45, a nonparty served with the subpoena *duces tecum* may make objections to the subpoena within 14 days after service or before the time for compliance, if less than 14 days. FED. R. CIV. P. 45(c)(2)(B). Only the nonparty to whom the subpoena is issued can prevent disclosure by objection. *Cameron v. City of El Segundo*, No. 2:20-CV-04689-JFW-JC, 2021 WL 3466324, at *8 (C.D. Cal. Apr. 30, 2021). ***<u>A party to whom the subpoenaed records pertain cannot simply object, he must seek a protective order or motion to quash the subpoena</u>***. *Id.* Generally, a non-party's failure to serve timely objections combined with the party's failure to timely move to quash or for a protective order waives all grounds for

objection.[2] *See Scruggs v. Vance*, No. 2:06-CV-0633 KJM KJN, 2011 WL 6368297, at *10 (E.D. Cal. Dec. 19, 2011); *Neumeyer v. Wawanesa Gen. Ins. Co.,* No. 14CV0181 MMA(RBB), 2014 WL 12498212, at *3 (S.D. Cal. Dec. 16, 2014). With respect to motions to quash/for protective orders "[c]ourts have generally interpreted timely to mean within the time set in the subpoena for compliance." *S.L. v. Upland Unified Sch. Dist.*, No. EDCV182122JGBKKX, 2019 WL 8163805, at *2 (C.D. Cal. Oct. 4, 2019) (internal quotations omitted). A party waives objection where, as here, he never files a motion to quash or a motion for a protective order, and only raises objections after production or refusal to produce by the non-party. *See, e.g.*, *I.R. v. City of Fresno,* No. 1:12-CV-00558-AWI, 2014 WL 1419305, at *2 (E.D. Cal. Apr. 11, 2014).

**1. Defendants waived any objection to the Subpoenas.**

Upon being noticed with the Subpoenas, Alekseyeff did not move to quash or for a protective order. Rather, he began issuing his series of Objections styled as "Notices of Privilege" under FED. R. CIV. P. 45(e)(2)(B), the first being issued on the same day as a response was due from PayPal and JPMC  *See* **Exhibits 2**, **3**, **6**, **7**, Objections. Alekseyeff ultimately admitted it was his intention ***not*** to move to quash or for protective order, but to foist the motion burden on Goldwater, stating:

> "Rather than challenge Wagner's latest subpoenas under Fed.R.Civ.P. 26, I instead decided to give notice of privilege under Fed.R.Civ.P. 45(e)(2)(B) and then make a motion to District Judge Holcomb to disqualify Magistrate Judge Pym for bias."

**Exhibit 5**, 11/29/2022 email.

In using these "notices," Alekseyeff asserted he had a right to "claw back" purportedly privileged documents that he ***knew in advance*** would be produced by

---

[2] Defendants have also complained regarding the place of compliance for some Subpoenas. They lack standing to make this objection. *See, e.g.*, *Bonzani v. Shinseki,* No. 2:11-CV-00007-EFB, 2014 WL 2521849, at *4 (E.D. Cal. June 4, 2014).

the third-party institutions.  This flies in the face of Rule 45(e)(2)(B)'s purpose, which provides for recovery of inadvertent disclosures - unexpected information disclosed in otherwise discoverable documents that was subject to privilege or of protection as trial-preparation material.[3] There was no inadvertent disclosure as contemplated by Rule 45(e)(2)(B)'s claw back provision. *See In re Bestwall LLC*, No. 2:22-MC-00220-KJM-DB, 2022 WL 4082140, at \*2 (E.D. Cal. Sept. 6, 2022) (noting Rule 45(e)(2)(B) offers "recourse to third parties who ***inadvertently*** disclose privileged information or "trial-preparation material" in response to a subpoena") (emphasis added). Defendants have repeatedly tried (and failed) to prevent discovery of relevant financial information, claiming the privacy privilege. They knew these Subpoenas sought similar information. If Defendants believed these objections had any validity in the face of multiple orders to the contrary, they could have filed motions to quash and/or for protective orders. They did not.

Alekseyeff issued the improper notices to claw back documents from the JPM Securities and LA Financial Subpoenas on November 29, 2022, ***fourteen (14) days before the December 12, 2022 responses to those Subpoenas were due***. *See* **Exhibit 6**, 11/29/2022 email.  Alekseyeff's communications with counsel demonstrate that he intentionally waived filing a motion to quash or for protective order, wrongly believing they could rely on Rule 45(e)(2)(B). This refusal to file a timely and appropriate motion is a knowing and intentional waiver of any privileges Defendants may have had relative to the subpoenaed information.

**2.   No "unusual circumstances" are present and there is no "good cause" for Defendants' willful waiver.**

Only in "unusual circumstances and for good cause," will a litigant's failure to timely move not constitute a waiver of objections to a Rule 45 subpoena. *See Scruggs*,

---

[3] Some courts have found the Rule 45(e)(2)(B) clawback applies solely to attorney-client and work product privilege and would not extend to the privacy privilege in Elizarov's objections. *See, e.g., Hardin v. Mendocino Coast Dist. Hosp.*, No. 17CV05554JSTTSH, 2019 WL 1493354, at \*5 (N.D. Cal. Apr. 4, 2019).

APPLICATION FOR PRIVILEGE DETERMINATION

2011 WL 6368297 at \*11. "Courts have found unusual circumstances where: (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged the legal basis for the subpoena." *Id.* None of these "unusual circumstances" are present here and there is no good cause for Alekseyeff's willful refusal to comport with Rule 45's motion requirement.

The only cause offered for Defendants' failure to timely move regarding their objections was that Alekseyeff "was in trial" in and around the time the Subpoenas were issued, the same reason he was unable to fulfill his L.R. 37-1 obligations relative to this Application. *See, e.g.,* **Exhibit 2**, PayPal Objection, p.2. Alekseyeff has repeatedly used his apparent "one case at a time" approach to lawyering as an excuse for his failure to participate in discovery in this case. *See, e.g.,* ECF No. 234, Oppo. to Mot. for Sanctions, pp. 5-6. As Goldwater has noted in prior filings, every attorney in this case has multiple open matters requiring their attention, but discovery rules and deadlines would be eviscerated if simply being busy were sufficient to excuse compliance. *See, e.g.*, *Cross v. United Airlines,* No. CV 05-3398 AG (EX), 2010 WL 11475556, at \*4 (C.D. Cal. Aug. 11, 2010), *aff'd,* 510 F. App'x 517 (9th Cir. 2013); *UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.,* No. CIV S-042611FCD DAD, 2006 WL 2034689, at \*3 (E.D. Cal. July 18, 2006) (rejecting counsel's engagement "in a number of trials" as excuse for failure to comport with discovery deadline). Moreover, contrary to Alekseyeff's contention that Goldwater's actions prevent his response by serving the Subpoenas "while he was in trial," all of these Subpoenas were issued before the Court's December 19, 2022 extension of deadlines in an effort to comport with the rapidly approaching 30-day window prior to the previous discovery deadline of December 16, 2022. *See* ECF No. 248, Amd. Sched. It is also important to note that Alekseyeff had time enough to issue detailed

Objections to the parties that read like motions themselves, vitiating his claims of insufficient time to file these objections as a joint stipulation or *ex parte* motion.

In addition, the Subpoenas are not overbroad and do not exceed the bounds of fair discovery. The majority of the records sought are those of Elizarov, which as discussed below (and in the previous orders from Judge Pym), represent financial information directly relevant to the claims and defenses in this action. *See, e.g.,* ECF No. 191, Order Denying Mot. to Quash; ECF No. 190, Order on Mot. to Compel. Alekseyeff is also a Defendant in this action and is alleged to have conspired with and assisted Elizarov in hiding assets. The relevance and sheer importance of this information to the claims and defenses overcomes any fairness or privacy objection. This is especially true when the Court considers the Protective Order in place. *See* ECF No. 169, Stipulated Protective Order; *In re Heritage Bond Litig.,* 2004 WL 1970058, *5 n. 12 (C.D. Cal. July 23, 2004) ("Any privacy concerns [ ] defendants have in their bank records and related financial statements are adequately protected by the protective order, and are not sufficient to prevent production in this matter").

Alekseyeff also does not demonstrate unfair discovery with accusations that the PayPal Subpoena sought obvious attorney-client/work product privileged information by referencing his phone number and business email address. *See*, **Exhibit 2**, PayPal Objection, p. 2. Although he is an attorney and Elizarov's counsel, Alekseyeff is also Defendant in this action, who is alleged to have conspired with his client and domestic partner Elizarov to hide assets from the sale of the Subject Property and otherwise assisted in Elizarov's defrauding of Goldwater. *See, e.g.*, ECF No. 44, Amd. Complaint, ¶¶ 29, 46, 79, 106-113.[4] Goldwater did not seek clearly privileged information. Alekseyeff is intertwined with the financial transactions at the heart of this case, and Goldwater utilized all contact information disclosed in

---

[4] The Court should also ignore any attack on the relevance of Alekseyeff's financial information based on the scope of allegations against him in the Amended Complaint. The pleadings may be freely amended at trial to conform with the evidence discovered and presented, and Alekseyeff is fully aware of his own financial dealings and that they may be used against him at trial. *See* FED. R. CIV. P. 15(b).

discovery and in this litigation in an effort to secure Alekseyeff's relevant, personal, financial information.

More importantly, Alekseyeff's personal financial records are not "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence" or even "observations made as a consequence of such communications," and are therefore not "confidential communications" protected the attorney-client privilege protections of CAL. EVID. CODE § 954.[5] *Cf., e.g., Zimmerman v. Superior Ct.,* 220 Cal. App. 4th 389, 396, 163 Cal. Rptr. 3d 135, 140 (2013) (discussing scope of attorney-client privilege). In fact, even if the records evidenced transactions with clients, such transactions are not attorney-client or work product privileged where they do not in any way reveal the substance of legal consultation. *See Garcia v. Pine Grant Inv. Co*., Ltd, No. 21-CV-04916-JST, 2022 WL 472176, at *2 (N.D. Cal. Jan. 21, 2022) (finding "information Defendant requested will not 'provide[ ] any insight into litigation strategy or legal consultation' of the kind which triggers the attorney-client privilege").[6] Here, Goldwater did not seek legal invoices or any sort of legal records, but records of Alekseyeff's financial transactions created by financial institutions. Tellingly, Alekseyeff's Objections did not indicate any particular transactions he feels might be privileged, how they allegedly represent a "communication" between client and counsel, or how they purportedly reveal the substance of any legal consultation. *See* **Exhibits 2**, **3**, **6**, **7**, Objections.  And, to the extent any accounts are jointly held between Elizarov and Alekseyeff, any such privilege claims cease to exist.

---

[5] A federal court sitting in diversity applies the privileges of the state in which it sits. *McCoy*, 211 F.R.D. at 386.  The information is also nonprivileged under federal law. *Los Angeles Cnty. Bd. of Supervisors*, 2 Cal. 5th at 299, 386 P.3d at 783.

[6] In a recent unpublished decision, the California Court of Appeals rejected privilege relative to billing statements where the objecting party "fail[ed] to point to even a single billing statement that assertedly reflects litigation strategy or consultation. *Sierra Club v. Cnty. of San Diego*, No. D079518, 2022 WL 3442027, at *11 (Cal. Ct. App. Aug. 17, 2022) (unpublished/unciteable).

**APPLICATION FOR PRIVILEGE DETERMINATION**

In addition, Alekseyeff apparently made no attempt to communicate with the Subpoenaed parties and identify and segregate allegedly protected materials or to create a privilege log identifying the specific items to which he claimed privilege. Despite asserting "constitutionally protected private bank information of Elizarov and third parties" that would be disclosed, Alekseyeff elected not to move to quash or for a protective order as required by the Rules, instead, in another example of blatant gamesmanship, attempted to foist the motion/joint stipulation burden on Goldwater. In willfully ignoring his duty to move under Rule 45, Elizarov waived any privilege to the documents produced by the Subpoenaed parties. Moreover, as discussed *infra*, the Protective Order will sufficiently protect the privileges of any third parties who might be identified in the documents.

**3. The continuing failure to produce a privilege log also effects a waiver.**

In addition to the failures above, Elizarov's financial statements as sought in the Subpoenas were and are responsive to Goldwater's existing discovery requests seeking broad financial information relevant to Elizarov's purchase and subsequent sale of the Subject Property and the dispersal of assets relative to same, much of which has already been compelled by this Court. *See, e.g.*, ECF No. 178-1, Joint Stip., pp. 32-43, 50-52 (ROG 13, financial accounts); pp. 63-65 (RFP No. 7, any docs reflecting 2020 reduction in income); ECF No. 190, Order on Mot. to Compel. These personal, financial records were and are in the immediate, possession, custody, or control of Defendants, ***and should have already been identified and/or produced***. Despite the valid discovery requests and Judge Pym's Order, Elizarov has never produced or identified in any privilege log, any financial statements from the Subpoenaed institutions or, in the case of PayPal, Chase Securities, and LA Financial Federal Credit Union, the existence of the financial institutions themselves.[7] This

---

[7] Although PayPal/Venmo itself is not technically a bank, it similarly holds funds and processes income for the Defendants, and is arguably encompassed within the good faith bounds of Interrogatory No. 13. PayPal records reflecting Elizarov's income during the 2020 mortgage assistance period are certainly responsive to Request for Production No. 7.

**APPLICATION FOR PRIVILEGE DETERMINATION**

provides yet another basis for waiver of any privilege that might extend to these documents. *See, e.g., Cameron*, 2021 WL 3466324, at *8; *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (affirming finding of waiver where party failed to produce a privilege log until five months after discovery responses were due)

### B. EVEN ABSENT DEFENDANTS' WAIVER, THE DOCUMENTS PRODUCED ARE RELEVANT AND DISCOVERABLE, AND NOT PROTECTED BY ANY PRIVILEGE.

Beyond Defendants' clear waiver resulting from their own procedural fencing, none of the privilege objections raised in Defendants' Objections have merit. As discussed above, the financial records produced through the Subpoenas simply do not implicate the attorney-client or work product privileges as Alekseyeff implied in his Objections. Further, as discussed in detail below, the privacy privilege, whether held by Defendants or third parties, is inapplicable to those records, as even the broad California privilege relied upon does not permit Defendants to conceal directly relevant evidence.  Rather, any right to privacy must be balanced against Goldwater's right to discover relevant information, a balance which tilts heavily in favor of Goldwater. Finally, Alekseyeff's vague assertion of "trade secrets" in those records does not warrant any protection, let alone the broad withholding of these relevant documents.

### 1. The relevance of the information sought and Goldwater's need for it supersedes any privacy privilege held by Alekseyeff of Elizarov.

Defendants' objections rest largely on the privacy protections of the California Constitution, Art. I, § 1. *See* **Exhibits 2**, **3**, **6**, **7**, Objections. The right to privacy in California is not absolute, but a right subject to invasion depending upon the circumstances. *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 34, 865 P.2d 633, 654 (1994). Courts utilize a balancing framework for assessing privacy claims under the California Constitution and any privacy interest asserted must outweigh the countervailing interests, like discovery rights. *Pioneer Elecs. (USA), Inc. v. Superior*

*Ct.*, 40 Cal. 4th 360, 370, 150 P.3d 198, 204 (2007). Goldwater's discovery rights are broad, encompassing all relevant, non-privileged information, and "[r]elevancy for purposes of discovery is defined "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Further, the Court must "place the burden on the party asserting a privacy interest to establish its extent and the seriousness of the prospective invasion, and against that showing must weigh the countervailing interests the opposing party identifies." *Laub v. Horbaczewski*, 331 F.R.D. 516, 522 (C.D. Cal. 2019).

Here, the relevance, and discoverability, of the requested information is unquestionable and outweighs Defendants' privacy claims. Goldwater alleges misrepresentations in Elizarov's initial Mortgage Application, including the initial failure to disclose his spouse, Alekseyeff. *See* ECF No. 44, Amd. Complaint, ¶¶ 23-35. In his May 2020 Mortgage Assistance Application, Elizarov alleged a disruption in income [from his employer eCivis] and an inability to pay.  Further, the Amended Complaint alleges that Alekseyeff assisted Elizarov in concealing the proceeds of the sale of the Subject Property in and around March 2021, after almost a year of mortgage forbearance. *See, e.g.*, ECF No. 44, Amd. Complaint, ¶¶ 36-69, 106-113. As recognized by Judge Pym, information relative to Elizarov's income and financial status during this period bears directly on multiple claims and defenses and is fully discoverable. *See, e.g.*, ECF No. 191, Order on Mot. to Quash, p. 5 (noting broad time frame relative to fraud claims). Despite Defendants' unfounded attacks on Judge Pym's rulings (and character), those rulings remain in effect until stayed or overruled. *See* L.R. 72-2.2.

The Subpoenas at issue here seek similar financial records relevant to Goldwater's broad claims of fraud against Elizarov and corresponding conspiracy against Alekseyeff. *See* ECF No. 191, Order on Mot, to Quash, p. 5 (finding "plaintiff's fraud claims are much broader than defendant's characterization"). The

instant Subpoenas cover periods beginning May 1, 2019 (at the earliest) to the present which covers the period immediately preceding Elizarov's initial July 3, 2019 Mortgage Application, when he failed to disclose certain assets and liabilities. *See, e.g.*, ECF No. 44, Amd. Complaint at ¶¶ 23-35. This period further encompasses the several months around May 5, 2020, during which Elizarov sought pandemic mortgage assistance representing he had suffered an income reduction and had minimal assets. He continued to make that representation through January of 2021. *See, e.g.*, ECF No. 44, Amd. Complaint, ¶ 36-46. The financial documents produced also reflect Defendants' financial status throughout Elizarov's dealings with Goldwater and are relevant to claims regarding Elizarov's divestiture of and continued concealment of assets related to the Subject Property's sale, including Elizarov's provision of sums to Alekseyeff to pay off Alekseyeff's personal loan obligations. *See, e.g.*, ECF No. 44, Amd. Complaint. ¶¶ 79, 106-113.

This financial information is also relevant to Goldwater's claims for punitive and exemplary damages based on Defendants' fraudulent conduct. *See, e.g.,* ECF No. 44, Amd. Complaint, p. 17; *Lifschultz v. City of San Juan Capistrano*, No. 81901497JVSADSX, 2020 WL 4342543, at *2 (C.D. Cal. June 23, 2020) (information related to defendant's current net worth and financial information is clearly relevant to punitive damages); *Kalter v. Keyfactor, Inc*., No. 21-CV-1707-L-DDL, 2022 WL 16752977, at *2 (S.D. Cal. Nov. 7, 2022); ¶¶ 96-113; *c.f.*, *also Huy Fong Foods, Inc. v. Underwood Ranches, LP*, 66 Cal. App. 5th 1112, 1126, 281 Cal. Rptr. 3d 757, 769 (2021) ("Punitive damages may be awarded for fraud even though the fraud incidentally involves breach of contract").[8] Goldwater has a substantial need for these documents, as they represent the best evidence of Defendants'

---

[8] Although this district has generally limited net worth inquiries to a two-year look back, broader evidence regarding income and earning capacity is necessary here, where Elizarov has hidden and misrepresented income and assets from Goldwater from mortgage inception to date. *See, e.g.*, *see Mengistu v. Forestview Apts., LLC*, No. 2:19-CV-05118-ODW-JC, 2020 WL 12029101, at *2 (C.D. Cal. June 5, 2020); ECF No. 44, Amd. Compl., ¶¶ 106-109.

**APPLICATION FOR PRIVILEGE DETERMINATION**

diversion of assets and to whom, as well as information regarding recent income and overall wealth for the purpose of determining punitive damages. Defendants' continued privacy objections are without merit, and the subpoenaed financial information fully discoverable.

**2. Any third-party privacy interests do not overcome Goldwater's discovery interests  and are otherwise secured by the Protective Order.**

In each of their Objections, Defendants also argue that their expenses are income to the recipients of those funds as identified in the disclosed financial statements, that those recipients' privacy rights are implicated by disclosure of Defendants' payments to them, and that because notice to all these unknown third parties was not served along with the Subpoenas, the recipients were deprived of due process. *See, e.g.,* **Exhibit 6**, JPM Securities Objection, pp. 10-11. Defendants further assert they are generally authorized to raise these issues on behalf of the recipients. The case Defendants generally rely upon, *Weingarten v. Superior Ct*., 102 Cal. App. 4th 268, 278, 125 Cal. Rptr. 2d 371, 379 (2002), follows decisional law holding that in certain instances a financial institution asked to produce customer financial information must provide notice to those customers before disclosure. *Id.* (citing *Valley Bank of Nev. v. Superior Ct*., 15 Cal. 3d 652, 658, 542 P.2d 977, 980 (1975).

First, this is unlike *Weingarten*, where a subpoenaing party seeks the direct personal records or information of third parties. *Id.* (seeking wife's tax returns, requires notice to joint filer husband); *Doe 2 v. Superior Ct.*, 132 Cal. App. 4th 1504, 1511, 34 Cal. Rptr. 3d 458, 462 (2005) (seeking third party statements to clergy regarding sexual abuse). Here, the unidentified third parties are businesses and possibly individuals merely reflected as payors or payees in Defendants' financial statements. Defendants have not offered, and counsel for Goldwater has found, no authoritative pronouncement that disclosure of a party-defendant's financial statements merely indicating a third-party's receipt of money from that Defendant

require third-party notice or that a limited disclosure of that receipt of funds presents more than an insubstantial impact on the recipients' privacy.

California courts routinely order the production of ***litigants'*** financial records without requiring notice to the third parties referenced therein. *See, e.g.*, *Welle v. Provident Life & Accident Ins. Co.*, No. 312CV3016EMCKAW, 2013 WL 5954731, at *3 (N.D. Cal. Oct. 30, 2013); *Cf. also Walters v. Target Corp.*, No. 3:16-CV-1678-L-MDD, 2018 WL 4405419, at *1 (S.D. Cal. Sept. 17, 2018) (denying request to file under seal financial statements, noting plaintiff's own personal identifiers redacted); *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486CW(EDL), 2007 WL 1100324, at *1 (N.D. Cal. Apr. 10, 2007). In fact, if the Court were to order these third parties be noticed as Defendants seem to demand, those notices would disclose the essence of the information Defendants allege is private, that these third-party individuals received money from or provided money to Defendants.[9]

California vests trial courts with considerable discretion "in considering '[t]he variances of time, place, and circumstance' under which bank customer identifying information may be divulged to third parties." *Pioneer Elecs. (USA), Inc. v. Superior Ct.*, 40 Cal. 4th 360, 371, 150 P.3d 198, 205 (2007). "[W]hether a legally recognized privacy interest exists is a question of law, and whether the circumstances give rise to a reasonable expectation of privacy and a serious invasion thereof are mixed questions of law and fact." *Id.* at 370, 150 P.3d 198, 204 (2007). Only where a movant has met the criteria for invasion of a privacy interest, must that be measured against other competing or countervailing interests in a balancing test. *Id.* at 371, 150 P.3d at 204 (citing cases). Further, protective measures, like the protective Order in this case, may minimize the privacy intrusion. "For example, if intrusion is limited and

---

[9] Goldwater also believes providing notice to third parties identified in Alekseyeff's PayPal records would simply yield more instances of Alekseyeff's "selective representation" where he "represents" subpoenaed third parties in discovery matters. *See, e.g.*, ECF No. 195, Rite Care's Opp. To Mot. to Compel, p. 1, n.1 (providing "limited scope representation" to Elizarov's former employer).

**APPLICATION FOR PRIVILEGE DETERMINATION**

confidential information is carefully shielded from disclosure except to those who have a legitimate need to know, privacy concerns are assuaged." *Id.* at 371, 150 P.3d at 204. To the extent the Court finds that mere indication of a third-party's receipt of funds from Defendants constitutes a serious invasion of that third-party's privacy to warrant a balancing, the balancing test favors disclosure of the produced documents subject to the Stipulated Protective Order. That is, even if the recipients had some privacy interest in the mere receipt of money from (or provision of money to) Defendants, such interests are outweighed by Goldwater's interest in discovering Defendants' financial information.

In addition to the general relevance of Defendants' financial information to the claims and defenses as discussed, *supra*, the allegations of the Amended Complaint and certain evidence uncovered to date indicate that Defendants have diverted funds from the sale of the Subject Property to third-parties, and otherwise concealed assets from Goldwater in the application process and in this action. "Who" is receiving money from Defendants is just as relevant to the pattern of fraud at the heart of this action (and any defenses thereto) as Defendants' own income and assets. Any expectation of privacy these recipients may have in the receipt of funds from Defendants must give way to Goldwater's legitimate and substantial discovery interests.

Further, those third parties' interests are protected by the Stipulated Protective Order, ECF No. 169, which restricts the disclosure and dissemination of the information received from the Subpoenas. *See, e.g., Pioneer Elecs.*, 40 Cal. 4th at 371, 150 P.3d at 204; *Padron v. Watchtower Bible & Tract Soc'y of New York, Inc.*, 16 Cal. App. 5th 1246, 1271, 225 Cal. Rptr. 3d 81, 103-04 (2017). Should the Court find some third-party privilege that was not waived by Alekseyeff's egregious discovery conduct and not overcome by the sheer importance of the information sought, Goldwater asks that the Court, make an *in camera* review of that production, ordering narrow redactions expressly limited to the minimum extent necessary to

protect whatever serious privacy interest the Court may find exists while providing Goldwater all relevant information necessary to prosecute its case.

### 3. None of the information sought is subject to protection as a trade secret.

Alekseyeff has further asserted that *his* personal financial records (but not those of Elizarov) sought in the PayPal Subpoena indicate payment to legal vendors which somehow represents a "trade secret." *See* **Exhibit 2**, PayPal Objection, p. 4. Like the right to privacy, California recognizes a qualified privilege for trade secrets. Cal. Evid. Code § 1060. "Like most privileges, the trade secrets privilege is not absolute, but requires a balancing of the need for protecting the secret with the needs of the case." *Davis v. Leal*, 43 F. Supp. 2d 1102, 1110 (E.D. Cal. 1999). "The party asserting the trade secret privilege has the initial burden of establishing the existence of the privilege; the burden would then shift to the party seeking the information to justify the need for the information despite the privilege." *Id.* **However**, "a trade secret is not simply any material the withholding party would rather keep confidential but is: '[S]ecret information essential to the continued operation of a business or industry [that] may be afforded some measure of protection against unnecessary disclosure.'" *Id.* (emphasis in opinion)).

Alekseyeff's "trade secrets" argument simply offers that "to the extent that the expense disclosure will reveal the identity and the fees of any vendors that Alekseyeff may have hired to assist in his legal work, that information is protected as trade secret." **Exhibit 2**, PayPal Obj., p. 4. Alekseyeff's speculative request for trade secret protection, with its "to the extent" and "may have hired" language, should be rejected simply because he does not detail his efforts to maintain the secrecy of the identity of these vendors or his use of them, or how they are essential to his business. *See*, *e.g.*, *id.*; *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events*, LP, 256 F.R.D. 678, 683 (C.D. Cal. 2009) (finding conclusory arguments insufficient to establish requested documents are trade secrets and warrant protection). Moreover,

1   it is hard to fathom how the mere use of any publicly available legal services vendor
2   could constitute a trade secret.

3       Further, trade secret protection is subject to a test similar to privacy, with the
4   burden of establishing the privilege on its purported holder, a balancing of the alleged
5   secret against the information's relevance, and requiring "the holder of the privilege
6   to demonstrate any claimed disadvantages of a protective order." *Raymond Handling*
7   *Concepts Corp. v. Superior Ct.,* 39 Cal. App. 4th 584, 590, 45 Cal. Rptr. 2d 885, 888
8   (1995). Goldwater has demonstrated the relevance and critical nature of this financial
9   information time and again. Alekseyeff cannot demonstrate the existence of a trade
10  secret, let alone that disclosure is unnecessary to this lawsuit or that he would be
11  disadvantaged despite the protections offered by the Stipulated Protective Order. His
12  claims of trade secret protection should be rejected.

**C. GOLDWATER IS ENTITLED TO FEES AND EXPENSES FOR THIS APPLICATION.**

13      In addition to awarding sanctions for failure to follow a discovery order under
14  FED. R. CIV. P. 37(b)(2)(A) and for failure to cooperate in the L.R. 37-1 procedure
15  under L.R. 37-4, this Court has statutory authority to require anyone "who so
16  multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy
17  personally the excess costs, expenses, and attorneys' fees reasonably incurred
18  because of such conduct." *Raya v. Barka, et al.*, No. 3:19-CV-2295-WQH-AHG,
19  2022 WL 17905528, at *1-2 (S.D. Cal. Dec. 23, 2022) (quoting 28 U.S.C. § 1927)
20  (internal quotations omitted). This is "a penal statute designed to discourage
21  unnecessary delay in litigation[.]" *Id.* (brackets in original, internal quotations
22  omitted). "The imposition of sanctions under § 1927 requires a finding that the person
23  against whom the sanctions are imposed acted "recklessly or in bad faith[.]" *Id.*
24  (brackets in original, internal quotations omitted).

25      The court may also levy sanctions, including attorney fees, under its inherent
26  power "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive
27  reasons." *Id.* (internal quotations omitted). The Court's inherent power "is 'both

28

broader and narrower than other means of imposing sanctions.'" *Id.* The inherent power to levy sanctions "extends to a full range of litigation abuses," merely requiring the litigant to "have engaged in bad faith or willful disobedience of a court's order.'" *Id.* (internal quotations omitted). "Before awarding sanctions under its inherent powers, the court must make an explicit finding that counsel's conduct constituted or was tantamount to bad faith." *Id.* (internal quotations omitted).

"A party demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id.* at *2 (internal quotations omitted). "Bad faith is present whenever an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Id.* (internal quotations omitted). Although '[a] party is not to be penalized for maintaining an aggressive litigation posture. . . . advocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly warrants recompense, for the extra outlays attributable thereto." *Deleone v. Oregon Mainline Paving, LLC*, No. 09-6189-TC, 2011 WL 3917984, at *2 (D. Or. Sept. 2, 2011) (internal quotations omitted). "[C]ourts have substantial discretion to decide whether to award sanctions under § 1927 or their inherent power, and in what amount." *Raya*, 2022 WL 17905528, at *2 (brackets in original, internal quotations omitted). "Sanctions must bear a financial nexus to the excess proceedings and may not exceed the costs, expenses, and attorneys' fees reasonably incurred because of the sanctionable conduct." *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1297 (9th Cir. 2010)) (internal quotation and brackets omitted).

Here, Goldwater is entitled to sanctions, including attorneys' fees, for its costs in pursuing this Application based on Defendants' bad faith and procedurally improper objections. As detailed above, Defendants willfully ignored their obligation under Rule 45 to register any objection to the Subpoenas through a motion to quash or for protective order. Instead, Defendants attempted to "claw back" subpoenaed materials pursuant to Rule 45(e)(2)(b) that in many instances had not even been

produced yet. Knowing Goldwater could not simply ignore Defendants' unfounded objections, Defendants essentially shift their motion burden on Goldwater, tying up relevant discovery until Goldwater gets a ruling on this Application. Defendants pursued this obstructive and bad faith course of action intentionally, to delay the discovery and use of this relevant information, much of which should have been identified and/or produced **months ago** in response to Goldwater's discovery requests or to the subsequent Order compelling responses. Goldwater already has a pending Motion for Sanctions based on Elizarov's continuing failure to comply with the Order on its Motion to Compel. *See* ECF No. 225, Mot. for Sanctions.

Defendants pressed their unfounded objections even after prior discovery orders essentially established Defendants' financial records' general relevance and discoverability. Defendants' objections under Rule 45(e)(2)(B) were orchestrated in bad faith and for oppressive reasons, and Defendants' discovery conduct, here and elsewhere, has unreasonably and vexatiously multiplied these proceedings. Further, the fact that these Subpoenas returned any documents demonstrates Defendants' failure to disclose all financial accounts in direct contravention of Judge Pym's Order compelling discovery responses on such accounts. *See* ECF No. 190, Order on Mot. to Compel, pp. 8-11. This is "willful disobedience of a court's order," that not only falls within the ambit of FED. R. CIV. P. 37(b)(2)(a), with penalties up to default judgment available against Defendants but is also punishable through the Court's inherent authority.

Sanctions are additionally warranted under this Court's Local Rules. Here, Defendants failed to meet and confer on this Application. Moreover, Defendants sought an end run around the joint stipulation requirement by offering objections and claw back demands rather than moving to quash or for protective order as they were required to do. These would have been discovery motions requiring compliance with the L.R. 37-1 through 37-4. In offering procedurally improper objections, Defendants undermined the joint stipulation process. Local Rule 37-4 plainly provides that "The

failure of any counsel to comply with or cooperate in the [Joint Stipulation] procedures may result in the imposition of sanctions."

Pursuant to the bases above, Goldwater respectfully requests the Court sanction Defendants for their continuing vexatious, bad faith, and oppressive conduct, awarding Goldwater all fees and expenses it incurred in pursuing this Application and whatever further relief the Court deems just and appropriate. Goldwater further requests the Court authorize its subsequent motion seeking reasonable attorneys' fees and costs incurred relative to this Application and attaching records reflecting same.

## IV. CONCLUSION

**PREMISES CONSIDERED**, Goldwater respectfully requests an Order (1) determining that the documents received relative to the Subpoenas are not privileged or otherwise protected from disclosure, (2) permitting Goldwater's use and distribution of them to the other parties consistent with the Stipulated Protective Order, (3) awarding sanctions based on Defendants conduct to date, and (4) for what further relief the Court deems just and appropriate.

Dated: February 7th, 2023

Respectfully submitted,

**WAGNER HICKS PLLC**

By: */s/ Sean C. Wagner*
Sean C. Wagner, Esq.
Abbey M. Krysak, Esq.

AND

**HILBERT & SATTERLY LLP**

John Forest Hilbert, Esq.
Joseph A. LeVota, Esq.

**APPLICATION FOR PRIVILEGE DETERMINATION**

-21-

AND

## IVIE McNEILL WYATT PURCELL & DIGGS

Marie B. Maurice, Esq.
Marina Samson

*ATTORNEYS FOR DEFENDANT*
*GOLDWATER BANK N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **MEMORANDUM OF POINTS AND AUTHORITES RE: APPLICATION FOR DETERMINATION OF DEFENDANTS ELIZAROV AND ALEKSEYEFF'S PRIVILEGE CLAIMS & FED. R. CIV. P. 45(e)(2)(B) CLAWBACK DEMANDS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered CM/ECF users.

This the 7th day of February 2023.

*/s/ Sean C. Wagner*
Sean C. Wagner

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1

The undersigned, counsel of record for Goldwater Bank, certifies that this brief contains 6,966 words, which complies with the word limit of L.R. 11-6.1.

This the 7th day of February 2023.

*/s/ Sean C. Wagner*
Sean C. Wagner