# EXHIBIT 6

1  ILYA ALEKSEYEFF [CA 242462]
      ilya@loia.legal
2  LOIA, INC. (APLC)
3  727 W 7th St PH 1-13
   Los Angeles, CA 90017
4  Tel: (213)537-4592

5

6  Attorney for Artur Elizarov
   Defendant *in pro per*

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11  GOLDWATER BANK, NA,                    **5:21-cv-616-JWH-SPx**

12
                              *Plaintiff*,
13                                         NOTICE OF PRIVILEGE RE:
                                           SUBPOENA *SUCES TECUM* TO
14  vs.                                    JPMORGAN SECURITIES LLC
                                           (FED.R.CIV.P. 45(e)(2)(B))
15
    ARTUR ELIZAROV, ET AL.,
16
17                           *Defendants*.
18

19      **NOTICE to plaintiff Goldwater Bank, NA:**

20          The records described in the attached subpoena *duces tecum* to JPMorgan

21  Securities LLC contain privileged information, *to wit:* private bank records showing

22  Ilya Alekseyeff's income, third parties' income, and Ilya Alekseyeff's and Artur

23  Elizarov's spending history. Cal. Const., Art. 1 Sec. 1.

24                                    **I**

25          "If information produced in response to a subpoena is subject to a claim of

26  privilege or of protection as trial-preparation material, the person making the claim

27  may notify any party that received the information of the claim and the basis for it.

28  After being notified, a party must promptly return, sequester, or destroy the specified

                                    1

information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved." Fed.R.Civ.P. 45(e)(2)(B).

II

"It is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and 34." *Krause v. Krause*, 121CV01706JLTSAB, 2022 WL 4345390, at *2 (E.D. Cal. Sept. 19, 2022) (internal citations omitted).

> Under Rule 26,
> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1). "Relevancy is broadly defined to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Krause, supra,* at *2 (internal citations omitted). "While discovery should not be unnecessarily restricted, discovery is more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents." *Id.* (internal citations omitted). "Thus, a court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Id.* (internal quotations and citations omitted).

2

By its terms, Rule 26 allows discovery "relevant to any party's claim or defense… ." Fed.R.Civ.P. 26(b)(1). By corollary, if the pleadings do not raise a particular claim or defense, then any evidence relating to the unalleged claim or defense is not discoverable. *See In re REMEC, Inc. Sec. Litig.*, No. 04-CV-1948 JLS (AJB), 2008 WL 2282647, at *2 (S.D. Cal. May 30, 2008) ("parties are not entitled to discovery to develop new claims or defenses that are not identified in the pleadings"); *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); *Torio v. Wells Fargo Bank, N.A.*, 5:16-CV-00704-HRL, 2016 WL 2344243, at *5 (N.D. Cal. May 4, 2016) ("discovery cannot be used as a fishing expedition for evidence of claims that have not been properly pled"); *Avila v. McMahon*, 2:18-CV-00163-JAM-AC, 2019 WL 174517, at *4 (E.D. Cal. Jan. 10, 2019), *report and recommendation adopted*, 2:18-CV-0163 JAM AC, 2019 WL 11791714 (E.D. Cal. Mar. 27, 2019) ("The purpose of discovery is to develop evidence related to a known claim; it is not intended for the discovery of claims"); *Hoffman v. Lassen County*, 2:15-CV-1382 DB P, 2017 WL 2311683, at *3 (E.D. Cal. May 26, 2017) ("Discovery cannot be used to investigate theories and allegations that are no more than speculation").

But this scope is discovery becomes more limited when a party seeks constitutionally protected private information.

"All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and *privacy*." Cal. Const. art. I § 1 (italics added). "Personal financial information comes within the zone of privacy protected by article I, section 1 of the California Constitution." *SCC Acquisitions, Inc. v. Superior Court (Western Albuquerque Land Holdings, LLC)*, 243 Cal.App.4th 741, 754 (Cal. Ct. App. 2015) (internal sub-quotations

3

NOTICE OF PRIVILEGE RE: SUBPOENA *DUCES TECUM* TO JPMORGAN
SECURITIES LLC (FED.R.CIV.P. 45(e)(2)(B))

omitted), citing *Harris v. Superior Court*, 3 Cal.App.4th 661, 664 (Cal. Ct. App. 1992).

"When the constitutional right of privacy is involved, 'the party seeking discovery must demonstrate a compelling need for discovery, and that compelling  need must be so strong as to outweigh the privacy right when these two competing interests are carefully balanced.'" *Artis v. Deere & Co.,* 276 F.R.D. 348, 352 (N.D. Cal. 2011) (quoting *Wiegele v. Fedex Ground Package Sys.,* 2007 WL 628041, at *2 (S.D. Cal. Feb. 8, 2007). "Compelled discovery within the realm of the right of privacy 'cannot be justified solely on the ground that it may lead to relevant information.'" *Id.* (quoting *Wiegele,* 2007 WL 628041, at *2). "Even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a 'careful balancing' of the 'compelling public need' for discovery against the 'fundamental right of privacy.'" *Wiegele,* 2007 WL 628041, at *2 (citing *Lantz v. Superior Court,* 28 Cal. App. 4th 1839, 1854 (1994)).

Despite the constitutional foundation for the right, Article 1 § does not absolutely bar discovery. *Allen v. Woodford*, No. CVF051104OWWLJO, 2007 WL 309485, at *6–7 (E.D. Cal., Jan. 30, 2007).  "In the face of an objection based on privacy, the party seeking discovery of the information must show that the information is '*directly relevant'* to a cause of action or defense, such that disclosure is 'essential to the fair resolution of the lawsuit.'" *Look v. Penovatz*, 34 Cal.App.5th 61, 73 (Cal. Ct. App. 2019) (internal citations omitted).  Evidence is directly relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed.R.Evid. 401.

To overcome the privacy-based objection, the party seeking discovery must identify "specific averments or reasonable interpretations drawn from the pleadings which clearly place" a particular fact at issue.  *Davis v. Superior Court,* 7

NOTICE OF PRIVILEGE RE: SUBPOENA *DUCES TECUM* TO JPMORGAN
SECURITIES LLC (FED.R.CIV.P. 45(e)(2)(B))

Cal.App.4th 1008, 1017 (Cal. Ct. App. 1992), citing cases.    Discovery of constitutionally protected information is not allowed when sought solely on speculation that "in the records requested there could be material which might be relevant to various issues in the action… ." *Id.*  Therefore, "[m]ere speculation as to the possibility that some portion of the record might be relevant to some substantive issue does not suffice" to compel the discovery of constitutionally protected bank records. *Id.*  Rather, discovery may be allowed only if plaintiff establishes that "it is…reasonably probable that the records are directly relevant to the [facts plaintiff] placed in issue" in its pleadings. *Id.* at p. 1017.

In *Davis,* for example, defendant sought plaintiff's psychiatric records to explore the following issues: "pain and suffering, emotional distress, driving under the influence, withdrawal symptoms, prior or subsequent falls, medical history and admissions or impeachment." *Id.* at p. 1010.  Even though the plaintiff "filed a garden-variety motor vehicle personal injury action alleging general damages, loss of earning capacity, wage loss and other compensatory damages," the defendant claimed that "because as a matter of right a plaintiff in a personal injury action may pursue damages for noneconomic damages such as pain, suffering, mental suffering and emotional distress even though a specific cause of action for emotional distress is not alleged, petitioner's mental condition has been placed in issue and is relevant." *Id.* at p. 1015.  But the court disagreed and denied discovery because nothing in the pleadings "appear[ed] to include specific averments or reasonable interpretations drawn from the pleading which clearly place[ed] mental condition in issue." *Id.* at p. 1017.  "By limiting her claim for emotional distress to pain and suffering associated with stated physical injuries, and by explaining that the center provided no treatment in connection with the injuries for which compensation was sought, [plaintiff] established that *it is not reasonably probable* that the records are directly relevant to the condition she placed in issue." *Id.*

5

NOTICE OF PRIVILEGE RE: SUBPOENA *DUCES TECUM* TO JPMORGAN SECURITIES LLC (FED.R.CIV.P. 45(e)(2)(B))

1   The burden is on the party seeking to enforce the subpoena to demonstrate the
2   relevance of the information sought.  *See Sarnowski v. Peters,* Case No. 2:16-cv-
3   00176-SU, 2017 WL 4467542, at *2 (D. Or. Oct. 6, 2017); *Harris v. Best Buy Stores*,
4   *L.P.*, No. 315CV00657HSGKAW, 2016 WL 6024556, at *1 (N.D. Cal. Oct. 14,
5   2016); *Aros v. Fansler*, 548 F. App'x 500, 501 (9th Cir. 2013), citing *Hallett v.*
6   *Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).
7   Under these principles, Goldwater may obtain the bank records *only if* the
8   records make a fact of consequence *that the parties reasonably placed at issue in*
9   *their pleadings* more likely than not.  Stated differently, the records are discoverable
10  only if the jury need to know the information in those records to decide an issue of
11  fact as raised in the pleadings.  Merely suggesting that the information is needed to
12  "explore" general allegations is insufficient to overcome the fundamental and
13  alienable right to privacy.

### III

15  None of the records described in the subpoena are directly relevant to any
16  factual issue of consequence in this case *as alleged in the pleadings*.  Rather,
17  Goldwater issued these subpoenas out of malice because Wagner became angry
18  when Alekseyeff and Elizarov refused to join his conspiracy to implicate defendant
19  Scott Howlett by false testimony.

### A

21  Attorney Krysak did not issue this subpoena because Krysak wanted *evidence*.
22  Krysak did not need the subpoenaed records to make Goldwater's case because she
23  knew the jury would not need to know where or when Alekseyeff and Elizarov have
24  spent their money since 2019, what good or services they have purchased, and how
25  they have spent their money in general, to decide the following disputed issues of
26  fact:

27
28

---

6

NOTICE OF PRIVILEGE RE: SUBPOENA *DUCES TECUM* TO JPMORGAN
SECURITIES LLC (FED.R.CIV.P. 45(e)(2)(B))

- whether Goldwater timely exercised its option to require the repayment of the debt when Goldwater gave the contractual notice of acceleration forty-five days after Elizarov sold the property;

- whether Elizarov misrepresented his marital status or failed to disclose a pending lawsuit and the IRS lien in the loan application;

- whether *in May 2020* Elizarov lied about his income and assets in the assistance application;

- whether Elizarov had a mechanic's lien or falsely promised to pay Goldwater $675,000;

- whether any of these alleged representations were material;

- whether Goldwater reasonably relied on these alleged misrepresentations;

- whether Goldwater suffered damages as a direct result of relying on Elizarov's alleged misrepresentations;

- whether Alekseyeff conspired with Elizarov *before* Elizarov made these alleged misrepresentations;

- whether Alekseyeff used the proceeds from the sale of the house or used his pre-existing funds to pay off a debt;

- or whether Elizarov paid off a valid pre-existing loan, which had matured, with the specific intent to defraud Goldwater.

Therefore, the subpoenaed records are not directly relevant to any disputed factual issue of consequence in this case and not discoverable.

**B**

At Wagner's direction, Krystak instead issued this subpoena because attorney Wagner wanted to punish Elizarov and Alekseyeff after they refused to help Goldwater make a case against defendant Scott Howlett with perjured testimony and to support Wagner's desperate efforts to settle the case.

NOTICE OF PRIVILEGE RE: SUBPOENA *DUCES TECUM* TO JPMORGAN SECURITIES LLC (FED.R.CIV.P. 45(e)(2)(B))

**1**

Although Goldwater gave up on trying to collect from Alekseyeff in August 2021 when Peter Hill charged the loan off as uncollectible, Hill continued to pursue the case because Hill feared that the OCC (who previously put Goldwater on a five-year probation because of incompetent management) might take a severe administrative action and wanted to blame everyone – Elizarov, Alekseyeff, Unison, Howlett, Bank of the West, the escrow officer, and even its servicer WestStar Mortgage Corporation (who Peter Hill blamed for the failure to record the deed of trust timely *even though* WestStar started serving Elizarov's loan *nine months after* the transaction closed) –  for the bank's incompetence.

Hill has every reason to fear the OCC because evidence of Goldwater's *abject incompetence* is overwhelming:

- Goldwater first failed to record the deed of trust because unlike a competent bank like Bank of the West, Goldwater had no post-closing department designed to ensure that bank's interest was protected;

- When the deed of trust was retrieved to prepare for Elizarov's pending sale, nobody noticed *at that time* that the deed was unrecorded;

- When Hill realized that the escrow officer Andrea Cross incorrectly believed that Goldwater and Unison were the same company, Hill did not correct Cross;

- Hill first sent Cross a payoff calculation *for the wrong borrower*, violating that borrower's federally protected privacy rights;

- When Cross brought the error to Hill's attention, Hill replied but failed to attach the correct payoff calculation;

- And when Cross *again* brought the second error to Hill's attention, Hill failed to re-send the payoff calculation to her while continuing to communicate about Hill's ongoing but unproductive settlement negotiations with Elizarov;

---

8

NOTICE OF PRIVILEGE RE: SUBPOENA *DUCES TECUM* TO JPMORGAN SECURITIES LLC (FED.R.CIV.P. 45(e)(2)(B))

- After hill discovered that the deed of trust was unrecorded, Hill made no effort to send it to Cross or Howlett's listing agent to give Howlett's notice of Goldwater's unrecorded deed of trust; and

- Hill deliberately failed to give Elizarov notice of acceleration – and, therefore, failed to exercise the option to require the immediate payment – because he thought that the recorded deed of trust would allow the bank to get paid regardless.

This parade of errors is so shocking that if brought to the OCC's attention, the OCC would likely take swift and severe administrative action. No wonder Hill feels terrified: since he has overseen most of the events, which have thrust Goldwater into an existential crisis, Hill has not only risked his reputation as a banker but also his continued employment with Goldwater.

**2**

And while Hill (and Goldwater) may no longer care about money, Wagner certainly does.

As the trial date approached, Wagner had become desperate to settle because he had to account to Goldwater for thousands spent needlessly litigating this case only to uncover *no evidence* to support Goldwater's allegations. But after Wagner discovered that Elizarov had no assets to satisfy any resulting judgment, Wagner realized that all the money would have to come from Howlett or Bank of the West[1] whose liability required evidence that they knew about Goldwater's unrecorded deed of trust before they recorded their respective interests in the Palm Springs residence.[2]

---

[1]     Wagner also misguidedly believed that Escrow of the West was liable but could not seek recovery because escrow companies are not liable to mortgage lenders. *Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.*, 27 Cal.4th 705 (Cal. 2002).

[2]     *See* Civ. Code §§ 1214, 1217.

9

NOTICE OF PRIVILEGE RE: SUBPOENA *DUCES TECUM* TO JPMORGAN SECURITIES LLC (FED.R.CIV.P. 45(e)(2)(B))

Although Wagner had uncovered *some* evidence suggesting that BOTW might have known about an unrecorded first lien (although not Goldwater's identity), after months of litigation he had found *none* against Howlett. Undeterred, Wagner thought that he could *manufacture* evidence and decided to persuade Elizarov to say that Elizarov told either Howlett or Cross about Goldwater's unrecorded deed. This untrue statement would then establish Howlett's knowledge, support Howlett's liability, and encourage Howlett's title insurance to settle along the lines that the parties discussed at the earlier settlement conference.

But when Wagner discussed his plan with Alekseyeff during a call on October 17th, Alekseyeff categorically refused to go along. Alekseyeff explained to Wagner that Elizarov did not discuss *anything* with Howlett directly nor talk about Goldwater with Cross on the phone. Alekseyeff also explained to Wagner (who knew nothing about California real estate process) that Goldwater would never have come up in any disclosures because Elizarov did not know that Goldwater had failed to record its deed of trust and, like all sellers, assumed that Howlett would learn about all liens from the preliminary title report.

After Alekseyeff refused to join Wagner's conspiracy to implicate Howlett with perjured statements, Wagner became angry and decided to retaliate. This subpoena became a useful retaliation tool because Wagner knew that like any normal people, Alekseyeff and Elizarov would become very upset if Wagner were to learn where Alekseyeff and Elizarov dined, drank, or shopped; what types of products they preferred to purchase; who they supported financially; where and how they chose to entertain; where and when they chose to travel; what they paid for necessities; how much they chose to spend on luxuries; what hospital or medical officers they have visited; what television programming they chose to watch; and in general learn every intimate aspect of Aleskeyeff's and Elizarov's lives that bank records would readily establish.

NOTICE OF PRIVILEGE RE: SUBPOENA *DUCES TECUM* TO JPMORGAN
SECURITIES LLC (FED.R.CIV.P. 45(e)(2)(B))

Therefore, Wagner *et al* had no legitimate basis to seek these records and only issued the subpoena to harass Alekseyeff and Elizarov as punishment.

### C

These records also implicate the constitutional rights of other people. Because the subpoena explicitly requested information about *payments* that Alekseyeff and Elizarov made to others, including cancelled checks, these payments were *income* to the recipients who, like Alekseyeff and Elizarov, have the inalienable constitutional right to keep the information private. Therefore, Alekseyeff and Elizarov object to the disclosure on these person's behalf as well. *See Weingarten v. Superior Court,* 102 Cal.App.4th 268, 278 (Cal. Ct. App. 2002) ("A party to an action may assert the privacy rights of third parties") (citing *Valley Bank of Nev. v. Superior Court*, 15 Cal.3d 652, 657 (Cal. 1975)).

### IV

Alekseyeff and Elizarov also feel compelled to address Wagner's *et al* illegal behavior that resulted in this subpoena.

### A

Wagner *et al* issued the subpoena based on illegally obtained information.

On October 31, 2022, Krysak issued a subpoena for Alekseyeff's and Elizarov's bank statements from Chase and set November 15th as the compliance date. Krysak timed both the subpoena and the compliance date because Wagner (who had employed these tactics before and had undoubtedly guided Krysak) wanted to deny Alekseyeff a meaningful opportunity to challenge the subpoena: Wagner *knew* that Alekseyeff was in a homicide trial, could not address any issues in this case until the trial concluded, and would unlikely finish the trial prior to the compliance date.

Although Alekseyeff completed his trial sooner than anticipated, he still lacked sufficient time to mount a timely challenge. So, Alekseyeff instead relied on Fed.R.Civ.P. 45(e)(2)(B) and notified Wagner that the subpoenaed records included

NOTICE OF PRIVILEGE RE: SUBPOENA *DUCES TECUM* TO JPMORGAN SECURITIES LLC (FED.R.CIV.P. 45(e)(2)(B))

privileged materials, which then required Wagner to sequester the records and not use them until Goldwater made a motion to determine the claim and the court resolved the claim in Goldwater's favor.

What happened next defies belief. Rather than comply with Fed.R.Civ.P. 45(e)(2)(B), Wagner *et al* decided to defy the law and review the records anyway. Then, after they noticed transfers to and from JPMorgan Securities accounts, Wagner *et al* decided to break the law for the second time and use the illegally obtained information to issue this subpoena.

Therefore, this subpoena is the proverbial "fruit of the poisonous tree" (because Wagner illegally used sequestered information to create it) and cannot be enforced *unless* Wagner relied on some other source of information, which Wagner has so far refused to identify.

**B**

The subpoena is also invalid because Wagner *et al* designated the compliance location more than 100 miles from JPMorgan Securities LLC's corporate offices.

"A [discovery] subpoena may command...production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed.R.Civ.P. 45(c)(2)(A). A subpoena that requires compliance beyond this geographic limit is invalid. *See Miller v. Holzmann*, 471 F.Supp.2d 119, 121 (D.D.C. 2007). Here, the subpoena designated the place for compliance at 831 E Morehead St, Charlotte, North Carolina, a distance of about **627 miles** away from JPMorgan Securities LLC's headquarters at 383 Madison Ave, New York, New York. Therefore, the subpoena is unenforceable.

Wagner *et al* deliberately chose the compliance location North Carolina Western District Court because they wanted to prevent Alekseyeff from challenging the subpoena. Wagner *et al* thought that because they were licensed to practice in that district, Goldwater would not have to hire another attorney to handle any

NOTICE OF PRIVILEGE RE: SUBPOENA *DUCES TECUM* TO JPMORGAN
SECURITIES LLC (FED.R.CIV.P. 45(e)(2)(B))

subpoena-related proceedings as previously happened in Florida, while Alekseyeff (who had no such license) would.  Except that Wagner *et al* must have forgotten that Alekseyeff was not just Elizarov's attorney *but also a named defendant* and, therefore, could appear in that district *in pro per*.  Therefore, Wagner *et al* have miscalculated and will readily witness their malicious tactics fail.

## V

Finally, it is worth noting that Peter Hill committed perjury *per se* during his deposition, which Wagner suborned.

"Whoever under oath (or in any *declaration*, certificate, *verification*, or *statement under penalty of perjury* as permitted under section 1746 of title 28, United States Code) in any proceeding before…any court…of the United States knowingly makes any false material declaration…shall be fined under this title or imprisoned not more than five years, or both."  18 U.S.C. § 1623(a) (italics added).  "A verified complaint may be treated as an affidavit… ."  *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011).

> Under 18 U.S.C. § 1623(a), the government must [ordinarily] prove the falsehood of a declaration beyond a reasonable doubt in order to obtain a conviction. In contrast, the 'inconsistent declarations' subsection provides that a defendant may be convicted of making a false declaration if he or she has made two irreconcilably contradictory declarations such that one of them is necessarily false. 18 U.S.C. § 1623(c). It is not necessary for the government to prove which of the two contradictory declarations is false. 18 U.S.C. § 1623(c); *see also Dunn v. United States*, 442 U.S. 100, 108 (1979).

*U.S. v. Jaramillo*, 69 F.3d 388, 390 (9th Cir. 1995). Therefore, any witness who makes two irreconcilably contradictory declaration commits perjury *per se* regardless of which of the two contradictory declarations is false.

When he signed Goldwater's verified complaint under penalty of perjury on May 27, 2021, Hill stated under oath as follows:

13

On or around March 24, 2021, Goldwater provided Escrow of the West with
its payoff calculations, which noted a complete payoff amount of $729,354.80
and daily interest of $101.46.  A true and accurate copy of the Payoff
Calculations is attached hereto as **Exhibit D**."

EFD # 44 at p. 7 (¶ 50).  But when answering a series of leading questions from
Wagner, Hill testified:

Q. And there was a particular focus on the transmission of a payoff statement
at some point. Do you recall those questions?

A. I do.

Q. Do you recall questions regarding you initially sending a payoff that was
for the -- inadvertently for a different loan?

A. Correct.

Q. Okay. And then Ms. Cross, she – she responded to you and said that the
payoff was not for Mr. Elizarov's loan and requested that you send the correct
payoff. Right?

A. Yes.

Q. And you responded to her. Right?

A. Yes.

Q. And when you responded, did you inadvertently forget to attach the payoff
statement?

A. I did.

Q. Okay. And there was -- there have been a lot of questions about why you
did not send her a – the correct payoff statement afterwards.

A. Mm-hmm.

Q. And I just want to be clear here. If – *do you recall receiving an email from
her approximately 29 minutes after she sent the response email to you telling
you that the payoff was not attached*?

NOTICE OF PRIVILEGE RE: SUBPOENA *DUCES TECUM* TO JPMORGAN
SECURITIES LLC (FED.R.CIV.P. 45(e)(2)(B))

A. *Yes.*

Q. Okay. And what did that email say?

A. It said that she had been instructed by Mr. Elizarov not to communicate with me any further and that they -- no need to provide her with the payoff demand letter because they would not honor it.

Q. *And is that why you did not immediately send her a payoff statement?*

A. *Yes, it is.*

Q. *If she had not told you not to send the statement and to just forget about it, would you have sent it?*

A. *I would have, yes.*

Peter Hill depo. at 194:1-195:19 (italics added).  This testimony contradicted Hill's earlier declaration in the verified complaint because the testimony established that Goldwater did not send the payoff calculation to Escrow of the West on March 24, 2021, *or ever*.  The testimony was also false because Hill continued to email Cross. But instead of attaching the payoff calculation or Goldwater's unrecorded deed of trust, Hill decided to talk to Cross about his ongoing negotiations with Elizarov, which had not even resulted in a final agreement.  Peter Hill depo. at 228:4-230:1.

But that perjured testimony did not end Hill's problems.  After Hill testified that he realized on March 25, 2021, that his follow-up email to Cross did not include the correct payoff calculation as an attachment, Hill answered Alekseyeff's questions on this subject as follows:

Q. … I'm going back to the allegation in paragraph 50 -- is this allegation true?

…

Q. So, Mr. Hill, at the time you signed this allegation -- or signed off under this allegation as true under the penalty of perjury, what made you believe this was true? Did you see any records or any emails where this document was

NOTICE OF PRIVILEGE RE: SUBPOENA *DUCES TECUM* TO JPMORGAN SECURITIES LLC (FED.R.CIV.P. 45(e)(2)(B))

delivered to Escrow of the West? Did somebody tell you it was delivered to Escrow of the West? What made you believe this was a true statement?

A. My belief was that I had properly attached it. Again, *at the time that this was made, my belief at that time was that I had properly attached that payoff statement*.

Q. Okay.

A. I *did not -- I did not learn that it didn't get attached until much later*.

Peter Hill depo. at 216:9-10, 216:20-217:8 (italics added).   This testimony contradicted Hill's answers to Wagner's earlier leading questions because the testimony established that Hill realized his failure to send the correct payoff calculation to Escrow of the West "long after" May 27, 2021, not on March 25, 2021, as Hill testified just minutes earlier.

These statements were irreconcilably contradictory.  Hill either sent the payoff calculation to Escrow of the West "on or about March 24, 2021," or he didn't, but not both.  Similarly, Hill either realized his failure to send the payoff calculation to Cross on March 25, 2021, or "long after" he signed the verified complaint on May 27, 2021, but not both.  Therefore, Hill committed perjury *per se* no matter which of these contradictory statements was false.

For his part, Wagner is as equally guilty as Hill because Wagner suborned Hill's perjury.  "Whoever procures another to commit any perjury is guilty of subornation of perjury, and shall be fined under this title or imprisoned not more than five years, or both."  18 U.S.C. § 1622.  Here, Wagner procured Hill's perjured testimony because Wagner elicited Hill's false statements in a series of leading questions, which Wagner had to have prepared in advance, knowing that those statements would contradicts Hill's earlier declarations in the verified complaint and were otherwise inconsistent with the truth.[3]

---

[3]   Alekseyeff will describe the plethora of Hill's other irreconcilably contradictory declarations, including many that Hill made minutes apart during his

NOTICE OF PRIVILEGE RE: SUBPOENA *DUCES TECUM* TO JPMORGAN SECURITIES LLC (FED.R.CIV.P. 45(e)(2)(B))

* * *

For these reasons, Alekseyeff and Elizarov demand that upon receiving the records from JPMorgan Securities LLC, Wagner *et al* shall immediately return, sequester, or destroy the and any copies it has; shall not use or disclose the information until the claim is resolved; and shall take reasonable steps to retrieve the information if the party disclosed it before being notified.  Fed.R.Civ.P. 45(e)(2)(B).

Dated: 11/29/2022.                              LOIA, INC. (APLC)

_Ilya Alekseyeff_
_____
By: Ilya Alekseyeff
Attorney for Artur Elizarov
Defendant *in pro per*

---

deposition, in the appendix to the forthcoming motion to revoke Wagner's and Bast's *pro hac vice* privileges.

17

NOTICE OF PRIVILEGE RE: SUBPOENA *DUCES TECUM* TO JPMORGAN
SECURITIES LLC (FED.R.CIV.P. 45(e)(2)(B))

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | | |
|---|---|---|
| Goldwater Bank, N.A. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 5:21-cv-00616-JWH-SP |
| Artur Elizarov, Unison Agreement Corp., Scott Howlett, Bank of the West, and Ilya Alekseyeff | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:           JPMorgan Securities, LLC c/o CT Corporation System, registered agent
                330 N Brand Blvd, Suite 700, Glendale, CA 91203

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached list.

| | |
|---|---|
| Place: Wagner Hicks PLLC<br>          831 E Morehead Street, Suite 860<br>          Charlotte, NC 28202 | Date and Time:<br><br>12/09/2022 4:00 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| | |
|---|---|
| Place: | Date and Time: |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    11/23/2022

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | /s/ Abbey M. Krysak |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Plaintiff Goldwater Bank, N.A. _____ , who issues or requests this subpoena, are:

Abbey Krysak 831 E Morehead St, Ste 860, Charlotte, NC 28202; abbey.krysak@wagnerhicks.law; (704) 705-7787

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  5:21-cv-00616-JWH-SP

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## LIST OF ITEMS FOR PRODUCTION

Pursuant to the foregoing Subpoena, please produce the following documents (please refer to the below instructions and definitions for information concerning how to respond to the below Items):

1.      Any and all account statements for accounts in the name of Artur Elizarov and/or Ilya Alekseyeff during the Relevant Period.

2.      Any and all account documents including account opening documents, beneficiary designations, transfer on death agreements, account governing documents or any other account documents for accounts in the name Artur Elizarov and/or Ilya Alekseyeff during the Relevant Period.

3.      Any and all account correspondence for accounts in the name of Artur Elizarov and/or Ilya Alekseyeff during the Relevant Period.

4.      The complete branch file for any account in the name of Artur Elizarov and/or Ilya Alekseyeff during the Relevant Period.

5.      Any and all copies of cancelled checks written from accounts in the name of Artur Elizarov and/or Ilya Alekseyeff during the Relevant Period.

### Instructions & Definitions

The foregoing Subpoena requires that you produce the above-listed Items for inspection. You may satisfy such requirement either by (1) producing the original of any responsive item for inspection and copying or (2) producing a true, accurate, and complete copy of the original.  To comply with the Subpoena, such production must occur by on or before the date and time indicated on the foregoing Subpoena.

In preparing your response, please note that the words used in the List of Documents for Production and in these Instructions and Definitions have the meaning ordinarily attributed to them in common usage, except that the following words have the following meanings:

1.      **"You," "your," or "yours"** refers to JPMorgan Securities, LLC, as well as to any person who acted on behalf of JPMorgan Securities, LLC during the Relevant Period, including its employees, contractors, attorneys, agents, or other representatives.

2.      **"Relevant Period"** refers to April 29, 2021, through the present day.

3.      **"Document"** refers to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data compilations, whether or not electronically stored, from which information can be obtained either directly, or, if necessary, after translation by you into a reasonably usable form, as well as any designated tangible thing.