HALL GRIFFIN LLP
HOWARD D. HALL, State Bar No. 145024
  *hdhall@hallgriffin.com*
JEREMY T. KATZ, State Bar No. 267361
  *jkatz@hallgriffin.com*
KASANDRA C. GOLDBERG, State Bar No. 345364
  *kgoldberg@hallgriffin.com*
1851 East First Street, 10th Floor
Santa Ana, California 92705-4052
Telephone: (714) 918-7000
Facsimile: (714) 918-6996

Attorneys for Defendant and Cross-
Complainant SCOTT HOWLETT;
Defendant BMO HARRIS BANK N.A.,
Successor by Merger to BANK OF THE
WEST

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| GOLDWATER BANK, N.A.<br><br>        Plaintiff,<br><br>    vs.<br><br>ARTUR ELIZAROV; UNISON AGREEMENT CORP.; SCOTT HOWLETT; BANK OF THE WEST; and ILYA ALEKSEYEFF,<br><br>        Defendants.<br><br>AND RELATED CROSS-ACTIONS | CASE NO. 21-cv-00616-JWH-SP<br><br>JUDGE:   Hon. John W. Holcomb<br>CTRM.:    9D<br><br>**DISCOVERY MATTER –**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION TO COMPEL**<br><br>*Filed concurrently with Ex Parte Application; Declaration of Jeremy T. Katz; [Proposed] Order*<br><br>JUDGE:  Hon. Sheri Pym<br>CRTRM.:        4<br><br>DISCOVERY CUTOFF: June 15, 2023<br>PRE-TRIAL CONF: November 3, 2023<br>TRIAL DATE:    November 27, 2023 |

/ / /

/ / /

/ / /

/ / /

/ / /

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................. 1

II. STATEMENT OF FACTS ................................................................... 3

    A. General Background Information ............................................... 3

    B. Facts Re: Deposition of Goldwater's Rule 30(b)(6) witness ................ 4

    C. Facts Re: Goldwater Withholding Documents Responsive to Howlett and BOTW's RFP Set Six .................................................. 7

III. ARGUMENT ..................................................................................... 8

    A. Ms. Overbeck's 30(b)(6) testimony should be binding on Goldwater ................................................................................. 8

    B. Goldwater Should Be Ordered To Make Ms. Overbeck Available for a Further Deposition ........................................................... 9

    C. Goldwater Should be Ordered Not To Make Improper Information-Withholding Instructions to any Future 30(b)(6) Witness ................................................................................. 10

    D. The Court Should Overrule Goldwater's Objection to Finishing the May 12, 2023 Transcript as "Volume I" of Goldwater's 30(b)(6) testimony ................................................................... 12

    E. Goldwater is Wrongfully Withholding Documents Responsive to the Requests for Production ..................................................... 13

        1. RFP No. 77 ................................................................. 13

        2. RFP No. 79 ................................................................. 16

        3. RFP No. 80 ................................................................. 17

        4. RFP No. 84 ................................................................. 18

        5. RFP Nos. 83, 85, 86, 87, 89, 91 (seeking Goldwater's agent Weststar's policies and procedures) ........................... 19

IV. SANCTIONS ...................................................................................... 21

V. CONCLUSION ................................................................................... 22

HALL GRIFFIN

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barajas v. Abbott Labs., Inc.*,
   (N.D.Cal. Nov. 29, 2018, No. 18-cv-00839-EJD (VKD)) 2018
   U.S.Dist.LEXIS 202690 ................................................................. 6

*Cal. Found. for Indep. Living Ctrs. v. Cnty. of Sacramento*,
   142 F. Supp. 3d 1035 (E.D.Cal. 2015) ........................................... 12

*Cal. Satellite Sys. v. Nichols*,
   (1985) 170 Cal.App.3d 56 (Cal. Ct. App. 1985) ............................ 15

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No 14-cv-2058-SC, 2015 U.S. Dist. LEXIS 139385, 2015 WL
   12942210 (N.D. Cal. May 29, 2015) ................................................. 6

*In re Citric Acid Litig.*,
   191 F.3d 1090 (9th Cir. 1999) ........................................................ 20

*Detoy v. City and Cnty. of San Francisco*,
   196 F.R.D. 362,367 (N.D. Cal. 2000) ............................................. 12

*Green v. Sunset Fin. Servs.*,
   (D.Neb. Mar. 20, 2012, No. 8:09CV13) 2012 U.S.Dist.LEXIS
   37101 ............................................................................................... 15

*Icon Enters. Int'l v. Am. Prods. Co.*,
   (C.D.Cal. Oct. 7, 2004, No. CV 04-1240 SVW (PLAx)) 2004
   U.S.Dist.LEXIS 31080 .................................................................... 12

*Mahe v. Cont'l Tire the Ams., LLC*,
   (C.D.Cal.Apr. 23, 2012, No. EDCV 10-1744-DSF (OPx)) 2012
   U.S.Dist.LEXIS 200334 ............................................................ 11, 12

*Moses v. Halstead*,
   236 F.R.D. 667 (D. Kan. 2006) ...................................................... 15

*Qualcomm Inc. v. Apple, Inc.*,
   2019 U.S.Dist.LEXIS 1200 (S.D. Cal. Jan. 3, 2019) ...................... 20

4865-4928-1124.8

HALL GRIFFIN

*In re Stratosphere Corp.*,
    182 F.R.D. 614 (D. Nev. 1998) ......................................................................... 6

*Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air*
    *Conditioning Engineers, Inc.*,
    755 F.3d 832 (7th Cir. 2014) ....................................................................... 20

*In re Toyota Motor Corp. Sec. Litig.*,
    (C.D.Cal. Mar. 9, 2012, No. CV 10-922 DSF (AJWx)) 2012
    U.S.Dist.LEXIS 124438 ............................................................................. 14

*United States v. Rodríguez-Soler*,
    (1st Cir. 2014) 773 F.3d 289 ...................................................................... 14

*W. U. Tel.Co. v. Commercial Pac.C. Co.*,
    177 Cal. 577 (Cal. 1918) ........................................................................... 15

*Wilson v. S.L. Rey, Inc.*,
    17 Cal.App.4th 234 (Cal. Ct. App. 1993) .................................................. 15

**Statutes**

California Civil Code § 2920.5(a) ...................................................................... 20

**Other Authorities**

FRCP Rule 30(c)(2) ........................................................................................... 11

FRCP Rule 30(d)(2) ........................................................................................... 21

FRCP Rule 37(a)(5)(A) ...................................................................................... 21

FRCP Rule 37(b)(2)(A)(i)-(ii) ........................................................................... 21

FRCP Rule 37(d)(3) ........................................................................................... 21

FRCP Rule 37(d)(a)(1) ....................................................................................... 21

Rule 30(b)(6) ............................................................................................. *passim*

Rule 30(c)(2) ............................................................................................... 1, 11

Rule 30(d)(2) .............................................................................................. 10, 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HALL GRIFFIN

# I. **INTRODUCTION**

This entire action exists because Plaintiff Goldwater Bank, N.A. ("Goldwater") failed to record a lien for Goldwater's 2019 loan to Defendant Elizarov.  That initial error was compounded when Goldwater and its agent Weststar's failed to confirm that the lien was recorded when Weststar began servicing the loan on Goldwater's behalf in 2020.  Then Goldwater made things exponentially worse for itself when, during the March 2021 sale of the subject property from Elizarov to Defendant Scott Howlett, Goldwater failed to provide actual notice of its lien in response to an inquiry from Howlett's Escrow Agent (who told Goldwater that Goldwater would not get paid from the sale proceeds because there was no record of Goldwater being a lienholder).  Nevertheless, Goldwater wants to quiet Howlett's title, and impose a lien on Howlett's property, so that Goldwater can recover approximately $800,000 in unpaid loan debt *plus* approximately $650,000 in loan enforcement costs arising from Goldwater's own failure to act and inequitable withholding of information.

Now, during discovery, Goldwater is again wrongfully and inequitably withholding important information—this time in the form of Rule 30(b)(6) deposition testimony and responsive documents.

During the May 12, 2023 deposition of Goldwater's 30(b)(6) witness, Christine Overbeck, Goldwater's counsel instructed Ms. Overbeck to withhold non-privileged information approximately forty (40) times, all based solely on counsel's contention that such questions fell outside the topics designated for the deposition. Rule 30(c)(2) and established case law hold that such instructions were totally improper.

Also—*coincidentally after Ms. Overbeck testified that Goldwater sold the subject loan to Weststar, which negates Goldwater's standing to challenge Howlett's title to the subject property*—Goldwater's counsel called for a "5 minute bathroom break," which they unilaterally turned into a 35 minute break, after which

Goldwater's counsel unilaterally suspended the deposition because Ms. Overbeck supposedly became too ill to recall information or continue testifying.  But Ms. Overbeck herself testified that she was feeling well, and that there were no medical conditions affecting her memory or ability to testify.  Ms. Overbeck never identified any emerging malady.  She was giving lucid and detailed testimony about matters within the designated deposition topics at the time that Goldwater's counsel unilaterally suspended her deposition.

Goldwater nevertheless contends that Ms. Overbeck's mysteriously emerging illness makes her 30(b)(6) testimony non-binding on Goldwater.  Goldwater is also refusing to let Defendants finish their direct examination of Ms. Overbeck. Goldwater is even refusing to let the court reporter finish "Volume One" of the transcript of Ms. Overbeck's May 12, 2023 30(b)(6) testimony.

Goldwater offering a "replacement" or "substitute" 30(b)(6) witness does not cure the prejudice of preventing Ms. Overbeck from completing her deposition.  Ms. Overbeck is Goldwater's senior vice president of residential loan operations.  She testified that she has personal knowledge of Goldwater's lending policies and procedures—information that bears on how Goldwater handled (or mishandled) Elizarov's lien; whether Goldwater's conduct (or misconduct) caused or contributed to Goldwater's alleged damages; and the extent to which Goldwater could have disclosed (or inequitably withheld) information about its lien holder status in response to the Escrow Agent's March 2021 inquiries.  Moreover, *Defendants have already caught Goldwater making materially false* verified *allegations in Goldwater's complaint*, and Goldwater only suspended Ms. Overbeck's deposition after she made admissions that are very harmful to Goldwater's claims.  Defendants should be able to obtain the information within Ms. Overbeck's personal knowledge which Goldwater wrongfully prevented her from providing—even if only to test the veracity of any "replacement" or "substitute" witness's representations.

4865-4928-1124.8

Additionally, Defendants propounded requests for production to obtain copies of policies and procedures bearing on how Goldwater and its putative agent Weststar were supposed to handle the subject loan and Deed of Trust, and what information they each could have provided in response to the Escrow Agent's inquiries during the 2021 sale of the property to Howlett—information which is relevant to Goldwater's claims and Defendants' affirmative defenses.  Goldwater's counsel concedes that Goldwater is withholding responsive documents.  Goldwater should be ordered to produce the responsive documents before the deposition of Goldwater's 30(b)(6) witness resumes on May 31, 2023.

## II.   STATEMENT OF FACTS

### A.   General Background Information

Goldwater already conceded that this lawsuit would not exist but for Goldwater's own failure to record the Deed of Trust for its 2019 loan to Defendant Elizarov.[1]  Elizarov's 2021 sale of the subject property to Defendant Howlett generated enough proceeds to pay any first lienholder of record in full.  Goldwater now wants to impose its lien on Howlett's property so that Goldwater can recover approximately $800,000 in Elizarov's unpaid loan debt plus approximately $650,000 in additional loan enforcement costs.  (Declaration of Jeremy T. Katz (the "Katz Decl.") at Ex. 5 at pages 122-123.)

Goldwater's alleged damages could have been easily avoided or mitigated in a number of ways.  Goldwater's residential lending division could have confirmed in 2019 that its Deed of Trust was recorded (or corrected any failure to record) as part of a post-closing procedure—the way Goldwater's commercial lending division does.  Goldwater could have looked at and corrected the subject Subordination

---

[1]   See, https://www.ca9.uscourts.gov/media/video/?20221116/22-55404/ at timestamp 14:23-14:39  (Ninth Circuit argument from 12/16/2022, last visited on 5/22/2023).

MEMORANDUM OF POINTS AND AUTHORITIES

4865-4928-1124.8

Agreement, *which bizarrely omitted Goldwater's name or contact information*, and which listed an incorrect loan number. (Katz Decl. Ex. 5 at page 70.) Goldwater could have provided Howlett's Escrow Agent with a payoff quote for Elizarov's loan during the 2021 sale of the property rather than sending the Escrow agent a payoff quote for a different borrower, and a different property, in a different state. (See Katz Decl. Ex. 19 at pages 57:18–58:8 and deposition exhibit 10 and Ex. 5 at pages 140-142.) Goldwater also could have provided Howlett's Escrow Agent with a copy of Goldwater's unrecorded Deed of Trust when the Escrow Agent told Goldwater that Goldwater would not be paid because there was no record of Goldwater's lien.

Thus Goldwater's policies and procedures (and those of Goldwater's servicing agent, Weststar) applicable to the handling Elizarov's loan and Deed of Trust bear on and are relevant to Goldwater's own claims, and also to Defendants' affirmative defenses including (1) bona fide purchaser/encumbrances; (2) estoppel, (3) failure to mitigate; (4) proximate caution—other persons; (5) proximate causation—Plaintiff; (6) unclean hands; and (7) lack of standing. (Katz Decl. Exs. 15-17.)

### B. Facts Re: Deposition of Goldwater's Rule 30(b)(6) witness

Notwithstanding Goldwater's delay (Katz Decl. ¶¶ 2–10 and Exhibits 1-4), the parties began the deposition of Goldwater's Rule 30(b)(6) witness, Christine Overbeck, on May 12, 2023. (Katz Decl. ¶¶ 11-12 and Ex. 5 at page 3.) Ms. Overbeck is Goldwater's Senior Vice President of Operations for Goldwater's residential lending division. (Katz Decl. Ex. 5 at pages 8-9.) She testified that she manages Goldwater's policies and procedures—including during audits—and that she reviews the policies and procedures to help Goldwater's board decide when to change them. (Katz Decl. Ex. 5 at pages 7.)

At the beginning of the deposition, Ms. Overbeck testified that: (1) there was no reason she would be unable to give accurate and truthful testimony that day; (2)

she was feeling well enough to testify; and (3) she did not have any medical conditions and was not on any medication that would prevent her from recalling information.  (Katz Decl. Ex. 5, at pages 2-3.)  During her deposition, Ms. Overbeck gave lucid responses Defendants' questions.  (Katz Decl. ¶ 13 and Ex. 5, throughout.)  Ms. Overbeck never mentioned feeling unwell, or that anything was preventing her from recalling information or testifying accurately.   (See Katz Decl. Ex. 5, generally.)

At the start of the deposition, one of Goldwater's counsel confirmed that Goldwater *will* allow the witness to testify in response to questions that were allegedly beyond the designated deposition topics.  (Katz Decl. Ex. 5 at page 17.)  But throughout the deposition Goldwater's other counsel *repeatedly* instructed Ms. Overbeck to withhold information based on counsel's contention that a question was outside of the designated deposition topics.  (Katz Decl. Ex. 5, pages: 8, 9, 10, 12, 43, 45, 46, 51, 52, 62, 63, 64, 70, 71, 85, 86, 87, 88, 89, 93, 98, 101, 102, 103, 104, 105, 106, 111, 112, 114, 115.)  Goldwater's counsel's wrongful instruction prevented Defendant from obtaining basic relevant testimony that was within Ms. Overbeck's personal knowledge—and further prevented Defendant from fully learning the scope of Ms. Overbeck's knowledge.[2]

The designated topics for Goldwater's 30(b)(6) deposition included the factual basis for Goldwater's continued prosecution of its quiet title claims; the transfer of servicing from Goldwater to Weststar; the agreements between Goldwater and Weststar; and the total amount of the lien that Goldwater was seeking to impose on Howlett's property.  (Katz Decl. ¶ 10 and Ex. 4.)  Ms.

---

[2] See, e.g., Katz Decl. Ex. 5 at pages 7-8:

Q: "Are you generally familiar with Goldwater's policies and procedures?"

Ms. Krysak:  "… Ms. Overbeck, please don't answer that question."

1 Overbeck testified that Goldwater's desired lien includes approximately $650,000 in

2 collection/enforcement costs. (Katz Decl. Ex. 5 at pages 122-123.)  Ms. Overbeck

3 also testified that **Goldwater sold the subject loan to Weststar,** that Goldwater

4 was paid for that sale, and that Goldwater has not repurchased the loan from

5 Weststar.  (Katz Decl. Ex. 5 at pages 36-37 and 165–167.)  When asked to explain

6 what she meant when she said "sell to Weststar," Ms. Overbeck responded:

7         THE WITNESS: What I refer to as sell, meaning

8         we fund the loan at Goldwater Bank and we sell the loan

9         to an investor. For example, Fannie Mae, Freddie Mac.

10         They buy the loan.

11 (Katz Decl. Ex. 5 at pages 36-37.)  The first time that Ms. Overbeck made that

12 admission, Goldwater's counsel called for a "5 minute break," after which Ms.

13 Overbeck changed her tune and testified "I am not prepared to answer that question

14 [regarding what she meant by "sell the loan"] at this time."  (Katz Decl. Ex. 5 at

15 pages 38-39.)  This smacks of improper coaching.[3]  And later in the deposition,

16 shortly after Ms. Overbeck confirmed that Goldwater had sold the loan without

17 repurchasing it (Id. at 165-167), Goldwater's counsel demanded another "5 minute

18

19 [3]     It is improper for a witness and her attorney to discuss the substance of her

20 testimony during breaks in a deposition, except where necessary to address matters of privilege.  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No 14-cv-2058-SC,

21 2015 U.S. Dist. LEXIS 139385, 2015 WL 12942210, at *3 (N.D. Cal. May 29, 2015) ("Courts have ruled that once a deposition begins, counsel should not confer

22 with the witness except to determine whether a privilege should be asserted"); *In re Stratosphere Corp.*, 182 F.R.D. 614, 621 (D. Nev. 1998). If Goldwater's counsel felt

23 Ms. Overbeck's recollection needed refreshing or her testimony required clarification, counsel should have questioned the witness themselves on the record at

24 the conclusion of the deposition.  *Barajas v. Abbott Labs., Inc*. (N.D.Cal. Nov. 29,

25 2018, No. 18-cv-00839-EJD (VKD)) 2018 U.S.Dist.LEXIS 202690, at *10-11 (citing Beverley R. O'Connell & Karen L. Stevenson, Rutter Group Prac. Guide:

26 Federal Civ. Proc. Before Trial (Nat'l Ed.) Ch. 11(IV)-A at 11:1544, 11:1549-

27 11:1550 (2018).)

28

MEMORANDUM OF POINTS AND AUTHORITIES

HALL GRIFFIN

bathroom break." (Katz Decl. ¶14 and Ex. 5, at page 180.) That "5 minute bathroom break" turned into a 35 minute break, after which Goldwater's counsel returned *without Ms. Overbeck* and unilaterally suspended the deposition. (Katz Decl. ¶ 14 and Ex. 5, at page 182.) The only reason given for the suspension *at that time* was that Ms. Overbeck was apparently "not feeling well [and] it has impacted her ability to testify." (Katz Decl. ¶ 14 and Ex. 5 at page 180-181.)

After exchanging correspondence post-deposition, the parties' counsel had a conference on May 18, 2023. (Katz Decl. ¶ 17 and Ex. 7.) During that conference, Goldwater's counsel changed their tune and declared that they had unilaterally suspended the deposition because "it became apparent during the deposition that [Ms. Overbeck] was unable to respond to certain relevant areas of inquiry." (Katz Decl. Ex. 19 ant Ex. 7 at pages 1-2.) *Goldwater's counsel never clarified which "areas of inquiry" were apparently beyond Ms. Overbeck's ability to testify, or why they had not let Defendants exhaust the topic on which Ms. Overbeck was able to testify.* Goldwater's counsel confirmed that Goldwater is refusing to make Ms. Overbeck available for further questioning, either in a 30(b)(6) capacity or in her individual capacity. (Katz Decl. ¶ 18 and Ex. 7.) Goldwater's counsel also refused to let the Court Reporter finish the transcript of the May 12, 2023 deposition. (Katz Decl. ¶ and Ex. 5 at page 181, and Ex. 7 at page 5) Goldwater further refused to deem the answers provided by Ms. Overbeck as being binding on Goldwater. (Katz Decl. Ex.7 at page 5.)

### C. Facts Re: Goldwater Withholding Documents Responsive to Howlett and BOTW's RFP Set Six

On March 24, 2023, Howlett and BOTW's counsel propounded Howlett and BOTW's Sixth Set of Requests for Production on Goldwater (the "RFP"). (Katz Decl. ¶23 and Ex. 9.) On April 28, 2023, Goldwater responded to the subject RFPs. (Katz Decl. ¶ 23 and Ex. 10.) Goldwater objected and refused to produce documents in response to RFP Nos. 77, 79, 80 and 84 (re: Goldwater's policies and

1  procedures) or RFP Nos. 85, 86, 87, 89, and 91 (re: Goldwater's agent Weststar's

2  policies and procedures.  (Katz Decl. Ex. 10.)  For each of the RFPs asking about

3  Weststar's documents, Goldwater's counsel stated that Goldwater did not have any

4  responsive documents.  (Katz Decl. ¶ 28 and Ex. 12.)  Ironically, Howlett and

5  BOTW had already subpoenaed those documents from Weststar; Weststar retained

6  Goldwater's counsel to respond to the subpoena; and Weststar circularly directed

7  Howlett/BOTW to obtain the documents Goldwater.  (Katz Decl. ¶¶ 30-31 and Exs.

8  13 and 14.)

9       On May 5, 2023, Defendants sent correspondence to Goldwater/Weststar's

10 counsel outlining the defects and proposing solutions.  (Katz Decl. Ex. 12 at page 5-

11 6.)  On May 8, 2023, the parties held a conference of counsel, during which all of

12 Goldwater's objections were resolved *except for relevancy and Goldwater*

13 *producing any Weststar documents*.  (Katz Decl. Ex. 12 at page 4.)  During that

14 conference, Goldwater's counsel confirmed that Goldwater was withholding records

15 responsive to RFP Nos. 77, 79, 80, and 84 based on the objection that such

16 documents are not relevant; and that Goldwater did not have

17 possession/custody/control over its agent Weststar's records which are responsive to

18 RFP Nos. 85, 86, 87, 89, and 91.  (Katz Decl. ¶ 28 and Ex. 12 at page 4.)

19      Goldwater served supplemental responses to the RFPs, which reiterate

20 objections that had already been resolved and without producing any further

21 documents.  (Katz Decl. ¶¶ 24 and Ex. 11.)  Notwithstanding Defendants' protests,

22 Goldwater is standing on its relevancy objections, and refusing to produce the

23 responsive records.  (See Katz Decl. ¶ 25 and Ex. 12.)

24 **III.   ARGUMENT**

25      **A.    Ms. Overbeck's 30(b)(6) testimony should be binding on Goldwater**

26      Defendants noticed topics for the 30(b)(6) deposition related to the alleged

27 transfer of rights from Goldwater to Weststar; about the agreements between

28 Goldwater and Weststar; about the status of the subject loan; about how and when

HALL GRIFFIN

Goldwater came into possession of Elizarov's original promissory note and deed of trust; and about the factual basis for Goldwater continuing to maintain its quiet title claims against Howlett and BOTW. (Katz Decl. Ex. 4 at Howlett/BOTW Topic Nos. 1, 2, 7, 10, 11, 14 and Elizarov's Topic No. 7.) Ms. Overbeck testified in her 30(b)(6) capacity that Goldwater sold the loan to Weststar and never repurchased it. (Katz Decl. Ex. 5 at page 36-37 and 166-167.) After some apparent rounds of coaching during the breaks, Goldwater's counsel unilaterally suspended the deposition and prevented any further testimony from Ms. Overbeck. Goldwater's counsel later took the position that Ms. Overbeck's harmful admissions about selling the loan to Weststar are not binding on Goldwater. (Katz Decl. Ex. 7.)

Testimony about Goldwater's ownership of the loan—or lack of ownership due to a sale of the loan to non-party Weststar—is clearly relevant to the question of whether Goldwater has standing to continue prosecuting its claims. Such testimony also falls within the designated deposition topics because it involves the factual basis for Goldwater continuing to prosecute this action, the status of the loan, and the agreements by which loan-related rights were transferred from Goldwater to Weststar. Ms. Overbeck testified to these harmful admissions when she was Goldwater's sole Rule 30(b)(6) witness. (Katz Decl. Ex. 5 at page 3.) Goldwater's later decision to provide an additional witness does not negate Ms. Overbeck's testimony. Ms. Overbeck's testimony about Goldwater selling the loan is therefore binding on Goldwater. And because Goldwater is the party preventing Ms. Overbeck from providing further testimony, Goldwater should be estopped from refuting that admission.

**B.** **Goldwater Should Be Ordered To Make Ms. Overbeck Available for a Further Deposition**

Ms. Overbeck testified that she has personal knowledge about Goldwater's residential policies and procedures because she is Goldwater's senior vice president of residential lending operations; she manages such policies and procedures; and she

HALL GRIFFIN

advises Goldwater's board about changes in procedures.  (Katz Decl. Ex. 5 at pages 7-9.)  Even if—as Goldwater now contends—Ms. Overbeck was not fully prepared to testify on every designated topic, Goldwater still should have allowed Ms. Overbeck to testify until the scope of her knowledge was exhausted.

Providing a substitute 30(b)(6) witness is no remedy.  Defendants have already caught Goldwater making sworn *but materially false statements* about the basis for Goldwater's claims.  (Compare Goldwater's operative pleading at ¶ 50 (Katz Decl. Ex. 15) with Peter Hill's deposition testimony that he only sent the escrow officer a payoff quote for a different borrower, and a different property, in a different state (Katz Decl. Ex. 19 at pages 57:18-58:8 and Deposition Exhibit 10).)  Defendants do not have to trust any of Goldwater's other representations—and especially not any from any "replacement" or "substitute" witness who contradicts Ms. Overbeck's Rule 30(b)(6) testimony.  Moreover, the information about Goldwater's policies and procedures that is within Ms. Overbeck's personal knowledge and which Goldwater prevented her from providing is relevant to test *the veracity* of any substitute witness's future testimony.  And as discussed above, Ms. Overbeck's personal knowledge of Goldwater's residential lending policies and procedures bears directly on Goldwater's claims and Defendants' affirmative defenses.  The Court should therefore order Goldwater to make Ms. Overbeck available to continue her testimony, and should further sanction Goldwater under Rule 30(d)(2) for all costs and attorneys' fees incurred to finish Ms. Overbeck's deposition.

**C.**   **Goldwater Should be Ordered Not To Make Improper Information-Withholding Instructions to any Future 30(b)(6) Witness**

At the start of Ms. Overbeck's Rule 30(b)(6) deposition, Goldwater's counsel conceded that the witness would be allowed to answer questions that were arguably outside the scope of the designated deposition topics.  (Katz Decl. Ex. 5 at page 17.)

But approximately forty (40) different times during the Rule 30(b)(6) deposition, Goldwater's counsel instructed Ms. Overbeck to withhold the responsive information—not because of any privilege, but because Goldwater's counsel contended that the question was beyond the scope of the designated deposition topics.  (See, e.g., Katz Decl. Ex. 5, pages: 8, 9, 10, 12, 43, 45, 46, 51, 52, 62, 63, 64, 70, 71, 85, 86, 87, 88, 89, 93, 98, 101, 102, 103, 104, 105, 106, 111, 112, 114, 115.)  That instruction to withhold information was improper.  FRCP Rule 30(c)(2) provides:

> An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. *A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).*

Fed. R. Civ. P. 30(c)(2) (emphasis added).  As further explained in *Mahe*:

> [T]he "reasonable particularity" requirement has been interpreted to mean that the description of the scope of the deposition in the notice is the minimum about which the witness must be prepared to testify, not the maximum. If the examining party asks questions outside the scope of the matters described in the notice, the general deposition rules govern (i.e. Fed. R. Civ. P. 26(b)(1)), so that relevant questions may be asked and no special protection is conferred on a deponent by virtue of the fact that the deposition was noticed under [Rule] 30(b)(6)… As a result, *Rule 30(b)(6) is not to be used to limit what is asked of a designated witness at deposition.* Once the witness satisfies the minimum standard, the scope of the deposition is determined solely by relevance under Rule 26, that is, that the evidence sought may lead to the discovery of admissible evidence.

/ / /

/ / /

1   *Mahe v. Cont'l Tire the Ams., LLC* (C.D.Cal.Apr. 23, 2012, No. EDCV 10-1744-

2   DSF (OPx)) 2012 U.S.Dist.LEXIS 200334, at *14-*15 (emphasis added).[4]

3       Perhaps recognizing its own error, Goldwater's counsel now says that they

4   will not issue any such information-withholding instruction when the Rule 30(b)(6)

5   deposition resumes with a substitute witness.  (Katz Decl. Ex. 7.)  But Goldwater

6   made *and then broke* a similar representation at the start of the May 12, 2023

7   deposition.  (Katz Decl. Ex. 5 at page 17 and throughout.)  The Court should

8   therefore order Goldwater not to make any more improper and prejudicial

9   instructions.

10      Rule 30(d)(2) authorizes the Court to impose  "an appropriate sanction—

11  including the reasonable expenses and attorney's fees incurred by any party—on a

12  person who impedes, delays, or frustrates the fair examination of the deponent."

13  The Court may and should impose such sanctions here.

14  **D.**      **The Court Should Overrule Goldwater's Objection to Finishing the**

15          **May 12, 2023 Transcript as "Volume I" of Goldwater's 30(b)(6)**

16          **testimony**

17      Goldwater objected to having the court reporter finish the transcript of the

18  May 12, 2023 Rule 30(b)(6) deposition.  (Katz Decl. Ex. 5 at page 181 and Ex. 7.)

19  This further impedes and delays Defendants' ability to use the transcript for

20  summary judgment purposes. Goldwater attempts—but cannot be allowed—to game

21  the most basic deposition protocols to avoid the impact of unfavorable testimony.

22  After all, if Goldwater does not own this loan, then Goldwater cannot quiet

23  _____

24  [4]      Accord *Detoy v. City and Cnty. of San Francisco*, 196 F.R.D. 362,367 (N.D.
    Cal. 2000); *Cal. Found. for Indep. Living Ctrs. v. Cnty. of Sacramento*, 142 F. Supp.

25  3d 1035, 1046 (E.D.Cal. 2015); *Icon Enters. Int'l v. Am. Prods. Co*. (C.D.Cal. Oct.

26  7, 2004, No. CV 04-1240 SVW (PLAx)) 2004 U.S.Dist.LEXIS 31080, at *20 ("the
    Court will not exclude any testimony on the grounds that it went beyond the

27  designated topics. Any answer elicited in response to a question beyond the

28  designated topics will stand as testimony on the part of the individual fact witness.")

4865-4928-1124.8

HALL GRIFFIN

1  Howlett's title.  The Court should overrule Goldwater's objection and allow the
2  court reporter to finish the May 12, 2023 transcript—which should be designated as
3  Volume One of Goldwater's Rule 30(b)(6) testimony.  There is no reason for further
4  delay.

5  **E.**  **Goldwater is Wrongfully Withholding Documents Responsive to**
6  **the Requests for Production**

7  Goldwater's counsel confirmed that Goldwater and its agent Weststar are
8  withholding documents that are responsive to Howlett and BOTW's Sixth Set of
9  RFPs to Goldwater.  The Court should order Goldwater to produce the wrongfully
10  withheld records by Noon PST on May 30, 2023 (at least one business day before
11  the resumption of Goldwater's 30(b)(6) deposition).

12  **1.**  **RFP No. 77**

13  RFP No. 77 to Goldwater (Katz Decl. Ex .10 at 3:2–5) requested:

14  DOCUMENTS articulating GOLDWATER's policies and
15  procedures (in effect between May 1, 2019 and July 31,
   2019, and as applicable to Mr. Elizarov's LOAN) for the
16  onboarding of a residential real estate secured loan.

17  Goldwater's response to RFP No. 77 (Katz Decl. Ex. 10 at 3:6-25) (emphasis
18  added):

19  "Goldwater objects to the use of the phrase "onboarding"
20  as vague and ambiguous, because the Request cannot be
   answered without speculation by Goldwater as to its
   intended meaning. To be sure, the Oxford English
21  Dictionary defines "onboarding" to mean (1) the action of
22  process of integrating a new employee into an
   organization, or (2) the action or process of familiarizing a
23  new customer, client, or service user with a product or
   service, esp. a piece of software. Neither of these
24  definitions are applicable to this Request. Goldwater also
   objects to this Request as overly broad and not
25  proportional to the needs of the case because it seeks not
   only the policies and procedures for the onboarding of a
26  residential real estate secured loan but also seeks all
27  "documents articulating" such policies and procedures
   which presumably include any document, including
28  emails, referencing such policies or procedures. *Goldwater*

13

HALL GRIFFIN

*further objects to this Request to the extent that it seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The issues to be decided are whether Howlett and BOTW had notice of Goldwater's lien despite the unrecorded status of Goldwater's deed of trust. Goldwater's policies and procedures have no bearing on the relevant claims and defenses.*

Goldwater reserves the right to amend or supplement this response as necessary or appropriate and as additional information becomes available through discovery."

Goldwater's supplemental response to RFP No. 77 merely confirms that "Goldwater is not producing any documents in responses to this request." (Katz Decl. Ex. 11 at 3:1-26.)

Goldwater's ongoing objection to the term "onboarding" is improper because that term was clearly defined during the during the conference of counsel— "onboarding" refers to the processes Goldwater uses when it takes a loan application, when it closes the loan, and its post-closing processes for handing the loan documents and lien instruments. (Katz Decl. Ex. 12 at page 4, at the second bullet point.) Goldwater's objection to the scope of this RFP is misplaced because Defendants clarified during the conference that Defendants are not seeking "every" document that refers to a policy or procedure, but only the documents sufficient to articulate the policy or procedure itself, so Goldwater does not need to produce "every single" document referencing the policy or procedure. (Katz Decl. ¶ 26 and Ex. 12 at page 4.)

Goldwater's relevancy objection is especially poor.[5] *Goldwater does not get*

---

[5]    "The Federal rules of evidence set a very low bar for relevance." (*United States v. Rodríguez-Soler* (1st Cir. 2014) 773 F.3d 289, 293.)  The "suggestion that discovery should be limited to discrete issues […] is inconsistent with the liberal policies governing discovery." (*In re Toyota Motor Corp. Sec. Litig.* (C.D.Cal. Mar. 9, 2012, No. CV 10-922 DSF (AJWx)) 2012 U.S.Dist.LEXIS 124438, at *45.) "Relevancy is broadly construed, and a request for discovery should be considered

MEMORANDUM OF POINTS AND AUTHORITIES
4865-4928-1124.8

1  *to unilaterally determine the universe of "issues to be decided" in this action, nor*

2  *does Goldwater get to withhold information that is relevant to Defendants'*

3  *affirmative defenses.*  Goldwater's claims against Howlett and BOTW for quiet title

4  and declaratory relief are equitable in nature, and are subject to Defendants'

5  affirmative defense of unclean hands.[6]  Defendants also asserted affirmative

6  defenses based on estoppel, failure to mitigate damages; harms proximately caused

7  by Plaintiff; harms proximately caused by Plaintiff's agents; and lack of standing.

8  (Katz Decl. Exs. 16-17.)

9    Documents regarding how Goldwater and its agents were supposed to handle

10  this loan (including the recordation of the subject Deed of Trust) bear on whether

11  Goldwater and its agents caused (or failed to mitigate) Goldwater's alleged

12  damages, including the approximately $650,000 in enforcement costs that

13  Goldwater could have avoiding by recording (or confirming the recordation) of the

14  Deed of Trust in the first instance.  Such policies and procedures also bear on the

15  extent to which Goldwater and its agents could have provided (or if they wrongfully

16

17  relevant if there is any possibility that the information sought may be relevant to the

18  claim or defense of any party."  (*Moses v. Halstead*, 236 F.R.D. 667, 671 (D. Kan. 2006) (footnotes omitted).)  "When the discovery sought appears relevant on its

19  face, the party resisting discovery has the burden to establish that the discovery is

20  not relevant."  (*Green v. Sunset Fin. Servs.* (D.Neb. Mar. 20, 2012, No. 8:09CV13) 2012 U.S.Dist.LEXIS 37101, at *2-3.)

21

22  [6] Equitable claims are subject to equitable defenses.  (Civ. Code. § 3517 ("No

23  one can take advantage of his own wrong"); *Wilson v. S.L. Rey, Inc.*, 17 Cal.App.4th 234, 244 (Cal. Ct. App. 1993) ("He who comes into equity must come with clean

24  hands.").  The equitable defense of unclean hands is based upon the misconduct in the particular transaction or in connection with the subject matter of the litigation.

25  (*W. U. Tel.Co. v. Commercial Pac.C. Co.* 177 Cal. 577, 585 (Cal. 1918); *Wilson, supra*, 17 Cal. App.4th at 244.)  "The bar [of unclean hands] applies only if the

26  inequitable conduct occurred in a transaction directly related to the matter before the

27  court and affects the equitable relationship between the litigants."  (*Cal. Satellite Sys. v.*

28  *Nichols* (1985) 170 Cal.App.3d 56, 70 (Cal. Ct. App. 1985).)

withheld) actual notice of Goldwater's liens in response to the Escrow Agent's 2021 inquiries to Goldwater and disclosure to Goldwater that Goldwater would not be paid because there was no record of Goldwater's lien.  The documents requested in RFP No. 77 are indeed relevant.

### 2.   RFP No. 79

RFP No. 79 to Goldwater (Katz Decl. Ex. 10 at 4:23-5:2:

> "DOCUMENTS articulating GOLDWATER's policies and procedures [in place while Goldwater was self-servicing the loan]—regarding the custodial maintenance, handling and control of original documents applicable to [the subject Deed of Trust"

Goldwater's response to RFP No. 79 (Katz Decl. Ex. 10 at 5:3-22) responded:

> Goldwater objects to this request as unduly burdensome and unreasonably cumulative in that it is duplicative of prior sets of requests from Requesting Party, including request number 19, and therefore, incorporates its objections and responses to request number 19 herein. Goldwater also objects to this request to the extent that it is not reasonably limited in scope, oppressive, or intended to annoy or embarrass, or it seeks information, which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. It is undisputed that the deed of trust for Goldwater's loan to Elizarov was not recorded prior to the sale of the Property to Howlett. The issues to be decided are whether Howlett and BOTW had notice of Goldwater's lien despite the unrecorded status of Goldwater's deed of trust. Goldwater's written policies and procedures have no bearing on the relevant claims and defenses. Goldwater also objects to this Request as overly broad and not proportional to the needs of the case because it seeks not only the policies and procedures regarding the custodial maintenance, handling and control of original documents but also seeks all "documents articulating" such policies and procedures which presumably include any document, including emails, referencing such policies or procedures.
>
> Goldwater reserves the right to amend or supplement this response as necessary or appropriate and as additional information becomes available through discovery.

MEMORANDUM OF POINTS AND AUTHORITIES

4865-4928-1124.8

HALL GRIFFIN

1    Goldwater's supplemental response to RFP No. 79 merely confirmed that

2    "Goldwater is not producing any documents in responses to this request."  (Katz

3    Decl. Ex. 11 at 4:23-26.)

4    Goldwater's prior response to RFP No. 19 states that Goldwater is producing

5    all non-privileged documents that are responsive to that request, so even if RFP No.

6    79 is duplicative, Goldwater should not be withholding any responsive documents.

7    (Katz Decl. Ex. 8 at page 7:27–8:13.)  Also, Goldwater's prior production did not

8    contain any policies or procedures (Katz Decl. ¶ 22), and Goldwater's counsel

9    confirmed that Goldwater is currently withholding documents responsive to RFP

10   No. 79.  (Katz Decl. ¶ 26 and Ex. 4.)  Goldwater's objection to the scope of RFP

11   No. 79 is misplaced because, as discussed above, it was resolved during the

12   conference of counsel.  (Katz Decl. ¶ 26 and Ex. 4.)  Documents regarding the

13   custodial maintenance, handling and control of Elizarov's original loan documents

14   and Deed of Trust are undeniably relevant to whether Goldwater has the right to

15   enforce Elizarov's loan, and also to the mitigation of Goldwater's alleged

16   documents and Goldwater's unclean hands when Goldwater withheld or concealed

17   information about its lienholder status in response to the Escrow Holder's 2021

18   inquiry.

19   **3.    RFP No. 80**

20   <u>RFP No. 80 to Goldwater (Katz Decl. Ex. 10 at 5:23–26) requested:</u>

21   Documents articulating GOLDWATER's policies and
     procedures (in effect as of May 2020, and as applicable to
22   Mr. Elizarov's LOAN[)] for the transfer of servicing for a
     residential real estate secured loan.
23

     <u>Goldwater's response to RFP No. 80 (Katz Decl. Ex. 10 at 5:27–6:17):</u>
24
     Goldwater objects to this request as unduly burdensome
25   and unreasonably cumulative in that it is duplicative of
     prior sets of requests from Requesting Party, including
26   request number 19, and therefore, incorporates its
     objections and responses to request number 19 herein.
27   Goldwater also objects to this request to the extent that it
     is not reasonably limited in scope, oppressive, or intended
28   to annoy or embarrass, or it seeks information, which is

HALL GRIFFIN

17

HALL GRIFFIN

neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The issues to be decided are whether Howlett and BOTW had notice of Goldwater's lien despite the unrecorded status of Goldwater's deed of trust. Goldwater's written policies and procedures have no bearing on the relevant claims and defenses. Goldwater also objects to this Request as overly broad and not proportional to the needs of the case because it seeks not only the policies and procedures regarding the transfer of servicing for a residential real estate secured loan but also seeks all "documents articulating" such policies and procedures which presumably include any document, including emails, referencing such policies or procedures.

Goldwater reserves the right to amend or supplement this response as necessary or appropriate and as additional information becomes available through discovery

Again, Goldwater's supplemental response to RFP No. 80 merely confirmed that Goldwater would not produce the responsive records.  (Katz Decl. Ex. 11 at 6:4-22.)

Goldwater's repetitive objections fail as to RFP No. 80 for the same reasons discussed above.  Also, Goldwater's policies and procedures applicable to the transfer of servicing for Elizarov's loan are relevant because Goldwater put the transfer at issue in the operative complaint (Katz Decl. Ex. 15 at ¶ 37) and because Goldwater's 30(b)(6) witness testified that Goldwater "sold the loan" to Weststar. (Katz Decl. Ex. 5 at pages 36-37 and 166-167.)

### 4.  RFP No. 84

RFP No. 84 to Goldwater (Katz Decl. Ex. 10 at 9:1-5) requested:

DOCUMENTS articulating the checklist(s) GOLDWATER utilized when "Goldwater transferred responsibility for servicing the Goldwater Loan to an affiliated entity named Weststar Mortgage Corporation" as referenced in Paragraph 37 of the FIRST AMENDED COMPLAINT.

Goldwater's response to RFP No. 84 (Katz Decl. Ex. 10 at 9:6–23):

Goldwater objects to this request as unduly burdensome and unreasonably cumulative in that it is duplicative of prior sets of requests from Requesting Party, including request number 19, and therefore, incorporates its objections and responses to request number 19 herein.

18

MEMORANDUM OF POINTS AND AUTHORITIES

1
2
3
4
5
6
7
8
9

> Goldwater also objects to this request to the extent that it is oppressive, intended to annoy or embarrass, or it seeks information, which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The issues to be decided are whether Howlett and BOTW had notice of Goldwater's lien despite the unrecorded status of Goldwater's deed of trust. Goldwater's "checklists" have no bearing on the relevant claims and defenses. Goldwater also objects to this Request as overly broad and not proportional to the needs of the case because it seeks not only the checklist(s) Goldwater utilized when "Goldwater transferred responsibility for servicing the Goldwater Loan to an affiliated entity named Weststar Mortgage Corporation" but also seeks all "documents articulating" such "checklists" which presumably include any document, including emails, referencing such policies or procedures.

10
11

> Goldwater reserves the right to amend or supplement this response as necessary or appropriate and as additional information becomes available through discovery.

12   Again, Goldwater's supplemental response to RFP No. 84 merely confirmed

13  that Goldwater would not produce the responsive records.  (Katz Decl. Ex. 11 at

14  9:11–10:3.)

15   Goldwater's repetitive objections fail as to RFP No. 84 for the same reasons

16  described above.  Also, the checklist that Goldwater used when it transferred loan-

17  related rights to Weststar is relevant given that Goldwater made the transfer an issue

18  in the complaint (Katz Decl. Ex. 15 at ¶ 37), and because Goldwater's Chief Credit

19  Officer testified that it was Weststar's responsibility to confirm that the Deed of

20  Trust had been recorded (Katz Decl. Ex. 19 at page 70:8–23), and also because

21  Goldwater's Rule 30(b)(6) witness testified that Goldwater sold the loan to

22  Weststar.  (Katz Decl. Ex. 5 at pages 36-37 and 166-167.)

23   **5.  RFP Nos. 83, 85, 86, 87, 89, 91 (seeking Goldwater's agent**
24   **Weststar's policies and procedures)**

25   Goldwater and its putative serving agent Weststar are both represented by the

26  same counsel in this action.  Defendants asked Weststar to produce Weststar's

27  policies and procedures applicable to Elizarov's loan, and Weststar told Defendants

28  to get the documents from Goldwater because Goldwater is a party to this action.

19

HALL GRIFFIN

1  (Katz Decl. ¶¶ 30-31 and Exs. 13-14.)  So, Defendants asked Goldwater to produce

2  its agent Weststar's policies and procedures.  (See Katz Decl. Ex. 10 at RFP Nos.

3  83, 85, 86, 87, 89, and 91.)  But Goldwater objected to doing so because Goldwater

4  does not want to produce its agent Weststar's records; Goldwater also contends such

5  records are irrelevant; and because Goldwater contends that the scope of such

6  requests requires it to produce every single document or email that references such

7  records.  (See Katz Decl. Ex. 11.)  Goldwater's response smacks of gamesmanship.

8      Case law is clear—a party must produce documents that are in the possession,

9  custody or control *of its agent*.  (See *Thermal Design, Inc. v. Am. Soc'y of Heating,*

10  *Refrigerating & Air Conditioning Engineers, Inc.*, 755 F.3d 832, 839 (7th Cir. 2014)

11  ("Documents in the possession of a responding party's agent are subject to

12  disclosure, provided that the requesting party establishes responding party's control

13  over those documents;" and "In the absence of actual physical possession or control,

14  a party still has an obligation to produce documents within its control"); *Qualcomm*

15  *Inc. v. Apple, Inc.*, 2019 U.S.Dist.LEXIS 1200 at *5 (S.D. Cal. Jan. 3, 2019)

16  ("Actual possession custody or control is not required.  Rather, '[a] party may be

17  ordered to produce a document in the possession of a non-party entity if that party

18  has a legal right to obtain the document or has control over the entity who is in

19  possession of the document.'*"); In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th

20  Cir. 1999) ("Control is defined as the legal right to obtain documents upon

21  demand.").

22      Goldwater alleges in its own operative complaint that Weststar is Goldwater's

23  servicing agent for this loan.  (Katz Decl. Ex. 15, internal ¶ 37.)  A "servicer"

24  manages the loan account on a daily basis, "including…collecting and crediting

25  periodic loan payments… [and] enforcing the note and security instrument, either as

26  the current owner of the promissory note *or as the current owner's authorized*

27  *agent*."  (Cal. Civ. Code § 2920.5(a)(emphasis added).)  If Weststar is servicing

28  Elizarov's loan on Goldwater's behalf, then Goldwater must produce Weststar's

HALL GRIFFIN

MEMORANDUM OF POINTS AND AUTHORITIES

records reflecting the policies and procedures through which Weststar did so. Goldwater's objection only makes sense if Weststar was Goldwater's <u>buyer</u> rather than Goldwater's <u>agent</u>.

The remainder of Goldwater's objections to the scope and relevancy of those RFPs fail for the reasons set forth above—the parties already agreed to narrow the scope and documents relating to how Weststar was supposed to handle Elizarov's loan are relevant to the affirmative defenses of proximate causation, failure to mitigate damages, estoppel, and unclean hands.  Again, Goldwater's chief credit officer testified that Weststar was responsible for ensuring that Goldwater's lien was recorded (Katz Decl. Ex. 19 at page 70:8-23), and the unrecorded Deed of Trust was ultimately located in Weststar's custody.  (See Katz Decl. Ex. 7 at pages 77-78.)

## IV.   <u>SANCTIONS</u>

FRCP Rule 30(d)(2) provides that the "court may impose an appropriate sanction – including the reasonable expenses and attorneys' fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent."  FRCP Rule 37(a)(5)(A) provides that the court may require the party "whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."

As discussed throughout, Goldwater and its counsel have impeded the deposition and document production process, and Goldwater continues to withhold discoverable information that is relevant to testing the veracity of Goldwater's claims and which likewise bear on Defendants' affirmative defenses.

The Court may also elect to impose issue sanctions and evidence sanctions against Goldwater—finding that Ms. Overbeck's 30(b)(6) testimony about Goldwater selling the loan to Weststar and never repurchasing it is both binding on Goldwater and conclusive.  FRCP Rules 37(d)(a)(1), 37(d)(3), and 37(b)(2)(A)(i)–(ii).

## V. <u>CONCLUSION</u>

Based on the foregoing, Defendants Howlett and BOTW respectfully request that the Court grant this motion, deem Ms. Overbeck's 30(b)(6) testimony as being binding on Goldwater; order Goldwater not to make any further instructions to improperly withhold information; order Goldwater to produce Ms. Overbeck so that Defendants can complete her deposition; allow the finalization of the May 12, 2023 deposition transcript; to compel Goldwater's production of the responsive documents by Noon PST on May 30, 2023 (one business day prior to the resumption of the 30(b)(6) deposition); and impose monetary and evidence sanctions against Goldwater for failing to abide by its discovery obligations.

DATED: May 23, 2023         HALL GRIFFIN LLP

By:      /s/ Jeremy T. Katz
_____
Howard D. Hall
Jeremy T. Katz
Kasandra C. Goldberg
Attorneys for Defendant and Cross-Complainant SCOTT HOWLETT; Defendant BMO HARRIS BANK N.A., Successor by Merger to BANK OF THE WEST

4865-4928-1124.8

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of May, 2023, a true and correct copy of **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION TO COMPEL** was served via the United States District Court CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

By        /s/ Jeremy T. Katz
Jeremy T. Katz
HALL GRIFFIN LLP

HALL GRIFFIN

4865-4928-1124.8