Goldwater Bank v. Elizarov, et al., C.D. Cal. Case No. 21-cv-00616-JWH-SP

# JOINT EXHIBIT PART B

**For Goldwater Bank's Motion for Summary Judgment Against Howlett and Bank of the West**

# EXHIBIT 21

# GOLDWATER BANK, N.A.'S REQUESTS FOR ADMISSIONS, SET ONE, TO BANK OF THE WEST

Sean C. Wagner (Pro Hac Vice)
Abbey M. Krysak (Pro Hac Vice)
**WAGNER HICKS PLLC**
831 East Morehead Street, Suite 860
Charlotte, North Carolina 28202
Tel: (704) 705-7538
Fax: (704) 705-7787

John Forest Hilbert, Esq. (SBN 105827)
Joseph A. LeVota, Esq. (SBN 262760)
**HILBERT & SATTERLY LLP**
409 Camino del Rio S. #104
San Diego, California 92108
Telephone:  (619) 795-0300
Facsimile:   (619) 501-6855

Marie B. Maurice (SBN 258069)
Marina Samson (SBN 315024)
**IVIE McNEILL WYATT PURCELL & DIGGS**
444 S. Flower Street, Sutite 1800
Los Angeles, California 90071
Telephone:  (213) 489-0028
Facsimile:   (213) 489-0552

Counsel for Plaintiff
GOLDWATER BANK, N.A.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| | Case No. 5:21-cv-00616-JWH-SPx |
| **GOLDWATER BANK, N.A.,** Plaintiff, | Judge:          Hon. John W. Holcomb Department:  Courtroom 2 |
| v. **ARTUR ELIZAROV, *ET AL*.** Defendants. | **PLAINTIFF GOLDWATER BANK, N.A.'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT BANK OF THE WEST** |
| | Filed:          April 6, 2021 Trial Date:   August 7, 2023 |

PROPOUNDING PARTY:      Plaintiff GOLDWATER BANK, N.A.

RESPONDING PARTY:      Defendant BANK OF THE WEST

Pursuant to Federal Rules of Civil Procedure 26 and 36, Goldwater Bank, N.A.'s First Set Requests for Admission to Defendant Bank of the West is hereby propounded to you and your attorneys of record. These requests for admission are to be answered in writing within thirty (30) days after service.

## DEFINITIONS

The following definitions shall apply to the instructions and each of the requests below, unless specifically indicated, or otherwise required, by the context of the request:

1.    "Bank of the West," "you" or "your" shall mean Defendant Bank of the West, and any divisions, departments, parents, predecessors (whether acquired by merger, consolidation, or other means), successors, subsidiaries (whether wholly or partially owned), affiliates, entities under common control, joint ventures, and other organizations or operating units, and each of their present and former officers, directors, agents, controller shareholder(s) or employees, and all persons (natural or legal) who act, have acted or have purport to act, on its behalf.

2.    "Goldwater" or "Plaintiff" shall mean Plaintiff Goldwater Bank, N.A., and any divisions, departments, parents, predecessors (whether acquired by merger, consolidation, or other means), successors, subsidiaries (whether wholly or partially owned), affiliates, entities under common control, joint ventures, and other organizations or operating units, and each of their present and former officers, directors, agents, controller shareholder(s) or employees, and all persons (natural or legal) who act, have acted or have purport to act, on its behalf.

3.    "Aleksyeff" shall mean Defendant Ilya Alekseyeff.

4.    "Howlett" shall mean Defendant Scott Howlett.

5.    "Unison" shall mean Defendant Unison Agreement Corp., and any divisions, departments, parents, predecessors (whether acquired by merger, consolidation, or other means), successors, subsidiaries (whether wholly or partially owned), affiliates, entities under common control, joint ventures, and other organizations

or operating units, and each of their present and former officers, directors, agents, controller shareholder(s) or employees, and all persons (natural or legal) who act, have acted or have purport to act, on its behalf.

6.      "Defendants" shall mean and/or refer to Howlett, Elizarov, Alekseyeff, Unison, and Bank of the West, collectively.

7.      "Complaint" shall mean Goldwater's Verified Amended Complaint (ECF No. 44) and its exhibits.

8.      The term "Subject Property" means certain real property located at 291 W. Overlook Road, Palm Springs, California 92264.

9.      The term "Wilton Manors Property" means certain real property located at 2735 NE 10th Avenue, Wilton Manors, Florida 33334.

10.      The term "Escrow of the West" means Escrow of the West, Inc., as escrow agent for Elizarov, as seller, and Howlett, as buyer, of the Subject Property.

11.      The term "Goldwater Loan" means the mortgage loan made by Goldwater to Defendant Elizarov on or around July 31, 2019 in the principal amount of $686,250.00 and memorialized in an Adjustable Rate Note and a Deed of Trust dated July 31, 2019.

12.      The term "persons" is used in the broadest sense possible and means both natural persons and artificial entities including, but not limited to, sole proprietorships, general partnerships, limited partnerships, joint ventures, limited liability limited partnerships, limited liability companies, corporations, sub-chapter (s) corporations, closely held corporations, professional corporations, business trusts, charitable entities, social or political organizations, trusts, governmental units, bodies or agencies, regardless of their form or legal status, and all past and present officials, officers, directors, agents, employees, attorneys, successors, assigns or other persons acting or purporting to act on such person's behalf.

13.      "Correspondence" means any letter, memorandum, or other writing, including electronically stored e-mail transmissions and text messages, iMessages,

WhatsApp messages or any other secure messaging application messages, Blackberry messages, messages transmitted through social media like Facebook.com or Twitter.com, sent or received.

14.   "Communication" or "communications" includes, without limitation, all statements, representations, expressions of fact or opinion, correspondence, reports, memoranda, telegrams, and other transmissions of information, made in any manner whatsoever.

15.   The terms "document" and "documents" shall have the meaning attributed to that term by Rule 34 of the Federal Rules of Civil Procedure, and shall include any and all records, or written, readable, graphic, or visual materials, of any kind or character, and shall include, without limitation, correspondence, memoranda, notes, inter-office and intra-office communications, emails, cards, files, bills, invoices, computer printouts, minutes, studies, notes of telephone or other conversations, telegrams, pamphlets, books, tapes, discs, diskettes, cassettes, recordings, presentations, summaries, schedules, diagrams, charts, reports or records, electronically stored information, and any other data compilation stored in any medium from which information can be obtained, and any non-identical copies thereof, which are in your possession, subject to your control or known by you to exist or to have existed. "Document" or "documents" also shall include all copies of each document if the copies contain any additional writing or are not identical copies of the original.

16.   "Relating to" and "relates to" mean, without limitation, relating to, concerning, constituting, mentioning, referring to, describing, summarizing, evidencing, listing, relevant to, demonstrating, tending to prove or disprove, or explain.

17.   The connectives "and" and "or" mean either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

18.   The use of the singular includes the plural, and vice versa.

19.     The use of one gender includes all others, as appropriate in context.

## GENERAL INSTRUCTIONS

The following general instructions shall apply to each of the requests for admission below, unless specifically indicated, or otherwise required, by the context of the request:

1.     Respond to the following requests in the manner required by the Federal Rules of Civil Procedure and the Court's Local Rules.

2.     The particularity or generality of any one request shall not limit any other request.

3.     The following requests are continuing in nature. Your responses must be supplemented as required by the Federal Rules of Civil Procedure to reflect events occurring, or information becoming available, after service of your initial responses.

4.     Unless otherwise specified, the relevant timeframe for these requests is from January 1, 2019 to the present date.

## REQUESTS FOR ADMISSION

1.     Admit that, prior to March 29, 2021, You received a copy of a document entitled "Preliminary Title Report" for the Subject Property.

**RESPONSE:**


2.     Admit that **Exhibit A**, attached to these Requests, is a true and accurate copy of the Preliminary Title Report that You received prior to March 29, 2021.

**RESPONSE:**


3.     Admit that, prior to March 29, 2021, You received a copy of a document entitled "Amended Preliminary Report" for the Subject Property.

**RESPONSE:**

4.      Admit that **<u>Exhibit B</u>**, attached to these Requests, is a true and accurate copy of the Amended Preliminary Title Report for the Subject Property that You had in your possession prior to March 29, 2021.

   **RESPONSE:**


5.      Admit that, prior to March 29, 2021, You had in Your possession a copy of a document entitled "Unison Homebuyer Subordination Agreement" for the Subject Property.

   **RESPONSE:**


6.      Admit that **<u>Exhibit C</u>**, attached to these Requests, is a true and accurate copy of the Unison Homebuyer Subordination Agreement that was in your possession prior to March 29, 2021.

   **RESPONSE:**


7.      Admit that **<u>Exhibit D</u>**, attached to these Requests, is a true and accurate copy of certain email correspondence sent by You on March 29, 2021.

   **RESPONSE:**


8.      Admit that **<u>Exhibit E</u>**, attached to these Requests, is a true and accurate copy of certain email correspondence between You and Escrow of the West on March 29, 2021.

   **RESPONSE:**

9.      Admit that **Exhibit F**, attached to these Requests, is a true and accurate copy of certain email correspondence received by You from Escrow of the West on March 29, 2021.

**RESPONSE:**

10.     Admit that **Exhibit G**, attached to these Requests, is a true and accurate copy of one of the attachments to **Exhibit F**, and received by You from Escrow of the West on March 29, 2021.

**RESPONSE:**

11.     Admit that **Exhibit G**, attached to these requests, was received by You from Escrow of the West prior to Your funding of the loan for Defendant Howlett for the Subject Property.

**RESPONSE:**

12.     Admit that **Exhibit G**, attached to these requests, was received by You from Escrow of the West prior to the closing of the sale of the Subject Property to Defendant Howlett.

**RESPONSE:**

Dated: January 31, 2023

**WAGNER HICKS PLLC**

By: /s/ Abbey M. Krysak
       Sean C. Wagner, Esq.
       Abbey M. Krysak, Esq.

AND

**HILBERT & SATTERLY LLP**

John Forest Hilbert, Esq.
Joseph A. LeVota, Esq.

AND

**IVIE McNEILL WYATT PURCELL & DIGGS**

Marie B. Maurice, Esq.
Marina Samson

*ATTORNEYS FOR DEFENDANT*
*GOLDWATER BANK N.A.*

---

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO BANK OF THE WEST - 8

## CERTIFICATE OF SERVICE

I am employed in the County of Mecklenburg, State of North Carolina.  I am over the age of 18 and not a party to the within action.  My business address is 831 E. Morehead Street, Suite 860, Charlotte, NC 28202.

On January 31, 2023, I served the within document described as:

## PLAINTIFF GOLDWATER BANK, N.A.'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT BANK OF THE WEST

on each interested party in this action, as stated below:

## SEE ATTACHED SERVICE LIST

**BY EMAIL**:  I caused a true copy of the document to be sent to the persons at the corresponding electronic addresses as indicated above on the above-mentioned date. My electronic notification address is abbey.krysak @wagnerhicks.law.  I am familiar with this firm's Microsoft Outlook electronic mail system and did not receive any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am a *Pro Hac Vice* member of the bar of this Court at whose direction the service was made.

Executed on January 31, 2023, in Charlotte, North Carolina.


*Abbey M. Krysak*
Abbey M. Krysak, Esq.

**SERVICE LIST**
**Goldwater Bank, N.A. v. Artur Elizarov, et al.**
**Case No. 5:21-cv-00616-JWH-SP**

Ilya Alekseyeff, Esq.
Loia, Inc. (APLC)
8721 Santa Monic Blvd., #119
West Hollywood, CA 90096
(213) 537-4592
Ilya@loia.legal
*Attorney for Defendant Artur Elizarov and Defendant pro per, Ilya Alekseyeff*

Howard D. Hall, Esq.
Jeremy T. Katz, Esq.
Ryan C. Thomason, Esq.
Hall Griffin, LLP
1851 East First Street, 10th Floor
Santa Ana, CA 92705-4052
hdhall@hallgriffin.com
jkatz@hallgriffin.com
rthomason@hallgriffin.com
(714) 918-7000; Fax: (714) 918-6996
*Attorneys for Defendant Scott Howlett and Bank of the West*

Denis Shmidt
Nabil Bisharat
Orsus Gate, LLP
16 N Marengo Ave, Suite 316
Pasadena, CA 91101
(213) 973-2052
dshmidt@orsusgate.com
nbisrahat@orsusgate.cm
*Attorneys for Defendant Unison Agreement Corp.*

# EXHIBIT A

Order No. 210-2216078-10

**Orange Coast Title Company of Southern California - Inland Empire Division**

1845 Business Center Drive, Suite 218
San Bernardino, CA 92408
909-825-8800

| | **PRELIMINARY REPORT** | |
|---|---|---|

Escrow of the West
9440 Santa Monica Blvd., Suite 310
Beverly Hills, CA 90210

| **Attention:** | Andrea Cross | **Your no.:** | 02-035242-AC |
|---|---|---|---|
| **Property address:** | 291  Overlook Road, Palm Springs, CA  92264 | **Order no.:** | 210-2216078-10 |

**Dated:**　　　　　　February 18, 2021

In response to the above referenced application for a policy of title insurance, **Orange Coast Title Company of Southern California - Inland Empire Division** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit B attached. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit B. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit B of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters, which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

Dated as of February 8, 2021 at 7:30 AM

_Cynthia Kack_

_____
Cynthia Kack, Title Officer
Ph: 909-825-8800
Email: cynthiak@octitle.com

Page 1

Order No. 210-2216078-10

**The form of policy of title insurance contemplated by this report is:**

A.L.T.A Homeowner's Policy (2/03/10) and A.L.T.A. Loan Policy (06-17-06)

**The Policy of Title Insurance, if issued, will be underwritten by:**  Real Advantage Title Insurance Company, a subsidiary of Orange Coast Title Company.  See attached disclosure.
**NOTE: The premium for a policy of Title Insurance, if issued, will be based on:**

**A liability of     $1,084,000.00    Subject to any filed rate increases and/or changes in the liability.**

## Schedule "A"

**The estate or interest in the land hereinafter described or referred to covered by this report is:**

A Fee

**Title to said estate or interest at the date hereof is vested in:**

 Artur Elizarov, a single man

**The land referred to in this report is situated in the City of Palm Springs, the County of Riverside, State of California, and is described as follows:**

Lot 8 of Block 7, Palm Canyon Mesa Tract, in the City of Palm Springs, the County of Riverside, State of California, as per map recorded in Book 12, Pages 52 through 56, both inclusive of maps, in the Office of the County Recorder of said County.

Assessor's Parcel Numbers(s):  513-363-023

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0212

Order No. 210-2216078-10

## Schedule "B"

**At the date hereof exceptions to coverage in addition to the printed exceptions and exclusions contained in said policy form would be as follows:**

1   General and Special taxes for the fiscal year 2021-2022, including any assessments collected with taxes.  A lien not yet payable.

    First installment due and payable 11/01/2021, delinquent if not paid by 12/10/2021
    Second installment due and payable 02/01/2022, delinquent if not paid by 04/10/2022

2   General and Special taxes for the fiscal year 2020-2021, including any assessments collected with current taxes.

| | |
|---|---|
| Total amount | **$11,639.20** |
| 1st installment | **$5,819.60**, Paid |
| Penalty | $581.96 (after 12/10/2020) |
| 2nd installment | **$5,819.60** (after 04/12/2021) Open |
| Penalty | $620.02 (after 04/12/2021) |
| Code area | 011-003-City of Palm Springs |
| Parcel No. | **513-363-023** |
| Exemption | $None Shown |

3   Supplemental taxes including special assessments and/or personal property taxes if any, for the fiscal year 2020 - 2021.

| | |
|---|---|
| Total amount | None Shown |
| 1st installment: | None Shown, No Tax Due |
| 2nd installment: | None Shown, No Tax Due |
| Parcel no. | 513-363-023 |

4   The Lien of future supplemental taxes, if any, assessed pursuant to the provisions of section 75, et seq of the revenue and taxation code of the State of California

5   Covenants, conditions and restrictions in an instrument recorded Book 625, Page 562, deeds, which provide that a violation thereof shall not defeat or render invalid the lien of any mortgage or Deed of Trust made in good faith and for value, but deleting any covenant, condition, or restriction, if any, indicating a preference, limitation, or discrimination based on race, color, religion, sex, gender, gender identify, gender expression, sexual orientation, familial status, marital status, disability, handicap, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, to the extent that such covenants, conditions or restrictions violate applicable state or federal laws.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

    "NOTE: Section 12956.1 (b)(1) of California Government Code provide the following: if this document contains any restriction based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status."

An easement as set forth in the above document

| | |
|---|---|
| For : | Construct, install, maintain and operate, telephone, telegraph and electric light and power poles, wires, cables, lines and conduits, sewer, water and gas pipes, with right of entry thereon for the purpose of maintaining same and incidental purposes |
| Affects : | The location of said easement is set forth therein |

Page 3

Order No. 210-2216078-10

6    An easement for purposes herein stated, and rights incidental thereto as set forth in an instrument

| | |
|---|---|
| Recorded: | In Book 630, Page 484 of Deeds |
| For: | Right to erect and maintain poles or other supports, with wires and fixtures  and incidental purposes |
| Affects: | The location of said easement is set forth therein |

7    A Deed of Trust to secure an indebtedness of

| | |
|---|---|
| Amount: | **$80,000.00** |
| Trustor: | **Hunter Woods, LLC, a California limited liability company** |
| Trustee: | Geraci Law Firm |
| Beneficiary: | Cedar Forge Financial, a California corporation |
| Dated: | 04/11/2016 |
| Recorded: | **04/18/2016** as Instrument No. **2016-151674**, Official Records. |

Although we find no recorded reconveyance of record, we believe the obligation secured by said Deed of Trust may have been satisfied. Prior to issuance of a Policy of Title Insurance this company may require documentation sufficient to allow us to remove this exception.

8    A Deed of Trust to secure an indebtedness of

| | |
|---|---|
| Amount: | **$150,000.00** |
| Trustor: | **Hunter Woods, LLC, a California limited liability company** |
| Trustee: | Geraci Law Firm |
| Beneficiary: | Cedar Forge Financial, a California corporation |
| Dated: | 07/11/2016 |
| Recorded: | **07/15/2016** as Instrument No. **2016-297098**, Official Records. |

Although we find no recorded reconveyance of record, we believe the obligation secured by said Deed of Trust may have been satisfied. Prior to issuance of a Policy of Title Insurance this company may require documentation sufficient to allow us to remove this exception.

9    An instrument, upon the terms and conditions contained therein

| | |
|---|---|
| Entitled: | Encroachment Agreement |
| Recorded: | 09/13/2018, as Instrument No. 2018-368167, Official Records |

10    A Deed of Trust to secure the indebtedness of

| | |
|---|---|
| Amount: | $**None Shown** |
| Trustor: | **Artur Elizarov, as a single man** |
| Trustee: | American Title, Inc. |
| Beneficiary: | Unison Agreement Corp., a Delaware corporation |
| Dated: | 07/30/2019 |
| Recorded: | **08/07/2019 as Instrument No. 2019-299191** of Official Records |

11    An instrument, upon the terms and conditions contained therein

| | |
|---|---|
| Entitled: | Memorandum of Unison Homebuyer Agreement |
| Dated: | 07/30/2019 |
| Executed by and between: | Artur Elizarov as a single man and Ynison Agreement Corp., a Delaware Corporation |
| Recorded: | 08/07/2019, as Instrument No. 2019-299192 of Official Records |

The lien or charge of said instrument was subordinated to the lien or charge of the Deed of Trust shown in paragraph 10, of Schedule B

| | |
|---|---|
| Recorded: | 08/07/2019 as Instrument No. 2019-299193, Official Records. |

The beneficial interest under said Deed of Trust was assigned

| | |
|---|---|
| To: | Unison Midgard Holdings LLC, a Delaware Limited Partnership |
| By Assignment Recorded: | 08/07/2019, as Instrument No. 2019-299194, Official Records. |

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0214

Order No. 210-2216078-10

12   (A)  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records;

Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

(B)  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

(C)  Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

(D)  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records

(E)  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the public records

(F)  Any lien or right to a lien for services, labor or material theretofore or hereafter not shown by the public records.

**Exceptions A-F will be omitted on extended coverage policies.**

## End of Schedule B

# EXHIBIT B



Order No. 210-2216078-10

**Orange Coast Title Company of Southern California - Inland
Empire Division**

1845 Business Center Drive, Suite 218
San Bernardino, CA 92408
909-825-8800

| | **AMENDED PRELIMINARY REPORT** | |
|---|---|---|

Escrow of the West
9440 Santa Monica Blvd., Suite 310
Beverly Hills, CA 90210

| **Attention:** | Andrea Cross | **Your no.:** | 02-035523-AC |
|---|---|---|---|
| **Property address:** | 291 Overlook Road, Palm Springs, CA  92264 | **Order no.:** | 210-2216078-10 |

**Dated:**   March 3, 2021

In response to the above referenced application for a policy of title insurance, **Orange Coast Title Company of Southern California
- Inland Empire Division** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of
Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained
by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant
to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in
Exhibit B attached. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth
in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive
remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance
which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit B.
Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit B of this report
carefully. The exceptions and exclusions are meant to provide you with notice of matters, which are not covered under the
terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as the condition of title and may not list all
liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title
insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance,
a Binder or Commitment should be requested.

Dated as of February 18, 2021 at 7:30 AM

*Cynthia Kack*

_____
Cynthia Kack, Title Officer
Ph: 909-825-8800
Email: cynthiak@octitle.com

Page 1

Order No. 210-2216078-10

**The form of policy of title insurance contemplated by this report is:**

A.L.T.A Homeowner's Policy (2/03/10) and A.L.T.A. Loan Policy (06-17-06)

**The Policy of Title Insurance, if issued, will be underwritten by:** Real Advantage Title Insurance Company, a subsidiary of Orange Coast Title Company.  See attached disclosure.
**NOTE: The premium for a policy of Title Insurance, if issued, will be based on:**

**A liability of      $1,004,000.00    Subject to any filed rate increases and/or changes in the liability.**

## Schedule "A"

**The estate or interest in the land hereinafter described or referred to covered by this report is:**

A Fee

**Title to said estate or interest at the date hereof is vested in:**

Artur Elizarov, a single man

**The land referred to in this report is situated in the City of Palm Springs, the County of Riverside, State of California, and is described as follows:**

Lot 8 of Block 7, Palm Canyon Mesa Tract, in the City of Palm Springs, the County of Riverside, State of California, as per map recorded in Book 12, Pages 52 through 56, both inclusive of maps, in the Office of the County Recorder of said County.

Assessor's Parcel Numbers(s):  513-363-023

EOTW_000056

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0218

Order No. 210-2216078-10

## Schedule "B"

**At the date hereof exceptions to coverage in addition to the printed exceptions and exclusions contained in said policy form would be as follows:**

1   General and Special taxes for the fiscal year 2021-2022, including any assessments collected with taxes.  A lien not yet payable.

First installment due and payable 11/01/2021, delinquent if not paid by 12/10/2021
Second installment due and payable 02/01/2022, delinquent if not paid by 04/10/2022

2   General and Special taxes for the fiscal year 2020-2021, including any assessments collected with current taxes.
Total amount            **$11,639.20**
1st installment         **$5,819.60**, Paid
Penalty                 **$581.96** (after 12/10/2020)
2nd installment         **$5,819.60** (Open)
Penalty                 **$620.02** (after 04/12/2021)
Code area               011-003-City of Palm Springs
Parcel No.              **513-363-023**
Exemption               $None Shown

3   Supplemental taxes including special assessments and/or personal property taxes if any, for the fiscal year 2020 - 2021.
Total amount            None Shown
1st installment:        None Shown, No Tax Due
2nd installment:        None Shown, No Tax Due
Parcel no.              513-363-023

4   The Lien of future supplemental taxes, if any, assessed pursuant to the provisions of section 75, et seq of the revenue and taxation code of the State of California

5   Covenants, conditions and restrictions in an instrument recorded Book 625, Page 562, deeds, which provide that a violation thereof shall not defeat or render invalid the lien of any mortgage or Deed of Trust made in good faith and for value, but deleting any covenant, condition, or restriction, if any, indicating a preference, limitation, or discrimination based on race, color, religion, sex, gender, gender identify, gender expression, sexual orientation, familial status, marital status, disability, handicap, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, to the extent that such covenants, conditions or restrictions violate applicable state or federal laws.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

"NOTE: Section 12956.1 (b)(1) of California Government Code provide the following: if this document contains any restriction based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status."

An easement as set forth in the above document
For :                   Construct, install, maintain and operate, telephone, telegraph and electric light and power poles, wires, cables, lines and conduits, sewer, water and gas pipes, with right of entry thereon for the purpose of maintaining same and incidental purposes
Affects :               The location of said easement is set forth therein

Page 3

EOTW_000057

Order No. 210-2216078-10

6    An easement for purposes herein stated, and rights incidental thereto as set forth in an instrument

| | |
|---|---|
| Recorded: | In Book 630, Page 484 of Deeds |
| For: | Right to erect and maintain poles or other supports, with wires and fixtures  and incidental purposes |
| Affects: | The location of said easement is set forth therein |

7    An instrument, upon the terms and conditions contained therein

| | |
|---|---|
| Entitled: | Encroachment Agreement |
| Recorded: | 09/13/2018, as Instrument No. 2018-368167, Official Records |

8    A Deed of Trust to secure the indebtedness of

| | |
|---|---|
| Amount: | $**None Shown** |
| Trustor: | **Artur Elizarov, as a single man** |
| Trustee: | American Title, Inc. |
| Beneficiary: | Unison Agreement Corp., a Delaware corporation |
| Dated: | 07/30/2019 |
| Recorded: | **08/07/2019 as Instrument No. 2019-299191** of Official Records |

9    An instrument, upon the terms and conditions contained therein

| | |
|---|---|
| Entitled: | Memorandum of Unison Homebuyer Agreement |
| Dated: | 07/30/2019 |
| Executed by and between: | Artur Elizarov as a single man and Ynison Agreement Corp., a Delaware Corporation |
| Recorded: | 08/07/2019, as Instrument No. 2019-299192 of Official Records |

The lien or charge of said instrument was subordinated to the lien or charge of the Deed of Trust shown in paragraph 10, of Schedule B

| | |
|---|---|
| Recorded: | 08/07/2019 as Instrument No. 2019-299193, Official Records. |

The beneficial interest under said Deed of Trust was assigned

| | |
|---|---|
| To: | Unison Midgard Holdings LLC, a Delaware Limited Partnership |
| By Assignment Recorded: | 08/07/2019, as Instrument No. 2019-299194, Official Records. |

10    (A)  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records;

Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

(B)  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

(C)  Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

(D)  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records

(E)  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the public records

(F)  Any lien or right to a lien for services, labor or material theretofore or hereafter not shown by the public records.

**Exceptions A-F will be omitted on extended coverage policies.**

<p align="center">**End of Schedule B**</p>

EOTW_000058

# EXHIBIT C

Prepared by, recording requested by, and
when recorded mail to:

Unison Agreement Corp.
P.O. Box 26800
San Francisco, CA  94126-6800

Unison HomeBuyer Agreement ID Number:
FRX-226269

## UNISON HOMEBUYER UNIFORM SUBORDINATION AGREEMENT

**Legal Description of Property:**  That certain real property described in **Exhibit B** attached
hereto.

**Property Address:**  291 W Overlook Rd, Palm Springs, CA 92264

**Senior Lender/First Mortgage:**

Lender ("**Senior Lender**"):
  Borrower / Homeowner ("**Owner**"):  Artur Elizarov
  Loan Number: 90216931
  Note Dated:  ⎽July 30, 2019⎽
  Original Principal Amount:  $ 686,250

**Subordinating Lien Holder/Junior Lien:**

  Unison Agreement Corp., its successors and assigns ("**Subordinating Lien Holder**")

  Unison HomeBuyer ID Number: FRX-226269

  Dated As Of: ⎽⎽⎽July 30, 2019⎽⎽⎽ ("**Effective Date**")

  This **Unison HomeBuyer Uniform Subordination Agreement** is made pursuant to and
as of the Effective Date of that certain Unison HomeBuyer Agreement made by and between
Owner and Subordinating Lien Holder and securing the Junior Lien of Subordinating Lien
Holder ("**Unison HomeBuyer Agreement**").

  Defined terms not defined in the text herein are defined in **Exhibit A** attached hereto or
in **Schedule A** to the **Unison HomeBuyer Covenant Agreement** executed by Owner and
Subordinating Lien Holder as a component of the Unison HomeBuyer Agreement.

  When the context requires, singular nouns and pronouns include the plural.

Page 1 of 7

© 2016, **Unison**                                     Form 405 HBA-Multi (12/1/2016)

**WHEREAS**, Senior Lender is the owner and holder of the First Mortgage on the above-referenced property (the "**Property**") which is the senior lien on title to the Property and an interest in that title; and

**WHEREAS**, Subordinating Lien Holder is the owner and holder of the Junior Lien on title to the Property which is the junior lien on title to the Property and an interest in that title pursuant to the Unison HomeBuyer Agreement.

**NOW, THEREFOR**, for value received and to induce the Senior Lender to originate the First Mortgage on the Property:

**1.**     Subordinating Lien Holder unconditionally subordinates its lien on, and all other rights and interests in, the title to the Property resulting from the Junior Lien to the lien on, and to all other rights and interests in, the title to the Property resulting from the First Mortgage. Subordinating Lien Holder agrees that its lien on, and all other rights and interests in, the title to the Property resulting from the Junior Lien will at all times remain subordinate to the lien on, and all other rights and interests in, the title to the Property resulting from the First Mortgage.

**2.**     Subordinating Lien Holder hereby agrees that its lien on, and all other rights and interests in, the title to the Property resulting from the Junior Lien will remain subordinate to the lien on, and all other rights and interests in, the title to the Property resulting from any renewal, extension or modification of the First Mortgage made in connection with a **Bona Fide Loan Modification** by Senior Lender, and agrees that no increase in Owner's indebtedness on the First Mortgage resulting from such renewal, extension or modification exceeding the **Maximum Authorized Debt** as defined in the Unison HomeBuyer Agreement shall constitute an actionable **Event of Default** by Owner under the Unison HomeBuyer Agreement.

**3.**     Subordinating Lien Holder hereby agrees that the written approval of Senior Lender to a **Short Sale** of the Property in connection with **Bona Fide Loss Mitigation** by Senior Lender on the First Mortgage shall not constitute an event occasioning Subordinating Lien Holder's right to exercise its option to purchase an undivided percentage interest in the Property under the Unison HomeBuyer Agreement; and further, that upon Lender's written approval of such Short Sale, in the event the "Investor Interest" of Subordinating Lien Holder (as such term is defined in the Unison HomeBuyer Agreement) is calculated as no greater than $0, Subordinating Lien Holder shall timely consent to such Short Sale in writing and release the Junior Lien to facilitate the Short Sale without demand of consideration.

**4.**     Subordinating Lien Holder hereby agrees to the following with respect to any judicial or non-judicial foreclosure action on the Property undertaken by Senior Lender in accordance with applicable law in response to a default by Owner under the First Mortgage ("**Senior Foreclosure**"):

(a)     A Senior Foreclosure shall not constitute a sale of the Property to a **Third Party Buyer**, nor shall a foreclosure sale by Senior Lender constitute an event occasioning Subordination Lien Holder's right to exercise its option to purchase an undivided percentage interest in the Property under the Unison HomeBuyer Agreement.

(b)     Subordinating Lien Holder expressly waives any right of redemption in or to the Property which would accrue to Subordinating Lien Holder under applicable law following the completion of a Senior Foreclosure.

© 2017, **Unison**                                     Form 405 HBA-Multi (3/2/2017)

      (c)    Notice of Senior Foreclosure shall be given by Senior Lender to Subordinating Lien Holder in accordance with customary practice and applicable law.

      (d)    Any and all covenants running with the land pursuant to the terms of the Unison HomeBuyer Agreement shall be automatically extinguished by a completed Senior Foreclosure.

    **5.**    Subordinating Lien Holder hereby agrees that in the event of any judicial or non-judicial foreclosure action on the Property undertaken by Subordinating Lien Holder in accordance with applicable law in response to a default by Owner under the Junior Lien ("**Junior Foreclosure**"), Subordinating Lien Holder shall provide written notice of such Junior Foreclosure to Senior Lender simultaneously and in the same form as such notice is given by Subordinating Lien Holder to Owner.

    **6.**    Subordinating Lien Holder hereby agrees that its lien on, and all other rights and interests in, the title to the Property resulting from the Junior Lien will remain subordinate to any and all rights and interests of Senior Lender in and to, rents and other profits derived from the Property resulting from any lease of the Property approved by Senior Lender in connection with Bona Fide Loss Mitigation by Senior Lender on the First Mortgage, and that no such lease of the Property shall constitute an actionable Event of Default under the Unison HomeBuyer Agreement.

    **7.**    Subordinating Lien Holder hereby unconditionally and automatically subordinates its lien on, and all other rights and interests in, the title to the Property accruing as a result of any **Unpaid Owner Obligations** of Owner (as such term in defined in the Unison HomeBuyer Agreement) in connection with the Junior Lien, to the lien on, and to all other rights and interests in, the title to the Property resulting from the First Mortgage.

    **8.**    Subordinating Lien Holder hereby agrees that if, in connection with Bona Fide Loss Mitigation by Senior Lender on the First Mortgage, Senior Lender has not declared Owner to be in default of the occupancy provisions of the First Mortgage, then Subordinating Lien Holder shall not deem Owner to be in default under the occupancy provisions of the Unison HomeBuyer Agreement.

    **9.**    Subordinating Lien Holder hereby agrees that if, in connection with Bona Fide Loan Modification of the First Mortgage by Senior Lender, Senior Lender extends the term of months of the First Mortgage beyond its amortization period at origination, Subordinating Lien Holder shall automatically extend, and shall execute and record any and all necessary addenda and documentation required to extend, the Term of the Unison HomeBuyer Agreement such that the Unison HomeBuyer Agreement is coterminous with the extended amortization period of the First Mortgage.

    **10.**    Subordinating Lien Holder hereby agrees that any consummation of Subordinating Lien Holder's purchase of an undivided percentage interest in and to the Property under the terms of the Unison HomeBuyer Agreement shall automatically constitute a transfer or sale of the Property occasioning Senior Lender's rights immediately to accelerate the First Mortgage; and that in the event Senior Lender commences a Senior Foreclosure in response to such acceleration, Subordinating Lien Holder expressly waives any and all defenses to such Senior Foreclosure which might accrue to Subordinating Lien Holder as record title owner of a percentage interest in and to the Property, except as to those rights of reinstatement of the First

Mortgage or redemption of the Property which may accrue to Subordinating Lien Holder under applicable law prior to the completion of a foreclosure sale.

**11.** Subordinating Lien Holder shall provide prompt written notice to Senior Lender upon tender of an offer of **Orderly Sale** to Owner under the terms of the Unison HomeBuyer Agreement, and shall not tender such offer unless or until Senior Lender has reasonably exhausted attempts at Bona Fide Loan Modification and Bona Fide Loss Mitigation in connection with Owner's default on the First Mortgage.

**12.** Following the death of the **Last Surviving Owner,** Subordinating Lien Holder shall notify the heir(s) (and/or estate, as appropriate) of the Last Surviving Owner if Subordinating Lien Holder elects to exercise its right to purchase its undivided percentage interest in and to the Property under the Unison HomeBuyer Agreement; provided, however, that Subordinating Lien Holder shall temporarily forbear from exercising its right to purchase its undivided percentage interest in and to the Property in the event a surviving spouse, child, parent, grandparent, grandchild, brother or sister of the Last Surviving Owner ("**Surviving Occupant**") is occupying or intends to occupy the Property as his or her primary residence, and the First Mortgage is either not in default, or Senior Lender is engaged in a Bona Fide Loan Modification in response to a default thereunder, and provided further that such right shall automatically recommence upon the earliest of any of the following:

(a) Senior Lien Holder elects to accelerate, or exercise its due-on-sale rights with respect to, the First Mortgage;

(b) Surviving Occupant ceases to occupy the Property as his or her primary residence;

(c) Surviving Occupant transfers or attempts to further transfer the Property to any new transferee;

(d) an event occurs which would constitute a default under the Unison HomeBuyer Agreement occasioning Subordinating Lien Holder's right to accelerate the Junior Lien, and which Surviving Occupant fails to cure, including, without limitation: the obligation to maintain and repair the property; to pay taxes and insurance thereon when due; to permit Subordinating Lien Holder to appraise and physically inspect the Property; or any other material event of default specified in the Unison HomeBuyer Agreement; or

(e) The death of Surviving Occupant.

The Term of the Unison HomeBuyer Agreement shall automatically extend to permit Subordinating Lien Holder to purchase its undivided percentage interest in and to the Property promptly following any of the events set forth in subsections 12(a) - (e) above.

**13.** This Subordination Agreement shall be binding upon all successors and assigns of Subordinating Lien Holder.  Subordinating Lien Holder shall provide written notice to Senior Lender of any assignment of the Junior Lien and shall require of its assignees in writing that no subsequent assignment of the Junior Lien shall be effective until the delivery of written notice to Senior Lender of such assignment.

© 2017, **Unison**

Form 405 HBA-Multi (3/2/2017)

DOC #2019-0299193  Page 6 of 9

Unison Agreement Corp., a Delaware corporation

By: _____

Name:   Ismael Casas Jr

Title:   Vice President

Date signed: _____  7/3/2019

## ACKNOWLEDGEMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                              )
                                                                          ) ss.
COUNTY OF SAN FRANCISCO              )

On _____, 20____, before me _____,
Notary Public, personally appeared _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

(seal)

© 2017, Unison                                                                        Form 405 HBA-Multi (3/2/2017)

DOC #2019-0299193  Page 7 of 9

## BENEFITED PARTY'S ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California              )
County of San Francisco          )

On __JUL 3 1 2019__ before me, _____Angelica Padilla, a notary public_____ personally appeared _____Ismael Casas, Jr._____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the  person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

ANGELICA PADILLA
COMM. #2272624
Notary Public · California
San Francisco County
My Comm. Expires Dec. 23, 2022

Signature _____          **(Seal)**
        Angelica Padilla

DOC #2019-0299193  Page 8 of 9

## Exhibit A

**Bona Fide Loan Modification**.  A modification to the First Mortgage offered by Senior Lender or its assignee: (a) in accordance with, or which is functionally equivalent to, a loan modification program approved by the government–sponsored enterprises (i.e. Fannie Mae or Freddie Mac), (b) granted in response to Owner's documented and verified inability to make required payments on the First Mortgage; and (c) restricted in its terms such that there is no "cash out" payment to Owner.

**Bona Fide Loss Mitigation**.  A deed-in-lieu of foreclosure, Short Sale, or other action approved and undertaken by Senior Lender in response to: (a) Owner's documented and verified inability to make required payments on the First Mortgage; and (b) based on a documented and verified calculation of the actual market value of the Property by a neutral third party which calculation is free of fraud, bias or undue influence.

**Junior Foreclosure**:  A judicial or non-judicial foreclosure action by Subordinating Lien Holder.

**Junior Lien**.  The Unison HomeBuyer Agreement equity investment contract.

**Last Surviving Owner**.  The last surviving individual person who is both a borrower under the First Mortgage and a signatory homeowner to the Unison HomeBuyer Agreement.

**Maximum Authorized Debt**.  The maximum principal amount of total indebtedness secured by any lien on the Property that Owner is permitted to incur under, and as defined in, the Unison HomeBuyer Agreement.

**Memorandum of Unison HomeBuyer Agreement**.  A contractual component of the Unison HomeBuyer Agreement equity investment contract constituting the Junior Lien on the Property.

**Mortgage**.  A mortgage, deed of trust, trust deed or other security instrument.

**Owner(s)**.  The above-named homeowner(s) who is/are both borrower(s) under the First Mortgage, and signatory homeowner(s) to the Unison HomeBuyer Agreement.

**Senior Foreclosure**.  A judicial or non-judicial foreclosure action by Senior Lender.

**Senior Lender**.  The above-named lender which makes the First Mortgage on the Property, and all of its successors and assigns.

**Short Sale**.  A sale by Owner wherein the Senior Lender on the First Mortgage expressly agrees to accept an amount that is less than the full amount due and payable to release the senior lien.

**Subordinating Lien Holder**.  Unison Agreement Corp. and its successors and assigns.

**Surviving Occupant**.  A surviving spouse, child, parent, grandparent, grandchild, brother or sister of the Last Surviving Owner who elects to occupy the Property as his or her established primary residence.

**Unison HomeBuyer Agreement**.  The equity investment contract which constitutes the Junior Lien on the Property of Subordinate Lien Holder, consisting of the following: (a) the Unison HomeBuyer Option Agreement; (b) the Unison HomeBuyer Covenant Agreement; (c) the Unison HomeBuyer Subordinated Security Instrument; (d) the Memorandum of Unison HomeBuyer Agreement; and (e) all addenda and amendments thereto.

**Unison HomeBuyer Covenant Agreement**.  A contractual component of the Unison HomeBuyer Agreement equity investment contract constituting the Junior Lien on the Property.

**Unison HomeBuyer Option Agreement**.  A contractual component of the Unison HomeBuyer Agreement equity investment contract constituting the Junior Lien on the Property.

**Unison HomeBuyer Subordinated Security Instrument**.  The contractual component of the Unison HomeBuyer Agreement equity investment contract which secures the Junior Lien and which is expressly made subordinate to the First Mortgage both by its terms and under this Subordination Agreement, and which is recorded following the recording of the First Mortgage in the jurisdiction where the Property is located.

Page 6 of 7

© 2017, Unison

Form 405 HBA-Multi (3/2/2017)

## Exhibit B

### LEGAL DESCRIPTION OF PROPERTY

That certain real property situated in the City of Palm Springs, County of Riverside, State of CA, described as follows:

LOT 8 OF BLOCK 7, PALM CANYON MESA TRACT, AS PER MAP RECORDED IN BOOK 12, PAGES 52 THROUGH 56, BOTH INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN:  APN: 513-363-023-2

**[end of legal description]**

© 2017, Unison

Form 405 HBA-Multi (3/2/2017)

# EXHIBIT D

| | |
|---|---|
| **From:** | "Green, Joddi" |
| **Sent:** | Mon, 29 Mar 2021 16:04:05 +0000 |
| **To:** | "'andrea@escrowofthewest.com'" <andrea@escrowofthewest.com> |
| **Cc:** | "Pullum, Eric" <Eric.Pullum@bankofthewest.com>; "Nixon, Kelley" <Kelley.Nixon@bankofthewest.com> |
| **Subject:** | Howlett / 8810555781 / 02-035523-AC |
| **Importance:** | High |

Good Morning Andrea,

This loan is scheduled to fund today but we are needing the following documents before we are able to send the wire:

1. Signed Approved CD
2. Signed Seller CD (if applicable)
3. Signed Note
4. Signed Right of Rescission (if applicable)
5. Signed Security Instrument and Riders
6. Signed Grant Deed or Warranty Deed (if applicable)
7. **Completed USA Patriot Act Disclosure**
8. **Tax Payer Consent Form**

--Please include a copy of your wire instructions for accurate account information.--

**\*\*PLEASE NOTE: Our wire cut off time is 4:00 pm CST\*\***

Thank you,

Joddi Green
Sr CRES Funder, Non-officer
Consumer Real Estate Services (CRES) Closing

_____

Bank of the West
13505 California Street
Omaha, NE  68154
Joddi.green@bankofthewest.com
Office Hours: M-F 8am to 5pm CST

**BANK** OF THE **WEST**
**BNP PARIBAS**

Toni Zaiser | Controls and Governance Mgr, Vice President
T: 402.918.2811
C: 402.968.4491
Toni.Zaiser@Bankofthewest.com

**CRES Mission Statement**
"**CRES provides our clients and communities with the best home lending product values in the market, leading digital capabilities and service that builds lasting relationships.**"

BOTW 0002252

# EXHIBIT E

**From:**           "Andrea Cross" <andrea@escrowofthewest.com>
**Sent:**           Mon, 29 Mar 2021 18:05:21 +0000
**To:**             "Green, Joddi" <Joddi.Green@bankofthewest.com>
**Cc:**             "Pullum, Eric" <Eric.Pullum@bankofthewest.com>; "Nixon, Kelley" <Kelley.Nixon@bankofthewest.com>
**Subject:**        RE: Howlett / 8810555781 / 02-035523-AC
**Attachments:**    CD.pdf, OCT Wire.pdf, HOWLETT.pdf, Grant Deed-Warranty Deed.pdf

**Caution:** This email originated from an external sender. Do not click on links or open attachments unless you were expecting this message from this sender.

HI Joddi, see documents attached to review
*PASSWORD IS PROPERTY ZIPCODE

Thank you!

**WARNING!** WIRE FRAUD ADVISORY
Before sending funds, always call your Escrow team to verify wire information

ESCROW OF THE WEST

**Andrea Cross**
Senior Escrow Officer
_____
9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
**P**. (310) 402-5555 ext. 2071 | **E-Fax**. (310) 402-5556
**Direct**. (310) 402-5470
www.escrowofthewest.com

click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.

Rate Your Experience

BOTW 0002259

**From:** Green, Joddi [mailto:Joddi.Green@bankofthewest.com]
**Sent:** Monday, March 29, 2021 9:24 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Cc:** Pullum, Eric <Eric.Pullum@bankofthewest.com>; Nixon, Kelley <Kelley.Nixon@bankofthewest.com>
**Subject:** RE: Howlett / 8810555781 / 02-035523-AC

*We do not need the originals to fund...if you just email me a copy of the signed docs I can fund off of those.*

*If you are not 100% satisfied with my service or your experience with Bank of the West at any time, please let me or my manager know right away.*
*Our contact information is below. Thank you for choosing Bank of the West.*

If Your Dreams Don't Scare You, They Are Too Small
–Richard Branson

## Joddi Green
CRES Funding Specialist, Non-Officer
Consumer Real Estate Services (CRES) Closing

Bank of the West
13505 California Street
Omaha, NE  68154
Joddi.green@bankofthewest.com

**BANK** OF THE **WEST**
**BNP PARIBAS**

Toni Zaiser | Controls and Governance Mgr, Vice President
T: 402.918.2811
C: 402.968.4491
Toni.Zaiser@Bankofthewest.com

**CRES Mission Statement**
**"CRES provides our clients and communities with the best home lending product values in the market, leading digital capabilities and service that builds lasting relationships."**

**From:** Andrea Cross [mailto:andrea@escrowofthewest.com]
**Sent:** Monday, March 29, 2021 11:16 AM
**To:** Green, Joddi <Joddi.Green@bankofthewest.com>
**Cc:** Pullum, Eric <Eric.Pullum@bankofthewest.com>; Nixon, Kelley <Kelley.Nixon@bankofthewest.com>
**Subject:** RE: Howlett / 8810555781 / 02-035523-AC

BOTW-0002260

**Caution:** This email originated from an external sender. Do not click on links or open attachments unless you were expecting this message from this sender.

Good Morning,
We will not receive originals until today (FedEx delivery) – do you require originals to fund? If so, you will not receive until tomorrow.

**WARNING!** WIRE FRAUD ADVISORY
Before sending funds, always call your Escrow team to verify wire information

**ESCROW OF THE WEST**

**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
**P.** (310) 402-5555 ext. 2071 | **E-Fax.** (310) 402-5556
**Direct.** (310) 402-5470
www.escrowofthewest.com

click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.

Rate Your Experience

**From:** Green, Joddi [mailto:Joddi.Green@bankofthewest.com]
**Sent:** Monday, March 29, 2021 9:04 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Cc:** Pullum, Eric <Eric.Pullum@bankofthewest.com>; Nixon, Kelley <Kelley.Nixon@bankofthewest.com>
**Subject:** Howlett / 8810555781 / 02-035523-AC
**Importance:** High

Good Morning Andrea,

This loan is scheduled to fund today but we are needing the following documents before we are able to send the wire:

1.Signed Approved CD
2.Signed Seller CD (if applicable)
3.Signed Note
4.Signed Right of Rescission (if applicable)
5.Signed Security Instrument and Riders
6.Signed Grant Deed or Warranty Deed (if applicable)
**7.Completed USA Patriot Act Disclosure**
**8.Tax Payer Consent Form**

--Please include a copy of your wire instructions for accurate account information.--

**\*\*PLEASE NOTE: Our wire cut off time is 4:00 pm CST\*\***

Thank you,

Joddi Green
Sr CRES Funder, Non-officer
Consumer Real Estate Services (CRES) Closing

Bank of the West
13505 California Street
Omaha, NE  68154
Joddi.green@bankofthewest.com
Office Hours: M-F 8am to 5pm CST

**BANK** OF THE **WEST**
**BNP PARIBAS**

Toni Zaiser | Controls and Governance Mgr, Vice President
T: 402.918.2811
C: 402.968.4491
Toni.Zaiser@Bankofthewest.com

**CRES Mission Statement**
**"CRES provides our clients and communities with the best home lending product values in the market, leading digital capabilities and service that builds lasting relationships."**

---

**IMPORTANT NOTICE: This message is intended only for the addressee and may contain confidential, privileged information. If you are not the intended recipient, you may not use, copy or disclose any information contained in the message. If you have received this message in error, please notify the sender by reply e-mail and delete the message.**

---

BOTW-0002262

**IMPORTANT NOTICE: This message is intended only for the addressee and may contain confidential, privileged information. If you are not the intended recipient, you may not use, copy or disclose any information contained in the message. If you have received this message in error, please notify the sender by reply e-mail and delete the message.**



# EXHIBIT F

| | |
|---|---|
| **From:** | "Andrea Cross" <andrea@escrowofthewest.com> |
| **Sent:** | Mon, 29 Mar 2021 18:05:21 +0000 |
| **To:** | "Green, Joddi" <Joddi.Green@bankofthewest.com> |
| **Cc:** | "Pullum, Eric" <Eric.Pullum@bankofthewest.com>; "Nixon, Kelley" <Kelley.Nixon@bankofthewest.com> |
| **Subject:** | RE: Howlett / 8810555781 / 02-035523-AC |
| **Attachments:** | CD.pdf, OCT Wire.pdf, HOWLETT.pdf, Grant Deed-Warranty Deed.pdf |

**Caution:** This email originated from an external sender. Do not click on links or open attachments unless you were expecting this message from this sender.

HI Joddi, see documents attached to review
*PASSWORD IS PROPERTY ZIPCODE

Thank you!

**WARNING!** WIRE FRAUD ADVISORY
Before sending funds, always call your Escrow team to verify wire information

**ESCROW OF THE WEST**

**Andrea Cross**
Senior Escrow Officer
_____
9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
**P**. (310) 402-5555 ext. 2071 | **E-Fax**. (310) 402-5556
**Direct**. (310) 402-5470
www.escrowofthewest.com

click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.

Rate Your Experience

# EXHIBIT G

# Closing Disclosure

## Closing Information

| | |
|---|---|
| Date Issued | 3/23/2021 |
| Closing Date | 3/24/2021 |
| Disbursement Date | 3/26/2021 |
| Settlement Agent | Escrow of the West |
| File # | 02-035523-AC |
| Property | 291 W. Overlook Road |
| | Palm Springs, CA 92264 |
| Sale Price | $1,355,000 |

## Transaction Information

| | |
|---|---|
| Borrower | Scott Howlett |
| Seller | Artur Elizarov |

## Summaries of Transactions

### SELLER'S TRANSACTION

| Due to Seller at Closing | | | $ 1,358,071.46 |
|---|---|---|---|
| 01. Sale Price of Property | | | $1,355,000.00 |
| 02. Sale Price of Any Personal Property Included in Sale | | | |
| 03. | | | |
| 04. | | | |
| 05. | | | |
| 06. | | | |
| 07. | | | |
| 08. | | | |
| Adjustments for Items Paid by Seller in Advance | | | |
| 09. City/Town Taxes | | to | |
| 10. County Taxes | 3/26/21 | to 7/1/21 | $3,071.46 |
| 11. Assessments | | to | |
| 12. | | | |
| 13. | | | |
| 14. | | | |
| 15. | | | |
| 16. | | | |

| Due from Seller at Closing | | $ 573,597.60 |
|---|---|---|
| 01. Excess Deposit | | |
| 02. Closing Cost Paid at Closing (J) | | $ 82,597.60 |
| 03. Existing Loan(s) Assumed or Taken Subject to | | |
| 04. Payoff of First Mortgage Loan | | |
| 05. Payoff of Second Mortgage Loan to Unison Milgard Holdings LLC | | $491,000.00 |
| 06. | | |
| 07. | | |
| 08. Seller Credit | | |
| 09. | | |
| 10. | | |
| 11. | | |
| 12. | | |
| 13. | | |
| Adjustments for Items Unpaid by Seller | | |
| 14. City/Town Taxes | to | |
| 15. County Taxes | to | |
| 16. Assessments | to | |
| 17. | | |
| 18. | | |
| 19. | | |

### CALCULATION

| Total Due to Seller at Closing | $ 1,358,071.46 |
|---|---|
| Total Due from Seller at Closing | $ -573,597.60 |
| Cash [ ] From [ X ] To Seller | $ 784,473.86 |

## Contact Information

| REAL ESTATE BROKER (B) | |
|---|---|
| Name | Compass |
| Address | 2165 San Diego Ave |
| | San Diego, CA 92110 |
| CA License ID | 01527365 |
| Contact | Maria Noel Krajco |
| Contact CA License ID | 02092247 |
| Email | mariasellscali@gmail.com |
| Phone | (714) 580-9103 |
| REAL ESTATE BROKER (S) | |
| Name | Keller Williams |
| Address | 70005 Mirage Cove Drive |
| | Rancho Mirage, CA 92270 |
| CA License ID | 01417409 |
| Contact | Will Cook |
| Contact CA License ID | 01879277 |
| Email | will@willcookrealestate.com |
| Phone | (760) 774-3066 |
| SETTLEMENT AGENT | |
| Name | Escrow of the West |
| Address | 9440 Santa Monica Blvd., #310 |
| | Beverly Hills, CA 90210 |
| CA License ID | 963-2166 |
| Contact | Andrea Cross |
| Contact CA License ID | |
| Email | andrea@escrowofthewest.com |
| Phone | (310) 402-5555 |

**?** **Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0241

Closing Cost Details

| Loan Costs | | Seller -Paid | |
|---|---|---|---|
| | | At Closing | Before Closing |
| **A. Origination Charges** | | | |
| 01    % of Loan Amount (Points) | | | |
| 02 | | | |
| 03 | | | |
| 04 | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| 08 | | | |
| **B. Services Borrower Did Not Shop For** | | | |
| 01 | | | |
| 02 | | | |
| 03 | | | |
| 04 | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| **C. Services Borrower Did Shop For** | | | |
| 01    Termite Report/Work | to Rudy's Termite and Pest Control | $95.00 | |
| 02    Title - Admin Fee | to Escrow of the West | $250.00 | |
| 03    Title - Archive Fee | to Escrow of the West | $50.00 | |
| 04    Title - Escrow Fee | to Escrow of the West | $3,060.00 | |
| 05    Title - Messenger/Handling Fee | to Escrow of the West | $100.00 | |
| 06    Title - Overnight Fee | to Escrow of the West | $75.00 | |
| 07    Title - Reconveyance Fee | to Orange Coast TItle | $10.00 | |
| 08    Title - Sub Escrow Fee | to Orange Coast TItle | $62.50 | |
| 09    Title - Wire Fee | to Escrow of the West | $25.00 | |

| Other Costs | | | |
|---|---|---|---|
| **E. Taxes and Other Government Fees** | | | |
| 01    Recording Fees | Deed: $50.00  Mortgage: | $50.00 | |
| 02    Transfer Tax - County | to Riverside County | $1,490.50 | |
| **F. Prepaids** | | | |
| 01    Homeowner's Insurance Premium (    mo.) to | | | |
| 02    Mortgage Insurance Premium (    mo.) | | | |
| 03    Prepaid Interest (    per day from    to    ) | | | |
| 04    Property Taxes  (2nd Install) to Riverside | | $5,819.60 | |
| 05 | | | |
| **G. Initial Escrow Payment at Closing** | | | |
| 01    Homeowner's Insurance | per month for    mo. | | |
| 02    Mortgage Insurance | per month for    mo. | | |
| 03    Property Taxes | per month for    mo. | | |
| 04 | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| 08    Aggregate Adjustment | | | |
| **H. Other** | | | |
| 01    Home Warranty | to Old Republic Home Protection Inc. | $900.00 | |
| 02    Natural Hazard Disclosure Report | to Property ID | $99.00 | |
| 03    Real Estate Commission | to Compass | $33,875.00 | |
| 04    Real Estate Commission | to Keller Williams | $33,875.00 | |
| 05    Title - Owner's Title Insurance (optional) | to Orange Coast TItle | $2,761.00 | |
| 06 | | | |
| 07 | | | |
| 08 | | | |
| 09 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| **J. TOTAL CLOSING COSTS** | | $  82,597.60 | |

CLOSING DISCLOSURE            **ESTIMATED**                    PAGE 2 of 2
Printed: March 23, 2021   06:14pm

| PAYOFF BREAKDOWN(S) | Borrower Debit | Borrower Credit | Seller Debit | Seller Credit |
|---|---|---|---|---|
| Payoff of Second Mortgage Loan to Unison Milgard Holdings LLC $491,000.00 | | | | |
| Principal Balance | | | $491,000.00 | |

**Confirm Receipt**

By signing, you are only confirming that you have received this form.

DocuSigned by:

*Artur Elizarov*

997384F2576540C...

Artur Elizarov

3/24/2021

Date

# EXHIBIT 22

# BANK OF THE WEST'S RESPONSES TO GOLDWATER BANK, N.A.'S REQUESTS FOR ADMISSIONS, SET ONE

HALL GRIFFIN LLP
HOWARD D. HALL, State Bar No. 145024
  *hdhall@hallgriffin.com*
JEREMY T. KATZ, State Bar No. 267361
  *jkatz@hallgriffin.com*
KASANDRA C. GOLDBERG, State Bar No. 345364
  *kgoldberg@hallgriffin.com*
1851 East First Street, 10th Floor
Santa Ana, California 92705-4052
Telephone: (714) 918-7000
Facsimile: (714) 918-6996

Attorneys for Defendant and Cross-Complainant SCOTT HOWLETT;
Defendant BMO HARRIS BANK N.A.,
SUCCESSOR BY MERGER TO BANK OF THE WEST

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

| | |
|---|---|
| Goldwater Bank, N.A. | CASE NO. 21-cv-00616-JWH-SP |
| Plaintiff, | JUDGE:   Hon. John W. Holcomb<br>CTRM.:   9D |
| vs. | **DEFENDANT BMO HARRIS BANK N.A., SUCCESSOR BY MERGER TO BANK OF THE WEST'S RESPONSES TO PLAINTIFF GOLDWATER BANK, N.A.'S FIRST SET REQUESTS FOR ADMISSION** |
| ARTUR ELIZAROV; UNISON AGREEMENT CORP.; SCOTT HOWLETT; BANK OF THE WEST; and ILYA ALEKSEYEFF, | |
| Defendants. | |
| AND RELATED CROSS-ACTIONS | TRIAL DATE:   November 27, 2023 |

1

PROPOUNDING PARTY:  Plaintiff GOLDWATER BANK, N.A.

RESPONDING PARTY:    Defendant BMO HARRIS BANK N.A., SUCCESSOR BY MERGER TO BANK OF THE WEST

SET NO.:                       One

Pursuant to Federal Rules of Civil Procedure, Rule 36, Defendant BMO HARRIS BANK N.A., SUCCESSOR BY MERGER TO BANK OF THE WEST ("Responding Party") hereby submits these objections and responses to the Plaintiff GOLDWATER BANK, N.A.'s ("Propounding Party") first set of Requests for Admission.

## PRELIMINARY STATEMENT

Responding Party has not completed its investigation of the facts relating to this case, its discovery or its preparation for trial. All responses and objections contained herein are based only upon information that is presently available to and specifically known by Responding Party. It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts and add meaning to known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in and variations from the responses set forth herein. The following objections and responses are made without prejudice to Responding Party's right to produce at trial, or otherwise, evidence regarding any subsequently discovered information. Responding Party accordingly reserves the right to modify and amend any and all responses herein as research is completed and contentions are made.

## RESPONSES TO REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

Admit that, prior to March 29, 2021, You received a copy of a document entitled "Preliminary Title Report" for the Subject Property.

### RESPONSE TO REQUEST FOR ADMISSION NO. 1:

Admit.

2

HALL GRIFFIN

**REQUEST FOR ADMISSION NO. 2:**

Admit that **Exhibit A**, attached to these Requests, is a true and accurate copy of the Preliminary Title Report that You received prior to March 29, 2021.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Deny.  Exhibit A appears to be a partial *excerpt* from a Preliminary Title Report, the full version of which was produced by Responding Party as BOTW1662–BOTW1682.

**REQUEST FOR ADMISSION NO. 3:**

Admit that, prior to March 29, 2021, You received a copy of a document entitled "Amended Preliminary Report" for the Subject Property

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Deny.

**REQUEST FOR ADMISSION NO. 4:**

Admit that **Exhibit B**, attached to these Requests, is a true and accurate copy of the Amended Preliminary Title Report for the Subject Property that You had in your possession prior to March 29, 2021.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

This request is objectionably compound.

Responding Party admits that Exhibit B appears to be a document styled as an "Amended Preliminary Report" relating to the Subject Property known as 291 Overlook Road in Palm Springs, CA.

Responding Party denies that Exhibit B was in Responding Party's possession prior to March 29, 2021.

**REQUEST FOR ADMISSION NO. 5:**

Admit that, prior to March 29, 2021, You had in Your possession a copy of a document entitled "Unison Homebuyer Subordination Agreement" for the Subject Property.

BANK OF THE WEST'S RESPONSES TO GOLDWATER'S RFAS (SET ONE)

4891-3487-3170.3

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0248

HALL GRIFFIN

1   **RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

2       Deny.

3   **REQUEST FOR ADMISSION NO. 6:**

4       Admit that **Exhibit C**, attached to these Requests, is a true and accurate copy

5   of the Unison Homebuyer Subordination Agreement that was in your possession

6   prior to March 29, 2021.

7   **RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

8       Deny.

9       Exhibit C is a document styled "Unison Homebuyer *Uniform* Subordination

10  Agreement" (emphasis added).

11      Responding Party did not have a copy of Exhibit C in Responding Party's

12  possession prior to March 29, 2021.

13  **REQUEST FOR ADMISSION NO. 7:**

14      Admit that **Exhibit D**, attached to these Requests, is a true and accurate copy

15  of certain email correspondence sent by You on March 29, 2021.

16  **RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

17      Admit.

18  **REQUEST FOR ADMISSION NO. 8:**

19      Admit that **Exhibit E**, attached to these Requests, is a true and accurate copy

20  of certain email correspondence between You and Escrow of the West on March 29,

21  2021.

22  **RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

23      Admit.

24  **REQUEST FOR ADMISSION NO. 9:**

25      Admit that **Exhibit F**, attached to these Requests, is a true and accurate copy

26  of certain email correspondence received by You from Escrow of the West on

27  March 29, 2021

28

HALL GRIFFIN

4

4891-3487-3170.3

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0249

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Responding Party objections to this request as being cumulative and duplicative of the information requested in Request for Admission No. 8, in that Exhibit F is identical to the first page of Exhibit E  (both are Bates-numbered BOTW002259.)

Subject to and without waiving the foregoing, Responding Party responds as follows:

Admit.

**REQUEST FOR ADMISSION NO. 10:**

Admit that **Exhibit G**, attached to these Requests, is a true and accurate copy of one of the attachments to **Exhibit F**, and received by You from Escrow of the West on March 29, 2021

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

This request is objectionably compound.

Exhibit G is a "Closing Disclosure" for the subject transaction that purports to be dated "3/23/2021," and "Printed [on] March 23, 2021 [at] 6:14pm," and executed on "3/24/2021," with an anticipated "Closing Date [of] 3/24/2021."

Prior to March 29, 2021, Responding Party had already received from Escrow of the West a "Master Estimated Settlement Statement dated "March 25, 2021," and "printed on March 25, 2021 at 1:16 pm.," with an anticipated "Closing Date [of] March 30, 2021" (BOTW002331–BOTW002332).  So, by the time Responding Party first received Exhibit G on March 29, 2021, the information in Exhibit G was already stale, and had already been replaced/superseded.

Responding Party admits that email dated March 29, 2021 from Escrow of the West in Exhibit F is the method by which Responding Party first received the already stale, out-of-date, and superseded Exhibit G.

**REQUEST FOR ADMISSION NO. 11:**

Admit that **Exhibit G**, attached to these requests, was received by You from

5

HALL GRIFFIN

1  Escrow of the West prior to Your funding of the loan for Defendant Howlett for the

2  Subject Property.

3  **RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

4      This request is objectionably compound.

5      Exhibit G is a "Closing Disclosure" for the subject transaction that purports to

6  be dated "3/23/2021," and "Printed [on] March 23, 2021 [at] 6:14pm," and executed

7  on "3/24/2021," with an anticipated "Closing Date [of] 3/24/2021."

8      Prior to March 29, 2021, Responding Party had already received from Escrow

9  of the West a "Master Estimated Settlement Statement dated "March 25, 2021," and

10  "printed on March 25, 2021 at 1:16 pm.," with an anticipated "Closing Date [of]

11  March 30, 2021" (BOTW002331–BOTW002332). So, by the time Responding

12  Party first received Exhibit G on March 29, 2021, the information in Exhibit G was

13  already stale, and had already been replaced/superseded. Responding Party admits

14  that email dated March 29, 2021 from Escrow of the West in Exhibit F is the

15  method by which Responding Party first received the already stale, out-of-date, and

16  superseded Exhibit G.  Responding Party further admits that it funded the loan

17  thereafter.

18  **REQUEST FOR ADMISSION NO. 12:**

19      Admit that **Exhibit G**, attached to these requests, was received by You from

20  Escrow of the West prior to the closing of the sale of the Subject Property to

21  Defendant Howlett.

22  **RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

23      This request is objectionably compound.

24      Exhibit G is a "Closing Disclosure" for the subject transaction that purports to

25  be dated "3/23/2021," and "Printed [on] March 23, 2021 [at] 6:14pm," and executed

26  on "3/24/2021," with an anticipated "Closing Date [of] 3/24/2021."

27      Prior to March 29, 2021, Responding Party had already received from Escrow

28  of the West a "Master Estimated Settlement Statement dated "March 25, 2021," and

6

HALL GRIFFIN

1   "printed on March 25, 2021 at 1:16 pm.," with an anticipated "Closing Date [of]

2   March 30, 2021" (BOTW002331–BOTW002332).  So, by the time Responding

3   Party first received Exhibit G on March 29, 2021, the information in Exhibit G was

4   already stale, and had already been replaced/superseded.

5       Responding Party admits that email dated March 29, 2021 from Escrow of the

6   West in Exhibit F is the method by which Responding Party first received the

7   already stale, out-of-date, and superseded Exhibit G.  Responding Party further

8   admits that the sale of the Subject Property closed thereafter.

9

10  DATED:  March 9, 2023                   HALL GRIFFIN LLP

11

12

13                                          By:

14                                              Howard D. Hall

15                                              Jeremy T. Katz

16                                              Kasandra C. Goldberg

17                                          Attorneys for Defendant and Cross-
                                            Complainant SCOTT HOWLETT; Defendant
18                                          BMO HARRIS BANK N.A., SUCCESSOR BY
                                            MERGER TO BANK OF THE WEST

19

20

21

22

23

24

25

26

27

28

4891-3487-3170.3

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0252

1

## VERIFICATION

2    I have read the foregoing **DEFENDANT BMO HARRIS BANK N.A.,**
3    **SUCCESSOR BY MERGER TO BANK OF THE WEST'S RESPONSES TO**
     **PLAINTIFF GOLDWATER BANK, N.A.'S FIRST SET REQUESTS FOR**
4    **ADMISSION.** and know its contents.

5    I am an authorized agent for BMO Harris Bank, N.A., successor by merger
6    to BANK OF THE WEST, a party to this action, and am authorized to make this
     verification for and on its behalf.   I am familiar with how BMO Harris Bank N.A.,
7    successor by merger to Bank of the West, regularly maintains its business records.
8    I have reviewed those business records. The matters stated in the foregoing
     document are true based on my review of such business records, except as to those
9    matters which are stated on information and belief, and as to those matters I believe
10   them to be true.

11   I declare under penalty of perjury under the laws of the State of Nebraska
12   that the foregoing is true and correct.

13   Executed on ___March 8th, 2023___, at ___Omaha, NE___.

14   _____          _____
         Doris Lawson
15   Print Name of Signatory              Signature

16

17

18

19

20

21

22

23

24

25

26

27

28

8
BANK OF THE WEST'S RESPONSES TO GOLDWATER'S RFAS (SET ONE)
4891-3487-3170.3

1

## PROOF OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 1851 East First Street, 10th Floor, Santa Ana, CA 92705-4052.

On March 9, 2023, I served the within document(s) described as**:**

**DEFENDANT BMO HARRIS BANK N.A., SUCCESSOR BY MERGER TO BANK OF THE WEST'S RESPONSES TO PLAINTIFF GOLDWATER BANK, N.A.'S FIRST SET REQUESTS FOR ADMISSION**

on each interested party in this action, as stated below:

### SEE ATTACHED SERVICE LIST

**BY E-MAIL:**  I caused a true copy of the document(s) to be sent to the persons at the corresponding electronic address as indicated above on the above-mentioned date.  My electronic notification address is cbrown@hallgriffin.com.  I am readily familiar with this firm's Microsoft Outlook electronic mail system and did not receive any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 9, 2023, at Santa Ana, California.

Cyndee Brown
_____
Cyndee Brown

HALL GRIFFIN

**SERVICE LIST**
*Goldwater Bank, N.A. v. Artur Elizarov, et al.*
**Case No. 5:21-cv-00616-JWH-SP**

1
2
3

Sean C. Wagner, Esq.
Derek M. Bast, Esq.
Abbey M. Krysak, Esq.
Wagner Hicks PLLC
831 E. Morehead St., Suite 860
Charlotte, NC 28202
(704) 705-7538; Fax: (704) 705-7787
sean.wagner@wagnerhicks.law
derek.bast@wagnerhicks.law
abbey.krysak@wagnerhicks.law
**Pro Hac Vice Attorneys for Plaintiff
and Cross-Defendant Goldwater
Bank. N.A.**

John Forest Hilbert, Esq.
Joseph A. LeVota, Esq.
Hilbert & Satterly LLP
409 Camino Del Rio South, Suite 104
San Diego, CA 92108
(619) 795-0300; Fax: (619) 501-6855
jhilbert@hscallaw.com
jlevota@hscallaw.com
trohner@hscallaw.com
sreyes@hscallaw.com
**Attorneys for Plaintiff and Cross-
Defendant Goldwater Bank, N.A.**

Marie B. Maurice, Esq.
Marina Samson, Esq.
Ivie, McNeill, Wyatt, Purcell & Diggs
444 S. Flower St., Suite 1800
Los Angeles, CA 90071
(213) 489-0028; Fax: (213) 489-0552
mmaurice@imwlaw.com
msamson@imwlaw.com
**Attorneys for Plaintiff and Cross-
Defendant Goldwater Bank. N.A.**

Ilya Alekseyeff, Esq.
LOIA, Inc. (APLC)
727 W. 7th St., PH 1-13
Los Angeles, CA 90017
(213) 537-4592
ilya@loia.legal
**Attorneys for Defendant and Cross-
Defendant Artur Elizarov, and
Defendant Ilya Alekseyeff (in Pro Per)**

Denis Shmidt, Esq.
Nabil A. Bisharat, Esq.
Orsus Gate LLP
16 N. Marengo Ave., Suite 316
Pasadena, CA 91101
(213) 373-4357
dshmidt@orsusgate.com
nbisharat@orsusgate.com
**Attorneys for Defendant Unison
Agreement Corp.**

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HALL GRIFFIN

BANK OF THE WEST'S RESPONSES TO GOLDWATER'S RFAS (SET ONE)

4891-3487-3170.3

# EXHIBIT 23

## CLOSING DISCLOSURE PROVIDED TO
## BANK OF THE WEST PRIOR TO CLOSE
## ESCROW
## (CROSS DEPO. EX. 33)

# Closing Disclosure

| Closing Information | | Transaction Information | |
|---|---|---|---|
| Date Issued | 3/23/2021 | Borrower | Scott Howlett |
| Closing Date | 3/24/2021 | | |
| Disbursement Date | 3/26/2021 | | |
| Settlement Agent | Escrow of the West | Seller | Artur Blizarov |
| File # | 02-035523-AC | | |
| Property | 291 W. Overlook Road | | |
| | Palm Springs, CA 92264 | | |
| Sale Price | $1,355,000 | | |

## Summaries of Transactions

### SELLER'S TRANSACTION

| Due to Seller at Closing | | $ 1,358,071.46 |
|---|---|---|
| 01. | Sale Price of Property | $1,355,000.00 |
| 02. | Sale Price of Any Personal Property Included in Sale | |
| 03. | | |
| 04. | | |
| 05. | | |
| 06. | | |
| 07. | | |
| 08. | | |
| **Adjustments for Items Paid by Seller in Advance** | | |
| 09. | City/Town Taxes to | |
| 10. | County Taxes 3/26/21 to 7/1/21 | $3,071.46 |
| 11. | Assessments to | |
| 12. | | |
| 13. | | |
| 14. | | |
| 15. | | |
| 16. | | |

| Due from Seller at Closing | | $ 573,597.60 |
|---|---|---|
| 01. | Excess Deposit | |
| 02. | Closing Cost Paid at Closing (J) | $ 82,597.60 |
| 03. | Existing Loan(s) Assumed or Taken Subject to | |
| 04. | Payoff of First Mortgage Loan | |
| 05. | Payoff of Second Mortgage Loan to Unison Milgard Holdings LLC | $491,000.00 |
| 06. | | |
| 07. | | |
| 08. | Seller Credit | |
| 09. | | |
| 10. | | |
| 11. | | |
| 12. | | |
| 13. | | |
| **Adjustments for Items Unpaid by Seller** | | |
| 14. | City/Town Taxes to | |
| 15. | County Taxes to | |
| 16. | Assessments to | |
| 17. | | |
| 18. | | |
| 19. | | |

### CALCULATION

| Total Due to Seller at Closing | $ 1,358,071.46 |
|---|---|
| Total Due from Seller at Closing | $ -573,597.60 |
| Cash [   ] From  [ X ] To Seller | $ 784,473.86 |

## Contact Information

| REAL ESTATE BROKER (B) | |
|---|---|
| Name | Compass |
| Address | 2165 San Diego Ave |
| | San Diego, CA 92110 |
| CA License ID | 01527365 |
| Contact | Maria Noel Krajco |
| Contact CA License ID | 02092247 |
| Email | mariasellscali@gmail.com |
| Phone | (714) 580-9103 |

| REAL ESTATE BROKER (S) | |
|---|---|
| Name | Keller Williams |
| Address | 70005 Mirage Cove Drive |
| | Rancho Mirage, CA 92270 |
| CA License ID | 01417409 |
| Contact | Will Cook |
| Contact CA License ID | 01879277 |
| Email | will@willcookrealestate.com |
| Phone | (760) 774-3066 |

| SETTLEMENT AGENT | |
|---|---|
| Name | Escrow of the West |
| Address | 9440 Santa Monica Blvd., #310 |
| | Beverly Hills, CA 90210 |
| CA License ID | 963-2166 |
| Contact | Andrea Cross |
| Contact CA License ID | |
| Email | andrea@escrowofthewest.com |
| Phone | (310) 402-5555 |

**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

EXHIBIT
33

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0257

## Closing Cost Details

| Loan Costs | | Seller -Paid | |
|---|---|---|---|
| | | At Closing | Before Closing |
| **A. Origination Charges** | | | |
| 01    % of Loan Amount (Points) | | | |
| 02 | | | |
| 03 | | | |
| 04 | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| 08 | | | |
| **B. Services Borrower Did Not Shop For** | | | |
| 01 | | | |
| 02 | | | |
| 03 | | | |
| 04 | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| **C. Services Borrower Did Shop For** | | | |
| 01   Termite Report/Work | to Rudy's Termite and Pest Control | $95.00 | |
| 02   Title - Admin Fee | to Escrow of the West | $250.00 | |
| 03   Title - Archive Fee | to Escrow of the West | $50.00 | |
| 04   Title - Escrow Fee | to Escrow of the West | $3,060.00 | |
| 05   Title - Messenger/Handling Fee | to Escrow of the West | $100.00 | |
| 06   Title - Overnight Fee | to Escrow of the West | $75.00 | |
| 07   Title - Reconveyance Fee | to Orange Coast Title | $10.00 | |
| 08   Title - Sub Escrow Fee | to Orange Coast Title | $62.50 | |
| 09   Title - Wire Fee | to Escrow of the West | $25.00 | |

| Other Costs | | | |
|---|---|---|---|
| **E. Taxes and Other Government Fees** | | | |
| 01   Recording Fees | Deed: $50.00  Mortgage: | $50.00 | |
| 02   Transfer Tax - County | to Riverside County | $1,490.50 | |
| **F. Prepaids** | | | |
| 01   Homeowner's Insurance Premium (    mo.) to | | | |
| 02   Mortgage Insurance Premium (    mo.) | | | |
| 03   Prepaid Interest (    per day from    to    ) | | | |
| 04   Property Taxes (2nd Install) to Riverside | | $5,819.60 | |
| 05 | | | |
| **G. Initial Escrow Payment at Closing** | | | |
| 01   Homeowner's Insurance | per month for    mo. | | |
| 02   Mortgage Insurance | per month for    mo. | | |
| 03   Property Taxes | per month for    mo. | | |
| 04 | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| 08   Aggregate Adjustment | | | |
| **H. Other** | | | |
| 01   Home Warranty | to Old Republic Home Protection Inc. | $900.00 | |
| 02   Natural Hazard Disclosure Report | to Property ID | $99.00 | |
| 03   Real Estate Commission | to Compass | $33,875.00 | |
| 04   Real Estate Commission | to Keller Williams | $33,875.00 | |
| 05   Title - Owner's Title Insurance (optional) | to Orange Coast Title | $2,761.00 | |
| 06 | | | |
| 07 | | | |
| 08 | | | |
| 09 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| **J. TOTAL CLOSING COSTS** | | $  82,597.60 | |

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0258

| **PAYOFF BREAKDOWN(S)** | **Borrower Debit** | **Borrower Credit** | **Seller Debit** | **Seller Credit** |
|---|---|---|---|---|
| Payoff of Second Mortgage Loan to Unison Milgard Holdings LLC $491,000.00 | | | | |
| Principal Balance | | | $491,000.00 | |

**Confirm Receipt**

By signing, you are only confirming that you have received this form.

DocuSigned by:

*Artur Elizarov*

997384F2578540C...

Artur Elizarov

3/24/2021

Date

# EXHIBIT 24

# EXCERPTS FROM THE TRANSCRIPT OF THE DEPOSITION OF ANDREA CROSS

```
 1                  UNITED STATES DISTRICT COURT

 2          CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

 3                            - - -

 4      GOLDWATER BANK, N.A.,        )
                                     )
 5              Plaintiff,           )
                                     )
 6              vs.                  ) No. 5:21-cv-00616-JWH-SP
                                     )
 7      ARTUR ELIZAROV; UNISON       )
        AGREEMENT CORP.; SCOTT       )
 8      HOWLETT; BANK OF THE WEST;   )
        and ILYA ALEKSEYEFF,         )
 9                                   )
                Defendants.          )
10                                   )
        AND RELATED CROSS-ACTIONS.

11

12

13

14

15                      DEPOSITION OF

16                      ANDREA CROSS

17              Wednesday, June 29, 2022

18

19

20

21

22      Reported By:

23      MICHELLE K. BAILEY
        RPR, CSR No. 10713

24      Job No. 5294007

25      Pages 1 - 172
```

Page 1

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0262

```
 1                   UNITED STATES DISTRICT COURT
 2          CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION
 3                            - - -
 4    GOLDWATER BANK, N.A.,          )
                                     )
 5              Plaintiff,           )
                                     )
 6              vs.                  ) No. 5:21-cv-00616-JWH-SP
                                     )
 7    ARTUR ELIZAROV; UNISON         )
      AGREEMENT CORP.; SCOTT         )
 8    HOWLETT; BANK OF THE WEST;     )
      and ILYA ALEKSEYEFF,           )
 9                                   )
                Defendants.          )
10                                   )
      AND RELATED CROSS-ACTIONS.
11
12
13
14
15          Deposition of ANDREA CROSS, taken on behalf of
16    the Defendants, beginning at 10:03 a.m., and ending at
17    4:05 p.m., on Wednesday, June 29, 2022, before MICHELLE
18    K. BAILEY, RPR, CSR No. 10713.
19
20
21
22
23
24
25
                                                    Page  2
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0263

```
 1    APPEARANCES:
 2
      For the Plaintiff Goldwater Bank, N.A.:
 3
          HILBERT & SATTERLY LLP
 4        BY:  JOSEPH A. LEVOTA, ESQ.
          409 Camino Del Rio South
 5        Suite 104
          San Diego, California  92108
 6        619.795.0300
          jlevota@hscallaw.com
 7
          -and-
 8
          WAGNER HICKS, PLLC
 9        BY:  DEREK M. BAST, ESQ.
          831 East Morehead Street
10        Suite 860
          Charlotte, North Carolina  28202
11        704.705.7538
          derek.bast@wagnerhicks.law
12
13    For the Defendants Scott Howlett and Bank of the West:
14        HALL GRIFFIN
          BY:  RYAN C. THOMASON, ESQ.
15            JEREMY KATZ, ESQ.
          1851 East First Street
16        10th Floor
          Santa Ana, California  92705
17        714.918.7000
          rthomason@hallgriffin.com
18
19    For the Bank of the West:
20        KRISHEL LAW FIRM
          BY:  DANIEL KRISHEL, ESQ.
21        4500 Park Granada
          Suite 202
22        Calabasas, California  91302
          818.883.8759
23
24
25
```

Page  3

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0264

```
 1    APPEARANCES (continued):
 2

      For the Defendant Artur Elizarov
 3    And Ilya Alekseyeff (in pro per):
 4        LOIA, INC. (APLC)
          BY:  ILYA ALEKSEYEFF, ESQ.
 5        8721 Santa Monica Boulevard
          Suite 119
 6        West Hollywood, California  90069
          213.537.4592
 7        ilya@loia.legal
 8

      For the Defendant Unison Agreement Corp.:
 9

          ORSUS GATE LLP
10        BY:  NABIL BISHARAT, ESQ.
          16 N. Marengo Avenue
11        Suite 316
          Pasadena, California  California
12        213.973.2052
          nbisharat@orsusgate.com
13
14
15
16
17
18
19
20
21
22
23
24
25
```

<div align="right">Page 4</div>

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0265

```
 1                         I N D E X
 2
       WITNESS:  ANDREA CROSS
 3                                                  PAGE
 4     EXAMINATION BY MR. THOMASON                     9
 5     EXAMINATION BY MR. LEVOTA                       58
 6     EXAMINATION BY MR. BAST                        145
 7     EXAMINATION BY MR. ALEKSEYEFF                  155
 8     EXAMINATION BY MR. BISHARAT                    163
 9     EXAMINATION BY MR. KATZ                        166
10
11
12                      E X H I B I T S
13     EXHIBIT NO.          DESCRIPTION             PAGE
14     Exhibit 1       Notice of Deposition           15
15     Exhibit 2       California residential         17
                       purchase and sale agreement
16                     and joint escrow instructions
                       between Elizarov and Howlett
17
       Exhibit 3       Escrow of the West             18
18                     supplemental escrow
                       instructions
19
       Exhibit 4       Preliminary Report, dated      19
20                     2/18/2021
21     Exhibit 5       Amended Preliminary Report,    19
                       dated 3/3/2021
22
       Exhibit 6       E-mail string, dated 3/22/2021 20
23                     through 3/26/2021
24     Exhibit 7       Request for Demand, dated      21
                       3/3/21
25
```

Page 5

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0266

```
 1                      I N D E X
                       (Continued)
 2
                      E X H I B I T S
 3
     EXHIBIT NO.           DESCRIPTION                PAGE
 4
     Exhibit 8      E-mail from Andrea Cross with       38
 5                  attache Borrower's
                    Authorization
 6
     Exhibit 9      Unison Payoff Demand Letter         23
 7
     Exhibit 10     Weststar Payoff Calculation         24
 8                  Letter
 9   Exhibit 11     E-mail string, dated                25
                    3/25/2021, Subject: Unison
10
     Exhibit 12     Supplemental Escrow                 61
11                  Instructions, dated 2/17/21
12   Exhibit 13     Amended Escrow Instructions.        67
                    Dated 3/23/21
13
     Exhibit 14     Acceptance Offer, dated             68
14                  2/16/21
15   Exhibit 15     Lenders Closing Instructions,       69
                    dated 3/27/21
16
     Exhibit 16     E-mail string between Peter         70
17                  Hil and Andrea Cross, dated
                    3/22/21 through 3/24/21
18
     Exhibit 17     E-mail string with attached         78
19                  payoff demand
20   Exhibit 18     WestStar Payoff Calculation,        82
                    dated 3/24/21
21
     Exhibit 19     WestStar Payoff Calculation,        83
22                  dated 3/29/21
23   Exhibit 20     Request for Demand, dated           98
                    3/3/21
24
     Exhibit 21     Letter to Ilya Alekseyeff from     100
25                  Unison, dated 3/4/21
```

Page 6

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0267

```
 1                      I N D E X
                       (Continued)
 2

 3                    E X H I B I T S
 4    EXHIBIT NO.          DESCRIPTION              PAGE
 5    Exhibit 22    Letter to Ilya Alekseyeff from    101
                    Unison, dated 3/4/21
 6
      Exhibit 23    Preliminary Report , dated        106
 7                  2/18/21

 8    Exhibit 24    Unison Homebuyer Uniform          108
                    Subordination Agreement, dated
 9                  8/7/19

10    Exhibit 25    E-mail string between Andrea      110
                    Cross, Melissa Melendez and
11                  Peter Hill, dated 3/22/21

12    Exhibit 26    E-mail string between Andrea      111
                    Cross and Artur Elizarov,
13                  dated 3/25/21

14    Exhibit 27    E-mail between Andrea Cross       114
                    and Artur Elizarov, dated
15                  3/25/21, with attached
                    Seller's Estimated Settlement
16                  Agreement

17    Exhibit 28    E-mail string between Andrea      121
                    Cross and OC Title, dated 3/1,
18                  3/25 and 3/29/21

19    Exhibit 29    E-mail string between Andrea      128
                    Cross and Artur Elizarov,
20                  dated 3/22 and 3/24/21

21    Exhibit 30    E-mail string between Andrea      129
                    Cross and Unison, dated 3/4,
22                  3/5 and 3/17/21

23    Exhibit 31    E-mail string between Andrea      131
                    Cross and Unison, dated 3/5,
24                  3/17, 3/19 and 3/22/21

25

                                               Page  7
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0268

```
1                        I N D E X
                         (Continued)
2

3                      E X H I B I T S

4    EXHIBIT NO.          DESCRIPTION              PAGE

5    Exhibit 32    E-mail string between Andrea    132
                   Cross and Unison, dated 3/22
6                  and 3/23/21

7    Exhibit 33    Closing Disclosure, dated       133
                   3/23/21
8
     Exhibit 34    Seller's Final Settlement       135
9                  Statement, dated 3/30/21

10   Exhibit 35    Request for Outgoing Bank Wire  136
                   Transfer, dated 3/30/21
11
     Exhibit 36    E-mail string between Andrea    137
12                 Cross and Artur Elizarov,
                   dated 3/29 and 3/30
13
     Exhibit 37    Fee Transfer to Escrow of the   139
14                 West, dated 3/30/21

15   Exhibit 38    E-mail string between Andrea    139
                   Cross and Scott Howlett, dated
16                 4/13 and 4/14/21

17   Exhibit 39    E-mail string between Leslie    143
                   Zuniga and Scott Howlett,
18                 dated 3/1/21

19   Exhibit 40    Declaration of Anita Padilla    144
                   Certifying Record of Regularly
20                 Conducted Business Activity,
                   dated 5/21/21

21

22

23

24

25

                                          Page  8
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0269

```
 1                    WEDNESDAY, JUNE 29, 2022

 2                         10:03 A.M.

 3

 4                       ANDREA CROSS,

 5               having first been duly sworn

 6              by the reporter, was examined

 7                and testified as follows:

 8

 9                       EXAMINATION

10    BY MR. THOMASON:

11        Q.  Good morning, Andrea.  How are you doing?

12        A.  I'm well.  Thank you.

13        Q.  Thank you for joining us.  I'm just going to

14    kind of go through some housekeeping here at the

15    beginning.  If you could, just please state and spell

16    your name for the record.

17        A.  My name is Andrea Cross.  First name Andrea,

18    A-n-d-r-e-a; last name Cross, C-r-o-s-s.

19        Q.  My name is Ryan Thomason.  I am an attorney for

20    Scott Howlett and Bank of the West.  Jeremy Katz is also

21    counsel for Scott Howlett and Bank of the West.

22            Because we have so many parties here, we're

23    going to kind of shorten names.  When I refer to

24    Howlett, I'm referring to Scott Howlett, who is a

25    defendant in this action, where the property that he
```

Page 9

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0270

```
 1     a four-page document.  EOTW 55 through 58.
 2     BY MR. THOMASON:
 3          Q.  And do you recognize this document?
 4          A.  Yes.
 5          Q.  And was this document a part of the escrow file
 6     for the transaction?
 7          A.  Yes.
 8          Q.  Now we're going to pull up -- basically, what
 9     was an e-mail chain between you, Peter Hill of Goldwater
10     Bank, and Melissa Melendez of Weststar Mortgage
11     Corporation March corporation, between March 22nd, 2021,
12     through March 26, 2021.  This came from Goldwater's
13     production of documents from Escrow of the West.  It's a
14     rather long one.  But let me just go through this --
15              MR. KATZ:  Hold on.
16              It's a 17-page document starting at EOTW 164.
17     And I'm going to scroll all the way to the bottom.
18     Through EOTW 180.  And let's mark this as deposition
19     Exhibit 6.
20              (Exhibit 6 marked)
21     BY MR. THOMASON:
22          Q.  And so do you recognize this document, the
23     e-mail chain, basically?
24          A.  Yes.
25              MR. KATZ:  I'll scroll -- this is Jeremy Katz.
```

Page 20

1   I'm going to scroll down through it so you have a chance

2   to review it.  We'll get more into the specifics on it

3   later.  I just want you to look through the actual

4   e-mail chain.

5           Final page.  And I'll scroll back up to the

6   top.

7   BY MR. THOMASON:

8       Q.  And your e-mail address is

9   andrea@escrowofthewest.com; correct?

10      A.  Yes.

11      Q.  And Peter Hill's e-mail, as we see here, is

12  phill@goldwaterbank.com.  Is that who you were e-mailing

13  to?

14      A.  Yes, I believe so.

15      Q.  So here we also have Melissa Melendez's e-mail,

16  melissa.melendez@westloan.com.  As far as you know, that

17  was her e-mail that you were e-mailing to?

18      A.  Yes.

19      Q.  Now we are going to pull up the request for

20  demand, which was attached to an e-mail to Peter Hill,

21  dated on March 22nd, 2021, at 11:47 a.m.

22          MR. KATZ:  Make it a full page so you can see

23  it.  It's a one-page document, EOTW 181.  Go ahead and

24  mark this as deposition Exhibit 7.

25          (Exhibit 7 marked)

```
 1    BY MR. THOMASON:
 2         Q.  And this document was a part of the escrow file
 3    for the transaction?
 4         A.  Yes.
 5         Q.  And the next document we have is an e-mail
 6    chain between you and Elizarov on March 25th, 2021.
 7              MR. KATZ:  This is a nine-page document,
 8    starting with Bates No. EOTW_000550, running through
 9    558.  Let's go ahead and mark this as deposition
10    Exhibit 11.
11              (Exhibit 11 marked)
12              MR. KATZ:  And I'm going to slowly scroll
13    through it so you can look at the entire chain.  We'll
14    get into details about it in a little bit.
15    BY MR. THOMASON:
16         Q.  And do you recognize this e-mail chain?
17         A.  Yes.
18         Q.  And then was it a part of the escrow file for
19    the transaction?
20         A.  Yes.
21         Q.  And just verifying.  As far as you know,
22    Elizarov's e-mail was artur.elizarov@gmail.com?
23         A.  Yes.
24         Q.  And what goes into an escrow file?
25         A.  That would be any contractual documents,
```

Page 25

1    liens of record are as well as property taxes and if

2    there were any miscellaneous things, such as a judgment.

3        Q.  So we are going to be pulling up deposition

4    Exhibit 4 and asking about it.

5            So this was the initial preliminary report,

6    dated February 18th, 2021.  This came from Orange Coast

7    Title Company.

8            We're going to go down to schedule B.  And this

9    is what you're talking about.  These would be taxes, and

10   any liens would be in this section here; correct?

11       A.  Yes.

12       Q.  We're going to go -- as you see here, we show

13   general taxes, supplemental taxes.  Let's go to page 4.

14   And we see here there's a deed of trust, two deeds of

15   trust.  And then on No. 10, we see a deed of trust.  It

16   says Artur Elizarov, and it says the beneficiary is

17   Unison Agreement Corp.  And then there are subsequent

18   documents that were recorded, it looks like, by Unison

19   Agreement Core.  And then we'll go to the last page.

20           So there's no mention of Goldwater Bank on this

21   preliminary report; is that correct?

22       A.  Correct.

23       Q.  So we are now going to go to the -- Deposition

24   Exhibit 5, which was the March 3rd amended preliminary

25   report.  And why was an amended preliminary report

                                            Page 31

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0274

1      issued?

2           A.   I don't recall.

3           Q.   We're going to go to schedule B of the amended

4      preliminary report.   Once again, like we talked about

5      before, there's taxes there and various things.   We're

6      going to go to page 4.   Once again, there's different

7      numbering at this time.   Now it shows a deed of trust

8      for Unison Corp and other documents recorded by Unison.

9           Once again, there's no mention of Goldwater

10     Bank on this amended preliminary report; correct?

11          A.   Correct.

12          Q.   So is this standard to order a supplemental

13     report, an amended report, basically?

14          A.   We will order an amended report if a lender

15     asks us for one or any of the parties ask for an updated

16     search.

17          Q.   Did anyone ask for an amended report?

18          A.   I don't recall what the reason is.   There was

19     an updated report provided.

20          Q.   So from looking at both of these preliminary

21     reports, the one dated February 18th and the one dated

22     March 3rd, there is nothing in the chain of title, from

23     these reports at least, that show that Goldwater had a

24     lien against the property?

25          A.   Correct.

Page 32

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0275

```
 1    payoff from Goldwater Bank?

 2         A.  Correct.

 3         Q.  Had you received one from Unison by that time?

 4         A.  Yes.

 5         Q.  So on March 25th, 2021, at 11:06 a.m., Hill

 6    sent you an e-mail.  States:  "Andrea, here's our payoff

 7    letter.  Not to pressure you, but when might your

 8    estimated settlement be available?"

 9             Did you receive that e-mail from Hill?

10         A.  Yes.

11         Q.  Now we're going to go to Exhibit 10.

12             Was this the pay off that you received from

13    Hill?

14         A.  Yes.

15         Q.  On that day?

16         A.  Yes.

17         Q.  And it shows this pay off demand was not

18    correct for the transaction; is that correct?

19         A.  Yes.

20         Q.  We have the wrong borrower; correct?

21         A.  Correct.

22         Q.  We have the incorrect amount, as far as we

23    know; is that correct?

24         A.  I don't know what amount would be correct or

25    not.
```

<div align="right">Page  46</div>

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0276

```
 1            Q.   Okay.   That's fair.
 2                 And we have an incorrect address.   It does not
 3     match the property; correct?
 4            A.   Correct.
 5            Q.   So the transaction did not involve Jared F. or
 6     Paige H. Gilman?
 7            A.   Correct.
 8            Q.   And it did not involve a property in Palm Beach
 9     County, Florida?
10            A.   Correct.
11            Q.   We're going to go back to Exhibit 6.
12                 So on March 25th, 2021, at 11:12 a.m., you sent
13     an e-mail to Hill stating:   "This is for a different
14     borrower.   Can you check?"
15                 Did you send that e-mail?
16            A.   Yes.
17            Q.   And on March 25th, 2021, at 1:30 p.m., Hill
18     sent an e-mail to you.   It says:   "Andrea, here's the
19     correct payoff statement.   Note that there is a shortage
20     of proceeds to cover our payoff along with the Unison
21     payoff and the mechanic's lien.   I am working on how to
22     resolve that right now.   It's going to take a day or
23     so."
24                 Was there a payoff demand attached to this
25     e-mail?
```

Page 47

1        A.   No, there was not.

2        Q.   So to confirm, there was no attachment to the

3   March 25th, 2021, e-mail at 1:30 p.m. from Peter Hill at

4   Goldwater bank to you containing a payoff demand?

5        A.   Correct.   There was no attachment.

6        Q.   At any time after this e-mail, did you ever

7   receive a correct payoff demand from Goldwater or

8   Weststar Mortgage Corporation?

9        A.   No, I did not.

10        Q.   So let's move up.

11             MR. KATZ:   Jeremy Katz.   I'm continuing to

12   scroll through page 6.   I'm now spanning from pages 4

13   and 5.

14   BY MR. THOMASON:

15        Q.   So we have an e-mail on March 25th, 2021, at

16   1:49 p.m., from you to Hill saying -- stating:   "Hi,

17   Pete.   You can disregard the demand request now.   Seller

18   has instructed we are not to make a payoff to Goldwater.

19   Since there is not a secured lien to the chain of title,

20   we would only have been able to pay with seller's

21   instructions to do so."

22             Did you send that e-mail to Hill?

23        A.   Yes.

24        Q.   Did Elizarov make that instruction to you?

25        A.   Yes.

<div align="right">Page 48</div>

1        Q.   When did Elizarov give you that instruction?

2        A.   Let me check my e-mail records.

3             On March 25th.

4        Q.   And was it verbally or in an e-mail?

5        A.   In an e-mail.

6        Q.   Did Elizarov give you any other instructions

7   regarding Goldwater?

8        A.   No.

9        Q.   And, once again -- sorry.  Strike that.

10            As far as you knew, in your capacity as an

11  escrow officer, did Goldwater have a deed of trust in

12  the chain of title for the property?

13       A.   No.

14       Q.   And as escrow, what do you look for to

15  determine if a creditor is secured or unsecured?

16       A.   They would be shown secured with a secured lien

17  on the preliminary title report, or a seller can provide

18  us instruction that they have an unsecured lien, or

19  perhaps a secured lien unrecorded.  But that instruction

20  comes from the seller.

21       Q.   Okay.

22            And so Elizarov -- did Elizarov ever state that

23  Goldwater was a secured lienholder that was unrecorded?

24       A.   No.  He did not state that.

25       Q.   Did you consider Goldwater a party to the

                                              Page  49

1    escrow?

2         A.   I considered them a party once they had been

3    asking for a payoff demand and Mr. Elizarov provided

4    permission to correspond with them.

5         Q.   So if Elizarov did not give you permission to

6    speak to them, you wouldn't -- you would have never

7    communicated with them; is that correct?

8         A.   Correct.  I would have advised the same to

9    Mr. Hill instead of providing him a demand.

10        Q.   What is your understanding of escrow's

11   responsibility to make payments to unsecured creditors?

12        A.   Escrow does not have a responsibility to pay

13   unsecured creditors.

14        Q.   And what do you do as escrow if a random person

15   or business entity makes a payment demand from a sale of

16   a property?

17        A.   We will address it with the seller.  If -- they

18   provide us specific approval to make that payment from

19   their net proceeds.

20        Q.   So you need seller approval before paying out

21   to an unsecured creditor; is that correct?

22        A.   Correct.  Yes.

23        Q.   So in order for you to make any payment to

24   Goldwater, Elizarov would have had to have instructed

25   you to do so?

Page 50

```
1    written record of that call?

2         A.  Yes.

3         Q.  Was there a written record of Goldwater bank's

4    claim for payment, like when they first initially

5    contacted?  Is there a written record of that?

6         A.  Just the e-mails that have been saved, which

7    are part of the file.

8         Q.  And other than the e-mails that were saved in

9    the file, are there any other records of any phone calls

10   or any contacts with Goldwater Bank?

11        A.  No.

12        Q.  All right.  We're going to go to Exhibit 11.

13             MR. KATZ:  Now have Exhibit 11 on the screen.

14   I'm going to scroll down to the bottom of Exhibit 11.

15   BY MR. THOMASON:

16        Q.  So here we are.  This is an e-mail from

17   Elizarov to Andrea Cross.  It says:  "Andrea, can you

18   provide" -- pardon me.  March 25th, 2021, at 10:42 a.m.

19             It says:  "Andrea, can you provide the Unison

20   letter along with just the closing cost and purchase

21   price to Pete at Goldwater Bank.  Please tell him you're

22   still working on the full itemized closing statement,

23   and we'll provide when it's ready."

24             Did you receive that e-mail from Elizarov?

25        A.  Yes.
```

<div align="right">Page 54</div>

1          Q.   And did Elizarov instruct you to provide Hill

2     with the Unison's payoff letter?

3          A.   Yes, per that e-mail.

4          Q.   Did Elizarov tell you why he wanted Unison to

5     have -- pardon me.  Strike that.

6               Did Elizarov tell you why he wanted you to send

7     Hill the Unison payoff demand?

8          A.   No.

9          Q.   Did Elizarov instruct you to tell Hill that you

10    would provide a full itemized closing statement?

11         A.   I'm sorry.  Can you say that one more time?

12         Q.   Of course.

13              Did Elizarov instruct you to tell Hill that you

14    would provide a full itemized closing statement?

15         A.   Yes, per this e-mail.

16         Q.   And what is your understanding of what a

17    closing statement is?

18         A.   It's a summary of the seller's net proceeds,

19    which will show their closing costs, any debits or

20    credits from prorations, to arrive at a net proceeds

21    figure.

22         Q.   And did you send Hill a closing statement?

23         A.   I'm not sure.  I don't recall.

24         Q.   Okay.

25              MR. KATZ:  We are now on page 3 of Exhibit 11.

Page 55

```
 1    BY MR. THOMASON:
 2        Q.   So on March 25th, 2021, at 11:37 a.m., Elizarov
 3    sent an e-mail to you stating:  "Is Goldwater Bank on
 4    title report?  If not, this makes it easier to close.
 5    The Unison thing is a mess.  So I don't understand if
 6    that is the total payoff."
 7             Did Elizarov send you that e-mail?
 8        A.   Yes.
 9        Q.   On March 25th, 2021, at 2:41 p.m., you sent an
10    e-mail to Elizarov saying:  "Attached is the prelim.  As
11    of March 3rd, 2021, Unison is the only secured lien."
12             Did you send that e-mail?
13        A.   Yes.
14        Q.   And was the March 3rd, 2021 amended preliminary
15    report, is that what you attached to the e-mail?
16        A.   Yes.
17        Q.   Which Goldwater Bank was not on that amended
18    preliminary report; correct?
19        A.   Correct.
20        Q.   So on March 25th, 2021, at 11:43 a.m., Elizarov
21    sent an e-mail to you stating:  "Let's close then.
22    Well, now it makes sense.  These guys are a mess.  No
23    more communication with Peter.  That cleared up my
24    agreement with other Unison because I don't understand
25    why the bank is involved.  Jesus."
```

<div align="right">Page 56</div>

1            Signed Art.

2            Did Elizarov send that e-mail to you?

3      A.   Yes.

4      Q.   Okay.

5            So in Elizarov's statement "that clears up my

6      agreement with other Unison because I don't understand

7      why the bank is involved."

8            At that time from that statement, did you

9      believe that Goldwater was affiliated with Unison?

10     A.   After receipt of his e-mail, I understand or I

11     assumed that they're not affiliated.

12     Q.   Okay.

13           And why is that?

14     A.   Because he mentioned there that -- he says:  "I

15     also didn't understand why his bank is involved."

16     Q.   What did you do with that information?

17     A.   I saved this correspondence, and I reached back

18     out to Mr. Hill to let him know we no longer had

19     permission to be in communication with him.

20           MR. THOMASON:  Okay.  Well, that's all for us

21     on this matter.  Yesterday, Mr. LeVota reached out to

22     our office and asked if Goldwater Bank could go second,

23     which we agreed.  We may have some follow-up questions

24     depending on what other counsel may ask you, Andrea.

25     But as far as us, we're done.  So we're going to hand it

                                            Page 57

```
 1    issue a policy of title insurance and may not contain

 2    every item affecting title?

 3         A.  Yes.

 4             MR. KRISHEL:  Let me just object to move to

 5    strike.  Also, legal conclusion.

 6             You can go ahead and answer.

 7             THE WITNESS:  Yes.

 8    BY MR. LEVOTA:

 9         Q.  So then if we go to subparagraph C of this, of

10    paragraph 13 on page 5 of Exhibit 2.  It says:  "In the

11    time specified in paragraph 14A, seller has the duty to

12    disclose to buyer all matters known to seller affecting

13    title whether of record or not."

14             What is your understanding of that instruction?

15         A.  The seller must provide any items that require

16    payment to deliver free and clear title to the escrow

17    holder.

18         Q.  Does the seller have any duty to disclose

19    matters that may not be of record but may also affect

20    title?

21         A.  Yes.

22         Q.  And then if we go to page 9 of Exhibit 2 and we

23    look at paragraph 29, entitled "Time of the Estimates,

24    Entire Contract, changes."

25             Do you see that?
```

Page 65

1        Q.   Thank you.

2             MR. BISHARAT:   Mr. LeVota, if you wouldn't mind

3    just for the record identifying the document by exhibit.

4    I know that you distributed Goldwater's exhibits and had

5    them branded, but just so we can follow along a little

6    easier.

7             MR. LEVOTA:   I will.   And I appreciate you

8    making that request.   I hope I don't confuse anyone

9    because of going from letters to numbers.   But I did

10   that in the hopes that we weren't confused.

11            To that end, right now, we are looking at what

12   I distributed as Goldwater F and has been marked as

13   Exhibit 13.

14            And Ms. Cross is continuing to look to see if

15   there were any other written amendments.

16            MR. BISHARAT:   Perfect.   Thank you.

17            MR. LEVOTA:   And while we have the time, my

18   Exhibit A, Goldwater A, was what was marked as

19   Exhibit 12.

20            THE WITNESS:   I'm not finding any other escrow

21   amendments in the file copy uh-huh.

22            MR. LEVOTA:   So I'm going to bring up what I

23   previously distributed as Goldwater D, but what we will

24   mark as Exhibit 14.

25                 (Exhibit 14 marked)

                                              Page 68

1   BY MR. LEVOTA:

2       Q.   Do you recognize this document?

3       A.   Yes.

4       Q.   And this appears to me to be the last page of

5   the purchase and sale agreement.  However, the area for

6   escrow holder acknowledgment has been completed.

7            Do you see that?

8       A.   Yes.

9       Q.   Who completes that section?

10      A.   The escrow holder.

11      Q.   And so, in this instance, it would be Escrow of

12  the West?

13      A.   Yes.

14           MR. LEVOTA:  I'm pulling up what I previously

15  distributed as Goldwater E.  And we are going to mark

16  this as Exhibit 15.

17           (Exhibit 15 marked)

18  BY MR. LEVOTA:

19      Q.   I'll make it a little larger so you can see.

20           Do you recognize this document?

21      A.   Yes.

22      Q.   And just I'll scroll through.  It's three

23  pages.

24           What do you recognize this document to be?

25      A.   This is part of the buyer's loan documents.

Page 69

```
 1    e-mail from Mr. Hill.
 2         Q.  Okay.
 3              So at some time Mr. Hill gives you a call.  He
 4    says he's from Goldwater Bank.  He asked for a payoff
 5    statement?
 6         A.  Yes.
 7         Q.  Like a final settlement statement?  That's what
 8    he's asking for, but an estimated?
 9         A.  No.  A payoff demand.  So that would be a
10    request from escrow asking for a payoff statement.
11         Q.  So he's asking you to send the request so that
12    he can send in the demand?
13         A.  Yes.
14         Q.  So we're at this point, March 22nd.  And you
15    think they're affiliated, and you send him a payoff
16    request?
17         A.  Yes.
18         Q.  A request for a payoff demand?
19         A.  Right.
20         Q.  And then he responds to you and says:  "Were
21    you able to get the payoff from Unison?  We don't handle
22    that portion of this."
23              And I believe you testified that at that point,
24    you requested whether or not Unison and Goldwater were
25    affiliated; is that correct?
```

Page  73

1       A.   Yes.   I wasn't a hundred percent sure what
2   their relationship is.   But I assumed Unison may be a
3   servicer for Goldwater.
4       Q.   Did you ever ask them that, if they were a
5   servicer for Goldwater?
6       A.   I did not ask him, no.
7       Q.   Did you ever ask Goldwater what their
8   connection with Unison was?
9       A.   No, I did not ask them.
10       Q.   So at this point, are you certain that they are
11   affiliated, uncertain, or certain that they are not
12   affiliated?
13       A.   I'm uncertain at this point.
14       Q.   Are you asking anybody information to help
15   clear up that uncertainty?
16       A.   I don't remember.   If so, I may have spoken to
17   the seller, but I'm not sure.
18       Q.   And then we're still on what's been marked as
19   Exhibit 16.   And we've gone through how Pete says:
20   "Were you able to get the payoff?"
21       And you say:   "No, we have not received a
22   demand from them."
23       And he says:   "You're in touch with and have
24   requested it?"
25       You say:   "Yes, I have."

Page 74

1           So looking at page 1 of Exhibit 17 at the very

2    bottom, then there's an e-mail from Unison Home

3    Partnership Team to you; correct?

4           A.   Yes.

5           Q.   And that's dated March 23rd, 2021, at

6    3:45 p.m.; correct?

7           A.   Yes.

8           Q.   And in it he's saying:   "Hi, Andrea.   Thanks

9    for the label.   Attached is our payoff demand along with

10   the unsigned copy of our lien release, documents for

11   your review."

12          Does this refresh your recollection that you

13   received the payoff demand on March 23rd?

14          A.   Yes.

15          Q.   So going back to Exhibit 16.   We're at the

16   bottom of page 11.   And at this point, we're on

17   March 24th, the next day; right?

18          A.   Yes.

19          Q.   And you're asking Goldwater for its payoff

20   demand; correct?

21          A.   Yes.

22          Q.   Why?

23          A.   Based on their e-mail chain, they mentioned

24   they were sending a demand.

25          Q.   At this point, do you still believe that

Page  79

1    Goldwater and Unison are affiliated?

2         A.   Yes.   Because I had never received any sort of

3    a separate deed of trust or note or any other

4    clarification.

5         Q.   Did you ever ask for that clarification?

6         A.   No, I did not.

7         Q.   And now we're going to look at page 10 of

8    Exhibit 16.   It's the e-mail in the middle from Peter

9    Hill to you.

10        Do you recognize that e-mail?

11        A.   Yes.

12        Q.   And then it says:   "Mr. Elizarov tells me the

13   sale has fallen through.   Is that correct?"

14        Had the sale fallen through?

15        A.   No.

16        Q.   Had there ever been any indication in the

17   transaction that the transaction was going to fall

18   through?

19        A.   No.

20        Q.   Did you ever ask Mr. Elizarov why he told Peter

21   Hill that the transaction had fallen through?

22        A.   No.

23        Q.   And then you respond:   "Hi, Pete.   No.   We are

24   proceeding and estimating to close within the next few

25   days.   I have not heard otherwise."

Page 80

```
 1    BY MR. LEVOTA:

 2        Q.  Have you ever seen this document before?

 3        A.  No.

 4        Q.  On page 4 of Exhibit 19, do you recognize this

 5    as your handwriting?

 6        A.  No.  It is not.

 7        Q.  So you previously testified -- and we're

 8    looking again at Exhibit 16 now, and we're looking at

 9    page 5.  And we're looking at the e-mail from Peter to

10    you on March 25th, in which he says, "here's the correct

11    payoff statement."

12            And you said there was nothing attached to that

13    e-mail; correct?

14        A.  Correct.

15        Q.  And then you don't respond -- he sent that at

16    1:30, and you responded at 1:49, about 19 minutes later;

17    correct?

18        A.  Yes.

19        Q.  And you said:  "Hi, Pete.  You can disregard

20    the demand request now.  Seller has instructed we are

21    not to make payoff to Goldwater since there is not a

22    secured lien to the chain of title."

23            And I just want to pause there.  What are you

24    basing that statement on that there's not a secured lien

25    in the chain of title?
```

Page 84

1    A.  Goldwater is not mentioned on the preliminary

2    title report.  I never received any documentation

3    evidencing that they were or that perhaps there was

4    something just not recorded.  I never received a deed of

5    trust from them in any way.

6    Q.  Did you ever ask Goldwater if they had a deed

7    of trust?

8    A.  No.

9    Q.  And then Peter Hill responds by saying:

10   "Please give me a call to discuss."  And he gives you

11   his number.  And then you respond:  "I'm sorry.  But I'm

12   not authorized to discuss as you are not a party to the

13   transaction.  Mr. Elizarov has instructed we are not

14   approved to correspond further."

15       And you sent that e-mail; correct?

16   A.  Yes.

17   Q.  Would you have been authorized to listen to

18   what Mr. Hill had to say?

19   A.  Well, he's not a party.  So I did not find it

20   prudent to give him a phone call.  I don't think we

21   spoke.

22   Q.  So you never asked him any questions to clarify

23   why he was asking you for a payoff demand.  But since it

24   wasn't listed in the preliminary report, then you made

25   the conclusion that it wasn't in the chain of title; is

Page 85

1    that correct?

2        A.   Yes.

3        Q.   And then you made the decision to listen to

4    Mr. Elizarov and no longer communicate with him, even

5    though they had given you information about the

6    potential lien, had told you that they're seeking a

7    payoff demand and all of that.  And you just said, well,

8    I'm not going to communicate with them anymore because

9    I'm not authorized by Art.

10            MR. ALEKSEYEFF:  I have an objection --

11   BY MR. LEVOTA:

12       Q.   Is that correct?

13            MR. ALEKSEYEFF:  Excuse me, Counsel.  Let me

14   just make my objection real quick.  The witness has

15   never testified she has any information about any lien.

16   Thank you.

17            MR. KRISHEL:  I also want to object that it

18   assumes facts not in evidence.  It misstates the

19   testimony.  And it's also an improper hypothetical.

20            MR. KATZ:  This is Jeremy Katz.  We'll join in

21   that as well.

22   BY MR. LEVOTA:

23       Q.   Can you answer the question, ma'am?

24            MR. KRISHEL:  Andrea, if you're able to answer

25   that question as he's asked it, you can, if you

                                                    Page 86

1    the seller has removed authorization; is that correct?

2        A.   Yes.

3        Q.   And that Goldwater, to your understanding, did

4    not have a trust deed of record because it was not

5    listed on the preliminary report?

6        A.   Yes.

7        Q.   And so now we're going to what's been

8    previously marked as Exhibit 6.  As we said before, this

9    is a similar e-mail chain that we just went through.

10   But it has a different e-mail at the top.  And here

11   there's an e-mail from Peter Hill to you on March 26th.

12        Did you receive this e-mail?

13        A.   I don't have that copy in my records here, but

14   I'm not sure if it's -- I'm not sure, to be honest.

15        Q.   You don't know if you received this e-mail?

16        A.   Yeah.  I don't have this in my document copies.

17        Q.   Well, we received this in response to a

18   subpoena of Escrow of the West.

19        A.   Okay.  Then we must -- it must have been

20   received in that case.  I just don't recall it.

21        Q.   So in this e-mail that he's saying:  "Andrea,

22   just to keep new the loop, I spoke with Mr. Elizarov

23   last night about accepting a short payoff of $675,000 of

24   our loan, which he agreed to, subject to final approval

25   here at Goldwater/Weststar."

                                              Page 95

```
 1              MR. KRISHEL:  That's correct, Andrea.  So you
 2    can literally ignore the objections so you don't lose
 3    your train of thought.  If you hear me say, don't answer
 4    that question, only then will you not answer it.
 5    Otherwise, you can completely disregard the objection
 6    and focus on the question.
 7              THE WITNESS:  Okay.  So it was do
 8    non-lienholders request a short payoff?  Is that what
 9    the question was?
10    BY MR. LEVOTA:
11         Q.  I can ask you a different question.
12              Have you ever been involved in an escrow that
13    involved a short payoff aspect that was not connected to
14    a lienholder?
15         A.  No.
16         Q.  So from this e-mail, would you have any
17    suspicion that Goldwater thought they had a lien?
18              MR. ALEKSEYEFF:  Objection; calls for
19    speculation, misstates testimony.  The witness said
20    testified that she has not seen this e-mail.
21    BY MR. LEVOTA:
22         Q.  Go on.
23         A.  I would agree that Goldwater believed they had
24    a lien, yes.
25         Q.  And you never asked Goldwater if they believed
```

Page  97

1    they had a lien; correct?

2         A.   Right.

3         Q.   Did anybody stop you -- while you had

4    authorization from Art to speak with Goldwater, did

5    anybody stop you from asking Goldwater if they believed

6    they had a lien against the property?

7         A.   No.

8         Q.   Do you have a reason for not asking them?

9         A.   Initially, I thought they were part of Unison.

10   So I did not ask them for documents pertaining to their

11   lien.  And then around the same time when Mr. Elizarov

12   advised not to communicate with them anymore is when I

13   realized they were not affiliated with Unison.  And,

14   therefore, since they did not have a secured lien, I no

15   longer communicated with them.

16              MR. LEVOTA:  I'm going to show you what

17   distributed as Goldwater H, but what we will mark as

18   Exhibit 20.

19              (Exhibit 20 marked)

20              MR. LEVOTA:  And I will put this on the

21   right-hand side of the screen because I want -- I want

22   to compare it with something we looked at earlier.

23   BY MR. LEVOTA:

24        Q.   So on the left-hand side of the screen is

25   Exhibit -- what's been previously marked as Exhibit 7,

                                             Page 98

```
 1              MR. BISHARAT:  This is Nabil Bisharat.  I join.
 2              THE WITNESS:  I don't know.  I've never seen
 3    any sort of an actual lien from Goldwater.  So I can't
 4    say the amount they put in their e-mail sounds
 5    reasonable or not, or what position they might be in.
 6    They're not on the prelim report.
 7    BY MR. LEVOTA:
 8         Q.  And you say they didn't provide a lien, but you
 9    never asked them for it either, did you?
10         A.  Correct.
11         Q.  Okay.
12              MR. LEVOTA:  I'm going to bring up what was
13    previously marked shared as Goldwater M, but we're going
14    to mark it as Exhibit 23.
15              (Exhibit 23 marked)
16    BY MR. LEVOTA:
17         Q.  We've looked at something similar, but it was
18    only four pages of the preliminary report, whereas this
19    exhibit is 20 pages.
20              Do you see that?
21         A.  Yes.
22         Q.  Do you review preliminary reports?
23         A.  Yes.
24         Q.  What do you look for when you review them?
25         A.  Status on property taxes and any secured liens
```

Page 106

1    which would be required to be addressed and removed in

2    order to have free and clear title.

3        Q.   And so we're looking now at page 4 of

4    Exhibit 23, the preliminary report.  And this is within

5    the schedule B of the document.  And, again, we're

6    looking at page 4.

7            Do you remember looking at this?

8        A.   Yes.

9        Q.   I notice that 10 says a deed of trust, and then

10   11 says a memorandum of agreement.

11           Do you understand that a memorandum of

12   agreement would be a lien?  Or what is your

13   understanding of that?

14       A.   A memorandum can be -- it varies.  It depends

15   on what the information in it is stating.

16       Q.   Did you look at this memorandum?

17       A.   Yes.  I would have looked at it.

18       Q.   And what was your understanding of that

19   document?

20       A.   I'll have to take a look at it to refresh

21   myself.  I don't remember now.

22       Q.   So let's move to -- below it, it says:  "The

23   lien or charge of said instrument was subordinated to

24   the lien or charge of the deed of trust shown in

25   paragraph 10 of schedule B."

Page 107

1           And then it gives you the document for an

2    instrument.

3           Do you see that?

4      A.   Yes.

5      Q.   Did you ever pull up that instrument?

6      A.   I'm sure I would have during the escrow time

7    period.   I don't recall what the instrument is.

8           MR. LEVOTA:   So we're going to look at what was

9    distributed as Exhibit O, which we'll mark as

10   Exhibit 24.

11          (Exhibit 24 marked)

12   BY MR. LEVOTA:

13     Q.   Just for clarity sake, on the right-hand side

14   is the preliminary report that we've already marked as

15   Exhibit 23.   And it describes the subordination of lien,

16   and it gives a document number.

17          Do you see that?

18     A.   Yes.

19     Q.   And that is the same document number that is

20   now our Exhibit 24 on the left-hand side of the screen;

21   correct?

22     A.   Yes.

23     Q.   So focusing in on Exhibit 24, it says in here

24   that there's a description of the property.   The

25   property address is 291 West Overlook Road.   And that's

                                                Page 108

1    the subject property; correct?

2        A.   Yes.

3        Q.   And then it says "lender, senior lender," and

4    then there's a loan, a date, and an original principal

5    sum of $686,000 -- 686,250.

6             Do you see that?

7        A.   Yes.

8        Q.   And then it says:   "Subordinating

9    lienholder/junior lien.   Unison Agreement Corp., it

10   successors and assigns."

11            And it lists them with their loan number.

12            Do you see that?

13       A.   Yes.

14       Q.   So what is your understanding of this document?

15       A.   It's supplemental to Unison's lien.

16       Q.   Is it subordinating Unison's lead to a senior?

17       A.   Yes.  But I don't see a name of a senior

18   lender.

19       Q.   Did you ever ask if there was a senior lender?

20   Did you ever ask Unison who they were subordinating to?

21       A.   No, I did not.  Unison -- we would assume that

22   they were the only lienholder since they're the only one

23   listed on the prelim report.

24       Q.   If a party is subordinating their lien to a

25   senior, what position does that lien have?

Page 109

1    A.   That brings them into second position.

2    Q.   So by looking at this document, do you have any

3  sort of understanding that Unison is placing its lien in

4  a junior position behind a senior lien?

5    A.   Yes.  At a certain point, they would have been

6  subordinated.

7    Q.   And so then at -- so from looking at this

8  document, it looks like they're subordinated in a junior

9  position, but then at some point there's a conclusion

10  that they're the only lienholder; is that correct?

11   A.   Correct.

12   Q.   Did you ever ask Unison to confirm that?

13   A.   No.  We rely on the information in the

14  preliminary title report.

15   Q.   Is that preliminary title report a

16  representation of the state of title?

17   A.   Yes.

18   Q.   Did you ever ask Goldwater if they were the

19  senior lender referenced in the subordination agreement?

20   A.   No, I did not.

21        MR. LEVOTA:  We're going to look at what was

22  distributed as Goldwater R, and we will mark as

23  Exhibit 25.

24        (Exhibit 25 marked)

25  ///

Page 110

```
 1    relation to preparing the estimate.  I think

 2    Mr. Elizarov thought there was some kind of a mechanic

 3    lien.  I don't remember exactly what the 107,270 amount

 4    is for, though.

 5         Q.  When it says "send it to them," who's "them"?

 6         A.  To Mr. Hill.  To Goldwater.

 7         Q.  So when they say:  "So they can figure out what

 8    they are going to waive," do you understand that to mean

 9    so Goldwater can figure out what Goldwater is going to

10    waive?

11         A.  Yes.

12         Q.  And did you ask why Goldwater would be waiving

13    anything?

14         A.  No.

15         Q.  And then your response:  "Please see attached.

16    Let me know if it's approved to send."

17              He says yes.  Then he quickly says:  "No.  The

18    107 is not Coldwater.  It's a lien for construction."

19              You prepared two statements that you provided.

20    And I'm trying to bring them up real quick.

21              So we were looking at Exhibit 26, which is this

22    e-mail on the right-hand side.  And you're saying

23    "please see attached."

24              MR. LEVOTA:  And now we're looking at what was

25    distributed as Goldwater V, but we'll be marking it as
```

Page 113

1    Exhibit 27 on the left-hand side.

2            (Exhibit 27 marked)

3    BY MR. LEVOTA:

4        Q.   Do you see this?

5        A.   Yes.

6        Q.   And it's the same -- almost the same type

7    e-mail from March 25th where you're saying:   "Please see

8    the attached."

9            Do you see that on Exhibit 27 on the left?

10       A.   Yes.

11       Q.   And then so page 2 is a seller's estimated

12   statement.

13           Do you see this?

14       A.   Yes.

15       Q.   And then it has payoff charges, Goldwater Bank,

16   107,270.   And then underneath them, Unison, 490-.

17           Do you see that?

18       A.   Yes.

19       Q.   Does the placement of these payoffs on the

20   settlement statement indicate anything?

21       A.   That's just how it was drawn up.

22       Q.   Do you typically put first priority lenders

23   first and junior's second?

24       A.   We would typically.  But I don't -- we didn't

25   have Goldwater listed as a first separate lender.  It's

                                            Page 114

```
 1     just how it came out on the estimate.
 2         Q.  So going to Exhibit 26 here on the right.  He
 3     says, from Artur at the top of page 6.  "No.  The 107 is
 4     not Coldwater.  It's a lien for construction."
 5             And then he says in e-mail:  "Journeyman
 6     Construction, LLC."
 7             And then it looks like you prepare page 3 of
 8     Exhibit 27, which is also a seller's estimated
 9     settlement statement.
10             Do you see that?
11         A.  Yes.
12         Q.  And it seems like there's a difference now
13     where Unison is at the top line, and then a mechanic
14     lien is below it with the 107,270?
15         A.  Yes.
16         Q.  So this is the document, page 3 of Exhibit 27,
17     that you sent to Goldwater?
18         A.  This is the one sent to Goldwater you asked?
19     I'm not sure if that was sent to Goldwater.
20         Q.  This is the one that was prepared for Art?
21         A.  Yes.  It was prepared for Art.
22         Q.  So going back to Exhibit 26.  Now we're looking
23     at page 4 of Exhibit 26.  And you say "revised."
24             Are you referring to the revised settlement
25     statement?
```

Page 115

1          A.   Yes.

2          Q.   And then you say:   "Can you send me a copy of

3    the mechanic's lien?   It's not showing on the prelim."

4              Do you recall asking for information regarding

5    a mechanic's lien that was not on the preliminary

6    report?

7          A.   Yes.

8          Q.   So it is you true that there are instances in

9    which there are liens affecting title that do not appear

10   in the preliminary report; correct?

11         A.   Yes.

12         Q.   He responded by:   "Can you send to Peter ASAP,

13   please."

14              What is he asking you to send to Peter?

15         A.   The estimated statement.

16         Q.   You respond by "sent."

17              Does that mean that you sent that estimated

18   statement that we were looking at, Exhibit -- page 3 of

19   Exhibit 27 [sic], to Goldwater?

20         A.   Yes.

21         Q.   So then it says -- on page 3, there's an e-mail

22   from Art to you.   It says:   "Is Coldwater Bank on the

23   title report?   If not, this makes it easier to close.

24   This Unison thing is a mess.   So I don't understand if

25   that is the total payoff."

                                              Page 116

```
 1    BY MR. LEVOTA:
 2         Q.   What is your understanding of the sentence:
 3    "This Unison thing is a mess.   So I don't understand if
 4    that is the total payoff."
 5              What is your understanding of that sentence?
 6         A.   He's unclear what the total payoff amount is.
 7         Q.   But at this point, he's received the Unison
 8    payoff demand; right?
 9         A.   Yes.
10         Q.   So he knows what the amount being sought in
11    that is.   So what's the confusion?
12         A.   I don't know what his confusion is.
13         Q.   Did you ever ask Unison if their demand was the
14    total payoff?
15         A.   No.
16         Q.   Did you ever ask Unison if they were affiliated
17    with Goldwater and represented the same interest?
18         A.   I don't think that I did.
19         Q.   And then we're looking at the -- page 2 of
20    Exhibit 26 at the top.   It's an e-mail that's carrying
21    over from page 1 from you on March 25th at 2:41 to Art.
22    And it says:   "Attached is the prelim.   As of 3/3/21,
23    Unison is the only secured lien."
24              Are you basing that statement that Unison is
25    the only secured lien solely on the preliminary report?
```

Page 118

```
 1        A.  I did not.  That's the responsibility of the
 2   title company.  Escrow companies don't have that
 3   capacity.
 4        Q.  Has anyone ever trained you on how to look at
 5   the grantor/grantee index?
 6        A.  It's an a function of escrow.  So we don't do
 7   that.
 8        Q.  So your understanding of a chain of title from
 9   a property comes completely from the preliminary report?
10        A.  Yes.
11        Q.  So turning into page 1 of Exhibit 26 at the
12   bottom, it says -- this is an e-mail from Art to you.
13   On March 25th at 11:43.  It says:  "Let's close then.
14   Well, now it makes senses.  These guys are a mess.  No
15   more communication with Peter.  That clears up my
16   agreement with other Unison because I don't understand
17   why the bank is involved.  Jesus."
18        And then you respond:  "Understood.  Will note
19   our file."
20        What did you understand?
21        A.  I understand that Goldwater is not affiliated
22   with this Unison loan, and we should not be
23   communicating with Mr. Hill any further.
24        Q.  Did you have an understanding of the sentence
25   where he says:  "That clears up my agreement with of the
```

Page 120

1      A.   Yes.

2      Q.   Okay.

3           And then the -- that e-mail is dated March 1st.

4  That's around the time that escrow was open?

5      A.   This is when the title is open.

6      Q.   So this is the e-mail opening title after

7  escrow has already been opened?

8      A.   Actually, this is please update title.   So this

9  is an update request to a title order.

10     Q.   Okay.

11          And that's all on March 1st; correct?

12     A.   Yes.

13     Q.   And then on page 4 of Exhibit 28, we have an

14  e-mail from you to Orange Coast Title Company.   Is that

15  the title company involved in this transaction?

16     A.   Yes.

17     Q.   Do you work with Orange Coast Title

18  exclusively?

19     A.   No.

20     Q.   It says:   "Team, please run date down on this

21  property.   We are preparing for close 3/30."

22          Did you ever mention to the title company that

23  Goldwater was submitting payoff demands and was a

24  mortgage company seeking to get paid out of this escrow?

25     A.   No.   At this point, no.

Page 122

1      Q.   Did you ever mention Goldwater to the title

2    company before the close of escrow?

3      A.   I don't remember.

4      Q.   Do you ever call the title company, or is your

5    communication solely e-mail?

6      A.   Yes.   We do speak on the phone as well.

7      Q.   Do you recall speaking on the phone with title

8    regarding this transaction?

9      A.   Yes.

10      Q.   And during those phone calls, did you ever

11    mention Goldwater to them?

12      A.   No, I don't think so.

13      Q.   How come?

14      A.   They're not a secured lienholder.   We never got

15    a demand from them.   And the seller eventually, at

16    closing, said not to communicate with them further.   So

17    if they're not part of the transaction, they're not part

18    of the transaction.

19      Q.   You did receive a demand from them.   It was

20    just for the incorrect borrower; correct?

21      A.   I don't know if that was even from them.

22    Because that borrower was not related to our property at

23    all, and it doesn't say Goldwater anywhere on that form.

24    So I don't know what that was that they sent.

25      Q.   Okay.

Page 123

1          I mean, let's go back to Exhibit 16.

2          We're looking at Exhibit 16, what was

3    previously marked Exhibit 16, and we're on page 6.

4          And there's an e-mail from Peter Hill to you

5    saying:  "Andrea here's our payoff letter.  Not to

6    pressure you, but when might we get a chance for the

7    estimated settlement?"

8          And you respond:  "This is for a different

9    borrower.  Can you please check?"

10         A.   Yes.

11         Q.   So at that point, you didn't know if the payoff

12    demand has been -- previously marked as Exhibit 10 -- so

13    I'll ask you.

14         Exhibit 10, is that the payoff demand that you

15    received from Peter Hill on March 25th, at 11:06, to

16    which you responded:  "This is for a different

17    borrower"?

18         A.   Yes.  That is the one.

19         Q.   Okay.

20         So you received this payoff demand from Peter

21    Hill.  So did you think this payoff demand was coming

22    from Goldwater?

23         A.   Yes.

24         Q.   So you received this payoff demand from

25    Goldwater.  So they're submitting a payoff demand.

Page 124

1    You're letting them know that it's the wrong borrower.

2    And Pete is trying to -- Pete sends you an e-mail right

3    after, you know, and says, here's the correct payoff

4    statement.

5              Did you ever follow up with Pete to see if he

6    had a correct payoff demand?

7              MR. KRISHEL:   Objection.   The question assumes

8    facts not in evidence, calls for speculation.

9              THE WITNESS:   There was no attachment to that

10   e-mail.

11             MR. THOMASON:   We join in that objection.

12   BY MR. LEVOTA:

13       Q.   Right.   There's no attachment to that e-mail.

14   So did you follow up and say, hey, Pete, you didn't

15   attach it?

16       A.   I believe I did.

17       Q.   The next e-mail says:   "Hey, you can disregard

18   the demand request now.   Seller has instructed us not to

19   make a payoff to Goldwater."

20             So what do you mean, you responded?

21       A.   Okay.   I did not respond further that I did not

22   receive his payoff because there was nothing attached.

23       Q.   So Goldwater sends you a payoff demand.   You

24   point out that it's for the wrong borrower.   They tried

25   to send you a corrected payoff demand.   And you don't

Page 125

1   receive it, but you don't follow up with them because

2   you've been told by Art not to communicate with them

3   anymore?

4        A.   Yes.   Correct.   That happened at the same time

5   that Mr. Elizarov said not to communicate with them.

6        Q.   So did you share any of that information with

7   the title company?

8        A.   No, I did not.

9        Q.   Why?

10        A.   That Mr. Elizarov said not to communicate with

11   this Goldwater?  Why did I not share that?

12        Q.   No.  Why did you not share with the title

13   company that Goldwater had been submitting a demand and

14   had been acting as though they were demanding money out

15   of this transaction as a mortgage company?

16        A.   Well, I thought they were affiliated with

17   Unison.  So I didn't see --

18        Q.   You've been told not to speak with them.  So

19   you don't think that they're affiliated anymore.

20        A.   Yeah.  Well, so, at this point then, when

21   they're not affiliated, I don't have a reason to advise

22   the title company because they're not part of the

23   transaction.

24        Q.   You don't think the title company would be

25   interested in knowing that a mortgage company was

Page 126

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0313

```
 1    you -- so that last e-mail chain left off on the 17th,
 2    and here we are on the 22nd.  And it looks -- and this
 3    last e-mail, it looks like you're just sending the
 4    request again.  Is that true?
 5         A.   That's the -- it's just the same subject line.
 6         Q.   Does this, at the top of page 7 of Exhibit 32,
 7    indicate that there was an attachment?
 8         A.   No.
 9         Q.   Okay.
10         And so then you continue to follow up with
11    them, and you provide them with a FedEx label to send
12    the demand to you and the documents; is that correct?
13         A.   Yes.
14         Q.   And during all of these communications -- now
15    we're in March 23rd; so that's after the Pete Hill
16    March 22nd, e-mail.  Did you ever e-mail Unison and ask
17    them what their connection to Goldwater was?
18         A.   No.
19         MR. LEVOTA:  We're going to look at what we are
20    going to mark as Exhibit 33.  It was distributed as
21    Goldwater AA.
22         (Exhibit 33 marked)
23    BY MR. LEVOTA:
24         Q.   Do you recognize this document?
25         A.   Yes.
```

Page 133

1        Q.   And who creates this document?

2        A.   A lender.  A buyer's lender.

3        Q.   The buyer's lender creates this document?

4        A.   Yes.

5        Q.   And on this document, then it says, in line 5:

6   "Payoff of second mortgage loan to Unison Holdings."

7            Do you see that?

8        A.   Yes.

9        Q.   Did you ever ask whoever prepared this document

10  why Unison was listed as a second mortgage loan?

11       A.   No.

12       Q.   Did you ever provide this disclosure to the

13  title company to let them know that someone was

14  purporting that Unison was a second mortgage lender?

15       A.   No.  This is a document for the buyer.  As part

16  of the loan documents, we don't share with anyone due to

17  privacy.  The only -- it's for the buyer.

18       Q.   I can understand that you didn't share the

19  document, but did you share the information that someone

20  is purporting that Unison is in a second mortgage

21  position?

22       A.   No.  I don't remember even seeing that as

23  specifically second mortgage on this form.

24       Q.   Do you recall seeing this form as part of the

25  escrow?

                                        Page 134

```
 1         A.  Yes.

 2         Q.  Was there ever anything that kept you from

 3     reading this document?

 4         A.  No.

 5              MR. LEVOTA:   I'm going to show you what we'll

 6     mark as Exhibit 34.   This was distributed as

 7     Goldwater BB.

 8              (Exhibit 34 marked)

 9     BY MR. LEVOTA:

10         Q.  Do you recognize this document?

11         A.  Yes.

12         Q.  And who prepares this document?

13         A.  We do.   Escrow of the West.

14         Q.  And so what is the document?

15         A.  This is the final closing statement for the

16     seller's side.

17         Q.  Down here towards the bottom it says

18     "professional courtesy discount."

19              Do you see that?

20         A.  Yes.

21         Q.  And what is that?

22         A.  It's a discount to the escrow fee.

23         Q.  And why was that provided?

24         A.  We often provide a discount for customers that

25     are repeat clients.
```

Page 135

1      Q.   So who receives the benefit of that discount,

2    the buyer or the seller?

3      A.   This is the seller because this is the seller's

4    statement.

5      Q.   So the seller received the benefit of this

6    discount, and it was because he was a repeat customer?

7      A.   Yes.

8      Q.   Is there -- okay.

9           MR. LEVOTA:   I'm going to show what we'll mark

10   as Exhibit 35.   It was circulated as Goldwater CC.

11           (Exhibit 35 marked)

12   BY MR. LEVOTA:

13      Q.   Do you recognize this document?

14      A.   Yes.

15      Q.   And what is this document?

16      A.   It's a request for an outgoing wire.

17      Q.   And what is being wired to whom?

18      A.   It is the net proceeds being wired to the

19   seller.

20      Q.   And it says that it's dated March 30th.   Was

21   that when the request for the wire transfer was made?

22      A.   Yes.

23      Q.   And then the amount stated, is that the amount

24   that was requested to be transferred?

25      A.   Yes.

Page 136

1     Q.   So that was transferred to Art as the seller in
2     this transaction?
3     A.   Yes.
4          MR. LEVOTA:  I'll show you what we'll mark as
5     Exhibit 36.  It was previously distributed as
6     Goldwater DD.
7          (Exhibit 36 marked)
8     BY MR. LEVOTA:
9     Q.   And we're looking at page 5 of this e-mail
10    chain, and we're looking at the very top of it.  Well,
11    it goes from the bottom of 4.  It's an e-mail from Art
12    to you on March 30th, 2021.
13         Do you see that?
14    A.   `Yes.
15    Q.   And then it says:  "Did I et the Andrea escrow
16    fee discount?  LOL."
17         What is your understanding of that sentence
18    this?
19    A.   He's asking for his professional courtesy
20    discount.
21    Q.   And how does he know that he's entitled to
22    that?
23    A.   He has received it on previous transactions.
24    Q.   So then you're responding:  "Sorry about that.
25    Attached is the corrected final statement.  We removed

Page 137

1    deposition transcript.

2            The parties to this action all stipulated that

3    a certified copy of the deposition transcript can be

4    used in lieu of the original for all purposes.  Other

5    than that, we will follow the procedures per code for

6    the handling of the deposition transcript.

7            Everyone please confirm.

8            MR. LEVOTA:  Confirmed.

9            MR. BISHARAT:  Confirmed on behalf of Unison.

10           MR. ALEKSEYEFF:  Yes for Art Elizarov and

11    myself.

12           MR. LEVOTA:  Thank you very much.

13           MR. KATZ:  With that, we'll conclude the

14    deposition.

15           (The deposition concluded at 4:05 p.m.)

16                          * * *

17

18

19

20

21

22

23

24

25

                                          Page 169

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0319

```
1                  DECLARATION UNDER PENALTY OF PERJURY

2

3          I, ANDREA CROSS, do hereby certify under penalty

4    of perjury that I have read the foregoing transcript of

5    my deposition taken June 29, 2022; that I have made such

6    corrections as appear noted herein, in ink, initialed by

7    me; that my testimony as contained herein, as corrected,

8    is true and correct.

9

10         DATED this          day of                  , 2022,

11   at                            , California.

12

13

14

15

16                                    ANDREA CROSS

17

18

19

20

21

22

23

24

25

                                           Page 170
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0320

```
 1                   REPORTER'S CERTIFICATION

 2

 3        I, Michelle K. Bailey, Certified Shorthand

 4   Reporter, in and for the State of California, do hereby

 5   certify:

 6

 7         That the foregoing witness was by me duly sworn;

 8   that the deposition was then taken before me at the time

 9   and place herein set forth; that the testimony and

10   proceedings were reported stenographically by me and

11   later transcribed into typewriting under my direction;

12   that the foregoing is a true record of the testimony and

13   proceedings taken at that time.

14

15         IN WITNESS WHEREOF, I have subscribed my name this

16         day of July 19, 2022.

17   Signature was requested.

18

19

20

21                                Michelle K. Bailey

22                                RPR, CSR No. 10713

23

24

25

                                             Page 171
```

1   DANIEL KRISHEL, ESQ.

2   daniel@krishellawfirm.com

3                                       JULY 19, 2022

4   RE: GOLDWATER BANK, N.A. VS. ARTUR ELIZAROV

5   JUNE 29, 2022, ANDREA CROSS, JOB NO. 5294007

6   The above-referenced transcript has been

7   completed by Veritext Legal Solutions and

8   review of the transcript is being handled as follows:

9   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10      to schedule a time to review the original transcript at

11      a Veritext office.

12  __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13      Transcript - The witness should review the transcript and

14      make any necessary corrections on the errata pages included

15      below, noting the page and line number of the corrections.

16      The witness should then sign and date the errata and penalty

17      of perjury pages and return the completed pages to all

18      appearing counsel within the period of time determined at

19      the deposition or provided by the Code of Civil Procedure.

20  __ Waiving the CA Code of Civil Procedure per Stipulation of

21      Counsel - Original transcript to be released for signature

22      as determined at the deposition.

23  __ Signature Waived - Reading & Signature was waived at the

24      time of the deposition.

25

                                                  Page 172

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0322

1    _X_Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF

2       Transcript - The witness should review the transcript and

3       make any necessary corrections on the errata pages included

4       below, notating the page and line number of the corrections.

5       The witness should then sign and date the errata and penalty

6       of perjury pages and return the completed pages to all

7       appearing counsel within the period of time determined at

8       the deposition or provided by the Federal Rules.

9    __ Federal R&S Not Requested - Reading & Signature was not

10      requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page  173

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0323

```
 1   GOLDWATER BANK, N.A. VS. ARTUR ELIZAROV

 2   ANDREA CROSS (#5294007)

 3                    E R R A T A   S H E E T

 4   PAGE_____ LINE_____ CHANGE_____

 5   _____

 6   REASON_____

 7   PAGE_____ LINE_____ CHANGE_____

 8   _____

 9   REASON_____

10   PAGE_____ LINE_____ CHANGE_____

11   _____

12   REASON_____

13   PAGE_____ LINE_____ CHANGE_____

14   _____

15   REASON_____

16   PAGE_____ LINE_____ CHANGE_____

17   _____

18   REASON_____

19   PAGE_____ LINE_____ CHANGE_____

20   _____

21   REASON_____

22

23   _____    _____

24   WITNESS                                  Date

25

                                         Page 174
```

# EXHIBIT 25

## EXCERPTS FROM THE TRANSCRIPT OF THE DEPOSITION OF ARTUR ELIZAROV

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
**Transcript of Proceedings on 09/23/2022**

```
 1              UNITED STATES DISTRICT COURT

 2            CENTRAL DISTRICT OF CALIFORNIA

 3

 4

 5   GOLDWATER BANK, N.A.,                    )
                                             )
 6           PLAINTIFF,                       )
                                             )  CASE NO.
 7      VS.                                   )  5:21-CV-
                                             )  00616-JWH-
 8   ARTUR ELIZAROV, ET. AL.                  )  SPX
                                             )
 9           DEFENDANTS.                      )
     _____ )
10

11

12          REPORTER'S TRANSCRIPT OF PROCEEDINGS

13             FRIDAY SEPTEMBER 23, 2022

14                   VOLUME I

15

16

17

18

19

20

21

22

23

24
     MARIANNE DER CLINT, CSR #10847
25   OFFICIAL REPORTER
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0326

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
**Transcript of Proceedings on 09/23/2022**                    **Page 2**

```
 1    APPEARANCES:

 2

 3    FOR THE PLAINTIFF:        WAGNER HICKS PLLC
                                BY:  SEAN WAGNER, ESQ.
 4                              DEREK M. BAST, ESQ.
                                831 EAST MOREHEAD STREET
 5                              SUITE 860
                                CHARLOTTE, NORTH CAROLINA 28202
 6                              (704) 705-7538

 7
      FOR THE DEFENDANT,        LAW OFFICE OF ILYA ALEKSEYEFF
 8    ARTUR ELIZAROV:           BY: ILYA ALEKSEYEFF, ESQ.
                                727 WEST 7TH STREET
 9                              PH 1-13
                                LOS ANGELES, CALIFORNIA 90017
10                              (213) 537-4592
                                ILYA@LOIA.LEGAL
11

12    FOR THE CROSS-DEFENDANT, ORSUS GATE
      UNISON AGREEMENT CORP.:   BY:  NABIL BISHARAT, ESQ.
13                              16 NORTH MARENGO AV.
                                SUITE 316
14                              PASADENA, CALIFORNIA  91101
                                (213) 373-4357
15

16    FOR THE CROSS-DEFENDANT, HILBERT & SATTERLY LLP
      GOLDWATER:               BY:  JOSEPH A. LE VOTA, ESQ.
17                              409 CAMINO DEL RIO SOUTH
                                SUITE 104
18                              SAN DIEGO, CALIFORNIA 92108
                                (619) 795-0300
19

20    FOR THE CROSS-DEFENDANT, HALL GRIFFIN
      SCOTT HOWLETT:           BY: RYAN THOMASON, ESQ.
21                              1851 EAST FIRST STREET
                                10TH FLOOR
22                              SANTA ANA, CALIFORNIA 92705
                                (714) 918-7000
23

24

25
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0327

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                          Page 3

```
 1                       I N D E X

 2

 3

 4              CHRONOLOGICAL INDEX OF WITNESSES

 5

 6   WITNESSES:                                      PAGE

 7   ARTUR ELIZAROV
          DIRECT EXAMINATION BY MR. WAGNER          19
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0328

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                                    Page 4

```
 1                  M A S T E R   I N D E X

 2
                      SEPTEMBER 23, 2022
 3

 4
                          EXHIBITS
 5

 6   PEOPLE'S           DESCRIPTION        MARKED RECEIVED

 7   EXHIBIT 100   DRIVER'S LICENSE        70

 8   EXHIBIT 100-1 DRAWING                 192

 9   EXHIBIT 101   CERTIFICATE OF DOMESTIC 80
                   PARTNERSHIP
10   EXHIBIT 102   LOAN APPLICATION        105

11   EXHIBIT 103   TEXT MESSAGE EXCHANGE   115

12   EXHIBIT 104   7/31/2019 DOCUMENT      204

13   EXHIBIT 105   DEED OF TRUST,          207
                   7/31/19
14   EXHIBIT 106   DEED OF TRUST           207

15   EXHIBIT 107   MORTGAGE ASSISTANCE     209
                   APPLICATION
16   EXHIBIT 108   CORRESPONDENCE          221

17   EXHIBIT 109   CORRESPONDENCE          221

18   EXHIBIT 110   CORRESPONDENCE          222

19   EXHIBIT 111   E-MAIL                  224
                   CORRESPONDENCE
20   EXHIBIT 112   E-MAIL                  227

21   EXHIBIT 113   COMMUNICATION           229
                   RE: FORBEARANCE
22   EXHIBIT 114   E-MAIL TO PETER HILL    232

23   EXHIBIT 115   CALIFORNIA             232
                   RESIDENTIAL PURCHASE
24                 AGREEMENT AND JOINT
                   ESCROW INSTRUCTIONS
25   EXHIBIT 116   SUPPLEMENTAL ESCROW     239
                   INSTRUCTIONS
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0329

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                        Page 5

```
 1    EXHIBIT 117    COMMUNICATIONS WITH      242
                     UNISON
 2    EXHIBIT 118    (NO DESCRIPTION)         254

 3    EXHIBIT 119    E-MAIL                   260
                     CORRESPONDENCE TO PETER
 4    EXHIBIT 120    E-MAIL EXCHANGES         264
                     3/24-3/25
 5    EXHIBIT 122    E-MAIL EXCHANGES/PETER   276
                     HILL
 6    EXHIBIT 123    SUMMARY                  278

 7    EXHIBIT 124    BATES 40-41              282

 8    EXHIBIT 126    ELIZAROV PRODUCTION      288
                     PAGES 59-63
 9


10
      DEFENDANT'S      DESCRIPTION        MARKED RECEIVED
11
      (NONE)
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.
Transcript of Proceedings on 09/23/2022                          Page 19

```
 1                    DIRECT EXAMINATION

 2  BY MR. WAGNER:

 3      Q    Okay.  Good morning, Mr. Elizarov.  How are

 4  you this morning?

 5      A    I'm well, thank you.

 6      Q    Would you please state your name for the

 7  record, your full name.

 8      A    Artur Elizarov, that's A-R-T-U-R, last name

 9  E-L-I-Z, as in "zebra," A-R-O-V, as in "Victor."

10      Q    Great.  And, Mr. Elizarov, have you ever gone

11  by any other name?

12      A    I have not.

13      Q    Okay.  Great.  Have you ever done a -- sat for

14  a deposition before, Mr. Elizarov?

15      A    I have.

16      Q    Okay.  Great.  How many?  How many times?

17      A    Somewhere between two dozen and three dozen

18  over my career professionally, and one on a personal

19  basis, to be more specific.

20      Q    Okay.  And when you mentioned over the course

21  of your career on a professional basis, you are meaning

22  as part of a job that you had a job that you performed?

23      A    That is correct.

24      Q    Okay.  And did you sit as a fact witness or as

25  an expert witness?
```

```
 1        Q    Okay.

 2        A    But we owned the property.

 3        Q    Okay.  And Overlook Drive, that was in just

 4    your name?

 5        A    Correct.

 6        Q    Okay.  And then the other one you mentioned

 7    was the Wilton Manors house; is that right?

 8        A    Morrison?

 9        Q    Oh, Morrison.  How was that held?  Did you own

10    it by yourself?

11        A    I believe I owned it by myself but

12    Mr. Alekseyeff might have been on title at some point.

13        Q    Okay.

14        A    I held the mortgage.

15        Q    Okay.  The Tiara property, do you recall the

16    time period?  I'm just trying to get back certain

17    amount of time here.  When did you move into that

18    property?

19        A    I could not tell you.

20        Q    How long did you live there?

21        A    Could not tell you.

22        Q    Did you live there for the entire time that

23    you own today?

24        A    Yes.

25        Q    Okay.
```

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                      Page 232

```
 1    A    Yeah.
 2         MR. WAGNER:  I'm going to hand you what we'll
 3    mark as Exhibit 114.  Please take a moment to review it
 4    and let me know when you've done so.
 5         (Plaintiff's Exhibit No. 114, E-mail to Peter
 6         Hill, was marked for identification.)
 7         THE WITNESS:  Okay.
 8    BY MR. WAGNER:
 9    Q    Do you recognize Exhibit 114?
10    A    It's an e-mail that appears to have been sent
11    to Peter Hill by me.  And it's the contact information
12    for Andrea Cross.
13    Q    Okay.  And when you turn it over to the second
14    page, does it appear to indicate that there are some
15    attachments?
16    A    Yeah.
17    Q    Okay.  I'm going to hand you what we'll mark
18    as Exhibit 115.  All right.
19         (Plaintiff's Exhibit No. 115, California
20         residential purchase agreement and joint
21         escrow instructions, was marked for
22         identification.)
23    BY MR. WAGNER:
24    Q    Do you recognize Exhibit 115?
25    A    Yep.
```

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
**Transcript of Proceedings on 09/23/2022**                                    Page 233

```
 1      Q    And what do you recognize it to be?

 2      A    A California residential purchase agreement

 3   and joint escrow instructions as entitled above on

 4   Page 1.

 5      Q    Okay.  And would you please turn to -- let's

 6   see, turn to the last page, Page 10 of 10.

 7      A    Sure.

 8      Q    And --

 9      A    9 of 10.  It's double-sided.  Okay.

10      Q    Yeah.  If you'll look at the top of that page,

11   there appears to be an electronic signature there and

12   credit name of Artur Elizarov?

13      A    I must have, but it is a digital signature.

14      Q    And you testified earlier you commonly use

15   Docusign; correct?

16      A    Yeah.

17      Q    Okay.  So wouldn't have been unusual for you

18   to Docusign this document?

19      A    No, it wouldn't have been.

20      Q    In your experience as a realtor in the recent

21   past, let's say, the last three to four years, has it

22   become more and more common for realtors to use

23   Docusign as part of these transactions?

24      A    Actually not Docusign, but yes.

25      Q    A form of electronic signature?
```

1    seven-day -- because it has to be done by motion on the

2    local rules, it's not just like objections like other

3    courts.  If it's a motion, it's a meet and confer.  We

4    do have one on Monday, I think, at 11:00.

5            MR. WAGNER:  Right.

6            MR. ALEKSEYEFF:  So maybe we can -- I will let

7    you know on Monday quickly, because we don't really

8    have to meet and confer that much because you know

9    exactly what my requirements.  It's not like I'm

10   bringing anything new.  It's just whatever I told her

11   she got wrong, that's essentially what it is.

12           MR. WAGNER:  Okay.

13           MR. ALEKSEYEFF:  So I don't think it's going

14   to be that that involved, but I will definitely let you

15   know if I've decided to move forward or not and most

16   likely not.

17           MR. WAGNER:  Thank you.

18           Madam court reporter, thank you.  We

19   appreciate it.

20           And we're off.

21

22           (Whereupon the proceedings were

23                concluded at 6:35 a.m.)

24

25

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
**Transcript of Proceedings on 09/23/2022**                    **Page 295**

```
 1    STATE OF CALIFORNIA      )

 2                             )   ss.

 3    COUNTY OF LOS ANGELES    )

 4

 5

 6

 7

 8        I, _____, the undersigned,

 9    say I have read the foregoing deposition and hereby

10    declare under penalty of perjury the foregoing is true

11    and correct.

12

13            Executed this _____ day of _____, 20___,

14    at_____,_____.

15

16

17

18

19          _____
20                      D E C L A R A N T

21

22

23

24

25
```

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                    Page 296

```
1                          )

2    STATE OF CALIFORNIA)    ss.

3                          )

4

5            I, MARIANNE L. DER CLINT, 10847, a

6    Certified Shorthand Reporter within and for the State

7    of California, do hereby declare:

8            That pursuant to 2093 (b) CCP, I administered

9    the oath to the deponent;

10           That the foregoing deposition was taken before

11   me at the time and place set forth and was taken down

12   by me in shorthand and thereafter transcribed under my

13   direction and supervision;

14           That the foregoing deposition is a full, true

15   and correct transcript of my shorthand notes so taken.

16           I further declare that I am neither counsel

17   for, nor related to, any of the parties to said action,

18   nor in any way interested in the outcome thereof.

19           I declare under penalty of perjury this

20   5th day of October, 2022, that the foregoing is true

21   and correct.

22

23                 CERTIFIED SHORTHAND REPORTER FOR
                      THE STATE OF CALIFORNIA
24

25
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0337

# EXHIBIT 26

# EXCERPTS FROM THE TRANSCRIPT OF THE DEPOSITION OF SCOTT HOWLETT

1                   UNITED STATES DISTRICT COURT

2                  CENTRAL DISTRICT OF CALIFORNIA

3      _____

4      GOLDWATER BANK, N.A.,

5               Plaintiff,

6          v.                              Case No.

7      ARTUR ELIZAROV, UNISON AGREEMENT      5:21-cv-00616-

8      CORP., SCOTT HOWLETT, BANK OF         JWH-SPx

9      THE WEST, and ILYA ALEKSEYEFF,

10              Defendants,

11     _____

12     SCOTT HOWLETT,

13              Cross-complainant,

14         v.

15     ARTUR ELIZAROV, ET AL.,

16              Cross-defendants.

17     _____

18                  VIDEOCONFERENCE DEPOSITION OF

19                      SCOTT HOWLETT

20     DATE:          Thursday, September 15, 2022

21     TIME:          1:38 p.m.

22     LOCATION:      Remote Proceeding

23                    San Francisco, CA

24     REPORTED BY:   Jess Wakefield, Notary Public

25     JOB NO.:       5382189

                                              Page 1

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0339

```
 1                    A P P E A R A N C E S

 2    ON BEHALF OF PLAINTIFF GOLDWATER BANK, N.A.:

 3         JOSEPH A. LEVOTA, ESQUIRE (by videoconference)

 4         Hilbert & Satterly LLP

 5         409 Camino Del Rio South, Suite 104

 6         San Diego, CA 92108

 7         jlevota@hscallaw.com

 8         (619) 795-0300

 9

10    ON BEHALF OF PLAINTIFF GOLDWATER BANK, N.A.:

11         DEREK M. BAST, ESQUIRE (by videoconference)

12         Wagner Hicks PLLC (NC)

13         831 East Morehead Street, Suite 860

14         Charlotte, NC 28202

15         derek.bast@wagnerhicks.law

16         (704) 705-7538

17

18    ON BEHALF OF DEFENDANT UNISON AGREEMENT CORP.:

19         JENNIFER HAIDER, ESQUIRE (by videoconference)

20         Orsus Gate

21         388 Market Street, Suite 1300

22         San Francisco, CA 94111

23         jhaider@orsusgate.com

24         (213) 674-9042

25
                                             Page  2
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0340

```
 1              A P P E A R A N C E S (Cont'd)

 2    ON BEHALF OF DEFENDANT AND CROSS-DEFENDANT ARTUR

 3    ELIZAROV:

 4         ILYA ALEKSEYEFF, ESQUIRE (by videoconference)

 5         Loia, Inc. (APLC)

 6         8721 Santa Monica Boulevard, Suite 119

 7         West Hollywood, CA 90069

 8         ilya@loia.legal

 9

10    ON BEHALF OF DEFENDANT AND CROSS-COMPLAINANT SCOTT

11    HOWLETT AND DEFENDANT BANK OF THE WEST:

12         JEREMY KATZ, ESQUIRE (by videoconference)

13         Hall Griffin LLP

14         1851 East First Street, 10th Floor

15         Santa Ana, CA 92705

16         jkatz@hallgriffin.com

17         (714) 918-7000

18

19         RYAN C. THOMASON, ESQUIRE (by videoconference)

20         Hall Griffin LLP

21         1851 East First Street, 10th Floor

22         Santa Ana, CA 92705

23         rthomason@hallgriffin.com

24

25
                                             Page  3
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0341

```
 1                    I N D E X

 2   EXAMINATION:                               PAGE

 3        By Mr. Levota                         8

 4        By Ms. Haider                         50

 5


 6                  E X H I B I T S

 7   NO.             DESCRIPTION                 PAGE

 8   Exhibit 5       Amended Preliminary Notice  29

 9   Exhibit 12      Supplemental Escrow Instructions  32

10   Exhibit 13      Amended Escrow Instructions  34

11   Exhibit 14      Page 10 of 10, Purchase and

12                   Sale Agreement              25

13   Exhibit 15      Lender's Closing Instructions  33

14   Exhibit 23      Preliminary Report          27

15   Exhibit 72      Uniform Residential Loan

16                   Application                 30

17   Exhibit 73      Note                        36

18   Exhibit 74      Deed of Trust               39

19   Exhibit 75      Buyer's Final Settlement

20                   Statement                   40

21               (Exhibits retained by counsel.)

22

23

24

25

                                         Page  4
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0342

```
 1              E X H I B I T S (Cont'd)

 2      P R E V I O U S L Y  M A R K E D  E X H I B I T S

 3   NO.              DESCRIPTION                    PAGE

 4   Exhibit 2      Purchase Agreement                23

 5   Exhibit 38     Email Chain                       42

 6             (Exhibits retained by counsel.)

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                          Page  5
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0343

```
 1                  P R O C E E D I N G S
 2                  THE REPORTER:  Good afternoon.  We're on
 3      the record at 1:38 p.m. Pacific Daylight Time.  My name
 4      is Jess Wakefield; I am the reporter assigned by
 5      Veritext to take the record of this proceeding.
 6                  This is the deposition of Scott Howlett
 7      taken in the matter of Goldwater Bank, N.A., vs. Artur
 8      Elizarov, et al., on September 15, 2022.
 9                  Mr. Howlett, what city and state are you
10      in right now?
11                  MR. HOWLETT:  San Francisco, California.
12                  THE REPORTER:  Thank you.
13                  I'm a notary authorized to take
14      acknowledgments and administer oaths in Washington
15      state.  Parties agree that I will swear in witness
16      remotely outside of his or her presence.
17                  Additionally, absent an objection on the
18      record before the witness is sworn, all parties and the
19      witness understand and agree that any certified
20      transcript produced from the recording virtually of this
21      proceeding:
22                  - is intended for all uses permitted
23                    under applicable procedural and
24                    evidentiary rules and laws in the same
25                    manner as a deposition recorded by
```

Page 6

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0344

```
 1                  (Exhibit 2 was previously marked for
 2                  identification.)
 3            Okay.  And this is going to be the format of
 4     the deposition, will be that I share my screen with
 5     certain documents that are being marked as exhibits.
 6     Almost all of them or most of them --
 7        A    Could you please just give me a moment?  I
 8     need to readjust my screen so I can see both you and
 9     the -- and the document.
10        Q    Okay.
11        A    Okay.
12        Q    And so all I'm saying is that I'll be showing
13     a document.  Unfortunately, you don't have the power to
14     flip through it yourself.  But if at any point you want
15     to see more of a document or I'm scrolling too fast,
16     then let me know.  And I'll show you any part of any
17     document that we're going over here today.
18            So to start off, this is a document entitled
19     California Residential Purchase Agreement in Joint
20     Escrow Instructions.  It's ten pages, and I'm scrolling
21     through each page.  At the bottom, there are some
22     initials.
23            At the bottom, there appears to be buyer's
24     initials SH, and we're looking at page 4 of Exhibit 2;
25     do you see that?
```

Page 23

1        A        Yes.

2        Q        Are those your initials?

3        A        Yes.

4        Q        And so we're just going through.  And then,

5   again, page 5, again, buyer's initials, SH.   That's you;

6   right?

7        A        Yes.

8        Q        And so we're getting through, and we're at now

9   page 9 of Exhibit 2.   And there's a part where it has a

10  buyer, and it has your name printed.   And then there's a

11  signature next to that; do you see that?

12        A        Yes.

13        Q        Is it your understanding that that's your

14  electronic signature on this document?

15        A        I think that's one of the font options on

16  DocuSign, and yes.

17        Q        And it appears to be dated February 14, 2021.

18  Is it your recollection that that's the date that you

19  affixed your electronic signature to this document?

20        A        I have no reason to think that's not the date.

21        Q        And then moving to page 10, then there appears

22  to be a signature by the seller.   And I'm not asking you

23  to authenticate that it is his signature but to confirm

24  that it was your understanding that the seller was

25  signing this document; correct?

Page  24

1       A       That was my understanding.

2       Q       Okay.   And so we've gone through this, and I'm

3   back at the first page here.   And this appears to be the

4   purchase and sale agreement for your acquisition of the

5   Overlook property; correct?

6       A       Correct.

7       Q       And it is, date prepared, February 12th of

8   2021.   And is that your recollection of when this was

9   prepared and around the time it was executed?

10      A       That seems about right.

11      Q       So after there's a purchase and sale

12  agreement, then there's usually the opening of escrow.

13  So was escrow opened with respect to this transaction?

14      A       I believe so.   I mean, I think that happened

15  shortly thereafter.

16      Q       And I'm going to go ahead and show you what's

17  been previously marked as Exhibit 14 and what we'll mark

18  as Exhibit 14 for this deposition.

19                  (Exhibit 14 was marked for

20                  identification.)

21          This is a one-page document, and this is page

22  10 of 10 of the purchase and sale agreement that we were

23  just looking at.   But this page has some information for

24  the escrow holder; do you see that?

25      A       I see what you're saying.   I'm not sure if

                                            Page 25

```
 1                And the best example I can give you is a deed.
 2      So your deed has been recorded in the county recorder's
 3      office.  So that's what I refer to as a recorded
 4      document.  Do you know if you looked at any recorded
 5      documents as part of your purchase of the property?
 6          A    I don't recall anything aside from, I think,
 7      the disclosures.  If it's in that packet, then I would
 8      have read it and been prompted to review it.  But I
 9      don't remember anything special.
10          Q    Let me back up.  I'm sorry.  Did you do any
11      independent research into the property outside of
12      whatever your real estate agent gave you or whatever you
13      received from escrow part of the transaction?
14          A    No.
15          Q    Okay.  I think I might know the answer to
16      this, but I'm going to go ahead and show you what we've
17      marked as Exhibit 5.
18                    (Exhibit 5 was marked for
19                     identification.)
20                It's entitled Amended Preliminary Notice.  And
21      again, this refers to the Overlook property.  And it
22      appears to be addressed to Escrow of the West.  It's
23      four pages long.  Do you recall seeing this document
24      before?
25          A    No.
```

Page 29

```
 1        Q     Okay.

 2        A     I remember seeing the name Orange County Title

 3   somewhere, but I -- I don't remember the documents

 4   you've asked me about.

 5        Q     Do you recall ever speaking with anyone at

 6   Orange Coast Title regarding the property?

 7        A     No.  I don't think I ever have.

 8        Q     Okay.  I know we've established that you don't

 9   recall seeing the preliminary report or the amended

10   preliminary report that we've attached as exhibits.  But

11   I still have to ask: Did you ever, in any general sense,

12   speak to anybody about a preliminary report or amended

13   preliminary report affecting the property?

14        A     No.

15        Q     Okay.  All right.  I'm going to share my

16   screen again.  This is a document that we've previously

17   marked as Exhibit 72, and it will be 72 for this

18   deposition.

19                   (Exhibit 72 was marked for

20                    identification.)

21             It's a 13-page document.  It began with the

22   title Uniform Residential Loan Application.  And I'm

23   scrolling through quickly.  But I'm going to ask you, on

24   page 6 of this document, Exhibit 72, it looks like

25   there's a signature above where your name is printed; do
```

                                          Page 30

```
 1              This is a three-page email chain.  I'm going
 2    to go to the bottom of the email chain as that's the
 3    furthest back in time.  Do you see this page 3 of 3 at
 4    the bottom?
 5         A    Yes.
 6         Q    Where it starts off on April 13, 2021, and it
 7    has an email of scott.howlett@yahoo.com?   Is that your
 8    email address?
 9         A    Yes.
10         Q    Okay.  And it looks like you're emailing her
11    to send you a copy of your title insurance policy.  And
12    do you recall sending this email to Andrea?
13         A    Yes.
14         Q    And this was meant to go to Andrea Cross, the
15    escrow officer for your purchase?
16         A    That was -- yes.  That was what my agent
17    instructed me to do when I called her to say that this
18    came up.
19         Q    So what came up to cause you to email Andrea?
20         A    My partner was at the house, and someone
21    served papers over the gate.
22         Q    And was that on April 13th?
23         A    I don't remember.
24         Q    Would it be near that time?
25         A    Yes.  I -- I think.  I mean, I acted quickly.
```

Page 43

1    that.  And, no, thank you.  I do not need a copy.

2                    THE REPORTER:  I apologize.

3                    MR. ALEKSEYEFF:  No worries.  I did not

4    mean to make you feel bad.

5                    MR. LEVOTA:  Probably not the first time.

6                    MR. ALEKSEYEFF:  I always want to know,

7    how will people butcher my name?  Yours is a very

8    typical one, so I'm not upset.  I've had worse.

9                    THE REPORTER:  All right.  Well, then,

10   we're off the record at 2:55 p.m.

11                   (Signature reserved.)

12                   (Whereupon, at 2:55 p.m., the proceeding

13                   was concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

                                              Page 55

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0351

```
1              CERTIFICATE OF DEPOSITION OFFICER

2              I, JESS WAKEFIELD, the officer before whom the

3      foregoing proceedings were taken, do hereby certify that

4      any witness(es) in the foregoing proceedings, prior to

5      testifying, were duly sworn; that the proceedings were

6      recorded by me and thereafter reduced to typewriting by

7      a qualified transcriptionist; that said digital audio

8      recording of said proceedings are a true and accurate

9      record to the best of my knowledge, skills, and ability;

10     that I am neither counsel for, related to, nor employed

11     by any of the parties to the action in which this was

12     taken; and, further, that I am not a relative or

13     employee of any counsel or attorney employed by the

14     parties hereto, nor financially or otherwise interested

15     in the outcome of this action.

16

17     JESS WAKEFIELD

18     Notary Public in and for the

19     State of Washington

20

21     [X] Review of the transcript was requested.

22

23

24

25

                                              Page 56
```

```
1                    CERTIFICATE OF TRANSCRIBER

2              I, SARAH COSTA, do hereby certify that this

3      transcript was prepared from the digital audio recording

4      of the foregoing proceeding, that said transcript is a

5      true and accurate record of the proceedings to the best

6      of my knowledge, skills, and ability; that I am neither

7      counsel for, related to, nor employed by any of the

8      parties to the action in which this was taken; and,

9      further, that I am not a relative or employee of any

10     counsel or attorney employed by the parties hereto, nor

11     financially or otherwise interested in the outcome of

12     this action.

13

14
```



```
15     SARAH COSTA

16

17

18

19

20

21

22

23

24

25

                                                  Page 57
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0353

1    JEREMY KATZ, ESQ.

2    jkatz@hallgriffin.com

3                                    October 3, 2022

4    RE: GOLDWATER BANK, N.A. vs. ELIZAROV

5    September 15, 2022, SCOTT HOWLETT, JOB NO. 5382189

6    The above-referenced transcript has been

7    completed by Veritext Legal Solutions and

8    review of the transcript is being handled as follows:

9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10       to schedule a time to review the original transcript at

11       a Veritext office.

12   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13       Transcript - The witness should review the transcript and

14       make any necessary corrections on the errata pages included

15       below, noting the page and line number of the corrections.

16       The witness should then sign and date the errata and penalty

17       of perjury pages and return the completed pages to all

18       appearing counsel within the period of time determined at

19       the deposition or provided by the Code of Civil Procedure.

20   __ Waiving the CA Code of Civil Procedure per Stipulation of

21       Counsel - Original transcript to be released for signature

22       as determined at the deposition.

23   __ Signature Waived - Reading & Signature was waived at the

24       time of the deposition.

25

                                              Page 58

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0354

1    _x_ Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF

2        Transcript - The witness should review the transcript and

3        make any necessary corrections on the errata pages included

4        below, notating the page and line number of the corrections.

5        The witness should then sign and date the errata and penalty

6        of perjury pages and return the completed pages to all

7        appearing counsel within the period of time determined at

8        the deposition or provided by the Federal Rules.

9    __ Federal R&S Not Requested - Reading & Signature was not

10       requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 59

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0355

```
 1   GOLDWATER BANK, N.A. vs. ELIZAROV

 2   SCOTT HOWLETT (#5382189)

 3                    E R R A T A   S H E E T

 4   PAGE_____ LINE_____ CHANGE_____

 5   _____

 6   REASON_____

 7   PAGE_____ LINE_____ CHANGE_____

 8   _____

 9   REASON_____

10   PAGE_____ LINE_____ CHANGE_____

11   _____

12   REASON_____

13   PAGE_____ LINE_____ CHANGE_____

14   _____

15   REASON_____

16   PAGE_____ LINE_____ CHANGE_____

17   _____

18   REASON_____

19   PAGE_____ LINE_____ CHANGE_____

20   _____

21   REASON_____

22

23   _____    _____

24   WITNESS                             Date

25
```

Page 60

# EXHIBIT 27

## EXCERPTS FROM THE TRANSCRIPT OF
## THE DEPOSITION OF
## JACQUELINE SCYDICK

1                   UNITED STATES DISTRICT COURT

                   CENTRAL DISTRICT OF CALIFORNIA

2

                   Case No. 5:21-cv-00616-JWH-SPx

3

4        GOLDWATER BANK, N.A.,

5                        Plaintiff,

6        vs.

7        ARTUR ELIZAROV, ET AL,

8                        Defendants.

         _____/

9

10

11

12                   REMOTE DEPOSITION OF

13

14                   JACQUELINE SCYDICK

15

16

17               Tuesday, September 13, 2022

18               3:00 p.m. - 4:06 p.m. (CDT)

19

20

21

22

23               Stenographically Reported By:

24               Kimberly Fontalvo, RPR,CLR

25           Realtime Systems Administrator

                                        Page 1

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0358

```
 1      APPEARANCES:
 2
        On behalf of Plaintiff/Cross-Defendant:
 3
            HILBERT & SATTERLY, LLP
 4          409 Camino del Rio S.
            San Diego, CA  92108
 5          BY:  JOSEPH A. LEVOTA, ESQ.
 6
 7          WAGNER HICKS, PLLC
            831 East Morehead Street, Suite 860
 8          Charlotte, NC  28202
            BY:  DEREK M. BAST, ESQ.
 9
10
        On behalf of Defendant/Elizarov:
11
            LOIA, INC. (APLC)
12          727 West 7th Street, PH1-13
            Los Angeles, CA  90017
13          BY:  ILYA ALEKSEYEFF, ESQ.
14
        On behalf of Unison Agreement Corp.:
15
            ORSUS & GATE
16          201 Spear Street
            San Francisco, CA  94105
17          BY:  NABIL BASHARAT, ESQ.
18
        On behalf of Bank of the West/Deponent:
19
            HALL GRIFFIN
20          1851 East First Street
            Santa Ana, CA  9270
21          BY:  JEREMY KATZ, Esq.
            BY:  RYAN THOMASON, Esq.
22
23
24
25
```

<div align="right">Page 2</div>

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0359

```
 1                       I N D E X
 2    Examination                              Page
 3
      Direct              By Mr. Levota           4
 4    Cross               By Mr. Alekseyeff      36
      Cross               By Mr. Basharat        39
 5
      Certificate of Oath                        44
 6    Certificate of Reporter                    45
 7
 8                       EXHIBITS
 9
10    No.                                      Page
11    Exhibit 5      Amended Preliminary         18
                     Report
12
      Exhibit 15     Lender's Closing            20
13                   Instructions
14    Exhibit 23     Preliminary Report          12
15    Exhibit 33     Closing disclosure          24
16    Exhibit 71     Plaintiff/Cross-Defendant    6
                     Goldwater Bank, N.A.'s
17                   Amended Notice of
                     Deposition of Bank of the
18                   West's Person(s) Most
                     Knowledgable
19
      Exhibit 72     Uniform Residential Loan    10
20                   Application
21    Exhibit 73     Note                        28
22    Exhibit 74     Deed of Trust               29
23    Exhibit 75     Buyer's Final Settlement    33
                     Statement
24
25
                                            Page  3
```

```
 1              THE COURT REPORTER:  Please raise your
 2         right hand.
 3              Do you swear or affirm that the testimony
 4         you are about to give will be the truth, the
 5         whole truth, and nothing but the truth?
 6              THE WITNESS:  Yes.
 7                   DIRECT EXAMINATION
 8    BY MR. LEVOTA:
 9         Q.   Hello.  My name is Joseph Levota and I
10    represent Goldwater Bank in this litigation and I'll
11    be asking you questions today.
12              My first question is could you state and
13    spell your name for the record, please?
14         A.   It's Jacqueline Marie Scydick.  First name
15    is Jacqueline, J-A-C-Q-U-E-L-I-N-E, middle name is
16    Marie, M-A-R-I-E, and last name is Scydick,
17    S-C-Y-D-I-C-K.
18         Q.   Could you tell us who your current
19    employer is?
20         A.   Bank of the West.
21         Q.   And what is your current job title?
22         A.   Senior vice president.
23         Q.   And what are your duties as senior vice
24    president?
25         A.   I'm responsible for management of the
```

                                           Page  4

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0361

```
 1          Q.    Prior to receiving this loan application
 2     from Mr. Howlett, did Bank of the West have, to your
 3     knowledge, any information regarding the property or
 4     any -- I guess any information regarding the
 5     property?
 6          A.    Not until the application is completed.
 7          Q.    So the application comes in for
 8     Mr. Howlett, Bank of the West processed it, and
 9     eventually they agreed to the loan, correct?
10          A.    Correct.
11          Q.    Then to your understanding, an escrow was
12     opened, correct?
13          A.    Correct.
14          Q.    So I'm going to show you what has been
15     previously marked as Exhibit 23.  We'll mark it as
16     Exhibit 23 as well.
17                (Thereupon, marked as Exhibit 23.)
18       BY MR. LEVOTA:
19          Q.    This is document entitled "Preliminary
20     Report."  And it's dated as of February 8, 2021.
21     And I guess at the top, it's dated February 18,
22     2021.
23                Do you recognize this document?
24          A.    Yes.
25          Q.    Did Bank of the West receive a copy of
```

Page 12

this preliminary report as part of the escrow transaction?

A. We received the --

MR. KATZ: Before you ask that about the whole document, do you mind scrolling through it so the witness can see it?

MR. LEVOTA: Absolutely. Let me --

MR. KATZ: Your question was did you receive this preliminary report, not just a preliminary report.

MR. LEVOTA: Thank you, Mr. Katz.

I will happily scroll through this.

BY MR. LEVOTA:

Q. And Ms. Scydick, at any point in this deposition -- it's unfortunate given the virtual setting I can't hand you the document and allow you to go through it at your own pace, but to the extent we are looking at any exhibit at any point in this deposition and you want to see something that's not displayed to you, please let me know and I will happily display whatever you request.

So we're looking at what's been marked as Exhibit 23. It's entitled, "Preliminary Report." It is 20 pages. And I am flipping through the pages. And I would ask that you tell me to stop if

1   you want me to stop on anything particular.

2          A.   Can you go back one.

3          Q.   Absolutely.

4          A.   Page 4.  And I'm sorry, it got smaller.

5   Maybe I can make it bigger on my side.

6              Okay.  There you go.  Now the neighbor can

7   see it.  Okay.  That's good.

8          Q.   And some of this is just pretty -- that's

9   Exhibit A.  And I think from here, it's all pretty

10  standard form.

11         A.   Yes, that is the document, the

12  preliminary.

13         Q.   Did anyone at Bank of the West review the

14  preliminary report?

15             MR. KATZ:  Objection.  Vague as to when.

16     BY MR. LEVOTA:

17         Q.   Go ahead, Ms. Scydick.

18             THE WITNESS:  I'm sorry.  I didn't hear

19         what you said, Jeremy.

20             MR. KATZ:  The objection is objection to

21         the form.  It's vague as to time.

22     BY MR. LEVOTA:

23         Q.   You can go ahead an answer.

24             I guess let's -- let's pause there.  If at

25  any point I ask a question that you don't

                                          Page 14

```
 1    is this the list of documents that you're referring
 2    to?
 3         A.   Correct.
 4         Q.   And this is what Bank of the West expects
 5    to get back from Escrow of the West at the close of
 6    this transaction?
 7         A.   Those are the documentation that we need
 8    to have evidence that they were signed so that we go
 9    to the next step because we will not fund the loan
10    until those documents -- an image of those documents
11    are received.
12         Q.   Was an image of those documents received
13    in this transaction?
14         A.   Yes.
15         Q.   And did Bank of the West fund the loan?
16         A.   Yes, we did.
17         Q.   I'm going to show you what's been
18    previously marked as Exhibit 33.  We'll mark it as
19    Exhibit 33 for this deposition.
20              (Thereupon, marked as Exhibit 33.)
21       BY MR. LEVOTA:
22         Q.   It's entitled "Closing Disclosure."
23              Do you see this?
24         A.   Yes.
25         Q.   Are you familiar with this document?
```

Page 24

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0365

```
 1        A.   Well, that's the seller's document, so I
 2   would not have -- we would not have seen that until
 3   the end.
 4        Q.   What you what do you mean this is a
 5   seller's document?
 6        A.   If you look at the top of the documents
 7   where it says "summaries of transaction," that's the
 8   seller's transaction side.
 9        Q.   Do you know who prepares -- who prepared
10   this document?
11        A.   I'm going to assume it was prepared -- is
12   the name down at the bottom?  Because it's not ours.
13        Q.   Would you be surprised to learn that the
14   escrow officer said that the buyer's lender created
15   this document?
16             MR. KATZ:  Objection.
17        A.   It's an estimate.
18             MR. KATZ:  Objection.  Incomplete
19        hypothetical.
20     BY MR. LEVOTA:
21        Q.   But this is not a document created by
22   Bank of the West; is that correct?
23        A.   That's correct.
24        Q.   Is this a document that Bank of the West
25   ever saw as part of this transaction?
```

Page 25

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0366

```
 1    communications with Goldwater Bank regarding the
 2    property for the loan?
 3              MR. KATZ:  Objection.  Vague as to time.
 4         A.   During the processing of the loan, no.
 5      BY MR. LEVOTA:
 6         Q.   After the processing of the loan?
 7         A.   The only thing that I found out about
 8    Goldwater was with this deposition.
 9         Q.   Okay.  So prior -- let's -- that's fine.
10              At any time has Bank of the West ever
11    spoken to Artur Elizarov?
12         A.   That's the seller of the transaction?  He
13    would be not be our customer, so no.
14         Q.   I understand that he's not your customer,
15    but I just -- beyond that, there's no record of my
16    communication?
17         A.   There's no record.
18         Q.   Is there any record of any communications
19    with Ilya Alekseyeff regarding this loan or this
20    property?
21         A.   No.
22         Q.   Was there any communications with Unison
23    Agreement Corp. regarding this loan or this
24    property?
25         A.   No.
```

Page 30

```
 1        That was it.
 2             Q.   Okay.  I have just one more question for
 3   you, and I -- unfortunately I think it's kind of
 4   just clarifying what's already been testified to.  I
 5   just want to confirm that Bank of the West --
 6   there's no notes -- there's nothing in your notes to
 7   indicate that Bank of the West ever spoke to
 8   Escrow of the West about the seller's liens; is that
 9   correct?
10             A.   That is correct.
11             Q.   Okay.
12             MR. LEVOTA:  Then I have no further
13        questions for you.  I appreciate your time and
14        appearing here today.
15             THE WITNESS:  Thank you.
16             MR. LEVOTA:  There may be other counsel
17        that have questions, though.
18             THE WITNESS:  Oh, sorry.
19             MR. KATZ:  If only.  Who is going next?
20        Is Ilya or is it Nabil?
21             MR. ALEKSEYEFF:  I can go if you don't
22        mind.  I just have a couple of quick questions.
23                         CROSS EXAMINATION
24   BY MR. ALEKSEYEFF:
25        Q.   Hello, Ms. Scydick?
```

Page 36

```
 1                So there was no concern on
 2      Bank of the West's part about there being something
 3      that Unison had that was then released after the
 4      sale had been made; there was no question about
 5      that.
 6           A.   No.
 7           Q.   And to the best of your understanding,
 8      there's no position that Bank of the West is taking
 9      that Unison did not have proper lien on the property
10      that would have been discharged once the property
11      was sold, correct?
12           A.   Again, that would be the title company
13      that would be responsible for that.
14           Q.   And I guess just last question then,
15      sitting here as of today's date, to the best of your
16      knowledge, there's no interest that Unison has to it
17      title of this particular property that you are aware
18      of, right?
19           A.   Not that I'm aware of.
20                MR. BASHARAT:  That's all.  No further
21           questions.
22                THE WITNESS:  Okay.
23                MR. KATZ:  I've got no questions.
24                (Discussion off the record.)
25                MR. LEVOTA:  We're back on the record.
```

Page 42

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0369

1          We're going to conclude this deposition per

2          code with the stipulation that a certified copy

3          of the deposition transcript can be used for

4          any purpose.

5               Thank you for your time, Ms. Scydick.

6               (Deposition concluded at 4:06 p.m. CDT)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                        Page  43

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0370

```
 1                    CERTIFICATE OF OATH

 2

 3

 4

 5

 6              I, the undersigned authority, certify

 7

 8      that JACQUELINE SCYDICK remotely appeared before

 9

10      me and was sworn on the 13th day of September,

11

12      2022.

13

14              Signed this 27th day of September, 2022.

15

16

17

18

19

20

21

22              KIMBERLY FONTALVO, RPR

23              Notary Public, State of Colorado

24              My Commission No. 20214007135

25              Expires: 2/23/2025

                                             Page 44
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0371

```
 1                     CERTIFICATE OF REPORTER

 2

 3        STATE OF COLORADO

 4

 5               I, KIMBERLY FONTALVO, Registered

 6        Professional Reporter, do hereby certify that I

 7        was authorized to and did stenographically report

 8        the foregoing remote deposition of JACQUELINE

 9        SCYDICK; that a review of the transcript was

10        requested; and that the transcript is a true

11        record of my stenographic notes.

12               I FURTHER CERTIFY that I am not a

13        relative, employee, attorney, or counsel of any

14        of the parties, nor am I a relative or employee

15        of any of the parties' attorneys or counsel

16        connected with the action, nor am I financially

17        interested in the action.

18               Dated this 27th day of September, 2022.

19

20

21

22

23

24

25                     KIMBERLY FONTALVO, RPR, CLR

                                             Page  45
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0372

```
 1   JEREMY KATZ, Esq.

 2   jkatz@hallgriffin.com

 3                                    SEPTEMBER 27, 2022

 4   RE: GOLDWATER BANK V. ELIZAROV

 5   SEPTEMBER 13, 2022, JACQUELINE SCYDICK, JOB NO. 5382172

 6   The above-referenced transcript has been

 7   completed by Veritext Legal Solutions and

 8   review of the transcript is being handled as follows:

 9   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10      to schedule a time to review the original transcript at

11      a Veritext office.

12   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13      Transcript - The witness should review the transcript and

14      make any necessary corrections on the errata pages included

15      below, noting the page and line number of the corrections.

16      The witness should then sign and date the errata and penalty

17      of perjury pages and return the completed pages to all

18      appearing counsel within the period of time determined at

19      the deposition or provided by the Code of Civil Procedure.

20   __ Waiving the CA Code of Civil Procedure per Stipulation of

21      Counsel - Original transcript to be released for signature

22      as determined at the deposition.

23   __ Signature Waived - Reading & Signature was waived at the

24      time of the deposition.

25
```

Page 46

1    _X_Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF

2       Transcript - The witness should review the transcript and

3       make any necessary corrections on the errata pages included

4       below, notating the page and line number of the corrections.

5       The witness should then sign and date the errata and penalty

6       of perjury pages and return the completed pages to all

7       appearing counsel within the period of time determined at

8       the deposition or provided by the Federal Rules.

9    __ Federal R&S Not Requested - Reading & Signature was not

10      requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page  47

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0374

```
 1   GOLDWATER BANK V. ELIZAROV

 2   JACQUELINE SCYDICK, JOB NO. 5382172

 3                  E R R A T A   S H E E T

 4   PAGE_____ LINE_____ CHANGE_____

 5   _____

 6   REASON_____

 7   PAGE_____ LINE_____ CHANGE_____

 8   _____

 9   REASON_____

10   PAGE_____ LINE_____ CHANGE_____

11   _____

12   REASON_____

13   PAGE_____ LINE_____ CHANGE_____

14   _____

15   REASON_____

16   PAGE_____ LINE_____ CHANGE_____

17   _____

18   REASON_____

19   PAGE_____ LINE_____ CHANGE_____

20   _____

21   REASON_____

22

23   _____    _____

24   WITNESS                             Date

25

                                        Page 48
```

# EXHIBIT 28

## EXCERPTS FROM TRANSCRIPT OF
## THE DEPOSITION OF VICKI CRESTANI

```
 1                    UNITED STATES DISTRICT COURT
 2          CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION
 3
 4    GOLDWATER BANK, N.A.,              ) CASE NO.
                                        ) 5:21-cv-00616-JWH-SP
 5           Plaintiff,                 )
                                        )
 6    vs.                               )
                                        )
 7    ARTUR ELIZAROV; UNISON AGREEMENT)
      CORP.; SCOTT HOWLETT; BANK OF    )
 8    WEST; and ILYA ALEKSEYEFF,        )
                                        )
 9           Defendants,                )
      _____)
10                                      )
      AND RELATED CROSS-ACTIONS         )
11    _____)
12
13
14
15              DEPOSITION OF VICKIE ROBIN CRESTANI
16                    SAN DIEGO, CALIFORNIA
17                 TUESDAY, DECEMBER 6, 2022
18
19
20
21
22
23    REPORTED BY:
      KATHLEEN M. ALONA
24    CSR NO:  14219
      JOB NO:  5603295
25    Pages 1 - 224

                                                   Page 1
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0377

```
 1                    UNITED STATES DISTRICT COURT

 2          CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

 3

 4    GOLDWATER BANK, N.A.,              ) CASE NO.
                                        ) 5:21-cv-00616-JWH-SP
 5            Plaintiff,                 )
                                         )
 6    vs.                                )
                                         )
 7    ARTUR ELIZAROV; UNISON AGREEMENT)
      CORP.; SCOTT HOWLETT; BANK OF    )
 8    WEST; and ILYA ALEKSEYEFF,         )
                                         )
 9            Defendants,                )
      _____)
10                                       )
      AND RELATED CROSS-ACTIONS          )
11    _____)

12

13

14

15

16            The deposition of VICKIE ROBIN CRESTANI, taken

17    on behalf of the Defendant and Cross-Complainant SCOTT

18    HOWLETT and Defendant BANK OF THE WEST, beginning at

19    10:08 a.m., and ending at 4:51 p.m., on Tuesday,

20    December 6, 2022, before Kathleen M. Alona, Certified

21    Shorthand Reporter, No. 14219.

22

23

24

25

                                                   Page 2
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0378

```
1                              INDEX
2                           EXAMINATION
3    Witness Name                                            Page
4    VICKIE ROBIN CRESTANI
5         BY MR. KATZ ...................................... 8
                                                             204
6                                                            224
                                                             233
7
          BY MR. ALEKSEYEFF ............................... 177
8
          BY MS. HAIDAR ................................... 190
9
          BY MR. LA VOTA .................................. 194
10                                                           217
                                                             233
11
12
                              EXHIBITS
13
     Exhibit     Description                                 Page
14
     EXHIBIT 128 VICKIE CRESTANI'S EXPERT REPORT             69
15
     EXHIBIT 127 DEPOSITION NOTICE                           69
16
     EXHIBIT 129 EMAIL CHAIN WITH ATTACHMENTS                216
17
     EXHIBIT 130 EMAIL CHAIN                                 221
18
     EXHIBIT 131 TWO-PAGE DOCUMENT                           226
19               BATES NO. BOTW 0002331 AND BOTW 0002332
20
                        Previously Marked Exhibits
21
                                                             Page
22
     EXHIBIT 24                                              30
23
     EXHIBIT 7                                               87
24
     EXHIBIT 6                                               104
25
     EXHIBIT 11                                              163

                                                         Page 3
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0379

```
 1   APPEARANCES (ALL APPEARING REMOTELY VIA ZOOM):

 2

 3           FOR PLAINTIFF GOLDWATER BANK N.A.:

 4                 HILBERT & SATTERLY LLP

 5                 BY:  JOSEPH A. LA VOTA, ESQ.

 6                 409 CAMINO DEL RIO SOUTH

 7                 SUITE 104

 8                 SAN DIEGO, CA 92108

 9                 PHONE NUMBER (619) 795-0300

10                 JLEVOTA@HSCALLAW.COM

11

12           PRO HAC VICE ATTORNEYS FOR PLAINTIFF

13           BOLDWATER BANK N.A.:

14                 WAGNER HICKS PLLC

15                 BY:  ABBY KRYSAK, ESQ.

16                 831 EAST MOREHEAD STREET

17                 SUITE 860

18                 CHARLOTTE, NC 28202

19                 PHONE NUMBER (704) 705-7538

20                 ABBY.KRYSAK@WAGNERHICKS.LAW

21

22

23

24

25

                                          Page 4
```

Veritext Legal Solutions
866 299-5127

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0380

```
 1    APPEARANCES CONTINUED (ALL APPEARING REMOTELY VIA ZOOM):

 2

 3              FOR DEFENDANT/CROSS-COMPLAINANT SCOTT HOWLETT

 4        AND DEFENDANT BANK OF THE WEST:

 5                 HALL GRIFFIN LLP

 6                 BY:   JEREMY T. KATZ, ESQ.

 7                 1851 EAST FIRST STREET

 8                 10TH FLOOR

 9                 SANTA ANA, CA 92705-4052

10                 PHONE NUMBER (714) 918-7000

11                 JKATZ@HALLGRIFFIN.COM

12

13             FOR DEFENDANT UNISON AGREEMENT CORP.:

14                 ORSUS GATE LLP

15                 BY:   JENNIFER HAIDER, ESQ.

16                 16 N. MARENGO AVENUE

17                 SUITE 316

18                 PASADENA, CA 91101

19                 PHONE NUMBER (213) 973-2052

20                 JHAIDER@ORSUSGATE.COM

21

22

23

24

25

                                               Page 5
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0381

```
 1    APPEARANCES CONTINUED (ALL APPEARING REMOTELY VIA ZOOM):

 2

 3              FOR DEFENDANT ARTUR ELIZAROV

 4              AND DEFENDANT ILYA ALEKSEYEFF (IN PRO PER):

 5                   LOIA, INC. (APLC)

 6                   BY:  ILYA ALEKSEYEFF, ESQ.

 7                   8721 SANTA MONICA BOULEVARD

 8                   #119

 9                   WEST HOLLYWOOD, CA 90069

10                   PHONE NUMBER (213) 537-4592

11                   ILYA@LOIA.LEGAL

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                              Page  6
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0382

```
 1              SAN DIEGO, CALIFORNIA; TUESDAY, DECEMBER 6, 2022

 2                            10:08 a.m.

 3

 4              MR. KATZ:  Let's go on to the record.

 5              MR. LA VOTA:  This is Joseph LaVota, and I'm in the

 6       same office as the deponent, Vickie Crestani.  I am not on

 7       camera.  I am off camera, but we are in the same room.

 8              MR. KATZ:  Good morning.  This is Jeremy Katz,

 9       counsel for Scott Howlett and Bank of the West in this

10       matter.  I'm the party noticing the deposition.

11              MS. HAIDAR:  This is Jennifer Haidar, counsel for

12       Unison Agreement Corp.

13              MS. KRYSAK:  And this is Abby Krysak, counsel for

14       Goldwater Bank.

15              MR. KATZ:  And as we discussed off the record,

16       Mr. Alekseyeff is logged in but not present.  He will be

17       rejoining us soon, and he's authorized us to proceed in his

18       absence.

19

20                            EXAMINATION

21

22       BY MR. KATZ:

23          Q    Good morning, Ms. Crestani.

24          A    Good morning.

25          Q    Am I pronouncing that correctly?

                                                      Page 7
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0383

```
 1   owes to a title company?

 2       A     They are a conduit, if you will, between parties to

 3   an escrow and what is required for the issuance of a title

 4   policy as called out for in the purchase agreement and/or

 5   escrow instructions or lenders instructions.

 6            So it is escrow's duty to provide to the title

 7   company those instruments and the information that would --

 8   those policies could be issued.  Now, the title company also

 9   does the recording of the documents.

10            But there's also another duty, and that duty is

11   escrow is required to tell the title company what it

12   discovers through the escrow process or through the

13   information that is given to it to a title company, because

14   some of that information could cause a claim against the

15   title policy that has been issued.

16            If that information had been shared or if problems

17   on a preliminary report, such as the ones in this file,

18   existed, the escrow officer needs to contact the title

19   officer and say hey, I think your preliminary report is

20   wrong.  And in this case, there were two preliminary reports

21   issued, and both of them were incorrect.

22            The escrow officer should have contacted title to

23   get those inconsistencies corrected.

24       Q    So the escrow officer should work, does the escrow

25   officer have any duty to the title company?
```

                                                      Page 130

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0384

1        A      Correct.

2        Q      You're not opining that Unison breached their

3    standard of care; correct?

4        A      I have no opinion at all with regards to that.

5        Q      And it's not your opinion that Unison intervened to

6    mislead Escrow of the West in any of the email communications

7    that you reviewed; is that correct?

8        A      That is correct.

9        Q      And one last question, just to be very clear.  In

10   your report, on page 8, you said, and I quote:

11            "When looking at the subordination agreement,

12   it is obvious that it is not a memorandum of

13   Unison homebuyer agreement being subordinated          to

14   Unison's trust deed.  Instead, the

15   subordination agreement states Unison is

16   subordinating to a senior lender."

17            Is that correct?

18       A      That is correct.

19       Q      And in your opinion, as you noted on line 19, what

20   makes that officer?

21       A      Well, one of the things I'm referring to is how the

22   preliminary report is reading and where I feel it was

23   incumbent on escrow holder Ms. Cross to call up Orange Coast

24   Title and say something's wrong here.  We have a recorded

25   deed of trust and we have a recorded subordination agreement,

                                                        Page 179

1    and you're reflecting that this subordination agreement is

2    subordinating something that's the same lender, Unison.

3           So the preliminary report was completely wrong, and

4    it deserved some attention.  I think at this particular time

5    it is -- I'll say I will assume that if this call had been

6    made, there had been talk between the title officer and the

7    escrow officer; oh, that's wrong it's referring to a senior

8    lien.

9           Well, we don't see senior lien of record.  Is there

10   a mistake?  Do we need to inquire, because we don't see a

11   reconveyance recorded either for anything that we can't see

12   recorded.

13          So with all of that being said initial that's really

14   so initial and so elementary to an escrow officer, is check

15   your PR, preliminary report, make sure you understand it,

16   it's clear, it's referencing the right documents.

17          In this particular case, it really -- there was an

18   error on the preliminary report.  If questioned, it could

19   have been clarified; oh, there should be a senior lien out

20   there, it says it's recorded concurrently therewith.  And if

21   that's not recorded, somebody better ask some questions; has

22   it been paid off?

23          MS. HAIDAR:  Thank you very much.

24          THE WITNESS:  I hope I've answered your question.

25   I'm sorry.

                                                    Page 180

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0386

1    working.  So I don't know why this escrow officer chose not

2    to put down Goldwater as a placeholder, but she did not.

3    And, again, she didn't have clarity so she was confused.  She

4    did not put this together correctly.

5              MR. KATZ:  So let's -- if there's no further

6    questions, you guys want to go off the record staying for a

7    brief second staying on video to discuss stipulations for the

8    transcript?

9              MR. LA VOTA:  Sure.

10             MR. KATZ:  Let's go off the record.

11             (Off the record.)

12             MR. KATZ:  Jeremy Katz coming back on the record.

13   Off the record we had been discussing stipulations for the

14   transcript.  We're going to do it per Code, but we are

15   stipulating that a certified copy of the transcript can be

16   used for lieu -- in lieu of the original for all purposes.

17             MR. LA VOTA:  Stipulated.

18             (Whereupon, at 4:51 p.m., the examination of VICKIE

19   ROBIN CRESTANI was concluded.)

20

21

22

23

24

25

                                                    Page 219

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0387

1          I, VICKIE ROBIN CRESTANI, hereby declare that I am

2     the witness in the within matter, that I have read the

3     foregoing deposition and know the contents thereof, and I

4     declare that the same is true of my own knowledge except as

5     to those matters which are therein stated upon my information

6     and belief, and as to those matters, I believe them to be

7     true.

8          I declare under penalty of perjury that the

9     foregoing is true and correct.

10         Executed on this _____ of _____, 20____, at

11    _____, California.

12

13

14         _____

15             VICKIE ROBIN CRESTANI

16

17

18

19

20

21

22

23

24

25

                                              Page 220

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0388

1           I, KATHLEEN M. ALONA, CSR NO. 14219, do hereby

2    certify:

3           That prior to being examined, the witness named in

4    the foregoing deposition was by me duly sworn to testify the

5    truth, the whole truth, and nothing but the truth under the

6    penalty of perjury.

7           That said deposition was taken remotely at the time

8    and place herein set forth and was taken down by me in

9    shorthand and thereafter was transcribed into typewriting

10   under my direction and supervision.

11          I hereby certify the foregoing transcript is a full,

12   true and correct transcript of my shorthand notes so taken.

13          I further certify that I am neither counsel for nor

14   related to any party to said action, nor in any way

15   interested in the outcome thereof.

16          The dismantling, unsealing, unbinding of, or

17   tampering with the original transcript will render this

18   reporter's certificate null and void.

19          IN WITNESS WHEREOF, I have hereunto subscribed my

20   name this 29th day of December, 2022.

21

22

23   _____

24          KATHLEEN M. ALONA, CSR NO. 14219

25

                                                        Page 221

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0389

```
1     JOSEPH A. LA VOTA, ESQ.

2     JLEVOTA@HSCALLAW.COM

3                                      DECEMBER 29, 2022

4     RE: GOLDWATER BANK, N.A. v. ARTUR ELIZAROV

5     DECEMBER 6, 2022, VICKIE ROBIN CRESTANI, JOB NO. 5603295

6     The above-referenced transcript has been

7     completed by Veritext Legal Solutions and

8     review of the transcript is being handled as follows:

9     __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10         to schedule a time to review the original transcript at

11         a Veritext office.

12     __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13         Transcript - The witness should review the transcript and

14         make any necessary corrections on the errata pages included

15         below, notating the page and line number of the corrections.

16         The witness should then sign and date the errata and penalty

17         of perjury pages and return the completed pages to all

18         appearing counsel within the period of time determined at

19         the deposition or provided by the Code of Civil Procedure.

20     __ Waiving the CA Code of Civil Procedure per Stipulation of

21         Counsel - Original transcript to be released for signature

22         as determined at the deposition.

23     __ Signature Waived - Reading & Signature was waived at the

24         time of the deposition.

25
```

Page 222

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0390

```
 1    _X_Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF

 2        Transcript - The witness should review the transcript and

 3        make any necessary corrections on the errata pages included

 4        below, notating the page and line number of the corrections.

 5        The witness should then sign and date the errata and penalty

 6        of perjury pages and return the completed pages to all

 7        appearing counsel within the period of time determined at

 8        the deposition or provided by the Federal Rules.

 9    __ Federal R&S Not Requested - Reading & Signature was not

10        requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                        Page  223
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0391

```
 1    GOLDWATER BANK, N.A. v. ARTUR ELIZAROV

 2    VICKIE ROBIN CRESTANI, JOB NO. 5603295

 3              E R R A T A   S H E E T

 4    PAGE _18_ LINE _18_ CHANGE "awful" to "rough"

 5    _____

 6    REASON _if not pronounced correctly it is what I meant_

 7    PAGE _30_ LINE _24_ CHANGE "attachments" to "as"

 8    _____

 9    REASON _it would have been the word I used_

10    PAGE _59_ LINE _14_ CHANGE "SNE" to "Assignee"

11    _____

12    REASON _it would have been the word I used_

13    PAGE _139_ LINE _8+9_ CHANGE "which really doesn't" to

14    Matt, May Melissa"

15    REASON I read this directly from the email Exhibit

16    PAGE _173_ LINE _7_ CHANGE "heir" to "the"

17    _____

18    REASON heir is just incorrect

19    PAGE _182_ LINE _21_ CHANGE "of trust state" to

20    "Deed of Trust state"

21    REASON The word "Deed" was missing

22

23    _[signature] Vickie Crestani_        1/25/2023

24    WITNESS                          Date

25

                                     Page 224
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0392