# Exhibit 1

Deed of Trust executed by Artur Elizarov on July 31, 2019, recorded in the Official Records of the Riverside County Recorder's Office on April 20, 2021, as Document No. 2021-0245826 (ECF No. 19-6)



When recorded, mail to:
**Goldwater Bank, N.A.**
**Attn: Final Document Department**
**P.O. Box 25064**
**Albuquerque, NM 87125**
**844-799-4653**

**Title Order No.: 0625-5974427**
**Escrow No.: 0625-5974427**
**LOAN #: 909216931**

—————————————————— [Space Above This Line For Recording Data] ——————————————————

# DEED OF TRUST

| MIN 1009209-4100147547-4 |
| --- |

**MERS PHONE #: 1-888-679-6377**

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
**(A) "Security Instrument"** means this document, which is dated **July 31, 2019,** together with all Riders to this document.
**(B) "Borrower"** is **ARTUR ELIZAROV, AN UNMARRIED MAN.**

Borrower's address is **828 Westmount Drive, West Hollywood, CA 90069.**

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **Goldwater Bank, N.A..**

Lender is **a Corporation,** organized and existing under the laws of
**The United States of America.** Lender's address is **2525 E. Camelback Rd, Suite**
**1100, Phoenix, AZ 85016.**

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3005 1/01
Ellie Mae, Inc.                                          Page 1 of 13

CAEDEDL 0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0002

LOAN #: 909216931

**(D) "Trustee"** is **First American Title Company.**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated **July 31, 2019.** The Note states that Borrower owes Lender **SIX HUNDRED EIGHTY SIX THOUSAND TWO HUNDRED FIFTY AND NO/100\* \***
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* Dollars (U.S. **$686,250.00** )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **August 1, 2049.**

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[x] Adjustable Rate Rider   ☐ Condominium Rider   ☐ Second Home Rider
☐ Balloon Rider   ☐ Planned Unit Development Rider   ☐ Other(s) [specify]
☐ 1-4 Family Rider   ☐ Biweekly Payment Rider
☐ V.A. Rider

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0003

LOAN #: 909216931

all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County** [Type of Recording Jurisdiction] of **Riverside** [Name of Recording Jurisdiction]:

**LOT 8 OF BLOCK 7, PALM CANYON MESA TRACT, AS PER MAP RECORDED IN BOOK 12, PAGES 52 THROUGH 56, BOTH INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. APN #: 513-363-023-2**

which currently has the address of **291 W. Overlook Road, Palm Springs,**

[Street] [City]

California **92264-8934** ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice

CALIFORNIA – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3005 1/01
Ellie Mae, Inc.                                                        Page 3 of 13

CAEDEDL 0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0004

Case 5:21-cv-00616-WWHSP Document 368-1 Filed 04/08/25/22 Page 5 of 282 Page ID #1019
#:9566

to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3005 1/01
Ellie Mae, Inc. Page 4 of 13
CAEDEDL 0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0005

Case 5:21-cv-00616-WWHSPD Document 368-1 Filed 04/08/25/2 Page 6 of 282 Page #120
#:9567

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds,

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3005 1/01**
Ellie Mae, Inc. Page 5 of 13

CAEDEDL 0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0006

whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   Form 3005 1/01
Ellie Mae, Inc.                                      Page 6 of 13

CAEDEDL 0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0007

**LOAN #: 909216931**

from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01**
Ellie Mae, Inc.                                                   Page 7 of 13

CAEDEDL  0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0008

LOAN #: 909216931

period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    **Form 3005 1/01**
Ellie Mae, Inc.                                                Page 8 of 13

CAEDEDL 0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0009

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    **Form 3005 1/01**

Ellie Mae, Inc.                               Page 9 of 13                                  CAEDEDL 0219

                                                                   CAEDEDL (CLS)

                                                  07/31/2019 10:36 AM PST



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0010

LOAN #: 909216931

sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0011

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0012

**LOAN #: 909216931**

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**ARTUR ELIZAROV**

7|31|2019 **(Seal)**
**DATE**

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

**State of CALIFORNIA**
County of LOS Angeles

On ___July 31.2019___, before me, Estela Noemy Moreno Aviles NOTARY PUBLIC
(here insert name and title of the officer), personally appeared **ARTUR ELIZAROV**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

_____(NOTARY)

**(SEAL)**

> ESTELA NOEMY MORENO AVILES
> Notary Public - California
> Los Angeles County
> Commission # 2293165
> My Comm. Expires Jun 15, 2023

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3005 1/01**
Ellie Mae, Inc.                                            Page 12 of 13

CAEDEDL 0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0013

LOAN #: 909216931

Lender: Goldwater Bank, N.A.
NMLS ID: 452955
Loan Originator: Gregory Hill
NMLS ID: 247349

CALIFORNIA – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3005 1/01
Ellie Mae, Inc.                                    Page 13 of 13

CAEDEDL  0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0014

Case 5:21-cv-00616-JWH-SP Document 168-4 Filed 04/06/22 Page 14 of 23 Page ID #:129

LOAN #: 909216931
MIN: 1009209-4100147547-4

# ADJUSTABLE RATE RIDER

**(LIBOR One-Year Index (As Published In The Wall Street Journal-Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this **31st** day of **July, 2019,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **Goldwater Bank, N.A.**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at: **291 W. Overlook Road, Palm Springs, CA 92264-8934.**

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MINIMUM AND MAXIMUM RATES THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of **5.375 %.** The Note provides for changes in the interest rate and the monthly payments as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the **1st** day of **August, 2024,** and on that day every **12th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated

LOAN #: 909216931

deposits in the London market ("LIBOR"), as published in **The Wall Street Journal.** The most recent Index value available as of the date 45 days before each Change Date is called the "Current Index," provided that if the Current Index is less than zero, then the Current Index will be deemed to be zero for purposes of calculating my interest rate.

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

#### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **THREE**                percentage point(s) ( **3.000 %**                 ) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

#### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **7.375 %**    or less than **5.375 %.**    Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO**

percentage point(s) ( **2.000 %**    ) from the rate of interest I have been paying for the preceding **12**    month(s). My interest rate will never be greater than **11.375 %. My interest rate will never be less than the start rate or 5.375 %.**

#### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

#### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title

**MULTISTATE ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR**-Single Family-**Fannie Mae UNIFORM INSTRUMENT**
**Form 3189 6/01 (rev. 6/16)**
Ellie Mae, Inc. Page 2 of 4 F3189RLU 0816
F3189RLU (CLS)
07/31/2019 10:36 AM PST



LOAN #: 909216931

and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR-Single Family-Fannie Mae UNIFORM INSTRUMENT
Form 3189 6/01 (rev. 6/16)
Ellie Mae, Inc.                    Page 3 of 4                    F3189RLU  0816
                                                                  F3189RLU (CLS)
                                                                  07/31/2019 10:36 AM PST



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0017

LOAN #: 909216931

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____        7/31/2019 .        (Seal)
ARTUR ELIZAROV                                                        DATE

MULTISTATE ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR-Single Family-**Fannie Mae UNIFORM INSTRUMENT**
Form 3189 6/01 (rev. 6/16)
Ellie Mae, Inc.                           Page 4 of 4                          F3189RLU  0816
                                                                               F3189RLU (CLS)
                                                                               07/31/2019 10:36 AM PST



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0018

# Exhibit 2

Adjustable Rate Note executed by Artur Elizarov on July
31, 2019 (ECF No. 19-5)

LOAN #: 909216931
MIN: 1009209-4100147547-4

## ADJUSTABLE RATE NOTE
(LIBOR One-Year Index (As Published In The Wall Street Journal)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MINIMUM AND MAXIMUM RATES I MUST PAY.

July 31, 2019               Palm Springs,                      California
[Date]                      [City]                            [State]

291 W. Overlook Road, Palm Springs, CA 92264-8934
[Property Address]

### 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. **$686,250.00**          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is   **Goldwater Bank, N.A..**

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.375 %.**      The interest rate I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the   **1st**      day of each month beginning on   **September 1, 2019.**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   **August 1, 2049,**        I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at  **2525 E. Camelback Rd, Suite 1100**
**Phoenix, AZ 85016**

or at a different place if required by the Note Holder.
(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S.  **$3,842.80.**        This amount may change.
(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the  **1st**     day of  **August, 2024**      and on that day every **12th**      month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in **The Wall Street Journal.** The most recent Index value available as of the date 45 days before each Change Date is called the "Current Index," provided that if the Current Index is less than zero, then the Current Index will be deemed to be zero for purposes of calculating my interest rate.
If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.
(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding  **THREE**
percentage point(s) (  **3.000 %**    ) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

MULTISTATE ADJUSTABLE RATE NOTE – WSJ One-Year LIBOR – Single Family – Fannie Mae UNIFORM INSTRUMENT Form 3526 6/01 (rev. 6/16)
Ellie Mae, Inc.                    Page 1 of 3                      F3526NOT  0816
F3526NOT (CLS)
07/31/2019 10:36 AM PST

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0020

LOAN #: 909216931

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **7.375 %**         or less than **5.375 %.**         Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO**                      percentage point(s) ( **2.000 %**         ) from the rate of interest I have been paying for the preceding **12**         month(s). My interest rate will never be greater than **11.375 %. My interest rate will never be less than the start rate or 5.375 %.**

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note, However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15**         calendar day(s) after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

MULTISTATE ADJUSTABLE RATE NOTE – WSJ One-Year LIBOR – Single Family – **Fannie Mae** UNIFORM INSTRUMENT  Form 3526 6/01 (rev. 6/16)
Ellie Mae, Inc.                                      Page 2 of 3                                      F3526NOT  0816
F3526NOT (CLS)
07/31/2019 10:36 AM PST



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0021

LOAN #: 909216931

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.



_____ **(Seal)**
**ARTUR ELIZAROV**

**Lender: Goldwater Bank, N.A.**
**NMLS ID: 452955**
**Loan Originator: Gregory Hill**
**NMLS ID: 247349**

[Sign Original Only]

**MULTISTATE ADJUSTABLE RATE NOTE – WSJ One-Year LIBOR** – Single Family – **Fannie Mae UNIFORM INSTRUMENT** Form 3526 6/01 (rev. 6/16)
Ellie Mae, Inc.                                                          Page 3 of 3                                                          F3526NOT   0816
                                                                                                                                          F3526NOT (CLS)
                                                                                                                                          07/31/2019 10:36 AM PST

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0022

# Exhibit 3

Uniform Residential Loan Application executed by Artur Elizarov on July 3, 2019 (ECF No. 179-1)

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☒ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

DocuSigned by:

7/3/2019 | 14:01:38 PDT

Borrower (D303BR494)     Co-Borrower

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA ☒ Conventional ☐ FHA ☐ USDA/Rural Housing Service | ☐ Other (explain): | Agency Case Number | Lender Case Number 909216931 |
|---|---|---|---|---|

| Amount $ 686,250.00 | Interest Rate 5.000 % | No. of Months 360 | Amortization Type: | ☐ Fixed Rate ☐ GPM | ☐ Other (explain): ☒ ARM (type): 1YLWSJ |
|---|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) 291 W. Overlook Road, Palm Springs, CA 92264-8934 County: Riverside | No. of Units 1 |
|---|---|

| Legal Description of Subject Property (attach description if necessary) See title | Year Built 1945 |
|---|---|

| Purpose of Loan | ☒ Purchase ☐ Construction ☐ Other (explain): ☐ Refinance ☐ Construction-Permanent | Property will be: ☒ Primary Residence ☐ Secondary Residence ☐ Investment |
|---|---|---|

*Complete this line if construction or construction-permanent loan.*

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a + b) $ |
|---|---|---|---|---|---|

*Complete this line if this is a refinance loan.*

| Year Acquired | Original Cost $ | Amount Existing Liens $ | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made Cost: $ |
|---|---|---|---|---|

| Title will be held in what Name(s) Artur Elizarov | Manner in which Title will be held To be decided in escrow | Estate will be held in: ☒ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain)
**Checking/Savings, Unison assisted**

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

| Borrower's Name (include Jr. or Sr. if applicable) Artur Elizarov | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|

| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School 16 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married (include registered domestic partners) ☒ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. 0 ages 0 | ☐ Married (include registered domestic partners) ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no. ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☐ Own ☒ Rent No. Yrs. 2Y 1M | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

*If residing at present address for less than two years, complete the following:*

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

| Name & Address of Employer ☐ Self Employed Rite Care Hospice 14144 Ventura Blvd Ste 304 San Francisco, CA 94123 | Yrs. on this job 0Y 6M Yrs. employed in this line of work/profession 15 | Name & Address of Employer ☐ Self Employed | Yrs. on this job Yrs. employed in this line of work/profession |
|---|---|---|---|

| Position/Title/Type of Business EVP Operations | Business Phone (incl. area code) 818-988-9444 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

*If employed in current position for less than two years or if currently employed in more than one position, complete the following:*

Uniform Residential Loan Application
Freddie Mac Form 65 7/05 (rev.6/09)
Ellie Mae, Inc.

Page 1 of 6

Fannie Mae Form 1003 7/05 (rev.6/09)
GURLA09CA_S 0917
GURLA09S (POD)
GOLDWATER_000005
07/02/2019 02:17 PM PST

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0024

Goldwater Bank, National Association

ULI: 549300X08QKYUH256I8090921693167                                                    LOAN #: 909216931

| Borrower | IV. EMPLOYMENT INFORMATION | | Co-Borrower | |
|---|---|---|---|---|
| Name & Address of Employer ☐ Self Employed | Dates (from–to) | Name & Address of Employer ☐ Self Employed | | Dates (from–to) |
| | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |
| Name & Address of Employer ☐ Self Employed | Dates (from–to) | Name & Address of Employer ☐ Self Employed | | Dates (from–to) |
| | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 20,312.50 | $ | $ 20,312.50 | Rent | $ 2,300.00 | |
| Overtime | | | | First Mortgage (P&I) | | $ 3,683.94 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | 200.16 |
| Dividends/Interest | | | | Real Estate Taxes | | 953.12 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 20,312.50 | $ | $ 20,312.50 | Total | $ 2,300.00 | $ 4,837.22 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income**    *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed ☐    Jointly ☐    Not Jointly ☒

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | Borrower (B), Co-Borrower (C), Joint (J) LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
| *List checking and savings accounts below* | | Name and address of Company **(B)** | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union JP Morgage | | ██████████ | 294.00 169 | 34,561.00 |
| | | Acct. no. ██████ | | |
| Acct. no. ██████ | $ 227,103.00 | Name and address of Company **(B)** | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | ██████████ | 236.00 172 | 31,376.00 |
| | | Acct. no. ██████ | | |
| Acct. no. ██████ | $ | Name and address of Company **(B)** | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | ██████████ | 60.00 97 | 46,206.00 |
| | | Acct. no. 1785658 | | |

Uniform Residential Loan Application
Freddie Mac Form 65  7/05 (rev.6/09)

Ellie Mae, Inc.

Artur Elizarov
Page 2 of 6



Fannie Mae Form 1003  7/05 (rev.6/09)

GURLA09_S  0817
GOLDWATER_000006  GURLA09S (POD)
07/02/2019 02:17 PM PST

ULI: 549300X08QKYUH256I8090921693167

LOAN #: 909216931

## VI. ASSETS AND LIABILITIES (cont'd)

| | | | | | |
|---|---|---|---|---|---|
| Acct. no. | $ | | Name and address of Company **(B)** | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | 0.00 101 | 8,970.00 |
| | | | Acct. no. ████ | | |
| Acct. no. | $ | | Name and address of Company **(B)** | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number & description) | $ | | | 220.00 18 | 3,977.00 |
| | | | Acct. no. ████ | | |
| | | | Name and address of Company **(B)** | $ Payment/Months | $ |
| Life insurance net cash value | $ | | | 1,755.00 8 | 1,755.00 |
| Face amount: $ | | | | | |
| **Subtotal Liquid Assets** | $ | 227,103.00 | Acct. no. ████ | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ | | Name and address of Company | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | | *See Sch Of Liabilities | 1,408.00 | 6,975.00 |
| Net worth of business(es) owned (attach financial statement) | $ | | | | |
| Automobiles owned (make and year) | $ | | Acct. no. | | |
| | | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | | | | |
| | | | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | | **Total Monthly Payments** | $ | 2,741.00 |
| **Total Assets a.** $ | | 227,103.00 | Net Worth (a minus b) $ | 94,515.00 | **Total Liabilities b.** $ | 132,588.00 |

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | Totals | $ | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|

| **VII. DETAILS OF TRANSACTION** | | | **VIII. DECLARATIONS** | | | | |
|---|---|---|---|---|---|---|---|
| a. Purchase Price | $ | 915,000.00 | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | **Borrower** | | **Co-Borrower** | |
| b. Alterations, improvements, repairs | | | | Yes | No | Yes | No |
| c. Land (if acquired separately) | | | a. Are there any outstanding judgments against you? | | ☒ | ☐ | ☐ |
| d. Refinance (incl. debts to be paid off) | | | b. Have you been declared bankrupt within the past 7 years? | | ☒ | ☐ | ☐ |
| e. Estimated prepaid items | | 7,083.89 | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | ☒ | ☐ | ☐ |
| f. Estimated closing costs | | 13,211.92 | | | | | |
| g. PMI, MIP, Funding Fee | | | d. Are you a party to a lawsuit? | | ☒ | ☐ | ☐ |
| h. Discount (if Borrower will pay) | | | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | | ☒ | ☐ | ☐ |
| **i. Total costs (add items a through h)** | | 935,295.81 | (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | | | |
| j. Subordinate financing | | | | | | | |
| k. Borrower's closing costs paid by Seller | | | | | | | |

Uniform Residential Loan Application
Freddie Mac Form 65   7/05 (rev.6/09)

Ellie Mae, Inc.

Artur Elizarov
Page 3 of 6



Fannie Mae Form 1003   7/05 (rev.6/09)

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0026

| VII. DETAILS OF TRANSACTION | | VIII. DECLARATIONS | | | | |
|---|---|---|---|---|---|---|
| l. Other Credits (explain) | | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | **Borrower** | | **Co-Borrower** | |
| Cash Deposit on sales contract | 27,450.00 | | Yes | No | Yes | No |
| Seller Credit | 0.00 | | | | | |
| Other (Unison) | 183,000.00 | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | ☐ | ☒ | ☐ | ☐ |
| | | g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☒ | ☐ | ☐ |
| | | h. Is any part of the down payment borrowed? | ☐ | ☒ | ☐ | ☐ |
| | | i. Are you a co-maker or endorser on a note? | ☐ | ☒ | ☐ | ☐ |
| | | j. Are you a U.S. citizen? | ☒ | ☐ | ☐ | ☐ |
| | | k. Are you a permanent resident alien? | ☐ | ☒ | ☐ | ☐ |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 686,250.00 | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☒ | ☐ | ☐ | ☐ |
| n. PMI, MIP, Funding Fee financed | | m. Have you had an ownership interest in a property in the last three years? | ☒ | ☐ | ☐ | ☐ |
| o. Loan amount (add m & n) | 686,250.00 | (1) What type of property did you own – principal residence (PR), second home (SH), or investment property (IP)? | | PR | | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | 38,595.81 | (2) How did you hold title to the home – by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | S | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 7/3/2019 \| 14:01:38 PDT | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information. | | CO-BORROWER | ☐ I do not wish to furnish this information. | |
|---|---|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino | ☐ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino | ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White | | Race: | ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White | |
| Sex: | ☐ Female | ☐ Male | Sex: | ☐ Female | ☐ Male |

**To be Completed by Loan Originator:**
This information was provided:
- ☐ In a face-to-face interview
- ☐ In a telephone interview
- ☐ By the applicant and submitted by fax or mail
- ☐ By the applicant and submitted via e-mail or the Internet

| Loan Originator's Signature X Gregory Hill | | Date | 7/2/2019 \| 14:22:02 PDT |
|---|---|---|---|
| Loan Originator's Name (print or type) **Gregory Hill** | Loan Originator Identifier 247349 / State License # - 247349 | Loan Originator's Phone Number (including area code) | |
| Loan Origination Company's Name **Goldwater Bank, National Association** | Loan Origination Company Identifier 452955 | Loan Origination Company's Address 5605 112th Ste. E. # 600 Puyallup, WA 98373 | |



GURLA09DI_S  0418
GURLA09S (POD)
GOLDWATER_000008
07/02/2019 02:17 PM PST

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0027

DocuSign Envelope ID ... Created with Aspose.PDF, Copyright 2002-2017 Aspose Pty Ltd.

ULI: 549300X08QKYUH256I8090921693167                                    LOAN #: 909216931

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark **B** for Borrower or **C** for Co-Borrower. | Borrower:<br>**Artur Elizarov** | Agency Case Number: |
| | Co-Borrower: | Lender Case Number:<br>909216931 |

\*\*\*\* This page may be blank \*\*\*\*

**Under California Civil Code 1812.30(j) "Credit applications for the obtainment of money, goods, labor, or services shall clearly specify that the applicant, if married, may apply for a separate account."**

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
| --- | --- | --- | --- |
| X | 7/3/2019 \| 14:01:38 PDT | X | |

Uniform Residential Loan Application
Freddie Mac Form 65   7/05 (rev.6/09)
Ellie Mae, Inc.

Page 5 of 6



Fannie Mae Form 1003   7/05 (rev.6/09)
GURLA09CSCA_S   0817
GURLA09S (POD)
07/02/2019 02:17 PM PST
GOLDWATER_000009

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0028

# Exhibit 4

Excerpts from Transcript of the Deposition of Artur Elizarov

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
**Transcript of Proceedings on 09/23/2022**

```
 1                  UNITED STATES DISTRICT COURT

 2                  CENTRAL DISTRICT OF CALIFORNIA

 3

 4

 5    GOLDWATER BANK, N.A.,                   )
                                             )
 6            PLAINTIFF,                      )
                                             )    CASE NO.
 7      VS.                                   )    5:21-CV-
                                             )    00616-JWH-
 8    ARTUR ELIZAROV, ET. AL.                )    SPX
                                             )
 9            DEFENDANTS.                     )
      _____ )
10

11

12            REPORTER'S TRANSCRIPT OF PROCEEDINGS

13                 FRIDAY SEPTEMBER 23, 2022

14                        VOLUME I

15

16

17

18

19

20

21

22

23

24
      MARIANNE DER CLINT, CSR #10847
25    OFFICIAL REPORTER
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0030

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                    Page 2

```
 1   APPEARANCES:

 2

 3   FOR THE PLAINTIFF:        WAGNER HICKS PLLC
                               BY:  SEAN WAGNER, ESQ.
 4                             DEREK M. BAST, ESQ.
                               831 EAST MOREHEAD STREET
 5                             SUITE 860
                               CHARLOTTE, NORTH CAROLINA 28202
 6                             (704) 705-7538

 7
     FOR THE DEFENDANT,        LAW OFFICE OF ILYA ALEKSEYEFF
 8   ARTUR ELIZAROV:           BY: ILYA ALEKSEYEFF, ESQ.
                               727 WEST 7TH STREET
 9                             PH 1-13
                               LOS ANGELES, CALIFORNIA 90017
10                             (213) 537-4592
                               ILYA@LOIA.LEGAL
11

12   FOR THE CROSS-DEFENDANT, ORSUS GATE
     UNISON AGREEMENT CORP.:   BY:  NABIL BISHARAT, ESQ.
13                             16 NORTH MARENGO AV.
                               SUITE 316
14                             PASADENA, CALIFORNIA  91101
                               (213) 373-4357
15

16   FOR THE CROSS-DEFENDANT, HILBERT & SATTERLY LLP
     GOLDWATER:                BY:  JOSEPH A. LE VOTA, ESQ.
17                             409 CAMINO DEL RIO SOUTH
                               SUITE 104
18                             SAN DIEGO, CALIFORNIA 92108
                               (619) 795-0300
19

20   FOR THE CROSS-DEFENDANT, HALL GRIFFIN
     SCOTT HOWLETT:            BY: RYAN THOMASON, ESQ.
21                             1851 EAST FIRST STREET
                               10TH FLOOR
22                             SANTA ANA, CALIFORNIA 92705
                               (714) 918-7000
23

24

25
```

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
**Transcript of Proceedings on 09/23/2022**                     **Page 3**

```
 1                        I N D E X

 2

 3

 4            CHRONOLOGICAL INDEX OF WITNESSES

 5

 6   WITNESSES:                                    PAGE

 7   ARTUR ELIZAROV
         DIRECT EXAMINATION BY MR. WAGNER          19
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0032

GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.
Transcript of Proceedings on 09/23/2022                                    Page 4

```
 1               M A S T E R   I N D E X

 2
                   SEPTEMBER 23, 2022
 3

 4
                        EXHIBITS
 5

 6    PEOPLE'S           DESCRIPTION          MARKED RECEIVED

 7    EXHIBIT 100    DRIVER'S LICENSE          70

 8    EXHIBIT 100-1 DRAWING                    192

 9    EXHIBIT 101    CERTIFICATE OF DOMESTIC   80
                     PARTNERSHIP
10    EXHIBIT 102    LOAN APPLICATION          105

11    EXHIBIT 103    TEXT MESSAGE EXCHANGE     115

12    EXHIBIT 104    7/31/2019 DOCUMENT        204

13    EXHIBIT 105    DEED OF TRUST,            207
                     7/31/19
14    EXHIBIT 106    DEED OF TRUST             207

15    EXHIBIT 107    MORTGAGE ASSISTANCE       209
                     APPLICATION
16    EXHIBIT 108    CORRESPONDENCE            221

17    EXHIBIT 109    CORRESPONDENCE            221

18    EXHIBIT 110    CORRESPONDENCE            222

19    EXHIBIT 111    E-MAIL                    224
                     CORRESPONDENCE
20    EXHIBIT 112    E-MAIL                    227

21    EXHIBIT 113    COMMUNICATION             229
                     RE: FORBEARANCE
22    EXHIBIT 114    E-MAIL TO PETER HILL      232

23    EXHIBIT 115    CALIFORNIA               232
                     RESIDENTIAL PURCHASE
24                   AGREEMENT AND JOINT
                     ESCROW INSTRUCTIONS
25    EXHIBIT 116    SUPPLEMENTAL ESCROW       239
                     INSTRUCTIONS
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0033

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
**Transcript of Proceedings on 09/23/2022**           **Page 5**

| | | | |
|---|---|---|---|
| 1 | EXHIBIT 117 | COMMUNICATIONS WITH UNISON | 242 |
| 2 | EXHIBIT 118 | (NO DESCRIPTION) | 254 |
| 3 | EXHIBIT 119 | E-MAIL CORRESPONDENCE TO PETER | 260 |
| 4 | EXHIBIT 120 | E-MAIL EXCHANGES 3/24-3/25 | 264 |
| 5 | EXHIBIT 122 | E-MAIL EXCHANGES/PETER HILL | 276 |
| 6 | EXHIBIT 123 | SUMMARY | 278 |
| 7 | EXHIBIT 124 | BATES 40-41 | 282 |
| 8 | EXHIBIT 126 | ELIZAROV PRODUCTION PAGES 59-63 | 288 |

```
 9

10
     DEFENDANT'S       DESCRIPTION        MARKED RECEIVED
11
     (NONE)
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    company car.  I just mean regularly drove in.

2         A    I had a slew of vehicles from a BMW down to a

3    porch.

4         Q    Okay.  The BMW you mentioned, do you recall

5    approximately how long you drove that car?  The one

6    that was provided by your prior employer is the one I'm

7    referring to.

8         A    Probably a year-and-a-half, and it had Florida

9    license plates, and it was in Florida, in the state of

10   Florida.

11        Q    And the employer who leased it for you, who

12   was that?

13        A    That's dream home Realty group.  Which is --

14   my corporation.  I'm a licensed broker.  And maybe I

15   should make that correction I hold a professional

16   broker's license as well in the State of California.

17        Q    And the dream home Realty group are you the

18   sole owner of that entity?

19        A    I believe, I am, yes.

20        Q    And so that was the entity that was leasing

21   the BMW, that you drove you know in approximately 2018

22   that range?

23        A    2019.  2019 probably 2020.  In 2018, as I -- I

24   had -- I had a Porsche a 911.  That's the last vehicle

25   at least I remember.

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                          Page 110

```
 1    communicate information -- well, strike that.
 2             Did Mr. Hill ask you for information for the
 3    purpose of putting it into the loan application?
 4        A    He asked me information.  What he did with the
 5    information, I'm not Mr. Hill, but I provided a number
 6    of documents that he requested as part of the process.
 7    If that's what you're asking me.
 8        Q    Sure.  And we're going to get to the text
 9    messages, right.  At some point you provided
10    information by text message; right?
11        A    Either by text message or by phone
12    conversation.  We had a number of interactions with
13    Mr. Hill.
14        Q    I understand that.  So I'm just trying to ask
15    specific questions here.  So --
16        A    Yeah.
17        Q    So you communicated with Mr. Hill and my first
18    question was did you communicate with Mr. Hill by text
19    message?
20        A    I did.
21        Q    Okay.  And as part of those communications did
22    you provide information that you believed was necessary
23    to apply for the loan?
24        A    Correct.  As he asked for the information.
25        Q    Okay.  Did you also communicate with
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0036

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                    Page 112

```
 1   to an e-mail request to review and sign this document
 2   using the Docusign app that was sent from Mr. Hill to
 3   you, do you have any reason to doubt that that occurred
 4   as we sit here today?
 5            MR. ALEKSEYEFF:  He'll answer.  Just a quick
 6   objection.  Assumes facts not in evidence.  You said
 7   "your signature."  He didn't say it was his.  So to the
 8   extent that it's asked if you have an envelope that
 9   matches the number below a signature, the signature
10   that's on here, yes, the witness will answer.
11            THE WITNESS:  I wouldn't have any reason to
12   believe that it wouldn't be assuming the documentation.
13   BY MR. WAGNER:
14       Q    You're a realtor; correct, sir?
15       A    I'm a broker.
16       Q    You're a broker?
17       A    Uh-huh.
18       Q    So you're pretty experienced when it comes to
19   real estate transactions; correct?
20       A    Regular real estate transactions, yes.
21       Q    And when you say "regular," do you mean
22   residential real estate transactions?
23       A    I mean, those that don't involve an investment
24   of a third party.  So traditional transactions, where
25   there is a conventional loan, there isn't a third party
```

GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.
Transcript of Proceedings on 09/23/2022                        Page 115

```
 1   Mr. Elizarov.

 2           (Discussion held off the record.)

 3   BY MR. WAGNER:

 4       Q    Take a moment, Mr. Elizarov, and review what's

 5   been marked as 103 and let me know when you've had a

 6   chance to look through it?

 7       A    I'm scanning through.  This is a lot of

 8   information.

 9       Q    That's okay.

10       A    Okay.

11           (Plaintiff's Exhibit No. 103, Text message

12           exchange, was marked for identification.)

13   BY MR. WAGNER:

14       Q    Do you recognize what has been marked as

15   Exhibit 103?

16       A    Yeah.  These appear to be my text message

17   exchanges with Mr. Hill.

18       Q    And does it appear to be a replica or copy of

19   the text messages that you produced in discovery from

20   your phone?

21       A    It does.

22       Q    Okay.  I want to direct your attention to page

23   one and actually the first message on page one, and it

24   appears to have been sent on June 24th 2019 at eight

25   a.m. would you take a moment to read that.
```

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                    Page 117

1    mean?  Are you referring to a specific document?

2        A    I'm referring to the purchase and the process.

3    Because, again, it was a unique process to the entire

4    purchase, because Unison was involved, and on the

5    number of documents and other things that I had to

6    provide that are not typically part of a regular

7    purchase agreement or a purchase in a real estate

8    transaction.  So I meant the application as in the

9    entire process.

10       Q    Okay.  And did you understand that Mr. Hill

11   was utilizing information that you had provided to

12   complete an application for a loan?

13       A    I did.

14       Q    Okay.  And when you say should have those

15   statements shortly, are you talking about information

16   that you would have provided to Mr. Hill as part of his

17   efforts to help you complete that loan application?

18       A    Quite possibly, yes.

19       Q    Can you think of any other reason you would

20   have been sending Mr. Hill statements?

21       A    It could have been for Unison's purpose or for

22   escrow or anything else.  Again, this is something

23   that's happened quite a few years ago so it could be a

24   number of reasons why I would give him that

25   information.

1    Q    But did you understand that Mr. Hill didn't

2    work for Unison; right?

3    A    I mean, I understood that, but I also

4    understood that it was a partnership between both the

5    organizations to deliver or to finish this transaction.

6    Q    And what was Mr. Hill and your -- basically

7    from your recollection, what was Mr. Hill's role in

8    helping finalize this transaction?

9    A    I think from my perspective, it was on the

10   banking side and any of the additional coordination

11   required about either escrow or Unison.

12   Q    And do you recall, when you say should in it

13   text message, should have those text message -- those

14   statements shortly, are we talking about financial

15   statements?

16   A    Could be financial statements, could be -- I

17   mean, could be whatever statements or whatever

18   information that he requested.

19   Q    Okay.  And do you recall him requesting

20   information that was unrelated to assisting you with

21   your loan application?

22   A    No.

23   Q    Okay.  When Mr. Hill asked you for

24   information, did you give him truthful honest

25   information?

1     A    I did.

2     Q    Okay.  On -- if you look to the second text

3  message there from 6/24/19 at 12:04, you have

4  working -- you said to Mr. Hill, working, I think you

5  meant, with H.R. to get you offer letter.  Can you

6  recall what you meant or why you sent that to Mr. Hill?

7     A    I don't.

8     Q    Looking at it, does -- do you recall what you

9  might have been referring to?

10    A    Might be some sort of an employment letter

11  verification or other wise or -- I don't know.  I don't

12  want to speculate.

13    Q    Okay.  Do you recall needing to obtain

14  information from your employer to provide as part of

15  the loan application process?

16    A    I think the only thing that I recall is

17  providing information so that Mr. Hill or the bank

18  could obtain verification or information related to my

19  employment.  I may have provided pay stubs or other

20  statements.

21    Q    Okay.  Is it fair to say that if Mr. Hill had

22  personal information regarding your finances or living

23  history or employment history or anything like that,

24  that he obtained it from you?

25    A    He obtained it from me or from the documents

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
**Transcript of Proceedings on 09/23/2022**                                     Page 120

1    that I provided that he requested.  Yes.

2        Q    Okay?

3        A    Or he obtained my permission to obtain from

4    third parties directly.

5        Q    Okay.  If you look at Page 2 of 25, there's a

6    text message from 6/24/19 at 1:28 p.m. where you say

7    "also sent Porsche proof of payment," do you see that?

8        A    Yes, I do.

9        Q    Do you recall sending Mr. Hill proof of

10   payment relating to a Porsche that you drove around at

11   the time or leased?

12       A    I don't recall specifically.

13       Q    Would you have any reason to doubt that you

14   did send him that information?

15       A    No, but I can see on 7/10 there is a document

16   relating to the Porsche so it might be referenced to

17   that.

18       Q    Okay.  And we're going to get to that.  If you

19   look to the next -- strike that.  Are there any other

20   channels other than text message talking to Mr. Hill on

21   the phone, and talking to Mr. Hill on the phone that

22   you utilized to communicate information that he

23   requested as part of the loan application process?

24       A    Perhaps e-mails.

25       Q    E-mails, okay.  At the time would it have been

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                    Page 172

```
 1      A    I don't.
 2      Q    Okay.  And it looks like on the next page, if
 3  you go to the top of the next page, you'll see a
 4  message from Greg that says Joyce is calling me again.
 5  Had a question forgot to ask.  Dial in okay?  And you
 6  said yes.
 7      A    Yes.
 8      Q    Do you recall having a second call with Joyce?
 9      A    I don't, but it appears that I did.
10      Q    You just dont remember the substance?
11      A    I don't.
12      Q    And, you know, I don't want to get in trouble
13  with the court reporter, so I'll try -- I'm going to
14  try harder not to cut you off and I appreciate the
15  same.
16          Okay.  Let's move down on 7/26/19 at 9:54, the
17  text message that starts with, "Hey, Art, as we head
18  towards close, how do you want to take title?"
19          "As a single man."
20          MR. ALEKSEYEFF:  Just one second.  Are we
21  looking at Page 16?
22          MR. WAGNER:  That's correct.
23          MR. ALEKSEYEFF:  Page 16.
24          THE WITNESS:  Yes.
25
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0043

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
**Transcript of Proceedings on 09/23/2022**                    Page 173

```
 1   BY MR. WAGNER:

 2       Q    Okay.  What is -- what is Mr. Hill asking you

 3   about there?

 4       A    My title in terms of -- are you asking about

 5   my status as a -- as a married, single person or are

 6   you asking me about how I want to take title on the

 7   home.

 8       Q    Well, so I'm asking what you believe Mr. Hill

 9   was referring to when he said how do you want to take

10   title as a single man.

11       A    He's asking me how I want to go on the title

12   of the home for the purposes of recording that title as

13   it relates to the ownership.

14       Q    And for the lay people and, you know, other

15   people may read this, what we're talking about is on

16   the conveyance to you, it reflects what your ownership

17   is going to say when it says who the ownership of the

18   property is; right?

19       A    Correct.  Whether it's me alone, me with three

20   other people, me as a tenants in common, or whatever

21   the -- I guess the scenario calls for.

22       Q    Okay.  Is there any reason why you wanted this

23   one to be held just in your name as opposed to in your

24   name and your spouse's name?

25            MR. ALEKSEYEFF:  So I do have an objection.
```

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                    Page 185

 1   Yeah.

 2       Q    Okay.  And I want to draw your attention to

 3   Page 24 of 25.  And it's toward the end of your

 4   conversation with Mr. Hill.  And it is a discussion of

 5   you selling the Palm Springs property.  And if you'll

 6   start on two -- it starts on the top of Page 24,

 7   there's a message from 2/4/21 at 6:04 p.m.?

 8       A    Correct.

 9       Q    Is that first message with that screenshot and

10   then the name of your cross under it, is that reference

11   to the escrow agent for the sale that's upcoming, that

12   will eventually occur, the transaction that will

13   eventually at the end of March?

14       A    So the escrow agent is the -- is the same, but

15   it might have been related to an initial transaction

16   that did not go through.  Again, memory is really

17   fuzzy.  I tried representing the house myself, got into

18   sort of a complication, didn't have time to deal with

19   it.

20       Q    Okay.  So just so the record's clear, and I

21   think this came up at a different deposition, but there

22   was an initial kind of putting the house on the market

23   and there was a transaction that fell through; is that

24   right?

25       A    Correct.  And I don't remember whether that

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0045

GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.
Transcript of Proceedings on 09/23/2022          Page 186

```
 1   transaction fell through when I represented versus when
 2   I turned it over to an agent, Will Cook, who -- who
 3   knows the market and wanted to sell.
 4       Q    Okay.  And so this kind of initial reachout
 5   related to Andrea Cross has to do with that transaction
 6   that fell through; correct?
 7       A    Yeah.  It could be, yeah.
 8       Q    Okay.
 9       A    It could be that or it could be -- again, from
10   a timing perspective, I'm fuzzy on the number of
11   complications of when they transpired or the agent or
12   the escrow agent is the same in all three of them.
13       Q    Okay.  Now going down here, there's a text
14   that says "sell price is 1.35 M."
15       A    Uh-huh.
16       Q    Does that refer to a sale price of the Palm
17   Springs house at 1.35 million?
18       A    Correct.
19       Q    And you say here "So everyone wins."
20       A    Yes.
21       Q    What did you mean by that?
22       A    As in I'm able to pay back everything and walk
23   away with my initial investment, give or take.
24       Q    Okay.  And you mentioned that there's a 400 --
25   in this exchange, you text Mr. Hill, "There's 450K
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0046

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                          Page 188

1      A    So I would have made the upgrades after the

2   initial sale fell through in order to put it back to

3   the market and make it more marketable, because one of

4   the issues with the house was that two of the bedrooms

5   were dis -- so it's a three-bedroom house.  Two of them

6   are on the inside.  The third bedroom, you have to

7   independently access and walk to an outside area, which

8   made it unfavorable.

9      Q    Okay.  And you -- you believe that you made

10   those upgrades when?

11      A    I made them at some point during the sales

12   process.  I just can't remember exactly when because

13   again I did the fire place in one.  I did the

14   furnishings in another and the -- the most material up

15   grades in terms of building walls to bring all the

16   three bedrooms together last.

17      Q    Okay.  And did you do this work yourself?

18      A    I did it myself with the help of a basically a

19   contractor that's a friend.

20      Q    Okay.  Contractor who's a friend.  Who is the

21   contractor friend?

22      A    So Vartan's brother.

23      Q    Which Vartan?  Vartan A?

24      A    Akopyan.

25      Q    Is that the same Vartan at Ritecare?

1    A    Correct.

2    **Q    His brother?**

3    A    Yes.

4    **Q    And what's his brother's name?**

5    A    John.

6    **Q    John?**

7    A    Akopyan.

8    **Q    A --**

9    A    Same spelling, A-K-O-P-Y-A-N.

10         That is, I believe, Journeyman Construction is

11   the name of the organization.

12   **Q    Okay.  And so what work was completed by**

13   **Journeyman Construction specifically?**

14   A    Some of it was the fire pit.

15   **Q    So fire pit in the back?**

16   A    Yep.  Like a custom fire pit built.

17   **Q    Sorry?**

18   A    Yep.

19   **Q    How much did the fire pit cost in labor and**

20   **materials?**

21   A    Without looking, like actual costs, I could

22   estimate the entire like sort of cost of the job 25 to

23   30K.

24   BY MR. WAGNER:

25   **Q    Okay.  But that cost the entire job?**

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0048

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
**Transcript of Proceedings on 09/23/2022**                    Page 190

1      A    As in relates to the fire pit specifically 25

2   to 30K for the fire pit.

3      Q    Just on the fire pit?

4      A    Yes.

5      Q    And then what else?  What else did Journeyman

6   help you with?

7      A    The extension -- how do I -- I wish there was

8   a visual aid.  Do you mind if I draw?

9      Q    How about I give you a piece of paper that we

10  can put in the record perhaps, something blank.  Okay.

11     A    All right.  I am going to be terrible at

12  drawing.  So if you -- this is the master bedroom, this

13  is the kitchen, this is the bedroom two, this is empty

14  split living space.  This is a separate bedroom.  This

15  is, if you can imagine, the space being an outdoor

16  space.

17     Q    Uh-huh.

18     A    Does that make sense?

19     Q    Is there a pool out here?

20     A    No.  So the pool is here outside.

21     Q    Okay.

22         MR. ALEKSEYEFF:  And, for the record, the

23  witness indicated the top right corner outside of the

24  page on the table.  Got to remind us, about the camera.

25         THE WITNESS:  So this is an outdoor space.

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0049

1   This is the indoor living space.  So you have to take

2   down this wall, bring this part of the basically the

3   outside, right, as part of the inside, redo a portion

4   of the roof, yeah, right, because there wasn't one.

5   BY MR. WAGNER:

6        Q    Uh-huh.

7        A    So and connect this as well.  Yeah.  Then redo

8   all of the flooring, so that then this becomes

9   basically a part.  So imagine not having any of this

10  now.  And this separate bedroom that had this sort of

11  like side entrance by itself is now part of the whole

12  house.

13       Q    Okay.

14       A    So it adds 400 square feet of living space,

15  right, that was then odd, but it also joins the

16  separate bedroom, right, from a part of the house into

17  the entire landscape of the house.

18       Q    Okay.

19       A    Does that make sense?

20       Q    I think so.

21            MR. WAGNER:  I'm going to mark this as --

22  since it's a visual so --

23            THE WITNESS:  I mean, it's a terrible picture.

24            MR. WAGNER:  100-1, just so we don't mess up

25  the other numbering.  We'll make this part of the

1   deposition record.

2           (Plaintiff's Exhibit No. 100-1, DRAWING, was

3           marked for identification.)

4           THE WITNESS:  Additionally, we made repairs to

5   the pool, because it did not have an adequate heater or

6   a heating system, so that's a part of the other

7   changes.  We made some landscaping because there's a

8   lot of empty area and it makes the house look desolate,

9   which we dressed up and changed the primary gate that

10  surrounds the house from a privacy perspective.

11      Q    Okay.  And the extension of the bedroom, how

12  much did that cost?

13      A    I -- I couldn't tell you without the material,

14  but if I remember, to estimate somewhere between like

15  70 and 90K on its own.

16      Q    Okay.  And what about the landscaping?

17      A    Another 10 to 15K.  Because it's a lot of

18  landscaping.  If you look at the overall square

19  footage.

20      Q    Okay.  And what about the pool, you added a

21  heater, you said?

22      A    Yeah, I added a heater.  We resurfaced the

23  surface of the pool.

24      Q    Okay.  Then when you say "the surface," do you

25  mean the decking around?

1      A      The decking around.

2             Also paint and resurface and cleaned the tiles

3      to give it a more modern look and added a heater, so

4      that was around $5,500 give or take.

5      Q      **And what about the gating?**

6      A      About $4,500 all together.

7      Q      **Okay.  And this was all completed by John at**

8      **Journeyman Construction?**

9      A      Correct, with my help.

10     Q      **With your help?**

11     A      Some of the labor.  It was a ton.

12     Q      **And John did -- do you recall approximately**

13     **when you asked John to give you a proposal to assist**

14     **with this work?**

15     A      This was a friend so it wasn't proposal, it

16     was I need to -- I have an obligation, I need to be

17     able to sell the home in order to satisfy the issues,

18     so please help me to the extent that I can do a lot of

19     the work and we can do this informally is what we do.

20     Q      **Okay.  And did John provide you with any**

21     **invoices?**

22     A      No.

23     Q      **And did John ask for a deposit up front?**

24     A      He did ask for some deposit but I -- again, he

25     advanced some of the money because he understood the

1   financial situation that I was in to help me alleviate

2   the burden.

3      Q     Okay.  So you did all of this work after the

4   first sale fell through?

5      A     I did all of this work in -- from the

6   beginning of the year to the time transaction closed.

7   And some of it before.

8      Q     But it wouldn't have been in progress when you

9   were under contract or were selling it the first time,

10  right?  I mean, you don't have a house under

11  construction that somebody buys generally; right?

12     A     No.  No.

13     Q     So it had to be either done before or after?

14     A     Right.  And I think some parts, like the

15  fireplace, I can't remember whether the fireplace was

16  first or second.  I -- again, it was done in two parts,

17  and to alleviate the concerns that we were getting

18  from -- from potential buyers on the discord of the

19  house.

20     Q     Okay.  And did John from Journeyman, did he

21  eventually collect the full amount that you owed him?

22     A     Yeah.

23     Q     As we're sitting here today, do you owe him

24  any money?

25     A     No.

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                 Page 195

```
 1      Q    When did you complete paying him for the work,

 2   labor and materials that were necessary to perform

 3   these upgrades?

 4      A    Subsequent to the sale of the house.

 5      Q    Okay.  And I just want to make sure there's

 6   not any invoices?

 7      A    No.

 8      Q    Not any --

 9      A    Well, invoices in terms of there's invoices

10   for material and other things, but an invoice for his

11   work, no.

12      Q    Okay.  And you do you have those invoices?

13      A    I may have them somewhere.  I'm sure I saved

14   them.

15      Q    Would you have written them off on your taxes?

16           MR. ALEKSEYEFF:  Objection.  Privileges.  Tax

17   information.

18           Don't answer, please.

19           MR. WAGNER:  It's only privileged if it

20   actually was included in a tax filing.

21           MR. ALEKSEYEFF:  But to answer, he'll have to

22   tell you what he put on taxes, right.  So if he says

23   no, I didn't, he's telling --

24   BY MR. WAGNER:

25      Q    Are these the type of expenses that you
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0054

1   normally keep receipts for, for purposes of tax filing?

2        A    I would, yeah.

3        Q    Not something you the would just throw away?

4        A    No.

5        Q    Would he have sent you the receipts via

6   e-mail?

7        A    No.

8        Q    He wouldn't have used e-mail?

9        A    No.  John's very old school.  So we would have

10   either bought them together, or he would have handed

11   them to me as part of the work that we did on the house

12   together.

13        Q    Okay.

14        A    In the course of the time that we spent

15   together.

16        Q    When you say we would have bought them, did

17   you buy supplies together?

18        A    Sometimes we did, yes.

19        Q    Sometimes.  Do you recall how many times?

20        A    Three to five.  I mean, we made quite a few

21   visits to Home Depot if you --

22        Q    That was my next question.  And so did you

23   purchase some of the supplies at Home Depot?

24        A    Some of them at Home Depot, some at Builder

25   Warehouse, some at -- here in L.A. that I took to Palm

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
**Transcript of Proceedings on 09/23/2022**                    Page 197

```
 1   Springs.  So over the course of different locations,
 2   yeah.
 3       Q    Okay.  What's John's telephone number?
 4       A    I can look it up.
 5       Q    Please do.
 6       A    Okay.  (323) 833-8886.
 7       Q    Okay.  And at some point, did John threaten to
 8   file a lawsuit against you to collect these funds?
 9       A    He did.
10       Q    Okay.  When was that approximately?
11       A    I think when he knew we were going to
12   basically sell the home, and that I would have an
13   upside, so he wanted to get paid for the work, and he
14   started making his demands and threats for it.
15       Q    Okay.  Did he send you a demand letter?
16       A    No.
17       Q    Did he have an attorney contact you?
18       A    No.  He called me.
19       Q    Okay.  Did he send you any notices or anything
20   in the mail?
21       A    No.
22       Q    Okay.  And you never communicated with him by
23   e-mail?
24       A    No.
25       Q    Okay.  Just so we're clear on the record,
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0056

GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.
Transcript of Proceedings on 09/23/2022                    Page 198

1    you're not sure exactly when the improvements took

2    place, but they would have taken place sometime in 2021

3    before the property was sold, and either a portion had

4    to have taken place before the first sale fell through,

5    right, and some portion after the first sale fell

6    through?

7        A    Correct.  Yeah.

8        Q    Okay.  What about permitting?  You enclosed

9    some new area.  Normally you got to go get a permit.

10   Did John go get a permit?

11       A    No.  That was part of the reason why I did

12   some of the work, because I understood that if you do

13   the improvements yourself as a homeowner, some of the

14   things that we were doing did not require permitting.

15   If I had formally hired a services of general

16   contractor to do the work on my behalf, it would

17   require the permitting otherwise.

18       Q    Is John a licensed contractor?

19       A    He is.

20       Q    Okay.  And he agreed to do that to assist you

21   in skirting the requirements relating to permitting?

22            MR. ALEKSEYEFF:  Objection.  Argumentative as

23   phrased.

24            You can answer.

25            THE WITNESS:  I don't think the intention was

```
 1   to skirt.  I think it was to make it cost efficient as
 2   to do it as a longtime tenured friend, because we've
 3   often helped each other out in other situations that
 4   have arisen so.
 5   BY MR. WAGNER:
 6       Q    Okay.  So when you sent Greg this text message
 7   that said everybody wins and I'm looking at exhibit --
 8            MR. LE VOTA:  103.
 9   BY MR. WAGNER:
10       Q    103, Page 24, when you said on 24 of 2021, in
11   the evening thereafter, 6:04 p.m., that you had $20,000
12   in improvements, was that an accurate statement of the
13   amount of improvements you had in that property at that
14   time?
15       A    Yes.  But I may have been referring to the
16   furniture and the wallpaper, so the interior design
17   stuff.
18       Q    But up to that, everything had been done up to
19   that point, it encapsulated this $20,000?
20       A    On the interior design stuff, yes.
21       Q    Well, you mean you said it's been in
22   improvements?
23       A    Again, it cost me more than that.  So I'm -- I
24   don't recall what that $20,000 including specifically,
25   as I meant it in that text message, but I would tell
```

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
**Transcript of Proceedings on 09/23/2022**                    Page 200

```
 1   you that you spent way more than $20,000 on the total
 2   improvements, and the interior design improvements
 3   alone on the furniture and were roughly around $20,000,
 4   and I have receipts for those, as well, because I
 5   purchased the stuff from Wayfair.
 6       Q    And you have receipts for those things?
 7       A    Correct.
 8       Q    From Wayfair?
 9       A    Correct, I do.  And if I don't, I can pull
10   them, because I do have a professional account with
11   Wayfair for that purpose.
12       Q    And your excitement about the upside, this is
13   all before you learned that the Unison lien was more
14   than what you thought it was going to be?
15       A    That and extortion from a friend who I thought
16   did me a favor of helping me through a difficult
17   situation, yes.
18       Q    Okay.  Do you know Gregor Simon Akopyan,
19   A-K-O-P-Y-A-N?
20       A    I do.
21       Q    And who is he?
22       A    He's Vartan's other brother.
23       Q    Okay.  And what does Gregor do?
24       A    I think he's also a general contractor.
25       Q    And does he work as Journeyman, as well?
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0059

1     A    He might.  I don't know him as well as I knew

2    John.

3     Q    Okay.  But if, you know, I represented to you

4    that he did work at Journeyman, you'd have no reason to

5    doubt that?

6     A    I would have no reason to doubt that, no.

7     Q    How many -- do you have a sense for how many

8    people work at Journeyman?

9     A    I don't.

10    Q    Did you encounter anybody else at Journeyman

11   other than the gentleman we discussed earlier?  So I'm

12   clear, John, who is apparently Gregor's brother, did

13   you encounter, anyone other than John or deal with

14   anyone other than John at Journeyman?

15    A    No, I didn't -- actually with the exception of

16   a gas and fire person who may have connected the gas

17   line to the fire pit.

18    Q    And --

19    A    I don't remember their name, if that's what

20   you're asking.

21    Q    Let me get the question out, but that was

22   going to be my question.  But you don't remember their

23   name.  Do you remember anything about them?

24    A    I met him in basically in passing to let him

25   into the property.

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                    Page 202

```
 1     Q    And did you pay him separately?

 2     A    No.

 3     Q    So you --

 4     A    John advanced the fee.

 5     Q    Okay.  And John did this just as a favor?

 6     A    Yeah.  Ten years of friendship out of

 7   necessity sometimes allows you to do that, yeah.

 8     Q    Okay.

 9     A    It's not atypical.

10     Q    I appreciate you saying that.  Did -- have you

11   had any other communications with Greg Hill in, say,

12   the last six months?

13     A    No, I have not.  No.

14     Q    Okay.  I want to go back to Exhibit 102.  And

15   I want to ask you, again, having gone through the

16   messages and communications with Greg, if you recall

17   anything else about the process of putting together

18   your loan application?

19     A    I don't.

20     Q    Okay.  Do you recall receiving a Docusign

21   e-mail asking you to sign this document?

22     A    I don't, but I may very well have received a

23   document.

24     Q    Fair enough.  Do you often use Docusign to

25   sign things?
```

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
**Transcript of Proceedings on 09/23/2022**                    Page 204

```
 1    reflexion of your recollection or your intended

 2    testimony?

 3              THE WITNESS:  Correct.

 4              MR. WAGNER:  Thank you.

 5              (Plaintiff's Exhibit No. 104, 7/31/2019

 6              document, was marked for identification.)

 7    BY MR. WAGNER:

 8        Q    Do you recognize Exhibit 104?

 9        A    I do.

10        Q    Okay.  I want to bring you to the first page

11    here and direct your attention to a signature at the

12    top, above the space for borrower.

13              Is that your signature?

14        A    It is.

15        Q    Do you recall signing this at closing?

16        A    I did.

17        Q    Okay.  Let's go to the --

18        A    I do.

19        Q    Thank you.  Let's go to Page 3, you'll note

20    about three-quarters of the way down, there's a

21    borrower signature box, and it has a signature there.

22    The date is 7/31/2019.  Do you recall signing this

23    document making that signature?

24        A    I do.  That is my signature.

25        Q    Okay.  Moving on to the next page on the --
```

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                    Page 208

```
 1    Exhibit 105.  If you'll look at the top of the page
 2    there, there is a --
 3        A    12 of 13, just for clarification.
 4        Q    Yes, sir.  12 of 13.  There's a spot there
 5    with -- for a signature.  Underneath the line it says
 6    Artur Elizarov.  Is that your signature above that
 7    line?
 8        A    It is my signature, yes.
 9        Q    And is the date 7/31/2019?
10        A    Yes, it is.
11        Q    And based on the best of your recollection, is
12    that the date that your closing occurred?
13        A    It is.
14        Q    Okay.  Let's move to Exhibit 106.  Do you
15    recognize Exhibit 106?
16        A    I do.
17        Q    And if you take a look quickly at Page 3 of
18    Exhibit 106, there's a line that -- and type says Artur
19    Elizarov, is that your signature?
20        A    That is my signature.
21        Q    And do you recall signing this document?
22        A    It's my wet signature, so yes.  I signed a lot
23    of documents that day.
24        Q    No doubt.  Thank you.
25             I'm going to introduce what we'll mark as
```

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                    Page 209

1   Exhibit 107.  Please take a look at Exhibit 107 and let

2   me know when you're done reviewing it.  And if you

3   don't mind, may I put a sticker on it real quick just

4   so we --

5       A    Yep.

6            (Plaintiff's Exhibit No. 107, mortgage

7            assistance application, was marked for

8            identification.)

9            THE WITNESS:  Okay.

10  BY MR. WAGNER:

11      Q    All right.  Do you recognize Exhibit 107?

12      A    Looks like a mortgage assistance application.

13      Q    And do you recall receiving a mortgage

14  assistance application from Goldwater Bank?

15      A    I may have, but I don't recall specifically.

16      Q    Okay.  Would you go to Page 4 of the exhibit.

17      A    I am on that page.

18      Q    Does that appear to be a Docusign signature

19  that you've signed?

20      A    Well, it appears to be a Docusign signature.

21  As to whether or not I signed it, I don't specifically

22  recall.

23      Q    Okay.  You don't.  But if there were an e-mail

24  request to Docusign this document with this envelope

25  number that was identified as being connected to one of

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                    Page 210

1   your e-mails, would have you any reason to doubt that

2   you sign today?

3       A    No.

4       Q    Did you, in fact, make a request for mortgage

5   assistance?

6       A    I may have, yes.

7       Q    Do you recall contacting Goldwater Bank to

8   seek assistance related to pandemic related hardships?

9       A    I may have reached out to them more than a few

10  times both at the beginning of the pandemic and we were

11  going through it, so yes.

12      Q    But you recall reaching out?

13      A    Yes.

14      Q    And asking for assistance?

15      A    And ask what the options may have possibly

16  been, yep.

17      Q    Okay.  And when you reached out to ask for

18  assistance, were you asked to fill out this

19  application?

20          MR. ALEKSEYEFF:  Now I'm going to object to

21  evidence code 970 because, again, the allegation in the

22  complaint directly links me to the specific document

23  and the discovery responses similarly indicated that

24  your theory is that by communicating with West Star

25  about the continuation of hardship, I was somehow part

---

```
 1       A    Yeah.

 2            MR. WAGNER:  I'm going to hand you what we'll

 3  mark as Exhibit 114.  Please take a moment to review it

 4  and let me know when you've done so.

 5            (Plaintiff's Exhibit No. 114, E-mail to Peter

 6            Hill, was marked for identification.)

 7            THE WITNESS:  Okay.

 8  BY MR. WAGNER:

 9       Q    Do you recognize Exhibit 114?

10       A    It's an e-mail that appears to have been sent

11  to Peter Hill by me.  And it's the contact information

12  for Andrea Cross.

13       Q    Okay.  And when you turn it over to the second

14  page, does it appear to indicate that there are some

15  attachments?

16       A    Yeah.

17       Q    Okay.  I'm going to hand you what we'll mark

18  as Exhibit 115.  All right.

19            (Plaintiff's Exhibit No. 115, California

20            residential purchase agreement and joint

21            escrow instructions, was marked for

22            identification.)

23  BY MR. WAGNER:

24       Q    Do you recognize Exhibit 115?

25       A    Yep.
```

1      Q    And what do you recognize it to be?

2      A    A California residential purchase agreement

3  and joint escrow instructions as entitled above on

4  Page 1.

5      Q    Okay.  And would you please turn to -- let's

6  see, turn to the last page, Page 10 of 10.

7      A    Sure.

8      Q    And --

9      A    9 of 10.  It's double-sided.  Okay.

10     Q    Yeah.  If you'll look at the top of that page,

11  there appears to be an electronic signature there and

12  credit name of Artur Elizarov?

13     A    I must have, but it is a digital signature.

14     Q    And you testified earlier you commonly use

15  Docusign; correct?

16     A    Yeah.

17     Q    Okay.  So wouldn't have been unusual for you

18  to Docusign this document?

19     A    No, it wouldn't have been.

20     Q    In your experience as a realtor in the recent

21  past, let's say, the last three to four years, has it

22  become more and more common for realtors to use

23  Docusign as part of these transactions?

24     A    Actually not Docusign, but yes.

25     Q    A form of electronic signature?

1   choice I had at that time.

2          MR. WAGNER:  I'm going to hand you what we're

3   going to mark Exhibit 124.

4          MR. ALEKSEYEFF:  Did we skip a couple?

5          MR. WAGNER:  I mean Exhibit 122.

6          MR. ALEKSEYEFF:  I just didn't know if you had

7   them premarked.  I'm going to hand you 122 here.

8          THE WITNESS:  And if I may, I'd like to just

9   point out to you, in terms of my state of mind, I can't

10  handle the stress anymore, and the unwillingness of

11  someone taking a 495K profit to give up less than 50K.

12  So --

13  BY MR. WAGNER:

14     Q   And who were you referring to when this

15  someone --

16     A   Unison.

17         MR. WAGNER:  All right.  I've handed you what

18  we're marking Exhibit 122.  Please take a moment to

19  review 122 and let me know when you're done.

20  (Plaintiff's Exhibit No. 122, E-mail exchanges/Peter

21  Hill, was marked for identification.)

22  BY MR. WAGNER:

23     Q   Do you recognize Exhibit 122?

24     A   It looks like e-mail exchanges with Peter

25  Hill.

GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.
Transcript of Proceedings on 09/23/2022                    Page 277

```
 1        Q    Okay.  And I want to focus on the e-mail

 2   exchange on the first page.  The other -- these are

 3   e-mails that were subsequent to Exhibit 121, but there

 4   were different e-mail chains, and so I thought it would

 5   be easier to do it this way.  I want to ask you

 6   quickly, the 11:03 e-mail, is that an e-mail where Pete

 7   Hill is asking you for detailed information about the

 8   construction costs so that we can approach Unison and

 9   see if he can help you out?

10        A    11:33.

11        Q    I'm looking at 11:03 here, and it's down right

12   here, sir.

13        A    I'm sorry.  I'm looking above.

14        Q    It's all right.

15        A    Okay.  Yeah.

16        Q    Okay.  And so you -- you viewed that as Pete

17   Hill asking you for information so that he could go to

18   Unison and see if there was something that they could

19   collectively do to help you; right?

20        A    I don't remember, but I imagine that's the

21   case, yes.

22        Q    And what was he asking you for the

23   construction cost?

24        A    I think detailed receipts is what he says.

25        Q    And you say "Estimate attached.  You know all
```

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                    Page 278

```
 1    the numbers, I'll try working to find the construction

 2    stuff.  Can you at least start with the detail you have

 3    as a baseline," right?

 4        A    Yep.

 5            MR. WAGNER:  Okay.  And the detail, I'll go

 6    ahead and hand you what we're going to mark as

 7    Exhibit 123.

 8            (Plaintiff's Exhibit No. 123, Summary, was

 9            marked for identification.)

10            THE WITNESS:  Yep.

11    BY MR. WAGNER:

12        Q    Do you recall sending this to Mr. Hill?

13        A    Yes.

14        Q    Okay.  And is this a summary of the

15    construction work that had been done on the property?

16        A    In general terms, yes.

17        Q    Okay.  And it seemed like you sent this to

18    Mr. Hill but you did not provide him with any invoices

19    or anything like that; is that correct?

20        A    Well, I said I would.  And then I recall it

21    not being necessary because at some point we seized

22    communicating or he seized communicating with me.

23        Q    Okay.  We'll come back to that.

24            But on this document, why did you send

25    Exhibit 123 to Pete Hill?  What was the point of that?
```

1      Q    Okay.  And as you look at Exhibit 124, does it

2    appear to be an e-mail from you to Andrea Cross and on

3    3/25/21 at 11:12 a.m.?

4      A    That's what it says.

5      Q    Do you -- you don't recall sending this e-mail

6    to Ms. Cross?

7      A    Not specifically, no.

8      Q    Okay.  I want to direct you to the bottom of

9    the first page, which is Elizarov Production 40.  And I

10   want to direct your attention to a statement that you

11   made or communication you had with Ms. Cross at -- on

12   Thursday March 25th, 2021 at 11:06 a.m.

13     A    Okay.

14     Q    You said to Ms. Cross, "Anyway, to include the

15   incoming lien amount and just send it to them so they

16   can figure out what they're going to waive, the amount

17   is $107,270."

18     A    Okay.

19     Q    Do you recall sending that?

20     A    It appears that I did.

21     Q    Okay.  What did you -- strike that.

22          How did you arrive at the number of $107,270?

23     A    I couldn't tell you today.  Again, without

24   looking at specific records, it's a precise number.

25   But it was part of the consideration, was basically

GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.
Transcript of Proceedings on 09/23/2022                    Page 284

1   what he was claiming, and I owed him.

2        Q     And you all had not entered into an agreement

3   for him to be paid any amount for his labor; correct?

4        A     Correct.

5        Q     Okay.  He was doing it gratuitously?

6        A     So I thought, yeah.

7        Q     Okay.  And so how did you go about valuing

8   labor that wasn't supposed to be charged and wasn't

9   tracked?

10            MR. ALEKSEYEFF:  Objection.  Misstates

11   testimony.

12            You can answer.

13            THE WITNESS:  I relied on his representations

14   and his threats in calculating the total amount.  I

15   believe them to be credible and I didn't want the

16   transaction to be railed, so I was anticipating -- in

17   anticipation of what he was going to do trying to get

18   ahead of it so that we could close successfully.

19   BY MR. WAGNER:

20        Q     And do you have any text messages with this

21   gentleman?

22        A     I don't.  Have you worked with a tradesperson

23   or --

24   BY MR. WAGNER:

25        Q     I'm asking the questions here, Mr. Elizarov.

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0072

1    Please just answer my questions.

2        A    I don't, no, I don't, and I think I've said

3    that.

4        Q    When you asked Andrea to just include to the

5    lien amount, and just send it to them so they can

6    figure out what they're going to waive, were you asking

7    her to include an amount for a lien that didn't exist?

8            MR. ALEKSEYEFF:  Misstates testimony.  It says

9    incoming.

10            MR. WAGNER:  That's fine.

11    BY MR. WAGNER:

12        Q    So the incoming lien.  You asked her to

13    include it as if it's an --

14        A    As a placeholder, yeah.

15        Q    But you wanted them to send it out to

16    Mr. Hill, and I assume and Unison, and have them rely

17    on it, when they're trying to make determinations about

18    what they might do in terms of waiving fees; right?

19        A    I was being Proactive in trying to close the

20    transaction.  So I was trying to get ahead of the

21    incoming basically lien to get them the information

22    that they needed to the extent that they would have it

23    as quickly as possible, given the date of that e-mail

24    so that we could avoid not closing.

25        Q    Okay.  And you don't -- so just so I

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                    Page 286

1   understand, your method of determining the lien amount

2   was that you were relying on what this gentleman had

3   told you he was going to seek?

4      A     Correct.  Plus my baseline cost of 30,000, and

5   that's where I'm -- I'm assuming that's how I arrive at

6   the 10727 (SIC) date.

7      Q     So he told you -- just based on your

8   testimony, he told you that he was going to seek

9   approximately $77,000?

10     A    Or there, yeah.  Some change.  Yeah.

11     Q     Okay.  What would you have done if he had not

12  filed the lien and you had received a concession from

13  Goldwater or Unison based on the representations in the

14  settlement statement, this settlement statement you

15  asked her to send?

16     A    I don't know.

17     Q     Did -- was it your belief that if it was put

18  into the settlement -- settlement estimate statement by

19  Andrea, that it would add, contribute to the fact that

20  there was a mechanic's lien?

21     A    No.  I wanted to give them all of the figures

22  either estimated or actual.

23     Q     But Mr. Hill had asked you for just any other

24  documents that would provide the -- provide some basis

25  for this lien you were claiming; correct?

GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.
Transcript of Proceedings on 09/23/2022                    Page 287

1     A    Right.  But I think at some point, again, I

2  don't -- I don't remember the general specifics, like

3  that became a moot issue, because Mr. Hill was trying

4  to work on a settlement, and the easiest path of least

5  resistance to close the transaction so.

6     Q    And he was doing so based on your

7  representations that there was a lien on the property

8  and there wouldn't be enough money to close the

9  transaction?

10    A    I don't know.  I can't speak for him.  Again,

11 there's multitudes of communications.  I don't know

12 what's happened subsequently.  I don't remember

13 specifically any other conversations.  He may, he may

14 not have.

15    Q    Okay.  So you can't testify one way or the

16 other?

17    A    No.

18         MR. WAGNER:  Okay.  We are going to skip an

19 exhibit and I'll come back to 125, but I'm going to

20 hand you what we'll mark as 126.

21         MR. THOMASON:  Counsel, as I may, as I stated

22 when we were off the record, I have to leave at 6:30.

23 You had more than seven hours to -- to be able to take

24 a deposition of Mr. Elizarov.  You have made a few

25 extended breaks and I'm going to have to depart now,

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                     Page 288

 1  and I object that this deposition continues in my

 2  absence.

 3            MR. WAGNER:  Your objection is noted.

 4            All right.  So I'm going to hand you what

 5  we're marking as Exhibit 126.

 6            MR. BAST:  And these are pages Elizarov

 7  Production 59 through 63 is the Bates numbering.

 8            MR. ALEKSEYEFF:  How many pages is it?

 9            MR. WAGNER:  Five.

10            MR. ALEKSEYEFF:  Oh, five pages.  Here you go,

11  sir.

12            (Plaintiff's Exhibit No. 126, Elizarov

13            Production Pages 59-63 was marked for

14            identification.)

15            MR. WAGNER:  Please take a moment to review

16  Exhibit 126 and let me know when you've done so.

17  BY MR. WAGNER:

18      Q    Have you reviewed it?

19      A    I'm sorry, what was your question?

20      Q    Please let me know when you've finished

21  reviewing Exhibit 126.

22      A    Okay.

23      Q    And I'd ask that you not have private

24  conversations with your counsel.

25            MR. ALEKSEYEFF:  He informed me that his legs

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                    Page 296

```
 1                        )

 2    STATE OF CALIFORNIA)    ss.

 3                        )

 4

 5            I, MARIANNE L. DER CLINT, 10847, a

 6    Certified Shorthand Reporter within and for the State

 7    of California, do hereby declare:

 8            That pursuant to 2093 (b) CCP, I administered

 9    the oath to the deponent;

10            That the foregoing deposition was taken before

11    me at the time and place set forth and was taken down

12    by me in shorthand and thereafter transcribed under my

13    direction and supervision;

14            That the foregoing deposition is a full, true

15    and correct transcript of my shorthand notes so taken.

16            I further declare that I am neither counsel

17    for, nor related to, any of the parties to said action,

18    nor in any way interested in the outcome thereof.

19            I declare under penalty of perjury this

20    5th day of October, 2022, that the foregoing is true

21    and correct.

22

23                  CERTIFIED SHORTHAND REPORTER FOR
                       THE STATE OF CALIFORNIA
24

25
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0077

# Exhibit 5

### Excerpts from Transcript of the Deposition of Cory Bearden

1          UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

3

4    _____

                                               )
5    GOLDWATER BANK, N.A.,                      )
                                               )
6                    Plaintiff,                 ) CASE NUMBER:
                                               ) 21-cv-00616-
7           vs.                                 ) JWH-SP
                                               )
8    ARTUR ELIZAROV; UNISON AGREEMENT CORP.;    )
     SCOTT HOWLETT; BANK OF THE WEST; AND ILYA )
9    ALEKSEYEFF,                                )
                                               )
10                   Defendants.                )
     _____)

11

12

13

14      REMOTE ZOOM VIDEOTAPED DEPOSITION OF PERSON MOST

          KNOWLEDGEABLE AT GOLDWATER BANK, N.A.

15                   CORY BEARDEN

16            Wednesday, May 31, 2023

17                   Volume I

18

19

20

21

22   REPORTED BY:

     JESSICA HONG

23   CSR No. 13776

24   Job No. 5941237

25   PAGES 1 - 364

                                        Page 1

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0079

```
 1              UNITED STATES DISTRICT COURT

 2         CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

 3

 4      _____

                                            )
 5      GOLDWATER BANK, N.A.,               )
                                            )
 6                   Plaintiff,             ) CASE NUMBER:
                                            ) 21-cv-00616-
 7           vs.                            ) JWH-SP
                                            )
 8      ARTUR ELIZAROV; UNISON AGREEMENT CORP.; )
        SCOTT HOWLETT; BANK OF THE WEST; AND ILYA )
 9      ALEKSEYEFF,                         )
                                            )
10                   Defendants.            )
        _____)

11

12

13

14           Remote Zoom videotaped deposition of PERSON MOST

15      KNOWLEDGEABLE AT GOLDWATER BANK, N.A., CORY BEARDEN,

16      Volume I, taken on behalf of Defendants beginning at

17      10:10 a.m. and ending at 8:26 p.m. on Wednesday, May 31,

18      2023, before JESSICA HONG, Certified Shorthand Reporter

19      No. 13776.

20

21

22

23

24

25

                                              Page  2
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0080

```
 1     APPEARANCES (ALL PARTIES APPEARING REMOTELY):
 2     FOR PLAINTIFF:
 3         HILBERT & SATTERLY LLP
           BY:  JOSEPH A. LEVOTA, ESQ.
 4         409 Camino Del Rio South, Suite 104
           San Diego, California 92108
 5         (619) 795-0300
 6         WAGNER HICKS PLLC
           BY:  ABBEY M. KRYSAK, ESQ.
 7              SEAN C. WAGNER, ESQ.
           831 East Morehead Street, Suite 860
 8         Charlotte, North Carolina 28202
           (704) 705-7538
 9
       FOR DEFENDANT AND CROSS-COMPLAINANT SCOTT HOWLETT AND
10     DEFENDANT BMO HARRIS BANK N.A., SUCCESSOR BY MERGER TO
       BANK OF THE WEST:
11
           HALL GRIFFIN LLP
12         BY:  JEREMY T. KATZ, ESQ.
                KASANDRA C. GOLDBERG, ESQ.
13         1851 East First Street, 10th Floor
           Santa Ana, California 92705
14         (714) 918-7000
15     FOR DEFENDANT AND CROSS-DEFENDANT ARTUR ELIZAROV, AND
       DEFENDANT ILYA ALEKSEYEFF (IN PRO PER):
16
           LOIA, INC.(APLC)
17         BY:  ILYA ALEKSEYEFF, ESQ.
           727 West 7th Street, PH 1-13
18         Los Angeles, California 90017
           (213) 537-4592
19
20
21     ALSO PRESENT:
22         JENNIFER MCKAY - VIDEOGRAPHER
23
24
25
                                              Page  3
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0081

```
 1                         I N D E X
 2     WITNESS                           EXAMINATION
 3     CORY BEARDEN
 4     Volume I
 5                          BY MR. KATZ              7, 340
 6                          BY MR. ALEKSEYEFF      195, 350
 7                          BY MS. KRYSAK              269
 8
 9
10                          EXHIBITS
11     NUMBER                DESCRIPTION            PAGE
12     Exhibit 4     Preliminary report 2/18/21      320
13     Exhibit 5     Amended preliminary report 3/3/21  319
14     Exhibit 6     Email chain EOTW_000164-180      157
15     Exhibit 7     Request for demand 3/3/21       121
16     Exhibit 24    Unison Homebuyer Uniform Subordination
                     Agreement 7/30/19                90
17
       Exhibit 46    Email chain GOLDWATER_001210-1267  153
18
       Exhibit 51    Email chain GOLDWATER_001148-1149  345
19
       Exhibit 53    Email chain GOLDWATER_001151-1152  167
20
       Exhibit 67    Email chain GOLDWATER_001172-1173  177
21
       Exhibit 102   Uniform Residential Loan Application
22                   7/3/19                          200
23     Exhibit 104   Uniform Residential Loan Application
                     7/31/19                         226
24
       Exhibit 131   Master Estimated Settlement
25                   Statement 3/30/21               333

                                          Page 4
```

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0082

```
 1                        EXHIBITS (CONT.)
 2     Exhibit 139   Instructions to Escrow/Title/Closing
                     Agent GOLDWATER_001677-1681           49
 3
       Exhibit 143   Letter from Goldwater to First
 4                   American Title 3/30/21                181
 5     Exhibit 145   Closing Protection Letter 7/29/19     343
 6     Exhibit 146   Email 3/25/21 Unison information      146
 7     Exhibit 150   Funding requirements                   81
 8     Exhibit 151   Subpoena to testify 12/5/22           196
 9     Exhibit 152   Letter from Alekseyeff 7/9/19         220
10     Exhibit 153   Seller's Final Settlement
                     Statement 1/19/18                     224
11
       Exhibit 154   Mutual Release and Settlement
12                   Agreement 5/17/19                     238
13     Exhibit 155   Email chain GOLDWATER_001444-1450     244
14     Exhibit 156   MERS report GOLDWATER_001765          280
15     Exhibit 157   General ledger 12/31/21               280
16     Exhibit 158   Email 3/4/21 GOLDWATER_001121         258
17     Exhibit 159   Email chain BOTW 0002259-2263         258
18     Exhibit 160   Preliminary report 2/18/21            310
19     Exhibit 161   Preliminary report 3/3/21             312
20
21                  INSTRUCTION NOT TO ANSWER
22                      PAGE  LINE
23                       37    20
                        128     5
24                      128    15
                        129    13
25


                                               Page  5
```

```
 1      BY MR. ALEKSEYEFF:

 2          Q    Okay, and that was going to be my next question,

 3      all the facts and circumstances relating to the process

 4      of reviewing, approving, and underwriting Mr. Elizarov's

 5      mortgage loan?                                            03:57

 6              MS. KRYSAK:  Objection, scope.

 7              THE WITNESS:  I'm assuming that was a question,

 8      Ilya.  I apologize, would you repeat that?  Sorry.

 9              MR. ALEKSEYEFF:  Yes.  So my second question,

10      I'm just trying to confirm, since this issue has come up,  03:58

11      exactly what you're prepared to testify about, so the

12      subject was all the facts and circumstances relating to

13      the process of reviewing, approving, and underwriting

14      Defendant Artur Elizarov's mortgage loan.

15              MS. KRYSAK:  Objection, form, scope.             03:58

16              THE WITNESS:  To the best of my knowledge.

17      BY MR. ALEKSEYEFF:

18          Q    Okay, perfect.  So then what I will do -- I did

19      mark it as 151 so I'll keep it as 151.  I will now show

20      you -- and I know my screen is not shared in front of you  03:58

21      right now.  Sharing screen.  I will now show you what has

22      been previously marked as Exhibit 102 and I will mark it

23      as such as well.

24              (Exhibit 102 was marked for identification.)

25              And then I'll just go up.  And let me know if      03:58
```

Page 200

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0084

```
 1      it's too small for you or if I'm going too fast.  I'm

 2      just going to go page by page.

 3          A    That's sufficient, thank you.

 4          Q    Perfect.  And it is a six-page document.  You

 5      can ignore the highlights for now.  I'm on Page 3,          03:59

 6      Page 4, Page 5, and Page 6.  While preparing for this

 7      deposition, did you personally review this specific

 8      document?

 9          A    I have.

10          Q    This document is called "Uniform Residential    03:59

11      Loan Application" and it appears to be typed.  Was this

12      document typed on a computer?

13          A    Not that I'm aware of.

14          Q    Was this document typed on a typewriter?

15          A    Not that I'm aware of.                            03:59

16          Q    So how was this document typed with all the

17      information that we see on it?

18              MS. KRYSAK:  Objection, form, scope.

19              THE WITNESS:  This document was populated by the

20      borrower through the use of the Consumer Connect Log In    03:59

21      Portal that the borrower creates when they go in and

22      create a new loan application that they're applying for,

23      so that data would have been populated through that

24      system into this application.

25      BY MR. ALEKSEYEFF:                                         04:00
```

Page 201

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0085

```
 1              THE WITNESS:  I'm not 100 percent sure of that.
 2     BY MR. KATZ:
 3         Q    Who at Goldwater -- let me take that question
 4     back.  When Mr. Elizarov was going through the loan
 5     process, did Goldwater ask Mr. Elizarov to provide some    04:23
 6     documents like pay statements or bank statements?
 7         A    Yes.
 8         Q    And who was Mr. Elizarov's point of contact at
 9     Goldwater?
10         A    His main point of contact initially would have    04:24
11     been Gregory Hill.  From there, it would be the loan --
12     loan officer assistant or processer that would be
13     assigned to the file to supplement Mr. Hill.
14         Q    So would the -- Mr. Hill and the loan processer,
15     would those be the only two people that a borrower like    04:24
16     Mr. Elizarov would ever communicate with at the bank?
17         A    I can't say ever, but, in most loan
18     transactions, historically, those are the people that the
19     borrowers will communicate with during the loan process.
20         Q    Would the borrower typically communicate with     04:24
21     the underwriter directly?
22              MS. KRYSAK:  Objection, scope.
23              THE WITNESS:  No.
24     BY MR. KATZ:
25         Q    What is the job of an underwriter?               04:25
```

                                                        Page 219

```
 1     because Goldwater produced it to us as Document 1551, so

 2     my next question was going to be is how did Goldwater

 3     obtain this document, where it came from?  Would it be

 4     fair to say that you would not be prepared to answer that

 5     question either?                                        04:34

 6          A    To define the source of where the document came

 7     from, I could not comment on where the document came from

 8     and who provided it.

 9          Q    Okay.  And, as you sit right now, you also don't

10     know whether the -- personally don't know whether the    04:34

11     underwriter had seen this document before approving

12     Mr. Elizarov's loan?

13          A    I cannot -- I cannot personally state that I

14     would know if she saw that -- he or she saw -- she saw

15     the document.                                            04:34

16          Q    I understand.  I will now show you what had been

17     previously marked as Exhibit 104.  I will remark it.  I

18     will make it a little bit bigger.

19               (Exhibit 104 was marked for identification.)

20               All right.  And what I will do -- it's also six  04:35

21     pages.  It appears to be another Uniform Residential Loan

22     Application.  And, again, I will go through -- and I

23     misspoke.  I said it was a six-page document, this is

24     actually a four-page document, pages 1, 2, 3, and then

25     Page 4.  And I'm going to go back to Page 1.              04:35
```

Page 226

1      A     Okay.

2      Q     Did you have a chance --

3      A     Go ahead.

4      Q     Oh, I'm sorry, you said okay.  I didn't -- I

5    didn't know what you said.  All right.  Until today's        04:35

6    deposition or before today's deposition, had you seen

7    this document before?

8      A     I have seen this document as a part of my

9    deposition prep, yes.

10     Q     All right.  And I will show you on Page 3, there      04:36

11   is -- at the very bottom, there is a timestamp that says

12   July 31st, 2019 at 10:36 a.m. pacific standard time.

13   Would that timestamp, just like before, indicate the date

14   and time when this document was prepared?

15     A     I believe so.                                         04:36

16     Q     And then there's also a -- just above that,

17   there's a signature, it looks like a wet signature, with

18   a date of July 31st, 2019.  Do you see that?

19     A     I do see that.

20     Q     Was this document presented to Mr. Elizarov by        04:36

21   the notary public during the closing process?

22     A     This appears to be a final application, would

23   you agree?

24     Q     You're the witness, you're going to have to tell

25   me.  This is what I believe it to be, but why don't you      04:37

Page 227

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0088

```
1     confirm for us if this is, in fact, the final

2     application?

3         A    This appears to be the final application as I

4     believe this is the closing date for Mr. Elizarov, and as

5     a part of the funding conditions, as we spoke of earlier   04:37

6     with Mr. Katz, a final signature on the final application

7     is required as a part of the funding for the loan.

8         Q    I understand.  Now, when we looked at the --

9     let's call it the initial application which was the

10    Exhibit 102, you testified that Mr. Elizarov filled in    04:37

11    the information essentially online that the system then

12    populated for a signature.  What about this form?  Who

13    filled in this information on this form?  Was it also

14    Mr. Elizarov or was it somebody at Goldwater?

15        A    This -- this form would be a continuation of the  04:37

16    initial application that he completed online and the data

17    supporting his loan.

18        Q    Did anyone review this information at -- did

19    anyone at Goldwater review this application before

20    providing it to Mr. Elizarov for signature on July 31st?   04:38

21        A    That would have been a part of the underwriting

22    process in confirmation of the ability to repay

23    cross-referencing the data provided by Mr. Elizarov

24    during the application phase and underwriting.

25        Q    Now, I noticed -- and I won't go through every    04:38
```

Page 228

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0089

1    that he had a husband, was that not enough or are you

2    saying that Mr. Elizarov was obligated to go above and

3    beyond that notification to somehow change this?

4         MS. KRYSAK:  Objection, form.

5         THE WITNESS:  As I shared with you earlier, the        04:47

6    opportunities that Mr. Elizarov has to certify that his

7    application is true and correct, he had one at the

8    beginning of the application phase, he had one at the end

9    of the application phase.  My staff is not to rely other

10   than the information that is provided -- there are many      04:47

11   states that there's an assumption of marriage, community

12   property states, people that have lived together in a lot

13   of areas, so I don't know what your state looks like.

14   But, based upon the information that the borrower

15   provided, then that is the information that he certified     04:47

16   at the time of closing, too.  There is an opportunity to

17   correct that.  He could have made notice to the escrow

18   agent at that time, absolutely, if he chose to do that,

19   and the documents could have been corrected.

20   BY MR. ALEKSEYEFF:                                           04:47

21        Q    So is your answer then that even knowing that

22   this information is correct, it was not the loan

23   officer's job to correct it on the final form?  Is that

24   your answer?  Because I still haven't quite gotten the

25   answer.  My question was about the loan officer's           04:48

                                                  Page 235

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0090

```
 1    actions, not Mr. Elizarov's, and you keep punting it back

 2    to Mr. Elizarov and saying what he should have done.  So

 3    my question is what should have the loan officer or the

 4    underwriter done under these circumstances knowing that

 5    the information on the initial application was              04:48

 6    inaccurate?  Were they supposed to just ignore it and

 7    just repeat the same inaccurate information in the final

 8    form as they did or were they supposed to correct it or

 9    contact Mr. Elizarov and get his permission to correct

10    it?  What exactly were they supposed to do with the        04:48

11    information as they knew it at the time of July 31st?

12            MS. KRYSAK:  Objection, form.

13            THE WITNESS:  I can't speak to that, Ilya, and

14    what exactly should happen.  The borrower understands --

15    I'm assuming the borrower understands the question in the  04:48

16    beginning and I'm assuming the borrower understands the

17    question in the end.  From a loan officer's standpoint, I

18    can't relate to a text message idea.  Those are not

19    official loan documents that are submitted as a part of

20    the loan process.  So that communication, I can't relate   04:49

21    to, but I what I can relate to is the fact that the

22    application is very specific and there's multiple

23    opportunities during that loan process that they see this

24    application.  They do the application initially, the loan

25    documents are disclosed, the borrower accepts the          04:49
```

Page 236

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0091

1    application, they review the documents, they provide the

2    supporting docs and they sign this final application,

3    again, at the time of closing.  So I don't know that it's

4    the responsibility of anybody other than the borrower to

5    certify that all information provided to the mortgage        04:49

6    company is true and correct as identified on this

7    application at the end.

8    BY MR. ALEKSEYEFF:

9         Q    Well, let me ask you this.  If Mr. Elizarov did

10   mark the box, married, would Goldwater have denied him      04:49

11   the loan?

12             MS. KRYSAK:  Objection, form.

13             THE WITNESS:  I don't understand your question.

14   BY MR. ALEKSEYEFF:

15        Q    Given all the other information that we know       04:49

16   about, Mr. Elizarov's income, assets, liabilities,

17   everything else is the same in this application except

18   for that, if he checked I'm married and not unmarried,

19   would Goldwater have denied him the loan based just on

20   that answer?

21             MS. KRYSAK:  Objection, form.

22             THE WITNESS:  Confirming, you're asking me if we

23   would had denied the loan if he would have stated he is

24   married?

25             MR. ALEKSEYEFF:  Correct.

                                                    Page 237

```
1     process, specifically in May to July of 2019, that is the

2     time period; right?

3          A    Okay.  Initial purchase.

4          Q    Mm-hmm.

5          A    Okay.                                    06:57

6          Q    Is there processes in place to verify certain

7     information provided by the prospective borrower?

8               MR. KATZ:  Object as to form.

9               THE WITNESS:  Yes.

10    BY MS. KRYSAK:                                     06:57

11         Q    But, despite the processes in place that

12    Goldwater has to verify certain information provided by

13    the prospective borrower, Goldwater still relies on the

14    borrower to provide honest, accurate information; is that

15    correct?                                           06:57

16         A    That would be a correct statement.

17         Q    And would knowledge of a borrower's dishonesty

18    affect a credit decision?

19         A    Yes.

20         Q    Mr. Alekseyeff showed you a final application   06:57

21    that appeared to be executed on July 31st, 2019.  Do you

22    recall that?

23         A    I do, yes.

24         Q    And do you recall there being a section

25    designated "Assets"?                               06:58
```

Page 300

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0093

```
 1        A    There is a section in the application designated

 2     "Assets".

 3        Q    And do you recall what Mr. Elizarov reported as

 4     his assets in that section?

 5        A    I believe it was over $227,000.  I would have to   06:58

 6     reflect back to the document to be absolutely correct.

 7        Q    Okay.  Do you have a copy of the document

 8     Mr. Alekseyeff showed you in front of you?

 9        A    Yeah, I'm pretty sure.  I do.  One second,

10     please.                                                    06:58

11        Q    Of course.

12        A    JP Morgan -- JP Mortgage account 227,103.

13        Q    And was that the only asset that Mr. Elizarov

14     reported on his initial and final loan application?

15        A    From what I can see.                               06:59

16        Q    And what did Goldwater Bank do to verify that

17     asset?

18        A    As a part of the processing and underwriting and

19     ability to repay, there were documents that were

20     requested to support the assets that were identified as a  06:59

21     part of the loan application.

22        Q    And, of the documents requested, did Goldwater

23     ask for bank statements for that requisite asset?

24        A    Yes.

25        Q    And did Goldwater Bank, in fact, receive bank     06:59
```

Page 301

1    statements for that requisite asset?

2         A    We did receive multiple months for that asset.

3         Q    And when you say "for that asset" and "multiple

4    months," can you tell me a little bit more about what

5    Goldwater received from Mr. Elizarov?                    07:00

6         A    Yes.  One second, please.

7         Q    Of course.

8         A    It appears we received JP Morgan statements

9    covering the period of time from April, May, and June.

10        Q    Of what year?                                  07:00

11        A    2019.

12        Q    Okay.

13        A    Identifying the account value and the activity

14   within the accounts.

15        Q    And what type of account is it?  Is it a       07:00

16   checking from what you could tell?

17        A    It appears to be an in -- some form of

18   investment account.  It says "investment statement" on

19   the document itself.

20        Q    And how many pages are the -- each monthly      07:01

21   statement?  Is it a two-page, three-page document, or is

22   it larger than that?

23        A    The June statement would be 30 pages long.

24        Q    And did Goldwater Bank rely on these statements

25   in making its decision to fund -- approve Mr. Elizarov's  07:01

Page 302

1    loan application?

2        A    That would be correct.  We would rely on the

3    evidence of the statements and the information supplied

4    within the statement to help us confirm the ability to

5    repay and qualify for the mortgage.                    07:02

6        Q    So if these statements -- or if this asset did

7    not exist, would Goldwater Bank have still approved

8    Mr. Elizarov's mortgage application?

9        A    Without any assets and this asset, we would not

10   approve the mortgage loan application.                 07:02

11       Q    What if the account statements reflected a $1.44

12   balance instead of the over $200,000 balance that you

13   testified to, would Goldwater have approved

14   Mr. Elizarov's mortgage loan?

15       A    Not knowing that there is more funds required  07:02

16   than $1.40, to accomplish this loan, we would not have

17   approved the assets in relation to this loan.

18       Q    Do you recall receiving any documentation -- or

19   do you recall reviewing any documentation regarding an

20   escrow wire to Silver Bay Escrow in connection with    07:03

21   Mr. Elizarov's loan?

22       A    Yes, I am.

23       Q    And what document did you review?

24       A    Two documents.  There was the June JP Morgan

25   statement that indicated a withdrawal on June 19th     07:03

Page 303

```
 1    through the form of a wire transaction to Silver Bay

 2    Escrow with a provided wire number associated with the

 3    wire for $27,450, and then there was a document that was

 4    a receipt of escrow provided from -- in relations to

 5    Silver Bay Escrow in receipt of that, however, it was not   07:03

 6    signed.

 7        Q    Okay.  When you say -- why did you note that it

 8    was not signed?  Why is that -- why did you find that

 9    important to tell me?

10        A    In a mortgage transaction when funds are moved    07:04

11    from one location to another, there's a wire and a way to

12    identify where it moved from and who it moves to, into

13    the escrow account or title company.  They do what is

14    called receipting in the funds and then they provide

15    those receipts to the parties involved in the transaction   07:04

16    such as the mortgage company who's verifying that the

17    funds are available for use as a part of the funds to

18    close, and so that is why I noted and noticed that it was

19    not signed.

20        Q    And do you have any reason to believe that -- or   07:04

21    why were the June 2019 statements provided to Goldwater?

22        A    One, to meet the product guidelines to verify

23    the assets are available to qualify for this loan.  And,

24    two, to have the most recent statements up to the closing

25    date for the assets that are being utilized to qualify      07:05
```

Page 304

1    for the loan.

2         Q    Would Goldwater have asked for any additional

3    information beyond that Silver Bay Escrow receipt that

4    you referenced in order to verify that the wire to Silver

5    Bay for the escrow actually occurred?                    07:05

6         A    Goldwater would have relied on the transfer of

7    the funds, based upon the information in the statement,

8    to Silver Bay Escrow that it says in the description

9    specifically, and then to the receipt of the funds that

10   were -- the document that was provided from the escrow   07:05

11   company showing they received the 27,450, but Goldwater

12   would not have verified the data of the wire for the

13   transfer from the document -- from the account to the

14   escrow company.  That would be the escrow company's

15   responsibility to document where those funds are coming  07:06

16   from and being transferred into the company -- escrow

17   company.

18        Q    Okay.  And, if Goldwater found out that this

19   supposed June 2019 wire did not come from the JP Morgan

20   account that the statements were provided for?           07:06

21        A    Under that instance, that would be

22   misrepresentation.

23        Q    And would Goldwater have still approved the loan

24   if it knew that that wire did not occur or come out of

25   that bank account?                                       07:06

Page 305

1        A    As represented to us coming from that account,

2    then additional evidence came to light that shows it did

3    not, it would be highly unlikely that we would approve

4    that loan at all.

5        Q    Okay.  Do borrowers sometimes speak imprecisely    07:07

6    about their marital status?

7        A    Especially on the initial application, it could

8    be a mischeck of a box or things to that nature along

9    with on the initial application, but most people that are

10   married know they're married.                             07:07

11       Q    Is that why the bank might simply rely on the

12   written statements in the application?

13       A    We do rely on those statements, yes.

14       Q    To your knowledge, is a judgment a form of a

15   liability?                                                07:07

16            MR. KATZ:  Objection, calls for a legal

17   conclusion.

18            MS. KRYSAK:  All right.  I'll try a little bit

19   better here.  Thank you, Mr. Katz, for explaining your

20   objection and doing a speaking objection on the record.    07:08

21   BY MS. KRYSAK:

22       Q    In the underwriting process, right, is a

23   judgment a form of a liability in the context of the

24   underwriting process at Goldwater Bank?

25       A    I would say yes, that would be a portion of the    07:08

Page 306

1          I, the undersigned, a Certified Shorthand

2     Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken before

4     me at the time and place therein set forth; that any

5     witnesses in the foregoing proceedings, prior to

6     testifying, were administered an oath; that a record of

7     the proceedings was made by me using machine shorthand

8     which was thereafter transcribed under my direction;

9     further, that the foregoing is a true record of the

10    testimony given.

11         Further, that if the foregoing pertains to the

12    original transcript of a deposition in a Federal Case,

13    before completion of the proceedings, review of the

14    transcript [ X ] was [ ] was not requested.

15         I further certify I am neither financially

16    interested in the action nor a relative or employee of

17    any attorney or any party to this action.

18         IN WITNESS THEREOF, I have this date subscribed

19    my name:   June 15, 2023.

20

21

22

23

24    JESSICA HONG

25    CSR No. 13776

Page 361

# Exhibit 6

Plaintiff Goldwater Bank, N.A.'s Second Set
of Requests for Admission to Defendant
Artur Elizarov

Sean C. Wagner (Pro Hac Vice)
Abbey M. Krysak (Pro Hac Vice)
**WAGNER HICKS PLLC**
831 East Morehead Street, Suite 860
Charlotte, North Carolina 28202
Tel: (704) 705-7538
Fax: (704) 705-7787

John Forest Hilbert, Esq. (SBN 105827)
Joseph A. LeVota, Esq. (SBN 262760)
**HILBERT & SATTERLY LLP**
409 Camino del Rio S. #104
San Diego, California 92108
Telephone:  (619) 795-0300
Facsimile:   (619) 501-6855

Marie B. Maurice (SBN 258069)
Marina Samson (SBN 315024)
**IVIE McNEILL WYATT PURCELL & DIGGS**
444 S. Flower Street, Sutite 1800
Los Angeles, California 90071
Telephone:  (213) 489-0028
Facsimile:   (213) 489-0552

Counsel for Plaintiff
GOLDWATER BANK, N.A.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GOLDWATER BANK, N.A.,**<br>Plaintiff,<br>v.<br>**ARTUR ELIZAROV, *ET AL.***<br>Defendants. | Case No. 5:21-cv-00616-JWH-SPx<br><br>Judge:          Hon. John W. Holcomb<br>Department:  Courtroom 2<br><br>**PLAINTIFF GOLDWATER BANK, N.A.'S SECOND SET OF DISCOVERY TO DEFENDANT ARTUR ELIZAROV**<br><br>Filed:          April 6, 2021<br>Trial Date:   August 7, 2023 |

PROPOUNDING PARTY:     Plaintiff GOLDWATER BANK, N.A.

RESPONDING PARTY:       Defendant ARTUR ELIZAROV

PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION TO ARTUR ELIZAROV - 1

Pursuant to Federal Rules of Civil Procedure 26 and 36, Goldwater Bank, N.A.'s Second Set Requests for Admission to Defendant Artur Elizarov is hereby propounded to you and your attorneys of record. These requests for admission are to be answered in writing within thirty (30) days after service.

## <u>DEFINITIONS</u>

The following definitions shall apply to the instructions and each of the requests below, unless specifically indicated, or otherwise required, by the context of the request:

1.      "Elizarov," "you" or "your" shall mean Defendant Artur Elizarov.

2.      "Bank of the West" shall mean Defendant Bank of the West, and any divisions, departments, parents, predecessors (whether acquired by merger, consolidation, or other means), successors, subsidiaries (whether wholly or partially owned), affiliates, entities under common control, joint ventures, and other organizations or operating units, and each of their present and former officers, directors, agents, controller shareholder(s) or employees, and all persons (natural or legal) who act, have acted or have purport to act, on its behalf.

3.      "Goldwater" or "Plaintiff" shall mean Plaintiff Goldwater Bank, N.A., and any divisions, departments, parents, predecessors (whether acquired by merger, consolidation, or other means), successors, subsidiaries (whether wholly or partially owned), affiliates, entities under common control, joint ventures, and other organizations or operating units, and each of their present and former officers, directors, agents, controller shareholder(s) or employees, and all persons (natural or legal) who act, have acted or have purport to act, on its behalf.

4.      "Aleksyeff" shall mean Defendant Ilya Alekseyeff.

5.      "Howlett" shall mean Defendant Scott Howlett.

6.      "Unison" shall mean Defendant Unison Agreement Corp., and any divisions, departments, parents, predecessors (whether acquired by merger, consolidation, or other means), successors, subsidiaries (whether wholly or partially

owned), affiliates, entities under common control, joint ventures, and other organizations or operating units, and each of their present and former officers, directors, agents, controller shareholder(s) or employees, and all persons (natural or legal) who act, have acted or have purport to act, on its behalf.

7.    "Defendants" shall mean and/or refer to Howlett, Elizarov, Alekseyeff, Unison, and Bank of the West, collectively.

8.    "Complaint" shall mean Goldwater's Verified Amended Complaint (ECF No. 44) and its exhibits.

9.    "Answer" shall mean your Answer to the Complaint (ECF No. 98).

10.   The term "Subject Property" means certain real property located at 291 W. Overlook Road, Palm Springs, California 92264.

11.   The term "Wilton Manors Property" means certain real property located at 2735 NE 10th Avenue, Wilton Manors, Florida 33334.

12.   The term "Escrow of the West" means Escrow of the West, Inc., as escrow agent for Elizarov, as seller, and Howlett, as buyer, of the Subject Property.

13.   The term "Goldwater Loan" means the mortgage loan made by Goldwater to you on or around July 31, 2019 in the principal amount of $686,250.00 and memorialized in an Adjustable Rate Note and a Deed of Trust dated July 31, 2019.

14.   The term "persons" is used in the broadest sense possible and means both natural persons and artificial entities including, but not limited to, sole proprietorships, general partnerships, limited partnerships, joint ventures, limited liability limited partnerships, limited liability companies, corporations, sub-chapter (s) corporations, closely held corporations, professional corporations, business trusts, charitable entities, social or political organizations, trusts, governmental units, bodies or agencies, regardless of their form or legal status, and all past and present officials, officers, directors, agents, employees, attorneys, successors, assigns or other persons acting or purporting to act on such person's behalf.

PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION TO ARTUR ELIZAROV - 3

15.    "Correspondence" means any letter, memorandum, or other writing, including electronically stored e-mail transmissions and text messages, iMessages, WhatsApp messages or any other secure messaging application messages, Blackberry messages, messages transmitted through social media like Facebook.com or Twitter.com, sent or received.

16.    "Communication" or "communications" includes, without limitation, all statements, representations, expressions of fact or opinion, correspondence, reports, memoranda, telegrams, and other transmissions of information, made in any manner whatsoever.

17.    The terms "document" and "documents" shall have the meaning attributed to that term by Rule 34 of the Federal Rules of Civil Procedure, and shall include any and all records, or written, readable, graphic, or visual materials, of any kind or character, and shall include, without limitation, correspondence, memoranda, notes, inter-office and intra-office communications, emails, cards, files, bills, invoices, computer printouts, minutes, studies, notes of telephone or other conversations, telegrams, pamphlets, books, tapes, discs, diskettes, cassettes, recordings, presentations, summaries, schedules, diagrams, charts, reports or records, electronically stored information, and any other data compilation stored in any medium from which information can be obtained, and any non-identical copies thereof, which are in your possession, subject to your control or known by you to exist or to have existed. "Document" or "documents" also shall include all copies of each document if the copies contain any additional writing or are not identical copies of the original.

18.    "Relating to" and "relates to" mean, without limitation, relating to, concerning, constituting, mentioning, referring to, describing, summarizing, evidencing, listing, relevant to, demonstrating, tending to prove or disprove, or explain.

---

PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION TO ARTUR ELIZAROV - 4

19.    The connectives "and" and "or" mean either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

20.    The use of the singular includes the plural, and vice versa.

21.    The use of one gender includes all others, as appropriate in context.

## GENERAL INSTRUCTIONS

The following general instructions shall apply to each of the requests for admission below, unless specifically indicated, or otherwise required, by the context of the request:

1.    Respond to the following requests in the manner required by the Federal Rules of Civil Procedure and the Court's Local Rules.

2.    The particularity or generality of any one request shall not limit any other request.

3.    The following requests are continuing in nature. Your responses must be supplemented as required by the Federal Rules of Civil Procedure to reflect events occurring, or information becoming available, after service of your initial responses.

4.    Unless otherwise specified, the relevant timeframe for these requests is from January 1, 2019 to the present date.

## REQUESTS FOR ADMISSION

6.    Admit that, on or around July 31, 2019, Goldwater originated a mortgage loan to You in the amount of $686,250.00 to be secured by certain real property located at 291 W. Overlook Road, Palm Springs, California 92264.

**RESPONSE:**


7.    Admit that Goldwater's loan was memorialized in a Deed of Trust and an Adjustable Rate Note, dated July 31, 2019.

**RESPONSE:**

8.      Admit that **Exhibit A**, attached to these Requests, is a true and accurate copy of the Deed of Trust dated July 31, 2019, and which memorialized Goldwater's loan.

**RESPONSE:**

9.      Admit that **Exhibit B**, attached to these Requests, is a true and accurate copy of the Adjustable Rate Note dated July 31, 2019, and which memorialized Goldwater's loan.

**RESPONSE:**

10.     Admit that the Deed of Trust, attached hereto as **Exhibit A**, created a valid and enforceable lien between Goldwater and You.

**RESPONSE:**

11.     Admit that between May 1, 2020 and March 29, 2021, You failed to make payments when due pursuant to the Deed of Trust and Adjustable Rate Note attached hereto as **Exhibit A** and **Exhibit B**.

**RESPONSE:**

12.     Admit that Goldwater did not receive any of the proceeds from the sale of the Subject Property to Defendant Howlett.

**RESPONSE:**

13.     Admit that Journeymen Construction did not receive any of the proceeds from the sale of the Subject Property to Defendant Howlett.

**RESPONSE:**

---

PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION TO ARTUR ELIZAROV - 6

14.     Admit that Grigor Akopyan did not receive any of the proceeds from the sale of the Subject Property to Defendant Howlett.

**RESPONSE:**

15.     Admit that John Akopyan did not receive any of the proceeds from the sale of the Subject Property to Defendant Howlett.

**RESPONSE:**

16.     Admit that, on or before March 29, 2021, you instructed Escrow of the West to contact Plaintiff related to Your sale of the Subject Property to Defendant Howlett.

**RESPONSE:**

17.     Admit that, on or before March 29, 2021, you informed Escrow of the West that Plaintiff held a lien on the Subject Property.

**RESPONSE:**

18.     Admit that, on or before March 29, 2021, you provided a copy of **Exhibit A**, attached to these requests, to Escrow of the West.

**RESPONSE:**

19.     Admit that, on or before March 29, 2021, you provided a copy of **Exhibit B**, attached to these requests, to Escrow of the West.

**RESPONSE:**

PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION TO ARTUR ELIZAROV - 7

20.     Admit that **<u>Exhibit C</u>**, attached to these requests, is a true and accurate copy of the purchase agreement you entered into with Defendant Howlett for the purchase and sale of the Subject Property.

     **RESPONSE:**

21.     Admit that Escrow of the West provided you with the document attached hereto as **<u>Exhibit D</u>.**

     **RESPONSE:**

22.     Admit that Your signature appears on **<u>Exhibit D</u>**, attached to these requests.

     **RESPONSE:**

23.     Admit that you affixed Your signature to **<u>Exhibit D</u>**, attached to these requests, and returned **<u>Exhibit D</u>** to Escrow of the West.

     **RESPONSE:**

24.     Admit that, on or before March 29, 2021, you informed Escrow of the West that the Subject Property was subject to a $107,270.00 mechanic's lien.

     **RESPONSE:**

PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION TO ARTUR ELIZAROV - 8

25.     Admit that, on or before March 29, 2021, Escrow of the West asked you to
provide documentation to substantiate your claim that the Subject Property was subject
to a $107,270.00 mechanic's lien.

**RESPONSE:**

26.     Admit that, on or before March 29, 2021, you did not provide any
documentation to Escrow of the West to substantiate your claim that the Subject Property
was subject to a $107,270.00 mechanic's lien.

**RESPONSE:**

27.     Admit that, on or before March 29, 2021, you informed Plaintiff that the
Subject Property was subject to a $107,270.00 mechanic's lien.

**RESPONSE:**

28.     Admit that, on or before March 29, 2021, you instructed Escrow of the West
to include a $107,270.00 mechanic's lien on certain documentation and provide that
documentation to Plaintiff.

**RESPONSE:**

PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION TO ARTUR ELIZAROV - 9

29.     Admit that, between March 20, 2021 and March 25, 2021, the Subject Property was not subject to a $107,270.00 mechanic's lien.

**RESPONSE:**

30.     Admit that, between March 20, 2021 and March 25, 2021, You knew that the Subject Property was not subject to a $107,270.00 mechanic's lien.

**RESPONSE:**

31.     Admit that, between March 20, 2021 and March 25, 2021, You knew that the Subject Property was not subject to a mechanic's lien.

**RESPONSE:**

32.     Admit that, on April 6, 2021, You entered into a contract for the purchase of the Wilton Manners Property for $630,000 in cash.

**RESPONSE:**

33.     Admit that You utilized $632,000 of the proceeds of the sale of the Subject Property to Defendant Howett to purchase the Wilton Manners Property.

**RESPONSE:**

34.    Admit that You transferred $84,843.22 of the proceeds of the sale of the Subject Property to Defendant Howlett to Alekseyeff.

**RESPONSE:**


35.    Admit that You were aware of Plaintiff's claims and pending request for an order to prohibit the transfer of the proceeds of the sale of the Subject Property to Defendant Howlett.

**RESPONSE:**


36.    Admit that, before you transferred $84,843.22 to Alekseyeff on April 20, 2021, you received a copy of Plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction in this Action.

**RESPONSE:**


37.    Admit that, before you transferred $84,843.22 to Alekseyeff on April 20, 2021, you received a copy of certain correspondence from Plaintiff demanding that You return the proceeds of the sale of the Subject Property to Goldwater.

**RESPONSE:**

38.     Admit that, before you transferred $84,843.22 to Alekseyeff on April 20, 2021, Alekseyeff received a copy of certain correspondence from Plaintiff demanding that You return the proceeds of the sale of the Subject Property to Goldwater.

**RESPONSE:**

39.     Admit that, before you transferred $84,843.22 to Alekseyeff on April 20, 2021, Alekseyeff received a copy of Plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction in this Action.

**RESPONSE:**

40.     Admit that, on or around July 2, 2019, you submitted a Uniform Residential Loan Application to Plaintiff to obtain the Goldwater Loan.

**RESPONSE:**

41.     Admit that **Exhibit E**, attached hereto, is a true and accurate copy of the Uniform Residential Loan Application that you submitted to Plaintiff to obtain the Goldwater Loan.

**RESPONSE:**

---

PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION TO ARTUR ELIZAROV - 12

42.    Admit that Your signature appears on **Exhibit E**, attached hereto.

**RESPONSE:**

43.    Admit that You affixed Your signature to **Exhibit E** on pages 1, 4, 5, and 6.

**RESPONSE:**

44.    Admit that, in connection with your application to obtain the Goldwater Loan from Plaintiff, you provided **Exhibit F**, attached hereto, to Goldwater.

**RESPONSE:**

45.    Admit that **Exhibit F**, attached here, is a true and correct copy of certain documentation you provided to Plaintiff in connection with your application to obtain the Goldwater Loan from Plaintiff.

**RESPONSE:**

46.    Admit that you utilized the following email address to correspond with Escrow of the West in connection with the sale of the Subject Property to Defendant Howlett:  art@dhr.company

**RESPONSE:**

47.     Admit that you produced to Goldwater all 24 pages of the "Seller Opening Package" Envelope as referenced and described in **Exhibit G**, attached hereto.

**RESPONSE:**

48.     Admit that you produced to Goldwater all correspondence between you and Escrow of the West related to the sale of the Subject Property to Howlett.

**RESPONSE:**

49.     Admit that you produced to Goldwater all 7 pages of the "Seller Estimated Settlement Statement" Envelope as referenced and described in **Exhibit H**, attached hereto.

**RESPONSE:**

50.     Admit that, in or around May of 2020, you completed a mortgage assistance application and submitted the same to Plaintiff.

**RESPONSE:**

51.     Admit that **Exhibit I**, attached hereto, is a true and correct copy of the mortgage assistance application you submitted to Plaintiff.

**RESPONSE:**

52.    Admit that, in connection with the mortgage assistance application you submitted to Plaintiff, you informed Plaintiff in writing on May 20, 2020, that you were "furloughed and without any income. Except for what [you] get from EDD."

    **RESPONSE:**


53.    Admit that, when you informed Plaintiff that you were "furloughed and without any income. Except for what [you] get from EDD", that your use of EDD referred to the California Employment Development Department.

    **RESPONSE:**


54.    Admit that during the month of May 2020, you had other income in addition to what you received from EDD (the "California Employment Development Department").

    **RESPONSE:**


55.    Admit that during the month of April 2020, you had other income in addition to what you received from EDD (the "California Employment Development Department").

    **RESPONSE:**

---

PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION TO ARTUR ELIZAROV - 15

56.     Admit that during the month of February 2020, you had other income in addition to what you received from EDD (the "California Employment Development Department").

**RESPONSE:**


57.     Admit that, between April 2020 and August 2020, you had other income in addition to what you received from EDD (the "California Employment Development Department").

**RESPONSE:**


58.     Admit that, between September 2020 and January 1, 2021, you had other income in addition to what you received from EDD (the "California Employment Development Department").

**RESPONSE:**


59.     Admit that between January 7, 2020 and May 1, 2020, you had other income in addition to what you received from EDD (the "California Employment Development Department").

**RESPONSE:**

60.     Admit that the only bank accounts that you owned or in which you held a

beneficial interest in between May 1, 2019 and January 7, 2021 are as follows:

Chase Account bearing account number 275985825;

Ally Accounts bearing account numbers 2185968480, 2194540486, 218097085.

**RESPONSE:**


61.     Admit that the only real property in which you held a beneficial interest in

between May 1, 2019 and January 7, 2021 is the Wilton Manners Property.

**RESPONSE:**


62.     Admit that, on May 20, 2020, your only assets, excluding retirement funds,

was $3,500 cash on hand.

**RESPONSE:**


63.     Admit that on March 25, 2021, you informed Goldwater that you would pay

Goldwater $675,000 of the proceeds from the sale of the Subject Property to Defendant

Howlett.

**RESPONSE:**

---

64.     Admit that between February 1, 2021, and March 28, 2021, you received income.

**RESPONSE:**

65.     Admit that between February 1, 2021, and March 28, 2021, your income exceeded your debts.

**RESPONSE:**

66.     Admit that you instructed Escrow of the West to cease communicating with Plaintiff after you learned the Deed of Trust memorializing the Goldwater Loan was not recorded.

**RESPONSE:**

67.     Admit that you instructed Escrow of the West to cease communicating with Plaintiff on or after March 24, 2021.

**RESPONSE:**

68.     Admit that you did not graduate from Harvard Law School.

**RESPONSE:**

69.    Admit that you are not licensed to practice law in the State of New York.

**RESPONSE:**

70.    Admit that, you have never been licensed to practice law in the State of New York.

**RESPONSE:**

71.    Admit that you do not hold a license to practice law in any state within the United States.

**RESPONSE:**

72.    Admit that, as a customer of Ally Bank and holder of financial accounts at Ally Bank between March to April of 2021, you understood that you had the ability to recall a wire transfer you initiated if such recall request was made within 1 business day of the wire being initiated by you.

**RESPONSE:**

73.    Admit that, as a customer of Ally Bank and holder of financial accounts at Ally Bank between March to April of 2021, you understood that you had the ability to

terminate a wire transfer you initiated if such termination request was made within 1 business day of the wire being initiated by you.

**RESPONSE:**


74.    Admit that, as a customer of Ally Bank and holder of financial accounts at Ally Bank between March to April of 2021, you understood that you had the ability to terminate a wire transfer you initiated if such termination request was made the same business day that you initiated a wire.

**RESPONSE:**


75.    Admit that, as a customer of Ally Bank and holder of financial accounts at Ally Bank between March to April of 2021, you understood that you had the ability to recall a wire transfer you initiated if such recall request was made the same business day that you initiated a wire.

**RESPONSE:**

76.     Admit that, as a customer of Ally Bank and holder of financial accounts at Ally Bank between March to April of 2021, you understood that you had the ability to change and/or cancel a wire transfer you initiated if such request was made the same business day that you initiated a wire.

**RESPONSE:**


77.     Admit that, as a customer of Ally Bank and holder of financial accounts at Ally Bank between March to April of 2021, you understood that you had the ability to change and/or cancel a wire transfer you initiated if such request was made within hours of initiating the wire.

**RESPONSE:**


78.     Admit that, before you received a call from Ally Bank to verify and confirm your request to transfer $84,843.22 to Alekseyeff on April 20, 2021, you received a copy of certain correspondence from Plaintiff demanding that You return the proceeds of the sale of the Subject Property to Goldwater.

**RESPONSE:**


79.     Admit that, before you received a call from Ally Bank to verify and confirm your request to transfer $84,843.22 to Alekseyeff on April 20, 2021, you were on notice

---

of Plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction in this Action.

**RESPONSE:**

80.    Admit that, before you transferred $84,843.22 to Alekseyeff on April 20, 2021, you obtained a copy of Plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction in this Action.

**RESPONSE:**

81.    Admit that, before you transferred $84,843.22 to Alekseyeff on April 20, 2021, Alekseyeff obtained a copy of Plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction in this Action.

**RESPONSE:**

82.    Admit that, before you received an email from Ally Bank confirming that your request to transfer $84,843.22 to Alekseyeff on April 20, 2021 was scheduled, you were aware of Plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction in this Action.

**RESPONSE:**

PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION TO ARTUR ELIZAROV - 22

83.     Admit that, after you submitted a request to Ally Bank to transfer $84,843.22 to Alekseyeff on April 20, 2021, you made no attempts to recall, cancel, change, and/or terminate the transfer.

**RESPONSE:**


Dated: January 31, 2023

**WAGNER HICKS PLLC**

By: /s/ Abbey M. Krysak
        Sean C. Wagner, Esq.
        Abbey M. Krysak, Esq.

AND

**HILBERT & SATTERLY LLP**

John Forest Hilbert, Esq.
Joseph A. LeVota, Esq.

AND

**IVIE McNEILL WYATT PURCELL & DIGGS**

Marie B. Maurice, Esq.
Marina Samson

*ATTORNEYS FOR DEFENDANT*
*GOLDWATER BANK N.A.*

## CERTIFICATE OF SERVICE

I am employed in the County of Mecklenburg, State of North Carolina.  I am over the age of 18 and not a party to the within action.  My business address is 831 E. Morehead Street, Suite 860, Charlotte, NC 28202.

On January 31, 2023, I served the within document described as:

## PLAINTIFF GOLDWATER BANK, N.A.'S SECOND SET OF REQUESTS FOR ADMISSION TO DEFENDANT ARTUR ELIZAROV

on each interested party in this action, as stated below:

### SEE ATTACHED SERVICE LIST

**BY EMAIL**:  I caused a true copy of the document to be sent to the persons at the corresponding electronic addresses as indicated above on the above-mentioned date. My electronic notification address is abbey.krysak @wagnerhicks.law.  I am familiar with this firm's Microsoft Outlook electronic mail system and did not receive any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am a *Pro Hac Vice* member of the bar of this Court at whose direction the service was made.

Executed on January 31, 2023, in Charlotte, North Carolina.


*Abbey M. Krysak*
Abbey M. Krysak, Esq.

**SERVICE LIST**
**Goldwater Bank, N.A. v. Artur Elizarov, et al.**
**Case No. 5:21-cv-00616-JWH-SP**

Ilya Alekseyeff, Esq.
Loia, Inc. (APLC)
8721 Santa Monic Blvd., #119
West Hollywood, CA 90096
(213) 537-4592
Ilya@loia.legal
*Attorney for Defendant Artur Elizarov and Defendant pro per, Ilya Alekseyeff*

Howard D. Hall, Esq.
Jeremy T. Katz, Esq.
Ryan C. Thomason, Esq.
Hall Griffin, LLP
1851 East First Street, 10th Floor
Santa Ana, CA 92705-4052
hdhall@hallgriffin.com
jkatz@hallgriffin.com
rthomason@hallgriffin.com
(714) 918-7000; Fax: (714) 918-6996
*Attorneys for Defendant Scott Howlett and Bank of the West*

Denis Shmidt
Nabil Bisharat
Orsus Gate, LLP
16 N Marengo Ave, Suite 316
Pasadena, CA 91101
(213) 973-2052
dshmidt@orsusgate.com
nbisrahat@orsusgate.cm
*Attorneys for Defendant Unison Agreement Corp.*

---

PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION TO ARTUR ELIZAROV - 25

# EXHIBIT A

*HFS*

When recorded, mail to:
Goldwater Bank, N.A.
Attn: Final Document Department
P.O. Box 25064
Albuquerque, NM 87125
844-799-4653

Title Order No.: 0625-5974427
Escrow No.: 0625-5974427
LOAN #: 909216931

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

MIN 1009209-4100147547-4

MERS PHONE #: 1-888-679-6377

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **July 31, 2019,**                                      together with all Riders to this document.

(B) "Borrower" is  **ARTUR ELIZAROV, AN UNMARRIED MAN.**

Borrower's address is  **828 Westmount Drive, West Hollywood, CA 90069.**

Borrower is the trustor under this Security Instrument.
(C) "Lender" is  **Goldwater Bank, N.A..**

Lender is **a Corporation,**                                                    organized and existing under the laws of
**The United States of America.**                          Lender's address is  **2525 E. Camelback Rd, Suite**
**1100, Phoenix, AZ 85016.**

CALIFORNIA – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      Form 3005 1/01
Ellie Mae, Inc.                                            Page 1 of 13                                            CAEDEDL  0219
                                                                                                                  CAEDEDL (CLS)
                                                                                          07/31/2019 10:36 AM PST



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0128

LOAN #: 909216931

**(D) "Trustee"** is   **First American Title Company.**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated **July 31, 2019.**                     The Note states that Borrower owes Lender   **SIX HUNDRED EIGHTY SIX THOUSAND TWO HUNDRED FIFTY AND NO/100\* \***
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* Dollars (U.S.  **$686,250.00**          )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **August 1, 2049.**

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider    ☐ Condominium Rider             ☐ Second Home Rider
☐ Balloon Rider           ☐ Planned Unit Development Rider    ☐ Other(s) [specify]
☐ 1-4 Family Rider       ☐ Biweekly Payment Rider
☐ V.A. Rider

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   **Form 3005 1/01**
Ellie Mae, Inc.                            Page 2 of 13                                         CAEDEDL  0219
                                                                           CAEDEDL (CLS)
                                                07/31/2019 10:36 AM PST



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0129

**LOAN #: 909216931**

all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County** [Type of Recording Jurisdiction] of **Riverside** [Name of Recording Jurisdiction]:

**LOT 8 OF BLOCK 7, PALM CANYON MESA TRACT, AS PER MAP RECORDED IN BOOK 12, PAGES 52 THROUGH 56, BOTH INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. APN #: 513-363-023-2**

which currently has the address of **291 W. Overlook Road, Palm Springs,**

[Street] [City]

California **92264-8934** ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3005 1/01
Ellie Mae, Inc. Page 3 of 13 CAEDEDL 0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0130

LOAN #: 909216931

to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   Form 3005 1/01
Ellie Mae, Inc. Page 4 of 13



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0131

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds,

whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0133

from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0134

period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**  Form 3005 1/01
Ellie Mae, Inc. Page 8 of 13

CAEDEDL 0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0135

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3005 1/01
Ellie Mae, Inc. Page 9 of 13

CAEDEDL 0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0136

Case 5:21-cv-00666-JWH-SSP Document 1918-4 Filed 04/05/23 Page 10 of 13 Page ID #:9698

sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01**
Ellie Mae, Inc.



CAEDEDL 0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0137

**LOAN #: 909216931**

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0138

**LOAN #: 909216931**

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**ARTUR ELIZAROV**

7/31/2019 **(Seal)**
**DATE**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**State of CALIFORNIA**
**County of** Los Angeles

**On** July 31. 2019 **, before me,** Estela Noemy Moreno Aviles NOTARY PUBLIC
(here insert name and title of the officer), personally appeared **ARTUR ELIZAROV, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.**

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

**WITNESS my hand and official seal.**

**Signature** _____

_____**(NOTARY)**

**(SEAL)**

ESTELA NOEMY MORENO AVILES
Notary Public - California
Los Angeles County
Commission # 2293165
My Comm. Expires Jun 15, 2023

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3005 1/01**
Ellie Mae, Inc. Page 12 of 13

CAEDEDL 0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0139

**LOAN #: 909216931**

Lender: Goldwater Bank, N.A.
NMLS ID: 452955
Loan Originator: Gregory Hill
NMLS ID: 247349

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   **Form 3005 1/01**
Ellie Mae, Inc.                                          Page 13 of 13

CAEDEDL  0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0140

LOAN #: 909216931
MIN: 1009209-4100147547-4

## ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In The Wall Street Journal-Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **31st** day of **July, 2019,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **Goldwater Bank, N.A.**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at: **291 W. Overlook Road, Palm Springs, CA 92264-8934.**

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MINIMUM AND MAXIMUM RATES THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of **5.375 %.** The Note provides for changes in the interest rate and the monthly payments as follows:
## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the **1st** day of **August, 2024,** and on that day every **12th** month thereafter. Each date on which my interest rate could change is called a "Change Date."
### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated

MULTISTATE ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR-Single Family-Fannie Mae UNIFORM INSTRUMENT
Form 3189 6/01 (rev. 6/16)
Ellie Mae, Inc.                                   Page 1 of 4                              F3189RLU  0816
                                                                                        F3189RLU (CLS)
                                                                          07/31/2019 10:36 AM PST



LOAN #: 909216931

deposits in the London market ("LIBOR"), as published in **The Wall Street Journal.** The most recent Index value available as of the date 45 days before each Change Date is called the "Current Index," provided that if the Current Index is less than zero, then the Current Index will be deemed to be zero for purposes of calculating my interest rate.

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **THREE** percentage point(s) ( **3.000 %** ) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **7.375 %** or less than **5.375 %**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage point(s) ( **2.000 %** ) from the rate of interest I have been paying for the preceding **12** month(s). My interest rate will never be greater than **11.375 %. My interest rate will never be less than the start rate or 5.375 %.**

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title

**MULTISTATE ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR**-Single Family-**Fannie Mae UNIFORM INSTRUMENT**
**Form 3189 6/01 (rev. 6/16)**
Ellie Mae, Inc.

Page 2 of 4

F3189RLU 0816
F3189RLU (CLS)
07/31/2019 10:36 AM PST



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0142

and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR-Single Family-Fannie Mae UNIFORM INSTRUMENT
Form 3189 6/01 (rev. 6/16)
Ellie Mae, Inc.                             Page 3 of 4                             F3189RLU  0816
                                                                                   F3189RLU (CLS)
                                                                                   07/31/2019 10:36 AM PST



Goldwater's Rule 56 Motion - Joint Exhibit - Page 0143

**LOAN #: 909216931**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____     7/31/2019 . (Seal)
**ARTUR ELIZAROV**                                                  **DATE**

**MULTISTATE ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR**-Single Family-**Fannie Mae UNIFORM INSTRUMENT**
**Form 3189 6/01 (rev. 6/16)**
Ellie Mae, Inc.                                    Page 4 of 4                          F3189RLU  0816
                                                                                        F3189RLU (CLS)
                                                                                        07/31/2019 10:36 AM PST



# EXHIBIT B

LOAN #: 909216931
MIN: 1009209-4100147547-4

# ADJUSTABLE RATE NOTE
## (LIBOR One-Year Index (As Published In The Wall Street Journal)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MINIMUM AND MAXIMUM RATES I MUST PAY.

| | | |
|---|---|---|
| **July 31, 2019** | **Palm Springs,** | **California** |
| **[Date]** | **[City]** | **[State]** |

**291 W. Overlook Road, Palm Springs, CA 92264-8934**
**[Property Address]**

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. **$686,250.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Goldwater Bank, N.A..**

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.375 %.** The interest rate I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the **1st** day of each month beginning on **September 1, 2019.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **August 1, 2049,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at **2525 E. Camelback Rd, Suite 1100**
**Phoenix, AZ 85016**

or at a different place if required by the Note Holder.
(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. **$3,842.80.** This amount may change.
(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The interest rate I will pay may change on the **1st** day of **August, 2024** and on that day every **12th** month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in **The Wall Street Journal.** The most recent Index value available as of the date 45 days before each Change Date is called the "Current Index," provided that if the Current Index is less than zero, then the Current Index will be deemed to be zero for purposes of calculating my interest rate.
If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.
(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding **THREE** percentage point(s) ( **3.000 %** ) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

**MULTISTATE ADJUSTABLE RATE NOTE – WSJ One-Year LIBOR** – Single Family – **Fannie Mae UNIFORM INSTRUMENT** Form 3526 6/01 (rev. 6/16)
Ellie Mae, Inc.                    Page 1 of 3                    F3526NOT  0816
F3526NOT (CLS)
07/31/2019 10:36 AM PST

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **7.375 %** or less than **5.375 %.** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage point(s) ( **2.000 %** ) from the rate of interest I have been paying for the preceding **12** month(s). My interest rate will never be greater than **11.375 %. My interest rate will never be less than the start rate or 5.375 %.**

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar day(s) after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

LOAN #: 909216931

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.



_____(Seal)
**ARTUR ELIZAROV**

**Lender: Goldwater Bank, N.A.**
**NMLS ID: 452955**
**Loan Originator: Gregory Hill**
**NMLS ID: 247349**

[Sign Original Only]

**MULTISTATE ADJUSTABLE RATE NOTE – WSJ One-Year LIBOR** – Single Family – **Fannie Mae UNIFORM INSTRUMENT Form 3526 6/01 (rev. 6/16)**
Ellie Mae, Inc.                                                      Page 3 of 3                                                      F3526NOT  0816
F3526NOT (CLS)
07/31/2019 10:36 AM PST

# EXHIBIT C

DocuSign Envelope ID: EB2F4A5B-9279-4F49-9589-ABA1A9AE607A

CALIFORNIA
ASSOCIATION
OF REALTORS®

**CALIFORNIA
RESIDENTIAL PURCHASE AGREEMENT
AND JOINT ESCROW INSTRUCTIONS**
(C.A.R. Form RPA-CA, Revised 12/18)

Date Prepared: **02/12/2021**

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _**Scott Howlett**_ ("Buyer").
   B. **THE REAL PROPERTY** to be acquired is _**291 W Overlook Rd, Palm Springs, CA 92264-8934**_, situated in
      _**Palm Springs**_ (City), _**Riverside**_ (County), California, _92264-8934_ (Zip Code), Assessor's Parcel No. _**513363023**_ ("Property").
   C. **THE PURCHASE PRICE** offered is _**One Million, Three Hundred Fifty-Five Thousand**_
      Dollars $ **1,355,000.00** .
   D. **CLOSE OF ESCROW** shall occur on ☐ (date)(or ☒ _**21**_ **Days** After Acceptance).
   E. Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
   B. **CONFIRMATION:** The following agency relationships are confirmed for this transaction:
      Seller's Brokerage Firm _**Keller Williams Luxury Homes**_ License Number _**01417409**_
      Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
      Seller's Agent _**Will Cook**_ License Number _**01879277**_
      Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

      Buyer's Brokerage Firm _**Compass**_ License Number _**01527365**_
      Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
      Buyer's Agent _**Maria Noel Krajco**_ License Number _**02092247**_
      Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
   C. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _**40,650.00**_
      **(1) Buyer Direct Deposit:** Buyer shall deliver deposit directly to Escrow Holder by electronic funds
      transfer, ☐ cashier's check, ☐ personal check, ☐ other _____ within 3 business days
      after Acceptance (or _____ );
      **OR (2)** ☐ **Buyer Deposit with Agent:** Buyer has given the deposit by personal check (or _____ )
      to the agent submitting the offer (or to _____ ), made payable to
      _____ . The deposit shall be held uncashed until Acceptance and then deposited
      with Escrow Holder within 3 business days after Acceptance (or _____ ).
      Deposit checks given to agent shall be an original signed check and not a copy.
      (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . . . . $ _____
      within _____ **Days** After Acceptance (or _____ ).
      If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased
      deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form
      RID) at the time the increased deposit is delivered to Escrow Holder.
   C. ☐ **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer
      obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or
      ☐ Buyer shall, within 3 (or _____ ) Days After Acceptance, Deliver to Seller such verification.
   D. **LOAN(S):**
      **(1) FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _**1,004,000.00**_
      This loan will be conventional financing **OR** ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA),
      ☐ assumed financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed
      rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
      Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      **(2)** ☐ **SECOND LOAN** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
      This loan will be conventional financing **OR** ☐ Seller financing (C.A.R. Form SFA), ☐ assumed
      financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed rate not to
      exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
      Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      **(3) FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has **17 (or _____ ) Days** After Acceptance
      to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that
      Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender
      requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a
      part of this Agreement.
   E. **ADDITIONAL FINANCING TERMS:** _____

   F. **BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . $ _**310,350.00**_
      to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
   G. **PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _**1,355,000.00**_

Buyer's Initials ( _SH_ ) ( _____ )     Seller's Initials ( _____ ) ( _____ )

© 1991-2018, California Association of REALTORS®, Inc.

**RPA-CA REVISED 12/18 (PAGE 1 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

DocuSign Envelope ID: EB2F4A93-0270-4F69-9989-ABA1A3AE0074

Property Address: **291 W Overlook Rd, Palm Springs, CA  92264-8934**                     Date: **February 12, 2021**

**H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within **3 (or _____ ) Days** After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( ☐ Verification attached.)

**I. APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☒ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within **17 (or _____ ) Days** After Acceptance.

**J. LOAN TERMS:**

    **(1) LOAN APPLICATIONS:** Within **3 (or _____ ) Days** After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)

    **(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.

    **(3) LOAN CONTINGENCY REMOVAL:** Within **21 (or _14_ ) Days** After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

    **(4)** ☐ **NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

    **(5) LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**K. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4. SALE OF BUYER'S PROPERTY:**

    **A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.

  OR **B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5. ADDENDA AND ADVISORIES:**

    A. ADDENDA:

| | |
|---|---|
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Addendum #_____ (C.A.R. Form ADM) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other |

    B. BUYER AND SELLER ADVISORIES:

| | |
|---|---|
| ☐ Probate Advisory (C.A.R. Form PA) | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ REO Advisory (C.A.R. Form REO) |
| | ☐ Other |

**6. OTHER TERMS:** _____

_____

_____

**7. ALLOCATION OF COSTS**

    **A. INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**

        **(1)** ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☐ environmental ☐ Other: _____ prepared by **SELLERS CHOICE**.

        **(2)** ☐ Buyer ☒ Seller shall pay for the following Report **TERMITE PEST CONTROL REPORT AND SECT 1 CLEARANCE** prepared by **SELLERS CHOICE**.

        **(3)** ☐ Buyer ☐ Seller shall pay for the following Report _____ prepared by _____.

    **B. GOVERNMENT REQUIREMENTS AND RETROFIT:**

        **(1)** ☐ Buyer ☒ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.

Buyer's Initials ( _SH_ ) ( _____ )                     Seller's Initials ( ___ ) ( ___ )

**RPA-CA REVISED 12/18 (PAGE 2 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 2 OF 10)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com          291 W Overlook

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0151

DocuSign Envelope ID: EB2F4A93-0270-4F69-9989-ABA1A3AE0074

Property Address: **_291 W Overlook Rd, Palm Springs, CA 92264-8934_** Date: **_February 12, 2021_**

**(2) (i)** ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.

**(ii)** ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.

**(iii)** Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C. ESCROW AND TITLE:**
**(1) (a)** ☒ Buyer ☒ Seller shall pay escrow fee **_EACH PAY THIER OWN FEES_** .
**(b)** Escrow Holder shall be **_SELLERS CHOICE_** .
**(c)** The Parties shall, within **5 (or ___ ) Days** After receipt, sign and return Escrow Holder's general provisions.
**(2) (a)** ☐ Buyer ☒ Seller shall pay for **owner's** title insurance policy specified in paragraph 13E .
**(b)** Owner's title policy to be issued by **_SELLERS CHOICE_** .
(Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

**D. OTHER COSTS:**
**(1)** ☐ Buyer ☒ Seller shall pay County transfer tax or fee **IF APPLICABLE** .
**(2)** ☐ Buyer ☒ Seller shall pay City transfer tax or fee **IF APPLICABLE** .
**(3)** ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee .
**(4)** Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.
**(5)** ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.
**(6)** Buyer to pay for any HOA certification fee.
**(7)** ☐ Buyer ☐ Seller shall pay for any private transfer fee .
**(8)** ☐ Buyer ☐ Seller shall pay for .
**(9)** ☐ Buyer ☐ Seller shall pay for .
**(10)** ☐ Buyer ☒ Seller shall pay for the cost, not to exceed $ **_1,200.00_** , of a standard (or ☒ upgraded) one-year home warranty plan, issued by **_SELLERS CHOICE_** , with the following optional coverages: ☒ Air Conditioner ☒ Pool/Spa ☐ Other: .
Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.
**OR** ☐ **Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.**

**8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.
**B. ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,
**(1)** All EXISTING fixtures and fittings that are attached to the Property;
**(2)** EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: ☒ all stove(s), except ; ☒ all refrigerator(s) except ; ☒ all washer(s) and dryer(s), except ;
**(3)** The following additional items: .
**(4)** Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are ( ☐ are NOT) included in the sale.
**(5) LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.
**(6)** Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to 8B(5) and ___ , and (ii) are transferred without Seller warranty regardless of value.
**C. ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured to the Property for earthquake purposes; and (iii) .
**Brackets attached to walls, floors or ceilings for any such component, furniture or item shall remain with the Property (or** ☐ **will be removed and holes or other damage shall be repaired, but not painted).**

**9. CLOSING AND POSSESSION:**
**A.** Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.
**B. Seller-occupied or vacant property:** Possession shall be delivered to Buyer: (i) at 6 PM or ( ☐ AM/ ☐ PM) on the date of Close Of Escrow; (ii) ☐ no later than ___ calendar days after Close Of Escrow; or (iii) ☐ at ___ ☐ AM/ ☐ PM on .

Buyer's Initials ( SH ) ( ) Seller's Initials ( ) ( )

**RPA-CA REVISED 12/18 (PAGE 3 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 10)**

Case 5:21-cv-00616-JWH-SP Document 318-4 Filed 08/25/23 Page 153 of 282 Page ID
#:9714
DocuSign Envelope ID: EB2F4A93-0270-4F69-998B-ABA1A3AE0074

Property Address: **291 W Overlook Rd, Palm Springs, CA 92264-5934** Date: **February 12, 2021**

C. **Seller remaining in possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

D. **Tenant-occupied property: Property shall be** vacant at least **5 (or ____ ) Days** Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**

OR ☐ Tenant to remain in possession (C.A.R. Form TIP).

E. At Close Of Escrow: Seller assigns to Buyer any assignable warranty rights for items included in the sale; and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.

F. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

10. **STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

A. **(1)** Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and **(ii)** unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).

(2) Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Seller's Agent, if any, has completed and signed the Seller's Brokerage Firm section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Brokerage Firm, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Brokerage Firm.

(3) **Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.

(4) Within the time specified in paragraph 14A, (i) Seller, unless exempt from the obligation to provide a TDS, shall, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ); (ii) if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with an Exempt Seller Disclosure (C.A.R. Form ESD).

(5) Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.

(6) In the event Seller or Seller's Brokerage Firm, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies** of which Buyer is otherwise aware, or which are **disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**

(7) If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days** After Delivery in person, or **5 Days** After Delivery by deposit in the mail, or by an electronic record satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of cancellation to Seller or Seller's agent.

B. **NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: **(i)** Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating pamphlet; **(ii)** disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

C. **WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).

D. **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

E. **NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at http://www.npms.phmsa.dot.gov/. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

F. **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

(1) SELLER HAS: **7 (or ____ ) Days** After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).

Buyer's Initials ( SH ) ( _____ )     Seller's Initials ( _____ ) ( _____ ) ─DS

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 10)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5  www.lwolf.com     291 W Overlook

Property Address: **291 W Overlook Rd, Palm Springs, CA 92264-8934**                    Date: **February 12, 2021**

(2) If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has 3 (or ___) Days After Acceptance to request from the HOA (C.A.R. Form HOA1): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). (vi) private transfer fees; (vii) Pet fee restrictions; and (viii) smoking restrictions. Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

11. **CONDITION OF PROPERTY:** Unless otherwise agreed in writing: (i) the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow.
   A. Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.
   B. Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.
   C. **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

12. **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
   A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to: (i) a general physical inspection; (ii) an inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); (iii) inspect for lead-based paint and other lead-based paint hazards; (iv) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA); (v) review the registered sex offender database; (vi) confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; and (vii) review and seek approval of leases that may need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any governmental building or zoning inspector or government employee, unless required by Law.
   B. Seller shall make the Property available for all Buyer Investigations. Buyer shall (i) as specified in paragraph 14B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and (ii) give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.
   C. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.
   D. **Buyer indemnity and seller protection for entry upon property:** Buyer shall: (i) keep the Property free and clear of liens; (ii) repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

13. **TITLE AND VESTING:**
   A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.
   B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.
   C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.
   D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.
   E. Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

Buyer's Initials ( __SH__ ) ( _____ )                    Seller's Initials ( _____ ) ( _____ )

RPA-CA REVISED 12/18 (PAGE 5 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 5 OF 10)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5  www.lwolf.com        291 W Overlook

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0154

Property Address: *291 W Overlook Rd, Palm Springs, CA 92262-3462*    Date: *February 12, 2021*

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

   **A. SELLER HAS: 7 (or _3_ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

   **B. (1) BUYER HAS: 17 (or ___ ) Days** After Acceptance, unless otherwise agreed in writing, to:
   - (i) complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and (ii) Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.
   - **(2)** Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.
   - **(3)** By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has **5 (or ___ ) Days** After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.
   - **(4) Continuation of Contingency:** Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).
   - **(5) Access to Property:** Buyer shall have access to the Property to conduct inspections and investigations for **17 (or ___ ) Days** After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

   **C. [X] REMOVAL OF CONTINGENCIES WITH OFFER: Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.**

   **D. SELLER RIGHT TO CANCEL:**
   - **(1) Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.
   - **(2) Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): (i) Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; (ii) Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); (iii) Deliver a letter as required by paragraph 3J(1); (iv) Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; (v) In writing assume or accept leases or liens specified in 8B5; (vi) Return Statutory and Lead Disclosures as required by paragraph 10A(5); or (vii) Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or (viii) Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

   **E. NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: (i) be in writing; (ii) be signed by the applicable Buyer or Seller; and (iii) give the other Party at least **2 (or ___ ) Days** After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

   **F. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

   **G. CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: (i) be signed by the applicable Buyer or Seller; and (ii) give the other Party at least **3 (or ___ ) Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow.

   **H. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

Buyer's Initials ( SH ) ( ____ )                                    Seller's Initials [signature] ( ____ )

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 10)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com   **291 W Overlook**

Property Address: **291 W Overlook Rd, Palm Springs, CA 92264-8934**      Date: **February 12, 2021**

**15. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within **5 (or ___ ) Days** Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 11; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**16. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS:**
   **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
   **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity **(i)** represents that the entity for which that party is acting already exists and **(ii)** shall Deliver to the other Party and Escrow Holder, within **3 Days** After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**20. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
   **A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 (or ___ ) Days,** shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.
   **B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** After Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials ( $\mathcal{SH}$ ) (_____)           Seller's Initials (_____) (_____)
**RPA-CA REVISED 12/18 (PAGE 7 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 7 OF 10)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com     291 W Overlook

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0156

DocuSign Envelope ID: EB2F4A93-0270-4F69-998B-ABA1A3AE0074

Property Address: *291 W Overlook Rd, Palm Springs, CA  92264-8934*                     Date: *February 12, 2021*

C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

D. Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (i) if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

E. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 3 Days after mutual execution of the amendment.

## 21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:

A. Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

B. LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).

Buyer's Initials  SH  /                            Seller's Initials  _____ / _____

## 22. DISPUTE RESOLUTION:

A. MEDIATION: The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 22C.

B. ARBITRATION OF DISPUTES:

The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials  SH  /                            Seller's Initials  _____ / _____

C. ADDITIONAL MEDIATION AND ARBITRATION TERMS:

(1) EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

Buyer's Initials ( SH   ) ( _____ )                 Seller's Initials ( _____ ) ( _____ )

RPA-CA REVISED 12/18 (PAGE 8 OF 10)

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 10)

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com          291 W Overlook

(2) **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.

(3) **BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.

23. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

24. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

25. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

26. **ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).

27. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

28. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

29. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

30. **DEFINITIONS:** As used in this Agreement:

A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.

B. **"Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.

C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.

D. **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.

E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.

F. **"Days"** means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.

G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.

H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.

I. **"Deliver"**, **"Delivered"** or **"Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).

J. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

31. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____ **BUYERS AGENT** ,
who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by ☐ _____ ☐ AM/ ☐ PM, on _____ (date)).

☐ One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date **2/14/2021**    BUYER | _Scott Howlett_

(Print name) **Scott Howlett**      ⌐A34E0F9EC01B4B2...

Date _____ BUYER _____

(Print name) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

Seller's Initials ( _____ ) ( _____ )

**RPA-CA REVISED 12/18 (PAGE 9 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 9 OF 10)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5 www.lwolf.com      291 W Overlook

Property Address: **291 W Overlook Rd, Palm Springs, CA 92264-8934**                    Date: **February 12, 2021**

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) SELLER'S ACCEPTANCE IS **SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:**

_____.

☐ One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date 2/16/2021 | 5:06 PM PST         SELLER _____ 790B3EBD48EB428...

(Print name) **Artur Elizarov**

Date _____   SELLER _____

(Print name) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( ____ / ____ )  (Do not initial if making a counter offer.) **CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials)     personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
☐ AM/ ☐ PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.**

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING (BUYER'S) BROKER COMPENSATION:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
E. **PRESENTATION OF OFFER:** Pursuant to Standard of Practice 1-7, if Buyer's Broker makes a written request, Seller's Broker shall confirm in writing that this offer has been presented to Seller.

Buyer's Brokerage Firm **Compass**                                                      DRE Lic. # **01527365**
By **Maria Krajco**                        **Maria Noel Krajco** DRE Lic. # **02092247**      Date 2/13/2021
By _____ 799F52A7482843D                    DRE Lic. # _____          Date _____
Address **2165 San Diego Ave**                      City **San Diego**              State **CA**   Zip **92110-2906**
Telephone **(714)580-9103**          Fax _____     E-mail **mariasellscali@gmail.com**
Seller's Brokerage Firm **Keller Williams Luxury Homes**                          DRE Lic. # **01417409**
By **Will Cook**                              **Will Cook** DRE Lic. # **01879277**        Date **2/16/2021 | 7:51 PM PST**
By _____ DAA9F79F05A5F4C0                   DRE Lic. # _____          Date _____
Address **435 North Palm Canyon**                    City **Palm Springs**          State **CA**   Zip **92262**
Telephone **(760)565-5714**          Fax **(760)322-9266**         E-mail **will@willcookrealestate.com**

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____  ☐ Seller's Statement of Information and _____
_____, and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any
supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _____        Escrow # _____
By _____         Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

| **PRESENTATION OF OFFER:** ( _WC_ ) Seller's Broker presented this offer to Seller on | 2/14/2021 | (date). |
| Broker or Designee Initials |  |  |

**REJECTION OF OFFER:** ( ____ ) ( ____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
Seller's Initials

©1991- 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:        Buyer Acknowledges that page 10 is part of this Agreement ( SH ) ( ____ )
REAL ESTATE BUSINESS SERVICES, LLC.                                              Buyer's Initials
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020
**RPA-CA REVISED 12/18 (PAGE 10 of 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 10 OF 10)**
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5  www.lwolf.com        291 W Overlook

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0159

CALIFORNIA
ASSOCIATION
OF REALTORS®

# BUYER'S INSPECTION ADVISORY

**(C.A.R. Form BIA, Revised 11/14)**

Property Address **291 W Overlook Rd, Palm Springs, CA  92264-8934**

**1. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**2. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

**3. YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

   **A. GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and nonstructural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

   **B. SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

   **C. WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

   **D. SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

   **E. WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

   **F. ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

   **G. EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

   **H. FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

   **I. BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size.

   **J. RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

   **K. SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

   **L. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

Buyer  _Scott Howlett_ _____     Buyer _____
       Scott Howlett (DocuSigned by EC01B4B2...)

©1991-2004, California Association of REALTORS®, Inc. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**BIA REVISED 11/14 (PAGE 1 OF 1)**

**BUYER'S INSPECTION ADVISORY (BIA PAGE 1 OF 1)**



**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY**
(C.A.R. Form CCPA, 12/19)

As of January 1, 2020, the California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA") grants to California residents certain rights in their private, personal information that is collected by companies with whom they do business. Under the CCPA, "personal information" is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you, including, potentially, photographs of or sales information about your property. Some of your personal information will be collected and likely shared with others during the process of buying and selling real estate. Depending on the situation, you may have the right to "opt out" or stop the transfer of your personal information to others and request that certain businesses delete your personal information altogether. Not all businesses you interact with are required to comply with the law, primarily just those who meet the criteria of a covered "Business" as set forth in Section 1798.140 (c)]. For more information, you may ask your Broker for a copy of the C.A.R. Legal Q&A on the subject.

A real estate broker is likely to submit personal information to a Multiple Listing Service ("MLS") in order to help find a buyer for a seller's property. Through the MLS, the information is made available to real estate brokers and salespeople, and others. Even after a sale is complete, the MLS distributes sales information to the real estate community. Brokers, agents and MLSs may also share your personal information with others who post the personal information on websites or elsewhere, or otherwise use it. Thus, there are various service providers and companies in a real estate transaction who may be engaged in using or sharing data involving your personal information.

If your broker is a covered Business, it should have a privacy policy explaining your rights on its website and giving you an opportunity to request that personal information not be shared, used and even deleted. Even if your real estate brokerage is a covered Business, it needs, and is allowed, to keep your information to effectuate a sale and, by law, is required to maintain such information for three years to comply with regulatory requirements. Not all brokers are covered Businesses, however, and those that are not, do not have to comply with the CCPA.

Similarly, most MLSs will not be considered a covered Business. Instead, the MLS may be considered a Third Party in the event a covered Business (ex: brokerages, real estate listing aggregation or advertising internet sites or other outlets who meet the criteria of covered Businesses) exchanges personal information with the MLS. You do not have the right under the CCPA to require a Third Party to delete your personal information. And like real estate brokerages, even if an MLS is a covered Business, MLSs are also required by law to retain and make accessible in its computer system any and all listing and other information for three years.

Whether an MLS is a covered Business or a Third Party, you have a right to be notified about the sharing of your personal information and your right to contact a covered Business to opt out of your personal information being used, or shared with Third Parties. Since the MLSs and/or other entities receiving your personal information do not have direct contact with buyers and sellers and also may not be aware of which entities exchanging personal information are covered Businesses, this form is being used to notify you of your rights under the CCPA and your ability to direct requests to covered Businesses not to share personal information with Third Parties. One way to limit access to your personal information, is to inform your broker or salesperson you want to opt-out of the MLS, and if so, you will be asked to sign a document (Form SELM) confirming your request to keep  your listing off the MLS.  However, if you do so, it may be more difficult to sell your property or obtain the highest price for it because your property will not be exposed to the greatest number of real estate licensees and others.

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory.**

Buyer/Seller/Landlord/Tenant  _Scott Howlett_  Date _2/14/2021_
                                Scott Howlett B4B2...

Buyer/Seller/Landlord/Tenant  _____  Date _____

© 2019, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**CCPA 12/19 (PAGE 1 OF 1)**

**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)**

KUD Properties, 73700 Highway 111, #7 Palm Desert CA 92260                   Phone: (714)580-9103        Fax:            291 W Overlook
Maria Noel Krajco                          Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

DocuSign Envelope ID: EB2F4A93-0270-4F69-9989-ABA1A3AE0074



# DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP
**(Buyer's Brokerage Firm to Buyer)**
**(As required by the Civil Code)**
**(C.A.R. Form AD, Revised 12/18)**

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k) and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
  (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
  (b)  A duty of honest and fair dealing and good faith.
  (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
  (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
  (b)  A duty of honest and fair dealing and good faith.
  (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
  (a)  A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
  (b)  Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).** Buyer/Tenant □ Seller/Landlord by:

| | | | |
|---|---|---|---|
| ☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant | *Scott Howlett* (A34E9F9EC01B4B2...) | | Date 2/14/2021 |
| ☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant | | | Date |

Agent **Compass**  DRE Lic. # **01527365**
Real Estate Broker (Firm)
By *Maria krajco* (79BF2AA7482B45D...)  DRE Lic. # **02092247**  Date 2/13/2021
(Salesperson or Broker-Associate, if any) **Maria Noel Krajco**

© 1991-2018, California Association of REALTORS®, Inc.

AD REVISED 12/18 (PAGE 1 OF 2)

## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)

KUD Properties, 73700 Highway 111, #7 Palm Desert CA 92260    Phone: (714)580-9103    Fax:    291 W Overlook
Maria Noel Krajco    Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com

DocuSign Envelope ID: EB2F4A93-027D-4F69-9985-ABA1A3AE0074

**CIVIL CODE SECTIONS 2079.13 – 2079.24 (2079.16 APPEARS ON THE FRONT)**

2079.13. As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
(a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions.
(b) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. (c) "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. (d) "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. (e) "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. (f) "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation.(g) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. (h) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (i) "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. (j) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (k) "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. (l) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (m) "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. (n) "Buyer's agent" means an agent who represents a buyer in a real property transaction.
2079.14. A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: (a) The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.
2079.15. In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.
2079.16 Reproduced on Page 1 of this AD form.
2079.17(a) As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. (b) As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the seller and buyer. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.
CONFIRMATION: The following agency relationships are confirmed for this transaction:

Seller's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

(d) The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.
2079.18 (Repealed pursuant to AB-1289)
2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.
2079.21 (a) A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. (b) A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. (c) "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. (d) This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
2079.22 Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.
2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 1991-2018, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



AD REVISED 12/18 (PAGE 2 OF 2)
DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5  www.lwolf.com          291 W Overlook

DocuSign Envelope ID: EB2F4A93-0270-4F69-9989-ABA1A3AE0074

ASSOCIATION
OF REALTORS®

**FAIR HOUSING & DISCRIMINATION ADVISORY**
(C.A.R. Form FHDA, 10/20)

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§12900-12996,12955; 2 California Code of Regulations ("CCR") §§12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") §51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E. OTHER FAIR HOUSING LAWS: Section 504 of Rehabilitation Act of 1973 29 U.S.C. §794; Ralph Civil Rights Act CC §51.7.; California Disabled Persons Act; CC §§54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION: Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.**
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons if based on that person's belonging to, association with, or perceived membership to, any of the following classes or categories is prohibited.

| Race | Color | Ancestry | National Origin | Religion |
|---|---|---|---|---|
| Sex | Sexual Orientation | Gender | Gender Identity | Gender Expression |
| Marital Status | Familial Status (family with a child or children under 18) | Source of Income (e.g., Section 8 Voucher) | Disability (Mental & Physical) | Medical Condition |
| Citizenship | Primary Language | Immigration Status | Military/Veteran Status | Age |
| Criminal History (non-relevant convictions) | | | Any arbitrary characteristic | |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") §10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation §2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC §10177(l)(1); 10 CCR §2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION:** NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, handicap, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.
   - Sellers
   - Landlords
   - Sublessors
   - Real estate licensees
   - Real estate brokerage firms
   - Property managers
   - Mobilehome parks
   - Homeowners Associations ("HOAs");
   - Banks and Mortgage lenders
   - Insurance companies
   - Government housing services
8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of (i) actual or unconscious bias, and (ii) potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent (i) an upper level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or (ii) a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2020, California Association of REALTORS®, Inc.
**FHDA 10/20 (PAGE 1 OF 2)**

**FAIR HOUSING & DISCRIMINATION ADVISORY (FHDA PAGE 1 OF 2)**

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0164

Case 5:21-cv-00616-JWH-SP Document 318-4 Filed 08/25/23 Page 165 of 282 Page ID
DocuSign Envelope ID: EB2F4A93-0270-4F69-9585-ABA7A3AE0074 #:9726

**E.** Inquiring about protected characteristics (such as asking tenant applicants if they are married, or prospective purchasers if they have children or are planning to start a family);

**F.** Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;

**G.** Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);

**H.** Denying a home loan or homeowner's insurance;

**I.** Offering inferior terms, conditions, privileges, facilities or services;

**J.** Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;

**K.** Harassing a person;

**L.** Taking an adverse action based on protected characteristics;

**M.** Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a wheel chair bound tenant to install, at their expense, a ramp over front or rear steps, or refusing to allow a physically disabled tenant from installing, at their own expense, grab bars in a shower or bathtub);

**N.** Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):
   **(i)** Failing to allow that person to keep the service animal or emotional support animal in rental property,
   **(ii)** Charging that person higher rent or increased security deposit, or
   **(iii)** Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;

**O.** Retaliating for asserting rights under fair housing laws.

**10. EXAMPLES OF POSITIVE PRACTICES:**
**A.** Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.
**B.** Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.
**C.** Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.
**D.** Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").
**E.** Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

**11. FAIR HOUSING RESOURCES:** If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.
**A.** Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**
**B.** State: **https://www.dfeh.ca.gov/housing/**
**C.** Local: local Fair Housing Council office (non-profit, free service)
**D.** DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**
**E.** Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster**.
**F.** Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

**12. LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide legal advice on the application of these exceptions.**
**A.** Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;
**B.** An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;
**C.** An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;
**D.** An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and
**E.** Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC,* 666 F.3d 1216 (2019).
**F.** Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

Buyer/Tenant ~~and Seller/Landlord~~ have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.

| | | | |
|---|---|---|---|
| Buyer/Tenant | Scott Howlett | **Scott Howlett** Date | 2/14/2021 |
| Buyer/Tenant | —A34E9F9EC01B4B2 DocuSigned by: | Date | |
| Seller/Landlord | | **Artur Elizarov** Date | 2/16/2021 \| 8:06 PM PST |
| Seller/Landlord | —790B3EBD48EB428... | Date | |

© 2020, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**FHDA 10/20 (PAGE 2 OF 2)**

**FAIR HOUSING & DISCRIMINATION ADVISORY (FHDA PAGE 2 OF 2)**

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0165

DocuSign Envelope ID: E32F4A930203-4FE9-9369-ABA1A9AEB072



CALIFORNIA
ASSOCIATION
OF REALTORS®

# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
## OR SELLER - DISCLOSURE AND CONSENT
(C.A.R. Form PRBS, Revised 12/18)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both seller and buyer with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | | |
|---|---|---|---|
| Seller | | *Artur Elizarov* | Date 2/16/2021 \| 8:06 |
| Seller | DocuSigned by: 79DB3EB048EB428 | | Date |
| Buyer | *Scott Howlett* A34E9F9EC01B4B2 | *Scott Howlett* | Date 2/14/2021 |
| Buyer | | | Date |

Buyer's Brokerage Firm *Compass* DRE Lic # **01527365** Date **02/12/2021**
By *Maria Noel Krajco* DRE Lic # **02092247** Date 2/13/2021
*Maria Noel Krajco*

Seller's Brokerage Firm *Keller Williams Luxury Homes* DRE Lic # **01417409** Date 2/16/2021 \| 7:51 P
By *Will Cook* DRE Lic # **01879277** Date
*Will Cook* 63A5F79F9A6F4C0...

© 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**PRBS REVISED 12/18 (PAGE 1 OF 1)**



## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)

| | | | |
|---|---|---|---|
| KUD Properties, 73700 Highway 111, #7 Palm Desert CA 92260 | | Phone: (714)580-9103 Fax: | 291 W Overlook |
| Maria Noel Krajco | Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5 www.lwolf.com | | |

DocuSign Envelope ID: E02FA59F-01C3-4F89-959D-A0A1DCA0E607



# CALIFORNIA ASSOCIATION OF REALTORS®

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY
(C.A.R. Form WFA, Revised 12/17)

Property Address: _291 W Overlook Rd, Palm Springs, CA  92264-8934_ ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

## ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

| | | | |
|---|---|---|---|
| Buyer/Tenant | _Scott Howlett_ | **Scott Howlett** Date | 2/14/2021 |
| Buyer/Tenant | A34E9F9EC01B4B2... DocuSigned by: | Date | |
| Seller/Landlord | | **Artur Elizarov** Date | 2/16/2021 \| 8:06 PM |
| Seller/Landlord | 790B3EBD48EB428... | Date | |

©2016-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**WFA REVISED 12/17 (PAGE 1 OF 1)**
**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**

| | | |
|---|---|---|
| KUD Properties, 73700 Highway 111, #7 Palm Desert CA 92260 | Phone: (714)580-9103   Fax: | 291 W Overlook |
| Maria Noel Krajce | Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com | |

# EXHIBIT D

DocuSign Envelope ID: 39275A9F-3307-4165-8560-615B95A967D0



9440 Santa Monica Blvd., #310
Beverly Hills, CA 90210

Phone: (310) 402-5555
Fax: (310) 402-5556
www.escrowofthewest.com

ESCROW NO.: 02-035523-AC

PROPERTY ADDRESS: 291 W. Overlook Road, Palm Springs, CA 92264

**EXISTING FIRST TRUST DEED LOAN:**
Name of Lender: see provided _____ Current Balance: same _____
Address: same _____
Loan No.: same _____ Phone No.: same _____

**EXISTING SECOND TRUST DEED LOAN, IF ANY**
Name of Lender: _____ Current Balance: _____
Address: _____
Loan No.: _____ Phone No.: _____

**HOMEOWNER'S ASSOCIATION INFORMATION**
Name of Association: _____
Management Company, if any _____
Address: _____
Account No.: _____ Phone No.: _____
Dues per Month: $ _____ Paid to: _____

**WATER STOCK COMPANY**
Water Stock No. Shares: _____
Water Company: _____
Address payment sent to: _____

**NEW CONSTRUCTION  [  ] YES   [  ] NO**
Work Commences on: _____
Work Completed on: _____
Notice of Completion Recorded on: _____

**PLEASE PROVIDE US WITH A COPY OF THE CERTIFICATE OF OCCUPANCY.**

**MAILING ADDRESS AFTER CLOSE OF ESCROW:**

sama as above _____

_____

USE REVERSE FOR ANY ADDITIONAL LOANS.
**PLEASE COMPLETE AND RETURN THIS FORM WITH YOUR SIGNED ESCROW INSTRUCTIONS.**

THANK YOU.

As may be specifically and properly required to complete my transaction described in the Escrow Instructions, you are hereby instructed to obtain and comply with pay-off "demands" from the Lenders or parties named above and to make payment(s) in full from funds accruing to my account at close of escrow including but not limited to, forwarding/service/transfer fees/payments/reconveyance fees, interest or prepayment charges as demanded by such instructions without my further approval. The above referenced Lender, Homeowner's Association, and Mutual Water Company may accept a copy of this signed notice as authorization to release information requested by ESCROW OF THE WEST.

DocuSigned by:

*Artur Elizarov*

Artur Elizarov

# EXHIBIT E

Goldwater Bank, National Association

LOAN #: 909216931

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☒ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

DocuSigned by: [signature] P03D088494.

7/3/2019 | 14:01:38 PDT

Borrower _____      Co-Borrower _____

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA ☒ Conventional ☐ FHA ☐ USDA/Rural Housing Service | ☐ Other (explain): | Agency Case Number | Lender Case Number 909216931 |
|---|---|---|---|---|

| Amount $ 686,250.00 | Interest Rate 5.000 % | No. of Months 360 | Amortization Type: | ☐ Fixed Rate ☐ GPM | ☐ Other (explain): ☒ ARM (type): 1YLWSJ |
|---|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) 291 W. Overlook Road, Palm Springs, CA 92264-8934 County: Riverside | No. of Units 1 |
|---|---|

| Legal Description of Subject Property (attach description if necessary) See title | Year Built 1945 |
|---|---|

| Purpose of Loan | ☒ Purchase ☐ Refinance ☐ Construction ☐ Construction-Permanent ☐ Other (explain): | Property will be: ☒ Primary Residence ☐ Secondary Residence ☐ Investment |
|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a + b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost $ | Amount Existing Liens $ | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made Cost: $ |
|---|---|---|---|---|

| Title will be held in what Name(s) Artur Elizarov | Manner in which Title will be held To be decided in escrow | Estate will be held in: ☒ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain) Checking/Savings, Unison assisted | | |
|---|---|---|

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | Artur Elizarov | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|---|
| Borrower | | | | 16 | | | | |

| ☐ Married (include registered domestic partners) ☒ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. 0   ages 0 | ☐ Married (include registered domestic partners) ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no.   ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☐ Own ☒ Rent No. Yrs. 2Y 1M | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| Name & Address of Employer Rite Care Hospice 14144 Ventura Blvd Ste 304 San Francisco, CA 94123 | ☐ Self Employed | Yrs. on this job 0 Y 6 M / Yrs. employed in this line of work/profession 15 | Name & Address of Employer | ☐ Self Employed | Yrs. on this job / Yrs. employed in this line of work/profession |
| Position/Title/Type of Business EVP Operations | | Business Phone (incl. area code) 818-988-9444 | Position/Title/Type of Business | | Business Phone (incl. area code) |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

Uniform Residential Loan Application
Freddie Mac Form 65 7/05 (rev.6/09)

Ellie Mae, Inc.

Page 1 of 6

Fannie Mae Form 1003 7/05 (rev.6/09)

GURLA09CA_S 0917
GURLA09S (POD)
GOLDWATER 000005
07/02/2019 02:17 PM PST

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0171

ULI: 549300X08QKYUH256I8090921693167　　　　　　　　　　　　　　　　　　　　　　　　　　　　LOAN #: 909216931

| Borrower | IV. EMPLOYMENT INFORMATION | | Co-Borrower | |
|---|---|---|---|---|

**IV. EMPLOYMENT INFORMATION**

| Name & Address of Employer | ☐ Self Employed | Dates (from–to) | Name & Address of Employer | ☐ Self Employed | Dates (from–to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | | Business Phone (incl. area code) |
| Name & Address of Employer | ☐ Self Employed | Dates (from–to) | Name & Address of Employer | ☐ Self Employed | Dates (from–to) |
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | | Business Phone (incl. area code) |

**V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION**

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 20,312.50 | $ | $ 20,312.50 | Rent | $ 2,300.00 | |
| Overtime | | | | First Mortgage (P&I) | | $ 3,683.94 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | 200.16 |
| Dividends/Interest | | | | Real Estate Taxes | | 953.12 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| **Total** | $ 20,312.50 | $ | $ 20,312.50 | **Total** | $ 2,300.00 | $ 4,837.22 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income** 　　　　　*Notice:* Alimony, child support, or separate maintenance income need not be revealed if the
Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

**VI. ASSETS AND LIABILITIES**

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed ☐ Jointly ☒ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | |
| | | **LIABILITIES** Borrower (B), Co-Borrower (C), Joint (J) | **Monthly Payment & Months Left to Pay** | **Unpaid Balance** |
| *List checking and savings accounts below* | | Name and address of Company **(B)** | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union JP Morgage | | | 294.00 169 | 34,561.00 |
| | | Acct. no. 5029351313002738 | | |
| Acct. no. 831-58328 | $ 227,103.00 | Name and address of Company **(B)** | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | 236.00 172 | 31,376.00 |
| | | Acct. no. 5029351313000674 | | |
| Acct. no. | $ | Name and address of Company **(B)** | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | 60.00 97 | 46,206.00 |
| | | Acct. no. 1785658 | | |

Uniform Residential Loan Application 　　　　　　　　　　Artur Elizarov 　　　　　　　Fannie Mae Form 1003 7/05 (rev.6/09)
Freddie Mac Form 65 7/05 (rev.6/09) 　　　　　　　　　　Page 2 of 6

Ellie Mae, Inc. 　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　GURLA09_S 0817
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　GURLA09S (POD)
**GOLDWATER 000008** 07/02/2019 02:17 PM PST



Goldwater Bank, National Association

ULI: 549300X08QKYUH256I8090921693167

LOAN #: 909216931

## VI. ASSETS AND LIABILITIES (cont'd)

| | | | | | | |
|---|---|---|---|---|---|---|
| Acct. no. | $ | | Name and address of Company **(B)** | | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | | 0.00<br>101 | 8,970.00 |
| | | | Acct. no.   1785665 | | | |
| Acct. no. | $ | | Name and address of Company **(B)** | | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number & description) | $ | | | | 220.00<br>18 | 3,977.00 |
| | | | Acct. no.   8108464131 | | | |
| | | | Name and address of Company **(B)** | | $ Payment/Months | $ |
| Life insurance net cash value | $ | | | | 1,755.00<br>8 | 1,755.00 |
| Face amount: $ | | | | | | |
| **Subtotal Liquid Assets** | $ | 227,103.00 | | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ | | Acct. no.   1100163875 | | | |
| | | | Name and address of Company | | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | | *See Sch Of Liabilities | | 1,408.00 | 6,975.00 |
| Net worth of business(es) owned (attach financial statement) | $ | | | | | |
| Automobiles owned (make and year) | $ | | Acct. no. | | | |
| | | | Alimony/Child Support/Separate Maintenance Payments Owed to: | | $ | |
| Other Assets (itemize) | $ | | | | | |
| | | | Job-Related Expense (child care, union dues, etc.) | | $ | |
| | | | **Total Monthly Payments** | | $ | 2,741.00 |
| **Total Assets a.** | $ | 227,103.00 | Net Worth (a minus b) | $          94,515.00 | **Total Liabilities b.** | $          132,588.00 |

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| | Totals | $ | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

Alternate Name          Creditor Name          Account Number

| VII. DETAILS OF TRANSACTION | | | VIII. DECLARATIONS | | | | |
|---|---|---|---|---|---|---|---|
| a. Purchase Price | $ | 915,000.00 | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | **Borrower** | | **Co-Borrower** | |
| b. Alterations, improvements, repairs | | | | Yes | No | Yes | No |
| c. Land (if acquired separately) | | | a. Are there any outstanding judgments against you? | | **X** | | |
| d. Refinance (incl. debts to be paid off) | | | b. Have you been declared bankrupt within the past 7 years? | | **X** | | |
| e. Estimated prepaid items | | 7,083.89 | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | **X** | | |
| f. Estimated closing costs | | 13,211.92 | | | | | |
| g. PMI, MIP, Funding Fee | | | d. Are you a party to a lawsuit? | | **X** | | |
| h. Discount (if Borrower will pay) | | | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | | **X** | | |
| i. Total costs (add items a through h) | | 935,295.81 | (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | | | |
| j. Subordinate financing | | | | | | | |
| k. Borrower's closing costs paid by Seller | | | | | | | |

Uniform Residential Loan Application
Freddie Mac Form 65   7/05 (rev.6/09)

Ellie Mae, Inc.

Artur Elizarov
Page 3 of 6



Fannie Mae Form 1003   7/05 (rev.6/09)

GURLA09_S   0817
GURLA09S (POD)
**GOLDWATER_000001**
07/02/2019 02:17 PM PST

ULI: 549300X08QKYUH256I8090921693167

LOAN #: 909216931

| VII. DETAILS OF TRANSACTION | | VIII. DECLARATIONS | | | | |
|---|---|---|---|---|---|---|

| VII. DETAILS OF TRANSACTION | | |
|---|---|---|
| I. Other Credits (explain) | | |
| Cash Deposit on sales contract | 27,450.00 | |
| Seller Credit | 0.00 | |
| Other (Unison) | 183,000.00 | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 686,250.00 | |
| n. PMI, MIP, Funding Fee financed | | |
| o. Loan amount (add m & n) | 686,250.00 | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | 38,595.81 | |

### VIII. DECLARATIONS

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | Yes | No | Yes | No |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | ☐ | ☒ | ☐ | ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☒ | ☐ | ☐ |
| h. Is any part of the down payment borrowed? | ☐ | ☒ | ☐ | ☐ |
| i. Are you a co-maker or endorser on a note? | ☐ | ☒ | ☐ | ☐ |
| j. Are you a U.S. citizen? | ☒ | ☐ | ☐ | ☐ |
| k. Are you a permanent resident alien? | ☐ | ☒ | ☐ | ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☒ | ☐ | ☐ | ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☒ | ☐ | ☐ | ☐ |
| (1) What type of property did you own – principal residence (PR), second home (SH), or investment property (IP)? | | PR | | |
| (2) How did you hold title to the home – by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | S | | |

### IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 7/3/2019 | 14:01:38 PDT | X | |

### X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information. | | CO-BORROWER | ☐ I do not wish to furnish this information. | |
|---|---|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino | ☐ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino | ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White | | Race: | ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White | |
| Sex: | ☐ Female | ☐ Male | Sex: | ☐ Female | ☐ Male |

**To be Completed by Loan Originator:**
This information was provided:
☐ In a face-to-face interview
☐ In a telephone interview
☐ By the applicant and submitted by fax or mail
☐ By the applicant and submitted via e-mail or the Internet

| Loan Originator's Signature | | Date | 7/2/2019 | 14:22:02 PDT |
|---|---|---|---|---|
| X Gregory Hill | | | | |
| Loan Originator's Name (print or type) | Loan Originator Identifier | | Loan Originator's Phone Number (including area code) | |
| Gregory Hill | 247349 / State License # - 247349 | | | |
| Loan Origination Company's Name | Loan Origination Company Identifier | | Loan Origination Company's Address | |
| Goldwater Bank, National Association | 452955 | | 5605 112th Ste. E. # 600 Puyallup, WA 98373 | |

**Uniform Residential Loan Application**
**Freddie Mac Form 65   7/05 (rev.6/09)**

Ellie Mae, Inc.

Page 4 of 6



**Fannie Mae Form 1003   7/05 (rev.6/09)**
GURLA09DI_S   0418
GURLA09S (POD)
GOLDWATER_000008
07/02/2019 02:17 PM PST

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0174

Evaluation Only. Created with Aspose.PDF. Copyright 2002-2019 Aspose Pty Ltd.

ULI: 549300X08QKYUH256I8090921693167                                          LOAN #: 909216931

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark **B** for Borrower or **C** for Co-Borrower. | Borrower:<br>**Artur Elizarov** | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number:<br>909216931 |

**\*\*\*\* This page may be blank \*\*\*\***

Under California Civil Code 1812.30(j) **"Credit applications for the obtainment of money, goods, labor, or services shall clearly specify that the applicant, if married, may apply for a separate account."**

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X _DocuSigned by:_<br>_D5E7D3D30088414_ | 7/3/2019 \| 14:01:38 PDT | X | |

Uniform Residential Loan Application
Freddie Mac Form 65   7/05 (rev.6/09)
Ellie Mae, Inc.

Fannie Mae Form 1003   7/05 (rev.6/09)
GURLA09CSCA_S   0817
GURLA09S (POD)
07/02/2019 02:17 PM PST

GOLDWATER_000009

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0175

Case 5:21-cv-00616-JWH-SP   Document 318-4   Filed 08/25/23   Page 176 of 282   Page ID
#:9737
Goldwater Bank National Association

ULI: 549300X08QKYUH256I8090921693167
LOAN #: 909216931

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. | Borrower:<br>**Artur Elizarov** | Agency Case Number: |
| | Co-Borrower: | Lender Case Number:<br>909216931 |

### VI. ASSETS AND LIABILITIES

| Assets | Cash or Market Value | Liabilities<br>Borrower (B), Co-Borrower (C), Joint (J) | Monthly Payment &<br>Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company  (B) | $ Payment/Months<br>*(1,232.00)<br>0 | $<br>*(1,232.00) |
| Acct. No. | $ | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company  (B) | $ Payment/Months<br>0.00<br>0 | $<br>1,644.00 |
| Acct. No. | $ | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company  (B) | $ Payment/Months<br>90.00<br>18 | $<br>1,549.00 |
| Acct. No. | $ | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company  (B) | $ Payment/Months<br>33.00<br>30 | $<br>968.00 |
| Acct. No. | $ | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company  (B) | $ Payment/Months<br>25.00<br>37 | $<br>922.00 |
| Acct. No. | $ | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company  (B) | $ Payment/Months<br>28.00<br>24 | $<br>660.00 |
| Acct. No. | $ | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| Acct. No. | $ | Acct. No. | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X DocuSigned by: | 7/3/2019 \| 14:01:38 PDT  X | | |

Uniform Residential Loan Application
Freddie Mac Form 65   7/05 (rev.6/09)
Ellie Mae, Inc.
Page 6 of 6
Fannie Mae Form 1003   7/05 (rev.6/09)
GURLA09AL_S   0817



Goldwater Bank National Association
Goldwater's Rule 56 Motion - Joint Exhibit - Page 0176

ULI: 549300X08QKYUH256I8090921693167

## Demographic Information Addendum. This section asks about your ethnicity, sex and race.

### Demographic Information of Borrower

**The purpose of collecting this information** is to help ensure that all the applicants are treated fairly and that the housing needs of communities and neighborhoods are being fulfilled. For residential mortgage lending, Federal law requires that we ask applicants for their demographic information (ethnicity, sex, and race) in order to monitor our compliance with equal credit opportunity, fair housing, and home mortgage disclosure laws. You are not required to provide this information, but are encouraged to do so. You may select one or more designations for "Ethnicity" and one or more designations for "Race." **The law provides that we may not discriminate** on the basis of this information, or on whether you choose to provide it. However, if you choose not to provide the information and you have made this application in person, Federal regulations require us to note your ethnicity, sex, and race on the basis of visual observation or surname. The law also provides that we may not discriminate on the basis of age or marital status information you provide in this application. If you do not wish to provide some or all of this information, please check below.

**Ethnicity:** *Check one or more*

☐ Hispanic Or Latino
  ☐ Mexican    ☐ Puerto Rican    ☐ Cuban
  ☐ Other Hispanic or Latino - *Print origin:*

    *For example: Argentinean, Colombian, Dominican, Nicaraguan, Salvadoran, Spaniard, and so on.*

☒ Not Hispanic or Latino
☐ I do not wish to provide this information

**Sex**

☐ Female
☒ Male
☐ I do not wish to provide this information

**Race:** *Check one or more*

☐ American Indian or Alaska Native - *Print name of enrolled or principal tribe:*
☒ Asian
  ☐ Asian Indian   ☐ Chinese     ☐ Filipino
  ☐ Japanese     ☐ Korean     ☐ Vietnamese
  ☒ Other Asian - *Print Race:* Armenian
    *For example: Hmong, Laotian, Thai, Pakistani, Cambodian, and so on.*
☐ Black or African American
☐ Native Hawaiian or Other Pacific Islander
  ☐ Native Hawaiian   ☐ Guamanian or Chamorro   ☐ Samoan
  ☐ Other Pacific Islander - *Print race:*

    *For example: Fijian, Tongan, and so on.*
☐ White
☐ I do not wish to provide this information

### To Be Completed by Financial Institution (for application taken in person):

| | | |
|---|---|---|
| Was the ethnicity of the Borrower collected on the basis of visual observation or surname? | ○ NO | ○ YES |
| Was the sex of the Borrower collected on the basis of visual observation or surname? | ○ NO | ○ YES |
| Was the race of the Borrower collected on the basis of visual observation or surname? | ○ NO | ○ YES |

### The Demographic Information was provided through:

○ Face-to-Face Interview (includes Electronic Media w/ Video Component)   ○ Telephone Interview   ○ Fax or Mail   ◉ Email or Internet

**Borrower Name:** Artur Elizarov
Uniform Residential Loan Application
Freddie Mac Form 65 • Fannie Mae Form 1003
*Revised 09/2017*

GOLDWATER_000001_S 1017

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0177

# EXHIBIT F

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set
of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set
of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set
of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set
of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

## Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set
of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set
of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

## Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set
of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set
of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# Filed Under Seal

Exhibit F to Plaintiff Goldwater Bank, N.A.'s Second Set of Requests for Admission to Defendant Artur Elizarov

JPMorgan Securities Account Statements
GOLDWATER_000041 - 000100

Submitted to Goldwater Bank, N.A. by Artur Elizarov

# EXHIBIT G



## Certificate Of Completion

Envelope Id: 39275A9F330741658560615B95A967D0
Subject: 02-035523-AC // 291 W. OVERLOOK RD. // SELLER OPENING PACKAGE
Source Envelope:
Document Pages: 24
Certificate Pages: 5
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

Signatures: 10
Initials: 13

Status: Completed

Envelope Originator:
Leslie Zuniga
9440 Santa Monica Blvd, #330
Beverly Hills, CA  90210
Leslie@escrowofthewest.com
IP Address: 198.136.43.50

## Record Tracking

Status: Original
         3/1/2021 2:54:59 PM

Holder: Leslie Zuniga
         Leslie@escrowofthewest.com

Location: DocuSign

## Signer Events

| Signer Events | Signature | Timestamp |
|---|---|---|
| Artur Elizarov<br>Art@dhr.company<br>Security Level: Email, Account Authentication (None) | *Artur Elizarov*<br>5359B7CBA7B94E0...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 76.168.152.241 | Sent: 3/1/2021 2:57:19 PM<br>Viewed: 3/2/2021 11:53:17 PM<br>Signed: 3/3/2021 12:01:50 AM |

**Electronic Record and Signature Disclosure:**
    Accepted: 3/2/2021 11:53:17 PM
    ID: 79743732-1997-412a-b9ee-6dbecf9e51c6

## In Person Signer Events

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

## Editor Delivery Events

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

## Agent Delivery Events

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

## Intermediary Delivery Events

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

## Certified Delivery Events

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

## Carbon Copy Events

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| GALIT OFENGART<br>GALIT@ESCROWOFTHEWEST.COM<br>President<br>Escrow of the West<br>Security Level: Email, Account Authentication (None) | **COPIED** | Sent: 3/1/2021 2:57:20 PM |

**Electronic Record and Signature Disclosure:**
    Not Offered via DocuSign

## Witness Events

| Witness Events | Signature | Timestamp |
|---|---|---|

## Notary Events

| Notary Events | Signature | Timestamp |
|---|---|---|

## Envelope Summary Events

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 3/1/2021 2:57:20 PM |
| Certified Delivered | Security Checked | 3/2/2021 11:53:17 PM |
| Signing Complete | Security Checked | 3/3/2021 12:01:50 AM |

| Envelope Summary Events | Status | Timestamps |
| --- | --- | --- |
| Completed | Security Checked | 3/3/2021 12:01:50 AM |

| Payment Events | Status | Timestamps |
| --- | --- | --- |

**Electronic Record and Signature Disclosure**

**CONSUMER DISCLOSURE**

From time to time, Escrow of the West (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign, Inc. (DocuSign) electronic signing system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your agreement by clicking the â€I agreeâ€™ button at the bottom of this document.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after signing session and, if you elect to create a DocuSign signer account, you may access them for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. To indicate to us that you are changing your mind, you must withdraw your consent using the DocuSign â€Withdraw Consentâ€™ form on the signing page of a DocuSign envelope instead of signing it. This will indicate to us that you have withdrawn your consent to receive required notices and disclosures electronically from us and you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures

electronically from us.

**How to contact Escrow of the West:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
 To contact us by email send messages to: phil@escrowofthewest.com


**To advise Escrow of the West of your new e-mail address**

To let us know of a change in your e-mail address where we should send notices and disclosures electronically to you, you must send an email message to us at phil@escrowofthewest.com and in the body of such request you must state: your previous e-mail address, your new e-mail address.  We do not require any other information from you to change your email address..

In addition, you must notify DocuSign, Inc. to arrange for your new email address to be reflected in your DocuSign account by following the process for changing e-mail in the DocuSign system.

**To request paper copies from Escrow of the West**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an e-mail to phil@escrowofthewest.com and in the body of such request you must state your e-mail address, full name, US Postal address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Escrow of the West**

To inform us that you no longer want to receive future notices and disclosures in electronic format you may:

      i. decline to sign a document from within your DocuSign session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

      ii. send us an e-mail to phil@escrowofthewest.com and in the body of such request you must state your e-mail, full name, US Postal Address, and telephone number. We do not need any other information from you to withdraw consent..  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..


**Required hardware and software**

| Operating Systems: | Windows® 2000, Windows® XP, Windows Vista®; Mac OS® X |
|---|---|
| Browsers: | Final release versions of Internet Explorer® 6.0 or above (Windows only); Mozilla Firefox 2.0 or above (Windows and Mac); Safariâ„¢ 3.0 or above (Mac only) |
| PDF Reader: | Acrobat® or similar software may be required to view and print PDF files |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | Allow per session cookies |

** These minimum requirements are subject to change. If these requirements change, you will be asked to re-accept the disclosure. Pre-release (e.g. beta) versions of operating systems and browsers are not supported.

**Acknowledging your access and consent to receive materials electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format on the terms and conditions described above, please let us know by clicking the â€I agreeâ€™ button below.

By checking the â€I agreeâ€™ box, I confirm that:

- I can access and read this Electronic CONSENT TO ELECTRONIC RECEIPT OF ELECTRONIC CONSUMER DISCLOSURES document; and

- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and

- Until or unless I notify Escrow of the West as described above, I consent to receive from exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to me by  Escrow of the West during the course of my relationship with you.

# EXHIBIT H



## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: ABE63BCD8BEC400E879DB5786DF5D7A1 | | Status: Completed |
| Subject: 02-035523-AC // 291 W. Overlook Road //Seller Estimated Settlement Statement - S | | |
| Source Envelope: | | |
| Document Pages: 7 | Signatures: 4 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Katie Pabros |
| AutoNav: Enabled | | 9440 Santa Monica Blvd, #330 |
| EnvelopeId Stamping: Enabled | | Beverly Hills, CA  90210 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | Katie@escrowofthewest.com |
| | | IP Address: 198.136.43.50 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Katie Pabros | Location: DocuSign |
|     3/24/2021 9:19:06 AM |     Katie@escrowofthewest.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Artur Elizarov<br>artur.elizarov@gmail.com<br>Security Level: Email, Account Authentication (None) | *Artur Elizarov*<br>—907384F2578540C... | Sent: 3/24/2021 9:21:30 AM<br>Viewed: 3/24/2021 9:40:22 AM<br>Signed: 3/24/2021 9:43:12 AM |
| | Signature Adoption: Pre-selected Style<br>Using IP Address: 73.57.10.118<br>Signed using mobile | |
| **Electronic Record and Signature Disclosure:**<br>   Accepted: 3/24/2021 9:40:22 AM<br>   ID: bf4b2b08-e7b3-4d41-b2a2-41f567b0ce19 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| galit<br>galit@escrowofthewest.com<br>President<br>Escrow of the West<br>Security Level: Email, Account Authentication (None) | **COPIED** | Sent: 3/24/2021 9:21:30 AM |
| **Electronic Record and Signature Disclosure:**<br>   Not Offered via DocuSign | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 3/24/2021 9:21:30 AM |
| Certified Delivered | Security Checked | 3/24/2021 9:40:22 AM |
| Signing Complete | Security Checked | 3/24/2021 9:43:12 AM |

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Completed | Security Checked | 3/24/2021 9:43:12 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

**CONSUMER DISCLOSURE**

From time to time, Escrow of the West (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign, Inc. (DocuSign) electronic signing system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your agreement by clicking the â€˜I agreeâ€™ button at the bottom of this document.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after signing session and, if you elect to create a DocuSign signer account, you may access them for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. To indicate to us that you are changing your mind, you must withdraw your consent using the DocuSign â€˜Withdraw Consentâ€™ form on the signing page of a DocuSign envelope instead of signing it. This will indicate to us that you have withdrawn your consent to receive required notices and disclosures electronically from us and you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures

electronically from us.

**How to contact Escrow of the West:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:

 To contact us by email send messages to: phil@escrowofthewest.com


**To advise Escrow of the West of your new e-mail address**

To let us know of a change in your e-mail address where we should send notices and disclosures electronically to you, you must send an email message to us at phil@escrowofthewest.com and in the body of such request you must state: your previous e-mail address, your new e-mail address.  We do not require any other information from you to change your email address..

In addition, you must notify DocuSign, Inc. to arrange for your new email address to be reflected in your DocuSign account by following the process for changing e-mail in the DocuSign system.

**To request paper copies from Escrow of the West**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an e-mail to phil@escrowofthewest.com and in the body of such request you must state your e-mail address, full name, US Postal address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Escrow of the West**

To inform us that you no longer want to receive future notices and disclosures in electronic format you may:

> i. decline to sign a document from within your DocuSign session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;
>
> ii. send us an e-mail to phil@escrowofthewest.com and in the body of such request you must state your e-mail, full name, US Postal Address, and telephone number. We do not need any other information from you to withdraw consent..  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..


**Required hardware and software**

| Operating Systems: | Windows® 2000, Windows® XP, Windows Vista®; Mac OS® X |
|---|---|
| Browsers: | Final release versions of Internet Explorer® 6.0 or above (Windows only); Mozilla Firefox 2.0 or above (Windows and Mac); Safariâ„¢ 3.0 or above (Mac only) |
| PDF Reader: | Acrobat® or similar software may be required to view and print PDF files |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | Allow per session cookies |

** These minimum requirements are subject to change. If these requirements change, you will be asked to re-accept the disclosure. Pre-release (e.g. beta) versions of operating systems and browsers are not supported.

**Acknowledging your access and consent to receive materials electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format on the terms and conditions described above, please let us know by clicking the â€˜I agreeâ€™ button below.

By checking the â€˜I agreeâ€™ box, I confirm that:

- I can access and read this Electronic CONSENT TO ELECTRONIC RECEIPT OF ELECTRONIC CONSUMER DISCLOSURES document; and

- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and

- Until or unless I notify Escrow of the West as described above, I consent to receive from exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to me by  Escrow of the West during the course of my relationship with you.

# EXHIBIT I

DocuSign Envelope ID: 999373C7-5A58-4073-9D9D-F57DDB25A503

Loan number: _____

# Mortgage Assistance Application

If you are having mortgage payment challenges, please complete and submit this application, along with the required documentation, to [servicer name] via mail: [address], fax: [fax #], or online: [website/email address]. We will contact you within five business days to acknowledge receipt and let you know if you need to send additional information or documents.

We will use the information you provide to help us identify the assistance you may be eligible to receive. If you need help completing this application, please contact [servicer name] at [phone #].

For a list of HUD-approved housing counseling agencies that can provide foreclosure prevention information, contact one of the following federal government agencies:

- The U.S. Department of Housing and Urban Development (HUD) at (800) 569-4287 or www.hud.gov/counseling
- The Consumer Financial Protection Bureau (CFPB) at (855) 411-2372 or www.consumerfinance.gov/mortgagehelp

If you need assistance with translation or other language assistance, HUD-approved housing counseling agencies may be able to assist you. These services are provided without charge.

## Borrower Information

Borrower's name: _____Artur Elizarov_____

Social Security Number (last 4 digits): ___1042_____

E-mail address: _____aelizarov@ecivis.com_____

Primary phone number: ___323-326-7657_____  ☒ Cell  ☐ Home  ☐ Work  ☐ Other

Alternate phone number: _____  ☐ Cell  ☐ Home  ☐ Work  ☐ Other

Co-borrower's name: _____

Social Security Number (last 4 digits): _____

E-mail address: _____

Primary phone number: _____  ☐ Cell  ☐ Home  ☐ Work  ☐ Other

Alternate phone number: _____  ☐ Cell  ☐ Home  ☐ Work  ☐ Other

Preferred contact method (choose all that apply): ☐ Cell phone ☐ Home phone ☐ Work phone ☐ Email ☐ Text—checking this box indicates your consent for text messaging

Is either borrower on active duty with the military (including the National Guard and Reserves), the dependent of a borrower on active duty, or the surviving spouse of a member of the military who was on active duty at the time of death? ☐ Yes ☐ No

## Property Information

Property Address: _____291 S Overlook Road, Palm Springs CA 92264_____

Mailing address (if different from property address): _____

- The property is currently:  ☒ A primary residence  ☐ A second home  ☐ An investment property

- The property is (select all that apply):  ☒ Owner occupied  ☐ Renter occupied  ☐ Vacant

- I want to:  ☒ Keep the property  ☐ Sell the property  ☐ Transfer ownership of the property to my servicer  ☐ Undecided

Is the property listed for sale? ☐ Yes ☒ No – If yes, provide the listing agent's name and phone number—or indicate "for sale by owner" if applicable: _____

Is the property subject to condominium or homeowners' association (HOA) fees? ☐ Yes ☒ No – If yes, indicate monthly dues: $_____

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0252

DocuSign Envelope ID: 999373C7-5A58-4073-9D9D-F57DDB25A503

## Hardship Information

The hardship causing mortgage payment challenges began on approximately (date) ___02/21/2020___ and is believed to be:

- ☑ Short-term (up to 6 months)
- ☐ Long-term or permanent (greater than 6 months)
- ☐ Resolved as of (date) _____

| TYPE OF HARDSHIP (CHECK ALL THAT APPLY) | REQUIRED HARDSHIP DOCUMENTATION |
|---|---|
| ☐ Unemployment | ▪ Not required |
| ☒ Reduction in income: a hardship that has caused a decrease in your income due to circumstances outside your control (e.g., elimination of overtime, reduction in regular working hours, a reduction in base pay) | ▪ Not required |
| ☐ Increase in housing-related expenses: a hardship that has caused an increase in your housing expenses due to circumstances outside your control (e.g., uninsured losses, increased property taxes, HOA special assessment) | ▪ Not required |
| ☒ Disaster (natural or man-made) impacting the property or borrower's place of employment | ▪ Not required |
| ☐ Long-term or permanent disability, or serious illness of a borrower/co-borrower or dependent family member | ▪ Written statement from the borrower, or other documentation verifying disability or illness<br>**Note**: Detailed medical information is not required, and information from a medical provider is not required |
| ☐ Divorce or legal separation | ▪ Final divorce decree or final separation agreement **OR**<br>▪ Recorded quitclaim deed |
| ☐ Separation of borrowers unrelated by marriage, civil union, or similar domestic partnership under applicable law | ▪ Recorded quitclaim deed **OR**<br>▪ Legally binding agreement evidencing that the non-occupying borrower or co-borrower has relinquished all rights to the property |
| ☐ Death of borrower or death of either the primary or secondary wage earner | ▪ Death certificate **OR**<br>▪ Obituary or newspaper article reporting the death |
| ☐ Distant employment transfer/relocation | ▪ **For active duty service members**: Permanent Change of Station (PCS) orders or letter showing transfer.<br>▪ **For employment transfers/new employment**: Copy of signed offer letter or notice from employer showing transfer to a new location or written explanation if employer documentation not applicable, **AND**<br>▪ Documentation that reflects the amount of any relocation assistance provided (not required for those with PCS orders) |
| ☐ Other – hardship that is not covered above: | ▪ Written explanation describing the details of the hardship and any relevant documentation |

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0253

DocuSign Envelope ID: 999373C7-5A58-4073-9D9D-F57DDB25A503

## Borrower Income

Please enter all borrower income amounts in middle column.

| MONTHLY TOTAL BORROWER INCOME TYPE & AMOUNT | | REQUIRED INCOME DOCUMENTATION |
|---|---|---|
| Gross (pre-tax) wages, salaries and overtime pay, commissions, tips, and bonuses | $ 0 | ▪ Most recent pay stub and documentation of year-to-date earnings if not on pay stub **OR**<br>▪ Two most recent bank statements showing income deposit amounts |
| Self-employment income | $ 0 | ▪ Two most recent bank statements showing self-employed income deposit amounts **OR**<br>▪ Most recent signed and dated quarterly or year-to-date profit/loss statement **OR**<br>▪ Most recent complete and signed business tax return **OR**<br>▪ Most recent complete and signed individual federal income tax return |
| Unemployment benefit income | $ 1,050.00 PER WEEK | No documentation required |
| Taxable Social Security, pension, disability, death benefits, adoption assistance, housing allowance, and other public assistance | $ 0 | ▪ Two most recent bank statements showing deposit amounts **OR**<br>▪ Award letters or other documentation showing the amount and frequency of the benefits |
| Non-taxable Social Security or disability income | $ | ▪ Two most recent bank statements showing deposit amounts **OR**<br>▪ Award letters or other documentation showing the amount and frequency of the benefits |
| Rental income (rents received, less expenses other than mortgage expense) | $ | ▪ Two most recent bank statements demonstrating receipt of rent **OR**<br>▪ Two most recent deposited rent checks |
| Investment or insurance income | $ | ▪ Two most recent investment statements **OR**<br>▪ Two most recent bank statements supporting receipt of the income |
| Other sources of income not listed above (Note: Only include alimony, child support, or separate maintenance income if you choose to have it considered for repaying this loan) | $ | ▪ Two most recent bank statements showing receipt of income **OR**<br>▪ Other documentation showing the amount and frequency of the income |

## Current Borrower Assets

Exclude retirement funds such as a 401(k) or Individual Retirement Account (IRA), and college savings accounts such as a 529 plan.

| | |
|---|---|
| Checking account(s) and cash on hand | $ 3500 |
| Savings, money market funds, and Certificates of Deposit (CDs) | $ 0 |
| Stocks and bonds (non-retirement accounts) | $ |
| Other: | $ |

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0254

DocuSign Envelope ID: 999373C7-5A58-4073-9D9D-F57DDB25A503

## Borrower Certification and Agreement

1. I certify and acknowledge that all of the information in this Mortgage Assistance Application is truthful, and the hardship I identified contributed to my need for mortgage relief. Knowingly submitting false information may violate Federal and other applicable law.

2. I agree to provide my servicer with all required documents, including any additional supporting documentation as requested, and will respond in a timely manner to all servicer or authorized third party* communications.

3. I acknowledge and agree that my servicer is not obligated to offer me assistance based solely on the representations in this document or other documentation submitted in connection with my request.

4. I consent to the servicer or authorized third party* obtaining a current credit report for the borrower and co-borrower.

5. I consent to the disclosure by my servicer, authorized third party,* or any investor/guarantor of my mortgage loan(s), of any personal information collected during the mortgage assistance process and of any information about any relief I receive, to any third party that deals with my first lien or subordinate lien (if applicable) mortgage loan(s), including Fannie Mae, Freddie Mac, or any investor, insurer, guarantor, or servicer of my mortgage loan(s) or any companies that provide support services to them, for purposes permitted by applicable law. Personal information may include, but is not limited to: (a) my name, address, telephone number, (b) my Social Security number, (c) my credit score, (d) my income, and (e) my payment history and information about my account balances and activity.

6. I agree that the terms of this borrower certification and agreement will apply to any modification trial period plan, repayment plan, or forbearance plan that I may be offered based on this application.  If I receive an offer for a modification trial period plan or repayment plan, I agree that my first timely payment under the plan will serve as acceptance of the plan.

7. I consent to being contacted concerning this application for mortgage assistance at any telephone number, including mobile telephone number, or email address I have provided to the lender, servicer, or authorized third party.*

* An authorized third party may include, but is not limited to, a housing counseling agency, Housing Finance Agency (HFA) or other similar entity that is assisting me in obtaining a foreclosure prevention alternative.

Borrower signature: _Artur Elizarov_     Date: _5/20/2020_

Co-Borrower signature: _____     Date: _____

**Please submit your completed application, together with the required documentation, to [servicer name] via mail: [address], fax: [fax #], or online: [website/email address]. We will contact you within five business days to acknowledge receipt and let you know if you need to send additional information or documents.**

**We will use the information you provided to help us identify the assistance you may be eligible to receive.**

# Exhibit 7

Uniform Residential Loan Application
executed by Artur Elizarov on July 31, 2019
(Elizarov Depo. Ex. 140)

## Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____    Co-Borrower _____

### I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA   ☒ Conventional   ☐ Other (explain): | | Agency Case Number | Lender Case Number |
|---|---|---|---|---|
| | ☐ FHA   ☐ USDA/Rural Housing Service | | | 0092 16931 |

| Amount $ 686,250.00 | Interest Rate 5.375 % | No. of Months N 360 | Amortization Type: | ☐ Fixed Rate   ☐ GPM | ☐ Other (explain): ☒ ARM (type): 1Y1,0/1J |

### II. PROPERTY INFORMATION AND PURPOSE OF LOAN

Subject Property Address (street, city, state, & ZIP): 291 W. Overlook Road, Palm Springs, CA 92264-9334 County: Riverside — No. of Units 1

Legal Description of Subject Property (attach description if necessary) — Year Built 1949

| Purpose of Loan | ☒ Purchase   ☐ Construction   ☐ Other (explain): ☐ Refinance   ☐ Construction-Permanent | Property will be: ☒ Primary Residence   ☐ Secondary Residence   ☐ Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a + b) $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost $ | Amount Existing Liens $ | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made   Cost: $ |

Title will be held in what Name(s): Artur Elizarov

Manner in which Title will be held: ☒ Fee Simple ☐ Leasehold

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain):
Checking/Savings-Liaison assisted

### III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable): Artur Elizarov | | Co-Borrower's Name (include Jr. or Sr. if applicable): |

| Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) Yrs. School 16 | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) Yrs. School |

| ☐ Married ☐ Unmarried (include single, divorced, widowed) ☒ Separated | Dependents (not listed by Co-Borrower) no. 0 ages 0 | ☐ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no. ages |

| Present Address (street, city, state, ZIP): ☒ Own ☐ Rent ___ No. Yrs. | Present Address (street, city, state, ZIP): ☐ Own ☐ Rent ___ No. Yrs. |

Mailing Address, if different from Present Address _____    Mailing Address, if different from Present Address _____

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP): ☐ Own ☒ Rent 1Y 1M ___ No. Yrs. | Former Address (street, city, state, ZIP): ☐ Own ☐ Rent ___ No. Yrs. |

### IV. EMPLOYMENT INFORMATION

| | Borrower | | | Co-Borrower | |
|---|---|---|---|---|---|
| Name & Address of Employer ☐ Self Employed | Yrs. on this job 0Y 7M | Name & Address of Employer ☐ Self Employed | Yrs. on this job |
| Rite Care Hospice 14545 Ventura Blvd Ste 304 Sherman Oaks CA 91423 | Yrs. employed in this line of work/profession 15 | | Yrs. employed in this line of work/profession |
| Position/Title/Type of Business EVP Operations | Business Phone (incl. area code) 818-083-5444 | Position/Title/Type of Business | Business Phone (incl. area code) |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer ☐ Self Employed Mission 135 stratton street El Segundo, CA 90245 | Dates (from/to) 11/22/2017 08/15/2018 | Name & Address of Employer ☐ Self Employed | Dates (from/to) |
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business Chief Admin Officer | Business Phone (incl. area code) 656-647-7466 | Position/Title/Type of Business | Business Phone (incl. area code) |
| Name & Address of Employer ☐ Self Employed Cimbal / Planista 2001 colorado ave Santa Monica, CA 90454 | Dates (from/to) 05/22/2016 09/12/2017 | Name & Address of Employer ☐ Self Employed | Dates (from/to) |
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business VP | Business Phone (incl. area code) 541-749-2541 | Position/Title/Type of Business | Business Phone (incl. area code) |

** SEE PAGE 4 **

Uniform Residential Loan Application
Freddie Mac Form 65   7/05 (rev 6/09)
Ellie Mae, Inc.

Page 1 of 4

Fannie Mae Form 1003   7/05 (rev 6/09)
GURLAYCA_0410
GURLA (0.5)
07/30/2018 10:35 AM PDT



EXHIBIT
104



ULI: 549300X00QIKYUH25686090021603167

LOAN #: 903216931

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ | | $ | Rent | $ | $ |
| Overtime | | | | First Mortgage (P&I) | | |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | |
| Dividends/Interest | | | | Real Estate Taxes | | |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ | $ | $ | Total | $ | $ |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income   Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

B/C

Monthly Amount
$

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.       Completed ☐ Jointly ☑ Not Jointly

| ASSETS | Cash or Market Value |
|---|---|
| Description | |
| Cash Deposit toward purchase held by | $ |
| List checking and savings accounts below | |
| Name and address of Bank, S&L, or Credit Union | |
| Acct. no. 831-58326 | $ 200,593.04 |
| Name and address of Bank, S&L, or Credit Union | |
| Acct. no. | $ |
| Name and address of Bank, S&L, or Credit Union | |
| Acct. no. | $ |
| Name and address of Bank, S&L, or Credit Union | |
| Acct no. | $ |
| Stocks & Bonds (Company name/number & description) | $ |
| Life insurance net cash value  Face amount: $ | $ |
| Subtotal Liquid Assets | $ 200,593.04 |
| Real estate owned (enter market value from schedule of real estate owned) | $ |
| Vested interest in retirement fund | $ |
| Net worth of business(es) owned (attach financial statement) | $ |
| Automobiles owned (make and year) | $ |
| Other Assets (itemize) | $ |
| Total Assets a. | $ 200,593.04 |

Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property.

| LIABILITIES | Monthly Pmt. & Mos. Left to Pay | Unpaid Balance |
|---|---|---|
| Name and address of Company (B1) FIRSTMARK/ | $ Pmt./Mos. 415.55 / 97 | $ 40,205.00 |
| Acct. no. 1228284-28 | | |
| Name and address of Company (B1) | $ Pmt./Mos. 294.80 / 169 | $ 34,561.00 |
| Acct. no. 5029351313002736 | | |
| Name and address of Company (B1) | $ Pmt./Mos. 236.00 / 172 | $ 31,376.00 |
| Acct. no. 5029351313000674 | | |
| Name and address of Company (B1) | $ Pmt./Mos. 51.40 / 60 | $ 8,970.00 |
| Acct. no. 1785665 | | |
| Name and address of Company (B1) | $ Pmt./Mos. 320.00 / 18 | $ 3,977.00 |
| Acct. no. 8108484131 | | |
| Name and address of Company (B1) | $ Pmt./Mos. 1,755.00 / 8 | $ 1,755.00 |
| Acct. no. 1100163875 | | |
| Name and address of Company See Schedule of Liabilities | $ Pmt./Mos. 1,650.00 | $ 25,974.00 |
| Acct. no. | | |
| Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Job Related Expense (child care, union dues, etc.) | $ | |
| Total Monthly Payments | $ 3,410.05 | |
| Net Worth (a minus b) | $ 47,774.04 | Total Liabilities b. $ 152,818.00 |

---

Uniform Residential Loan Application
Freddie Mac Form 65  7/05 (rev.6/09)
Ellie Mae, Inc.

Fannie Mae Form 1003  7/05 (rev.6/09)
GURLA  0711
GURLA (CLS)
07/31/2019 10:38 AM PST

Page 2 of 4

GOLDWATER_000261

ULI: 549300X86QKYUH236M090321693167

LOAN #: 909216931

## VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale, or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | $ |
| Totals | | $ | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ 915,000.00 |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | |
| e. Estimated prepaid items | 8,810.47 |
| f. Estimated closing costs | 14,061.53 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 937,872.00 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| Cash Deposit on sales contract | 27,450.00 |
| Other (Unison) | 183,600.00 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 680,250.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 680,250.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | 41,172.00 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | | | | |
| b. Have you been declared bankrupt within the past 7 years? | | | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | | | |
| d. Are you a party to a lawsuit? | | | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | | | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | | | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | | | |
| h. Is any part of the down payment borrowed? | | | | |
| i. Are you a co-maker or endorser on a note? | | | | |
| j. Are you a U.S. citizen? | | | | |
| k. Are you a permanent resident alien? | | | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | | | | |
| m. Have you had an ownership interest in a property in the last three years? | | | | |
| (1) What type of property did you own - principal residence (PR), second home (SH), or investment property (IP)? | | | | |
| (2) How did you hold title to the home - solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et. seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable Federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 7/3/2019 | | |

### X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish this information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | | CO-BORROWER | |
|---|---|---|---|
| ☐ I do not wish to furnish this information | | ☐ I do not wish to furnish this information | |
| Ethnicity: ☐ Hispanic or Latino ☐ Not Hispanic or Latino | | Ethnicity: ☐ Hispanic or Latino ☐ Not Hispanic or Latino | |
| Race: ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White | | Race: ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White | |
| Sex: ☐ Female ☐ Male | | Sex: ☐ Female ☐ Male | |

To be Completed by Loan Originator:

This information was provided: ☐ in a face-to-face interview ☐ in a telephone interview ☐ by the applicant and submitted by fax or mail ☐ by the applicant and submitted via e-mail or the Internet

| Loan Originator's Signature | Date |
|---|---|
| X | |
| Loan Originator's Name (print or type) Gregory Hill | Loan Originator Identifier 247349 / State License #: 247349 | Loan Originator's Phone Number (including area code) |
| Loan Origination Company's Name Goldwater Bank, National Association | Loan Origination Company Identifier 452095 | Loan Origination Company's Address 5605 112th Sus. E, # 500 Puyallup, WA 98373 |

Uniform Residential Loan Application
Freddie Mac Form 65  7/05 (rev 6/09)
Ellie Mae, Inc.

Page 3 of 4

Fannie Mae Form 1003  7/05 (rev 6/09)
GURLA18CU 0516
GURLA (CLS)
07/31/2019 10:36 AM PST

GOLDWATER_000262

ULI: 549300XS8GKYUH25608000921693167

LOAN # 909210931

## CONTINUATION SHEET/RESIDENTIAL LOAN APPLICATION

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower | Borrower: Artur Elizarov | Agency Case Number: |
| | Co-Borrower: | Lender Case Number: 909210931 |

**** This page may be blank ****

FORMER ADDRESS CONTINUED

| BORROWER | CO-BORROWER |
| Gus EY 666 | |

EMPLOYMENT INFORMATION CONTINUED

SELF EMPLOYED – NO
Amazon
207 boren ave n
Seattle, WA 98109

POSITION/TITLE/TYPE OF BUS.
chief administrative officer

DATES
04/10/2017
04/21/2017
MO. INCOME

BUS. PHONE

LIABILITIES AND PLEDGED ASSETS CONTINUED

| Name and address of Company | Pmt./Mos. | Unpaid Balance |
| --- | --- | --- |
| (B1) | 52.60 /60 | 1,580.00 |
| (B1) | 90.00 /18 | 1,549.00 |
| (B1) | *1,232.00 /1 | *1,232.00 |
| (B1) | 33.00 /20 | 868.00 |
| (B1) | 25.00 /37 | 922.00 |
| (B1) | 28.00 /24 | 660.00 |
| (B1) | 199.00 /60 | 19,063.00 |

"Under California Civil Code 1812.30(j) "Credit applications for the obtainment of money, goods, labor, or services shall clearly specify that the applicant, if married, may apply for a separate account."

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et. seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
| X | 7/31/20xx | X | |

Uniform Residential Loan Application
Freddie Mac Form 65   7/05 (rev.6/09)
Ellie Mae, Inc.

Page 4 of 4

Fannie Mae Form 1003   7/05 (rev.6/09)
CURLA/ACA   0410
CURLA (CLS)
07/31/2019 10:36 AM PST

GOLDWATER_000263

# Exhibit 8

Artur Elizarov v. BMW Financial Services
N.A., LLC; 19STCV08507 Docket Report

THE SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

Español    Tiếng Việt    한국어    中文    հայերէն

Search

| Home | Online Services | Forms, Filings & Files | Self-Help | Divisions | Jury | General Info |
|------|----------------|------------------------|-----------|-----------|------|--------------|
|      | Pay Fines, Search Records... | Forms, Filing Fees... | For persons without attorneys | Civil, Criminal, Family... | Jury Duty Portal, Q&A... | Courthouses, ADA ... |

ONLINE SERVICES

# Case Access



LANGUAGE ACCESS
English ▾

PRINT    NEW SEARCH

## CASE INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**Case Number:** 19STCV08507
ELIZAROV ARTUR VS BMW FINANCIAL SERVICES NA, LLC

**Filing Courthouse:** Stanley Mosk Courthouse

**Filing Date:** 03/11/2019
**Case Type:** Other Commercial/Business Tort (not fraud/ breach of contract) (General Jurisdiction)
**Status:** Request for Dismissal - Before Trial not following ADR or more than 60 days since ADR 08/14/2019

Click here to access document images for this case
If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page

## FUTURE HEARINGS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

None

## PARTY INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

ALEKSEYEFF ILYA - Attorney for Plaintiff

ARTUR ELIZAROV - Plaintiff

BMW FINANCIAL SERVICES NA LLC - Defendant

CALEY REBECCA - Attorney for Defendant

## DOCUMENTS FILED

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**Documents Filed (Filing dates listed in descending order)**
**08/16/2019** Notice of Entry of Dismissal and Proof of Service
Filed by ELIZAROV ARTUR (Plaintiff)

**08/14/2019** Declaration (of Ilya Alekseyeff re OSC re sanctions for failure to appear)
Filed by ELIZAROV ARTUR (Plaintiff)

**08/14/2019** Request for Dismissal
Filed by ELIZAROV ARTUR (Plaintiff)

**08/08/2019** Notice (of OSC re Sanctions for Plaintiff's Counsel's Failure to Appear at the July 26, 2019 OSC re Dismissal (Settlement) and Continuance of OSC re Dismissal (Settlement))
Filed by BMW FINANCIAL SERVICES NA, LLC (Defendant)

**07/26/2019** Minute Order ( (Order to Show Cause Re: Dismissal (Settlement)))
Filed by Clerk

**07/26/2019** Stipulation and Order (Stipulation That the Court May Retain Jurisdiction to Enforce the Settlement Agreement Pursuant to CCP ¿664.6; and Order Thereon)
Filed by BMW FINANCIAL SERVICES NA, LLC (Defendant)

**05/22/2019** Order to Show Cause re: Dismissal (Settlement)
Filed by Clerk

**05/22/2019** Proof of Service (not Summons and Complaint)
Filed by ELIZAROV ARTUR (Plaintiff)

**05/22/2019** Notice of Settlement
Filed by ELIZAROV ARTUR (Plaintiff)

**05/03/2019** Answer
Filed by BMW FINANCIAL SERVICES NA, LLC (Defendant)

**04/10/2019** Proof of Personal Service
Filed by ELIZAROV ARTUR (Plaintiff)

**04/03/2019** First Amended Complaint
Filed by ELIZAROV ARTUR (Plaintiff); ELIZAROV ARTUR (Plaintiff)

**04/03/2019** Amended Complaint 1st
Filed by ELIZAROV ARTUR (Plaintiff)

**03/22/2019** Order to Show Cause (Hearing)
Filed by Clerk

**03/22/2019** Order to Show Cause Failure to File Proof of Service
Filed by Clerk

**03/22/2019** Notice of Case Management Conference
Filed by Clerk

**03/19/2019** Proof of Personal Service
Filed by ELIZAROV ARTUR (Plaintiff)

**03/13/2019** Summons (on Complaint)
Filed by ELIZAROV ARTUR (Plaintiff)

**03/11/2019** Notice of Case Assignment - Unlimited Civil Case
Filed by Clerk

**03/11/2019** Civil Case Cover Sheet
Filed by ELIZAROV ARTUR (Plaintiff)

**03/11/2019** Complaint
Filed by ELIZAROV ARTUR (Plaintiff)

## PROCEEDINGS HELD

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

### Proceedings Held (Proceeding dates listed in descending order)

**09/06/2019** at 09:00 AM in Department 16
Order to Show Cause Re: (Monetary Sanctions Against Plaintiff's Counsel for Failure to Appear at OSC hearing of 07-26-19) - **Not Held - Vacated by Court**

**09/06/2019** at 09:00 AM in Department 16
Order to Show Cause Re: Dismissal (Settlement) - **Not Held - Vacated by Court**

**07/29/2019** at 09:00 AM in Department 16
Order to Show Cause Re: (Entry of Default;) - **Not Held - Vacated by Court**

**07/29/2019** at 09:00 AM in Department 16
Order to Show Cause Re: Failure to File Proof of Service - **Not Held - Vacated by Court**

**07/29/2019** at 09:00 AM in Department 16
Case Management Conference - **Not Held - Vacated by Court**

**07/26/2019** at 09:00 AM in Department 16
Order to Show Cause Re: Dismissal (Settlement) - **Held - Continued**

# Exhibit 9

Internal Revenue Service – Notice of Federal Tax Lien as to Artur Elizarov, recorded in the Official Records of the Riverside County Recorder's Office on October 16, 2017, as Document No. 14360669

**This page is part of your document - DO NOT DISCARD**

## 20171178616




**Pages: 0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**10/16/17 AT 08:04AM**

| | |
|---|---:|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**



201710162890001

00014360669



008650662

**SEQ:
22**

DAR - Mail (Intake)



**THIS FORM IS NOT TO BE DUPLICATED**

E025385

Recording Requested By Internal Revenue Service. When recorded mail to:

INTERNAL REVENUE SERVICE
PO BOX 145595, STOP 8420G
CINCINNATI, OH 45250-5585

Document Number:14360669

Batch Number:8650662

For Optional Use by Recording Office

| Form 668 (Y)(c) | 3477 Department of the Treasury - Internal Revenue Service |
| (Rev. February 2004) | **Notice of Federal Tax Lien** |

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #7 | Serial Number |
| Lien Unit Phone: (800) 829-3903 | 280102417 |

**As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.**

Name of Taxpayer ARTUR ELIZAROV

| Residence | 11623 MORRISON ST |
| | N HOLLYWOOD, CA 91601-4346 |

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2014 | XXX-XX-1042 | 11/30/2015 | 12/30/2025 | 107787.69 |

| Place of Filing | | | | |
| | COUNTY RECORDER | | | |
| | LOS ANGELES COUNTY | | Total | $ 107787.69 |
| | NORWALK, CA 90650 | | | |

This notice was prepared and signed at _____ OAKLAND, CA _____ , on this, the ___ 21st ___ day of ___ September ___ , ___ 2017. ___

| Signature | *Joan Flach* | Title ACS SBSE | 27-00-0008 |
| for G.J. CARTER-LOUIS | | (800) 829-3903 | |

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Form 668(Y)(c) (Rev. 2-2004)
Goldwater's Rule 56 Motion - Joint Exhibit AR000266
CA990-86025X

# Exhibit 10

Internal Revenue Service - Certificate of Release of Federal Tax Lien as to Artur Elizarov, recorded in the Official Records of the Riverside County Recorder's Office on January 6, 2020, as Document No. 17687458



**This page is part of your document - DO NOT DISCARD**



## 20200012205



**Pages: 0002**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**01/06/20 AT 09:58AM**

| | |
|---|---|
| FEES: | 15.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 15.00 |



**L E A D S H E E T**



202001062870015

00017687458



010406584

**SEQ:
34**

DAR - Mail (Intake)



**THIS FORM IS NOT TO BE DUPLICATED**

*E625091*

Recording Requested By Internal Revenue Service. When recorded mail to:

INTERNAL REVENUE SERVICE
PO BOX 145595, STOP 8420G
CINCINNATI, OH 45250-5585

COURT RECORDING INFORMATION:
Liber
n/a
Page
n/a
UCC No.
n/a
Serial No.
20171178616

17687458



Batch Number: 10406584

For Use by Recording Office

| **Form 668 (Z)**<br>(Rev. 10-2000) | - - * - -<br>1833 | Department of the Treasury - Internal Revenue Service<br>**Certificate of Release of Federal Tax Lien** |
|---|---|---|

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #7<br>Lien Unit Phone: (800) 913-6050 | Serial Number<br>280102417 |
|---|---|

I certify that the following-named taxpayer, under the requirements of section 6325 (a) of the Internal Revenue Code has satisfied the taxes listed below and all statutory additions. Therefore, the lien provided by Code section 6321 for these taxes and additions has been released. The proper officer in the office where the notice of internal revenue tax lien was filed on _October 16, 2017_ is authorized to note the books to show the release of this lien for these taxes and additions.

Name of Taxpayer   ARTUR ELIZAROV

Residence        11623 MORRISON ST
                 N HOLLYWOOD, CA 91601-4346

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2014 | XXX-XX-1042 | 11/30/2015 | 12/30/2025 | 107787.69 |
| ********* | ************ | ************ | ************ | ************ | ************** |

| Place of Filing | | |
|---|---|---|
| COUNTY RECORDER<br>LOS ANGELES COUNTY<br>NORWALK, CA 90650 | Total | $   107787.69 |

This notice was prepared and signed at _____OAKLAND, CA_____ , on this, the ___18th___ day of _December_ , _2019_ .

| Signature | Title |
|---|---|
| *Elwin Dean Curry* | Operations Manager,<br>Centralized Lien Operation |

**(NOTE:** Certificate of officer authorized by law to take acknowledgments is not essential to the validity of Certificate of Release of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

**Part 1 - RECORDING OFFICE**

Form **668 (Z)** (Rev. 10-2000)
CAT. NO 600261

# Exhibit 11

Declaration of Vartan Akopyan in Opposition to Goldwater Bank's Motion to Compel Compliance with a Subpoena Duces Tecum to Non-Party Rite Care Hospice, Inc. (ECF NO. 233-2)

ILYA ALEKSEYEFF [CA 242462]
    ilya@loia.legal
LOIA, INC. (APLC)
727 W 7th St PH 1-13
Los Angeles, CA 90017
Tel: (213)537-4592

Attorney for Rite Care Hospice, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GOLDWATER BANK, NA**, | **5:21-cv-616-JWH-SPx** |
| *Plaintiff,* | **DECLARATION OF VARTAN AKOPYAN IN OPPOSITION TO GOLDWATER BANK'S MOTION TO COMPEL COMPLIANCE WITH A SUBPOENA *DUCES TECUM* TO NON-PARTY RITE CARE HOSPICE, INC.** |
| **vs.** | |
| **ARTUR ELIZAROV, ET AL.**, | |
| *Defendant.* | |
| **RITE CARE HOSPICE, INC.**, | Date: 12/13/2022 |
| *Non-party witness.* | Time: 10:00 am |
| | Court: Hon. Sheri Pym |

**I**

1. My name is Vartan Akopyan.

2. I am the Chief Executive Officer of Rite Care Hospice, Inc.

**II**

3. I reviewed Page ID # 3595, which plaintiff Goldwater Bank, NA filed with this court in the above-entitled action on November 14, 2022.

4. The document appears to be a declaration of Daniel Benavides.

1

DECLARATION OF VARTAN AKOPYAN IN OPPOSITION TO GOLDWATER BANK'S MOTION TO COMPEL COMPLIANCE WITH A SUBPOENA *DUCES TECUM* TO NON-PARTY RITE CARE HOSPICE, INC.

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0271

5.     In his declaration, Benavides alleged that he served "Vartan Akopyan," the registered agent for Rite Care Hospice, Inc. with a "summons."

6.     Although Benavides dated the declaration on August 8, 2022, Benavides did not state the date, time, or location of the alleged service.

7.     I did not personally receive any documents, including a "summons," relating to this case at any time or at any place in the month of August 2022.

8.     If Benavides delivered a "summons" (or some other document) to Rite Care Hospice, Inc.'s offices, I employ at least three individuals who match the description of the person served: "a black-haired Middle Eastern male contact 45-55 years of age, 5'8"-5'10" tall and weighing 160-180 lbs with an accent."

9.     None of these employees reported receiving any documents on my behalf at any time in the month of August.

10.     The first time I learned that Goldwater allegedly served my company, Rite Care Hospice, Inc., with a subpoena was on September 27, 2022, when attorney Ilya Alekseyeff asked whether my company would oppose Goldwater Bank's motion to compel compliance with the subpoena and requested the contact information for my company's attorney, at which point I retained Alekseyeff to oppose that earlier motion.

### III

11.     Today, I reviewed Page ID # 4291, which alleged that on November 14, 2022, "Sean C. Wagner" caused "Plaintiff's Notice of Motion and Motion to Compel" to be served on me on November 14, 2022.

12.     Today, I also reviewed Page ID 4298, which alleged that on November 14, 2022, "Sean C. Wagner" caused "MEMORANDUM OF POINTS AND AUTHORITIES ON PLAINTIFF'S MOTION TO COMPEL Subpoena *Duces Tecum* Responses From Non-Party Rite Care Hospice, Inc." to be served on me via personal service.

13.     I did not personally receive any documents relating to this case on

2

DECLARATION OF VARTAN AKOPYAN IN OPPOSITION TO GOLDWATER BANK'S MOTION TO COMPEL COMPLIANCE WITH A SUBPOENA *DUCES TECUM* TO NON-PARTY RITE CARE HOSPICE, INC.

1    November 14, 2022, from any person.

2                              # # #

3         I declare under penalty of perjury under the laws of the United States that

4    the foregoing is true and correct and that I executed this declaration on November

5    19, 2022.

6

7

8

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                               3

DECLARATION OF VARTAN AKOPYAN IN OPPOSITION TO GOLDWATER BANK'S MOTION TO COMPEL COMPLIANCE WITH A SUBPOENA *DUCES TECUM TO* NON-PARTY RITE CARE HOSPICE, INC

Goldwater's Rule 56 Motion - Joint Exhibit - Page 0273

# Exhibit 12

Email from Artur Elizarov to Greg Hill
transmitting Letter of Explanation from Ilya
Alekseyeff, dated July 9, 2019
(GOLDWATER_002067-002068)

| From: | Artur Elizarov <art@dhr.house> |
|---|---|
| Sent: | Tuesday, July 9, 2019 8:54 PM |
| To: | Gregory Hill |
| Subject: | Rent Free Letter |
| Attachments: | LETTER.docx.pdf; 828 Westmount Lease and Disclosures .pdf |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Thank you.

Sincerely,

*Artur Elizarov*, Broker
(BRE # 01954357)
Tel.323.326.7657

1

July 9, 2019


Ilya Alekseyeff
828 Westmount Drive
West Hollywood, CA 90069
323-793-6342


**RE: Artur Elizarov**


To Whom It May Concern:


Mr. Artur Elizarov moved in with me (Mr. Ilya Alekesyeff his domestic partner)  on March 15,2019.

Furthermore, Mr. Elizarov has not paid any rent since March 15, 2019 and will continue to live with rent free indefinitely.

Should you have any further questions, please fee free to contact me at the number listed above.


Sincerely,

*Ilya Alekseyeff*

Ilya Alekesyeff, Esq.

# Exhibit 13

March 10, 2021 Payment Reminder to Artur
Elizarov (WESTSTAR_0326-0327)

March 10, 2021

| | | |
|---|---|---|
| **Loan #:** | | 909216931 |
| **Borrower:** | | ARTUR ELIZAROV |
| **Property Address:** | | 291 W. Overlook Road |

ARTUR ELIZAROV
828 WESTMOUNT DRIVE
WEST HOLLYWOOD, CA 90069

Dear Customer:

Thank you for giving us the opportunity to service your account.  This letter is to serve as a friendly reminder that your payment has not been received.

If you feel this information is in error, please write to Weststar Mortgage Corporation, P.O. Box 25400 Albuquerque, NM 87125.  Please include any supporting documentation you may wish to have us review.  We will respond to your request within 30 days of receipt of your correspondence.  Otherwise, kindly mail your remittance today and accept our thanks for bringing your account up to date.

As of today, the following amounts need to be paid to bring your account current. Other charges may accrue between now and the time you make your payment.

| | | |
|---|---|---|
| 04/01/2020 | Regular Payment | 4,944.11 |
| 05/01/2020 | Regular Payment | 4,944.11 |
| 06/01/2020 | Regular Payment | 4,944.11 |
| 07/01/2020 | Regular Payment | 4,944.11 |
| 08/01/2020 | Regular Payment | 4,944.11 |
| 09/01/2020 | Regular Payment | 4,944.11 |
| 10/01/2020 | Regular Payment | 4,944.11 |
| 11/01/2020 | Regular Payment | 4,944.11 |
| 12/01/2020 | Regular Payment | 4,944.11 |
| 01/01/2021 | Regular Payment | 4,944.11 |
| 02/01/2021 | Regular Payment | 4,944.11 |
| 03/01/2021 | Regular Payment | 4,944.11 |
| 04/17/2020 | Contract Late Fee | 192.14 |
| 05/17/2020 | Contract Late Fee | 192.14 |
| 06/17/2020 | Contract Late Fee | 192.14 |
| 07/17/2020 | Contract Late Fee | 192.14 |
| 08/17/2020 | Contract Late Fee | 192.14 |
| 09/17/2020 | Contract Late Fee | 192.14 |
| 10/17/2020 | Contract Late Fee | 192.14 |
| 11/17/2020 | Contract Late Fee | 192.14 |
| 12/17/2020 | Contract Late Fee | 192.14 |
| 01/17/2021 | Contract Late Fee | 192.14 |
| 02/17/2021 | Contract Late Fee | 192.14 |
| | | 61,442.86 |

Weststar Mortgage Corporation desires to work with you to preserve homeownership.  You can seek assistance with household budgeting at no charge from HUD-approved housing counseling agencies by calling 1-800-569-4287 (TDD# 800-877-8339) or visit www.hud.gov.  Also visit Fannie Mae's

B - REG

Know Your Options website at [www.knowyouroptions.com](http://www.knowyouroptions.com) for additional information. Contact HOPE NOW, toll-free at (888) 995-HOPE (4673) for potential benefits in housing counseling.

**Pursuant to the Fair Debt Collection Practices Act, you are advised that this firm is deemed to be a debt collector attempting to collect a debt and any information obtained will be used for that purpose.  If you are in bankruptcy or this debt has been discharged in bankruptcy, the collection action described in this notice shall be against the real property that secures the debt and not against you personally.**

Sincerely,
Weststar Mortgage Corporation
Home Retention Department
(800) 640-0635  Option #5

B – REG

# Exhibit 14

## Loan Payment History
## (GOLDWATER_000872, WESTSTAR_0001)

**Payment History**      **909-21693-1 Artur Elizarov**

| Pmnt Date | Due Date | Pmnt Type | Payment Amount | M sc | Late Fee | Buyer Fee | Se er Fee | Pr nc pa | Interest | Accrued Interest | Ba ance | No Days | Prev Lates | Check Number | P & I Tota | New Lates | Lates Pa d | Late Ba |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | **2019** | | | | | | | | | | |
| 08/12/19 | 09/01/19 | MS | 7 032 32 | 7 032 32 | | | | | | | 686 250 00 | 30 | | 40684 | | | | |
| 09/20/19 | 09/01/19 | 1X | 4 944 11 | 1 101 31 | | | | 768 97 | 3 073 83 | | 685 481 03 | 30 | | 6609002 | 3 842 80 | | | |
| 10/22/19 | 10/01/19 | 1X | 4 944 11 | 1 101 31 | | | | 772 42 | 3 070 38 | | 684 708 61 | 30 | | 1139146 | 3 842 80 | 192 14 | | 192 14 |
| 11/25/19 | 11/01/19 | 1X | 4 944 11 | 1 101 31 | | | | 775 88 | 3 066 92 | | 683 932 73 | 30 | 192 14 | 5283385 | 3 842 80 | 192 14 | | 384 28 |
| | | | 21 864 65 | 10 336 25 | | | | 2 317 27 | 9 211 13 | | | | | | 11 528 40 | | | |
| | | | | | | | | **2020** | | | | | | | | | | |
| 03/23/20 | 12/01/19 | 3X | 16 000 00 | 3 303 93 | | | | 3 516 21 | 9 179 86 | | 680 416 52 | 90 | 384 28 | 1270508 | 12 696 07 | | | 384 28 |
| | | | 16 000 00 | 3 303 93 | | | | 3 516 21 | 9 179 86 | | | | | | 12 696 07 | | | |

Page    1    Monday  July 13  2020

9 51 28 AM    nterest Rate              Payment Frequency  Monthly                        Printed by

## Payment History    909-21693-1 Artur Elizarov

| Pmnt Date | Due Date | Pmnt Type | Payment Amount | Misc | Late Fee | Buyer Fee | Seller Fee | Principal | Interest | Accrued Interest | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **2020** | | | | | | | | | | | |
| 06/05/20 | 03/01/20 | 1X | 5,000.00 | 1,101.31 | | | | 850.99 | 3,047.70 | | 679,565.53 |
| | | | 5,000.00 | 1,101.31 | | | | 850.99 | 3,047.70 | | |

Page   1          Monday, March 8, 2021          9:23:24 AM          Interest Rate : 5.375          Payment Frequency : Monthly