ILYA ALEKSEYEFF [CA 242462]
ilya@loia.legal
LOIA, INC. (APLC)
727 W 7th St PH 1-13
Los Angeles, CA 90017
Tel: (213)537-4592

Attorney for Artur Elizarov
Defendant *in pro per*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GOLDWATER BANK, NA**, *Plaintiff,* **vs.** **ARTUR ELIZAROV, ET AL.**, *Defendant.* | **5:21-cv-616-JWH-SPx** DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS OPPOSING GOLDWATER BANK'S MOTION FOR SUMMARY JUDGMENT Date: 09/29/2023 Time: 9:00 AM Court: Judge Holcomb, Ctrm 9D |

Although certainly made with the view toward efficiency, regrettably the court's choice of Microsoft Excel as the depository of the facts, supporting evidence, and responses was not the best choice for the task. Although Excel cells may *store* much information, Excel only display a *portion* of the stored information. Accordingly, to view the entire contents of the cell, the user must expand the formula bar at the top of the application, click on the particular cell to

be examined, and then read the text in the formula bar, using then scroll errors when necessary to see additional text:



Because of this limitation, the court risks overlooking some of the defendants' objections, most of which did not fit in the cells' visible area. And while the defendants marked the cell with more text than visible in the cell with ***OVERFLOW TEXT***, defendants also wanted to make certain that the court considered every of their many objections in ruling on the motion without inadvertently overlooking any.

Therefore, in addition to the Excel sheet, which plaintiff provided to the court, defendants also submit this separate statement of disputed facts in the format contemplated by the Local Rules. (For the court's convenience, this document is bookmarked by each individual fact in dispute.)

Dated: 08/26/2023                    LOIA, INC.

ILYA ALEKSEYEFF
Attorney for Artur Elizarov
Defendant *in pro per*

| **Statement of Fact** | **Defendants' Response** |
|---|---|
| 4.  In order to obtain the Goldwater Loan, Elizarov executed an initial loan application on July 3, 2019 ("Initial Application").<br><br>*Evidence*<br><br>Joint Exhibit Part A at pages 23-28 (Artur Elizarov's Initial Loan Application)<br><br>Joint Exhibit Part A at 36:2-7, 36:24-37:12 (Excerpts from the Deposition Transcript of Artur Elizarov)<br><br>Joint Exhibit Part A at 84:18-85:24 (Excerpts from the Deposition Transcript of Cory Bearden (Bearden Depo. Ex. 102).<br><br>Joint Exhibit Part A at pages 113-114, 171-177 (Goldwater's Second Set of Requests for | **DISPUTED.**<br><br>**Exhibit 3 (loan application) and 43 (emails) are unauthenticated**.<br><br>"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  To be admissible, evidence must be properly authenticated.  Fed.R.Evid. 901.  Therefore, a document submitted for summary judgment must be authenticated.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989).  Merely attaching a document to a declaration is insufficient. *United States v. Dibbl*e, 429 F.2d 598, 602 (9th Cir. 1970).   "A document *authenticated through personal knowledge* must be attached to an affidavit, and the affiant must be a competent '"witness who wrote [the document], signed it, used it, or saw others do so.'"" *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics, citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1). |

Fact No. 4

| | |
|---|---|
| Admission to Elizarov, Nos. 41-43, Ex. E).<br><br>Joint Exhibit Part C at page 516 (Email correspondence between Goldwater and Elizarov wherein Goldwater directs Elizarov how to complete the initial loan application online.) | The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case. Joint Exhibits Part D at p. 864:9-11 (standing order).  Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward.  Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)<br><br>Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are what Goldwater claims they are, *to wit:* initial loan application.<br><br>Therefore, the evidence is inadmissible.<br><br>**Signature on Exhibit 3 is not authenticated.**<br><br>The document appears to have an electronic signature. To rely on Elizarov's digital |

Fact No. 4

signature, Goldwater had to offer evidence that Elizarov had agreed to transact with Goldwater electronically.  Cal. Civ. Code, s. 1633.5, subd. (b); *J.B.B. Inv. Partners, Ltd. v. Fair*, 182 Cal. Rptr. 3d 154, 165-166 (Cal. Ct. App. 2014).  Here, Goldwater has presented no evidence of such an agreement, and Elizarov denied ever agreeing to transact with Goldwater electronically. Joint Exhibits Part E at p. 1319:16-17 (Defense Exhibit BBB, Elizarov decl).

Therefore, to the extent Goldwater claims the electronic signature to be Elizarov's, the signature is invalid.

Furthermore, to rely on that signature, Goldwater had to introduce evidence that it was in fact Elizarov who signed that document.  Cal. Civ. Code, s. 1633.9, subd. (a). Once Elizarov stated that he could not recall signing the document**,** Joint Exhibits Part D at p. 951:9-953:7, 955:1-8 (Exhibit M, Elizarov depo excerpt), Part E at p. 1319:14-15 (Defense Exhibit BBB, Elizarov decl), the burden shifted to Goldwater to authenticate the signature.  *Ruiz v. Moss Bros. Auto Group, Inc*., 232 Cal.App.4th 836, 846 (Cal.

Fact No. 4

Ct. App. 2014); *Nordeman v. Dish Network LLC*, 525 F. Supp. 3d 1080 (N.D. Cal. 2021) (citing *Ruiz*).  To do that, Goldwater had to explain, by admissible evidence, how Goldwater ascertained that the signature was "the act of" Elizarov. *Ruiz, supra*, at p. 844. Here, Goldwater has offered no such evidence.

**Goldwater's testimony is inadmissible.**

"It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment."  *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Rule 32 governs the admissibility of deposition transcripts. Under this rule, deposition is admissible only "to the extent it would be admissib le under the Federal Rules of Evidence if the deponent were present and testifying… ."  Fed.R.Civ.P. 32(a)(1)(B). Evidence Rule 602, in turn, requires testimony to be based on personal knowledge.  Fed.R.Evid. 602.  *See also Carmen v. San Francisco Unified School Dist*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("Federal Rule of Civil Procedure

Fact No. 4

32(a) makes deposition testimony usable in motion proceedings 'so far as admissible under the rules of evidence,' and Federal Rule of Evidence 602 prevents a witness from testifying on a matter 'unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.'); *Samuels v. Doctors Hospital, Inc.*, 588 F.2d 485, 487 n.2 (5th Cir. 1979) ("The requirement of Rule 56(e) that affidavit testimony be competent and admissible evidence applies with equal force to deposition testimony.  As an exception to this rule, "[a]n *adverse party* may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)."  Fed.R.Civ.P. 32(a)(3), italics added.  By contrast, the rules do not permit the corporate deponent to use *its own self-serving hearsay-based testimony* to prove the necessary facts.  *Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, 907-08 (5th Cir. 2010) (although "[rule] 30(b)(6) allows corporate representatives to testify to matters within the corporation's knowledge during deposition, and Rule 32(a)(3) permits an adverse party to use that

**Fact No. 4**

deposition testimony during trial...a corporate representative may not testify to matters out-side his own personal knowledge 'to the extent that information [is] hearsay not falling within one of the authorized exceptions.'")

Here, Bearden testified under Fed.R.Civ.P. 30(b)(6) as Goldwater's designated representative. Joint Exhibits Part D at p. 958:17:20 (Exhibit N, Bearden depo excerpt), Part D at p. 960:2-14 (Alekseyeff decl. re Exhibit N).  Bearden was not involved in Elizarov's loan transaction and, therefore, lacks personal knowledge to testify to these matters.  Joint Exhibits Part D at p. 963:25-964:6 (Goldwater depo, Bearden, excerpt).

Accordingly, while *defendants* may rely on Bearden's testimony because it is binding on Goldwater, *Snapp v. United Transp. Union*, 889 F.3d 1088, 1104 (9th Cir. 2018) ("an organization's deposition testimony is binding in the sense that whatever its deponent says can be used against the organization"), Goldwater may not rely on Bearden's testimony to establish its facts.

Therefore, the proposed testimony is inadmissible.

**If admissible, Goldwater's deposition does not support the fact stated.**

Although Bearden testified about *some* Uniform Loan Application, which was marked as Exhibit 102 at the deposition, Joint Exhibits Part A at p. 84:18-85:24, Goldwater offered no evidence that "Exhibit 102," which Bearden reviewed and testified about at the deposition, was the same document as Goldwater's Exhibit 3. *See e.g.,* Joint Exhibits Part D at p. 990:2-19 (Alekseyeff decl. linking a deposition exhibit to the motion exhibit).

**Elizarov's deposition does not support this fact.**

In his deposition, Elizarov stated that he provided information to Gregory Hill to include in the application. However, Elizarov did not testify that he signed any application. Nor did Goldwater connect Elizarov's reported testimony to any specific exhibit submitted to this court for review.

Fact No. 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit 6 (requests for admission) does not support this fact.**

First, this exhibit did not include any answers, including an answer *admitting* the identified requests. This document only included questions. Second, if Goldwater asserts that Elizarov automatically admitted these requests by his failure to provide a timely answer, Fed.R.Civ. P. 36(a)(3) (failure to respond within 30 days is an automatic admission), Goldwater offered no evidence to this court that Elizarov did not respond to this request.

**Elizarov disputes this fact.**

Elizarov did not fill out any Initial Loan application. He provided information to Gregory Hill by phone, text, email and over the Internet. Elizarov had not seen the document in Exhibit 3 until Goldwater Bank filed this action. Joint Exhibits Part E at p. 1318:24-1319:15 (Defense Exhibit BBB, Elizarov decl).

Fact No. 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| 6. The Initial Application states that Mr. Elizarov is "Unmarried (include single, divorced, widowed" rather than "Married (include registered domestic partners)." | **DISPUTED.** |

6. The Initial Application states that Mr. Elizarov is "Unmarried (include single, divorced, widowed" rather than "Married (include registered domestic partners)."

*Evidence.*

Joint Exhibit Part A at pages 23-28 (Artur Elizarov's Initial Loan Application) (Elizarov Depo. Ex. 102, Bearde Depo. Ex. 102);

Joint Exhibit Part A at 36:2-7, 36:24-37:12 (Excerpts from the Deposition Transcript of Artur Elizarov)

Joint Exhibit Part A at 84:18-85:24 (Excerpts from the Deposition Transcript of Cory Bearden)

Joint Exhibit Part A at pages 113-114, 171-177 (Goldwater's Second Set of Requests for Admission to Elizarov, Nos. 41-

**DISPUTED.**

**Elizarov's and Hill's testimony does not support this fact.**

In the cited parts of his deposition, Elizarov discussed providing information to "Mr. Hill" but did not state that he included any information in any application. Furthermore, both Elizarov and Bearden referred to a document that was marked at the deposition as "Exhibit 102," Goldwater has not provided that exhibit to the court nor presented any testimony that its Exhibit 3 was the same as "Exhibit 102" that was presented to Elizarov and Bearden at their respective depositions. *See e.g.,* Joint Exhibits Part D at p. 990:2-19 (Alekseyeff decl linking deposition exhibit to motion exhibit).

Therefore, without looking at the exhibit itself, which Goldwater has not provided, the court cannot put Elizarov's and Bearden's testimony in proper context.

Finally, when asked in detail about "Exhibit 102" at his deposition, Elizarov testified that he did not recognize the document and did

| | |
|---|---|
| 1 | 43, Ex. E). |
| 2 | |
| 3 | Joint Exhibit Part C at page 516 |
| 4 | (Email correspondence between |
| 5 | Goldwater and Elizarov wherein |
| 6 | Goldwater directs Elizarov how to |
| 7 | complete the initial loan |
| 8 | application online.) |

not recall signing the document. Joint Exhibits Part D at p. 951:9-953:7 (Defense Exhibit M, Elizarov Depo), Part D at p. 955:2-13 (Alekseyeff decl re Exhibit M).

**Exhibit 3 is unauthenticated.**

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  To be admissible, evidence must be properly authenticated.  Fed.R.Evid. 901.  Therefore, a document submitted for summary judgment must be authenticated.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989).  Merely attaching a document to a declaration is insufficient. *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970).   "A document *authenticated through personal knowledge* must be attached to an affidavit, and the affiant must be a competent '"witness who wrote [the document], signed it, used it, or saw others do so."'" *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics, citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1).

Fact No. 6

1

2   The court alerted the parties about the need to

3   authenticate documents and referred the

4   parties to the *Orr v. Bank of America* case.

5   Joint Exhibits Part D at p. 864:9-11 (standing

6   order).  Furthermore, after Goldwater filed

7   unauthenticated documents as exhibits, on

8   May 5, 2013, the court explicitly admonished

9   Goldwater to authenticate its exhibits moving

10   forward.  Joint Exhibits Part D at p. 893-894

11   (May 5, 20-13, minute order), Part D at p.

12   895:2-10 (Alekseyeff decl.)

13

14   Here, Goldwater proposed certain documents

15   as exhibits but has cited *no declaration* by a

16   qualified witness (i.e., "who wrote [the

17   document], signed it, used it, or saw others do

18   so," *Las Vegas Sands, supra,* at p. 774 fn. 8)

19   to support a finding that the documents are

20   what Goldwater claims they are, *to wit:*

21   Initial loan application.

22

23   **Signature on Exhibit 3 is not**

24   **authenticated.**

25

26   The document appears to have an electronic

27   signature. To rely on Elizarov's digital

28   signature, Goldwater had to offer evidence

that Elizarov had agreed to transact with Goldwater electronically.  Cal. Civ. Code, s. 1633.5, subd. (b); *J.B.B. Inv. Partners, Ltd. v. Fair*, 182 Cal. Rptr. 3d 154, 165-166 (Cal. Ct. App. 2014).  Here, Goldwater has presented no evidence of such an agreement, and Elizarov denied ever agreeing to transact with Goldwater electronically. Joint Exhibits Part E at p. 1319:16-17 (Defense Exhibit BBB, Elizarov decl). Therefore, to the extent Goldwater claims the electronic signature to be Elizarov's, the signature is invalid.

Furthermore, to rely on that signature, Goldwater had to introduce evidence that it was in fact Elizarov who signed that document.  Cal. Civ. Code, s. 1633.9, subd. (a). Once Elizarov stated that he could not recall signing the document**,** Joint Exhibits Part D at p. 951:9-953:7 (Exhibit M, Elizarov depo excerpt), Part D at p. 955:1-8 (Alekseyeff decl re Exhibit M), the burden shifted to Goldwater to authenticate the signature.  *Ruiz v. Moss Bros. Auto Group, Inc*., 232 Cal.App.4th 836, 846 (Cal. Ct. App. 2014); *Nordeman v. Dish Network LLC*, 525 F. Supp. 3d 1080 (N.D. Cal. 2021) (citing *Ruiz*).  To do that, Goldwater had to explain,

Fact No. 6

by admissible evidence, how Goldwater ascertained that the signature was "the act of" Elizarov. *Ruiz, supra*, at p. 844. Here, Goldwater has offered no such evidence.

**Goldwater's deposition is not admissible**.

"It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Rule 32 governs the admissibility of deposition transcripts. Under this rule, deposition is admissible only "to the extent it would be admissib le under the Federal Rules of Evidence if the deponent were present and testifying… ." Fed.R.Civ.P. 32(a)(1)(B). Evidence Rule 602, in turn, requires testimony to be based on personal knowledge. Fed.R.Evid. 602. *See also Carmen v. San Francisco Unified School Dist*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("Federal Rule of Civil Procedure 32(a) makes deposition testimony usable in motion proceedings 'so far as admissible under the rules of evidence,' and Federal Rule of Evidence 602 prevents a witness from

testifying on a matter 'unless evidence is
introduced sufficient to support a finding that
the witness has personal knowledge of the
matter.'); *Samuels v. Doctors Hospital, Inc.*,
588 F.2d 485, 487 n.2 (5th Cir. 1979) ("The
requirement of Rule 56(e) that affidavit
testimony be competent and admissible
evidence applies with equal force to
deposition testimony.  As an exception to this
rule, "[a]n *adverse party* may use for any
purpose the deposition of a party or anyone
who, when deposed, was the party's officer,
director, managing agent, or designee under
Rule 30(b)(6) or 31(a)(4)."  Fed.R.Civ.P.
32(a)(3).  By contrast, the rules do not permit
the corporate deponent to use *its own self-
serving hearsay-based testimony* to prove the
necessary facts.  *Union Pump Co. v.
Centrifugal Tech. Inc.*, 404 F. App'x 899, 907-
08 (5th Cir. 2010) (although "[rule] 30(b)(6)
allows corporate representatives to testify to
matters within the corporation's knowledge
during deposition, and Rule 32(a)(3) permits
an adverse party to use that deposition
testimony during trial...a corporate
representative may not testify to matters out-
side his own personal knowledge 'to the
extent that information [is] hearsay not

DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS

Fact No. 6

falling within one of the authorized exceptions.'")

Here, Bearden testified under Fed.R.Civ.P. 30(b)(6) as Goldwater's designated representative. Joint Exhibits Part D at p. 958:17:20 (Exhibit N, Bearden depo excerpt), Part D at p. 960:2-14 (Alekseyeff decl. re Exhibit N.  Bearden was not involved in Elizarov's loan transaction and, therefore, lacks personal knowledge to testify to these matters.  Joint Exhibits Part D at p. 963:25-964:6 (Goldwater depo, Bearden, excerpt).

Accordingly, while *defendants* may rely on Bearden's testimony because it is binding on Goldwater, *Snapp v. United Transp. Union*, 889 F.3d 1088, 1104 (9th Cir. 2018) ("an organization's deposition testimony is binding in the sense that whatever its deponent says can be used against the organization"), Goldwater may not rely on Bearden's testimony to establish its facts.

Therefore, the proposed testimony is inadmissible.

**Exhibit 6 (requests for admission) does not support this fact**.

First, this exhibit did not include any answers; the exhibit includes only unanswered questions. Therefore, this document does not show that Elizarov admitted any of these requests. Second, if Goldwater asserts that Elizarov automatically admitted these requests by his failure to provide a timely answer, Fed.R.Civ. P. 36(a)(3) (failure to respond within 30 days is an automatic admission), Goldwater cited no evidence to this court that Elizarov did not respond to this request.

**Exhibit 43 (email chain) is unauthenticated.**

Goldwater has cited no testimony by a qualified witness to support the find that the document is what Goldwater claims it is, *to wit:* email correspondence.

**Elizarov disputes this fact.**

Fact No. 6

| | |
|---|---|
| | Elizarov did not fill out any Initial Loan application. He provided information to Gregory Hill by phone, text, email and over the Internet. Elizarov had not seen the document in Exhibit 3 until Goldwater Bank filed this action. Joint Exhibits Part E at p. 1318:24-1319:15 (Defense Exhibit BBB, Elizarov decl). |
| 9. In the Initial Application Mr. Elizarov answered "No" in response to the question, "Are you a party to a lawsuit?"<br><br>*Evidence*<br><br>Joint Exhibit Part A at pages 23-28 (Artur Elizarov's Initial Loan Application) (Elizarov Depo. Ex. 102, Bearden Depo. Ex. 102);<br><br>Joint Exhibit Part A at 36:2-7, 36:24-37:12 (Excerpts from the Deposition Transcript of Artur Elizarov)<br><br>Joint Exhibit Part A at 84:18-85:24 (Excerpts from the Deposition Transcript of Cory | **DISPUTED.**<br><br>**Elizarov and Bearden not establish this fact.**<br><br>In the cited parts of his deposition, Elizarov discussed providing information to "Mr. Hill" but did not state that he included any information in any application. Furthermore, both Elizarov and Bearden referred to a document that was marked at the deposition as "Exhibit 102," Goldwater has not provided that exhibit to the court nor presented any testimony that its Exhibit 3 was the same as "Exhibit 102" that was presented to Elizarov and Bearden at their respective depositions. *See* Joint Exhibit Part D at p. 990:1-19 (Alekseyeff decl linking deposition exhibit to motion exhibit). Therefore, without looking at the exhibit itself, which Goldwater has not |

Bearden)

Joint Exhibit Part A at pages 113-114, 171-177 (Goldwater's Second Set of Requests for Admission to Elizarov, Nos. 41-43, Ex. E).

provided, the court cannot put Elizarov's and Bearden's testimony in proper context.

Finally, when asked in detail about "Exhibit 102" at his deposition, Elizarov testified that he did not recognize the document and did not recall signing the document. Joint Exhibits Part D at p. 951:9-953:7 (Defense Exhibit M, Elizarov Depo), Part D at p. 955:2-13 (authenticating declaration).

**Exhibit 3 is unauthenticated.**

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. Fed.R.Evid. 901. Therefore, a document submitted for summary judgment must be authenticated. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989). Merely attaching a document to a declaration is insufficient. *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970). "A document *authenticated through personal knowledge* must be attached to an affidavit, and the affiant must be a

Fact No. 9

competent "'witness who wrote [the document], signed it, used it, or saw others do so.'"" *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics, citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1).

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case. Joint Exhibits Part D at p. 864:9-11 (standing order).  Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward.  Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are what Goldwater claims they are, *to wit:* Initial loan application.

Fact No. 9

**Signature on Exhibit 3 is not authenticated.**

The document appears to have an electronic signature. To rely on Elizarov's digital signature, Goldwater had to offer evidence that Elizarov had agreed to transact with Goldwater electronically.  Cal. Civ. Code, s. 1633.5, subd. (b); *J.B.B. Inv. Partners, Ltd. v. Fair*, 182 Cal. Rptr. 3d 154, 165-166 (Cal. Ct. App. 2014).  Here, Goldwater has presented no evidence of such an agreement, and Elizarov denied ever agreeing to transact with Goldwater electronically. Joint Exhibits Part E at p. 1319:16-17 (Defense Exhibit BBB, Elizarov decl). Therefore, to the extent Goldwater claims the electronic signature to be Elizarov's, the signature is invalid. Furthermore, to rely on that signature, Goldwater had to introduce evidence that it was in fact Elizarov who signed that document.  Cal. Civ. Code, s. 1633.9, subd. (a). Once Elizarov stated that he could not recall signing the document**,** Joint Exhibits Part D at p. 951:9-953:7 (Exhibit M, Elizarov depo excerpt), Part D at p. 955:1-8 (Alekseyeff decl re Exhibit M), the burden shifted to Goldwater to authenticate the

Fact No. 9

signature.  *Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal.App.4th 836, 846 (Cal. Ct. App. 2014); *Nordeman v. Dish Network LLC*, 525 F. Supp. 3d 1080 (N.D. Cal. 2021) (citing *Ruiz*).  To do that, Goldwater had to explain, by admissible evidence, how Goldwater ascertained that the signature was "the act of" Elizarov. *Ruiz, supra*, at p. 844. Here, Goldwater has offered no such evidence.

**Goldwater's deposition is not admissible**.

"It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment."  *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Rule 32 governs the admissibility of deposition transcripts. Under this rule, deposition is admissible only "to the extent it would be admissib le under the Federal Rules of Evidence if the deponent were present and testifying… ."  Fed.R.Civ.P. 32(a)(1)(B). Evidence Rule 602, in turn, requires testimony to be based on personal knowledge.  Fed.R.Evid. 602.  *See also Carmen v. San Francisco Unified School Dist*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("Federal Rule of Civil Procedure

Fact No. 9

32(a) makes deposition testimony usable in motion proceedings 'so far as admissible under the rules of evidence,' and Federal Rule of Evidence 602 prevents a witness from testifying on a matter 'unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.'); *Samuels v. Doctors Hospital, Inc.*, 588 F.2d 485, 487 n.2 (5th Cir. 1979) ("The requirement of Rule 56(e) that affidavit testimony be competent and admissible evidence applies with equal force to deposition testimony.  As an exception to this rule, "[a]n *adverse party* may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)."  Fed.R.Civ.P. 32(a)(3).  By contrast, the rules do not permit the corporate deponent to use *its own self-serving hearsay-based testimony* to prove the necessary facts.  *Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, 907-08 (5th Cir. 2010) (although "[rule] 30(b)(6) allows corporate representatives to testify to matters within the corporation's knowledge during deposition, and Rule 32(a)(3) permits an adverse party to use that deposition

Fact No. 9

testimony during trial...a corporate representative may not testify to matters outside his own personal knowledge 'to the extent that information [is] hearsay not falling within one of the authorized exceptions.'")

Here, Bearden testified under Fed.R.Civ.P. 30(b)(6) as Goldwater's designated representative. Joint Exhibits Part D at p. 958:17:20 (Exhibit N, Bearden depo excerpt), Part D at p. 960:2-14 (Alekseyeff decl. re Exhibit N).  Bearden was not involved in Elizarov's loan transaction and, therefore, lacks personal knowledge to testify to these matters.  Joint Exhibits Part D at p. 963:25-964:6 (Goldwater depo, Bearden, excerpt).

Accordingly, while *defendants* may rely on Bearden's testimony because it is binding on Goldwater, *Snapp v. United Transp. Union*, 889 F.3d 1088, 1104 (9th Cir. 2018) ("an organization's deposition testimony is binding in the sense that whatever its deponent says can be used against the organization"), Goldwater may not rely on Bearden's testimony to establish its facts.

Fact No. 9

Therefore, the proposed testimony is inadmissible.

**Exhibit 6 does not support this fact**.

First, this exhibit did not include any answers; the exhibit includes only unanswered questions. Therefore, this document does not show that Elizarov admitted any of these requests. Second, if Goldwater asserts that Elizarov automatically admitted these requests by his failure to provide a timely answer, Fed.R.Civ. P. 36(a)(3) (failure to respond within 30 days is an automatic admission), Goldwater cited no evidence to this court that Elizarov did not respond to this request.

**Elizarov disputes this fact.**

Elizarov did not fill out any Initial Loan application. He provided information to Gregory Hill by phone, text, email and over the Internet. Elizarov had not seen the document in Exhibit 3 until Goldwater Bank filed this action. Joint Exhibits Part E at p. 1318:24-1319:15 (Defense Exhibit BBB,

Fact No. 9

Elizarov decl).

Fact No. 15

| | |
|---|---|
| 10. In the Final Application, Mr. Elizarov answered "No" in response to the question, "Are you a party to a lawsuit?" | **DISPUTED**. |
| | **Elizarov deposition testimony does not support this fact.** |
| *Evidence* | First, Elizarov did not testify that he answered any questions on the application. He only testified that he signed a document. Second, Goldwater presented no evidence that the document that Elizarov discussed at his deposition (which was marked as Exhibit 104) was the same as Exhibit 7. |
| Joint Exhibit Part A at 62:5-18 (Excerpts from the Deposition Transcript of Artur Elizarov) | |
| Joint Exhibit Part A at 87:16-89:7 (Excerpts from the Deposition Transcript of Cory Bearden) | **Goldwater deposition is inadmissible.** |
| Joint Exhibit Part A at pages 256-260 (Final Application, July 31, 2019) (Elizarov Depo. Ex. 104) (Bearden Depo Ex. 104). | "It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Rule 32 governs the admissibility of deposition transcripts. Under this rule, deposition is admissible only "to the extent it would be admissib le under the Federal Rules of Evidence if the deponent were present and testifying… ."  Fed.R.Civ.P. 32(a)(1)(B). Evidence Rule 602, in turn, requires testimony to be based on personal |

knowledge.  Fed.R.Evid. 602.  *See also Carmen v. San Francisco Unified School Dist*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("Federal Rule of Civil Procedure 32(a) makes deposition testimony usable in motion proceedings 'so far as admissible under the rules of evidence,' and Federal Rule of Evidence 602 prevents a witness from testifying on a matter 'unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.'); *Samuels v. Doctors Hospital, Inc.*, 588 F.2d 485, 487 n.2 (5th Cir. 1979) ("The requirement of Rule 56(e) that affidavit testimony be competent and admissible evidence applies with equal force to deposition testimony.  As an exception to this rule, "[a]n *adverse party* may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)."  Fed.R.Civ.P. 32(a)(3).  By contrast, the rules do not permit the corporate deponent to use *its own self-serving hearsay-based testimony* to prove the necessary facts.  *Union Pump Co. v. Centrifugal Tech. Inc*., 404 F. App'x 899, 907-08 (5th Cir. 2010) (although "[rule] 30(b)(6)

Fact No. 10

allows corporate representatives to testify to matters within the corporation's knowledge during deposition, and Rule 32(a)(3) permits an adverse party to use that deposition testimony during trial...a corporate representative may not testify to matters outside his own personal knowledge 'to the extent that information [is] hearsay not falling within one of the authorized exceptions.'")

Here, Bearden testified under Fed.R.Civ.P. 30(b)(6) as Goldwater's designated representative. Joint Exhibits Part D at p. 958:17:20 (Exhibit N, Bearden depo excerpt), Part D at p. 960:2-14 (Alekseyeff decl. re Exhibit N).  Bearden was not involved in Elizarov's loan transaction and, therefore, lacks personal knowledge to testify to these matters.  Joint Exhibits Part D at p. 963:25-964:6 (Goldwater depo, Bearden, excerpt).

Accordingly, while *defendants* may rely on Bearden's testimony because it is binding on Goldwater, *Snapp v. United Transp. Union*, 889 F.3d 1088, 1104 (9th Cir. 2018) ("an organization's deposition testimony is binding in the sense that whatever its deponent says

Fact No. 10

can be used against the organization"), Goldwater may not rely on Bearden's testimony to establish its facts.

Therefore, the proposed testimony is inadmissible.

**Exhibit 7 was not authenticated.**

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. Fed.R.Evid. 901. Therefore, a document submitted for summary judgment must be authenticated. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989). Merely attaching a document to a declaration is insufficient. *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970). "A document *authenticated through personal knowledge* must be attached to an affidavit, and the affiant must be a competent '"witness who wrote [the document], signed it, used it, or saw others do so."'" *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics,

citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1).

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case. Joint Exhibits Part D at p. 864:9-11 (standing order).  Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward.  Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are what Goldwater claims they are, *to wit:* the final application.

**Elizarov disputes this fact.**

Elizarov did not complete the Final Loan Application. That document was prepared by Goldwater at 10:36 am on July 31, 2019, the day of closing. At closing, a notary public presented Elizarov certain pages for his

signature. Elizarov did not review the documents prior to signing them because he relied on Gregory Hill to prepare the final application consistent with the information provided during the loan process. Elizarov did not receive a copy of the final loan application from either the notary or from Goldwater. Therefore, Elizarov did not himself answer any of the questions that were included in the final loan application and did not know that the information was inaccurate until Goldwater filed this action and provided the document to Elizarov in discovery. Joint Exhibits Part E at p. 1320:5-1322:5 (Defense Exhibit BBB, Elizarov decl), Part D at p. 1010:23-1011:13, 1013:25-1014:11 (Defense Exhibit V, Hill Depo excerpt), Part E at p. 1003-1006, 1007:7-16 (Defense Exhibit U, Application, Depo Exhibit 104).

| | |
|---|---|
| 12. In the Initial Application Mr. Elizarov answered "No" in response to the question, "Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee?"<br><br>*Evidence*<br><br>Joint Exhibit Part A at pages 23-28 (Artur Elizarov's Initial Loan Application) (Elizarov Depo. Ex. 102, Bearden Depo. Ex. 102);<br><br>Joint Exhibit Part A at 36:2-7, 36:24-37:12 (Excerpts from the Deposition Transcript of Artur Elizarov)<br><br>Joint Exhibit Part A at 84:18-85:24 (Excerpts from the Deposition Transcript of Cory Bearden)<br><br>Joint Exhibit Part A at pages 113-114, 171-177 (Goldwater's | **DISPUTED.**<br><br>**Testimony does not establish this fact.**<br><br>In the cited parts of his deposition, Elizarov discussed providing information to "Mr. Hill" but did not state that he included any information in any application. Furthermore, both Elizarov and Bearden referred to a document that was marked at the deposition as "Exhibit 102," Goldwater has not provided that exhibit to the court nor presented any testimony that its Exhibit 3 was the same as "Exhibit 102" that was presented to Elizarov and Bearden at their respective depositions. *See* Joint Exhibit Part D at p. 990:1-19 (Alekseyeff decl linking deposition exhibit to motion exhibit). Therefore, without looking at the exhibit itself, which Goldwater has not provided, the court cannot put Elizarov's and Bearden's testimony in proper context.<br><br>Finally, when asked in detail about "Exhibit 102" at his deposition, Elizarov testified that he did not recognize the document and did not recall signing the document. Joint Exhibits Part D at p. 951:9-953:7 (Defense Exhibit M, Elizarov Depo), Part D at p. |

| | |
|---|---|
| Second Set of Requests for Admission to Elizarov, Nos. 41-43, Ex. E). | 955:2-13 (authenticating declaration)**.** (It appears that Goldwater attempted to mislead the court by ignoring this critical testimony.)<br><br>**Exhibit 3 is unauthenticated.**<br><br>"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  To be admissible, evidence must be properly authenticated.  Fed.R.Evid. 901.  Therefore, a document submitted for summary judgment must be authenticated.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989).  Merely attaching a document to a declaration is insufficient.  *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970).   "A document *authenticated through personal knowledge* must be attached to an affidavit, and the affiant must be a competent '"witness who wrote [the document], signed it, used it, or saw others do so."'" *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics, citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1). |

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case. Joint Exhibits Part D at p. 864:9-11 (standing order). Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward. Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are what Goldwater claims they are, *to wit:* Initial loan application.

**Signature on Exhibit 3 is not authenticated.**

The document appears to have an electronic signature. To rely on Elizarov's digital signature, Goldwater had to offer evidence that Elizarov had agreed to transact with

Goldwater electronically.  Cal. Civ. Code, s. 1633.5, subd. (b); *J.B.B. Inv. Partners, Ltd. v. Fair*, 182 Cal. Rptr. 3d 154, 165-166 (Cal. Ct. App. 2014).  Here, Goldwater has presented no evidence of such an agreement, and Elizarov denied ever agreeing to transact with Goldwater electronically. Part E at p. 1319:14-15 (Defense Exhibit BBB, Elizarov decl. Therefore, to the extent Goldwater claims the electronic signature to be Elizarov's, the signature is invalid. Furthermore, to rely on that signature, Goldwater had to introduce evidence that it was in fact Elizarov who signed that document.  Cal. Civ. Code, s. 1633.9, subd. (a). Once Elizarov stated that he could not recall signing the document, Joint Exhibits Part D at p. 951:9-953:7 (Exhibit M, Elizarov depo excerpt), Part D at p. 955:1-8 (Alekseyeff decl re Exhibit M), the burden shifted to Goldwater to authenticate the signature.  *Ruiz v. Moss Bros. Auto Group, Inc*., 232 Cal.App.4th 836, 846 (Cal. Ct. App. 2014); *Nordeman v. Dish Network LLC*, 525 F. Supp. 3d 1080 (N.D. Cal. 2021) (citing *Ruiz*).  To do that, Goldwater had to explain, by admissible evidence, how Goldwater ascertained that the signature was "the act of"

Fact No. 12

Elizarov. *Ruiz, supra*, at p. 844. Here, Goldwater has offered no such evidence.

**Goldwater's deposition is not admissible**.

"It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Rule 32 governs the admissibility of deposition transcripts. Under this rule, deposition is admissible only "to the extent it would be admissib le under the Federal Rules of Evidence if the deponent were present and testifying… ." Fed.R.Civ.P. 32(a)(1)(B). Evidence Rule 602, in turn, requires testimony to be based on personal knowledge. Fed.R.Evid. 602. *See also Carmen v. San Francisco Unified School Dist*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("Federal Rule of Civil Procedure 32(a) makes deposition testimony usable in motion proceedings 'so far as admissible under the rules of evidence,' and Federal Rule of Evidence 602 prevents a witness from testifying on a matter 'unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the

Fact No. 12

matter.'); *Samuels v. Doctors Hospital, Inc.*, 588 F.2d 485, 487 n.2 (5th Cir. 1979) ("The requirement of Rule 56(e) that affidavit testimony be competent and admissible evidence applies with equal force to deposition testimony. As an exception to this rule, "[a]n *adverse party* may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)." Fed.R.Civ.P. 32(a)(3). By contrast, the rules do not permit the corporate deponent to use *its own self-serving hearsay-based testimony* to prove the necessary facts. *Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, 907-08 (5th Cir. 2010) (although "[rule] 30(b)(6) allows corporate representatives to testify to matters within the corporation's knowledge during deposition, and Rule 32(a)(3) permits an adverse party to use that deposition testimony during trial...a corporate representative may not testify to matters out-side his own personal knowledge 'to the extent that information [is] hearsay not falling within one of the authorized exceptions.'")

Fact No. 12

Here, Bearden testified under Fed.R.Civ.P. 30(b)(6) as Goldwater's designated representative. Joint Exhibits Part D at p. 958:17:20 (Exhibit N, Bearden depo excerpt), Part D at p. 960:2-14 (Alekseyeff decl. re Exhibit N).  Bearden was not involved in Elizarov's loan transaction and, therefore, lacks personal knowledge to testify to these matters.  Joint Exhibits Part D at p. 963:25-964:6 (Goldwater depo, Bearden, excerpt).

Accordingly, while *defendants* may rely on Bearden's testimony because it is binding on Goldwater, *Snapp v. United Transp. Union*, 889 F.3d 1088, 1104 (9th Cir. 2018) ("an organization's deposition testimony is binding in the sense that whatever its deponent says can be used against the organization"), Goldwater may not rely on Bearden's testimony to establish its facts. Therefore, the proposed testimony is inadmissible.

**Exhibit 6 does not support this fact**.

First, this exhibit did not include any answers; the exhibit includes only unanswered questions. Therefore, this document does not show that Elizarov

admitted any of these requests. Second, if Goldwater asserts that Elizarov automatically admitted these requests by his failure to provide a timely answer, Fed.R.Civ. P. 36(a)(3) (failure to respond within 30 days is an automatic admission), Goldwater cited no evidence to this court that Elizarov did not respond to this request.

**Elizarov disputes this fact.**

Elizarov did not fill out any Initial Loan application. He provided information to Gregory Hill by phone, text, email and over the Internet. Elizarov had not seen the document in Exhibit 3 until Goldwater Bank filed this action. Joint Exhibits Part D at p. 951:9-953:7, 955:1-8 (Exhibit M, Elizarov depo excerpt), Part E at p. 1319:14-15 (Defense Exhibit BBB, Elizarov decl).

Fact No. 12

| | | |
|---|---|---|
| 1 | 13. In the Final Application, Mr. Elizarov answered "No" in response to the question, "Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee?" | **DISPUTED**. |

13. In the Final Application, Mr. Elizarov answered "No" in response to the question, "Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee?"

*Evidence*

Joint Exhibit Part A at 62:5-18 (Excerpts from the Deposition Transcript of Artur Elizarov)

Joint Exhibit Part A at 87:16-89:7 (Excerpts from the Deposition Transcript of Cory Bearden)

Joint Exhibit Part A at pages 256-260 (Final Application, July 31, 2019) (Elizarov Depo. Ex. 104) (Bearden Depo Ex. 104).

**DISPUTED**.

**Elizarov deposition testimony does not support this fact.**

First, Elizarov did not testify that he answered any questions on the application. He only testified that he signed a document. Second, Goldater presented no evidence that the document that Elizarov discussed at his deposition (which was marked as Exhibit 104) was the same as Exhibit 7.

**Goldwater deposition is inadmissible.**

"It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Rule 32 governs the admissibility of deposition transcripts. Under this rule, deposition is admissible only "to the extent it would be admissib le under the Federal Rules of Evidence if the deponent were present and testifying… ." Fed.R.Civ.P. 32(a)(1)(B). Evidence Rule 602, in turn, requires testimony to be based on personal

knowledge.  Fed.R.Evid. 602.  *See also*
*Carmen v. San Francisco Unified School*
*Dist*, 237 F.3d 1026, 1028 (9th Cir. 2001)
("Federal Rule of Civil Procedure
32(a) makes deposition testimony usable in
motion proceedings 'so far as admissible
under the rules of evidence,' and Federal Rule
of Evidence 602 prevents a witness from
testifying on a matter 'unless evidence is
introduced sufficient to support a finding that
the witness has personal knowledge of the
matter.'); *Samuels v. Doctors Hospital, Inc.*,
588 F.2d 485, 487 n.2 (5th Cir. 1979) ("The
requirement of Rule 56(e) that affidavit
testimony be competent and admissible
evidence applies with equal force to
deposition testimony.  As an exception to this
rule, "[a]n *adverse party* may use for any
purpose the deposition of a party or anyone
who, when deposed, was the party's officer,
director, managing agent, or designee under
Rule 30(b)(6) or 31(a)(4)."  Fed.R.Civ.P.
32(a)(3).  By contrast, the rules do not permit
the corporate deponent to use *its own self-*
*serving hearsay-based testimony* to prove the
necessary facts.  *Union Pump Co. v.*
*Centrifugal Tech. Inc.*, 404 F. App'x 899, 907-
08 (5th Cir. 2010) (although "[rule] 30(b)(6)

Fact No. 13

allows corporate representatives to testify to matters within the corporation's knowledge during deposition, and Rule 32(a)(3) permits an adverse party to use that deposition testimony during trial...a corporate representative may not testify to matters outside his own personal knowledge 'to the extent that information [is] hearsay not falling within one of the authorized exceptions.'")

Here, Bearden testified under Fed.R.Civ.P. 30(b)(6) as Goldwater's designated representative. Joint Exhibits Part D at p. 958:17:20 (Exhibit N, Bearden depo excerpt), Part D at p. 960:2-14 (Alekseyeff decl. re Exhibit N).  Bearden was not involved in Elizarov's loan transaction and, therefore, lacks personal knowledge to testify to these matters.  Joint Exhibits Part D at p. 963:25-964:6 (Goldwater depo, Bearden, excerpt). Accordingly, while *defendants* may rely on Bearden's testimony because it is binding on Goldwater, *Snapp v. United Transp. Union*, 889 F.3d 1088, 1104 (9th Cir. 2018) ("an organization's deposition testimony is binding in the sense that whatever its deponent says can be used against the organization"),

1    Goldwater may not rely on Bearden's
2    testimony to establish its facts.
3
4    Therefore, the proposed testimony is
5    inadmissible.
6
7    **Exhibit 7 was not authenticated.**
8
9    "A trial court can only consider admissible
10   evidence in ruling on a motion for summary
11   judgment." *Orr v. Bank of America, NT &*
12   *SA*, 285 F.3d 764, 773 (9th Cir. 2002).  To be
13   admissible, evidence must be properly
14   authenticated.  Fed.R.Evid. 901.  Therefore, a
15   document submitted for summary judgment
16   must be authenticated.  *Hal Roach Studios,*
17   *Inc. v. Richard Feiner & Co*., 896 F.2d 1542,
18   1550–51 (9th Cir. 1989).  Merely attaching a
19   document to a declaration is insufficient.
20   *United States v. Dibbl*e, 429 F.2d 598, 602
21   (9th Cir. 1970).   "A document *authenticated*
22   *through personal knowledge* must be attached
23   to an affidavit, and the affiant must be a
24   competent '"witness who wrote [the
25   document], signed it, used it, or saw others do
26   so."'"  *Las Vegas Sands v. Nehme*, 632 F.3d
27   526, 533 (9th Cir. 2011), original italics,

DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS

45

Fact No. 13

1    citing *Orr, supra,* at p. 773-74 fn. 8;

2    Fed.R.Evid. 901(b)(1).

3

4    The court alerted the parties about the need to

5    authenticate documents and referred the

6    parties to the *Orr v. Bank of America* case.

7    Joint Exhibits Part D at p. 864:9-11 (standing

8    order).  Furthermore, after Goldwater filed

9    unauthenticated documents as exhibits, on

10   May 5, 2013, the court explicitly admonished

11   Goldwater to authenticate its exhibits moving

12   forward.  Joint Exhibits Part D at p. 893-894

13   (May 5, 20-13, minute order), Part D at p.

14   895:2-10 (Alekseyeff decl.)

15

16   Here, Goldwater proposed certain documents

17   as exhibits but has cited *no declaration* by a

18   qualified witness (i.e., "who wrote [the

19   document], signed it, used it, or saw others do

20   so," *Las Vegas Sands, supra,* at p. 774 fn. 8)

21   to support a finding that the documents are

22   what Goldwater claims they are, *to wit:* final

23   application.

24

25   **Elizarov disputes this fact.**

26

27   Elizarov did not complete the Final Loan

28   Application. That document was prepared by

Goldwater at 10:35 am on July 31, 2019, the day of closing. At closing, a notary public presented Elizarov certain pages for his signature. Elizarov did not review the documents prior to signing them because he relied on Gregory Hill to prepare the final application consistent with the information provided during the loan process. Elizarov did not receive a copy of the final loan application from either the notary or from Goldwater. Therefore, Elizarov did not himself answer any of the questions that were included in the final loan application and did not know that the information was inaccurate until Goldwater filed this action and provided the document to Elizarov in discovery. Joint Exhibits Part E at p. 1320:5-1322:5 (Defense Exhibit BBB, Elizarov decl), Part D at p. 1010:23-1011:13, 1013:25-1014:11 (Defense Exhibit V, Hill Depo excerpt), Part E at p. 1003-1006, 1007:7-16 (Defense Exhibit U, Application, Depo Exhibit 104).

Fact No. 13

16. In the Initial Application Mr. Elizarov represented that he was the owner of a JP Morgan Securities Account holding a balance in excess of $200,000.

*Evidence*

Joint Exhibit Part A at pages 23-28 (Artur Elizarov's Initial Loan Application) (Elizarov Depo. Ex. 102, Bearden Depo. Ex. 102);

Joint Exhibit Part A at 36:2-7, 36:24-37:12 (Excerpts from the Deposition Transcript of Artur Elizarov)

Joint Exhibit Part A at 84:18-85:24 (Excerpts from the Deposition Transcript of Cory Bearden)

Joint Exhibit Part A at pages 113-114, 171-177 (Goldwater's Second Set of Requests for Admission to Elizarov, Nos. 41-43, Ex. E).

**DISPUTED**.

**The fact is immaterial/lack of notice.**

"Material facts...are those which may affect the outcome of the case." *Cady v. Hartford Life & Accidental Ins. Co.*, 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The relevant substantive law will determine which facts are material for purposes of summary judgment." *Id.* Furthermore, "a plaintiff cannot [base] a motion for summary judgment (on a fraud claim) on allegations of fraud that were never pled with particularity in the first place." *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1027 (N.D. Cal. 2012); *see also Navajo v. U.S.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Picken v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006) (failure to comply with notice requirements under Rule 8 precludes

summary judgment based on new allegations); Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) (evidence relating to allegations not alleged in the complaint is i; *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 995 (9th Cir. 2009) (evidence relating to allegations not alleged in the complaint is inadmissible for failure to give "fair notice" to defendant"); *Evervictory Elec. (B.V.I.) Co. v. Invision Indus. Inc.*, No. CV 10-8165 CAS PLAX, 2012 WL 2030177, at *2 (C.D. Cal. June 4, 2012) ("It is well established in the Ninth Circuit, that where a theory or claim is not pled in the complaint, a party may not submit evidence as to that theory or claim because a plaintiff must provide the defendant "fair notice" of its alleged liability.").

Rule 9(b) required Goldwater to give notice of the *exact statements* that Goldwater claimed were fraudulent and explain why those statements were fraudulent. Fed.R.Civ.P. 9(b); *In re Glenfed, Inc. Securities Litigation,* 42 F.3d 1541, 1548 (9th Cir. 1994) ("The plaintiff must set forth what is false or misleading about a statement, and

why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."); *Camp v. Pacific Financial Group*, 956 F. Supp. 1541, 1551 (C.D. Cal. 1997) (same); *Teamsters Local 617 Pension v. Apollo Group*, 633 F. Supp. 2d 763, 783 (D. Ariz. 2009); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1057 (C.D. Cal. 2015).

In its first amended complaint, Goldwater claimed that Elizarov misrepresented his marital status, whether he was a party to a pending lawsuit, and whether he was in default on federal loans. EFD 44 at pp. 4:25-8:18. Now, however, Goldwater also wants to claim that Elizarov misrepresented his assets in the loan application. Although Goldwater mentioned JP Morgan chase account, Goldwater did not allege that the representation was false. Goldwater subsequently confirmed these to be the only false statements in response to interrogatories. Joint Exhibits Part D at p. 945:16-26 (Exhibit L, Admissions), Part D at p. 949:1-10 (Alekseyeff decl re Exhibit L). The only other place where this account was

mentioned was in the allegations relating to the May 2020 mortgage assistance application, and then only to suggest that the account (and its funds) were still available when Elizarov applied for the assistance. EFD 44 at p. 6:21-24. And since Goldwater did not allege that the representation regarding funds in the JP Morgan account *at the time Elizarov applied for the loan* was false, Elizarov had no notice of this claim.

Therefore, Goldwater may not rely on this new factual theory on summary judgment.

**Exhibit 3 is unauthenticated.**

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. Fed.R.Evid. 901. Therefore, a document submitted for summary judgment must be authenticated. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989). Merely attaching a document to a declaration is insufficient. *United States v. Dibble*, 429 F.2d 598, 602

Fact No. 16

(9th Cir. 1970).  "A document *authenticated through personal knowledge* must be attached to an affidavit, and the affiant must be a competent '"witness who wrote [the document], signed it, used it, or saw others do so."'"  *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics, citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1).

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case. Joint Exhibits Part D at p. 864:9-11 (standing order).  Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward.  Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are

Fact No. 16

what Goldwater claims they are, *to wit:* Initial loan application.

**Signature on Exhibit 3 is not authenticated.**

The document appears to have an electronic signature. To rely on Elizarov's digital signature, Goldwater had to offer evidence that Elizarov had agreed to transact with Goldwater electronically.  Cal. Civ. Code, s. 1633.5, subd. (b); *J.B.B. Inv. Partners, Ltd. v. Fair*, 182 Cal. Rptr. 3d 154, 165-166 (Cal. Ct. App. 2014).  Here, Goldwater has presented no evidence of such an agreement, and Elizarov denied ever agreeing to transact with Goldwater electronically. Part E at p. 1319:14-15 (Defense Exhibit BBB, Elizarov decl). Therefore, to the extent Goldwater claims the electronic signature to be Elizarov's, the signature is invalid. Furthermore, to rely on that signature, Goldwater had to introduce evidence that it was in fact Elizarov who signed that document.  Cal. Civ. Code, s. 1633.9, subd. (a). Once Elizarov stated that he could not recall signing the document**,** Joint Exhibits Part D at p. 951:9-953:7 (Exhibit M, Elizarov

depo excerpt), Part D at p. 955:1-8 (Alekseyeff decl re Exhibit M), the burden shifted to Goldwater to authenticate the signature. *Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal.App.4th 836, 846 (Cal. Ct. App. 2014); *Nordeman v. Dish Network LLC*, 525 F. Supp. 3d 1080 (N.D. Cal. 2021) (citing *Ruiz*). To do that, Goldwater had to explain, by admissible evidence, how Goldwater ascertained that the signature was "the act of" Elizarov. *Ruiz, supra*, at p. 844. Here, Goldwater has offered no such evidence.

**Goldwater deposition is inadmissible.**

"It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Rule 32 governs the admissibility of deposition transcripts. Under this rule, deposition is admissible only "to the extent it would be admissib le under the Federal Rules of Evidence if the deponent were present and testifying… ." Fed.R.Civ.P. 32(a)(1)(B). Evidence Rule 602, in turn, requires testimony to be based on personal

knowledge.  Fed.R.Evid. 602.  *See also Carmen v. San Francisco Unified School Dist*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("Federal Rule of Civil Procedure 32(a) makes deposition testimony usable in motion proceedings 'so far as admissible under the rules of evidence,' and Federal Rule of Evidence 602 prevents a witness from testifying on a matter 'unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.'); *Samuels v. Doctors Hospital, Inc.*, 588 F.2d 485, 487 n.2 (5th Cir. 1979) ("The requirement of Rule 56(e) that affidavit testimony be competent and admissible evidence applies with equal force to deposition testimony.  As an exception to this rule, "[a]n *adverse party* may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)."  Fed.R.Civ.P. 32(a)(3).  By contrast, the rules do not permit the corporate deponent to use *its own self-serving hearsay-based testimony* to prove the necessary facts.  *Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, 907-08 (5th Cir. 2010) (although "[rule] 30(b)(6)

allows corporate representatives to testify to matters within the corporation's knowledge during deposition, and Rule 32(a)(3) permits an adverse party to use that deposition testimony during trial...a corporate representative may not testify to matters out-side his own personal knowledge 'to the extent that information [is] hearsay not falling within one of the authorized exceptions.'")

Here, Bearden testified under Fed.R.Civ.P. 30(b)(6) as Goldwater's designated representative. Joint Exhibits Part D at p. 958:17:20 (Exhibit N, Bearden depo excerpt), Part D at p. 960:2-14 (Alekseyeff decl. re Exhibit N). Bearden was not involved in Elizarov's loan transaction and, therefore, lacks personal knowledge to testify to these matters. Joint Exhibits Part D at p. 963:25-964:6 (Goldwater depo, Bearden, excerpt).

Accordingly, while *defendants* may rely on Bearden's testimony because it is binding on Goldwater, *Snapp v. United Transp. Union*, 889 F.3d 1088, 1104 (9th Cir. 2018) ("an organization's deposition testimony is binding in the sense that whatever its deponent says

can be used against the organization"), Goldwater may not rely on Bearden's testimony to establish its facts.

Therefore, the proposed testimony is inadmissible.

**Elizarov's deposition testimony does not support this fact.**

Although Elizarov testified that he provided certain documents to Goldwater, he never testified about any JP Morgan Chase accounts. Furthermore, to the extent Elizarov testified about documents, Goldwater has not provided those documents to the court.

**Bearden's testimony does not support this fact.**

Although Bearden testified about the process of completing the application, Bearden did not testify about JP Morgan Chase account.

**Elizarov disputes this fact.**

Elizarov did not fill out any Initial Loan application. He provided information to

Fact No. 16

Gregory Hill by phone, text, email and over the Internet. Elizarov had not seen the document in Exhibit 3 until Goldwater Bank filed this action. Joint Exhibits Part E at p. 1318:24-1319:15 (Defense Exhibit BBB, Elizarov decl).

Fact No. 16

| | |
|---|---|
| 17. In the Final Application, Mr. Elizarov represented that he was the owner of a JP Morgan Securities Account holding a balance in excess of $200,000.<br><br>*Evidence*<br><br>Joint Exhibit Part A at 62:5-18 (Excerpts from the Deposition Transcript of Artur Elizarov)<br><br>Joint Exhibit Part A at 87:16-89:7 (Excerpts from the Deposition Transcript of Cory Bearden)<br><br>Joint Exhibit Part A at pages 256-260 (Final Application, July 31, 2019) (Elizarov Depo. Ex. 104) (Bearden Depo Ex. 104). | **DISPUTED**.<br><br>**The fact is immaterial/lack of notice.**<br><br>"Material facts...are those which may affect the outcome of the case." *Cady v. Hartford Life & Accidental Ins. Co.*, 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The relevant substantive law will determine which facts are material for purposes of summary judgment." *Id.* Furthermore, "a plaintiff cannot [base] a motion for summary judgment (on a fraud claim) on allegations of fraud that were never pled with particularity in the first place." *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1027 (N.D. Cal. 2012); *see also Navajo v. U.S.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Picken v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006) (failure to comply with notice requirements under Rule 8 precludes |

summary judgment based on new allegations); Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) (evidence relating to allegations not alleged in the complaint is i.

Rule 9(b) required Goldwater to give notice of the *exact statements* that Goldwater claimed were fraudulent and explain why those statements were fraudulent. Fed.R.Civ.P. 9(b); *In re Glenfed, Inc. Securities Litigation,* 42 F.3d 1541, 1548 (9th Cir. 1994) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."); *Camp v. Pacific Financial Group*, 956 F. Supp. 1541, 1551 (C.D. Cal. 1997) (same); *Teamsters Local 617 Pension v. Apollo Group*, 633 F. Supp. 2d 763, 783 (D. Ariz. 2009); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1057 (C.D. Cal. 2015).

In its first amended complaint, Goldwater claimed that Elizarov misrepresented his marital status, whether he was a party to a pending lawsuit, and whether he was in

Fact No. 17

1   default on federal loans. EFD 44 at pp. 4:25-
2   8:18. Now, however, Goldwater also wants to
3   claim that Elizarov misrepresented his assets
4   in the loan application. Although Goldwater
5   mentioned JP Morgan chase account,
6   Goldwater did not allege that the
7   representation was false. Goldwater
8   subsequently confirmed these to be the only
9   false statements in response to
10  interrogatories. Joint Exhibits Part D at p.
11  945:16-26 (Exhibit L, Admissions), Part D at
12  p. 949:1-10 (Alekseyeff decl re Exhibit L).
13  The only other place where this account was
14  mentioned was in the allegations relating to
15  the May 2020 mortgage assistance
16  application, and then only to suggest that the
17  account (and its funds) were still available
18  when Elizarov applied for the assistance.
19  EFD 44 at p. 6:21-24. And since Goldwater
20  did not allege that the representation
21  regarding funds in the JP Morgan account *at*
22  *the time Elizarov applied for the loan* was
23  false, Elizarov had no notice of this claim.
24
25  Therefore, Goldwater may not rely on this
26  new factual theory on summary judgment.
27
28

Fact No. 17

**Elizarov deposition testimony does not support this fact.**

First, Elizarov did not testify that he represented any information on the application. He only testified that he signed a document. Second, Goldwater presented no evidence that the document that Elizarov discussed at his deposition (which was marked as Exhibit 104) was the same as Exhibit 7. *See e.g.* Joint Exhibit Part D at p. 990:1-19 (Alekseyeff decl connecting a deposition exhibit to motion exhibit).

**Goldwater deposition is inadmissible.**

"It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Rule 32 governs the admissibility of deposition transcripts. Under this rule, deposition is admissible only "to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying… ." Fed.R.Civ.P. 32(a)(1)(B). Evidence Rule 602, in turn, requires

testimony to be based on personal knowledge.  Fed.R.Evid. 602.  *See also Carmen v. San Francisco Unified School Dist*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("Federal Rule of Civil Procedure 32(a) makes deposition testimony usable in motion proceedings 'so far as admissible under the rules of evidence,' and Federal Rule of Evidence 602 prevents a witness from testifying on a matter 'unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.'); *Samuels v. Doctors Hospital, Inc.*, 588 F.2d 485, 487 n.2 (5th Cir. 1979) ("The requirement of Rule 56(e) that affidavit testimony be competent and admissible evidence applies with equal force to deposition testimony.  As an exception to this rule, "[a]n *adverse party* may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)."  Fed.R.Civ.P. 32(a)(3).  By contrast, the rules do not permit the corporate deponent to use *its own self-serving hearsay-based testimony* to prove the necessary facts.  *Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, 907-

Fact No. 17

08 (5th Cir. 2010) (although "[rule] 30(b)(6) allows corporate representatives to testify to matters within the corporation's knowledge during deposition, and Rule 32(a)(3) permits an adverse party to use that deposition testimony during trial...a corporate representative may not testify to matters outside his own personal knowledge 'to the extent that information [is] hearsay not falling within one of the authorized exceptions.'")

Here, Bearden testified under Fed.R.Civ.P. 30(b)(6) as Goldwater's designated representative. Joint Exhibits Part D at p. 958:17:20 (Exhibit N, Bearden depo excerpt), Part D at p. 960:2-14 (Alekseyeff decl. re Exhibit N).  Bearden was not involved in Elizarov's loan transaction and, therefore, lacks personal knowledge to testify to these matters.  Joint Exhibits Part D at p. 963:25-964:6 (Goldwater depo, Bearden, excerpt).

Accordingly, while *defendants* may rely on Bearden's testimony because it is binding on Goldwater, *Snapp v. United Transp. Union*, 889 F.3d 1088, 1104 (9th Cir. 2018) ("an organization's deposition testimony is binding

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

in the sense that whatever its deponent says can be used against the organization"), Goldwater may not rely on Bearden's testimony to establish its facts.

Therefore, the proposed testimony is inadmissible.

**Exhibit 7 was not authenticated.**

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. Fed.R.Evid. 901. Therefore, a document submitted for summary judgment must be authenticated. *Hal Roach Studios, Inc. v. Richard Feiner & Co*., 896 F.2d 1542, 1550–51 (9th Cir. 1989). Merely attaching a document to a declaration is insufficient. *United States v. Dibbl*e, 429 F.2d 598, 602 (9th Cir. 1970). "A document *authenticated through personal knowledge* must be attached to an affidavit, and the affiant must be a competent '"witness who wrote ['the document'], signed it, used it, or saw others do so."'" *Las Vegas Sands v. Nehme*, 632 F.3d

Fact No. 17

1   526, 533 (9th Cir. 2011), original italics,

2   citing *Orr, supra,* at p. 773-74 fn. 8;

3   Fed.R.Evid. 901(b)(1).

4

5   The court alerted the parties about the need to

6   authenticate documents and referred the

7   parties to the *Orr v. Bank of America* case.

8   Joint Exhibits Part D at p. 864:9-11 (standing

9   order).  Furthermore, after Goldwater filed

10   unauthenticated documents as exhibits, on

11   May 5, 2013, the court explicitly admonished

12   Goldwater to authenticate its exhibits moving

13   forward.  Joint Exhibits Part D at p. 893-894

14   (May 5, 20-13, minute order), Part D at p.

15   895:2-10 (Alekseyeff decl.)

16

17   Here, Goldwater proposed certain documents

18   as exhibits but has cited *no declaration* by a

19   qualified witness (i.e., "who wrote [the

20   document], signed it, used it, or saw others do

21   so," *Las Vegas Sands, supra,* at p. 774 fn. 8)

22   to support a finding that the documents are

23   what Goldwater claims they are, *to wit:* final

24   application.

25   **Elizarov disputes this fact.**

26   Elizarov did not complete the Final Loan

27   Application. That document was prepared by

28   Goldwater at 10:35 am on July 31, 2019, the

DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS

66

day of closing. At closing, a notary public presented Elizarov certain pages for his signature. Elizarov did not review the documents prior to signing them because he relied on Gregory Hill to prepare the final application consistent with the information provided during the loan process. Elizarov did not receive a copy of the final loan application from either the notary or from Goldwater. Therefore, Elizarov did not himself answer any of the questions that were included in the final loan application and did not know that the information was inaccurate until Goldwater filed this action and provided the document to Elizarov in discovery. Joint Exhibits Part E at p. 1320:5-1322:5 (Defense Exhibit BBB, Elizarov decl), Part D at p. 1010:23-1011:13, 1013:25-1014:11 (Defense Exhibit V, Hill Depo excerpt), Part E at p. 1003-1006, 1007:7-16 (Defense Exhibit U, Application, Depo Exhibit 104).

Fact No. 17

| | |
|---|---|
| 1 | 18. During the application process Goldwater requested account statements for the JP Morgan Securities Account, and Elizarov provided three months of detailed, corresponding statements for the period of April to June 2019, to Goldwater to support the same. | **DISPUTED.** |
| 2 | | |
| 3 | | **The fact is immaterial/lack of notice.** |
| 4 | | |
| 5 | | "Material facts...are those which may affect the outcome of the case." *Cady v. Hartford Life & Accidental Ins. Co*., 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The relevant substantive law will determine which facts are material for purposes of summary judgment." *Id.* Furthermore, "a plaintiff cannot [base] a motion for summary judgment (on a fraud claim) on allegations of fraud that were never pled with particularity in the first place." *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1027 (N.D. Cal. 2012); *see also Navajo v. U.S.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Picken v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006) (failure to comply with notice requirements under Rule 8 precludes summary judgment based on new |

1. During the application process
2. Goldwater requested account
3. statements for the JP Morgan
4. Securities Account, and Elizarov
5. provided three months of detailed,
6. corresponding statements for the
7. period of April to June 2019, to
8. Goldwater to support the same.

9.
10. *Evidence*
11.
12. Joint Exhibit Part A at 36:2-7,
13. 37:24-37:12, 39:10-40:22
14. (Excerpts from the Deposition
15. Transcript of Artur Elizarov)
16.
17. Joint Exhibit Part A at 86: 3-7,
18. 93:20-96:10 (Excerpts from the
19. Deposition Transcript of Cory
20. Bearden)
21.
22. Joint Exhibit Part A at pages 114,
23. 179-238 (Goldwater's Second Set
24. of Requests for Admission to
25. Elizarov, Nos. 44-45, Ex. F).
26.
27. Joint Exhibit Part C at 518 - 606
28.

| | |
|---|---|
| (Elizarov Email Correspondence and attached account statements) | allegations); Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) (evidence relating to allegations not alleged in the complaint is i.<br><br>Rule. 9(b) required Goldwater to give notice of the *exact statements* that Goldwater claimed were fraudulent and explain why those statements were fraudulent. Fed.R.Civ.P. 9(b); *In re Glenfed, Inc. Securities Litigation,* 42 F.3d 1541, 1548 (9th Cir. 1994) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."); *Camp v. Pacific Financial Group*, 956 F. Supp. 1541, 1551 (C.D. Cal. 1997) (same); *Teamsters Local 617 Pension v. Apollo Group*, 633 F. Supp. 2d 763, 783 (D. Ariz. 2009); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1057 (C.D. Cal. 2015).<br><br>In its first amended complaint, Goldwater claimed that Elizarov misrepresented his marital status, whether he was a party to a pending lawsuit, and whether he was in default on federal loans. EFD 44 at pp. 4:25- |

Fact No. 18

8:18. Now, however, Goldwater also wants to claim that Elizarov misrepresented his assets in the loan application. Although Goldwater mentioned JP Morgan chase account, Goldwater did not allege that the representation was false. Goldwater subsequently confirmed these to be the only false statements in response to interrogatories. Joint Exhibits Part D at p. 945:16-26 (Exhibit L, Admissions), Part D at p. 949:1-10 (Alekseyeff decl re Exhibit L). The only other place where this account was mentioned was in the allegations relating to the May 2020 mortgage assistance application, and then only to suggest that the account (and its funds) were still available when Elizarov applied for the assistance. EFD 44 at p. 6:21-24. And since Goldwater did not allege that the representation regarding funds in the JP Morgan account *at the time Elizarov applied for the loan* was false, Elizarov had no notice of this claim.

Therefore, Goldwater may not rely on this new factual theory on summary judgment.

**Elizarov's testimony does not support this fact.**

Although Elizarov said that he provided certain information to Goldwater Bank, Elizarov did not testify about JPMorgan account.

**Goldwater deposition is inadmissible.**

"It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Rule 32 governs the admissibility of deposition transcripts. Under this rule, deposition is admissible only "to the extent it would be admissib le under the Federal Rules of Evidence if the deponent were present and testifying… ." Fed.R.Civ.P. 32(a)(1)(B). Evidence Rule 602, in turn, requires testimony to be based on personal knowledge.  Fed.R.Evid. 602.  *See also Carmen v. San Francisco Unified School Dist*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("Federal Rule of Civil Procedure 32(a) makes deposition testimony usable in motion proceedings 'so far as admissible under the rules of evidence,' and Federal Rule

Fact No. 18

of Evidence 602 prevents a witness from testifying on a matter 'unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.'); *Samuels v. Doctors Hospital, Inc.*, 588 F.2d 485, 487 n.2 (5th Cir. 1979) ("The requirement of Rule 56(e) that affidavit testimony be competent and admissible evidence applies with equal force to deposition testimony.  As an exception to this rule, "[a]n *adverse party* may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)."  Fed.R.Civ.P. 32(a)(3).  By contrast, the rules do not permit the corporate deponent to use *its own self-serving hearsay-based testimony* to prove the necessary facts.  *Union Pump Co. v. Centrifugal Tech. Inc*., 404 F. App'x 899, 907-08 (5th Cir. 2010) (although "[rule] 30(b)(6) allows corporate representatives to testify to matters within the corporation's knowledge during deposition, and Rule 32(a)(3) permits an adverse party to use that deposition testimony during trial...a corporate representative may not testify to matters out-side his own personal knowledge 'to the

Fact No. 18

extent that information [is] hearsay not falling within one of the authorized exceptions.'")

Here, Bearden testified under Fed.R.Civ.P. 30(b)(6) as Goldwater's designated representative. Joint Exhibits Part D at p. 958:17:20 (Exhibit N, Bearden depo excerpt), Part D at p. 960:2-14 (Alekseyeff decl. re Exhibit N).  Bearden was not involved in Elizarov's loan transaction and, therefore, lacks personal knowledge to testify to these matters.  Joint Exhibits Part D at p. 963:25-964:6 (Goldwater depo, Bearden, excerpt). Accordingly, while *defendants* may rely on Bearden's testimony because it is binding on Goldwater, *Snapp v. United Transp. Union*, 889 F.3d 1088, 1104 (9th Cir. 2018) ("an organization's deposition testimony is binding in the sense that whatever its deponent says can be used against the organization"), Goldwater may not rely on Bearden's testimony to establish its facts.

Therefore, the proposed testimony is inadmissible.

**Bearden's testimony violates the best evidence rule.**

Bearden's testimony was based solely on the reading of some "final application." This testimony is *inadmissible* because it violated the best evidence rule.  Fed.R.Evid. 1002 (original is required); Fed.R.Evid. 1003 (excluded for non-production of original); *U.S. v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004) ("the [best evidence] rule does apply when a witness seeks to testify about the contents of a writing, recording or photograph without producing the physical item itself — particularly when the witness was not privy to the events those contents describe.") Therefore, if Goldwater wanted the court to consider the contents of the "final application" that was presented to Bearden at the deposition, Goldwater had to present and cite the document itself "or explain its absence."  *Bennett, supra,* at p. 953.

**Exhibit 6 (requests for admission) does not support this fact.**

First, this exhibit did not include any answers; the exhibit includes only unanswered questions. Therefore, this

document does not show that Elizarov admitted any of these requests. Second, if Goldwater asserts that Elizarov automatically admitted these requests by his failure to provide a timely answer, Fed.R.Civ. P. 36(a)(3) (failure to respond within 30 days is an automatic admission), Goldwater offered no evidence to this court that Elizarov did not respond to this request.

**Exhibit 44 (email correspondence with attachments) is unauthenticated.**

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. Fed.R.Evid. 901. Therefore, a document submitted for summary judgment must be authenticated. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989). Merely attaching a document to a declaration is insufficient. *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970). "A document *authenticated through personal knowledge* must be attached to an affidavit, and the affiant must be a competent '"witness who wrote [the document], signed it, used it, or saw others do so."'" *Las Vegas Sands v. Nehme*, 632 F.3d

Fact No. 18

526, 533 (9th Cir. 2011), original italics, citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1).

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case. Joint Exhibits Part D at p. 864:9-11 (standing order).  Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward.  Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are what Goldwater claims they are, *to wit:* email correspondence.

Fact No. 18

| | |
|---|---|
| 1 | 19. Goldwater requested account statements for the purposes of evaluating Elizarov's ability to repay and qualify for the mortgage, and to confirm the transfer of funds to escrow. |
| | **Goldwater deposition is inadmissible.** |

19. Goldwater requested account statements for the purposes of evaluating Elizarov's ability to repay and qualify for the mortgage, and to confirm the transfer of funds to escrow.

*Evidence*

Joint Exhibit Part A at 95:24-99:4 (Excerpts from the Deposition Transcript of Cory Bearden).

**Goldwater deposition is inadmissible.**

"It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Rule 32 governs the admissibility of deposition transcripts. Under this rule, deposition is admissible only "to the extent it would be admissib le under the Federal Rules of Evidence if the deponent were present and testifying… ." Fed.R.Civ.P. 32(a)(1)(B). Evidence Rule 602, in turn, requires testimony to be based on personal knowledge. Fed.R.Evid. 602. *See also Carmen v. San Francisco Unified School Dist*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("Federal Rule of Civil Procedure 32(a) makes deposition testimony usable in motion proceedings 'so far as admissible under the rules of evidence,' and Federal Rule of Evidence 602 prevents a witness from testifying on a matter 'unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.'); *Samuels v. Doctors Hospital, Inc.*, 588 F.2d 485, 487 n.2 (5th Cir. 1979) ("The

requirement of Rule 56(e) that affidavit testimony be competent and admissible evidence applies with equal force to deposition testimony.  As an exception to this rule, "[a]n *adverse party* may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)."  Fed.R.Civ.P. 32(a)(3).  By contrast, the rules do not permit the corporate deponent to use *its own self-serving hearsay-based testimony* to prove the necessary facts.  *Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, 907-08 (5th Cir. 2010) (although "[rule] 30(b)(6) allows corporate representatives to testify to matters within the corporation's knowledge during deposition, and Rule 32(a)(3) permits an adverse party to use that deposition testimony during trial...a corporate representative may not testify to matters out-side his own personal knowledge 'to the extent that information [is] hearsay not falling within one of the authorized exceptions.'")

Here, Bearden testified under Fed.R.Civ.P. 30(b)(6) as Goldwater's designated

Fact No. 19

representative. Joint Exhibits Part D at p. 958:17:20 (Exhibit N, Bearden depo excerpt), Part D at p. 960:2-14 (Alekseyeff decl. re Exhibit N).  Bearden was not involved in Elizarov's loan transaction and, therefore, lacks personal knowledge to testify to these matters.  Joint Exhibits Part D at p. 963:25-964:6 (Goldwater depo, Bearden, excerpt).

Accordingly, while *defendants* may rely on Bearden's testimony because it is binding on Goldwater, *Snapp v. United Transp. Union*, 889 F.3d 1088, 1104 (9th Cir. 2018) ("an organization's deposition testimony is binding in the sense that whatever its deponent says can be used against the organization"), Goldwater may not rely on Bearden's testimony to establish its facts.

Therefore, the proposed testimony is inadmissible.

Fact No. 19

| | |
|---|---|
| 20. For the period off April to June 2019, the JP Morgan Securities Account held a balance of less then $2.00.<br><br>*Evidence*<br><br>Joint Exhibit Part C at pages 607 - 629 (JP Morgan Securities Records: Master Services Agreement and Account Statements (April to June 2019) and corresponding Custodian of Records Affidavit) | **DISPUTED.**<br><br>**The fact is immaterial/lack of notice.**<br><br>"Material facts...are those which may affect the outcome of the case." *Cady v. Hartford Life & Accidental Ins. Co*., 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The relevant substantive law will determine which facts are material for purposes of summary judgment." *Id.* Furthermore, "a plaintiff cannot [base] a motion for summary judgment (on a fraud claim) on allegations of fraud that were never pled with particularity in the first place." *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1027 (N.D. Cal. 2012); *see also Navajo v. U.S.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Picken v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006) (failure to comply with notice requirements under Rule 8 precludes |

DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS

80

summary judgment based on new allegations); Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) (evidence relating to allegations not alleged in the complaint is i.

Rule. 9(b) required Goldwater to give notice of the *exact statements* that Goldwater claimed were fraudulent and explain why those statements were fraudulent. Fed.R.Civ.P. 9(b); *In re Glenfed, Inc. Securities Litigation,* 42 F.3d 1541, 1548 (9th Cir. 1994) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."); *Camp v. Pacific Financial Group*, 956 F. Supp. 1541, 1551 (C.D. Cal. 1997) (same); *Teamsters Local 617 Pension v. Apollo Group*, 633 F. Supp. 2d 763, 783 (D. Ariz. 2009); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1057 (C.D. Cal. 2015).

In its first amended complaint, Goldwater claimed that Elizarov misrepresented his marital status, whether he was a party to a pending lawsuit, and whether he was in

Fact No. 20

default on federal loans. EFD 44 at pp. 4:25-8:18. Now, however, Goldwater also wants to claim that Elizarov misrepresented his assets in the loan application. Although Goldwater mentioned JP Morgan chase account, Goldwater did not allege that the representation was false. Goldwater subsequently confirmed these to be the only false statements in response to interrogatories. Joint Exhibits Part D at p. 945:16-26 (Exhibit L, Admissions), Part D at p. 949:1-10 (Alekseyeff decl re Exhibit L). The only other place where this account was mentioned was in the allegations relating to the May 2020 mortgage assistance application, and then only to suggest that the account (and its funds) were still available when Elizarov applied for the assistance. EFD 44 at p. 6:21-24. And since Goldwater did not allege that the representation regarding funds in the JP Morgan account *at the time Elizarov applied for the loan* was false, Elizarov had no notice of this claim.

Therefore, Goldwater may not rely on this new factual theory on summary judgment.

---

DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS

Fact No. 20

| | |
|---|---|
| 1 | **Documents in Exhibit 45 (bank statements)** |
| 2 | **were not disclosed in discovery.** |
| 3 | |
| 4 | In its final disclosure statement, Goldwater |
| 5 | disclosed that it would rely on materials |
| 6 | "produced to Goldwater in response to |
| 7 | various subpoenas *duces tecum* Goldwater |
| 8 | caused to be issued and were previously |
| 9 | produced in this litigation are bates stamped |
| 10 | as follows: ALLY_000001-000055; |
| 11 | EOTW_000001-000654; CITY OF WILTON |
| 12 | MANORS_000001-000058; CLOSED |
| 13 | BUYER_000001-000002; DESERT |
| 14 | WATER_000001-000021; |
| 15 | ENGLISH_000001-000021; GABLES |
| 16 | RESIDENTIAL_000001-000092; |
| 17 | eCIV000001-000364; PaeDae_000001- |
| 18 | 000028; JPMorgan_00001-000882; |
| 19 | JPMS_000001-000865. In addition to these |
| 20 | documents, Goldwater refers the parties to |
| 21 | the additional documents Goldwater received |
| 22 | in response to various subpoenas duces tecum |
| 23 | Goldwater caused to be issued and were |
| 24 | previously produced in this litigation from |
| 25 | the following parties: Paypal d/b/a Venmo, |
| 26 | Ally Bank, and DocuSign. Finally, certain |
| 27 | documents were produced to Goldwater in |
| 28 | response to a subpoenas duces tecum dated |

DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS

Fact No. 20

November 23, 2022, by JP Morgan Securities, LLC, but these documents have not been produced to all parties." Joint Exhibits Part D at p. 886:24-888:7 (Defense Exhibit B, fourth supplemental disclosures), Part D at p. 892:2-10 (Alekseyeff decl re Exhibit B)). According to these disclosures, Goldwater intended to rely only on those records that included bates stamps plus, potentially, JP Morgan Chase records that were produced on November 23, 2022. The records submitted to this court as Exhibit 45 do not include any bates stamps of the kind identified in Goldwater's disclosure statement. Furthermore, according to the custodian's declaration, these records were produced on or after May 17, 2023, not on November 23, 2022. Joint Exhibits Part C at p. 608 (Exhibit 45, custodian declaration). Therefore, these records are not admissible. Fed.R.Civ.P. 26(a)(1)(A)(ii) (documents supporting a claim must be disclosed); Fed.R.Civ.P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial").

Fact No. 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Goldwater obtained the documents in Exhibit 45 unlawfully.**

On April 4, 2023, Goldwater served a notice of a deposition subpoena to JP Morgan Securities, LLC, which was scheduled in Los Angeles at 10:00 am on May 15, 2023. Joint Exhibits Part D at p. 923-933 (Defense Exhibit H, notice of and deposition subpoena), Part D at p. 935:2-9 (Alekseyeff decl re Exhibit H). The subpoena instructed the deponent to "bring with you to the deposition the following documents...and must permit inspection, copying, testing, or sampling of the material..." Joint Exhibits Part D at p. 925, 928-929 (Defense Exhibit H, notice of and deposition subpoena), Part D at p. 935:2-9 (Defense Exhibit H, authenticating declaration). On May 8, 2023, Goldwater's counsel, Abbey Krysak, confirmed that the deposition would move forward but would occur remotely. Joint Exhibits Part D at p. 936-937 (Defense Exhibit J, email correspondence), Part D at p. 938:2-14 (Defense Exhibit J, Alekseyeff decl.) Then at 9:11 am on May 15, 2023, attorney Krysak suddenly announced that the deposition

would no longer move forward, claiming that the deposition had to be continued "pursuant to the deponent's request." Joint Exhibit Part D at p. 939-940 (Defense Exhibit K, email chain), Part D at p. 942:2-8 (Defense Exhibit K, authenticating declaration). That deposition was not rescheduled and has never occurred. Joint Exhibits Part B at p. 942:9-10 (Alekseyeff decl). Therefore, the deponent has never appeared nor produced the subpoenaed records at the deposition.

Fact No. 20

| 21. The JP Morgan Securities Account was owned by Ilya Alekseyeff, and Mr. Elizarov was never a signatory or owner of that account.<br><br>*Evidence*<br><br>Joint Exhibit Part C at pages 607 - 609 (JP Morgan Securities Records: Master Services Agreement and Account Statements (April to June 2019) and corresponding Custodian of Records Affidavit) | **DISPUTED.**<br><br>**The fact is immaterial/lack of notice.**<br><br>"Material facts...are those which may affect the outcome of the case." *Cady v. Hartford Life & Accidental Ins. Co*., 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The relevant substantive law will determine which facts are material for purposes of summary judgment." *Id.* Furthermore, "a plaintiff cannot [base] a motion for summary judgment (on a fraud claim) on allegations of fraud that were never pled with particularity in the first place." *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1027 (N.D. Cal. 2012); *see also Navajo v. U.S*., 535 F.3d 1058, 1080 (9th Cir. 2008) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Picken v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006) (failure to comply with notice requirements under Rule 8 precludes |

summary judgment based on new allegations); Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) (evidence relating to allegations not alleged in the complaint is i.

Rule 9(b) required Goldwater to give notice of the *exact statements* that Goldwater claimed were fraudulent and explain why those statements were fraudulent. Fed.R.Civ.P. 9(b); *In re Glenfed, Inc. Securities Litigation,* 42 F.3d 1541, 1548 (9th Cir. 1994) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."); *Camp v. Pacific Financial Group*, 956 F. Supp. 1541, 1551 (C.D. Cal. 1997) (same); *Teamsters Local 617 Pension v. Apollo Group*, 633 F. Supp. 2d 763, 783 (D. Ariz. 2009); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1057 (C.D. Cal. 2015).

In its first amended complaint, Goldwater claimed that Elizarov misrepresented his marital status, whether he was a party to a pending lawsuit, and whether he was in

default on federal loans. EFD 44 at pp. 4:25-8:18. Now, however, Goldwater also wants to claim that Elizarov misrepresented his assets in the loan application. Although Goldwater mentioned JP Morgan chase account, Goldwater did not allege that the representation was false. Goldwater subsequently confirmed these to be the only false statements in response to interrogatories. Joint Exhibits Part D at p. 945:16-26 (Exhibit L, Admissions), Part D at p. 949:1-10 (Alekseyeff decl re Exhibit L). The only other place where this account was mentioned was in the allegations relating to the May 2020 mortgage assistance application, and then only to suggest that the account (and its funds) were still available when Elizarov applied for the assistance. EFD 44 at p. 6:21-24. And since Goldwater did not allege that the representation regarding funds in the JP Morgan account *at the time Elizarov applied for the loan* was false, Elizarov had no notice of this claim.

Therefore, Goldwater may not rely on this new factual theory on summary judgment.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Documents in Exhibit 45 (bank statements) were not disclosed in discovery.**

In its final disclosure statement, Goldwater disclosed that it would rely on materials "produced to Goldwater in response to various subpoenas *duces tecum* Goldwater caused to be issued and were previously produced in this litigation are bates stamped as follows: ALLY_000001-000055; EOTW_000001-000654; CITY OF WILTON MANORS_000001-000058; CLOSED BUYER_000001-000002; DESERT WATER_000001-000021; ENGLISH_000001-000021; GABLES RESIDENTIAL_000001-000092; eCIV000001-000364; PaeDae_000001-000028; JPMorgan_00001-000882; JPMS_000001-000865. In addition to these documents, Goldwater refers the parties to the additional documents Goldwater received in response to various subpoenas duces tecum Goldwater caused to be issued and were previously produced in this litigation from the following parties: Paypal d/b/a Venmo, Ally Bank, and DocuSign. Finally, certain documents were produced to Goldwater in response to a subpoenas duces tecum dated

1    November 23, 2022, by JP Morgan
2    Securities, LLC, but these documents have
3    not been produced to all parties." Joint
4    Exhibits Part D at p. 886:24-888:7 (Defense
5    Exhibit B, fourth supplemental disclosures),
6    Part D at p. 892:2-10 (Alekseyeff decl re
7    Exhibit B)). According to these disclosures,
8    Goldwater intended to rely only on those
9    records that included bates stamps plus,
10   potentially, JP Morgan Chase records that
11   were produced on November 23, 2022. The
12   records submitted to this court as Exhibit 45
13   do not include any bates stamps of the kind
14   identified in Goldwater's disclosure
15   statement. Furthermore, according to the
16   custodian's declaration, these records were
17   produced on or after May 17, 2023, not on
18   November 23, 2022. Joint Exhibits Part C at
19   p. 608 (Exhibit 45, custodian declaration).
20   Therefore, these records are not admissible.
21   Fed.R.Civ.P. 26(a)(1)(A)(ii) (documents
22   supporting a claim must be disclosed);
23   Fed.R.Civ.P. 37(c)(1) ("If a party fails to
24   provide information or identify a witness as
25   required by Rule 26(a) or (e), the party is not
26   allowed to use that information or witness to
27   supply evidence on a motion, at a hearing, or
28   at a trial").

DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS

Fact No. 21

**Goldwater obtained the documents in Exhibit 45 unlawfully.**

On April 4, 2023, Goldwater served a notice of a deposition subpoena to JP Morgan Securities, LLC, which was scheduled in Los Angeles at 10:00 am on May 15, 2023. Joint Exhibits Part D at p. 923-933 (Defense Exhibit H, notice of and deposition subpoena), Part D at p. 935:2-9 (Alekseyeff decl re Exhibit H). The subpoena instructed the deponent to "bring with you to the deposition the following documents...and must permit inspection, copying, testing, or sampling of the material..." Joint Exhibits Part D at p. 925, 928-929 (Defense Exhibit H, notice of and deposition subpoena), Part D at p. 935:2-9 (Defense Exhibit H, authenticating declaration). On May 8, 2023, Goldwater's counsel, Abbey Krysak, confirmed that the deposition would move forward but would occur remotely. Joint Exhibits Part D at p. 936-937 (Defense Exhibit J, email correspondence), Part D at p. 938:2-14 (Defense Exhibit J, Alekseyeff decl.) Then at 9:11 am on May 15, 2023, attorney Krysak suddenly announced that the deposition

Fact No. 21

would no longer move forward, claiming that the deposition had to be continued "pursuant to the deponent's request." Joint Exhibit Part D at p. 939-940 (Defense Exhibit K, email chain), Part D at p. 942:2-8 (Defense Exhibit K, authenticating declaration). That deposition was not rescheduled and has never occurred. Joint Exhibits Part B at p. 942:9-10 (Alekseyeff decl). Therefore, the deponent has never appeared nor produced the subpoenaed records at the deposition.

Fact No. 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

22. The account statements Mr. Elizarov delivered to Goldwater were altered, to reflect the time period and transactions relevant to Elizarov's Loan Application.

*Evidence*

Joint Exhibit Part C at 518 - 606 Elizarov Email Correspondence and attached account statements

Joint Exhibit Part C at pages 607-629 (JP Morgan Securities Records: Master Services Agreement and Account Statements (April to June 2019) and corresponding Custodian of Records Affidavit)

Joint Exhibit Part C at pages 630-716 JP Morgan Securities Records: Account Statements (June 2018 - August 2018) and corresponding Custodian of Records Affidavit

**DISPUTED.**

**The fact is immaterial/lack of notice.**

"Material facts...are those which may affect the outcome of the case." *Cady v. Hartford Life & Accidental Ins. Co*., 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The relevant substantive law will determine which facts are material for purposes of summary judgment." *Id.* Furthermore, "a plaintiff cannot [base] a motion for summary judgment (on a fraud claim) on allegations of fraud that were never pled with particularity in the first place." *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1027 (N.D. Cal. 2012); *see also Navajo v. U.S.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Picken v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006) (failure to comply with notice requirements under Rule 8 precludes

summary judgment based on new allegations); Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) (evidence relating to allegations not alleged in the complaint is i.

Rule 9(b) required Goldwater to give notice of the *exact statements* that Goldwater claimed were fraudulent and explain why those statements were fraudulent. Fed.R.Civ.P. 9(b); *In re Glenfed, Inc. Securities Litigation,* 42 F.3d 1541, 1548 (9th Cir. 1994) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."); *Camp v. Pacific Financial Group*, 956 F. Supp. 1541, 1551 (C.D. Cal. 1997) (same); *Teamsters Local 617 Pension v. Apollo Group*, 633 F. Supp. 2d 763, 783 (D. Ariz. 2009); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1057 (C.D. Cal. 2015).

In its first amended complaint, Goldwater claimed that Elizarov misrepresented his marital status, whether he was a party to a pending lawsuit, and whether he was in

Fact No. 22

default on federal loans. EFD 44 at pp. 4:25-8:18. Now, however, Goldwater also wants to claim that Elizarov misrepresented his assets in the loan application. Although Goldwater mentioned JP Morgan chase account, Goldwater did not allege that the representation was false. Goldwater subsequently confirmed these to be the only false statements in response to interrogatories. Joint Exhibits Part D at p. 945:16-26 (Exhibit L, Admissions), Part D at p. 949:1-10 (Alekseyeff decl re Exhibit L). The only other place where this account was mentioned was in the allegations relating to the May 2020 mortgage assistance application, and then only to suggest that the account (and its funds) were still available when Elizarov applied for the assistance. EFD 44 at p. 6:21-24. And since Goldwater did not allege that the representation regarding funds in the JP Morgan account *at the time Elizarov applied for the loan* was false, Elizarov had no notice of this claim.

Therefore, Goldwater may not rely on this new factual theory on summary judgment.

**Documents in Exhibits 45 and 46 (bank**

**statements) were not disclosed in discovery.**

In its final disclosure statement, Goldwater disclosed that it would rely on materials "produced to Goldwater in response to various subpoenas *duces tecum* Goldwater caused to be issued and were previously produced in this litigation are bates stamped as follows: ALLY_000001-000055; EOTW_000001-000654; CITY OF WILTON MANORS_000001-000058; CLOSED BUYER_000001-000002; DESERT WATER_000001-000021; ENGLISH_000001-000021; GABLES RESIDENTIAL_000001-000092; eCIV000001-000364; PaeDae_000001-000028; JPMorgan_00001-000882; JPMS_000001-000865. In addition to these documents, Goldwater refers the parties to the additional documents Goldwater received in response to various subpoenas duces tecum Goldwater caused to be issued and were previously produced in this litigation from the following parties: Paypal d/b/a Venmo, Ally Bank, and DocuSign. Finally, certain documents were produced to Goldwater in response to a subpoenas duces tecum dated

Fact No. 22

November 23, 2022, by JP Morgan Securities, LLC, but these documents have not been produced to all parties." Joint Exhibits Part D at p. 886:24-888:7 (Defense Exhibit B, fourth supplemental disclosures), Part D at p. 892:2-10 (Alekseyeff decl re Exhibit B)). According to these disclosures, Goldwater intended to rely only on those records that included bates stamps plus, potentially, JP Morgan Chase records that were produced on November 23, 2022. The records submitted to this court as Exhibit 45 do not include any bates stamps of the kind identified in Goldwater's disclosure statement. Furthermore, according to the custodian's declaration, these records were produced on or after May 17, 2023, not on November 23, 2022. Joint Exhibits Part C at p. 608 (Exhibit 45, custodian declaration). Therefore, these records are not admissible. Fed.R.Civ.P. 26(a)(1)(A)(ii) (documents supporting a claim must be disclosed); Fed.R.Civ.P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial").

Fact No. 22

**Goldwater obtained the documents in Exhibits 45 and 46 (bank statements) unlawfully.**

On April 4, 2023, Goldwater served a notice of a deposition subpoena to JP Morgan Securities, LLC, which was scheduled in Los Angeles at 10:00 am on May 15, 2023. Joint Exhibits Part D at p. 923-933 (Defense Exhibit H, notice of and deposition subpoena), Part D at p. 935:2-9 (Alekseyeff decl re Exhibit H). The subpoena instructed the deponent to "bring with you to the deposition the following documents...and must permit inspection, copying, testing, or sampling of the material..." Joint Exhibits Part D at p. 925, 928-929 (Defense Exhibit H, notice of and deposition subpoena), Part D at p. 935:2-9 (Defense Exhibit H, authenticating declaration). On May 8, 2023, Goldwater's counsel, Abbey Krysak, confirmed that the deposition would move forward but would occur remotely. Joint Exhibits Part D at p. 936-937 (Defense Exhibit J, email correspondence), Part D at p. 938:2-14 (Defense Exhibit J, Alekseyeff decl.) Then at 9:11 am on May 15, 2023, attorney Krysak

Fact No. 22

suddenly announced that the deposition would no longer move forward, claiming that the deposition had to be continued "pursuant to the deponent's request." Joint Exhibit Part D at p. 939-940 (Defense Exhibit K, email chain), Part D at p. 942:2-8 (Defense Exhibit K, authenticating declaration). That deposition was not rescheduled and has never occurred. Joint Exhibits Part B at p. 942:9-10 (Alekseyeff decl). Therefore, the deponent has never appeared nor produced the subpoenaed records at the deposition.

**Exhibit 44 (email chain with attachment) is unauthenticated.**

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. Fed.R.Evid. 901. Therefore, a document submitted for summary judgment must be authenticated. *Hal Roach Studios, Inc. v. Richard Feiner & Co*., 896 F.2d 1542, 1550–51 (9th Cir. 1989). Merely attaching a document to a declaration is insufficient. *United States v. Dibbl*e, 429 F.2d 598, 602

(9th Cir. 1970).  "A document *authenticated through personal knowledge* must be attached to an affidavit, and the affiant must be a competent '"witness who wrote [the document], signed it, used it, or saw others do so."'"  *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics, citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1).

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case. Joint Exhibits Part D at p. 864:9-11 (standing order).  Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward.  Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are

Fact No. 22

what Goldwater claims they are, *to wit:* email correspondence.

**Exhibit 46 (JP Morgan documents) is unauthenticated.**

Although Goldwater presented this document as JP Morgan records and asserted that the records included the corresponding custodian of records affidavit, not such affidavit was provided. Nor did Goldwater cite any other evidence to show what these documents were. (See above for law.)

Fact No. 22

| | |
|---|---|
| 1 | 23. The true account statements for June to August of 2018 were altered to appear as statements from April to June 2019. |
| | **DISPUTED.** |
| 2 | |
| 3 | **The fact is immaterial/lack of notice.** |
| 4 | |
| 5 | *Evidence* |
| 6 | |
| 7 | |
| 8 | Joint Exhibit Part C at pages 518 - 606 |
| 9 | |
| 10 | Elizarov Email Correspondence and attached account statements |
| 11 | |
| 12 | |
| 13 | Joint Exhibit Part C at pages 607-629 (JP Morgan Securities |
| 14 | |
| 15 | Records: Master Services Agreement and Account |
| 16 | |
| 17 | Statements (April to June 2019) |
| 18 | and corresponding Custodian of |
| 19 | Records Affidavit) |
| 20 | |
| 21 | Joint Exhibit Part C at pages 630-716 JP Morgan Securities |
| 22 | |
| 23 | Records: Account Statements |
| 24 | (June 2018 - August 2018) and |
| 25 | corresponding Custodian of |
| 26 | Records Affidavit |
| 27 | |
| 28 | |

The true account statements for June to August of 2018 were altered to appear as statements from April to June 2019.

**DISPUTED.**

**The fact is immaterial/lack of notice.**

"Material facts...are those which may affect the outcome of the case." *Cady v. Hartford Life & Accidental Ins. Co.*, 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The relevant substantive law will determine which facts are material for purposes of summary judgment." *Id.* Furthermore, "a plaintiff cannot [base] a motion for summary judgment (on a fraud claim) on allegations of fraud that were never pled with particularity in the first place." *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1027 (N.D. Cal. 2012); *see also Navajo v. U.S.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Picken v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006) (failure to comply with notice requirements under Rule 8 precludes

summary judgment based on new allegations); Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) (evidence relating to allegations not alleged in the complaint is i.

Rule 9(b) required Goldwater to give notice of the *exact statements* that Goldwater claimed were fraudulent and explain why those statements were fraudulent. Fed.R.Civ.P. 9(b); *In re Glenfed, Inc. Securities Litigation,* 42 F.3d 1541, 1548 (9th Cir. 1994) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."); *Camp v. Pacific Financial Group*, 956 F. Supp. 1541, 1551 (C.D. Cal. 1997) (same); *Teamsters Local 617 Pension v. Apollo Group*, 633 F. Supp. 2d 763, 783 (D. Ariz. 2009); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1057 (C.D. Cal. 2015).

In its first amended complaint, Goldwater claimed that Elizarov misrepresented his marital status, whether he was a party to a pending lawsuit, and whether he was in

default on federal loans. EFD 44 at pp. 4:25-8:18. Now, however, Goldwater also wants to claim that Elizarov misrepresented his assets in the loan application. Although Goldwater mentioned JP Morgan chase account, Goldwater did not allege that the representation was false. Goldwater subsequently confirmed these to be the only false statements in response to interrogatories. Joint Exhibits Part D at p. 945:16-26 (Exhibit L, Admissions), Part D at p. 949:1-10 (Alekseyeff decl re Exhibit L). The only other place where this account was mentioned was in the allegations relating to the May 2020 mortgage assistance application, and then only to suggest that the account (and its funds) were still available when Elizarov applied for the assistance. EFD 44 at p. 6:21-24. And since Goldwater did not allege that the representation regarding funds in the JP Morgan account *at the time Elizarov applied for the loan* was false, Elizarov had no notice of this claim.

Therefore, Goldwater may not rely on this new factual theory on summary judgment.

**Documents in Exhibit 45 and 46 (bank**

1  **statements) were not disclosed in**

2  **discovery.**

3

4  In its final disclosure statement, Goldwater

5  disclosed that it would rely on materials

6  "produced to Goldwater in response to

7  various subpoenas *duces tecum* Goldwater

8  caused to be issued and were previously

9  produced in this litigation are bates stamped

10  as follows: ALLY_000001-000055;

11  EOTW_000001-000654; CITY OF WILTON

12  MANORS_000001-000058; CLOSED

13  BUYER_000001-000002; DESERT

14  WATER_000001-000021;

15  ENGLISH_000001-000021; GABLES

16  RESIDENTIAL_000001-000092;

17  eCIV000001-000364; PaeDae_000001-

18  000028; JPMorgan_00001-000882;

19  JPMS_000001-000865. In addition to these

20  documents, Goldwater refers the parties to

21  the additional documents Goldwater received

22  in response to various subpoenas duces tecum

23  Goldwater caused to be issued and were

24  previously produced in this litigation from

25  the following parties: Paypal d/b/a Venmo,

26  Ally Bank, and DocuSign. Finally, certain

27  documents were produced to Goldwater in

28  response to a subpoenas duces tecum dated

Fact No. 23

November 23, 2022, by JP Morgan Securities, LLC, but these documents have not been produced to all parties." Joint Exhibits Part D at p. 886:24-888:7 (Defense Exhibit B, fourth supplemental disclosures), Part D at p. 892:2-10 (Alekseyeff decl re Exhibit B)). According to these disclosures, Goldwater intended to rely only on those records that included bates stamps plus, potentially, JP Morgan Chase records that were produced on November 23, 2022. The records submitted to this court as Exhibit 45 do not include any bates stamps of the kind identified in Goldwater's disclosure statement. Furthermore, according to the custodian's declaration, these records were produced on or after May 17, 2023, not on November 23, 2022. Joint Exhibits Part C at p. 608 (Exhibit 45, custodian declaration). Therefore, these records are not admissible. Fed.R.Civ.P. 26(a)(1)(A)(ii) (documents supporting a claim must be disclosed); Fed.R.Civ.P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial").

Fact No. 23

**Goldwater obtained documents in Exhibits 45 and 46 unlawfully.**

On April 4, 2023, Goldwater served a notice of a deposition subpoena to JP Morgan Securities, LLC, which was scheduled in Los Angeles at 10:00 am on May 15, 2023. Joint Exhibits Part D at p. 923-933 (Defense Exhibit H, notice of and deposition subpoena), Part D at p. 935:2-9 (Alekseyeff decl re Exhibit H). The subpoena instructed the deponent to "bring with you to the deposition the following documents...and must permit inspection, copying, testing, or sampling of the material..." Joint Exhibits Part D at p. 925, 928-929 (Defense Exhibit H, notice of and deposition subpoena), Part D at p. 935:2-9 (Defense Exhibit H, authenticating declaration). On May 8, 2023, Goldwater's counsel, Abbey Krysak, confirmed that the deposition would move forward but would occur remotely. Joint Exhibits Part D at p. 936-937 (Defense Exhibit J, email correspondence), Part D at p. 938:2-14 (Defense Exhibit J, Alekseyeff decl.) Then at 9:11 am on May 15, 2023, attorney Krysak suddenly announced that the deposition

Fact No. 23

would no longer move forward, claiming that
the deposition had to be continued "pursuant
to the deponent's request." Joint Exhibit Part
D at p. 939-940 (Defense Exhibit K, email
chain), Part D at p. 942:2-8 (Defense Exhibit
K, authenticating declaration). That
deposition was not rescheduled and has never
occurred. Joint Exhibits Part B at p. 942:9-10
(Alekseyeff decl). Therefore, the deponent
has never appeared nor produced the
subpoenaed records at the deposition.

**Exhibit 44 (email chain with attachment) is
unauthenticated.**

"A trial court can only consider admissible
evidence in ruling on a motion for summary
judgment." *Orr v. Bank of America, NT &
SA*, 285 F.3d 764, 773 (9th Cir. 2002).  To be
admissible, evidence must be properly
authenticated.  Fed.R.Evid. 901.  Therefore, a
document submitted for summary judgment
must be authenticated.  *Hal Roach Studios,
Inc. v. Richard Feiner & Co*., 896 F.2d 1542,
1550–51 (9th Cir. 1989).  Merely attaching a
document to a declaration is insufficient.
*United States v. Dibbl*e, 429 F.2d 598, 602
(9th Cir. 1970).  "A document *authenticated*

Fact No. 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*through personal knowledge* must be attached to an affidavit, and the affiant must be a competent "'witness who wrote [the document], signed it, used it, or saw others do so.'" *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics, citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1).

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case. Joint Exhibits Part D at p. 864:9-11 (standing order).  Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward.  Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are

Fact No. 23

what Goldwater claims they are, *to wit:* email correspondence.

**Exhibit 46 (JP Morgan documents) is unauthenticated.**

Although Goldwater presented this document as JP Morgan records and asserted that the records included the corresponding custodian of records affidavit, not such affidavit was provided. Nor did Goldwater cite any other evidence to show what these documents were. (See above for law.)

Fact No. 23

| | |
|---|---|
| 24. On the statements Goldwater received from Mr. Elizarov, Alekseyeff's name was changed to Elizarov's name on each page.<br><br>*Evidence*<br><br>Joint Exhibit Part C at pages 518 - 606<br>Elizarov Email Correspondence and attached account statements<br><br>Joint Exhibit Part C at pages 607-629 (JP Morgan Securities Records: Master Services Agreement and Account Statements (April to June 2019) and corresponding Custodian of Records Affidavit)<br><br>Joint Exhibit Part C at pages 630-716 JP Morgan Securities Records: Account Statements (June 2018 - August 2018) and corresponding Custodian of Records Affidavit | **DISPUTED.**<br><br>**The fact is immaterial/lack of notice.**<br><br>"Material facts...are those which may affect the outcome of the case." *Cady v. Hartford Life & Accidental Ins. Co.*, 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The relevant substantive law will determine which facts are material for purposes of summary judgment." *Id.* Furthermore, "a plaintiff cannot [base] a motion for summary judgment (on a fraud claim) on allegations of fraud that were never pled with particularity in the first place." *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1027 (N.D. Cal. 2012); *see also Navajo v. U.S.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Picken v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006) (failure to comply with notice requirements under Rule 8 precludes |

summary judgment based on new allegations); Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) (evidence relating to allegations not alleged in the complaint is i.

Rule 9(b) required Goldwater to give notice of the *exact statements* that Goldwater claimed were fraudulent and explain why those statements were fraudulent. Fed.R.Civ.P. 9(b); *In re Glenfed, Inc. Securities Litigation,* 42 F.3d 1541, 1548 (9th Cir. 1994) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."); *Camp v. Pacific Financial Group*, 956 F. Supp. 1541, 1551 (C.D. Cal. 1997) (same); *Teamsters Local 617 Pension v. Apollo Group*, 633 F. Supp. 2d 763, 783 (D. Ariz. 2009); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1057 (C.D. Cal. 2015).

In its first amended complaint, Goldwater claimed that Elizarov misrepresented his marital status, whether he was a party to a pending lawsuit, and whether he was in

Fact No. 24

default on federal loans. EFD 44 at pp. 4:25-8:18. Now, however, Goldwater also wants to claim that Elizarov misrepresented his assets in the loan application. Although Goldwater mentioned JP Morgan chase account, Goldwater did not allege that the representation was false. Goldwater subsequently confirmed these to be the only false statements in response to interrogatories. Joint Exhibits Part D at p. 945:16-26 (Exhibit L, Admissions), Part D at p. 949:1-10 (Alekseyeff decl re Exhibit L). The only other place where this account was mentioned was in the allegations relating to the May 2020 mortgage assistance application, and then only to suggest that the account (and its funds) were still available when Elizarov applied for the assistance. EFD 44 at p. 6:21-24. And since Goldwater did not allege that the representation regarding funds in the JP Morgan account *at the time Elizarov applied for the loan* was false, Elizarov had no notice of this claim.

Therefore, Goldwater may not rely on this new factual theory on summary judgment.

**Documents in Exhibits 45 and 46 (bank**

**statements) were not disclosed in discovery.**

In its final disclosure statement, Goldwater disclosed that it would rely on materials "produced to Goldwater in response to various subpoenas *duces tecum* Goldwater caused to be issued and were previously produced in this litigation are bates stamped as follows: ALLY_000001-000055; EOTW_000001-000654; CITY OF WILTON MANORS_000001-000058; CLOSED BUYER_000001-000002; DESERT WATER_000001-000021; ENGLISH_000001-000021; GABLES RESIDENTIAL_000001-000092; eCIV000001-000364; PaeDae_000001-000028; JPMorgan_00001-000882; JPMS_000001-000865. In addition to these documents, Goldwater refers the parties to the additional documents Goldwater received in response to various subpoenas duces tecum Goldwater caused to be issued and were previously produced in this litigation from the following parties: Paypal d/b/a Venmo, Ally Bank, and DocuSign. Finally, certain documents were produced to Goldwater in response to a subpoenas duces tecum dated

Fact No. 24

November 23, 2022, by JP Morgan Securities, LLC, but these documents have not been produced to all parties." Joint Exhibits Part D at p. 886:24-888:7 (Defense Exhibit B, fourth supplemental disclosures), Part D at p. 892:2-10 (Alekseyeff decl re Exhibit B)). According to these disclosures, Goldwater intended to rely only on those records that included bates stamps plus, potentially, JP Morgan Chase records that were produced on November 23, 2022. The records submitted to this court as Exhibit 45 do not include any bates stamps of the kind identified in Goldwater's disclosure statement. Furthermore, according to the custodian's declaration, these records were produced on or after May 17, 2023, not on November 23, 2022. Joint Exhibits Part C at p. 608 (Exhibit 45, custodian declaration). Therefore, these records are not admissible. Fed.R.Civ.P. 26(a)(1)(A)(ii) (documents supporting a claim must be disclosed); Fed.R.Civ.P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial").

DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS

Fact No. 24

**Goldwater obtained documents in Exhibits 45 and 46 unlawfully.**

On April 4, 2023, Goldwater served a notice of a deposition subpoena to JP Morgan Securities, LLC, which was scheduled in Los Angeles at 10:00 am on May 15, 2023. Joint Exhibits Part D at p. 923-933 (Defense Exhibit H, notice of and deposition subpoena), Part D at p. 935:2-9 (Alekseyeff decl re Exhibit H). The subpoena instructed the deponent to "bring with you to the deposition the following documents...and must permit inspection, copying, testing, or sampling of the material..." Joint Exhibits Part D at p. 925, 928-929 (Defense Exhibit H, notice of and deposition subpoena), Part D at p. 935:2-9 (Defense Exhibit H, authenticating declaration). On May 8, 2023, Goldwater's counsel, Abbey Krysak, confirmed that the deposition would move forward but would occur remotely. Joint Exhibits Part D at p. 936-937 (Defense Exhibit J, email correspondence), Part D at p. 938:2-14 (Defense Exhibit J, Alekseyeff decl.) Then at 9:11 am on May 15, 2023, attorney Krysak suddenly announced that the deposition

would no longer move forward, claiming that the deposition had to be continued "pursuant to the deponent's request." Joint Exhibit Part D at p. 939-940 (Defense Exhibit K, email chain), Part D at p. 942:2-8 (Defense Exhibit K, authenticating declaration). That deposition was not rescheduled and has never occurred. Joint Exhibits Part B at p. 942:9-10 (Alekseyeff decl). Therefore, the deponent has never appeared nor produced the subpoenaed records at the deposition.

**Exhibit 44 (email chain with attachment) is unauthenticated.**

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. Fed.R.Evid. 901. Therefore, a document submitted for summary judgment must be authenticated. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989). Merely attaching a document to a declaration is insufficient. *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970). "A document *authenticated*

DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS
118

*through personal knowledge* must be attached to an affidavit, and the affiant must be a competent "'witness who wrote [the document], signed it, used it, or saw others do so.'"" *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics, citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1).

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case. Joint Exhibits Part D at p. 864:9-11 (standing order).  Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward.  Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are

DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS

Fact No. 24

what Goldwater claims they are, *to wit:* email correspondence.

**Exhibit 46 (JP Morgan documents) is unauthenticated.**

Although Goldwater presented this document as JP Morgan records and asserted that the records included the corresponding custodian of records affidavit, not such affidavit was provided. Nor did Goldwater cite any other evidence to show what these documents were. (See above for law.)

Fact No. 24

| | |
|---|---|
| 1 | 25. On the statements Goldwater received from Mr. Elizarov, the "Account Value" graph on the first page of each statement was missing. |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |

25. On the statements Goldwater received from Mr. Elizarov, the "Account Value" graph on the first page of each statement was missing.

*Evidence*

Joint Exhibit Part C at pages 518 - 606
Elizarov Email Correspondence and attached account statements

Joint Exhibit Part C at pages 607-629 (JP Morgan Securities Records: Master Services Agreement and Account Statements (April to June 2019) and corresponding Custodian of Records Affidavit)

Joint Exhibit Part C at pages 630-716 JP Morgan Securities Records: Account Statements (June 2018 - August 2018) and corresponding Custodian of Records Affidavit

**DISPUTED.**

**The fact is immaterial/lack of notice.**

"Material facts...are those which may affect the outcome of the case." *Cady v. Hartford Life & Accidental Ins. Co*., 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The relevant substantive law will determine which facts are material for purposes of summary judgment." *Id.* Furthermore, "a plaintiff cannot [base] a motion for summary judgment (on a fraud claim) on allegations of fraud that were never pled with particularity in the first place." *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1027 (N.D. Cal. 2012); *see also Navajo v. U.S.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Picken v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006) (failure to comply with notice requirements under Rule 8 precludes

Fact No. 25

summary judgment based on new allegations); Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) (evidence relating to allegations not alleged in the complaint is i.

Rule 9(b) required Goldwater to give notice of the *exact statements* that Goldwater claimed were fraudulent and explain why those statements were fraudulent. Fed.R.Civ.P. 9(b); *In re Glenfed, Inc. Securities Litigation,* 42 F.3d 1541, 1548 (9th Cir. 1994) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."); *Camp v. Pacific Financial Group*, 956 F. Supp. 1541, 1551 (C.D. Cal. 1997) (same); *Teamsters Local 617 Pension v. Apollo Group*, 633 F. Supp. 2d 763, 783 (D. Ariz. 2009); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1057 (C.D. Cal. 2015).

In its first amended complaint, Goldwater claimed that Elizarov misrepresented his marital status, whether he was a party to a pending lawsuit, and whether he was in

1  default on federal loans. EFD 44 at pp. 4:25-
2  8:18. Now, however, Goldwater also wants to
3  claim that Elizarov misrepresented his assets
4  in the loan application. Although Goldwater
5  mentioned JP Morgan chase account,
6  Goldwater did not allege that the
7  representation was false. Goldwater
8  subsequently confirmed these to be the only
9  false statements in response to
10  interrogatories. Joint Exhibits Part D at p.
11  945:16-26 (Exhibit L, Admissions), Part D at
12  p. 949:1-10 (Alekseyeff decl re Exhibit L).
13  The only other place where this account was
14  mentioned was in the allegations relating to
15  the May 2020 mortgage assistance
16  application, and then only to suggest that the
17  account (and its funds) were still available
18  when Elizarov applied for the assistance.
19  EFD 44 at p. 6:21-24. And since Goldwater
20  did not allege that the representation
21  regarding funds in the JP Morgan account *at*
22  *the time Elizarov applied for the loan* was
23  false, Elizarov had no notice of this claim.
24
25  Therefore, Goldwater may not rely on this
26  new factual theory on summary judgment.
27
28  **Documents in Exhibits 45 and 46 (bank**

**statements) were not disclosed in discovery.**

In its final disclosure statement, Goldwater disclosed that it would rely on materials "produced to Goldwater in response to various subpoenas *duces tecum* Goldwater caused to be issued and were previously produced in this litigation are bates stamped as follows: ALLY_000001-000055; EOTW_000001-000654; CITY OF WILTON MANORS_000001-000058; CLOSED BUYER_000001-000002; DESERT WATER_000001-000021; ENGLISH_000001-000021; GABLES RESIDENTIAL_000001-000092; eCIV000001-000364; PaeDae_000001-000028; JPMorgan_00001-000882; JPMS_000001-000865. In addition to these documents, Goldwater refers the parties to the additional documents Goldwater received in response to various subpoenas duces tecum Goldwater caused to be issued and were previously produced in this litigation from the following parties: Paypal d/b/a Venmo, Ally Bank, and DocuSign. Finally, certain documents were produced to Goldwater in response to a subpoenas duces tecum dated

Fact No. 25

1    November 23, 2022, by JP Morgan

2    Securities, LLC, but these documents have

3    not been produced to all parties." Joint

4    Exhibits Part D at p. 886:24-888:7 (Defense

5    Exhibit B, fourth supplemental disclosures),

6    Part D at p. 892:2-10 (Alekseyeff decl re

7    Exhibit B)). According to these disclosures,

8    Goldwater intended to rely only on those

9    records that included bates stamps plus,

10    potentially, JP Morgan Chase records that

11    were produced on November 23, 2022. The

12    records submitted to this court as Exhibit 45

13    do not include any bates stamps of the kind

14    identified in Goldwater's disclosure

15    statement. Furthermore, according to the

16    custodian's declaration, these records were

17    produced on or after May 17, 2023, not on

18    November 23, 2022. Joint Exhibits Part C at

19    p. 608 (Exhibit 45, custodian declaration).

20    Therefore, these records are not admissible.

21    Fed.R.Civ.P. 26(a)(1)(A)(ii) (documents

22    supporting a claim must be disclosed);

23    Fed.R.Civ.P. 37(c)(1) ("If a party fails to

24    provide information or identify a witness as

25    required by Rule 26(a) or (e), the party is not

26    allowed to use that information or witness to

27    supply evidence on a motion, at a hearing, or

28    at a trial").

Fact No. 25

**Goldwater obtained documents in Exhibits 45 and 46 unlawfully.**

On April 4, 2023, Goldwater served a notice of a deposition subpoena to JP Morgan Securities, LLC, which was scheduled in Los Angeles at 10:00 am on May 15, 2023. Joint Exhibits Part D at p. 923-933 (Defense Exhibit H, notice of and deposition subpoena), Part D at p. 935:2-9 (Alekseyeff decl re Exhibit H). The subpoena instructed the deponent to "bring with you to the deposition the following documents...and must permit inspection, copying, testing, or sampling of the material..." Joint Exhibits Part D at p. 925, 928-929 (Defense Exhibit H, notice of and deposition subpoena), Part D at p. 935:2-9 (Defense Exhibit H, authenticating declaration). On May 8, 2023, Goldwater's counsel, Abbey Krysak, confirmed that the deposition would move forward but would occur remotely. Joint Exhibits Part D at p. 936-937 (Defense Exhibit J, email correspondence), Part D at p. 938:2-14 (Defense Exhibit J, Alekseyeff decl.) Then at 9:11 am on May 15, 2023, attorney Krysak suddenly announced that the deposition

Fact No. 25

would no longer move forward, claiming that the deposition had to be continued "pursuant to the deponent's request." Joint Exhibit Part D at p. 939-940 (Defense Exhibit K, email chain), Part D at p. 942:2-8 (Defense Exhibit K, authenticating declaration). That deposition was not rescheduled and has never occurred. Joint Exhibits Part B at p. 942:9-10 (Alekseyeff decl). Therefore, the deponent has never appeared nor produced the subpoenaed records at the deposition.

**Exhibit 44 (email chain with attachment) is unauthenticated.**

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. Fed.R.Evid. 901. Therefore, a document submitted for summary judgment must be authenticated. *Hal Roach Studios, Inc. v. Richard Feiner & Co*., 896 F.2d 1542, 1550–51 (9th Cir. 1989). Merely attaching a document to a declaration is insufficient. *United States v. Dibbl*e, 429 F.2d 598, 602 (9th Cir. 1970). "A document *authenticated*

Fact No. 25

*through personal knowledge* must be attached to an affidavit, and the affiant must be a competent '"witness who wrote [the document], signed it, used it, or saw others do so."'" *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics, citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1).

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case. Joint Exhibits Part D at p. 864:9-11 (standing order). Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward. Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are

Fact No. 25

what Goldwater claims they are, *to wit:* email correspondence.

**Exhibit 46 (JP Morgan documents) is unauthenticated.**

Although Goldwater presented this document as JP Morgan records and asserted that the records included the corresponding custodian of records affidavit, not such affidavit was provided. Nor did Goldwater cite any other evidence to show what these documents were. (See above for law.)

Fact No. 25

26. On the statements Goldwater received from Mr. Elizarov, the transaction history and account balances differed.

*Evidence*

Joint Exhibit Part C at pages 518 - 606
Elizarov Email Correspondence and attached account statements

Joint Exhibit Part C at pages 607-629 (JP Morgan Securities Records: Master Services Agreement and Account Statements (April to June 2019) and corresponding Custodian of Records Affidavit)

Joint Exhibit Part C at pages 630-716 JP Morgan Securities Records: Account Statements (June 2018 - August 2018) and corresponding Custodian of Records Affidavit

**DISPUTED.**

**The fact is immaterial/lack of notice.**

"Material facts...are those which may affect the outcome of the case." *Cady v. Hartford Life & Accidental Ins. Co.*, 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The relevant substantive law will determine which facts are material for purposes of summary judgment." *Id.* Furthermore, "a plaintiff cannot [base] a motion for summary judgment (on a fraud claim) on allegations of fraud that were never pled with particularity in the first place." *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1027 (N.D. Cal. 2012); *see also Navajo v. U.S.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Picken v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006) (failure to comply with notice requirements under Rule 8 precludes

summary judgment based on new allegations); Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) (evidence relating to allegations not alleged in the complaint is i.

Rule 9(b) required Goldwater to give notice of the *exact statements* that Goldwater claimed were fraudulent and explain why those statements were fraudulent. Fed.R.Civ.P. 9(b); *In re Glenfed, Inc. Securities Litigation,* 42 F.3d 1541, 1548 (9th Cir. 1994) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."); *Camp v. Pacific Financial Group*, 956 F. Supp. 1541, 1551 (C.D. Cal. 1997) (same); *Teamsters Local 617 Pension v. Apollo Group*, 633 F. Supp. 2d 763, 783 (D. Ariz. 2009); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc*., 112 F. Supp. 3d 1048, 1057 (C.D. Cal. 2015).

In its first amended complaint, Goldwater claimed that Elizarov misrepresented his marital status, whether he was a party to a pending lawsuit, and whether he was in

Fact No. 26

default on federal loans. EFD 44 at pp. 4:25-8:18. Now, however, Goldwater also wants to claim that Elizarov misrepresented his assets in the loan application. Although Goldwater mentioned JP Morgan chase account, Goldwater did not allege that the representation was false. Goldwater subsequently confirmed these to be the only false statements in response to interrogatories. Joint Exhibits Part D at p. 945:16-26 (Exhibit L, Admissions), Part D at p. 949:1-10 (Alekseyeff decl re Exhibit L). The only other place where this account was mentioned was in the allegations relating to the May 2020 mortgage assistance application, and then only to suggest that the account (and its funds) were still available when Elizarov applied for the assistance. EFD 44 at p. 6:21-24. And since Goldwater did not allege that the representation regarding funds in the JP Morgan account *at the time Elizarov applied for the loan* was false, Elizarov had no notice of this claim.

Therefore, Goldwater may not rely on this new factual theory on summary judgment.

**Documents in Exhibits 45 and 46 (bank**

**statements) were not disclosed in discovery.**

In its final disclosure statement, Goldwater disclosed that it would rely on materials "produced to Goldwater in response to various subpoenas *duces tecum* Goldwater caused to be issued and were previously produced in this litigation are bates stamped as follows: ALLY_000001-000055; EOTW_000001-000654; CITY OF WILTON MANORS_000001-000058; CLOSED BUYER_000001-000002; DESERT WATER_000001-000021; ENGLISH_000001-000021; GABLES RESIDENTIAL_000001-000092; eCIV000001-000364; PaeDae_000001-000028; JPMorgan_00001-000882; JPMS_000001-000865. In addition to these documents, Goldwater refers the parties to the additional documents Goldwater received in response to various subpoenas duces tecum Goldwater caused to be issued and were previously produced in this litigation from the following parties: Paypal d/b/a Venmo, Ally Bank, and DocuSign. Finally, certain documents were produced to Goldwater in response to a subpoenas duces tecum dated

November 23, 2022, by JP Morgan Securities, LLC, but these documents have not been produced to all parties." Joint Exhibits Part D at p. 886:24-888:7 (Defense Exhibit B, fourth supplemental disclosures), Part D at p. 892:2-10 (Alekseyeff decl re Exhibit B)). According to these disclosures, Goldwater intended to rely only on those records that included bates stamps plus, potentially, JP Morgan Chase records that were produced on November 23, 2022. The records submitted to this court as Exhibit 45 do not include any bates stamps of the kind identified in Goldwater's disclosure statement. Furthermore, according to the custodian's declaration, these records were produced on or after May 17, 2023, not on November 23, 2022. Joint Exhibits Part C at p. 608 (Exhibit 45, custodian declaration). Therefore, these records are not admissible. Fed.R.Civ.P. 26(a)(1)(A)(ii) (documents supporting a claim must be disclosed); Fed.R.Civ.P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial").

Fact No. 26

**Goldwater obtained documents in Exhibits 45 and 46 unlawfully.**

On April 4, 2023, Goldwater served a notice of a deposition subpoena to JP Morgan Securities, LLC, which was scheduled in Los Angeles at 10:00 am on May 15, 2023. Joint Exhibits Part D at p. 923-933 (Defense Exhibit H, notice of and deposition subpoena), Part D at p. 935:2-9 (Alekseyeff decl re Exhibit H). The subpoena instructed the deponent to "bring with you to the deposition the following documents...and must permit inspection, copying, testing, or sampling of the material..." Joint Exhibits Part D at p. 925, 928-929 (Defense Exhibit H, notice of and deposition subpoena), Part D at p. 935:2-9 (Defense Exhibit H, authenticating declaration). On May 8, 2023, Goldwater's counsel, Abbey Krysak, confirmed that the deposition would move forward but would occur remotely. Joint Exhibits Part D at p. 936-937 (Defense Exhibit J, email correspondence), Part D at p. 938:2-14 (Defense Exhibit J, Alekseyeff decl.) Then at 9:11 am on May 15, 2023, attorney Krysak suddenly announced that the deposition

would no longer move forward, claiming that the deposition had to be continued "pursuant to the deponent's request." Joint Exhibit Part D at p. 939-940 (Defense Exhibit K, email chain), Part D at p. 942:2-8 (Defense Exhibit K, authenticating declaration). That deposition was not rescheduled and has never occurred. Joint Exhibits Part B at p. 942:9-10 (Alekseyeff decl). Therefore, the deponent has never appeared nor produced the subpoenaed records at the deposition.

**Exhibit 44 (email chain with attachment) is unauthenticated.**

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. Fed.R.Evid. 901. Therefore, a document submitted for summary judgment must be authenticated. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989). Merely attaching a document to a declaration is insufficient. *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970). "A document *authenticated*

Fact No. 26

*through personal knowledge* must be attached to an affidavit, and the affiant must be a competent "'witness who wrote [the document], signed it, used it, or saw others do so.'"" *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics, citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1).

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case. Joint Exhibits Part D at p. 864:9-11 (standing order).  Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward.  Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are

Fact No. 26

what Goldwater claims they are, *to wit:* email correspondence.

**Exhibit 46 (JP Morgan documents) is unauthenticated.**

Although Goldwater presented this document as JP Morgan records and asserted that the records included the corresponding custodian of records affidavit, not such affidavit was provided. Nor did Goldwater cite any other evidence to show what these documents were. (See above for law.)

27. On the statements Goldwater received from Mr. Elizarov, the dates on the statements were missing or differed on each page to reflect to the dates relevant to Elizarov's Loan Application.

*Evidence*

Joint Exhibit Part C at pages 518 - 606

Elizarov Email Correspondence and attached account statements

Joint Exhibit Part C at pages 607-629 (JP Morgan Securities Records: Master Services Agreement and Account Statements (April to June 2019) and corresponding Custodian of Records Affidavit)

Joint Exhibit Part C at pages 630-716 JP Morgan Securities Records: Account Statements (June 2018 - August 2018) and corresponding Custodian of Records Affidavit

**DISPUTED.**

**The fact is immaterial/lack of notice.**

"Material facts...are those which may affect the outcome of the case." *Cady v. Hartford Life & Accidental Ins. Co.*, 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The relevant substantive law will determine which facts are material for purposes of summary judgment." *Id.* Furthermore, "a plaintiff cannot [base] a motion for summary judgment (on a fraud claim) on allegations of fraud that were never pled with particularity in the first place." *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1027 (N.D. Cal. 2012); *see also Navajo v. U.S.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Picken v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006) (failure to comply with notice requirements under Rule 8 precludes

Fact No. 27

summary judgment based on new allegations); Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) (evidence relating to allegations not alleged in the complaint is i.

Rule 9(b) required Goldwater to give notice of the *exact statements* that Goldwater claimed were fraudulent and explain why those statements were fraudulent. Fed.R.Civ.P. 9(b); *In re Glenfed, Inc. Securities Litigation,* 42 F.3d 1541, 1548 (9th Cir. 1994) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."); *Camp v. Pacific Financial Group*, 956 F. Supp. 1541, 1551 (C.D. Cal. 1997) (same); *Teamsters Local 617 Pension v. Apollo Group*, 633 F. Supp. 2d 763, 783 (D. Ariz. 2009); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1057 (C.D. Cal. 2015).

In its first amended complaint, Goldwater claimed that Elizarov misrepresented his marital status, whether he was a party to a pending lawsuit, and whether he was in

Fact No. 27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

default on federal loans. EFD 44 at pp. 4:25-8:18. Now, however, Goldwater also wants to claim that Elizarov misrepresented his assets in the loan application. Although Goldwater mentioned JP Morgan chase account, Goldwater did not allege that the representation was false. Goldwater subsequently confirmed these to be the only false statements in response to interrogatories. Joint Exhibits Part D at p. 945:16-26 (Exhibit L, Admissions), Part D at p. 949:1-10 (Alekseyeff decl re Exhibit L). The only other place where this account was mentioned was in the allegations relating to the May 2020 mortgage assistance application, and then only to suggest that the account (and its funds) were still available when Elizarov applied for the assistance. EFD 44 at p. 6:21-24. And since Goldwater did not allege that the representation regarding funds in the JP Morgan account *at the time Elizarov applied for the loan* was false, Elizarov had no notice of this claim.

Therefore, Goldwater may not rely on this new factual theory on summary judgment.

**Documents in Exhibits 45 and 46 were not disclosed in discovery.**

In its final disclosure statement, Goldwater disclosed that it would rely on materials "produced to Goldwater in response to various subpoenas *duces tecum* Goldwater caused to be issued and were previously produced in this litigation are bates stamped as follows: ALLY_000001-000055; EOTW_000001-000654; CITY OF WILTON MANORS_000001-000058; CLOSED BUYER_000001-000002; DESERT WATER_000001-000021; ENGLISH_000001-000021; GABLES RESIDENTIAL_000001-000092; eCIV000001-000364; PaeDae_000001-000028; JPMorgan_00001-000882; JPMS_000001-000865. In addition to these documents, Goldwater refers the parties to the additional documents Goldwater received in response to various subpoenas duces tecum Goldwater caused to be issued and were previously produced in this litigation from the following parties: Paypal d/b/a Venmo, Ally Bank, and DocuSign. Finally, certain documents were produced to Goldwater in response to a subpoenas duces tecum dated

November 23, 2022, by JP Morgan Securities, LLC, but these documents have not been produced to all parties." Joint Exhibits Part D at p. 886:24-888:7 (Defense Exhibit B, fourth supplemental disclosures), Part D at p. 892:2-10 (Alekseyeff decl re Exhibit B)). According to these disclosures, Goldwater intended to rely only on those records that included bates stamps plus, potentially, JP Morgan Chase records that were produced on November 23, 2022. The records submitted to this court as Exhibit 45 do not include any bates stamps of the kind identified in Goldwater's disclosure statement. Furthermore, according to the custodian's declaration, these records were produced on or after May 17, 2023, not on November 23, 2022. Joint Exhibits Part C at p. 608 (Exhibit 45, custodian declaration). Therefore, these records are not admissible. Fed.R.Civ.P. 26(a)(1)(A)(ii) (documents supporting a claim must be disclosed); Fed.R.Civ.P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial").

Fact No. 27

**Goldwater obtained documents in Exhibits 45 and 46 unlawfully.**

On April 4, 2023, Goldwater served a notice of a deposition subpoena to JP Morgan Securities, LLC, which was scheduled in Los Angeles at 10:00 am on May 15, 2023. Joint Exhibits Part D at p. 923-933 (Defense Exhibit H, notice of and deposition subpoena), Part D at p. 935:2-9 (Alekseyeff decl re Exhibit H). The subpoena instructed the deponent to "bring with you to the deposition the following documents...and must permit inspection, copying, testing, or sampling of the material..." Joint Exhibits Part D at p. 925, 928-929 (Defense Exhibit H, notice of and deposition subpoena), Part D at p. 935:2-9 (Defense Exhibit H, authenticating declaration). On May 8, 2023, Goldwater's counsel, Abbey Krysak, confirmed that the deposition would move forward but would occur remotely. Joint Exhibits Part D at p. 936-937 (Defense Exhibit J, email correspondence), Part D at p. 938:2-14 (Defense Exhibit J, Alekseyeff decl.) Then at 9:11 am on May 15, 2023, attorney Krysak suddenly announced that the deposition

would no longer move forward, claiming that the deposition had to be continued "pursuant to the deponent's request." Joint Exhibit Part D at p. 939-940 (Defense Exhibit K, email chain), Part D at p. 942:2-8 (Defense Exhibit K, authenticating declaration). That deposition was not rescheduled and has never occurred. Joint Exhibits Part B at p. 942:9-10 (Alekseyeff decl). Therefore, the deponent has never appeared nor produced the subpoenaed records at the deposition.

**Exhibit 44 (email chain with attachment) is unauthenticated.**

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. Fed.R.Evid. 901. Therefore, a document submitted for summary judgment must be authenticated. *Hal Roach Studios, Inc. v. Richard Feiner & Co*., 896 F.2d 1542, 1550–51 (9th Cir. 1989). Merely attaching a document to a declaration is insufficient. *United States v. Dibbl*e, 429 F.2d 598, 602 (9th Cir. 1970). "A document *authenticated*

Fact No. 27

*through personal knowledge* must be attached to an affidavit, and the affiant must be a competent "'witness who wrote [the document], signed it, used it, or saw others do so.'" *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics, citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1).

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case. Joint Exhibits Part D at p. 864:9-11 (standing order).  Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward.  Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are

what Goldwater claims they are, *to wit:* email correspondence.

**Exhibit 46 (JP Morgan documents) is unauthenticated.**

Although Goldwater presented this document as JP Morgan records and asserted that the records included the corresponding custodian of records affidavit, not such affidavit was provided. Nor did Goldwater cite any other evidence to show what these documents were. (See above for law.)

Fact No. 27

| | |
|---|---|
| 28. On the statements Goldwater received from Mr. Elizarov, the wire transaction demonstrating that certain funds were transferred to escrow in June of 2019 in connection with the transaction differed from the true records which demostrated that no such transaction from that account occurred. | **DISPUTED.**<br><br>**The fact is immaterial/lack of notice.**<br><br>"Material facts...are those which may affect the outcome of the case." *Cady v. Hartford Life & Accidental Ins. Co*., 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The relevant substantive law will determine which facts are material for purposes of summary judgment." *Id.* |
| *Evidence* | Furthermore, "a plaintiff cannot [base] a motion for summary judgment (on a fraud |
| Joint Exhibit Part C at pages 518 - 606 | claim) on allegations of fraud that were never pled with particularity in the first place." |
| Elizarov Email Correspondence and attached account statements | *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1027 (N.D. Cal. 2012); *see also Navajo v. U.S.*, 535 F.3d 1058, 1080 (9th |
| Joint Exhibit Part C at pages 607-629 (JP Morgan Securities Records: Master Services Agreement and Account Statements (April to June 2019) and corresponding Custodian of Records Affidavit) | Cir. 2008) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Picken v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d |
| Joint Exhibit Part C at pages 630-716 JP Morgan Securities | 963 (9th Cir. 2006) (failure to comply with notice requirements under Rule 8 precludes |

| | |
|---|---|
| Records: Account Statements (June 2018 - August 2018) and corresponding Custodian of Records Affidavit | summary judgment based on new allegations); Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) (evidence relating to allegations not alleged in the complaint is i. |
| | Rule. 9(b) required Goldwater to give notice of the *exact statements* that Goldwater claimed were fraudulent and explain why those statements were fraudulent. Fed.R.Civ.P. 9(b); *In re Glenfed, Inc. Securities Litigation,* 42 F.3d 1541, 1548 (9th Cir. 1994) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."); *Camp v. Pacific Financial Group*, 956 F. Supp. 1541, 1551 (C.D. Cal. 1997) (same); *Teamsters Local 617 Pension v. Apollo Group*, 633 F. Supp. 2d 763, 783 (D. Ariz. 2009); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1057 (C.D. Cal. 2015). |
| | In its first amended complaint, Goldwater claimed that Elizarov misrepresented his marital status, whether he was a party to a pending lawsuit, and whether he was in |

Fact No. 28

default on federal loans. EFD 44 at pp. 4:25-8:18. Now, however, Goldwater also wants to claim that Elizarov misrepresented his assets in the loan application. Although Goldwater mentioned JP Morgan chase account, Goldwater did not allege that the representation was false. Goldwater subsequently confirmed these to be the only false statements in response to interrogatories. Joint Exhibits Part D at p. 945:16-26 (Exhibit L, Admissions), Part D at p. 949:1-10 (Alekseyeff decl re Exhibit L). The only other place where this account was mentioned was in the allegations relating to the May 2020 mortgage assistance application, and then only to suggest that the account (and its funds) were still available when Elizarov applied for the assistance. EFD 44 at p. 6:21-24. And since Goldwater did not allege that the representation regarding funds in the JP Morgan account *at the time Elizarov applied for the loan* was false, Elizarov had no notice of this claim.

Therefore, Goldwater may not rely on this new factual theory on summary judgment.

**Documents in Exhibits 45 and 46 (bank**

**statements) were not disclosed in discovery.**

In its final disclosure statement, Goldwater disclosed that it would rely on materials "produced to Goldwater in response to various subpoenas *duces tecum* Goldwater caused to be issued and were previously produced in this litigation are bates stamped as follows: ALLY_000001-000055; EOTW_000001-000654; CITY OF WILTON MANORS_000001-000058; CLOSED BUYER_000001-000002; DESERT WATER_000001-000021; ENGLISH_000001-000021; GABLES RESIDENTIAL_000001-000092; eCIV000001-000364; PaeDae_000001-000028; JPMorgan_00001-000882; JPMS_000001-000865. In addition to these documents, Goldwater refers the parties to the additional documents Goldwater received in response to various subpoenas duces tecum Goldwater caused to be issued and were previously produced in this litigation from the following parties: Paypal d/b/a Venmo, Ally Bank, and DocuSign. Finally, certain documents were produced to Goldwater in response to a subpoenas duces tecum dated

Fact No. 28

November 23, 2022, by JP Morgan Securities, LLC, but these documents have not been produced to all parties." Joint Exhibits Part D at p. 886:24-888:7 (Defense Exhibit B, fourth supplemental disclosures), Part D at p. 892:2-10 (Alekseyeff decl re Exhibit B)). According to these disclosures, Goldwater intended to rely only on those records that included bates stamps plus, potentially, JP Morgan Chase records that were produced on November 23, 2022. The records submitted to this court as Exhibit 45 do not include any bates stamps of the kind identified in Goldwater's disclosure statement. Furthermore, according to the custodian's declaration, these records were produced on or after May 17, 2023, not on November 23, 2022. Joint Exhibits Part C at p. 608 (Exhibit 45, custodian declaration). Therefore, these records are not admissible. Fed.R.Civ.P. 26(a)(1)(A)(ii) (documents supporting a claim must be disclosed); Fed.R.Civ.P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial").

Fact No. 28

**Goldwater obtained documents in Exhibits 45 and 46 unlawfully.**

On April 4, 2023, Goldwater served a notice of a deposition subpoena to JP Morgan Securities, LLC, which was scheduled in Los Angeles at 10:00 am on May 15, 2023. Joint Exhibits Part D at p. 923-933 (Defense Exhibit H, notice of and deposition subpoena), Part D at p. 935:2-9 (Alekseyeff decl re Exhibit H). The subpoena instructed the deponent to "bring with you to the deposition the following documents...and must permit inspection, copying, testing, or sampling of the material..." Joint Exhibits Part D at p. 925, 928-929 (Defense Exhibit H, notice of and deposition subpoena), Part D at p. 935:2-9 (Defense Exhibit H, authenticating declaration). On May 8, 2023, Goldwater's counsel, Abbey Krysak, confirmed that the deposition would move forward but would occur remotely. Joint Exhibits Part D at p. 936-937 (Defense Exhibit J, email correspondence), Part D at p. 938:2-14 (Defense Exhibit J, Alekseyeff decl.) Then at 9:11 am on May 15, 2023, attorney Krysak suddenly announced that the deposition

Fact No. 28

would no longer move forward, claiming that the deposition had to be continued "pursuant to the deponent's request." Joint Exhibit Part D at p. 939-940 (Defense Exhibit K, email chain), Part D at p. 942:2-8 (Defense Exhibit K, authenticating declaration). That deposition was not rescheduled and has never occurred. Joint Exhibits Part B at p. 942:9-10 (Alekseyeff decl). Therefore, the deponent has never appeared nor produced the subpoenaed records at the deposition.

**Exhibit 44 (email chain with attachment) is unauthenticated.**

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. Fed.R.Evid. 901. Therefore, a document submitted for summary judgment must be authenticated. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989). Merely attaching a document to a declaration is insufficient. *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970). "A document *authenticated*

Fact No. 28

*through personal knowledge* must be attached to an affidavit, and the affiant must be a competent '"witness who wrote [the document], signed it, used it, or saw others do so."'" *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics, citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1).

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case. Joint Exhibits Part D at p. 864:9-11 (standing order).  Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward.  Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are

Fact No. 28

| | |
|---|---|
| | what Goldwater claims they are, *to wit:* email correspondence.<br><br>**Exhibit 46 (JP Morgan documents) is unauthenticated.**<br><br>Although Goldwater presented this document as JP Morgan records and asserted that the records included the corresponding custodian of records affidavit, not such affidavit was provided. Nor did Goldwater cite any other evidence to show what these documents were. (See above for law.) |
| 29. Elizarov provided Goldwater with an offer letter from Rite Care Hospice, Inc. ("Rite Care") signed by a Vartan Akopyan, CEO of Rite Care and himself.<br><br>*Evidence*<br><br>Joint Exhibit Part A at 41:13-42:4 (Excerpts from the Deposition | **DISPUTED.**<br><br>**The fact is immaterial/lack of notice.**<br><br>"Material facts...are those which may affect the outcome of the case." *Cady v. Hartford Life & Accidental Ins. Co.*, 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The relevant substantive law will |

| | |
|---|---|
| Transcript of Artur Elizarov)<br><br>Joint Exhibit Part C at pages 718-722 (Email Correspondence from Elizarov to Goldwater attaching Rite Care Offer Letter, and attached Offer Letter) | determine which facts are material for purposes of summary judgment." *Id.* Furthermore, "a plaintiff cannot [base] a motion for summary judgment (on a fraud claim) on allegations of fraud that were never pled with particularity in the first place." *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1027 (N.D. Cal. 2012); *see also Navajo v. U.S.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Picken v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006) (failure to comply with notice requirements under Rule 8 precludes summary judgment based on new allegations); Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) (evidence relating to allegations not alleged in the complaint is i.<br>Rule. 9(b) required Goldwater to give notice of the *exact statements* that Goldwater claimed were fraudulent and explain why those statements were fraudulent. Fed.R.Civ.P. 9(b); *In re Glenfed, Inc.* |

Fact No. 29

*Securities Litigation,* 42 F.3d 1541, 1548 (9th Cir. 1994) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."); *Camp v. Pacific Financial Group*, 956 F. Supp. 1541, 1551 (C.D. Cal. 1997) (same); *Teamsters Local 617 Pension v. Apollo Group*, 633 F. Supp. 2d 763, 783 (D. Ariz. 2009); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1057 (C.D. Cal. 2015).

In its first amended complaint, Goldwater claimed that Elizarov misrepresented his marital status, whether he was a party to a pending lawsuit, and whether he was in default on federal loans. EFD 44 at pp. 4:25-8:18. Now, however, Goldwater also wants to assert that Elizarov misrepresented his income in the loan application. And since Goldwater did not allege that the representation regarding income *at the time Elizarov applied for the loan* was false, Elizarov had no notice of this claim.

Therefore, Goldwater may not rely on this new factual theory on summary judgment.

**Documents in Exhibit 47 were not disclosed in discovery.**

In its final disclosure statement, Goldwater disclosed that it would rely on materials "produced to Goldwater in response to various subpoenas *duces tecum* Goldwater caused to be issued and were previously produced in this litigation are bates stamped as follows: ALLY_000001-000055; EOTW_000001-000654; CITY OF WILTON MANORS_000001-000058; CLOSED BUYER_000001-000002; DESERT WATER_000001-000021; ENGLISH_000001-000021; GABLES RESIDENTIAL_000001-000092; eCIV000001-000364; PaeDae_000001-000028; JPMorgan_00001-000882; JPMS_000001-000865. In addition to these documents, Goldwater refers the parties to the additional documents Goldwater received in response to various subpoenas duces tecum Goldwater caused to be issued and were previously produced in this litigation from the following parties: Paypal d/b/a Venmo,

Fact No. 29

Ally Bank, and DocuSign. Finally, certain documents were produced to Goldwater in response to a subpoenas duces tecum dated November 23, 2022, by JP Morgan Securities, LLC, but these documents have not been produced to all parties." Joint Exhibits Part D at p. 886:24-888:7 (Defense Exhibit B, fourth supplemental disclosures), Part D at p. 892:2-10 (Alekseyeff decl re Exhibit B)). The records submitted to this court as Exhibit 47 do not include any bates stamps of the kind identified in Goldwater's disclosure statement. Therefore, these records are not admissible. Fed.R.Civ.P. 26(a)(1)(A)(ii) (documents supporting a claim must be disclosed); Fed.R.Civ.P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial").

**Exhibit 47 (email chain with attachment) is unauthenticated.**

"A trial court can only consider admissible evidence in ruling on a motion for summary

judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  To be admissible, evidence must be properly authenticated.  Fed.R.Evid. 901.  Therefore, a document submitted for summary judgment must be authenticated.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989).  Merely attaching a document to a declaration is insufficient. *United States v. Dibbl*e, 429 F.2d 598, 602 (9th Cir. 1970).  "A document *authenticated through personal knowledge* must be attached to an affidavit, and the affiant must be a competent '"witness who wrote [the document], signed it, used it, or saw others do so."'" *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics, citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1).

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case.  Joint Exhibits Part D at p. 864:9-11 (standing order).  Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving

Fact No. 29

forward.  Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are what Goldwater claims they are, *to wit:* email chain.

**Elizarov's testimony does not support this fact.**

Although Elizarov testified that he provided certain documents to Goldwater, he did not testify about an offer letter from Rite Care Hospice.

Fact No. 29

| | |
|---|---|
| 30. Mr. Akopyan, through counsel Alekseyeff, submitted a declaration to the Court in connection with Rite Care's Opposition to Goldwater's Motion to Compel Responses to Subpoena Duces Tecum.<br><br>*Evidence*<br><br>Joint Exhibit Part A at pages 270-273 (Dec. V. Akopyan, ECF No. 233-2). | **DISPUTED.**<br><br>**The fact is irrelevant.**<br><br>"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be relevant. Fed.R.Evid. 402; *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019) ("irrelevant evidence is inadmissible"). "Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action." Fed.R.Evid. 401. "Deciding whether a fact is "of consequence in determining the action" generally requires considering the substantive issues the case presents." *Crawford, supra*, at p. 1077. "Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." *Id.*<br><br>Here, whether some "Mr. Akopyan" submitted some declaration to the court has |

| | |
|---|---|
| | no tendency to prove any facts of consequence to Goldwater's action against the defendant. Notably, Goldwater did not present any facts supported by that declaration. Rather, Goldwater presented *the mere fact of filing the declaration* as *the fact* of consequence in this case. And unless Goldwater can explain *how* this fact – that "Mr. Akopyan filed a declaration" – is relevant, the exhibit should be excluded. |
| 31. Goldwater would not have approved Elizarov's Loan Application if it had known that the JP Morgan Securities Account statements were false.<br><br>*Evidence*<br><br>Joint Exhibit Part A at 96:6-10, 96:18-99:4 (Excerpts from the Deposition Transcript of Cory Bearden) | **DISPUTED.**<br><br>**The fact is immaterial/lack of notice.**<br><br>"Material facts...are those which may affect the outcome of the case." *Cady v. Hartford Life & Accidental Ins. Co.*, 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The relevant substantive law will determine which facts are material for purposes of summary judgment." *Id.* Furthermore, "a plaintiff cannot [base] a motion for summary judgment (on a fraud claim) on allegations of fraud that were never pled with particularity in the first place." *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1027 (N.D. Cal. 2012); *see* |

*also Navajo v. U.S.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court");

*Picken v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006) (failure to comply with notice requirements under Rule 8 precludes summary judgment based on new allegations); Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) (evidence relating to allegations not alleged in the complaint is i.

Rule. 9(b) required Goldwater to give notice of the *exact statements* that Goldwater claimed were fraudulent and explain why those statements were fraudulent. Fed.R.Civ.P. 9(b); *In re Glenfed, Inc. Securities Litigation,* 42 F.3d 1541, 1548 (9th Cir. 1994) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."); *Camp v. Pacific Financial Group*, 956 F. Supp. 1541, 1551

(C.D. Cal. 1997) (same); *Teamsters Local 617 Pension v. Apollo Group*, 633 F. Supp. 2d 763, 783 (D. Ariz. 2009); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1057 (C.D. Cal. 2015).

In its first amended complaint, Goldwater claimed that Elizarov misrepresented his marital status, whether he was a party to a pending lawsuit, and whether he was in default on federal loans. EFD 44 at pp. 4:25-8:18. Now, however, Goldwater wants to assert that Elizarov also misrepresented his assets in the loan application. Although Goldwater mentioned JP Morgan chase account, Goldwater did not allege that the representation was false. Goldwater subsequently confirmed these to be the only false statements in response to interrogatories. Joint Exhibits Part D at p. 945:16-26 (Exhibit L, Admissions), Part D at p. 949:1-10 (Alekseyeff decl re Exhibit L). The only other place where this account was mentioned was in the allegations relating to the May 2020 mortgage assistance application, and then only to suggest that the account (and its funds) were still available when Elizarov applied for the assistance.

Fact No. 31

EFD 44 at p. 6:21-24. And since Goldwater did not allege that the representation regarding funds in the JP Morgan account *at the time Elizarov applied for the loan* was false, Elizarov had no notice of this claim.

Therefore, Goldwater may not rely on this new factual theory on summary judgment.

**Goldwater deposition is inadmissible.**

"It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Rule 32 governs the admissibility of deposition transcripts. Under this rule, deposition is admissible only "to the extent it would be admissib le under the Federal Rules of Evidence if the deponent were present and testifying… ." Fed.R.Civ.P. 32(a)(1)(B). Evidence Rule 602, in turn, requires testimony to be based on personal knowledge. Fed.R.Evid. 602. *See also Carmen v. San Francisco Unified School Dist*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("Federal Rule of Civil Procedure

Fact No. 31

32(a) makes deposition testimony usable in motion proceedings 'so far as admissible under the rules of evidence,' and Federal Rule of Evidence 602 prevents a witness from testifying on a matter 'unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.'); *Samuels v. Doctors Hospital, Inc.*, 588 F.2d 485, 487 n.2 (5th Cir. 1979) ("The requirement of Rule 56(e) that affidavit testimony be competent and admissible evidence applies with equal force to deposition testimony.  As an exception to this rule, "[a]n *adverse party* may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)."  Fed.R.Civ.P. 32(a)(3).  By contrast, the rules do not permit the corporate deponent to use *its own self-serving hearsay-based testimony* to prove the necessary facts.  *Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, 907-08 (5th Cir. 2010) (although "[rule] 30(b)(6) allows corporate representatives to testify to matters within the corporation's knowledge during deposition, and Rule 32(a)(3) permits an adverse party to use that deposition

Fact No. 31

testimony during trial...a corporate representative may not testify to matters outside his own personal knowledge 'to the extent that information [is] hearsay not falling within one of the authorized exceptions.'")

Here, Bearden testified under Fed.R.Civ.P. 30(b)(6) as Goldwater's designated representative. Joint Exhibits Part D at p. 958:17:20 (Exhibit N, Bearden depo excerpt), Part D at p. 960:2-14 (Alekseyeff decl. re Exhibit N).  Bearden was not involved in Elizarov's loan transaction and, therefore, lacks personal knowledge to testify to these matters.  Joint Exhibits Part D at p. 963:25-964:6 (Goldwater depo, Bearden, excerpt).

Accordingly, while *defendants* may rely on Bearden's testimony because it is binding on Goldwater, *Snapp v. United Transp. Union*, 889 F.3d 1088, 1104 (9th Cir. 2018) ("an organization's deposition testimony is binding in the sense that whatever its deponent says can be used against the organization"), Goldwater may not rely on Bearden's testimony to establish its facts.

| | |
|---|---|
| | Therefore, the proposed testimony is inadmissible. |
| 32. In connection with his loan application, Goldwater requested and Elizarov provided an explanation of credit report.<br><br>*Evidence*<br><br>Joint Exhibit Part C at pages 724-728 (Email correspondence dated July 9, 2019 from Goldwater | **DISPUTED.**<br><br>**The fact is immaterial/lack of notice.**<br><br>"Material facts...are those which may affect the outcome of the case." *Cady v. Hartford Life & Accidental Ins. Co*., 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The relevant substantive law will |

Bank to Elizarov requesting information)

Joint Exhibit Part C at pages 730-733 (Email correspondence dated July 9, 2019 from Elizarov to Goldwater Bank with attachments)

determine which facts are material for purposes of summary judgment." *Id.* Furthermore, "a plaintiff cannot [base] a motion for summary judgment (on a fraud claim) on allegations of fraud that were never pled with particularity in the first place." *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1027 (N.D. Cal. 2012); *see also Navajo v. U.S.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Picken v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006) (failure to comply with notice requirements under Rule 8 precludes summary judgment based on new allegations); Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) (evidence relating to allegations not alleged in the complaint is i.

Rule. 9(b) required Goldwater to give notice of the *exact statements* that Goldwater claimed were fraudulent and explain why those statements were fraudulent. Fed.R.Civ.P. 9(b); *In re Glenfed, Inc.*

Fact No. 32

*Securities Litigation,* 42 F.3d 1541, 1548 (9th Cir. 1994) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."); *Camp v. Pacific Financial Group*, 956 F. Supp. 1541, 1551 (C.D. Cal. 1997) (same); *Teamsters Local 617 Pension v. Apollo Group*, 633 F. Supp. 2d 763, 783 (D. Ariz. 2009); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc*., 112 F. Supp. 3d 1048, 1057 (C.D. Cal. 2015).

In its first amended complaint, Goldwater claimed that Elizarov misrepresented his marital status, whether he was a party to a pending lawsuit, and whether he was in default on federal loans. EFD 44 at pp. 4:25-8:18. Now, however, Goldwater also wants to assert that Elizarov misrepresented something about his credit report. And since Goldwater has no alleged any misrepresentations regarding an explanation of credit reports, Elizarov had no notice of the claim, and Goldwater may not rely on this new factual theory on summary judgment.

**Exhibits 48 and 49 are unauthenticated.**

"A trial court can only consider admissible evidence in ruling on a motion for summary

judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  To be admissible, evidence must be properly authenticated.  Fed.R.Evid. 901.  Therefore, a document submitted for summary judgment must be authenticated.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989).  Merely attaching a document to a declaration is insufficient. *United States v. Dibbl*e, 429 F.2d 598, 602 (9th Cir. 1970).  "A document *authenticated through personal knowledge* must be attached to an affidavit, and the affiant must be a competent '"witness who wrote [the document], signed it, used it, or saw others do so."'"  *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics, citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1).

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case. Joint Exhibits Part D at p. 864:9-11 (standing order).  Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving

forward.  Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are what Goldwater claims they are, *to wit:* email correspondence.

| | |
|---|---|
| 34. Goldwater requested employment information, an explanation of credit report, and rental history for the purposes of evaluating Elizarov's ability to repay and qualify for the mortgage. | **DISPUTED**.<br><br>**The fact is immaterial/lack of notice.**<br><br>"Material facts...are those which may affect the outcome of the case." *Cady v. Hartford Life & Accidental Ins. Co*., 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The relevant substantive law will determine which facts are material for purposes of summary judgment." *Id*. Furthermore, "a plaintiff cannot [base] a motion for summary judgment (on a fraud claim) on allegations of fraud that were never |

pled with particularity in the first place." *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1027 (N.D. Cal. 2012); see also Navajo v. U.S., 535 F.3d 1058, 1080 (9th Cir. 2008) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Picken v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006) (failure to comply with notice requirements under Rule 8 precludes summary judgment based on new allegations); *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 995 (9th Cir. 2009) (evidence relating to allegations not alleged in the complaint is inadmissible).

Rule. 9(b) required Goldwater to give notice of the exact statements that Goldwater claimed were fraudulent and explain why those statements were fraudulent. Fed.R.Civ.P. 9(b); *In re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1548 (9th Cir. 1994) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff

Fact No. 32

| | |
|---|---|
| | must set forth an explanation as to why the statement or omission complained of was false or misleading."); *Camp v. Pacific Financial Group*, 956 F. Supp. 1541, 1551 (C.D. Cal. 1997) (same); *Teamsters Local 617 Pension v. Apollo Group*, 633 F. Supp. 2d 763, 783 (D. Ariz. 2009); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1057 (C.D. Cal. 2015).<br><br>In its first amended complaint, Goldwater claimed that Elizarov misrepresented his marital status, whether he was a party to a pending lawsuit, and whether he was in default on federal loans. EFD 44 at pp. 4:25-8:18. Now, however, Goldwater also wants to assert that Elizarov misrepresented something about his credit report, employment information, and rental history. And since Goldwater has not alleged any misrepresentations regarding an explanation of credit reports, Elizarov had no notice of the claim, and Goldwater may not rely on this new factual theory on summary judgment. |
| 36. Goldwater relied on the statements made in Elizarov's Initial Application and Final Application in determining | **DISPUTED.**<br><br>**Bearden's deposition does not support this fact.** |

whether to extend credit to Elizarov, and Elizarov had the opportunity to correct any errors.

*Evidence*

Exhibit Part A at 90:5-92:7 (Excerpts from the Deposition Transcript of Cory Bearden Joint)

Although Bearden testified about borrower's opportunity to correct the application, Bearden did not testify that the Bank relied on the information included in the initial and final application.

**Elizarov disputes these facts.**

Elizarov did not fill out nor sign the "Initial loan application" Although Elizarov signed the "Final loan application," Elizarov did not fill out that form nor read it prior to signing. At signing, the notary public presented Elizarov with signature pages for multiple documents and did not leave a copy for Elizarov. Joint Exhibits Part E at p. 1320:5-1322:5 (Defense Exhibit BBB, Elizarov decl), Part D at p. 1010:23-1011:13, 1013:25-1014:11 (Defense Exhibit V, Hill Depo excerpt), Part D at p. 1003-1006, 1007:7-16 (Defense Exhibit U, Application, Depo Exhibit 104).

Prior to July 31, 2019, when the transaction closed, Elizarov disclosed to Goldwater Bank that he had a husband, that he was a party to a settled but still pending BMW lawsuit, and

Fact No. 36

that Elizarov had paid off the IRS debt. Joint Exhibits Part D at p. 1020 (Exhibit W, letter), Part D at p. 1021:2-18 (Alekseyeff decl re), Part D at p. 1022:1-10 (Elizarov decl), Part D. at p. 1024 (Exhibit X, settlement statement), Part D. at p. 1026:1-13 (Alekseyeff decl), Part D. at p. 1027:2-26 (Elizarov decl), Part D. at p. 1029-1035 (Exhibit Y, Settlement Agreement), Part D. at p. 1036:2-27 (Alekseyeff decl), Part D at p. 1038:2-15 (Elizarov decl), Part D at p. 1050:23-1051:19 (Exhibit AA, Goldwater depo, Bearden), Part D at p. 1052:12-18 (Exhibit AA, Goldwater depo, Bearden), Part D at p. 1053:24-1054:10 (Exhibit AA, Goldwater depo, Bearden), Part D at p. 1055:11-16 (Exhibit AA, Goldwater depo, Bearden), Part D at p. 1056:11-1057:22 (Exhibit AA, Goldwater depo, Bearden), Part D at p. 1059:2-13 (Alekseyeff decl).

Goldwater prepared this document at 10:36 am on July 31, 2019, the day of closing. This document was presented to Mr. Elizarov along with other documents by the notary public. Goldwater does not send out documents to its borrowers ahead of time. Joint Exhibit Part A at p. 257-260 (Exhibit 7,

---

DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS

Fact No. 36

| | |
|---|---|
| | loan application), Part D at p. 1003-1006 (Exhibit U, loan application), Part D at p. 1007:7-16 (Alekseyeff decl), Part E at p. 1156:16-1157:15 (Defense Exhbit NN, Goldwater depo excerpt), Part E at p. 1159:6-13 (Alekseyeff decl), Part D at p. 1057:24-1060:3 (Exhibit L, Goldwater depo, Bearden), Part D at p. 1060:25-1064:12 (Exhibit AA, Goldwater depo, Bearden), Part D at p. 1066:2-13 (Alekseyeff decl), Part D at p. 1063:22-1064:12 (Defense Exhibit AA, Goldwater depo), Part D at p. 1066:7-13), Part E at p. 1320:5-16 (Elizarov decl.). |
| 37. Elizarov instructed Goldwater that he would take title to the Property as a single man.<br><br>*Evidence*<br><br>Joint Exhibit Part A at 43:12-44:21 (Excerpts from the Deposition Transcript of Artur Elizarov) | **DISPUTED.**<br><br>**Elizarov testimony does not support this fact.**<br><br>This testimony shows "Mr. Hill" asking whether Elizarov wanted to take title as "a single man" but does not reflect an instruction from Elizarov to Goldwater that Elizarov would take title "as a single man." |

| | |
|---|---|
| 38. Elizarov fell behind on payments and never became current on the Goldwater loan past April 1, 2020.<br><br>*Evidence*<br><br>Joint Exhibit Part B at page 464 ¶ 4 (Declaration of Peter Hill ISO Motion for Temporary Restraining Order (ECF No. 19-4)).<br><br>Joint Exhibit Part A at pages 278-279 (March 10, 2021 Payment Reminder)<br><br>Joint Exhibit Part A at pages 281-282 (Loan Payment History) | **DISPUTED.**<br><br>**Declaration of Peter Hill is not based on personal knowledge.**<br><br>Rule 56 required Hill to explain how he knew the fact asserted in paragraph 4. Fed.R.Civ.P. 56(c)(4); *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) ("'[C]onclusory affidavits that do not affirmatively show personal knowledge of specific facts are insufficient.,'" quoting *Casey v. Lewis*, 4 F.3d 1516, 1527 (9th Cir. 1993)). Here, Hill did not explain how he knew that "Elizarov defaulted on the Goldwater Loan, and he is delinquent on the payment obligations as of April 1, 2020." Therefore, the declaration is inadmissible.<br><br>**Exhibit 13 (payment reminder) Exhibit 14 (payment history) are unauthenticated.**<br><br>"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. Fed.R.Evid. 901. Therefore, a document submitted for summary judgment must be authenticated. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989). Merely attaching a document to a declaration is insufficient. |

*United States v. Dibbl*e, 429 F.2d 598, 602 (9th Cir. 1970).  "A document *authenticated through personal knowledge* must be attached to an affidavit, and the affiant must be a competent '"witness who wrote [the document], signed it, used it, or saw others do so."'"  *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics, citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1).

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case. Joint Exhibits Part D at p. 864:9-11 (standing order).  Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward.  Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8)

Fact No. 38

to support a finding that the documents are what Goldwater claims they are, *to wit:* payment reminder and payment history.

Therefore, these exhibits are inadmissible.

| | |
|---|---|
| 42. Elizarov's Mortgage Assistance Application also states that the property is a "primary residence" that is "[o]wner occupied."<br><br>*Evidence*<br><br>Joint Exhibit Part A at 63:25-65:16 (Excerpts from the Deposition Transcript of Artur Elizarov)<br><br>Joint Exhibit Part B at pages 283 - 287 (Mortgage Assistance Application) | **DISPUTED.**<br><br>**The fact is immaterial/lack of notice.**<br><br>"Material facts...are those which may affect the outcome of the case." *Cady v. Hartford Life & Accidental Ins. Co.*, 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The relevant substantive law will determine which facts are material for purposes of summary judgment." *Id.* Furthermore, "a plaintiff cannot [base] a motion for summary judgment (on a fraud claim) on allegations of fraud that were never pled with particularity in the first place." *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1027 (N.D. Cal. 2012); *see also Navajo v. U.S.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Picken v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006) (failure to comply with notice requirements under Rule 8 precludes |

summary judgment based on new allegations); Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) (evidence relating to allegations not alleged in the complaint is i.

Rule 9(b) required Goldwater to give notice of the *exact statements* that Goldwater claimed were fraudulent and explain why those statements were fraudulent. Fed.R.Civ.P. 9(b); *In re Glenfed, Inc. Securities Litigation,* 42 F.3d 1541, 1548 (9th Cir. 1994) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."); *Camp v. Pacific Financial Group*, 956 F. Supp. 1541, 1551 (C.D. Cal. 1997) (same); *Teamsters Local 617 Pension v. Apollo Group*, 633 F. Supp. 2d 763, 783 (D. Ariz. 2009); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1057 (C.D. Cal. 2015).

In its first amended complaint, misrepresented his income and assets in the assistance application. EFD 44 at p. 6:12-24 (First amended verified complaint). Now,

Fact No. 42

however, Goldwater also wants to assert that Elizarov misrepresented the status of the property as his primary residence. And since Goldwater did not allege a misrepresentation regarding the status of the property as "primary residence," Elizarov had no notice of this claim, and Goldwater may not rely on this new factual theory on summary judgment.

**Elizarov's deposition does not support the fact.**

Elizarov did not testify that he represented to Goldwater that his house was a primary residence.

**Exhibit 15 (assistance application) is unauthenticated.**

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. Fed.R.Evid. 901. Therefore, a document submitted for summary judgment must be authenticated. *Hal Roach Studios,*

*Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989).  Merely attaching a document to a declaration is insufficient.  *United States v. Dibbl*e, 429 F.2d 598, 602 (9th Cir. 1970).  "A document *authenticated through personal knowledge* must be attached to an affidavit, and the affiant must be a competent '"witness who wrote [the document], signed it, used it, or saw others do so."'"  *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics, citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1).

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case.  Joint Exhibits Part D at p. 864:9-11 (standing order).  Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward.  Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the

document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are what Goldwater claims they are, *to wit:* mortgage assistance application.

**Signature on Exhibit 15 (assistance application) is unauthenticated.**

The document appears to have an electronic signature. To rely on Elizarov's digital signature, Goldwater had to offer evidence that Elizarov had agreed to transact with Goldwater electronically.  Cal. Civ. Code, s. 1633.5, subd. (b); *J.B.B. Inv. Partners, Ltd. v. Fair*, 182 Cal. Rptr. 3d 154, 165-166 (Cal. Ct. App. 2014).  Here, Goldwater has presented no evidence of such an agreement, and Elizarov denied ever agreeing to transact with Goldwater electronically. ELIZAROV DECLARATION, 12. Therefore, to the extent Goldwater claims the electronic signature to be Elizarov's, the signature is invalid.

Furthermore, to rely on that signature, Goldwater had to introduce evidence that it was in fact Elizarov who signed that document.  Cal. Civ. Code, s. 1633.9, subd. (a). Once Elizarov stated that he could not recall signing the document**,** Joint Exhibits Part D at p. 951:9-953:7 (Exhibit M, Elizarov depo excerpt), Part D at p. 955:1-8 (Alekseyeff decl re Exhibit M), Part E at p. 1319:16-17 (Elizarov decl), the burden

DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS

Fact No. 42

| | |
|---|---|
| | shifted to Goldwater to authenticate the signature. *Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal.App.4th 836, 846 (Cal. Ct. App. 2014); *Nordeman v. Dish Network LLC*, 525 F. Supp. 3d 1080 (N.D. Cal. 2021) (citing *Ruiz*). To do that, Goldwater had to explain, by admissible evidence, how Goldwater ascertained that the signature was "the act of" Elizarov. *Ruiz, supra*, at p. 844. Here, Goldwater has offered no such evidence. |
| 43. Elizarov stated in a declaration that he had actually "moved to the State of Florida in May 2020, months before I decided to sell my Palm Springs home." <br><br> *Evidence* | **DISPUTED.** <br><br> **The fact is immaterial/lack of notice.** <br><br> "Material facts...are those which may affect the outcome of the case." *Cady v. Hartford Life & Accidental Ins. Co*., 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The relevant substantive law will determine which facts are material for |

| Joint Exhibit Part B at page 470 ¶ 8 (Decl. of Elizarov, ECF No. 40-1) | purposes of summary judgment." *Id.* Furthermore, "a plaintiff cannot [base] a motion for summary judgment (on a fraud claim) on allegations of fraud that were never pled with particularity in the first place." *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1027 (N.D. Cal. 2012); *see also Navajo v. U.S.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Picken v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006) (failure to comply with notice requirements under Rule 8 precludes summary judgment based on new allegations); Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) (evidence relating to allegations not alleged in the complaint is i. Rule. 9(b) required Goldwater to give notice of the *exact statements* that Goldwater claimed were fraudulent and explain why those statements were fraudulent. Fed.R.Civ.P. 9(b); *In re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1548 (9th |

Fact No. 43

| | |
|---|---|
| | Cir. 1994) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."); *Camp v. Pacific Financial Group*, 956 F. Supp. 1541, 1551 (C.D. Cal. 1997) (same); *Teamsters Local 617 Pension v. Apollo Group*, 633 F. Supp. 2d 763, 783 (D. Ariz. 2009); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1057 (C.D. Cal. 2015).<br><br>In its first amended complaint, Goldwater claimed that misrepresented his income and assets in the assistance application. EFD 44 at p. 6:12-24 (first amended verified complaint). Now, however, Goldwater wants to assert that Elizarov also falsely claimed that the house was his "primary residence." And since Goldwater did not allege this claim with particularity in the complaint, Elizarov had no notice of this claim, and Goldwater may not raise it for the first time on summary judgment. |
| 44. Elizarov introduced a copy of a 12-month lease for an apartment in Wilton Manors, Florida beginning on May 9, 2020. | **DISPUTED.**<br><br>**The fact is immaterial/lack of notice.**<br><br>"Material facts...are those which may affect the outcome of the case." *Cady v. Hartford* |

| *Evidence* | *Life & Accidental Ins. Co.*, 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The relevant substantive law will determine which facts are material for purposes of summary judgment." *Id.* Furthermore, "a plaintiff cannot [base] a motion for summary judgment (on a fraud claim) on allegations of fraud that were never pled with particularity in the first place." *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1027 (N.D. Cal. 2012); *see also Navajo v. U.S.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Picken v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006) (failure to comply with notice requirements under Rule 8 precludes summary judgment based on new allegations); Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) (evidence relating to allegations not alleged in the complaint is i. |
|---|---|
| Joint Exhibit Part B at pages 289-297 (Lease, ECF No. 40-3) | |

Fact No. 44

Rule. 9(b) required Goldwater to give notice of the *exact statements* that Goldwater claimed were fraudulent and explain why those statements were fraudulent. Fed.R.Civ.P. 9(b); *In re Glenfed, Inc. Securities Litigation,* 42 F.3d 1541, 1548 (9th Cir. 1994) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."); *Camp v. Pacific Financial Group*, 956 F. Supp. 1541, 1551 (C.D. Cal. 1997) (same); *Teamsters Local 617 Pension v. Apollo Group*, 633 F. Supp. 2d 763, 783 (D. Ariz. 2009); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1057 (C.D. Cal. 2015).

In its first amended complaint, Goldwater claimed that misrepresented his income and assets in the assistance application. EFD 44 at p. 6:12-24 (first amended verified complaint). Now, however, Goldwater wants to assert that Elizarov also falsely claimed that the house was his "primary residence." And since Goldwater did not allege this claim with particularity in the complaint, Elizarov had

1    no notice of this claim, and Goldwater may
2    not raise it for the first time on summary
3    judgment.
4
5    **Exhibit 16 (lease) is unauthenticated.**
6
7    "A trial court can only consider admissible
8    evidence in ruling on a motion for summary
9    judgment." *Orr v. Bank of America, NT &*
10   *SA*, 285 F.3d 764, 773 (9th Cir. 2002).  To be
11   admissible, evidence must be properly
12   authenticated.  Fed.R.Evid. 901.  Therefore, a
13   document submitted for summary judgment
14   must be authenticated.  *Hal Roach Studios,*
15   *Inc. v. Richard Feiner & Co.*, 896 F.2d 1542,
16   1550–51 (9th Cir. 1989).  Merely attaching a
17   document to a declaration is insufficient.
18   *United States v. Dibbl*e, 429 F.2d 598, 602
19   (9th Cir. 1970).   "A document *authenticated*
20   *through personal knowledge* must be attached
21   to an affidavit, and the affiant must be a
22   competent '"witness who wrote [the
23   document], signed it, used it, or saw others do
24   so."'" *Las Vegas Sands v. Nehme*, 632 F.3d
25   526, 533 (9th Cir. 2011), original italics,
26   citing *Orr, supra,* at p. 773-74 fn. 8;
27   Fed.R.Evid. 901(b)(1).
28

DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS

193

Fact No. 44

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case. Joint Exhibits Part D at p. 864:9-11 (standing order). Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward. Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are what Goldwater claims they are, *to wit:* lease.

Fact No. 44

| 46. At the time Mr. Elizarov submitted the Mortgage Assistance Application, and during the entirety of the forebearance period, Mr. Elizarov's income exceeded $10,000 per month | **DISPUTED.** |
|---|---|
| | **Exhibit 6 (requests for admission) does not support this fact**. |
| *Evidence* | First, this exhibit did not include any answers; the exhibit includes only unanswered questions. Therefore, this document does not show that Elizarov admitted any of these requests. Second, if Goldwater asserts that Elizarov automatically admitted these requests by his failure to provide a timely answer, Fed.R.Civ. P. 36(a)(3) (failure to respond within 30 days is an automatic admission), Goldwater offered no evidence to this court that Elizarov did not respond to this request. |
| Joint Exhibit Part A at page 116 (Goldwater's Second Set of Requests for Admission to Elizarov, Nos. 54-59). | |
| Joint Exhibit Part B at 298-303 (Gables Residential Lease Application) | **Exhibit 17 (lease application), 50 (pay stubs), and 51 (bank statements) are unauthenticated**. |
| Joint Exhibit Part C at page 735 (Elizarov's June 15, 2020 Paystub from Employer, Ecivis) | "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. Fed.R.Evid. 901. Therefore, a |
| Joint Exhibit Part C at pages 736 - 761 (May and June 2020 Statements for JP Morgan Chase Joint Bank Account) | |

document submitted for summary judgment must be authenticated.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989).  Merely attaching a document to a declaration is insufficient.  *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970).   "A document *authenticated through personal knowledge* must be attached to an affidavit, and the affiant must be a competent '"witness who wrote [the document], signed it, used it, or saw others do so."'"  *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics, citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1).

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case.  Joint Exhibits Part D at p. 864:9-11 (standing order).  Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward.  Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Fact No. 46

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are what Goldwater claims they are, *to wit:* lease application, pay stubs, and bank statements.

**Signature on Exhibit 17, (lease application) is unauthenticated**

The document appears to have an electronic signature. To rely on Elizarov's digital signature, Goldwater had to offer evidence that Elizarov had agreed to transact with Goldwater electronically.  Fla. Stat. § 668.50(5)(b).Here, Goldwater has presented no evidence of such an agreement, and Elizarov denied ever agreeing to transact with Goldwater electronically. ELIZAROV DECLARATION, 12. Therefore, to the extent Goldwater claims the electronic signature to be Elizarov's, the signature is invalid.

Furthermore, to rely on that signature, Goldwater had to introduce evidence that it was in fact Elizarov who signed that document.  Fl. Stat. § 668.50(9)(a). Once Elizarov stated that he could not recall signing the document**,** Joint Exhibits Part D

Fact No. 46

| | |
|---|---|
| | at p. 951:9-953:7 (Exhibit M, Elizarov depo excerpt), Part D at p. 955:1-8 (Alekseyeff decl re Exhibit M), Part E at p. 1319:16-17 (Elizarov decl), the burden shifted to Goldwater to authenticate the signature. *See e.g., Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal.App.4th 836, 846 (Cal. Ct. App. 2014) (decided under California's version of the Uniform Act); *Nordeman v. Dish Network LLC*, 525 F. Supp. 3d 1080 (N.D. Cal. 2021) (citing *Ruiz*). To do that, Goldwater had to explain, by admissible evidence, how Goldwater ascertained that the signature was "the act of" Elizarov. *Ruiz, supra*, at p. 844. Here, Goldwater has offered no such evidence. |
| 47. During the month of May 2020, Mr. Elizarov's bank account held jointly with Mr. Alekseyeff had approximately $100,000 in deposits.<br><br>*Evidence*<br><br>Joint Exhibit Part C at pages 736-761 (May and June 2020 Statements for JP Morgan Chase Joint Bank Account) | **DISPUTED.**<br><br>**Exhibit 51 (bank statements) is unauthenticated.**<br><br>"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. Fed.R.Evid. 901. Therefore, a document submitted for summary judgment must be authenticated. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989). Merely attaching a document to a declaration is insufficient. |

*United States v. Dibbl*e, 429 F.2d 598, 602 (9th Cir. 1970).   "A document *authenticated through personal knowledge* must be attached to an affidavit, and the affiant must be a competent '"witness who wrote [the document], signed it, used it, or saw others do so."'"  *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics, citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1).

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case. Joint Exhibits Part D at p. 864:9-11 (standing order).  Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward.  Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8)

Fact No. 47

| | |
|---|---|
| | to support a finding that the documents are what Goldwater claims they are, *to wit:* bank statements. |
| 48. Elizarov continued to renew his request for mortgage assistance up to February of 2021 continuing to claim hardship<br><br>*Evidence*<br><br>Joint Exhibit Part B at 305-218 (Email correspondence confirming Elizarov requests to renew mortgage assistance) | **DISPUTED.**<br><br>**Exhibit 18 (various correspondence) is unauthenticated.**<br><br>"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. Fed.R.Evid. 901. Therefore, a document submitted for summary judgment must be authenticated. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989). Merely attaching a document to a declaration is insufficient. *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970). "A document *authenticated through personal knowledge* must be attached to an affidavit, and the affiant must be a competent '"witness who wrote [the document], signed it, used it, or saw others do so."'" *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics, |

citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1).

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case. Joint Exhibits Part D at p. 864:9-11 (standing order). Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward. Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are what Goldwater claims they are, *to wit:* email correspondence.

Furthermore, the citation to the record is nonsensical.

Fact No. 48

| | |
|---|---|
| 49. Elizarov received direct deposits from Ecivis for the entirety of his forebearance period ranging from $4,600 to $6,000 every two weeks.<br><br>*Evidence*<br><br>Joint Exhibit Part C at pages 762 - 856 (Statements for JP Morgan Chase Joint Bank Account) | **DISPUTED.**<br><br>**Exhibit 52 (bank statements) was not disclosed in discovery.**<br><br>In its final disclosure statement, Goldwater disclosed that it would rely on materials "produced to Goldwater in response to various subpoenas *duces tecum* Goldwater caused to be issued and were previously produced in this litigation are bates stamped as follows: ALLY_000001-000055; EOTW_000001-000654; CITY OF WILTON MANORS_000001-000058; CLOSED BUYER_000001-000002; DESERT WATER_000001-000021; ENGLISH_000001-000021; GABLES RESIDENTIAL_000001-000092; eCIV000001-000364; PaeDae_000001-000028; JPMorgan_00001-000882; JPMS_000001-000865. In addition to these documents, Goldwater refers the parties to the additional documents Goldwater received in response to various subpoenas duces tecum Goldwater caused to be issued and were previously produced in this litigation from the following parties: Paypal d/b/a Venmo, Ally Bank, and DocuSign. Finally, certain |

documents were produced to Goldwater in response to a subpoenas duces tecum dated November 23, 2022, by JP Morgan Securities, LLC, but these documents have not been produced to all parties." Joint Exhibits Part D at p. 886:24-888:7 (Defense Exhibit B, fourth supplemental disclosures), Part D at p. 892:2-10 (Alekseyeff decl re Exhibit B)). According to these disclosures, Goldwater intended to rely only on those records that included bates stamps plus, potentially, JP Morgan Chase records that were produced on November 23, 2022. The records submitted to this court as Exhibit 45 do not include any bates stamps of the kind identified in Goldwater's disclosure statement. Therefore, these records are not admissible. Fed.R.Civ.P. 26(a)(1)(A)(ii) (documents supporting a claim must be disclosed); Fed.R.Civ.P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial").

Fact No. 49

| | |
|---|---|
| 50. Following his default and receipt of mortgage assistance, Elizarov decided to sell the subject property, and informed Goldwater of the same.<br><br>*Evidence*<br><br>Joint Exhibit Part A at 45:2-19 (Excerpts from the Deposition Transcript of Artur Elizarov)<br><br>Joint Exhibit Part A at 325:21-326:17, 339:22-341:3 (Excerpts from the Deposition Transcript of Peter Hill). | **DISPUTED.**<br><br>**Elizarov testimony does not support this fact.**<br><br>Elizarov testified that he provided the escrow information to the bank on February 4, 2021, but did not testify that he was in default.<br><br>**Hill testimony does not support this fact.**<br><br>Nor did Hill testify that Elizarov was "in default" when Elizarov shared the escrow information with Goldwater. |
| 51. Elizarov played an active role in marketing the sale of the Property.<br><br>*Evidence*<br><br>Joint Exhibit Part B at page 467 at ¶ 20 (Declaration of Peter Hill ISO Motion for Temporary Restraining Order (ECF No. 19-4)). | **DISPUTED.**<br><br>**The fact is irrelevant.**<br><br>"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be relevant. Fed.R.Evid. 402; *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019) ("irrelevant evidence is inadmissible"). |

"Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action."  Fed.R.Evid. 401.  "Deciding whether a fact is "of consequence in determining the action" generally requires considering the substantive issues the case presents." *Crawford, supra*, at p. 1077. "Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case."  *Id.*

Here, whether Elizarov played a role in marketing his property will not make any fact of consequence more likely than not. Therefore, unless Goldwater (as the proponent of the evidence) can explain how this fact is relevant, the court should exclude the evidence.

**Testimony is not based on personal knowledge.**

Declaration must be based on personal knowledge. Fed.R.Civ.P 56(c)(4). For statement to be admissible, the declaration

Fact No. 51

| | |
|---|---|
| | must explain how the witness knows the information reported. *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) ("'[C]onclusory affidavits that do not affirmatively show personal knowledge of specific facts are insufficient.'") Here, Hill did not explain how he knew that Elizarov played an active role in marketing the sale of the Subject Property. Therefore, the testimony is inadmissible.<br><br>**The fact is disputed.**<br><br>Elizarov did not market the property himself. Elizarov hired a local broker, Will Cook, to market and sell the property for him. Joint Exhibits Part E at p. 1324:13-14 (Elizarov decl). |
| 52. Elizarov is a real estate broker holding an active license from the California Department of Real Estate.<br><br>*Evidence*<br><br>Joint Exhibit Part A at 35:13-16 (Excerpts from the Deposition Transcript of Artur Elizarov) | **DISPUTED.**<br><br>**The fact is irrelevant.**<br><br>"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be relevant. Fed.R.Evid. 402; *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. |

Fact No. 51, 52

| | |
|---|---|
| Joint Exhibit Part B at page 467 at ¶ 19 (Declaration of Peter Hill ISO Motion for Temporary Restraining Order (ECF No. 19-4)). | 2019) ("irrelevant evidence is inadmissible"). "Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action." Fed.R.Evid. 401. "Deciding whether a fact is "of consequence in determining the action" generally requires considering the substantive issues the case presents." *Crawford, supra*, at p. 1077. "Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." *Id.* |
| | Here, whether Elizarov was a licensed broker will not make any fact of consequence more likely. Therefore, unless Goldwater (as the proponent of the evidence) can explain how this fact is relevant, the court should exclude the evidence. |
| 56. On March 3, 2021, Elizarov executed and delivered a 24 page document entitled "Seller Opening Package" to Escrow of the West in connection with the sale of the Property to Howlett. | **DISPUTED.**<br><br>**Exhibit 24 (audit trail) is unauthenticated.**<br><br>**T**he document is not authenticated. "A trial court can only consider admissible evidence in ruling on a motion for summary |

| | |
|---|---|
| 1 | *Evidence* | judgment." Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). To be |
| 2 | | |

*Evidence*

Joint Exhibit Part B at pages 394-395 (Adobe DocuSign Envelope Confirmation)

judgment." Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. Fed.R.Evid. 901. Therefore, a document submitted for summary judgment must be authenticated. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550–51 (9th Cir. 1989). Merely attaching a document to a declaration is insufficient. United States v. Dibble, 429 F.2d 598, 602 (9th Cir. 1970). "A document authenticated through personal knowledge must be attached to an affidavit, and the affiant must be a competent '"witness who wrote [the document], signed it, used it, or saw others do so."'" Las Vegas Sands v. Nehme, 632 F.3d 526, 533 (9th Cir. 2011), original italics, citing Orr, supra, at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1). The court previously admonished Goldwater that its exhibits must be properly authenticated. Joint Exhibit Part D at pp. 893-894 (minute order dated May 5, 2023).

Here, Goldwater submitted a purported declaration of Laura LeMaster to authenticate the document. Although this declaration could satisfy the foundation requirements,

Fact No. 56

Fed.R.Evid. 902(11), *this* declaration is defective because it includes a *digital signature* rather than a scanned signature. Joint Exhibits Part B at p. 392 (Exhibit 24, declaration of custodian). L.R. 5-4.3.4(a)(3) (declaration must be hand-signed and scanned).

Therefore, the document is not properly signed and may not be admitted.

**Evidence does not support the fact.**

Exhibit 24 is not the "Seller Opening Package." The document appears to be an audit history. This document does not show that anything was delivered to Escrow of the West.

Therefore, the document does not support the fact.

| | |
|---|---|
| 58. Ms. Cross obtained permission from Mr. Elizarov to make Goldwater a party to the escrow for the purpose of obtaining a payoff demand.<br><br>*Evidence* | **DISPUTED.**<br><br>**The evidence does not support the fact.**<br><br>Cross did not testify that Elizarov gave her permission "to make Goldwater a party to the escrow." Cross testified that *she* considered |

Fact No. 56, 58

| | |
|---|---|
| Joint Exhibit Part B at 370:25-371:4. (Excerpts from the Transcript of the Deposition of Andrea Cross) | Goldwater to be a party after Elizarov authorized her to speak to Goldwater.<br><br>**Elizarov disputes the facts.**<br><br>At the time Elizarov spoke to Andrea Cross regarding Goldwater Bank, Elizarov believed that Goldwater's Deed of Trust was properly recorded and that Escrow of the West would automatically pay the lien consistent with Paragraph 19 of the escrow instructions. Joint Exhibits Part D at p. 984, par. 53, last full sentence at the bottom (Defense Exhibit Q, supplemental escrow instructions), Part D p. 986:2-9 (Defense Exhibit Q, authenticating declaration), Part E at p. 1326:13-17 (Elizarov decl.) |
| 59. On March 22, 2021, at 11:52 a.m., Ms. Cross sent an email to Goldwater stating "we have been in contact with Mr. Artur Elizarov and now received permission to communicate with Goldwater Bank.  Please find attached our request for payoff demand for property referenced above."<br><br>*Evidence* | **DISPUTED.**<br><br>**Exhibit 25 (emails) is hearsay.**<br><br>"'Hearsay' means a statement that: **(1)** the declarant does not make while testifying at the current trial or hearing; and **(2)** a party offers in evidence to prove the truth of the matter asserted in the statement." Fed.R.Evid. 801(c).  Hearsay evidence is inadmissible.  Fed.R.Evid. 802; *Blair Foods,* |

Joint Exhibit Part B at pages 400-416 (Email Chain Between Andrea Cross and Peter Hill Dated March 22, 2021, through March 26, 2021 (Cross Depo., Ex. 6), p.16.)

Joint Exhibit Part B at page 464 at ¶ 8 (Declaration of Peter Hill ISO Motion for Temporary Restraining Order (ECF No. 19-4)).

*Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir. 1980) ("hearsay evidence is inadmissible and may not be considered by this court on review of a summary judgment").

Here, Goldwater offered the contents of the emails, which are not sworn, to prove the truth of the matter stated. Therefore, the statements are hearsay.

**Exhibit 25 (emails) is unauthenticated.**

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. Fed.R.Evid. 901. Therefore, a document submitted for summary judgment must be authenticated. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989). Merely attaching a document to a declaration is insufficient. *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970). "A document *authenticated through personal knowledge* must be attached to an affidavit, and the affiant must be a

competent "'witness who wrote [the document], signed it, used it, or saw others do so.'"  *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics, citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1).

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case. Joint Exhibits Part D at p. 864:9-11 (standing order).  Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward.  Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are what Goldwater claims they are, *to wit:* emails.

Fact No. 59

**Hill's declaration contains inadmissible hearsay.**

Here, Hill testified to statements made in a correspondence from Escrow of the West (who did not submit a separate declaration) for the purpose of showing that escrow was opened and that the Bank was identified as a holder of Deed of Trust. Therefore, this testimony relays statement of a non-testifying declarant, which is offered for the truth. Accordingly, the testimony is inadmissible hearsay. (See above for law).

**Hill's declaration violates the best evidence rule.**

In his declaration, Hill was relaying contents of some document, which he called "Exhibit C." Contents of a writing must be proved by producing the writing itself, not through description of its contents. Fed.R.Evid. 1002; U.S. v. Bennett, 363 F.3d 947, 953 (9th Cir. 2004) ("the [best evidence] rule does apply when a witness seeks to testify about the contents of a writing"). Therefore, the testimony is inadmissible.

Fact No. 59

| | |
|---|---|
| 63. John Akopyan does not know Mr. Elizarov, has never done any work for him, and is not an employee of Journeyman Construction.<br><br>*Evidence*<br><br>Joint Exhibit Part B at pages 431-436 (Declaration of John Akopyan). | **DISPUTED.**<br><br>The original submission cited Part A at p. 271-273. Based on that citation, Elizarov responded as follows:<br><br>Exhibit 11 Exhibit 11 not support this fact.<br><br>The document cited is not a declaration of "John Akopyan." The document instead appears to be the declaration of Vartan Akopyan, which non-party Rite Care Hospice, Inc. submitted to the court in opposition to Goldwater's motion to compel the production of documents. EFC 233-2. Therefore, Goldwater has offered no evidence to support this fact.<br><br>After receiving Elizarov's response, Goldwater CHANGED the citation as shown on the left. Elizarov now objects to this NEW exhibit as follows:<br><br>The signature on the declaration is inadmissible because it appears to be a digital DocuSign signature. L.R. 5-4.3.4(a)(3) require hand-signed and scanned signatures. Joint Exhibits Part B at p. 434 (Akopyan decl.)<br><br>Elizarov was prejudiced by the last-minute change. Defendants sent the response to Goldwater's facts on Saturday, August 19. Goldwater returned the document at 11:17 am on Friday, August 25, 2023, the final filing deadline. Because Mr. Elizarov is in Florida, he could not execute a declaration to explain this statement. Therefore, the change should not be allowed. Joint Exhibits Part G at p. 1397:25-1399:15 (Alekseyeff decl.). |

DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS

Fact No. 63

| | |
|---|---|
| 68. Goldwater submitted Pay Off Calculations to Escrow of the West on March 24, 2021.  The Payoff Calculations demonstrated that the payoff amount of the Goldwater Loan as of that date was $729,354.80.<br><br>*Evidence:* Joint Exhibit Part B at pages 491-495 (Decl. P. Hill) | **DISPUTED.**<br><br>**Goldwater did not comply with the standing order.**<br><br>The citations did not pin-point the exact page and lines where the testimony appeared. Joined Exhibits Part D at p. 864:4-9 (Exhibit A, standing order); **RJN.**<br><br>**Hill's testimony violates best evidence rule.**<br><br> In his declaration, Hill on some document that he referred to as "Doc. No. 31-1." Contents of a writing must be proved by producing the writing itself, not through description fo its contents. Fed.R.Evid. 1002; U.S. v. Bennett, 363 F.3d 947, 953 (9th Cir. 2004) ("the [best evidence] rule does apply when a witness seeks to testify about the contents of a writing"). Therefore, the testimony is inadmissible.<br><br>**Hill's declaration does not show personal knowledge.**<br><br>Declarations must be based on personal knolwedge. Fed.R.Civ.P. 56(c)(4). To be |

admissible on summary judgment, the declaration itself must make clear how the declarants know the facts they assert and are competent to testify about them. See *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) ("'[C]onclusory affidavits that do not affirmatively show personal knowledge of specific facts are insufficient.'") In his declaration, Hill did not testify that *he* submitted the document (whatever that document is) to Escrow of the West. He testified that *Goldwater* submitted the document, which implied that someone other than Hill completed the task. To make this statement admissible, Hill had to explain how he knew that Goldwater submitted the document to Escrow of the West.

**The fact is disputed.**

When communicating with Escrow of the West, Peter Hill sent the escrow officer, Andrea Cross, a payoff calculation for a borrower named Jared and Paige Gillman for a property Maheu Estates in the State of Florida. After the escrow officer, Andrea Cross, brought the error to Peter Hill's attention, Peter Hill replied to Andrea Cross

Fact No. 68

| | |
|---|---|
| | but had neglected to attach the payoff calculation for Elizarov's loan. Peter Hill did not subsequently send the payoff calculation to Andrea Cross. Therefore, the incorrect payoff calculation regarding borrowers Gillman in the State of Florida was *the only* payoff calculation that Peter Hill sent to Andrea Cross.<br><br>Joint Exhibit Part D at p. 988-989 (Exhibit R, payoff calculation, Deposition Exhibit 10), Part D at p. 990:2:19 (Exhibit R, authenticating declaration), Part D at p. 993:24-995:2 (Exhibit S, Hill depo excerpt), Part D at p. 997:2-11 (Exhibit S, authenticating declaration), Part D at p. 1117:22-1119:19 (Defense Exhibit GG, Hill depo excerpt), Part D at p. 1121:6-12 (Alekseyeff decl re Defense Exhibit GG). |
| 69. Elizarov informed Goldwater about the mechanic's lien so that Goldwater would go to Unison to see if there was something Goldwater and Unison could collectively do to reduce the lien amounts. | **DISPUTED.**<br><br>**Elizarov testimony does not support the fact.**<br><br>In his deposition, Elizarov testified that he *did not remember* whether Peter Hill needed the information so that Peter Hill could go to Unison and see if there was something that |

| | |
|---|---|
| *Evidence:* Joint Exhibit Part A at 68:17-70:4 (Excerpts from the Deposition Transcript of Artur Elizarov) | they could do to help. Joint Exhibit Part A at p. 69:16-21. *See also United States v. Mageno,* 762 F.3d 933, 959 (9th Cir. 2014) ("Although [court] may consider a lawyer's questions to understand the answers of a witness, the lawyer's questions are not evidence.") Therefore, the testimony does not support this fact. |
| 70. Reliant on Elizarov's representations that Goldwater would receive funds from the proceeds of the sale, Goldwater focused its efforts on its active discussions with Elizarov rather than with Escrow of the West.<br><br>*Evidence:* Joint Exhibit Part B at 333:12-19 (Excerpts from the Transcript of the Deposition of Peter Hill). | **DISPUTED.**<br><br>**Hill testimony does not support this fact.**<br><br>Hill did not testify that he focused on Elizarov rather than on Escrow of the West. Hill did not mention ignoring Escrow of the West. Hill instead testified that he focused on locating the deed of trust and verifying some information, such as the mechanic's lien and Unison payoff.  Joint Exhibit Part B at p. 333:12-334:11. |
| 71. At the time he informed Goldwater and Cross of the mechanic's lien, Elizarov knew the Property was not subject to a mechanic's lien.<br><br>*Evidence:* Joint Exhibit Part A at 71:14-73:14 (Excerpts from the | **DISPUTED.**<br><br>**Elizarov testimony does not support this fact.**<br><br>Elizarov did not testify that he knew that the property was not subject to a lien. |

| | |
|---|---|
| Deposition Transcript of Artur Elizarov)<br><br>Joint Exhibit Part A at page 111 (Goldwater's Second Set of Requests for Admission to Elizarov, No. 30) | **Exhibit 6 (requests for admission) does not support this fact.**<br><br>First, this exhibit did not include any answers; the exhibit includes only unanswered questions. Therefore, this document does not show that Elizarov admitted any of these requests. Second, if Goldwater asserts that Elizarov automatically admitted these requests by his failure to provide a timely answer, Fed.R.Civ. P. 36(a)(3) (failure to respond within 30 days is an automatic admission), Goldwater offered no evidence to this court that Elizarov did not respond to this request.<br><br>**Fact is disputed.**<br><br>Elizarov expected a mechanic's lien based on a threat that Elizarov received from the contractor who worked on improving Elizarov's property.  Joint Exhibit Part A at p. 73:25-74:10 (Exhibit 4, Elizarov depo), Part D at p. 1000:15-23 (Exhibit T, Elizarov depo excerpt), Part D at p. 1002:2-11 (Alekseyeff decl). |

Fact No. 71

| | |
|---|---|
| 72. Elizarov informed Goldwater that the sale of the Property had not occurred, was subject to an extension, and ultimately had fallen through.<br><br>*Evidence*<br><br>Joint Exhibit Part B at page 466 at ¶ 17 (Declaration of Peter Hill ISO Motion for Temporary Restraining Order (ECF No. 19-4)).<br><br>Joint Exhibit Part B at 438-443 (Email correspondence between Goldwater and Elizarov, March 24 - March 25, 2021). | **DISPUTED.**<br><br>**Exhibit 29 (email correspondence) is unauthenticated.**<br><br>"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  To be admissible, evidence must be properly authenticated.  Fed.R.Evid. 901.  Therefore, a document submitted for summary judgment must be authenticated.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989).  Merely attaching a document to a declaration is insufficient. *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970).  "A document *authenticated through personal knowledge* must be attached to an affidavit, and the affiant must be a competent '"witness who wrote [the document], signed it, used it, or saw others do so."'" *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics, citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1). |

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case. Joint Exhibits Part D at p. 864:9-11 (standing order). Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward. Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are what Goldwater claims they are, *to wit:* email correspondence.

**The facts are disputed.**

After finding out on March 25, 2021, that Goldwater's Deed of Trust was unrecorded, Elizarov did not speak to Peter Hill on the phone. Joint Exhibits Part E at p. 1324:20-21 (Elizarov decl).

| | |
|---|---|
| 73. Elizarov informed Goldwater it would receive $675,000 from the proceeds of the sale. | **DISPUTED.** |
| | **Exhibit 6 (requests for admission) does not support this fact.** |
| *Evidence:* | |
| Joint Exhibit Part B at page 466 at ¶ 13 (Declaration of Peter Hill ISO Motion for Temporary Restraining Order (ECF No. 19-4)). | First, this exhibit did not include any answers; the exhibit includes only unanswered questions. Therefore, this document does not show that Elizarov admitted any of these requests. Second, if Goldwater asserts that Elizarov automatically admitted these requests by his failure to provide a timely answer, Fed.R.Civ. P. 36(a)(3) (failure to respond within 30 days is an automatic admission), Goldwater offered no evidence to this court that Elizarov did not respond to this request. |
| Joint Exhibit Part A at page 118 (Goldwater's Second Set of Requests for Admission to Elizarov, No. 63) | |
| Joint Exhibit Part B at 333:12-334:11, 335:19-336:2 (Excerpts from the Transcript of the Deposition of Peter Hill) | **Hill's deposition does not support this fact.** |
| | Although Hill testified that Hill testified that he had reached an agreement with Elizarov about a short payoff, Hill did not testify that Elizarov informed Goldwater that Elizarov would pay Goldwater $675,000. In fact, no amounts were mentioned in the cited testimony. |

| | |
|---|---|
| | **Facts are disputed.**<br><br>Although the parties discussed a possible short payoff, the discussions did not result in an agreement. Joint Exhibits Part E at p. 1325:12-15 (Elizarov decl). |
| 81. When Goldwater sent Elizarov its prelitigation demand letter, Elizarov immediately forwarded it to Alekseyeff, putting both parties on notice of Goldwater's claims as early as April 1, 2021.<br><br>*Evidence:*<br><br>Joint Exhibit Part B at 483 (Exhibit C to Elizarov Decl., ECF No. 30-5)<br><br>Joint Exhibit Part A at page 112-113 (Goldwater's Second Set of Requests for Admission to Elizarov, No. 35-39) | **DISPUTED.**<br><br>**Exhibit 38 (email) is unauthenticated.**<br><br>"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. Fed.R.Evid. 901. Therefore, a document submitted for summary judgment must be authenticated. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989). Merely attaching a document to a declaration is insufficient. *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970). "A document *authenticated through personal knowledge* must be attached to an affidavit, and the affiant must be a |

competent "'witness who wrote [the document], signed it, used it, or saw others do so.'''  *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics, citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1).

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case. Joint Exhibits Part D at p. 864:9-11 (standing order).  Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward.  Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are what Goldwater claims they are, *to wit:* email.

Fact No. 81

| | |
|---|---|
| | **Exhibit 6 (requests for admission) does not support this fact.** |
| | First, this exhibit did not include any answers; the exhibit includes only unanswered questions. Therefore, this document does not show that Elizarov admitted any of these requests. Second, if Goldwater asserts that Elizarov automatically admitted these requests by his failure to provide a timely answer, Fed.R.Civ. P. 36(a)(3) (failure to respond within 30 days is an automatic admission), Goldwater offered no evidence to this court that Elizarov did not respond to this request. |
| 84. Just prior to the entry of the Temporary Restraining Order, Elizarov stated that he paid $84,843.22 from the proceeds from the sale of the Palm Springs Property to pay a preexisting debt. *Evidence* Joint Exhibit Part B at page 487 (April 28, 2021 Elizarov Decl., ¶ 28, ECF No. 30-2). | **DISPUTED.** Alekseyeff, not Elizarov, paid $84,843.22. Joint Statement of Facts, Undisputed Fact No. 85. Joint Exhibit Part B at p. 498:20-21 (May 24, 2021, Alekseyeff Decl. ECF No. 40-7), Part E at p. 1316:23-25 (Alekseyeff decl.) |

87. Alekseyeff and Elizarov have conspired to defraud others before, utilizing Alekseyeff's law license and their status as domestic partners. Indeed, on September 13, 2017, Elizarov was terminated from a position with his prior employer, PaeDae, Inc. ("PaeDae"), for misrepresenting that he was a graduate of Harvard Law School and a New York State licensed attorney.

*Evidence*

Joint Exhibit Part B at pages 452-453 (PaeDae Termination Correspondence)

**DISPUTED.**

**This fact is irrelevant**.

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be relevant. Fed.R.Evid. 402; *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019) ("irrelevant evidence is inadmissible"). "Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action." Fed.R.Evid. 401. "Deciding whether a fact is "of consequence in determining the action" generally requires considering the substantive issues the case presents." *Crawford, supra*, at p. 1077. "Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." *Id.*

DEFENDANTS' SEPARATE STATEMENT OF DISPUTED FACTS

Fact No. 87

Here, whether Elizarov misrepresented something on his resume with a prior employer, assuming it is true, would not make any fact of consequence in *this action* more likely than not. Therefore, unless Goldwater, as the proponent of the evidence, can show how this fact is relevant, the court should exclude the evidence.

**The evidence is inadmissible propensity evidence.**

"Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed.R.Evid. 404(a)(1). In particular, "[e]vidence of any other crime, wrong, or act [like Goldwater attempts to do] is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed.R.Evid. 404(b)(1). And while "[a] witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about

Fact No. 87

that character," Fed.R.Evid. 608(a), "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness," Fed.R.Evid. 608(b).

Here, Goldwater offered "evidence" of some other "fraud" that Elizarov committed in the past. The only purpose of introducing this evidence is to show that Elizarov is the type of person who commits fraud and that, in his dealings with Goldwater, Elizarov must have acted in accordance with that trait of character. This type of evidence is, in general, inadmissible both to prove Elizarov's trait of character *and* to attack Elizarov's credibility. Furthermore, Elizarov's credibility is irrelevant in these proceedings because "[i]n ruling on a summary judgment motion, neither this court nor the district court is permitted to weigh the evidence put forth by the parties or to evaluate the credibility of witnesses." *State Farm Mutual Automobile Insurance v. Khoe*, 884 F.2d 401, 404 (9th Cir. 1989); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)

Fact No. 87

("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."

**Exhibit 33 is unauthenticated**.

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be properly authenticated. Fed.R.Evid. 901. Therefore, a document submitted for summary judgment must be authenticated. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989). Merely attaching a document to a declaration is insufficient. *United States v. Dibbl*e, 429 F.2d 598, 602 (9th Cir. 1970). "A document *authenticated through personal knowledge* must be attached to an affidavit, and the affiant must be a competent '"witness who wrote [the document], signed it, used it, or saw others do so."'" *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), original italics,

citing *Orr, supra,* at p. 773-74 fn. 8; Fed.R.Evid. 901(b)(1).

The court alerted the parties about the need to authenticate documents and referred the parties to the *Orr v. Bank of America* case. Joint Exhibits Part D at p. 864:9-11 (standing order).  Furthermore, after Goldwater filed unauthenticated documents as exhibits, on May 5, 2013, the court explicitly admonished Goldwater to authenticate its exhibits moving forward.  Joint Exhibits Part D at p. 893-894 (May 5, 20-13, minute order), Part D at p. 895:2-10 (Alekseyeff decl.)

Here, Goldwater proposed certain documents as exhibits but has cited *no declaration* by a qualified witness (i.e., "who wrote [the document], signed it, used it, or saw others do so," *Las Vegas Sands, supra,* at p. 774 fn. 8) to support a finding that the documents are what Goldwater claims they are, *to wit:* termination correspondence.

**Exhibit 33 is hearsay.**

"'Hearsay' means a statement that: **(1)** the declarant does not make while testifying at

the current trial or hearing; and **(2)** a party offers in evidence to prove the truth of the matter asserted in the statement." Fed.R.Evid. 801(c). Hearsay evidence is inadmissible. Fed.R.Evid. 802; *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir. 1980) ("hearsay evidence is inadmissible and may not be considered by this court on review of a summary judgment").

Here, the documents include statements by "Keith Peterson," who did not submit his own declaration, that Elizarov represented that he was a Harvard Law School graduate and licensed to practice law in New York. Since these statements are offered to prove that Elizarov made these representations, these statements are inadmissible hearsay.

**Goldwater did not identify Keith Peterson as its witness.**

In its disclosures, Goldwater did not identify Keith Peterson as a witness. Joint Exhibits Part D at p. 876:4-886:15 (Exhibit B, disclosures), Part D at p. 892 (Alekseyeff decl). Therefore, statements by this witness

(sworn or not) are not admissible.

Fed.R.Civ.P. 26(a)(1)(A)(i) (witnesses must be disclosed); Fed.R.Civ.P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial").

**Facts are also in dispute.**

Elizarov's job with Pad Dae did not require a license to practice law or a law degree. Elizarov was not hired to provide legal advice to Goldwater. Pae Dae had a properly licensed general counsel on staff at all times Elizarov was employed at Pae Dae. Days prior to his termination, Elizarov informed his employer, Rob Emrich, that he would resign in two weeks. This was the fourth time Elizarov informed Emrich about his decision to resign. Although Emrich convinced Elizarov to stay the first three times, Emrich could not convince Elizarov to stay this time. Emrich then retaliated by terminating Elizarov's employment prior to the end of the two weeks and then fabricated "fraud in the resume" allegations to avoid paying Elizarov

Fact No. 87

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

his contractual severance. Joint Exhibits Part E at p. 1325:16-1326:12 (Elizarov decl.)

Fact No. 87

| | |
|---|---|
| 88. Court records reflect that during Elizarov's employment with PaeDae, Elizarov sent legal work assignments to Alekseyeff without PaeDae's knowledge, Alekseyeff would complete the work, and Elizarov would later pass that work off as his own. | **DISPUTED.** |

**This fact is irrelevant**.

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible, evidence must be relevant. Fed.R.Evid. 402; *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019) ("irrelevant evidence is inadmissible"). "Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action." Fed.R.Evid. 401. "Deciding whether a fact is "of consequence in determining the action" generally requires considering the substantive issues the case presents." *Crawford, supra*, at p. 1077. "Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." *Id.*

Here, whether Elizarov passed the free labor of Alekseyeff as his oww, assuming it is true,

*Evidence*

Joint Exhibit Part B at pages 455-462 (Elizarov v. Emirch et al., No. BC675875, Sup. Ct. Ca., Plaintiff's Reply in Support of its Motion to Disqualify Attorney Alekseyeff, p. 7, ("The emails sent through PaeDae's email system show that Mr. Alekseyeff in fact aided Plaintiff in carrying on the charade that Plaintiff was a licensed attorney by essentially performing Plaintiff's legal-related job duties for him.").

would not make any fact of consequence in *this action* more likely than not.

Therefore, unless Goldwater, as the proponent of the evidence, can show how this fact is relevant, the court should exclude the evidence.

**The evidence is inadmissible propensity evidence.**

 "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed.R.Evid. 404(a)(1). In particular, "[e]vidence of any other crime, wrong, or act [like Goldwater attempts to do] is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed.R.Evid. 404(b)(1). And while "[a] witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character," Fed.R.Evid. 608(a), "[e]xcept

for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness," Fed.R.Evid. 608(b).

Here, Goldwater offered "evidence" of some other "conspiracy to defaud" that Elizarov committed in the past. The only purpose of introducing this evidence is to show that Elizarov and Alekseyeff are the type of persons who conspire to commits fraud and that, in his dealings with Goldwater, Elizarov and Alekseyeff must have acted in accordance with that trait of character. This type of evidence is, in general, inadmissible both to prove defendants' trait of character *and* to attack defendants' credibility. Furthermore, defendants' credibility is irrelevant in these proceedings because "[i]n ruling on a summary judgment motion, neither this court nor the district court is permitted to weigh the evidence put forth by the parties or to evaluate the credibility of witnesses." *State Farm Mutual Automobile Insurance v. Khoe*, 884 F.2d 401, 404 (9th Cir. 1989); *see also Anderson v. Liberty*

Fact No. 88

*Lobby*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."

Therefore, the evidence is inadmissible.

**Exhibit 34 is hearsay.**

"'Hearsay' means a statement that: **(1)** the declarant does not make while testifying at the current trial or hearing; and **(2)** a party offers in evidence to prove the truth of the matter asserted in the statement." Fed.R.Evid. 801(c).  Hearsay evidence is inadmissible.  Fed.R.Evid. 802; *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir. 1980) ("hearsay evidence is inadmissible and may not be considered by this court on review of a summary judgment").

Here, the documents include statements by "Josua Feldman," who did not submit his own declaration, that Alekseyeff did free

Fact No. 88

work for PaeDae, which Elizarov then presented as his own. Because these statements are offered to prover that Alekseyeff *did,* in fact, do the work, which Elizarov then presented as his own, the evidence is offered for the truth and is, therefore, inadmissible hearsay.

Furthermore, because these statements appeared in a memorandum, these statements are not evidence at all but mere arguments of counsel. *See Singh v. I.N.S.,* 213 F.3d 1050, 1055 n.8 (9th Cir. 2000) ("statements in motions are not evidence and are therefore not entitled to evidentiary weight"); *National Labor Relations Bd. v. Vista Del Sol Health Services, Inc.*, 40 F. Supp. 3d 1238, 1265 (C.D. Cal. 2014) ("arguments in briefs are not competent evidence.").

**Goldwater did not identify Joshua Feldman as its witness.**

In its disclosures, Goldwater did not identify Joshua Feldman as a witness. Joint Exhibits Part D at p. 876:4-886:15 (Exhibit B, disclosures), Part D at p. 892 (Alekseyeff decl). Therefore, statements by this witness

Fact No. 88

(sworn or not) are not admissible.
Fed.R.Civ.P. 26(a)(1)(A)(i) (witnesses must
be disclosed); Fed.R.Civ.P. 37(c)(1) ("If a
party fails to provide information or identify
a witness as required by Rule 26(a) or (e), the
party is not allowed to use that information or
witness to supply evidence on a motion, at a
hearing, or at a trial").

**Court may not take judicial notice of the
facts alleged in Exhibit 34**

Although the court may take judicial notice
of documents filed in state courts, the Court
may take judicial notice of and consider
"documents on file in federal or state courts,"
*Harris v. Cnty. of Orange*, 682 F.3d 1126,
1132 (9th Cir. 2012), Fed.R.Evid. 201(b), "a
court may not take judicial notice of a fact
that is 'subject to reasonable dispute.'" *Lee v.
City of L.A.*, 250 F.3d 668, 689 (9th Cir.
2001).  *See also Khoja v. Orexigen
Therapeutics, Inc.*, 899 F.3d 988, 999 (9th
Cir. 2018) ("a court cannot take judicial
notice of disputed facts contained in such
public records"); *Poisson v. Aetna Life Ins.
Co.*, 488 F. Supp. 3d 942, 945 (C.D. Cal.
2020) ("he Court may take judicial notice of

Fact No. 88

matters of public record, but it 'cannot take judicial notice of disputed facts contained in such public records.'")(citing *Khoja, supra*).

Therefore, even if the court were to take judicial notice that Exhibit 34 was *filed* in the state court, the court may not also take judicial notice of the *facts* alleged in that document.

**Facts are also in dispute.**

Elizarov's job with Pad Dae did not require a license to practice law or a law degree. Elizarov was not hired to provide legal advice to Goldwater. Pae Dae had a properly licensed general counsel on staff at all times Elizarov was employed at Pae Dae. Days prior to his termination, Elizarov informed his employer, Rob Emrich, that he would resign in two weeks. This was the fourth time Elizarov informed Emrich about his decision to resign. Although Emrich convinced Elizarov to stay the first three times, Emrich could not convince Elizarov to stay this time. Emrich then retaliated by terminating Elizarov's employment prior to the end of the two weeks and then fabricated "fraud in the

Fact No. 88



resume" allegations to avoid paying Elizarov his contractual severance. Joint Exhibits Part E at p. 1325:16-1326:12 (Elizarov decl.)

Fact No. 88