*Goldwater Bank v. Elizarov, et al.*, C.D. Cal. Case No. 21-cv-00616-JWH-SP

# OMNIBUS JOINT EXHIBIT PART A

**DECLARATION OF JOSEPH A. LEVOTA**

Sean C. Wagner (Pro Hac Vice)
Abbey M. Krysak (Pro Hac Vice)
**WAGNER HICKS PLLC**
831 East Morehead Street, Suite 860
Charlotte, North Carolina 28202
Tel: (704) 705-7538
Fax: (704) 705-7787

John Forest Hilbert, Esq. (SBN 105827)
Joseph A. LeVota, Esq. (SBN 262760)
**HILBERT & SATTERLY LLP**
409 Camino del Rio S. #104
San Diego, California 92108
Telephone:  (619) 795-0300
Facsimile:   (619) 501-6855

Marie B. Maurice (SBN 258069)
Marina Samson (SBN 315024)
**IVIE McNEILL WYATT PURCELL & DIGGS**
444 S. Flower Street, Suite 1800
Los Angeles, California 90071
Telephone:  (213) 489-0028
Facsimile:   (213) 489-0552

Counsel for Plaintiff
GOLDWATER BANK, N.A.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDWATER BANK, N.A., | Case No. 5:21-cv-00616-JWH-SPx |
| Plaintiff, | **DECLARATION OF JOSEPH A. LEVOTA IN SUPPORT OF GOLDWATER BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT AGAINST HOWLETT AND BANK OF THE WEST** |
| v. | |
| ARTUR ELIZAROV, ET AL. | |
| Defendants. | Hearing Date:  September 15, 2023<br>Hearing Time: 9:00 A.M. |
| | Judge:  Hon. John W. Holcomb |
| | Pre-Trial Conf.: November 3, 2023<br>Trial Date: November 27, 2023 |

I, Joseph A. LeVota, declare as follows:

1.      I am a partner of the law firm Hilbert & Satterly LLP, counsel of record for Plaintiff Goldwater Bank, N.A. ("Goldwater") in this action.  I have knowledge of the facts set forth in this declaration based on my own personal knowledge and my review of the records Hilbert & Satterly LLP regularly keeps as part of its representation of Goldwater.  If called as a witness, I could and would competently testify to such facts under oath.

2.      On June 29, 2022, I attended the deposition of Andrea Cross.  True and correct excerpts from the deposition of Andrea Cross are part of the accompanying Joint Exhibit as Exhibit 24.

   a. A true and correct copy of the California Residential Purchase Agreement and Joint Escrow Instructions dated February 12, 2021, marked as Cross Depo Ex. 2 is part of the accompanying Joint Exhibit as Exhibit 9.

   b. A true and correct copy of the Last Page of the California Residential Purchase Agreement and Joint Escrow Instructions dated February 12, 2021, signed by the Escrow Holder Acknowledgment signed by Andrea Cross on behalf of Escrow of the West, marked as Cross Depo. Ex. 14 is part of the accompanying Joint Exhibit as Exhibit 10.

   c. A true and correct copy of the Preliminary Report by Orange Coast Title Company of Southern California Dated as of February 8, 2021, marked as Cross Depo., Ex. 23 is part of the accompanying Joint Exhibit as Exhibit 11.

   d. A true and correct copy of the Amended Preliminary Report by Orange Coast Title Company of Southern California Dated as of February 18, 2021, marked as Cross Depo. Ex. 5 is part of the accompanying Joint Exhibit as Exhibit 13.

   e. A true and correct copy of the Email Chain Between Andrea Cross and Peter Hill Dated March 22, 2021, through March 26, 2021, marked as Cross Depo., Ex. 6 is part of the accompanying Joint Exhibit as Exhibit 14.

DECLARATION OF JOSEPH A. LEVOTA IN SUPPORT OF GOLDWATER BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT AGAINST HOWLETT AND BANK OF THE WEST - 2

Omnibus Joint Exhibit Part A, page 0003

f.  A true and correct copy of the Email Chain Between Andrea Cross and Artur Elizarov Dated March 25, 2021, marked as Cross Depo. Ex. 11 is part of the accompanying Joint Exhibit as Exhibit 15.

g.  A true and correct copy of the Email Chain Between Andrea Cross and Artur Elizarov, Including Estimated Settlement Statements, Dated March 25, 2021, marked as Cross Depo. Ex. 27 is part of the accompanying Joint Exhibit as Exhibit 16.

h.  A true and correct copy of the WestStar Mortgage Company Payoff Calculations Dated April 2, 2021, Pertaining to Unrelated Property, marked as Cross Depo. Ex. 10 is part of the accompanying Joint Exhibit as Exhibit 18.

i.  A true and correct copy of the Escrow of the West Seller's Final Settlement Statement Dated March 30, 2021, marked as Cross Depo. Ex. 34 is part of the accompanying Joint Exhibit as Exhibit 19.

j.  A true and correct copy of the Escrow of the West Request for Outgoing Wire Transfer Regarding Payment of $785,741.36 to Artur Elizarov marked as Cross Depo. Ex. 35 is part of the accompanying Joint Exhibit as Exhibit 20.

k.  A true and correct copy of the Closing Disclosure Provided to Bank of The West Prior to Close of Escrow marked as Cross Depo., Ex. 33 is part of the accompanying Joint Exhibit as Exhibit 23.

3.  On September 23, 2022, I attended the deposition of Artur Elizarov.  True and correct excerpts from the deposition of Artur Elizarov are part of the accompanying Joint Exhibit as Exhibit 25.

4.  On September 15, 2022, I attended the deposition of Scott Howlett.  True and correct excerpts from the deposition of Scott Howlett are part of the accompanying Joint Exhibit as Exhibit 26.

5.  On September 13, 2022, I attended the deposition of Jacqueline Scydick. True and correct excerpts from the deposition of Jacqueline Scydick are part of the

DECLARATION OF JOSEPH A. LEVOTA IN SUPPORT OF GOLDWATER BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT AGAINST HOWLETT AND BANK OF THE WEST - 3

Omnibus Joint Exhibit Part A, page 0004

accompanying Joint Exhibit as Exhibit 27.

6.     On December 6, 2022, I attended the deposition of Vicki Crestani.  True and correct excerpts from the deposition of Vicki Crestani are part of the accompanying Joint Exhibit as Exhibit 28.

7.     On September 9, 2022, I attended the deposition of Peter Hill.  True and correct excerpts from the deposition of Peter Hill are part of the accompanying Joint Exhibit as Exhibits 1 and 88.

8.     On May 31, 2023, I attended the deposition of Cory Bearden.  True and correct excerpts from the deposition of Cory Bearden are part of the accompanying Joint Exhibit as Exhibits 2 and 85. A true and correct copy of a Printout from the MERS System marked as Bearden Depo., Ex. 156 is part of the accompanying Joint Exhibit as Exhibit 86. A true and correct copy of a Redacted Printout Regarding Goldwater Bank, N.A.'s Charge Off of Subject Loan marked as Bearden Depo., Ex. 157 is part of the accompanying Joint Exhibit as Exhibit 87.

9.     A true and correct copy of the Declaration of Christine M. Overbeck, signed under penalty of perjury on June 7, 2023, is part of the accompanying Joint Exhibit as Exhibit 89.

10.     A true and correct copy of the Declaration of Peter Hill in support of Goldwater's Motion for Temporary Restraining Order filed in this action as ECF No. 19-4 is part of the accompanying Joint Exhibit as Exhibit 3.  In connection with this declaration, Peter Hill refers to an Adjustable Rate Note appearing as Exhibit A (and filed as ECF No. 19-5) and the Deed of Trust executed by Artur Elizarov on July 31, 2019, recorded in the Official Records of the Riverside County Recorder's Office on April 20, 2021, as Document No. 2021-0245826 appearing as Exhibit B (and filed as ECF No. 19-6).  A true and correct copy of the Adjustable Rate Note filed as ECF No. 19-5 is part of the accompanying Joint Exhibit as Exhibit 4.  A true and correct copy of the Deed of Trust executed by Artur Elizarov on July 31, 2019, recorded in the Official

DECLARATION OF JOSEPH A. LEVOTA IN SUPPORT OF GOLDWATER BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT AGAINST HOWLETT AND BANK OF THE WEST - 4

Omnibus Joint Exhibit Part A, page 0005

Records of the Riverside County Recorder's Office on April 20, 2021, as Document No. 2021-0245826 filed as ECF No. 19-6 is part of the accompanying Joint Exhibit as Exhibit 5.

11.     A true and correct copy of the Unison Homebuyer Uniform Subordination Agreement recorded in the Official Records of the Riverside County Recorder's Office on August 7, 2019, as Document No. 2019-0299193 is part of the accompanying Joint Exhibit as Exhibit 6.

12.     A true and correct copy of Defendant Unison Agreement Corp.'s Responses to Plaintiff Goldwater Bank, N.A.'s Special Interrogatories, Set Two is part of the accompanying Joint Exhibit as Exhibit 7.

13.     A true and correct copy of Grant Deed recorded in the Official Records of the Riverside County Recorder's Office on August 7, 2019, as Document No. 2019-0299190 is part of the accompanying Joint Exhibit as Exhibit 8.

14.     On or about May 16, 2022, Howlett and Bank of the West served their third supplemental disclosures pursuant to Federal Rules of Civil Procedure, Rule 26(a)(1), which included information regarding documents of documents bates stamped EOW0001-0244, which represented Howlett's documents held in the buyer's escrow file at Escrow of the West.  A true and correct copy of the Email from Escrow of the West to Scott Howlett Transmitting, among other things, Preliminary Report produced as EOW 0229 is part of the accompanying Joint Exhibit as Exhibit 12.

15.      As part of this litigation Goldwater has produced various documents in response to requests.  A true and correct copy of the Email Fax of WestStar's Payoff Demand for the Subject Loan to Andrea Cross produced as GOLDWATER_001767-1769 is part of the accompanying Joint Exhibit as Exhibit 17.

16.     A true and correct copy of Goldwater Bank, N.A.'s Requests for Admissions, Set One, to Bank of the West is part of the accompanying Joint Exhibit as Exhibit 21.

DECLARATION OF JOSEPH A. LEVOTA IN SUPPORT OF GOLDWATER BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT AGAINST HOWLETT AND BANK OF THE WEST - 5

Omnibus Joint Exhibit Part A, page 0006

17.     A true and correct copy of Bank of the West's Responses to Goldwater Bank, N.A.'s Requests for Admissions, Set One is part of the accompanying Joint Exhibit as Exhibit 22.

18.     As directed by Judge Holcomb's Standing Order, counsel for Goldwater conferred with counsel for Defendants Scott Howlett and BMO Harris Bank N.A., Successor by Merger to Bank of the West (collectively, "Defendants") regarding the joint statement of undisputed material facts in support of Goldwater's motion for summary judgment.  On August 8, 2023, my co-counsel, Abbey Krysak, provided Defendants' counsel with its joint statement of material facts that would be used both in opposition to Defendants' motion and in support of Goldwater's motion.

19.     On August 9, 2023, Defendants' counsel provided us with their responses to our additional facts as used in opposition to Defendants' motion and said that their position as to the same facts when supporting Goldwater's motion would be different and provided at a later date.  Here is a true and correct excerpt from Defendants' counsel email:

Abbey,

We do not agree to your proposal for the parties to use "one, single joint statement of facts for both motions"—i.e., an omnibus Joint Statement for Howlett/BOTW's Rule 56 motion and Goldwater's separate Rule 56 motion.

We received Goldwater's Proposed Joint Statement for Goldwater's own Rule 56 motion. We will provide our iterative response for Goldwater's Rule 56 motion in due course.

Your email below mentions that Goldwater wants to use the same 68 Goldwater-proponent facts for Goldwater's opposition to Howlett's Rule 56 motion. That is fine. We have added those 68 additional facts to the attached Joint Statement for Howlett's Rule 56 motion, and provided our response to each such additional fact. Howlett's facts are Nos. 1 – 22. Goldwater's additional facts have been re-numbered to sequentially start at Fact No. 23. Please note: a fact might be undisputed for Howlett's Rule 56 motion while simultaneously being disputed for Goldwater's Rule 56 motion because there are different issues and assumptions at play in each motion. Stay tuned.

The documents supporting Howlett's Rule 56 motion are contained in the attached Joint Exhibit Part A and Joint Exhibit Part B. Please provide Joint Exhibit Part C (etc...) containing Goldwater's opposing documents. To avoid any confusion, please paginate Goldwater's documents starting with "Page 400." A proposed table of contents for the Joint Exhibits is attached for your convenience.

We are still waiting for Goldwater to disclose whether Goldwater disputes any of the Howlett-proponent facts for Howlett's Rule 56 motion. The Goldwater-proponent facts also missing pin-cites to the Joint Exhibit re: Howlett's Rule 56 motion. Please update the attached Joint Statement with that missing information ASAP.

If we have not heard back from you by the close of business on August 9, we reserve the right to proceed with Howlett's Rule 56 motion.

20.     On August 11, 2023, Defendants' counsel informed us that he would provide Defendants' responses to those facts supporting Goldwater's motion for summary judgment by Sunday, August 13, 2023.  Late Sunday night, at approximately 12:15 a.m., Defendants' counsel provided their responses to Goldwater's facts and its

DECLARATION OF JOSEPH A. LEVOTA IN SUPPORT OF GOLDWATER BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT AGAINST HOWLETT AND BANK OF THE WEST - 6

Omnibus Joint Exhibit Part A, page 0007

additional facts. On August 14, 2023, at 2:50 p.m., Ms. Krysak, provided Defendants' counsel with Goldwater's replies and responses to the additions provided by Defendants. Ms. Krysak also informed Defendants' counsel that we intended to file the motion at 10:00 p.m. on August 14. At approximately 9:53 p.m., we received an email from Defendants' counsel saying that they would need more time to provide their additions to the joint statement.

21. On August 4, 2023, I participated in a conference call with Defendants' counsel, Jermey Katz, and my co-counsel, Ms. Krysak, during which we discussed the factual and legal basis for Goldwater's anticipated motion for summary judgment against Defendants.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and this Declaration was executed on August 14, 2023, at San Diego, California.

Joseph A. LeVota

---

DECLARATION OF JOSEPH A. LEVOTA IN SUPPORT OF GOLDWATER BANK, N.A.'S MOTION FOR

SUMMARY JUDGMENT AGAINST HOWLETT AND BANK OF THE WEST - 7

# DECLARATION OF ASHLEY GUILLETTE

Sean C. Wagner (Pro Hac Vice)
Abbey M. Krysak (Pro Hac Vice)
**WAGNER HICKS PLLC**
831 East Morehead Street, Suite 860
Charlotte, North Carolina 28202
Tel: (704) 705-7538
Fax: (704) 705-7787

John Forest Hilbert, Esq. (SBN 105827)
Joseph A. LeVota, Esq. (SBN 262760)
**HILBERT & SATTERLY LLP**
409 Camino del Rio S. #104
San Diego, California 92108
Telephone:   (619) 795-0300
Facsimile:   (619) 501-6855

Marie B. Maurice (SBN 258069)
Marina Samson (SBN 315024)
**IVIE McNEILL WYATT PURCELL & DIGGS**
444 S. Flower Street, Suite 1800
Los Angeles, California 90071
Telephone:   (213) 489-0028
Facsimile:   (213) 489-0552

Counsel for Plaintiff
GOLDWATER BANK, N.A.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDWATER BANK, N.A.,<br><br>Plaintiff,<br><br>v.<br><br>ARTUR ELIZAROV, ET AL.,<br><br>Defendants. | Case No. 5:21-cv-00616-JWH-SPx<br><br>**DECLARATION OF RECORDS CUSTODIAN FOR WESTSTAR MORTGAGE CORPORATION** |

I, Ashley Guillette, declare as follows:

1. I am of sound mind, capable of making this declaration, and I am personally acquainted with the facts herein stated.

- 1 -

2. I am the custodian of the records of Weststar Mortgage Corporation ("Weststar"). Based on my knowledge of Weststar's business record practices and procedures, attached hereto as Exhibit 1 is 3 pages of records, which are true and correct copies of the original documents kept by Weststar in the ordinary course of business.

3. Based on my knowledge of Weststar's business records practices and procedures, these 3 pages of records were made at or near the time of the occurrence of the matters set forth in the records by, or from information transmitted by an employee or representative of Weststar with knowledge of those matters, and it is a regular practice of Weststar to make such a record in the ordinary course of business.

Pursuant to 20 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: August 14__, 2023.

Ashley Guillette

- 2 -

# EXHIBIT 1 TO DECLARATION OF ASHLEY GUILLETT

| | |
|---|---|
| **From:** | Reina Luna |
| **To:** | 13104025556@shoretelfax.com |
| **Subject:** | payoff 09216931, A. Elizarov |
| **Date:** | Wednesday, March 24, 2021 5:28:00 PM |
| **Attachments:** | 20210324141045929.pdf |
| | image001.png |

ATTN andrea Cross,

Please see attached payoff quote, per your request.
Weststar accepts CERTIFIED CHECKS and TITLE COMPANY CHECKS, payable to WestStar Mortgage.
Should you need to remit payment via overnight delivery, our street address is below.


 **WIRE TRANSFERS ARE ONLY ACCEPTED <u>ON THE LAST BUSINESS DAY OF THE MONTH BEFORE 2:00PM MST</u> BY CLOSING AGENTS ONLY (i.e. TITLE COMPANIES)**. Borrowers paying off their loan may send in a check (personal or certified) to the address below. If you receive an email containing wire instructions, call your Title Company or Settlement Agent's escrows officer immediately to verify the information prior to sending funds.



*Reina Luna* 
Payoff Technician



2155 Louisiana Blvd NE, Ste 8000 **|** Albuquerque, NM 87110
**Please send Payoff & Verification requests to:**
F: 505-889-0280
EM: payoff@westloan.com

**West*Star***
Mortgage Corporation

## PAYOFF CALCULATIONS

| Prepared for: | Andrea Cross<br>Escrow of the West | | |
|---|---|---|---|
| | | Request Date | : 03/24/21 |
| | | Payoff Date | : 04/23/21 |
| | | Telephone | : 310 402-5555 |
| | | FAX | : 310 402-5556 |

**Account Data :**

| Account | 909-21693-1 Artur Elizarov |
|---|---|
| Legal | LOT 8 OF BLOCK 7 PALM CANYON<br>MESA TRACT, RECORDED IN BOOK 12,PAGE 52<br>THROUGH 56, |
| Remarks | Conventional Loan |

**Detail Data :**

| Current Balance | 679,565.53 | Interest Paid To | 03/01/20 |
|---|---|---|---|
| Unpaid Interest | .00 | Payoff To | 04/23/21 |
| Interest | 41,802.72 | Number of Days | 412 |
| Recording/Recon Fee | 201.00 | Annual Int Rate | 5.3750% |
| MIP/PMI | .00 | Regular Payment | 4,944.11 |
| Advanced GWB Funds | 1,968.95 | | |
| Negative Escrow Funds | 5,816.60 | | |
| Statement fee | | | |
| Certified Mail Fee | | | |

| Payoff Amount : | 729,354.80 | Daily Interest | 101.46 |
|---|---|---|---|

PAYMENTS RECEIVED IN THE OFFICE AFTER 3:00pm MST WILL BE CREDITED THE NEXT BUSINESS DAY.

Weststar reserves the right to demand additional funds to correct any error or omission in the above payoff figure that was calculated in good faith, whether the error or omission is mathematical, clerical, typographical, or for any transactions that occurred on or after the date of this payoff quote.  Payoff funds must be paid through Weststar

**FUNDS SHOULD BE MADE PAYABLE TO WESTSTAR AND TENDERED IN THE FORM OF MONEY ORDER, CASHIER'S CHECK, OR TITLE COMPANY CHECK.  ALL OTHER CHECKS WILL BE HELD 10 (ten) CALENDAR DAYS TO CLEAR. **

Issuance of this statement does not suspend the requirement to make mortgage payments when due.

2155 Louisiana Blvd. NE, Suite 8000 / Albuquerque, NM  87110 / 505-883-0332 / Fax: 505-889-0280 / www.westloan.com
P.O. Box 25400 / Albuquerque, NM  87125-0400 / NMLS Company ID #93243



Omnibus Joint Exhibit Part A, page 0014



*West Star*
Mortgage Corporation

Payoff Calculations Page 2 of 2

## IMPORTANT PAYMENT INFORMATION

**IF YOUR LOAN IS AN FHA NOTE, CONTACT OUR OFFICE FOR WIRE INSTRUCTIONS AS YOUR METHOD OF PAYMENT. Funds must be received before 2:00 p.m. MST. for same day credit and must be received no later than the last business day of the calendar month so an additional month's interest will not accrue.**

Account 909216931

Your loan has a late fee of $192.14 if paid more than 15 days after the current payment is due, and must be added to the payoff if received after that date.

Your account currently has an escrow balance of $-5819.60. This may not be an available balance, pending bills received prior to the "Payoff To" date.

If you have an automated payment scheduled (ACH), it is your responsibility to discontinue the service.

Remit all payoff funds promptly on or before the "Payoff To" date on page 1. Should the date expire prior to your remittance of funds, you should request an updated payoff calculation statement to ensure your final remittance is sufficient.

Any shortage of the payoff funds received will delay processing and cause additional fees and/or interest to accrue.

Funds may be deducted from escrow to cure any shortage in the payoff received.

Payoff funds must be certified (title company checks accepted) and must be received before 2:00 p.m. mountain standard time (MST) to be posted that business day. Funds received after 2:00 MST may post the following business day.

MAIL CERTIFIED FUNDS TO:

Weststar Mortgage/Loan Servicing
2155 Louisiana Blvd NE # 8000
Albuquerque NM 87110
Attn: payment processing

Do not place a stop payment on any recent payments made as the payment may be reflected in the payoff calculation. Any payments that are returned NSF are required to be repaid, in addition to any fees that are assessed as a result.

If there is mortgage insurance (MI) on your loan, there is an estimation of the MIP amount due on the payoff calculations statement. Several factors determine the final amount due, including, but not limited to, the actual payoff date. Should any MIP amount collected not be required, it will be refunded.

Any payoff overage, including excess escrow funds, will be mailed within 20 business days after the loan is paid in full.

If you have any questions, you may contact us at 800-640-0635 Monday – Friday 7:00 a.m. – 5:00 p.m. MST.

Rev: 08/19    FN/GN

2155 Louisiana Blvd. NE, Suite 8000 / Albuquerque, NM  87110 / 505-883-0332 / Fax: 505-889-0280 / www.westloan.com
P.O. Box 25400 / Albuquerque, NM  87125-0400 / NMLS Company ID #93243



# REQUEST FOR JUDICIAL NOTICE

Sean C. Wagner (Pro Hac Vice)
Abbey M. Krysak (Pro Hac Vice)
**WAGNER HICKS PLLC**
831 East Morehead Street, Suite 860
Charlotte, North Carolina 28202
Tel: (704) 705-7538
Fax: (704) 705-7787

John Forest Hilbert, Esq. (SBN 105827)
Joseph A. LeVota, Esq. (SBN 262760)
**HILBERT & SATTERLY LLP**
409 Camino del Rio S. #104
San Diego, California 92108
Telephone:  (619) 795-0300
Facsimile:   (619) 501-6855

Marie B. Maurice (SBN 258069)
Marina Samson (SBN 315024)
**IVIE McNEILL WYATT PURCELL & DIGGS**
444 S. Flower Street, Suite 1800
Los Angeles, California 90071
Telephone:  (213) 489-0028
Facsimile:   (213) 489-0552

Counsel for Plaintiff
GOLDWATER BANK, N.A.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDWATER BANK, N.A., | Case No. 5:21-cv-00616-JWH-SPx |
| Plaintiff, | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF GOLDWATER BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT/ SUMMARY ADJUDICATION** |
| v. | |
| ARTUR ELIZAROV, ET AL. | |
| Defendants. | Hearing Date:  September 15, 2023 |
| | Hearing Time: 9:00 A.M. |
| | Courtroom: Hon. Holcomb, Courtroom 9D |
| | Judge:  Hon. John W. Holcomb |
| | Pre-Trial Conf.: November 3, 2023 |
| | Trial Date: November 27, 2023 |

Plaintiff Goldwater Bank, N.A., hereby requests, pursuant to Federal Rules of Evidence, Rule 201, that the Court take judicial notice of the documents recorded with the San Diego County Recorder, which documents are concurrently filed herewith as Joint Exhibit Part A Exhibits 5, 6, and 8 and more particularly described as follows:

**RECORDED DOCUMENTS**

**Exhibit 5**. Deed of Trust executed by Artur Elizarov on July 31, 2019, recorded in the Official Records of the Riverside County Recorder's Office on April 20, 2021, as Document No. 2021-0245826 (ECF No. 19-6).

**Exhibit 6**. Unison Homebuyer Uniform Subordination Agreement recorded in the Official Records of the Riverside County Recorder's Office on August 7, 2019, as Document No. 2019-0299193.

**Exhibit 8**. Grant Deed recorded in the Official Records of the Riverside County Recorder's Office on August 7, 2019, as Document No. 2019-0299190.

These documents can either be accurately and readily determined from sources whose accuracy cannot reasonably be questioned or are officially recorded documents. The date of recording and the contents contained therein at the time of recording are facts not reasonably subject to dispute and capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy. Fed. R. Evid. 201.

Dated:  August 9, 2023

HILBERT & SATTERLY LLP
By: /s/ Joseph A. Levota
      John Forest Hilbert, Esq.
      Joseph A. LeVota, Esq.
AND

WAGNER HICKS PLLC
By:  /s/ Abbey Krysak
      Sean C. Wagner, Esq.
      Abbey M. Krysak, Esq.

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF GOLDWATER BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT AGAINST HOWLETT AND BANK OF THE WEST - 2

Omnibus Joint Exhibit Part A, page 0018

**[INTENTIONALLY LEFT BLANK]**

# EXHIBIT 1

# EXCERPTS FROM THE TRANSCRIPT OF THE DEPOSITION OF PETER HILL

```
 1              UNITED STATES DISTRICT COURT

 2        CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

 3

 4    Goldwater Bank, N.A.,      )CASE NO. 5:21-cv-00616-JWH-SP
                                 )
 5              Plaintiff,       )
                                 )
 6         vs.                   )
                                 )
 7    ARTUR ELIZAROV; UNISON     )
      AGREEMENT CORP.; SCOTT     )
 8    HOWLETT; BANK OF THE WEST; )
      and ILYA ALEKSEYEFF,       )
 9                               )
                Defendants.      )
10    _____)

11

12

13                      --oOo--

14             DEPOSITION OF PETER J. HILL

15               September 9, 2022

16          ***TAKEN VIA VIDEOCONFERENCE***

17                      --oOo--

18

19

20

21

22

23

24

25

                                          Page 1
```

Omnibus Joint Exhibit Part A, page 0021

```
 1            BE IT REMEMBERED THAT, pursuant to the Federal
 2    Rules of Civil Procedure, the deposition of PETER J.
 3    HILL, was taken before Maureen Kelly, OCSR No. 00-0364,
 4    WCSR No. 3401, on Friday, September 9, 2022, commencing
 5    at the hour of 9:59 a.m., the proceedings being reported
 6    via Zoom videoconference.
 7                          --oOo--
 8
 9                      APPEARANCES
10            (ALL APPEARING VIA VIDEOCONFERENCE)
11    Attorneys for Plaintiff Goldwater Bank, N.A.:
              Joseph A. LeVota, Esq.
12            HILBERT & SATTERLY, LLP
              409 Camino Del Rio South, Suite 104
13            San Diego, CA 92108
              jlevota@hscallaw.com
14
      Pro Hac Vice Attorneys for Plaintiff Goldwater Bank,
15    N.A.:
              Sean C. Wagner, Esq.
16            Derek M. Bast, Esq.
              WAGNER HICKS, PLLC
17            831 East Morehead Street, Suite 860
              Charlotte, NC 28202
18            sean.wagner@wagnerhicks.law
              derek.bast@wagnerhicks.law
19
      Attorneys for Defendant and Cross-Complainant SCOTT
20    HOWLETT and Defendant BANK OF THE WEST:
              Jeremy T. Katz, Esq.
21            Ryan C. Thomason, Esq.
              HALL GRIFFIN LLP
22            1851 East First Street, 10th Floor
              Santa Ana, California 92705-4052
23            jkatz@hallgriffin.com
              rthomason@hallgriffin.com
24
25    (Continued on next page.)
```

Page  2

Omnibus Joint Exhibit Part A, page 0022

```
 1                   APPEARANCES (CONTINUED)
 2             (ALL APPEARING VIA VIDEOCONFERENCE)
 3    Attorneys for Defendant Artur Elizarov and Defendant
      Ilya Alekseyeff (in Pro Per):
 4              Ilya Alekseyeff, Esq.
                LOIA, INC. (APLC)
 5              8721 Santa Monica Blvd., #119
                West Hollywood, CA 90069
 6              ilya@loia.legal
 7    Attorneys for Defendant Unison Agreement Corp.:
                Nabil Bisharat, Esq.
 8              ORSUS GATE, LLP
                16 N. Marengo Ave., Suite 316
 9              Pasadena, CA 91101
                nbisharat@orsusgate.com
10
11
      Also Present: (None.)
12
                          --oOo--
13
14
15
16
17
18
19
20
21
22
23
24
25
                                            Page  3
```

Omnibus Joint Exhibit Part A, page 0023

```
 1                              INDEX
 2      EXAMINATION BY:                                  PAGE
 3      MR. THOMASON                                  6, 178
        MR. ALEKSEYEFF                               83, 206
 4      MR. BISHARAT                           160, 189, 224
        MR. WAGNER                                       190
 5      MR. KATZ                                         227
 6                            --oOo--
 7
                            EXHIBIT INDEX
 8
        EXHIBIT NO.   ITEM                             PAGE
 9
        Exhibit 41    Depo Notice                        11
10      Exhibit 42    Unison Flyer                       19
        Exhibit 43    Email Chain about 4 Unison Loans and  20
11                    litigation
        Exhibit 44    Email Chain Elizarov Selling Property  21
12      Exhibit 45    2021.0303 Email Chain with Unison   21
                      about Elizarov
13      Exhibit 46    2021.0308 Deed of Trust Email Chain  22
        Exhibit 47    2021.0310 Email Chain about Internal  23
14                    Notes
        Exhibit 48    2021.0324 Discussion between Hill   24
15                    and Teskey
        Exhibit 49    2021.0324 Email with Greg Hill re   25
16                    phone call
        Exhibit 50    2021.0324 Phone Call with Sharon    25
17                    Pfeifer
        Exhibit 51    2021.0325 Email Chain regarding     26
18                    Elizarov Loan
        Exhibit 52    2021.0325 Email Chain with Unison   27
19                    about Payoff
        Exhibit 53    2021.0326 Email Chain regarding     28
20                    unrecorded DOT
        Exhibit 54    2021.0326 Email from Pete requesting  28
21                    DOT
        Exhibit 55    2021.0329 Email with Unison about   29
22                    Elizarov Negotiations
        Exhibit 56    2021.0331 Email Chain about Unison  30
23                    Payoff
        Exhibit 57    2021.0331 Email Chain regarding     31
24                    Elizarov Closing
25      (Continued on next page.)


                                                   Page 4
```

```
 1                        EXHIBIT INDEX
 2    EXHIBIT NO.   ITEM                               PAGE
 3    Exhibit 58    2021.0803 Elizarov Charge Off       32
      Exhibit 59    Elizarov D - verified amended       87
 4                  complaint, EFD 44
      Exhibit 60    Elizarov B - G. Hill messages       98
 5    Exhibit 61    Elizarov G - delinquency review     99
      Exhibit 62    Elizarov H - mortgage inspection   102
 6                  reports
      Exhibit 63    Elizarov J - Fannie Mae appraisal  105
 7    Exhibit 64    Elizarov O - tax lien release      106
      Exhibit 65    Exhibit W - Goldwater response to  106
 8                  RFA (54)
      Exhibit 66    Elizarov T - email communication re 112
 9                  closing instructions 2021.0326
      Exhibit 67    Elizarov U - email re late recording 130
10                  of deed 2021.0330
      Exhibit 68    Elizarov V - proof of delivery re DOT 141
11                  for recording 2021.0420
      Exhibit 69    Elizarov A - deed of trust, recorded 142
12                  4.20.21
      Exhibit 70    Exhibit D to complaint             215
13
                          --oOo--
14

15
16    INSTRUCTION not to Answer:          12, 13, 80, 212
17                          --oOo--
18
19    REQUEST for Production:                     (None.)
20                          --oOo--
21
22
23
24
25
                                             Page  5
```

```
 1    /////
 2                        PETER J. HILL,
 3    having been first duly sworn, was examined and testified
 4    as follows:
 5    /////
 6                        EXAMINATION
 7    BY MR. THOMASON:
 8         Q.   Good morning, Mr. Hill.  Thank you for
 9    joining us.  We do appreciate it.  If you could just
10    state and spell your name for the record?
11         A.   Peter Hill; P-E-T-E-R; Hill, H-I-L-L;
12    middle initial J.
13         Q.   Thank you.  My name is Ryan Thomason.  I am
14    an attorney that is representing both Scott Howlett and
15    Bank of the West.  When I refer to Howlett, I'm
16    referring to Defendant Scott Howlett, who purchased the
17    property at issue here that is named as a defendant in
18    the first-amended complaint.  Do you understand?
19         A.   Yes.
20         Q.   Okay.  And when I refer to Bank of the
21    West, I'm referring to Mr. Howlett's lender who is also
22    named as a defendant in the first-amended complaint.  Do
23    you understand?
24         A.   I do, yes.
25         Q.   I'm joined with counsel Jeremy Katz, who
```

Page 6

Omnibus Joint Exhibit Part A, page 0026

1    an email from you, Mr. Hill, to Ms. Cross on March 25th,

2    2021, in the Cross deposition it was marked as

3    Exhibit 10.  We are also going to mark it as Exhibit 10

4    here.  Do you recognize this document?

5           A.   I do.

6           Q.   And is this the document that you sent to

7    Andrea Cross?

8           A.   It is.

9           Q.   Now, aside from this payoff, did Goldwater

10   send any other payoff calculation letters to Escrow of

11   the West?

12          A.   I sent a clarification email to Andrea

13   explaining that this particular document we're looking

14   at was inadvertently the wrong one that we initially

15   sent, and I notified her of that and had thought I had

16   attached the correct payoff for Mr. Elizarov's loan, and

17   it did not make it as an attachment to that email.

18          Q.   Okay.  All right.  So when you had emailed

19   with the clarification, you meant to attach the correct

20   one but it did not attach?

21          A.   Correct.  Yes.

22          Q.   So there are no other payoff calculations

23   that were sent to Escrow of the West other than this

24   one?

25          A.   Correct.

                                            Page 18

```
 1                    MR. THOMASON:  We are going to mark this as

 2      Exhibit 44.

 3                         (EXHIBIT marked: Exhibit No. 44.)

 4                    MR. KATZ:  Are you able to see it?

 5                    THE WITNESS:  I am, yes.

 6                    MR. KATZ:  It is a four-page document.  I'm

 7      just going to briefly scroll through it.  That's the

 8      fourth and final page.

 9                    THE WITNESS:  Correct.

10      BY MR. THOMASON:  (Continuing)

11              Q.   And do you recognize this email chain?

12              A.   I do.

13              Q.   And this was the email chain where you were

14      informed of basically how to contact Escrow of the West

15      and that Mr. Elizarov was selling the property.

16      Correct?

17              A.   Correct.

18              Q.   Next we have an email chain between you,

19      Mr. Hill, and Theo Haugen on March 4th, 2021, regarding

20      Elizarov's sale of the property and Escrow of the West.

21                    MR. THOMASON:  We are going to mark this as

22      Exhibit 45.

23                         (EXHIBIT marked: Exhibit No. 45.)

24                    MR. KATZ:  Are you able to see this

25      exhibit?
```

                                                        Page 21

```
 1              THE WITNESS:  I am.
 2              MR. KATZ:  It's a one-page document.  Let
 3   me know if you would like me to zoom in on any part.
 4              THE WITNESS:  No, that's fine.  I can see
 5   it.
 6   BY MR. THOMASON:  (Continuing)
 7        Q.   And do you recognize this email chain?
 8        A.   I do.
 9        Q.   This was an email correspondence between
10   you and Mr. Haugen.  Correct?
11        A.   That's right.
12              MR. THOMASON:  And I'm not sure if I did,
13   but we are marking that as Exhibit 45.
14   BY MR. THOMASON:  (Continuing)
15        Q.   And next we will have an email chain
16   between you and Brittany Shaw on March 25th, 2021,
17   regarding Elizarov's deed of trust.
18              MR. THOMASON:  We are going to mark this as
19   Exhibit 46.
20                   (EXHIBIT marked: Exhibit No. 46.)
21              MR. KATZ:  Are you able to see the
22   document?
23              THE WITNESS:  I am, yes.
24              MR. KATZ:  Okay.  It's a 59-page document.
25   I'm just going to briefly scroll through it.  Let me
```

Page 22

 1    read the texts of Exhibit 45 now?

 2              THE WITNESS:  Yes.

 3    BY MR. THOMASON:  (Continuing)

 4         Q.   So this is an email exchange between you

 5    and Mr. Haugen regarding Elizarov's sale of the

 6    property.

 7              MR. THOMASON:  Go up just a little bit.

 8              MR. KATZ:  (Complying.)

 9    BY MR. THOMASON:  (Continuing)

10         Q.   It looks like on March 4th, 2021, you had

11    wrote, "Thanks, just wanted to make sure his title

12    company was in touch with you.  When I spoke with them

13    yesterday they were a little confused about everything."

14    So when you say "title company," were you referring to

15    Escrow of the West?

16         A.   I was, yes.

17         Q.   And when you say I spoke with them

18    yesterday and they were a little confused about

19    everything, can you clarify what that -- what that

20    means?

21         A.   They were not certain or not understanding

22    of the fact that Goldwater Bank and Unison were two

23    separate companies independent of each other and that

24    they needed to obtain a payoff request directly from

25    Unison that I could not provide them.

                                        Page 48

1      Q.    Okay.   Anything else?

2      A.    No.   I directed them to Unison and reached

3   out to Theo to try to verify that that connection had

4   been made.

5      Q.    Do you remember who you spoke with at

6   Escrow of the West?

7      A.    Andrea.

8      Q.    Andrea Cross?

9      A.    Yes.

10      Q.    And just to be clear, that would have been

11   March 3rd, 2021, that you spoke via phone to Andrea

12   Cross?

13      A.    It would have been, yes.

14      Q.    So when you had spoken to Andrea Cross, she

15   was confused thinking that Unison and Goldwater were the

16   same entity or affiliated or connected to each other?

17      A.    Right.   Yes.

18      Q.    Now we are going to pull up Exhibit 6, an

19   email exchange, and we will start at the bottom.

20          So on March 22nd, 2021, Cross reached out

21   to you and gave you a copy of the purchase agreement and

22   the demand for payoff stating that Mr. Elizarov had

23   given them permission to communicate with you.  And did

24   you receive the purchase and sale agreement and the

25   request for demand with that email?

Page 49

```
 1              Q.   And so this was the payoff demand that you
 2     had sent to Ms. Cross; is that correct?
 3              A.   That's correct, which --
 4              Q.   And this was the incorrect payoff statement
 5     because it has the incorrect account number as well as
 6     incorrect borrowers and legal description; is that
 7     correct?
 8              A.   That's right.  Yes.
 9                   MR. THOMASON:  Go back to Exhibit 6.
10                   MR. KATZ:  (Complying.)
11                   MR. THOMASON:  A little bit higher.
12                   MR. KATZ:  (Complying.)
13     BY MR. THOMASON:  (Continuing)
14              Q.   It looks like at 11:12 a.m., Ms. Cross
15     immediately notified you that it was the wrong payoff;
16     is that correct?
17              A.   Correct.
18              Q.   And then it looks like at 1:30 you say that
19     you sent the correct payoff but there was no actual --
20     the correct payoff demand was not attached to this
21     email; is that correct?
22              A.   That's right, yes.
23              Q.   So there was nothing attached to the
24     1:30 p.m. email.  Correct?
25              A.   Correct.
```

Page 58

1      Q.   And you -- did you ever send a corrected

2   payoff after that, the corrected payoff statement?

3      A.   No, I don't recall that I did.

4      Q.   So if we go up to 1:49 p.m., you see here

5   Andrea Cross emails you, Mr. Hill, saying, "Hi Pete, you

6   can disregard the demand request now.  Seller has

7   instructed we are NOT to make payoff to Goldwater.

8   Since there is not a secured lien to the chain of title,

9   we would only have been able to pay with seller's

10   instruction to do so."  So when you received this email,

11   were you aware that Goldwater Bank's deed of trust had

12   not been recorded?

13      A.   I was not, no.  This was my first knowledge

14   of that.

15      Q.   Okay.  Now, after you received this email,

16   did you ever explicitly state to Ms. Cross that

17   Goldwater Bank had a first trust deed against the

18   property?

19      A.   Yes.

20      Q.   Whether recorded or not?

21      A.   Yes, I did.

22      Q.   When?

23      A.   On a phone call.

24      Q.   What date was that phone call?  Was it on

25   the same date?

Page 59

Omnibus Joint Exhibit Part A, page 0033

```
 1     wrapped up.

 2               MR. KATZ:  All right.  Let's go off the

 3     record please.

 4                         (A recess was taken.)

 5               MR. WAGNER:  Okay.  We have no further

 6     questions.  I think that concludes the deposition.

 7               MR. ALEKSEYEFF:  Let's go off the record --

 8     I was going to say let's go off the record just to

 9     address the stipulations and whatnot.

10               MR. WAGNER:  Okay.

11                    (Discussion off the record.)

12               MR. ALEKSEYEFF:  Counsel, will you all

13     stipulate that according to the rules the witness can

14     have 30 days after the transcript is available to review

15     and make any corrections, and other than that, all

16     counsel may use a certified copy, along with any

17     corrections, for any purposes, including motions for

18     summary judgment and trial?

19               MR. LEVOTA:  So stipulated.

20               MR. KATZ:  Stipulated.

21               MR. BISHARAT:  Yeah, stipulated as well.

22               MR. WAGNER:  So stipulated.

23               MR. ALEKSEYEFF:  Perfect.  Thank you so

24     much.

25                    (Deposition Concluded at 5:13 p.m.)
```

Page  232

Omnibus Joint Exhibit Part A, page 0034

1          I declare under penalty of perjury that the

2    foregoing is true and correct.   Subscribed at

3    _____, California, this_____day of

4    _____, 2022.

5

6

7

8

9            _____

10               PETER J. HILL

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page  233

Omnibus Joint Exhibit Part A, page 0035

```
1                 C E R T I F I C A T E
2          I, Maureen Kelly, Oregon CSR No. 00-0364,
    Washington CSR No. 3401, do hereby certify that
3   prior to the commencement of the examination, PETER J.
    HILL, was duly remotely sworn by me to testify to the
4   truth, the whole truth and nothing but the truth.
5          I DO FURTHER CERTIFY that the foregoing is a
    verbatim transcript of the testimony as taken
6   stenographically by me at the time, place and on the
    date hereinbefore set forth, to the best of my
7   ability.
8          I DO FURTHER CERTIFY that I am neither a
    relative nor employee nor attorney nor counsel of
9   any of the parties to this action, and that I am
    neither a relative nor employee of such attorney or
10  counsel, and that I am not financially interested in
    the action.
11
           Witness my hand at Portland, Oregon, this 15th
12  day of September, 2022.
13
14          Maureen Kelly
15
            MAUREEN KELLY - RPR
16          Certified Shorthand Reporter
            Oregon CSR No. 00-0364
17          Washington CCR No. 3401
18
19
20
21
22
23
24
25
                                              Page 234
```

Omnibus Joint Exhibit Part A, page 0036

1    Sean C. Wagner, Esq

2    sean.wagner@wagnerhicks.law

3                                    September 23, 2022

4    RE: Goldwater Bank, N.A. vs. Artur Elizarov, Et Al.

5    9/9/2022, PETER J. HILL, JOB NO. 5429400

6    The above-referenced transcript has been

7    completed by Veritext Legal Solutions and

8    review of the transcript is being handled as follows:

9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10      to schedule a time to review the original transcript at

11      a Veritext office.

12   X_ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13      Transcript - The witness should review the transcript and

14      make any necessary corrections on the errata pages included

15      below, noting the page and line number of the corrections.

16      The witness should then sign and date the errata and penalty

17      of perjury pages and return the completed pages to all

18      appearing counsel within the period of time determined at

19      the deposition or provided by the Code of Civil Procedure.

20   __ Waiving the CA Code of Civil Procedure per Stipulation of

21      Counsel - Original transcript to be released for signature

22      as determined at the deposition.

23   __ Signature Waived - Reading & Signature was waived at the

24      time of the deposition.

25

                                              Page 235

Omnibus Joint Exhibit Part A, page 0037

1   __ Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF

2      Transcript - The witness should review the transcript and

3      make any necessary corrections on the errata pages included

4      below, notating the page and line number of the corrections.

5      The witness should then sign and date the errata and penalty

6      of perjury pages and return the completed pages to all

7      appearing counsel within the period of time determined at

8      the deposition or provided by the Federal Rules.

9   __ Federal R&S Not Requested - Reading & Signature was not

10     requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 236

Omnibus Joint Exhibit Part A, page 0038

```
 1    Goldwater Bank, N.A. vs. Artur Elizarov, Et Al.

 2    PETER J. HILL (#JOB NO 5429400)

 3                     E R R A T A  S H E E T

 4    PAGE_____ LINE_____ CHANGE_____

 5    _____

 6    REASON_____

 7    PAGE_____ LINE_____ CHANGE_____

 8    _____

 9    REASON_____

10    PAGE_____ LINE_____ CHANGE_____

11    _____

12    REASON_____

13    PAGE_____ LINE_____ CHANGE_____

14    _____

15    REASON_____

16    PAGE_____ LINE_____ CHANGE_____

17    _____

18    REASON_____

19    PAGE_____ LINE_____ CHANGE_____

20    _____

21    REASON_____

22

23    _____     _____

24    PETER J. HILL                            Date

25

                                              Page 237
```

# EXHIBIT 2

# EXCERPTS FROM TRANSCRIPT OF THE DEPOSITION OF CORY BEARDEN

1              UNITED STATES DISTRICT COURT
2         CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION
3
4    _____
                                            )
5    GOLDWATER BANK, N.A.,                  )
                                            )
6                   Plaintiff,              ) CASE NUMBER:
                                            ) 21-cv-00616-
7          vs.                              ) JWH-SP
                                            )
8    ARTUR ELIZAROV; UNISON AGREEMENT CORP.;   )
     SCOTT HOWLETT; BANK OF THE WEST; AND ILYA )
9    ALEKSEYEFF,                            )
                                            )
10                  Defendants.             )
     _____)
11
12
13
14      REMOTE ZOOM VIDEOTAPED DEPOSITION OF PERSON MOST
             KNOWLEDGEABLE AT GOLDWATER BANK, N.A.
15                    CORY BEARDEN
16             Wednesday, May 31, 2023
17                     Volume I
18
19
20
21
22   REPORTED BY:
     JESSICA HONG
23   CSR No. 13776
24   Job No. 5941237
25   PAGES 1 - 364

                                                  Page 1

Omnibus Joint Exhibit Part A, page 0041

```
 1              UNITED STATES DISTRICT COURT

 2       CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

 3

 4    _____

                                            )
 5    GOLDWATER BANK, N.A.,                  )
                                            )
 6                   Plaintiff,             ) CASE NUMBER:
                                            ) 21-cv-00616-
 7           vs.                            ) JWH-SP
                                            )
 8    ARTUR ELIZAROV; UNISON AGREEMENT CORP.;   )
      SCOTT HOWLETT; BANK OF THE WEST; AND ILYA )
 9    ALEKSEYEFF,                          )
                                            )
10                   Defendants.           )
      _____)

11

12

13

14           Remote Zoom videotaped deposition of PERSON MOST

15    KNOWLEDGEABLE AT GOLDWATER BANK, N.A., CORY BEARDEN,

16    Volume I, taken on behalf of Defendants beginning at

17    10:10 a.m. and ending at 8:26 p.m. on Wednesday, May 31,

18    2023, before JESSICA HONG, Certified Shorthand Reporter

19    No. 13776.

20

21

22

23

24

25

                                              Page  2
```

Omnibus Joint Exhibit Part A, page 0042

```
 1      APPEARANCES (ALL PARTIES APPEARING REMOTELY):
 2      FOR PLAINTIFF:
 3          HILBERT & SATTERLY LLP
            BY:  JOSEPH A. LEVOTA, ESQ.
 4          409 Camino Del Rio South, Suite 104
            San Diego, California 92108
 5          (619) 795-0300
 6          WAGNER HICKS PLLC
            BY:  ABBEY M. KRYSAK, ESQ.
 7               SEAN C. WAGNER, ESQ.
            831 East Morehead Street, Suite 860
 8          Charlotte, North Carolina 28202
            (704) 705-7538
 9
        FOR DEFENDANT AND CROSS-COMPLAINANT SCOTT HOWLETT AND
10      DEFENDANT BMO HARRIS BANK N.A., SUCCESSOR BY MERGER TO
        BANK OF THE WEST:
11
            HALL GRIFFIN LLP
12          BY:  JEREMY T. KATZ, ESQ.
                 KASANDRA C. GOLDBERG, ESQ.
13          1851 East First Street, 10th Floor
            Santa Ana, California 92705
14          (714) 918-7000
15      FOR DEFENDANT AND CROSS-DEFENDANT ARTUR ELIZAROV, AND
        DEFENDANT ILYA ALEKSEYEFF (IN PRO PER):
16
            LOIA, INC.(APLC)
17          BY:  ILYA ALEKSEYEFF, ESQ.
            727 West 7th Street, PH 1-13
18          Los Angeles, California 90017
            (213) 537-4592
19
20
21      ALSO PRESENT:
22          JENNIFER MCKAY - VIDEOGRAPHER
23
24
25
                                                  Page  3
```

Omnibus Joint Exhibit Part A, page 0043

```
 1                        I N D E X
 2    WITNESS                        EXAMINATION
 3    CORY BEARDEN
 4    Volume I
 5                         BY MR. KATZ           7, 340
 6                         BY MR. ALEKSEYEFF    195, 350
 7                         BY MS. KRYSAK            269
 8
 9
10                         EXHIBITS
11    NUMBER              DESCRIPTION            PAGE
12    Exhibit 4    Preliminary report 2/18/21      320
13    Exhibit 5    Amended preliminary report 3/3/21   319
14    Exhibit 6    Email chain EOTW_000164-180     157
15    Exhibit 7    Request for demand 3/3/21       121
16    Exhibit 24   Unison Homebuyer Uniform Subordination
                   Agreement 7/30/19                90
17
      Exhibit 46   Email chain GOLDWATER_001210-1267   153
18
      Exhibit 51   Email chain GOLDWATER_001148-1149   345
19
      Exhibit 53   Email chain GOLDWATER_001151-1152   167
20
      Exhibit 67   Email chain GOLDWATER_001172-1173   177
21
      Exhibit 102  Uniform Residential Loan Application
22                 7/3/19                          200
23    Exhibit 104  Uniform Residential Loan Application
                   7/31/19                         226
24
      Exhibit 131  Master Estimated Settlement
25                 Statement 3/30/21               333

                                         Page  4
```

```
 1                          EXHIBITS (CONT.)
 2       Exhibit 139    Instructions to Escrow/Title/Closing
                        Agent GOLDWATER_001677-1681          49
 3
         Exhibit 143    Letter from Goldwater to First
 4                      American Title 3/30/21              181
 5       Exhibit 145    Closing Protection Letter 7/29/19   343
 6       Exhibit 146    Email 3/25/21 Unison information    146
 7       Exhibit 150    Funding requirements                81
 8       Exhibit 151    Subpoena to testify 12/5/22        196
 9       Exhibit 152    Letter from Alekseyeff 7/9/19      220
10       Exhibit 153    Seller's Final Settlement
                        Statement 1/19/18                  224
11
         Exhibit 154    Mutual Release and Settlement
12                      Agreement 5/17/19                  238
13       Exhibit 155    Email chain GOLDWATER_001444-1450  244
14       Exhibit 156    MERS report GOLDWATER_001765       280
15       Exhibit 157    General ledger 12/31/21            280
16       Exhibit 158    Email 3/4/21 GOLDWATER_001121      258
17       Exhibit 159    Email chain BOTW 0002259-2263      258
18       Exhibit 160    Preliminary report 2/18/21         310
19       Exhibit 161    Preliminary report 3/3/21          312
20
21                    INSTRUCTION NOT TO ANSWER
22                         PAGE   LINE
23                          37     20
                           128      5
24                         128     15
                           129     13
25

                                                   Page  5
```

```
 1                    Zoom, Wednesday, May 31, 2023

 2                         10:10 a.m.

 3

 4              THE VIDEOGRAPHER:  Good morning.  We are on the

 5       record at 10:10 on May 31st, 2023.  This is media unit    10:10

 6       one in the video-recorded deposition of Goldwater PMK,

 7       Cory Bearden, in the matter of Goldwater Bank, N.A.

 8       versus Elizarov, et al., filed in the United States

 9       District Court, Central District of California, Eastern

10       Division.  Case Number is 21-cv-00616.  This deposition   10:10

11       is being conducted remotely using virtual technology.  My

12       name is Jennifer McKay representing Veritext and I am the

13       videographer.  The court reporter is Jessica Hong, also

14       from Veritext.  Counsel, please introduce yourselves and

15       state whom you represent.                                 10:11

16              MR. KATZ:  Good morning, my name is Jeremy Katz.

17       I represent defendants, Scott Howlett and Bank of the

18       West.  And with me in the room and off camera is my

19       associate, Kasandra Goldberg.

20              MR. ALEKSEYEFF:  And good morning -- am I on?      10:11

21       Yes.  Good morning, my name is Ilya Alekseyeff.  I

22       represent the defendant, Artur Elizarov, as well as

23       myself who is also a defendant.  Good morning.

24              MR. LEVOTA:  Good morning, Joseph LeVota for

25       Goldwater Bank.                                           10:11
```

Page 6

Omnibus Joint Exhibit Part A, page 0046

```
 1              MS. KRYSAK:  Good morning, Abbey Krysak for

 2      Goldwater Bank.

 3              MR. WAGNER:  Good morning, Sean Wagner for

 4      Goldwater Bank.

 5              THE VIDEOGRAPHER:  Thank you.  Will the court    10:11

 6      reporter please swear in the witness?

 7

 8                        CORY BEARDEN,

 9             having been administered an oath,

10             was examined and testified as follows:

11

12                        EXAMINATION

13      BY MR. KATZ:

14         Q    Good morning, Mr. Bearden.

15         A    Good morning.                                   10:12

16         Q    Can you please state and spell your name for the

17      record?

18         A    My name is Cory Bearden.  It's spelled C-o-r-y,

19      last name Bearden, B-e-a-r-d-e-n.

20         Q    Are you employed by Goldwater Bank?             10:12

21         A    I am.

22         Q    What's your current role?

23         A    My position at Goldwater Bank is the Mortgage

24      Division President.

25         Q    How long have you been the Mortgage Division    10:12
```

Page 7

```
 1    anything to do with Goldwater's lien?

 2         A    Do they have anything to do with Goldwater's

 3    first lien position?

 4         Q    Yeah.

 5         A    Not that I'm aware of.  We're separate        01:39

 6    organizations.  They held the second lien position.

 7         Q    Is Unison Midgard Holdings like a servicer for

 8    Goldwater?

 9         A    No, sir.  They're the second lien holder.

10         Q    So why do you believe that a request for demand  01:40

11    addressed to Unison Midgard Holdings LLC is actually a

12    request for Goldwater's -- a request to Goldwater Bank as

13    lien holder?

14              MS. KRYSAK:  Objection, form.

15              THE WITNESS:  Well, and it lists Goldwater Bank  01:40

16    on here, Pete Hill, as well.  S, as I identified earlier,

17    she appeared to be confused, but I take this as a request

18    for demand from Goldwater Bank -- care of Goldwater Bank,

19    Pete Hill specifically there.

20    BY MR. KATZ:                                          01:40

21         Q    And did Mr. Hill provide Ms. Cross with a payoff

22    demand for Goldwater's lien for Mr. Elizarov's loan?

23         A    A payoff was provided initially from Weststar

24    Mortgage, the subservicer.

25         Q    That was not my question.  My question was did  01:41
```

Page 122

```
 1          Q    Which file?

 2          A    The file we're discussing today.

 3          Q    It was part of Goldwater's loan file for

 4     Mr. Elizarov's loan?

 5               MS. KRYSAK:  Objection, form.            01:45

 6     BY MR. KATZ:

 7          Q    Which file are you referring to?

 8          A    The payoff that was provided from Reina Luna at

 9     Weststar, it's a faxed payoff, which was provided to

10     Andrea Cross at Escrow of the West on the 24th.      01:45

11          Q    Yeah.  How did you learn about that?

12               MS. KRYSAK:  Objection, form.

13               THE WITNESS:  In my preparation for the

14     deposition.

15     BY MR. KATZ:                                         01:46

16          Q    Is that faxed payoff request that you just

17     referred to, is that part of Goldwater's loan file for

18     this loan, for Mr. Elizarov's loan?

19               MS. KRYSAK:  Objection, form.

20               THE WITNESS:  Help me understand your question.  01:46

21     What do you mean a part of?

22     BY MR. KATZ:

23          Q    Well, Goldwater has a loan file for

24     Mr. Elizarov's loan; right?

25          A    That's correct.                            01:46
```

Page 126

1      Anything else before we go off the record?

2              THE VIDEOGRAPHER:  Jessica?

3              THE REPORTER:  I just need to get copy orders on

4      the record if you have one.  Obviously, Mr. Katz, you get

5      your copy.                                          08:25

6              MR. ALEKSEYEFF:  I think -- unless Mr. Katz has

7      changed his mind, I think Mr. Katz and I were going to

8      share the cost of the depo.

9              THE REPORTER:  Okay, no problem.  That's it

10     then.                                               08:26

11             MR. LEVOTA:  I will order a copy.

12             THE REPORTER:  Okay.  Okay, that's good.

13     Jennifer, we can go off.

14             THE VIDEOGRAPHER:  All right.  This marks the

15     end of today's deposition.  Going off the record, the    08:26

16     time is 8:26.

17             (The deposition concluded at 8:26 p.m.)

18

19

20

21

22

23

24

25

                                              Page 359

Omnibus Joint Exhibit Part A, page 0050

1

2

3

4          I, CORY BEARDEN, do hereby declare under penalty

5     of perjury that I have read the foregoing transcript;

6     that I have made any corrections as appear noted, in ink,

7     initialed by me, or attached hereto; that my testimony as

8     contained herein, as corrected, is true and correct.

9          EXECUTED this _____ day of _____,

10    2023, at _____, _____.

11                    (City)                    (State)

12

13

14

15

16          _____

17          CORY BEARDEN

18          VOLUME I

19

20

21

22

23

24

25

                                        Page 360

Omnibus Joint Exhibit Part A, page 0051

```
 1              I, the undersigned, a Certified Shorthand

 2     Reporter of the State of California, do hereby certify:

 3              That the foregoing proceedings were taken before

 4     me at the time and place therein set forth; that any

 5     witnesses in the foregoing proceedings, prior to

 6     testifying, were administered an oath; that a record of

 7     the proceedings was made by me using machine shorthand

 8     which was thereafter transcribed under my direction;

 9     further, that the foregoing is a true record of the

10     testimony given.

11              Further, that if the foregoing pertains to the

12     original transcript of a deposition in a Federal Case,

13     before completion of the proceedings, review of the

14     transcript [ X ] was [ ] was not requested.

15              I further certify I am neither financially

16     interested in the action nor a relative or employee of

17     any attorney or any party to this action.

18              IN WITNESS THEREOF, I have this date subscribed

19     my name:  June 15, 2023.

20

21

22

23

24     JESSICA HONG

25     CSR No. 13776
```

Page 361

Omnibus Joint Exhibit Part A, page 0052

1    JOSEPH A. LEVOTA, ESQ.

2    jlevota@hscallaw.com

3                            JUNE 15, 2023

4    RE: OLDWATER BANK, N.A. v. ARTUR ELIZAROV

5    MAY 31, 2023, CORY BEARDEN, PMK, JOB NO. 5941237

6    The above-referenced transcript has been

7    completed by Veritext Legal Solutions and

8    review of the transcript is being handled as follows:

9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10       to schedule a time to review the original transcript at

11       a Veritext office.

12    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13       Transcript - The witness should review the transcript and

14       make any necessary corrections on the errata pages included

15       below, noting the page and line number of the corrections.

16       The witness should then sign and date the errata and penalty

17       of perjury pages and return the completed pages to all

18       appearing counsel within the period of time determined at

19       the deposition or provided by the Code of Civil Procedure.

20    __ Waiving the CA Code of Civil Procedure per Stipulation of

21       Counsel - Original transcript to be released for signature

22       as determined at the deposition.

23    __ Signature Waived - Reading & Signature was waived at the

24       time of the deposition.

25

                           Page 362

Omnibus Joint Exhibit Part A, page 0053

1   _X_Federal R&S Requested (FRCP 30(e)(1)(B)) – Locked .PDF

2      Transcript - The witness should review the transcript and

3      make any necessary corrections on the errata pages included

4      below, notating the page and line number of the corrections.

5      The witness should then sign and date the errata and penalty

6      of perjury pages and return the completed pages to all

7      appearing counsel within the period of time determined at

8      the deposition or provided by the Federal Rules.

9   __ Federal R&S Not Requested - Reading & Signature was not

10      requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Omnibus Joint Exhibit Part A, page 0054

```
 1   OLDWATER BANK, N.A. v. ARTUR ELIZAROV

 2   CORY BEARDEN, PMK, JOB NO. 5941237

 3                   E R R A T A   S H E E T

 4   PAGE_____ LINE_____ CHANGE_____

 5   _____

 6   REASON_____

 7   PAGE_____ LINE_____ CHANGE_____

 8   _____

 9   REASON_____

10   PAGE_____ LINE_____ CHANGE_____

11   _____

12   REASON_____

13   PAGE_____ LINE_____ CHANGE_____

14   _____

15   REASON_____

16   PAGE_____ LINE_____ CHANGE_____

17   _____

18   REASON_____

19   PAGE_____ LINE_____ CHANGE_____

20   _____

21   REASON_____

22

23   _____     _____

24   WITNESS                              Date

25

                                         Page 364
```

Omnibus Joint Exhibit Part A, page 0055

# EXHIBIT 3

# DECLARATION OF PETER HILL ISO MOTION FOR TEMPORARY RESTRAINING ORDER (ECF NO. 19-4)

1  **SEAN C. WAGNER** (*Pro Hac Vice* Forthcoming)
   Sean.Wagner@wagnerhicks.law
2  **DEREK M. BAST** (*Pro Hac Vice* Forthcoming)
   Derek.Bast@wagnerhicks.law
3  **WAGNER HICKS PLLC**
   831 East Morehead Street, Suite 860
4  Charlotte NC 28202
   Tel: (704) 705-7538; Fax: (704) 705-7787
5  Attorneys for Plaintiff,
   **GOLDWATER BANK, N.A.**
6

7  **W. KEITH WYATT (S.B.N.: 80859)**
   **MARIE MAURICE (S.B.N.: 258069)**
8  mmaurice@imwlaw.com
   **IVIE, McNEILL & WYATT**
9  444 S. Flower Street, Suite 1800
   Los Angeles, CA 90017-2919
10 Tel: (213) 489-0028; Fax (213) 489-0552

11 Local Counsel for Plaintiff,
   **GOLDWATER BANK, N.A.**

12

13              **UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15

16 Goldwater Bank, N.A.                     )
                                            )
17              *Plaintiff,*                )   Case No. 5:21-cv-00616-JWH-SP
                                            )   _____
18       vs.                                )
                                            )   **DECLARATION OF PETER HILL**
19 ARTUR ELIZAROV, UNISON                   )   **IN SUPPORT OF PLAINTIFF'S**
   AGREEMENT CORP., and SCOTT               )   **MOTION FOR TEMPORARY**
20 HOWELL                                   )   **RESTRAINING ORDER**
                                            )
21              *Defendant.*                )
                                            )
22                                          )
                                            )
23                                          )
                                            )
24                                          )
   _____ )
25

26

27

28

---

Omnibus Joint Exhibit Part A, page 0057

# DECLARATION OF PETER HILL

I, Peter Hill, make the following declaration on behalf of Plaintiff Goldwater Bank, N.A. ("Goldwater"), based on my personal knowledge, information, and belief.

1.      I am the Chief Credit Officer and Executive Vice-President at Goldwater and am authorized to make this declaration.  The documents attached hereto are created and/or maintained in the course of Goldwater Bank's regularly conducted business activity or publicly available for review.

2.      On or around July 31, 2019, Goldwater, as lender, originated a mortgage loan to Elizarov in the amount of $686,250.00 (the "Goldwater Loan") to be secured by certain real property located at 291 W. Overlook Road, Palm Springs, California 92264 (the "Subject Property").

3.      The Goldwater Loan was memorialized in an Adjustable Rate Note (the "Note") and a Deed of Trust (the "Deed of Trust"), both dated July 31, 2019.  A true and accurate copy of the Note and Deed of Trust are attached as **Exhibit A** and **Exhibit B**, respectively.

4.      Elizarov defaulted on the Goldwater Loan, and he is delinquent on the payment obligations as of April 1, 2020.

5.      In March 2021, Elizarov informed Goldwater that he intended to sell the Subject Property.

6.      Thereafter, I was the primary contact between Goldwater and Elizarov.

7.      On March 3, 2021, an escrow agent at Escrow of the West, Inc. ("Escrow of the West") contacted me regarding the pending sale and a potential payoff to Goldwater.

8.      Escrow of the West sent Goldwater a Request for Demand addressed to my attention, which stated, "An escrow has been opened in this office by Artur Elizarov wherein you are listed as the holder of the Note and Deed of Trust covering property legally described as [the Subject Property]."  A true and accurate copy of the Request for Demand is attached hereto as **Exhibit C**.

---

Omnibus Joint Exhibit Part A, page 0058

9.     Shortly thereafter, Escrow of the West discovered that Goldwater's Deed of Trust had never been recorded with the Register of Deeds for Riverside County, California, and Escrow of the West informed Goldwater and Elizarov of this fact.

10.    Goldwater learned that there were other competing liens on the Subject Property that would be paid off from the sale, including a mechanic's lien in the amount of in an amount of approximately $107,000 and a lien in favor of Unison Agreement Corp. ("Unison") in the amount of $491,000.

11.    The Unison lien appears to be secured by a deed of trust that was recorded on or around August 7, 2019.

12.    Elizarov informed me that he was insolvent and that the proceeds from the Sale of the Subject Property would not be enough to satisfy the outstanding amount of the Goldwater Loan and the other two liens.

13.    Elizarov also informed me that Goldwater would receive $675,000 from the sale of the Subject Property, which would have significantly reduced the balance of the Goldwater Loan.

14.    Elizarov and Escrow of the West subsequently ceased communications with Goldwater regarding the sale of the Subject Property.

15.    On or around March 29, 2021, Goldwater discovered that the sale of the Subject Property had occurred on March 22, 2021, by Grant Deed from Elizarov to Scott Howlett ("Howlett").  A true and accurate copy of the Grant Deed is attached hereto as **Exhibit D**.  Public records indicate the sale price was $1,355,000.00

16.    On or around March 29, 2021, I contacted Elizarov by phone regarding the status of the closing and the proceeds from the sale.

17.    Elizarov told me directly that the sale had not occurred.  I then informed Elizarov that we knew of the Grant Deed, and I asked Elizarov about the status of the $675,000 that Goldwater was to receive from the sale.  Elizarov stated that he did not want to discuss the matter any further, and he terminated the call.

---

DECLARATION OF PETER HILL - 3

18    z  ov    o              co  c  w  Go  w        Go  w        o

c  v        oc      o        o    Sub  c    o

1    z  ov          b o    o        c  v    c      o        C

D      o R          c      D  u b    01  43 7

20    z  ov  o            c v  o              o    Sub  c

o    Go  w    c      cov                    Sub  c    o

z  ov    b o  A u      ccu    co  o

c    **Exhibit E.**

21    u  u    o 28 U S C  § 1746    c    u        o  u        o

u    co  c

D    :  _____

_____
Peter Hill

Omnibus Joint Exhibit Part A, page 0060

# EXHIBIT 4

# ADJUSTABLE RATE NOTE WITH ELIZAROV (ECF NO. 19-5)

Case 5:21-cv-00056-EKD-JCH Document 26-2 Filed 09/27/21 Page 62 of 198 Page ID #:

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MINIMUM AND MAXIMUM RATES I MUST PAY.**

**July 31, 2019**                 **Palm Springs,**                         **California**
**[Date]**                          **[City]**                                 **[State]**

**291 W. Overlook Road, Palm Springs, CA 92264-8934**
**[Property Address]**

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. **$686,250.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Goldwater Bank, N.A..**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.375 %.** The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **September 1, 2019.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **August 1, 2049,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **2525 E. Camelback Rd, Suite 1100**
**Phoenix, AZ 85016**

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. **$3,842.80.** This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the **1st** day of **August, 2024** and on that day every **12th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in **The Wall Street Journal.** The most recent Index value available as of the date 45 days before each Change Date is called the "Current Index," provided that if the Current Index is less than zero, then the Current Index will be deemed to be zero for purposes of calculating my interest rate.

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **THREE** percentage point(s) ( **3.000 %** ) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.



than **TWO** percentage point(s) ( **2.000 %** ) from the rate of interest I have been paying for the preceding **12** month(s). My interest rate will never be greater than **11.375 %**. My interest rate will never be less than the Margin or **2.875 %**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar day(s) after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**MULTISTATE ADJUSTABLE RATE NOTE – WSJ One-Year LIBOR – Single Family – Fannie Mae UNIFORM INSTRUMENT Form 3526 6/01 (rev. 6/16)**

Ellie Mae, Inc.
Page 2 of 3
F3526NOT  0816
F3526NOT (CLS)
07/31/2019 10:36 AM PST



This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.



_____(Seal)
**ARTUR ELIZAROV**

**Lender: Goldwater Bank, N.A.**
**NMLS ID: 452955**
**Loan Originator: Gregory Hill**
**NMLS ID: 247349**

[Sign Original Only]

# EXHIBIT 5

**DEED OF TRUST EXECUTED BY ARTHUR ELIZ AROV ON JULY 31, 2019, RECORDED IN THE OF FICIAL RECORDS OF THE RIVERSIDE COUNTY RECORDER'S OFFICE ON APRIL 20, 2021, AS DOCUMENT NO. 2021-0245826 (ECF NO, 19-6)**

When recorded, mail to:
Goldwater Bank, N.A.
Attn: Final Document Department
P.O. Box 25064
Albuquerque, NM 87125
844-799-4653

Title Order No.: 0625-5974427
Escrow No.: 0625-5974427
LOAN #: 909216931

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

| MIN 1009209-4100147547-4 |
| --- |
| **MERS PHONE #: 1-888-679-6377** |

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **July 31, 2019,** together with all Riders to this document.

**(B) "Borrower"** is **ARTUR ELIZAROV, AN UNMARRIED MAN.**

Borrower's address is **828 Westmount Drive, West Hollywood, CA 90069.**

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **Goldwater Bank, N.A..**

Lender is **a Corporation,** organized and existing under the laws of
**The United States of America.** Lender's address is **2525 E. Camelback Rd, Suite**
**1100, Phoenix, AZ 85016.**

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3005 1/01
Ellie Mae, Inc. Page 1 of 13

CAEDEDL 0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST



Omnibus Joint Exhibit Part A, page 0066

LOAN #: 909216931

**(D) "Trustee"** is  **First American Title Company.**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated **July 31, 2019.**          The Note states that Borrower owes Lender **SIX HUNDRED EIGHTY SIX THOUSAND TWO HUNDRED FIFTY AND NO/100\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \***  Dollars (U.S.  **$686,250.00**          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **August 1, 2049.**

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [x] Adjustable Rate Rider
- [ ] Condominium Rider
- [ ] Second Home Rider
- [ ] Balloon Rider
- [ ] Planned Unit Development Rider
- [ ] Other(s) [specify]
- [ ] 1-4 Family Rider
- [ ] Biweekly Payment Rider
- [ ] V.A. Rider

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3005 1/01**
Ellie Mae, Inc.                    Page 2 of 13



CAEDEDL   0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST

LOAN #: 909216931

all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County** [Type of Recording Jurisdiction] of **Riverside** [Name of Recording Jurisdiction]:

**LOT 8 OF BLOCK 7, PALM CANYON MESA TRACT, AS PER MAP RECORDED IN BOOK 12, PAGES 52 THROUGH 56, BOTH INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. APN #: 513-363-023-2**

which currently has the address of    **291 W. Overlook Road, Palm Springs,**

[Street] [City]

California **92264-8934**        ("Property Address"):
         [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01**
Ellie Mae, Inc.                    Page 3 of 13                    CAEDEDL   0219
                                                                   CAEDEDL (CLS)
                                                                   07/31/2019 10:36 AM PST

LOAN #: 909216931

to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3005 1/01**
Ellie Mae, Inc. Page 4 of 13

CAEDEDL 0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST



Omnibus Joint Exhibit Part A, page 0069

LOAN #: 909216931

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds,



Omnibus Joint Exhibit Part A, page 0070

whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3005 1/01
Ellie Mae, Inc. Page 6 of 13

CAEDEDL 0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST

LOAN #: 909216931

from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration



Omnibus Joint Exhibit Part A, page 0072

LOAN #: 909216931

period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   Form 3005 1/01
Ellie Mae, Inc.



CAEDEDL  0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST

Omnibus Joint Exhibit Part A, page 0073

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all



Omnibus Joint Exhibit Part A, page 0074

sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obliga-tion to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials con-taining asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condi-tion, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    **Form 3005 1/01**
Ellie Mae, Inc.             Page 10 of 13             CAEDEDL 0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST



Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Omnibus Joint Exhibit Part A, page 0076

LOAN #: 909216931

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**ARTUR ELIZAROV**

4/31/2019 **(Seal)**
**DATE**

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

**State of CALIFORNIA**
**County of** Los Angeles

On July 31. 2019 , before me, Estela Noemy Moreno Aviles NOTARY PUBLIC
(here insert name and title of the officer), personally appeared ARTUR ELIZAROV, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____

_____(NOTARY)

**(SEAL)**

ESTELA NOEMY MORENO AVILES
Notary Public - California
Los Angeles County
Commission # 2293165
My Comm. Expires Jun 15, 2023



CAEDEDL 0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST

Omnibus Joint Exhibit Part A, page 0077

LOAN #: 909216931

Lender: Goldwater Bank, N.A.
NMLS ID: 452955
Loan Originator: Gregory Hill
NMLS ID: 247349



CAEDEDL  0219
CAEDEDL (CLS)
07/31/2019 10:36 AM PST

Omnibus Joint Exhibit Part A, page 0078

**LOAN #: 909216931**
**MIN: 1009209-4100147547-4**

## ADJUSTABLE RATE RIDER

### (LIBOR One-Year Index (As Published In The Wall Street Journal-Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **31st** day of **July, 2019,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **Goldwater Bank, N.A.**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at: **291 W. Overlook Road, Palm Springs, CA 92264-8934.**

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MINIMUM AND MAXIMUM RATES THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of **5.375 %.** The Note provides for changes in the interest rate and the monthly payments as follows:
## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the **1st** day of **August, 2024,** and on that day every **12th** month thereafter. Each date on which my interest rate could change is called a "Change Date."
### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated

**MULTISTATE ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR**-Single Family-**Fannie Mae UNIFORM INSTRUMENT**
**Form 3189 6/01 (rev. 6/16)**
Ellie Mae, Inc.                                Page 1 of 4                     F3189RLU  0816
                                                                               F3189RLU (CLS)
                                                                      07/31/2019 10:36 AM PST



**LOAN #: 909216931**

deposits in the London market ("LIBOR"), as published in **The Wall Street Journal.** The most recent Index value available as of the date 45 days before each Change Date is called the "Current Index," provided that if the Current Index is less than zero, then the Current Index will be deemed to be zero for purposes of calculating my interest rate.

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **THREE** percentage point(s) ( **3.000 %** ) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **7.375 %** or less than **5.375 %.** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage point(s) ( **2.000 %** ) from the rate of interest I have been paying for the preceding **12** month(s). My interest rate will never be greater than **11.375 %. My interest rate will never be less than the start rate or 5.375 %.**

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title

MULTISTATE ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR-Single Family-**Fannie Mae UNIFORM INSTRUMENT**
**Form 3189 6/01 (rev. 6/16)**
Ellie Mae, Inc.

Page 2 of 4

F3189RLU 0816
F3189RLU (CLS)
07/31/2019 10:36 AM PST



Omnibus Joint Exhibit Part A, page 0080

LOAN #: 909216931

and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR-Single Family-**Fannie Mae UNIFORM INSTRUMENT**
Form 3189 6/01 (rev. 6/16)

Ellie Mae, Inc.

Page 3 of 4

F3189RLU 0816
F3189RLU (CLS)
07/31/2019 10:36 AM PST



LOAN #: 909216931

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____    7/31/2019 .   (Seal)
ARTUR ELIZAROV                                              DATE

MULTISTATE ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR-Single Family-**Fannie Mae** UNIFORM INSTRUMENT
**Form 3189 6/01 (rev. 6/16)**

Ellie Mae, Inc.                          Page 4 of 4                         F3189RLU  0816
                                                                            F3189RLU (CLS)
                                                                    07/31/2019 10:36 AM PST



# EXHIBIT 6

**UNISON HOMEBUYER UNIFORM SUBORDINATION AGREEMENT RECORDED IN THE OFFICIAL RECORDS OF THE RIVERSIDE COUNTY RECORDER'S OFFICE ON AUGUST 7, 2019, AS DOCUMENT NO. 2019-0299193**

**DOC # 2019-0299193**
08/07/2019 05:00 PM Fees: $38.00
Page 1 of 9
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

PLEASE COMPLETE THIS INFORMATION
RECORDING REQUESTED BY:

FIRST AMERICAN TITLE

AND WHEN RECORDED MAIL TO:
AND MAIL TAX STATEMENTS TO:

Unison Agreement Corp.
P.O. Box 26800
San Francisco, CA 94126-6800

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: MARY #420

Space above this line for recorder's use only

UNISON HOMEBUYER UNIFORM SUBORDINATION AGREEMENT

Title of Document

**TRA:** 011-003

**DTT:** $0.00

**Exemption reason declared pursuant to Government Code 27388.1**

☐ This document is a transfer that is subject to the imposition of documentary transfer tax.

☑ This is a document recorded in connection with a transfer that is subject to the imposition of documentary transfer tax.
Document reference: CONCURRENTLY HEREWITH

☐ This document is a transfer of real property that is a residential dwelling to an owner-occupier.

☐ This is a document recorded in connection with a transfer of real property that is a residential dwelling to an owner-occupier.
Document reference:_____

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

ACR 238 (Rev. 01/2018)          Available in Alternate Formats

Recording Requested By
First American Title Company

DOC #2019-0299193  Page 2 of 9

Prepared by, recording requested by, and
when recorded mail to:

Unison Agreement Corp.
P.O. Box 26800
San Francisco, CA  94126-6800

Unison HomeBuyer Agreement ID Number:
FRX-226269

## UNISON HOMEBUYER UNIFORM SUBORDINATION AGREEMENT

**Legal Description of Property:**   That certain real property described in **Exhibit B** attached
hereto.

**Property Address:**  291 W Overlook Rd, Palm Springs, CA 92264

**Senior Lender/First Mortgage:**

Lender ("**Senior Lender**"):
      Borrower / Homeowner ("**Owner**"):  Artur Elizarov
      Loan Number: 90216931
      Note Dated:  ___July 30, 2019___
      Original Principal Amount:  $ 686,250

**Subordinating Lien Holder/Junior Lien:**

      Unison Agreement Corp., its successors and assigns ("**Subordinating Lien Holder**")

      Unison HomeBuyer ID Number: FRX-226269

      Dated As Of:  ___July 30, 2019___  ("**Effective Date**")

      This **Unison HomeBuyer Uniform Subordination Agreement** is made pursuant to and
as of the Effective Date of that certain Unison HomeBuyer Agreement made by and between
Owner and Subordinating Lien Holder and securing the Junior Lien of Subordinating Lien
Holder ("**Unison HomeBuyer Agreement**").

      Defined terms not defined in the text herein are defined in **Exhibit A** attached hereto or
in **Schedule A** to the **Unison HomeBuyer Covenant Agreement** executed by Owner and
Subordinating Lien Holder as a component of the Unison HomeBuyer Agreement.

      When the context requires, singular nouns and pronouns include the plural.

© 2016, **Unison**

Form 405 HBA-Multi (12/1/2016)

Omnibus Joint Exhibit Part A, page 0085

DOC #2019-0299193  Page 3 of 9

**WHEREAS**, Senior Lender is the owner and holder of the First Mortgage on the above-referenced property (the "**Property**") which is the senior lien on title to the Property and an interest in that title; and

**WHEREAS**, Subordinating Lien Holder is the owner and holder of the Junior Lien on title to the Property which is the junior lien on title to the Property and an interest in that title pursuant to the Unison HomeBuyer Agreement.

**NOW, THEREFOR,** for value received and to induce the Senior Lender to originate the First Mortgage on the Property:

1.     Subordinating Lien Holder unconditionally subordinates its lien on, and all other rights and interests in, the title to the Property resulting from the Junior Lien to the lien on, and to all other rights and interests in, the title to the Property resulting from the First Mortgage. Subordinating Lien Holder agrees that its lien on, and all other rights and interests in, the title to the Property resulting from the Junior Lien will at all times remain subordinate to the lien on, and all other rights and interests in, the title to the Property resulting from the First Mortgage.

2.     Subordinating Lien Holder hereby agrees that its lien on, and all other rights and interests in, the title to the Property resulting from the Junior Lien will remain subordinate to the lien on, and all other rights and interests in, the title to the Property resulting from any renewal, extension or modification of the First Mortgage made in connection with a **Bona Fide Loan Modification** by Senior Lender, and agrees that no increase in Owner's indebtedness on the First Mortgage resulting from such renewal, extension or modification exceeding the **Maximum Authorized Debt** as defined in the Unison HomeBuyer Agreement shall constitute an actionable **Event of Default** by Owner under the Unison HomeBuyer Agreement.

3.     Subordinating Lien Holder hereby agrees that the written approval of Senior Lender to a **Short Sale** of the Property in connection with **Bona Fide Loss Mitigation** by Senior Lender on the First Mortgage shall not constitute an event occasioning Subordinating Lien Holder's right to exercise its option to purchase an undivided percentage interest in the Property under the Unison HomeBuyer Agreement; and further, that upon Lender's written approval of such Short Sale, in the event the "Investor Interest" of Subordinating Lien Holder (as such term is defined in the Unison HomeBuyer Agreement) is calculated as no greater than $0, Subordinating Lien Holder shall timely consent to such Short Sale in writing and release the Junior Lien to facilitate the Short Sale without demand of consideration.

4.     Subordinating Lien Holder hereby agrees to the following with respect to any judicial or non-judicial foreclosure action on the Property undertaken by Senior Lender in accordance with applicable law in response to a default by Owner under the First Mortgage ("**Senior Foreclosure**"):

(a)     A Senior Foreclosure shall not constitute a sale of the Property to a **Third Party Buyer**, nor shall a foreclosure sale by Senior Lender constitute an event occasioning Subordination Lien Holder's right to exercise its option to purchase an undivided percentage interest in the Property under the Unison HomeBuyer Agreement.

(b)     Subordinating Lien Holder expressly waives any right of redemption in or to the Property which would accrue to Subordinating Lien Holder under applicable law following the completion of a Senior Foreclosure.

© 2017, Unison                                                                    Form 405 HBA-Multi (3/2/2017)

(c)     Notice of Senior Foreclosure shall be given by Senior Lender to Subordinating Lien Holder in accordance with customary practice and applicable law.

(d)     Any and all covenants running with the land pursuant to the terms of the Unison HomeBuyer Agreement shall be automatically extinguished by a completed Senior Foreclosure.

**5.**     Subordinating Lien Holder hereby agrees that in the event of any judicial or non-judicial foreclosure action on the Property undertaken by Subordinating Lien Holder in accordance with applicable law in response to a default by Owner under the Junior Lien ("**Junior Foreclosure**"), Subordinating Lien Holder shall provide written notice of such Junior Foreclosure to Senior Lender simultaneously and in the same form as such notice is given by Subordinating Lien Holder to Owner.

**6.**     Subordinating Lien Holder hereby agrees that its lien on, and all other rights and interests in, the title to the Property resulting from the Junior Lien will remain subordinate to any and all rights and interests of Senior Lender in and to, rents and other profits derived from the Property resulting from any lease of the Property approved by Senior Lender in connection with Bona Fide Loss Mitigation by Senior Lender on the First Mortgage, and that no such lease of the Property shall constitute an actionable Event of Default under the Unison HomeBuyer Agreement.

**7.**     Subordinating Lien Holder hereby unconditionally and automatically subordinates its lien on, and all other rights and interests in, the title to the Property accruing as a result of any **Unpaid Owner Obligations** of Owner (as such term in defined in the Unison HomeBuyer Agreement) in connection with the Junior Lien, to the lien on, and to all other rights and interests in, the title to the Property resulting from the First Mortgage.

**8.**     Subordinating Lien Holder hereby agrees that if, in connection with Bona Fide Loss Mitigation by Senior Lender on the First Mortgage, Senior Lender has not declared Owner to be in default of the occupancy provisions of the First Mortgage, then Subordinating Lien Holder shall not deem Owner to be in default under the occupancy provisions of the Unison HomeBuyer Agreement.

**9.**     Subordinating Lien Holder hereby agrees that if, in connection with Bona Fide Loan Modification of the First Mortgage by Senior Lender, Senior Lender extends the term of months of the First Mortgage beyond its amortization period at origination, Subordinating Lien Holder shall automatically extend, and shall execute and record any and all necessary addenda and documentation required to extend, the Term of the Unison HomeBuyer Agreement such that the Unison HomeBuyer Agreement is coterminous with the extended amortization period of the First Mortgage.

**10.**     Subordinating Lien Holder hereby agrees that any consummation of Subordinating Lien Holder's purchase of an undivided percentage interest in and to the Property under the terms of the Unison HomeBuyer Agreement shall automatically constitute a transfer or sale of the Property occasioning Senior Lender's rights immediately to accelerate the First Mortgage; and that in the event Senior Lender commences a Senior Foreclosure in response to such acceleration, Subordinating Lien Holder expressly waives any and all defenses to such Senior Foreclosure which might accrue to Subordinating Lien Holder as record title owner of a percentage interest in and to the Property, except as to those rights of reinstatement of the First

Mortgage or redemption of the Property which may accrue to Subordinating Lien Holder under applicable law prior to the completion of a foreclosure sale.

**11.** Subordinating Lien Holder shall provide prompt written notice to Senior Lender upon tender of an offer of **Orderly Sale** to Owner under the terms of the Unison HomeBuyer Agreement, and shall not tender such offer unless or until Senior Lender has reasonably exhausted attempts at Bona Fide Loan Modification and Bona Fide Loss Mitigation in connection with Owner's default on the First Mortgage.

**12.** Following the death of the **Last Surviving Owner,** Subordinating Lien Holder shall notify the heir(s) (and/or estate, as appropriate) of the Last Surviving Owner if Subordinating Lien Holder elects to exercise its right to purchase its undivided percentage interest in and to the Property under the Unison HomeBuyer Agreement; provided, however, that Subordinating Lien Holder shall temporarily forbear from exercising its right to purchase its undivided percentage interest in and to the Property in the event a surviving spouse, child, parent, grandparent, grandchild, brother or sister of the Last Surviving Owner ("**Surviving Occupant**") is occupying or intends to occupy the Property as his or her primary residence, and the First Mortgage is either not in default, or Senior Lender is engaged in a Bona Fide Loan Modification in response to a default thereunder, and provided further that such right shall automatically recommence upon the earliest of any of the following:

(a) Senior Lien Holder elects to accelerate, or exercise its due-on-sale rights with respect to, the First Mortgage;

(b) Surviving Occupant ceases to occupy the Property as his or her primary residence;

(c) Surviving Occupant transfers or attempts to further transfer the Property to any new transferee;

(d) an event occurs which would constitute a default under the Unison HomeBuyer Agreement occasioning Subordinating Lien Holder's right to accelerate the Junior Lien, and which Surviving Occupant fails to cure, including, without limitation: the obligation to maintain and repair the property; to pay taxes and insurance thereon when due; to permit Subordinating Lien Holder to appraise and physically inspect the Property; or any other material event of default specified in the Unison HomeBuyer Agreement; or

(e) The death of Surviving Occupant.

The Term of the Unison HomeBuyer Agreement shall automatically extend to permit Subordinating Lien Holder to purchase its undivided percentage interest in and to the Property promptly following any of the events set forth in subsections 12(a) - (e) above.

**13.** This Subordination Agreement shall be binding upon all successors and assigns of Subordinating Lien Holder. Subordinating Lien Holder shall provide written notice to Senior Lender of any assignment of the Junior Lien and shall require of its assignees in writing that no subsequent assignment of the Junior Lien shall be effective until the delivery of written notice to Senior Lender of such assignment.

© 2017, **Unison**                                              Form 405 HBA-Multi (3/2/2017)

Unison Agreement Corp., a Delaware corporation

By: _____

Name:   Ismael Casas Jr

Title:   Vice President

Date signed: _____  7/3/2019

## ACKNOWLEDGEMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA          )
                                             ) ss.
COUNTY OF SAN FRANCISCO  )

On _____, 20____, before me _____,
Notary Public, personally appeared _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

(seal)

© 2017, Unison

Form 405 HBA-Multi (3/2/2017)

## BENEFITED PARTY'S ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                    )
County of San Francisco                )

On __JUL 3 1 2019__ before me, _____Angelica Padilla, a notary public_____
personally appeared _____Ismael Casas, Jr._____ who proved to me
on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/
their signature(s) on the instrument the  person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

ANGELICA PADILLA
COMM. #2272624
Notary Public · California
San Francisco County
My Comm. Expires Dec. 23, 2022

Signature_____          **(Seal)**
        Angelica Padilla

## Exhibit A

**Bona Fide Loan Modification**.  A modification to the First Mortgage offered by Senior Lender or its assignee: (a) in accordance with, or which is functionally equivalent to, a loan modification program approved by the government–sponsored enterprises (i.e. Fannie Mae or Freddie Mac), (b) granted in response to Owner's documented and verified inability to make required payments on the First Mortgage; and (c) restricted in its terms such that there is no "cash out" payment to Owner.

**Bona Fide Loss Mitigation**.  A deed-in-lieu of foreclosure, Short Sale, or other action approved and undertaken by Senior Lender in response to: (a) Owner's documented and verified inability to make required payments on the First Mortgage; and (b) based on a documented and verified calculation of the actual market value of the Property by a neutral third party which calculation is free of fraud, bias or undue influence.

**Junior Foreclosure**:  A judicial or non-judicial foreclosure action by Subordinating Lien Holder.

**Junior Lien**.  The Unison HomeBuyer Agreement equity investment contract.

**Last Surviving Owner.**  The last surviving individual person who is both a borrower under the First Mortgage and a signatory homeowner to the Unison HomeBuyer Agreement.

**Maximum Authorized Debt.**  The maximum principal amount of total indebtedness secured by any lien on the Property that Owner is permitted to incur under, and as defined in, the Unison HomeBuyer Agreement.

**Memorandum of Unison HomeBuyer Agreement**.  A contractual component of the Unison HomeBuyer Agreement equity investment contract constituting the Junior Lien on the Property.

**Mortgage.**  A mortgage, deed of trust, trust deed or other security instrument.

**Owner(s)**.  The above-named homeowner(s) who is/are both borrower(s) under the First Mortgage, and signatory homeowner(s) to the Unison HomeBuyer Agreement.

**Senior Foreclosure**.  A judicial or non-judicial foreclosure action by Senior Lender.

**Senior Lender**.  The above-named lender which makes the First Mortgage on the Property, and all of its successors and assigns.

**Short Sale**.  A sale by Owner wherein the Senior Lender on the First Mortgage expressly agrees to accept an amount that is less than the full amount due and payable to release the senior lien.

**Subordinating Lien Holder**.  Unison Agreement Corp. and its successors and assigns.

**Surviving Occupant**.  A surviving spouse, child, parent, grandparent, grandchild, brother or sister of the Last Surviving Owner who elects to occupy the Property as his or her established primary residence.

**Unison HomeBuyer Agreement**.  The equity investment contract which constitutes the Junior Lien on the Property of Subordinate Lien Holder, consisting of the following: (a) the Unison HomeBuyer Option Agreement; (b) the Unison HomeBuyer Covenant Agreement; (c) the Unison HomeBuyer Subordinated Security Instrument; (d) the Memorandum of Unison HomeBuyer Agreement; and (e) all addenda and amendments thereto.

**Unison HomeBuyer Covenant Agreement.**  A contractual component of the Unison HomeBuyer Agreement equity investment contract constituting the Junior Lien on the Property.

**Unison HomeBuyer Option Agreement.**  A contractual component of the Unison HomeBuyer Agreement equity investment contract constituting the Junior Lien on the Property.

**Unison HomeBuyer Subordinated Security Instrument**.  The contractual component of the Unison HomeBuyer Agreement equity investment contract which secures the Junior Lien and which is expressly made subordinate to the First Mortgage both by its terms and under this Subordination Agreement, and which is recorded following the recording of the First Mortgage in the jurisdiction where the Property is located.

Page 6 of 7

© 2017, **Unison**

Form 405 HBA-Multi (3/2/2017)

DOC #2019-0299193  Page 9 of 9

## Exhibit B

### LEGAL DESCRIPTION OF PROPERTY

That certain real property situated in the City of Palm Springs, County of Riverside, State of CA, described as follows:

LOT 8 OF BLOCK 7, PALM CANYON MESA TRACT, AS PER MAP RECORDED IN BOOK 12, PAGES 52 THROUGH 56, BOTH INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN:  APN: 513-363-023-2

**[end of legal description]**

Page 7 of 7

© 2017, **Unison**

Form 405 HBA-Multi (3/2/2017)

# EXHIBIT 7

## DEFENDANT UNISON AGREEMENT CORP.'S RESPONSES TO PLAINTIFF GOLDWATER BANK, N.A.'S SPECIAL INTERROGATORIES, SET TWO

ORSUS GATE LLP
Denis Shmidt (Bar No. 267987)
Nabil Bisharat (Bar No. 270305)
Jennifer Haidar (Bar No. 337558)
16 N. Marengo Ave., Suite 316
Pasadena, CA 91101
Telephone: (213) 373-4357
Email: DShmidt@OrsusGate.com
Email: NBisharat@OrsusGate.com
Email: JHaidar@OrsusGate.com

*Attorneys for Defendant*
*Unison Agreement Corp.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDWATER BANK, N.A.,<br><br>Plaintiff,<br><br>v.<br><br>ARTHUR ELIZAROV; UNISON AGREEMENT CORP.; SCOTT HOWLETT; BANK OF THE WEST; and ILYA ALEKSEYEFF<br><br>Defendants. | Case No. 5:21-cv-00616-JWH-SP<br><br>**DEFENDANT UNISON AGREEMENT CORP.'S RESPONSES TO PLAINTIFF GOLDWATER BANK, N.A.'S SPECIAL INTERROGATORIES, SET TWO**<br><br>FAC Filed: May 27, 2021<br><br>Trial Date: November 27, 2023 |
| AND RELATED CROSS-ACTIONS | |

Pursuant to Federal Rules of Civil Procedure Nos. 26, 33, and 34, Defendant Unison Agreement Corp. ("Unison") hereby submits these objections and responses to the Special Interrogatories, Two propounded by Plaintiff Goldwater Bank, N.A.

## PRELIMINARY STATEMENT

1.      Unison has not completed discovery, factual investigation, or trial preparation in this case. Accordingly, the following responses are based on information known to Unison at this time and are provided without prejudice to Unison's right to produce subsequently discovered evidence and facts, and to add, modify, or otherwise change or amend these responses.

2.      The responses are made without prejudice to Unison's right to present additional evidence or contentions at trial based upon information subsequently obtained or developed. While Unison reserves the right to supplement, amend, or modify its responses, Unison undertakes no obligation to do so except as required by the Federal Rules of Civil Procedure.

3.      Responses to these discovery requests are confidential in nature and should be used exclusively for this litigation.

4.      No incidental or implied admissions are intended by these responses and no such implications should be made. These responses are not an admission that anything stated herein is relevant or admissible evidence, nor do they constitute a waiver of any objection. The responses provided herein are made solely for the purpose of this action.

5.      Unison's responses are not, and shall not be construed as, an agreement with the propounding party's characterization of any facts, circumstances, obligations, or hypotheticals.

## GENERAL OBJECTIONS

Unison objects to each and every discovery request addressed herein on the following grounds:

1

1.     Unison generally objects to these requests to the extent they seek information that is beyond the scope of the current litigation and not reasonably calculated to lead to the discovery of admissible evidence.

2.     Unison generally objects to the definitions, instructions, and the requests to the extent they are overly broad, duplicative, unnecessary, or unduly burdensome, and to the extent that they seek to impose an obligation on Unison beyond those set forth in the Federal Rules of Civil Procedure, rules of this Court, or any other applicable laws.

3.     Unison generally objects to these requests to the extent they request information solely in the possession, custody or control of agents or other third parties not under the control of Unison, or that is otherwise outside of Unison's possession, custody or control.

4.     Unison generally objects to these requests to the extent they seek information that is confidential, proprietary, or otherwise protected by a right of privacy.

5.     Unison generally objects to these requests to the extent they seek information that is equally in the possession, custody, or control of the propounding party.

6.     Unison generally objects to these requests to the extent they seek documents or information subject to the attorney-client privilege, the work product doctrine, and/or any other applicable privilege or protection.

7.     Unison objects to the interrogatories propounded by Goldwater on the ground that their First Set of Special Interrogatories included discrete subparts and numerically exceeded the maximum of 25 interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1), and as a result, this Second Set of Special Interrogatories – which itself exceeds that maximum of 25 interrogatories – is further violative of Federal Rule of Civil Procedure 33(a)(1).

2

8.      Unison generally objects to these requests to the extent they are vague, ambiguous, and/or require Unison to speculate as to the responses the propounding party seeks or answer hypothetical questions.

## RESPONSES TO SPECIAL INTERROGATORIES, SET TWO

The Preliminary Statement and General Objections are hereby incorporated into each of the responses set forth below as though fully stated therein and shall be deemed to be continuing even if not specifically referred to in any response to an individual request.  Any responses to these requests are made without waiver of, or prejudice to, any objections Unison may raise now or in the future and all such objections are hereby expressly preserved.

## SPECIAL INTERROGATORY NO. 11:

After funding YOUR option contract secured by a performance deed of trust, did YOU ever speak with Artur Elizarov regarding GOLDWATER'S deed of trust encumbering the PROPERTY?

## RESPONSE TO INTERROGATORY NO. 11:

Subject to and without waiving its Preliminary Statement and General Objections, Unison Responds as follows: Unison did not speak with Mr. Elizarov about Goldwater, Goldwater's loan, or Goldwater's deed of trust.  Rather, the discussions it had with Mr. Elizarov concerned the mechanics of the HomeBuyer Agreement entered into between Mr. Elizarov and Unison and the subsequent payment to Unison pursuant to the aforementioned HomeBuyer Agreement.

Unison further responds that discovery is ongoing and it reserves the right to supplement and/or amend this response.

## SPECIAL INTERROGATORY NO. 12:

After funding YOUR option contract secured by a performance deed of

3

1    trust, did YOU ever speak with Artur Elizarov regarding GOLDWATER?

2    **RESPONSE TO INTERROGATORY NO. 12:**

3        Subject to and without waiving its Preliminary Statement and General

4    Objections, Unison Responds as follows: Unison did not speak with Mr. Elizarov

5    about Goldwater, Goldwater's loan, or Goldwater's deed of trust.  Rather, the

6    discussions it had with Mr. Elizarov concerned the mechanics of the HomeBuyer

7    Agreement entered into between Mr. Elizarov and Unison and the subsequent

8    payment to Unison pursuant to the aforementioned HomeBuyer Agreement.

9        Unison further responds that discovery is ongoing and it reserves the right to

10    supplement and/or amend this response.

11

12    **SPECIAL INTERROGATORY NO. 13:**

13        Did YOU create the SUBORDINATION?

14    **RESPONSE TO INTERROGATORY NO. 13:**

15        Subject to and without waiving its Preliminary Statement and General

16    Objections, Unison Responds as follows: Yes.

17        Unison further responds that discovery is ongoing and it reserves the right to

18    supplement and/or amend this response.

19

20    **SPECIAL INTERROGATORY NO. 14:**

21        By executing the SUBORDINATION, did YOU intended to subordinate the

22    UNISON TD to a second priority position lien against the PROPERTY?

23    **RESPONSE TO INTERROGATORY NO. 14:**

24        Subject to and without waiving its Preliminary Statement and General

25    Objections, Unison Responds as follows: Yes.

26        Unison further responds that discovery is ongoing and it reserves the right to

27    supplement and/or amend this response.

28

1  **SPECIAL INTERROGATORY NO. 15:**

2      Do YOUR records indicate that GOLDWATER was the "Senior Lender"

3  identified in the SUBORDINATION?

4  **RESPONSE TO INTERROGATORY NO. 15:**

5      Subject to and without waiving its Preliminary Statement and General

6  Objections, Unison Responds as follows: Yes.

7      Unison further responds that discovery is ongoing and it reserves the right to

8  supplement and/or amend this response.

9

10  **SPECIAL INTERROGATORY NO. 16:**

11      Did Andrea Cross ever ask YOU for the identity of the "Senior Lender"

12  referenced in the SUBORDINATION?

13  **RESPONSE TO INTERROGATORY NO. 16:**

14      Subject to and without waiving its Preliminary Statement and General

15  Objections, Unison Responds as follows: No, and Unison has no record of Ms.

16  Cross asking Unison for the identity of the "Senior Lender" referenced in the

17  SUBORDINATION.

18      Unison further responds that discovery is ongoing and it reserves the right to

19  supplement and/or amend this response.

20

21  **SPECIAL INTERROGATORY NO. 17:**

22      If Andrea Cross would have asked YOU for the identity of the "Senior

23  Lender" referenced in the SUBORDINATION, how would YOU have responded?

24  **RESPONSE TO INTERROGATORY NO. 17;**

25      Subject to and without waiving its Preliminary Statement and General

26  Objections, Unison Responds as follows: although Unison cannot know exactly

27  what the question from Ms. Cross would have been, it would have responded to

28

questions of this kind by explaining that Goldwater Bank is the "Senior Lender" referred to in the SUBORDINATION.

Unison further responds that discovery is ongoing and it reserves the right to supplement and/or amend this response.

**SPECIAL INTERROGATORY NO. 18:**

If Andrea Cross would have asked YOU for the identity of the "Senior Lender" referenced in the SUBORDINATION and provided a reference to the PROPERTY address, how would YOU have responded?

**RESPONSE TO INTERROGATORY NO. 8:**

Subject to and without waiving its Preliminary Statement and General Objections, Unison Responds as follows: although Unison cannot know exactly what the question from Ms. Cross would have been, it would have responded to questions of this kind by explaining that Unison was aware of only Goldwater Bank as a "Senior Lender" for the PROPERTY.

Unison further responds that discovery is ongoing and it reserves the right to supplement and/or amend this response.

**SPECIAL INTERROGATORY NO. 19:**

Did Andrea Cross ask YOU if GOLDWATER was affiliated with YOU?

**RESPONSE TO INTERROGATORY NO. 19:**

Subject to and without waiving its Preliminary Statement and General Objections, Unison Responds as follows: No, and Unison has no record of Ms. Cross asking if Goldwater was affiliated with Unison.

Unison further responds that discovery is ongoing and it reserves the right to supplement and/or amend this response.

**SPECIAL INTERROGATORY NO. 20:**

How would YOU have responded if Andrea Cross would have asked YOU if GOLDWATER was affiliated with YOU?

**RESPONSE TO INTERROGATORY NO. 20:**

Subject to and without waiving its Preliminary Statement and General Objections, Unison Responds as follows: although Unison cannot know exactly what the question from Ms. Cross would have been, it would have responded to questions of this kind by explaining that Goldwater and Unison are unaffiliated, that they are two entirely separate companies, and that they are not the same entity or otherwise owned by the same parent company/individual.

Unison further responds that discovery is ongoing and it reserves the right to supplement and/or amend this response.

**SPECIAL INTERROGATORY NO. 21:**

Did Andrea Cross ask YOU if Peter Hill was affiliated with YOU?

**RESPONSE TO INTERROGATORY NO. 21:**

Subject to and without waiving its Preliminary Statement and General Objections, Unison Responds as follows: No, and Unison has no record of Ms. Cross asking if Peter Hill was affiliated with Unison.

Unison further responds that discovery is ongoing and it reserves the right to supplement and/or amend this response.

**SPECIAL INTERROGATORY NO. 22:**

How would YOU have responded if Andrea Cross would have asked YOU if Peter Hill was affiliated with YOU?

**RESPONSE TO INTERROGATORY NO. 22:**

Subject to and without waiving its Preliminary Statement and General Objections, Unison Responds as follows: although Unison cannot know exactly

7

1  what the question from Ms. Cross would have been, it would have responded to

2  questions of this kind by explaining that Peter Hill is neither affiliated with nor

3  employed by Unison, and that to the best of Unison's knowledge and

4  understanding, he is affiliated with and/or employed by Goldwater Bank.

5       Unison further responds that discovery is ongoing and it reserves the right to

6  supplement and/or amend this response.

7

8  **SPECIAL INTERROGATORY NO. 23:**

9       Did Andrea Cross ask YOU if GOLDWATER and YOU represented the

10  same interests in the PROPERTY?

11  **RESPONSE TO INTERROGATORY NO. 23:**

12       Subject to and without waiving its Preliminary Statement and General

13  Objections, Unison Responds as follows: No, and Unison has no record of Ms.

14  Cross asking Unison if it "represented the same interests" in the Property as

15  GOLDWATER.

16       Unison further responds that discovery is ongoing and it reserves the right to

17  supplement and/or amend this response.

18

19  **SPECIAL INTERROGATORY NO. 24:**

20       How would YOU have responded if Andrea Cross would have asked YOU

21  if GOLDWATER and YOU represented the same interests in the PROPERTY?

22  **RESPONSE TO INTERROGATORY NO. 24:**

23       Subject to and without waiving its Preliminary Statement and General

24  Objections, Unison Responds as follows: although Unison cannot know exactly

25  what the question from Ms. Cross would have been, it would have responded to

26  questions of this kind by explaining that Goldwater's interests in the Property were

27  based on a mortgage loan transaction it entered into with Mr. Elizarov, while

28

8

Unison's interests in the Property were based on an option contract (the HomeBuyer Agreement) it entered into with Mr. Elizarov.

Unison further responds that discovery is ongoing and it reserves the right to supplement and/or amend this response.

**SPECIAL INTERROGATORY NO. 25:**

Did Andrea Cross ask YOU if YOU held a first-priority lien against the PROPERTY?

**RESPONSE TO INTERROGATORY NO. 25:**

Subject to and without waiving its Preliminary Statement and General Objections, Unison Responds as follows: No, and Unison has no record of Ms. Cross asking Unison if it held a first-priority lien against the PROPERTY.

Unison further responds that discovery is ongoing and it reserves the right to supplement and/or amend this response.

**SPECIAL INTERROGATORY NO. 26:**

If Andrea Cross would have asked YOU if YOU held a first-priority lien against the PROPERTY, how would YOU have responded?

**RESPONSE TO INTERROGATORY NO. 26:**

Subject to and without waiving its Preliminary Statement and General Objections, Unison Responds as follows: although Unison cannot know exactly what the question from Ms. Cross would have been, it would have responded to questions of this kind by explaining that Unison held a second-priority lien on the property, subject to Goldwater's first-priority lien, which Unison expected Goldwater to record.

Unison further responds that discovery is ongoing and it reserves the right to supplement and/or amend this response.

**SPECIAL INTERROGATORY NO. 27:**

Did Andrea Cross ask YOU if it was the only entity with a monetary lien against the Property?

**RESPONSE TO INTERROGATORY NO. 27:**

Subject to and without waiving its Preliminary Statement and General Objections, Unison Responds as follows: Unison's interest in the Property was not a monetary lien, but an option contract secured by a performance Deed of Trust. Notwithstanding the mischaracterization of Unison's agreement, no, Ms. Cross did not ask if it was the only entity with a monetary lien against the Property, and Unison has no record of Ms. Cross asking Unison.

Unison further responds that discovery is ongoing and it reserves the right to supplement and/or amend this response.

**SPECIAL INTERROGATORY NO. 28:**

If Andrea Cross would have asked YOU if YOU were aware of any entity having a monetary lien against the Property, how would YOU have responded?

**RESPONSE TO INTERROGATORY NO. 28:**

Subject to and without waiving its Preliminary Statement and General Objections, Unison Responds as follows: Unison's interest in the Property was not a monetary lien, but an option contract secured by a performance Deed of Trust. Notwithstanding the mischaracterization of Unison's agreement, and although Unison cannot know exactly what the question from Ms. Cross would have been, it would have responded to questions of this kind by explaining that it understood Goldwater to have a monetary lien against the Property.

Unison further responds that discovery is ongoing and it reserves the right to supplement and/or amend this response.

**SPECIAL INTERROGATORY NO. 29:**

If Andrea Cross would have asked YOU if YOUR payoff demand covered all obligations secured the PROPERTY, how would YOU have responded?

**RESPONSE TO INTERROGATORY NO. 29:**

Subject to and without waiving its Preliminary Statement and General Objections, Unison Responds as follows: although Unison cannot know exactly what the question from Ms. Cross would have been it would have responded to questions of this kind by explaining that Unison's payoff demand was meant to cover only Unison's recorded lien interest on the Property, and not any others.

Unison further responds that discovery is ongoing and it reserves the right to supplement and/or amend this response.

**SPECIAL INTERROGATORY NO. 30:**

Did Andrea Cross ask YOU if YOU were the servicer for GOLDWATER?

**RESPONSE TO INTERROGATORY NO. 30:**

Subject to and without waiving its Preliminary Statement and General Objections, Unison Responds as follows: no, and Unison has no record of Ms. Cross asking Unison if it was the servicer for GOLDWATER.

Unison further responds that discovery is ongoing and it reserves the right to supplement and/or amend this response.

**SPECIAL INTERROGATORY NO. 31:**

If Andrea Cross would have asked YOU if YOU were the servicer for GOLDWATER, how would YOU have responded?

**RESPONSE TO INTERROGATORY NO. 31:**

Subject to and without waiving its Preliminary Statement and General Objections, Unison Responds as follows: although Unison cannot know exactly what the question from Ms. Cross would have been, it would have responded to

11

1   questions of this kind by explaining that Unison was not the servicer for

2   Goldwater.

3          Unison further responds that discovery is ongoing and it reserves the right to

4   supplement and/or amend this response.

5

6   **SPECIAL INTERROGATORY NO. 32:**

7          Did Andrea Cross ask YOU if GOLDWATER was the servicer for YOU?

8   **RESPONSE TO INTERROGATORY NO. 32:**

9          Subject to and without waiving its Preliminary Statement and General

10  Objections, Unison Responds as follows: no, and Unison has no record of Ms.

11  Cross asking Unison if Goldwater was the servicer for Unison.

12         Unison further responds that discovery is ongoing and it reserves the right to

13  supplement and/or amend this response.

14

15  **SPECIAL INTERROGATORY NO. 33:**

16         If Andrea Cross would have asked YOU if GOLDWATER was YOUR

17  servicer, how would YOU have responded?

18  **RESPONSE TO INTERROGATORY NO. 33:**

19         Subject to and without waiving its Preliminary Statement and General

20  Objections, Unison Responds as follows: although Unison cannot know exactly

21  what the question from Ms. Cross would have been, it would have responded to

22  questions of this kind by explaining that Goldwater was not a servicer for Unison.

23         Unison further responds that discovery is ongoing and it reserves the right to

24  supplement and/or amend this response.

25

26  **SPECIAL INTERROGATORY NO. 34:**

27         Did YOU send YOUR payoff demand relating to the PROPERTY to Andrea

28  Cross on 3/23/2021, 3:45 pm?

12

**RESPONSE TO INTERROGATORY NO. 34:**

Subject to and without waiving its Preliminary Statement and General Objections, Unison Responds as follows: yes, assuming this question is asking about the payoff demand produced by various parties in this litigation (*see*, for example, EOTW_000126).

Unison further responds that discovery is ongoing and it reserves the right to supplement and/or amend this response.

**SPECIAL INTERROGATORY NO. 35:**

Did Bank of the West ever communicate with YOU regarding the subject transaction?

**RESPONSE TO INTERROGATORY NO. 35:**

Unison assumes this interrogatory is requesting information regarding communications that are not between and among counsel in this litigation, and instead is in reference to communications predating this litigation.  Based on that understanding, and subject to and without waiving its Preliminary Statement and General Objections, Unison responds as follows: no, and Unison does not have any record of communications with Bank of the West regarding the subject transaction.

Unison further responds that discovery is ongoing and it reserves the right to supplement and/or amend this response.

**SPECIAL INTERROGATORY NO. 36:**

If Bank of the West would have asked YOU about the priority position of YOUR lien against the PROPERTY, how would YOU have responded?

**RESPONSE TO INTERROGATORY NO. 36:**

Subject to and without waiving its Preliminary Statement and General Objections, Unison Responds as follows: although Unison cannot know exactly what the questions from Bank of the West would have been, it would have

13

1   responded to questions of this kind by explaining that Unison held a second-

2   priority lien on the property, subject to Goldwater's first-priority lien, which

3   Unison expected Goldwater to record.

4          Unison further responds that discovery is ongoing and it reserves the right to

5   supplement and/or amend this response.

6

7   Dated:  March   6, 2023                    ORSUS GATE LLP

8                                             Denis Shmidt

9                                             Nabil Bisharat
                                             Jennifer Haidar
10

11                                            By: */s / Nabil Bisharat*

12                                                Nabil Bisharat
                                                 *Attorneys for Defendant*
13                                                *Unison Agreement Corp.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT UNISON AGREEMENT CORP.'S RESPONSES TO GOLDWATER'S SROGS, SET TWO
CASE NO. 5:21-cv-00616-JWH-SP

# **<u>VERIFICATION</u>**

I, Theodor Haugen, am Vice President of Customer Experience for Unison Agreement Corp., a party to this action.  I am authorized to make this verification on its behalf.  I have read the aforementioned DEFENDANT UNISON AGREEMENT CORP.'S RESPONSES TO PLAINTIFF GOLDWATER BANK, N.A.'S SPECIAL INTERROGATORIES, SET TWO and know their contents. I am informed and believe that the matters stated herein are true.

On those grounds, I certify or declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on _____March 13, 2023_____ in ____Redwood City____, California.

_Theodor Haugen_
Theodor Haugen

15

## CERTIFICATION OF SERVICE

I am employed in the City of Pasadena, County of Los Angeles, State of California.  I am over the age of 18 years and not a party to this action.  My business address is Orsus Gate LLP, 16 N. Marengo Ave, Suite 316, Pasadena, California.  I am familiar with the office practice of Orsus Gate LLP for collecting and processing documents for delivery.

On March ☐6, 2023, in accordance with the office practices of Orsus Gate LLP, I served a true copy of the following document(s):

**DEFENDANT UNISON AGREEMENT CORP.'S RESPONSES TO PLAINTIFF GOLDWATER BANK, N.A.'S SPECIAL INTERROGATORIES, SECOND TWO**

The foregoing document(s) were served by the following means:

☒  **(By Electronic Mail)** I emailed the document(s) listed above to the electronic mail address(es) listed below pursuant to stipulation, California Code of Civil Procedure § 1010.6, and California Rule of Court 2.251(c)(3). My electronic notification address is nbisharat@orsusgate.com  The transmission was complete and without error and I did not receive, within reasonable time after transmission, any electronic message or other indication that the transmission was unsuccessful.

The document(s) listed above were sent to the following address(es):

| | |
|---|---|
| Sean C. Wagner, Esq.<br>Derek M. Bast, Esq.<br>Wagner Hicks PLLC<br>831 East Morehead Street, Suite 860<br>Charlotte, NC 28202<br>(704) 705-7538; Fax: (704) 705-7787<br>sean.wagner@wagnerhicks.law<br>derek.bast@wagnerhicks.law<br>*Attorneys for Plaintiff<br>Goldwater Bank, N.A.* | John Forest Hilbert, Esq.<br>Joseph A. LeVota, Esq.<br>Hilbert & Satterly LLP<br>409 Camino Del Rio South, Suite 104<br>San Diego, CA 92108<br>(619) 795-0300; Fax: (619) 501-6855<br>jhilbert@hscallaw.com<br>jlevota@hscallaw.com<br>*Attorneys for Plaintiff Goldwater<br>Bank, N.A.* |
| Howard D. Hall, Esq.<br>Jeffrey Katz, Esq.<br>Hall Griffin LLP<br>1851 East First Street, 10th Floor<br>Santa Ana, CA 92705<br>(714) 918-7000; Fax: (714) 918-6996<br>hdhall@hallgriffin.com<br>jkatz@hallgriffin.com<br>*Attorneys for Defendants Scott Howlett and<br>Bank of the West* | Ilya Alekseyeff, Esq.<br>Loia, Inc. (APLC)<br>8721 Santa Monica Blvd., #119<br>West Hollywood, CA 90069<br>(213) 537-4592<br>ilya@loia.legal<br>*Attorneys for Defendant Artur Elizarov and<br>Defendant Ilya Alekseyeff (in Pro Per)* |

Executed on March ☐6, 2023 in Pasadena, California.

_____

Nabil Bisharat

# EXHIBIT 8

## GRANT DEED RECORDED IN THE OFFICIAL RECORDS OF THE RIVERSIDE COUNTY RECORDER'S OFFICE ON AUGUST 7, 2019, AS DOCUMENT NO. 2019-0299190

**DOC # 2019-0299190**
08/07/2019 05:00 PM Fees: $20.00
Page 1 of 3
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

\*\*This document was electronically submitted
to the County of Riverside for recording\*\*
Receipted by: MARY #420

PLEASE COMPLETE THIS INFORMATION
RECORDING REQUESTED BY:

FIRST AMERICAN TITLE

AND WHEN RECORDED MAIL TO:
AND MAIL TAX STATEMENTS TO:

Artur Elizarov
291 W. Overlook Road
Palm Springs, CA 92264

Space above this line for recorder's use only

GRANT DEED

Title of Document

**TRA:** 011-003

**DTT:** $1,006.50

**Exemption reason declared pursuant to Government Code 27388.1**

[✓] This document is a transfer that is subject to the imposition of documentary transfer tax.

[ ] This is a document recorded in connection with a transfer that is subject to the imposition of documentary transfer tax.
Document reference: CONCURRENTLY HEREWITH

[ ] This document is a transfer of real property that is a residential dwelling to an owner-occupier.

[ ] This is a document recorded in connection with a transfer of real property that is a residential dwelling to an owner-occupier.
Document reference:_____

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

ACR 238 (Rev. 01/2018)          Available in Alternate Formats

Recording Requested By

First American Title Company

DOC #2019-0299190  Page 2 of 3

RECORDING REQUESTED BY:
FIRST AMERICAN
WHEN RECORDED MAIL RECORDED DEED
AND TAX STATEMENTS TO:
Artur Elizarov
291 W. Overlook Rd
Palm, SPRINGS Ca 92264

TITLE ORDER NO: 0625-5974427

---

ASSESSOR'S PARCEL NO.: 513-363-023-2      ESCROW NO.: 7061-EM

TRA : 011-003          **GRANT DEED**

The Undersigned Grantor(s) Declares that Documentary transfer tax is $ 1,006.50 and CITY TAX IS
$0.00
(x) computed on full value of property conveyed,  OR
( ) computed on the full value less liens of encumbrances remaining at the time of sale

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged:

CEDAR FORGE FINANCIAL, A CALIFORNIA CORPORATION

hereby GRANT(S) to **Artur Elizarov, a single man**

The following real property in the City of Palm, County of Riverside, State of California:
described as:  See Attached, Exhibit 'A', made a part hereof

More commonly known as: 291 W. Overlook Rd, Palm, SPRINGS Ca 92264

**Date:** ^

8/1/2019

Anthony Geraci , President of
Cedar Forge Financial, A
California Corporation

---

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
|---|

**STATE OF CALIFORNIA**          )
**COUNTY OF Riverside**           )
On _August 1, 2019_ before me, _Sylvia McDonald_ a notary public, Personally appeared
_Anthony Geraci_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the  same in his/her/their authorized capacity(ies), and  that by his/her/their
signature(s) on the instrument  the person(s) or the entity upon behalf of which the  person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under  the laws of the State of California that  the foregoing paragraph is true and
correct.

Witness my hand and official seal.

SYLVIA MCDONALD
Notary Public – California
Orange County
Commission # 2209205
My Comm. Expires Aug 7, 2021

Signature _Sylvia McDonald_

(This area for official notarial seal)

DOC #2019-0299190  Page 3 of 3

**Exhibit "A"**

**Legal Description**

A.P.N.: 513-363-023-2

Real property in the City of Palm Springs, County of Riverside, State of California, described as follows:

LOT 8 OF BLOCK 7, PALM CANYON MESA TRACT, AS PER MAP RECORDED IN BOOK 12, PAGES 52 THROUGH 56, BOTH INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

# EXHIBIT 9

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS DATED FEBRUARY 12, 2021 (CROSS DEPO EX. 2)**

# CALIFORNIA
## RESIDENTIAL PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. Form RPA-CA, Revised 12/18)

Date Prepared: _02/12/2021_

**1. OFFER:**

**A.** THIS IS AN OFFER FROM _Scott Howlett_ ("Buyer").

**B.** THE REAL PROPERTY to be acquired is _291 W Overlook Rd, Palm Springs, CA 92264-8934_ , situated in _Palm Springs_ (City), _Riverside_ (County), California, _92264-8934_ (Zip Code), Assessor's Parcel No. _513363023_ ("Property").

**C.** THE PURCHASE PRICE offered is _One Million, Three Hundred Fifty-Five Thousand_
Dollars $ _1,355,000.00_ .

**D.** CLOSE OF ESCROW shall occur on _____ (date)(or [X] _21_ **Days** After Acceptance).

**E.** Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

**2. AGENCY:**

**A.** DISCLOSURE: The Parties each acknowledge receipt of a [X] "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).

**B.** CONFIRMATION: The following agency relationships are confirmed for this transaction:

**Seller's Brokerage Firm** _Keller Williams Luxury Homes_ License Number _01417409_
Is the broker of (check one): [ ] the seller; or [ ] both the buyer and seller. (dual agent)
Seller's Agent _Will Cook_ License Number _01879277_
Is (check one): [ ] the Seller's Agent. (salesperson or broker associate) [ ] both the Buyer's and Seller's Agent. (dual agent)

**Buyer's Brokerage Firm** _Compass_ License Number _01527365_
Is the broker of (check one): [ ] the buyer; or [ ] both the buyer and seller. (dual agent)
Buyer's Agent _Maria Noel Krajco_ License Number _02092247_
Is (check one): [ ] the Buyer's Agent. (salesperson or broker associate) [ ] both the Buyer's and Seller's Agent. (dual agent)

**C.** POTENTIALLY COMPETING BUYERS AND SELLERS: The Parties each acknowledge receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**3. FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.

**A.** INITIAL DEPOSIT: Deposit shall be in the amount of .................................... $ _40,650.00_
   **(1)** Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds transfer, [ ] cashier's check, [ ] personal check, [ ] other _____ within 3 business days after Acceptance (or _____);
   OR **(2)** [ ] Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____ ) to the agent submitting the offer (or to _____ ), made payable to _____ . The deposit shall be held uncashed until Acceptance and then deposited with Escrow Holder within **3** business days after Acceptance (or _____ ).
   Deposit checks given to agent shall be an original signed check and not a copy.
   (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)

**B.** INCREASED DEPOSIT: Buyer shall deposit with Escrow Holder an increased deposit in the amount of ......... $ _____
   within _____ **Days** After Acceptance (or _____ ).
   If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form RID) at the time the increased deposit is delivered to Escrow Holder.

**C.** [ ] ALL CASH OFFER: No loan is needed to purchase the Property. This offer is NOT contingent on Buyer obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or [ ] Buyer shall, within **3** (or _____ ) **Days** After Acceptance, Deliver to Seller such verification.

**D.** LOAN(S):
   **(1)** FIRST LOAN: in the amount of ......................................... $ _1,004,000.00_
   This loan will be conventional financing **OR** [ ] FHA, [ ] VA, [ ] Seller financing (C.A.R. Form SFA), [ ] assumed financing (C.A.R. Form AFA), [ ] Other _____ . This loan shall be at a fixed rate not to exceed _____ % or, [ ] an adjustable rate loan with initial rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
   **(2)** SECOND LOAN in the amount of ...................................... $ _____
   This loan will be conventional financing **OR** [ ] Seller financing (C.A.R. Form SFA), [ ] assumed financing (C.A.R. Form AFA), [ ] Other _____ . This loan shall be at a fixed rate not to exceed _____ % or, [ ] an adjustable rate loan with initial rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
   **(3)** FHA/VA: For any FHA or VA loan specified in 3D(1), Buyer has **17** (or _____ ) **Days** After Acceptance to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be part of this Agreement.

**E.** ADDITIONAL FINANCING TERMS: _____

**F.** BALANCE OF DOWN PAYMENT OR PURCHASE PRICE in the amount of ......................... $ _310,350.00_
   to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

**G.** PURCHASE PRICE (TOTAL): .......................................... $ _1,355,000.00_

EXHIBIT 2

Buyer's Initials ( _SH_ ) ( )   Seller's Initials ( ) ( )

© 1991-2018, California Association of REALTORS®, Inc.

**RPA-CA REVISED 12/18 (PAGE 1 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

KUD Properties, 73700 Highway 111, #7 Palm Desert CA 92260   Phone: (714)580-9103   Fax:   291 W Overlook
Maria Noel Krajco   Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com
EOTW_000023

Omnibus Joint Exhibit Part A, page 0116

Property Address: **291 W Overlook Rd, Palm Springs, CA 92264** Date: **February 12, 2021**

**H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within **3 (or _____ ) Days** After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( ☐ Verification attached.)

**I. APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☒ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within **17 (or _____ ) Days** After Acceptance.

**J. LOAN TERMS:**

**(1) LOAN APPLICATIONS:** Within **3 (or ____ ) Days** After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)

**(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.

**(3) LOAN CONTINGENCY REMOVAL:**

Within **21 (or _14_ ) Days** After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

**(4)** ☐ **NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**(5) LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**K. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement.  Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4. SALE OF BUYER'S PROPERTY:**

**A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.

**OR B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5. ADDENDA AND ADVISORIES:**

A. ADDENDA:

☐ Addendum # _____ (C.A.R. Form ADM)
☐ Back Up Offer Addendum (C.A.R. Form BUO) ☐ Court Confirmation Addendum (C.A.R. Form CCA)
☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI)
☐ Short Sale Addendum (C.A.R. Form SSA) ☐ Other

B. BUYER AND SELLER ADVISORIES:

☒ Buyer's Inspection Advisory (C.A.R. Form BIA)
☐ Probate Advisory (C.A.R. Form PA) ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
☐ Trust Advisory (C.A.R. Form TA) ☐ REO Advisory (C.A.R. Form REO)
☐ Short Sale Information and Advisory (C.A.R. Form SSIA) ☐ Other

**6. OTHER TERMS:** _____

_____

_____

**7. ALLOCATION OF COSTS**

**A. INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**

**(1)** ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☐ environmental ☐ Other: _____ prepared by *SELLERS CHOICE* .

**(2)** ☐ Buyer ☒ Seller shall pay for the following Report *TERMITE PEST CONTROL REPORT AND SECT 1 CLEARANCE* prepared by *SELLERS CHOICE* .

**(3)** ☐ Buyer ☐ Seller shall pay for the following Report _____ prepared by _____ .

**B. GOVERNMENT REQUIREMENTS AND RETROFIT:**

**(1)** ☐ Buyer ☒ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.

Buyer's Initials ( _SH_ ) (_____) Seller's Initials ( _____ ) ( _____ )

**RPA-CA REVISED 12/18 (PAGE 2 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 2 OF 10)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

EOTW_000024
291 W Overlook

Omnibus Joint Exhibit Part A, page 0117

Property Address: **291 W Overlook Rd, Palm Springs, CA 92264-8934**                                    Date: **February 12, 2021**

**(2) (i)** ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.

**(ii)** ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.

**(iii)** Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C. ESCROW AND TITLE:**
**(1) (a)** ☒ Buyer ☒ Seller shall pay escrow fee ***EACH PAY THIER OWN FEES***                                    .
  **(b)** Escrow Holder shall be ***SELLERS CHOICE***                                    .
  **(c)** The Parties shall, within **5 (or ____ ) Days** After receipt, sign and return Escrow Holder's general provisions.
**(2) (a)** ☐ Buyer ☒ Seller shall pay for **owner's** title insurance policy specified in paragraph 13E _____ .
  **(b)** Owner's title policy to be issued by ***SELLERS CHOICE***                                    .
  (Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

**D. OTHER COSTS:**
**(1)** ☐ Buyer ☒ Seller shall pay County transfer tax or fee ***IF APPLICABLE***                                    .
**(2)** ☐ Buyer ☒ Seller shall pay City transfer tax or fee ***IF APPLICABLE***                                    .
**(3)** ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee _____ .
**(4)** ☐ Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.
**(5)** ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.
**(6)** ☐ Buyer to pay for any HOA certification fee.
**(7)** ☐ Buyer ☐ Seller shall pay for any private transfer fee _____ .
**(8)** ☐ Buyer ☐ Seller shall pay for _____ .
**(9)** ☐ Buyer ☐ Seller shall pay for _____ .
**(10)** ☐ Buyer ☒ Seller shall pay for the cost, not to exceed $ ***1,200.00***                , of a standard (or ☒ upgraded) one-year home warranty plan, issued by ***SELLERS CHOICE***                , with the following optional coverages: ☒ Air Conditioner ☒ Pool/Spa ☐ Other: _____ .
Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.
**OR** ☐ **Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.**

**8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.
**B. ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,
**(1)** All EXISTING fixtures and fittings that are attached to the Property;
**(2)** EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: ☒ all stove(s), except _____ ; ☒ all refrigerator(s) except _____ ; ☒ all washer(s) and dryer(s), except _____ ;
**(3)** The following additional items: _____
**(4)** Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are ( ☐ are NOT) included in the sale.
**(5) LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.
**(6)** Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to 8B(5) and _____ , and (ii) are transferred without Seller warranty regardless of value.
**C. ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured to the Property for earthquake purposes; and (iii) _____

_____ . **Brackets attached to walls, floors or ceilings for any such component, furniture or item shall remain with the Property (or** ☐ **will be removed and holes or other damage shall be repaired, but not painted).**

**9. CLOSING AND POSSESSION:**
**A.** Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.
**B. Seller-occupied or vacant property:** Possession shall be delivered to Buyer: (i) at 6 PM or ( ☐ _____ ☐ AM/☐ PM) on the date of Close Of Escrow; (ii) ☐ no later than _____ calendar days after Close Of Escrow; or (iii) ☐ at _____ ☐ AM/☐ PM on _____ .

Buyer's Initials ( _SH_ ) ( _____ )                                    Seller's Initials ( _____ ) ( _____ )

**RPA-CA REVISED 12/18 (PAGE 3 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 3 OF 10)**
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com                291 W Overlook

EOTW_000025

Omnibus Joint Exhibit Part A, page 0118

Property Address: **291 W Overlook Rd, Palm Springs, CA 92264-8934**          Date: **February 12, 2021**

**C.** **Seller remaining in possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

**D.** **Tenant-occupied property: Property shall be vacant** at least **5 (or ____ ) Days** Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**
OR ☐ **Tenant to remain in possession** (C.A.R. Form TIP).

**E.** At Close Of Escrow: Seller assigns to Buyer any assignable warranty rights for items included in the sale; and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.

**F.** At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**10. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

**A. (1)** Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and **(ii)** unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).

**(2)** Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Seller's Agent, if any, has completed and signed the Seller's Brokerage Firm section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Brokerage Firm, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Brokerage Firm.

**(3) Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.

**(4)** Within the time specified in paragraph 14A, (i) Seller, unless exempt from the obligation to provide a TDS, shall, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ); (ii) if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with an Exempt Seller Disclosure (C.A.R. Form ESD).

**(5)** Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.

**(6)** In the event Seller or Seller's Brokerage Firm, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies** of which Buyer is otherwise aware, or which are **disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**

**(7)** If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days** After Delivery in person, or **5 Days** After Delivery by deposit in the mail, or by an electronic record satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of cancellation to Seller or Seller's agent.

**B.** **NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: **(i)** Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating pamphlet; **(ii)** disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required from these zones.

**C.** **WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).

**D.** **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

**E.** **NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

**F.** **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
**(1) SELLER HAS: 7 (or ____ ) Days** After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).

Buyer's Initials ( SH ) ( ____ )          Seller's Initials ( _____ ) ( _____ )

**RPA-CA REVISED 12/18 (PAGE 4 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 4 OF 10)**
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com          EOWW_000026

Omnibus Joint Exhibit Part A, page 0119

(2) If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has **3 (or ____ ) Days** After Acceptance to request from the HOA (C.A.R. Form HOA1): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; and **(v)** the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). **(vi)** private transfer fees; **(vii)** Pet fee restrictions; and **(viii)** smoking restrictions. Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**11. CONDITION OF PROPERTY:** Unless otherwise agreed in writing: **(i)** the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.

    **A.** Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.

    **B.** Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.

    **C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

    **A.** Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to: **(i)** a general physical inspection; **(ii)** an inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); **(iii)** inspect for lead-based paint and other lead-based paint hazards; **(iv)** satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA); **(v)** review the registered sex offender database; **(vi)** confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; and **(vii)** review and seek approval of leases that may need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any governmental building or zoning inspector or government employee, unless required by Law.

    **B.** Seller shall make the Property available for all Buyer Investigations. Buyer shall **(i)** as specified in paragraph 14B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and **(ii)** give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.

    **C.** Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

    **D. Buyer indemnity and seller protection for entry upon property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

    **A.** Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.

    **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing.

    **C.** Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

    **D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

    **E.** Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

Buyer's Initials ( _SH_ )　　　　　　　　　　　　Seller's Initials ( ___ ) ( ___ )

**RPA-CA REVISED 12/18 (PAGE 5 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT　(RPA-CA PAGE 5 OF 10)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5　　www.lwolf.com　　**EO-WW-000027**

Omnibus Joint Exhibit Part A, page 0120

DocuSign Envelope ID: 5B2E4A93-9B70-4F80-9989-ABA1A3AE0074
Property Address: **291 W Overlook Rd, Palm Springs, CA 92264-8934** Date: **February 12, 2021**

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

**A. SELLER HAS: 7 (or __3__ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

**B. (1) BUYER HAS: 17 (or ___ ) Days** After Acceptance, unless otherwise agreed in writing, to:
  **(i)** complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.

  **(2)** Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

  **(3)** By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has **5 (or ___ ) Days** After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

  **(4) Continuation of Contingency:** Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).

  **(5) Access to Property:** Buyer shall have access to the Property to conduct inspections and investigations for **17 (or _____) Days** After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

**C.** [X] **REMOVAL OF CONTINGENCIES WITH OFFER: Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.**

**D. SELLER RIGHT TO CANCEL:**
  **(1) Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

  **(2) Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; **(ii)** Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); **(iii)** Deliver a letter as required by paragraph 3J(1); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; **(v)** In writing assume or accept leases or liens specified in 8B5; **(vi)** Return Statutory and Lead Disclosures as required by paragraph 10A(5); or **(vii)** Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or **(viii)** Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

**E. NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: **(i)** be in writing; **(ii)** be signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 (or ___ ) Days** After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

**F. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

**G. CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: **(i)** be signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 (or _____) Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow.

**H. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

Buyer's Initials ( SH ) ( _____ )   Seller's Initials ( _____ ) ( _____ )



**RPA-CA REVISED 12/18 (PAGE 6 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 10)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com    **291 W Overlook**
EOTW_000028

Property Address: **291 W Overlook Rd, Palm Springs, CA 92264-8934**       Date: **February 12, 2021**

**15. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within **5 (or ____ ) Days** Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 11; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**16. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property shall be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS:**
    **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

    **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within **3 Days** After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**20. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
    **A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 (or ____ ) Days,** shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.

    **B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** After Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials ( SH ) ( _____ )            Seller's Initials ( _____ ) ( _____ )

**RPA-CA REVISED 12/18 (PAGE 7 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 7 OF 10)**
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com    EOTW_000029

Omnibus Joint Exhibit Part A, page 0122

Property Address: **291 W Overlook Rd, Palm Springs, CA 92264-8934** Date: **February 12, 2021**

**C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

**D.** Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

**E.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3** Days after mutual execution of the amendment.

**21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:**

**A.** **Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.**

**B.** **LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).**

Buyer's Initials _SH_ / _____ Seller's Initials _____

**22. DISPUTE RESOLUTION:**

**A.** **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker.** Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. **Exclusions from this mediation agreement are specified in paragraph 22C.**

**B.** **ARBITRATION OF DISPUTES:**
**The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.**

**"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

**"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials _SH_ / _____ Seller's Initials _____

**C.** ADDITIONAL MEDIATION AND ARBITRATION TERMS:
**(1)** EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

Buyer's Initials ( _SH_ ) ( _____ ) Seller's Initials ( _____ ) ( _____ )

**RPA-CA REVISED 12/18 (PAGE 8 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 10)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com    **291 W Overlook**

Property Address: **291 W Overlook Rd, Palm Springs, CA 92264-8934** Date: **February 12, 2021**

(2) **PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.**

(3) **BROKERS: Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.**

23. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

24. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

25. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

26. **ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).

27. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

28. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

29. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

30. **DEFINITIONS:** As used in this Agreement:

A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.

B. **"Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.

C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.

D. **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.

E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.

F. **"Days"** means calendar days. However, after Acceptance, the last **Day** for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.

G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.

H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.

I. **"Deliver", "Delivered"** or **"Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).

J. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

31. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by **BUYERS AGENT**, who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by ☐ AM/ ☐ PM, on _____ (date)).

☐ One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date 2/14/2021 BUYER _Scott Howlett_

A34E9F9EC01B4B2...

**(Print name)** _Scott Howlett_

Date _____ BUYER _____

**(Print name)** _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

Seller's Initials _____

**RPA-CA REVISED 12/18 (PAGE 9 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 9 OF 10)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5 www.lwolf.com EO291 W 000031

Property Address: **291 W Overlook Rd, Palm Springs, CA 92264-8934**                    Date: **February 12, 2021**

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐  (If checked) SELLER'S ACCEPTANCE IS **SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:**
_____ .

☐  One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date **2/16/2021 | 8:06 PM PST**      SELLER _____

**(Print name)** _Artur  Elizarov_            790B3EBD48EB428...

Date _____ SELLER _____

**(Print name)** _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( _____ / _____ )  **(Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
    (Initials)           personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
            ☐AM/ ☐PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.**

---

**REAL ESTATE BROKERS:**
**A.** Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
**B.** Agency relationships are confirmed as stated in paragraph 2.
**C.** If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
**D. COOPERATING (BUYER'S) BROKER COMPENSATION:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
**E. PRESENTATION OF OFFER:** Pursuant to Standard of Practice 1-7, if Buyer's Broker makes a written request, Seller's Broker shall confirm in writing that this offer has been presented to Seller.

Buyer's Brokerage Firm _Compass_ _____ DRE Lic. # _01527365_ _____
By _Maria Krajco_ _____ _Maria Noel Krajco_ DRE Lic. # _02092247_ ___ Date _2/13/2021_ 
     790B2AA7482B43D...
By _____ DRE Lic. # _____ Date _____
Address _2165 San Diego Ave_ _____ City _San Diego_ _____ State _CA_ Zip _92110-2906_
Telephone _(714)580-9103_ _____ Fax _____ E-mail _mariasellscali@gmail.com_ 
Seller's Brokerage Firm _Keller Williams Luxury Homes_ _____ DRE Lic. # _01417409_ _____
By _Will Cook_ _____ _Will Cook_ DRE Lic. # _01879277_ ____ Date _2/16/2021 | 7:51 PM PST_
     5AA9F78F9A0F4C9...
By _____ DRE Lic. # _____ Date _____
Address _435 North Palm Canyon_ _____ City _Palm Springs_ _____ State _CA_ Zip _92262_
Telephone _(760)565-5714_ _____ Fax _(760)322-9266_ _____ E-mail _will@willcookrealestate.com_

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ ☐ Seller's Statement of Information and _____
_____ , and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____
Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

---

**PRESENTATION OF OFFER:** ( _WC_ ) Seller's Broker presented this offer to Seller on _2/14/2021_ (date).
           Broker or Designee Initials

---

**REJECTION OF OFFER:** ( _____ ) ( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
           Seller's Initials

---

©1991- 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.         Buyer Acknowledges that page 10 is part of this Agreement         _SH_ ( _____ )
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®                                              Buyer's Initials
525 South Virgil Avenue, Los Angeles, California 90020

**RPA-CA REVISED 12/18 (PAGE 10 of 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 10 OF 10)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com   EO**291 000092**

# EXHIBIT 10

## THE LAST PAGE OF THE CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS DATED FEBRUARY 12, 2021, SIGNED BY THE ESCROW HOLDER ACKNOWLEDGMENT SIGNED BY ANDREA CROSS ON BEHALF OF ESCROW OF THE WEST (CROSS DEPO. EX. 14)

Property Address: **291 W Overlook Rd, Palm Springs, CA 92264-8034**                     Date: **February 12, 2021**

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) SELLER'S ACCEPTANCE IS **SUBJECT TO ATTACHED COUNTER OFFER** (C.A.R. Form SCO or SMCO) **DATED:** _____ .

☐ One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date **2/16/2021 | 8:06 PM PST** SELLER _____

**(Print name)** **Artur Elizarov**            790B3EBD48EB428...

Date _____ SELLER _____

**(Print name)** _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( _____ / _____ ) **(Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials) personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
☐ AM/ ☐ PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent** whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

**REAL ESTATE BROKERS:**
**A.** Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
**B.** Agency relationships are confirmed as stated in paragraph 2.
**C.** If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
**D.** **COOPERATING (BUYER'S) BROKER COMPENSATION:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
**E.** **PRESENTATION OF OFFER:** Pursuant to Standard of Practice 1-7, if Buyer's Broker makes a written request, Seller's Broker shall confirm in writing that this offer has been presented to Seller.
Buyer's Brokerage Firm **Compass**                     DRE Lic. # **01527365**            Date **2/15/2021**
By **Maria Krajco**            **Maria Noel Krajco** DRE Lic. # **02092247**            Date _____
By _____ 70BF2AA7482B430...            DRE Lic. # _____            Date _____
Address **2165 San Diego Ave**            City **San Diego**            State **CA**   Zip **92110-2906**
Telephone **(714)580-9103**            Fax _____ E-mail **mariasellscali@gmail.com**
Seller's Brokerage Firm **Keller Williams Luxury Homes**                     DRE Lic. # **01417409**
By **Will Cook**            **Will Cook** DRE Lic. # **01879277**            Date **2/16/2021 | 7:51 PM PST**
By _____ 5AA9E78F940E4C0...            DRE Lic. # _____            Date _____
Address **435 North Palm Canyon**            City **Palm Springs**            State **CA**   Zip **92262**
Telephone **(760)565-5714**            Fax **(760)322-9266**            E-mail **will@willcookrealestate.com**

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☒ a deposit in the amount of $ __**40,650.00**__ ), counter offer numbers __**N/A**__            ☐ Seller's Statement of Information and _____, and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is __**02/16/2021**__
Escrow Holder __**ESCROW OF THE WEST**__            Escrow # __**02-035523-AC**__
By __**ANDREA CROSS**__            Date _____
Address __**9440 SANTA MONICA BLVD STE 310 BEVERLY HILLS CA 90210**__
Phone/Fax/E-mail __**(310) 402-5555**__
Escrow Holder has the following license number # __**9632166**__
☒ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

**PRESENTATION OF OFFER:** ( **WC** ) Seller's Broker presented this offer to Seller on ___**2/14/2021**___ (date).
Broker or Designee Initials

**REJECTION OF OFFER:** ( _____ )( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
Seller's Initials

©1991- 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Buyer Acknowledges that page 10 is part of this Agreement
Buyer's Initials ( **SH** ) ( _____ )

**RPA-CA REVISED 12/18 (PAGE 10 of 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 10 OF 10)**
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com            EO-291W_000001

EXHIBIT 14

# EXHIBIT 11

**PRELIMINARY REPORT BY ORANGE COAST TITLE COMPANY OF SOUTHERN CALIFORNIA DATED AS OF FEBRUARY 8, 2021 (CROSS DEPO. EX. 23)**



Order No. 210-2216078-10

**Orange Coast Title Company of Southern California - Inland Empire Division**

1845 Business Center Drive, Suite 218
San Bernardino, CA 92408
909-825-8800

| | **PRELIMINARY REPORT** | |
|---|---|---|

Escrow of the West
9440 Santa Monica Blvd., Suite 310
Beverly Hills, CA 90210

| **Attention:** | Andrea Cross | **Your no.:** | 02-035242-AC |
|---|---|---|---|
| **Property address:** | 291  Overlook Road, Palm Springs, CA  92264 | **Order no.:** | 210-2216078-10 |

**Dated:**          February 18, 2021

In response to the above referenced application for a policy of title insurance, **Orange Coast Title Company of Southern California – Inland Empire Division** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit B attached. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit B. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit B of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters, which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

Dated as of February 8, 2021 at 7:30 AM

*Cynthia Kack*

Cynthia Kack, Title Officer
Ph: 909-825-8800
Email: cynthiak@octitle.com



HOWLETT0615
Omnibus Joint Exhibit Part A, page 0129

Order No. 210-2216078-10

**The form of policy of title insurance contemplated by this report is:**

A.L.T.A Homeowner's Policy (2/03/10) and A.L.T.A. Loan Policy (06-17-06)

**The Policy of Title Insurance, if issued, will be underwritten by:**  Real Advantage Title Insurance Company, a subsidiary of Orange Coast Title Company.  See attached disclosure.
**NOTE: The premium for a policy of Title Insurance, if issued, will be based on:**

**A liability of     $1,084,000.00    Subject to any filed rate increases and/or changes in the liability.**


## Schedule "A"


**The estate or interest in the land hereinafter described or referred to covered by this report is:**

A Fee


**Title to said estate or interest at the date hereof is vested in:**

 Artur Elizarov, a single man


**The land referred to in this report is situated in the City of Palm Springs, the County of Riverside, State of California, and is described as follows:**

 Lot 8 of Block 7, Palm Canyon Mesa Tract, in the City of Palm Springs, the County of Riverside, State of California, as per map recorded in Book 12, Pages 52 through 56, both inclusive of maps, in the Office of the County Recorder of said County.

 Assessor's Parcel Numbers(s):  513-363-023

Page 2

Order No. 210-2216078-10

## Schedule "B"

**At the date hereof exceptions to coverage in addition to the printed exceptions and exclusions contained in said policy form would be as follows:**

1   General and Special taxes for the fiscal year 2021-2022, including any assessments collected with taxes.  A lien not yet payable.

First installment due and payable 11/01/2021, delinquent if not paid by 12/10/2021
Second installment due and payable 02/01/2022, delinquent if not paid by 04/10/2022

2   General and Special taxes for the fiscal year 2020-2021, including any assessments collected with current taxes.
Total amount                      **$11,639.20**
1st installment                   **$5,819.60**, Paid
Penalty                           **$581.96** (after 12/10/2020)
2nd installment                   **$5,819.60**, Open
Penalty                           **$620.02** (after 04/12/2021)
Code area                         011-003-City of Palm Springs
Parcel No.                        **513-363-023**
Exemption                         $None Shown

3   Supplemental taxes including special assessments and/or personal property taxes if any, for the fiscal year 2020 - 2021.
Total amount                      None Shown
1st installment:                  None Shown, No Tax Due
2nd installment:                  None Shown, No Tax Due
Parcel no.                        513-363-023

4   The Lien of future supplemental taxes, if any, assessed pursuant to the provisions of section 75, et seq of the revenue and taxation code of the State of California

5   Covenants, conditions and restrictions in an instrument recorded Book 625, Page 562, deeds, which provide that a violation thereof shall not defeat or render invalid the lien of any mortgage or Deed of Trust made in good faith and for value, but deleting any covenant, condition, or restriction, if any, indicating a preference, limitation, or discrimination based on race, color, religion, sex, gender, gender identify, gender expression, sexual orientation, familial status, marital status, disability, handicap, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, to the extent that such covenants, conditions or restrictions violate applicable state or federal laws.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

"NOTE: Section 12956.1 (b)(1) of California Government Code provide the following: if this document contains any restriction based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status."

An easement as set forth in the above document
For :                             Construct, install, maintain and operate, telephone, telegraph and electric light and power poles, wires, cables, lines and conduits, sewer, water and gas pipes, with right of entry thereon for the purpose of maintaining same and incidental purposes
Affects :                         The location of said easement is set forth therein

Page 3

Order No. 210-2216078-10

6   An easement for purposes herein stated, and rights incidental thereto as set forth in an instrument
    Recorded:             In Book 630, Page 484 of Deeds
    For:                    Right to erect and maintain poles or other supports, with wires and fixtures  and incidental purposes
    Affects:             The location of said easement is set forth therein

7   A Deed of Trust to secure an indebtedness of
    Amount:             **$80,000.00**
    Trustor:             **Hunter Woods, LLC, a California limited liability company**
    Trustee:            Geraci Law Firm
    Beneficiary:       Cedar Forge Financial, a California corporation
    Dated:              04/11/2016
    Recorded:          **04/18/2016** as Instrument No. **2016-151674**, Official Records.

    Although we find no recorded reconveyance of record, we believe the obligation secured by said Deed of Trust may have been satisfied. Prior to issuance of a Policy of Title Insurance this company may require documentation sufficient to allow us to remove this exception.

8   A Deed of Trust to secure an indebtedness of
    Amount:             **$150,000.00**
    Trustor:             **Hunter Woods, LLC, a California limited liability company**
    Trustee:            Geraci Law Firm
    Beneficiary:       Cedar Forge Financial, a California corporation
    Dated:              07/11/2016
    Recorded:          **07/15/2016** as Instrument No. **2016-297098**, Official Records.

    Although we find no recorded reconveyance of record, we believe the obligation secured by said Deed of Trust may have been satisfied. Prior to issuance of a Policy of Title Insurance this company may require documentation sufficient to allow us to remove this exception.

9   An instrument, upon the terms and conditions contained therein
    Entitled:           Encroachment Agreement
    Recorded:          09/13/2018, as Instrument No. 2018-368167, Official Records

10   A Deed of Trust to secure the indebtedness of
    Amount:             $**None Shown**
    Trustor:             **Artur Elizarov, as a single man**
    Trustee:            American Title, Inc.
    Beneficiary:       Unison Agreement Corp., a Delaware corporation
    Dated:              07/30/2019
    Recorded:          **08/07/2019** **as Instrument No. 2019-299191** of Official Records

11   An instrument, upon the terms and conditions contained therein
    Entitled:           Memorandum of Unison Homebuyer Agreement
    Dated:              07/30/2019
    Executed by and between:   Artur Elizarov as a single man and Ynison Agreement Corp., a Delaware Corporation
    Recorded:          08/07/2019, as Instrument No. 2019-299192 of Official Records

    The lien or charge of said instrument was subordinated to the lien or charge of the Deed of Trust shown in paragraph 10, of Schedule B
    Recorded:          08/07/2019 as Instrument No. 2019-299193, Official Records.

    The beneficial interest under said Deed of Trust was assigned
    To:                  Unison Midgard Holdings LLC, a Delaware Limited Partnership
    By Assignment Recorded:   08/07/2019, as Instrument No. 2019-299194, Official Records.

Omnibus Joint Exhibit Part A, page 0132

Order No. 210-2216078-10

12   (A)  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records;

Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

(B)  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

(C)  Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

(D)  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records

(E)  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the public records

(F)  Any lien or right to a lien for services, labor or material theretofore or hereafter not shown by the public records.

**Exceptions A-F will be omitted on extended coverage policies.**

## End of Schedule B

Omnibus Joint Exhibit Part A, page 0133

Order No. 210-2216078-10

## "NOTES AND REQUIREMENTS SECTION"

ORANGE COAST TITLE COMPANY
OF SOUTHERN CALIFORNIA

## NOTE NO. 1

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT NOTICE

**This is to give you notice that Orange Coast Title Company is a shareholder in Orange Coast Title Company of Southern California and Orange Coast Title Company owns an interest in Real Advantage Title Insurance Company.  This underwriter may be chosen by Orange Coast Title Company of Southern California and this referral may provide Orange Coast Title Company a financial or other benefit.**

**You are NOT required to use the listed provider as a condition for settlement of your loan or purchase, sale or refinance of the subject property and you have the opportunity to select any of the Orange Coast Title Company of Southern California title insurance underwriters for your transaction.  THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES.  YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES**

Notes section continued on next page…

Omnibus Joint Exhibit Part A, page 0134

Order No. 210-2216078-10

## NOTE NO. 2

California Revenue and Taxation Code Section 18662, effective January 1, 1994 and by amendment effective January 1, 2003, provides that the buyer in all sales of California Real Estate may be required to withhold 3 and 1/3% of the total sales price as California State Income Tax, subject to the various provisions of the law as therein contained.

## NOTE NO. 3 PAYOFF INFORMATION:

Note: this company does require current beneficiary demands prior to closing.
If the demand is expired and a correct demand cannot be obtained, our requirements will be as follows:

A.    If this company accepts a verbal update on the demand, we may hold an amount equal to one monthly mortgage payment. The amount of this hold will be over and above the verbal hold the lender may have stipulated.

B.    If this company cannot obtain a verbal update on the demand, will either pay off the expired demand or wait for the amended demand, at the discretion of the escrow.

C.    In the event that a payoff is being made to a servicing agent for the beneficiary, this company will require a complete copy of the servicing agreement prior to close.

## NOTE NO. 4

If this company is requested to disburse funds in connection with this transaction, chapter 598, statutes of 1989 mandates hold periods for checks deposited to escrow or sub-escrow accounts. The mandatory hold is one business day after the day deposited. Other checks require a hold period from three to seven business days after the day deposited.

### Notice Regarding Your Deposit of Funds

California Insurance Code Sections 12413 *et. Seq.* Regulates the disbursement of escrow and sub-escrow funds by title companies. The law requires that funds be deposited in the title company escrow and sub-escrow accounts and be available for withdrawal prior to disbursement. Funds deposited with the Company by wire transfer may be disbursed upon receipt. Funds deposited with the Company via cashier's checks drawn on a California based bank may be disbursed the next business day after the day of deposit. If funds are deposited with by other methods, recording or disbursement may be delayed. All escrow and sub-escrow funds received by the Company will be deposited with other funds in one or more non-interest bearing escrow accounts of the Company in a financial institution selected by the Company. The Company and/or its parent company may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with the financial institution, and the Company shall have no obligation to account to the depositing party in any manner for the value of, or to pay such party, any benefit received by the Company and/or its parent Company. Those benefits may include, without limitation, credits allowed by such financial institution on loans to the Company and/or its parent company and earnings on investments made on the proceeds of such loans, accounting, reporting and other services and products of such financial institution. Such benefits shall be deemed additional compensation of the Company for its services in connection with the escrow or sub-escrow.

Omnibus Joint Exhibit Part A, page 0135

Order No. 210-2216078-10



# Orange Coast Title Company of Southern California - Inland Empire Division

1845 Business Center Drive, Suite 218
San Bernardino, CA 92408
909-825-8800

**Attention:**
**Borrower:**          Bluestein

**Lenders supplemental report**

The above numbered report (including any supplements or amendments thereto) is hereby modified and/or supplemented in order to reflect the following additional items relating to the issuance of an American Land Title Association loan policy form as follows:

A.   This report is preparatory to this issuance of an American Land Title Association loan policy of title insurance. This report discloses nothing, which would preclude the issuance of said American land title association loan policy of title insurance with endorsement no. 100 attached thereto.

B.   The improvements on said land are designated as:

A single family residence

291  Overlook Road, in the City of Palm Springs, County of Riverside, State of California.

C.   The only conveyance(s) affecting said land recorded within 24 months of the date of this report are as follows:

Grantor:              Christina Geraci, wife of grantee
Grantee:              Anthony Geraci, a married man as his sole and separate property
Recorded:             8/7/2019 as Instrument No. 2019-299189, Official Records.

Grantor:              Cedar Forge Financial, a California Corporation
Grantee:              Artur Elizarov, a single man
Recorded:             8/7/2019 as Instrument No. 2019-299190, Official Records.

Page 8

Order No. 210-2216078-10

# Attention

Please note that this preliminary report now has an extra copy of the legal description on a separate sheet of paper. There are no markings on the page. The idea is to provide you with a legal description that can be attached to other documents as needed.  That legal description page immediately follows this page.

Thank you for your support of **Orange Coast Title Company of Southern California – Inland Empire Division**. We hope that this makes your job a little easier.

Omnibus Joint Exhibit Part A, page 0137

Order No. 210-2216078-10

## Exhibit "A"

Lot 8 of Block 7, Palm Canyon Mesa Tract, in the City of Palm Springs, the County of Riverside, State of California, as per map recorded in Book 12, Pages 52 through 56, both inclusive of maps, in the Office of the County Recorder of said County.

Order No. 210-2216078-10

# CLTA Preliminary Report Form – Exhibit B (06-03-11)

## CLTA STANDARD COVERAGE POLICY – 1990
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy. (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters: (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy; or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:
1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records. Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3. Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.

## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (02/03/10)
### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:
1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning: a. building, b. zoning, c.land use d. improvements on the Land, e.land division; and ,f. environmental protection. This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4. Risks: a. that are created, allowed, or agreed to by You, whether or not they recorded in the Public Records; b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date; c. that result in no loss to You; or d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e, 25, 26, 27, or 28.
5. Failure to pay value for Your Title.
6. Lack of a right: a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and b. in streets, alleys, or waterways that touch the Land. This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7. The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
• For Covered Risks 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1 % of Policy Amount shown in Schedule A or $ 2,500 (whichever is less) | $ 10,000 |
| Covered Risk 18: | 1 % of Policy Amount shown in Schedule A or $ 5,000 (whichever is less) | $ 25,000 |
| Covered Risk 19: | 1 % of Policy Amount shown in Schedule A or $ 5,000 (whichever is less) | $ 25,000 |
| Covered Risk 21: | 1 % of Policy Amount shown in Schedule A or $ 2,500 (whichever is less) | $ 5,000 |

## ALTA RESIDENTIAL TITLE INSURANCE POLICY (6-1-87)
### EXCLUSIONS

In addition to the Exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees, and expenses resulting from:
1. Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning: * land use * improvements on the land * land division * environmental protection. This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at Policy Date. This exclusion does not limit the zoning coverage described in Items 12 and 13 of Covered Title Risks.
2. The right to take the land by condemning it, unless: *a notice of exercising the right appears in the public records *on the Policy Date *the taking happened prior to the Policy Date and is binding on you if you bought the land without knowing of the taking
3. Title Risks: *that are created, allowed, or agreed to by you *that are known to you, but not to us, on the Policy Date – unless they appeared in the public records *that result in no loss to you *that first affect your title after the Policy Date – this does not limit the labor and material lien coverage in Item 8 of Covered Title Risks
4. Failure to pay value for your title.
5. Lack of a right: *to any land outside the area specifically described and referred to in Item 3 of Schedule A OR *in streets, alleys, or waterways that touch your land. This exclusion does not limit the access coverage in Item 5 of Covered Title Risks.

## 2006 ALTA LOAN POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
1. (a) Any law, ordinance or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement erected on the Land; (iii) the subdivision of land; or (iv) environmental protection; or the effect of any violation of these laws, ordinances or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims or other matters:(a)created, suffered, assumed or agreed to by the Insured Claimant; (b)not known to the Company, not recorded in the public records at Date of Policy, but known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy; (c) resulting in no loss or damage to the Insured Claimant; (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14);or(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state in which the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is (a) a fraudulent conveyance or fraudulent transfer, or (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:
1.(a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.Any facts, rights, interests or claims which are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3.Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5.(a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the Public Records.

## 2006 ALTA OWNER'S POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees or expenses that arise by reason of:

Page 11

Order No. 210-2216078-10

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to: (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions, or location of any improvement erected on the Land; (iii) the subdivision of land; or (IV) environmental protection; or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5. (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters: (a) created, suffered, assumed, or agreed to by the Insured Claimant; (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;(c) resulting in no loss or damage to the Insured Claimant; (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is (a) a fraudulent conveyance or fraudulent transfer; or (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by  persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.  Any lien or right to a lien for services, labor or material not shown by the public records.

## ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (07-26-10)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys fees or expenses which arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including but not limited to building and zoning) restricting, regulating, prohibiting, or relating to (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions or location of any improvement erected on the Land; (iii) the subdivision of the land; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risks 5, 6, 13(c), 13(d), 14, and 16.(b) Any governmental police power. This Exclusion 1(b)does not modify or limit the coverage provided under Covered Risks 5, 6, 13(c), 13(b), 14, and 16.

2. Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims or other matters (a) created, suffered, assumed or agreed to by the Insured Claimant; (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;(c) resulting in no loss or damage to the Insured Claimant;(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risks  11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 26); or (e)resulting in loss or damage which would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of the Insured to comply with applicable doing-business laws of the state in which the Land is situated.

5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth in lending law.  This Exclusion does not modify or limit the coverage provided in Covered Risk 26.

6. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no

longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6..

8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

9.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is (a) a fraudulent conveyance or fraudulent transfer, or (b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

Page 12

Order No. 210-2216078-10

# Orange Coast Title Company of Southern California - Inland Empire Division
## PRIVACY POLICY

### We Are Committed to Safeguarding Customer Information

In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information – particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information that you provide to us. Therefore, we have adopted this Privacy Policy to govern the use and handling of your personal information.

### Applicability

This Privacy Policy governs our use of the information which you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity.

### Types of Information

Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:

- Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means.

- Information we receive from providers of services to us, such as appraisers, appraisal management companies, real estate agents and brokers and insurance agencies (this may include the appraised value, purchase price and other details about the property that is the subject of your transaction with us).

- Information about your transactions with us, our Affiliated Companies, or others; and

- Information we receive from a consumer reporting agency.

### Your California Rights (immediately following this Privacy Policy) or you may visit our website at https://www.titleadvantage.com/privacypolicy.htm or call toll-free at (866) 241-7373.  Only applies to CA residents

### Use of Information

We request information from you for our own legitimate business purposes and not for benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis.

### Former Customers

### Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

### Confidentiality and Security

We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

### Other Important Information

We reserve the right to modify or supplement this Privacy Policy at any time.  If our Privacy Policy changes, we will provide the new Privacy Policy before the new policy becomes effective.

Last Revision 12/26/2019
Effective on 1/01/2020

Page 13

## Your California Rights

*If you are a California resident, you may have certain rights under California law, including but not limited to the California Consumer Privacy Act ("CCPA"). All phrases used herein shall have the same meaning as those phrases used under relevant California law, including but not limited to the CCPA.*

**Right to Know**
You have the right to know:

- The categories of personal information we have collected about or from you;

- The categories of sources from which we collected your personal information;

- The business or commercial purpose for collecting or sharing your personal information;

- The categories of third parties with whom we have shared your personal information; and

- The specific pieces of your personal information we have collected.

*Process to Submit a Request.* To submit a verified request for this information you may visit our website at https://www.titleadvantage.com/privacypolicy.htm or call toll-free at (866) 241-7373. You may also designate an authorized agent to submit a request on your behalf by visiting our website https://www.titleadvantage.com/privacypolicy.htm or calling toll-free at (866) 241-7373 and then also submitting written proof of such authorization via e-mail to dataprivacy@octitle.com.

*Verification Method.* In order to ensure your personal information is not disclosed to unauthorized parties, and to protect against fraud, we will verify your identity before responding to your request. To verify your identity, we will generally match the identifying information provided in your request with the information we have on file about you. Depending on the sensitivity of the personal information requested, we may also utilize more stringent verification methods to verify your identity, including but not limited to requesting additional information from you and/or requiring you to sign a declaration under penalty of perjury.

**Right of Deletion**
You have a right to request that we delete the **personal information** we have collected from or about you.

*Process to Submit a Request.* To submit a verified request to delete you information you may visit our website at https://www.titleadvantage.com/privacypolicy.htm or call toll-free at (866) 241-7373. You may also designate an authorized agent to submit a request on your behalf by clicking here or calling toll-free at (866) 241-7373 and then also submitting written proof of such authorization via e-mail to dataprivacy@octitle.com.

*Verification Method.* In order to ensure we do not inadvertently delete your **personal information** based on a fraudulent request, we will verify your identity before we respond to your request. To verify your identity, we will generally match the identifying information provided in your request with the information we have on file about you. Depending on the sensitivity of the **personal information** requested to be deleted, we may also utilize more stringent verification methods to verify your identity, including but not limited to requesting additional information from you and/or requiring you to sign a declaration under penalty of perjury.

**Right to Opt-Out**
We do not sell your **personal information** to third parties, and do not plan to do so in the future.

**Right of Non-Discrimination**
You have a right to exercise your rights under the CCPA without suffering discrimination. Accordingly, OC Title & family of Companies will not discriminate against you in any way if you choose to exercise your rights under the CCPA.

**California Minors**
If you are a California resident under the age of 18, California Business and Professions Code § 22581 permits you to request and obtain removal of content or information you have publicly posted on any of our Applications or Websites. To make such a request, please send an email with a detailed description of the specific content or information to dataprivacy@octitle.com. Please be aware that such a request does not ensure complete or comprehensive removal of the content or information you have posted and there may be circumstances in which the law does not require or allow removal even if requested.

**Collection Notice**
The following is a list of the categories of **personal information** we may have collected about California residents in the twelve months preceding the date this Privacy Notice was last updated, including the business or commercial purpose for said collection, the

Order No. 210-2216078-10

categories of sources from which we may have collected the **personal information**, and the categories of third parties with whom we may have shared the **personal information**:

## Categories of Personal Information Collected

The categories of **personal information** we have collected include, but may not be limited to:

- real name
- Signature
- Alias
- SSN
- physical characteristics or description, including protected characteristics under federal or state law
- address

- telephone number
- passport number
- driver's license number
- state identification card number
- IP address
- policy number
- file number
- employment history

- bank account number
- credit card number
- debit card number
- financial account numbers
- commercial information
- professional or employment information

## Categories of Sources

Categories of sources from which we've collected **personal information** include, but may not be limited to:

- the consumer directly
- public records
- governmental entities
- non-affiliated third parties
- affiliated third parties

## Business Purpose for Collection

The business purposes for which we've collected **personal information** include, but may not be limited to:

- completing a transaction for our Products
- verifying eligibility for employment
- facilitating employment
- performing services on behalf of affiliated and non-affiliated third parties
- protecting against malicious, deceptive, fraudulent, or illegal activity

## Categories of Third Parties Shared

The categories of third parties with whom we've shared **personal information** include, but may not be limited to:

- service providers
- government entities

- operating systems and platforms

- non-affiliated third parties
- affiliated third parties

**Sale Notice**

We have not sold the **personal information** of California residents to any third party in the twelve months preceding the date this Privacy Notice was last updated, and we have no plans to sell such information in the future. We also do not, and will not sell the **personal information** of minors under sixteen years of age without affirmative authorization.

**Disclosure Notice**

The following is a list of the categories of **personal information** of California residents we may have disclosed for a business purpose in the twelve months preceding the date this Privacy Notice was last updated.

- real name
- Signature
- Alias
- SSN
- physical characteristics or description, including protected characteristics under federal or state law

- telephone number
- passport number
- driver's license number
- state identification card number
- IP address
- policy number
- file number

- bank account number
- credit card number
- debit card number
- financial account numbers
- commercial information
- professional or employment information

Page 15

Order No. 210-2216078-10

- address
- employment history

If you have any questions and/or comments you may contact us:

**Call Us** at our toll free number (866) 241-7373

**Email Us** at dataprivacy@octitle.com

Mail:

Orange Coast Title

Attn: Privacy Officer

1551 N. Tustin Ave., Ste. 300

Santa Ana, CA 92705

Effective on 1/1/2019

Revised on 12/23/2019

Page 16

Order No. 210-2216078-10



# Orange Coast Title Company of Southern California - Inland Empire Division

1845 Business Center Drive, Suite 218
San Bernardino, CA 92408

**<u>OWNER'S AFFIDAVIT</u>**

State of California
County of _____   } S.S.

Order No.: 210-2216078-10

The undersigned, _____ , (owner's name)
being first duly sworn, depose and say as follows:

1. That the undersigned is/are the owner(s) of certain real property situated in the City of Palm Springs, County of Riverside and State of California, commonly known as 291  Overlook Road and more particularly described in Schedule "A" attached hereto (the "Property"):

2. That within the last ninety (90) days, including the date hereof, no person, firm or corporation has furnished any labor, services or materials in connection with the construction or repair of any buildings, fixtures or improvements on the Property, EXCEPT (if work has been performed or materials furnished within the last (90) days, please explain fully and state whether payment for the same has been made in full): _____ .

3. That there are no present tenants, lessees or other parties in possession or who have a right to possession of said Property, EXCEPT: (if none, state "None") _____ .

4. That the undersigned has/have no knowledge of any taxes or special assessments which are not shown as existing liens by the public records other than as follows: _____ .

5. That the taxes for Installment ____ of fiscal year _____ are paid.  Installment ____ of fiscal year _____ is not yet due.

6. That the undersigned has/have no knowledge of, nor has/have the undersigned created, any violations of any covenants, restrictions, agreements, conditions or zoning ordinances affecting the Property.

7. That Property is free of all liens, taxes, encumbrances and  claims of every kind, nature and description whatsoever, except for the following mortgages or deeds of trust;
_____ and except for real estate and personal property taxes for Installment ____ of fiscal year _____ and subsequent years.

8. That there are no mechanic's, materialmen's or laborer's liens against the above described Property, nor is any party entitled to assert any mechanic's, materialmen's or laborer's liens against the Property.

9. That there are no unrecorded leases or agreements affecting the Property, other than the Agreement of Sale between the undersigned and _____ as purchasers of the Property dated _____ .

10. That there are no open, unexercised options to purchase or rights of first refusal to purchase the Property.

11. That no judgment or decree has been entered in any court of this State or the United States against the undersigned and which remain unsatisfied, EXCEPT _____ .

12. The undersigned further state(s) that he/she/they are each familiar with the nature of an oath; and with the penalties under the laws of the state for making false statements in any instruments of this nature.  The undersigned further certify(ies) that they have read, this affidavit, or have had it read to them, and understand its context.

13. That I/WE have made this Affidavit for the purpose of inducing Orange Coast Title Company of Southern California - Inland Empire Division to issue one or more policy(ies) of title insurance insuring interests in the Property, and that said title company

Omnibus Joint Exhibit Part A, page 0145

Order No. 210-2216078-10

is relying on the statements set forth in this Affidavit in issuing said policies, free and harmless from and against any and all actions, causes, of action, loss, cost, expense, or damages that may be brought against or suffered or incurred by Orange Coast Title Company of Southern California - Inland Empire Division or its underwriters, in relying on the truth and accuracy of the statements contained herein.

By: _____

Name: _____


By: _____

Name: _____


> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.


State of California
County of _____   } S.S.

On _____, before me, _____,

personally appeared _____

_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed this instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS MY HAND and OFFICIAL SEAL

Signature: _____

(Notary Seal)

Page 18

Order No. 210-2216078-10

**Exhibit "A"**

Lot 8 of Block 7, Palm Canyon Mesa Tract, in the City of Palm Springs, the County of Riverside, State of California, as per map recorded in Book 12, Pages 52 through 56, both inclusive of maps, in the Office of the County Recorder of said County.

Page 19

Order No. 210-2216078-10



# Orange Coast Title Company of Southern California - Inland Empire Division

1845 Business Center Drive, Suite 218
San Bernardino, CA 92408
909-825-8800

## <u>DECLARATION OF OCCUPANCY</u>
**(Loan Transaction)**

The undersigned, _____,
(owner's name) depose(s) and say(s) as follows:

1. The undersigned is/are the owner(s) of certain real property situated in the City of Palm Springs, County of Riverside and State of California, commonly known as 291  Overlook Road, herein referred to as "Property":

2. The undersigned is/are obtaining a loan from _____
   to be secured by a Deed of Trust against the Property, which is the subject of this transaction.

3. The undersigned currently occupy the Property as the undersigned's principal address, and intend to continue to occupy the same as the undersigned's principal residence following the close of this transaction.

4. The undersigned understand(s) that Orange Coast Title Company of Southern California - Inland Empire Division is relying on this information in calculating the recording fees for all real estate instruments, papers, and notices recorded in connection with this transaction in accordance with *California Government Code §27388.1(a)(2)*.

5. The undersigned agree(s) to indemnify and hold Orange Coast Title Company of Southern California - Inland Empire Division harmless from and against, and to pay any additional recording fees and/or penalties arising out of, or in connection with, the inaccuracy of the information set forth herein.

The undersigned declare(s) under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed on _____, at _____,
_____.

By: _____     By: _____
Name: _____     Name: _____

Page 20

# EXHIBIT 12

# EMAIL FROM ESCROW OF THE WEST TO SCOTT HOWLETT TRANSMITTING, AMONG OTHER THINGS, PRELIMINARY REPORT (EOW 0229)

## Andrea Cross

| | |
|---|---|
| **From:** | Leslie Zuniga |
| **Sent:** | Monday, March 1, 2021 2:53 PM |
| **To:** | Scott.Howlett@yahoo.com |
| **Cc:** | mariasellscali@gmail.com |
| **Subject:** | 02-035523-AC // 291 W. OVERLOOK RD. // BUYER OPENING PACKAGE |
| **Attachments:** | BUYER OPENING PACKAGE.PDF; NHD FULL REPORT.pdf; EMD RECEIPT.pdf; PRELIMINARY TITLE REPORT.pdf |

Good Afternoon,

Escrow of the West is pleased to have been chosen as the escrow agent on the property referenced in the above subject line. Your escrow officer will be Andrea Cross, who can be reached at andrea@escrowofthewest.com, and your escrow number is 02-035523-AC. Karla Quintanilla, Marion Jimenez, Danielle Ofengart and Jackie Padilla are her assistants. Please feel free to reach out to our team if you have any questions regarding your escrow or the documents enclosed.

At your earliest convenience, please complete and return the following attachments (we will be sending applicable items via Docusign for convenience):
- Buyer's Opening Package
- Natural Hazard Disclosure Report

Also attached for your reference:
- EMD
- Preliminary Title Report

Thank you and we look forward to assisting you through a smooth escrow closing.



**Leslie Zuniga**
Escrow Assistant

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
**P.** (310) 402-5555 ext. 2007 | **E-Fax.** (310) 424-4042
www.escrowofthewest.com

  

Click here for Disclosure.

Omnibus Joint Exhibit Part A, page 0150

# EXHIBIT 13

# AMENDED PRELIMINARY REPORT BY ORANGE COAST TITLE COMPANY OF SOUTHERN CALIFORNIA DATED AS OF FEBRUARY 18, 2021 (CROSS DEPO. EX. 5



Order No. 210-2216078-10

**Orange Coast Title Company of Southern California - Inland Empire Division**

1845 Business Center Drive, Suite 218
San Bernardino, CA 92408
909-825-8800

| | **AMENDED PRELIMINARY REPORT** | |
|---|---|---|

Escrow of the West
9440 Santa Monica Blvd., Suite 310
Beverly Hills, CA 90210

| **Attention:** | Andrea Cross | **Your no.:** | 02-035523-AC |
|---|---|---|---|
| **Property address:** | 291 Overlook Road, Palm Springs, CA  92264 | **Order no.:** | 210-2216078-10 |

**Dated:**          March 3, 2021

In response to the above referenced application for a policy of title insurance, **Orange Coast Title Company of Southern California - Inland Empire Division** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit B attached. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit B. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit B of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters, which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

Dated as of February 18, 2021 at 7:30 AM

_Cynthia Kack_

Cynthia Kack, Title Officer
Ph: 909-825-8800
Email: cynthiak@octitle.com

EXHIBIT
5

Order No. 210-2216078-10

**The form of policy of title insurance contemplated by this report is:**

A.L.T.A Homeowner's Policy (2/03/10) and A.L.T.A. Loan Policy (06-17-06)

**The Policy of Title Insurance, if issued, will be underwritten by:**  Real Advantage Title Insurance Company, a subsidiary of Orange Coast Title Company.  See attached disclosure.
**NOTE: The premium for a policy of Title Insurance, if issued, will be based on:**

**A liability of     $1,004,000.00    Subject to any filed rate increases and/or changes in the liability.**

## Schedule "A"

**The estate or interest in the land hereinafter described or referred to covered by this report is:**

A Fee

**Title to said estate or interest at the date hereof is vested in:**

Artur Elizarov, a single man

**The land referred to in this report is situated in the City of Palm Springs, the County of Riverside, State of California, and is described as follows:**

Lot 8 of Block 7, Palm Canyon Mesa Tract, in the City of Palm Springs, the County of Riverside, State of California, as per map recorded in Book 12, Pages 52 through 56, both inclusive of maps, in the Office of the County Recorder of said County.

Assessor's Parcel Numbers(s):  513-363-023

Page 2

Order No. 210-2216078-10

## Schedule "B"

**At the date hereof exceptions to coverage in addition to the printed exceptions and exclusions contained in said policy form would be as follows:**

1    General and Special taxes for the fiscal year 2021-2022, including any assessments collected with taxes.  A lien not yet payable.

     First installment due and payable 11/01/2021, delinquent if not paid by 12/10/2021
     Second installment due and payable 02/01/2022, delinquent if not paid by 04/10/2022

2    General and Special taxes for the fiscal year 2020-2021, including any assessments collected with current taxes.

| | |
|---|---|
| Total amount | **$11,639.20** |
| 1st installment | **$5,819.60**, Paid |
| Penalty | **$581.96** (after 12/10/2020) |
| 2nd installment | **$5,819.60**, Open |
| Penalty | **$620.02** (after 04/12/2021) |
| Code area | 011-003-City of Palm Springs |
| Parcel No. | **513-363-023** |
| Exemption | $None Shown |

3    Supplemental taxes including special assessments and/or personal property taxes if any, for the fiscal year  2020 - 2021.

| | |
|---|---|
| Total amount | None Shown |
| 1st installment: | None Shown, No Tax Due |
| 2nd installment: | None Shown, No Tax Due |
| Parcel no. | 513-363-023 |

4    The Lien of future supplemental taxes, if any, assessed pursuant to the provisions of section 75, et seq of the revenue and taxation code of the State of California

5    Covenants, conditions and restrictions in an instrument recorded Book 625, Page 562, deeds, which provide that a violation thereof shall not defeat or render invalid the lien of any mortgage or Deed of Trust made in good faith and for value, but deleting any covenant, condition, or restriction, if any, indicating a preference, limitation, or discrimination based on race, color, religion, sex, gender, gender identify, gender expression, sexual orientation, familial status, marital status, disability, handicap, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, to the extent that such covenants, conditions or restrictions violate applicable state or federal laws.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

     "NOTE: Section 12956.1 (b)(1) of California Government Code provide the following: if this document contains any restriction based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status."

     An easement as set forth in the above document

| | |
|---|---|
| For : | Construct, install, maintain and operate, telephone, telegraph and electric light and power poles, wires, cables, lines and conduits, sewer, water and gas pipes, with right of entry thereon for the purpose of maintaining same and incidental purposes |
| Affects : | The location of said easement is set forth therein |

Page 3

Order No. 210-2216078-10

6   An easement for purposes herein stated, and rights incidental thereto as set forth in an instrument
Recorded:                        In Book 630, Page 484 of Deeds
For:                             Right to erect and maintain poles or other supports, with wires and fixtures  and incidental
                                 purposes
Affects:                         The location of said easement is set forth therein

7   An instrument, upon the terms and conditions contained therein
Entitled:                        Encroachment Agreement
Recorded:                        09/13/2018, as Instrument No. 2018-368167, Official Records

8   A Deed of Trust to secure the indebtedness of
Amount:                          $**None Shown**
Trustor:                         **Artur Elizarov, as a single man**
Trustee:                         American Title, Inc.
Beneficiary:                     Unison Agreement Corp., a Delaware corporation
Dated:                           07/30/2019
Recorded:                        **08/07/2019 as Instrument No. 2019-299191** of Official Records

9   An instrument, upon the terms and conditions contained therein
Entitled:                        Memorandum of Unison Homebuyer Agreement
Dated:                           07/30/2019
Executed by and between:         Artur Elizarov as a single man and Ynison Agreement Corp., a Delaware Corporation
Recorded:                        08/07/2019, as Instrument No. 2019-299192 of Official Records

The lien or charge of said instrument was subordinated to the lien or charge of the Deed of Trust shown in paragraph 10, of
Schedule B
Recorded:                        08/07/2019 as Instrument No. 2019-299193, Official Records.

The beneficial interest under said Deed of Trust was assigned
To:                              Unison Midgard Holdings LLC, a Delaware Limited Partnership
By Assignment Recorded:          08/07/2019, as Instrument No. 2019-299194, Official Records.

10   (A)  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or
assessments on real property or by the public records;

Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not
shown by the records of such agency or by the Public Records.

(B)  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an
inspection of the land or which may be asserted by persons in possession thereof.

(C)  Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

(D)  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey
would disclose, and which are not shown by the public records

(E)  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c)
water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the public
records

(F)  Any lien or right to a lien for services, labor or material theretofore or hereafter not shown by the public records.

**Exceptions A-F will be omitted on extended coverage policies.**

## End of Schedule B

EOTW_000058

Omnibus Joint Exhibit Part A, page 0155

# EXHIBIT 14

**EMAIL CHAIN BETWEEN ANDREA CROSS
AND PETER HILL DATED MARCH 22, 2021,
THROUGH MARCH 26, 2021
(CROSS DEPO. EX. 6)**

## Andrea Cross

**From:** Peter Hill <PHill@goldwaterbank.com>
**Sent:** Friday, March 26, 2021 11:06 AM
**To:** Andrea Cross
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

**Follow Up Flag:** Follow up
**Flag Status:** Completed

Andrea,

Just to keep you in the loop . . .

I spoke with Mr. Elizarov last night about our accepting a short payoff of $ 675,000 on our loan, which he agreed to subject to final approval here at Goldwater/Weststar.

As of this morning, I have that approval.

I am trying to reach Mr. Elizarov to let him know. I just left a voice mail for him and have emailed him with our approval.

Pete

**From:** Andrea Cross <andrea@escrowofthewest.com>
**Sent:** Thursday, March 25, 2021 2:56 PM
**To:** Peter Hill <PHill@goldwaterbank.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

I have let her know

**WARNING! WIRE FRAUD ADVISORY**
Before sending funds, always call your Escrow team to verify wire information



**ESCROW OF THE WEST**

**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
P. (310) 402-5555 ext. 2071 | E-Fax (310) 402-5556

**EXHIBIT 6**

1

EOTW_000164

Omnibus Joint Exhibit Part A, page 0157

**Direct.** (310) 402-5470
www.escrowofthewest.com



click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.

Rate Your Experience

**From:** Peter Hill [mailto:PHill@goldwaterbank.com]
**Sent:** Thursday, March 25, 2021 2:42 PM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

Is she familiar with the matter?

**From:** Andrea Cross <andrea@escrowofthewest.com>
**Sent:** Thursday, March 25, 2021 2:40 PM
**To:** Peter Hill <PHill@goldwaterbank.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Our office manager is Gail Hershowitz. She is not in the office today, you can reach her by email: gail@escrowofthewest.com

**WARNING! WIRE FRAUD ADVISORY**
Before sending funds, always call your Escrow team to verify wire information



**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
**P.** (310) 402-5555 ext. 2071 | **E-Fax.** (310) 402-5556
**Direct.** (310) 402-5470
www.escrowofthewest.com

click here for disclosure

2

We are always looking for ways to improve our service. Please take a moment to
complete this short survey about your recent experience.



**From:** Peter Hill [mailto:PHill@goldwaterbank.com]
**Sent:** Thursday, March 25, 2021 2:28 PM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

Andrea,

Before I get our legal counsel involved this afternoon I would like you to put me in contact with your Branch Manager
please.

Pete

*Peter Hill*
*EVP - Chief Credit Officer*
Goldwater Bank, N.A.
2525 E Camelback Road Suite 1100
Phoenix, Arizona 85016
(O) 480.281.8207
(C) 602-291-5444
(F) 480.281.8222
www.goldwaterbank.com

**From:** Andrea Cross <andrea@escrowofthewest.com>
**Sent:** Thursday, March 25, 2021 2:24 PM
**To:** Peter Hill <PHill@goldwaterbank.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the
sender and know the content is safe.

I'm sorry but I am not authorized to discuss as you are not a party to the transaction. Mr. Elizarov has instructed we are
not approved to correspond further.

**WARNING! WIRE FRAUD ADVISORY**
Before sending funds, always call your Escrow team to verify wire information



3



**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
P. (310) 402-5555 ext. 2071 | E-Fax. (310) 402-5556
**Direct.** (310) 402-5470
www.escrowofthewest.com


click here for disclosure

We are always looking for ways to improve our service. Please take a moment to
complete this short survey about your recent experience.



**From:** Peter Hill [mailto:PHill@goldwaterbank.com]
**Sent:** Thursday, March 25, 2021 2:18 PM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

Please give me a call to discuss. 480-281-8207

**From:** Andrea Cross <andrea@escrowofthewest.com>
**Sent:** Thursday, March 25, 2021 1:49 PM
**To:** Peter Hill <PHill@goldwaterbank.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Pete, you can disregard the demand request now. Seller has instructed we are NOT to make payoff to Goldwater. Since there is not a secured lien to the chain of title, we would only have been able to pay with seller's instruction to do so.

**WARNING! WIRE FRAUD ADVISORY**
Before sending funds, always call your Escrow team to verify wire information





4

**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
P. (310) 402-5555 ext. 2071 | E-Fax. (310) 402-5556
**Direct.** (310) 402-5470
www.escrowofthewest.com


click here for disclosure

We are always looking for ways to improve our service. Please take a moment to
complete this short survey about your recent experience.

Rate Your Experience

---

**From:** Peter Hill [mailto:PHill@goldwaterbank.com]
**Sent:** Thursday, March 25, 2021 1:30 PM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

Andrea,

Here is the correct payoff statement. Note that there is a shortage of proceeds to cover our payoff, along with the
Unison payoff and the mechanics lien. I am working on how to resolve that right now. It is going to take a day or so.

Pete

**From:** Andrea Cross <andrea@escrowofthewest.com>
**Sent:** Thursday, March 25, 2021 11:12 AM
**To:** Peter Hill <PHill@goldwaterbank.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the
> sender and know the content is safe.

This is for different borrower, can you check?

**WARNING! WIRE FRAUD ADVISORY**
Before sending funds, always call your Escrow team to verify wire information





5

**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
P. (310) 402-5555 ext. 2071 | E-Fax. (310) 402-5556
**Direct**. (310) 402-5470
www.escrowofthewest.com


click here for disclosure

We are always looking for ways to improve our service. Please take a moment to
complete this short survey about your recent experience.



---

**From:** Peter Hill [mailto:PHill@goldwaterbank.com]
**Sent:** Thursday, March 25, 2021 11:06 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

Andrea;

Here is our payoff letter.

Not to pressure you but when might your estimated settlement be available?

Pete

**From:** Andrea Cross <andrea@escrowofthewest.com>
**Sent:** Thursday, March 25, 2021 10:49 AM
**To:** Peter Hill <PHill@goldwaterbank.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

I have not yet

**WARNING! WIRE FRAUD ADVISORY**
Before sending funds, always call your Escrow team to verify wire information




ESCROW OF THE WEST

6

**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
**P.** (310) 402-5555 ext. 2071 | **E-Fax** (310) 402-5556
**Direct.** (310) 402-5470
www.escrowofthewest.com


click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.

Rate Your Experience

---

**From:** Peter Hill [mailto:PHill@goldwaterbank.com]
**Sent:** Thursday, March 25, 2021 10:47 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

Thanks Andrea.

Did you receive our payoff yesterday?

**From:** Andrea Cross <andrea@escrowofthewest.com>
**Sent:** Thursday, March 25, 2021 10:46 AM
**To:** Peter Hill <PHill@goldwaterbank.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Pete,
Please find attached Unison letter, seller approved to send. Confirming purchase price is $1,355,000
We are still working on closing statement.

Our close date will be 3/30

Thank you,

**WARNING! WIRE FRAUD ADVISORY**
Before sending funds, always call your Escrow team to verify wire information



EOTW_000170

Omnibus Joint Exhibit Part A, page 0163



**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
P. (310) 402-5555 ext. 2071 | E-Fax. (310) 402-5556
**Direct.** (310) 402-5470
www.escrowofthewest.com

click here for disclosure

We are always looking for ways to improve our service. Please take a moment to
complete this short survey about your recent experience.



**From:** Peter Hill [mailto:PHill@goldwaterbank.com]
**Sent:** Wednesday, March 24, 2021 12:37 PM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

Would you check with him please? Thank you

**From:** Andrea Cross <andrea@escrowofthewest.com>
**Sent:** Wednesday, March 24, 2021 12:36 PM
**To:** Peter Hill <PHill@goldwaterbank.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

I will need seller's permission for this

**WARNING! WIRE FRAUD ADVISORY**
Before sending funds, always call your Escrow team to verify wire information



**Andrea Cross**

8

Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
P. (310) 402-5555 ext. 2071 | E-Fax. (310) 402-5556
**Direct.** (310) 402-5470
www.escrowofthewest.com


click here for disclosure

We are always looking for ways to improve our service. Please take a moment to
complete this short survey about your recent experience.



---

**From:** Peter Hill [mailto:PHill@goldwaterbank.com]
**Sent:** Wednesday, March 24, 2021 12:35 PM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

Interesting, could you share with me your estimated settlement statement please?

**From:** Andrea Cross <andrea@escrowofthewest.com>
**Sent:** Wednesday, March 24, 2021 12:33 PM
**To:** Peter Hill <PHill@goldwaterbank.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Pete, no – we are proceeding and estimating to close within next few days. I have not heard otherwise.

**WARNING! WIRE FRAUD ADVISORY**
Before sending funds, always call your Escrow team to verify wire information



**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
P. (310) 402-5555 ext. 2071 | E-Fax. (310) 402-5556
**Direct.** (310) 402-5470
www.escrowofthewest.com

9



click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.



**From:** Peter Hill [mailto:PHill@goldwaterbank.com]
**Sent:** Wednesday, March 24, 2021 12:28 PM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

Andrea;

Mr. Elizarov tells me this sale has fallen thru. Is that correct?

Pete

**From:** Andrea Cross <andrea@escrowofthewest.com>
**Sent:** Wednesday, March 24, 2021 10:07 AM
**To:** Melissa Melendez <Melissa.Melendez@westloan.com>; Peter Hill <PHill@goldwaterbank.com>
**Cc:** Matt Teskey <MTeskey@goldwaterbank.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Great, thank you!

**WARNING! WIRE FRAUD ADVISORY**
Before sending funds, always call your Escrow team to verify wire information



**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
P. (310) 402-5555 ext. 2071 | E-Fax. (310) 402-5556
Direct. (310) 402-5470
www.escrowofthewest.com

10



click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.



**From:** Melissa Melendez [mailto:Melissa.Melendez@westloan.com]
**Sent:** Wednesday, March 24, 2021 10:01 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>; Peter Hill <PHill@goldwaterbank.com>
**Cc:** Matt Teskey <MTeskey@goldwaterbank.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

Yes ma'am, you can expect to receive it by the end of the business day at the latest.

*Melissa Melendez*

Payoff Manager | Weststar Mortgage Corporation

2155 Louisiana Blvd NE, Ste 8000 | Albuquerque, NM 87110
PH: 505-875-6738 | Toll Free: 800-640-0635 ext. 4351

**From:** Andrea Cross <andrea@escrowofthewest.com>
**Sent:** Wednesday, March 24, 2021 10:56 AM
**To:** Peter Hill <PHill@goldwaterbank.com>; Melissa Melendez <Melissa.Melendez@westloan.com>
**Cc:** Matt Teskey <MTeskey@goldwaterbank.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good Morning,
Following up for the payoff demand – can we expect to receive today?

Thank you,

**WARNING! WIRE FRAUD ADVISORY**
Before sending funds, always call your Escrow team to verify wire information





ESCROW OF THE WEST

11

EOTW_000174

Omnibus Joint Exhibit Part A, page 0167

**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
P. (310) 402-5555 ext. 2071 | E-Fax. (310) 402-5556
**Direct**. (310) 402-5470
www.escrowofthewest.com


click here for disclosure

We are always looking for ways to improve our service. Please take a moment to
complete this short survey about your recent experience.

Rate Your Experience

**From:** Peter Hill [mailto:PHill@goldwaterbank.com]
**Sent:** Monday, March 22, 2021 12:51 PM
**To:** Melissa Melendez <Melissa.Melendez@westloan.com>; Andrea Cross <andrea@escrowofthewest.com>
**Cc:** Matt Teskey <MTeskey@goldwaterbank.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

Thanks Melissa!

**From:** Melissa Melendez <Melissa.Melendez@westloan.com>
**Sent:** Monday, March 22, 2021 12:51 PM
**To:** Peter Hill <PHill@goldwaterbank.com>; Andrea Cross <andrea@escrowofthewest.com>
**Cc:** Matt Teskey <MTeskey@goldwaterbank.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

Looks like Ms. Andrea provided the borrower's authorization, so no need there. I will go ahead and submit the payoff request, please allow 1-2 business days to receive your quote.

Thank you,

*Melissa Melendez*
Payoff Manager **|** WestStar Mortgage Corporation

2155 Louisiana Blvd NE, Ste 8000 | Albuquerque, NM 87110
PH: 505-875-6738 | Toll Free: 800-640-0635 ext. 4351

**From:** Peter Hill <PHill@goldwaterbank.com>
**Sent:** Monday, March 22, 2021 1:48 PM
**To:** Melissa Melendez <Melissa.Melendez@westloan.com>; Andrea Cross <andrea@escrowofthewest.com>
**Cc:** Matt Teskey <MTeskey@goldwaterbank.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

Melissa,

12

This is an unusual situation that I am directly involved with because of Unison being filed in behind us. We need to move this forward, the close is scheduled for Friday. I am in direct contact with Unison and the borrower.

I am copying Matt on this email. Matt, may Melissa move forward with the payoff?

Pete

**From:** Melissa Melendez <Melissa.Melendez@westloan.com>
**Sent:** Monday, March 22, 2021 12:44 PM
**To:** Andrea Cross <andrea@escrowofthewest.com>; Peter Hill <PHill@goldwaterbank.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

Hello all,

I received the request. We will need a borrower's authorization to complete the payoff.

Also, future payoff requests can be sent to our payoff email: payoff@westloan.com as I am not the main person who handles the quotes.

Thank you,

*Melissa Melendez*
Payoff Manager | WestStar Mortgage Corporation

2155 Louisiana Blvd NE, Ste 8000 | Albuquerque, NM 87110
PH: 505-875-6738 | Toll Free: 800-640-0635 ext. 4351

**From:** Andrea Cross <andrea@escrowofthewest.com>
**Sent:** Monday, March 22, 2021 1:36 PM
**To:** Peter Hill <PHill@goldwaterbank.com>
**Cc:** Melissa Melendez <Melissa.Melendez@westloan.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Thank you!

**WARNING! WIRE FRAUD ADVISORY**
Before sending funds, always call your Escrow team to verify wire information



ESCROW OF THE WEST

13

**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
P. (310) 402-5555 ext. 2071 | E-Fax. (310) 402-5556
**Direct**. (310) 402-5470
www.escrowofthewest.com

click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.



**From:** Peter Hill [mailto:PHill@goldwaterbank.com]
**Sent:** Monday, March 22, 2021 12:34 PM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Cc:** Melissa Melendez <Melissa.Melendez@westloan.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

Great.

I have forwarded your request to Melissa Melendez ho handles this for our mortgage company. She is copied on this email.

**From:** Andrea Cross <andrea@escrowofthewest.com>
**Sent:** Monday, March 22, 2021 12:31 PM
**To:** Peter Hill <PHill@goldwaterbank.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Yes I have

**WARNING! WIRE FRAUD ADVISORY**
Before sending funds, always call your Escrow team to verify wire information





14

EOTW_000177

Omnibus Joint Exhibit Part A, page 0170

**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd, Suite 310, Beverly Hills, CA. 90210
**P**. (310) 402-5555 ext. 2071 | **E-Fax**. (310) 402-5556
**Direct**. (310) 402-5470
www.escrowofthewest.com


click here for disclosure

We are always looking for ways to improve our service. Please take a moment to
complete this short survey about your recent experience.

Rate Your Experience

**From:** Peter Hill [mailto:PHill@goldwaterbank.com]
**Sent:** Monday, March 22, 2021 12:03 PM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

Your are in touch with them and requested it . . . ?

**From:** Andrea Cross <andrea@escrowofthewest.com>
**Sent:** Monday, March 22, 2021 11:56 AM
**To:** Peter Hill <PHill@goldwaterbank.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the
sender and know the content is safe.

No, we have not yet received a demand from them.

**WARNING! WIRE FRAUD ADVISORY**
Before sending funds, always call your Escrow team to verify wire information



**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
**P**. (310) 402-5555 ext. 2071 | **E-Fax**. (310) 402-5556

15

**Direct.** (310) 402-5470
www.escrowofthewest.com



click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.

[ Rate Your Experience ]

**From:** Peter Hill [mailto:PHill@goldwaterbank.com]
**Sent:** Monday, March 22, 2021 11:52 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** RE: Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road

Andrea,

Were you able to get the payoff from Unison? We don't handle that portion of this.

Pete

**From:** Andrea Cross <andrea@escrowofthewest.com>
**Sent:** Monday, March 22, 2021 11:47 AM
**To:** Peter Hill <PHill@goldwaterbank.com>
**Subject:** Request for Payoff Demand: Unison Agreement Corp./291 W. Overlook Road
**Importance:** High

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good Afternoon Pete, we have been in contact with Mr. Artur Elizarov and now received permission to communicate with Goldwater Bank. Please find attached our request for payoff demand for property referenced above. Also enclosed is a copy of the purchase agreement.
Please let me know if you will need a Substitution of Trustee & Reconveyance form and/or Quitclaim deed for the release of the Deed of Trust and Memorandum.
Our anticipated close date is Friday, 3/26

Thank you,

**WARNING! WIRE FRAUD ADVISORY**
Before sending funds, always call your Escrow team to verify wire information



16



**Andrea Cross**
Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
P. (310) 402-5555 ext. 2071 | E-Fax. (310) 402-5556
**Direct.** (310) 402-5470
www.escrowofthewest.com

click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.



**Confidentiality Notice:** The contents of this email communication are confidential and may contain information that is privileged and/or exempt from disclosure under applicable law. It is intended solely for use of the individual or entity to which this email is addressed. If you are not one of the named recipient(s) or otherwise have reason to believe that you have received this message in error, please notify the sender and immediately delete this message and any attachments. Any unauthorized use, retention, dissemination, forwarding, printing, or copying of this email is strictly prohibited.

**Be aware!** Online Banking Fraud is on the rise. This institution does not issue wiring instructions for mortgage originations. If you receive an email containing WIRE TRANSFER INSTRUCTIONS call your Title Company or Settlement Agent's escrows officer immediately to verify the information prior to sending funds.

17

# EXHIBIT 15

## EMAIL CHAIN BETWEEN ANDREA CROSS AND ARTUR ELIZAROV DATED MARCH 25, 2021 (CROSS DEPO. EX. 11)

**Andrea Cross**

| | |
|---|---|
| **From:** | Andrea Cross |
| **Sent:** | Thursday, March 25, 2021 11:51 AM |
| **To:** | Artur Elizarov |
| **Subject:** | RE: Unisom |

Understood, we'll note our file.

**WARNING! WIRE FRAUD ADVISORY**
Before sending funds, always call your Escrow team to verify wire information





**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
**P.** (310) 402-5555 ext. 2071 | **E-Fax.** (310) 402-5556
**Direct.** (310) 402-5470
www.escrowofthewest.com


click here for disclosure

We are always looking for ways to improve our service. Please take a moment to
complete this short survey about your recent experience.



**From:** Artur Elizarov [mailto:artur.elizarov@gmail.com]
**Sent:** Thursday, March 25, 2021 11:43 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** Re: Unisom

Let's close then. Well now it makes sense. These guys are a mess. No more communication with Peter. That clears up my agreement with other unisom cause I also didn't understand why the bank is involved Jesus!

Art

On Thu, Mar 25, 2021 at 2:41 PM Andrea Cross <andrea@escrowofthewest.com> wrote:


EXHIBIT
11

EOTW_000550

Omnibus Joint Exhibit Part A, page 0175

Attached is the Prelim –

As of 3/3/21, Unisom is the only secured lien

**WARNING!** WIRE FRAUD ADVISORY

Before sending funds, always call your Escrow team to verify wire information





**Andrea Cross**

Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210

**P**. (310) 402-5555 ext. 2071 | **E-Fax**. (310) 402-5556

**Direct**. (310) 402-5470

www.escrowofthewest.com

click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.



2

EOTW_000551

Omnibus Joint Exhibit Part A, page 0176

**From:** Artur Elizarov [mailto:artur.elizarov@gmail.com]
**Sent:** Thursday, March 25, 2021 11:37 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** Re: Unisom

Is coldwater bank on title report? IF not this makes it easier t oclose. This unisom thing is a mess so I dont understand if that is the total payoff.

On Thu, Mar 25, 2021 at 11:24 AM Andrea Cross <andrea@escrowofthewest.com> wrote:

Sent!

**WARNING!** WIRE FRAUD ADVISORY

Before sending funds, always call your Escrow team to verify wire information



**Andrea Cross**

Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210

EOTW_000552

Omnibus Joint Exhibit Part A, page 0177

P. (310) 402-5555 ext. 2071 | E-Fax. (310) 402-5556

Direct. (310) 402-5470

www.escrowofthewest.com

 

click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.



**From:** Artur Elizarov [mailto:artur.elizarov@gmail.com]
**Sent:** Thursday, March 25, 2021 11:20 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** Re: Unisom

Can u send to Peter ASAP please

On Thu, Mar 25, 2021 at 2:19 PM Andrea Cross <andrea@escrowofthewest.com> wrote:

Revised –

Can you send me copy of the mechanic lien? Its not showing on Prelim

**WARNING! WIRE FRAUD ADVISORY**

Before sending funds, always call your Escrow team to verify wire information

4





**Andrea Cross**

Senior Escrow Officer

---

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA, 90210

P. (310) 402-5555 ext. 2071 | **E-Fax** (310) 402-5556

**Direct** (310) 402-5470

www.escrowofthewest.com



click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.

**Rate Your Experience**

**From:** Artur Elizarov [mailto:artur.elizarov@gmail.com]
**Sent:** Thursday, March 25, 2021 11:16 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** Re: Unisom

EOTW_000554

Omnibus Joint Exhibit Part A, page 0179

Jourymen Construction, LLC


On Thu, Mar 25, 2021 at 11:14 AM Artur Elizarov <artur.elizarov@gmail.com> wrote:

no the 107 is not coldwater its a lean for consturciotn.



On Thu, Mar 25, 2021 at 11:13 AM Artur Elizarov <artur.elizarov@gmail.com> wrote:

Yes please



On Thu, Mar 25, 2021 at 2:12 PM Andrea Cross <andrea@escrowofthewest.com> wrote:

Please see attached and let me know if approved to send?



**WARNING! WIRE FRAUD ADVISORY**

Before sending funds, always call your Escrow team to verify wire information





**Andrea Cross**

Senior Escrow Officer

_____

9440 Santa Monica Blvd, Suite 310, Beverly Hills, CA, 90210

6

EOTW_000555

Omnibus Joint Exhibit Part A, page 0180

P. (310) 402-5555 ext. 2071 | E-Fax. (310) 402-5556

Direct. (310) 402-5470

www.escrowofthewest.com



click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.



**From:** Artur Elizarov [mailto:artur.elizarov@gmail.com]
**Sent:** Thursday, March 25, 2021 11:06 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** Re: Unisom

anyway to include the incoming lean amount and just send it to them so they can figure out what they are going to waive? The amount is 107,270.

On Thu, Mar 25, 2021 at 10:42 AM Andrea Cross <andrea@escrowofthewest.com> wrote:

Will do!

**WARNING! WIRE FRAUD ADVISORY**

Before sending funds, always call your Escrow team to verify wire information

7

EOTW_000556

Omnibus Joint Exhibit Part A, page 0181





**Andrea Cross**

Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210

P. (310) 402-5555 ext. 2071 | E-Fax. (310) 402-5556

Direct. (310) 402-5470

www.escrowofthewest.com



click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.



**From:** Artur Elizarov [mailto:artur.elizarov@gmail.com]
**Sent:** Thursday, March 25, 2021 10:42 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** Unisom

8

EOTW_000557

Omnibus Joint Exhibit Part A, page 0182

Andrea-


Can you provide the Unisom Letter along with just the closing costs and purchase price to Pete at coldwater bank. Please tell him you are still working on the the full itemized closing statement and will provide once its ready.


Art

EOTW_000558

Omnibus Joint Exhibit Part A, page 0183

# EXHIBIT 16

## EMAIL CHAIN BETWEEN ANDREA CROSS AND ARTUR ELIZAROV, INCLUDING ESTIMATED SETTLEMENT STATEMENTS, DATED MARCH 25, 2021 (CROSS DEPO. EX. 27)

**From:** Andrea Cross <andrea@escrowofthewest.com>
**Sent:** Thursday, March 25, 2021 2:12 PM EDT
**To:** Artur Elizarov <artur.elizarov@gmail.com>
**Subject:** RE: Unisom
**Attachment(s):** "Seller Estimate.PDF"

Please see attached and let me know if approved to send?



**WARNING!** WIRE FRAUD ADVISORY
Before sending funds, always call your Escrow team to verify wire information

**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
**P.** (310) 402-5555 ext. 2071 |  **E-Fax,** (310) 402-5556
**Direct.** (310) 402-5470
www.escrowofthewest.com
click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.

Rate Your Experience

**From:** Artur Elizarov [mailto:artur.elizarov@gmail.com]
**Sent:** Thursday, March 25, 2021 11:06 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** Re: Unisom
anyway to include the incoming lean amount and just send it to them so they can figure out what they are going to waive? The amount is 107,270.
On Thu, Mar 25, 2021 at 10:42 AM Andrea Cross <andrea@escrowofthewest.com> wrote:

Will do!



**WARNING!** WIRE FRAUD ADVISORY
Before sending funds, always call your Escrow team to verify wire information

**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
**P.** (310) 402-5555 ext. 2071 |  **E-Fax,** (310) 402-5556
**Direct.** (310) 402-5470
www.escrowofthewest.com
click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.

Rate Your Experience

**From:** Artur Elizarov [mailto:artur.elizarov@gmail.com]
**Sent:** Thursday, March 25, 2021 10:42 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Subject:** Unisom
Andrea-
Can you provide the Unisom Letter along with just the closing costs and purchase price to Pete at coldwater bank. Please tell him you are still working on the the full itemized closing statement and will provide once its ready.
Art

EXHIBIT
27

## SELLER'S ESTIMATED SETTLEMENT STATEMENT

| | |
|---|---|
| **PROPERTY:** 291 W. Overlook Road<br>Palm Springs, CA 92264 | **DATE:** March 25, 2021 |
| | **CLOSING DATE:** March 30, 2021 |
| **SELLER:** Artur Elizarov | **ESCROW NO.:** 02-035523-AC |

| | DEBITS | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Total Consideration | | 1,355,000.00 |
| | | |
| **PAYOFF CHARGES - Goldwater Bank**<br>**[Total Payoff $107,270.00]** | | |
| Principal Balance | 107,270.00 | |
| | | |
| **PAYOFF CHARGES - Unison Milgard Holdings LLC**<br>**[Total Payoff $491,000.00]** | | |
| Principal Balance | 491,000.00 | |
| | | |
| **PRORATIONS/ADJUSTMENTS** | | |
| County Taxes at $5,819.60/semi-annually from 03/30/2021 to 07/01/2021 | | 2,942.13 |
| | | |
| **COMMISSION CHARGES** | | |
| Keller Williams | 33,875.00 | |
| Compass | 33,875.00 | |
| | | |
| **OTHER DEBITS/CREDITS** | | |
| Rudy's Termite and Pest Control for Termite Report/Work | 95.00 | |
| Old Republic Home Protection Inc. Home Warranty | 900.00 | |
| Property ID for Natural Hazard Disclosure Report | 99.00 | |
| | | |
| **TITLE/TAXES/RECORDING CHARGES - Orange Coast Title** | | |
| Title - Owner's Title Insurance (optional) | 2,761.00 | |
| Title - Reconveyance Fee | 10.00 | |
| Title - Sub Escrow Fee | 62.50 | |
| Recording Grant Deed | 50.00 | |
| Transfer Tax - County to Riverside County | 1,490.50 | |
| Property Taxes (2nd Install) to Riverside County Tax Collector | 5,819.60 | |
| | | |
| **ESCROW CHARGES - Escrow of the West** | | |
| Title - Escrow Fee | 3,060.00 | |
| Title - Wire Fee | 25.00 | |
| Title - Overnight Fee | 75.00 | |
| Title - Admin Fee | 250.00 | |
| Title - Archive Fee | 50.00 | |
| Title - Messenger/Handling Fee | 100.00 | |
| | | |
| **Net Proceeds** | 677,074.53 | |
| | | |
| **TOTAL** | $ 1,357,942.13 | $ 1,357,942.13 |

### THIS IS AN ESTIMATE ONLY AND FIGURES ARE SUBJECT TO CHANGE

_____
Artur Elizarov

## SELLER'S ESTIMATED SETTLEMENT STATEMENT

| | | | |
|---|---|---|---|
| **PROPERTY:** | 291 W. Overlook Road<br>Palm Springs, CA 92264 | **DATE:** | March 25, 2021 |
| | | **CLOSING DATE:** | March 30, 2021 |
| **SELLER:** | Artur Elizarov | **ESCROW NO.:** | 02-035523-AC |

| | **DEBITS** | **CREDITS** |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Total Consideration | | 1,355,000.00 |
| | | |
| **PAYOFF CHARGES - Unison Milgard Holdings LLC**<br>**[Total Payoff $491,000.00]** | | |
| Principal Balance | 491,000.00 | |
| | | |
| **PAYOFF CHARGES - Mechanic Lien**<br>**[Total Payoff $107,270.00]** | | |
| Principal Balance | 107,270.00 | |
| | | |
| **PRORATIONS/ADJUSTMENTS** | | |
| County Taxes at $5,819.60/semi-annually from 03/30/2021 to 07/01/2021 | | 2,942.13 |
| | | |
| **COMMISSION CHARGES** | | |
| Keller Williams | 33,875.00 | |
| Compass | 33,875.00 | |
| | | |
| **OTHER DEBITS/CREDITS** | | |
| Rudy's Termite and Pest Control for Termite Report/Work | 95.00 | |
| Old Republic Home Protection Inc. Home Warranty | 900.00 | |
| Property ID for Natural Hazard Disclosure Report | 99.00 | |
| | | |
| **TITLE/TAXES/RECORDING CHARGES - Orange Coast Title** | | |
| Title - Owner's Title Insurance (optional) | 2,761.00 | |
| Title - Reconveyance Fee | 10.00 | |
| Title - Sub Escrow Fee | 62.50 | |
| Recording Grant Deed | 50.00 | |
| Transfer Tax - County to Riverside County | 1,490.50 | |
| Property Taxes (2nd Install) to Riverside County Tax Collector | 5,819.60 | |
| | | |
| **ESCROW CHARGES - Escrow of the West** | | |
| Title - Escrow Fee | 3,060.00 | |
| Title - Wire Fee | 25.00 | |
| Title - Overnight Fee | 75.00 | |
| Title - Admin Fee | 250.00 | |
| Title - Archive Fee | 50.00 | |
| Title - Messenger/Handling Fee | 100.00 | |
| | | |
| **Net Proceeds** | 677,074.53 | |
| | | |
| **TOTAL** | $ 1,357,942.13 | $ 1,357,942.13 |

**THIS IS AN ESTIMATE ONLY AND FIGURES ARE SUBJECT TO CHANGE**

---

Artur Elizarov

# EXHIBIT 17

## EMAIL FAX OF WESTSTAR'S PAYOFF DEMAND FOR THE SUBJECT LOAN TO AND REA CROSS (GOLDWATER_001767-1769)

| | |
|---|---|
| **From:** | Reina Luna |
| **To:** | 13104025556@shoretelfax.com |
| **Subject:** | payoff 09216931, A. Elizarov |
| **Date:** | Wednesday, March 24, 2021 5:28:00 PM |
| **Attachments:** | 20210324141045929.pdf |
| | image001.png |

ATTN andrea Cross,

Please see attached payoff quote, per your request.
Weststar accepts CERTIFIED CHECKS and TITLE COMPANY CHECKS, payable to WestStar Mortgage.
Should you need to remit payment via overnight delivery, our street address is below.


 **WIRE TRANSFERS ARE ONLY ACCEPTED <u>ON THE LAST BUSINESS DAY OF THE MONTH BEFORE 2:00PM MST</u> BY CLOSING AGENTS ONLY (i.e. TITLE COMPANIES).** Borrowers paying off their loan may send in a check (personal or certified) to the address below. If you receive an email containing wire instructions, call your Title Company or Settlement Agent's escrows officer immediately to verify the information prior to sending funds.



*Reina Luna*
Payoff Technician



2155 Louisiana Blvd NE, Ste 8000 **|** Albuquerque, NM 87110
**Please send Payoff & Verification requests to:**
F: 505-889-0280
EM: payoff@westloan.com

**West Star**
Mortgage Corporation

PAYOFF CALCULATIONS

| | | | |
|---|---|---|---|
| Prepared for: | Andrea Cross<br>Escrow of the West | Request Date :<br>Payoff Date :<br>Telephone :<br>FAX : | 03/24/21<br>04/23/21<br>310 402-5555<br>310 402-5556 |

**Account Data :**

| | |
|---|---|
| Account | 909-21693-1 Artur Elizarov |
| Legal | LOT 8 OF BLOCK 7 PALM CANYON<br>MESA TRACT, RECORDED IN BOOK 12, PAGE 52<br>THROUGH 56, |
| Remarks | Conventional Loan |

**Detail Data :**

| | | | |
|---|---|---|---|
| Current Balance | 679,565.53 | Interest Paid To | 03/01/20 |
| Unpaid Interest | .00 | Payoff To | 04/23/21 |
| Interest | 41,802.72 | Number of Days | 412 |
| Recording/Recon Fee | 201.00 | Annual Int Rate | 5.3750% |
| MIP/PMI | .00 | Regular Payment | 4,944.11 |
| Advanced GWB Funds | 1,968.95 | | |
| Negative Escrow Funds | 5,816.60 | | |
| Statement fee | | | |
| Certified Mail Fee | | | |

Payoff Amount :        729,354.80   Daily Interest        101.46

PAYMENTS RECEIVED IN THE OFFICE AFTER 3:00pm MST WILL BE CREDITED THE NEXT BUSINESS DAY.

Weststar reserves the right to demand additional funds to correct any error or omission in the above payoff figure that was calculated in good faith, whether the error or omission is mathematical, clerical, typographical, or for any transactions that occurred on or after the date of this payoff quote.  Payoff funds must be paid through Weststar

**FUNDS SHOULD BE MADE PAYABLE TO WESTSTAR AND TENDERED IN THE FORM OF MONEY ORDER, CASHIER'S CHECK, OR TITLE COMPANY CHECK.  ALL OTHER CHECKS WILL BE HELD 10 (ten) CALENDAR DAYS TO CLEAR. **

Issuance of this statement does not suspend the requirement to make mortgage payments when due.





Payoff Calculations Page 2 of 2

## IMPORTANT PAYMENT INFORMATION

**IF YOUR LOAN IS AN FHA NOTE, CONTACT OUR OFFICE FOR WIRE INSTRUCTIONS AS YOUR METHOD OF PAYMENT. Funds must be received before 2:00 p.m. MST. for same day credit and must be received no later than the last business day of the calendar month so an additional month's interest will not accrue.**

Account 909216931

Your loan has a late fee of $192.14 if paid more than 15 days after the current payment is due, and must be added to the payoff if received after that date.

Your account currently has an escrow balance of $-5819.60.  This may not be an available balance, pending bills received prior to the "Payoff To" date.

If you have an automated payment scheduled (ACH), it is your responsibility to discontinue the service.

Remit all payoff funds promptly on or before the "Payoff To" date on page 1.  Should the date expire prior to your remittance of funds, you should request an updated payoff calculation statement to ensure your final remittance is sufficient.

Any shortage of the payoff funds received will delay processing and cause additional fees and/or interest to accrue.

Funds may be deducted from escrow to cure any shortage in the payoff received.

Payoff funds must be certified (title company checks accepted) and must be received before 2:00 p.m. mountain standard time (MST) to be posted that business day.  Funds received after 2:00 MST may post the following business day.

MAIL CERTIFIED FUNDS TO:

Weststar Mortgage/Loan Servicing
2155 Louisiana Blvd NE # 8000
Albuquerque NM  87110
Attn:  payment processing

Do not place a stop payment on any recent payments made as the payment may be reflected in the payoff calculation.  Any payments that are returned NSF are required to be repaid, in addition to any fees that are assessed as a result.

If there is mortgage insurance (MI) on your loan, there is an estimation of the MIP amount due on the payoff calculations statement.  Several factors determine the final amount due, including, but not limited to, the actual payoff date.  Should any MIP amount collected not be required, it will be refunded.

Any payoff overage, including excess escrow funds, will be mailed within 20 business days after the loan is paid in full.

If you have any questions, you may contact us at 800-640-0635 Monday – Friday 7:00 a.m. – 5:00 p.m. MST.

Rev: 08/19    FN/GN

2155 Louisiana Blvd. NE, Suite 8000 / Albuquerque, NM  87110 / 505-883-0332 / Fax: 505-889-0280 / www.westloan.com
P.O. Box 25400 / Albuquerque, NM  87125-0400 / NMLS Company ID #93243



# EXHIBIT 18

**WESTSTAR MORTGAGE COMPANY
PAYOFF CALCULATIONS DATED
APRIL 2, 2021, PERTAINING TO UNRELATED
PROPERTY
(CROSS DEPO. EX. 10)**



## PAYOFF CALCULATIONS

| | | |
|---|---|---|
| Prepared for: | Maddison Trueblood -REFI Family Mortgage Team | Request Date : 03/24/21 |
| | | Payoff Date : 04/02/21 |
| | | Telephone : 561 625-2660 |
| | | FAX : 561 625-8808 |

**Account Data :**

| | |
|---|---|
| Account | 909-25044-2 JARED S & PAIGE H GILLMAN |
| Legal | LOT 77, ADDITIONAL #2 MAHEU ESTATES, PALM BEACH COUNTY FL |
| | |
| Remarks | Conventional Loan |

**Detail Data :**

| | | | |
|---|---|---|---|
| Current Balance | 502,937.00 | Interest Paid To | 03/01/21 |
| Unpaid Interest | .00 | Payoff To | 04/02/21 |
| Interest | 1,298.61 | Number of Days | 31 |
| Recording/Recon Fee | 10.60 | Annual Int Rate | 3.0000% |
| MIP/PMI | .00 | Regular Payment | 4,064.56 |
| Transaction Fee | .00 | | |
| Close Out fee | | | |
| Statement fee | | | |
| Certified Mail Fee | | | |

| | | | |
|---|---|---|---|
| Payoff Amount : | 504,246.21 | Daily Interest | 41.91 |

PAYMENTS RECEIVED IN THE OFFICE AFTER 3:00pm MST WILL BE CREDITED THE NEXT BUSINESS DAY.

Weststar reserves the right to demand additional funds to correct any error or omission in the above payoff figure that was calculated in good faith, whether the error or omission is mathematical, clerical, typographical, or for any transactions that occurred on or after the date of this payoff quote.  Payoff funds must be paid through Weststar

**FUNDS SHOULD BE MADE PAYABLE TO WESTSTAR AND TENDERED IN THE FORM OF MONEY ORDER, CASHIER'S CHECK, OR TITLE COMPANY CHECK.  ALL OTHER CHECKS WILL BE HELD 10 (ten) CALENDAR DAYS TO CLEAR. **

Issuance of this statement does not suspend the requirement to make mortgage payments when due.

> **EXHIBIT**
> **10**

EOW0185
Omnibus Joint Exhibit Part A, page 0193





Payoff Calculations Page 2 of 2

## IMPORTANT PAYMENT INFORMATION

**IF YOUR LOAN IS AN FHA NOTE, CONTACT OUR OFFICE FOR WIRE INSTRUCTIONS AS YOUR METHOD OF PAYMENT. Funds must be received before 2:00 p.m. MST. for same day credit and must be received no later than the last business day of the calendar month so an additional month's interest will not accrue.**

Account ████0442

Your loan has a late fee of $107.51 if paid more than 15 days after the current payment is due, and must be added to the payoff if received after that date.

Your account currently has an escrow balance of $11430.93.  This may not be an available balance, pending bills received prior to the "Payoff To" date.

If you have an automated payment scheduled (ACH), it is your responsibility to discontinue the service.

Remit all payoff funds promptly on or before the "Payoff To" date on page 1.  Should the date expire prior to your remittance of funds, you should request an updated payoff calculation statement to ensure your final remittance is sufficient.

Any shortage of the payoff funds received will delay processing and cause additional fees and/or interest to accrue.

Funds may be deducted from escrow to cure any shortage in the payoff received.

Payoff funds must be certified (title company checks accepted) and must be received before 2:00 p.m. mountain standard time (MST) to be posted that business day.  Funds received after 2:00 MST may post the following business day.

MAIL CERTIFIED FUNDS TO:

Weststar Mortgage/Loan Servicing
2155 Louisiana Blvd NE # 8000
Albuquerque NM  87110
Attn:  payment processing

Do not place a stop payment on any recent payments made as the payment may be reflected in the payoff calculation.  Any payments that are returned NSF are required to be repaid, in addition to any fees that are assessed as a result.

If there is mortgage insurance (MI) on your loan, there is an estimation of the MIP amount due on the payoff calculations statement.  Several factors determine the final amount due, including, but not limited to, the actual payoff date.  Should any MIP amount collected not be required, it will be refunded.

Any payoff overage, including excess escrow funds, will be mailed within 20 business days after the loan is paid in full.

If you have any questions, you may contact us at 800-640-0635 Monday – Friday 7:00 a.m. – 5:00 p.m. MST.

Rev: 08/19    FN/GN

2155 Louisiana Blvd. NE, Suite 8000 / Albuquerque, NM  87110 / 505-883-0332 / Fax: 505-889-0280 / www.westloan.com
P.O. Box 25400 / Albuquerque, NM  87125-0400 / NMLS Company ID #93243

Omnibus Joint Exhibit Part A, page 0194



# EXHIBIT 19

## ESCROW OF THE WEST SELLER'S FINAL SETTLEMENT STATEMENT DATED MARCH 30, 2021 (CROSS DEPO. EX. 34)



**ESCROW OF THE WEST**

9440 Santa Monica Blvd., #310
Beverly Hills, CA 90210

Phone: (310) 402-5555
Fax: (310) 402-5556
www.escrowofthewest.com

### SELLER'S FINAL SETTLEMENT STATEMENT

| | | | |
|---|---|---|---|
| **PROPERTY:** | 291 W. Overlook Road<br>Palm Springs, CA 92264 | **DATE:** | March 30, 2021 |
| | | **CLOSING DATE:** | March 29, 2021 |
| **SELLER:** | Artur Elizarov | **ESCROW NO.:** | 02-035523-AC |

| | DEBITS | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Total Consideration | | 1,355,000.00 |
| | | |
| **PAYOFF CHARGES - Unison Milgard Holdings LLC** | | |
| **[Total Payoff $491,000.00]** | | |
| Principal Balance | 491,000.00 | |
| | | |
| **PRORATIONS/ADJUSTMENTS** | | |
| County Taxes at $5,819.60/semi-annually from 03/29/2021 to 07/01/2021 | | 2,974.46 |
| | | |
| **COMMISSION CHARGES** | | |
| Keller Williams | 33,875.00 | |
| Compass | 33,875.00 | |
| | | |
| **OTHER DEBITS/CREDITS** | | |
| Rudy's Termite and Pest Control for Termite Report/Work | 95.00 | |
| Old Republic Home Protection Inc. Home Warranty | 900.00 | |
| Property ID for Natural Hazard Disclosure Report | 99.00 | |
| | | |
| **TITLE/TAXES/RECORDING CHARGES - Orange Coast Title** | | |
| Title - Owner's Title Insurance (optional) | 2,761.00 | |
| Title - Recording Service Fee | 12.50 | |
| Title - Sub Escrow Fee | 62.50 | |
| Title - Wire Fee | 50.00 | |
| Recording Grant Deed | 17.00 | |
| Recording Reconveyance | 31.00 | |
| Recording Quitclaim Deed | 20.00 | |
| Transfer Tax - County to Riverside County | 1,490.50 | |
| Property Taxes (2nd Install) to Riverside County Tax Collector | 5,819.60 | |
| | | |
| **ESCROW CHARGES - Escrow of the West** | | |
| Title - Escrow Fee | 3,060.00 | |
| Professional Courtesy Discount | | 1,355.00 |
| Title - Wire Fee | 25.00 | |
| Title - Overnight Fee | 20.00 | |
| Title - Admin Fee | 250.00 | |
| Title - Archive Fee | 50.00 | |
| Title - Messenger/Handling Fee | 75.00 | |
| | | |
| **Net Proceeds** | 785,741.36 | |
| | | |
| **TOTAL** | $ 1,359,329.46 | $ 1,359,329.46 |

### SAVE THIS STATEMENT FOR INCOME TAX PURPOSES

EXHIBIT
34

EOTW_000627

Omnibus Joint Exhibit Part A, page 0196

# EXHIBIT 20

## ESCROW OF THE WEST REQUEST FOR OUTGOING WIRE TRANSFER REGARDING PAYMENT OF $785,741.36 TO ARTUR ELIZAROV (CROSS DEPO. EX. 35)

Escrow of the West

# REQUEST FOR OUTGOING BANK WIRE TRANSFER

1 - 01 - City National Bank - Account #: ████1208

**Escrow No.:** 02-035523-AC                    **Ref No.:** 32767

**Date:** March 30, 2021                         **Amount:** $785,741.36

**Property:** 291 W. Overlook Road, Palm Springs, CA, 92264

| | |
|---|---|
| Wire To Bank: | Ally Bank |
| Bank Address 1/Care of: | |
| Bank Address 2: | |
| City, State, Zip: | |
| Bank ABA/Routing No.: | 124003116 |
| Bank ID Type: | ABA |
| Recipient Name: | Artur Elizarov |
| Recipient Account. Number: | ████8480 |
| Recipient Acct. Type: | DDA |
| Recipient Address 1: | 711 S. Olive St. #505 |
| Recipient Address 2: | |
| Recipient City, State, Zip: | Los Angeles, CA  90014 |
| Additional Instructions:<br>( i.e. Loan Number ) | Net Proceeds |
| Intermediary Bank: | |
| Intermediary Bank Address 1: | |
| Intermediary Bank Address 2: | |
| City, State, Zip: | |
| Intermediary Bank ABA: | |
| Intermediary Bank ABA Type: | |
| Receiving Bank Account #: | |
| Receiving Bank Account Type: | |

EXHIBIT
35

Authorized Signature                 Authorized Signature            **EOW0050**

Omnibus Joint Exhibit Part A, page 0198