***Goldwater Bank v. Elizarov, et al.***, C.D. Cal. Case No. 21-cv-00616-JWH-SP

# <u>OMNIBUS</u>
# <u>JOINT EXHIBIT PART B</u>

**EXHIBIT 21**

**GOLDWATER BANK, N.A.'S REQUESTS FOR ADMISSIONS, SET ONE, TO BANK OF THE WEST**

Sean C. Wagner (Pro Hac Vice)
Abbey M. Krysak (Pro Hac Vice)
**WAGNER HICKS PLLC**
831 East Morehead Street, Suite 860
Charlotte, North Carolina 28202
Tel: (704) 705-7538
Fax: (704) 705-7787

John Forest Hilbert, Esq. (SBN 105827)
Joseph A. LeVota, Esq. (SBN 262760)
**HILBERT & SATTERLY LLP**
409 Camino del Rio S. #104
San Diego, California 92108
Telephone:   (619) 795-0300
Facsimile:    (619) 501-6855

Marie B. Maurice (SBN 258069)
Marina Samson (SBN 315024)
**IVIE McNEILL WYATT PURCELL & DIGGS**
444 S. Flower Street, Sutite 1800
Los Angeles, California 90071
Telephone:   (213) 489-0028
Facsimile:    (213) 489-0552

Counsel for Plaintiff
GOLDWATER BANK, N.A.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **GOLDWATER BANK, N.A.,** <br> Plaintiff, <br><br> v. <br><br> **ARTUR ELIZAROV, *ET AL*.** <br><br> Defendants. | Case No. 5:21-cv-00616-JWH-SPx <br><br> Judge:            Hon. John W. Holcomb <br> Department:  Courtroom 2 <br><br> **PLAINTIFF GOLDWATER BANK, N.A.'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT BANK OF THE WEST** <br><br><br> Filed:          April 6, 2021 <br> Trial Date:   August 7, 2023 |

PROPOUNDING PARTY:      Plaintiff GOLDWATER BANK, N.A.

RESPONDING PARTY:      Defendant BANK OF THE WEST

---

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO BANK OF THE WEST - 1

Pursuant to Federal Rules of Civil Procedure 26 and 36, Goldwater Bank, N.A.'s First Set Requests for Admission to Defendant Bank of the West is hereby propounded to you and your attorneys of record. These requests for admission are to be answered in writing within thirty (30) days after service.

## DEFINITIONS

The following definitions shall apply to the instructions and each of the requests below, unless specifically indicated, or otherwise required, by the context of the request:

1.       "Bank of the West," "you" or "your" shall mean Defendant Bank of the West, and any divisions, departments, parents, predecessors (whether acquired by merger, consolidation, or other means), successors, subsidiaries (whether wholly or partially owned), affiliates, entities under common control, joint ventures, and other organizations or operating units, and each of their present and former officers, directors, agents, controller shareholder(s) or employees, and all persons (natural or legal) who act, have acted or have purport to act, on its behalf.

2.       "Goldwater" or "Plaintiff" shall mean Plaintiff Goldwater Bank, N.A., and any divisions, departments, parents, predecessors (whether acquired by merger, consolidation, or other means), successors, subsidiaries (whether wholly or partially owned), affiliates, entities under common control, joint ventures, and other organizations or operating units, and each of their present and former officers, directors, agents, controller shareholder(s) or employees, and all persons (natural or legal) who act, have acted or have purport to act, on its behalf.

3.       "Aleksyeff" shall mean Defendant Ilya Alekseyeff.

4.       "Howlett" shall mean Defendant Scott Howlett.

5.       "Unison" shall mean Defendant Unison Agreement Corp., and any divisions, departments, parents, predecessors (whether acquired by merger, consolidation, or other means), successors, subsidiaries (whether wholly or partially owned), affiliates, entities under common control, joint ventures, and other organizations

or operating units, and each of their present and former officers, directors, agents, controller shareholder(s) or employees, and all persons (natural or legal) who act, have acted or have purport to act, on its behalf.

6. "Defendants" shall mean and/or refer to Howlett, Elizarov, Alekseyeff, Unison, and Bank of the West, collectively.

7. "Complaint" shall mean Goldwater's Verified Amended Complaint (ECF No. 44) and its exhibits.

8. The term "Subject Property" means certain real property located at 291 W. Overlook Road, Palm Springs, California 92264.

9. The term "Wilton Manors Property" means certain real property located at 2735 NE 10th Avenue, Wilton Manors, Florida 33334.

10. The term "Escrow of the West" means Escrow of the West, Inc., as escrow agent for Elizarov, as seller, and Howlett, as buyer, of the Subject Property.

11. The term "Goldwater Loan" means the mortgage loan made by Goldwater to Defendant Elizarov on or around July 31, 2019 in the principal amount of $686,250.00 and memorialized in an Adjustable Rate Note and a Deed of Trust dated July 31, 2019.

12. The term "persons" is used in the broadest sense possible and means both natural persons and artificial entities including, but not limited to, sole proprietorships, general partnerships, limited partnerships, joint ventures, limited liability limited partnerships, limited liability companies, corporations, sub-chapter (s) corporations, closely held corporations, professional corporations, business trusts, charitable entities, social or political organizations, trusts, governmental units, bodies or agencies, regardless of their form or legal status, and all past and present officials, officers, directors, agents, employees, attorneys, successors, assigns or other persons acting or purporting to act on such person's behalf.

13. "Correspondence" means any letter, memorandum, or other writing, including electronically stored e-mail transmissions and text messages, iMessages,

WhatsApp messages or any other secure messaging application messages, Blackberry messages, messages transmitted through social media like Facebook.com or Twitter.com, sent or received.

14.   "Communication" or "communications" includes, without limitation, all statements, representations, expressions of fact or opinion, correspondence, reports, memoranda, telegrams, and other transmissions of information, made in any manner whatsoever.

15.   The terms "document" and "documents" shall have the meaning attributed to that term by Rule 34 of the Federal Rules of Civil Procedure, and shall include any and all records, or written, readable, graphic, or visual materials, of any kind or character, and shall include, without limitation, correspondence, memoranda, notes, inter-office and intra-office communications, emails, cards, files, bills, invoices, computer printouts, minutes, studies, notes of telephone or other conversations, telegrams, pamphlets, books, tapes, discs, diskettes, cassettes, recordings, presentations, summaries, schedules, diagrams, charts, reports or records, electronically stored information, and any other data compilation stored in any medium from which information can be obtained, and any non-identical copies thereof, which are in your possession, subject to your control or known by you to exist or to have existed. "Document" or "documents" also shall include all copies of each document if the copies contain any additional writing or are not identical copies of the original.

16.   "Relating to" and "relates to" mean, without limitation, relating to, concerning, constituting, mentioning, referring to, describing, summarizing, evidencing, listing, relevant to, demonstrating, tending to prove or disprove, or explain.

17.   The connectives "and" and "or" mean either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

18.   The use of the singular includes the plural, and vice versa.

19.     The use of one gender includes all others, as appropriate in context.

## GENERAL INSTRUCTIONS

The following general instructions shall apply to each of the requests for admission below, unless specifically indicated, or otherwise required, by the context of the request:

1.     Respond to the following requests in the manner required by the Federal Rules of Civil Procedure and the Court's Local Rules.

2.     The particularity or generality of any one request shall not limit any other request.

3.     The following requests are continuing in nature. Your responses must be supplemented as required by the Federal Rules of Civil Procedure to reflect events occurring, or information becoming available, after service of your initial responses.

4.     Unless otherwise specified, the relevant timeframe for these requests is from January 1, 2019 to the present date.

## REQUESTS FOR ADMISSION

1.     Admit that, prior to March 29, 2021, You received a copy of a document entitled "Preliminary Title Report" for the Subject Property.

**RESPONSE:**


2.     Admit that **Exhibit A**, attached to these Requests, is a true and accurate copy of the Preliminary Title Report that You received prior to March 29, 2021.

**RESPONSE:**


3.     Admit that, prior to March 29, 2021, You received a copy of a document entitled "Amended Preliminary Report" for the Subject Property.

**RESPONSE:**

4.      Admit that **<u>Exhibit B</u>**, attached to these Requests, is a true and accurate copy of the Amended Preliminary Title Report for the Subject Property that You had in your possession prior to March 29, 2021.

          **RESPONSE:**


5.      Admit that, prior to March 29, 2021, You had in Your possession a copy of a document entitled "Unison Homebuyer Subordination Agreement" for the Subject Property.

          **RESPONSE:**


6.      Admit that **<u>Exhibit C</u>**, attached to these Requests, is a true and accurate copy of the Unison Homebuyer Subordination Agreement that was in your possession prior to March 29, 2021.

          **RESPONSE:**


7.      Admit that **<u>Exhibit D</u>**, attached to these Requests, is a true and accurate copy of certain email correspondence sent by You on March 29, 2021.

          **RESPONSE:**


8.      Admit that **<u>Exhibit E</u>**, attached to these Requests, is a true and accurate copy of certain email correspondence between You and Escrow of the West on March 29, 2021.

          **RESPONSE:**

9.      Admit that **Exhibit F**, attached to these Requests, is a true and accurate copy of certain email correspondence received by You from Escrow of the West on March 29, 2021.

**RESPONSE:**

10.     Admit that **Exhibit G**, attached to these Requests, is a true and accurate copy of one of the attachments to **Exhibit F**, and received by You from Escrow of the West on March 29, 2021.

**RESPONSE:**

11.     Admit that **Exhibit G**, attached to these requests, was received by You from Escrow of the West prior to Your funding of the loan for Defendant Howlett for the Subject Property.

**RESPONSE:**

12.     Admit that **Exhibit G**, attached to these requests, was received by You from Escrow of the West prior to the closing of the sale of the Subject Property to Defendant Howlett.

**RESPONSE:**

Dated: January 31, 2023

                    **WAGNER HICKS PLLC**

                    By: /s/ Abbey M. Krysak
                            Sean C. Wagner, Esq.
                            Abbey M. Krysak, Esq.

                            AND

---

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO BANK OF THE WEST - 7

**HILBERT & SATTERLY LLP**

John Forest Hilbert, Esq.
Joseph A. LeVota, Esq.

AND

**IVIE McNEILL WYATT PURCELL & DIGGS**

Marie B. Maurice, Esq.
Marina Samson

*ATTORNEYS FOR DEFENDANT
GOLDWATER BANK N.A.*

## CERTIFICATE OF SERVICE

I am employed in the County of Mecklenburg, State of North Carolina.  I am over the age of 18 and not a party to the within action.  My business address is 831 E. Morehead Street, Suite 860, Charlotte, NC 28202.

On January 31, 2023, I served the within document described as:

**PLAINTIFF GOLDWATER BANK, N.A.'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT BANK OF THE WEST**

on each interested party in this action, as stated below:

### SEE ATTACHED SERVICE LIST

**BY EMAIL**:  I caused a true copy of the document to be sent to the persons at the corresponding electronic addresses as indicated above on the above-mentioned date. My electronic notification address is abbey.krysak @wagnerhicks.law.  I am familiar with this firm's Microsoft Outlook electronic mail system and did not receive any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am a *Pro Hac Vice* member of the bar of this Court at whose direction the service was made.

Executed on January 31, 2023, in Charlotte, North Carolina.


*Abbey M. Krysak*

Abbey M. Krysak, Esq.

**SERVICE LIST**
**Goldwater Bank, N.A. v. Artur Elizarov, et al.**
**Case No. 5:21-cv-00616-JWH-SP**

Ilya Alekseyeff, Esq.
Loia, Inc. (APLC)
8721 Santa Monic Blvd., #119
West Hollywood, CA 90096
(213) 537-4592
Ilya@loia.legal
*Attorney for Defendant Artur Elizarov and Defendant pro per, Ilya Alekseyeff*

Howard D. Hall, Esq.
Jeremy T. Katz, Esq.
Ryan C. Thomason, Esq.
Hall Griffin, LLP
1851 East First Street, 10th Floor
Santa Ana, CA 92705-4052
hdhall@hallgriffin.com
jkatz@hallgriffin.com
rthomason@hallgriffin.com
(714) 918-7000; Fax: (714) 918-6996
*Attorneys for Defendant Scott Howlett and Bank of the West*

Denis Shmidt
Nabil Bisharat
Orsus Gate, LLP
16 N Marengo Ave, Suite 316
Pasadena, CA 91101
(213) 973-2052
dshmidt@orsusgate.com
nbisrahat@orsusgate.cm
*Attorneys for Defendant Unison Agreement Corp.*

# EXHIBIT A

Order No. 210-2216078-10

**Orange Coast Title Company of Southern California - Inland Empire Division**

1845 Business Center Drive, Suite 218
San Bernardino, CA 92408
909-825-8800

| | **PRELIMINARY REPORT** | |
|---|---|---|

Escrow of the West
9440 Santa Monica Blvd., Suite 310
Beverly Hills, CA 90210

| **Attention:** | Andrea Cross | **Your no.:** | 02-035242-AC |
|---|---|---|---|
| **Property address:** | 291  Overlook Road, Palm Springs, CA  92264 | **Order no.:** | 210-2216078-10 |

**Dated:**  February 18, 2021

In response to the above referenced application for a policy of title insurance, **Orange Coast Title Company of Southern California - Inland Empire Division** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit B attached. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit B. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit B of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters, which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

Dated as of February 8, 2021 at 7:30 AM

*Cynthia Kack*

_____
Cynthia Kack, Title Officer
Ph: 909-825-8800
Email: cynthiak@octitle.com

Omnibus Joint Exhibit Part B, page 0211

Order No. 210-2216078-10

**The form of policy of title insurance contemplated by this report is:**

A.L.T.A Homeowner's Policy (2/03/10) and A.L.T.A. Loan Policy (06-17-06)

**The Policy of Title Insurance, if issued, will be underwritten by:** Real Advantage Title Insurance Company, a subsidiary of Orange Coast Title Company.  See attached disclosure.
**NOTE: The premium for a policy of Title Insurance, if issued, will be based on:**

**A liability of     $1,084,000.00    Subject to any filed rate increases and/or changes in the liability.**

## Schedule "A"

**The estate or interest in the land hereinafter described or referred to covered by this report is:**

A Fee

**Title to said estate or interest at the date hereof is vested in:**

Artur Elizarov, a single man

**The land referred to in this report is situated in the City of Palm Springs, the County of Riverside, State of California, and is described as follows:**

Lot 8 of Block 7, Palm Canyon Mesa Tract, in the City of Palm Springs, the County of Riverside, State of California, as per map recorded in Book 12, Pages 52 through 56, both inclusive of maps, in the Office of the County Recorder of said County.

Assessor's Parcel Numbers(s):  513-363-023

Page 2

Order No. 210-2216078-10

## Schedule "B"

**At the date hereof exceptions to coverage in addition to the printed exceptions and exclusions contained in said policy form would be as follows:**

1   General and Special taxes for the fiscal year 2021-2022, including any assessments collected with taxes.  A lien not yet payable.

  First installment due and payable 11/01/2021, delinquent if not paid by 12/10/2021
  Second installment due and payable 02/01/2022, delinquent if not paid by 04/10/2022

2   General and Special taxes for the fiscal year 2020-2021, including any assessments collected with current taxes.

| | |
|---|---|
| Total amount | **$11,639.20** |
| 1st installment | **$5,819.60**, Paid |
| Penalty | **$581.96** (after 12/10/2020) |
| 2nd installment | **$5,819.60**, Open |
| Penalty | **$620.02** (after 04/12/2021) |
| Code area | 011-003-City of Palm Springs |
| Parcel No. | **513-363-023** |
| Exemption | $None Shown |

3   Supplemental taxes including special assessments and/or personal property taxes if any, for the fiscal year 2020 - 2021.

| | |
|---|---|
| Total amount | None Shown |
| 1st installment: | None Shown, No Tax Due |
| 2nd installment: | None Shown, No Tax Due |
| Parcel no. | 513-363-023 |

4   The Lien of future supplemental taxes, if any, assessed pursuant to the provisions of section 75, et seq of the revenue and taxation code of the State of California

5   Covenants, conditions and restrictions in an instrument recorded Book 625, Page 562, deeds, which provide that a violation thereof shall not defeat or render invalid the lien of any mortgage or Deed of Trust made in good faith and for value, but deleting any covenant, condition, or restriction, if any, indicating a preference, limitation, or discrimination based on race, color, religion, sex, gender, gender identify, gender expression, sexual orientation, familial status, marital status, disability, handicap, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, to the extent that such covenants, conditions or restrictions violate applicable state or federal laws.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

  "NOTE: Section 12956.1 (b)(1) of California Government Code provide the following: if this document contains any restriction based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status."

  An easement as set forth in the above document

| | |
|---|---|
| For : | Construct, install, maintain and operate, telephone, telegraph and electric light and power poles, wires, cables, lines and conduits, sewer, water and gas pipes, with right of entry thereon for the purpose of maintaining same and incidental purposes |
| Affects : | The location of said easement is set forth therein |

Page 3

Omnibus Joint Exhibit Part B, page 0213

Order No. 210-2216078-10

6      An easement for purposes herein stated, and rights incidental thereto as set forth in an instrument

       Recorded:                          In Book 630, Page 484 of Deeds
       For:                               Right to erect and maintain poles or other supports, with wires and fixtures  and incidental
                                          purposes
       Affects:                           The location of said easement is set forth therein


7      A Deed of Trust to secure an indebtedness of

       Amount:                            **$80,000.00**
       Trustor:                           **Hunter Woods, LLC, a California limited liability company**
       Trustee:                           Geraci Law Firm
       Beneficiary:                       Cedar Forge Financial, a California corporation
       Dated:                             04/11/2016
       Recorded:                          **04/18/2016** as Instrument No. **2016-151674**, Official Records.

       Although we find no recorded reconveyance of record, we believe the obligation secured by said Deed of Trust may have
       been satisfied. Prior to issuance of a Policy of Title Insurance this company may require documentation sufficient to allow us
       to remove this exception.


8      A Deed of Trust to secure an indebtedness of

       Amount:                            **$150,000.00**
       Trustor:                           **Hunter Woods, LLC, a California limited liability company**
       Trustee:                           Geraci Law Firm
       Beneficiary:                       Cedar Forge Financial, a California corporation
       Dated:                             07/11/2016
       Recorded:                          **07/15/2016** as Instrument No. **2016-297098**, Official Records.

       Although we find no recorded reconveyance of record, we believe the obligation secured by said Deed of Trust may have
       been satisfied. Prior to issuance of a Policy of Title Insurance this company may require documentation sufficient to allow us
       to remove this exception.


9      An instrument, upon the terms and conditions contained therein

       Entitled:                          Encroachment Agreement
       Recorded:                          09/13/2018, as Instrument No. 2018-368167, Official Records


10     A Deed of Trust to secure the indebtedness of

       Amount:                            $**None Shown**
       Trustor:                           **Artur Elizarov, as a single man**
       Trustee:                           American Title, Inc.
       Beneficiary:                       Unison Agreement Corp., a Delaware corporation
       Dated:                             07/30/2019
       Recorded:                          **08/07/2019 as Instrument No. 2019-299191** of Official Records


11     An instrument, upon the terms and conditions contained therein

       Entitled:                          Memorandum of Unison Homebuyer Agreement
       Dated:                             07/30/2019
       Executed by and between:           Artur Elizarov as a single man and Ynison Agreement Corp., a Delaware Corporation
       Recorded:                          08/07/2019, as Instrument No. 2019-299192 of Official Records

       The lien or charge of said instrument was subordinated to the lien or charge of the Deed of Trust shown in paragraph 10, of
       Schedule B
       Recorded:                          08/07/2019 as Instrument No. 2019-299193, Official Records.

       The beneficial interest under said Deed of Trust was assigned
       To:                                Unison Midgard Holdings LLC, a Delaware Limited Partnership
       By Assignment Recorded:            08/07/2019, as Instrument No. 2019-299194, Official Records.


Page 4

Omnibus Joint Exhibit Part B, page 0214

12   (A)  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records;

Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

(B)  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

(C)  Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

(D)  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records

(E)  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the public records

(F)  Any lien or right to a lien for services, labor or material theretofore or hereafter not shown by the public records.

**Exceptions A-F will be omitted on extended coverage policies.**

## End of Schedule B

# EXHIBIT B



Order No. 210-2216078-10

**Orange Coast Title Company of Southern California - Inland Empire Division**

1845 Business Center Drive, Suite 218
San Bernardino, CA 92408
909-825-8800

| | **AMENDED PRELIMINARY REPORT** | |
|---|---|---|

Escrow of the West
9440 Santa Monica Blvd., Suite 310
Beverly Hills, CA 90210

| **Attention:** | Andrea Cross | **Your no.:** | 02-035523-AC |
|---|---|---|---|
| **Property address:** | 291 Overlook Road, Palm Springs, CA  92264 | **Order no.:** | 210-2216078-10 |

**Dated:**  March 3, 2021

In response to the above referenced application for a policy of title insurance, **Orange Coast Title Company of Southern California - Inland Empire Division** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit B attached. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit B. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit B of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters, which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

Dated as of February 18, 2021 at 7:30 AM

*Cynthia Kack*

_____
Cynthia Kack, Title Officer
Ph: 909-825-8800
Email: cynthiak@octitle.com

EOTW_000055

Order No. 210-2216078-10

**The form of policy of title insurance contemplated by this report is:**

A.L.T.A Homeowner's Policy (2/03/10) and A.L.T.A. Loan Policy (06-17-06)

**The Policy of Title Insurance, if issued, will be underwritten by:**  Real Advantage Title Insurance Company, a subsidiary of Orange Coast Title Company.  See attached disclosure.
**NOTE: The premium for a policy of Title Insurance, if issued, will be based on:**

**A liability of     $1,004,000.00    Subject to any filed rate increases and/or changes in the liability.**

## Schedule "A"

**The estate or interest in the land hereinafter described or referred to covered by this report is:**

A Fee

**Title to said estate or interest at the date hereof is vested in:**

Artur Elizarov, a single man

**The land referred to in this report is situated in the City of Palm Springs, the County of Riverside, State of California, and is described as follows:**

Lot 8 of Block 7, Palm Canyon Mesa Tract, in the City of Palm Springs, the County of Riverside, State of California, as per map recorded in Book 12, Pages 52 through 56, both inclusive of maps, in the Office of the County Recorder of said County.

Assessor's Parcel Numbers(s):  513-363-023

EOTW_000056

Omnibus Joint Exhibit Part B, page 0218

Order No. 210-2216078-10

## Schedule "B"

**At the date hereof exceptions to coverage in addition to the printed exceptions and exclusions contained in said policy form would be as follows:**

1    General and Special taxes for the fiscal year 2021-2022, including any assessments collected with taxes.  A lien not yet payable.

First installment due and payable 11/01/2021, delinquent if not paid by 12/10/2021
Second installment due and payable 02/01/2022, delinquent if not paid by 04/10/2022

2    General and Special taxes for the fiscal year 2020-2021, including any assessments collected with current taxes.
Total amount                    **$11,639.20**
1st installment                 **$5,819.60**, Paid
Penalty                         **$581.96** (after 12/10/2020)
2nd installment                 **$5,819.60**, Open
Penalty                         **$620.02** (after 04/12/2021)
Code area                       011-003-City of Palm Springs
Parcel No.                      **513-363-023**
Exemption                       $None Shown

3    Supplemental taxes including special assessments and/or personal property taxes if any, for the fiscal year  2020 - 2021.
Total amount                    None Shown
1st installment:                None Shown, No Tax Due
2nd installment:                None Shown, No Tax Due
Parcel no.                      513-363-023

4    The Lien of future supplemental taxes, if any, assessed pursuant to the provisions of section 75, et seq of the revenue and taxation code of the State of California

5    Covenants, conditions and restrictions in an instrument recorded Book 625, Page 562, deeds, which provide that a violation thereof shall not defeat or render invalid the lien of any mortgage or Deed of Trust made in good faith and for value, but deleting any covenant, condition, or restriction, if any, indicating a preference, limitation, or discrimination based on race, color, religion, sex, gender, gender identify, gender expression, sexual orientation, familial status, marital status, disability, handicap, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, to the extent that such covenants, conditions or restrictions violate applicable state or federal laws.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

"NOTE: Section 12956.1 (b)(1) of California Government Code provide the following: if this document contains any restriction based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status."

An easement as set forth in the above document
For :                      Construct, install, maintain and operate, telephone, telegraph and electric light and power poles, wires, cables, lines and conduits, sewer, water and gas pipes, with right of entry thereon for the purpose of maintaining same and incidental purposes
Affects :                  The location of said easement is set forth therein

EOTW_000057

Omnibus Joint Exhibit Part B, page 0219

Order No. 210-2216078-10

6   An easement for purposes herein stated, and rights incidental thereto as set forth in an instrument
Recorded:                    In Book 630, Page 484 of Deeds
For:                         Right to erect and maintain poles or other supports, with wires and fixtures  and incidental
                             purposes
Affects:                     The location of said easement is set forth therein


7   An instrument, upon the terms and conditions contained therein
Entitled:                    Encroachment Agreement
Recorded:                    09/13/2018, as Instrument No. 2018-368167, Official Records

8   A Deed of Trust to secure the indebtedness of
Amount:                      $**None Shown**
Trustor:                     **Artur Elizarov, as a single man**
Trustee:                     American Title, Inc.
Beneficiary:                 Unison Agreement Corp., a Delaware corporation
Dated:                       07/30/2019
Recorded:                    **08/07/2019 as Instrument No. 2019-299191** of Official Records

9   An instrument, upon the terms and conditions contained therein
Entitled:                    Memorandum of Unison Homebuyer Agreement
Dated:                       07/30/2019
Executed by and between:     Artur Elizarov as a single man and Ynison Agreement Corp., a Delaware Corporation
Recorded:                    08/07/2019, as Instrument No. 2019-299192 of Official Records

    The lien or charge of said instrument was subordinated to the lien or charge of the Deed of Trust shown in paragraph 10, of
    Schedule B
Recorded:                    08/07/2019 as Instrument No. 2019-299193, Official Records.

    The beneficial interest under said Deed of Trust was assigned
To:                          Unison Midgard Holdings LLC, a Delaware Limited Partnership
By Assignment Recorded:      08/07/2019, as Instrument No. 2019-299194, Official Records.

10  (A)  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or
    assessments on real property or by the public records;

    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not
    shown by the records of such agency or by the Public Records.

    (B)  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an
    inspection of the land or which may be asserted by persons in possession thereof.

    (C)  Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

    (D)  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey
    would disclose, and which are not shown by the public records

    (E)  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c)
    water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the public
    records

    (F)  Any lien or right to a lien for services, labor or material theretofore or hereafter not shown by the public records.

    **Exceptions A-F will be omitted on extended coverage policies.**


**End of Schedule B**

EOTW_000058

Omnibus Joint Exhibit Part B, page 0220

# EXHIBIT C

Recording Requested By

First American Title Company

DOC #2019-0299193  Page 2 of 9

Prepared by, recording requested by, and
when recorded mail to:

Unison Agreement Corp.
P.O. Box 26800
San Francisco, CA  94126-6800

Unison HomeBuyer Agreement ID Number:
FRX-226269

## UNISON HOMEBUYER UNIFORM SUBORDINATION AGREEMENT

**Legal Description of Property:**  That certain real property described in **Exhibit B** attached
hereto.

**Property Address:**  291 W Overlook Rd, Palm Springs, CA 92264

**Senior Lender/First Mortgage:**

Lender ("**Senior Lender**"):
      Borrower / Homeowner ("**Owner**"):  Artur Elizarov
      Loan Number: 90216931
      Note Dated:  _July 30, 2019_
      Original Principal Amount:  $ 686,250

**Subordinating Lien Holder/Junior Lien:**

      Unison Agreement Corp., its successors and assigns ("**Subordinating Lien Holder**")

      Unison HomeBuyer ID Number: FRX-226269

      Dated As Of:  ___July 30, 2019___  ("**Effective Date**")

      This **Unison HomeBuyer Uniform Subordination Agreement** is made pursuant to and
as of the Effective Date of that certain Unison HomeBuyer Agreement made by and between
Owner and Subordinating Lien Holder and securing the Junior Lien of Subordinating Lien
Holder ("**Unison HomeBuyer Agreement**").

      Defined terms not defined in the text herein are defined in **Exhibit A** attached hereto or
in **Schedule A** to the **Unison HomeBuyer Covenant Agreement** executed by Owner and
Subordinating Lien Holder as a component of the Unison HomeBuyer Agreement.

      When the context requires, singular nouns and pronouns include the plural.

© 2016, **Unison**

Form 405 HBA-Multi (12/1/2016)

Omnibus Joint Exhibit Part B, page 0222

DOC #2019-0299193  Page 3 of 9

**WHEREAS,** Senior Lender is the owner and holder of the First Mortgage on the above-referenced property (the "**Property**") which is the senior lien on title to the Property and an interest in that title; and

**WHEREAS,** Subordinating Lien Holder is the owner and holder of the Junior Lien on title to the Property which is the junior lien on title to the Property and an interest in that title pursuant to the Unison HomeBuyer Agreement.

**NOW, THEREFOR,** for value received and to induce the Senior Lender to originate the First Mortgage on the Property:

**1.** Subordinating Lien Holder unconditionally subordinates its lien on, and all other rights and interests in, the title to the Property resulting from the Junior Lien to the lien on, and to all other rights and interests in, the title to the Property resulting from the First Mortgage. Subordinating Lien Holder agrees that its lien on, and all other rights and interests in, the title to the Property resulting from the Junior Lien will at all times remain subordinate to the lien on, and all other rights and interests in, the title to the Property resulting from the First Mortgage.

**2.** Subordinating Lien Holder hereby agrees that its lien on, and all other rights and interests in, the title to the Property resulting from the Junior Lien will remain subordinate to the lien on, and all other rights and interests in, the title to the Property resulting from any renewal, extension or modification of the First Mortgage made in connection with a **Bona Fide Loan Modification** by Senior Lender, and agrees that no increase in Owner's indebtedness on the First Mortgage resulting from such renewal, extension or modification exceeding the **Maximum Authorized Debt** as defined in the Unison HomeBuyer Agreement shall constitute an actionable **Event of Default** by Owner under the Unison HomeBuyer Agreement.

**3.** Subordinating Lien Holder hereby agrees that the written approval of Senior Lender to a **Short Sale** of the Property in connection with **Bona Fide Loss Mitigation** by Senior Lender on the First Mortgage shall not constitute an event occasioning Subordinating Lien Holder's right to exercise its option to purchase an undivided percentage interest in the Property under the Unison HomeBuyer Agreement; and further, that upon Lender's written approval of such Short Sale, in the event the "Investor Interest" of Subordinating Lien Holder (as such term is defined in the Unison HomeBuyer Agreement) is calculated as no greater than $0, Subordinating Lien Holder shall timely consent to such Short Sale in writing and release the Junior Lien to facilitate the Short Sale without demand of consideration.

**4.** Subordinating Lien Holder hereby agrees to the following with respect to any judicial or non-judicial foreclosure action on the Property undertaken by Senior Lender in accordance with applicable law in response to a default by Owner under the First Mortgage ("**Senior Foreclosure**"):

(a) A Senior Foreclosure shall not constitute a sale of the Property to a **Third Party Buyer**, nor shall a foreclosure sale by Senior Lender constitute an event occasioning Subordination Lien Holder's right to exercise its option to purchase an undivided percentage interest in the Property under the Unison HomeBuyer Agreement.

(b) Subordinating Lien Holder expressly waives any right of redemption in or to the Property which would accrue to Subordinating Lien Holder under applicable law following the completion of a Senior Foreclosure.

© 2017, Unison
Form 405 HBA-Multi (3/2/2017)

Omnibus Joint Exhibit Part B, page 0223

(c)     Notice of Senior Foreclosure shall be given by Senior Lender to Subordinating Lien Holder in accordance with customary practice and applicable law.

(d)     Any and all covenants running with the land pursuant to the terms of the Unison HomeBuyer Agreement shall be automatically extinguished by a completed Senior Foreclosure.

**5.**     Subordinating Lien Holder hereby agrees that in the event of any judicial or non-judicial foreclosure action on the Property undertaken by Subordinating Lien Holder in accordance with applicable law in response to a default by Owner under the Junior Lien ("**Junior Foreclosure**"), Subordinating Lien Holder shall provide written notice of such Junior Foreclosure to Senior Lender simultaneously and in the same form as such notice is given by Subordinating Lien Holder to Owner.

**6.**     Subordinating Lien Holder hereby agrees that its lien on, and all other rights and interests in, the title to the Property resulting from the Junior Lien will remain subordinate to any and all rights and interests of Senior Lender in and to, rents and other profits derived from the Property resulting from any lease of the Property approved by Senior Lender in connection with Bona Fide Loss Mitigation by Senior Lender on the First Mortgage, and that no such lease of the Property shall constitute an actionable Event of Default under the Unison HomeBuyer Agreement.

**7.**     Subordinating Lien Holder hereby unconditionally and automatically subordinates its lien on, and all other rights and interests in, the title to the Property accruing as a result of any **Unpaid Owner Obligations** of Owner (as such term in defined in the Unison HomeBuyer Agreement) in connection with the Junior Lien, to the lien on, and to all other rights and interests in, the title to the Property resulting from the First Mortgage.

**8.**     Subordinating Lien Holder hereby agrees that if, in connection with Bona Fide Loss Mitigation by Senior Lender on the First Mortgage, Senior Lender has not declared Owner to be in default of the occupancy provisions of the First Mortgage, then Subordinating Lien Holder shall not deem Owner to be in default under the occupancy provisions of the Unison HomeBuyer Agreement.

**9.**     Subordinating Lien Holder hereby agrees that if, in connection with Bona Fide Loan Modification of the First Mortgage by Senior Lender, Senior Lender extends the term of months of the First Mortgage beyond its amortization period at origination, Subordinating Lien Holder shall automatically extend, and shall execute and record any and all necessary addenda and documentation required to extend, the Term of the Unison HomeBuyer Agreement such that the Unison HomeBuyer Agreement is coterminous with the extended amortization period of the First Mortgage.

**10.**     Subordinating Lien Holder hereby agrees that any consummation of Subordinating Lien Holder's purchase of an undivided percentage interest in and to the Property under the terms of the Unison HomeBuyer Agreement shall automatically constitute a transfer or sale of the Property occasioning Senior Lender's rights immediately to accelerate the First Mortgage; and that in the event Senior Lender commences a Senior Foreclosure in response to such acceleration, Subordinating Lien Holder expressly waives any and all defenses to such Senior Foreclosure which might accrue to Subordinating Lien Holder as record title owner of a percentage interest in and to the Property, except as to those rights of reinstatement of the First

Page 3 of 7

Mortgage or redemption of the Property which may accrue to Subordinating Lien Holder under applicable law prior to the completion of a foreclosure sale.

11. Subordinating Lien Holder shall provide prompt written notice to Senior Lender upon tender of an offer of **Orderly Sale** to Owner under the terms of the Unison HomeBuyer Agreement, and shall not tender such offer unless or until Senior Lender has reasonably exhausted attempts at Bona Fide Loan Modification and Bona Fide Loss Mitigation in connection with Owner's default on the First Mortgage.

12. Following the death of the **Last Surviving Owner,** Subordinating Lien Holder shall notify the heir(s) (and/or estate, as appropriate) of the Last Surviving Owner if Subordinating Lien Holder elects to exercise its right to purchase its undivided percentage interest in and to the Property under the Unison HomeBuyer Agreement; provided, however, that Subordinating Lien Holder shall temporarily forbear from exercising its right to purchase its undivided percentage interest in and to the Property in the event a surviving spouse, child, parent, grandparent, grandchild, brother or sister of the Last Surviving Owner ("**Surviving Occupant**") is occupying or intends to occupy the Property as his or her primary residence, and the First Mortgage is either not in default, or Senior Lender is engaged in a Bona Fide Loan Modification in response to a default thereunder, and provided further that such right shall automatically recommence upon the earliest of any of the following:

(a) Senior Lien Holder elects to accelerate, or exercise its due-on-sale rights with respect to, the First Mortgage;

(b) Surviving Occupant ceases to occupy the Property as his or her primary residence;

(c) Surviving Occupant transfers or attempts to further transfer the Property to any new transferee;

(d) an event occurs which would constitute a default under the Unison HomeBuyer Agreement occasioning Subordinating Lien Holder's right to accelerate the Junior Lien, and which Surviving Occupant fails to cure, including, without limitation: the obligation to maintain and repair the property; to pay taxes and insurance thereon when due; to permit Subordinating Lien Holder to appraise and physically inspect the Property; or any other material event of default specified in the Unison HomeBuyer Agreement; or

(e) The death of Surviving Occupant.

The Term of the Unison HomeBuyer Agreement shall automatically extend to permit Subordinating Lien Holder to purchase its undivided percentage interest in and to the Property promptly following any of the events set forth in subsections 12(a) - (e) above.

13. This Subordination Agreement shall be binding upon all successors and assigns of Subordinating Lien Holder. Subordinating Lien Holder shall provide written notice to Senior Lender of any assignment of the Junior Lien and shall require of its assignees in writing that no subsequent assignment of the Junior Lien shall be effective until the delivery of written notice to Senior Lender of such assignment.

© 2017, **Unison**

Form 405 HBA-Multi (3/2/2017)

Unison Agreement Corp., a Delaware corporation

By: _____

Name:   Ismael Casas Jr

Title:    Vice President

Date signed: _____ 7/3/2019

## ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                    )
                                       ) ss.
COUNTY OF SAN FRANCISCO                 )

On _____, 20____, before me _____,
Notary Public, personally appeared _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

                                        (seal)

© 2017, Unison                                        Form 405 HBA-Multi (3/2/2017)

Omnibus Joint Exhibit Part B, page 0226

## BENEFITED PARTY'S ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the
identity of the individual who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or validity of that document.

State of California            )
County of San Francisco        )

On __JUL 3 1 2019__ before me, ____Angelica Padilla, a notary public____
personally appeared _____Ismael Casas, Jr._____ who proved to me
on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/
their signature(s) on the instrument the  person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

ANGELICA PADILLA
COMM. #2272624
Notary Public · California
San Francisco County
My Comm. Expires Dec. 23, 2022

Signature _____            **(Seal)**
          Angelica Padilla

DOC #2019-0299193 Page 8 of 9

## Exhibit A

**Bona Fide Loan Modification**. A modification to the First Mortgage offered by Senior Lender or its assignee: (a) in accordance with, or which is functionally equivalent to, a loan modification program approved by the government–sponsored enterprises (i.e. Fannie Mae or Freddie Mac), (b) granted in response to Owner's documented and verified inability to make required payments on the First Mortgage; and (c) restricted in its terms such that there is no "cash out" payment to Owner.

**Bona Fide Loss Mitigation**. A deed-in-lieu of foreclosure, Short Sale, or other action approved and undertaken by Senior Lender in response to: (a) Owner's documented and verified inability to make required payments on the First Mortgage; and (b) based on a documented and verified calculation of the actual market value of the Property by a neutral third party which calculation is free of fraud, bias or undue influence.

**Junior Foreclosure**: A judicial or non-judicial foreclosure action by Subordinating Lien Holder.

**Junior Lien**. The Unison HomeBuyer Agreement equity investment contract.

**Last Surviving Owner.** The last surviving individual person who is both a borrower under the First Mortgage and a signatory homeowner to the Unison HomeBuyer Agreement.

**Maximum Authorized Debt.** The maximum principal amount of total indebtedness secured by any lien on the Property that Owner is permitted to incur under, and as defined in, the Unison HomeBuyer Agreement.

**Memorandum of Unison HomeBuyer Agreement**. A contractual component of the Unison HomeBuyer Agreement equity investment contract constituting the Junior Lien on the Property.

**Mortgage.** A mortgage, deed of trust, trust deed or other security instrument.

**Owner(s).** The above-named homeowner(s) who is/are both borrower(s) under the First Mortgage, and signatory homeowner(s) to the Unison HomeBuyer Agreement.

**Senior Foreclosure**. A judicial or non-judicial foreclosure action by Senior Lender.

**Senior Lender.** The above-named lender which makes the First Mortgage on the Property, and all of its successors and assigns.

**Short Sale.** A sale by Owner wherein the Senior Lender on the First Mortgage expressly agrees to accept an amount that is less than the full amount due and payable to release the senior lien.

**Subordinating Lien Holder.** Unison Agreement Corp. and its successors and assigns.

**Surviving Occupant.** A surviving spouse, child, parent, grandparent, grandchild, brother or sister of the Last Surviving Owner who elects to occupy the Property as his or her established primary residence.

**Unison HomeBuyer Agreement.** The equity investment contract which constitutes the Junior Lien on the Property of Subordinate Lien Holder, consisting of the following: (a) the Unison HomeBuyer Option Agreement; (b) the Unison HomeBuyer Covenant Agreement; (c) the Unison HomeBuyer Subordinated Security Instrument; (d) the Memorandum of Unison HomeBuyer Agreement; and (e) all addenda and amendments thereto.

**Unison HomeBuyer Covenant Agreement.** A contractual component of the Unison HomeBuyer Agreement equity investment contract constituting the Junior Lien on the Property.

**Unison HomeBuyer Option Agreement.** A contractual component of the Unison HomeBuyer Agreement equity investment contract constituting the Junior Lien on the Property.

**Unison HomeBuyer Subordinated Security Instrument**. The contractual component of the Unison HomeBuyer Agreement equity investment contract which secures the Junior Lien and which is expressly made subordinate to the First Mortgage both by its terms and under this Subordination Agreement, and which is recorded following the recording of the First Mortgage in the jurisdiction where the Property is located.

© 2017, Unison

Form 405 HBA-Multi (3/2/2017)

## Exhibit B

### LEGAL DESCRIPTION OF PROPERTY

That certain real property situated in the City of Palm Springs, County of Riverside, State of CA, described as follows:

LOT 8 OF BLOCK 7, PALM CANYON MESA TRACT, AS PER MAP RECORDED IN BOOK 12, PAGES 52 THROUGH 56, BOTH INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN:  APN: 513-363-023-2

**[end of legal description]**

© 2017, Unison

Form 405 HBA-Multi (3/2/2017)

# EXHIBIT D

| | |
|---|---|
| **From:** | "Green, Joddi" |
| **Sent:** | Mon, 29 Mar 2021 16:04:05 +0000 |
| **To:** | "'andrea@escrowofthewest.com'" <andrea@escrowofthewest.com> |
| **Cc:** | "Pullum, Eric" <Eric.Pullum@bankofthewest.com>; "Nixon, Kelley" <Kelley.Nixon@bankofthewest.com> |
| **Subject:** | Howlett / 8810555781 / 02-035523-AC |
| **Importance:** | High |

Good Morning Andrea,

This loan is scheduled to fund today but we are needing the following documents before we are able to send the wire:

1.Signed Approved CD
2.Signed Seller CD (if applicable)
3.Signed Note
4.Signed Right of Rescission (if applicable)
5.Signed Security Instrument and Riders
6.Signed Grant Deed or Warranty Deed (if applicable)
**7.Completed USA Patriot Act Disclosure**
**8.Tax Payer Consent Form**

--Please include a copy of your wire instructions for accurate account information.--

**\*\*PLEASE NOTE: Our wire cut off time is 4:00 pm CST\*\***

Thank you,

Joddi Green
Sr CRES Funder, Non-officer
Consumer Real Estate Services (CRES) Closing
_____
Bank of the West
13505 California Street
Omaha, NE  68154
Joddi.green@bankofthewest.com
Office Hours: M-F 8am to 5pm CST

**BANK** OF THE **WEST**
**BNP PARIBAS**

Toni Zaiser | Controls and Governance Mgr, Vice President
T: 402.918.2811
C: 402.968.4491
Toni.Zaiser@Bankofthewest.com

**CRES Mission Statement**
"CRES provides our clients and communities with the best home lending product values in the market, leading digital capabilities and service that builds lasting relationships."

# EXHIBIT E

**From:**   "Andrea Cross" <andrea@escrowofthewest.com>
**Sent:**   Mon, 29 Mar 2021 18:05:21 +0000
**To:**    "Green, Joddi" <Joddi.Green@bankofthewest.com>
**Cc:**    "Pullum, Eric" <Eric.Pullum@bankofthewest.com>; "Nixon, Kelley"
<Kelley.Nixon@bankofthewest.com>
**Subject:**  RE: Howlett / 8810555781 / 02-035523-AC
**Attachments:** CD.pdf, OCT Wire.pdf, HOWLETT.pdf, Grant Deed-Warranty Deed.pdf

**Caution:** This email originated from an external sender. Do not click on links or open attachments unless you were expecting this message from this sender.

HI Joddi, see documents attached to review
*PASSWORD IS PROPERTY ZIPCODE

Thank you!

**WARNING!** WIRE FRAUD ADVISORY
Before sending funds, always call your Escrow team to verify wire information

**ESCROW OF THE WEST**

**Andrea Cross**
Senior Escrow Officer
_____
9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
**P**. (310) 402-5555 ext. 2071 | **E-Fax**. (310) 402-5556
**Direct**. (310) 402-5470
www.escrowofthewest.com

click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.

Rate Your Experience

BOTW 0002259

**From:** Green, Joddi [mailto:Joddi.Green@bankofthewest.com]
**Sent:** Monday, March 29, 2021 9:24 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Cc:** Pullum, Eric <Eric.Pullum@bankofthewest.com>; Nixon, Kelley <Kelley.Nixon@bankofthewest.com>
**Subject:** RE: Howlett / 8810555781 / 02-035523-AC

*We do not need the originals to fund...if you just email me a copy of the signed docs I can fund off of those.*

*If you are not 100% satisfied with my service or your experience with Bank of the West at any time, please let me or my manager know right away.*
*Our contact information is below. Thank you for choosing Bank of the West.*

If Your Dreams Don't Scare You, They Are Too Small
–Richard Branson

## Joddi Green
CRES Funding Specialist, Non-Officer
Consumer Real Estate Services (CRES) Closing

Bank of the West
13505 California Street
Omaha, NE  68154
Joddi.green@bankofthewest.com

**BANK OF THE WEST**
**BNP PARIBAS**

Toni Zaiser | Controls and Governance Mgr, Vice President
T: 402.918.2811
C: 402.968.4491
Toni.Zaiser@Bankofthewest.com

**CRES Mission Statement**
**"CRES provides our clients and communities with the best home lending product values in the market, leading digital capabilities and service that builds lasting relationships.**"

**From:** Andrea Cross [mailto:andrea@escrowofthewest.com]
**Sent:** Monday, March 29, 2021 11:16 AM
**To:** Green, Joddi <Joddi.Green@bankofthewest.com>
**Cc:** Pullum, Eric <Eric.Pullum@bankofthewest.com>; Nixon, Kelley <Kelley.Nixon@bankofthewest.com>
**Subject:** RE: Howlett / 8810555781 / 02-035523-AC

BOTW 0002260

**Caution:** This email originated from an external sender. Do not click on links or open attachments unless you were expecting this message from this sender.

Good Morning,
We will not receive originals until today (FedEx delivery) – do you require originals to fund? If so, you will not receive until tomorrow.

**WARNING!** WIRE FRAUD ADVISORY
Before sending funds, always call your Escrow team to verify wire information

**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
**P.** (310) 402-5555 ext. 2071 | **E-Fax.** (310) 402-5556
**Direct.** (310) 402-5470
www.escrowofthewest.com

click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete
this short survey about your recent experience.

Rate Your Experience

**From:** Green, Joddi [mailto:Joddi.Green@bankofthewest.com]
**Sent:** Monday, March 29, 2021 9:04 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Cc:** Pullum, Eric <Eric.Pullum@bankofthewest.com>; Nixon, Kelley <Kelley.Nixon@bankofthewest.com>
**Subject:** Howlett / 8810555781 / 02-035523-AC
**Importance:** High

Good Morning Andrea,

This loan is scheduled to fund today but we are needing the following documents before we are able to send the wire:

1. Signed Approved CD
2. Signed Seller CD (if applicable)
3. Signed Note
4. Signed Right of Rescission (if applicable)
5. Signed Security Instrument and Riders
6. Signed Grant Deed or Warranty Deed (if applicable)
**7. Completed USA Patriot Act Disclosure**
**8. Tax Payer Consent Form**

--Please include a copy of your wire instructions for accurate account information.--

**\*\*PLEASE NOTE: Our wire cut off time is 4:00 pm CST\*\***

Thank you,

Joddi Green
Sr CRES Funder, Non-officer
Consumer Real Estate Services (CRES) Closing
_____

Bank of the West
13505 California Street
Omaha, NE  68154
Joddi.green@bankofthewest.com
Office Hours: M-F 8am to 5pm CST

**BANK** OF THE **WEST**
**BNP PARIBAS**

Toni Zaiser | Controls and Governance Mgr, Vice President
T: 402.918.2811
C: 402.968.4491
Toni.Zaiser@Bankofthewest.com

**CRES Mission Statement**
**"CRES provides our clients and communities with the best home lending product values in the market, leading digital capabilities and service that builds lasting relationships."**

---

**IMPORTANT NOTICE: This message is intended only for the addressee and may contain confidential, privileged information. If you are not the intended recipient, you may not use, copy or disclose any information contained in the message. If you have received this message in error, please notify the sender by reply e-mail and delete the message.**

---

BOTW 0002262

**IMPORTANT NOTICE: This message is intended only for the addressee and may contain confidential, privileged information. If you are not the intended recipient, you may not use, copy or disclose any information contained in the message. If you have received this message in error, please notify the sender by reply e-mail and delete the message.**

BOTW 0002263

# EXHIBIT F

| | |
|---|---|
| **From:** | "Andrea Cross" <andrea@escrowofthewest.com> |
| **Sent:** | Mon, 29 Mar 2021 18:05:21 +0000 |
| **To:** | "Green, Joddi" <Joddi.Green@bankofthewest.com> |
| **Cc:** | "Pullum, Eric" <Eric.Pullum@bankofthewest.com>; "Nixon, Kelley" <Kelley.Nixon@bankofthewest.com> |
| **Subject:** | RE: Howlett / 8810555781 / 02-035523-AC |
| **Attachments:** | CD.pdf, OCT Wire.pdf, HOWLETT.pdf, Grant Deed-Warranty Deed.pdf |

**Caution:** This email originated from an external sender. Do not click on links or open attachments unless you were expecting this message from this sender.

HI Joddi, see documents attached to review
*PASSWORD IS PROPERTY ZIPCODE

Thank you!

**WARNING!** WIRE FRAUD ADVISORY
Before sending funds, always call your Escrow team to verify wire information

**ESCROW OF THE WEST**

**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
**P**. (310) 402-5555 ext. 2071 | **E-Fax**. (310) 402-5556
**Direct**. (310) 402-5470
www.escrowofthewest.com

click here for disclosure

We are always looking for ways to improve our service. Please take a moment to complete this short survey about your recent experience.

Rate Your Experience

# EXHIBIT G

# Closing Disclosure

| Closing Information | | Transaction Information | |
|---|---|---|---|
| Date Issued | 3/23/2021 | Borrower | Scott Howlett |
| Closing Date | 3/24/2021 | | |
| Disbursement Date | 3/26/2021 | | |
| Settlement Agent | Escrow of the West | Seller | Artur Elizarov |
| File # | 02-035523-AC | | |
| Property | 291 W. Overlook Road Palm Springs, CA 92264 | | |
| Sale Price | $1,355,000 | | |

## Summaries of Transactions

| | | | |
|---|---|---|---|
| **Due to Seller at Closing** | | **$ 1,358,071.46** | |
| 01. | Sale Price of Property | $1,355,000.00 | |
| 02. | Sale Price of Any Personal Property Included in Sale | | |
| 03. | | | |
| 04. | | | |
| 05. | | | |
| 06. | | | |
| 07. | | | |
| 08. | | | |
| **Adjustments for Items Paid by Seller in Advance** | | | |
| 09. | City/Town Taxes | to | |
| 10. | County Taxes | 3/26/21 to 7/1/21 | $3,071.46 |
| 11. | Assessments | to | |
| 12. | | | |
| 13. | | | |
| 14. | | | |
| 15. | | | |
| 16. | | | |
| **Due from Seller at Closing** | | **$ 573,597.60** | |
| 01 | Excess Deposit | | |
| 02. | Closing Cost Paid at Closing (J) | $ 82,597.60 | |
| 03. | Existing Loan(s) Assumed or Taken Subject to | | |
| 04. | Payoff of First Mortgage Loan | | |
| 05. | Payoff of Second Mortgage Loan to Unison Milgard Holdings LLC | $491,000.00 | |
| 06. | | | |
| 07. | | | |
| 08. | Seller Credit | | |
| 09. | | | |
| 10. | | | |
| 11. | | | |
| 12. | | | |
| 13. | | | |
| **Adjustments for Items Unpaid by Seller** | | | |
| 14. | City/Town Taxes | to | |
| 15. | County Taxes | to | |
| 16. | Assessments | to | |
| 17. | | | |
| 18. | | | |
| 19. | | | |

## CALCULATION

| | | |
|---|---|---|
| Total Due to Seller at Closing | $ 1,358,071.46 | |
| Total Due from Seller at Closing | $ -573,597.60 | |
| Cash [   ] From [ X ] To Seller | $ 784,473.86 | |

## Contact Information

| REAL ESTATE BROKER (B) | |
|---|---|
| Name | Compass |
| Address | 2165 San Diego Ave San Diego, CA 92110 |
| CA License ID | 01527365 |
| Contact | Maria Noel Krajco |
| Contact CA License ID | 02092247 |
| Email | mariasellscali@gmail.com |
| Phone | (714) 580-9103 |

| REAL ESTATE BROKER (S) | |
|---|---|
| Name | Keller Williams |
| Address | 70005 Mirage Cove Drive Rancho Mirage, CA 92270 |
| CA License ID | 01417409 |
| Contact | Will Cook |
| Contact CA License ID | 01879277 |
| Email | will@willcookrealestate.com |
| Phone | (760) 774-3066 |

| SETTLEMENT AGENT | |
|---|---|
| Name | Escrow of the West |
| Address | 9440 Santa Monica Blvd., #310 Beverly Hills, CA 90210 |
| CA License ID | 963-2166 |
| Contact | Andrea Cross |
| Contact CA License ID | |
| Email | andrea@escrowofthewest.com |
| Phone | (310) 402-5555 |

**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

Omnibus Joint Exhibit Part B, page 0241

DocuSign Envelope ID: A8E63BCB-9B5C-490E-879D-B5786DE5D7A1

# Closing Cost Details

| Loan Costs | | Seller -Paid | |
|---|---|---|---|
| | | At Closing | Before Closing |
| **A. Origination Charges** | | | |
| 01    % of Loan Amount (Points) | | | |
| 02 | | | |
| 03 | | | |
| 04 | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| 08 | | | |
| **B. Services Borrower Did Not Shop For** | | | |
| 01 | | | |
| 02 | | | |
| 03 | | | |
| 04 | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| **C. Services Borrower Did Shop For** | | | |
| 01    Termite Report/Work | to Rudy's Termite and Pest Control | $95.00 | |
| 02    Title - Admin Fee | to Escrow of the West | $250.00 | |
| 03    Title - Archive Fee | to Escrow of the West | $50.00 | |
| 04    Title - Escrow Fee | to Escrow of the West | $3,060.00 | |
| 05    Title - Messenger/Handling Fee | to Escrow of the West | $100.00 | |
| 06    Title - Overnight Fee | to Escrow of the West | $75.00 | |
| 07    Title - Reconveyance Fee | to Orange Coast Title | $10.00 | |
| 08    Title - Sub Escrow Fee | to Orange Coast Title | $62.50 | |
| 09    Title - Wire Fee | to Escrow of the West | $25.00 | |

| Other Costs | | | |
|---|---|---|---|
| **E. Government Fees** | | | |
| 01    Recording Fees | Deed: $50.00   Mortgage: | $50.00 | |
| 02    Transfer Tax - County | to Riverside County | $1,490.50 | |
| **F. Prepaids** | | | |
| 01    Homeowner's Insurance Premium (   mo.) to | | | |
| 02    Mortgage Insurance Premium (   mo.) | | | |
| 03    Prepaid Interest (   per day from   to   ) | | | |
| 04    Property Taxes  (2nd Install) to Riverside | | $5,819.60 | |
| 05 | | | |
| **G. Initial Escrow Payment at Closing** | | | |
| 01    Homeowner's Insurance          per month for     mo. | | | |
| 02    Mortgage Insurance          per month for     mo. | | | |
| 03    Property Taxes          per month for     mo. | | | |
| 04 | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| 08    Aggregate Adjustment | | | |
| **H. Other** | | | |
| 01    Home Warranty | to Old Republic Home Protection Inc. | $900.00 | |
| 02    Natural Hazard Disclosure Report | to Property ID | $99.00 | |
| 03    Real Estate Commission | to Compass | $33,875.00 | |
| 04    Real Estate Commission | to Keller Williams | $33,875.00 | |
| 05    Title - Owner's Title Insurance (optional) | to Orange Coast Title | $2,761.00 | |
| 06 | | | |
| 07 | | | |
| 08 | | | |
| 09 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| **J. TOTAL CLOSING COSTS** | | $  82,597.60 | |

Omnibus Joint Exhibit Part B, page 0242

| PAYOFF BREAKDOWN(S) | Borrower Debit | Borrower Credit | Seller Debit | Seller Credit |
|---|---|---|---|---|
| Payoff of Second Mortgage Loan to Unison Milgard Holdings LLC $491,000.00 | | | | |
| Principal Balance | | | $491,000.00 | |

CLOSING DISCLOSURE
Printed: March 23, 2021   06:14pm

**ESTIMATED**

## Confirm Receipt

By signing, you are only confirming that you have received this form.

DocuSigned by:

*Artur Elizarov*

Artur Elizarov

3/24/2021

Date

CLOSING DISCLOSURE                              **ESTIMATED**
Printed: March 23, 2021   06:14pm

# EXHIBIT 22

# BANK OF THE WEST'S RESPONSES TO GOLDWATER BANK, N.A.'S REQUESTS FOR ADMISSIONS, SET ONE

HALL GRIFFIN LLP
HOWARD D. HALL, State Bar No. 145024
  *hdhall@hallgriffin.com*
JEREMY T. KATZ, State Bar No. 267361
  *jkatz@hallgriffin.com*
KASANDRA C. GOLDBERG, State Bar No. 345364
  *kgoldberg@hallgriffin.com*
1851 East First Street, 10th Floor
Santa Ana, California 92705-4052
Telephone: (714) 918-7000
Facsimile: (714) 918-6996

Attorneys for Defendant and Cross-
Complainant SCOTT HOWLETT;
Defendant BMO HARRIS BANK N.A.,
SUCCESSOR BY MERGER TO BANK
OF THE WEST

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| Goldwater Bank, N.A.<br><br>        Plaintiff,<br><br>    vs.<br><br>ARTUR ELIZAROV; UNISON AGREEMENT CORP.; SCOTT HOWLETT; BANK OF THE WEST; and ILYA ALEKSEYEFF,<br><br>        Defendants.<br><br>AND RELATED CROSS-ACTIONS | CASE NO. 21-cv-00616-JWH-SP<br><br>JUDGE:    Hon. John W. Holcomb<br>CTRM.:    9D<br><br>**DEFENDANT BMO HARRIS BANK N.A., SUCCESSOR BY MERGER TO BANK OF THE WEST'S RESPONSES TO PLAINTIFF GOLDWATER BANK, N.A.'S FIRST SET REQUESTS FOR ADMISSION**<br><br>TRIAL DATE:    November 27, 2023 |

HALL GRIFFIN

1

4891-3487-3170.3

Omnibus Joint Exhibit Part B, page 0246

1  PROPOUNDING PARTY:  Plaintiff GOLDWATER BANK, N.A.

2  RESPONDING PARTY:     Defendant BMO HARRIS BANK N.A., SUCCESSOR

3                                      BY MERGER TO BANK OF THE WEST

4  SET NO.:                    One

5        Pursuant to Federal Rules of Civil Procedure, Rule 36, Defendant BMO

6  HARRIS BANK N.A., SUCCESSOR BY MERGER TO BANK OF THE WEST

7  ("Responding Party") hereby submits these objections and responses to the Plaintiff

8  GOLDWATER BANK, N.A.'s ("Propounding Party") first set of Requests for

9  Admission.

10                          **PRELIMINARY STATEMENT**

11        Responding Party has not completed its investigation of the facts relating to

12  this case, its discovery or its preparation for trial.  All responses and objections

13  contained herein are based only upon information that is presently available to and

14  specifically known by Responding Party.  It is anticipated that further discovery,

15  independent investigation, legal research and analysis will supply additional facts

16  and add meaning to known facts, as well as establish entirely new factual

17  conclusions and legal contentions, all of which may lead to substantial additions to,

18  changes in and variations from the responses set forth herein.  The following

19  objections and responses are made without prejudice to Responding Party's right to

20  produce at trial, or otherwise, evidence regarding any subsequently discovered

21  information.  Responding Party accordingly reserves the right to modify and amend

22  any and all responses herein as research is completed and contentions are made.

23                  **RESPONSES TO REQUESTS FOR ADMISSION**

24  **REQUEST FOR ADMISSION NO. 1:**

25        Admit that, prior to March 29, 2021, You received a copy of a document

26  entitled "Preliminary Title Report" for the Subject Property.

27  **RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

28        Admit.

2

4891-3487-3170.3

Omnibus Joint Exhibit Part B, page 0247

HALL GRIFFIN

**REQUEST FOR ADMISSION NO. 2:**

Admit that **Exhibit A**, attached to these Requests, is a true and accurate copy of the Preliminary Title Report that You received prior to March 29, 2021.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Deny.  Exhibit A appears to be a partial *excerpt* from a Preliminary Title Report, the full version of which was produced by Responding Party as BOTW1662–BOTW1682.

**REQUEST FOR ADMISSION NO. 3:**

Admit that, prior to March 29, 2021, You received a copy of a document entitled "Amended Preliminary Report" for the Subject Property

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Deny.

**REQUEST FOR ADMISSION NO. 4:**

Admit that **Exhibit B**, attached to these Requests, is a true and accurate copy of the Amended Preliminary Title Report for the Subject Property that You had in your possession prior to March 29, 2021.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

This request is objectionably compound.

Responding Party admits that Exhibit B appears to be a document styled as an "Amended Preliminary Report" relating to the Subject Property known as 291 Overlook Road in Palm Springs, CA.

Responding Party denies that Exhibit B was in Responding Party's possession prior to March 29, 2021.

**REQUEST FOR ADMISSION NO. 5:**

Admit that, prior to March 29, 2021, You had in Your possession a copy of a document entitled "Unison Homebuyer Subordination Agreement" for the Subject Property.

HALL GRIFFIN

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Deny.

**REQUEST FOR ADMISSION NO. 6:**

Admit that **Exhibit C**, attached to these Requests, is a true and accurate copy of the Unison Homebuyer Subordination Agreement that was in your possession prior to March 29, 2021.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Deny.

Exhibit C is a document styled "Unison Homebuyer *Uniform* Subordination Agreement" (emphasis added).

Responding Party did not have a copy of Exhibit C in Responding Party's possession prior to March 29, 2021.

**REQUEST FOR ADMISSION NO. 7:**

Admit that **Exhibit D**, attached to these Requests, is a true and accurate copy of certain email correspondence sent by You on March 29, 2021.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Admit.

**REQUEST FOR ADMISSION NO. 8:**

Admit that **Exhibit E**, attached to these Requests, is a true and accurate copy of certain email correspondence between You and Escrow of the West on March 29, 2021.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Admit.

**REQUEST FOR ADMISSION NO. 9:**

Admit that **Exhibit F**, attached to these Requests, is a true and accurate copy of certain email correspondence received by You from Escrow of the West on March 29, 2021

BANK OF THE WEST'S RESPONSES TO GOLDWATER'S RFAS (SET ONE)

4891-3487-3170.3

Omnibus Joint Exhibit Part B, page 0249

HALL GRIFFIN

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Responding Party objections to this request as being cumulative and duplicative of the information requested in Request for Admission No. 8, in that Exhibit F is identical to the first page of Exhibit E  (both are Bates-numbered BOTW002259.)

Subject to and without waiving the foregoing, Responding Party responds as follows:

Admit.

**REQUEST FOR ADMISSION NO. 10:**

Admit that **Exhibit G**, attached to these Requests, is a true and accurate copy of one of the attachments to **Exhibit F**, and received by You from Escrow of the West on March 29, 2021

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

This request is objectionably compound.

Exhibit G is a "Closing Disclosure" for the subject transaction that purports to be dated "3/23/2021," and "Printed [on] March 23, 2021 [at] 6:14pm," and executed on "3/24/2021," with an anticipated "Closing Date [of] 3/24/2021."

Prior to March 29, 2021, Responding Party had already received from Escrow of the West a "Master Estimated Settlement Statement dated "March 25, 2021," and "printed on March 25, 2021 at 1:16 pm.," with an anticipated "Closing Date [of] March 30, 2021" (BOTW002331–BOTW002332).  So, by the time Responding Party first received Exhibit G on March 29, 2021, the information in Exhibit G was already stale, and had already been replaced/superseded.

Responding Party admits that email dated March 29, 2021 from Escrow of the West in Exhibit F is the method by which Responding Party first received the already stale, out-of-date, and superseded Exhibit G.

**REQUEST FOR ADMISSION NO. 11:**

Admit that **Exhibit G**, attached to these requests, was received by You from

5

4891-3487-3170.3

HALL GRIFFIN

Omnibus Joint Exhibit Part B, page 0250

1  Escrow of the West prior to Your funding of the loan for Defendant Howlett for the

2  Subject Property.

3  **RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

4      This request is objectionably compound.

5      Exhibit G is a "Closing Disclosure" for the subject transaction that purports to

6  be dated "3/23/2021," and "Printed [on] March 23, 2021 [at] 6:14pm," and executed

7  on "3/24/2021," with an anticipated "Closing Date [of] 3/24/2021."

8      Prior to March 29, 2021, Responding Party had already received from Escrow

9  of the West a "Master Estimated Settlement Statement dated "March 25, 2021," and

10  "printed on March 25, 2021 at 1:16 pm.," with an anticipated "Closing Date [of]

11  March 30, 2021" (BOTW002331–BOTW002332). So, by the time Responding

12  Party first received Exhibit G on March 29, 2021, the information in Exhibit G was

13  already stale, and had already been replaced/superseded. Responding Party admits

14  that email dated March 29, 2021 from Escrow of the West in Exhibit F is the

15  method by which Responding Party first received the already stale, out-of-date, and

16  superseded Exhibit G.  Responding Party further admits that it funded the loan

17  thereafter.

18  **REQUEST FOR ADMISSION NO. 12:**

19      Admit that **Exhibit G**, attached to these requests, was received by You from

20  Escrow of the West prior to the closing of the sale of the Subject Property to

21  Defendant Howlett.

22  **RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

23      This request is objectionably compound.

24      Exhibit G is a "Closing Disclosure" for the subject transaction that purports to

25  be dated "3/23/2021," and "Printed [on] March 23, 2021 [at] 6:14pm," and executed

26  on "3/24/2021," with an anticipated "Closing Date [of] 3/24/2021."

27      Prior to March 29, 2021, Responding Party had already received from Escrow

28  of the West a "Master Estimated Settlement Statement dated "March 25, 2021," and

HALL GRIFFIN

"printed on March 25, 2021 at 1:16 pm.," with an anticipated "Closing Date [of] March 30, 2021" (BOTW002331–BOTW002332).  So, by the time Responding Party first received Exhibit G on March 29, 2021, the information in Exhibit G was already stale, and had already been replaced/superseded.

Responding Party admits that email dated March 29, 2021 from Escrow of the West in Exhibit F is the method by which Responding Party first received the already stale, out-of-date, and superseded Exhibit G.  Responding Party further admits that the sale of the Subject Property closed thereafter.


DATED:  March 9, 2023                    HALL GRIFFIN LLP


By: _____
       Howard D. Hall
       Jeremy T. Katz
       Kasandra C. Goldberg
Attorneys for Defendant and Cross-
Complainant SCOTT HOWLETT; Defendant
BMO HARRIS BANK N.A., SUCCESSOR BY
MERGER TO BANK OF THE WEST

HALL GRIFFIN

BANK OF THE WEST'S RESPONSES TO GOLDWATER'S RFAS (SET ONE)

4891-3487-3170.3

## VERIFICATION

I have read the foregoing **DEFENDANT BMO HARRIS BANK N.A., SUCCESSOR BY MERGER TO BANK OF THE WEST'S RESPONSES TO PLAINTIFF GOLDWATER BANK, N.A.'S FIRST SET REQUESTS FOR ADMISSION.** and know its contents.

I am an authorized agent for BMO Harris Bank, N.A., successor by merger to BANK OF THE WEST, a party to this action, and am authorized to make this verification for and on its behalf.   I am familiar with how BMO Harris Bank N.A., successor by merger to Bank of the West, regularly maintains its business records. I have reviewed those business records. The matters stated in the foregoing document are true based on my review of such business records, except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of Nebraska that the foregoing is true and correct.

Executed on ___March 8th, 2023___, at ___Omaha, NE___.

_____Doris Lawson_____          [signature]
Print Name of Signatory          Signature

---

8

BANK OF THE WEST'S RESPONSES TO GOLDWATER'S RFAS (SET ONE)

4891-3487-3170.3

1

## PROOF OF SERVICE

2   I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 1851 East First Street, 10th Floor, Santa Ana, CA 92705-4052.

3

4   On March 9, 2023, I served the within document(s) described as**:**

5   **DEFENDANT BMO HARRIS BANK N.A., SUCCESSOR BY MERGER TO BANK OF THE WEST'S RESPONSES TO PLAINTIFF GOLDWATER BANK, N.A.'S FIRST SET REQUESTS FOR ADMISSION**

6

7   on each interested party in this action, as stated below:

8   ### SEE ATTACHED SERVICE LIST

9   **BY E-MAIL:**  I caused a true copy of the document(s) to be sent to the persons at the corresponding electronic address as indicated above on the above-mentioned date.  My electronic notification address is cbrown@hallgriffin.com.  I am readily familiar with this firm's Microsoft Outlook electronic mail system and did not receive any electronic message or other indication that the transmission was unsuccessful.

10

11

12   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

13

14   Executed on March 9, 2023, at Santa Ana, California.

15

16   _____
    Cyndee Brown

17

18

19

20

21

22

23

24

25

26

27

28

HALL GRIFFIN

**SERVICE LIST**
*Goldwater Bank, N.A. v. Artur Elizarov, et al.*
**Case No. 5:21-cv-00616-JWH-SP**

Sean C. Wagner, Esq.
Derek M. Bast, Esq.
Abbey M. Krysak, Esq.
Wagner Hicks PLLC
831 E. Morehead St., Suite 860
Charlotte, NC 28202
(704) 705-7538; Fax: (704) 705-7787
sean.wagner@wagnerhicks.law
derek.bast@wagnerhicks.law
abbey.krysak@wagnerhicks.law
**Pro Hac Vice Attorneys for Plaintiff and Cross-Defendant Goldwater Bank. N.A.**

John Forest Hilbert, Esq.
Joseph A. LeVota, Esq.
Hilbert & Satterly LLP
409 Camino Del Rio South, Suite 104
San Diego, CA 92108
(619) 795-0300; Fax: (619) 501-6855
jhilbert@hscallaw.com
jlevota@hscallaw.com
trohner@hscallaw.com
sreyes@hscallaw.com
**Attorneys for Plaintiff and Cross-Defendant Goldwater Bank, N.A.**

Marie B. Maurice, Esq.
Marina Samson, Esq.
Ivie, McNeill, Wyatt, Purcell & Diggs
444 S. Flower St., Suite 1800
Los Angeles, CA 90071
(213) 489-0028; Fax: (213) 489-0552
mmaurice@imwlaw.com
msamson@imwlaw.com
**Attorneys for Plaintiff and Cross-Defendant Goldwater Bank. N.A.**

Ilya Alekseyeff, Esq.
LOIA, Inc. (APLC)
727 W. 7th St., PH 1-13
Los Angeles, CA 90017
(213) 537-4592
ilya@loia.legal
**Attorneys for Defendant and Cross-Defendant Artur Elizarov, and Defendant Ilya Alekseyeff (in Pro Per)**

Denis Shmidt, Esq.
Nabil A. Bisharat, Esq.
Orsus Gate LLP
16 N. Marengo Ave., Suite 316
Pasadena, CA 91101
(213) 373-4357
dshmidt@orsusgate.com
nbisharat@orsusgate.com
**Attorneys for Defendant Unison Agreement Corp.**

# EXHIBIT 23

## CLOSING DISCLOSURE PROVIDED TO BANK OF THE WEST PRIOR TO CLOSE ESCROW
## (CROSS DEPO. EX. 33)

# Closing Disclosure

| Closing Information | | Transaction Information | |
|---|---|---|---|
| Date Issued | 3/23/2021 | Borrower | Scott Howlett |
| Closing Date | 3/24/2021 | | |
| Disbursement Date | 3/26/2021 | | |
| Settlement Agent | Escrow of the West | Seller | Artur Blizarov |
| File # | 02-035523-AC | | |
| Property | 291 W. Overlook Road | | |
| | Palm Springs, CA 92264 | | |
| Sale Price | $1,355,000 | | |

## Summaries of Transactions

### SELLER'S TRANSACTION

| Due to Seller at Closing | | | $ 1,358,071.46 |
|---|---|---|---|
| 01. | Sale Price of Property | | $1,355,000.00 |
| 02. | Sale Price of Any Personal Property Included in Sale | | |
| 03. | | | |
| 04. | | | |
| 05. | | | |
| 06. | | | |
| 07. | | | |
| 08. | | | |
| **Adjustments for Items Paid by Seller in Advance** | | | |
| 09. | City/Town Taxes | to | |
| 10. | County Taxes | 3/26/21 to 7/1/21 | $3,071.46 |
| 11. | Assessments | to | |
| 12. | | | |
| 13. | | | |
| 14. | | | |
| 15. | | | |
| 16. | | | |
| **Due from Seller at Closing** | | | **$ 573,597.60** |
| 01. | Excess Deposit | | |
| 02. | Closing Cost Paid at Closing (J) | | $ 82,597.60 |
| 03. | Existing Loan(s) Assumed or Taken Subject to | | |
| 04. | Payoff of First Mortgage Loan | | |
| 05. | Payoff of Second Mortgage Loan to Unison Milgard Holdings LLC | | $491,000.00 |
| 06. | | | |
| 07. | | | |
| 08. | Seller Credit | | |
| 09. | | | |
| 10. | | | |
| 11. | | | |
| 12. | | | |
| 13. | | | |
| **Adjustments for Items Unpaid by Seller** | | | |
| 14. | City/Town Taxes | to | |
| 15. | County Taxes | to | |
| 16. | Assessments | to | |
| 17. | | | |
| 18. | | | |
| 19. | | | |

### CALCULATION

| | |
|---|---|
| Total Due to Seller at Closing | $ 1,358,071.46 |
| Total Due from Seller at Closing | $ -573,597.60 |
| Cash [  ] From [ X ] To Seller | $ 784,473.86 |

## Contact Information

| REAL ESTATE BROKER (B) | |
|---|---|
| Name | Compass |
| Address | 2165 San Diego Ave |
| | San Diego, CA 92110 |
| CA License ID | 01527365 |
| Contact | Maria Noel Krajco |
| Contact CA License ID | 02092247 |
| Email | mariasellscali@gmail.com |
| Phone | (714) 580-9103 |
| **REAL ESTATE BROKER (S)** | |
| Name | Keller Williams |
| Address | 70005 Mirage Cove Drive |
| | Rancho Mirage, CA 92270 |
| CA License ID | 01417409 |
| Contact | Will Cook |
| Contact CA License ID | 01879277 |
| Email | will@willcookrealestate.com |
| Phone | (760) 774-3066 |
| **SETTLEMENT AGENT** | |
| Name | Escrow of the West |
| Address | 9440 Santa Monica Blvd., #310 |
| | Beverly Hills, CA 90210 |
| CA License ID | 963-2166 |
| Contact | Andrea Cross |
| Contact CA License ID | |
| Email | andrea@escrowofthewest.com |
| Phone | (310) 402-5555 |

**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

EXHIBIT 33

**Closing Cost Details**

| Loan Costs | | Seller -Paid | |
|---|---|---|---|
| | | At Closing | Before Closing |
| **A. Origination Charges** | | | |
| 01     % of Loan Amount (Points) | | | |
| 02 | | | |
| 03 | | | |
| 04 | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| 08 | | | |
| **B. Services Borrower Did Not Shop For** | | | |
| 01 | | | |
| 02 | | | |
| 03 | | | |
| 04 | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| **C. Services Borrower Did Shop For** | | | |
| 01   Termite Report/Work | to Rudy's Termite and Pest Control | $95.00 | |
| 02   Title - Admin Fee | to Escrow of the West | $250.00 | |
| 03   Title - Archive Fee | to Escrow of the West | $50.00 | |
| 04   Title - Escrow Fee | to Escrow of the West | $3,060.00 | |
| 05   Title - Messenger/Handling Fee | to Escrow of the West | $100.00 | |
| 06   Title - Overnight Fee | to Escrow of the West | $75.00 | |
| 07   Title - Reconveyance Fee | to Orange Coast Title | $10.00 | |
| 08   Title - Sub Escrow Fee | to Orange Coast Title | $62.50 | |
| 09   Title - Wire Fee | to Escrow of the West | $25.00 | |

| Other Costs | | | |
|---|---|---|---|
| **E. Taxes and Other Government Fees** | | | |
| 01   Recording Fees | Deed: $50.00  Mortgage: | $50.00 | |
| 02   Transfer Tax - County | to Riverside County | $1,490.50 | |
| **F. Prepaids** | | | |
| 01   Homeowner's Insurance Premium (   mo.) to | | | |
| 02   Mortgage Insurance Premium (   mo.) | | | |
| 03   Prepaid Interest (   per day from   to   ) | | | |
| 04   Property Taxes (2nd Install) to Riverside | | $5,819.60 | |
| 05 | | | |
| **G. Initial Escrow Payment at Closing** | | | |
| 01   Homeowner's Insurance       per month for       mo. | | | |
| 02   Mortgage Insurance          per month for       mo. | | | |
| 03   Property Taxes              per month for       mo. | | | |
| 04 | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| 08   Aggregate Adjustment | | | |
| **H. Other** | | | |
| 01   Home Warranty | to Old Republic Home Protection Inc. | $900.00 | |
| 02   Natural Hazard Disclosure Report | to Property ID | $99.00 | |
| 03   Real Estate Commission | to Compass | $33,875.00 | |
| 04   Real Estate Commission | to Keller Williams | $33,875.00 | |
| 05   Title - Owner's Title Insurance (optional) | to Orange Coast Title | $2,761.00 | |
| 06 | | | |
| 07 | | | |
| 08 | | | |
| 09 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| **J. TOTAL CLOSING COSTS** | | $  82,597.60 | |

Omnibus Joint Exhibit Part B, page 0258

| PAYOFF BREAKDOWN(S) | Borrower Debit | Borrower Credit | Seller Debit | Seller Credit |
|---|---|---|---|---|
| Payoff of Second Mortgage Loan to Unison Milgard Holdings LLC | | | | |
| $491,000.00 | | | | |
| Principal Balance | | | $491,000.00 | |

**Confirm Receipt**

By signing, you are only confirming that you have received this form.

DocuSigned by:

*Artur Elizarov*

007384F2578540C...

Artur Elizarov

3/24/2021

Date

# EXHIBIT 24

## EXCERPTS FROM THE TRANSCRIPT OF THE DEPOSITION OF ANDREA CROSS

```
 1                    UNITED STATES DISTRICT COURT

 2          CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

 3                            - - -

 4     GOLDWATER BANK, N.A.,         )
                                     )
 5             Plaintiff,            )
                                     )
 6             vs.                   ) No. 5:21-cv-00616-JWH-SP
                                     )
 7     ARTUR ELIZAROV; UNISON        )
       AGREEMENT CORP.; SCOTT        )
 8     HOWLETT; BANK OF THE WEST;    )
       and ILYA ALEKSEYEFF,          )
 9                                   )
               Defendants.           )
10                                   )
       AND RELATED CROSS-ACTIONS.

11

12

13

14

15                        DEPOSITION OF

16                        ANDREA CROSS

17                 Wednesday, June 29, 2022

18

19

20

21

22     Reported By:

23     MICHELLE K. BAILEY
       RPR, CSR No. 10713

24     Job No. 5294007

25     Pages 1 - 172

                                            Page 1
```

Omnibus Joint Exhibit Part B, page 0262

```
 1                UNITED STATES DISTRICT COURT

 2          CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

 3                          - - -

 4    GOLDWATER BANK, N.A.,        )
                                   )
 5             Plaintiff,          )
                                   )
 6             vs.                 ) No. 5:21-cv-00616-JWH-SP
                                   )
 7    ARTUR ELIZAROV; UNISON       )
      AGREEMENT CORP.; SCOTT       )
 8    HOWLETT; BANK OF THE WEST;   )
      and ILYA ALEKSEYEFF,         )
 9                                 )
               Defendants.         )
10                                 )
      AND RELATED CROSS-ACTIONS.

11

12

13

14

15          Deposition of ANDREA CROSS, taken on behalf of

16    the Defendants, beginning at 10:03 a.m., and ending at

17    4:05 p.m., on Wednesday, June 29, 2022, before MICHELLE

18    K. BAILEY, RPR, CSR No. 10713.

19

20

21

22

23

24

25

                                                      Page  2
```

Omnibus Joint Exhibit Part B, page 0263

```
 1      APPEARANCES:
 2
        For the Plaintiff Goldwater Bank, N.A.:
 3
            HILBERT & SATTERLY LLP
 4          BY:  JOSEPH A. LEVOTA, ESQ.
            409 Camino Del Rio South
 5          Suite 104
            San Diego, California  92108
 6          619.795.0300
            jlevota@hscallaw.com
 7
            -and-
 8
            WAGNER HICKS, PLLC
 9          BY:  DEREK M. BAST, ESQ.
            831 East Morehead Street
10          Suite 860
            Charlotte, North Carolina  28202
11          704.705.7538
            derek.bast@wagnerhicks.law
12
13      For the Defendants Scott Howlett and Bank of the West:
14          HALL GRIFFIN
            BY:  RYAN C. THOMASON, ESQ.
15               JEREMY KATZ, ESQ.
            1851 East First Street
16          10th Floor
            Santa Ana, California  92705
17          714.918.7000
            rthomason@hallgriffin.com
18
19      For the Bank of the West:
20          KRISHEL LAW FIRM
            BY:  DANIEL KRISHEL, ESQ.
21          4500 Park Granada
            Suite 202
22          Calabasas, California  91302
            818.883.8759
23
24
25
                                              Page  3
```

```
 1    APPEARANCES (continued):
 2

      For the Defendant Artur Elizarov
 3    And Ilya Alekseyeff (in pro per):
 4        LOIA, INC. (APLC)
          BY:  ILYA ALEKSEYEFF, ESQ.
 5        8721 Santa Monica Boulevard
          Suite 119
 6        West Hollywood, California  90069
          213.537.4592
 7        ilya@loia.legal
 8

      For the Defendant Unison Agreement Corp.:
 9
          ORSUS GATE LLP
10        BY:  NABIL BISHARAT, ESQ.
          16 N. Marengo Avenue
11        Suite 316
          Pasadena, California  California
12        213.973.2052
          nbisharat@orsusgate.com
13
14
15
16
17
18
19
20
21
22
23
24
25

                                        Page  4
```

```
 1                    I N D E X
 2
      WITNESS:  ANDREA CROSS
 3                                               PAGE
 4   EXAMINATION BY MR. THOMASON                     9
 5   EXAMINATION BY MR. LEVOTA                      58
 6   EXAMINATION BY MR. BAST                       145
 7   EXAMINATION BY MR. ALEKSEYEFF                 155
 8   EXAMINATION BY MR. BISHARAT                   163
 9   EXAMINATION BY MR. KATZ                       166
10
11
12                    E X H I B I T S
13   EXHIBIT NO.         DESCRIPTION            PAGE
14   Exhibit 1      Notice of Deposition         15
15   Exhibit 2      California residential        17
                    purchase and sale agreement
16                  and joint escrow instructions
                    between Elizarov and Howlett
17
     Exhibit 3      Escrow of the West            18
18                  supplemental escrow
                    instructions
19
     Exhibit 4      Preliminary Report, dated     19
20                  2/18/2021
21   Exhibit 5      Amended Preliminary Report,   19
                    dated 3/3/2021
22
     Exhibit 6      E-mail string, dated 3/22/2021  20
23                  through 3/26/2021
24   Exhibit 7      Request for Demand, dated     21
                    3/3/21
25
                                              Page 5
```

Omnibus Joint Exhibit Part B, page 0266

```
 1                         I N D E X
                          (Continued)
 2
                        E X H I B I T S
 3
     EXHIBIT NO.            DESCRIPTION              PAGE
 4
     Exhibit 8     E-mail from Andrea Cross with      38
 5                 attache Borrower's
                   Authorization
 6
     Exhibit 9     Unison Payoff Demand Letter        23
 7
     Exhibit 10    Weststar Payoff Calculation        24
 8                 Letter
 9   Exhibit 11    E-mail string, dated               25
                   3/25/2021, Subject: Unison
10
     Exhibit 12    Supplemental Escrow                61
11                 Instructions, dated 2/17/21
12   Exhibit 13    Amended Escrow Instructions.       67
                   Dated 3/23/21
13
     Exhibit 14    Acceptance Offer, dated            68
14                 2/16/21
15   Exhibit 15    Lenders Closing Instructions,      69
                   dated 3/27/21
16
     Exhibit 16    E-mail string between Peter        70
17                 Hil and Andrea Cross, dated
                   3/22/21 through 3/24/21
18
     Exhibit 17    E-mail string with attached        78
19                 payoff demand
20   Exhibit 18    WestStar Payoff Calculation,       82
                   dated 3/24/21
21
     Exhibit 19    WestStar Payoff Calculation,       83
22                 dated 3/29/21
23   Exhibit 20    Request for Demand, dated          98
                   3/3/21
24
     Exhibit 21    Letter to Ilya Alekseyeff from    100
25                 Unison, dated 3/4/21
```

Page 6

```
1                      I N D E X
                      (Continued)
2

3                    E X H I B I T S
4    EXHIBIT NO.         DESCRIPTION              PAGE
```

| EXHIBIT NO. | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 22 | Letter to Ilya Alekseyeff from Unison, dated 3/4/21 | 101 |
| Exhibit 23 | Preliminary Report , dated 2/18/21 | 106 |
| Exhibit 24 | Unison Homebuyer Uniform Subordination Agreement, dated 8/7/19 | 108 |
| Exhibit 25 | E-mail string between Andrea Cross, Melissa Melendez and Peter Hill, dated 3/22/21 | 110 |
| Exhibit 26 | E-mail string between Andrea Cross and Artur Elizarov, dated 3/25/21 | 111 |
| Exhibit 27 | E-mail between Andrea Cross and Artur Elizarov, dated 3/25/21, with attached Seller's Estimated Settlement Agreement | 114 |
| Exhibit 28 | E-mail string between Andrea Cross and OC Title, dated 3/1, 3/25 and 3/29/21 | 121 |
| Exhibit 29 | E-mail string between Andrea Cross and Artur Elizarov, dated 3/22 and 3/24/21 | 128 |
| Exhibit 30 | E-mail string between Andrea Cross and Unison, dated 3/4, 3/5 and 3/17/21 | 129 |
| Exhibit 31 | E-mail string between Andrea Cross and Unison, dated 3/5, 3/17, 3/19 and 3/22/21 | 131 |

Page 7

```
 1                        I N D E X
                         (Continued)
 2
 3                      E X H I B I T S
 4      EXHIBIT NO.          DESCRIPTION                PAGE
 5      Exhibit 32      E-mail string between Andrea      132
                        Cross and Unison, dated 3/22
 6                      and 3/23/21
 7      Exhibit 33      Closing Disclosure, dated         133
                        3/23/21
 8
         Exhibit 34     Seller's Final Settlement         135
 9                      Statement, dated 3/30/21
10      Exhibit 35      Request for Outgoing Bank Wire    136
                        Transfer, dated 3/30/21
11
         Exhibit 36     E-mail string between Andrea      137
12                      Cross and Artur Elizarov,
                        dated 3/29 and 3/30
13
         Exhibit 37     Fee Transfer to Escrow of the     139
14                      West, dated 3/30/21
15      Exhibit 38      E-mail string between Andrea      139
                        Cross and Scott Howlett, dated
16                      4/13 and 4/14/21
17      Exhibit 39      E-mail string between Leslie      143
                        Zuniga and Scott Howlett,
18                      dated 3/1/21
19      Exhibit 40      Declaration of Anita Padilla      144
                        Certifying Record of Regularly
20                      Conducted Business Activity,
                        dated 5/21/21
21
22
23
24
25
                                             Page  8
```

```
 1                    WEDNESDAY, JUNE 29, 2022

 2                         10:03 A.M.

 3

 4                       ANDREA CROSS,

 5                having first been duly sworn

 6                by the reporter, was examined

 7                 and testified as follows:

 8

 9                       EXAMINATION

10    BY MR. THOMASON:

11         Q.  Good morning, Andrea.  How are you doing?

12         A.  I'm well.  Thank you.

13         Q.  Thank you for joining us.  I'm just going to

14    kind of go through some housekeeping here at the

15    beginning.  If you could, just please state and spell

16    your name for the record.

17         A.  My name is Andrea Cross.  First name Andrea,

18    A-n-d-r-e-a; last name Cross, C-r-o-s-s.

19         Q.  My name is Ryan Thomason.  I am an attorney for

20    Scott Howlett and Bank of the West.  Jeremy Katz is also

21    counsel for Scott Howlett and Bank of the West.

22              Because we have so many parties here, we're

23    going to kind of shorten names.  When I refer to

24    Howlett, I'm referring to Scott Howlett, who is a

25    defendant in this action, where the property that he
```

Page 9

```
 1    a four-page document.  EOTW 55 through 58.

 2    BY MR. THOMASON:

 3         Q.  And do you recognize this document?

 4         A.  Yes.

 5         Q.  And was this document a part of the escrow file

 6    for the transaction?

 7         A.  Yes.

 8         Q.  Now we're going to pull up -- basically, what

 9    was an e-mail chain between you, Peter Hill of Goldwater

10    Bank, and Melissa Melendez of Weststar Mortgage

11    Corporation March corporation, between March 22nd, 2021,

12    through March 26, 2021.  This came from Goldwater's

13    production of documents from Escrow of the West.  It's a

14    rather long one.  But let me just go through this --

15              MR. KATZ:  Hold on.

16              It's a 17-page document starting at EOTW 164.

17    And I'm going to scroll all the way to the bottom.

18    Through EOTW 180.  And let's mark this as deposition

19    Exhibit 6.

20              (Exhibit 6 marked)

21    BY MR. THOMASON:

22         Q.  And so do you recognize this document, the

23    e-mail chain, basically?

24         A.  Yes.

25              MR. KATZ:  I'll scroll -- this is Jeremy Katz.
```

Page 20

1   I'm going to scroll down through it so you have a chance

2   to review it.   We'll get more into the specifics on it

3   later.   I just want you to look through the actual

4   e-mail chain.

5              Final page.   And I'll scroll back up to the

6   top.

7   BY MR. THOMASON:

8        Q.   And your e-mail address is

9   andrea@escrowofthewest.com; correct?

10        A.   Yes.

11        Q.   And Peter Hill's e-mail, as we see here, is

12   phill@goldwaterbank.com.   Is that who you were e-mailing

13   to?

14        A.   Yes, I believe so.

15        Q.   So here we also have Melissa Melendez's e-mail,

16   melissa.melendez@westloan.com.   As far as you know, that

17   was her e-mail that you were e-mailing to?

18        A.   Yes.

19        Q.   Now we are going to pull up the request for

20   demand, which was attached to an e-mail to Peter Hill,

21   dated on March 22nd, 2021, at 11:47 a.m.

22              MR. KATZ:   Make it a full page so you can see

23   it.   It's a one-page document, EOTW 181.   Go ahead and

24   mark this as deposition Exhibit 7.

25              (Exhibit 7 marked)

                                              Page 21

```
 1    BY MR. THOMASON:
 2         Q.  And this document was a part of the escrow file
 3    for the transaction?
 4         A.  Yes.
 5         Q.  And the next document we have is an e-mail
 6    chain between you and Elizarov on March 25th, 2021.
 7              MR. KATZ:  This is a nine-page document,
 8    starting with Bates No. EOTW_000550, running through
 9    558.  Let's go ahead and mark this as deposition
10    Exhibit 11.
11              (Exhibit 11 marked)
12              MR. KATZ:  And I'm going to slowly scroll
13    through it so you can look at the entire chain.  We'll
14    get into details about it in a little bit.
15    BY MR. THOMASON:
16         Q.  And do you recognize this e-mail chain?
17         A.  Yes.
18         Q.  And then was it a part of the escrow file for
19    the transaction?
20         A.  Yes.
21         Q.  And just verifying.  As far as you know,
22    Elizarov's e-mail was artur.elizarov@gmail.com?
23         A.  Yes.
24         Q.  And what goes into an escrow file?
25         A.  That would be any contractual documents,
```

                                                    Page 25

```
 1    liens of record are as well as property taxes and if
 2    there were any miscellaneous things, such as a judgment.
 3        Q.  So we are going to be pulling up deposition
 4    Exhibit 4 and asking about it.
 5            So this was the initial preliminary report,
 6    dated February 18th, 2021.  This came from Orange Coast
 7    Title Company.
 8            We're going to go down to schedule B.  And this
 9    is what you're talking about.  These would be taxes, and
10    any liens would be in this section here; correct?
11        A.  Yes.
12        Q.  We're going to go -- as you see here, we show
13    general taxes, supplemental taxes.  Let's go to page 4.
14    And we see here there's a deed of trust, two deeds of
15    trust.  And then on No. 10, we see a deed of trust.  It
16    says Artur Elizarov, and it says the beneficiary is
17    Unison Agreement Corp.  And then there are subsequent
18    documents that were recorded, it looks like, by Unison
19    Agreement Core.  And then we'll go to the last page.
20            So there's no mention of Goldwater Bank on this
21    preliminary report; is that correct?
22        A.  Correct.
23        Q.  So we are now going to go to the -- Deposition
24    Exhibit 5, which was the March 3rd amended preliminary
25    report.  And why was an amended preliminary report
```

Page 31

1        issued?

2              A.   I don't recall.

3              Q.   We're going to go to schedule B of the amended

4        preliminary report.   Once again, like we talked about

5        before, there's taxes there and various things.   We're

6        going to go to page 4.   Once again, there's different

7        numbering at this time.   Now it shows a deed of trust

8        for Unison Corp and other documents recorded by Unison.

9              Once again, there's no mention of Goldwater

10       Bank on this amended preliminary report; correct?

11             A.   Correct.

12             Q.   So is this standard to order a supplemental

13       report, an amended report, basically?

14             A.   We will order an amended report if a lender

15       asks us for one or any of the parties ask for an updated

16       search.

17             Q.   Did anyone ask for an amended report?

18             A.   I don't recall what the reason is.   There was

19       an updated report provided.

20             Q.   So from looking at both of these preliminary

21       reports, the one dated February 18th and the one dated

22       March 3rd, there is nothing in the chain of title, from

23       these reports at least, that show that Goldwater had a

24       lien against the property?

25             A.   Correct.

                                                    Page 32

```
 1    payoff from Goldwater Bank?

 2         A.   Correct.

 3         Q.   Had you received one from Unison by that time?

 4         A.   Yes.

 5         Q.   So on March 25th, 2021, at 11:06 a.m., Hill

 6    sent you an e-mail.  States:  "Andrea, here's our payoff

 7    letter.  Not to pressure you, but when might your

 8    estimated settlement be available?"

 9              Did you receive that e-mail from Hill?

10         A.   Yes.

11         Q.   Now we're going to go to Exhibit 10.

12              Was this the pay off that you received from

13    Hill?

14         A.   Yes.

15         Q.   On that day?

16         A.   Yes.

17         Q.   And it shows this pay off demand was not

18    correct for the transaction; is that correct?

19         A.   Yes.

20         Q.   We have the wrong borrower; correct?

21         A.   Correct.

22         Q.   We have the incorrect amount, as far as we

23    know; is that correct?

24         A.   I don't know what amount would be correct or

25    not.
```

<div align="right">Page 46</div>

1      Q.   Okay.   That's fair.

2           And we have an incorrect address.   It does not

3   match the property; correct?

4      A.   Correct.

5      Q.   So the transaction did not involve Jared F. or

6   Paige H. Gilman?

7      A.   Correct.

8      Q.   And it did not involve a property in Palm Beach

9   County, Florida?

10     A.   Correct.

11     Q.   We're going to go back to Exhibit 6.

12          So on March 25th, 2021, at 11:12 a.m., you sent

13   an e-mail to Hill stating:   "This is for a different

14   borrower.   Can you check?"

15          Did you send that e-mail?

16     A.   Yes.

17     Q.   And on March 25th, 2021, at 1:30 p.m., Hill

18   sent an e-mail to you.   It says:   "Andrea, here's the

19   correct payoff statement.   Note that there is a shortage

20   of proceeds to cover our payoff along with the Unison

21   payoff and the mechanic's lien.   I am working on how to

22   resolve that right now.   It's going to take a day or

23   so."

24          Was there a payoff demand attached to this

25   e-mail?

Page  47

1          A.   No, there was not.

2          Q.   So to confirm, there was no attachment to the

3     March 25th, 2021, e-mail at 1:30 p.m. from Peter Hill at

4     Goldwater bank to you containing a payoff demand?

5          A.   Correct.   There was no attachment.

6          Q.   At any time after this e-mail, did you ever

7     receive a correct payoff demand from Goldwater or

8     Weststar Mortgage Corporation?

9          A.   No, I did not.

10         Q.   So let's move up.

11              MR. KATZ:   Jeremy Katz.   I'm continuing to

12    scroll through page 6.   I'm now spanning from pages 4

13    and 5.

14    BY MR. THOMASON:

15         Q.   So we have an e-mail on March 25th, 2021, at

16    1:49 p.m., from you to Hill saying -- stating:   "Hi,

17    Pete.   You can disregard the demand request now.   Seller

18    has instructed we are not to make a payoff to Goldwater.

19    Since there is not a secured lien to the chain of title,

20    we would only have been able to pay with seller's

21    instructions to do so."

22              Did you send that e-mail to Hill?

23         A.   Yes.

24         Q.   Did Elizarov make that instruction to you?

25         A.   Yes.

                                                  Page  48

```
 1              Q.   When did Elizarov give you that instruction?

 2              A.   Let me check my e-mail records.

 3                   On March 25th.

 4              Q.   And was it verbally or in an e-mail?

 5              A.   In an e-mail.

 6              Q.   Did Elizarov give you any other instructions

 7      regarding Goldwater?

 8              A.   No.

 9              Q.   And, once again -- sorry.  Strike that.

10                   As far as you knew, in your capacity as an

11      escrow officer, did Goldwater have a deed of trust in

12      the chain of title for the property?

13              A.   No.

14              Q.   And as escrow, what do you look for to

15      determine if a creditor is secured or unsecured?

16              A.   They would be shown secured with a secured lien

17      on the preliminary title report, or a seller can provide

18      us instruction that they have an unsecured lien, or

19      perhaps a secured lien unrecorded.  But that instruction

20      comes from the seller.

21              Q.   Okay.

22                   And so Elizarov -- did Elizarov ever state that

23      Goldwater was a secured lienholder that was unrecorded?

24              A.   No.  He did not state that.

25              Q.   Did you consider Goldwater a party to the
```

Page 49

Omnibus Joint Exhibit Part B, page 0279

1    escrow?

2        A.   I considered them a party once they had been

3    asking for a payoff demand and Mr. Elizarov provided

4    permission to correspond with them.

5        Q.   So if Elizarov did not give you permission to

6    speak to them, you wouldn't -- you would have never

7    communicated with them; is that correct?

8        A.   Correct.  I would have advised the same to

9    Mr. Hill instead of providing him a demand.

10       Q.   What is your understanding of escrow's

11   responsibility to make payments to unsecured creditors?

12       A.   Escrow does not have a responsibility to pay

13   unsecured creditors.

14       Q.   And what do you do as escrow if a random person

15   or business entity makes a payment demand from a sale of

16   a property?

17       A.   We will address it with the seller.  If -- they

18   provide us specific approval to make that payment from

19   their net proceeds.

20       Q.   So you need seller approval before paying out

21   to an unsecured creditor; is that correct?

22       A.   Correct.  Yes.

23       Q.   So in order for you to make any payment to

24   Goldwater, Elizarov would have had to have instructed

25   you to do so?

<div align="right">Page 50</div>

```
 1    written record of that call?
 2        A.  Yes.
 3        Q.  Was there a written record of Goldwater bank's
 4    claim for payment, like when they first initially
 5    contacted?  Is there a written record of that?
 6        A.  Just the e-mails that have been saved, which
 7    are part of the file.
 8        Q.  And other than the e-mails that were saved in
 9    the file, are there any other records of any phone calls
10    or any contacts with Goldwater Bank?
11        A.  No.
12        Q.  All right.  We're going to go to Exhibit 11.
13            MR. KATZ:  Now have Exhibit 11 on the screen.
14    I'm going to scroll down to the bottom of Exhibit 11.
15    BY MR. THOMASON:
16        Q.  So here we are.  This is an e-mail from
17    Elizarov to Andrea Cross.  It says:  "Andrea, can you
18    provide" -- pardon me.  March 25th, 2021, at 10:42 a.m.
19            It says:  "Andrea, can you provide the Unison
20    letter along with just the closing cost and purchase
21    price to Pete at Goldwater Bank.  Please tell him you're
22    still working on the full itemized closing statement,
23    and we'll provide when it's ready."
24            Did you receive that e-mail from Elizarov?
25        A.  Yes.
```

Page 54

1          Q.  And did Elizarov instruct you to provide Hill

2     with the Unison's payoff letter?

3          A.  Yes, per that e-mail.

4          Q.  Did Elizarov tell you why he wanted Unison to

5     have -- pardon me.  Strike that.

6               Did Elizarov tell you why he wanted you to send

7     Hill the Unison payoff demand?

8          A.  No.

9          Q.  Did Elizarov instruct you to tell Hill that you

10     would provide a full itemized closing statement?

11          A.  I'm sorry.  Can you say that one more time?

12          Q.  Of course.

13               Did Elizarov instruct you to tell Hill that you

14     would provide a full itemized closing statement?

15          A.  Yes, per this e-mail.

16          Q.  And what is your understanding of what a

17     closing statement is?

18          A.  It's a summary of the seller's net proceeds,

19     which will show their closing costs, any debits or

20     credits from prorations, to arrive at a net proceeds

21     figure.

22          Q.  And did you send Hill a closing statement?

23          A.  I'm not sure.  I don't recall.

24          Q.  Okay.

25               MR. KATZ:  We are now on page 3 of Exhibit 11.

                                                    Page 55

```
1    BY MR. THOMASON:
2         Q.   So on March 25th, 2021, at 11:37 a.m., Elizarov
3    sent an e-mail to you stating:   "Is Goldwater Bank on
4    title report?   If not, this makes it easier to close.
5    The Unison thing is a mess.   So I don't understand if
6    that is the total payoff."
7         Did Elizarov send you that e-mail?
8         A.   Yes.
9         Q.   On March 25th, 2021, at 2:41 p.m., you sent an
10   e-mail to Elizarov saying:   "Attached is the prelim.   As
11   of March 3rd, 2021, Unison is the only secured lien."
12        Did you send that e-mail?
13        A.   Yes.
14        Q.   And was the March 3rd, 2021 amended preliminary
15   report, is that what you attached to the e-mail?
16        A.   Yes.
17        Q.   Which Goldwater Bank was not on that amended
18   preliminary report; correct?
19        A.   Correct.
20        Q.   So on March 25th, 2021, at 11:43 a.m., Elizarov
21   sent an e-mail to you stating:   "Let's close then.
22   Well, now it makes sense.   These guys are a mess.   No
23   more communication with Peter.   That cleared up my
24   agreement with other Unison because I don't understand
25   why the bank is involved.   Jesus."
```

Page 56

1          Signed Art.

2          Did Elizarov send that e-mail to you?

3     A.   Yes.

4     Q.   Okay.

5          So in Elizarov's statement "that clears up my

6     agreement with other Unison because I don't understand

7     why the bank is involved."

8          At that time from that statement, did you

9     believe that Goldwater was affiliated with Unison?

10    A.   After receipt of his e-mail, I understand or I

11    assumed that they're not affiliated.

12    Q.   Okay.

13         And why is that?

14    A.   Because he mentioned there that -- he says:  "I

15    also didn't understand why his bank is involved."

16    Q.   What did you do with that information?

17    A.   I saved this correspondence, and I reached back

18    out to Mr. Hill to let him know we no longer had

19    permission to be in communication with him.

20         MR. THOMASON:  Okay.  Well, that's all for us

21    on this matter.  Yesterday, Mr. LeVota reached out to

22    our office and asked if Goldwater Bank could go second,

23    which we agreed.  We may have some follow-up questions

24    depending on what other counsel may ask you, Andrea.

25    But as far as us, we're done.  So we're going to hand it

                                              Page 57

```
 1    issue a policy of title insurance and may not contain

 2    every item affecting title?

 3         A.  Yes.

 4              MR. KRISHEL:  Let me just object to move to

 5    strike.  Also, legal conclusion.

 6              You can go ahead and answer.

 7              THE WITNESS:  Yes.

 8    BY MR. LEVOTA:

 9         Q.  So then if we go to subparagraph C of this, of

10    paragraph 13 on page 5 of Exhibit 2.  It says:  "In the

11    time specified in paragraph 14A, seller has the duty to

12    disclose to buyer all matters known to seller affecting

13    title whether of record or not."

14              What is your understanding of that instruction?

15         A.  The seller must provide any items that require

16    payment to deliver free and clear title to the escrow

17    holder.

18         Q.  Does the seller have any duty to disclose

19    matters that may not be of record but may also affect

20    title?

21         A.  Yes.

22         Q.  And then if we go to page 9 of Exhibit 2 and we

23    look at paragraph 29, entitled "Time of the Estimates,

24    Entire Contract, changes."

25              Do you see that?
```

<div align="right">Page 65</div>

1          Q.   Thank you.

2              MR. BISHARAT:   Mr. LeVota, if you wouldn't mind

3      just for the record identifying the document by exhibit.

4      I know that you distributed Goldwater's exhibits and had

5      them branded, but just so we can follow along a little

6      easier.

7              MR. LEVOTA:   I will.   And I appreciate you

8      making that request.   I hope I don't confuse anyone

9      because of going from letters to numbers.   But I did

10     that in the hopes that we weren't confused.

11             To that end, right now, we are looking at what

12     I distributed as Goldwater F and has been marked as

13     Exhibit 13.

14             And Ms. Cross is continuing to look to see if

15     there were any other written amendments.

16             MR. BISHARAT:   Perfect.   Thank you.

17             MR. LEVOTA:   And while we have the time, my

18     Exhibit A, Goldwater A, was what was marked as

19     Exhibit 12.

20             THE WITNESS:   I'm not finding any other escrow

21     amendments in the file copy uh-huh.

22             MR. LEVOTA:   So I'm going to bring up what I

23     previously distributed as Goldwater D, but what we will

24     mark as Exhibit 14.

25                 (Exhibit 14 marked)

                                              Page 68

1    BY MR. LEVOTA:

2         Q.   Do you recognize this document?

3         A.   Yes.

4         Q.   And this appears to me to be the last page of

5    the purchase and sale agreement.  However, the area for

6    escrow holder acknowledgment has been completed.

7              Do you see that?

8         A.   Yes.

9         Q.   Who completes that section?

10        A.   The escrow holder.

11        Q.   And so, in this instance, it would be Escrow of

12   the West?

13        A.   Yes.

14             MR. LEVOTA:   I'm pulling up what I previously

15   distributed as Goldwater E.   And we are going to mark

16   this as Exhibit 15.

17             (Exhibit 15 marked)

18   BY MR. LEVOTA:

19        Q.   I'll make it a little larger so you can see.

20             Do you recognize this document?

21        A.   Yes.

22        Q.   And just I'll scroll through.   It's three

23   pages.

24             What do you recognize this document to be?

25        A.   This is part of the buyer's loan documents.

                                              Page 69

1    e-mail from Mr. Hill.

2        Q.   Okay.

3            So at some time Mr. Hill gives you a call.  He

4    says he's from Goldwater Bank.  He asked for a payoff

5    statement?

6        A.   Yes.

7        Q.   Like a final settlement statement?  That's what

8    he's asking for, but an estimated?

9        A.   No.  A payoff demand.  So that would be a

10   request from escrow asking for a payoff statement.

11       Q.   So he's asking you to send the request so that

12   he can send in the demand?

13       A.   Yes.

14       Q.   So we're at this point, March 22nd.  And you

15   think they're affiliated, and you send him a payoff

16   request?

17       A.   Yes.

18       Q.   A request for a payoff demand?

19       A.   Right.

20       Q.   And then he responds to you and says:  "Were

21   you able to get the payoff from Unison?  We don't handle

22   that portion of this."

23            And I believe you testified that at that point,

24   you requested whether or not Unison and Goldwater were

25   affiliated; is that correct?

Page 73

Omnibus Joint Exhibit Part B, page 0288

1        A.   Yes.  I wasn't a hundred percent sure what

2   their relationship is.  But I assumed Unison may be a

3   servicer for Goldwater.

4        Q.   Did you ever ask them that, if they were a

5   servicer for Goldwater?

6        A.   I did not ask him, no.

7        Q.   Did you ever ask Goldwater what their

8   connection with Unison was?

9        A.   No, I did not ask them.

10        Q.   So at this point, are you certain that they are

11   affiliated, uncertain, or certain that they are not

12   affiliated?

13        A.   I'm uncertain at this point.

14        Q.   Are you asking anybody information to help

15   clear up that uncertainty?

16        A.   I don't remember.  If so, I may have spoken to

17   the seller, but I'm not sure.

18        Q.   And then we're still on what's been marked as

19   Exhibit 16.  And we've gone through how Pete says:

20   "Were you able to get the payoff?"

21        And you say:  "No, we have not received a

22   demand from them."

23        And he says:  "You're in touch with and have

24   requested it?"

25        You say:  "Yes, I have."

<div align="right">Page 74</div>

1          So looking at page 1 of Exhibit 17 at the very

2     bottom, then there's an e-mail from Unison Home

3     Partnership Team to you; correct?

4          A.   Yes.

5          Q.   And that's dated March 23rd, 2021, at

6     3:45 p.m.; correct?

7          A.   Yes.

8          Q.   And in it he's saying:   "Hi, Andrea.   Thanks

9     for the label.   Attached is our payoff demand along with

10    the unsigned copy of our lien release, documents for

11    your review."

12          Does this refresh your recollection that you

13    received the payoff demand on March 23rd?

14          A.   Yes.

15          Q.   So going back to Exhibit 16.   We're at the

16    bottom of page 11.   And at this point, we're on

17    March 24th, the next day; right?

18          A.   Yes.

19          Q.   And you're asking Goldwater for its payoff

20    demand; correct?

21          A.   Yes.

22          Q.   Why?

23          A.   Based on their e-mail chain, they mentioned

24    they were sending a demand.

25          Q.   At this point, do you still believe that

Page  79

1    Goldwater and Unison are affiliated?

2        A.  Yes.  Because I had never received any sort of

3    a separate deed of trust or note or any other

4    clarification.

5        Q.  Did you ever ask for that clarification?

6        A.  No, I did not.

7        Q.  And now we're going to look at page 10 of

8    Exhibit 16.  It's the e-mail in the middle from Peter

9    Hill to you.

10        Do you recognize that e-mail?

11        A.  Yes.

12        Q.  And then it says:  "Mr. Elizarov tells me the

13    sale has fallen through.  Is that correct?"

14        Had the sale fallen through?

15        A.  No.

16        Q.  Had there ever been any indication in the

17    transaction that the transaction was going to fall

18    through?

19        A.  No.

20        Q.  Did you ever ask Mr. Elizarov why he told Peter

21    Hill that the transaction had fallen through?

22        A.  No.

23        Q.  And then you respond:  "Hi, Pete.  No.  We are

24    proceeding and estimating to close within the next few

25    days.  I have not heard otherwise."

Page 80

BY MR. LEVOTA:

Q.  Have you ever seen this document before?

A.  No.

Q.  On page 4 of Exhibit 19, do you recognize this as your handwriting?

A.  No.  It is not.

Q.  So you previously testified -- and we're looking again at Exhibit 16 now, and we're looking at page 5.  And we're looking at the e-mail from Peter to you on March 25th, in which he says, "here's the correct payoff statement."

And you said there was nothing attached to that e-mail; correct?

A.  Correct.

Q.  And then you don't respond -- he sent that at 1:30, and you responded at 1:49, about 19 minutes later; correct?

A.  Yes.

Q.  And you said:  "Hi, Pete.  You can disregard the demand request now.  Seller has instructed we are not to make payoff to Goldwater since there is not a secured lien to the chain of title."

And I just want to pause there.  What are you basing that statement on that there's not a secured lien in the chain of title?

Page 84

1          A.   Goldwater is not mentioned on the preliminary

2    title report.   I never received any documentation

3    evidencing that they were or that perhaps there was

4    something just not recorded.   I never received a deed of

5    trust from them in any way.

6          Q.   Did you ever ask Goldwater if they had a deed

7    of trust?

8          A.   No.

9          Q.   And then Peter Hill responds by saying:

10   "Please give me a call to discuss."   And he gives you

11   his number.   And then you respond:   "I'm sorry.   But I'm

12   not authorized to discuss as you are not a party to the

13   transaction.   Mr. Elizarov has instructed we are not

14   approved to correspond further."

15          And you sent that e-mail; correct?

16          A.   Yes.

17          Q.   Would you have been authorized to listen to

18   what Mr. Hill had to say?

19          A.   Well, he's not a party.   So I did not find it

20   prudent to give him a phone call.   I don't think we

21   spoke.

22          Q.   So you never asked him any questions to clarify

23   why he was asking you for a payoff demand.   But since it

24   wasn't listed in the preliminary report, then you made

25   the conclusion that it wasn't in the chain of title; is

Page 85

1   that correct?

2          A.   Yes.

3          Q.   And then you made the decision to listen to

4   Mr. Elizarov and no longer communicate with him, even

5   though they had given you information about the

6   potential lien, had told you that they're seeking a

7   payoff demand and all of that.   And you just said, well,

8   I'm not going to communicate with them anymore because

9   I'm not authorized by Art.

10          MR. ALEKSEYEFF:   I have an objection --

11   BY MR. LEVOTA:

12          Q.   Is that correct?

13          MR. ALEKSEYEFF:   Excuse me, Counsel.   Let me

14   just make my objection real quick.   The witness has

15   never testified she has any information about any lien.

16   Thank you.

17          MR. KRISHEL:   I also want to object that it

18   assumes facts not in evidence.   It misstates the

19   testimony.   And it's also an improper hypothetical.

20          MR. KATZ:   This is Jeremy Katz.   We'll join in

21   that as well.

22   BY MR. LEVOTA:

23          Q.   Can you answer the question, ma'am?

24          MR. KRISHEL:   Andrea, if you're able to answer

25   that question as he's asked it, you can, if you

Page 86

```
 1     the seller has removed authorization; is that correct?

 2          A.   Yes.

 3          Q.   And that Goldwater, to your understanding, did

 4     not have a trust deed of record because it was not

 5     listed on the preliminary report?

 6          A.   Yes.

 7          Q.   And so now we're going to what's been

 8     previously marked as Exhibit 6.  As we said before, this

 9     is a similar e-mail chain that we just went through.

10     But it has a different e-mail at the top.  And here

11     there's an e-mail from Peter Hill to you on March 26th.

12               Did you receive this e-mail?

13          A.   I don't have that copy in my records here, but

14     I'm not sure if it's -- I'm not sure, to be honest.

15          Q.   You don't know if you received this e-mail?

16          A.   Yeah.  I don't have this in my document copies.

17          Q.   Well, we received this in response to a

18     subpoena of Escrow of the West.

19          A.   Okay.  Then we must -- it must have been

20     received in that case.  I just don't recall it.

21          Q.   So in this e-mail that he's saying:  "Andrea,

22     just to keep new the loop, I spoke with Mr. Elizarov

23     last night about accepting a short payoff of $675,000 of

24     our loan, which he agreed to, subject to final approval

25     here at Goldwater/Weststar."
```

Page 95

```
 1              MR. KRISHEL:  That's correct, Andrea.  So you

 2      can literally ignore the objections so you don't lose

 3      your train of thought.  If you hear me say, don't answer

 4      that question, only then will you not answer it.

 5      Otherwise, you can completely disregard the objection

 6      and focus on the question.

 7              THE WITNESS:  Okay.  So it was do

 8      non-lienholders request a short payoff?  Is that what

 9      the question was?

10      BY MR. LEVOTA:

11          Q.  I can ask you a different question.

12              Have you ever been involved in an escrow that

13      involved a short payoff aspect that was not connected to

14      a lienholder?

15          A.  No.

16          Q.  So from this e-mail, would you have any

17      suspicion that Goldwater thought they had a lien?

18              MR. ALEKSEYEFF:  Objection; calls for

19      speculation, misstates testimony.  The witness said

20      testified that she has not seen this e-mail.

21      BY MR. LEVOTA:

22          Q.  Go on.

23          A.  I would agree that Goldwater believed they had

24      a lien, yes.

25          Q.  And you never asked Goldwater if they believed
```

Page 97

Omnibus Joint Exhibit Part B, page 0296

1   they had a lien; correct?

2        A.   Right.

3        Q.   Did anybody stop you -- while you had

4   authorization from Art to speak with Goldwater, did

5   anybody stop you from asking Goldwater if they believed

6   they had a lien against the property?

7        A.   No.

8        Q.   Do you have a reason for not asking them?

9        A.   Initially, I thought they were part of Unison.

10  So I did not ask them for documents pertaining to their

11  lien.  And then around the same time when Mr. Elizarov

12  advised not to communicate with them anymore is when I

13  realized they were not affiliated with Unison.  And,

14  therefore, since they did not have a secured lien, I no

15  longer communicated with them.

16            MR. LEVOTA:  I'm going to show you what

17  distributed as Goldwater H, but what we will mark as

18  Exhibit 20.

19            (Exhibit 20 marked)

20            MR. LEVOTA:  And I will put this on the

21  right-hand side of the screen because I want -- I want

22  to compare it with something we looked at earlier.

23  BY MR. LEVOTA:

24        Q.   So on the left-hand side of the screen is

25  Exhibit -- what's been previously marked as Exhibit 7,

                                          Page 98

```
 1              MR. BISHARAT:  This is Nabil Bisharat.  I join.
 2              THE WITNESS:  I don't know.  I've never seen
 3     any sort of an actual lien from Goldwater.  So I can't
 4     say the amount they put in their e-mail sounds
 5     reasonable or not, or what position they might be in.
 6     They're not on the prelim report.
 7     BY MR. LEVOTA:
 8         Q.  And you say they didn't provide a lien, but you
 9     never asked them for it either, did you?
10         A.  Correct.
11         Q.  Okay.
12              MR. LEVOTA:  I'm going to bring up what was
13     previously marked shared as Goldwater M, but we're going
14     to mark it as Exhibit 23.
15              (Exhibit 23 marked)
16     BY MR. LEVOTA:
17         Q.  We've looked at something similar, but it was
18     only four pages of the preliminary report, whereas this
19     exhibit is 20 pages.
20              Do you see that?
21         A.  Yes.
22         Q.  Do you review preliminary reports?
23         A.  Yes.
24         Q.  What do you look for when you review them?
25         A.  Status on property taxes and any secured liens
```

                                        Page 106

Omnibus Joint Exhibit Part B, page 0298

1    which would be required to be addressed and removed in

2    order to have free and clear title.

3        Q.   And so we're looking now at page 4 of

4    Exhibit 23, the preliminary report.   And this is within

5    the schedule B of the document.   And, again, we're

6    looking at page 4.

7             Do you remember looking at this?

8        A.   Yes.

9        Q.   I notice that 10 says a deed of trust, and then

10   11 says a memorandum of agreement.

11            Do you understand that a memorandum of

12   agreement would be a lien?   Or what is your

13   understanding of that?

14       A.   A memorandum can be -- it varies.   It depends

15   on what the information in it is stating.

16       Q.   Did you look at this memorandum?

17       A.   Yes.   I would have looked at it.

18       Q.   And what was your understanding of that

19   document?

20       A.   I'll have to take a look at it to refresh

21   myself.   I don't remember now.

22       Q.   So let's move to -- below it, it says:   "The

23   lien or charge of said instrument was subordinated to

24   the lien or charge of the deed of trust shown in

25   paragraph 10 of schedule B."

Page 107

```
 1              And then it gives you the document for an
 2      instrument.
 3              Do you see that?
 4      A.   Yes.
 5      Q.   Did you ever pull up that instrument?
 6      A.   I'm sure I would have during the escrow time
 7      period.   I don't recall what the instrument is.
 8              MR. LEVOTA:   So we're going to look at what was
 9      distributed as Exhibit O, which we'll mark as
10      Exhibit 24.
11              (Exhibit 24 marked)
12      BY MR. LEVOTA:
13      Q.   Just for clarity sake, on the right-hand side
14      is the preliminary report that we've already marked as
15      Exhibit 23.   And it describes the subordination of lien,
16      and it gives a document number.
17              Do you see that?
18      A.   Yes.
19      Q.   And that is the same document number that is
20      now our Exhibit 24 on the left-hand side of the screen;
21      correct?
22      A.   Yes.
23      Q.   So focusing in on Exhibit 24, it says in here
24      that there's a description of the property.   The
25      property address is 291 West Overlook Road.   And that's
```

Page 108

1    the subject property; correct?

2         A.   Yes.

3         Q.   And then it says "lender, senior lender," and

4    then there's a loan, a date, and an original principal

5    sum of $686,000 -- 686,250.

6              Do you see that?

7         A.   Yes.

8         Q.   And then it says:   "Subordinating

9    lienholder/junior lien.   Unison Agreement Corp., it

10   successors and assigns."

11             And it lists them with their loan number.

12             Do you see that?

13        A.   Yes.

14        Q.   So what is your understanding of this document?

15        A.   It's supplemental to Unison's lien.

16        Q.   Is it subordinating Unison's lead to a senior?

17        A.   Yes.   But I don't see a name of a senior

18   lender.

19        Q.   Did you ever ask if there was a senior lender?

20   Did you ever ask Unison who they were subordinating to?

21        A.   No, I did not.   Unison -- we would assume that

22   they were the only lienholder since they're the only one

23   listed on the prelim report.

24        Q.   If a party is subordinating their lien to a

25   senior, what position does that lien have?

Page 109

1     A.   That brings them into second position.

2     Q.   So by looking at this document, do you have any

3   sort of understanding that Unison is placing its lien in

4   a junior position behind a senior lien?

5     A.   Yes.   At a certain point, they would have been

6   subordinated.

7     Q.   And so then at -- so from looking at this

8   document, it looks like they're subordinated in a junior

9   position, but then at some point there's a conclusion

10   that they're the only lienholder; is that correct?

11     A.   Correct.

12     Q.   Did you ever ask Unison to confirm that?

13     A.   No.   We rely on the information in the

14   preliminary title report.

15     Q.   Is that preliminary title report a

16   representation of the state of title?

17     A.   Yes.

18     Q.   Did you ever ask Goldwater if they were the

19   senior lender referenced in the subordination agreement?

20     A.   No, I did not.

21          MR. LEVOTA:   We're going to look at what was

22   distributed as Goldwater R, and we will mark as

23   Exhibit 25.

24          (Exhibit 25 marked)

25   ///

```
 1    relation to preparing the estimate.  I think

 2    Mr. Elizarov thought there was some kind of a mechanic

 3    lien.  I don't remember exactly what the 107,270 amount

 4    is for, though.

 5         Q.  When it says "send it to them," who's "them"?

 6         A.  To Mr. Hill.  To Goldwater.

 7         Q.  So when they say:  "So they can figure out what

 8    they are going to waive," do you understand that to mean

 9    so Goldwater can figure out what Goldwater is going to

10    waive?

11         A.  Yes.

12         Q.  And did you ask why Goldwater would be waiving

13    anything?

14         A.  No.

15         Q.  And then your response:  "Please see attached.

16    Let me know if it's approved to send."

17              He says yes.  Then he quickly says:  "No.  The

18    107 is not Coldwater.  It's a lien for construction."

19              You prepared two statements that you provided.

20    And I'm trying to bring them up real quick.

21              So we were looking at Exhibit 26, which is this

22    e-mail on the right-hand side.  And you're saying

23    "please see attached."

24              MR. LEVOTA:  And now we're looking at what was

25    distributed as Goldwater V, but we'll be marking it as
```

Page 113

1    Exhibit 27 on the left-hand side.

2              (Exhibit 27 marked)

3    BY MR. LEVOTA:

4         Q.   Do you see this?

5         A.   Yes.

6         Q.   And it's the same -- almost the same type

7    e-mail from March 25th where you're saying:   "Please see

8    the attached."

9              Do you see that on Exhibit 27 on the left?

10        A.   Yes.

11        Q.   And then so page 2 is a seller's estimated

12   statement.

13             Do you see this?

14        A.   Yes.

15        Q.   And then it has payoff charges, Goldwater Bank,

16   107,270.   And then underneath them, Unison, 490-.

17             Do you see that?

18        A.   Yes.

19        Q.   Does the placement of these payoffs on the

20   settlement statement indicate anything?

21        A.   That's just how it was drawn up.

22        Q.   Do you typically put first priority lenders

23   first and junior's second?

24        A.   We would typically.  But I don't -- we didn't

25   have Goldwater listed as a first separate lender.  It's

Page 114

```
 1     just how it came out on the estimate.
 2          Q.  So going to Exhibit 26 here on the right.  He
 3     says, from Artur at the top of page 6.  "No.  The 107 is
 4     not Coldwater.  It's a lien for construction."
 5            And then he says in e-mail:  "Journeyman
 6     Construction, LLC."
 7            And then it looks like you prepare page 3 of
 8     Exhibit 27, which is also a seller's estimated
 9     settlement statement.
10            Do you see that?
11       A.  Yes.
12       Q.  And it seems like there's a difference now
13     where Unison is at the top line, and then a mechanic
14     lien is below it with the 107,270?
15       A.  Yes.
16       Q.  So this is the document, page 3 of Exhibit 27,
17     that you sent to Goldwater?
18       A.  This is the one sent to Goldwater you asked?
19     I'm not sure if that was sent to Goldwater.
20       Q.  This is the one that was prepared for Art?
21       A.  Yes.  It was prepared for Art.
22       Q.  So going back to Exhibit 26.  Now we're looking
23     at page 4 of Exhibit 26.  And you say "revised."
24            Are you referring to the revised settlement
25     statement?
```

Page 115

1          A.   Yes.

2          Q.   And then you say:   "Can you send me a copy of

3     the mechanic's lien?   It's not showing on the prelim."

4               Do you recall asking for information regarding

5     a mechanic's lien that was not on the preliminary

6     report?

7          A.   Yes.

8          Q.   So it is you true that there are instances in

9     which there are liens affecting title that do not appear

10    in the preliminary report; correct?

11         A.   Yes.

12         Q.   He responded by:   "Can you send to Peter ASAP,

13    please."

14              What is he asking you to send to Peter?

15         A.   The estimated statement.

16         Q.   You respond by "sent."

17              Does that mean that you sent that estimated

18    statement that we were looking at, Exhibit -- page 3 of

19    Exhibit 27 [sic], to Goldwater?

20         A.   Yes.

21         Q.   So then it says -- on page 3, there's an e-mail

22    from Art to you.   It says:   "Is Coldwater Bank on the

23    title report?   If not, this makes it easier to close.

24    This Unison thing is a mess.   So I don't understand if

25    that is the total payoff."

Page 116

Omnibus Joint Exhibit Part B, page 0306

```
 1    BY MR. LEVOTA:
 2         Q.   What is your understanding of the sentence:
 3    "This Unison thing is a mess.  So I don't understand if
 4    that is the total payoff."
 5              What is your understanding of that sentence?
 6         A.   He's unclear what the total payoff amount is.
 7         Q.   But at this point, he's received the Unison
 8    payoff demand; right?
 9         A.   Yes.
10         Q.   So he knows what the amount being sought in
11    that is.  So what's the confusion?
12         A.   I don't know what his confusion is.
13         Q.   Did you ever ask Unison if their demand was the
14    total payoff?
15         A.   No.
16         Q.   Did you ever ask Unison if they were affiliated
17    with Goldwater and represented the same interest?
18         A.   I don't think that I did.
19         Q.   And then we're looking at the -- page 2 of
20    Exhibit 26 at the top.  It's an e-mail that's carrying
21    over from page 1 from you on March 25th at 2:41 to Art.
22    And it says:  "Attached is the prelim.  As of 3/3/21,
23    Unison is the only secured lien."
24              Are you basing that statement that Unison is
25    the only secured lien solely on the preliminary report?
```

Page 118

```
 1        A.  I did not.  That's the responsibility of the
 2    title company.  Escrow companies don't have that
 3    capacity.
 4        Q.  Has anyone ever trained you on how to look at
 5    the grantor/grantee index?
 6        A.  It's an a function of escrow.  So we don't do
 7    that.
 8        Q.  So your understanding of a chain of title from
 9    a property comes completely from the preliminary report?
10        A.  Yes.
11        Q.  So turning into page 1 of Exhibit 26 at the
12    bottom, it says -- this is an e-mail from Art to you.
13    On March 25th at 11:43.  It says:  "Let's close then.
14    Well, now it makes senses.  These guys are a mess.  No
15    more communication with Peter.  That clears up my
16    agreement with other Unison because I don't understand
17    why the bank is involved.  Jesus."
18        And then you respond:  "Understood.  Will note
19    our file."
20        What did you understand?
21        A.  I understand that Goldwater is not affiliated
22    with this Unison loan, and we should not be
23    communicating with Mr. Hill any further.
24        Q.  Did you have an understanding of the sentence
25    where he says:  "That clears up my agreement with of the
```

Page 120

1          A.   Yes.

2          Q.   Okay.

3               And then the -- that e-mail is dated March 1st.

4     That's around the time that escrow was open?

5          A.   This is when the title is open.

6          Q.   So this is the e-mail opening title after

7     escrow has already been opened?

8          A.   Actually, this is please update title.  So this

9     is an update request to a title order.

10         Q.   Okay.

11              And that's all on March 1st; correct?

12         A.   Yes.

13         Q.   And then on page 4 of Exhibit 28, we have an

14    e-mail from you to Orange Coast Title Company.  Is that

15    the title company involved in this transaction?

16         A.   Yes.

17         Q.   Do you work with Orange Coast Title

18    exclusively?

19         A.   No.

20         Q.   It says:  "Team, please run date down on this

21    property.  We are preparing for close 3/30."

22              Did you ever mention to the title company that

23    Goldwater was submitting payoff demands and was a

24    mortgage company seeking to get paid out of this escrow?

25         A.   No.  At this point, no.

Veritext Legal Solutions
866 299-5127

1    Q.   Did you ever mention Goldwater to the title

2    company before the close of escrow?

3    A.   I don't remember.

4    Q.   Do you ever call the title company, or is your

5    communication solely e-mail?

6    A.   Yes.   We do speak on the phone as well.

7    Q.   Do you recall speaking on the phone with title

8    regarding this transaction?

9    A.   Yes.

10   Q.   And during those phone calls, did you ever

11   mention Goldwater to them?

12   A.   No, I don't think so.

13   Q.   How come?

14   A.   They're not a secured lienholder.   We never got

15   a demand from them.   And the seller eventually, at

16   closing, said not to communicate with them further.   So

17   if they're not part of the transaction, they're not part

18   of the transaction.

19   Q.   You did receive a demand from them.   It was

20   just for the incorrect borrower; correct?

21   A.   I don't know if that was even from them.

22   Because that borrower was not related to our property at

23   all, and it doesn't say Goldwater anywhere on that form.

24   So I don't know what that was that they sent.

25   Q.   Okay.

Page 123

Omnibus Joint Exhibit Part B, page 0310

```
 1              I mean, let's go back to Exhibit 16.

 2              We're looking at Exhibit 16, what was

 3    previously marked Exhibit 16, and we're on page 6.

 4              And there's an e-mail from Peter Hill to you

 5    saying:  "Andrea here's our payoff letter.  Not to

 6    pressure you, but when might we get a chance for the

 7    estimated settlement?"

 8              And you respond:  "This is for a different

 9    borrower.  Can you please check?"

10         A.   Yes.

11         Q.   So at that point, you didn't know if the payoff

12    demand has been -- previously marked as Exhibit 10 -- so

13    I'll ask you.

14              Exhibit 10, is that the payoff demand that you

15    received from Peter Hill on March 25th, at 11:06, to

16    which you responded:  "This is for a different

17    borrower"?

18         A.   Yes.  That is the one.

19         Q.   Okay.

20              So you received this payoff demand from Peter

21    Hill.  So did you think this payoff demand was coming

22    from Goldwater?

23         A.   Yes.

24         Q.   So you received this payoff demand from

25    Goldwater.  So they're submitting a payoff demand.
```

Page 124

Omnibus Joint Exhibit Part B, page 0311

1    You're letting them know that it's the wrong borrower.

2    And Pete is trying to -- Pete sends you an e-mail right

3    after, you know, and says, here's the correct payoff

4    statement.

5            Did you ever follow up with Pete to see if he

6    had a correct payoff demand?

7            MR. KRISHEL:  Objection.  The question assumes

8    facts not in evidence, calls for speculation.

9            THE WITNESS:  There was no attachment to that

10   e-mail.

11           MR. THOMASON:  We join in that objection.

12   BY MR. LEVOTA:

13       Q.  Right.  There's no attachment to that e-mail.

14   So did you follow up and say, hey, Pete, you didn't

15   attach it?

16       A.  I believe I did.

17       Q.  The next e-mail says:  "Hey, you can disregard

18   the demand request now.  Seller has instructed us not to

19   make a payoff to Goldwater."

20           So what do you mean, you responded?

21       A.  Okay.  I did not respond further that I did not

22   receive his payoff because there was nothing attached.

23       Q.  So Goldwater sends you a payoff demand.  You

24   point out that it's for the wrong borrower.  They tried

25   to send you a corrected payoff demand.  And you don't

Page 125

Omnibus Joint Exhibit Part B, page 0312

1    receive it, but you don't follow up with them because

2    you've been told by Art not to communicate with them

3    anymore?

4         A.   Yes.   Correct.   That happened at the same time

5    that Mr. Elizarov said not to communicate with them.

6         Q.   So did you share any of that information with

7    the title company?

8         A.   No, I did not.

9         Q.   Why?

10        A.   That Mr. Elizarov said not to communicate with

11   this Goldwater?  Why did I not share that?

12        Q.   No.   Why did you not share with the title

13   company that Goldwater had been submitting a demand and

14   had been acting as though they were demanding money out

15   of this transaction as a mortgage company?

16        A.   Well, I thought they were affiliated with

17   Unison.  So I didn't see --

18        Q.   You've been told not to speak with them.   So

19   you don't think that they're affiliated anymore.

20        A.   Yeah.   Well, so, at this point then, when

21   they're not affiliated, I don't have a reason to advise

22   the title company because they're not part of the

23   transaction.

24        Q.   You don't think the title company would be

25   interested in knowing that a mortgage company was

Page 126

```
 1   you -- so that last e-mail chain left off on the 17th,
 2   and here we are on the 22nd.  And it looks -- and this
 3   last e-mail, it looks like you're just sending the
 4   request again.  Is that true?
 5        A.  That's the -- it's just the same subject line.
 6        Q.  Does this, at the top of page 7 of Exhibit 32,
 7   indicate that there was an attachment?
 8        A.  No.
 9        Q.  Okay.
10             And so then you continue to follow up with
11   them, and you provide them with a FedEx label to send
12   the demand to you and the documents; is that correct?
13        A.  Yes.
14        Q.  And during all of these communications -- now
15   we're in March 23rd; so that's after the Pete Hill
16   March 22nd, e-mail.  Did you ever e-mail Unison and ask
17   them what their connection to Goldwater was?
18        A.  No.
19             MR. LEVOTA:  We're going to look at what we are
20   going to mark as Exhibit 33.  It was distributed as
21   Goldwater AA.
22             (Exhibit 33 marked)
23   BY MR. LEVOTA:
24        Q.  Do you recognize this document?
25        A.  Yes.
```

Page 133

```
 1          Q.  And who creates this document?

 2          A.  A lender.  A buyer's lender.

 3          Q.  The buyer's lender creates this document?

 4          A.  Yes.

 5          Q.  And on this document, then it says, in line 5:

 6     "Payoff of second mortgage loan to Unison Holdings."

 7              Do you see that?

 8          A.  Yes.

 9          Q.  Did you ever ask whoever prepared this document

10     why Unison was listed as a second mortgage loan?

11          A.  No.

12          Q.  Did you ever provide this disclosure to the

13     title company to let them know that someone was

14     purporting that Unison was a second mortgage lender?

15          A.  No.  This is a document for the buyer.  As part

16     of the loan documents, we don't share with anyone due to

17     privacy.  The only -- it's for the buyer.

18          Q.  I can understand that you didn't share the

19     document, but did you share the information that someone

20     is purporting that Unison is in a second mortgage

21     position?

22          A.  No.  I don't remember even seeing that as

23     specifically second mortgage on this form.

24          Q.  Do you recall seeing this form as part of the

25     escrow?
```

Page 134

```
 1        A.  Yes.

 2        Q.  Was there ever anything that kept you from

 3   reading this document?

 4        A.  No.

 5             MR. LEVOTA:  I'm going to show you what we'll

 6   mark as Exhibit 34.  This was distributed as

 7   Goldwater BB.

 8             (Exhibit 34 marked)

 9   BY MR. LEVOTA:

10        Q.  Do you recognize this document?

11        A.  Yes.

12        Q.  And who prepares this document?

13        A.  We do.  Escrow of the West.

14        Q.  And so what is the document?

15        A.  This is the final closing statement for the

16   seller's side.

17        Q.  Down here towards the bottom it says

18   "professional courtesy discount."

19             Do you see that?

20        A.  Yes.

21        Q.  And what is that?

22        A.  It's a discount to the escrow fee.

23        Q.  And why was that provided?

24        A.  We often provide a discount for customers that

25   are repeat clients.
```

Page 135

1      Q.   So who receives the benefit of that discount,

2   the buyer or the seller?

3      A.   This is the seller because this is the seller's

4   statement.

5      Q.   So the seller received the benefit of this

6   discount, and it was because he was a repeat customer?

7      A.   Yes.

8      Q.   Is there -- okay.

9          MR. LEVOTA:   I'm going to show what we'll mark

10   as Exhibit 35.   It was circulated as Goldwater CC.

11          (Exhibit 35 marked)

12   BY MR. LEVOTA:

13      Q.   Do you recognize this document?

14      A.   Yes.

15      Q.   And what is this document?

16      A.   It's a request for an outgoing wire.

17      Q.   And what is being wired to whom?

18      A.   It is the net proceeds being wired to the

19   seller.

20      Q.   And it says that it's dated March 30th.   Was

21   that when the request for the wire transfer was made?

22      A.   Yes.

23      Q.   And then the amount stated, is that the amount

24   that was requested to be transferred?

25      A.   Yes.

Page 136

1    Q.   So that was transferred to Art as the seller in

2    this transaction?

3    A.   Yes.

4         MR. LEVOTA:   I'll show you what we'll mark as

5    Exhibit 36.   It was previously distributed as

6    Goldwater DD.

7         (Exhibit 36 marked)

8    BY MR. LEVOTA:

9    Q.   And we're looking at page 5 of this e-mail

10   chain, and we're looking at the very top of it.   Well,

11   it goes from the bottom of 4.   It's an e-mail from Art

12   to you on March 30th, 2021.

13        Do you see that?

14   A.   `Yes.

15   Q.   And then it says:  "Did I et the Andrea escrow

16   fee discount?  LOL."

17        What is your understanding of that sentence

18   this?

19   A.   He's asking for his professional courtesy

20   discount.

21   Q.   And how does he know that he's entitled to

22   that?

23   A.   He has received it on previous transactions.

24   Q.   So then you're responding:  "Sorry about that.

25   Attached is the corrected final statement.   We removed

Page 137

Omnibus Joint Exhibit Part B, page 0318

1    deposition transcript.

2            The parties to this action all stipulated that

3    a certified copy of the deposition transcript can be

4    used in lieu of the original for all purposes.  Other

5    than that, we will follow the procedures per code for

6    the handling of the deposition transcript.

7            Everyone please confirm.

8            MR. LEVOTA:  Confirmed.

9            MR. BISHARAT:  Confirmed on behalf of Unison.

10           MR. ALEKSEYEFF:  Yes for Art Elizarov and

11   myself.

12           MR. LEVOTA:  Thank you very much.

13           MR. KATZ:  With that, we'll conclude the

14   deposition.

15           (The deposition concluded at 4:05 p.m.)

16                          * * *

17

18

19

20

21

22

23

24

25

Page 169

1              DECLARATION UNDER PENALTY OF PERJURY

2

3         I, ANDREA CROSS, do hereby certify under penalty

4    of perjury that I have read the foregoing transcript of

5    my deposition taken June 29, 2022; that I have made such

6    corrections as appear noted herein, in ink, initialed by

7    me; that my testimony as contained herein, as corrected,

8    is true and correct.

9

10        DATED this        day of                , 2022,

11   at                           , California.

12

13

14

15

16                                     ANDREA CROSS

17

18

19

20

21

22

23

24

25

                                        Page 170

Omnibus Joint Exhibit Part B, page 0320

```
1                      REPORTER'S CERTIFICATION

2

3          I, Michelle K. Bailey, Certified Shorthand

4     Reporter, in and for the State of California, do hereby

5     certify:

6

7            That the foregoing witness was by me duly sworn;

8     that the deposition was then taken before me at the time

9     and place herein set forth; that the testimony and

10    proceedings were reported stenographically by me and

11    later transcribed into typewriting under my direction;

12    that the foregoing is a true record of the testimony and

13    proceedings taken at that time.

14

15           IN WITNESS WHEREOF, I have subscribed my name this

16           day of July 19, 2022.

17    Signature was requested.

18

19

20

21                                      Michelle K. Bailey

22                                      RPR, CSR No. 10713

23

24

25

                                               Page 171
```

Omnibus Joint Exhibit Part B, page 0321

```
 1   DANIEL KRISHEL, ESQ.

 2   daniel@krishellawfirm.com

 3                              JULY 19, 2022

 4   RE: GOLDWATER BANK, N.A. VS. ARTUR ELIZAROV

 5   JUNE 29, 2022, ANDREA CROSS, JOB NO. 5294007

 6   The above-referenced transcript has been

 7   completed by Veritext Legal Solutions and

 8   review of the transcript is being handled as follows:

 9   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10      to schedule a time to review the original transcript at

11      a Veritext office.

12   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13      Transcript - The witness should review the transcript and

14      make any necessary corrections on the errata pages included

15      below, noting the page and line number of the corrections.

16      The witness should then sign and date the errata and penalty

17      of perjury pages and return the completed pages to all

18      appearing counsel within the period of time determined at

19      the deposition or provided by the Code of Civil Procedure.

20   __ Waiving the CA Code of Civil Procedure per Stipulation of

21      Counsel - Original transcript to be released for signature

22      as determined at the deposition.

23   __ Signature Waived - Reading & Signature was waived at the

24      time of the deposition.

25
```

Page 172

```
1   _X_Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF

2      Transcript - The witness should review the transcript and

3      make any necessary corrections on the errata pages included

4      below, noting the page and line number of the corrections.

5      The witness should then sign and date the errata and penalty

6      of perjury pages and return the completed pages to all

7      appearing counsel within the period of time determined at

8      the deposition or provided by the Federal Rules.

9   ___ Federal R&S Not Requested - Reading & Signature was not

10     requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 173

Omnibus Joint Exhibit Part B, page 0323

```
 1    GOLDWATER BANK, N.A. VS. ARTUR ELIZAROV

 2    ANDREA CROSS (#5294007)

 3                    E R R A T A   S H E E T

 4    PAGE_____ LINE_____ CHANGE_____

 5    _____

 6    REASON_____

 7    PAGE_____ LINE_____ CHANGE_____

 8    _____

 9    REASON_____

10    PAGE_____ LINE_____ CHANGE_____

11    _____

12    REASON_____

13    PAGE_____ LINE_____ CHANGE_____

14    _____

15    REASON_____

16    PAGE_____ LINE_____ CHANGE_____

17    _____

18    REASON_____

19    PAGE_____ LINE_____ CHANGE_____

20    _____

21    REASON_____

22

23    _____     _____

24    WITNESS                              Date

25

                                           Page 174
```

# EXHIBIT 25

## EXCERPTS FROM THE TRANSCRIPT OF THE DEPOSITION OF ARTUR ELIZAROV

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
**Transcript of Proceedings on 09/23/2022**

```
 1                UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3

 4

 5   GOLDWATER BANK, N.A.,                    )
                                             )
 6             PLAINTIFF,                     )
                                             )   CASE NO.
 7      VS.                                   )   5:21-CV-
                                             )   00616-JWH-
 8   ARTUR ELIZAROV, ET. AL.                  )   SPX
                                             )
 9             DEFENDANTS.                    )
     _____ )
10

11

12             REPORTER'S TRANSCRIPT OF PROCEEDINGS

13                 FRIDAY SEPTEMBER 23, 2022

14                        VOLUME I

15

16

17

18

19

20

21

22

23

24
     MARIANNE DER CLINT, CSR #10847
25   OFFICIAL REPORTER
```

Omnibus Joint Exhibit Part B, page 0326

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
**Transcript of Proceedings on 09/23/2022**                                **Page 2**

```
 1    APPEARANCES:

 2

 3    FOR THE PLAINTIFF:       WAGNER HICKS PLLC
                               BY:  SEAN WAGNER, ESQ.
 4                             DEREK M. BAST, ESQ.
                               831 EAST MOREHEAD STREET
 5                             SUITE 860
                               CHARLOTTE, NORTH CAROLINA 28202
 6                             (704) 705-7538

 7
      FOR THE DEFENDANT,       LAW OFFICE OF ILYA ALEKSEYEFF
 8    ARTUR ELIZAROV:          BY: ILYA ALEKSEYEFF, ESQ.
                               727 WEST 7TH STREET
 9                             PH 1-13
                               LOS ANGELES, CALIFORNIA 90017
10                             (213) 537-4592
                               ILYA@LOIA.LEGAL
11

12    FOR THE CROSS-DEFENDANT, ORSUS GATE
      UNISON AGREEMENT CORP.:  BY:  NABIL BISHARAT, ESQ.
13                             16 NORTH MARENGO AV.
                               SUITE 316
14                             PASADENA, CALIFORNIA  91101
                               (213) 373-4357
15

16    FOR THE CROSS-DEFENDANT, HILBERT & SATTERLY LLP
      GOLDWATER:               BY:  JOSEPH A. LE VOTA, ESQ.
17                             409 CAMINO DEL RIO SOUTH
                               SUITE 104
18                             SAN DIEGO, CALIFORNIA 92108
                               (619) 795-0300
19

20    FOR THE CROSS-DEFENDANT, HALL GRIFFIN
      SCOTT HOWLETT:           BY: RYAN THOMASON, ESQ.
21                             1851 EAST FIRST STREET
                               10TH FLOOR
22                             SANTA ANA, CALIFORNIA 92705
                               (714) 918-7000
23

24

25
```

Omnibus Joint Exhibit Part B, page 0327

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                                    Page 3

```
 1                        I N D E X

 2

 3

 4              CHRONOLOGICAL INDEX OF WITNESSES

 5

 6   WITNESSES:                                        PAGE

 7   ARTUR ELIZAROV
          DIRECT EXAMINATION BY MR. WAGNER            19
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Omnibus Joint Exhibit Part B, page 0328

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
**Transcript of Proceedings on 09/23/2022**                    Page 4

```
 1                   M A S T E R   I N D E X

 2
                        SEPTEMBER 23, 2022
 3

 4
                           EXHIBITS
 5

 6    PEOPLE'S            DESCRIPTION           MARKED RECEIVED

 7    EXHIBIT 100    DRIVER'S LICENSE           70

 8    EXHIBIT 100-1  DRAWING                    192

 9    EXHIBIT 101    CERTIFICATE OF DOMESTIC    80
                     PARTNERSHIP
10    EXHIBIT 102    LOAN APPLICATION           105

11    EXHIBIT 103    TEXT MESSAGE EXCHANGE      115

12    EXHIBIT 104    7/31/2019 DOCUMENT         204

13    EXHIBIT 105    DEED OF TRUST,             207
                     7/31/19
14    EXHIBIT 106    DEED OF TRUST              207

15    EXHIBIT 107    MORTGAGE ASSISTANCE        209
                     APPLICATION
16    EXHIBIT 108    CORRESPONDENCE             221

17    EXHIBIT 109    CORRESPONDENCE             221

18    EXHIBIT 110    CORRESPONDENCE             222

19    EXHIBIT 111    E-MAIL                     224
                     CORRESPONDENCE
20    EXHIBIT 112    E-MAIL                     227

21    EXHIBIT 113    COMMUNICATION              229
                     RE: FORBEARANCE
22    EXHIBIT 114    E-MAIL TO PETER HILL       232

23    EXHIBIT 115    CALIFORNIA                 232
                     RESIDENTIAL PURCHASE
24                   AGREEMENT AND JOINT
                     ESCROW INSTRUCTIONS
25    EXHIBIT 116    SUPPLEMENTAL ESCROW        239
                     INSTRUCTIONS
```

Omnibus Joint Exhibit Part B, page 0329

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
**Transcript of Proceedings on 09/23/2022**                                    **Page 5**

```
 1    EXHIBIT 117    COMMUNICATIONS WITH      242
                     UNISON
 2    EXHIBIT 118    (NO DESCRIPTION)         254

 3    EXHIBIT 119    E-MAIL                    260
                     CORRESPONDENCE TO PETER
 4    EXHIBIT 120    E-MAIL EXCHANGES          264
                     3/24-3/25
 5    EXHIBIT 122    E-MAIL EXCHANGES/PETER    276
                     HILL
 6    EXHIBIT 123    SUMMARY                   278

 7    EXHIBIT 124    BATES 40-41               282

 8    EXHIBIT 126    ELIZAROV PRODUCTION       288
                     PAGES 59-63
 9


10
      DEFENDANT'S      DESCRIPTION      MARKED RECEIVED
11
      (NONE)
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Omnibus Joint Exhibit Part B, page 0330

```
 1                    DIRECT EXAMINATION
 2   BY MR. WAGNER:
 3       Q    Okay.  Good morning, Mr. Elizarov.  How are
 4   you this morning?
 5       A    I'm well, thank you.
 6       Q    Would you please state your name for the
 7   record, your full name.
 8       A    Artur Elizarov, that's A-R-T-U-R, last name
 9   E-L-I-Z, as in "zebra," A-R-O-V, as in "Victor."
10       Q    Great.  And, Mr. Elizarov, have you ever gone
11   by any other name?
12       A    I have not.
13       Q    Okay.  Great.  Have you ever done a -- sat for
14   a deposition before, Mr. Elizarov?
15       A    I have.
16       Q    Okay.  Great.  How many?  How many times?
17       A    Somewhere between two dozen and three dozen
18   over my career professionally, and one on a personal
19   basis, to be more specific.
20       Q    Okay.  And when you mentioned over the course
21   of your career on a professional basis, you are meaning
22   as part of a job that you had a job that you performed?
23       A    That is correct.
24       Q    Okay.  And did you sit as a fact witness or as
25   an expert witness?
```

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
**Transcript of Proceedings on 09/23/2022**          **Page 67**

```
 1      Q    Okay.

 2      A    But we owned the property.

 3      Q    Okay.  And Overlook Drive, that was in just

 4   your name?

 5      A    Correct.

 6      Q    Okay.  And then the other one you mentioned

 7   was the Wilton Manors house; is that right?

 8      A    Morrison?

 9      Q    Oh, Morrison.  How was that held?  Did you own

10   it by yourself?

11      A    I believe I owned it by myself but

12   Mr. Alekseyeff might have been on title at some point.

13      Q    Okay.

14      A    I held the mortgage.

15      Q    Okay.  The Tiara property, do you recall the

16   time period?  I'm just trying to get back certain

17   amount of time here.  When did you move into that

18   property?

19      A    I could not tell you.

20      Q    How long did you live there?

21      A    Could not tell you.

22      Q    Did you live there for the entire time that

23   you own today?

24      A    Yes.

25      Q    Okay.
```

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
**Transcript of Proceedings on 09/23/2022**                    **Page 232**

```
 1      A    Yeah.

 2           MR. WAGNER:  I'm going to hand you what we'll

 3   mark as Exhibit 114.  Please take a moment to review it

 4   and let me know when you've done so.

 5           (Plaintiff's Exhibit No. 114, E-mail to Peter

 6           Hill, was marked for identification.)

 7           THE WITNESS:  Okay.

 8   BY MR. WAGNER:

 9      Q    Do you recognize Exhibit 114?

10      A    It's an e-mail that appears to have been sent

11   to Peter Hill by me.  And it's the contact information

12   for Andrea Cross.

13      Q    Okay.  And when you turn it over to the second

14   page, does it appear to indicate that there are some

15   attachments?

16      A    Yeah.

17      Q    Okay.  I'm going to hand you what we'll mark

18   as Exhibit 115.  All right.

19           (Plaintiff's Exhibit No. 115, California

20           residential purchase agreement and joint

21           escrow instructions, was marked for

22           identification.)

23   BY MR. WAGNER:

24      Q    Do you recognize Exhibit 115?

25      A    Yep.
```

Omnibus Joint Exhibit Part B, page 0333

GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.
Transcript of Proceedings on 09/23/2022                    Page 233

```
 1       Q    And what do you recognize it to be?

 2       A    A California residential purchase agreement

 3  and joint escrow instructions as entitled above on

 4  Page 1.

 5       Q    Okay.  And would you please turn to -- let's

 6  see, turn to the last page, Page 10 of 10.

 7       A    Sure.

 8       Q    And --

 9       A    9 of 10.  It's double-sided.  Okay.

10       Q    Yeah.  If you'll look at the top of that page,

11  there appears to be an electronic signature there and

12  credit name of Artur Elizarov?

13       A    I must have, but it is a digital signature.

14       Q    And you testified earlier you commonly use

15  Docusign; correct?

16       A    Yeah.

17       Q    Okay.  So wouldn't have been unusual for you

18  to Docusign this document?

19       A    No, it wouldn't have been.

20       Q    In your experience as a realtor in the recent

21  past, let's say, the last three to four years, has it

22  become more and more common for realtors to use

23  Docusign as part of these transactions?

24       A    Actually not Docusign, but yes.

25       Q    A form of electronic signature?
```

Omnibus Joint Exhibit Part B, page 0334

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
**Transcript of Proceedings on 09/23/2022**                    **Page 294**

1   seven-day -- because it has to be done by motion on the

2   local rules, it's not just like objections like other

3   courts.  If it's a motion, it's a meet and confer.  We

4   do have one on Monday, I think, at 11:00.

5            MR. WAGNER:  Right.

6            MR. ALEKSEYEFF:  So maybe we can -- I will let

7   you know on Monday quickly, because we don't really

8   have to meet and confer that much because you know

9   exactly what my requirements.  It's not like I'm

10  bringing anything new.  It's just whatever I told her

11  she got wrong, that's essentially what it is.

12           MR. WAGNER:  Okay.

13           MR. ALEKSEYEFF:  So I don't think it's going

14  to be that that involved, but I will definitely let you

15  know if I've decided to move forward or not and most

16  likely not.

17           MR. WAGNER:  Thank you.

18           Madam court reporter, thank you.  We

19  appreciate it.

20           And we're off.

21

22           (Whereupon the proceedings were

23                concluded at 6:35 a.m.)

24

25

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
**Transcript of Proceedings on 09/23/2022**                    **Page 295**

```
 1    STATE OF CALIFORNIA      )

 2                             )   ss.

 3    COUNTY OF LOS ANGELES    )

 4

 5

 6

 7

 8        I, _____, the undersigned,

 9    say I have read the foregoing deposition and hereby

10    declare under penalty of perjury the foregoing is true

11    and correct.

12

13            Executed this _____ day of _____, 20___,

14    at_____,_____.

15

16

17

18

19

20                 _____
                        D E C L A R A N T

21

22

23

24

25
```

**GOLDWATER BANK, N.A. vs ARTUR ELIZAROV, ET AL.**
Transcript of Proceedings on 09/23/2022                    Page 296

```
 1                        )

 2    STATE OF CALIFORNIA)    ss.

 3                        )

 4

 5              I, MARIANNE L. DER CLINT, 10847, a

 6    Certified Shorthand Reporter within and for the State

 7    of California, do hereby declare:

 8              That pursuant to 2093 (b) CCP, I administered

 9    the oath to the deponent;

10              That the foregoing deposition was taken before

11    me at the time and place set forth and was taken down

12    by me in shorthand and thereafter transcribed under my

13    direction and supervision;

14              That the foregoing deposition is a full, true

15    and correct transcript of my shorthand notes so taken.

16              I further declare that I am neither counsel

17    for, nor related to, any of the parties to said action,

18    nor in any way interested in the outcome thereof.

19              I declare under penalty of perjury this

20    5th day of October, 2022, that the foregoing is true

21    and correct.

22

23                   CERTIFIED SHORTHAND REPORTER FOR
                        THE STATE OF CALIFORNIA
24

25
```

Omnibus Joint Exhibit Part B, page 0337

# EXHIBIT 26

# EXCERPTS FROM THE TRANSCRIPT OF THE DEPOSITION OF SCOTT HOWLETT

```
 1              UNITED STATES DISTRICT COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3       _____

 4       GOLDWATER BANK, N.A.,

 5                 Plaintiff,

 6           v.                              Case No.

 7       ARTUR ELIZAROV, UNISON AGREEMENT    5:21-cv-00616-

 8       CORP., SCOTT HOWLETT, BANK OF       JWH-SPx

 9       THE WEST, and ILYA ALEKSEYEFF,

10                 Defendants,

11       _____

12       SCOTT HOWLETT,

13                 Cross-complainant,

14           v.

15       ARTUR ELIZAROV, ET AL.,

16                 Cross-defendants.

17       _____

18                 VIDEOCONFERENCE DEPOSITION OF

19                      SCOTT HOWLETT

20       DATE:         Thursday, September 15, 2022

21       TIME:         1:38 p.m.

22       LOCATION:     Remote Proceeding

23                     San Francisco, CA

24       REPORTED BY:  Jess Wakefield, Notary Public

25       JOB NO.:      5382189
```

                                              Page 1

```
 1              A P P E A R A N C E S
 2    ON BEHALF OF PLAINTIFF GOLDWATER BANK, N.A.:
 3         JOSEPH A. LEVOTA, ESQUIRE (by videoconference)
 4         Hilbert & Satterly LLP
 5         409 Camino Del Rio South, Suite 104
 6         San Diego, CA 92108
 7         jlevota@hscallaw.com
 8         (619) 795-0300
 9
10    ON BEHALF OF PLAINTIFF GOLDWATER BANK, N.A.:
11         DEREK M. BAST, ESQUIRE (by videoconference)
12         Wagner Hicks PLLC (NC)
13         831 East Morehead Street, Suite 860
14         Charlotte, NC 28202
15         derek.bast@wagnerhicks.law
16         (704) 705-7538
17
18    ON BEHALF OF DEFENDANT UNISON AGREEMENT CORP.:
19         JENNIFER HAIDER, ESQUIRE (by videoconference)
20         Orsus Gate
21         388 Market Street, Suite 1300
22         San Francisco, CA 94111
23         jhaider@orsusgate.com
24         (213) 674-9042
25
                                          Page  2
```

```
 1              A P P E A R A N C E S (Cont'd)

 2    ON BEHALF OF DEFENDANT AND CROSS-DEFENDANT ARTUR

 3    ELIZAROV:

 4         ILYA ALEKSEYEFF, ESQUIRE (by videoconference)

 5         Loia, Inc. (APLC)

 6         8721 Santa Monica Boulevard, Suite 119

 7         West Hollywood, CA 90069

 8         ilya@loia.legal

 9

10    ON BEHALF OF DEFENDANT AND CROSS-COMPLAINANT SCOTT

11    HOWLETT AND DEFENDANT BANK OF THE WEST:

12         JEREMY KATZ, ESQUIRE (by videoconference)

13         Hall Griffin LLP

14         1851 East First Street, 10th Floor

15         Santa Ana, CA 92705

16         jkatz@hallgriffin.com

17         (714) 918-7000

18

19         RYAN C. THOMASON, ESQUIRE (by videoconference)

20         Hall Griffin LLP

21         1851 East First Street, 10th Floor

22         Santa Ana, CA 92705

23         rthomason@hallgriffin.com

24

25
```

Page 3

```
 1                    I N D E X
 2   EXAMINATION:                                PAGE
 3        By Mr. Levota                          8
 4        By Ms. Haider                          50
 5
 6                  E X H I B I T S
 7   NO.              DESCRIPTION                 PAGE
 8   Exhibit 5        Amended Preliminary Notice  29
 9   Exhibit 12       Supplemental Escrow Instructions  32
10   Exhibit 13       Amended Escrow Instructions  34
11   Exhibit 14       Page 10 of 10, Purchase and
12                    Sale Agreement             25
13   Exhibit 15       Lender's Closing Instructions  33
14   Exhibit 23       Preliminary Report         27
15   Exhibit 72       Uniform Residential Loan
16                    Application                30
17   Exhibit 73       Note                       36
18   Exhibit 74       Deed of Trust              39
19   Exhibit 75       Buyer's Final Settlement
20                    Statement                  40
21               (Exhibits retained by counsel.)
22
23
24
25
                                             Page  4
```

```
 1                    E X H I B I T S (Cont'd)

 2        P R E V I O U S L Y   M A R K E D   E X H I B I T S

 3    NO.              DESCRIPTION                      PAGE

 4    Exhibit 2        Purchase Agreement                23

 5    Exhibit 38       Email Chain                       42

 6                 (Exhibits retained by counsel.)

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                            Page  5
```

```
 1                    P R O C E E D I N G S

 2               THE REPORTER:  Good afternoon.  We're on

 3     the record at 1:38 p.m. Pacific Daylight Time.  My name

 4     is Jess Wakefield; I am the reporter assigned by

 5     Veritext to take the record of this proceeding.

 6               This is the deposition of Scott Howlett

 7     taken in the matter of Goldwater Bank, N.A., vs. Artur

 8     Elizarov, et al., on September 15, 2022.

 9               Mr. Howlett, what city and state are you

10     in right now?

11               MR. HOWLETT:  San Francisco, California.

12               THE REPORTER:  Thank you.

13               I'm a notary authorized to take

14     acknowledgments and administer oaths in Washington

15     state.  Parties agree that I will swear in witness

16     remotely outside of his or her presence.

17               Additionally, absent an objection on the

18     record before the witness is sworn, all parties and the

19     witness understand and agree that any certified

20     transcript produced from the recording virtually of this

21     proceeding:

22                    - is intended for all uses permitted

23                    under applicable procedural and

24                    evidentiary rules and laws in the same

25                    manner as a deposition recorded by
```

Page  6

```
 1                    (Exhibit 2 was previously marked for
 2                    identification.)
 3              Okay.  And this is going to be the format of
 4     the deposition, will be that I share my screen with
 5     certain documents that are being marked as exhibits.
 6     Almost all of them or most of them --
 7          A    Could you please just give me a moment?  I
 8     need to readjust my screen so I can see both you and
 9     the -- and the document.
10          Q    Okay.
11          A    Okay.
12          Q    And so all I'm saying is that I'll be showing
13     a document.  Unfortunately, you don't have the power to
14     flip through it yourself.  But if at any point you want
15     to see more of a document or I'm scrolling too fast,
16     then let me know.  And I'll show you any part of any
17     document that we're going over here today.
18              So to start off, this is a document entitled
19     California Residential Purchase Agreement in Joint
20     Escrow Instructions.  It's ten pages, and I'm scrolling
21     through each page.  At the bottom, there are some
22     initials.
23              At the bottom, there appears to be buyer's
24     initials SH, and we're looking at page 4 of Exhibit 2;
25     do you see that?
```

<div align="right">Page 23</div>

1      A     Yes.

2      Q     Are those your initials?

3      A     Yes.

4      Q     And so we're just going through.  And then,

5  again, page 5, again, buyer's initials, SH.  That's you;

6  right?

7      A     Yes.

8      Q     And so we're getting through, and we're at now

9  page 9 of Exhibit 2.  And there's a part where it has a

10  buyer, and it has your name printed.  And then there's a

11  signature next to that; do you see that?

12      A     Yes.

13      Q     Is it your understanding that that's your

14  electronic signature on this document?

15      A     I think that's one of the font options on

16  DocuSign, and yes.

17      Q     And it appears to be dated February 14, 2021.

18  Is it your recollection that that's the date that you

19  affixed your electronic signature to this document?

20      A     I have no reason to think that's not the date.

21      Q     And then moving to page 10, then there appears

22  to be a signature by the seller.  And I'm not asking you

23  to authenticate that it is his signature but to confirm

24  that it was your understanding that the seller was

25  signing this document; correct?

Veritext Legal Solutions
866 299-5127

1      A      That was my understanding.

2      Q      Okay.  And so we've gone through this, and I'm

3  back at the first page here.  And this appears to be the

4  purchase and sale agreement for your acquisition of the

5  Overlook property; correct?

6      A      Correct.

7      Q      And it is, date prepared, February 12th of

8  2021.  And is that your recollection of when this was

9  prepared and around the time it was executed?

10      A      That seems about right.

11      Q      So after there's a purchase and sale

12  agreement, then there's usually the opening of escrow.

13  So was escrow opened with respect to this transaction?

14      A      I believe so.  I mean, I think that happened

15  shortly thereafter.

16      Q      And I'm going to go ahead and show you what's

17  been previously marked as Exhibit 14 and what we'll mark

18  as Exhibit 14 for this deposition.

19                    (Exhibit 14 was marked for

20                     identification.)

21           This is a one-page document, and this is page

22  10 of 10 of the purchase and sale agreement that we were

23  just looking at.  But this page has some information for

24  the escrow holder; do you see that?

25      A      I see what you're saying.  I'm not sure if

                                                    Page 25

```
 1              And the best example I can give you is a deed.
 2    So your deed has been recorded in the county recorder's
 3    office.  So that's what I refer to as a recorded
 4    document.  Do you know if you looked at any recorded
 5    documents as part of your purchase of the property?
 6         A    I don't recall anything aside from, I think,
 7    the disclosures.  If it's in that packet, then I would
 8    have read it and been prompted to review it.  But I
 9    don't remember anything special.
10         Q    Let me back up.  I'm sorry.  Did you do any
11    independent research into the property outside of
12    whatever your real estate agent gave you or whatever you
13    received from escrow part of the transaction?
14         A    No.
15         Q    Okay.  I think I might know the answer to
16    this, but I'm going to go ahead and show you what we've
17    marked as Exhibit 5.
18              (Exhibit 5 was marked for
19              identification.)
20              It's entitled Amended Preliminary Notice.  And
21    again, this refers to the Overlook property.  And it
22    appears to be addressed to Escrow of the West.  It's
23    four pages long.  Do you recall seeing this document
24    before?
25         A    No.
```

<div align="right">Page 29</div>

```
 1        Q    Okay.

 2        A    I remember seeing the name Orange County Title

 3   somewhere, but I -- I don't remember the documents

 4   you've asked me about.

 5        Q    Do you recall ever speaking with anyone at

 6   Orange Coast Title regarding the property?

 7        A    No.  I don't think I ever have.

 8        Q    Okay.  I know we've established that you don't

 9   recall seeing the preliminary report or the amended

10   preliminary report that we've attached as exhibits.  But

11   I still have to ask: Did you ever, in any general sense,

12   speak to anybody about a preliminary report or amended

13   preliminary report affecting the property?

14        A    No.

15        Q    Okay.  All right.  I'm going to share my

16   screen again.  This is a document that we've previously

17   marked as Exhibit 72, and it will be 72 for this

18   deposition.

19             (Exhibit 72 was marked for

20             identification.)

21             It's a 13-page document.  It began with the

22   title Uniform Residential Loan Application.  And I'm

23   scrolling through quickly.  But I'm going to ask you, on

24   page 6 of this document, Exhibit 72, it looks like

25   there's a signature above where your name is printed; do
```

<div align="right">Page 30</div>

```
 1                    This is a three-page email chain.  I'm going
 2       to go to the bottom of the email chain as that's the
 3       furthest back in time.  Do you see this page 3 of 3 at
 4       the bottom?
 5           A    Yes.
 6           Q    Where it starts off on April 13, 2021, and it
 7       has an email of scott.howlett@yahoo.com?   Is that your
 8       email address?
 9           A    Yes.
10           Q    Okay.  And it looks like you're emailing her
11       to send you a copy of your title insurance policy.  And
12       do you recall sending this email to Andrea?
13           A    Yes.
14           Q    And this was meant to go to Andrea Cross, the
15       escrow officer for your purchase?
16           A    That was -- yes.  That was what my agent
17       instructed me to do when I called her to say that this
18       came up.
19           Q    So what came up to cause you to email Andrea?
20           A    My partner was at the house, and someone
21       served papers over the gate.
22           Q    And was that on April 13th?
23           A    I don't remember.
24           Q    Would it be near that time?
25           A    Yes.  I -- I think.  I mean, I acted quickly.
```

Page 43

```
1    that.  And, no, thank you.  I do not need a copy.

2                   THE REPORTER:  I apologize.

3                   MR. ALEKSEYEFF:  No worries.  I did not

4    mean to make you feel bad.

5                   MR. LEVOTA:  Probably not the first time.

6                   MR. ALEKSEYEFF:  I always want to know,

7    how will people butcher my name?  Yours is a very

8    typical one, so I'm not upset.  I've had worse.

9                   THE REPORTER:  All right.  Well, then,

10   we're off the record at 2:55 p.m.

11                  (Signature reserved.)

12                  (Whereupon, at 2:55 p.m., the proceeding

13                   was concluded.)

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 55

Omnibus Joint Exhibit Part B, page 0351

```
 1              CERTIFICATE OF DEPOSITION OFFICER

 2              I, JESS WAKEFIELD, the officer before whom the

 3      foregoing proceedings were taken, do hereby certify that

 4      any witness(es) in the foregoing proceedings, prior to

 5      testifying, were duly sworn; that the proceedings were

 6      recorded by me and thereafter reduced to typewriting by

 7      a qualified transcriptionist; that said digital audio

 8      recording of said proceedings are a true and accurate

 9      record to the best of my knowledge, skills, and ability;

10      that I am neither counsel for, related to, nor employed

11      by any of the parties to the action in which this was

12      taken; and, further, that I am not a relative or

13      employee of any counsel or attorney employed by the

14      parties hereto, nor financially or otherwise interested

15      in the outcome of this action.

16

17      JESS WAKEFIELD

18      Notary Public in and for the

19      State of Washington

20

21      [X] Review of the transcript was requested.

22

23

24

25
```

Page 56

```
 1              CERTIFICATE OF TRANSCRIBER

 2              I, SARAH COSTA, do hereby certify that this

 3     transcript was prepared from the digital audio recording

 4     of the foregoing proceeding, that said transcript is a

 5     true and accurate record of the proceedings to the best

 6     of my knowledge, skills, and ability; that I am neither

 7     counsel for, related to, nor employed by any of the

 8     parties to the action in which this was taken; and,

 9     further, that I am not a relative or employee of any

10     counsel or attorney employed by the parties hereto, nor

11     financially or otherwise interested in the outcome of

12     this action.

13

14
```



```
15     SARAH COSTA

16

17

18

19

20

21

22

23

24

25
```

Veritext Legal Solutions
866 299-5127

Omnibus Joint Exhibit Part B, page 0353

```
 1    JEREMY KATZ, ESQ.

 2    jkatz@hallgriffin.com

 3                                      October 3, 2022

 4    RE: GOLDWATER BANK, N.A. vs. ELIZAROV

 5    September 15, 2022, SCOTT HOWLETT, JOB NO. 5382189

 6    The above-referenced transcript has been

 7    completed by Veritext Legal Solutions and

 8    review of the transcript is being handled as follows:

 9    ___ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10        to schedule a time to review the original transcript at

11        a Veritext office.

12    ___ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13        Transcript - The witness should review the transcript and

14        make any necessary corrections on the errata pages included

15        below, noting the page and line number of the corrections.

16        The witness should then sign and date the errata and penalty

17        of perjury pages and return the completed pages to all

18        appearing counsel within the period of time determined at

19        the deposition or provided by the Code of Civil Procedure.

20    ___ Waiving the CA Code of Civil Procedure per Stipulation of

21        Counsel - Original transcript to be released for signature

22        as determined at the deposition.

23    ___ Signature Waived - Reading & Signature was waived at the

24        time of the deposition.

25
```

Page 58

Omnibus Joint Exhibit Part B, page 0354

```
 1    _x_ Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF

 2        Transcript - The witness should review the transcript and

 3        make any necessary corrections on the errata pages included

 4        below, noting the page and line number of the corrections.

 5        The witness should then sign and date the errata and penalty

 6        of perjury pages and return the completed pages to all

 7        appearing counsel within the period of time determined at

 8        the deposition or provided by the Federal Rules.

 9    __ Federal R&S Not Requested - Reading & Signature was not

10        requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 59

```
 1   GOLDWATER BANK, N.A. vs. ELIZAROV

 2   SCOTT HOWLETT (#5382189)

 3                    E R R A T A   S H E E T

 4   PAGE_____ LINE_____ CHANGE_____

 5   _____

 6   REASON_____

 7   PAGE_____ LINE_____ CHANGE_____

 8   _____

 9   REASON_____

10   PAGE_____ LINE_____ CHANGE_____

11   _____

12   REASON_____

13   PAGE_____ LINE_____ CHANGE_____

14   _____

15   REASON_____

16   PAGE_____ LINE_____ CHANGE_____

17   _____

18   REASON_____

19   PAGE_____ LINE_____ CHANGE_____

20   _____

21   REASON_____

22

23   _____    _____

24   WITNESS                                Date

25

                                            Page 60
```

# EXHIBIT 27

## EXCERPTS FROM THE TRANSCRIPT OF THE DEPOSITION OF JACQUELINE SCYDICK

1        UNITED STATES DISTRICT COURT
         CENTRAL DISTRICT OF CALIFORNIA

2
         Case No. 5:21-cv-00616-JWH-SPx

3

4    GOLDWATER BANK, N.A.,

5              Plaintiff,

6    vs.

7    ARTUR ELIZAROV, ET AL,

8              Defendants.

     _____/

9

10

11

12          REMOTE DEPOSITION OF

13

14          JACQUELINE SCYDICK

15

16

17        Tuesday, September 13, 2022

18        3:00 p.m. - 4:06 p.m. (CDT)

19

20

21

22

23        Stenographically Reported By:

24         Kimberly Fontalvo, RPR,CLR

25       Realtime Systems Administrator

                              Page 1

```
1      APPEARANCES:
2
       On behalf of Plaintiff/Cross-Defendant:
3
            HILBERT & SATTERLY, LLP
4           409 Camino del Rio S.
            San Diego, CA  92108
5           BY:  JOSEPH A. LEVOTA, ESQ.
6
7           WAGNER HICKS, PLLC
            831 East Morehead Street, Suite 860
8           Charlotte, NC  28202
            BY:  DEREK M. BAST, ESQ.
9
10
       On behalf of Defendant/Elizarov:
11
            LOIA, INC. (APLC)
12          727 West 7th Street, PH1-13
            Los Angeles, CA  90017
13          BY:  ILYA ALEKSEYEFF, ESQ.
14
       On behalf of Unison Agreement Corp.:
15
            ORSUS & GATE
16          201 Spear Street
            San Francisco, CA  94105
17          BY:  NABIL BASHARAT, ESQ.
18
       On behalf of Bank of the West/Deponent:
19
            HALL GRIFFIN
20          1851 East First Street
            Santa Ana, CA  9270
21          BY:  JEREMY KATZ, Esq.
            BY:  RYAN THOMASON, Esq.
22
23
24
25
                                                 Page  2
```

```
 1                    I N D E X
 2    Examination                              Page
 3
      Direct               By Mr. Levota          4
 4    Cross                By Mr. Alekseyeff      36
      Cross                By Mr. Basharat        39
 5
      Certificate of Oath                         44
 6    Certificate of Reporter                     45
 7
 8                      EXHIBITS
 9
10    No.                                      Page
11    Exhibit 5        Amended Preliminary       18
                       Report
12
      Exhibit 15       Lender's Closing          20
13                     Instructions
14    Exhibit 23       Preliminary Report        12
15    Exhibit 33       Closing disclosure        24
16    Exhibit 71       Plaintiff/Cross-Defendant  6
                       Goldwater Bank, N.A.'s
17                     Amended Notice of
                       Deposition of Bank of the
18                     West's Person(s) Most
                       Knowledgable
19
      Exhibit 72       Uniform Residential Loan  10
20                     Application
21    Exhibit 73       Note                      28
22    Exhibit 74       Deed of Trust             29
23    Exhibit 75       Buyer's Final Settlement  33
                       Statement
24
25
```

                                              Page  3

Omnibus Joint Exhibit Part B, page 0360

```
 1              THE COURT REPORTER:  Please raise your
 2         right hand.
 3              Do you swear or affirm that the testimony
 4         you are about to give will be the truth, the
 5         whole truth, and nothing but the truth?
 6              THE WITNESS:  Yes.
 7                     DIRECT EXAMINATION
 8      BY MR. LEVOTA:
 9         Q.   Hello.  My name is Joseph Levota and I
10    represent Goldwater Bank in this litigation and I'll
11    be asking you questions today.
12              My first question is could you state and
13    spell your name for the record, please?
14         A.   It's Jacqueline Marie Scydick.  First name
15    is Jacqueline, J-A-C-Q-U-E-L-I-N-E, middle name is
16    Marie, M-A-R-I-E, and last name is Scydick,
17    S-C-Y-D-I-C-K.
18         Q.   Could you tell us who your current
19    employer is?
20         A.   Bank of the West.
21         Q.   And what is your current job title?
22         A.   Senior vice president.
23         Q.   And what are your duties as senior vice
24    president?
25         A.   I'm responsible for management of the
```

Page  4

```
 1              Q.    Prior to receiving this loan application

 2      from Mr. Howlett, did Bank of the West have, to your

 3      knowledge, any information regarding the property or

 4      any -- I guess any information regarding the

 5      property?

 6              A.    Not until the application is completed.

 7              Q.    So the application comes in for

 8      Mr. Howlett, Bank of the West processed it, and

 9      eventually they agreed to the loan, correct?

10              A.    Correct.

11              Q.    Then to your understanding, an escrow was

12      opened, correct?

13              A.    Correct.

14              Q.    So I'm going to show you what has been

15      previously marked as Exhibit 23.    We'll mark it as

16      Exhibit 23 as well.

17                    (Thereupon, marked as Exhibit 23.)

18        BY MR. LEVOTA:

19              Q.    This is document entitled "Preliminary

20      Report."    And it's dated as of February 8, 2021.

21      And I guess at the top, it's dated February 18,

22      2021.

23                    Do you recognize this document?

24              A.    Yes.

25              Q.    Did Bank of the West receive a copy of
```

Page 12

this preliminary report as part of the escrow transaction?

A. We received the --

MR. KATZ: Before you ask that about the whole document, do you mind scrolling through it so the witness can see it?

MR. LEVOTA: Absolutely. Let me --

MR. KATZ: Your question was did you receive this preliminary report, not just a preliminary report.

MR. LEVOTA: Thank you, Mr. Katz.

I will happily scroll through this.

BY MR. LEVOTA:

Q. And Ms. Scydick, at any point in this deposition -- it's unfortunate given the virtual setting I can't hand you the document and allow you to go through it at your own pace, but to the extent we are looking at any exhibit at any point in this deposition and you want to see something that's not displayed to you, please let me know and I will happily display whatever you request.

So we're looking at what's been marked as Exhibit 23. It's entitled, "Preliminary Report." It is 20 pages. And I am flipping through the pages. And I would ask that you tell me to stop if

```
 1    you want me to stop on anything particular.
 2         A.    Can you go back one.
 3         Q.    Absolutely.
 4         A.    Page 4.  And I'm sorry, it got smaller.
 5    Maybe I can make it bigger on my side.
 6              Okay.  There you go.  Now the neighbor can
 7    see it.  Okay.  That's good.
 8         Q.    And some of this is just pretty -- that's
 9    Exhibit A.  And I think from here, it's all pretty
10    standard form.
11         A.    Yes, that is the document, the
12    preliminary.
13         Q.    Did anyone at Bank of the West review the
14    preliminary report?
15              MR. KATZ:  Objection.  Vague as to when.
16       BY MR. LEVOTA:
17         Q.    Go ahead, Ms. Scydick.
18              THE WITNESS:  I'm sorry.  I didn't hear
19         what you said, Jeremy.
20              MR. KATZ:  The objection is objection to
21         the form.  It's vague as to time.
22       BY MR. LEVOTA:
23         Q.    You can go ahead an answer.
24              I guess let's -- let's pause there.  If at
25    any point I ask a question that you don't
```

Page 14

1     is this the list of documents that you're referring

2     to?

3          A.    Correct.

4          Q.    And this is what Bank of the West expects

5     to get back from Escrow of the West at the close of

6     this transaction?

7          A.    Those are the documentation that we need

8     to have evidence that they were signed so that we go

9     to the next step because we will not fund the loan

10    until those documents -- an image of those documents

11    are received.

12         Q.    Was an image of those documents received

13    in this transaction?

14         A.    Yes.

15         Q.    And did Bank of the West fund the loan?

16         A.    Yes, we did.

17         Q.    I'm going to show you what's been

18    previously marked as Exhibit 33.  We'll mark it as

19    Exhibit 33 for this deposition.

20              (Thereupon, marked as Exhibit 33.)

21       BY MR. LEVOTA:

22         Q.    It's entitled "Closing Disclosure."

23              Do you see this?

24         A.    Yes.

25         Q.    Are you familiar with this document?

                                        Page 24

```
 1           A.   Well, that's the seller's document, so I
 2      would not have -- we would not have seen that until
 3      the end.
 4           Q.   What you what do you mean this is a
 5      seller's document?
 6           A.   If you look at the top of the documents
 7      where it says "summaries of transaction," that's the
 8      seller's transaction side.
 9           Q.   Do you know who prepares -- who prepared
10      this document?
11           A.   I'm going to assume it was prepared -- is
12      the name down at the bottom?  Because it's not ours.
13           Q.   Would you be surprised to learn that the
14      escrow officer said that the buyer's lender created
15      this document?
16                MR. KATZ:  Objection.
17           A.   It's an estimate.
18                MR. KATZ:  Objection.  Incomplete
19           hypothetical.
20        BY MR. LEVOTA:
21           Q.   But this is not a document created by
22      Bank of the West; is that correct?
23           A.   That's correct.
24           Q.   Is this a document that Bank of the West
25      ever saw as part of this transaction?
```

Page 25

```
 1     communications with Goldwater Bank regarding the
 2     property for the loan?
 3               MR. KATZ:   Objection.   Vague as to time.
 4          A.   During the processing of the loan, no.
 5       BY MR. LEVOTA:
 6          Q.   After the processing of the loan?
 7          A.   The only thing that I found out about
 8     Goldwater was with this deposition.
 9          Q.   Okay.   So prior -- let's -- that's fine.
10               At any time has Bank of the West ever
11     spoken to Artur Elizarov?
12          A.   That's the seller of the transaction?   He
13     would be not be our customer, so no.
14          Q.   I understand that he's not your customer,
15     but I just -- beyond that, there's no record of my
16     communication?
17          A.   There's no record.
18          Q.   Is there any record of any communications
19     with Ilya Alekseyeff regarding this loan or this
20     property?
21          A.   No.
22          Q.   Was there any communications with Unison
23     Agreement Corp. regarding this loan or this
24     property?
25          A.   No.
```

Page 30

```
 1        That was it.
 2            Q.    Okay.   I have just one more question for
 3    you, and I -- unfortunately I think it's kind of
 4    just clarifying what's already been testified to.   I
 5    just want to confirm that Bank of the West --
 6    there's no notes -- there's nothing in your notes to
 7    indicate that Bank of the West ever spoke to
 8    Escrow of the West about the seller's liens; is that
 9    correct?
10            A.    That is correct.
11            Q.    Okay.
12            MR. LEVOTA:   Then I have no further
13    questions for you.   I appreciate your time and
14    appearing here today.
15            THE WITNESS:   Thank you.
16            MR. LEVOTA:   There may be other counsel
17    that have questions, though.
18            THE WITNESS:   Oh, sorry.
19            MR. KATZ:   If only.   Who is going next?
20    Is Ilya or is it Nabil?
21            MR. ALEKSEYEFF:   I can go if you don't
22    mind.   I just have a couple of quick questions.
23                    CROSS EXAMINATION
24    BY MR. ALEKSEYEFF:
25        Q.    Hello, Ms. Scydick?
```

<div align="right">Page 36</div>

```
 1              So there was no concern on
 2    Bank of the West's part about there being something
 3    that Unison had that was then released after the
 4    sale had been made; there was no question about
 5    that.
 6         A.   No.
 7         Q.   And to the best of your understanding,
 8    there's no position that Bank of the West is taking
 9    that Unison did not have proper lien on the property
10    that would have been discharged once the property
11    was sold, correct?
12         A.   Again, that would be the title company
13    that would be responsible for that.
14         Q.   And I guess just last question then,
15    sitting here as of today's date, to the best of your
16    knowledge, there's no interest that Unison has to it
17    title of this particular property that you are aware
18    of, right?
19         A.   Not that I'm aware of.
20              MR. BASHARAT:  That's all.  No further
21         questions.
22              THE WITNESS:  Okay.
23              MR. KATZ:  I've got no questions.
24              (Discussion off the record.)
25              MR. LEVOTA:  We're back on the record.
```

                                              Page 42

```
 1              We're going to conclude this deposition per

 2         code with the stipulation that a certified copy

 3         of the deposition transcript can be used for

 4         any purpose.

 5                  Thank you for your time, Ms. Scydick.

 6                  (Deposition concluded at 4:06 p.m. CDT)

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Veritext Legal Solutions
866 299-5127

Omnibus Joint Exhibit Part B, page 0370

```
 1                    CERTIFICATE OF OATH

 2

 3

 4

 5

 6              I, the undersigned authority, certify

 7

 8        that JACQUELINE SCYDICK remotely appeared before

 9

10        me and was sworn on the 13th day of September,

11

12        2022.

13

14              Signed this 27th day of September, 2022.

15

16

17

18

19

20

21

22              KIMBERLY FONTALVO, RPR

23              Notary Public, State of Colorado

24              My Commission No. 20214007135

25              Expires: 2/23/2025
```

                                                    Page 44

```
 1                    CERTIFICATE OF REPORTER

 2

 3       STATE OF COLORADO

 4

 5              I, KIMBERLY FONTALVO, Registered

 6       Professional Reporter, do hereby certify that I

 7       was authorized to and did stenographically report

 8       the foregoing remote deposition of JACQUELINE

 9       SCYDICK; that a review of the transcript was

10       requested; and that the transcript is a true

11       record of my stenographic notes.

12              I FURTHER CERTIFY that I am not a

13       relative, employee, attorney, or counsel of any

14       of the parties, nor am I a relative or employee

15       of any of the parties' attorneys or counsel

16       connected with the action, nor am I financially

17       interested in the action.

18              Dated this 27th day of September, 2022.

19

20

21

22

23

24

25                    KIMBERLY FONTALVO, RPR, CLR

                                          Page 45
```

```
 1    JEREMY KATZ, Esq.

 2    jkatz@hallgriffin.com

 3                                     SEPTEMBER 27, 2022

 4    RE: GOLDWATER BANK V. ELIZAROV

 5    SEPTEMBER 13, 2022, JACQUELINE SCYDICK, JOB NO. 5382172

 6    The above-referenced transcript has been

 7    completed by Veritext Legal Solutions and

 8    review of the transcript is being handled as follows:

 9    ___ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10        to schedule a time to review the original transcript at

11        a Veritext office.

12    ___ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13        Transcript - The witness should review the transcript and

14        make any necessary corrections on the errata pages included

15        below, noting the page and line number of the corrections.

16        The witness should then sign and date the errata and penalty

17        of perjury pages and return the completed pages to all

18        appearing counsel within the period of time determined at

19        the deposition or provided by the Code of Civil Procedure.

20    ___ Waiving the CA Code of Civil Procedure per Stipulation of

21        Counsel - Original transcript to be released for signature

22        as determined at the deposition.

23    ___ Signature Waived - Reading & Signature was waived at the

24        time of the deposition.

25
```

Page 46

Omnibus Joint Exhibit Part B, page 0373

1   _X_Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF

2      Transcript - The witness should review the transcript and

3      make any necessary corrections on the errata pages included

4      below, noting the page and line number of the corrections.

5      The witness should then sign and date the errata and penalty

6      of perjury pages and return the completed pages to all

7      appearing counsel within the period of time determined at

8      the deposition or provided by the Federal Rules.

9   __ Federal R&S Not Requested - Reading & Signature was not

10     requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                    Page  47

```
 1   GOLDWATER BANK V. ELIZAROV

 2   JACQUELINE SCYDICK, JOB NO. 5382172

 3                  E R R A T A   S H E E T

 4   PAGE_____ LINE_____ CHANGE_____

 5   _____

 6   REASON_____

 7   PAGE_____ LINE_____ CHANGE_____

 8   _____

 9   REASON_____

10   PAGE_____ LINE_____ CHANGE_____

11   _____

12   REASON_____

13   PAGE_____ LINE_____ CHANGE_____

14   _____

15   REASON_____

16   PAGE_____ LINE_____ CHANGE_____

17   _____

18   REASON_____

19   PAGE_____ LINE_____ CHANGE_____

20   _____

21   REASON_____

22

23   _____    _____

24   WITNESS                                 Date

25
```

Page 48

# EXHIBIT 28

## EXCERPTS FROM TRANSCRIPT OF
## THE DEPOSITION OF VICKI CRESTANI

```
 1                    UNITED STATES DISTRICT COURT
 2         CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION
 3
 4    GOLDWATER BANK, N.A.,              ) CASE NO.
                                        ) 5:21-cv-00616-JWH-SP
 5           Plaintiff,                 )
                                        )
 6    vs.                               )
                                        )
 7    ARTUR ELIZAROV; UNISON AGREEMENT)
      CORP.; SCOTT HOWLETT; BANK OF     )
 8    WEST; and ILYA ALEKSEYEFF,        )
                                        )
 9           Defendants,                )
      _____  )
10                                      )
      AND RELATED CROSS-ACTIONS         )
11    _____  )
12
13
14
15              DEPOSITION OF VICKIE ROBIN CRESTANI
16                    SAN DIEGO, CALIFORNIA
17                  TUESDAY, DECEMBER 6, 2022
18
19
20
21
22
23    REPORTED BY:
      KATHLEEN M. ALONA
24    CSR NO:  14219
      JOB NO:  5603295
25    Pages 1 - 224

                                                  Page 1
```

```
 1                  UNITED STATES DISTRICT COURT
 2          CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION
 3
 4   GOLDWATER BANK, N.A.,              ) CASE NO.
                                       ) 5:21-cv-00616-JWH-SP
 5           Plaintiff,                )
                                       )
 6   vs.                               )
                                       )
 7   ARTUR ELIZAROV; UNISON AGREEMENT)
     CORP.; SCOTT HOWLETT; BANK OF     )
 8   WEST; and ILYA ALEKSEYEFF,        )
                                       )
 9           Defendants,               )
     _____  )
10                                     )
     AND RELATED CROSS-ACTIONS         )
11   _____  )
12
13
14
15
16           The deposition of VICKIE ROBIN CRESTANI, taken
17   on behalf of the Defendant and Cross-Complainant SCOTT
18   HOWLETT and Defendant BANK OF THE WEST, beginning at
19   10:08 a.m., and ending at 4:51 p.m., on Tuesday,
20   December 6, 2022, before Kathleen M. Alona, Certified
21   Shorthand Reporter, No. 14219.
22
23
24
25
                                                   Page 2
```

```
 1                          INDEX
 2                       EXAMINATION
 3    Witness Name                                      Page
 4    VICKIE ROBIN CRESTANI
 5        BY MR. KATZ ..................................... 8
                                                         204
 6                                                       224
                                                         233
 7
          BY MR. ALEKSEYEFF ............................. 177
 8
          BY MS. HAIDAR ................................. 190
 9
          BY MR. LA VOTA ................................ 194
10                                                       217
                                                         233
11
12
                           EXHIBITS
13
      Exhibit     Description                           Page
14
      EXHIBIT 128 VICKIE CRESTANI'S EXPERT REPORT        69
15
      EXHIBIT 127 DEPOSITION NOTICE                      69
16
      EXHIBIT 129 EMAIL CHAIN WITH ATTACHMENTS          216
17
      EXHIBIT 130 EMAIL CHAIN                           221
18
      EXHIBIT 131 TWO-PAGE DOCUMENT                     226
19                BATES NO. BOTW 0002331 AND BOTW 0002332
20
                       Previously Marked Exhibits
21
                                                        Page
22
      EXHIBIT 24                                         30
23
      EXHIBIT 7                                          87
24
      EXHIBIT 6                                         104
25
      EXHIBIT 11                                        163

                                                   Page 3
```

```
 1   APPEARANCES (ALL APPEARING REMOTELY VIA ZOOM):

 2

 3           FOR PLAINTIFF GOLDWATER BANK N.A.:

 4               HILBERT & SATTERLY LLP

 5               BY:  JOSEPH A. LA VOTA, ESQ.

 6               409 CAMINO DEL RIO SOUTH

 7               SUITE 104

 8               SAN DIEGO, CA 92108

 9               PHONE NUMBER (619) 795-0300

10               JLEVOTA@HSCALLAW.COM

11

12           PRO HAC VICE ATTORNEYS FOR PLAINTIFF

13           BOLDWATER BANK N.A.:

14               WAGNER HICKS PLLC

15               BY:  ABBY KRYSAK, ESQ.

16               831 EAST MOREHEAD STREET

17               SUITE 860

18               CHARLOTTE, NC 28202

19               PHONE NUMBER (704) 705-7538

20               ABBY.KRYSAK@WAGNERHICKS.LAW

21

22

23

24

25

                                         Page 4
```

Omnibus Joint Exhibit Part B, page 0380

```
 1    APPEARANCES CONTINUED (ALL APPEARING REMOTELY VIA ZOOM):

 2

 3            FOR DEFENDANT/CROSS-COMPLAINANT SCOTT HOWLETT

 4        AND DEFENDANT BANK OF THE WEST:

 5                HALL GRIFFIN LLP

 6                BY:  JEREMY T. KATZ, ESQ.

 7                1851 EAST FIRST STREET

 8                10TH FLOOR

 9                SANTA ANA, CA 92705-4052

10                PHONE NUMBER (714) 918-7000

11                JKATZ@HALLGRIFFIN.COM

12

13            FOR DEFENDANT UNISON AGREEMENT CORP.:

14                ORSUS GATE LLP

15                BY:  JENNIFER HAIDER, ESQ.

16                16 N. MARENGO AVENUE

17                SUITE 316

18                PASADENA, CA 91101

19                PHONE NUMBER (213) 973-2052

20                JHAIDER@ORSUSGATE.COM

21

22

23

24

25

                                              Page 5
```

Omnibus Joint Exhibit Part B, page 0381

```
 1    APPEARANCES CONTINUED (ALL APPEARING REMOTELY VIA ZOOM):

 2

 3            FOR DEFENDANT ARTUR ELIZAROV

 4            AND DEFENDANT ILYA ALEKSEYEFF (IN PRO PER):

 5                 LOIA, INC. (APLC)

 6                 BY:  ILYA ALEKSEYEFF, ESQ.

 7                 8721 SANTA MONICA BOULEVARD

 8                 #119

 9                 WEST HOLLYWOOD, CA 90069

10                 PHONE NUMBER (213) 537-4592

11                 ILYA@LOIA.LEGAL

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                              Page  6
```

```
 1              SAN DIEGO, CALIFORNIA; TUESDAY, DECEMBER 6, 2022

 2                            10:08 a.m.

 3

 4         MR. KATZ:  Let's go on to the record.

 5         MR. LA VOTA:  This is Joseph LaVota, and I'm in the

 6    same office as the deponent, Vickie Crestani.  I am not on

 7    camera.  I am off camera, but we are in the same room.

 8         MR. KATZ:  Good morning.  This is Jeremy Katz,

 9    counsel for Scott Howlett and Bank of the West in this

10    matter.  I'm the party noticing the deposition.

11         MS. HAIDAR:  This is Jennifer Haidar, counsel for

12    Unison Agreement Corp.

13         MS. KRYSAK:  And this is Abby Krysak, counsel for

14    Goldwater Bank.

15         MR. KATZ:  And as we discussed off the record,

16    Mr. Alekseyeff is logged in but not present.  He will be

17    rejoining us soon, and he's authorized us to proceed in his

18    absence.

19

20                         EXAMINATION

21

22    BY MR. KATZ:

23         Q    Good morning, Ms. Crestani.

24         A    Good morning.

25         Q    Am I pronouncing that correctly?

                                                     Page 7
```

Omnibus Joint Exhibit Part B, page 0383

 1   owes to a title company?

 2       A     They are a conduit, if you will, between parties to

 3   an escrow and what is required for the issuance of a title

 4   policy as called out for in the purchase agreement and/or

 5   escrow instructions or lenders instructions.

 6            So it is escrow's duty to provide to the title

 7   company those instruments and the information that would --

 8   those policies could be issued.  Now, the title company also

 9   does the recording of the documents.

10            But there's also another duty, and that duty is

11   escrow is required to tell the title company what it

12   discovers through the escrow process or through the

13   information that is given to it to a title company, because

14   some of that information could cause a claim against the

15   title policy that has been issued.

16            If that information had been shared or if problems

17   on a preliminary report, such as the ones in this file,

18   existed, the escrow officer needs to contact the title

19   officer and say hey, I think your preliminary report is

20   wrong.  And in this case, there were two preliminary reports

21   issued, and both of them were incorrect.

22            The escrow officer should have contacted title to

23   get those inconsistencies corrected.

24       Q     So the escrow officer should work, does the escrow

25   officer have any duty to the title company?

                                                  Page 130

```
 1        A     Correct.

 2        Q     You're not opining that Unison breached their

 3    standard of care; correct?

 4        A     I have no opinion at all with regards to that.

 5        Q     And it's not your opinion that Unison intervened to

 6    mislead Escrow of the West in any of the email communications

 7    that you reviewed; is that correct?

 8        A     That is correct.

 9        Q     And one last question, just to be very clear.  In

10    your report, on page 8, you said, and I quote:

11            "When looking at the subordination agreement,

12    it is obvious that it is not a memorandum of

13    Unison homebuyer agreement being subordinated          to

14    Unison's trust deed.  Instead, the

15    subordination agreement states Unison is

16    subordinating to a senior lender."

17            Is that correct?

18        A     That is correct.

19        Q     And in your opinion, as you noted on line 19, what

20    makes that officer?

21        A     Well, one of the things I'm referring to is how the

22    preliminary report is reading and where I feel it was

23    incumbent on escrow holder Ms. Cross to call up Orange Coast

24    Title and say something's wrong here.  We have a recorded

25    deed of trust and we have a recorded subordination agreement,
```

                                                    Page 179

Omnibus Joint Exhibit Part B, page 0385

1    and you're reflecting that this subordination agreement is

2    subordinating something that's the same lender, Unison.

3          So the preliminary report was completely wrong, and

4    it deserved some attention.  I think at this particular time

5    it is -- I'll say I will assume that if this call had been

6    made, there had been talk between the title officer and the

7    escrow officer; oh, that's wrong it's referring to a senior

8    lien.

9          Well, we don't see senior lien of record.  Is there

10   a mistake?  Do we need to inquire, because we don't see a

11   reconveyance recorded either for anything that we can't see

12   recorded.

13          So with all of that being said initial that's really

14   so initial and so elementary to an escrow officer, is check

15   your PR, preliminary report, make sure you understand it,

16   it's clear, it's referencing the right documents.

17          In this particular case, it really -- there was an

18   error on the preliminary report.  If questioned, it could

19   have been clarified; oh, there should be a senior lien out

20   there, it says it's recorded concurrently therewith.  And if

21   that's not recorded, somebody better ask some questions; has

22   it been paid off?

23          MS. HAIDAR:  Thank you very much.

24          THE WITNESS:  I hope I've answered your question.

25   I'm sorry.

                                                    Page 180

```
 1    working.  So I don't know why this escrow officer chose not
 2    to put down Goldwater as a placeholder, but she did not.
 3    And, again, she didn't have clarity so she was confused.  She
 4    did not put this together correctly.
 5            MR. KATZ:  So let's -- if there's no further
 6    questions, you guys want to go off the record staying for a
 7    brief second staying on video to discuss stipulations for the
 8    transcript?
 9            MR. LA VOTA:  Sure.
10            MR. KATZ:  Let's go off the record.
11            (Off the record.)
12            MR. KATZ:  Jeremy Katz coming back on the record.
13    Off the record we had been discussing stipulations for the
14    transcript.  We're going to do it per Code, but we are
15    stipulating that a certified copy of the transcript can be
16    used for lieu -- in lieu of the original for all purposes.
17            MR. LA VOTA:  Stipulated.
18            (Whereupon, at 4:51 p.m., the examination of VICKIE
19    ROBIN CRESTANI was concluded.)
20
21
22
23
24
25
```

Page 219

Omnibus Joint Exhibit Part B, page 0387

1          I, VICKIE ROBIN CRESTANI, hereby declare that I am

2     the witness in the within matter, that I have read the

3     foregoing deposition and know the contents thereof, and I

4     declare that the same is true of my own knowledge except as

5     to those matters which are therein stated upon my information

6     and belief, and as to those matters, I believe them to be

7     true.

8          I declare under penalty of perjury that the

9     foregoing is true and correct.

10         Executed on this _____ of _____, 20____, at

11     _____, California.

12

13

14          _____

15               VICKIE ROBIN CRESTANI

16

17

18

19

20

21

22

23

24

25

                                              Page 220

1          I, KATHLEEN M. ALONA, CSR NO. 14219, do hereby

2    certify:

3          That prior to being examined, the witness named in

4    the foregoing deposition was by me duly sworn to testify the

5    truth, the whole truth, and nothing but the truth under the

6    penalty of perjury.

7          That said deposition was taken remotely at the time

8    and place herein set forth and was taken down by me in

9    shorthand and thereafter was transcribed into typewriting

10   under my direction and supervision.

11         I hereby certify the foregoing transcript is a full,

12   true and correct transcript of my shorthand notes so taken.

13         I further certify that I am neither counsel for nor

14   related to any party to said action, nor in any way

15   interested in the outcome thereof.

16         The dismantling, unsealing, unbinding of, or

17   tampering with the original transcript will render this

18   reporter's certificate null and void.

19         IN WITNESS WHEREOF, I have hereunto subscribed my

20   name this 29th day of December, 2022.

21

22

23   _____

24         KATHLEEN M. ALONA, CSR NO. 14219

25

Page 221

Omnibus Joint Exhibit Part B, page 0389

```
 1    JOSEPH A. LA VOTA, ESQ.

 2    JLEVOTA@HSCALLAW.COM

 3                                        DECEMBER 29, 2022

 4    RE: GOLDWATER BANK, N.A. v. ARTUR ELIZAROV

 5    DECEMBER 6, 2022, VICKIE ROBIN CRESTANI, JOB NO. 5603295

 6    The above-referenced transcript has been

 7    completed by Veritext Legal Solutions and

 8    review of the transcript is being handled as follows:

 9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10        to schedule a time to review the original transcript at

11        a Veritext office.

12    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13        Transcript - The witness should review the transcript and

14        make any necessary corrections on the errata pages included

15        below, notating the page and line number of the corrections.

16        The witness should then sign and date the errata and penalty

17        of perjury pages and return the completed pages to all

18        appearing counsel within the period of time determined at

19        the deposition or provided by the Code of Civil Procedure.

20    __ Waiving the CA Code of Civil Procedure per Stipulation of

21        Counsel - Original transcript to be released for signature

22        as determined at the deposition.

23    __ Signature Waived - Reading & Signature was waived at the

24        time of the deposition.

25
                                                    Page 222
```

Omnibus Joint Exhibit Part B, page 0390

1    _X_Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF

2       Transcript - The witness should review the transcript and

3       make any necessary corrections on the errata pages included

4       below, notating the page and line number of the corrections.

5       The witness should then sign and date the errata and penalty

6       of perjury pages and return the completed pages to all

7       appearing counsel within the period of time determined at

8       the deposition or provided by the Federal Rules.

9    __ Federal R&S Not Requested - Reading & Signature was not

10      requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page  223

Omnibus Joint Exhibit Part B, page 0391

```
 1    GOLDWATER BANK, N.A. v. ARTUR ELIZAROV

 2    VICKIE ROBIN CRESTANI, JOB NO. 5603295

 3              E R R A T A   S H E E T

 4    PAGE _18_ LINE _18_ CHANGE _"awful"_ to "rough"

 5    _____

 6    REASON _if not pronounced correctly it is what I meant_

 7    PAGE _30_ LINE _24_ CHANGE _"attachments"_ to "as"

 8    _____

 9    REASON _it would have been the word I used_

10    PAGE _59_ LINE _14_ CHANGE _"SNE"_ to "Assignee"

11    _____

12    REASON _it would have been the word I used_

13    PAGE _139_ LINE _8 + 9_ CHANGE _"which really doesn't"_ to

14    _Matt, May Melissa"_

15    REASON _I read this directly from the email Exhibit_

16    PAGE _173_ LINE _7_ CHANGE _"heir"_ to "the"

17    _____

18    REASON _heir is just incorrect_

19    PAGE _182_ LINE _21_ CHANGE _"of trust state"_ to

20    _"Deed of Trust state"_

21    REASON _The word "Deed" was missing_

22

23    _[signature] Vicki Crestani_        _1/25/2023_

24    WITNESS                     Date

25

                                      Page 224
```

Omnibus Joint Exhibit Part B, page 0392