*Goldwater Bank v. Elizarov, et al.*, C.D. Cal. Case No. 21-cv-00616-JWH-SP

# OMNIBUS
# JOINT EXHIBIT PART E

## EXHIBIT 65
## Notice of Goldwater's Rule 30(b)(6) Deposition

HALL GRIFFIN LLP
HOWARD D. HALL, State Bar No. 145024
  hdhall@hallgriffin.com
JEREMY T. KATZ, State Bar No. 267361
  jkatz@hallgriffin.com
KASANDRA C. GOLDBERG, State Bar No. 345364
  kgoldberg@hallgriffin.com
1851 East First Street, 10th Floor
Santa Ana, California 92705-4052
Telephone: (714) 918-7000
Facsimile: (714) 918-6996

Attorneys for Defendant and Cross-Complainant
SCOTT HOWLETT and Defendant BMO
HARRIS BANK N.A., Successor by Merger to
BANK OF THE WEST

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| Goldwater Bank, N.A. | CASE NO. 21-cv-00616-JWH-SP |
| Plaintiff, | JUDGE:   Hon. John W. Holcomb |
| vs. | CTRM.:   9D |
| ARTUR ELIZAROV; UNISON AGREEMENT CORP.; SCOTT HOWLETT; BANK OF THE WEST; and ILYA ALEKSEYEFF, | **HOWLETT AND BANK OF THE WESTS' CROSS-NOTICE OF DEPOSITION TO PERSON MOST KNOWLEDGEABLE AT GOLDWATER BANK, N.A. AND REQUEST FOR PRODUCTION OF DOCUMENTS** |
| Defendants. | |
| AND RELATED CROSS-ACTIONS | DATE:   May 12, 2023<br>TIME:   10:00 a.m.<br>PLACE: Remote |
| | TRIAL DATE:   May 1. 2023 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, pursuant to Rule 30 of the Federal Rules of Civil Procedure, Defendant and Cross-Complainant Scott Howlett ("Howlett") and Defendant  BMO HARRIS BANK N.A., Successor by Merger to BANK OF THE WEST Bank of the West ("BOTW"), by and through their attorneys of record, will take the deposition, on oral examination, of Plaintiff Goldwater Bank, N.A. ("Goldwater"), commencing at 10:00 a.m. on May 12, 2023, virtually via Zoom (or equivalent remote videoconference service), and continuing from day to day,

1

1   Saturdays, Sundays, and legal holidays excluded, until completed.

2          Deponent Goldwater is not a natural person.  Pursuant to the Fed. R. Civ. P.

3   30(b)(6)—*and pursuant the "meet and confer" session that took place on January*

4   *10, 2023 amongst the parties' respective counsel*—Goldwater shall designate one or

5   more officers, directors, managing agents, or other persons who consent to testify on

6   its behalf with respect to the topics described below.  The person(s) so designated

7   shall testify as to matters known or reasonably available to the organization.

8          **BOTW/HOWLETT Topic 1:**

9          The factual basis of Goldwater's Quite Title Cause of Action against

10  BOTW/Howlett as of the filing of the First Amended Complaint.

11         **BOTW/HOWLETT Topic 2:**

12         The factual basis for continuing to maintain Goldwater's Quite Title Cause of

13  Action against BOTW/Howlett.

14         **BOTW/HOWLETT Topic 3:**

15         The factual basis of Goldwater's Declaratory Judgment Claim against

16  BOTW/Howlett as of the filing of the First Amended Complaint.

17         **BOTW/HOWLETT Topic 4:**

18         The factual basis for continuing to maintain Goldwater's Declaratory

19  Judgment Claim against BOTW/Howlett.

20         **BOTW/HOWLETT Topic 5:**

21         Goldwater's policies and procedures for recording deeds of trust at the time of

22  closing in place between May 1, 2019 and July 31, 2019, and applicable to the Deed

23  of Trust executed by Mr. Elizarov.

24         **BOTW/HOWLETT Topic 6:**

25         Goldwater's policies and procedures for recording deeds of trust post-closing

26  between July 31, 2019 and August 30, 2019, and applicable to the Deed of Trust

27  executed by Mr. Elizarov.

28

HALL GRIFFIN

Omnibus Joint Exhibit Part E, page 1351

1   **BOTW/HOWLETT Topic 7:**

2   Goldwater's policies and procedures in place between July 31, 2019 and April

3   15, 2021, regarding the custodial maintenance, handling and control of original

4   documents applicable to the Deed of Trust executed by Mr. Elizarov and dated July

5   31, 2019.

6   **BOTW/HOWLETT Topic 8:**

7   Goldwater's policies and procedures in place between May 1, 2019 and July

8   31, 2019, regarding the preparation, execution and recording of subordination

9   agreements applicable to the subordination agreement at issue in this action.

10   **BOTW/HOWLETT Topic 9:**

11   The relationship between Goldwater and Unison as it relates to the

12   Subordination Agreement at issue in this action, Goldwater's involvement with the

13   preparation of the Subordination Agreement, Goldwater's efforts, if any, to confirm

14   that the information in the Subordination Agreement is accurate, Goldwater's

15   efforts, if any, to obtain a copy of the Subordination Agreement as recorded, and if

16   Goldwater drafted such agreement, why Goldwater's name does not appear in the

17   Subordination Agreement.

18   **BOTW/HOWLETT Topic 10**:

19   Goldwater's policies and procedures in place between in May of 2020 related

20   to service transferring a loan to a new loan servicer applicable to Mr. Elizarov's

21   mortgage loan secured by the Subject Property.

22   **BOTW/HOWLETT Topic 11**:

23   When Goldwater came into possession, custody and control of the original

24   wet-signed copy of Mr. Elizarov's Deed of Trust dated July 31, 2019, and the

25   factual circumstances by which Goldwater came to be in possession, custody and

26   control of the same.

27   / / /

28   / / /

HALL GRIFFIN

**BOTW/HOWLETT Topic 12**:

Goldwater's policies and procedures in place between May 1, 2019 and July 31, 2019, with respect to obtaining a lender's policy of title insurance as applicable to Mr. Elizarov's mortgage loan secured by the Subject Property.

**BOTW/HOWLETT Topic 13**:

Goldwater's policies and procedures in place on July 31, 2019, with respect to confirming that Goldwater's escrow instructions were followed post-closing, as applicable to Mr. Elizarov's mortgage on the Subject Property.

**BOTW/HOWLETT Topic 14**:

The status of Mr. Elizarov's mortgage loan secured by the Subject Property in March of 2021, and the payment history of the same between February 2021 to April 2021.

**BOTW/HOWLETT Topic 15**:

Goldwater's communications with third parties regarding Goldwater's alleged interest in the Subject Property as follows:

    a.    Weststar Mortgage Corporation employee Melissa Melendez between February of 2021 through April 2021.

    b.    Escrow of the West between March 1, 2021 – April 15, 2021.

    c.    Howlett between March 1, 2021 to April 15, 2021.

    d.    Bank of the West between March 1, 2021 to April 15, 2021.

    e.    First American Title Insurance Company between March 1, 2021 to April 15, 2021.

**BOTW/HOWLETT Topic 16:**

When Goldwater learned the Deed of Trust was not recorded, and the actions Goldwater took to record the Deed of Trust.

**BOTW/HOWLETT Topic 17:**

Goldwater's relationship with Gregory Hill between May 1, 2019 to the present.

HALL GRIFFIN

**BOTW/HOWLETT Topic 18:**

If Goldwater were to be successful on its Declaratory Judgment and Quite Title claims against Bank of the West and Howlett, the total amount of the lien Goldwater claims Bank of the West and Howlett are responsible for.

**BOTW/HOWLETT Topic 19:**

The total amount of attorneys' fees Goldwater has incurred to date in this action.

**ELIZROV Topic 1 (cumulative Topic 20)**

Information Mr. Elizarov provided to Goldwater between May 1, 2019 – July 31, 2019, in connection with Mr. Elizarov's application for a mortgage loan to be secured by certain real property located at 291 W. Overlook Road, Palm Springs, California 92264.

**ELIZROV Topic 2 (cumulative Topic 21)**

Information Mr. Elizarov provided to Goldwater between April 1, 2020 and May 5, 2020, in connection with Mr. Elizarov's May 5, 2020 mortgage forbearance application.

**ELIZROV Topic 3 (cumulative Topic 22)**

Goldwater's policies and procedures in place during May 1, 2019 – July 31, 2019, applicable to the review, underwriting, and approval of Mr. Elizarov's mortgage loan application in connection with certain real property located at 291 W. Overlook Road, Palm Springs, California 92264.

**ELIZROV Topic 4 (cumulative Topic 23)**

Goldwater's review, underwriting, and approval of Mr. Elizarov's mortgage loan application in connection with that certain real property located at 291 W. Overlook Road, Palm Springs, California 92264.

**ELIZROV Topic 5 (cumulative Topic 24)**

Goldwater's policies and procedures in place between April 1, 2020 and June 1, 2020, applicable to the review and approval of Mr. Elizarov's May 5, 2020

Omnibus Joint Exhibit Part E, page 1354

HALL GRIFFIN

1  mortgage forbearance application.

2  **ELIZROV Topic 6 (cumulative Topic 25)**

3  Goldwater's review and approval of Mr. Elizarov's May 5, 2020 mortgage

4  forbearance application.

5  **ELIZROV Topic 7 (cumulative Topic 26)**

6  Contracts or agreements between Goldwater and Weststar Mortgage

7  Corporation concerning the servicing of Mr. Elizarov's mortgage loan secured by

8  certain real property located at 291 W. Overlook Road, Palm Springs, California

9  92264 (the "Subject Property").

10  **ELIZROV Topic 8 (cumulative Topic 27)**

11  Goldwater's understanding of when Weststar Mortgage Corporation first

12  began servicing Elizarov's mortgage loan secured by the Subject Property.

13  **ELIZROV Topic 9 (cumulative Topic 28)**

14  Goldwater's policies and procedures related to foreclosure during the 2021

15  calendar year, applicable to Mr. Elizarov's mortgage loan secured by the Subject

16  Property.  This topic is limited to the process Goldwater follows between the first

17  lapsed mortgage payment and the initiation of a foreclosure action with the

18  respective court.

19  **UNISON Topic 1(cumulative Topic 29)**

20  The factual basis of Goldwater's Quite Title Cause of Action against Unison

21  as of the filing of the First Amended Complaint.

22  **UNISON Topic 2(cumulative Topic 30)**

23  The factual basis for continuing to maintain Goldwater's Quite Title Cause of

24  Action against Unison.

25  **UNISON Topic 3(cumulative Topic 31)**

26  The factual basis of Goldwater's Declaratory Judgment Claim against Unison

27  as of the filing of the First Amended Complaint.

28

HOWLETT AND BANK OF THE WEST'S CROSS-NOTICE OF FRCP 30(b)(6) DEPOSITION
OF GOLDWATER BANK
4871-5193-7101.1

Omnibus Joint Exhibit Part E, page 1355

1    **UNISON Topic 4 (cumulative Topic 32)**

2    The factual basis for continuing to maintain Goldwater's Declaratory

3    Judgment Claim against Unison.

4    **PLEASE TAKE FURTHER NOTICE** that the deposition will be an oral

5    examination before a Certified Shorthand reporter in and for the State of California

6    who is authorized to administer oaths and will be recorded stenographically, and

7    will continue from day to day, Saturdays, Sundays, and holidays excluded, until

8    completed.  The deposition may be videotaped, and the videotape record of this

9    deposition may be used at trial.

10   If the deponent requires the use of an interpreter, notify this office of such

11   requirement at least five (5) days prior to the scheduled date of the deposition.

12

13   DATED:  March 24, 2023            HALL GRIFFIN LLP

14

15

16                           By: _____

17                                Howard D. Hall
                                  Jeremy T. Katz
18                                Kasandra C. Goldberg
                               Attorneys for Defendant and Cross-
19                             Complainant SCOTT HOWLETT; Defendant
                               BANK OF THE WEST
20

21

22

23

24

25

26

27

28

**HALL GRIFFIN**

HOWLETT AND BANK OF THE WEST'S CROSS-NOTICE OF FRCP 30(b)(6) DEPOSITION
OF GOLDWATER BANK
4871-5193-7101.1                      Omnibus Joint Exhibit Part E, page 1356

## CERTIFICATE OF SERVICE

I am employed in the County of Orange, State of .  I am over the age of 18 and not a party to the within action.  My business address is 1851 East First Street, 10th Floor, Santa Ana, CA 92705-4052.

On March 24, 2023, I served the within document(s) described as:

**HOWLETT AND BANK OF THE WESTS' CROSS-NOTICE OF DEPOSITION TO PERSON MOST KNOWLEDGEABLE AT GOLDWATER BANK, N.A. AND REQUEST FOR PRODUCTION OF DOCUMENTS**

on each interested party in this action, as stated below:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL:**  I caused a true copy of the document(s) to be sent to the persons at the corresponding electronic address as indicated above on the above-mentioned date.  My electronic notification address is varagon@hallgriffin.com.  I am readily familiar with this firm's Microsoft Outlook electronic mail system and did not receive any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 24, 2023, at Santa Ana, California.

_____
Veronica Aragon

HALL GRIFFIN

**SERVICE LIST**
*Goldwater Bank, N.A. v. Artur Elizarov, et al.*
**Case No. 5:21-cv-00616-JWH-SP**

| | |
|---|---|
| Sean C. Wagner, Esq. | John Forest Hilbert, Esq. |
| Derek M. Bast, Esq. | Joseph A. LeVota, Esq. |
| Abbey M. Krysak, Esq. | Hilbert & Satterly LLP |
| Wagner Hicks PLLC | 409 Camino Del Rio South, Suite 104 |
| 831 E. Morehead St., Suite 860 | San Diego, CA 92108 |
| Charlotte, NC 28202 | (619) 795-0300; Fax: (619) 501-6855 |
| (704) 705-7538; Fax: (704) 705-7787 | jhilbert@hscallaw.com |
| sean.wagner@wagnerhicks.law | jlevota@hscallaw.com |
| derek.bast@wagnerhicks.law | trohner@hscallaw.com |
| abbey.krysak@wagnerhicks.law | sreyes@hscallaw.com |
| **Pro Hac Vice Attorneys for Plaintiff and Cross-Defendant Goldwater Bank. N.A.** | **Attorneys for Plaintiff and Cross-Defendant Goldwater Bank, N.A.** |

| | |
|---|---|
| Marie B. Maurice, Esq. | Ilya Alekseyeff, Esq. |
| Marina Samson, Esq. | LOIA, Inc. (APLC) |
| Ivie, McNeill, Wyatt, Purcell & Diggs | 727 W. 7th St., PH 1-13 |
| 444 S. Flower St., Suite 1800 | Los Angeles, CA 90017 |
| Los Angeles, CA 90071 | (213) 537-4592 |
| (213) 489-0028; Fax: (213) 489-0552 | ilya@loia.legal |
| mmaurice@imwlaw.com | **Attorneys for Defendant and Cross-Defendant Artur Elizarov, and Defendant Ilya Alekseyeff (in Pro Per)** |
| msamson@imwlaw.com | |
| **Attorneys for Plaintiff and Cross-Defendant Goldwater Bank. N.A.** | |

HALL GRIFFIN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<div style="border: 1px solid black; padding: 20px; text-align: center;">

# **<u>EXHIBIT 66</u>**
# **<u>Transcript of Deposition of Goldwater's First Rule 30(b)(6) Witness - Christine Overbeck</u>**

</div>

1                UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA, EASTERN DIVISION

3

4     GOLDWATER BANK, N.A.,

5              Plaintiff,

6              vs.                          No. 21-cv-00616-JWH-SP

7     ARTUR ELIZAROV; UNISON

      AGREEMENT CORP.; SCOTT

8     HOWLETT; BANK OF THE WEST; and

      ILYA ALEKSEYEFF,

9

              Defendants.

10    _____

11    AND RELATED CROSS-ACTIONS

      _____

12

13

14        REMOTE DEPOSITION OF PERSON MOST KNOWLEDGEABLE AT

15            GOLDWATER BANK, N.A., CHRISTINE OVERBECK

16                      Phoenix, Arizona

17                    Friday, May 12, 2023

18                        Volume I

19

20

21    Reported by:

      CLAUDIA A. BETTUCCHI

22    CSR No. 12214

23    JOB No. 5841720

24

25    PAGES 1 - 168

                                              Page 1

```
 1              UNITED STATES DISTRICT COURT

 2        NORTHERN DISTRICT OF CALIFORNIA, EASTERN DIVISION

 3

 4    GOLDWATER BANK, N.A.,

 5              Plaintiff,

 6              vs.                    No. 21-cv-00616-JWH-SP

 7    ARTUR ELIZAROV; UNISON

      AGREEMENT CORP.; SCOTT

 8    HOWLETT; BANK OF THE WEST; and

      ILYA ALEKSEYEFF,

 9

              Defendants.

10    _____

11    AND RELATED CROSS-ACTIONS

      _____

12

13

14

15           Deposition of Person Most Knowledgeable at

16    Goldwater Bank, N.A., CHRISTINE OVERBECK, taken remotely

17    via Zoom videoconference on behalf of Defendants; with

18    the witness being at Phoenix, Arizona, outside the

19    physical presence of the court reporter; beginning at

20    10:08 a.m. and ending at 4:08 p.m. on Friday, May 12,

21    2023, before CLAUDIA A. BETTUCCHI, Certified Shorthand

22    Reporter No. 12214.

23

24

25

                                              Page  2
```

```
 1      APPEARANCES (remotely):

 2

 3     For Plaintiff and Cross-Defendant Goldwater Bank, N.A.:

 4          WAGNER HICKS, PLLC
            BY:  ABBEY M. KRYSAK, Esq.
 5               SEAN C. WAGNER, Esq.
            831 E. Morehead Street, Suite 860
 6          Charlotte, North Carolina 28202
            704.705.7538
 7          abby.krysak@wagnerhicks.law
            sean.wagner@wagnerhicks.law

 8
            HILBERT & SATTERLY, LLP
 9          BY:  JOSEPH A. LEVOTA, Esq.
            409 Camino Del Rio South, Suite 104
10          San Diego, California 92108
            619.795.0300
11          jlevota@hscallaw.com

12
       For Defendant and Cross-Complainant Scott Howlett and
13     Defendant BMO Harris Bank, N.A., Successor by Merger to
       Bank of the West:

14
            HALL GRIFFIN, LLP
15          BY:  JEREMY T. KATZ, Esq.
                 KASANDRA C. GOLDBERG, Esq.
16          1851 East First Street, 10th Floor
            Santa Ana, California 92705-4052
17          714.918.7000
            jkatz@hallgriffin.com
18          kgoldberg@hallgriffin.com

19
       For Defendant and Cross-Defendant Artur Elizarov and
20     Defendant Ilya Alekseyeff (in Pro Per):

21          LOIA, INC. APLC
            BY:  ILYA ALEKSEYEFF, Esq.
22          727 W. 7th Street, PH 1-13
            Los Angeles, California 90017
23          213.537.4592
            ilya@loia.legal

24

25


                                                 Page  3
```

Omnibus Joint Exhibit Part E, page 1362

```
 1                          INDEX
 2   WITNESS                                   EXAMINATION
 3   CHRISTINE OVERBECK
     Volume I
 4
 5                   BY MR. KATZ                      6
 6
 7
 8
 9                        EXHIBITS
10   EXHIBIT      DESCRIPTION                      PAGE
11   Exhibit 140  Weststar Mortgage/Loan Servicing   88
                  Albuquerqu; GOLDWATER 566 to 575
12
     Exhibit 146  Email from Peter Hill to Theo Haugen  143
13                dated March 25, 2021; GOLDWATER 1666
                  to 1669
14
15
16
17          PREVIOUSLY MARKED EXHIBITS FOR REFERENCE
18   EXHIBIT      BATES                            PAGE
19   Exhibit 2    EOTW 23 to 32                     125
20   Exhibit 6    EOTW 164 to 180                   100
21   Exhibit 7    EOTW 181                          125
22   Exhibit 8    EOW 119 to 120                    125
23   Exhibit 10   EOW 185 to 186                    125
24   Exhibit 16   EOW 154 to 170                    122
25   Exhibit 18   GOLDWATER 481 to 484               62

                                            Page  4
```

```
 1    INDEX (continued)

 2

 3           PREVIOUSLY MARKED EXHIBITS FOR REFERENCE

 4    EXHIBIT        BATES                                PAGE

 5    Exhibit 24   (No Bates stamps) 9 pages               53

 6    Exhibit 25   EOW 119 to 125                         125

 7    Exhibit 53   GOLDWATER 1151 to 1152                  76

 8    Exhibit 70   (No Bates stamps) 2 pages               62

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Omnibus Joint Exhibit Part E, page 1364

```
 1    the closing department.
 2         Q    What is the difference between the closing
 3    department that you just described and the post-closing
 4    department that we were previously discussing?
 5              MS. KRYSAK:  Objection; form, outside the
 6    scope.
 7              THE WITNESS:  Closing is our closing
 8    department, so the loan has not closed yet.  They handle
 9    the loan documents and balancing of the file.  When it's
10    signed by the consumer and the loan funds, then, once
11    that loan funds, it goes to post-closing department,
12    which is two different departments.
13    BY MR. KATZ:
14         Q    And what does the post-closing department do?
15              MS. KRYSAK:  Objection; form, outside the
16    scope.
17              THE WITNESS:  Post-closing manages closed
18    loans and prepares to either sell to Weststar or to an
19    investor.
20    BY MR. KATZ:
21         Q    When you say sell to Weststar, what do you
22    mean?
23              MS. KRYSAK:  Objection; form, outside the
24    scope.
25              THE WITNESS:  What I refer to as sell, meaning
```

Page 35

Omnibus Joint Exhibit Part E, page 1365

1   we fund the loan at Goldwater Bank and we sell the loan

2   to an investor.  For example, Fannie Mae, Freddie Mac,

3   they buy the loan.

4           MS. KRYSAK:  Mr. Katz, I hate to interrupt,

5   but we'd like to go ahead and take a quick five-minute

6   break.

7           MR. KATZ:  Sure.  I've got 10:47.  You want to

8   come back at 10:55?

9           MS. KRYSAK:  That sounds great.  Thank you.

10          (Recess.)

11          MR. KATZ:  All right.  While we were off,

12  Mr. Alekseyeff politely reminded us that counsel have

13  not yet officially stated their appearance on the

14  record, so I will do so and start.

15          I am Jeremy Katz.  I'm with Hall Griffen,

16  attorneys of record for Defendant and Cross-Complaint

17  Scott Howlett and Defendant BMO Harris Bank, N.A.,

18  successor by merger through Bank of the West.  I will

19  from time to time refer to Bank of the West as BOTW.

20          MR. ALEKSEYEFF:  Good morning.  My name is

21  Ilya Alekseyeff.  I represent Defendant Artur Elizarov,

22  as well as myself as a defendant.

23          MS. KRYSAK:  Good morning.  My name is Abbey

24  Krysak, and I represent Goldwater Bank, N.A.

25          MR. WAGNER:  My name is Sean Wagner.  I

Page 36

```
 1     represent Goldwater Bank.
 2              MR. LEVOTA:   Joseph LeVota; Goldwater Bank.
 3              MS. GOLDBERG:   Kasandra Goldberg from Hall
 4     Griffin representing Defendant and Cross-Complainant
 5     Scott Howlett and Defendant BMO Harris Bank, N.A., a
 6     successor by merger through Bank of the West.
 7              MR. KATZ:   All right.   Administrative tasks
 8     achieved.   Thank you so much, Ilya.
 9         Q    Before we left on the break, you had made
10     reference to selling the loan to Weststar.   What did you
11     mean by that?
12              MS. KRYSAK:   Objection; form, outside the
13     scope.
14              THE WITNESS:   I am not prepared to answer that
15     question right now.
16     BY MR. KATZ:
17         Q    Well, you used the phrase sell the loan to
18     Weststar.   What did you mean by that when you used that
19     phrase?
20              MS. KRYSAK:   Objection; form, outside the
21     scope.
22              THE WITNESS:   I'm not prepared to answer that
23     question right now.
24     BY MR. KATZ:
25         Q    Are you -- do you have any understanding of
```

Page  37

Omnibus Joint Exhibit Part E, page 1367

```
 1    what it means to sell a loan to Weststar?
 2              MS. KRYSAK:  Objection; form, outside the
 3    scope.
 4              THE WITNESS:  I am not prepared to answer that
 5    question today.
 6    BY MR. KATZ:
 7         Q    Well, you used that phrase, and I want to
 8    understand what you meant by it.  So what did you mean
 9    when you used the phrase sell a loan to Weststar?
10              MS. KRYSAK:  Objection; form, outside the
11    scope.
12              THE WITNESS:  I am not prepared to answer that
13    question today.
14    BY MR. KATZ:
15         Q    Are you refusing to answer that question?
16              MS. KRYSAK:  Objection; form, outside the
17    scope.  And she answered the question, Mr. Katz.  Let's
18    go ahead and move on.
19              MR. KATZ:  No, she did not answer the
20    question.  She told me that she is not prepared to
21    answer what a thing meant that she said.  She used the
22    phrase, and I'm trying to get what her understanding is.
23    She said she is not prepared to tell me what the
24    understanding is.
25         Q    Why aren't you prepared to tell me the
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Omnibus Joint Exhibit Part E, page 1368

```
 1    understanding of something -- of a phrase that you used?
 2              MS. KRYSAK:  Objection; form, outside the
 3    scope.  She's answered your question.  Duplicative.
 4    Let's move on.
 5    BY MR. KATZ:
 6         Q    Did Goldwater sell Elizarov's loan to Weststar
 7    in the manner that you referenced selling a loan to
 8    Weststar?
 9              MS. KRYSAK:  Objection; form, outside the
10    scope.
11              THE WITNESS:  I'm not prepared to answer that
12    question.
13    BY MR. KATZ:
14         Q    What is the relationship between Goldwater and
15    Weststar?
16              MS. KRYSAK:  Objection; form, outside the
17    scope.
18              You can answer, to the extent that you know.
19              THE WITNESS:  Yeah.  So Kent Wicker owns
20    Weststar; Kent Wicker owns Goldwater.  We are
21    affiliated.
22    BY MR. KATZ:
23         Q    Do they share office space?
24              MS. KRYSAK:  Objection; form, outside the
25    scope?
```

<div align="right">Page 39</div>

<div align="right">Omnibus Joint Exhibit Part E, page 1369</div>

1          My question is, Did Goldwater have access to

2     the subordination agreement at the time that

3     Mr. Elizarov's transaction closed?

4          A    From what I understand, no.  The subordination

5     agreement was sent directly from Unison to either escrow

6     or title.

7          Q    And from where do you gain that information,

8     other than information provided to you by your counsel?

9               MS. KRYSAK:  Objection.

10              THE WITNESS:  Sorry.  Just the loan

11    production -- sorry.  The loan documents that were

12    provided for this case, reviewed.

13    BY MR. KATZ:

14         Q    Does Goldwater maintain a loan file for

15    Mr. Elizarov's loan?

16         A    Yes.  I know it sounds weird, but a loan file

17    meaning we have everything, you know, digitally now.  So

18    everything is in a digital.

19         Q    Okay.  So Goldwater maintains a digital loan

20    file for Mr. Elizarov's loan?

21         A    Yes.

22         Q    Is the Unison subordination agreement in that

23    digital loan file?

24         A    I did not review that digital file.

25         Q    What is the name of the system where Goldwater

Page 68

Omnibus Joint Exhibit Part E, page 1370

1      maintains its digital loan file for Mr. Elizarov's loan?

2                    MS. KRYSAK:  Objection; form, outside the

3      scope.

4                    Answer, to the extent you know.

5                    THE WITNESS:  I believe in Goldwater's

6      digital -- referred to as Blitz.

7      BY MR. KATZ:

8           Q    Is that BlitzDocs?

9           A    Yes.

10          Q    Is that a system where images of documents can

11     be uploaded?

12                   MS. KRYSAK:  Objection; form, outside the

13     scope.

14                   You can answer, to the extent you know,

15     Ms. Overbeck.

16                   THE WITNESS:  From what I understand, Blitz,

17     you can sink or upload.

18     BY MR. KATZ:

19          Q    And in Blitz, or BlitzDocs, to your knowledge,

20     is there metadata that a user can input beyond just

21     uploading images of documents?

22                   MS. KRYSAK:  Objection; form, outside the

23     scope.

24                   THE WITNESS:  I don't know.

25     BY MR. KATZ:

                                        Page 69

1             THE WITNESS:   From what I understand,

2     Goldwater Bank actually serviced this loan for some

3     time.   But I believe, yes, on our products we sell to

4     Weststar.

5     BY MR. KATZ:

6          Q     So did Goldwater sell Mr. Elizarov's loan to

7     Weststar?

8             MS. KRYSAK:   Objection; form, outside the

9     scope.

10            Go ahead and answer, to the extent you know,

11    Ms. Overbeck.

12            THE WITNESS:   I believe so, yes.

13    BY MR. KATZ:

14         Q     When did Goldwater sell Mr. Elizarov's loan to

15    Weststar?

16            MS. KRYSAK:   Objection; form, outside the

17    scope.

18            MR. WAGNER:   We probably need to clarify what

19    was sold because you are going to go down a line of

20    questioning and realize that the clarification might

21    change.

22            MR. KATZ:   Let's not coach the witness.   Let's

23    not be coaching the witness as to anything.   I want to

24    know what she means.   And I asked her earlier, and she

25    said she wasn't prepared to say what she meant by sell

                                                    Page 149

```
 1    the loan.  And if you think there's something you need

 2    to clean up on redirect, you can clean up on redirect.

 3              MR. WAGNER:  Go ahead.  It's fine.  Go ahead.

 4              THE WITNESS:  Can you repeat the question,

 5    please?

 6    BY MR. KATZ:

 7        Q    When did Goldwater sell the loan to Weststar?

 8              MS. KRYSAK:  Objection; form, outside the

 9    scope.

10              Go ahead and answer, to the extent you know,

11    Ms. Overbeck.

12              THE WITNESS:  I'd have to refer back to the

13    documents.  But, typically, after Goldwater funds the

14    loan, it could be anywhere between 1 to 30 days of

15    selling that loan.

16    BY MR. KATZ:

17        Q    Okay.  What do you mean by selling the loan?

18              MS. KRYSAK:  Objection; form, outside the

19    scope.

20              THE WITNESS:  Meaning we funded the loan,

21    Goldwater Bank.  We sell the loan to Weststar, and they

22    pay us for the loan.

23    BY MR. KATZ:

24        Q    Did Goldwater ever repurchase the loan from

25    Weststar?  Sorry.
```

Page 150

Omnibus Joint Exhibit Part E, page 1373

1          Did Goldwater ever repurchase Mr. Elizarov's

2     loan from Weststar?

3          A     From what I've reviewed, no.

4          Q     In Mr. Hill's March 25th email to Mr. Teskey

5     and Mr. Haugen, he represents that he reviewed it with

6     Mr. Teskey.   And Mr. Teskey:

7               "explained that the Unison agreement has

8          a provision by which the cost of improvements

9          are to be netted against the payoff/gain

10         calculation."

11              Was that an accurate representation of

12     Goldwater's understanding as of March 25th, 2021?

13              MS. KRYSAK:   Objection; form, outside the

14     scope.

15              THE WITNESS:   Yes.

16     BY MR. KATZ:

17         Q     And then Mr. Hill says that he's done some

18     verification --

19              "I have some verification to be done,

20         but the spreadsheet lays out the situation as

21         I understand it at this point this

22         afternoon."

23              This afternoon appearing to be March 25th,

24     2021.   Would you agree with me that that part

25     referencing this afternoon means March 25th, 2021?

                                        Page 151

1          I, the undersigned, a Certified Shorthand

2    Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4    before me at the time and place herein set forth; that

5    any witnesses in the foregoing proceedings, prior to

6    testifying, were administered an oath; that a record of

7    the proceedings was made by me using machine shorthand

8    which was thereafter transcribed under my direction;

9    that the foregoing transcript is a true record of the

10   testimony given.

11         Further, that if the foregoing pertains to the

12   original transcript of a deposition in a Federal Case,

13   before completion of the proceedings, review of the

14   transcript [   ] was [ X ] was not requested.

15         I further certify I am neither financially

16   interested in the action nor a relative or employee of

17   any attorney or party to this action.

18         IN WITNESS WHEREOF, I have this date subscribe

19   my name.

20

21   Dated: 6/6/23

22

23

      CLAUDIA A. BETTUCCHI

24   CSR NO: 12214

25

                         Page 165

1   JEREMY T. KATZ, ESQ.

2   jkatz@hallgriffin.com

3                                    June 6, 2023

4   RE: GOLDWATER BANK, N.A. VS. ARTUR ELIZAROV

5   MAY 12, 2023, CHRISTINE OVERBECK, JOB NO. 5841720

6   The above-referenced transcript has been

7   completed by Veritext Legal Solutions and

8   review of the transcript is being handled as follows:

9   ___ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10      to schedule a time to review the original transcript at

11      a Veritext office.

12  ___ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13      Transcript - The witness should review the transcript and

14      make any necessary corrections on the errata pages included

15      below, noting the page and line number of the corrections.

16      The witness should then sign and date the errata and penalty

17      of perjury pages and return the completed pages to all

18      appearing counsel within the period of time determined at

19      the deposition or provided by the Code of Civil Procedure.

20  ___ Waiving the CA Code of Civil Procedure per Stipulation of

21      Counsel - Original transcript to be released for signature

22      as determined at the deposition.

23  ___ Signature Waived - Reading & Signature was waived at the

24      time of the deposition.

25

                                              Page 166

1  __ Federal R&S Requested (FRCP 30(e)(1)(B)) – Locked .PDF

2     Transcript – The witness should review the transcript and

3     make any necessary corrections on the errata pages included

4     below, noting the page and line number of the corrections.

5     The witness should then sign and date the errata and penalty

6     of perjury pages and return the completed pages to all

7     appearing counsel within the period of time determined at

8     the deposition or provided by the Federal Rules.

9  _X_Federal R&S Not Requested – Reading & Signature was not

10    requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 167

Omnibus Joint Exhibit Part E, page 1377

# EXHIBIT 67
## Unison Deed of Trust
## (Recorded 08/07/19)

DOC #2019-0299199
08/07/2019 05:00 PM Fees: $61.00
Page 1 of 12
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: MARY #420

PLEASE COMPLETE THIS INFORMATION
RECORDING REQUESTED BY:

FIRST AMERICAN TITLE

AND WHEN RECORDED MAIL TO:
AND MAIL TAX STATEMENTS TO:

Unison Agreement Corp.

P.O. Box 26800

San Francisco, CA 94126-6800

Space above this line for recorder's use only

## UNISON HOMEBUYER DEED OF TRUST AND SECURITY AGREEMENT

Title of Document

**TRA:** 011-003

**DTT:** $0.00

### Exemption reason declared pursuant to Government Code 27388.1

☐ This document is a transfer that is subject to the imposition of documentary transfer tax.

☑ This is a document recorded in connection with a transfer that is subject to the imposition of documentary transfer tax.
Document reference: CONCURRENTLY HEREWITH

☐ This document is a transfer of real property that is a residential dwelling to an owner-occupier.

☐ This is a document recorded in connection with a transfer of real property that is a residential dwelling to an owner-occupier.
Document reference:_____

## THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

ACR 238 (Rev. 01/2018)                    Available in Alternate Formats

Recording Requested By

First American Title Company

Prepared by, recording requested by, and when recorded mail to:

Unison Agreement Corp.
P.O. Box 26800
San Francisco, CA  94126-6800

Unison HomeBuyer Agreement ID Number: FRX-226269

## UNISON HOMEBUYER DEED OF TRUST AND SECURITY AGREEMENT

**NOTICE: THIS DEED OF TRUST CONTAINS A SUBORDINATION CLAUSE WHICH MAY RESULT IN BENEFICIARY'S SECURITY OR OTHER INTEREST IN THE PROPERTY BECOMING SUBJECT TO AND OF LOWER PRIORITY THAN THE LIEN OF SOME OTHER OR LATER SECURITY INSTRUMENT.**

This **SUBORDINATED UNISON HOMEBUYER DEED OF TRUST AND SECURITY AGREEMENT**, together with riders hereto ("**HomeBuyer Security Instrument**"), is made as of July 30, 2019 ("**Effective Date**"), among ARTUR ELIZAROV AS A SINGLE MAN (individually or collectively "**Trustor**"), and American Title Inc ("**Trustee**"), whose address is 11010 Burdette St. PO BOX 641010, Omaha, NE 68164-101, and Unison Agreement Corp., a Delaware corporation, and its successors and assignees ("**Beneficiary**"), whose address is 650 California Street, Suite 1800, San Francisco, CA 94108.  Capitalized terms used in this HomeBuyer Security Instrument shall have the meanings specified in this HomeBuyer Security Instrument, or if not defined herein, in that certain Unison HomeBuyer Covenant Agreement ("**Unison HomeBuyer Covenant Agreement**"), Unison HomeBuyer Option Agreement ("**Unison HomeBuyer Option Agreement**") and that certain Memorandum Of Unison HomeBuyer Agreement ("**Unison HomeBuyer Recorded Memorandum**"), which documents, together with this HomeBuyer Security Instrument, are collectively termed the "**Unison HomeBuyer Agreement**" executed by Trustor and Beneficiary concurrently herewith.

1.     **Grant In Trust.**

TRUSTOR HEREBY IRREVOCABLY grants, transfers and assigns to Trustee, and its successors and assignees, in trust, with power of sale, all of that property ("**Real Property**") described in **SCHEDULE A** attached hereto and made a part hereof.

Together with all improvements, replacements and additions now or hereafter erected on the Real Property and all easements, appurtenances and fixtures now or hereafter a part of the Real Property.  (The fixtures, improvements and the Real Property are collectively referred to as the "**Property**.")

Together with all rents, issues, profits and proceeds, including without limitation insurance and condemnation proceeds, from the Real Property, subject, however, to the right, power and authority given to and conferred upon Beneficiary below to collect and apply such rents, issues and profits.

Trustor warrants that he/she/they is/are lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  Trustor warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

2.     **Secured Obligations.**  Trustor makes the grant, transfer and assignment set forth in the "Grant In Trust" Section above for the purpose of securing:

Page 1 of 11

a.   Trustor's performance, and Beneficiary's rights, under the Unison HomeBuyer Agreement;

b.   the performance and payment of the obligations of Trustor under the Unison HomeBuyer Agreement, including:

(i)   payment of all **Protective Advances**, including any unpaid interest and other fees and charges associated with such Protective Advances, owed to Beneficiary under the Unison HomeBuyer Agreement;

(ii)   payment of all **Asset Administration Fees** incurred by or owed to Beneficiary under the Unison HomeBuyer Agreement;

(iii)   payment of all insurance proceeds owed to Beneficiary pursuant to **Sections 15** of the Unison HomeBuyer Covenant Agreement;

(iv)   payment of all condemnation proceeds owed to Beneficiary pursuant to **Section 16** of the Unison HomeBuyer Covenant Agreement;

(v)   performance of those obligations to Beneficiary specified in the Unison HomeBuyer Agreement pursuant to **Section 4** of the Unison HomeBuyer Covenant Agreement; including, without limitation, payment of the Investor Interest under the Unison HomeBuyer Agreement; and

(vi)   performance of the obligations of Trustor under the Unison HomeBuyer Covenant Agreement regarding Beneficiary's right as a co-owner to sell the Property following exercise of the **Option** and during **Orderly Sale**.

c.   the performance of the obligations of Trustor contained in this HomeBuyer Security Instrument or incorporated by reference;

d.   any expenditures made by Beneficiary pursuant to, or under, this HomeBuyer Security Instrument; and

e.   payment of all fees and expenses (including, as allowed by applicable law, court and other dispute resolution costs, attorneys' and experts' fees and costs, and fees and disbursements of in-house counsel (collectively **"Attorneys' Fees"**)) incurred by Beneficiary in the enforcement and collection of the obligations listed above and the protection of Beneficiary's rights related thereto, whether such fees are incurred in any state, federal, appellate, or bankruptcy court or otherwise and whether or not litigation or arbitration is commenced. Attorneys' Fees shall include, Attorneys' Fees incurred in any state, federal, appellate, or bankruptcy court, and in any bankruptcy case or insolvency proceeding, of any kind in any way related to this HomeBuyer Security Instrument, to the interpretation or enforcement of the parties' rights under this HomeBuyer Security Instrument, or to the Property.

The foregoing obligations are referred to collectively as the **"Obligations."**

f.   Trustor shall not be obligated to repay any part of the **Initial Payment** (as such term is defined in **Schedule A** to the Unison HomeBuyer Covenant Agreement); and therefore, such item shall not be included within the Obligations. The foregoing shall <u>not</u>, however, in any way limit any payment calculated and agreed by Trustor to be paid pursuant to the Unison HomeBuyer Agreement, according to the calculation of **Investor Interest** (as defined in the Unison HomeBuyer Agreement), including, without limitation, any such calculation in connection with a **Special Termination** as defined in **Section 5** of the Unison HomeBuyer Covenant Agreement.

© 2019, **Unison**   Form 401 HBAN-CA (rev. 6/26/2019)

**3. Uniform Commercial Code Security Agreement And Fixture Filing.** This HomeBuyer Security Instrument also is intended to be and shall constitute a security agreement under the California Uniform Commercial Code for any items of personal property that constitute fixtures or are specified as part of the Property and that under applicable law may be subject to a security interest under the California Uniform Commercial Code. Trustor hereby grants to Beneficiary a security interest in those items to secure the performance and payment of the Obligations.

    **a.** Trustor agrees that Beneficiary may file either this HomeBuyer Security Instrument, or a copy of it, or a UCC-1 Financing Statement in the real estate records or other appropriate index and/or in the Office of the Secretary of State of the State of California, as a financing statement for any of the items specified above as part of the Property.

    **b.** This HomeBuyer Security Instrument constitutes a financing statement filed as a fixture filing pursuant to Sections 9502(c) and 9514 of the California Uniform Commercial Code, and any similar or successor provisions.

    **c.** Beneficiary may file such extensions, renewals, amendments and releases as are appropriate to reflect the status of its security interest.

    **d.** Trustor shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and shall pay all reasonable costs and expenses of any record searches for financing statements that Beneficiary may reasonably require.

    **e.** On any default hereunder, Beneficiary shall have the remedies of a secured party under the California Uniform Commercial Code and may also invoke the remedies in **Section 7** below. In exercising any of these remedies, Beneficiary may proceed against the items of Real Property, fixtures or improvements separately or together and in any order whatsoever without in any way affecting the availability of Beneficiary's remedies under the California Uniform Commercial Code or the remedies in **Section 7** below.

**4. Assignment Of Leases And Rents.** As additional security for the Obligations, Trustor hereby irrevocably, absolutely and unconditionally assigns to Beneficiary all of Trustor's right, title and interest in and to all existing and future leases, subleases and licenses relating to the use, occupancy or enjoyment of all or any part of the Property and all rents, income, revenues, profits, proceeds and earnings now or hereafter payable with respect to the ownership, use or occupancy of the Property (collectively the **"Rents"**):

    **a.** Trustor hereby gives to, and confers upon, Beneficiary the right, power and authority, during the continuance of this HomeBuyer Security Instrument, to collect the Rents, reserving unto Trustor the right, prior to any default by Trustor in payment of the Obligations secured hereby or in performance of any agreement hereunder, to collect and retain such Rents, as they become due and payable.

    **b.** Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the Obligations secured hereby, enter upon and take possession of the Property or any part of it, in its own name sue for or otherwise collect such Rents, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including Attorneys' Fees to the Obligations secured hereby, and in such order as Beneficiary may determine.

    **c.** The entering upon and taking possession of the Property, the collection of such rents, issues and profits and the application of such rents, issues and profits pursuant to this HomeBuyer Security Instrument, shall not cure or waive any default or notice of default under this HomeBuyer Security Instrument or invalidate any act done pursuant to such notice.

Page 3 of 11

Omnibus Joint Exhibit Part E, page 1382

**d.**     Nothing in this section shall permit Trustor to lease or rent the Property in contravention of any provision of the Unison HomeBuyer Agreement; nor shall anything in this section modify any provision in the Unison HomeBuyer Agreement relating to the use, lease or occupancy of the Property.

**5.     Covenants Of Trustor Regarding The Property.** Trustor hereby agrees as follows:

**a.**     To appear in and defend any action or proceeding purporting to affect the security of this HomeBuyer Security Instrument or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses of Trustee and Beneficiary (including cost of evidence of title and Attorneys' Fees) incurred:  **(i)** in any state, federal, appellate, or bankruptcy court, in any action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this HomeBuyer Security Instrument or to collect the Obligations or to protect Beneficiary's rights under this HomeBuyer Security Instrument; and/or **(ii)** in connection with the enforcement of any provisions of this HomeBuyer Security Instrument or in connection with foreclosure upon the collateral granted under this HomeBuyer Security Instrument (whether or not suit is filed).

**b.**     To pay: at least ten (10) days before delinquency all taxes and assessments affecting the Property; and all encumbrances, charges and liens, with interest, on the Property (or any part of the Property), which are prior or could obtain priority to the lien or to the rights granted under this HomeBuyer Security Instrument, and all costs, fees and expenses of this HomeBuyer Security Instrument.

**(i)**     If Trustor fails to make any payment or to do any act as provided in this HomeBuyer Security Instrument, Beneficiary or Trustee may (but shall not be obligated to) make the payment or do the act in the required manner and to the extent deemed necessary by Beneficiary or Trustee to protect the security for this HomeBuyer Security Instrument, which payments and related expenses (including Attorneys' Fees) shall also be secured by this HomeBuyer Security Instrument.

**(ii)**     Such performance by Beneficiary or Trustee shall not require notice to, or demand on, Trustor and shall not release Trustor from any obligation under this HomeBuyer Security Instrument.

**(iii)**     Beneficiary or Trustee shall have the following related rights and powers: **(A)** to enter upon the Property for the foregoing purposes, **(B)** to appear in and defend any action or proceeding purporting to affect the Property or the rights or powers of Beneficiary or Trustee under this HomeBuyer Security Instrument, **(C)** to pay, purchase, contest or compromise any encumbrance, charge, or lien that in the judgment of Beneficiary or Trustee appears to be prior or superior to this HomeBuyer Security Instrument, and **(D)** to employ counsel, and to pay such counsel necessary expenses and costs, including Attorneys' Fees.

**c.**     To pay immediately upon demand all sums expended by Beneficiary or Trustee pursuant to this HomeBuyer Security Instrument; and to pay interest on any of the foregoing amounts demanded by Beneficiary or Trustee at the rate specified in Section 3289 of the California Civil Code (or other applicable law) from the date of such demand, not to exceed the maximum rate allowed by law at the time of such demand.

**6.     Power Of Attorney.** Trustor hereby irrevocably appoints Beneficiary as Trustor's attorney-in-fact (such agency being coupled with an interest), and as such attorney-in-fact Beneficiary may, after providing notice to Trustor pursuant to the Unison HomeBuyer Agreement and the Unison HomeBuyer Recorded Memorandum, without the obligation to do so, in Beneficiary's name, or in the name of Trustor, prepare, execute and file or record financing statements, continuation statements, applications for registration and like documents necessary to create, perfect or preserve any of Beneficiary's security interests and rights in or to any of the Property, and, upon a default under this HomeBuyer Security Instrument, take any other action required of Trustor; provided, however, that Beneficiary as such attorney-in-fact shall be accountable only for such funds as are actually received by Beneficiary.

**7.     Default And Foreclosure And Power Of Sale.** Upon default by Trustor in the performance of or upon breach by Trustor of any of the rights and Obligations that are secured by this HomeBuyer Security Instrument

Page 4 of 11

Omnibus Joint Exhibit Part E, page 1383

as specified above, Beneficiary may declare all performance and sums secured by this HomeBuyer Security Instrument immediately due by delivery to Trustee and to Trustor of written declaration of default. Beneficiary shall give notice of default to Trustor prior to acceleration following Trustor's breach of any covenant or agreement in this HomeBuyer Security Instrument. The notice shall specify: **(a)** the default; **(b)** the action required to cure the default; **(c)** a date, not less than 30 days from the date the notice is given to Trustor, by which the default must be cured; and **(d)** that failure to cure the default on or before the date specified in the notice may result in acceleration of the performance secured by this HomeBuyer Security Instrument and sale of the Property. The notice shall further inform Trustor of the right to cure after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Trustor to acceleration and sale. If the default is not cured on or before the date specified in the notice, Beneficiary at its option may require immediate performance in full of all obligations secured by this HomeBuyer Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Beneficiary shall be entitled to collect all expenses incurred in pursuing the remedies provided herein, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Beneficiary invokes the power of sale, Beneficiary shall execute or cause Trustee to execute a written notice of Beneficiary's election to cause the Property to be sold as prescribed by applicable law. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Beneficiary or Trustee shall mail copies of the notice as prescribed by applicable law to Trustor and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. Beneficiary also shall deposit with Trustee this HomeBuyer Security Instrument, the Unison HomeBuyer Agreement, and all documents evidencing any expenditures and damages secured by this HomeBuyer Security Instrument.

After the time required by applicable law, Trustee, without demand on Trustor, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale.

Trustee shall deliver to the purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of their truthfulness. Any person, including Trustor, Trustee, or Beneficiary as defined in this HomeBuyer Security Instrument, may purchase at such sale.

       **a.**    After deducting all costs, fees and expenses (including Attorneys' Fees) of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: to Beneficiary, all sums expended and performance due under the terms of this HomeBuyer Security Instrument, not then performed or repaid, with accrued interest, if any, at the amount allowed by law in effect on the Effective Date of this HomeBuyer Security Instrument; to Beneficiary, all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

       **b.**    Notice provided to Trustor under this HomeBuyer Security Instrument shall be to the address specified in this HomeBuyer Security Instrument unless otherwise required by applicable law.

       **c.**    Exercise of Beneficiary's remedies under this Unison HomeBuyer Security Agreement shall be in compliance with applicable law.

    **8.**    <u>**Liquidated Damages.**</u> Liquidated Damages means an amount equal to the sum of:

       **a.**    the **Investor Proceeds**, as calculated according to **Article 10 ("Calculations")** of the Unison HomeBuyer Covenant Agreement;

<div align="center">Page 5 of 11</div>

Omnibus Joint Exhibit Part E, page 1384

        **b.**     in connection with Owner's failure to make any monetary payment, the sum of all monetary obligations (including, without limitation, all **Unpaid Owner Obligations**) owed to Investor by Owner under the Unison HomeBuyer Agreement; and

        **c.**     any and all amounts, properly chargeable to Owner as necessary to satisfy Owner's obligations under the Unison HomeBuyer Agreement with respect to Owner's mortgage, tax and insurance obligations on the Property, including late fees, reinstatement fees and other penalties.

**9.**    **Late Performance.** By accepting performance of any obligation after its due date, Beneficiary does not waive its right either to require prompt performance when due of all other obligations or to declare default for such failure to perform.

**10.**    **Trustee's Powers.** At any time or from time to time, without liability therefor upon written request of Beneficiary and presentation of this HomeBuyer Security Instrument, and without affecting the personal liability of any person for the performance of the Unison HomeBuyer Agreement secured hereby, Trustee may: **(a)** reconvey any part of the Property; **(b)** consent to the making of any map or plat of the Property; **(c)** join in granting any easement thereon; and **(d)** join in any extension agreement or any agreement subordinating the lien or charge of this HomeBuyer Security Instrument.

**11.**    **Substitution of Trustee.** Beneficiary, or any successor in ownership of the Obligations, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named or acting under this HomeBuyer Security Instrument, which instrument, when executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where the Property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from Trustee's predecessor, succeed to all its title, estate, rights, powers and duties. Such instrument must contain the name of the original Trustor, Trustee and Beneficiary under this HomeBuyer Security Instrument, the book and page where this HomeBuyer Security Instrument is recorded, and the name and address of the new Trustee(s).

**12.**    **Trustee's Compensation.** Trustor shall pay Trustee's fees and reimburse Trustee for expenses in the administration of this Trust, including Attorneys' Fees. Trustor shall pay to Beneficiary reasonable compensation for services rendered concerning this HomeBuyer Security Instrument, including without limitation any statement of amounts owing under any obligations.

**13.**    **Full Reconveyance.** Upon written request of Beneficiary stating that all obligations have been performed or paid, and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held under this HomeBuyer Security Instrument. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness of such recitals. The grantee in such reconveyance may be described as "**the person or persons legally entitled thereto.**"

**14.**    **Subordination.** This HomeBuyer Security Instrument is subordinate to and junior to the Unison HomeBuyer Recorded Memorandum which affects the Property and which is executed by Trustor as "**Owner**" as of the same date as this HomeBuyer Security Instrument. Upon any foreclosure of this HomeBuyer Security Instrument by the Beneficiary, despite such foreclosure, the Unison HomeBuyer Recorded Memorandum will remain in full force and effect (until released pursuant to its terms) and binding upon any person who now or hereafter obtains an interest in the Property; and the Unison HomeBuyer Agreement will remain in full force and effect and binding upon Trustor, and any other person who may agree to be bound by such documents.

**15.**    **Successors.** This HomeBuyer Security Instrument applies to, inures to the benefit of, and binds all parties to this HomeBuyer Security Instrument, their heirs, legatees, devisees, administrators, executors, successors, and assignees. The term "**Beneficiary**" shall include any successor or assignee of Beneficiary's rights in the Unison HomeBuyer Agreement and in this HomeBuyer Security Instrument, whether or not named as Beneficiary in this HomeBuyer Security Instrument. In this HomeBuyer Security Instrument, whenever the context

<div align="center">Page 6 of 11</div>

Omnibus Joint Exhibit Part E, page 1385

so requires, the masculine gender includes the feminine and/or the neuter, and the singular number includes the plural.

**16.** **Joint and Several Liability.** If more than one person signs this HomeBuyer Security Instrument as Trustor, the obligations of each signatory shall be joint and several.

**17.** **Multiple Owners.** If there are multiple Trustors of the Property:

  **a.** this HomeBuyer Security Instrument must be signed by each such Trustor;

  **b.** all rights and powers specified for Trustor in this HomeBuyer Security Instrument must be approved and exercised unanimously by all such multiple Trustors;

  **c.** all such multiple Trustors shall be jointly and severally liable for all liabilities and obligations specified for Trustor under this HomeBuyer Security Instrument;

  **d.** notice required to be given by, or to, Trustor will be deemed adequately given if given by, or to, any of Trustors using the contact information set forth in this HomeBuyer Security Instrument; and

  **e.** Beneficiary may treat any notice received from any one Trustor as notice from all Trustors.

**18.** **Revocable Trust.** If any Trustor is/are the trustee(s) of a **Revocable Trust** (as defined in **Schedule A** to the Unison HomeBuyer Covenant Agreement):

  **a.** all trustees and all trustors of the Revocable Trust must sign this HomeBuyer Security Instrument in their capacities as individuals and as trustees and/or trustors of the Revocable Trust, and each trustee and trustor of the Revocable Trust who signs this HomeBuyer Security Instrument hereby represents and warrants that all trustees and trustors of the Revocable Trust have been disclosed to Beneficiary;

  **b.** any trustee of the Revocable Trust who is also a trustor of the Revocable Trust need only sign this HomeBuyer Security Instrument once for it to be binding on such person both as trustee and as trustor of the Revocable Trust;

  **c.** all rights and powers specified for, and all actions required of, Trustor in this HomeBuyer Security Instrument must be approved and exercised unanimously by all trustees of the Revocable Trust;

  **d.** all trustees and all trustors of the Revocable Trust, in their capacities as individuals, shall be jointly and severally liable with Trustor for all liabilities and obligations specified for Trustor under this HomeBuyer Security Instrument;

  **e.** all representations and warranties by Trustor in this HomeBuyer Security Instrument are made by all trustees of the Revocable Trust on behalf of the Revocable Trust and by all trustees and all trustors of the Revocable Trust in their capacities as individuals;

  **f.** notice required to be given by, or to, any Trustor will be deemed adequately given if given by, or to, any of the trustees of the Revocable Trust using the contact information set forth in this HomeBuyer Security Instrument; and

  **g.** Beneficiary may treat any notice received from any one trustee of the Revocable Trust as notice from all trustees of the Revocable Trust and from Trustor.

© 2019, **Unison**

Form 401 HBAN-CA (rev. 6/26/2019)

**19.**     <u>Acceptance by Trustee.</u>  Trustee accepts this Trust when this HomeBuyer Security Instrument, duly executed and acknowledged, is made a public record as provided by law.

**20.**     <u>Incorporation by Reference.</u>  **SCHEDULE A** to this HomeBuyer Security Instrument is hereby incorporated by this reference.

**21.**     <u>Extent of Lien.</u>  The lien granted under this HomeBuyer Security Instrument shall encumber Trustor's entire interest in the Property, notwithstanding the fact that the Unison HomeBuyer Agreement relates to only a fractional interest in the Property.

**22.**     <u>No Merger.</u>  So long as any of the obligations under the Unison HomeBuyer Agreement remains outstanding and undischarged, unless Beneficiary otherwise consents in writing, the fee estate of Trustor in the Property or any part thereof (including the estate of Beneficiary after exercising the Option) will not merge, by operation of law or otherwise, with any other estate in the Property or any part of it, but will always remain separate and distinct, notwithstanding the union of the fee estate and such other estate in Beneficiary or in any other Person.

<u>Do not lose or destroy this HomeBuyer Security Instrument or the Unison HomeBuyer Agreement that it secures.  All must be delivered to Trustee for cancellation before reconveyance will be made.</u>

[Signatures appear on the following page.]

© 2019, Unison

Form 401 HBAN-CA (rev. 6/26/2019)

READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT. ALL PRIOR ORAL, ELECTRONIC AND WRITTEN COMMUNICATIONS AND AGREEMENTS FROM OR WITH BENEFICIARY, INCLUDING ALL CORRESPONDENCE, CONDITIONAL APPROVAL PACKAGE, TERM SHEETS, PRINTED MATERIALS, DISCLOSURES, AND THE PROGRAM GUIDE, ARE MERGED INTO AND SUPERSEDED AND REPLACED BY THIS HOMEBUYER SECURITY INSTRUMENT, THE UNISON HOMEBUYER AGREEMENT AND TRANSACTION DOCUMENTS, AND THE OTHER WRITTEN AGREEMENTS MADE BY AND BETWEEN OWNER AND BENEFICIARY AS OF THE EFFECTIVE DATE.

The undersigned Trustor requests that a copy of any Notice of Default and any Notice of Sale under this HomeBuyer Security Instrument be mailed to Trustor at the address set forth below.

IN WITNESS WHEREOF, each undersigned Trustor has executed this Security Instrument as of the date set forth above.

Sign: _____

Artur Elizarov

Date: __7/31/2019_____

Sign: _____

Date: _____

Sign: _____

Date: _____

Trustor Address:
291 W Overlook Rd
Palm Springs, CA 92264

Sign: _____

Date: _____

Sign: _____

Date: _____

Sign: _____

Date: _____

Page 9 of 11

© 2019, Unison

Form 401 HBAN-CA (rev. 6/26/2019)

**ACKNOWLEDGMENT**

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

STATE OF CALIFORNIA)

) ss.

COUNTY OF _Los Angeles_ )

On _July 31_, 20 _19_, before me _Estela Noemy Moreno Aviles_, Notary Public, personally appeared _Artur Elizarov_

_____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _EMoreno_ (Seal)

```
ESTELA NOEMY MORENO AVILES
Notary Public - California
Los Angeles County
Commission # 2293165
My Comm. Expires Jun 15, 2023
```

Page 10 of 11

© 2019, Unison

Form 401 HBAN-CA (rev. 6/26/2019)

## SCHEDULE A
## LEGAL DESCRIPTION

That certain real property situated in the City of Palm Springs, County of Riverside, State of California, described as follows:

LOT 8 OF BLOCK 7, PALM CANYON MESA TRACT, AS PER MAP RECORDED IN BOOK 12, PAGES 52 THROUGH 56, BOTH INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: APN: 513-363-023-2

[end of legal description]

Page 11 of 11

| Owner's Initials: *A.C.* | Owner's Initials: _____ |

© 2019, Unison

Form 401 HBAN-CA (rev. 6/26/2019)

# **<u>EXHIBIT 68</u>**
# **<u>Unison Memorandum of Agreement</u>**
# **<u>(Recorded 08/07/19)</u>**

08/07/2019 05:00 PM Fees: $38.00
Page 1 of 9
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: MARY #420

PLEASE COMPLETE THIS INFORMATION
RECORDING REQUESTED BY:

FIRST AMERICAN TITLE

AND WHEN RECORDED MAIL TO:
AND MAIL TAX STATEMENTS TO:

Unison Agreement Corp.

P.O. Box 26800

San Francisco, CA 94126-6800

Space above this line for recorder's use only

MEMORANDUM OF UNISON HOMEBUYER AGREEMENT

Title of Document

**TRA:** 011-003

**DTT:** $0.00

### Exemption reason declared pursuant to Government Code 27388.1

☐ This document is a transfer that is subject to the imposition of documentary transfer tax.

☑ This is a document recorded in connection with a transfer that is subject to the imposition of documentary transfer tax.
Document reference: CONCURRENTLY HEREWITH

☐ This document is a transfer of real property that is a residential dwelling to an owner-occupier.

☐ This is a document recorded in connection with a transfer of real property that is a residential dwelling to an owner-occupier.
Document reference:_____

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

ACR 238 (Rev. 01/2018)          Available in Alternate Formats

Recording Requested By

First American Title Company

**Prepared by, recording requested by, and when recorded mail to:**

Unison Agreement Corp.
P.O. Box 26800
San Francisco, CA  94126-6800

Unison HomeBuyer Agreement ID Number:
FRX-226269

## MEMORANDUM OF UNISON HOMEBUYER AGREEMENT

This **MEMORANDUM OF UNISON HOMEBUYER AGREEMENT** ("**HomeBuyer Recorded Memorandum**"), is entered into as of July 30, 2019  ("**Effective Date**"), by and between ARTUR ELIZAROV AS A SINGLE MAN  (individually or collectively "**Owner**"), and Unison Agreement Corp., a Delaware  corporation, and its successors and assignees ("**Benefited Party**"), whose address is 650 California Street, Suite 1800, San Francisco, CA 94108.

### MEMORANDUM OF UNISON HOMEBUYER AGREEMENT

Owner hereby declares that Owner has entered into that certain Unison HomeBuyer Agreement ("**Unison HomeBuyer Agreement**") with Benefited Party, as of the Effective Date, pursuant to which Owner grants and conveys to Benefited Party the option to purchase an undivided percentage interest in that certain real property (the "**Property**") described in attached **SCHEDULE A** ("**Option**"), and pursuant to which Owner has made certain covenants and promises to, or for the benefit of, Benefited Party in connection with the Property, all as more particularly described, and on the terms and conditions stated in the Unison HomeBuyer Agreement.  The percentage interest shall equal the Investor Percentage, as specified in the Unison HomeBuyer Option Agreement. The Option is irrevocable by Owner. The term of the Option shall commence on the Effective Date and shall expire at 11:59 p.m., Pacific Time, on the day immediately preceding the thirtieth (30th) anniversary of the Effective Date ("**Expiration Date**") (subject to certain extensions as set forth in the Unison HomeBuyer Agreement). The terms of the Unison HomeBuyer Agreement are hereby incorporated into this HomeBuyer Recorded Memorandum by this reference.

### MEMORANDUM OF COVENANTS RUNNING WITH THE LAND

This HomeBuyer Recorded Memorandum identifies the covenants and promises set forth in the Unison HomeBuyer Agreement that run with the land and will be binding upon any party who acquires Owner's interest in the Property so long as the Unison HomeBuyer Agreement has not expired or been terminated. The Unison HomeBuyer Agreement covenants are deemed to be covenants running with the land within the meaning of  so as to give it the broadest possible application, and include, without limitation:

a.   **Section 8** of the HomeBuyer Covenant Agreement which, among other things, requires Owner to maintain and repair the Property and to ensure that use of the Property complies with all applicable state, federal and local laws and regulations.

Page 1 of 6

Form 301 HBAN-Multi (rev. 6/26/2019)

b.   **Section 14** of the HomeBuyer Covenant Agreement which, among other things, requires Owner to maintain insurance on the Property against certain hazards.

c.   **Section 12** of the HomeBuyer Covenant Agreement which, among other things, requires Owner to pay all taxes and assessments accruing on the Property.

d.   **Section 3** of the HomeBuyer Covenant Agreement which, among other things, requires Owner to occupy the Property as Owner's principal residence and prohibits use of the Property for commercial or other non-residential purposes.

e.   **Section 11** of the HomeBuyer Covenant Agreement which, among other things, restricts the ability of Owner to increase the amount of debt to third parties secured by liens on the Property beyond the Maximum Authorized Debt specified in the Unison HomeBuyer Agreement, and requires Owner to keep the Property free of liens prohibited under the terms of the Unison HomeBuyer Agreement or not otherwise approved by Benefited Party.

f.   **Section 4A** of the HomeBuyer Covenant Agreement which, among other things, restricts the right of Owner to transfer the Property other than as expressly permitted under the terms of the Unison HomeBuyer Agreement.

[This space intentionally left blank.]


<u>RELEASE</u>

This Unison HomeBuyer Recorded Memorandum shall remain in full force and effect until released by a written termination or quitclaim deed executed and notarized by Benefited Party and recorded in the real property records for the county where the Property is located, or until extinguished by operation of law.

[Signatures appear on following page.]


Page 2 of 6

Omnibus Joint Exhibit Part E, page 1394

READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT. ALL PRIOR ORAL, ELECTRONIC AND WRITTEN COMMUNICATIONS AND AGREEMENTS FROM OR WITH BENEFITED PARTY, INCLUDING ALL CORRESPONDENCE, CONDITIONAL APPROVAL PACKAGE, TERM SHEETS, PRINTED MATERIALS, DISCLOSURES, AND THE PROGRAM GUIDE, ARE MERGED INTO AND SUPERSEDED AND REPLACED BY THIS UNISON HOMEBUYER RECORDED MEMORANDUM, THE OTHER TRANSACTION DOCUMENTS, AND THE OTHER WRITTEN AGREEMENTS MADE BY AND BETWEEN OWNER AND BENEFITED PARTY AS OF THE EFFECTIVE DATE.

IN WITNESS WHEREOF, the undersigned Benefited Party and Owner have each executed this Unison HomeBuyer Recorded Memorandum as of the date set forth above.

**BENEFITED PARTY:**

Unison Agreement Corp.,
a Delaware corporation

By: _____
Name: Ismael Casas Jr
Title: Vice President

Date signed: _____

**OWNER:**

By: _____
Artur Elizarov

Date signed: _7/31/2019_

By: _____

By: _____

Date signed: _____

Date signed: _____

By: _____

By: _____

Date signed: _____

Date signed: _____

**Property Address:**

291 W Overlook Rd

Palm Springs, CA 92264

© 2019, **Unison**   Form 301 HBAN-Multi (rev. 6/26/2019)

Omnibus Joint Exhibit Part E, page 1395

READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT. ALL PRIOR ORAL, ELECTRONIC AND WRITTEN COMMUNICATIONS AND AGREEMENTS FROM OR WITH BENEFITED PARTY, INCLUDING ALL CORRESPONDENCE, CONDITIONAL APPROVAL PACKAGE, TERM SHEETS, PRINTED MATERIALS, DISCLOSURES, AND THE PROGRAM GUIDE, ARE MERGED INTO AND SUPERSEDED AND REPLACED BY THIS UNISON HOMEBUYER RECORDED MEMORANDUM, THE OTHER TRANSACTION DOCUMENTS, AND THE OTHER WRITTEN AGREEMENTS MADE BY AND BETWEEN OWNER AND BENEFITED PARTY AS OF THE EFFECTIVE DATE.

IN WITNESS WHEREOF, the undersigned Benefited Party and Owner have each executed this Unison HomeBuyer Recorded Memorandum as of the date set forth above.

**BENEFITED PARTY:**

Unison Agreement Corp.,
a Delaware corporation

By: _____
Name: Ismael Casas Jr
Title: Vice President

Date signed: _____7/31/2019_____

**OWNER:**

By: _____          By: _____
Artur Elizarov

Date signed: _____          Date signed: _____

By: _____          By: _____

Date signed: _____          Date signed: _____

By: _____          By: _____

Date signed: _____          Date signed: _____

**Property Address:**

291 W Overlook Rd

Palm Springs, CA 92264

Page 3 of 6

Omnibus Joint Exhibit Part E, page 1396

## <u>BENEFITED PARTY'S ACKNOWLEDGMENT</u>

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA           )
                                        ) ss.
COUNTY OF SAN FRANCISCO   )

On _____, 20___, before me _____,
Notary Public, personally appeared _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

_____ (seal)

© 2019, **Unison**

Form 301 HBAN-Multi (rev. 6/26/2019)

Omnibus Joint Exhibit Part E, page 1397

## OWNERS' ACKNOWLEDGMENT

STATE OF _____ )
                                                      ) ss.
COUNTY OF _Los Angeles_____ )

On _July 31_____, 20 _19_, before me _Estela Noemy Moreno Aviles /notary public_
personally appeared _Artur Elizarov_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of CA that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature

_qmoreno_____ (seal)

> ESTELA NOEMY MORENO AVILES
> Notary Public - California
> Los Angeles County
> Commission # 2293165
> My Comm. Expires Jun 15, 2023

Page 5 of 6

© 2019, Unison

Form 301 HBAN-Multi (rev. 6/26/2019)

## BENEFITED PARTY'S ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                    )
County of San Francisco          )


On _____ **JUL 3 1 2019** _____ before me, _____ Angelica Padilla, a notary public _____
personally appeared _____ Ismael Casas, Jr. _____ who proved to me
on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/
their signature(s) on the instrument the  person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

> ANGELICA PADILLA
> COMM. #2272624
> Notary Public · California
> San Francisco County
> My Comm. Expires Dec. 23, 2022

Signature _____          **(Seal)**
        Angelica Padilla

## SCHEDULE A

### LEGAL DESCRIPTION

That certain real property situated in the City of Palm Springs, County of Riverside, State of CA, described as follows:

LOT 8 OF BLOCK 7, PALM CANYON MESA TRACT, AS PER MAP RECORDED IN BOOK 12, PAGES 52 THROUGH 56, BOTH INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.


APN:  APN: 513-363-023-2

[end of legal description]

© 2019, **Unison**

Form 301 HBAN-Multi (rev. 6/26/2019)

Omnibus Joint Exhibit Part E, page 1400

## EXHIBIT 69
## Unison Assignment
## (Recorded 08/07/19)

DOC #2019-0299194
08/07/2019 05:00 PM Fees: $26.00
Page 1 of 5
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: MARY #420

PLEASE COMPLETE THIS INFORMATION
RECORDING REQUESTED BY:

FIRST AMERICAN TITLE

AND WHEN RECORDED MAIL TO:
AND MAIL TAX STATEMENTS TO:

Unison Agreement Corp.

P.O. Box 26800

San Francisco, CA 94126-6800

Space above this line for recorder's use only

ASSIGNMENT OF UNISON HOMEBUYER AGREEMENT

Title of Document

**TRA:** 011-003

**DTT:** $0.00

### Exemption reason declared pursuant to Government Code 27388.1

☐ This document is a transfer that is subject to the imposition of documentary transfer tax.

☑ This is a document recorded in connection with a transfer that is subject to the imposition of documentary transfer tax.
Document reference: CONCURRENTLY HEREWITH

☐ This document is a transfer of real property that is a residential dwelling to an owner-occupier.

☐ This is a document recorded in connection with a transfer of real property that is a residential dwelling to an owner-occupier.
Document reference:_____

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

ACR 238 (Rev. 01/2018)          Available in Alternate Formats

Recording Requested By
First American Title Company

Prepared by,
recording requested by, and
when recorded mail to:

Unison Agreement Corp.
P.O. Box 26800
San Francisco, CA 94126-6800

Unison HomeBuyer Agreement ID Number:
FRX-226269

## Assignment of Unison HomeBuyer Agreement

**Unison Agreement Corp.**, a Delaware corporation, as "**Assignor**," hereby assigns for good and valuable consideration to **Unison Midgard Holdings LLC,** a Delaware limited partnership, as "**Assignee**," all of Assignor's rights, title, interests and obligations to and under: **(i)** that certain Unison HomeBuyer Option Agreement of even date herewith made by and between Assignor and ARTUR ELIZAROV AS A SINGLE MAN (individually or collectively, the "**Homeowner**"); **(ii)** that certain Unison HomeBuyer Covenant Agreement of even date herewith made by and between Assignor and Homeowner; **(iii)** that certain Memorandum of Unison HomeBuyer Agreement made by and between Assignor and Homeowner and being recorded concurrently and on the same date as this Memorandum of Assignment; and **(iv)** that certain Unison HomeBuyer Security Instrument made by Homeowner as "**Mortgagor**" in favor of Assignor as "**Mortgagee**" and being recorded concurrently and on the same date as this Memorandum of Assignment; which relate to, run with and encumber the real property described in <u>**Exhibit A**</u> ("**Property**").

IN WITNESS WHEREOF the undersigned Assignor has executed this instrument as of July 30, 2019.

**Unison Agreement Corp.**

By: _____

Name:     Ismael Casas Jr

Title:     Vice President 650 California Street,
            Suite 1800
            San Francisco, CA 94108

1 of 3

© 2019, Unison                    Form 601 HBAN-Multi (Mortgage) (rev. 6/26/2019)

# BENEFITED PARTY'S ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                               )
County of San Francisco                    )

On **JUL 3 1 2019** _____ before me, _____ Angelica Padilla, a notary public ____ personally appeared _____ Ismael Casas, Jr. _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

ANGELICA PADILLA
COMM. #2272624
Notary Public · California
San Francisco County
My Comm. Expires Dec. 23, 2022

Signature _____          **(Seal)**
Angelica Padilla

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA)
                    ) ss.
COUNTY OF SAN FRANCISCO)

On_____, 20____, before me _____, Notary Public, personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

_____

(seal)

© 2019, Unison

Form 601 HBAN-Multi (Mortgage) (rev. 6/26/2019)

**EXHIBIT A**

**LEGAL DESCRIPTION**

That certain real property situated in the Town/City of Palm Springs, County of Riverside, State of CA, described as follows:

LOT 8 OF BLOCK 7, PALM CANYON MESA TRACT, AS PER MAP RECORDED IN BOOK 12, PAGES 52 THROUGH 56, BOTH INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Parcel Identification #: APN: 513-363-023-2

[end of legal description]

© 2019, **Unison**                                        Form 601 HBAN-Multi (Mortgage) (rev. 6/26/2019)

Omnibus Joint Exhibit Part E, page 1406

**EXHIBIT 70**
**Transcript of Deposition of Peter Hill**
**(Additional Excerpts)**

```
 1              UNITED STATES DISTRICT COURT
 2        CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION
 3
 4    Goldwater Bank, N.A.,     )CASE NO. 5:21-cv-00616-JWH-SP
                                )
 5           Plaintiff,         )
                                )
 6        vs.                   )
                                )
 7    ARTUR ELIZAROV; UNISON    )
      AGREEMENT CORP.; SCOTT    )
 8    HOWLETT; BANK OF THE WEST;)
      and ILYA ALEKSEYEFF,      )
 9                              )
             Defendants.        )
10    _____)
11
12
13                   --oOo--
14           DEPOSITION OF PETER J. HILL
15             September 9, 2022
16          ***TAKEN VIA VIDEOCONFERENCE***
17                   --oOo--
18
19
20
21
22
23
24
25
                                        Page 1
```

```
 1              BE IT REMEMBERED THAT, pursuant to the Federal
 2    Rules of Civil Procedure, the deposition of PETER J.
 3    HILL, was taken before Maureen Kelly, OCSR No. 00-0364,
 4    WCSR No. 3401, on Friday, September 9, 2022, commencing
 5    at the hour of 9:59 a.m., the proceedings being reported
 6    via Zoom videoconference.
 7                            --oOo--
 8
 9                        APPEARANCES
10            (ALL APPEARING VIA VIDEOCONFERENCE)
11    Attorneys for Plaintiff Goldwater Bank, N.A.:
                  Joseph A. LeVota, Esq.
12                HILBERT & SATTERLY, LLP
                  409 Camino Del Rio South, Suite 104
13                San Diego, CA 92108
                  jlevota@hscallaw.com
14
      Pro Hac Vice Attorneys for Plaintiff Goldwater Bank,
15    N.A.:
                  Sean C. Wagner, Esq.
16                Derek M. Bast, Esq.
                  WAGNER HICKS, PLLC
17                831 East Morehead Street, Suite 860
                  Charlotte, NC 28202
18                sean.wagner@wagnerhicks.law
                  derek.bast@wagnerhicks.law
19
      Attorneys for Defendant and Cross-Complainant SCOTT
20    HOWLETT and Defendant BANK OF THE WEST:
                  Jeremy T. Katz, Esq.
21                Ryan C. Thomason, Esq.
                  HALL GRIFFIN LLP
22                1851 East First Street, 10th Floor
                  Santa Ana, California 92705-4052
23                jkatz@hallgriffin.com
                  rthomason@hallgriffin.com
24
25    (Continued on next page.)

                                                  Page  2
```

Omnibus Joint Exhibit Part E, page 1409

```
 1                    APPEARANCES (CONTINUED)
 2              (ALL APPEARING VIA VIDEOCONFERENCE)
 3   Attorneys for Defendant Artur Elizarov and Defendant
     Ilya Alekseyeff (in Pro Per):
 4              Ilya Alekseyeff, Esq.
                LOIA, INC. (APLC)
 5              8721 Santa Monica Blvd., #119
                West Hollywood, CA 90069
 6              ilya@loia.legal
 7   Attorneys for Defendant Unison Agreement Corp.:
                Nabil Bisharat, Esq.
 8              ORSUS GATE, LLP
                16 N. Marengo Ave., Suite 316
 9              Pasadena, CA 91101
                nbisharat@orsusgate.com
10
11
     Also Present: (None.)
12
                          --oOo--
13
14
15
16
17
18
19
20
21
22
23
24
25
                                              Page  3
```

1         Q.   Do you recognize this document?

2         A.   I do, yes.

3         Q.   And this was the request for payoff that

4    you received from Andrea Cross.  Correct?

5         A.   Yes, it is.

6         Q.   The next document is going to be the -- an

7    email from Andrea Cross to you and Ms. Melendez from --

8    with the borrower authorization from Mr. Elizarov dated

9    on March 22nd, 2021.  In the Cross deposition it was

10   Exhibit 8.  We will also be marking it as Exhibit 8

11   here.

12             MR. KATZ:  Are you able to see the

13   document?

14             THE WITNESS:  I am, yes.

15             MR. KATZ:  It's a two-page document.  I'm

16   just going to scroll through it.

17   BY MR. THOMASON:  (Continuing)

18        Q.   Do you recognize this document?

19        A.   I do.

20        Q.   And this was the borrower authorization

21   that was forwarded by Andrea Cross to you and

22   Ms. Melendez?

23        A.   Correct.

24        Q.   The next document is going to be the

25   Weststar payoff calculation letter that was attached to

                                        Page 17

1    an email from you, Mr. Hill, to Ms. Cross on March 25th,

2    2021, in the Cross deposition it was marked as

3    Exhibit 10.  We are also going to mark it as Exhibit 10

4    here.  Do you recognize this document?

5             A.   I do.

6             Q.   And is this the document that you sent to

7    Andrea Cross?

8             A.   It is.

9             Q.   Now, aside from this payoff, did Goldwater

10   send any other payoff calculation letters to Escrow of

11   the West?

12            A.   I sent a clarification email to Andrea

13   explaining that this particular document we're looking

14   at was inadvertently the wrong one that we initially

15   sent, and I notified her of that and had thought I had

16   attached the correct payoff for Mr. Elizarov's loan, and

17   it did not make it as an attachment to that email.

18            Q.   Okay.  All right.  So when you had emailed

19   with the clarification, you meant to attach the correct

20   one but it did not attach?

21            A.   Correct.  Yes.

22            Q.   So there are no other payoff calculations

23   that were sent to Escrow of the West other than this

24   one?

25            A.   Correct.

                                           Page 18

Omnibus Joint Exhibit Part E, page 1412

1              MR. KATZ:   And by "this one," we are

2       referring to Exhibit 10.

3    BY MR. THOMASON:  (Continuing)

4         Q.   All right.  Our next document is going to

5    be a flyer advertising the Goldwater Bank-Unison loan

6    partnership program.

7              MR. THOMASON:  We are going to mark this as

8    Exhibit 42.

9                   (EXHIBIT marked: Exhibit No. 42.)

10             MR. KATZ:  Are you able to see it?

11             THE WITNESS:  I am.

12   BY MR. THOMASON:  (Continuing)

13        Q.   Have you ever seen this document before or

14   do you know about this document?

15        A.   I have seen it for the first time this

16   morning.

17        Q.   Okay.  All right.  Now, were -- aside from

18   the document of course, were you aware that there was a

19   joint program between Unison and Goldwater Bank?  Was

20   that knowledge that you had?

21        A.   Yes, it was.

22        Q.   Okay.  All right.

23             The next exhibit is going to be an email

24   chain between you, Mr. Hill; Matt Teskey; Theo Haugen

25   and Andrew Toby between January 28th, 2021, and

                                                Page 19

```
 1    April 6th, 2021, regarding the Goldwater Bank-Unison

 2    loans and the eventual litigation regarding Elizarov's

 3    loan.

 4                 MR. THOMASON:  We are going to mark this as

 5    Exhibit 43.

 6                     (EXHIBIT marked: Exhibit No. 43.)

 7                 MR. KATZ:  Are you able to see -- it's a

 8    single page.  Are you able to see it?

 9                 THE WITNESS:  I am.

10                 MR. KATZ:  Would you like me to zoom in a

11    little bit on it so you can see?  The text is a little

12    small on the full page screen share.

13                 THE WITNESS:  No.  I can see it fine.

14    Thank you.

15    BY MR. THOMASON:  (Continuing)

16         Q.    And do you recognize this email chain?

17         A.    I do, yes.

18         Q.    This was the email chain between you and

19    Matt Teskey, Theo Haugen and Andrew Toby.  Correct?

20         A.    Correct.

21         Q.    The next exhibit will be an email chain

22    between you, Mr. Hill; Matt Teskey; Annette Baca and

23    Gregory Hill between February 3rd, 2021, and

24    February 4th, 2021, regarding contacting Elizarov and

25    Elizarov selling the property.
```

                                                    Page 20

1          MR. THOMASON:  We are going to mark this as

2    Exhibit 44.

3                    (EXHIBIT marked: Exhibit No. 44.)

4          MR. KATZ:  Are you able to see it?

5          THE WITNESS:  I am, yes.

6          MR. KATZ:  It is a four-page document.  I'm

7    just going to briefly scroll through it.  That's the

8    fourth and final page.

9          THE WITNESS:  Correct.

10   BY MR. THOMASON:  (Continuing)

11        Q.   And do you recognize this email chain?

12        A.   I do.

13        Q.   And this was the email chain where you were

14   informed of basically how to contact Escrow of the West

15   and that Mr. Elizarov was selling the property.

16   Correct?

17        A.   Correct.

18        Q.   Next we have an email chain between you,

19   Mr. Hill, and Theo Haugen on March 4th, 2021, regarding

20   Elizarov's sale of the property and Escrow of the West.

21          MR. THOMASON:  We are going to mark this as

22   Exhibit 45.

23                    (EXHIBIT marked: Exhibit No. 45.)

24          MR. KATZ:  Are you able to see this

25   exhibit?

                                              Page 21

```
 1    or email?
 2              A.    It was by email.
 3              Q.    Did you ever talk with Ms. Cross by phone
 4    at all?
 5              A.    I did.
 6              Q.    Do you know when?
 7              A.    It would have been in that timeframe from
 8    the initial contact somewhere in mid March through the
 9    time that she had been instructed to not speak with us
10    any further, that would have been late March.
11              Q.    Okay.  All right.  What did you talk about
12    with Ms. Cross?
13              A.    The first topic was the fact that we were
14    having difficulty getting a proper payoff demand to them
15    and that's what I assisted with.  Then subsequent
16    conversations were my requesting estimated settlement
17    sheets and talking about the contractor's lien
18    specifically, getting additional information there,
19    clarifying that she was getting the proper payoff
20    information from Unison.
21              Q.    Was there anything else that you discussed
22    with Ms. Cross by phone?
23              A.    No.  Not by phone, no.
24              Q.    We are going to pull up Exhibit 45.
25                    MR. KATZ:   I'm zooming in.   Are you able to
```

<div align="right">Page 47</div>

```
 1    read the texts of Exhibit 45 now?

 2                 THE WITNESS:  Yes.

 3    BY MR. THOMASON:  (Continuing)

 4            Q.   So this is an email exchange between you

 5    and Mr. Haugen regarding Elizarov's sale of the

 6    property.

 7                 MR. THOMASON:  Go up just a little bit.

 8                 MR. KATZ:  (Complying.)

 9    BY MR. THOMASON:  (Continuing)

10            Q.   It looks like on March 4th, 2021, you had

11    wrote, "Thanks, just wanted to make sure his title

12    company was in touch with you.  When I spoke with them

13    yesterday they were a little confused about everything."

14    So when you say "title company," were you referring to

15    Escrow of the West?

16            A.   I was, yes.

17            Q.   And when you say I spoke with them

18    yesterday and they were a little confused about

19    everything, can you clarify what that -- what that

20    means?

21            A.   They were not certain or not understanding

22    of the fact that Goldwater Bank and Unison were two

23    separate companies independent of each other and that

24    they needed to obtain a payoff request directly from

25    Unison that I could not provide them.
```

Page  48

1          Q.    Okay.    Anything else?

2                A.    No.    I directed them to Unison and reached

3     out to Theo to try to verify that that connection had

4     been made.

5                Q.    Do you remember who you spoke with at

6     Escrow of the West?

7                A.    Andrea.

8                Q.    Andrea Cross?

9                A.    Yes.

10               Q.    And just to be clear, that would have been

11    March 3rd, 2021, that you spoke via phone to Andrea

12    Cross?

13               A.    It would have been, yes.

14               Q.    So when you had spoken to Andrea Cross, she

15    was confused thinking that Unison and Goldwater were the

16    same entity or affiliated or connected to each other?

17               A.    Right.    Yes.

18               Q.    Now we are going to pull up Exhibit 6, an

19    email exchange, and we will start at the bottom.

20                     So on March 22nd, 2021, Cross reached out

21    to you and gave you a copy of the purchase agreement and

22    the demand for payoff stating that Mr. Elizarov had

23    given them permission to communicate with you.    And did

24    you receive the purchase and sale agreement and the

25    request for demand with that email?

                                                    Page 49

```
 1              Q.    And so this was the payoff demand that you
 2     had sent to Ms. Cross; is that correct?
 3              A.    That's correct, which --
 4              Q.    And this was the incorrect payoff statement
 5     because it has the incorrect account number as well as
 6     incorrect borrowers and legal description; is that
 7     correct?
 8              A.    That's right.  Yes.
 9                    MR. THOMASON:  Go back to Exhibit 6.
10                    MR. KATZ:  (Complying.)
11                    MR. THOMASON:  A little bit higher.
12                    MR. KATZ:  (Complying.)
13     BY MR. THOMASON:  (Continuing)
14              Q.    It looks like at 11:12 a.m., Ms. Cross
15     immediately notified you that it was the wrong payoff;
16     is that correct?
17              A.    Correct.
18              Q.    And then it looks like at 1:30 you say that
19     you sent the correct payoff but there was no actual --
20     the correct payoff demand was not attached to this
21     email; is that correct?
22              A.    That's right, yes.
23              Q.    So there was nothing attached to the
24     1:30 p.m. email.  Correct?
25              A.    Correct.
```

Page 58

1        Q.   Is the loan sold or just the servicing

2    rights sold?

3        A.   In this case the -- we retained the loan in

4    our portfolio and Weststar held servicing rights, which

5    would include the billings going forward.  Everything

6    that Mr. Elizarov would have seen, would be coming from

7    Weststar Mortgage as our servicing company.

8        Q.   Okay.  Are there any procedures at

9    Goldwater Bank to confirm that a deed of trust has been

10   recorded once a sale closes?

11       A.   There are, yes.

12       Q.   Are you familiar with them?  Do you know

13   them?

14       A.   I don't know them.  I am aware of them.

15   That would be a standard post-closing item to review.

16       Q.   Who does that at Goldwater?

17       A.   I don't know.  It would be done at

18   Weststar, and I don't know who does it.

19       Q.   So if I'm understanding correctly, Weststar

20   Mortgage Corporation would be responsible for verifying

21   if a deed of trust has been recorded?  It would be under

22   their purview to do so; is that correct?

23       A.   That's correct, yes.

24       Q.   And they didn't do it here?

25       A.   I don't know what they did in this case.

Page 70

1    or not, but we -- I saw your lips move but I didn't see

2    the -- I didn't hear it come through.

3                    MR. THOMASON:  Oh, okay.  Thank you.

4    BY MR. THOMASON:  (Continuing)

5            Q.    All right.  Why don't we move on to

6    Exhibit 53?  So it looks like this is an email exchange

7    between you, Mr. Hill, and Lynette Suina-Cole.  Who is

8    Lynette Suina-Cole and what's her position at Goldwater

9    Bank?

10           A.    She's not an employee of Goldwater.  She is

11   an employee of Weststar Mortgage.

12           Q.    Okay.  And what does she do?

13           A.    Her title on this email refers to her as a

14   government ensuring manager, but I was given her name by

15   Matt as somebody that could do the search for me for

16   that original deed of trust.

17           Q.    Okay.  And she says here that she's

18   searching in BlitzDocs.  I would assume BlitzDocs is

19   your -- is Goldwater or Weststar's internal system or

20   database for managing documents or whatnot?

21           A.    Imaging system, yes.

22           Q.    So at least as of the morning of

23   March 26th, 2021, no one at Goldwater Bank had any idea

24   where the original deed of trust was.  Correct?

25           A.    That's correct, yes.

                                              Page  73

1        Q.    And then it looks like later that morning

2   she found it; is that correct?

3        A.    Yes.

4        Q.    Now, does Goldwater Bank have any

5   documentation that it shows it intended to send the deed

6   of trust to be recorded in a, you know, file that was

7   supposed to go to escrow or to First American Title

8   Company?

9            MR. WAGNER:   Objection.   I just want to

10  make sure that it's -- we're clarifying that this is

11  just in his personal knowledge.

12           MR. THOMASON:   Yes, to his knowledge.   I

13  apologize.   I should have put that in the beginning.

14           THE WITNESS:   No, I don't have any

15  information or documentation on that.

16  BY MR. THOMASON:   (Continuing)

17       Q.    Now we will go to Exhibit 54.   So here we

18  have an email on the same date, March 26th, 2021, asking

19  Lynette to overnight the deed of trust to you in

20  Phoenix.   Why did you want the deed of trust overnighted

21  to you?

22       A.    I was wanting to get it recorded.

23           MR. THOMASON:   Let's go to Exhibit 55.

24           MR. KATZ:   (Complying.)

25           MR. THOMASON:   My eyesight is going.   I

                                          Page 74

```
1              A.   Correct.

2              Q.   Of 2021?

3              A.   Correct.

4              Q.   Okay.  Earlier you mentioned -- strike

5      that.

6                   Early in your testimony you were presented

7      with communications that indicated that they were

8      between Greg Hill and various parties; is that right?

9              A.   Yes.

10             Q.   And it was your testimony that Mr. Hill was

11     a loan officer at the time that he sent those

12     communications.  Correct?

13             A.   Correct.

14             Q.   Okay.  Is it your understanding that

15     Mr. Hill is no longer a Goldwater employee?

16             A.   That's correct, yes.

17             Q.   And is it your understanding that's a

18     recent development?

19             A.   Yes.

20             Q.   Okay.  Do you have any knowledge regarding

21     the circumstances of his separation from the company?

22             A.   No, I don't.

23             Q.   Okay.  Moving on, there were some

24     discussions earlier and some questions related to what

25     Goldwater's policies and procedures were related to
```

Page 192

```
 1    questions.
 2              MR. WAGNER:  Okay.  All right.
 3    BY MR. KATZ:  (Continuing)
 4         Q.   During Mr. Wagner's redirect he was asking
 5    you questions and you testified that the reason why you
 6    did not send Ms. Cross a corrected payoff quote was
 7    because Ms. Cross had told you that she was instructed
 8    not to have any further communications with you or words
 9    to that effect.  Is that a fair summary of the
10    testimony?
11         A.   Yes.
12         Q.   But after Ms. Cross told you that she was
13    instructed not to have further communications with you,
14    you continued to send communications to her, didn't you?
15         A.   I sent one communication following that,
16    yes.
17         Q.   I'm showing you what was previously marked
18    as Exhibit 6.  Here on March 25th at 1:49 p.m.,
19    Ms. Cross sends you an email where she says, "Seller has
20    instructed we are NOT to make payoff to Goldwater."  And
21    up above it at 2:24 p.m., She says, "I'm sorry but I am
22    not authorized to discuss as you are not a party to the
23    transaction."  And then after that you send a first
24    email saying you would like to be in contact with her
25    branch manager.  Did you ever contact her branch
```

Page 228

1    manager?

2              A.   No, I didn't.

3              Q.   Then there's an email from Ms. Cross that

4    identifies the branch manager.   You send another

5    follow-up at 2:42 saying, "Is she familiar with the

6    matter?"  Ms. Cross says, "I have let her know."  And

7    then you send her another thing the following day, on

8    the 26th, saying, "Just to keep you in the loop..."

9              A.   Correct.

10              Q.   You had more than one communication with

11   Ms. Cross after she told you that she was -- had been

12   instructed not to have communications with you?

13              A.   Only to clarify some points as are detailed

14   in my email.   I did send that additional email the

15   following day in the hopes that something had changed

16   with Mr. Elizarov, and I wanted her to be at least aware

17   that I had approval to take a short payoff.

18              Q.   You could have sent the corrected payoff

19   quote as an attachment to any of these emails in which

20   you're communicating with her after she told you that

21   she had been instructed not to communicate with you;

22   isn't that correct?

23              A.   I could have, yes.

24              Q.   But you did not, did you?

25              A.   I did not send the correct payoff

Page  229

1    statement, right.

2         Q.   And so that statement from the complaint

3    saying that Goldwater Bank had sent a payoff quote for

4    Mr. Elizarov's loan to Escrow of the West, that's not a

5    correct statement is it?

6         A.   At the time I made that, that was my best

7    belief, that that payoff statement had been properly

8    attached and received.

9         Q.   But as of right now do you concede that

10   that allegation is factually incorrect?

11        A.   At the time that was made it was correct.

12   I have subsequent information where I learned that that

13   attachment was not on my email.  That was well after

14   that allegation was made.

15        Q.   Now, there was testimony on redirect and

16   from before about the servicing and the date the

17   servicing transferred and whether it was from the get-go

18   on the loan or whether it was in May, which was at least

19   five months after the loan originated.  But you said

20   that at the -- that Weststar was the one responsible for

21   post-closing procedures?

22             MR. WAGNER:  I'm going to object.  This is

23   outside the scope of redirect.  I didn't ask him any

24   questions about who was responsible for post-closing

25   procedures or when the servicing transferred.

Page 230

Omnibus Joint Exhibit Part E, page 1426

```
 1     wrapped up.

 2               MR. KATZ:  All right.  Let's go off the

 3     record please.

 4                     (A recess was taken.)

 5               MR. WAGNER:  Okay.  We have no further

 6     questions.  I think that concludes the deposition.

 7               MR. ALEKSEYEFF:  Let's go off the record --

 8     I was going to say let's go off the record just to

 9     address the stipulations and whatnot.

10               MR. WAGNER:  Okay.

11                     (Discussion off the record.)

12               MR. ALEKSEYEFF:  Counsel, will you all

13     stipulate that according to the rules the witness can

14     have 30 days after the transcript is available to review

15     and make any corrections, and other than that, all

16     counsel may use a certified copy, along with any

17     corrections, for any purposes, including motions for

18     summary judgment and trial?

19               MR. LEVOTA:  So stipulated.

20               MR. KATZ:  Stipulated.

21               MR. BISHARAT:  Yeah, stipulated as well.

22               MR. WAGNER:  So stipulated.

23               MR. ALEKSEYEFF:  Perfect.  Thank you so

24     much.

25                     (Deposition Concluded at 5:13 p.m.)
```

Page  232

1          I declare under penalty of perjury that the

2     foregoing is true and correct.  Subscribed at

3     _____, California, this_____day of

4     _____, 2022.

5

6

7

8

9          _____

10                   PETER J. HILL

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 233

```
1                  C E R T I F I C A T E
2           I, Maureen Kelly, Oregon CSR No. 00-0364,
    Washington CSR No. 3401, do hereby certify that
3   prior to the commencement of the examination, PETER J.
    HILL, was duly remotely sworn by me to testify to the
4   truth, the whole truth and nothing but the truth.
5           I DO FURTHER CERTIFY that the foregoing is a
    verbatim transcript of the testimony as taken
6   stenographically by me at the time, place and on the
    date hereinbefore set forth, to the best of my
7   ability.
8           I DO FURTHER CERTIFY that I am neither a
    relative nor employee nor attorney nor counsel of
9   any of the parties to this action, and that I am
    neither a relative nor employee of such attorney or
10  counsel, and that I am not financially interested in
    the action.
11
            Witness my hand at Portland, Oregon, this 15th
12  day of September, 2022.
13
14
15
            MAUREEN KELLY - RPR
16          Certified Shorthand Reporter
            Oregon CSR No. 00-0364
17          Washington CCR No. 3401
18
19
20
21
22
23
24
25
                                              Page  234
```

Omnibus Joint Exhibit Part E, page 1429

```
 1    Sean C. Wagner, Esq

 2    sean.wagner@wagnerhicks.law

 3                                    September 23, 2022

 4    RE: Goldwater Bank, N.A. vs. Artur Elizarov, Et Al.

 5    9/9/2022, PETER J. HILL, JOB NO. 5429400

 6    The above-referenced transcript has been

 7    completed by Veritext Legal Solutions and

 8    review of the transcript is being handled as follows:

 9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10       to schedule a time to review the original transcript at

11       a Veritext office.

12    X_ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13       Transcript - The witness should review the transcript and

14       make any necessary corrections on the errata pages included

15       below, noting the page and line number of the corrections.

16       The witness should then sign and date the errata and penalty

17       of perjury pages and return the completed pages to all

18       appearing counsel within the period of time determined at

19       the deposition or provided by the Code of Civil Procedure.

20    __ Waiving the CA Code of Civil Procedure per Stipulation of

21       Counsel - Original transcript to be released for signature

22       as determined at the deposition.

23    __ Signature Waived - Reading & Signature was waived at the

24       time of the deposition.

25
```

<div align="right">Page 235</div>

Omnibus Joint Exhibit Part E, page 1430

1   __ Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF

2       Transcript - The witness should review the transcript and

3       make any necessary corrections on the errata pages included

4       below, noting the page and line number of the corrections.

5       The witness should then sign and date the errata and penalty

6       of perjury pages and return the completed pages to all

7       appearing counsel within the period of time determined at

8       the deposition or provided by the Federal Rules.

9   __ Federal R&S Not Requested - Reading & Signature was not

10      requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 236

Omnibus Joint Exhibit Part E, page 1431

```
 1    Goldwater Bank, N.A. vs. Artur Elizarov, Et Al.

 2    PETER J. HILL (#JOB NO 5429400)

 3                  E R R A T A   S H E E T

 4    PAGE_____ LINE_____ CHANGE_____

 5    _____

 6    REASON_____

 7    PAGE_____ LINE_____ CHANGE_____

 8    _____

 9    REASON_____

10    PAGE_____ LINE_____ CHANGE_____

11    _____

12    REASON_____

13    PAGE_____ LINE_____ CHANGE_____

14    _____

15    REASON_____

16    PAGE_____ LINE_____ CHANGE_____

17    _____

18    REASON_____

19    PAGE_____ LINE_____ CHANGE_____

20    _____

21    REASON_____

22

23    _____  _____

24    PETER J. HILL                            Date

25

                                            Page 237
```

## <u>EXHIBIT 71</u>
## <u>Hill Email to Unison re Elizarov May Dispute Payoff</u>

| | |
|---|---|
| **From:** | Theo Haugen |
| **To:** | Peter Hill |
| **Subject:** | Re: Arthur Elizarov |
| **Date:** | Thursday, March 4, 2021 6:54:40 PM |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Thanks Peter and feel free to direct them to homepartners@unisonim.com if they reach out again. The process may take longer than normal because Elizarov may try to dispute our payoff.

On Thu, Mar 4, 2021 at 3:43 PM Peter Hill <PHill@goldwaterbank.com> wrote:

> Thanks, just wanted to make sure his title company was in touch with you.  When I spoke with them yesterday they were a little confused about everything.
>
>
> **From:** Theo Haugen <theo.haugen@unisonim.com>
> **Sent:** Thursday, March 4, 2021 3:29 PM
> **To:** Peter Hill <PHill@goldwaterbank.com>
> **Subject:** Re: Arthur Elizarov
>
>
> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.
>
>
> Hi Peter,
>
> We are working with Elizarov on his property sale. They are approaching closing.
>
> On Wed, Mar 3, 2021 at 11:20 AM Peter Hill <PHill@goldwaterbank.com> wrote:
>
>> Theo;
>>
>> Have you received nothing on the sale of this residence?
>>
>> Pete
>>
>> *Peter Hill*
>>
>> *EVP - Chief Credit Officer*
>>
>> **Goldwater Bank, N.A.**
>>
>> 2525 E Camelback Road Suite 1100
>>
>> Phoenix, Arizona 85016
>>
>> (O) 480.281.8207
>>
>> (C) 602-291-5444
>>
>> (F) 480.281.8222
>>
>> www.goldwaterbank.com
>>
>>
>> **Confidentiality Notice:** The contents of this email communication are confidential and may contain information that is privileged and/or exempt from disclosure under applicable law. It is intended solely for use of the individual or entity to which this email is addressed. If you are not one of the named recipient(s) or otherwise have reason to believe that you have received this message in error, please notify the sender and immediately delete this message and any attachments. Any unauthorized use, retention, dissemination, forwarding, printing, or copying of this email is strictly prohibited.
>
>
> **Confidentiality Notice:** The contents of this email communication are confidential and may contain information that is privileged and/or exempt from disclosure under applicable law. It is intended solely for use of the individual or entity to which this email is addressed. If you are not one of the named recipient(s) or otherwise have reason to believe that you have received this message in error, please notify the sender and immediately delete this message and any attachments. Any unauthorized use, retention, dissemination, forwarding, printing, or copying of this email is strictly prohibited.

**Be aware!** Online Banking Fraud is on the rise. This institution does not issue wiring instructions for mortgage originations. If you receive an email containing WIRE TRANSFER INSTRUCTIONS call your Title Company or Settlement Agent's escrows officer immediately to verify the information prior to sending funds.

**EXHIBIT 45**

Omnibus Joint Exhibit Part E, page 1434

**EXHIBIT 72**
**Transcript of Deposition of Andrea Cross**
**(Excerpts)**

```
 1                UNITED STATES DISTRICT COURT

 2          CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

 3                        -  -  -

 4      GOLDWATER BANK, N.A.,         )
                                      )
 5              Plaintiff,            )
                                      )
 6              vs.                   ) No. 5:21-cv-00616-JWH-SP
                                      )
 7      ARTUR ELIZAROV; UNISON        )
        AGREEMENT CORP.; SCOTT        )
 8      HOWLETT; BANK OF THE WEST;    )
        and ILYA ALEKSEYEFF,          )
 9                                    )
                Defendants.           )
10                                    )
        AND RELATED CROSS-ACTIONS.

11

12

13

14

15                      DEPOSITION OF

16                      ANDREA CROSS

17              Wednesday, June 29, 2022

18

19

20

21

22      Reported By:

23      MICHELLE K. BAILEY
        RPR, CSR No. 10713

24      Job No. 5294007

25      Pages 1 - 172
```

                                                    Page 1

Omnibus Joint Exhibit Part E, page 1436

```
 1                  UNITED STATES DISTRICT COURT
 2          CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION
 3                          - - -
 4      GOLDWATER BANK, N.A.,        )
                                     )
 5            Plaintiff,             )
                                     )
 6            vs.                    ) No. 5:21-cv-00616-JWH-SP
                                     )
 7      ARTUR ELIZAROV; UNISON       )
        AGREEMENT CORP.; SCOTT       )
 8      HOWLETT; BANK OF THE WEST;   )
        and ILYA ALEKSEYEFF,         )
 9                                   )
              Defendants.            )
10                                   )
        AND RELATED CROSS-ACTIONS.
11
12
13
14
15          Deposition of ANDREA CROSS, taken on behalf of
16      the Defendants, beginning at 10:03 a.m., and ending at
17      4:05 p.m., on Wednesday, June 29, 2022, before MICHELLE
18      K. BAILEY, RPR, CSR No. 10713.
19
20
21
22
23
24
25
                                                    Page  2
```

Omnibus Joint Exhibit Part E, page 1437

```
 1     APPEARANCES:
 2
       For the Plaintiff Goldwater Bank, N.A.:
 3
           HILBERT & SATTERLY LLP
 4         BY:  JOSEPH A. LEVOTA, ESQ.
           409 Camino Del Rio South
 5         Suite 104
           San Diego, California  92108
 6         619.795.0300
           jlevota@hscallaw.com
 7
           -and-
 8
           WAGNER HICKS, PLLC
 9         BY:  DEREK M. BAST, ESQ.
           831 East Morehead Street
10         Suite 860
           Charlotte, North Carolina  28202
11         704.705.7538
           derek.bast@wagnerhicks.law
12
13     For the Defendants Scott Howlett and Bank of the West:
14         HALL GRIFFIN
           BY:  RYAN C. THOMASON, ESQ.
15             JEREMY KATZ, ESQ.
           1851 East First Street
16         10th Floor
           Santa Ana, California  92705
17         714.918.7000
           rthomason@hallgriffin.com
18
19     For the Bank of the West:
20         KRISHEL LAW FIRM
           BY:  DANIEL KRISHEL, ESQ.
21         4500 Park Granada
           Suite 202
22         Calabasas, California  91302
           818.883.8759
23
24
25

                                              Page  3
```

Omnibus Joint Exhibit Part E, page 1438

```
 1    APPEARANCES (continued):
 2

      For the Defendant Artur Elizarov
 3    And Ilya Alekseyeff (in pro per):
 4        LOIA, INC. (APLC)
          BY:  ILYA ALEKSEYEFF, ESQ.
 5        8721 Santa Monica Boulevard
          Suite 119
 6        West Hollywood, California  90069
          213.537.4592
 7        ilya@loia.legal
 8

      For the Defendant Unison Agreement Corp.:
 9

          ORSUS GATE LLP
10        BY:  NABIL BISHARAT, ESQ.
          16 N. Marengo Avenue
11        Suite 316
          Pasadena, California  California
12        213.973.2052
          nbisharat@orsusgate.com
13
14
15
16
17
18
19
20
21
22
23
24
25

                                      Page  4
```

```
 1                  WEDNESDAY, JUNE 29, 2022

 2                       10:03 A.M.

 3

 4                     ANDREA CROSS,

 5                having first been duly sworn

 6                by the reporter, was examined

 7                 and testified as follows:

 8

 9                      EXAMINATION

10   BY MR. THOMASON:

11        Q.  Good morning, Andrea.  How are you doing?

12        A.  I'm well.  Thank you.

13        Q.  Thank you for joining us.  I'm just going to

14   kind of go through some housekeeping here at the

15   beginning.  If you could, just please state and spell

16   your name for the record.

17        A.  My name is Andrea Cross.  First name Andrea,

18   A-n-d-r-e-a; last name Cross, C-r-o-s-s.

19        Q.  My name is Ryan Thomason.  I am an attorney for

20   Scott Howlett and Bank of the West.  Jeremy Katz is also

21   counsel for Scott Howlett and Bank of the West.

22            Because we have so many parties here, we're

23   going to kind of shorten names.  When I refer to

24   Howlett, I'm referring to Scott Howlett, who is a

25   defendant in this action, where the property that he
```

                                                        Page 9

1    purchased is at issue.

2            Do you understand that?

3        A.  Yeah.

4            MR. KATZ:  Why don't we have a -- just for the

5    sake of a straightforward transcript, let's have all

6    counsel check in for record.  Mr. Thomason checked in.

7    This is Jeremy Katz, also for Howlett and Bank of the

8    West.

9            Mr. Krishel, do you want to state an official

10   appearance?

11           MR. KRISHEL:  Yes.  Daniel Krishel for Escrow

12   of the West and Andrea Cross.

13           MR. LEVOTA:  Joseph LeVota for Goldwater Bank.

14           MR. BISHARAT:  And this is Nabil Bisharat

15   appearing for Unison Agreement, Corp.

16           Good morning, Ms. Cross.

17           THE WITNESS:  Good morning.

18           MR. ALEKSEYEFF:  And good morning.  This is

19   Ilya Alekseyeff for Artur Elizarov and also representing

20   myself.  Good morning.

21           MR. BAST:  And my name is Derek Bast.  And I'm

22   also appearing today on behalf of plaintiff, Goldwater

23   Bank.

24   BY MR. THOMASON:

25       Q.  And would you prefer Andrea, or do you prefer

                                                    Page 10

```
 1    of the purchase agreement and the demand for payoff; is
 2    that correct?
 3         A.  Yes.
 4         Q.  Now we're going to jump back.  We're going to
 5    go back to our Exhibit 2, which was the purchase and
 6    sale agreement.  This, of course, was sent to Hill.  One
 7    thing we want to do is kind of go over -- going to last
 8    page of Exhibit 2.  On the last page of Exhibit 2, we
 9    show both the buyer's and seller's respective brokers
10    for the transaction; correct?
11         A.  Yes.
12         Q.  So Hill was given this purchase and sale
13    agreement, which Goldwater Bank would have had this
14    information, this last page, which was the contact
15    information for both the buyer and the seller's real
16    estate brokers; correct?
17         A.  Yes.
18         Q.  We are now going to move on to Exhibit 7.  So
19    here is the request for demand that was also sent to
20    Hill in that e-mail on March 22nd, 2021, at 11:47 a.m.
21    Now, we see here it says "Unison Midgard Holdings, LLC,
22    care of Goldwater Bank, attention Peter Hill."  And it's
23    dated March 3rd, 2021.
24             Now, was this first sent to Hill on March 22nd?
25         A.  Yes, I believe so.
```

<div align="right">Page 36</div>

1          Q.   Okay.

2               So Goldwater did not have this on March 3rd;

3    correct?

4          A.   Correct.

5          Q.   Okay.

6               And why is Unison Midgard Holdings still on

7    there care of Goldwater Bank?

8          A.   The demand was originally prepared only

9    attention to Unison, because they are the lienholder on

10   the prelim report; hence, the date is earlier.  And at

11   some point when Mr. Hill reached out on behalf of

12   Goldwater, I thought he was affiliated with Unison.  So

13   the "care of" and his attention were added to this

14   demand letter, which was originally prepared earlier.

15         Q.   Okay.

16              So you believed that Goldwater was affiliated

17   with Unison?

18         A.   I thought they were -- I thought that they

19   were, yes.

20         Q.   Okay.

21              So here we have Hill responding to you on

22   March 22nd, 2021, at 11:52 a.m.  He says:  "Were you

23   able to get the payoff from Unison?  We don't handle

24   that portion of this."

25              Do you know -- strike that.

                                                    Page 37

Omnibus Joint Exhibit Part E, page 1443

1    deposition transcript.

2         The parties to this action all stipulated that

3    a certified copy of the deposition transcript can be

4    used in lieu of the original for all purposes.  Other

5    than that, we will follow the procedures per code for

6    the handling of the deposition transcript.

7         Everyone please confirm.

8         MR. LEVOTA:  Confirmed.

9         MR. BISHARAT:  Confirmed on behalf of Unison.

10         MR. ALEKSEYEFF:  Yes for Art Elizarov and

11    myself.

12         MR. LEVOTA:  Thank you very much.

13         MR. KATZ:  With that, we'll conclude the

14    deposition.

15         (The deposition concluded at 4:05 p.m.)

16                        * * *

17

18

19

20

21

22

23

24

25

                                              Page 169

```
 1              DECLARATION UNDER PENALTY OF PERJURY

 2

 3         I, ANDREA CROSS, do hereby certify under penalty

 4    of perjury that I have read the foregoing transcript of

 5    my deposition taken June 29, 2022; that I have made such

 6    corrections as appear noted herein, in ink, initialed by

 7    me; that my testimony as contained herein, as corrected,

 8    is true and correct.

 9

10         DATED this        day of                , 2022,

11    at                            , California.

12

13

14

15

16                                   ANDREA CROSS

17

18

19

20

21

22

23

24

25

                                          Page 170
```

Omnibus Joint Exhibit Part E, page 1445

```
 1                    REPORTER'S CERTIFICATION

 2

 3        I, Michelle K. Bailey, Certified Shorthand

 4    Reporter, in and for the State of California, do hereby

 5    certify:

 6

 7         That the foregoing witness was by me duly sworn;

 8    that the deposition was then taken before me at the time

 9    and place herein set forth; that the testimony and

10    proceedings were reported stenographically by me and

11    later transcribed into typewriting under my direction;

12    that the foregoing is a true record of the testimony and

13    proceedings taken at that time.

14

15         IN WITNESS WHEREOF, I have subscribed my name this

16         day of July 19, 2022.

17    Signature was requested.

18

19

20

21

22                    Michelle K. Bailey

                      RPR, CSR No. 10713

23

24

25

                                             Page 171
```

1    DANIEL KRISHEL, ESQ.

2    daniel@krishellawfirm.com

3                                    JULY 19, 2022

4    RE: GOLDWATER BANK, N.A. VS. ARTUR ELIZAROV

5    JUNE 29, 2022, ANDREA CROSS, JOB NO. 5294007

6    The above-referenced transcript has been

7    completed by Veritext Legal Solutions and

8    review of the transcript is being handled as follows:

9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10      to schedule a time to review the original transcript at

11      a Veritext office.

12   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13      Transcript - The witness should review the transcript and

14      make any necessary corrections on the errata pages included

15      below, noting the page and line number of the corrections.

16      The witness should then sign and date the errata and penalty

17      of perjury pages and return the completed pages to all

18      appearing counsel within the period of time determined at

19      the deposition or provided by the Code of Civil Procedure.

20   __ Waiving the CA Code of Civil Procedure per Stipulation of

21      Counsel - Original transcript to be released for signature

22      as determined at the deposition.

23   __ Signature Waived - Reading & Signature was waived at the

24      time of the deposition.

25

                                                    Page 172

Omnibus Joint Exhibit Part E, page 1447

1    _X_Federal R&S Requested (FRCP 30(e)(1)(B)) – Locked .PDF

2       Transcript - The witness should review the transcript and

3       make any necessary corrections on the errata pages included

4       below, notating the page and line number of the corrections.

5       The witness should then sign and date the errata and penalty

6       of perjury pages and return the completed pages to all

7       appearing counsel within the period of time determined at

8       the deposition or provided by the Federal Rules.

9    __ Federal R&S Not Requested - Reading & Signature was not

10       requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 173

Omnibus Joint Exhibit Part E, page 1448

```
 1    GOLDWATER BANK, N.A. VS. ARTUR ELIZAROV

 2    ANDREA CROSS (#5294007)

 3                       E R R A T A   S H E E T

 4    PAGE_____ LINE_____ CHANGE_____

 5    _____

 6    REASON_____

 7    PAGE_____ LINE_____ CHANGE_____

 8    _____

 9    REASON_____

10    PAGE_____ LINE_____ CHANGE_____

11    _____

12    REASON_____

13    PAGE_____ LINE_____ CHANGE_____

14    _____

15    REASON_____

16    PAGE_____ LINE_____ CHANGE_____

17    _____

18    REASON_____

19    PAGE_____ LINE_____ CHANGE_____

20    _____

21    REASON_____

22

23    _____    _____

24    WITNESS                                Date

25

                                              Page 174
```

Omnibus Joint Exhibit Part E, page 1449

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

## VERITEXT LEGAL SOLUTIONS
### COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

## EXHIBIT 73
## Goldwater Responses to Elizarov Interrogatories (Additional Excerpts)

Sean C. Wagner (Pro Hac Vice)
Derek M. Bast (Pro Hac Vice)
**WAGNER HICKS PLLC**
831 East Morehead Street, Suite 860
Charlotte, North Carolina 28202
Tel: (704) 705-7538
Fax: (704) 705-7787

John Forest Hilbert, Esq. (SBN 105827)
Joseph A. LeVota, Esq. (SBN 226760)
**HILBERT & SATTERLY LLP**
409 Camino del Rio S. #104
San Diego, California 92108
Telephone: (619) 795-0300
Facsimile: (619) 501-6855

Counsel for Plaintiff
GOLDWATER BANK, N.A.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDWATER BANK, N.A.,<br><br>Plaintiff,<br><br>v.<br><br>ARTUR ELIZAROV, ET AL.<br><br>Defendants. | Case No. 5:21-cv-00616-JWH-SPx<br><br>**PLAINTIFF GOLDWATER BANK, N.A.'S RESPONSES TO ARTUR ELIZAROV'S FIRST SET OF INTERROGATORIES** |

PROPOUNDING PARTY:     Defendant Artur Elizarov

ANSWERING PARTY:     Plaintiff Goldwater Bank, N.A.

SET NO.:     One

NOW COMES Plaintiff Goldwater Bank, N.A. ("Goldwater"), by and through counsel, and responds to Defendant Artur Elizarov's ("Elizarov") First Set of Interrogatories (the "Interrogatories") as follows:

---

## PRELIMINARY STATEMENT

All responses and objections contained herein are based upon such information as is presently available and specifically known to Goldwater.  These responses are given without prejudice to Goldwater's right to produce evidence of any subsequently-discovered facts, including any and all subsequently-discovered information. Accordingly, Goldwater specifically reserves the right to change any and all responses contained herein as the result of further investigation, research, and discovery become known.  The responses made herein reflect Goldwater's good faith efforts to respond as completely as possible based on the information that is currently available, and shall not be used to prejudice Goldwater's right to investigate and rely upon such other information as it is ascertained as a result of such further investigation or discovery.

Goldwater reserves the right to use at trial and make reference to any evidence, facts, documents, or information not discovered at this time, omitted through good faith error, mistake, or oversight, or the relevance of which has not presently been identified by Goldwater. Goldwater also reserves the right to further modify these responses as a result of subsequently discovered information.

## RESPONSES TO INTERROGATORIES

**1.** Does GOLDWATER contend that ELIZAROV made false statements of fact in LOAN APPLICATION that GOLDWATER found important in deciding whether to approve LOAN APPLICATION? If so, then state:

**1.1.** All facts on which GOLDWATER based its contention, including, at the minimum, each false statement of fact, the reasons why GOLDWATER contends that each such statement was false, and the reasons why GOLDWATER found each such statement important in deciding whether to approve LOAN APPLICATION;

**1.2.** Legal name and CONTACT INFORMATION of each WITNESS who has personal first-hand knowledge of the facts stated in the answer to subpart 1.1 and a description of the means by which each WITNESS learned those facts;

**3.** Does GOLDWATER contend that ELIZAROV made false statements of fact to GOLDWATER during SETTLEMENT DISCUSSIONS that GOLDWATER found important in deciding what to do? If so, state:

**3.1.** All facts on which GOLDWATER based its contention, including, at the minimum, each false statement of fact, the reasons why GOLDWATER contends that each such statement was false, and what GOLDWATER would have done differently had ELIZAROV not made those statements;

**3.2.** Legal name and CONTACT INFORMATION of each WITNESS who has personal first-hand knowledge of the facts described the answer to subpart 3.1 and a description of the means by which each WITNESS learned those facts;

**3.3.** A description of all EVIDENCE that supports the existence of the facts stated in the answer to subpart 3.1; and

**3.4.** Legal name and CONTACT INFORMATION of each PERSON who currently has custody, possession, or control of each item of EVIDENCE stated in the answer to subpart 3.3.

**RESPONSE:** **Goldwater objects to Interrogatory No. 3 to the extent it is a contention interrogatory that potentially seeks attorney-client privileged and attorney-work product information. This matter is in the early stage of discovery, and Goldwater's views about the application of the facts to the relevant law are subject to change as discovery progresses. Goldwater further objects to this request to the extent it asks for information outside of Goldwater's possession, custody, or control, since evidence of the truthfulness or falsity of Elizarov's statements is likely to reside with Elizarov or with third parties. Goldwater further objects to this interrogatory's attempt to characterize the discussions between Goldwater and Elizarov leading up to Elizarov's sale of the Palm Springs House as "settlement discussions." In addition, Goldwater objects to this interrogatory as improperly compound, resulting in the total number of interrogatories exceeding the limits of Fed. R. Civ. P. 33(a)(1). Subject to and without waiving its objections,**

Goldwater answers as follows.  Elizarov misrepresented that the sale of the Palm Springs House would not yield enough proceeds to pay off Goldwater's lien in full, which was incorrect.  Elizarov misrepresented that a $109,000 mechanic's lien existed and would be paid off at closing.  ==Elizarov misrepresented that he intended to pay Goldwater $675,000 directly from the proceeds of the sale of the Palm Springs House.==  Elizarov also misrepresented in conversations with Goldwater employee Pete Hill that the sale had not occurred when it had in fact closed.

Evidence of these false statements, as well as other misrepresentations, can be ascertained through the business records being produced in response to Elizarov's discovery requests pursuant to Fed. R. Civ. P. 33(d).

==Goldwater employee Pete Hill communicated with Elizarov leading up to the sale of the Palm Springs House, has knowledge of the same, an==d can be contacted through Goldwater's counsel.

==4. Does GOLDWATER contend that GOLDWATER would have interfered with the sale of PALM SPRINGS HOUSE to Scott Howlett had ELIZAROV not promised to pay GOLDWATER $675,000.00? If so, state:==

4.1. All facts on which GOLDWATER based its contention, including, at the minimum, exactly what GOLDWATER would have done to interfere with the sale and how GOLDWATER would have accomplish these acts;

4.2. Legal name and CONTACT INFORMATION of all WITNESSES who have personal first-hand knowledge of the facts stated in the answer to subpart 4.1;

4.3. A description of all EVIDENCE supporting the existence of the facts stated in the answer to subpart 4.1; and

4.4. Legal name and CONTACT INFORMATION of each PERSON who currently has possession, custody, or control of each item of EVIDENCE stated in the answer to subpart 4.3.

**RESPONSE:**      Goldwater objects to Interrogatory No. 4 to the extent it is a contention interrogatory that potentially seeks attorney-client privileged and attorney-work product information.  This matter is in the early stage of discovery, and Goldwater's views about the application of the facts to the relevant law are subject to change as discovery progresses.   Goldwater objects to the term "interfered" as vague, because it is not reasonably clear what Elizarov contends would have amounted to interference.   In addition, Goldwater objects to this interrogatory as improperly compound, resulting in the total number of interrogatories exceeding the limits of Fed. R. Civ. P. 33(a)(1).   Subject to and without waiving his objections, Goldwater answers as follows:  Goldwater relied on Elizarov's assurances that Goldwater would receive a substantial payout following the sale of the Palm Springs House.  In the absence of these assurances, Goldwater would have sought to record its Deed of Trust prior to the sale of the Palm Springs House, although its efforts would have been frustrated by the fact that Elizarov made misrepresentations and failed to inform Goldwater of the date of the closing.

Evidence of these false statements, as well as other misrepresentations, can be ascertained through the business records being produced in response to Elizarov's discovery requests pursuant to Fed. R. Civ. P. 33(d).

Goldwater employee Pete Hill communicated with Elizarov leading up to the sale of the Palm Springs House, has knowledge of the same, and can be contacted through Goldwater's counsel.   Other relevant witnesses include Escrow of the West's corporate representative and the escrow agent specifically involved in this transaction, Andrea Cross.  Escrow of the West's address is 9440 S Santa Monica Blvd #310, Beverly Hills, CA 90210.

**5.** State the legal name and CONTACT INFORMATION of each PERSON who, as of February 2, 2021, March 25, 2021, and December 1, 2021, had custody, possession, or control of the DEED OF TRUST bearing ELIZAROV's original notarized signature.

**RESPONSE:  Goldwater objects to Interrogatory No. 5 as irrelevant and not likely to lead to the discovery of admissible evidence, because the identity of the individuals who possessed the original deed of trust on each of those days is not relevant to the claims and defenses at issue in this litigation.  Subject to and without waiving its objections, Goldwater states that the original deed of trust was located shortly after this litigation began in the files of Weststar Mortgage Corporation, who was servicing the loan, and the deed of trust was filed in the Riverside County Recorder's office on April 20, 2021.**

**6.** State the legal name and CONTACT INFORMATION of each PERSON that GOLDWATER hired in 2019 to record with Riverside County Clerk/Recorder DEED OF TRUST bearing ELIZAROV's original notarized signature.

**RESPONSE:  Goldwater objects to Interrogatory No. 6 to the extent it asks for information outside of Goldwater's possession, custody, or control.  ==First American Title Insurance Company ("First American"), with whom Elizarov interacted at the 2019 closing, was tasked with recording the Deed of Trust and would have the information requested in this interrogatory.==  Evidence of First American's role and can be ascertained through the business records being produced in response to Elizarov's discovery requests pursuant to Fed. R. Civ. P. 33(d).**

**7.** Does GOLDWATER contend that GOLDWATER suffered harm as a direct result of GOLDWATER's reliance on any false statements that ELIZAROV made in LOAN APPLICATION? If so, state:

**7.1.** All facts on which GOLDWATER based its contention, including, at the minimum, the statements relied on, the amount of damages, exactly how GOLDWATER calculated those damages, and how ELIZAROV's false statement directly caused those damages;

**of Goldwater's damages continues to grow as the loan accrues additional interest
and attorney's fees.**

**Evidence of the misrepresentations in Elizarov's forbearance application can
be ascertained from his loan file and business records being produced in response
to Elizarov's discovery requests pursuant to Fed. R. Civ. P. 33(d).**

**Goldwater employee Pete Hill has knowledge of Elizarov's forbearance
application and can be contacted through Goldwater's counsel.**

**9.** Does GOLDWATER contend that GOLDWATER suffered harm as a direct result of
GOLDWATER's reliance on any false statements that ELIZAROV made during
SETTLEMENT NEGOTIATIONS? If so, state:

**9.1.** All facts on which GOLDWATER based its contention, including, at
the minimum, the statements relied on, the amount of damages, exactly how
GOLDWATER calculated those damages, and how ELIZAROV's false statement
directly caused those damages;

**9.2.** Legal name and CONTACT INFORMATION of all  WITNESSES who
have personal first-hand knowledge of the facts stated in the answer to subpart 9.1 and a
description of the means by which each WITNESS discovered those facts;

**9.3.** A description of all EVIDENCE supporting the existence of the facts
stated in the answer to subpart 9.1; and

**9.4.** Legal name and CONTACT INFORMATION of each PERSON who
currently has possession, custody, or control of each item of EVIDENCE stated in the
answer to subpart 9.3.

**RESPONSE:  Goldwater objects to Interrogatory No. 9 to the extent it is a
contention interrogatory that potentially seeks attorney-client privileged and
attorney-work product information.  This matter is in the early stage of discovery,
and Goldwater's views about the application of the facts to the relevant law are
subject to change as discovery progresses.  Goldwater further objects to this**

---

interrogatory's attempt to characterize the discussions between Goldwater and Elizarov leading up to Elizarov's sale of the Palm Springs House as "settlement discussions," particularly because there was no dispute as to the validity or amount of the Note and Deed of Trust.  Fed. R. Evid. 408(a).  In addition, Goldwater objects to this interrogatory as improperly compound, resulting in the total number of interrogatories exceeding the limits of Fed. R. Civ. P. 33(a)(1).   Subject to and without waiving its objections, Goldwater answers as follows.  In reliance on Elizarov's false statements made leading up to the sale of the Palm Springs House, Goldwater delayed immediately recording the Deed of Trust.  Thereafter, the sale of the Palm Springs House closed and Elizarov retained all of the funds that should have been paid to Goldwater.  Rather than using those funds to satisfy Goldwater's loan in full, Elizarov misappropriated those funds to purchase real property in Florida and pay off a debt owed by Mr. Alekseyeff.  As a result, Goldwater contends that it has been damaged in the amount of at least $768,924.20, as of April 18, 2022, plus interest at a rate of $101.46 *per diem*.  Goldwater also contends that it has been damaged by being forced to expend significant attorneys' fees and litigation costs in bringing this litigation to seek to protect Goldwater's lien, which are recoverable as part of the total balance outstanding under the Note and Deed of Trust.  The amount of Goldwater's damages continues to grow as the loan accrues additional interest and attorney's fees.

Evidence of the misrepresentations in Elizarov's communications with Goldwater can be ascertained from the communications business records being produced in response to Elizarov's discovery requests pursuant to Fed. R. Civ. P. 33(d).

Goldwater employee Pete Hill has knowledge of Elizarov's communications with Goldwater leading up to the sale of the Palm Springs house and can be contacted through Goldwater's counsel.

prior written consent.  **Goldwater only learned that the sale of the Palm Springs House occurred on March 29, 2021.  Goldwater employee Pete Hill contacted Elizarov by phone that same day regarding the status of the closing and the proceeds from the sale, but Elizarov stated that the sale had not occurred and that he did not want to discuss the matter any further before ending the call.  Without a clear understanding of what had occurred, Goldwater thereafter sent a prelitigation demand letter to Elizarov on April 1, 2021, hoping to avoid litigation, but Elizarov failed to return any of the proceeds to Goldwater.**

**20.** Does GOLDWATER contend that as of November 1, 2021, GOLDWATER had information that lead GOLDWATER to believe that ELIZAROV made false statements in FORBEARANCE APPLICATION? If so, state:

> **20.1.** All such information, including the sources of the information;

> **20.2.** Legal name and CONTACT INFORMATION of all WITNESSES who provided the information described in response to subpart 20.1 to GOLDWATER, a description of the information each WITNESS provided, and the means by which each WITNESS learned the information;

> **20.3.** A description of all EVIDENCE that provided the information stated in the answer to subpart 20.1 to GOLDWATER; and

> **20.4.** Legal name and CONTACT INFORMATION of each PERSON who currently has custody, possession, or control of each item of EVIDENCE stated in the answer to subpart 20.3.

**RESPONSE:  Goldwater objects to Interrogatory No. 20 to the extent it is a contention interrogatory that potentially seeks attorney-work product information. This matter is in the early stage of discovery, and Goldwater's views about the application of the facts to the relevant law are subject to change as discovery progresses.  In addition, Goldwater objects to this interrogatory as improperly compound, resulting in the total number of interrogatories exceeding the limits of**

---

Omnibus Joint Exhibit Part E, page 1461

Dated:  April 22, 2022.

WAGNER HICKS PLLC
By: ____/s/ Derek M. Bast_____
         Sean C. Wagner, Esq.
         Derek M. Bast, Esq.

         And

HILBERT & SATTERLY LLP
By: /s/ Joseph A. Levota_____
         John Forest Hilbert, Esq.
         Joseph A. LeVota, Esq.

*ATTORNEYS FOR GOLDWATER BANK, N.A.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

GOLDWATER BANK, N.A.,

             Plaintiff,

    v.

ARTUR ELIZAROV, ET AL.

             Defendants.

Case No. 5:21-cv-00616-JWH-SPx

**VERIFICATION**

    I, Peter Hill, an authorized agent of Goldwater Bank, N.A., declare under penalty of perjury that I have reviewed the foregoing answers to interrogatories, and I am personally familiar with the information contained therein.  The information contained therein is true and correct to the best of my knowledge and investigation.

    This the 22nd day of April, 2022.

_____
Peter Hill

GOLDWATER'S RESPONSES TO ELIZAROV'S INTERROGATORIES - 30

Omnibus Joint Exhibit Part E, page 1463

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing by email and by United States Postal Service, addressed to the following person(s) at the following address(es):

Ilya Alekseyeff, Esq.
Loia, Inc. (APLC)
8721 Santa Monic Blvd., #119
West Hollywood, CA 90096
(213) 537-4592
Ilya@loia.legal
*Attorney for Defendant Artur Elizarov and Defendant pro per*

Howard D. Hall
Damian P. Richard
Hall Griffin, LLP
1851 East First Street, 10th Floor
Santa Ana, CA 92705-4052
hdhall@hallgriffin.com
drichard@hallgriffin.com
(714) 918-7000; Fax: (714) 918-6996
*Attorneys for Defendant Scott Howlett and Bank of the West*

Denis Shmidt
Nabil Bisharat
Orsus Gate, LLP
16 N Marengo Ave, Suite 316
Pasadena, CA 91101
(213) 973-2052
dshmidt@orsusgate.com
nbisrahat@orsusgate.cm
*Attorneys for Defendant Unison Agreement Corp.*

Date:  April 22, 2022

/s/ Derek M. Bast
Derek M. Bast

## EXHIBIT 74
## Transcript of Deposition of Goldwater's Second Rule 30(b)(6) Witness – Cory Bearden

```
 1                  UNITED STATES DISTRICT COURT
 2          CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION
 3
 4      _____
                                                )
 5      GOLDWATER BANK, N.A.,                    )
                                                 )
 6                        Plaintiff,             ) CASE NUMBER:
                                                 ) 21-cv-00616-
 7              vs.                              ) JWH-SP
                                                 )
 8      ARTUR ELIZAROV; UNISON AGREEMENT CORP.;  )
        SCOTT HOWLETT; BANK OF THE WEST; AND ILYA )
 9      ALEKSEYEFF,                              )
                                                 )
10                        Defendants.            )
        _____)
11
12
13
14          REMOTE ZOOM VIDEOTAPED DEPOSITION OF PERSON MOST
                KNOWLEDGEABLE AT GOLDWATER BANK, N.A.
15                         CORY BEARDEN
16                  Wednesday, May 31, 2023
17                          Volume I
18
19
20
21
22      REPORTED BY:
        JESSICA HONG
23      CSR No. 13776
24      Job No. 5941237
25      PAGES 1 - 364
```

                                                     Page 1

```
 1              UNITED STATES DISTRICT COURT

 2        CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

 3

 4     _____

                                              )
 5     GOLDWATER BANK, N.A.,                   )
                                              )
 6                    Plaintiff,              ) CASE NUMBER:
                                              ) 21-cv-00616-
 7          vs.                               ) JWH-SP
                                              )
 8     ARTUR ELIZAROV; UNISON AGREEMENT CORP.;  )
       SCOTT HOWLETT; BANK OF THE WEST; AND ILYA )
 9     ALEKSEYEFF,                            )
                                              )
10                    Defendants.             )
       _____)

11

12

13

14              Remote Zoom videotaped deposition of PERSON MOST

15     KNOWLEDGEABLE AT GOLDWATER BANK, N.A., CORY BEARDEN,

16     Volume I, taken on behalf of Defendants beginning at

17     10:10 a.m. and ending at 8:26 p.m. on Wednesday, May 31,

18     2023, before JESSICA HONG, Certified Shorthand Reporter

19     No. 13776.

20

21

22

23

24

25

                                                    Page  2
```

Omnibus Joint Exhibit Part E, page 1467

```
 1     APPEARANCES (ALL PARTIES APPEARING REMOTELY):
 2     FOR PLAINTIFF:
 3         HILBERT & SATTERLY LLP
           BY:  JOSEPH A. LEVOTA, ESQ.
 4         409 Camino Del Rio South, Suite 104
           San Diego, California 92108
 5         (619) 795-0300
 6         WAGNER HICKS PLLC
           BY:  ABBEY M. KRYSAK, ESQ.
 7              SEAN C. WAGNER, ESQ.
           831 East Morehead Street, Suite 860
 8         Charlotte, North Carolina 28202
           (704) 705-7538
 9
       FOR DEFENDANT AND CROSS-COMPLAINANT SCOTT HOWLETT AND
10     DEFENDANT BMO HARRIS BANK N.A., SUCCESSOR BY MERGER TO
       BANK OF THE WEST:
11
           HALL GRIFFIN LLP
12         BY:  JEREMY T. KATZ, ESQ.
                KASANDRA C. GOLDBERG, ESQ.
13         1851 East First Street, 10th Floor
           Santa Ana, California 92705
14         (714) 918-7000
15     FOR DEFENDANT AND CROSS-DEFENDANT ARTUR ELIZAROV, AND
       DEFENDANT ILYA ALEKSEYEFF (IN PRO PER):
16
           LOIA, INC.(APLC)
17         BY:  ILYA ALEKSEYEFF, ESQ.
           727 West 7th Street, PH 1-13
18         Los Angeles, California 90017
           (213) 537-4592
19
20
21     ALSO PRESENT:
22         JENNIFER MCKAY - VIDEOGRAPHER
23
24
25
```

Page  3

Omnibus Joint Exhibit Part E, page 1468

```
 1                    I N D E X
 2     WITNESS                     EXAMINATION
 3     CORY BEARDEN
 4     Volume I
 5                        BY MR. KATZ            7, 340
 6                        BY MR. ALEKSEYEFF     195, 350
 7                        BY MS. KRYSAK             269
 8
 9
10                        EXHIBITS
11     NUMBER              DESCRIPTION              PAGE
12     Exhibit 4     Preliminary report 2/18/21       320
13     Exhibit 5     Amended preliminary report 3/3/21  319
14     Exhibit 6     Email chain EOTW_000164-180       157
15     Exhibit 7     Request for demand 3/3/21         121
16     Exhibit 24    Unison Homebuyer Uniform Subordination
                     Agreement 7/30/19                 90
17
       Exhibit 46    Email chain GOLDWATER_001210-1267  153
18
       Exhibit 51    Email chain GOLDWATER_001148-1149  345
19
       Exhibit 53    Email chain GOLDWATER_001151-1152  167
20
       Exhibit 67    Email chain GOLDWATER_001172-1173  177
21
       Exhibit 102   Uniform Residential Loan Application
22                   7/3/19                            200
23     Exhibit 104   Uniform Residential Loan Application
                     7/31/19                           226
24
       Exhibit 131   Master Estimated Settlement
25                   Statement 3/30/21                 333

                                          Page  4
```

```
 1                      EXHIBITS (CONT.)
 2      Exhibit 139   Instructions to Escrow/Title/Closing
                      Agent GOLDWATER_001677-1681           49
 3
        Exhibit 143   Letter from Goldwater to First
 4                    American Title 3/30/21               181
 5      Exhibit 145   Closing Protection Letter 7/29/19    343
 6      Exhibit 146   Email 3/25/21 Unison information     146
 7      Exhibit 150   Funding requirements                 81
 8      Exhibit 151   Subpoena to testify 12/5/22          196
 9      Exhibit 152   Letter from Alekseyeff 7/9/19        220
10      Exhibit 153   Seller's Final Settlement
                      Statement 1/19/18                    224
11
        Exhibit 154   Mutual Release and Settlement
12                    Agreement 5/17/19                    238
13      Exhibit 155   Email chain GOLDWATER_001444-1450    244
14      Exhibit 156   MERS report GOLDWATER_001765         280
15      Exhibit 157   General ledger 12/31/21              280
16      Exhibit 158   Email 3/4/21 GOLDWATER_001121        258
17      Exhibit 159   Email chain BOTW 0002259-2263        258
18      Exhibit 160   Preliminary report 2/18/21           310
19      Exhibit 161   Preliminary report 3/3/21            312
20
21                   INSTRUCTION NOT TO ANSWER
22                        PAGE   LINE
23                         37     20
                          128      5
24                        128     15
                          129     13
25

                                                    Page  5
```

Omnibus Joint Exhibit Part E, page 1470

```
 1                    Zoom, Wednesday, May 31, 2023

 2                         10:10 a.m.

 3

 4             THE VIDEOGRAPHER:  Good morning.  We are on the

 5       record at 10:10 on May 31st, 2023.  This is media unit      10:10

 6       one in the video-recorded deposition of Goldwater PMK,

 7       Cory Bearden, in the matter of Goldwater Bank, N.A.

 8       versus Elizarov, et al., filed in the United States

 9       District Court, Central District of California, Eastern

10       Division.  Case Number is 21-cv-00616.  This deposition     10:10

11       is being conducted remotely using virtual technology.  My

12       name is Jennifer McKay representing Veritext and I am the

13       videographer.  The court reporter is Jessica Hong, also

14       from Veritext.  Counsel, please introduce yourselves and

15       state whom you represent.                                   10:11

16             MR. KATZ:  Good morning, my name is Jeremy Katz.

17       I represent defendants, Scott Howlett and Bank of the

18       West.  And with me in the room and off camera is my

19       associate, Kasandra Goldberg.

20             MR. ALEKSEYEFF:  And good morning -- am I on?         10:11

21       Yes.  Good morning, my name is Ilya Alekseyeff.  I

22       represent the defendant, Artur Elizarov, as well as

23       myself who is also a defendant.  Good morning.

24             MR. LEVOTA:  Good morning, Joseph LeVota for

25       Goldwater Bank.                                             10:11
```

                                                        Page 6

```
 1              MS. KRYSAK:  Good morning, Abbey Krysak for

 2      Goldwater Bank.

 3              MR. WAGNER:  Good morning, Sean Wagner for

 4      Goldwater Bank.

 5              THE VIDEOGRAPHER:  Thank you.  Will the court   10:11

 6      reporter please swear in the witness?

 7

 8                           CORY BEARDEN,

 9               having been administered an oath,

10              was examined and testified as follows:

11

12                           EXAMINATION

13      BY MR. KATZ:

14          Q   Good morning, Mr. Bearden.

15          A   Good morning.                                 10:12

16          Q   Can you please state and spell your name for the

17      record?

18          A   My name is Cory Bearden.  It's spelled C-o-r-y,

19      last name Bearden, B-e-a-r-d-e-n.

20          Q   Are you employed by Goldwater Bank?           10:12

21          A   I am.

22          Q   What's your current role?

23          A   My position at Goldwater Bank is the Mortgage

24      Division President.

25          Q   How long have you been the Mortgage Division   10:12
```

Page 7

```
 1        would be the loan documents that have been executed for

 2        the extension of credit to Mr. Elizarov.

 3             Q    Would that include a promissory note?

 4             A    I would assume it would, yes.

 5             Q    Would that include a deed of trust for the loan?  10:34

 6             A    Historically, yes.

 7             Q    Do you know if it -- if the email from

 8        Mr. Edwards regarding the transfer of servicing of

 9        Mr. Elizarov's loan referred to any deed of trust?

10             A    Not that I recall.                                10:34

11             Q    How does Goldwater provide loan documents like a

12        promissory note or a deed of trust to Weststar when it

13        service transfers a loan like Mr. Elizarov's loan?

14                  MS. KRYSAK:  Objection, scope.

15                  THE WITNESS:  The documents are housed in a loan  10:35

16        -- the documents are housed in a specific area that

17        Weststar has access to being our subservicer.

18        BY MR. KATZ:

19             Q    What specific area is that?

20                  MS. KRYSAK:  Objection, form, scope.             10:35

21                  THE WITNESS:  Can you define "area"?  I'm not

22        understanding your question.

23        BY MR. KATZ:

24             Q    You said that the documents are housed in a

25        certain area.  What do you mean by that?                    10:35
```

Page 25

1          A    A loan -- a loan -- a document storage facility.

2          Q    What storage facility is that?

3          A    The system is called BlitzDocs.

4          Q    Who loads the documents -- the loan documents

5     like a promissory note or a deed of trust into BlitzDocs?  10:35

6                MS. KRYSAK:  Objection, form, scope.

7                THE WITNESS:  The loan documents would be added

8     to the BlitzDocs system after closing.

9     BY MR. KATZ:

10         Q    And who would add those documents into BlitzDocs  10:36

11    after closing?

12               MS. KRYSAK:  Objection, form, scope.

13               THE WITNESS:  Traditionally, that would be

14    someone in a post-closing department.

15    BY MR. KATZ:                                              10:36

16         Q    Someone in Goldwater's post-closing department?

17         A    Correct.

18         Q    Just so that I understand, someone from

19    Goldwater's post-closing department loads the executed

20    loan docs into the BlitzDocs system where Weststar can    10:36

21    access them?

22               MS. KRYSAK:  Objection, form, scope.

23               THE WITNESS:  Someone from our post-closing

24    department -- one of our team members in post-closing,

25    once the loan package is shipped by the title company     10:37

                                                         Page 26

```
 1      Second page, third page, fourth page, fifth page.
 2      Scrolling back up.  I'll zoom in near the top.
 3          A    Thank you.
 4          Q    Take a look at this and let me know if there's
 5      any other parts of the document that you'd like to see      11:20
 6      because I'd like you to confirm for me whether this is
 7      the closing instructions for Mr. Elizarov's loan that you
 8      reviewed as part of your preparation for today.
 9          A    Okay.  It has the correct loan number and it has
10      the correct name.                                            11:21
11          Q    When you say "the correct loan number," is that
12      the loan number in the upper right corner of Page 1
13      starting with 909?
14          A    216931, that is correct.
15          Q    How did you become familiar with the loan number  11:21
16      for Mr. Elizarov's loan?
17          A    In my review of the documents and then just
18      previous discussions around Mr. Elizarov's loan.
19          Q    Do you have any familiarity with the loan
20      numbers that Goldwater generally assigns to residential     11:21
21      real estate loans?
22              MS. KRYSAK:  Objection, form, scope.
23              THE WITNESS:  Familiarity, yes.  Is there a
24      specific question that you have in regards to the loan
25      number?                                                      11:21
```

Page 50

Omnibus Joint Exhibit Part E, page 1475

1           MR. KATZ:  Yeah.   Does Goldwater's residential

2     loans generally start with 909?

3           MS. KRYSAK:  Objection, form, scope.

4           THE WITNESS:   The answer to that would be yes.

5     BY MR. KATZ:                                          11:22

6        Q    Does Goldwater have any loans for residential

7     loans that would start with a 902?

8           MS. KRYSAK:  Objection, form, scope.

9           THE WITNESS:  I'm not aware of any.

10    BY MR. KATZ:                                          11:22

11       Q    I'm just going to zoom in on it for a second.

12    By my count, the loan number for Mr. Elizarov's loan has

13    nine digits; correct?

14       A    That's what that reveals, yes.

15       Q    Is that generally consistent with Goldwater's   11:22

16    practices for residential real estate loans, assigning a

17    nine-digit loan number?

18          MS. KRYSAK:  Objection, form, scope.

19          THE WITNESS:  That is generally correct.  That

20    is -- that is accurate.                               11:22

21    BY MR. KATZ:

22       Q    To your knowledge, has Goldwater ever assigned

23    an eight-digit loan number to one of its real estate lo

24    -- real estate -- real estate secured loans?

25          MS. KRYSAK:  Objection, form, scope.           11:23

Page 51

1          THE WITNESS:  To my knowledge, not an assignment

2     of an eight-digit number.  Possibly by a clerical number,

3     but not by an assignment.

4     BY MR. KATZ:

5          Q    Okay.  And I'm just going to ask a slightly          11:23

6     different variation of the question.

7          A    Okay.

8          Q    Are you aware of Goldwater ever intentionally

9     applying an eight-digit number to a residential real

10    estate secured loan like Mr. Elizarov's loan?          11:23

11          MS. KRYSAK:  Objection, form, scope.

12          THE WITNESS:  I am not aware of any intentions

13    to assign an eight-digit number to any Goldwater Bank

14    loan.

15    BY MR. KATZ:          11:23

16          Q    So if someone had called up Goldwater and said,

17    "Do you have a residential real estate loan that starts

18    with 902," what would Goldwater's answer have been?

19          MS. KRYSAK:  Objection, form, scope.

20          THE WITNESS:  Well, I would think that any          11:23

21    common person would say, "Can you provide the rest of the

22    numbers associated with the loan number that you're

23    inquiring about," to confirm what the loan number

24    actually is.

25          MR. KATZ:  So if someone had asked -- had called  11:24

Page 52

1        Q    How did you become familiar with or how did you

2    become somewhat familiar with a company called Unison?

3             MS. KRYSAK:   Objection, form.

4             THE WITNESS:   As a part of this deposition and

5    this loan.                                              12:10

6    BY MR. KATZ:

7        Q    Other than information provided to you from your

8    attorneys, did you do any independent research into who

9    Unison is or what their relation to Goldwater is?

10            MS. KRYSAK:   Objection, form.            12:11

11            THE WITNESS:   I did no independent research

12   additionally.

13   BY MR. KATZ:

14       Q    And did you talk to anyone other than

15   Goldwater's attorneys to determine who Unison is and   12:11

16   their relationship is with Goldwater?

17       A    I did not.

18       Q    What is the relationship between Goldwater and

19   Unison as it relates to subordination agreement at issue

20   in this action?                                       12:11

21       A    Can you be a little bit more specific in your

22   questioning when you say "relationship"?

23       Q    Is there a relationship between Goldwater and

24   Unison relating to the subordination agreement at issue

25   in this action?                                       12:11

                                                   Page 87

1          A     From my assumption, yes, we're the senior lender

2     to Unison's second lien.

3          Q     Have you seen what you've referred to as

4     Unison's second lien?

5          A     I have seen a portion of the subordination          12:12

6     agreement.

7          Q     And what -- did anything about that

8     subordination agreement strike you as being odd or

9     unusual?

10               MS. KRYSAK:  Objection, form, scope.               12:12

11               THE WITNESS:  There was not a lender -- a senior

12     lender listed for.

13     BY MR. KATZ:

14          Q     Are there any policies or procedures in place at

15     Goldwater regarding the preparation, execution -- the      12:12

16     preparation of subordination agreements?

17               MS. KRYSAK:  Objection, scope.

18               THE WITNESS:  I have no written policies or

19     procedures in regards to preparing subordination

20     agreements as we're a first lien lender and we are not an   12:12

21     -- we are not associated with Unison.

22     BY MR. KATZ:

23          Q     Does Goldwater do anything to double check to

24     see if the information in the Unison's subordination

25     agreement at issue in this action was correct?             12:13

                                                      Page 88

```
 1        other because he seems to think that that's a Goldwater

 2        loan number.

 3               MR. LEVOTA:  Excuse me?  That has not been the

 4        testimony at all during this deposition.  What are you

 5        saying?                                                 12:18

 6               MR. KATZ:  Okay, well, then let me ask -- let me

 7        ask directly then.  That loan number for the senior

 8        lender starting in 902, that is not Goldwater's loan

 9        number for Mr. Elizarov's loan; correct?

10               MR. LEVOTA:  You literally just asked that       12:18

11        question like two minutes ago.  How many times are you

12        going to ask -- and you asked it like 20 minutes ago when

13        we were originally going over the loan numbers and how

14        they're nine digits they begin with 909.  I mean, how

15        many times are you going did ask this?                  12:18

16               MR. KATZ:  Well, at this point, it'd be faster

17        if he'd just answer it rather than you fighting me.

18               MR. LEVOTA:  Oh, okay.  Let's go on, Mr. Katz,

19        it's your deposition.

20        BY MR. KATZ:                                            12:18

21           Q    So the loan number listed in this subordination

22        agreement for the senior loan, that is not Goldwater's

23        loan number for Mr. Elizarov's loan; correct?

24               MS. KRYSAK:  Objection, form.  Please go ahead

25        and answer, Mr. Bearden.                               12:19
```

Page 93

1            THE WITNESS:  That is not.  We do not have a 902

2    loan number at Goldwater Bank.

3    BY MR. KATZ:

4        Q    Did Goldwater do anything to check whether the

5    loan number in the senior -- for the senior lender in      12:19

6    this subordination agreement was correct prior to closing

7    the loan with Mr. Elizarov?

8            MS. KRYSAK:  Objection, form.

9            THE WITNESS:  So please repeat your question

10   again.  It seems like we're reverting back to closing the   12:19

11   loan at this point.

12   BY MR. KATZ:

13       Q    Well, at some -- at one -- at some point,

14   Goldwater closed and funded its loan to Mr. Elizarov?

15       A    That is correct.                                   12:19

16       Q    Okay.  Prior to that point, did Goldwater do

17   anything to confirm whether the information in this

18   subordination agreement regarding the senior lender was

19   correct?

20           MS. KRYSAK:  Objection, form.                       12:20

21           THE WITNESS:  As I stated earlier, Unison is a

22   completely different company than us.  Goldwater Bank is

23   independent of them.  I do know that Unison has its own

24   closing instructions as we have our closing instructions

25   which we provide to title and make them responsible for     12:20

                                                    Page 94

Omnibus Joint Exhibit Part E, page 1481

1    closing the loan based upon the instructions and

2    verifying that all the information is true and correct.

3    BY MR. KATZ:

4        Q    Did Goldwater provide any instructions to Unison

5    regarding how to fill out the information in this            12:20

6    subordination agreement?

7            MS. KRYSAK:  Objection, form, scope.

8            THE WITNESS:  Again, not that I'm aware of.  We

9    don't prepare subordination agreements.

10   BY MR. KATZ:                                                  12:20

11       Q    I didn't ask you if Goldwater prepared it, I

12   asked if you gave any -- if Goldwater gave any

13   instructions to Unison about what information to put in

14   the subordination agreement?

15           MS. KRYSAK:  Objection, form.                         12:21

16           THE WITNESS:  Again, not I'm aware of.

17   BY MR. KATZ:

18       Q    Did Goldwater obtain a copy of this

19   subordination agreement at any time in 2019?

20           MS. KRYSAK:  Objection, form, scope.            12:21

21           THE WITNESS:  I cannot confirm the date when it

22   was obtained.

23   BY MR. KATZ:

24       Q    Did Goldwater have any communications with

25   Unison in 2019 about the information to be included in       12:21

                                                    Page 95

1           Q    Is that faxed payoff quote from Weststar to

2      Escrow of the West a part, inside of, or contained in

3      Goldwater's loan file for Mr. Elizarov's loan?

4                MS. KRYSAK:  Objection, form.

5                THE WITNESS:  If you would give me some time, I     01:46

6      would do research and locate that information.

7                MR. KATZ:  How much time do you need?

8                THE WITNESS:  Ten minutes.

9                MR. KATZ:  Let's take ten.

10               THE VIDEOGRAPHER:  Off the record, the time is     01:46

11     1:46.

12               (Break in the proceedings.)

13               THE VIDEOGRAPHER:  Back on the record, the time

14     is 2:02.

15     BY MR. KATZ:                                                 02:02

16          Q    All right.  Mr. Bearden, while we were on break,

17     did you have a chance to look through Goldwater's loan

18     file?

19          A    I reviewed my notes in regards to this and thank

20     you for giving me just a few minutes to kind of clarify     02:02

21     and make sure I'm on the right track to you guys.  I want

22     to provide the most clear and concise information I can.

23     To go back, I'd like to share with you that this was a

24     Weststar document from our subservicer provided --

25     providing the payoff quote.                                 02:03

                                                       Page 127

1      Q     Okay.  My question is is that Weststar document

2    a part of Goldwater's loan file?

3      A     No, sir, that would be a part of the Weststar

4    documents, the subservicer.

5      Q     So how did you get that document?                    02:03

6            MS. KRYSAK:  Objection, form, attorney-client

7    privilege.  Mr. Bearden, please do not answer the

8    question.

9    BY MR. KATZ:

10     Q     Did Goldwater get that document from someone         02:03

11   other than its attorneys?

12     A     I can't answer that question.  I know that this

13   was a part of my preparation in my notes.  I'd have to

14   defer to my counsel to answer that.

15     Q     When did that faxed payoff quote or the email        02:04

16   purporting to fax the payoff quote, when did that

17   document come into West -- into Goldwater's possession?

18           MS. KRYSAK:  Objection, attorney-client

19   privilege.  Mr. Bearden, you can answer to the extent you

20   would like to provide a response as to when it came into  02:04

21   your possession.

22           THE WITNESS:  Into my possession, just in the

23   last day or so in my note preparation.

24   BY MR. KATZ:

25     Q     Did Goldwater have possession of that document       02:04

Page 128

prior to a day or two ago when it came into your personal possession?

A I can only speak to when I reviewed the document, I can't speak to when the document was actually received. 02:04

Q When did Goldwater learn that this eFaxed payoff quote existed?

A Again, I can't speak to the fact of when they actually learned about it. You would have to refer to counsel on that. I can share with you when I learned 02:05 about it was in my note review as of the last -- as of yesterday.

Q How did Goldwater learn that this eFaxed -- supposed eFaxed Weststar document existed?

MS. KRYSAK: Objection, attorney-client 02:05 privilege. Mr. Bearden, please don't answer to the extent that it would disclose attorney-client privileged communications.

THE WITNESS: Would you like to pose the question again, sir? 02:05

BY MR. KATZ:

Q Other than through Goldwater's counsel, did Goldwater have any -- did the document come -- sorry, did the -- did the eFaxed payoff demand from Weststar that you referred to come into Goldwater's possession by any 02:06

1    means other than through Goldwater's counsel?

2        A    I can't comment on that, sir.  The first time

3    I've reviewed the document was yesterday.

4        Q    Other than the eFax -- other than the eFaxed

5    document from Weststar that you -- first came into your     02:06

6    possession approximately a day or two ago, are there any

7    other communications in which Goldwater or anyone else

8    gave notice of Goldwater's lien to Escrow of the West?

9            MS. KRYSAK:  Objection, form, scope.

10            THE WITNESS:  What topic are you on, sir?          02:07

11            MR. KATZ:  Well, I'm trying to figure out this

12    new document which you referenced which we've never seen

13    before but for Ms. Krysak circulating a copy last night

14    right before the deposition, so I'm trying to figure out

15    the origin of that since you're the one who raised it      02:07

16    during the deposition.  I'm trying to figure out its

17    providence, where it came from, how, how it got into

18    Goldwater's possession, things like that.  So other than

19    that, are there any other communications by which -- that

20    you know of that Escrow of the West supposedly gained      02:07

21    knowledge of Goldwater's lien or notice of Goldwater's

22    lien?

23            MS. KRYSAK:  Objection, form, scope.

24            THE WITNESS:  To confirm your question, you're

25    asking if there's any other avenues that Bank -- sorry,    02:08

Page 130

Omnibus Joint Exhibit Part E, page 1486

```
 1            MS. KRYSAK:  Objection, form, scope.

 2            THE WITNESS:  I can't confirm on what somebody

 3     would have responded to.  I would be with the -- with the

 4     name of the client, they would have been able to tie that

 5     together with the appropriate loan number even missing    02:09

 6     the digit.

 7     BY MR. KATZ:

 8        Q    Yeah, that wasn't my question though.  It was if

 9     someone read the loan number listed in the subordination

10     agreement to Goldwater and said, "Do you have a loan with  02:09

11     that number," Goldwater's truthful response would be,

12     "No, we don't have a loan with that number;" correct?

13            MS. KRYSAK:  Objection, form, scope.

14            MR. KATZ:  You can answer.

15            THE WITNESS:  I don't have a loan with that       02:10

16     number.

17     BY MR. KATZ:

18        Q    And, again, Goldwater did nothing to confirm

19     whether the information in the subordination agreement

20     was correct?                                             02:10

21            MS. KRYSAK:  Objection, form.

22            THE WITNESS:  I can't confirm that nothing was

23     done, sir.

24     BY MR. KATZ:

25        Q    Did Goldwater know that a subordination          02:10
```

Page 132

Omnibus Joint Exhibit Part E, page 1487

1    Anything else before we go off the record?

2            THE VIDEOGRAPHER:  Jessica?

3            THE REPORTER:  I just need to get copy orders on

4    the record if you have one.  Obviously, Mr. Katz, you get

5    your copy.                                              08:25

6            MR. ALEKSEYEFF:  I think -- unless Mr. Katz has

7    changed his mind, I think Mr. Katz and I were going to

8    share the cost of the depo.

9            THE REPORTER:  Okay, no problem.  That's it

10   then.                                                   08:26

11           MR. LEVOTA:  I will order a copy.

12           THE REPORTER:  Okay.  Okay, that's good.

13   Jennifer, we can go off.

14           THE VIDEOGRAPHER:  All right.  This marks the

15   end of today's deposition.  Going off the record, the    08:26

16   time is 8:26.

17           (The deposition concluded at 8:26 p.m.)

18

19

20

21

22

23

24

25

                                                    Page 359

Omnibus Joint Exhibit Part E, page 1488

1

2

3

4          I, CORY BEARDEN, do hereby declare under penalty

5     of perjury that I have read the foregoing transcript;

6     that I have made any corrections as appear noted, in ink,

7     initialed by me, or attached hereto; that my testimony as

8     contained herein, as corrected, is true and correct.

9          EXECUTED this _____ day of _____,

10    2023, at _____, _____.

11                    (City)                    (State)

12

13

14

15

16              _____

17              CORY BEARDEN

18              VOLUME I

19

20

21

22

23

24

25

                                        Page 360

```
 1              I, the undersigned, a Certified Shorthand

 2     Reporter of the State of California, do hereby certify:

 3              That the foregoing proceedings were taken before

 4     me at the time and place therein set forth; that any

 5     witnesses in the foregoing proceedings, prior to

 6     testifying, were administered an oath; that a record of

 7     the proceedings was made by me using machine shorthand

 8     which was thereafter transcribed under my direction;

 9     further, that the foregoing is a true record of the

10     testimony given.

11              Further, that if the foregoing pertains to the

12     original transcript of a deposition in a Federal Case,

13     before completion of the proceedings, review of the

14     transcript [ X ] was [ ] was not requested.

15              I further certify I am neither financially

16     interested in the action nor a relative or employee of

17     any attorney or any party to this action.

18              IN WITNESS THEREOF, I have this date subscribed

19     my name:  June 15, 2023.

20

21

22

23

24     JESSICA HONG

25     CSR No. 13776
```

Page 361

Omnibus Joint Exhibit Part E, page 1490

```
 1    JOSEPH A. LEVOTA, ESQ.

 2    jlevota@hscallaw.com

 3                                      JUNE 15, 2023

 4    RE: OLDWATER BANK, N.A. v. ARTUR ELIZAROV

 5    MAY 31, 2023, CORY BEARDEN, PMK, JOB NO. 5941237

 6    The above-referenced transcript has been

 7    completed by Veritext Legal Solutions and

 8    review of the transcript is being handled as follows:

 9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10       to schedule a time to review the original transcript at

11       a Veritext office.

12    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13       Transcript - The witness should review the transcript and

14       make any necessary corrections on the errata pages included

15       below, noting the page and line number of the corrections.

16       The witness should then sign and date the errata and penalty

17       of perjury pages and return the completed pages to all

18       appearing counsel within the period of time determined at

19       the deposition or provided by the Code of Civil Procedure.

20    __ Waiving the CA Code of Civil Procedure per Stipulation of

21       Counsel - Original transcript to be released for signature

22       as determined at the deposition.

23    __ Signature Waived - Reading & Signature was waived at the

24       time of the deposition.

25
```

                                                          Page 362

1    _X_Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF

2       Transcript - The witness should review the transcript and

3       make any necessary corrections on the errata pages included

4       below, noting the page and line number of the corrections.

5       The witness should then sign and date the errata and penalty

6       of perjury pages and return the completed pages to all

7       appearing counsel within the period of time determined at

8       the deposition or provided by the Federal Rules.

9    __ Federal R&S Not Requested - Reading & Signature was not

10      requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 363

Omnibus Joint Exhibit Part E, page 1492

```
 1    OLDWATER BANK, N.A. v. ARTUR ELIZAROV

 2    CORY BEARDEN, PMK, JOB NO. 5941237

 3                    E R R A T A   S H E E T

 4    PAGE_____ LINE_____ CHANGE_____

 5    _____

 6    REASON_____

 7    PAGE_____ LINE_____ CHANGE_____

 8    _____

 9    REASON_____

10    PAGE_____ LINE_____ CHANGE_____

11    _____

12    REASON_____

13    PAGE_____ LINE_____ CHANGE_____

14    _____

15    REASON_____

16    PAGE_____ LINE_____ CHANGE_____

17    _____

18    REASON_____

19    PAGE_____ LINE_____ CHANGE_____

20    _____

21    REASON_____

22

23    _____      _____

24    WITNESS                                   Date

25
```

Page 364

Omnibus Joint Exhibit Part E, page 1493

# **EXHIBIT 75**
# **Seller's Estimated Settlement Statement Dated 03/23/21**



**ESCROW OF THE WEST**

9440 Santa Monica Blvd., #310
Beverly Hills, CA 90210

Phone: (310) 402-5555
Fax: (310) 402-5556
www.escrowofthewest.com

### SELLER'S ESTIMATED SETTLEMENT STATEMENT

| | | | |
|---|---|---|---|
| **PROPERTY:** | 291 W. Overlook Road<br>Palm Springs, CA 92264 | **DATE:** | March 23, 2021 |
| **SELLER:** | Artur Elizarov | **CLOSING DATE:**<br>**ESCROW NO.:** | March 26, 2021<br>02-035523-AC |

| | DEBITS | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Total Consideration | | 1,355,000.00 |
| | | |
| **PAYOFF CHARGES - Unison Milgard Holdings LLC** | | |
| **[Total Payoff $491,000.00]** | | |
| Principal Balance | 491,000.00 | |
| | | |
| **PRORATIONS/ADJUSTMENTS** | | |
| County Taxes at $5,819.60/semi-annually from 03/26/2021 to 07/01/2021 | | 3,071.46 |
| | | |
| **COMMISSION CHARGES** | | |
| Keller Williams | 33,875.00 | |
| Compass | 33,875.00 | |
| | | |
| **OTHER DEBITS/CREDITS** | | |
| Rudy's Termite and Pest Control for Termite Report/Work | 95.00 | |
| Old Republic Home Protection Inc. Home Warranty | 900.00 | |
| Property ID for Natural Hazard Disclosure Report | 99.00 | |
| | | |
| **TITLE/TAXES/RECORDING CHARGES - Orange Coast TItle** | | |
| Title - Owner's Title Insurance | 2,761.00 | |
| Title - Reconveyance Fee | 10.00 | |
| Title - Sub Escrow Fee | 62.50 | |
| Recording Grant Deed | 50.00 | |
| Transfer Tax - County to Riverside County | 1,490.50 | |
| Property Taxes (2nd Install) to Riverside County Tax Collector | 5,819.60 | |
| | | |
| **ESCROW CHARGES - Escrow of the West** | | |
| Title - Escrow Fee | 3,060.00 | |
| Title - Wire Fee | 25.00 | |
| Title - Overnight Fee | 75.00 | |
| Title - Admin Fee | 250.00 | |
| Title - Archive Fee | 50.00 | |
| Title - Messenger/Handling Fee | 100.00 | |
| | | |
| **Net Proceeds** | 784,473.86 | |
| | | |
| **TOTAL** | $ 1,358,071.46 | $ 1,358,071.46 |

### THIS IS AN ESTIMATE ONLY AND FIGURES ARE SUBJECT TO CHANGE

DocuSigned by:

*Artur Elizarov*
907B5A52578340C...
Artur Elizarov

# EXHIBIT 76
# Master Estimated Settlement Statement
# Dated 03/25/21



9440 Santa Monica Blvd., #310
Beverly Hills, CA 90210

Phone:  (310) 402-5555
Fax:  (310) 402-5556
www.escrowofthewest.com

### MASTER ESTIMATED SETTLEMENT STATEMENT

| | |
|---|---|
| PROPERTY: | 291 W. Overlook Road<br>Palm Springs, CA 92264 |
| BUYER: | Scott Howlett |
| SELLER: | Artur Elizarov |

| | |
|---|---|
| CLOSING/RECORD DATE: | March 30, 2021 |
| ESCROW NO.: | 02-035523-AC |

| SELLER | | | BUYER | |
|---|---|---|---|---|
| **DEBITS** | **CREDITS** | | **DEBITS** | **CREDITS** |
| | | **FINANCIAL CONSIDERATION** | | |
| | 1,355,000.00 | Total Consideration | 1,355,000.00 | |
| | | Deposit from Mr Scott J Howlett | | 40,650.00 |
| | | New 1st Trust Deed - Bank of the West | | 1,084,000.00 |
| | | | | |
| | | **PAYOFF CHARGES - Unison Milgard Holdings LLC**<br>**[Total Payoff $491,000.00]** | | |
| 491,000.00 | | Principal Balance | | |
| | | | | |
| | | **PAYOFF CHARGES - Journeyman Construction (Mechanic Lien)**<br>**[Total Payoff $107,270.00]** | | |
| 107,270.00 | | Principal Balance | | |
| | | | | |
| | | **LOAN INFORMATION - Bank of the West**<br>**[Charges $6,116.51]** | | |
| | | Appraisal Fee | 605.00 | |
| | | Credit Report | 22.65 | |
| | | Discount Fee | 4,065.00 | |
| | | Tax Service Fee | 175.00 | |
| | | Verification Fees | 47.35 | |
| | | Admin Fee | 895.00 | |
| | | MERS Registration Fee | 11.95 | |
| | | Flood Certification | 5.00 | |
| | | Interest at $96.5200/day from 03/29/2021 to 04/01/2021 | 289.56 | |
| | | | | |
| | | **PRORATIONS/ADJUSTMENTS** | | |
| | 2,942.13 | County Taxes at $5,819.60/semi-annually from 03/30/2021 to 07/01/2021 | 2,942.13 | |
| | | | | |
| | | **COMMISSION CHARGES** | | |
| 33,875.00 | | Keller Williams | | |
| | | Credit from Keller Williams for Credit to Buyer for Closing Costs | | 2,000.00 |
| 33,875.00 | | Compass | | |
| | | Credit from Compass for Credit to Buyer for Closing Costs | | 5,000.00 |
| | | | | |
| | | **OTHER DEBITS/CREDITS** | | |
| | | State Farm for Homeowner's Insurance | 2,090.00 | |
| | | Notary Public for Signing Service | 300.00 | |
| 95.00 | | Rudy's Termite and Pest Control for Termite Report/Work | | |
| 900.00 | | Old Republic Home Protection Inc. Home Warranty | | |
| 99.00 | | Property ID for Natural Hazard Disclosure Report | | |
| | | | | |
| | | **TITLE/TAXES/RECORDING CHARGES - Orange Coast Title** | | |
| 2,761.00 | | Title - Owner's Title Insurance (optional) | | |
| | | Title - Lender's Title Insurance | 1,232.00 | |
| 10.00 | | Title - Reconveyance Fee | 10.00 | |
| 62.50 | | Title - Sub Escrow Fee | 62.50 | |



EXHIBIT
131

BOTW 0002931

Closing Date:  March 30, 2021
Date:  March 25, 2021

Escrow No.:  02-035523-AC
Printed: March 25, 2021   01:16pm

Page 2 of 2:

| | SELLER | | | BUYER | |
| | DEBITS | CREDITS | | DEBITS | CREDITS |
|---|---|---|---|---|---|
| | | | Title - Endorsement Fees | 100.00 | |
| | 50.00 | | Recording Grant Deed | | |
| | | | Recording Trust Deed | 150.00 | |
| | 1,490.50 | | Transfer Tax - County to Riverside County | | |
| | 5,819.60 | | Property Taxes (2nd Install) to Riverside County Tax Collector | | |
| | | | **ESCROW CHARGES - Escrow of the West** | | |
| | 3,060.00 | | Title - Escrow Fee | 3,060.00 | |
| | | | Title - Loan Tie-In Fee | 250.00 | |
| | 25.00 | | Title - Wire Fee | | |
| | 75.00 | | Title - Overnight Fee | 75.00 | |
| | 250.00 | | Title - Admin Fee | 250.00 | |
| | 50.00 | | Title - Archive Fee | 50.00 | |
| | 100.00 | | Title - Messenger/Handling Fee | 100.00 | |
| | 677,074.53 | | **Net Proceeds** | | |
| | | | **Funds required** | | 240,138.14 |
| | $  1,357,942.13 | $  1,357,942.13 | **TOTAL** | $  1,371,788.14 | $  1,371,788.14 |

**THIS IS AN ESTIMATE ONLY AND FIGURES ARE SUBJECT TO CHANGE**

BOTW 0002932

<div style="border: 1px solid black; text-align: center;">

## <u>EXHIBIT 77</u>
## <u>Email transmitting Andrea Cross's Contact Information</u>

</div>

**From:** Gregory Hill
**To:** Matt Teskey; Annette Baca
**Cc:** Peter Hill
**Subject:** RE: Eliarov 909216931 (HF1/Union/Forbearance) Need Help from Sales
**Date:** Thursday, February 4, 2021 9:15:09 PM

Matt,

See text from Arthur below.  Escrow company is Escrow of the West.  Andrea Cross is the EO.  As you know, in SoCal, title and escrow are separate companies.  Escrow will know the title company contact.

Greg.



CONFIDENTIAL
GOLDWATER_001300

EXHIBIT
44

Omnibus Joint Exhibit Part E, page 1500



**Gregory D. Hill,** *CMPS®*
*Sales Manager*
Goldwater Mortgage, A Division of Goldwater Bank, N.A.
NMLS# 247349, Corporate NMLS# 452955
Preferred: 415.205.8858 | Email: ghill@goldwaterbank.com
WS: HillGroupMortgageAdvisors.com
Confidentiality Notice: The contents of this email communication are confidential and may contain information that is privileged and/or exempt from disclosure under applicable law.  It is intended solely for use of the individual or entity to which this email is addressed.  If you are not one of the named recipient(s) or otherwise have reason to believe that you have received this message in error, please notify the sender and immediately delete this message and any attachments.  Any unauthorized use, retention, dissemination, forwarding, printing, or copying of this email is strictly prohibited.  This is not advertisement to extend consumer credit.  All loans are subject to credit and property approval.  Programs, rates, terms and conditions are subject to change without notice.  Not all products are available in all states or for all loan amounts.  Other restrictions do apply.

**From:** Matt Teskey <MTeskey@goldwaterbank.com>
**Sent:** Wednesday, February 3, 2021 1:19 PM
**To:** Annette Baca <annette@westloan.com>; Gregory Hill <GHill@goldwaterbank.com>
**Cc:** Peter Hill <PHill@goldwaterbank.com>; Matt Teskey <MTeskey@goldwaterbank.com>
**Subject:** RE: Elizarov 909216931 (HFI/Unison/Forbearance) Need Help from Sales

Greg – can you ask him for contact info with the escrow company handling his sale please? If we've not heard, Unison probably also is unaware and this payoff will be a little different that typical.

This is good info. Let's make sure we aide the customer and connect with the title company handling the transaction.

*Matthew M. Teskey*
*Mortgage Division President*
Goldwater Bank, N.A.
Corporate NMLS# 452955
2525 East Camelback Road, Suite 1100  Phoenix, AZ  85016
Office: 480-281-8200
Email: mteskey@goldwaterbank.com
        www.goldwaterbank.com

**From:** Annette Baca <annette@westloan.com>
**Sent:** Wednesday, February 3, 2021 2:15 PM
**To:** Gregory Hill <GHill@goldwaterbank.com>; Matt Teskey <MTeskey@goldwaterbank.com>

CONFIDENTIAL

GOLDWATER_001301

Omnibus Joint Exhibit Part E, page 1501

**Cc:** Peter Hill <PHill@goldwaterbank.com>
**Subject:** RE: Elizarov 909216931 (HFI/Unison/Forbearance) Need Help from Sales

Hello,

In reviewing the notes and emails sent to this borrower, we are using the correct email address and contacting him at the phone number provided to Greg.

There are no notes in our system or uploads to Blitz in regard to a payoff request at this time.
Our process is to note our system and upload Payoff request to Blitz.

Annette Baca
Weststar Mortgage Corporation
Home Retention Manager
NMLS# 1733547, Corporate NMLS# 93243
800-640-0635 x 3008
505-872-7608 (direct line)
505-889-0824(fax line)

*We strive as employees to exemplify our missions and values set forth by our company. Please click the link below if you believe I have done this, to nominate me for my company's Circle of Excellence!*

*Click HERE to access the external nomination link!*

This is an attempt to collect a debt and any information obtained will be used for that purpose.

If you are experiencing financial difficulty, you can find a list of housing counselors in your area on the US Dept of Housing & Urban Development (HUD) website at www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call HUD at 1-800-569-4287.

**From:** Gregory Hill <GHill@goldwaterbank.com>
**Sent:** Wednesday, February 03, 2021 2:10 PM
**To:** Matt Teskey <MTeskey@goldwaterbank.com>
**Cc:** Peter Hill <PHill@goldwaterbank.com>; Annette Baca <annette@westloan.com>
**Subject:** RE: Elizarov 909216931 (HFI/Unison/Forbearance) Need Help from Sales
**Importance:** High

Matt,

I texted Art at 323-326-7657 about the issue and he said he's followed up with everyone including "Weststar" but that no one has emailed him even though arthur.elizarov@gmail.com is his correct email.  He also stated that he recently sold **Overlook Road in Palm Springs**, the subject property, and it's closing on February 28, 2021.  He said that the escrow company has contacted "us" to get a payoff but no response as yet.

Greg.

**Gregory D. Hill,** *CMPS®*
*Sales Manager*
**Goldwater Mortgage, A Division of Goldwater Bank, N.A.**
**NMLS# 247349, Corporate NMLS# 452955**
**Preferred:** 415.205.8858 | **Email:** ghill@goldwaterbank.com
**WS:** HillGroupMortgageAdvisors.com
Confidentiality Notice: The contents of this email communication are confidential and may contain information that is privileged and/or exempt from disclosure under applicable law.  It is intended solely for use of the individual or entity to which this email is addressed.  If you are not one of the named recipient(s) or otherwise have reason to believe that you have received this message in error, please notify the sender and immediately delete this message and any attachments.  Any unauthorized use, retention, dissemination, forwarding, printing, or copying of this email is strictly prohibited.  **This is not advertisement to extend consumer credit.  All loans are subject to credit and property approval.  Programs, rates, terms and conditions are subject to change without notice.  Not all products are available in all states or for all loan amounts.  Other restrictions do apply.**

**From:** Annette Baca <annette@westloan.com>
**Sent:** Wednesday, February 3, 2021 12:12 PM
**To:** Matt Teskey <MTeskey@goldwaterbank.com>; Gregory Hill <GHill@goldwaterbank.com>
**Cc:** Peter Hill <PHill@goldwaterbank.com>
**Subject:** RE: Elizarov 909216931 (HFI/Unison/Forbearance) Need Help from Sales

Hello,

Greg and I are on it!

Annette Baca
Weststar Mortgage Corporation
Home Retention Manager
NMLS# 1733547, Corporate NMLS# 93243
800-640-0635 x 3008
505-872-7608 (direct line)
505-889-0824(fax line)

*We strive as employees to exemplify our missions and values set forth by our company. Please click the link below if you believe I have done this, to nominate me for my company's Circle of Excellence!*

*Click HERE to access the external nomination link!*

This is an attempt to collect a debt and any information obtained will be used for that purpose.

If you are experiencing financial difficulty, you can find a list of housing counselors in your area on the US Dept of Housing & Urban Development (HUD) website at www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call HUD at 1-800-569-4287.

**From:** Matt Teskey <MTeskey@goldwaterbank.com>
**Sent:** Wednesday, February 03, 2021 12:58 PM
**To:** Gregory Hill <GHill@goldwaterbank.com>
**Cc:** Matt Teskey <MTeskey@goldwaterbank.com>; Peter Hill <PHill@goldwaterbank.com>; Annette Baca <annette@westloan.com>
**Subject:** Elizarov 909216931 (HFI/Unison/Forbearance) Need Help from Sales

**CONFIDENTIAL**

**GOLDWATER_001302**

**Importance:** High

Hi Greg,

This customer is someone that you did a Unison loan for before the program was temporarily mothballed. In the meantime, the borrower took advantage of our forbearance offer. Now, approaching the end of the available forbearance period the borrower has gone non-responsive with our Loss Mitigation team which is managed by Annette Baca, cc'd here.

I need your help to get the line of communication flowing with the customer again here, and quickly.

Please connect with Annette, or someone on her team as she may direct, to get our servicing staff properly in touch with the customer. They may have some notes or alternate contact info that might be helpful as well.

I'm attaching a skinny file from the origination file for contact info and background/orientation.

Please keep all on this thread appraised of your progress.

Thank you
Matt


*Matthew M. Teskey*
*Mortgage Division President*
Goldwater Bank, N.A.
Corporate NMLS# 452955
2525 East Camelback Road, Suite 1100  Phoenix, AZ  85016
Office: 480-281-8200
Email: **mteskey@goldwaterbank.com**
**www.goldwaterbank.com**

**Confidentiality Notice:** The contents of this email communication are confidential and may contain information that is privileged and/or exempt from disclosure under applicable law. It is intended solely for use of the individual or entity to which this email is addressed. If you are not one of the named recipient(s) or otherwise have reason to believe that you have received this message in error, please notify the sender and immediately delete this message and any attachments. Any unauthorized use, retention, dissemination, forwarding, printing, or copying of this email is strictly prohibited.

**Be aware!** Online Banking Fraud is on the rise. This institution does not issue wiring instructions for mortgage originations. If you receive an email containing WIRE TRANSFER INSTRUCTIONS call your Title Company or Settlement Agent's escrows officer immediately to verify the information prior to sending funds.

Omnibus Joint Exhibit Part E, page 1503

# EXHIBIT 78
# Email From Elizarov to Weststar re Selling the Property

## Leticia Aguilar

| | |
|---|---|
| **From:** | Artur Elizarov <arthur.elizarov@gmail.com> |
| **Sent:** | Thursday, February 25, 2021 7:08 PM |
| **To:** | Leticia Aguilar |
| **Subject:** | Re: Forbearance to expire for Elizarov #909216931 |

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

I am still on reduced hours and I just one more month. Property is in escrow and for sale.

Art

On Mon, Feb 22, 2021 at 9:42 AM Leticia Aguilar <lettie.aguilar@westloan.com> wrote:

Hello,

Your COVID19 Forbearance has expired or will be expiring soon 2/28/2021.

If your hardship is resolved,  please let me know and we can offer an option to bring the loan current if it is past due.

If you are working on reduced hours, please contact me to discuss options available.

**REGARDLESS OF THE SITUATION STATED ABOVE YOU MUST CONTACT WESTSTAR MORTGAGE.**

Thank you,

Please contact me ASAP!

Leticia(Lettie)Aguilar

1

WESTSTAR_0347

Omnibus Joint Exhibit Part E, page 1505

WestStar Mortgage Corporation

Bilingual Home Retention Specialist

2155 Louisiana Blvd. NE Suite 8000

Albuquerque, NM 87110

1-800-640-0635 Ext. 3014

505-872-7614 Direct Line

505-889-0824 E-Fax

Lettie.aguilar@westloan.com (Direct E-mail)

www.westloan.com

*We strive as employees to exemplify our missions and values set forth by our company. Please click the link below if you believe I have done this, to nominate me for my company's Circle of Excellence!*

*Click HERE to access the external nomination link!*

This is an attempt to collect a debt and any information obtained will be used for that purpose.

If you are experiencing financial difficulty, you can find a list of housing counselors in your area on the US Dept of Housing & Urban Development (HUD) website at www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call HUD at 1-800-569-4287.

**Confidentiality Notice:** The contents of this email communication are confidential and may contain information that is privileged and/or exempt from disclosure under applicable law. It is intended solely for use of the individual or entity to which this email is addressed. If you are not one of the named recipient(s) or otherwise have reason to believe that you have received this message in error, please notify the sender and immediately delete this message and any attachments. Any unauthorized use, retention, dissemination, forwarding, printing, or copying of this email is strictly prohibited.

**Be aware!** Online Banking Fraud is on the rise. This institution does not issue wiring instructions for mortgage originations. If you receive an email containing WIRE TRANSFER INSTRUCTIONS call your Title Company or Settlement Agent's escrows officer immediately to verify the information prior to sending funds.

2

WESTSTAR_0348

# EXHIBIT 79
# Request for Payoff Demand



9440 Santa Monica Blvd., #310
Beverly Hills, CA 90210

Phone:  (310) 402-5555
Fax:  (310) 402-5556
www.escrowofthewest.com

Unison Midgard Holdings LLC
C/O Goldwater Bank
Attn:  Pete Hill

Date:                    March 3, 2021
Our Escrow No.:   02-035523-AC

## REQUEST FOR DEMAND

An escrow has been opened in this office by **Artur Elizarov** wherein you are listed as the holder of the Note and Deed of Trust covering property legally described as:

Lot 8 of Block 7, Palm Canyon Mesa Tract as per map recorded in Book 12, Pages 52 to 56 both inclusive of Maps, in the office of the County of said county.

and commonly known as:  291 W. Overlook Road, Palm Springs, CA 92264

THIS LOAN IS TO BE PAID IN FULL THROUGH THE ABOVE NUMBERED ESCROW.

Please forward all documents necessary to release your encumbrance and Memorandum, together with your demand to:

Orange Coast Title                              Order No.:  210-2216078-10
Attn:  Cynthia Kack
1845 Business Center Drive, Suite 218
San Bernardino, CA 92408

and fax a copy of your demand to this office to 310-424-4041.

Should you need either or both **Substitution of Trustee and Full Reconveyance,** or written termination/**Quitclaim Deed** for Memorandum of HomeBuyer Agreement, please contact our office IMMEDIATELY.

Thank you for your prompt attention to this matter.


Sincerely,
Escrow of the West



Andrea Cross
Escrow Officer



EOTW_000181

Omnibus Joint Exhibit Part E, page 1508

# **EXHIBIT 80**
# **Weststar's Response to Subpoena**



**WAGNER HICKS PLLC**
831 E. Morehead Street, Suite 860
Charlotte, NC 28202
(704) 705-7787

**DEREK M. BAST**
Attorney at Law
(704) 705-8311
derek.bast@wagnerhicks.law

**VIA EMAIL**

July 20, 2022

Ryan C. Thomason
Hall Griffin LLP
1851 East First Street, 10th Fl.
Santa Ana, CA 92705
rthomason@hallgriffin.com

      Re:    Third-Party Subpoena to Weststar Mortgage Corporation
              *Goldwater Bank, N.A. v. Elizarov*, Case No. 5:21-cv-616-JWH-SPx

Dear Mr. Thomason:

      Please be advised that we represent Weststar Mortgage Corporation ("Weststar") in regards to the third-party subpoena (the "Subpoena") issued to it in the above-referenced litigation by you on behalf of Defendants Howlett and Bank of the West.  Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, this letter serves as Weststar's objections and response to the subpoena.

      Weststar objects to the subpoena to the extent the subpoena seeks to impose any duties on Weststar beyond what is required under the Federal Rules of Civil Procedure.  Specifically, Weststar objects to the subpoena as overbroad and unduly burdensome to the extent it purports to require Weststar to take any action other than a reasonable search for documents maintained in its possession, custody, or control, and locations where such documents are likely to be found.  For instance, the subpoena seeks a broad range of communications across a two-year period and defines the term "communication" to mean both written, electronic, and oral communications, including among other things meetings, discussions, conversations, messages, notes, or seminars. This expansive scope is unreasonable for a Rule 45 subpoena.

      Weststar is a non-party to this action.  It served a limited role as Goldwater Bank, N.A.'s ("Goldwater") loan servicer for the loan made by Goldwater to Elizarov in this action.  Weststar has already provided its complete loan servicing file to Goldwater, which Weststar understands has already been produced in this action.  Moreover, Weststar is aware that Howlett and Bank of the West have served discovery requests to Goldwater seeking many of the same materials sought in the subpoena.  Thus, Weststar also objects to this subpoena to the extent that it seeks production of materials that have already been produced or requested or can more easily be obtained through ordinary party discovery.

Finally, Weststar objects to the subpoena to the extent it seeks the production of privileged material, as the definitions of Weststar and Goldwater included "anyone working on [their] behalf," which could potentially include counsel for Weststar and Goldwater.

Subject to and without waiving its objections, Weststar produces its complete loan file and documents within its possession, custody, or control responsive to the document requests in the subpoena, consisting of documents containing Bates number WESTSTAR_0001 to WESTSTAR_0422.

Sincerely,

Derek M. Bast

Cc:   FRROrders@firstlegal.com
      Jeremy Katz
      Howard Hall
      Nabil Bisharat
      John F. Hilbert
      Joseph A. Levota
      Ilya Alekseyeff



# **EXHIBIT 81**
## **Goldwater's Response to Elizarov Request for Admissions**

Sean C. Wagner (Pro Hac Vice)
Derek M. Bast (Pro Hac Vice)
**WAGNER HICKS PLLC**
831 East Morehead Street, Suite 860
Charlotte, North Carolina 28202
Tel: (704) 705-7538
Fax: (704) 705-7787

John Forest Hilbert, Esq. (SBN 105827)
Joseph A. LeVota, Esq. (SBN 226760)
**HILBERT & SATTERLY LLP**
409 Camino del Rio S. #104
San Diego, California 92108
Telephone:  (619) 795-0300
Facsimile:   (619) 501-6855

Counsel for Plaintiff
GOLDWATER BANK, N.A.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDWATER BANK, N.A., <br><br> Plaintiff, <br><br> v. <br><br> ARTUR ELIZAROV, ET AL. <br><br> Defendants. | Case No. 5:21-cv-00616-JWH-SPx <br><br> **PLAINTIFF GOLDWATER BANK, N.A.'S RESPONSES TO ARTUR ELIZAROV'S FIRST SET OF REQUESTS FOR ADMISSION** |

PROPOUNDING PARTY:     Defendant Artur Elizarov

ANSWERING PARTY:     Plaintiff Goldwater Bank, N.A.

SET NO.:     One

NOW COMES Plaintiff Goldwater Bank, N.A. ("Goldwater"), by and through counsel, and responds to Defendant Artur Elizarov's ("Elizarov") First Set of Requests for Admissions (the "RFAs") as follows:

## PRELIMINARY STATEMENT

All responses and objections contained herein are based upon such information as is presently available and specifically known to Goldwater.  These responses are given without prejudice to Goldwater's right to produce evidence of any subsequently-discovered facts, including any and all subsequently-discovered information. Accordingly, Goldwater specifically reserves the right to change any and all responses contained herein as the result of further investigation, research, and discovery become known.  The responses made herein reflect Goldwater's good faith efforts to respond as completely as possible based on the information that is currently available, and shall not be used to prejudice Goldwater's right to investigate and rely upon such other information as it is ascertained as a result of such further investigation or discovery.

Goldwater reserves the right to use at trial and make reference to any evidence, facts, documents, or information not discovered at this time, omitted through good faith error, mistake, or oversight, or the relevance of which has not presently been identified by Brown. Brown also reserves the right to further modify these responses as a result of subsequently discovered information.

## RESPONSES TO REQUESTS FOR ADMISSION

**1.** At the time GOLDWATER approved LOAN APPLICATION, GOLDWATER knew that ELIZAROV was a plaintiff in CIVIL ACTION.

**ANSWER:  Denied.  Goldwater relied on Elizarov's acknowledgement in the loan application that the information he provided was true and correct and that Goldwater was entitled to rely on the information provided by Elizarov in the application.**

**2.** Before GOLDWATER approved LOAN APPLICATION, GOLDWATER had searched for any lawsuits that involved ELIZAROV as a party.

**ANSWER:  Denied.  Goldwater relied on Elizarov's acknowledgement in the loan application that the information he provided was true and correct and that Goldwater was entitled to rely on the information provided by Elizarov in the application.**

Omnibus Joint Exhibit Part E, page 1514

where it was an offer to extinguish pre-existing debt and denies that it was required to be supported by a benefit in exchange.  Except as expressly admitted, denied.

56.    ELIZAROV suffered no detriment from his offer to pay GOLDWATER $675,000 to extinguish the pre-existing debt of a greater amount under NOTE.

**ANSWER:  Goldwater objects to this Request for Admission as improperly compound.  Goldwater admits that it engaged in discussions with Elizarov to potentially accept a payment of $675,000 in reliance on Elizarov's misrepresentations to Goldwater that there would be insufficient proceeds from the sale on account of a superior mechanic's lien in the amount of approximately $107,000.  However, Goldwater denies that the discussions progressed to the stage where it was an offer to extinguish pre-existing debt.  Goldwater lacks knowledge or information sufficient to admit or deny whether Elizarov suffered any detriment.  Except as expressly stated above, denied.**

57.    After March 25, 2021, GOLDWATER could not have done anything to interfere with ELIZAROV's sale of PALM SPRINGS HOUSE to defendant Scott Howlett.

**ANSWER:  Goldwater objects to this Request for Admission as vague because the scope of conduct that would amount to "interference" is not clear.  Goldwater further objects to this Request for Admission because it is an incomplete hypothetical that does not state enough facts for Goldwater to make a reasonable inquiry sufficient to enable it to admit or deny.**

58.    On and after February 1, 2021, GOLDWATER did not have DEED OF TRUST bearing ELIZAROV's original notarized signature.

**ANSWER:  Denied.  During the course of this litigation, Goldwater located the Deed of Trust bearing Elizarov's original notarized signature in the files of its mortgage servicer, and Goldwater believes it was there as of February 1, 2021.**

59.    On and after February 1, 2021, GOLDWATER could not have recorded DEED OF TRUST with Riverside County Clerk/Recorder.

---

**ANSWER:  Denied.  During the course of this litigation, Goldwater located the Deed of Trust bearing Elizarov's original notarized signature in the files of its mortgage servicer, and Goldwater believes it was there as of February 1, 2021.**

**60.**  GOLDWATER refused to sign a written document evidencing GOLDWATER's agreement to accept $675,000 from ELIZAROV to extinguish the pre-existing debt of a greater amount under NOTE.

**ANSWER:  Goldwater objects to this Request for Admission as improperly compound.  Subject to and without waiving its objections, Goldwater denies this Request for Admission.**

**61.** ELIZAROV did not agree in writing to pay GOLDWATER $675,000 from the sale of PALM SPRINGS HOUSE.

**ANSWER:  Admitted.**

**62.** GOLDWATER did not agree in writing to accept $675,000 from ELIZAROV to extinguish the pre-existing debt of a greater amount under NOTE.

**ANSWER:  Admitted.**

**63.** At the time ELIZAROV offered to pay GOLDWATER $675,000 from the sale of PALM SPRINGS HOUSE, ELIZAROV had a pre-existing duty to pay GOLDWATER a greater amount under NOTE.

**ANSWER:  Admitted.**

**64.** GOLDWATER did nothing in reliance on any allegedly false statements that ELIZAROV made to GOLDWATER during SETTLEMENT DISCUSSIONS.

**ANSWER:  Denied.**

**65.** GOLDWATER suffered no damages as a direct result of GOLDWATER's reliance on any allegedly false statements that ELIZAROV made to GOLDWATER during SETTLEMENT DISCUSSIONS.

**ANSWER:  Denied.**

**66.** Since July 24, 2013, every deed of trust that GOLDWATER's executed with California residential borrowers included the following language: "If all or any part of

---

**ANSWER:  Goldwater objects to this Request for Admission as impermissibly compound and an incomplete hypothetical.**

**71.** Had GOLDWATER recorded DEED OF TRUST with the Riverside County Clerk/Recorded, GOLDWATER would have insisted that ELIZAROV repay, at the time ELIZAROV sold PALM SPRINGS HOUSE to defendant Scott Howlett, the outstanding loan balance secured by DEED OF TRUST even though GOLDWATER had never given ELIZAROV a notice of acceleration required under Paragraph 11 of NOTE.

**ANSWER:  Goldwater objects to this Request for Admission as impermissibly compound and an incomplete hypothetical.**

**72.** Had GOLDWATER recorded DEED OF TRUST with the Riverside County Clerk/Recorded, GOLDWATER would have refused to record a reconveyance of DEED OF TRUST at the time ELIZAROV sold PALM SPRINGS HOUSE to defendant Scott Howlett unless ELIZAROV repaid GOLDWATER the outstanding loan balance secured by DEED OF TRUST even though GOLDWATER had never given ELIZAROV the notice of acceleration required under paragraph 18 of DEED OF TRUST.

**ANSWER:  Goldwater objects to this Request for Admission as impermissibly compound and an incomplete hypothetical.**

**73.** Had GOLDWATER recorded DEED OF TRUST with the Riverside County Clerk/Recorded, GOLDWATER would have refused to record a reconveyance of DEED OF TRUST at the time ELIZAROV sold PALM SPRINGS HOUSE to defendant Scott Howlett unless ELIZAROV repaid GOLDWATER the outstanding loan balance secured by DEED OF TRUST even though GOLDWATER had never given ELIZAROV the notice of acceleration required under Paragraph 11 of NOTE.

**ANSWER:  Goldwater objects to this Request for Admission as impermissibly compound and an incomplete hypothetical.**

**74.** ELIZAROV informed GOLDWATER that ELIZAROV had listed PALM SPRINGS HOUSE for sale on February 2, 2021.

**ANSWER: Goldwater admits that Elizarov communicated with Goldwater loan officer Gregory Hill in early February 2021 about his intention to sell the Palm Springs house.  Except as expressly admitted, denied.**

**75.** ELIZAROV sent a copy of the Residential Purchase Agreement that ELIZAROV signed with Scott Howlett to GOLDWATER on March 3, 2021.

**ANSWER: Goldwater objects to this Request for Admission because it references a specific document that has not been defined or produced by Elizarov. Subject to and without waiving its objections, Goldwater states that it presently lacks knowledge or information sufficient to admit or deny this Request for Admission.**

**76.** ELIZAROV discovered that GOLDWATER had not recorded DEED OF TRUST with the Riverside County Clerk/Recorded on March 25, 2021.

**ANSWER:  Goldwater lacks knowledge or information sufficient to admit or deny this Request for Admission.  Goldwater has conducted a reasonable inquiry of the materials in its possession, custody, or control, but discoverable information regarding the precise date when Elizarov discovered that the Deed of Trust was unrecorded ultimately resides with Elizarov and other third parties.**

**77.** Prior to April 1, 2021, GOLDWATER had not given ELIZAROV the notice of acceleration required under Paragraph 18 of DEED OF TRUST. f

**ANSWER:  Goldwater objects to this Request for Admission as improperly compound.  Subject to and without waiving its objections, Goldwater admits that Goldwater had not provided Elizarov with a notice of acceleration prior to April 1, 2021.  It is denied, however, that Goldwater was required to provide such notice at that time under Paragraph 18 of the Deed of Trust.  Except as expressly admitted, denied.**

**78.** Prior to April 1, 2021, GOLDWATER had not given ELIZAROV the notice of acceleration required under Paragraph 11 of NOTE.

Dated:  April 22, 2022.

WAGNER HICKS PLLC
By:  ___/s/ Derek M. Bast_____
      Sean C. Wagner, Esq.
      Derek M. Bast, Esq.

      And

HILBERT & SATTERLY LLP
By: /s/ Joseph A. Levota_____
      John Forest Hilbert, Esq.
      Joseph A. LeVota, Esq.

*ATTORNEYS FOR GOLDWATER BANK, N.A.*

# CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing by email and by United States Postal Service, addressed to the following person(s) at the following address(es):

Ilya Alekseyeff, Esq.
Loia, Inc. (APLC)
8721 Santa Monic Blvd., #119
West Hollywood, CA 90096
(213) 537-4592
Ilya@loia.legal
*Attorney for Defendant Artur Elizarov and Defendant pro per*

Howard D. Hall
Damian P. Richard
Hall Griffin, LLP
1851 East First Street, 10th Floor
Santa Ana, CA 92705-4052
hdhall@hallgriffin.com
drichard@hallgriffin.com
(714) 918-7000; Fax: (714) 918-6996
*Attorneys for Defendant Scott Howlett and Bank of the West*

Denis Shmidt
Nabil Bisharat
Orsus Gate, LLP
16 N Marengo Ave, Suite 316
Pasadena, CA 91101
(213) 973-2052
dshmidt@orsusgate.com
nbisrahat@orsusgate.cm
*Attorneys for Defendant Unison Agreement Corp.*

Date:  April 22, 2022

/s/ Derek M. Bast
Derek M. Bast

Omnibus Joint Exhibit Part E, page 1520

# **EXHIBIT 82**
# **Email from Brittany Shaw to Peter Hill on March 25, 2021 sending Copy of Deed of Trust**

| | |
|---|---|
| **From:** | Brittany Shaw |
| **To:** | Peter Hill |
| **Subject:** | FW: 909216931, Elizarov |
| **Date:** | Thursday, March 25, 2021 5:33:41 PM |
| **Attachments:** | Elizarov 909216931_ Note.pdf |
| | Elizarov 909216931_ Deed.pdf |
| | Elizarov 909216931_ Statements.pdf |
| | Elizarov 909216931_Pay History.pdf |

*Brittany Shaw*
**Loan Operations Manager**
**Goldwater Bank, N.A.**

**Confidentiality Notice:** The contents of this email communication are confidential and may contain information that is privileged and/or exempt from disclosure under applicable law. It is intended solely for use of the individual or entity to which this email is addressed. If you are not one of the named recipient(s) or otherwise have reason to believe that you have received this message in error, please notify the sender and immediately delete this message and any attachments. Any unauthorized use, retention, dissemination, forwarding, printing, or copying of this email is strictly prohibited.

---

**From:** Devin Lucero-Miller <DLucero-Miller@westloan.com>
**Sent:** Monday, March 8, 2021 9:32 AM
**To:** Brittany Shaw <BShaw@goldwaterbank.com>
**Subject:** RE: 909216931, Elizarov

Hi Brittany,

I have attached the requested documents.

We only have statements from July 2020 to current. I will reach out to our IT team to see why the earlier months were not uploaded.

Please let me know if there is anything else you need.

Thank you,

Devin Miller
Post Foreclosure Claims and Home Retention Team Lead



**CONFIDENTIAL**

**GOLDWATER_001209**

EXHIBIT
46

Omnibus Joint Exhibit Part E, page 1522

2155 Louisiana Blvd. NE Suite 8000 Albuquerque, NM 87110
PO Box 25400, Albuquerque, NM 87125
|T (505) 872-7642 |F (505) 889-0280 |  dlucero-miller@westloan.com

**NOTICE: This is an attempt to collect a debt and any information obtained will be used for that purpose.**
If you are experiencing financial difficulty, you can find a list of housing counselors in your area on the US Dept of Housing & Urban Development (HUD) website at www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call HUD at 1-800-569-4287.

---

**From:** Brittany Shaw <BShaw@goldwaterbank.com>
**Sent:** Monday, March 08, 2021 9:11 AM
**To:** Devin Lucero-Miller <DLucero-Miller@westloan.com>
**Subject:** 909216931, Elizarov

Devin, Can you please help with this request?

Hi Annette,

Can you please provide the following documentation for Elizarov:

- Loan History January 1, 2020 – Current
- Loan Statements January 2020 – Current
- Promissory Note
- Deed of Trust

*Brittany Shaw*
**Loan Operations Manager**
**Goldwater Bank, N.A.**
2525 E Camelback Road Suite 1100
Phoenix, Arizona 85016
Phone: 480.281.8211
Fax: 480.281.8222
www.goldwaterbank.com

**Confidentiality Notice:** The contents of this email communication are confidential and may contain information that is privileged and/or exempt from disclosure under applicable law. It is intended solely for use of the individual or entity to which this email is addressed. If you are not one of the named recipient(s) or otherwise have reason to believe that you have received this message in error,

CONFIDENTIAL                                                                                      GOLDWATER_001210

Omnibus Joint Exhibit Part E, page 1523

please notify the sender and immediately delete this message and any attachments. Any unauthorized use, retention, dissemination, forwarding, printing, or copying of this email is strictly prohibited.

**Confidentiality Notice:** The contents of this email communication are confidential and may contain information that is privileged and/or exempt from disclosure under applicable law. It is intended solely for use of the individual or entity to which this email is addressed. If you are not one of the named recipient(s) or otherwise have reason to believe that you have received this message in error, please notify the sender and immediately delete this message and any attachments. Any unauthorized use, retention, dissemination, forwarding, printing, or copying of this email is strictly prohibited.

**Be aware!** Online Banking Fraud is on the rise. This institution does not issue wiring instructions for mortgage originations. If you receive an email containing WIRE TRANSFER INSTRUCTIONS call your Title Company or Settlement Agent's escrows officer immediately to verify the information prior to sending funds.

## **EXHIBIT 83**
## **Email between Weststar and Peter Hill regarding  locating unrecorded Deed of Trust**

| | |
|---|---|
| **From:** | Peter Hill |
| **To:** | Lynette Suina-Cole - GW |
| **Subject:** | RE: When you located the DOT, did you also find any evidence of us planning to send it to Silver Bay Escrow in Re ceda, CA? RE: Help On Arthur Elizarov Mortgage 909-216931 |
| **Date:** | Friday, March 26, 2021 12:42:00 PM |

Thanks

**From:** Lynette Suina-Cole - GW <LSuina-Cole-GW@goldwaterbank.com>
**Sent:** Friday, March 26, 2021 9:41 AM
**To:** Peter Hill <PHill@goldwaterbank.com>
**Subject:** RE: When you located the DOT, did you also find any evidence of us planning to send it to Silver Bay Escrow in Re ceda, CA? RE: Help On Arthur Elizarov Mortgage 909-216931

No there wasn't we only had the DOT on file.

## Lynette Suina-Cole
AVP/Government Insuring Manager
505-875-6712

**From:** Peter Hill <PHill@goldwaterbank.com>
**Sent:** Friday, March 26, 2021 10:35 AM
**To:** Lynette Suina-Cole - GW <LSuina-Cole-GW@goldwaterbank.com>
**Subject:** RE: When you located the DOT, did you also find any evidence of us planning to send it to Silver Bay Escrow in Re ceda, CA? RE: Help On Arthur Elizarov Mortgage 909-216931

Lynette;

As you found the DOT, were there any closing or instruction letters to  Silver Bay Escrow in Reseda CA?
They closed the transaction.

Pete

**From:** Lynette Suina-Cole - GW <LSuina-Cole-GW@goldwaterbank.com>
**Sent:** Friday, March 26, 2021 8:07 AM
**To:** Peter Hill <PHill@goldwaterbank.com>; Jaime Johnson <JaimeJ@goldwaterbank.com>; Shelley Thurlow <Shelley.Thurlow@goldwaterbank.com>; Jami Donnelly <Jami.Donnelly@goldwaterbank.com>
**Cc:** Matt Teskey <MTeskey@goldwaterbank.com>
**Subject:** When you located the DOT, did you also find any evidence of us planning to send it to Silver Bay Escrow in Re ceda, CA? RE: Help On Arthur Elizarov Mortgage 909-216931

Peter,

GOLDWATER_001151

EXHIBIT

53

Omnibus Joint Exhibit Part E, page 1526

Yes I checked with county as well and only saw the other transaction.

Good news I found the original.  Since the loan never sold and is an HFI loan we keep the documents.  Have you made contact with anyone from the title company?  If not I can try on my end.

Lynette Suina-Cole
AVP/Government Insuring Manager
505-875-6712

**From:** Peter Hill <PHill@goldwaterbank.com>
**Sent:** Friday, March 26, 2021 9:01 AM
**To:** Lynette Suina-Cole - GW <LSuina-Cole-GW@goldwaterbank.com>; Jaime Johnson <JaimeJ@goldwaterbank.com>; Shelley Thurlow <Shelley.Thurlow@goldwaterbank.com>; Jami Donnelly <Jami.Donnelly@goldwaterbank.com>
**Cc:** Matt Teskey <MTeskey@goldwaterbank.com>
**Subject:** RE: Help On Arthur Elizarov Mortgage 909-216931

Thanks Lynette.  We have checked with Riverside County.  We can see other recordings related to this close, such as the Unison Agreement, but our DOT is not of record.

**From:** Lynette Suina-Cole - GW <LSuina-Cole-GW@goldwaterbank.com>
**Sent:** Friday, March 26, 2021 7:57 AM
**To:** Peter Hill <PHill@goldwaterbank.com>; Jaime Johnson <JaimeJ@goldwaterbank.com>; Shelley Thurlow <Shelley.Thurlow@goldwaterbank.com>; Jami Donnelly <Jami.Donnelly@goldwaterbank.com>
**Cc:** Matt Teskey <MTeskey@goldwaterbank.com>
**Subject:** RE: Help On Arthur Elizarov Mortgage 909-216931

Hello,

I am researching this as well.  In blitzdocs there is a copy of what was uploaded as a recorded copy.  However, there was no recording information.  I am trying to see where the original went.  I will get back to you today.

Lynette Suina-Cole
AVP/Government Insuring Manager
505-875-6712

**From:** Peter Hill <PHill@goldwaterbank.com>
**Sent:** Thursday, March 25, 2021 7:00 PM
**To:** Jaime Johnson <JaimeJ@goldwaterbank.com>; Lynette Suina-Cole - GW <LSuina-Cole-GW@goldwaterbank.com>; Shelley Thurlow <Shelley.Thurlow@goldwaterbank.com>; Jami Donnelly <Jami.Donnelly@goldwaterbank.com>
**Cc:** Matt Teskey <MTeskey@goldwaterbank.com>
**Subject:** Help On Arthur Elizarov Mortgage 909-216931

CONFIDENTIAL

GOLDWATER_001152

Omnibus Joint Exhibit Part E, page 1527