*Goldwater Bank v. Elizarov, et al.*, C.D. Cal. Case No. 21-cv-00616-JWH-SP

# Omnibus
# JOINT EXHIBIT PART G

# **Declaration of Kasandra C. Goldberg**

1  HALL GRIFFIN LLP
   HOWARD D. HALL, State Bar No. 145024
2    *hdhall@hallgriffin.com*
   JEREMY T. KATZ, State Bar No. 267361
3    *jkatz@hallgriffin.com*
   KASANDRA C. GOLDBERG, State Bar No. 345364
4    *kgoldberg@hallgriffin.com*
   1851 East First Street, 10th Floor
5  Santa Ana, California 92705-4052
   Telephone: (714) 918-7000
6  Facsimile: (714) 918-6996

7  Attorneys for Defendant and Cross-
   Complainant SCOTT HOWLETT;
8  Defendant BMO HARRIS BANK N.A.,
   Successor by Merger to BANK OF THE
9  WEST

10              **UNITED STATES DISTRICT COURT**

11    **CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

| | |
|---|---|
| 12  Goldwater Bank, N.A. | CASE NO. 21-cv-00616-JWH-SP |
| 13       Plaintiff, | JUDGE:   Hon. John W. Holcomb |
| | CTRM.:    9D |
| 14       vs. | **DECLARATION OF KASANDRA** |
| 15  ARTUR ELIZAROV; UNISON | **C. GOLDBERG RE GOLDWATER,** |
|   AGREEMENT CORP.; SCOTT | **HOWLETT, AND BOTW'S CROSS-** |
| 16  HOWLETT; BANK OF THE WEST; | **RULE 56 MOTIONS FOR** |
|   and ILYA ALEKSEYEFF, | **SUMMARY JUDGMENT** |
| 17 | |
| 18       Defendants. | JUDGE: Hon. John W. Holcomb |
| | DATE:    September 29, 2023 |
| 19  AND RELATED CROSS-ACTIONS | TIME:    9:00 a.m. |
| | CRTRM.:   9D |
| 20 | TRIAL DATE:   November 27. 2023 |

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

1

HALL GRIFFIN

1      I, Kasandra C. Goldberg, declare as follows:

2      1.     I am an attorney with the law firm of Hall Griffin LLP, counsel of

3 record for Defendant and Cross-Complainant SCOTT HOWLETT; and Defendant

4 BMO HARRIS BANK N.A., Successor by Merger to BANK OF THE WEST

5 ("BOTW") in this action.  I have knowledge of the facts set forth in this Declaration

6 based on my own personal knowledge and my review of the records Hall Griffin

7 LLP regularly kept during its representation of Defendants.  If called as a witness, I

8 could and would competently testify to such facts under oath.

9      2.     I have reviewed the documents produced by Weststar, Plaintiff

10 Goldwater Bank, N.A. ("Goldwater"), and Escrow of the West ("Escrow").  I did

11 not find any documents that show that Escrow of the West ever received any payoff

12 demand from Goldwater or Weststar.

13      3.     On September 9, 2022, Peter Hill's deposition was taken.  Mr. Hill

14 testified that he is Goldwater's Chief Credit Officer.  A true and correct copy of

15 additional excerpts of the transcript of Mr. Hill's deposition are in Joint Exhibit G as

16 **Exhibit 91** and H as **Exhibit 99**, and Exhibits 52 and 55 from Mr. Hill's deposition

17 are in Joint Exhibit H as **Exhibit 104** and G as **Exhibit 92**, respectively.

18      4.     On November 8, 2022, Brittany Shaw's deposition was taken.

19 Ms. Shaw testified that she is an employee of Plaintiff Goldwater Bank

20 ("Goldwater").  A true and correct copy of additional excerpts of the transcript of

21 Brittany Shaw's deposition is in Joint Exhibit G as **Exhibit 93**, and Exhibit 79 from

22 Brittany Shaw's deposition is in Joint Exhibit H as **Exhibit 108**.

23      5.     On May 12, 2023, the deposition of Goldwater's first Rule 30(b)(6)

24 witness, Christine Overbeck, was taken.  A true and correct copy of additional

25 pertinent excerpts of the transcript of the May 12 deposition of Christine Overbeck

26 is in Joint Exhibit G as **Exhibit 94.**

27      6.     On May 31, 2023, the deposition of Goldwater's second Rule 30(b)(6)

28 witness, Cory Bearden, was taken.  A true and correct copy of additional pertinent

HALL GRIFFIN

1  excerpts of the transcript of the May 31 deposition of Cory Bearden is in Joint

2  Exhibit G as **Exhibit 95** and H as **Exhibit 101**, and Exhibit 146 from Cory

3  Bearden's deposition is in Joint Exhibit H as **Exhibit 100**.

4      7.      My firm retained Jay Hibert as an expert for this matter.  On September

5  15, 2022, Mr. Hibert's expert report was produced to the parties.  A true and correct

6  copy of Mr. Hibert's report is in Joint Exhibit H as **Exhibit 105**.  On December 15,

7  2022, Mr. Hibert's deposition was taken.  A true and correct copy of excerpts of the

8  transcript of the deposition of Jay Hibert is in Joint Exhibit H as **Exhibit 98**.

9      8.      On December 6, 2022, Vicki Crestani's deposition was taken.  Ms.

10  Crestani was retained by Goldwater as an expert witness.  A true and correct copy of

11  excerpts of the transcript of Vicki Crestani's deposition is in Joint Exhibit H as

12  **Exhibit 102**.

13      9.      On September 15, 2022, Scott Howlett's deposition was taken.  Mr.

14  Howlett is the owner of the subject property.  A true and correct copy of excerpts of

15  the transcript of Scott Howlett's deposition is in Joint Exhibit H as **Exhibit 106**.

16      10.      On June 29, 2022, Andrea Cross' deposition was taken.  Ms. Cross

17  testified that she is an employee of Escrow of the West.  A true and correct copy of

18  pertinent excerpts from the transcript of the deposition of Andrea Cross is in Joint

19  Exhibit H as **Exhibit 107**, and Exhibit 8 from Andrea Cross' deposition is in Joint

20  Exhibit H as **Exhibit 109**.

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

HALL GRIFFIN

11.     During discovery, Goldwater subpoenaed the records of Escrow, and my office received Escrow's resulting production.  A true and correct copy of additional pertinent excerpts is in Joint Exhibit G as **Exhibit 96.**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 1st day of September, 2023, at Santa Ana, California.

_____
Kasandra C. Goldberg

HALL GRIFFIN

GOLDBERG DECLARATION RE: GOLDWATER/HOWLETT/BOTW'S CROSS-RULE 56 MOTIONS

4892-6876-0440.3

Omnibus Joint Exhibit Part G, page 1604

**[INTENTIONALLY LEFT BLANK]**

# EXHIBIT 91
# Transcript of Deposition of Peter Hill (Additional Excerpts)

```
 1                  UNITED STATES DISTRICT COURT

 2          CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

 3

 4     Goldwater Bank, N.A.,      )CASE NO. 5:21-cv-00616-JWH-SP
                                  )
 5              Plaintiff,        )
                                  )
 6          vs.                   )
                                  )
 7     ARTUR ELIZAROV; UNISON     )
       AGREEMENT CORP.; SCOTT     )
 8     HOWLETT; BANK OF THE WEST; )
       and ILYA ALEKSEYEFF,       )
 9                                )
                Defendants.       )
10     _____ )

11

12

13                          --oOo--

14               DEPOSITION OF PETER J. HILL

15                   September 9, 2022

16             ***TAKEN VIA VIDEOCONFERENCE***

17                          --oOo--

18

19

20

21

22

23

24

25

                                                    Page 1
```

Omnibus Joint Exhibit Part G, page 1607

```
 1              BE IT REMEMBERED THAT, pursuant to the Federal
 2    Rules of Civil Procedure, the deposition of PETER J.
 3    HILL, was taken before Maureen Kelly, OCSR No. 00-0364,
 4    WCSR No. 3401, on Friday, September 9, 2022, commencing
 5    at the hour of 9:59 a.m., the proceedings being reported
 6    via Zoom videoconference.
 7                         --oOo--
 8
 9                      APPEARANCES
10            (ALL APPEARING VIA VIDEOCONFERENCE)
11    Attorneys for Plaintiff Goldwater Bank, N.A.:
              Joseph A. LeVota, Esq.
12            HILBERT & SATTERLY, LLP
              409 Camino Del Rio South, Suite 104
13            San Diego, CA 92108
              jlevota@hscallaw.com
14
      Pro Hac Vice Attorneys for Plaintiff Goldwater Bank,
15    N.A.:
              Sean C. Wagner, Esq.
16            Derek M. Bast, Esq.
              WAGNER HICKS, PLLC
17            831 East Morehead Street, Suite 860
              Charlotte, NC 28202
18            sean.wagner@wagnerhicks.law
              derek.bast@wagnerhicks.law
19
      Attorneys for Defendant and Cross-Complainant SCOTT
20    HOWLETT and Defendant BANK OF THE WEST:
              Jeremy T. Katz, Esq.
21            Ryan C. Thomason, Esq.
              HALL GRIFFIN LLP
22            1851 East First Street, 10th Floor
              Santa Ana, California 92705-4052
23            jkatz@hallgriffin.com
              rthomason@hallgriffin.com
24
25    (Continued on next page.)
```

                                                          Page  2

Omnibus Joint Exhibit Part G, page 1608

```
 1                    APPEARANCES (CONTINUED)
 2              (ALL APPEARING VIA VIDEOCONFERENCE)
 3    Attorneys for Defendant Artur Elizarov and Defendant
      Ilya Alekseyeff (in Pro Per):
 4                Ilya Alekseyeff, Esq.
                  LOIA, INC. (APLC)
 5                8721 Santa Monica Blvd., #119
                  West Hollywood, CA 90069
 6                ilya@loia.legal
 7    Attorneys for Defendant Unison Agreement Corp.:
                  Nabil Bisharat, Esq.
 8                ORSUS GATE, LLP
                  16 N. Marengo Ave., Suite 316
 9                Pasadena, CA 91101
                  nbisharat@orsusgate.com
10
11
      Also Present: (None.)
12
                            --oOo--
13
14
15
16
17
18
19
20
21
22
23
24
25
                                              Page  3
```

```
 1                    THE WITNESS:  I am, yes.

 2                    MR. KATZ:  Okay.  It is a one-page exhibit.

 3                    THE WITNESS:  Correct.

 4       BY MR. THOMASON:  (Continuing)

 5            Q.   And do you recognize this email?

 6            A.   I do.

 7            Q.   This was the email that you sent to

 8       Ms. Pfeifer.  Correct?

 9            A.   Correct.

10            Q.   The next exhibit will be an email between

11       you, Jaime Johnson, Lynette Suina-Cole, Shelley Thurlow,

12       Jami Donnelly, Matt Teskey and Julie Merhege regarding

13       problems with the Elizarov deed of trust dated

14       March 25th, 2021, and March 26th, 2021.

15                    MR. THOMASON:  And we are going to mark

16       this as Exhibit 51.

17                         (EXHIBIT marked: Exhibit No. 51.)

18                    MR. KATZ:  Are you able to see Exhibit 51?

19                    THE WITNESS:  I am, yes.

20                    MR. KATZ:  It's a two-page document.  I'm

21       just going to briefly scroll both pages.  This is the

22       second and final page.

23       BY MR. THOMASON:  (Continuing)

24            Q.   And do you recognize this email chain?

25            A.   I do.
```

Page 26

1              Q.   And this was the email that you sent to

2     those parties and further correspondence with Ms. -- am

3     I saying her name -- is it Mer-harsh?  I can't -- I'm

4     sorry.

5              A.   Mer-hersh.

6              Q.   Mer-hersh.  Between you and Ms. Merhege?

7              A.   Correct.

8              Q.   So the next one will be an email between

9     you, Mr. Hill; Theo Haugen and Matt Teskey regarding the

10    insufficient sale funds to pay all parties dated

11    March 25th, 2021.

12                   MR. THOMASON:  We will mark this as

13    Exhibit 52.

14                        (EXHIBIT marked: Exhibit No. 52.)

15                   MR. KATZ:  It is a one-page document.  Are

16    you able to see Exhibit 52?

17                   THE WITNESS:  Yes, I am.

18    BY MR. THOMASON:  (Continuing)

19              Q.   Okay.  And do you recognize this email?

20              A.   I do, yeah.

21              Q.   And this was the email you sent to

22    Mr. Haugen and Mr. Teskey.  Correct?

23              A.   Correct.

24              Q.   The next exhibit we have will be an email

25    between you, Mr. Hill, and Lynette Suina-Cole regarding

                                              Page  27

1    the missing Elizarov deed of trust dated March 26th,

2    2021.

3              MR. THOMASON:  We are going to mark this as

4    Exhibit 53.

5                   (EXHIBIT marked: Exhibit No. 53.)

6              MR. KATZ:  Are you able to see Exhibit 53?

7              THE WITNESS:  I am.

8              MR. KATZ:  It's a two-page document.  I'm

9    going to briefly scroll through it.  What you're seeing

10   is the second and final page.

11   BY MR. THOMASON:  (Continuing)

12         Q.  Do you recognize this email, Mr. Hill?

13         A.  I do.

14         Q.  And was this email exchange between you and

15   Ms. Suina-Cole?

16         A.  Correct.

17         Q.  Next we will have an email between you and

18   Lynette Suina-Cole regarding sending Elizarov's deed of

19   trust to you, which was dated on March 26th, 2021.

20             MR. THOMASON:  We are going to mark this as

21   Exhibit 54.

22                   (EXHIBIT marked: Exhibit No. 54.)

23             MR. KATZ:  Are you able to see Exhibit 54?

24             THE WITNESS:  I am.

25             MR. KATZ:  It's a one-page document.

                                            Page 28

```
 1    BY MR. THOMASON:  (Continuing)

 2              Q.   And do you recognize this email, Mr. Hill?

 3              A.   Yes, I do.

 4              Q.   All right.  And this was the email exchange

 5    between you and Ms. Suina-Cole.  Correct?

 6              A.   Correct.

 7              Q.   Next we will have an email between you and

 8    Theo Haugen regarding the short payoff of Elizarov's

 9    loan dated March 26th, 2021.

10              MR. THOMASON:  We are going to mark this as

11    Exhibit 55.

12                     (EXHIBIT marked: Exhibit No. 55.)

13              MR. KATZ:  Are you able to see Exhibit 55?

14              THE WITNESS:  Yeah.  I am, yes.

15              MR. KATZ:  It's a one-page document.

16    BY MR. THOMASON:  (Continuing)

17              Q.   And do you recognize this email, Mr. Hill?

18              A.   I do.

19              Q.   And this was the correspondence between you

20    and Mr. Haugen.  Correct?

21              A.   Correct.

22              Q.   Next we have an email between you and

23    Mr. Theo Haugen regarding Unison's payoff dated

24    March 31st, 2021?

25              MR. THOMASON:  We are going to mark this as
```

Page 29

```
 1    Exhibit 56.

 2                    (EXHIBIT marked: Exhibit No. 56.)

 3              MR. KATZ:  Are you able to see Exhibit 56?

 4              THE WITNESS:  I am.

 5              MR. KATZ:  It's a one-page document.

 6              THE WITNESS:  Yes.

 7    BY MR. THOMASON:  (Continuing)

 8         Q.   Do you recognize this email, Mr. Hill?

 9              MR. WAGNER:  Ryan, just to clarify and make

10    sure it's in the record, I mean there are dates.  I

11    guess at the top it says April 1st, 2021.  I know there

12    are some March 31 dates in there, but I just want to be

13    clear.

14              MR. THOMASON:  That is the top date, but we

15    are more referring to the correspondence just below, so

16    I marked it as March 31st.  But, yeah, it would be

17    April 1st.  So through April 1st, 2021.  You would be

18    correct.

19    BY MR. THOMASON:  (Continuing)

20         Q.   Do you recognize this email, Mr. Hill?

21         A.   I do.

22         Q.   And was this the correspondence between you

23    and Mr. Haugen?

24         A.   Yes.

25         Q.   All right.  The next exhibit will be an
```

Page 30

1       A.   It would have been that same afternoon when

2   I asked her to please give me a call to discuss -- that

3   1:49 email.

4       Q.   Okay.  So we will go up a little bit higher

5   for a second.  So we see here "Please give me a call to

6   discuss."  Did Ms. Cross give you a call after that?

7       A.   She did, yes.

8       Q.   And what was -- what did you and Ms. Cross

9   discuss?

10      A.   She reiterated that she had been instructed

11  that she could not speak with me, and I wanted to make

12  sure that I understood what she was saying in that 1:49

13  email and it was to confirm that they were showing we

14  were not of record.  I wanted to verbally confirm that

15  with her.

16      Q.   Okay.  So -- and you did verbally confirm

17  that with her, that Goldwater Bank was not a lienholder

18  of record?

19      A.   I did, yes.

20      Q.   Okay.  All right.  Did you discuss anything

21  else on that phone call?

22      A.   No.

23      Q.   Okay.  All right.  So after learning that

24  Goldwater Bank was not a lienholder of record, it looks

25  like things were happening behind the scenes at

                                                Page 60

```
 1    Goldwater Bank.

 2              MR. THOMASON:  If we could look at

 3    Exhibit 46.

 4              MR. KATZ:  (Complying.)

 5    BY MR. THOMASON:  (Continuing)

 6         Q.   So it looks like on March 25th, 2021,

 7    Brittany Shaw emailed to you a copy of the notes, deed

 8    of trust, the statements, the pay history.  Did you ever

 9    forward that copy of the unrecorded deed of trust to

10    Andrea Cross?

11         A.   I did not, no.

12         Q.   Okay.  Why didn't you send that to Andrea

13    Cross?

14         A.   I had focused my efforts at that time in

15    locating the recorded deed of trust.  I was also in

16    active discussions with Mr. Elizarov at this time about

17    a short payoff and had been led to believe by

18    Mr. Elizarov that we had an agreement on accepting the

19    short payoff.

20         Q.   So when you say you had an agreement with

21    Elizarov about accepting a short payoff, can you explain

22    that to us?  Was that a phone call that you had with him

23    or was it an email exchange?

24         A.   It was both.

25         Q.   And what did you two discuss?
```

Page 61

1              A.   He had made me aware earlier that -- and I
2    was also aware from some estimated settlement statements
3    from Andrea Cross that we were short of funds.  I was
4    discussing with Mr. Elizarov seeking to get details on
5    the contractor's lien to verify that amount.  I got the
6    payoff information from Unison to verify that amount, so
7    that I could justify seeking an approval internally to
8    accept a short payoff.  So Mr. Elizarov and I had
9    reached an agreement as to how much that would be -- how
10   much we would accept in order to allow the sale to
11   close.
12             Q.   So, now, did you inform Mr. Elizarov that
13   your deed of trust was unrecorded or do you believe that
14   Mr. Elizarov knew that your deed of trust was
15   unrecorded?
16             A.   I did not inform him of that but he did
17   clearly know.
18             Q.   And what did -- why do you think he clearly
19   knew?
20             A.   Because he had instructed Andrea Cross to
21   not honor our payoff demand because we were not of
22   record and to cease communication with me.
23             Q.   What payoff -- when you say not to honor
24   your payoff demand, what payoff demand?
25             A.   The letter that we had sent -- had intended

                                            Page 62

```
 1    storage.  He did take a look at them and let me know
 2    that they were missing some of this detail as well.
 3          Q.   Okay.  So when you sent out this email, it
 4    was to alert everyone that, you know -- of course you
 5    had these problems, but you were also still trying to
 6    close this sale and work with Mr. Elizarov; is that
 7    correct?
 8          A.   Yes.  I had a borrower in Mr. Elizarov that
 9    was actively asking me to make a concession.  I was
10    willing to do so.  He was not contesting the debt nor
11    the lien position on the home.  I was mostly interested
12    in helping him to close his sale.
13          Q.   Okay.  And did you have any reason to
14    believe that Mr. Elizarov wouldn't honor his agreement
15    with you?
16          A.   None.  No.
17          Q.   Okay.  All right.
18               MR. THOMASON:  Let's go up a little bit in
19    the email.
20               MR. KATZ:  (Complying.)
21    BY MR. THOMASON:  (Continuing)
22          Q.   So it looks like you had emailed Julie --
23    yeah, Julie Merhege stating that the entire situation
24    developed late yesterday afternoon, needed to make you
25    aware if you had questions.  I am proposing that we take
```

Page 67

Omnibus Joint Exhibit Part G, page 1618

```
 1    a -- now you put a 55M short payoff to get this deal

 2    closed.  I assume that was a $55,000 short payoff.

 3            A.   That's correct.

 4            Q.   Is that correct?

 5            A.   That's correct, yeah.

 6            Q.   Okay.  All right.  And then she responded

 7    to you.  She said, "This is a tough error - I hate to

 8    see it."  What do you think she meant when she says

 9    "This is a tough error - I hate to see it"?

10            A.   I don't really know.

11            Q.   Okay.  What was your understanding of the

12    error that occurred here?

13            A.   What I understood on the 25th having

14    learned it from Andrea Cross is that our deed of trust

15    was unrecorded.

16            Q.   Who was supposed to record the deed of

17    trust?

18            A.   First American Title Company.

19            Q.   And where did you find the unrecorded deed

20    of trust?

21            A.   It was located in files at Weststar

22    Mortgage in Albuquerque, New Mexico.

23            Q.   And how did it get there?

24            A.   I don't know.

25            Q.   And Weststar was the only servicer for the
```

Page 68

Omnibus Joint Exhibit Part G, page 1619

1    loan?

2         A.   Correct.   Yes.

3         Q.   Aside from Goldwater Bank?

4         A.   Yes.

5         Q.   And do you know when Weststar took over

6    servicing of the loan?

7         A.   Well, they have always -- they were always

8    servicer of the loan, yeah.

9         Q.   All right.

10        A.   From inception.

11        Q.   So you are saying that Weststar serviced it

12   from the beginning, but we have seen statements from

13   Goldwater Bank and then Weststar at some point took over

14   because they informed Elizarov that they were taking

15   over the servicing.  But were they servicing it from the

16   beginning?

17            MR. WAGNER:  Objection as to form.

18            You can answer.

19            THE WITNESS:  All of these mortgages are

20   originated in the name of Goldwater Bank and then

21   immediately sold to Weststar Mortgage Company with

22   servicing rights.  That's a fairly quick process, but it

23   can take anywhere from three to seven days to complete

24   that transaction.

25   BY MR. THOMASON:  (Continuing)

                                        Page 69

```
1              Q.   Is the loan sold or just the servicing
2      rights sold?
3              A.   In this case the -- we retained the loan in
4      our portfolio and Weststar held servicing rights, which
5      would include the billings going forward.  Everything
6      that Mr. Elizarov would have seen, would be coming from
7      Weststar Mortgage as our servicing company.
8              Q.   Okay.  Are there any procedures at
9      Goldwater Bank to confirm that a deed of trust has been
10     recorded once a sale closes?
11             A.   There are, yes.
12             Q.   Are you familiar with them?  Do you know
13     them?
14             A.   I don't know them.  I am aware of them.
15     That would be a standard post-closing item to review.
16             Q.   Who does that at Goldwater?
17             A.   I don't know.  It would be done at
18     Weststar, and I don't know who does it.
19             Q.   So if I'm understanding correctly, Weststar
20     Mortgage Corporation would be responsible for verifying
21     if a deed of trust has been recorded?  It would be under
22     their purview to do so; is that correct?
23             A.   That's correct, yes.
24             Q.   And they didn't do it here?
25             A.   I don't know what they did in this case.
```

<div align="right">Page 70</div>

```
 1              Q.   Did Weststar ever tell Goldwater at the

 2    time of closing that the deed of trust was recorded?

 3              A.   No.

 4              Q.   Did Weststar ever tell Goldwater Bank that

 5    the deed of trust was unrecorded?

 6                   MR. WAGNER:  Objection.  I just want to

 7    confirm that to your knowledge did Weststar ever tell

 8    Goldwater.

 9                   MR. THOMASON:  That's fair.  To his

10    knowledge.

11                   THE WITNESS:  No.

12    BY MR. THOMASON:  (Continuing)

13              Q.   Is Goldwater Bank affiliated with Weststar

14    Mortgage Corporation?

15              A.   Only by common ownership by one individual,

16    but, otherwise, they are not related.

17              Q.   Okay.  And who has the common ownership?

18              A.   Kent Wiechert, our CEO.

19              Q.   All right.  Let's move on to Exhibit 52.

20    So here we have an email from you to Theo Haugen with

21    Matt Teskey CCed on it basically talking about the

22    Elizarov issue.  You have attached the Weststar payoff

23    statements as well as some estimated settlement

24    statements and talking about the contractor mechanic's

25    lien.  Was this email in connection with trying to
```

Page 71

```
 1    create a -- to deal with the insufficient payoff for

 2    everyone with this part of that process for you?

 3              A.   Part of that process and also verification

 4    on the calculation of Unison's payoff.

 5              Q.   Now, dealing with this contractor

 6    mechanic's lien, we have seen a number of things but we

 7    never saw anything saying that there was -- what do you

 8    know about the contractor mechanic's lien?

 9              A.   I first learned of it when it appeared on

10    a -- an estimated settlement statement that I received

11    from Andrea Cross.

12              Q.   Okay.  But to your knowledge there was --

13    there was never a recorded mechanic's lien; is that

14    correct?

15              A.   I don't know.  It was represented as a

16    mechanic's lien on this estimated settlement statement.

17              Q.   Okay.  And the mechanic's lien was part of

18    the drive to try to figure out a settlement that would

19    work for everyone; is that correct?

20              A.   That's right, yes.

21              MR. WAGNER:  Sorry.  I think you broke up

22    there, Ryan.

23              MR. THOMASON:  Huh?

24              MR. WAGNER:  Sorry.  We missed the last --

25    I don't know if you meant for that to be off the record
```

Page 72

```
 1    or not, but we -- I saw your lips move but I didn't see
 2    the -- I didn't hear it come through.
 3                MR. THOMASON:  Oh, okay.  Thank you.
 4    BY MR. THOMASON:  (Continuing)
 5         Q.   All right.  Why don't we move on to
 6    Exhibit 53?  So it looks like this is an email exchange
 7    between you, Mr. Hill, and Lynette Suina-Cole.  Who is
 8    Lynette Suina-Cole and what's her position at Goldwater
 9    Bank?
10         A.   She's not an employee of Goldwater.  She is
11    an employee of Weststar Mortgage.
12         Q.   Okay.  And what does she do?
13         A.   Her title on this email refers to her as a
14    government ensuring manager, but I was given her name by
15    Matt as somebody that could do the search for me for
16    that original deed of trust.
17         Q.   Okay.  And she says here that she's
18    searching in BlitzDocs.  I would assume BlitzDocs is
19    your -- is Goldwater or Weststar's internal system or
20    database for managing documents or whatnot?
21         A.   Imaging system, yes.
22         Q.   So at least as of the morning of
23    March 26th, 2021, no one at Goldwater Bank had any idea
24    where the original deed of trust was.  Correct?
25         A.   That's correct, yes.
```

Page 73

Omnibus Joint Exhibit Part G, page 1624

```
 1              Q.   And then it looks like later that morning
 2        she found it; is that correct?
 3              A.   Yes.
 4              Q.   Now, does Goldwater Bank have any
 5        documentation that it shows it intended to send the deed
 6        of trust to be recorded in a, you know, file that was
 7        supposed to go to escrow or to First American Title
 8        Company?
 9                   MR. WAGNER:  Objection.  I just want to
10        make sure that it's -- we're clarifying that this is
11        just in his personal knowledge.
12                   MR. THOMASON:  Yes, to his knowledge.  I
13        apologize.  I should have put that in the beginning.
14                   THE WITNESS:  No, I don't have any
15        information or documentation on that.
16        BY MR. THOMASON:  (Continuing)
17              Q.   Now we will go to Exhibit 54.  So here we
18        have an email on the same date, March 26th, 2021, asking
19        Lynette to overnight the deed of trust to you in
20        Phoenix.  Why did you want the deed of trust overnighted
21        to you?
22              A.   I was wanting to get it recorded.
23                   MR. THOMASON:  Let's go to Exhibit 55.
24                   MR. KATZ:  (Complying.)
25                   MR. THOMASON:  My eyesight is going.  I
```

Page 74

Omnibus Joint Exhibit Part G, page 1625

```
1    can't see.
2    BY MR. THOMASON:  (Continuing)
3         Q.   So it looks like this is the email on
4    March 26th, 2021, that you sent to Mr. Haugen giving him
5    an update I would assume on just your negotiations.
6    Now, it says here, "We are going to accept a short
7    payoff of the 675M."  I'm going to assume that was a
8    mistake.  It should have been 675,000 --
9         A.   That's correct.
10        Q.   -- in net proceeds.
11        A.   Yes.
12        Q.   Is that correct?
13        A.   That's right, yes.
14        Q.   And so you were going to -- basically that
15   was going to amount to a $55,000 short payoff for you --
16   for Goldwater Bank; is that correct?
17        A.   Correct.
18        Q.   Okay.  So you state here that Elizarov had
19   agreed to that.  The only question is now whether the
20   sale holds.  It has been a little shaky, according to
21   Elizarov, but maybe that was him negotiating with us.
22   Did you believe that the sale was going to go through or
23   did you -- did you have doubts?
24        A.   I had doubts.  Mr. Elizarov had told me
25   that -- that it might not close.  So I became that much
```

Page 75

```
 1    wrapped up.
 2              MR. KATZ:  All right.  Let's go off the
 3    record please.
 4                    (A recess was taken.)
 5              MR. WAGNER:  Okay.  We have no further
 6    questions.  I think that concludes the deposition.
 7              MR. ALEKSEYEFF:  Let's go off the record --
 8    I was going to say let's go off the record just to
 9    address the stipulations and whatnot.
10              MR. WAGNER:  Okay.
11                  (Discussion off the record.)
12              MR. ALEKSEYEFF:  Counsel, will you all
13    stipulate that according to the rules the witness can
14    have 30 days after the transcript is available to review
15    and make any corrections, and other than that, all
16    counsel may use a certified copy, along with any
17    corrections, for any purposes, including motions for
18    summary judgment and trial?
19              MR. LEVOTA:  So stipulated.
20              MR. KATZ:  Stipulated.
21              MR. BISHARAT:  Yeah, stipulated as well.
22              MR. WAGNER:  So stipulated.
23              MR. ALEKSEYEFF:  Perfect.  Thank you so
24    much.
25                    (Deposition Concluded at 5:13 p.m.)
```

Page  232

Omnibus Joint Exhibit Part G, page 1627

1          I declare under penalty of perjury that the

2     foregoing is true and correct.  Subscribed at

3     _____, California, this_____day of

4     _____, 2022.

5

6

7

8

9          _____

10                    PETER J. HILL

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page  233

```
 1                   C E R T I F I C A T E
 2            I, Maureen Kelly, Oregon CSR No. 00-0364,
     Washington CSR No. 3401, do hereby certify that
 3   prior to the commencement of the examination, PETER J.
     HILL, was duly remotely sworn by me to testify to the
 4   truth, the whole truth and nothing but the truth.
 5            I DO FURTHER CERTIFY that the foregoing is a
     verbatim transcript of the testimony as taken
 6   stenographically by me at the time, place and on the
     date hereinbefore set forth, to the best of my
 7   ability.
 8            I DO FURTHER CERTIFY that I am neither a
     relative nor employee nor attorney nor counsel of
 9   any of the parties to this action, and that I am
     neither a relative nor employee of such attorney or
10   counsel, and that I am not financially interested in
     the action.
11
             Witness my hand at Portland, Oregon, this 15th
12   day of September, 2022.
13
14            Maureen Kelly
15
             MAUREEN KELLY - RPR
16           Certified Shorthand Reporter
             Oregon CSR No. 00-0364
17           Washington CCR No. 3401
18
19
20
21
22
23
24
25
                                                 Page  234
```

Omnibus Joint Exhibit Part G, page 1629

```
 1    Sean C. Wagner, Esq

 2    sean.wagner@wagnerhicks.law

 3                                    September 23, 2022

 4    RE: Goldwater Bank, N.A. vs. Artur Elizarov, Et Al.

 5    9/9/2022, PETER J. HILL, JOB NO. 5429400

 6    The above-referenced transcript has been

 7    completed by Veritext Legal Solutions and

 8    review of the transcript is being handled as follows:

 9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10       to schedule a time to review the original transcript at

11       a Veritext office.

12    X_ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13       Transcript - The witness should review the transcript and

14       make any necessary corrections on the errata pages included

15       below, noting the page and line number of the corrections.

16       The witness should then sign and date the errata and penalty

17       of perjury pages and return the completed pages to all

18       appearing counsel within the period of time determined at

19       the deposition or provided by the Code of Civil Procedure.

20    __ Waiving the CA Code of Civil Procedure per Stipulation of

21       Counsel - Original transcript to be released for signature

22       as determined at the deposition.

23    __ Signature Waived - Reading & Signature was waived at the

24       time of the deposition.

25
```

Page 235

1    __ Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF

2       Transcript - The witness should review the transcript and

3       make any necessary corrections on the errata pages included

4       below, noting the page and line number of the corrections.

5       The witness should then sign and date the errata and penalty

6       of perjury pages and return the completed pages to all

7       appearing counsel within the period of time determined at

8       the deposition or provided by the Federal Rules.

9    __ Federal R&S Not Requested - Reading & Signature was not

10      requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page  236

Omnibus Joint Exhibit Part G, page 1631

```
 1   Goldwater Bank, N.A. vs. Artur Elizarov, Et Al.

 2   PETER J. HILL (#JOB NO 5429400)

 3                 E R R A T A   S H E E T

 4   PAGE_____ LINE_____ CHANGE_____

 5   _____

 6   REASON_____

 7   PAGE_____ LINE_____ CHANGE_____

 8   _____

 9   REASON_____

10   PAGE_____ LINE_____ CHANGE_____

11   _____

12   REASON_____

13   PAGE_____ LINE_____ CHANGE_____

14   _____

15   REASON_____

16   PAGE_____ LINE_____ CHANGE_____

17   _____

18   REASON_____

19   PAGE_____ LINE_____ CHANGE_____

20   _____

21   REASON_____

22

23   _____      _____

24   PETER J. HILL                            Date

25
```

Page 237

# **EXHIBIT 92**
# **Hill Email to Unison re Completion of Sale to Howlett**

| | |
|---|---|
| **From:** | Theo Haugen |
| **To:** | Peter Hill |
| **Subject:** | Re: Elizarov |
| **Date:** | Monday, March 29, 2021 1:39:42 PM |

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Peter,

Thanks for the update and we'll see how the sale goes. We haven't received any new communication from them.

On Fri, Mar 26, 2021 at 11:37 AM Peter Hill <PHill@goldwaterbank.com> wrote:

> Theo,
>
> In the way of an update on Elizarov . . .
>
> We are going to accept a short payoff of the $ 675M in net proceeds of the sale after all lines and expenses are covered.  This amount to a $ 55M short payoff for us.
>
> Elizarov has agreed to that.  The only question now is whether the sale holds.  It has been a little shaky, according to Elizarov, but maybe that was him negotiating with us.  It is scheduled to close on 3/30.
>
> Pete
>
> ***Peter Hill***
>
> ***EVP - Chief Credit Officer***
>
> **Goldwater Bank, N.A.**
>
> 2525 E Camelback Road Suite 1100
>
> Phoenix, Arizona 85016
>
> (O) 480.281.8207
>
> (C)  602-291-5444
>
> (F)  480.281.8222
>
> www.goldwaterbank.com
>
> **Confidentiality Notice:** The contents of this email communication are confidential and may contain information that is privileged and/or exempt from disclosure under applicable law. It is intended solely for use of the individual or entity to which this email is addressed. If you are not one of the named recipient(s) or otherwise have reason to believe that you have received this message in error, please notify the sender and immediately delete this message and any attachments. Any unauthorized use, retention, dissemination, forwarding, printing, or copying of this email is strictly prohibited.

> **Confidentiality Notice:** The contents of this email communication are confidential and may contain information that is privileged and/or exempt from disclosure under applicable law. It is intended solely for use of the individual or entity to which this email is addressed. If you are not one of the named recipient(s) or otherwise have reason to believe that you have received this message in error, please notify the sender and immediately delete this message and any attachments. Any unauthorized use, retention, dissemination, forwarding, printing, or copying of this email is strictly prohibited.

> **Be aware!** Online Banking Fraud is on the rise. This institution does not issue wiring instructions for mortgage originations. If you receive an email containing WIRE TRANSFER INSTRUCTIONS call your Title Company or Settlement Agent's escrows officer immediately to verify the information prior to sending funds.



Unison Home Ownership Investors
650 California St. Suite 1800
San Francisco, CA 94108
www.unison.com

T: 415.992.4200

CONFIDENTIALITY NOTICE: The information contained herein, and any documents, files or email messages provided with it, may contain confidential, proprietary and/or trade secret information that is legally privileged. If you are not the intended recipient, or the person responsible for delivering these materials to the intended recipient, you are hereby on notice of its status. Any disclosure, copying, distribution or use of any information contained in or attached to this transmission is STRICTLY PROHIBITED except with respect to your evaluation of whether to enter into a Unison HomeOwner Agreement or a Unison HomeOwner Agreement. If you have received this transmission in error, please notify us immediately by reply email, by forwarding this to info@unison.com, or by telephone at (415) 992-4200. In addition, please destroy all records of the transmission and any attachments thereto without reading or saving in any manner. Thank you.

**EXHIBIT 55**

Omnibus Joint Exhibit Part G, page 1634

**EXHIBIT 93**
**Transcript of Deposition of Brittany Shaw**
**(Additional Excerpts)**

```
 1                    UNITED STATES DISTRICT COURT

 2           CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

 3                            ---oOo---

 4      GOLDWATER BANK, N.A.,

 5                         Plaintiff,

 6      -vs-                             NO.
                                         5:21-cv-00616-JWH-SP

 7      ARTUR ELIZAROV; UNISON AGREEMENT

        CORP.; SCOTT HOWLETT; BANK OF THE

 8      WEST; and ILYA ALEKSEYEFF,

 9                         Defendants.
        _____/

10

11

12

13

14

15

16           VIDEOCONFERENCE DEPOSITION OF BRITTANY SHAW

17                        November 7, 2022

18

19

20

21

22      Reported by Nicolette Smith, RPR, CSR 11275, WA CCR 2568

23      Job No. 5550557

24      Pages: 1 - 113

25

                                                        Page 1
```

Omnibus Joint Exhibit Part G, page 1636

```
 1                    I N D E X
 2
 3                                              PAGE
 4    EXAMINATION BY MR. KATZ                     5
 5    EXAMINATION BY MS. HAIDAR                  93
 6    EXAMINATION BY MR. WAGNER                  97
 7
 8
 9
10                  E X H I B I T S
11    DEFENDANTS'
                                               PAGE
12
         Exhibit 57     Document on Goldwater    35
13                      letterhead, which says "Early
                        Closing Disclosure Review
14                      Checklist"
15       Exhibit 77     Goldwater Bank monthly   51
                        mortgage statement for Artur
16                      Elizarov
17       Exhibit 78     Weststar statement dated 53
                        7/17/2020
18
         Exhibit 79     Email, dated March 30th, 2021    54
19
         Exhibit 80     Email chain, the top of which    72
20                      is March 30th, 2021, at 4:42
                        p.m.
21
         Exhibit 46     Email from March 25th    76
22
23
24
25
                                         Page  2
```

```
 1              TELEPHONIC DEPOSITION OF BRITTANY SHAW

 2

 3          BE IT REMEMBERED, that pursuant to Notice and on

 4    this 7th day of November, 2022, commencing at the hour of

 5    1:43 p.m., via videoconference, before me, NICOLETTE

 6    SMITH, RPR, CSR No. 11275, a Certified Shorthand

 7    Reporter, licensed by the State of California, appeared

 8    BRITTANY SHAW, produced as a witness in said action, and

 9    being by me first duly sworn, pursuant to stipulation,

10    was thereupon examined as a witness in said cause.

11

12                         ---oOo---

13    (All appearances were made via Zoom)

14    APPEARANCES:

15    Appearing on behalf of the Plaintiff:

16                     JOHN FOREST HILBERT

                       Hilbert & Satterly

17                     409 Camino Del Rio South, Suite 104

                       San Diego, CA 92108

18                     (619) 795-0300

                       jhilbert@hscallaw.com

19

20    Appearing pro hac vice on behalf of the Plaintiff:

21                     SEAN C. WAGNER

                       MEAGAN ALLEN

22                     Wagner Hicks

                       831 East Morehead Street, Suite 860

23                     Charlotte, NC 28202

                       (704) 705-7538

24                     sean.wagner@wagnerhicks.law

25
```

                                                    Page  3

Omnibus Joint Exhibit Part G, page 1638

1    Appearing on behalf of the Defendants and
     Cross-Complainants Scott Howlett and Bank of the West:
2
                         JEREMY T. KATZ
3                        Hall Griffin
                         1851 East First Street, 10th Floor
4                        Santa Ana, CA 92705-4052
                         (714) 918-7000
5                        jkatz@hallgriffin.com
6
     Appearing in pro per on behalf of the Defendants Artur
7    Elizarov and Ilya Alekseyeff:
8                        ILYA ALEKSEYEFF
                         Loia, Inc.
9                        8721 Santa Monica Blvd., Suite 119
                         West Hollywood, CA 90069
10                       (213) 537-4592
                         ilya@loia.legal
11
12   Appearing on behalf of the Defendant Unison Agreement
     Corp:
13
                         JENNIFER HAIDAR
14                       Orsus Gate
                         16 N. Marengo Avenue, Suite 316
15                       Pasadena, CA 91101
                         (213) 973-2052
16                       jhaidar@orsusgate.com
17
18
19
20
21
22
23
24
25

                                                    Page  4

Omnibus Joint Exhibit Part G, page 1639

```
 1                       BRITTANY SHAW,

 2                     sworn as a witness,

 3                     testified as follows:

 4    EXAMINATION BY MR. KATZ:

 5         Q.  All right.  Good afternoon and/or evening,

 6    Ms. Shaw, as the case may be in your location.  My name

 7    is Jeremy Katz.  I'm an attorney for Scott Howlett and

 8    Bank of the West in this litigation that we're calling

 9    Goldwater vs. Elizarov, et al.  Welcome to today's

10    deposition.  Thank you for attending.  Will you please

11    state and spell your name for the record?

12         A.  Brittany Shaw.  B-r-i-t-t-a-n-y, S-h-a-w.

13         Q.  And are you comfortable speaking in English?

14    Are you fluent in English?

15         A.  Yes.

16         Q.  Okay.  I'm going to ask you some questions

17    today.  If for any reason one of my questions is unclear,

18    let me know.  I'll try to rephrase it so that you can

19    understand it.  But if you respond to my question, I'm

20    going to assume that you understood the question.  Do you

21    understand?

22         A.  Yes.

23         Q.  And you think that's a fair back-and-forth?

24         A.  Yes.

25         Q.  Okay.  If something is unclear, let me know,
```

<div align="right">Page 5</div>

1    servicer in your 25 years?

2        A.  I have not.

3        Q.  Do you have any understanding of what an outside

4    loan servicer is supposed to do to board a loan?

5        A.  I do not.

6        Q.  Do you know, with respect to Mr. Elizarov's

7    loan, who was responsible for verifying it had gotten --

8    that the deed of trust had been promptly recorded?

9        A.  I don't know.

10       Q.  And do you know who at Weststar -- sorry -- who

11   at Weststar onboards loans?

12       A.  I'm not sure their process.  I'm not sure, no.

13       Q.  And do you know who at Goldwater onboards

14   residential loans?

15           MR. WAGNER:  Objection.  That assumes facts not

16   in evidence.

17           You can answer.

18           THE WITNESS:  I don't know.

19   BY MR. KATZ:

20       Q.  I'll represent to you, that in the complaint

21   that Goldwater filed, it mentions that the loan was

22   originated and sometime thereafter the servicing of the

23   Elizarov loan was transferred to Weststar.  Do you know

24   anything about that service transfer process?

25       A.  I don't know.

                                              Page 75

```
 1          Q.  Do you know who at Goldwater would know about

 2     that service transfer process?

 3          A.  I don't know who does that.

 4          Q.  Would you expect Mr. Hill to know about that

 5     service transfer process?

 6              MR. WAGNER:  Objection.  Calls for speculation

 7     regarding Mr. Hill's knowledge.

 8              THE WITNESS:  I don't know.

 9     BY MR. KATZ:

10          Q.  Do you know if Mr. Hill supervises the

11     residential lending side of Goldwater's business?

12          A.  I don't know.

13              (Defendants' Exhibit No. 46 marked for

14              identification.)

15     BY MR. KATZ:

16          Q.  I'm going to show you an email now that's

17     premarked as Exhibit 46, an email from March 25th.  Are

18     you able to see that on your screen?

19          A.  Yes.

20          Q.  Do you recognize this email?

21          A.  I don't recall it.

22          Q.  Are you familiar with Devin Lucero-Miller at

23     Weststar Loan?

24          A.  Yes.

25          Q.  And what is your understanding of who Mr. -- I
```

Page 76

```
 1   don't want to assume.  Mr. or Mrs. Lucero-Miller at
 2   Weststar, what is your understanding of their position?
 3       A.   I don't know her position.  I just know that
 4   Annette Baca probably would have referred me to Devin to
 5   request information.
 6       Q.   All right.  I'm going to jump down a page or so.
 7   So on this, we're looking at page 3 of 46, which is just
 8   sort of a trailing end of an email trail.  The
 9   substantive portion really starts up here on page 2, on
10   March 8th, 2011.  It appears to be an email from you to
11   Devin Lucero-Miller asking for help with the request.
12            Is this what -- the email where you requested to
13   Weststar for information about the Elizarov loan?
14            MR. WAGNER:  Objection.  I guess there's two.
15   One, I think you said 2011.
16            MR. KATZ:  Twenty -- 2021.
17            MR. WAGNER:  And then secondarily, are you
18   referring -- are we assuming there's just one request?  I
19   guess it's a little ambiguous on the questioning here.
20            MR. KATZ:  Sure.  I'll ask a foundational
21   question.
22   BY MR. KATZ:
23       Q.   You mentioned that you made a request to
24   Weststar for loan documents regarding Mr. Elizarov's
25   loan.  Did you make one request or more than one request?
```

Page 77

Omnibus Joint Exhibit Part G, page 1643

1          A.  I don't remember.

2          Q.  To the best of your knowledge, is this email

3    we're looking at on page 2 of 46, dated March 8th, 2021,

4    to Lucero-Miller -- is this the first time that you had

5    requested loan documentation for Mr. Elizarov's loan,

6    from Weststar?

7          A.  I don't recall.

8          Q.  Do you recall any requests for -- that you made

9    to Weststar prior to March 8th, 2021, about

10   Mr. Elizarov's loan?

11         A.  I don't.

12         Q.  In this email on March 8th -- any reason to

13   believe that this is not an email that you sent to Devin

14   Lucero-Miller on or about March 8th, 2021?

15         A.  That's when it's dated, yes.

16         Q.  So in this March 8th email, you're asking for

17   documentation for Elizarov, a loan history.  What did you

18   mean by "loan history"?

19         A.  A printout of the loan history.

20         Q.  And what would you expect to receive in response

21   to a request for a printout of the loan history?

22         A.  The history of the payments and/or any debits or

23   credits to the loan since January 1st of 2020.

24         Q.  And did you receive from Weststar a loan history

25   for Mr. Elizarov's loan, in response to your request?

<div align="right">Page 78</div>

```
 1        A.  I don't specifically remember, but I assume that
 2   I did since we didn't ask -- I mean, I assume we did.
 3        Q.  Do you have any recollection of having to hound
 4   Weststar to go get that information, other than sending
 5   this one email?
 6        A.  No.
 7        Q.  To the best of your knowledge, you sent this
 8   email and you -- in response, you got the information
 9   you -- you got the information you requested and/or
10   needed?
11        A.  Yes.
12        Q.  Did you have to send any follow-up emails to
13   Weststar to get information that you needed?
14        A.  I don't recall.
15        Q.  And in this email on March 8th, you're asking
16   for loan statements, January 2020 to current.  The best
17   of your knowledge, did you receive those?
18        A.  Again, I don't recall specifically.
19        Q.  But you recall receiving some form of loan
20   statements?
21        A.  I don't recall exactly what I received.
22        Q.  I'll ask sort of on a global sense.  Is there
23   any documents that you requested from Weststar that you
24   did not receive?
25            MR. WAGNER:  Objection.  She's testified that
```

Page 79

Omnibus Joint Exhibit Part G, page 1645

```
 1      she doesn't recall this specific exchange.

 2              THE WITNESS:  I don't recall.

 3      BY MR. KATZ:

 4          Q.  All right.  You asked -- in this email, you

 5      asked for the promissory note, and do you recall

 6      receiving a promissory note in response to your request?

 7          A.  Again, I don't remember specifically what I

 8      received and didn't receive.

 9          Q.  But you did receive a deed of trust, right?

10          A.  Yes.  An unrecorded deed of trust.

11          Q.  An unrecorded deed of trust.

12              MR. WAGNER:  And just to clarify.  We're

13      talking -- she said she didn't recall what she received

14      with regard to this request.  Obviously, earlier we

15      talked about a different request where she talked

16      specifically about a deed of trust, an unrecorded deed of

17      trust.  I just want to make sure the record's clear on

18      that.

19      BY MR. KATZ:

20          Q.  Well, let -- are there any other requests that

21      you made other than this request on March 8th, 2021, to

22      get a deed of trust from Weststar?

23          A.  Not that I recall.

24          Q.  Jumping up a page.  It appears to be Miss Devin

25      Lucero-Miller's response, also dated March 21, 2008
```

<div align="right">Page 80</div>

<div align="right">Omnibus Joint Exhibit Part G, page 1646</div>

```
 1     (sic).  Do you recall receiving that from Miss Miller?
 2          A.  I don't recall that specific email.
 3          Q.  Any reason to believe that you did not receive
 4     the March 8th, 2021, email at approximately 9:32 a.m.
 5     from Devin Lucero-Miller?
 6          A.  No.
 7          Q.  And up at the top here, on March 25th, 2021,
 8     it's an email from you to Mr. Hill, right?
 9          A.  Yes.
10          Q.  Do you remember sending Mr. Hill, on or about
11     March 25th, 2021, copies of documents for Mr. Elizarov's
12     loan?
13          A.  I don't recall that.
14          Q.  I mean, does this -- any reason to believe that
15     this is not, at the top, a copy of your March 25th, 2021,
16     email to Mr. Hill?
17          A.  No.
18          Q.  And in it, you purport to attach a note, a deed
19     of trust, statements, and pay history.  I'm going to
20     scroll down for a minute so you can see.  As part of this
21     document, there is a deed of trust, which is lengthy;
22     there are loan statements on the Weststar letterhead.
23              MR. HILBERT:  You're referring now just to your
24     exhibit.
25              MR. KATZ:  I'm scrolling through the exhibit.
```

Page 81

Omnibus Joint Exhibit Part G, page 1647

```
 1              MR. HILBERT:  Right.  That these documents are
 2      attached to this email in -- as your Exhibit 46.
 3              MR. KATZ:  Correct.
 4      BY MR. KATZ:
 5          Q.  There's a pay history page, and they're all
 6      consecutively Bates-stamped as production from Goldwater.
 7              To the best of your knowledge, are these the
 8      documents that you forwarded to Mr. Hill on March 25th,
 9      2021?
10          A.  Yes.
11          Q.  So as of March 25th, 2021, at 5:33 p.m. or
12      thereabouts, Mr. Hill would have had in his possession --
13      his email a copy of at least the unrecorded deed of trust
14      for the Elizarov loan, right?
15          A.  Yes.
16          Q.  And I believe you testified earlier that
17      Mr. Hill handed you a wet-ink copy -- or sorry -- a
18      wet-ink original of the Elizarov deed of trust.  Do you
19      recall whether that was before or after March 25th, 2021?
20          A.  I don't recall the date.
21          Q.  But you do not get the original deed of trust
22      from Weststar via email.  You got it from Mr. Hill by a
23      personal hand delivery?
24          A.  Correct.
25          Q.  So this email chain with Devin Lucero-Miller
```

Page 82

1    March 8th through March 25th, that's not the way that you

2    got the original Elizarov deed of trust.

3         A.   I don't recall.

4              MR. WAGNER:  Well, Jeremy, just to clarify.

5    Right?  I mean, if you're talking about how she would

6    have received the original, the only thing she could have

7    received here would have been a copy, right?  The

8    original couldn't have come through email.  Maybe I

9    misunderstand your line of questioning, but do you mind

10   clarifying?

11             MR. KATZ:  That's a fair point.

12   BY MR. KATZ:

13        Q.   I would not expect an original wet-ink to come

14   on an email.  I'm not trying to trick you.  I'll ask the

15   question a slightly different way.

16             At least on this email chain, it looks like

17   Mr. -- or Miss Devin Lucero-Miller is sending you

18   documents on May 8th, and on May 25th, you're forwarding

19   them to Mr. Hill, correct?

20             MR. HILBERT:  Objection.  Misstates her

21   testimony.  Foundation.  Or maybe I misunderstood your

22   question.  If you want to repeat it.

23   BY MR. KATZ:

24        Q.   It looks like, to me, in this email chain, that

25   Devin Lucero-Miller is forwarding documents to you in an

                                                   Page 83

1    will maintain the custody of the original, per code, and

2    that the parties stipulate to -- that they can use a

3    certified copy of the original, for all purposes,

4    including for use at trial.

5              MR. WAGNER:  That's correct.

6              MS. ALLEN:  Yes.

7              MR. KATZ:  All right.  Thank you, madam court

8    reporter.  We appreciate the help.

9              THE COURT REPORTER:  All right.  Thank you.

10             (Whereupon the deposition was concluded

11             at 4:36 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                        Page 108

Omnibus Joint Exhibit Part G, page 1650

```
1                    SIGNATURE OF DEPONENT

2

3           I, the undersigned, BRITTANY SHAW, do hereby

4   certify that I have read the foregoing deposition and

5   find it to be a true and accurate transcription of my

6   testimony, with the following corrections, if any:

7   PAGE      LINE            CHANGE

8   _____     _____    _____

9   _____     _____    _____

10  _____     _____    _____

11  _____     _____    _____

12  _____     _____    _____

13  _____     _____    _____

14  _____     _____    _____

15  _____     _____    _____

16  _____     _____    _____

17  _____     _____    _____

18  _____     _____    _____

19  _____     _____    _____

20  _____     _____    _____

21  _____     _____    _____

22  _____     _____    _____

23

24                    _____

                      BRITTANY SHAW, Date

25

                                             Page 109
```

```
 1                    REPORTER'S CERTIFICATE

 2

 3            I, NICOLETTE SMITH, a Shorthand Reporter, State

 4     of California, do hereby certify:

 5            That BRITTANY SHAW, in the foregoing deposition

 6     named, was present and sworn by me as a witness in the

 7     above-entitled action at the time and place therein

 8     specified.

 9            That said deposition was taken before me at said

10     time and place, and was taken down in shorthand by me, a

11     Certified Shorthand Reporter of the State of California,

12     and was thereafter transcribed into typewriting, and that

13     the foregoing transcript constitutes a full, true and

14     correct report of said deposition and of the proceedings

15     which took place.

16            That before completion of the proceedings,

17     review of the transcript was requested.

18            IN WITNESS WHEREOF, I have hereunder subscribed

19     my hand this 20th day of November 2022.

20

21

22     _____

              NICOLETTE SMITH, RPR

23            CSR NO. 11275

              State of California

24

25
```

Veritext Legal Solutions
866 299-5127

Omnibus Joint Exhibit Part G, page 1652

```
1    MEAGAN ALLEN

2    meagan.allen@warnerhicks.law

3                                     November 20, 2022

4    RE: GOLDWATER BANK, N.A. VS. ARTUR ELIZAROV

5    NOVEMBER 7, 2022, BRITTANY SHAW, JOB NO. 5550557

6    The above-referenced transcript has been

7    completed by Veritext Legal Solutions and

8    review of the transcript is being handled as follows:

9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10       to schedule a time to review the original transcript at

11       a Veritext office.

12   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13       Transcript - The witness should review the transcript and

14       make any necessary corrections on the errata pages included

15       below, noting the page and line number of the corrections.

16       The witness should then sign and date the errata and penalty

17       of perjury pages and return the completed pages to all

18       appearing counsel within the period of time determined at

19       the deposition or provided by the Code of Civil Procedure.

20   __ Waiving the CA Code of Civil Procedure per Stipulation of

21       Counsel - Original transcript to be released for signature

22       as determined at the deposition.

23   __ Signature Waived - Reading & Signature was waived at the

24       time of the deposition.

25
```

Page 111

Omnibus Joint Exhibit Part G, page 1653

```
 1    _X_Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF

 2       Transcript - The witness should review the transcript and

 3       make any necessary corrections on the errata pages included

 4       below, noting the page and line number of the corrections.

 5       The witness should then sign and date the errata and penalty

 6       of perjury pages and return the completed pages to all

 7       appearing counsel within the period of time determined at

 8       the deposition or provided by the Federal Rules.

 9    __ Federal R&S Not Requested - Reading & Signature was not

10       requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 112

Omnibus Joint Exhibit Part G, page 1654

```
 1    RE: GOLDWATER BANK, N.A. VS. ARTUR ELIZAROV

 2    BRITTANY SHAW, JOB NO. 5550557

 3                    E R R A T A   S H E E T

 4    PAGE_____ LINE_____ CHANGE_____

 5    _____

 6    REASON_____

 7    PAGE_____ LINE_____ CHANGE_____

 8    _____

 9    REASON_____

10    PAGE_____ LINE_____ CHANGE_____

11    _____

12    REASON_____

13    PAGE_____ LINE_____ CHANGE_____

14    _____

15    REASON_____

16    PAGE_____ LINE_____ CHANGE_____

17    _____

18    REASON_____

19    PAGE_____ LINE_____ CHANGE_____

20    _____

21    REASON_____

22

23    _____   _____

24    WITNESS                               Date

25

                                          Page 113
```

# EXHIBIT 94
# Transcript of Deposition of Goldwater's First Rule 30(b)(6) Witness - Christine Overbeck (Additional Excerpts)

```
 1                  UNITED STATES DISTRICT COURT

 2        NORTHERN DISTRICT OF CALIFORNIA, EASTERN DIVISION

 3

 4     GOLDWATER BANK, N.A.,

 5               Plaintiff,

 6               vs.                      No. 21-cv-00616-JWH-SP

 7     ARTUR ELIZAROV; UNISON

       AGREEMENT CORP.; SCOTT

 8     HOWLETT; BANK OF THE WEST; and

       ILYA ALEKSEYEFF,

 9

                 Defendants.

10     _____

11     AND RELATED CROSS-ACTIONS

       _____

12

13

14        REMOTE DEPOSITION OF PERSON MOST KNOWLEDGEABLE AT

15           GOLDWATER BANK, N.A., CHRISTINE OVERBECK

16                      Phoenix, Arizona

17                    Friday, May 12, 2023

18                        Volume I

19

20

21     Reported by:

       CLAUDIA A. BETTUCCHI

22     CSR No. 12214

23     JOB No. 5841720

24

25     PAGES 1 - 168


                                              Page 1
```

Omnibus Joint Exhibit Part G, page 1657

```
 1                    UNITED STATES DISTRICT COURT
 2          NORTHERN DISTRICT OF CALIFORNIA, EASTERN DIVISION
 3
 4      GOLDWATER BANK, N.A.,
 5                Plaintiff,
 6                vs.                         No. 21-cv-00616-JWH-SP
 7      ARTUR ELIZAROV; UNISON
        AGREEMENT CORP.; SCOTT
 8      HOWLETT; BANK OF THE WEST; and
        ILYA ALEKSEYEFF,
 9
                  Defendants.
10      _____
11      AND RELATED CROSS-ACTIONS
        _____
12
13
14
15              Deposition of Person Most Knowledgeable at
16      Goldwater Bank, N.A., CHRISTINE OVERBECK, taken remotely
17      via Zoom videoconference on behalf of Defendants; with
18      the witness being at Phoenix, Arizona, outside the
19      physical presence of the court reporter; beginning at
20      10:08 a.m. and ending at 4:08 p.m. on Friday, May 12,
21      2023, before CLAUDIA A. BETTUCCHI, Certified Shorthand
22      Reporter No. 12214.
23
24
25
                                                        Page  2
```

Omnibus Joint Exhibit Part G, page 1658

```
 1      APPEARANCES (remotely):

 2

 3    For Plaintiff and Cross-Defendant Goldwater Bank, N.A.:
 4        WAGNER HICKS, PLLC
          BY:  ABBEY M. KRYSAK, Esq.
 5             SEAN C. WAGNER, Esq.
          831 E. Morehead Street, Suite 860
 6        Charlotte, North Carolina 28202
          704.705.7538
 7        abby.krysak@wagnerhicks.law
          sean.wagner@wagnerhicks.law
 8
          HILBERT & SATTERLY, LLP
 9        BY:  JOSEPH A. LEVOTA, Esq.
          409 Camino Del Rio South, Suite 104
10        San Diego, California 92108
          619.795.0300
11        jlevota@hscallaw.com
12
      For Defendant and Cross-Complainant Scott Howlett and
13    Defendant BMO Harris Bank, N.A., Successor by Merger to
      Bank of the West:
14
          HALL GRIFFIN, LLP
15        BY:  JEREMY T. KATZ, Esq.
               KASANDRA C. GOLDBERG, Esq.
16        1851 East First Street, 10th Floor
          Santa Ana, California 92705-4052
17        714.918.7000
          jkatz@hallgriffin.com
18        kgoldberg@hallgriffin.com
19
      For Defendant and Cross-Defendant Artur Elizarov and
20    Defendant Ilya Alekseyeff (in Pro Per):
21        LOIA, INC. APLC
          BY:  ILYA ALEKSEYEFF, Esq.
22        727 W. 7th Street, PH 1-13
          Los Angeles, California 90017
23        213.537.4592
          ilya@loia.legal
24

25
                                              Page  3
```

Omnibus Joint Exhibit Part G, page 1659

```
 1                           INDEX

 2    WITNESS                              EXAMINATION

 3    CHRISTINE OVERBECK

      Volume I

 4

 5                     BY MR. KATZ                     6

 6

 7

 8

 9                         EXHIBITS

10    EXHIBIT      DESCRIPTION                       PAGE

11    Exhibit 140  Weststar Mortgage/Loan Servicing    88
                   Albuquerqu; GOLDWATER 566 to 575
12

      Exhibit 146  Email from Peter Hill to Theo Haugen  143
13                 dated March 25, 2021; GOLDWATER 1666
                   to 1669
14

15

16

17          PREVIOUSLY MARKED EXHIBITS FOR REFERENCE

18    EXHIBIT      BATES                            PAGE

19    Exhibit 2    EOTW 23 to 32                     125

20    Exhibit 6    EOTW 164 to 180                   100

21    Exhibit 7    EOTW 181                          125

22    Exhibit 8    EOW 119 to 120                    125

23    Exhibit 10   EOW 185 to 186                    125

24    Exhibit 16   EOW 154 to 170                    122

25    Exhibit 18   GOLDWATER 481 to 484               62

                                           Page  4
```

```
 1    INDEX (continued)

 2

 3          PREVIOUSLY MARKED EXHIBITS FOR REFERENCE

 4    EXHIBIT        BATES                            PAGE

 5    Exhibit 24   (No Bates stamps) 9 pages           53

 6    Exhibit 25   EOW 119 to 125                      125

 7    Exhibit 53   GOLDWATER 1151 to 1152               76

 8    Exhibit 70   (No Bates stamps) 2 pages            62

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 5

```
 1                 Phoenix, Arizona, Friday, May 12, 2023

 2                          10:08 a.m.

 3

 4                      CHRISTINE OVERBECK

 5      having been administered an oath, was examined and

 6      testified as follows:

 7

 8                         EXAMINATION

 9      BY MR. KATZ:

10          Q    Good morning, Ms. Overbeck.

11          A    Good morning.

12          Q    Have you ever had your deposition taken

13      before?

14          A    No.

15          Q    Do you understand that today you are

16      testifying at this deposition the same as if you were

17      testifying in a court of law, in front of a jury?

18          A    Yes.

19          Q    Is there any reason why you would be unable to

20      give accurate and truthful testimony today?

21          A    No.

22          Q    Are you feeling well enough to testify today?

23          A    Yes, sir.

24          Q    And without going into any specific condition,

25      do you have any medical conditions or are you on any
```

Page 6

```
 1        A     Yes.

 2        Q     And do you understand that to mean a deed of

 3   trust?

 4        A     Yes.

 5        Q     How does -- at the time that Goldwater made

 6   the loan to Mr. Elizarov, how did Goldwater communicate

 7   to the escrow holder for that transaction what was to be

 8   done with the original wet-ink loan documents?

 9              MS. KRYSAK:  Objection; form, outside the

10   scope.  Did you say wet ink?

11   BY MR. KATZ:

12        Q     I'll say original.  Let's do this:

13              Original documents are ones signed by the

14   borrower, right?

15        A     Yes.

16        Q     Does Goldwater have any sort of policy and

17   procedure in place as of 2019 as to whether original

18   loan documents had to be signed with a pen, as opposed

19   to typed?

20              MS. KRYSAK:  Objection; form, outside the

21   scope.

22              THE WITNESS:  I'm not aware of a policy

23   requiring a wet signature.  But the loan documents, to

24   be valid, would need to be signed by the borrower or

25   borrowers.
```

<div align="right">Page 32</div>

 1    BY MR. KATZ:

 2        Q    And by signed by the borrower --

 3        A    And any documents that need to be notarized.

 4        Q    And when you say signed by the borrowers, does

 5    that mean with a pen or with an authentication system,

 6    like DocuSign?

 7             MS. KRYSAK:  Objection; form, outside the

 8    scope.

 9             THE WITNESS:  Our documents at that time were

10    hand-signed.

11    BY MR. KATZ:

12        Q    Okay.  So if I'm referring to a wet-ink

13    signature, I'm referring to something that was hand-

14    signed.  Okay?

15        A    Okay.

16        Q    So what was Goldwater's policy and procedure

17    for communicating to the escrow holder for a transaction

18    how the wet -- the signed loan documents should be

19    handled and transmitted?

20             MS. KRYSAK:  Objection; form, outside the

21    scope.

22             THE WITNESS:  The loan documents are delivered

23    to either an escrow company or title company or

24    attorney, depending on what state, by our closing

25    department to that person via email.

                                                Page 33

1    BY MR. KATZ:

2        Q    And does Goldwater prepare a set of lenders'

3    instructions to the escrow for a transaction like

4    Mr. Elizarov's transaction?

5            MS. KRYSAK:  Objection; form, outside the

6    scope.

7            THE WITNESS:  Correct, yes.

8    BY MR. KATZ:

9        Q    Have you reviewed the lenders' instructions

10   that Goldwater prepared for Mr. Elizarov's transaction?

11       A    No, I have not.

12       Q    But is it Goldwater's regular practice to

13   prepare lender instructions for residential real estate

14   loans to inform escrow how to handle loan documents?

15           MS. KRYSAK:  Objection; form, outside the

16   scope.

17           THE WITNESS:  The lenders' instructions

18   provide guidance to the escrow company of the documents

19   that are included and maybe a missing condition that the

20   borrower is supposed to bring to the signing table.

21   They are instructions.

22   BY MR. KATZ:

23       Q    And are those instructions prepared by

24   Goldwater?

25       A    They are prepared by a Goldwater employee in

                                              Page 34

Omnibus Joint Exhibit Part G, page 1665

```
 1     the closing department.

 2         Q    What is the difference between the closing

 3     department that you just described and the post-closing

 4     department that we were previously discussing?

 5              MS. KRYSAK:  Objection; form, outside the

 6     scope.

 7              THE WITNESS:  Closing is our closing

 8     department, so the loan has not closed yet.  They handle

 9     the loan documents and balancing of the file.  When it's

10     signed by the consumer and the loan funds, then, once

11     that loan funds, it goes to post-closing department,

12     which is two different departments.

13     BY MR. KATZ:

14         Q    And what does the post-closing department do?

15              MS. KRYSAK:  Objection; form, outside the

16     scope.

17              THE WITNESS:  Post-closing manages closed

18     loans and prepares to either sell to Weststar or to an

19     investor.

20     BY MR. KATZ:

21         Q    When you say sell to Weststar, what do you

22     mean?

23              MS. KRYSAK:  Objection; form, outside the

24     scope.

25              THE WITNESS:  What I refer to as sell, meaning
```

                                                    Page 35

1    we fund the loan at Goldwater Bank and we sell the loan

2    to an investor.   For example, Fannie Mae, Freddie Mac,

3    they buy the loan.

4          MS. KRYSAK:   Mr. Katz, I hate to interrupt,

5    but we'd like to go ahead and take a quick five-minute

6    break.

7          MR. KATZ:   Sure.   I've got 10:47.   You want to

8    come back at 10:55?

9          MS. KRYSAK:   That sounds great.   Thank you.

10          (Recess.)

11          MR. KATZ:   All right.   While we were off,

12    Mr. Alekseyeff politely reminded us that counsel have

13    not yet officially stated their appearance on the

14    record, so I will do so and start.

15          I am Jeremy Katz.   I'm with Hall Griffen,

16    attorneys of record for Defendant and Cross-Complaint

17    Scott Howlett and Defendant BMO Harris Bank, N.A.,

18    successor by merger through Bank of the West.   I will

19    from time to time refer to Bank of the West as BOTW.

20          MR. ALEKSEYEFF:   Good morning.   My name is

21    Ilya Alekseyeff.   I represent Defendant Artur Elizarov,

22    as well as myself as a defendant.

23          MS. KRYSAK:   Good morning.   My name is Abbey

24    Krysak, and I represent Goldwater Bank, N.A.

25          MR. WAGNER:   My name is Sean Wagner.   I

Page 36

1     represent Goldwater Bank.

2             MR. LEVOTA:  Joseph LeVota; Goldwater Bank.

3             MS. GOLDBERG:  Kasandra Goldberg from Hall

4     Griffin representing Defendant and Cross-Complainant

5     Scott Howlett and Defendant BMO Harris Bank, N.A., a

6     successor by merger through Bank of the West.

7             MR. KATZ:  All right.  Administrative tasks

8     achieved.  Thank you so much, Ilya.

9        Q    Before we left on the break, you had made

10    reference to selling the loan to Weststar.  What did you

11    mean by that?

12            MS. KRYSAK:  Objection; form, outside the

13    scope.

14            THE WITNESS:  I am not prepared to answer that

15    question right now.

16    BY MR. KATZ:

17       Q    Well, you used the phrase sell the loan to

18    Weststar.  What did you mean by that when you used that

19    phrase?

20            MS. KRYSAK:  Objection; form, outside the

21    scope.

22            THE WITNESS:  I'm not prepared to answer that

23    question right now.

24    BY MR. KATZ:

25       Q    Are you -- do you have any understanding of

                                                    Page 37

1    what it means to sell a loan to Weststar?

2            MS. KRYSAK:  Objection; form, outside the

3    scope.

4            THE WITNESS:  I am not prepared to answer that

5    question today.

6    BY MR. KATZ:

7        Q    Well, you used that phrase, and I want to

8    understand what you meant by it.  So what did you mean

9    when you used the phrase sell a loan to Weststar?

10           MS. KRYSAK:  Objection; form, outside the

11   scope.

12           THE WITNESS:  I am not prepared to answer that

13   question today.

14   BY MR. KATZ:

15       Q    Are you refusing to answer that question?

16           MS. KRYSAK:  Objection; form, outside the

17   scope.  And she answered the question, Mr. Katz.  Let's

18   go ahead and move on.

19           MR. KATZ:  No, she did not answer the

20   question.  She told me that she is not prepared to

21   answer what a thing meant that she said.  She used the

22   phrase, and I'm trying to get what her understanding is.

23   She said she is not prepared to tell me what the

24   understanding is.

25       Q    Why aren't you prepared to tell me the

                                                    Page 38

1    understanding of something -- of a phrase that you used?

2            MS. KRYSAK:  Objection; form, outside the

3    scope.  She's answered your question.  Duplicative.

4    Let's move on.

5    BY MR. KATZ:

6        Q    Did Goldwater sell Elizarov's loan to Weststar

7    in the manner that you referenced selling a loan to

8    Weststar?

9            MS. KRYSAK:  Objection; form, outside the

10   scope.

11           THE WITNESS:  I'm not prepared to answer that

12   question.

13   BY MR. KATZ:

14       Q    What is the relationship between Goldwater and

15   Weststar?

16           MS. KRYSAK:  Objection; form, outside the

17   scope.

18           You can answer, to the extent that you know.

19           THE WITNESS:  Yeah.  So Kent Wicker owns

20   Weststar; Kent Wicker owns Goldwater.  We are

21   affiliated.

22   BY MR. KATZ:

23       Q    Do they share office space?

24           MS. KRYSAK:  Objection; form, outside the

25   scope?

                                        Page 39

```
 1                    THE WITNESS:  We do not share office space.
 2        We are on the same floor, but we do not share office
 3        space.
 4        BY MR. KATZ:
 5            Q    You are both on the same floor of the same
 6        building?
 7                    MS. KRYSAK:  Objection; form, outside the
 8        scope.
 9                    You can answer, to the extent that you know.
10                    THE WITNESS:  We have -- we're on the 11th
11        floor.  Goldwater Bank is our bank, and Weststar has an
12        office on the same floor.
13        BY MR. KATZ:
14            Q    Are you aware of any Goldwater Bank employees
15        who use a Weststar email address?
16                    MS. KRYSAK:  Objection; form, outside the
17        scope.  Can you be more specific, Mr. Katz?  Do you have
18        any employees that you are asking about specifically?
19                    MR. KATZ:  I'm asking if she is aware of any.
20                    THE WITNESS:  I'm sorry.  I missed the last
21        part of your question.
22        BY MR. KATZ:
23            Q    Are you aware of any Goldwater employees who
24        use a Weststar email address?
25                    MS. KRYSAK:  What topic is this relevant to,
```

Page 40

Omnibus Joint Exhibit Part G, page 1671

1    Mr. Katz?

2            MR. KATZ:  The relationship between Goldwater

3    and Weststar, service transferring and, as she said,

4    their selling of loans.

5            MS. KRYSAK:  What topic is that?  Can you

6    point me to that topic?

7            MR. KATZ:  It's foundational for the service

8    transfer of the loan.

9        Q    So are you aware --

10            MS. KRYSAK:  Can you point me to a specific

11   topic?

12   BY MR. KATZ:

13       Q    Are you aware of any Weststar employees -- or

14   I'll ask it a different way.

15            Are you aware of any Weststar employees who

16   use a Goldwater email address?

17            MS. KRYSAK:  Objection; form, outside the

18   scope.  Let's move on.  You've already asked the

19   question.

20            MR. KATZ:  But she hasn't answered it.

21            MS. KRYSAK:  I know, but it's also completely

22   irrelevant, outside of the scope, and a waste of time.

23            MR. KATZ:  I'll lay a foundation.

24       Q    Is part of Goldwater's factual basis for

25   asserting claims against Mr. Howlett and Bank of the

                                              Page 41

```
 1    West based on a communication email chain between

 2    members -- Mr. Hill of Weststar and Melissa Melendez

 3    of -- I'm sorry -- Mr. Hill of Goldwater and

 4    Ms. Melendez of Weststar?

 5              MS. KRYSAK:  Mr. Katz, do you have a copy of

 6    the email chain you are referring to?

 7              MR. KATZ:  I do.

 8       Q    But is that part of the factual basis for

 9    Goldwater's claims against Mr. Howlett and Bank of the

10    West, is that based on email communications between

11    Mr. Hill, Ms. Melendez and Escrow of the West?

12              MS. KRYSAK:  What email communications,

13    Mr. Katz?  That would be helpful.

14              MR. KATZ:  We can get to it.

15              MS. KRYSAK:  You could be more specific.

16    BY MR. KATZ:

17       Q    Is that part of the factual basis for

18    Goldwater's claims?

19              MS. KRYSAK:  Ms. Overbeck --

20              Objection; form, outside the scope.

21              To the extent you know or can determine what

22    he's saying, Ms. Overbeck, or asking, go ahead and

23    answer.

24              THE WITNESS:  So there was a lot that was just

25    said there, but I think the question was about an email.
```

                                              Page 42

1    process is upon receipt of original loan documents or

2    recorded documents.

3    BY MR. KATZ:

4        Q    All right.  Now, did Goldwater ever upload

5    copies of the original loan documents into BlitzDocs?

6            MS. KRYSAK:  Objection.  Is there -- are you

7    saying ever, at any time, Mr. Katz?

8    BY MR. KATZ:

9        Q    At or around closing.

10       A    Well, we have the unsigned documents that we

11   save in our file.

12       Q    At what point in the process are executed loan

13   documents uploaded into BlitzDocs?

14           MS. KRYSAK:  Objection; form, outside the

15   scope.  I think she testified that Weststar is the

16   custodian.  The documents are sent to Weststar.  She

17   does not know what Weststar does with the documents once

18   they are uploaded.

19           MR. KATZ:  Right.  I'm asking what Goldwater

20   did.

21           MS. KRYSAK:  Go ahead.  Answer, to the extent

22   you know or there's anything new or additional beyond

23   what you have already said.

24           THE WITNESS:  Right.  So there's just a

25   difference between, like, when it's actually funded and

                                           Page 159

```
 1    recorded, right?  So we do -- Goldwater does receive a
 2    digital copy of the signed documents so we can validate
 3    signatures.  And we upload them into Encompass, and then
 4    we hit the Ready to Ship.  And I believe they go get
 5    pushed to the Blitz.  But I don't think
 6    (unintelligible).
 7        Q    I'm sorry.  Could you say that last part
 8    again?
 9        A    Yeah, I'm not sure which -- if all the
10    documents -- you know, it's a pretty hefty size of loan
11    documents.  I'm sure you've signed them.  For us to
12    fund, I'm not sure if we receive the whole package or
13    just some of the signed documents.  But we do verify
14    that the loan documents have been signed at closing.
15        Q    Prior to March 26, 2021, did Goldwater have a
16    copy of the signed original loan documents?
17             MS. KRYSAK:  What do you mean by loan
18    documents, Mr. Katz?  Maybe that would be helpful.
19             MR. KATZ:  Deed of trust.
20             MS. KRYSAK:  I mean, there's a lot of -- she
21    just referred to a large package.  If there's a specific
22    amount or specific document you are referring to?
23    BY MR. KATZ:
24        Q    The deed of trust.
25        A    We receive a copy of the signed, notarized
```

<div align="right">Page 160</div>

```
 1    copy of the deed of trust.  The original is sent to
 2    title to be recorded.
 3         Q    At what point in the pre-closing and post-
 4    closing process does Goldwater receive a copy of the
 5    signed deed of trust?
 6         A    Not recorded?
 7         Q    Correct.
 8         A    At times -- when escrow sends a copy of the
 9    signed loan documents, we receive them typically the day
10    that the borrower signed.
11         Q    So Goldwater typically receives a signed deed
12    of trust prior to funding and closing a loan
13    transaction?
14         A    Yes.  It's not recorded, but yes.
15         Q    And the signed copy of the deed of trust that
16    Goldwater receives prior to closing gets uploaded into
17    the Encompass system?
18              MS. KRYSAK:  Objection; form, outside the
19    scope.
20              THE WITNESS:  From what I understand, yes.
21    BY MR. KATZ:
22         Q    And then at a point the documents are ready to
23    send and, presumably, sent from Encompass to BlitzDocs?
24         A    Yes.
25              MS. KRYSAK:  Mr. Katz, I think we have been
```

Page 161

```
 1   going for a little while.  Do you want to take a quick

 2   five-minute break?

 3            MR. KATZ:  I just have a couple more

 4   questions, then we can take a quick five-minute break.

 5            MS. KRYSAK:  We'd like to take a break now,

 6   Mr. Katz.

 7            MR. WAGNER:  Five-minute bathroom break.

 8            MS. KRYSAK:  A five-minute bathroom break.

 9            MR. KATZ:  Okay.

10            MS. KRYSAK:  Thank you.

11            (Recess.)

12            MS. KRYSAK:  For the record, Goldwater has

13   asked and is closing down the deposition at this time.

14   The corporate designee is not feeling well.  It has

15   impacted her ability to testify.

16            In good faith, Goldwater has offered and will

17   pay for the court reporter's costs for the day today,

18   and we will be reaching out to all counsel first thing

19   Monday morning to promptly reschedule the remainder of

20   the deposition.

21            MR. ALEKSEYEFF:  And Abbey, this is Ilya.  If

22   I can jump in.  I'm assuming the court reporter does not

23   have to wait until we finish the second leg of the

24   deposition to start preparing her transcript.  She can

25   go ahead and start doing it now, I'm assuming.  Is that
```

Page 162

```
 1    right?  Because we may not have the same court report
 2    for the second leg, and I don't know if it makes,
 3    necessarily, sense to wait.
 4              MR. KATZ:  Why don't we designate today's
 5    transcript as Volume 1 and we can have her prepare
 6    Volume 1.
 7              MS. KRYSAK:  We'll object to that.  Goldwater
 8    is going to object to that for now, based on our belief
 9    that she has an altered mental state today, and so we'll
10    preserve that objection for the record.
11              MR. ALEKSEYEFF:  Okay.  Thank you.  So then we
12    are off the record at this point, in recess?
13              MS. KRYSAK:  Yes.
14              MR. ALEKSEYEFF:  Okay.  Perfect.  And just so
15    that the time is clear, it's 4:08 p.m. on Friday,
16    May 12th.
17              MR. KATZ:  And we took the last break at 3:29.
18              MR. ALEKSEYEFF:  Correct, and resumed at
19    approximately 4:04.
20              All right.  Thank you so much.
21
22              (TIME NOTED: 4:08 p.m.)
23
24
25
```

Page 163

Omnibus Joint Exhibit Part G, page 1678

1

2

3

4        I, CHRISTINE OVERBECK, do hereby declare under

5    penalty of perjury that I have read the foregoing

6    transcript; that I have made any corrections as appear

7    noted, in ink, initialed by me, or attached hereto; that

8    my testimony as contained herein, as corrected, is true

9    and correct.

10        EXECUTED this _____ day of _____,

11    202___, at _____, _____.

                   (City)                    (State)

12

13

14                          _____

                         CHRISTINE OVERBECK

15                         Volume I

16

17

18

19

20

21

22

23

24

25

                                            Page 164

1       I, the undersigned, a Certified Shorthand

2   Reporter of the State of California, do hereby certify:

3       That the foregoing proceedings were taken

4   before me at the time and place herein set forth; that

5   any witnesses in the foregoing proceedings, prior to

6   testifying, were administered an oath; that a record of

7   the proceedings was made by me using machine shorthand

8   which was thereafter transcribed under my direction;

9   that the foregoing transcript is a true record of the

10  testimony given.

11      Further, that if the foregoing pertains to the

12  original transcript of a deposition in a Federal Case,

13  before completion of the proceedings, review of the

14  transcript [  ] was [ X ] was not requested.

15      I further certify I am neither financially

16  interested in the action nor a relative or employee of

17  any attorney or party to this action.

18      IN WITNESS WHEREOF, I have this date subscribe

19  my name.

20

21  Dated: 6/6/23

22

23

    CLAUDIA A. BETTUCCHI

24  CSR NO: 12214

25

                                            Page 165

```
 1    JEREMY T. KATZ, ESQ.

 2    jkatz@hallgriffin.com

 3                                    June 6, 2023

 4    RE: GOLDWATER BANK, N.A. VS. ARTUR ELIZAROV

 5    MAY 12, 2023, CHRISTINE OVERBECK, JOB NO. 5841720

 6    The above-referenced transcript has been

 7    completed by Veritext Legal Solutions and

 8    review of the transcript is being handled as follows:

 9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10        to schedule a time to review the original transcript at

11        a Veritext office.

12    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13        Transcript - The witness should review the transcript and

14        make any necessary corrections on the errata pages included

15        below, notating the page and line number of the corrections.

16        The witness should then sign and date the errata and penalty

17        of perjury pages and return the completed pages to all

18        appearing counsel within the period of time determined at

19        the deposition or provided by the Code of Civil Procedure.

20    __ Waiving the CA Code of Civil Procedure per Stipulation of

21        Counsel - Original transcript to be released for signature

22        as determined at the deposition.

23    __ Signature Waived - Reading & Signature was waived at the

24        time of the deposition.

25
```

<div align="right">Page 166</div>

1    ___ Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF

2    Transcript - The witness should review the transcript and

3    make any necessary corrections on the errata pages included

4    below, notating the page and line number of the corrections.

5    The witness should then sign and date the errata and penalty

6    of perjury pages and return the completed pages to all

7    appearing counsel within the period of time determined at

8    the deposition or provided by the Federal Rules.

9    _X_Federal R&S Not Requested - Reading & Signature was not

10   requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 167

```
 1    RE: GOLDWATER BANK, N.A. VS. ARTUR ELIZAROV

 2    CHRISTINE OVERBECK, JOB NO. 5841720

 3                    E R R A T A   S H E E T

 4    PAGE_____ LINE_____ CHANGE_____

 5    _____

 6    REASON_____

 7    PAGE_____ LINE_____ CHANGE_____

 8    _____

 9    REASON_____

10    PAGE_____ LINE_____ CHANGE_____

11    _____

12    REASON_____

13    PAGE_____ LINE_____ CHANGE_____

14    _____

15    REASON_____

16    PAGE_____ LINE_____ CHANGE_____

17    _____

18    REASON_____

19    PAGE_____ LINE_____ CHANGE_____

20    _____

21    REASON_____

22

23    _____    _____

24    WITNESS                          Date

25

                                         Page 168
```

## EXHIBIT 95
## Transcript of Deposition of Goldwater's Second Rule 30(b)(6) Witness - Cory Bearden (Additional Excerpts)

1              UNITED STATES DISTRICT COURT

2         CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

3

4    _____

                                            )

5    GOLDWATER BANK, N.A.,                  )

                                            )

6                   Plaintiff,              ) CASE NUMBER:

                                            ) 21-cv-00616-

7           vs.                             ) JWH-SP

                                            )

8    ARTUR ELIZAROV; UNISON AGREEMENT CORP.;  )

     SCOTT HOWLETT; BANK OF THE WEST; AND ILYA )

9    ALEKSEYEFF,                            )

                                            )

10                  Defendants.             )

     _____)

11

12

13

14        REMOTE ZOOM VIDEOTAPED DEPOSITION OF PERSON MOST

               KNOWLEDGEABLE AT GOLDWATER BANK, N.A.

15                       CORY BEARDEN

16                 Wednesday, May 31, 2023

17                       Volume I

18

19

20

21

22   REPORTED BY:

     JESSICA HONG

23   CSR No. 13776

24   Job No. 5941237

25   PAGES 1 - 364

                                              Page 1

Omnibus Joint Exhibit Part G, page 1685

1              UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

3

4    _____

                                           )

5    GOLDWATER BANK, N.A.,                 )

                                           )

6                 Plaintiff,               ) CASE NUMBER:

                                           ) 21-cv-00616-

7           vs.                            ) JWH-SP

                                           )

8    ARTUR ELIZAROV; UNISON AGREEMENT CORP.;  )

     SCOTT HOWLETT; BANK OF THE WEST; AND ILYA )

9    ALEKSEYEFF,                           )

                                           )

10                Defendants.              )

     _____)

11

12

13

14          Remote Zoom videotaped deposition of PERSON MOST

15    KNOWLEDGEABLE AT GOLDWATER BANK, N.A., CORY BEARDEN,

16    Volume I, taken on behalf of Defendants beginning at

17    10:10 a.m. and ending at 8:26 p.m. on Wednesday, May 31,

18    2023, before JESSICA HONG, Certified Shorthand Reporter

19    No. 13776.

20

21

22

23

24

25

                                              Page  2

```
 1     APPEARANCES (ALL PARTIES APPEARING REMOTELY):
 2     FOR PLAINTIFF:
 3         HILBERT & SATTERLY LLP
           BY:  JOSEPH A. LEVOTA, ESQ.
 4         409 Camino Del Rio South, Suite 104
           San Diego, California 92108
 5         (619) 795-0300
 6         WAGNER HICKS PLLC
           BY:  ABBEY M. KRYSAK, ESQ.
 7              SEAN C. WAGNER, ESQ.
           831 East Morehead Street, Suite 860
 8         Charlotte, North Carolina 28202
           (704) 705-7538
 9
       FOR DEFENDANT AND CROSS-COMPLAINANT SCOTT HOWLETT AND
10     DEFENDANT BMO HARRIS BANK N.A., SUCCESSOR BY MERGER TO
       BANK OF THE WEST:
11
           HALL GRIFFIN LLP
12         BY:  JEREMY T. KATZ, ESQ.
                KASANDRA C. GOLDBERG, ESQ.
13         1851 East First Street, 10th Floor
           Santa Ana, California 92705
14         (714) 918-7000
15     FOR DEFENDANT AND CROSS-DEFENDANT ARTUR ELIZAROV, AND
       DEFENDANT ILYA ALEKSEYEFF (IN PRO PER):
16
           LOIA, INC.(APLC)
17         BY:  ILYA ALEKSEYEFF, ESQ.
           727 West 7th Street, PH 1-13
18         Los Angeles, California 90017
           (213) 537-4592
19
20
21     ALSO PRESENT:
22         JENNIFER MCKAY - VIDEOGRAPHER
23
24
25
                                                  Page  3
```

Omnibus Joint Exhibit Part G, page 1687

```
 1                  Zoom, Wednesday, May 31, 2023

 2                       10:10 a.m.

 3

 4          THE VIDEOGRAPHER:  Good morning.  We are on the

 5     record at 10:10 on May 31st, 2023.  This is media unit    10:10

 6     one in the video-recorded deposition of Goldwater PMK,

 7     Cory Bearden, in the matter of Goldwater Bank, N.A.

 8     versus Elizarov, et al., filed in the United States

 9     District Court, Central District of California, Eastern

10     Division.  Case Number is 21-cv-00616.  This deposition    10:10

11     is being conducted remotely using virtual technology.  My

12     name is Jennifer McKay representing Veritext and I am the

13     videographer.  The court reporter is Jessica Hong, also

14     from Veritext.  Counsel, please introduce yourselves and

15     state whom you represent.                                  10:11

16          MR. KATZ:  Good morning, my name is Jeremy Katz.

17     I represent defendants, Scott Howlett and Bank of the

18     West.  And with me in the room and off camera is my

19     associate, Kasandra Goldberg.

20          MR. ALEKSEYEFF:  And good morning -- am I on?         10:11

21     Yes.  Good morning, my name is Ilya Alekseyeff.  I

22     represent the defendant, Artur Elizarov, as well as

23     myself who is also a defendant.  Good morning.

24          MR. LEVOTA:  Good morning, Joseph LeVota for

25     Goldwater Bank.                                            10:11
```

<div align="right">Page 6</div>

```
 1              MS. KRYSAK:  Good morning, Abbey Krysak for

 2      Goldwater Bank.

 3              MR. WAGNER:  Good morning, Sean Wagner for

 4      Goldwater Bank.

 5              THE VIDEOGRAPHER:  Thank you.  Will the court    10:11

 6      reporter please swear in the witness?

 7

 8                          CORY BEARDEN,

 9              having been administered an oath,

10              was examined and testified as follows:

11

12                          EXAMINATION

13      BY MR. KATZ:

14          Q    Good morning, Mr. Bearden.

15          A    Good morning.                                   10:12

16          Q    Can you please state and spell your name for the

17      record?

18          A    My name is Cory Bearden.  It's spelled C-o-r-y,

19      last name Bearden, B-e-a-r-d-e-n.

20          Q    Are you employed by Goldwater Bank?             10:12

21          A    I am.

22          Q    What's your current role?

23          A    My position at Goldwater Bank is the Mortgage

24      Division President.

25          Q    How long have you been the Mortgage Division    10:12
```

Page 7

```
 1     about ten minutes.

 2            THE VIDEOGRAPHER:  Off the record, the time is

 3     11:01.

 4            (Break in the proceedings.)

 5            THE VIDEOGRAPHER:  Back on the record, the time    11:13

 6     is 11:13.

 7     BY MR. KATZ:

 8        Q    All right.  So did Ms. Overbeck take a leave on

 9     or after May 12th, 2023 or in the week thereafter?

10        A    Yes, Ms. Overbeck took paid time off.            11:13

11        Q    How much paid time off are we talking about?

12     Are we talking -- just to relate it for a magnitude,

13     hours, days, or a week?

14        A    Ten days.

15        Q    Is she back in the office now?                   11:13

16        A    She is back on duty.

17        Q    And is she back to her regular duties and

18     assignments now that she's back?

19        A    She is.

20        Q    Did you discuss with Ms. Overbeck anything about 11:14

21     her deposition testimony from May 12th?

22        A    I had a small conversation with Ms. Overbeck but

23     not specific to anything involved in the deposition.

24        Q    What did you talk about with Ms. Overbeck

25     regarding her prior deposition?                          11:14
```

                                                    Page 45

```
 1              MS. KRYSAK:  Objection, scope.

 2              THE WITNESS:  Our conversation surrounded how

 3      was her day and she advised that it was a busy day and a

 4      stressful day.

 5      BY MR. KATZ:                                        11:14

 6          Q    Oh, I did have one more question about

 7      Ms. Overbeck's leave.  Was her time off pre-planned?

 8              MS. KRYSAK:  Objection, form, scope.

 9              THE WITNESS:  I cannot confirm that it was

10      pre-planned.                                        11:15

11      BY MR. KATZ:

12          Q    I'm sorry, did you review the transcript of

13      Ms. Overbeck's deposition -- prior deposition as part of

14      your preparation for today?

15          A    I reviewed -- I didn't review -- I did not    11:15

16      review the entire transcript.

17          Q    What do you recall from your partial review of

18      Ms. Overbeck's transcript?

19              MS. KRYSAK:  Objection, form, scope.

20              THE WITNESS:  Could you be more specific?  It    11:15

21      was apparently hours worth of deposition and transcript,

22      so it would be helpful if you were more specific in that

23      question.

24      BY MR. KATZ:

25          Q    Sure.  You said that you did not review the    11:15
```

                                                        Page 46

Omnibus Joint Exhibit Part G, page 1691

```
 1      entirety of Ms. Overbeck's transcript.  Can you give me

 2      like a top ten or top five or even top three things that

 3      you recall that you did review from her transcript?

 4              MS. KRYSAK:  Objection, form, scope.

 5              THE WITNESS:  I don't recall off the top of my    11:15

 6      head, Mr. Katz, but if you'd like to refresh my memory,

 7      I'll do my best to -- to assist in providing that

 8      information.  I don't have the document in front of me.

 9      BY MR. KATZ:

10          Q    You were talking about Goldwater's post-closing    11:16

11      department.  How is that -- how does that differ from the

12      loan application department?

13              MS. KRYSAK:  Objection, form, scope.

14              THE WITNESS:  Well, one, I am not familiar with

15      the loan application department.  I don't know that    11:16

16      terminology, so you'd have to share with me what that is.

17      BY MR. KATZ:

18          Q    Okay.  So there's a post-closing department;

19      right?

20              MS. KRYSAK:  Objection --    11:16

21              THE WITNESS:  That is correct.

22              MS. KRYSAK:  Objection, scope.

23      BY MR. KATZ:

24          Q    What is the event of closing that delineates

25      pre-closing from post-closing?    11:16

                                                        Page 47
```

Omnibus Joint Exhibit Part G, page 1692

1     problems at issue in Goldwater's complaint; right?

2              MR. LEVOTA:  Objection, argumentative.

3              MS. KRYSAK:  Objection, form, scope.

4              MR. LEVOTA:  Next.

5              MS. KRYSAK:  You can go ahead and answer,          11:44

6     Mr. Bearden.

7              THE WITNESS:  Could you repeat your question,

8     Mr. Katz?

9              MR. KATZ:  Could you read it back, please?

10             (Record read.)                                    11:44

11             THE WITNESS:  Hypothetical question obviously

12    and no, I would not agree with you.  As I just stated

13    with you a few minutes ago, the -- the processes that we

14    have followed for years -- at least that I'm aware of in

15    my 19 years of being here, this is the only loan that      11:44

16    this has ever occurred on that I'm aware of -- have

17    worked for us up until this date.

18    BY MR. KATZ:

19        Q    If Goldwater had a policy or procedure to double

20    check to see if its residential real estate loan had       11:44

21    actually been recorded as part of its post-closing

22    department and Goldwater had learned in 2019 that its

23    deed of trust had not been recorded, what would Goldwater

24    have done?

25             MS. KRYSAK:  Objection, form, scope.              11:45

                                                       Page 68

```
 1              THE WITNESS:  Again, another hypothetical

 2      situation here in the question, so is there a way that

 3      you could form that question that I could be able to

 4      assist and provide you a good answer?

 5              MR. KATZ:  If Goldwater learned that its deed of   11:45

 6      trust had been unrecorded, would Goldwater take prompt

 7      action to record it?

 8              MS. KRYSAK:  Objection, form, scope.

 9              THE WITNESS:  If we were informed, my assumption

10      is that we would take action to make -- get corrections   11:45

11      to get it recorded.

12      BY MR. KATZ:

13          Q    Does Goldwater have any policies or procedures

14      regarding the custodial maintenance of its loan documents

15      like a deed of trust?                                     11:46

16              MS. KRYSAK:  Objection, form, scope.

17              THE WITNESS:  Not that I'm aware of.  Nothing

18      written that I'm aware of.

19      BY MR. KATZ:

20          Q    Does Goldwater have any unwritten policies or    11:46

21      procedures in place between July 2019 and April 15th,

22      2021 regarding the custodial maintenance of the original

23      executed deed of trust for a loan like Mr. Elizarov's

24      loan?

25          A    Mr. Katz, could you provide me a definition for  11:46
```

Page 69

Omnibus Joint Exhibit Part G, page 1694

1    "custodial maintenance" so that I could fully understand

2    your question and what you mean by that?

3        Q    The same definition that I've worked out with

4    Ms. Krysak earlier, someone who's responsible for taking

5    -- or holding those documents, maintaining them, making        11:46

6    sure that they're there, and what's in them.  I mean,

7    you're the head of the lending department.  Do you have

8    any understanding of -- what is your understanding of the

9    term "custodial maintenance"?

10       A    Well, I'm trying to define what you're saying        11:46

11   here with your questioning, sir.

12       Q    All right.

13       A    So if you repeat my -- your question, I'll be --

14   do my very best to answer it.  I just want to make sure I

15   fully understand your question in regards to custodial        11:47

16   maintenance.

17       Q    Who maintains custody of Elizarov's deed of

18   trust?

19            MS. KRYSAK:  Objection, form, scope.

20            THE WITNESS:  Goldwater Bank would maintain        11:47

21   custody of its loan documents.

22   BY MR. KATZ:

23       Q    And does anyone maintain the loan documents --

24   custody of the loan documents on Goldwater's behalf?

25            MS. KRYSAK:  Objection, form, scope.        11:47

Page 70

Omnibus Joint Exhibit Part G, page 1695

1              THE WITNESS:  There is access to the Goldwater

2      Bank loan documents from our servicing -- our

3      subservicing company.

4      BY MR. KATZ:

5          Q    How do the subservicers get access to              11:47

6      Goldwater's loan documents?

7          A    Goldwater --

8               MS. KRYSAK:  Objection, form, scope.

9               THE WITNESS:  Goldwater provides access.

10     BY MR. KATZ:                                                 11:47

11         Q    Is that through the BlitzDocs system?

12         A    That would be correct.

13         Q    If Goldwater or one of its subservicers wants to

14     look at a deed of trust to see if it had actually been

15     recorded, would they be able to access a copy of the Gold   11:48

16     -- of the deed of trust in the BlitzDocs system?

17              MS. KRYSAK:  Objection, form, scope.

18              THE WITNESS:  Not specific to any documents, all

19     loan documents would be, if available, accessible in

20     BlitzDocs.                                                   11:48

21     BY MR. KATZ:

22         Q    Other than BlitzDocs, are there any other

23     systems that Goldwater uses to maintain custody of the

24     original loan documents for residential loans?

25              MS. KRYSAK:  Objection, form, scope.               11:48

                                                          Page 71

```
1              THE WITNESS:  When you're stating "original,"

2     can you please define "original"?

3     BY MR. KATZ:

4         Q    Someone signs a loan document, a promissory

5     note, deed of trust, disclosure form, things like that --  11:48

6     the signature might be wet ink with a pen, it might be

7     traced through DocuSign or a digital system, whatever the

8     doc, the version is that it's considered an original

9     rather than copies.

10        A    Okay.  And would that definition include       11:49

11    executed closed documents?

12        Q    Yes.

13        A    Okay.  Those would be in -- stored in the

14    BlitzDocs storage facility.

15        Q    And how about recorded copies of loan documents  11:49

16    such as deeds of the trust, would those be stored in

17    BlitzDocs?

18             MS. KRYSAK:  Objection, form, scope.

19             THE WITNESS:  Again, all loan documents

20    applicable to the loan executed and/or recorded would be   11:49

21    stored there if available.

22    BY MR. KATZ:

23        Q    Who maintains control of the BlitzDocs system?

24             MS. KRYSAK:  Objection, form, scope.

25             THE WITNESS:  I don't know the answer to that    11:49
```

                                                    Page 72

Omnibus Joint Exhibit Part G, page 1697

1        that would be available in an email.

2            Q    And when you said the loan number there under

3        the senior lender section is for Elizarov's loan, that's

4        not actually the loan number for Elizarov's loan from

5        Goldwater listed in the senior lender portion; right?        12:17

6                 MS. KRYSAK:  Objection, form.

7                 THE WITNESS:  Your interpretation may be that.

8        Mine interpretation is they made a clerical error and

9        left the 9 out.  It's exactly very close to exactly what

10       Mr. Elizarov's loan is that I have witnessed and seen in     12:17

11       the loan package.

12       BY MR. KATZ:

13           Q    Did you ever hear the expression "close enough

14       is good for horseshoes and hand grenades"?

15                MS. KRYSAK:  Objection, form.                       12:17

16                THE WITNESS:  Yes, sir.

17                MR. LEVOTA:  Objection, argumentative.

18       BY MR. KATZ:

19           Q    So the loan number there, 902, does Goldwater

20       have any residential loans starting with 902 and ending      12:17

21       with those digits indicated in the subordination

22       agreement for the first lien senior lender loan number?

23                MR. LEVOTA:  Objection, asked and answered.  How

24       many times are you going to ask this?

25                MR. KATZ:  Until he tells me one way or the          12:18

                                                         Page 92

```
 1    other because he seems to think that that's a Goldwater
 2    loan number.
 3           MR. LEVOTA:  Excuse me?  That has not been the
 4    testimony at all during this deposition.  What are you
 5    saying?                                              12:18
 6           MR. KATZ:  Okay, well, then let me ask -- let me
 7    ask directly then.  That loan number for the senior
 8    lender starting in 902, that is not Goldwater's loan
 9    number for Mr. Elizarov's loan; correct?
10           MR. LEVOTA:  You literally just asked that     12:18
11    question like two minutes ago.  How many times are you
12    going to ask -- and you asked it like 20 minutes ago when
13    we were originally going over the loan numbers and how
14    they're nine digits they begin with 909.  I mean, how
15    many times are you going did ask this?               12:18
16           MR. KATZ:  Well, at this point, it'd be faster
17    if he'd just answer it rather than you fighting me.
18           MR. LEVOTA:  Oh, okay.  Let's go on, Mr. Katz,
19    it's your deposition.
20    BY MR. KATZ:                                         12:18
21       Q    So the loan number listed in this subordination
22    agreement for the senior loan, that is not Goldwater's
23    loan number for Mr. Elizarov's loan; correct?
24           MS. KRYSAK:  Objection, form.  Please go ahead
25    and answer, Mr. Bearden.                             12:19
```

                                                    Page 93

Omnibus Joint Exhibit Part G, page 1699

```
 1              THE WITNESS:  That is not.  We do not have a 902

 2       loan number at Goldwater Bank.

 3       BY MR. KATZ:

 4           Q    Did Goldwater do anything to check whether the

 5       loan number in the senior -- for the senior lender in      12:19

 6       this subordination agreement was correct prior to closing

 7       the loan with Mr. Elizarov?

 8              MS. KRYSAK:  Objection, form.

 9              THE WITNESS:  So please repeat your question

10       again.  It seems like we're reverting back to closing the  12:19

11       loan at this point.

12       BY MR. KATZ:

13           Q    Well, at some -- at one -- at some point,

14       Goldwater closed and funded its loan to Mr. Elizarov?

15           A    That is correct.                                  12:19

16           Q    Okay.  Prior to that point, did Goldwater do

17       anything to confirm whether the information in this

18       subordination agreement regarding the senior lender was

19       correct?

20              MS. KRYSAK:  Objection, form.                       12:20

21              THE WITNESS:  As I stated earlier, Unison is a

22       completely different company than us.  Goldwater Bank is

23       independent of them.  I do know that Unison has its own

24       closing instructions as we have our closing instructions

25       which we provide to title and make them responsible for    12:20
```

                                              Page 94

Omnibus Joint Exhibit Part G, page 1700

```
 1      closing the loan based upon the instructions and

 2      verifying that all the information is true and correct.

 3      BY MR. KATZ:

 4          Q    Did Goldwater provide any instructions to Unison

 5      regarding how to fill out the information in this          12:20

 6      subordination agreement?

 7              MS. KRYSAK:  Objection, form, scope.

 8              THE WITNESS:  Again, not that I'm aware of.  We

 9      don't prepare subordination agreements.

10      BY MR. KATZ:                                               12:20

11          Q    I didn't ask you if Goldwater prepared it, I

12      asked if you gave any -- if Goldwater gave any

13      instructions to Unison about what information to put in

14      the subordination agreement?

15              MS. KRYSAK:  Objection, form.                      12:21

16              THE WITNESS:  Again, not I'm aware of.

17      BY MR. KATZ:

18          Q    Did Goldwater obtain a copy of this

19      subordination agreement at any time in 2019?

20              MS. KRYSAK:  Objection, form, scope.               12:21

21              THE WITNESS:  I cannot confirm the date when it

22      was obtained.

23      BY MR. KATZ:

24          Q    Did Goldwater have any communications with

25      Unison in 2019 about the information to be included in     12:21
```

Page 95

1    means other than through Goldwater's counsel?

2         A    I can't comment on that, sir.  The first time

3    I've reviewed the document was yesterday.

4         Q    Other than the eFax -- other than the eFaxed

5    document from Weststar that you -- first came into your      02:06

6    possession approximately a day or two ago, are there any

7    other communications in which Goldwater or anyone else

8    gave notice of Goldwater's lien to Escrow of the West?

9              MS. KRYSAK:  Objection, form, scope.

10             THE WITNESS:  What topic are you on, sir?          02:07

11             MR. KATZ:  Well, I'm trying to figure out this

12   new document which you referenced which we've never seen

13   before but for Ms. Krysak circulating a copy last night

14   right before the deposition, so I'm trying to figure out

15   the origin of that since you're the one who raised it       02:07

16   during the deposition.  I'm trying to figure out its

17   providence, where it came from, how, how it got into

18   Goldwater's possession, things like that.  So other than

19   that, are there any other communications by which -- that

20   you know of that Escrow of the West supposedly gained       02:07

21   knowledge of Goldwater's lien or notice of Goldwater's

22   lien?

23             MS. KRYSAK:  Objection, form, scope.

24             THE WITNESS:  To confirm your question, you're

25   asking if there's any other avenues that Bank -- sorry,     02:08

Page 130

```
 1      that Escrow of the West would have known there was a

 2      first lien position?

 3              MR. KATZ:  Yeah.

 4              THE WITNESS:  Well, other than the preliminary

 5      title amendment that shows that Unison is the second lien   02:08

 6      holder in subordinate agreement to a superior lien, that

 7      would be a good indication that there's a first lien in

 8      place.

 9      BY MR. KATZ:

10          Q    Yeah, but my question was knowing that Goldwater   02:08

11      was the first lien holder.

12          A    Yeah.

13          Q    So the subordination agreement -- and, again, to

14      keep beating this dead horse, the subordination doesn't

15      list Goldwater's name; right?                                02:08

16          A    Based on what I've reviewed, that's correct.

17          Q    And the subordination agreement does not list

18      the correct loan number for Goldwater's loan to

19      Mr. Elizarov; correct?

20          A    That is correct.                                    02:08

21          Q    And if someone had called Goldwater and said,

22      "Do you have a loan number," and read the loan number

23      listed for the first lien holder in the subordination

24      agreement to Goldwater, Goldwater would respond that it

25      did not have a loan with that number; correct?              02:09
```

Page 131

1              MS. KRYSAK:  Objection, form, scope.

2              THE WITNESS:  I can't confirm on what somebody

3       would have responded to.  I would be with the -- with the

4       name of the client, they would have been able to tie that

5       together with the appropriate loan number even missing     02:09

6       the digit.

7       BY MR. KATZ:

8          Q    Yeah, that wasn't my question though.  It was if

9       someone read the loan number listed in the subordination

10      agreement to Goldwater and said, "Do you have a loan with   02:09

11      that number," Goldwater's truthful response would be,

12      "No, we don't have a loan with that number;" correct?

13              MS. KRYSAK:  Objection, form, scope.

14              MR. KATZ:  You can answer.

15              THE WITNESS:  I don't have a loan with that          02:10

16      number.

17      BY MR. KATZ:

18         Q    And, again, Goldwater did nothing to confirm

19      whether the information in the subordination agreement

20      was correct?                                                02:10

21              MS. KRYSAK:  Objection, form.

22              THE WITNESS:  I can't confirm that nothing was

23      done, sir.

24      BY MR. KATZ:

25         Q    Did Goldwater know that a subordination            02:10

                                                        Page 132

1    agreement would be recorded as part of the 2019

2    transactions through which Mr. Elizarov acquired the

3    subject property?

4        A    I would believe as a part of the closing

5    instructions that are provided to title, that we would    02:11

6    know that there is a subordinated lien to our first lien

7    as a part of the closing.  As well, that is how the

8    program is designed to be a first and second lien.

9        Q    When you say "the program," what are you

10   referring to?                                             02:11

11       A    The Unison program.

12       Q    How exactly does that Unison program work?

13           MS. KRYSAK:  Objection, scope.

14           THE WITNESS:  My basic understanding is that it

15   is a shared equity program second lien product.           02:11

16   BY MR. KATZ:

17       Q    Unison puts in money to help fund the purchase

18   of the property and in exchange Unison gets a secured

19   lien and equity participation in the property's

20   appreciation?                                             02:11

21           MS. KRYSAK:  Objection, form, scope.

22   BY MR. KATZ:

23       Q    Does that match your understanding of the Unison

24   program?

25       A    That -- as I know of the program, that sounds    02:12

                                                Page 133

Omnibus Joint Exhibit Part G, page 1705

1    those funds to Goldwater or, if it's escrow, to keep an

2    escrow accounting; is that correct?

3        A    That would be a part of their services, yes.

4        Q    Okay.  Did they provide any services to Mr. --

5    to Goldwater prior to that date as it relates to          05:25

6    Mr. Elizarov's loan?  Whatever the services may have

7    been.  Even if it's standing over somebody and fanning

8    them, any kind of services.  And I don't mean to be

9    flippant, I don't know what else they could possibly

10   provide which is why I'm asking the question.  Was there  05:26

11   anything else they provided to Goldwater as a service

12   prior to that date as it relates specifically to

13   Mr. Elizarov's loan?

14       A    Not that I'm aware as it relates specifically to

15   Mr. Elizarov's loan.  It's a Goldwater Bank loan and at   05:26

16   which time you understand that the loan servicing

17   transferred to Weststar for them to provide their

18   services at a  later date.

19       Q    Is there -- can Goldwater explain why it chose

20   to service its own loan prior to May 22nd and then        05:26

21   transfer servicing responsibilities to Weststar?

22            MS. KRYSAK:  Objection, form, scope.

23            THE WITNESS:  I could do my best to explain that

24   for you.

25            MR. ALEKSEYEFF:  Sure.  Please.               05:26

Page 255

Omnibus Joint Exhibit Part G, page 1706

```
 1              THE WITNESS:  Okay.  Goldwater Bank has the

 2      ability to service loans that are Goldwater Bank-owned

 3      loans.  We call these loans and we refer to them

 4      specifically as held for sale loans or held for

 5      investment loans.  A loan that is held for sale is a loan   05:27

 6      that Goldwater Bank owns and has closed and provided the

 7      funding and the closing documents for that and is of lien

 8      of record.  And then we have these loans that are part of

 9      our balance sheet.  Those loans could be allocated to an

10      agency that we're waiting to sell those loans in the        05:27

11      secondary market to Fannie Mae, Freddie Mac, a separate

12      aggregator, or somebody that we are -- have a

13      relationship with in selling loans in the secondary

14      market, or it can stay in the held for sale portfolio

15      with the bank up until we decide that we would like to      05:27

16      transfer this loan to our held for investment which means

17      that that is going to be a loan that we keep on the

18      balance sheet of the bank held for investment.  Goldwater

19      Bank continues -- continues to service that loan from the

20      date of the closing in -- up until a point where if we      05:27

21      decide that we don't want to provide the servicing any

22      longer, we will go to our subservicer, Weststar Mortgage,

23      and transfer the servicing of that from Goldwater Bank

24      held for investment loan to Weststar Mortgage.  It's

25      still an HFI loan for Goldwater Bank.  We still own the     05:28
```

Page 256

Omnibus Joint Exhibit Part G, page 1707

```
1     loan.  The ownership of the loan has not transferred.

2     The only thing that does transfer is who's servicing on

3     behalf of that customer of that loan.

4     BY MR. ALEKSEYEFF:

5         Q    But my question was in Mr. Elizarov's loan in    05:28

6     particular, what prompted Goldwater to transfer its

7     servicing obligations or -- I'm not going to call it

8     obligation, but why did Goldwater choose to transfer

9     servicing of Mr. Elizarov's loan to Weststar on May 22nd

10    which was nearly a year after the loan closed?          05:28

11              MS. KRYSAK:  Objection, form, scope.

12              MR. ALEKSEYEFF:  What prompted that decision?

13              MS. KRYSAK:  Objection, form, scope.

14              MR. ALEKSEYEFF:  Thank you.

15              THE WITNESS:  I can't speak of a specific       05:29

16    decision to transfer Elizarov's loan.  At a lot of times,

17    there are multiple loans that will go from Goldwater Bank

18    held for investments and where we're servicing those and

19    we'll move to Weststar, our sbservicer, to service those

20    loans.                                                  05:29

21    BY MR. ALEKSEYEFF:

22        Q    So was Mr. Elizarov's loan determined to be held

23    for investment from the very beginning?

24        A    It was held for sale initially after closing

25    which is where it stays on our balance sheet.  In the   05:29
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Omnibus Joint Exhibit Part G, page 1708

```
 1      Anything else before we go off the record?

 2              THE VIDEOGRAPHER:  Jessica?

 3              THE REPORTER:  I just need to get copy orders on

 4      the record if you have one.  Obviously, Mr. Katz, you get

 5      your copy.                                          08:25

 6              MR. ALEKSEYEFF:  I think -- unless Mr. Katz has

 7      changed his mind, I think Mr. Katz and I were going to

 8      share the cost of the depo.

 9              THE REPORTER:  Okay, no problem.  That's it

10      then.                                               08:26

11              MR. LEVOTA:  I will order a copy.

12              THE REPORTER:  Okay.  Okay, that's good.

13      Jennifer, we can go off.

14              THE VIDEOGRAPHER:  All right.  This marks the

15      end of today's deposition.  Going off the record, the   08:26

16      time is 8:26.

17              (The deposition concluded at 8:26 p.m.)

18

19

20

21

22

23

24

25
```

Page 359

```
 1

 2

 3

 4              I, CORY BEARDEN, do hereby declare under penalty

 5      of perjury that I have read the foregoing transcript;

 6      that I have made any corrections as appear noted, in ink,

 7      initialed by me, or attached hereto; that my testimony as

 8      contained herein, as corrected, is true and correct.

 9              EXECUTED this _____ day of _____,

10      2023, at _____, _____.

11                      (City)                      (State)

12

13

14

15

16              _____

17                      CORY BEARDEN

18                      VOLUME I

19

20

21

22

23

24

25

                                                        Page 360
```

Omnibus Joint Exhibit Part G, page 1710

```
 1              I, the undersigned, a Certified Shorthand

 2     Reporter of the State of California, do hereby certify:

 3              That the foregoing proceedings were taken before

 4     me at the time and place therein set forth; that any

 5     witnesses in the foregoing proceedings, prior to

 6     testifying, were administered an oath; that a record of

 7     the proceedings was made by me using machine shorthand

 8     which was thereafter transcribed under my direction;

 9     further, that the foregoing is a true record of the

10     testimony given.

11              Further, that if the foregoing pertains to the

12     original transcript of a deposition in a Federal Case,

13     before completion of the proceedings, review of the

14     transcript [ X ] was [ ] was not requested.

15              I further certify I am neither financially

16     interested in the action nor a relative or employee of

17     any attorney or any party to this action.

18              IN WITNESS THEREOF, I have this date subscribed

19     my name:  June 15, 2023.

20

21

22

23

24         JESSICA HONG

25         CSR No. 13776
```

Page 361

Omnibus Joint Exhibit Part G, page 1711

1    JOSEPH A. LEVOTA, ESQ.

2    jlevota@hscallaw.com

3                                    JUNE 15, 2023

4    RE: OLDWATER BANK, N.A. v. ARTUR ELIZAROV

5    MAY 31, 2023, CORY BEARDEN, PMK, JOB NO. 5941237

6    The above-referenced transcript has been

7    completed by Veritext Legal Solutions and

8    review of the transcript is being handled as follows:

9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10       to schedule a time to review the original transcript at

11       a Veritext office.

12   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13       Transcript - The witness should review the transcript and

14       make any necessary corrections on the errata pages included

15       below, noting the page and line number of the corrections.

16       The witness should then sign and date the errata and penalty

17       of perjury pages and return the completed pages to all

18       appearing counsel within the period of time determined at

19       the deposition or provided by the Code of Civil Procedure.

20   __ Waiving the CA Code of Civil Procedure per Stipulation of

21       Counsel - Original transcript to be released for signature

22       as determined at the deposition.

23   __ Signature Waived - Reading & Signature was waived at the

24       time of the deposition.

25

                                                    Page 362

1    _X_Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF

2       Transcript - The witness should review the transcript and

3       make any necessary corrections on the errata pages included

4       below, notating the page and line number of the corrections.

5       The witness should then sign and date the errata and penalty

6       of perjury pages and return the completed pages to all

7       appearing counsel within the period of time determined at

8       the deposition or provided by the Federal Rules.

9    __ Federal R&S Not Requested - Reading & Signature was not

10      requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 363

```
 1   OLDWATER BANK, N.A. v. ARTUR ELIZAROV

 2   CORY BEARDEN, PMK, JOB NO. 5941237

 3                    E R R A T A   S H E E T

 4   PAGE_____ LINE_____ CHANGE_____

 5   _____

 6   REASON_____

 7   PAGE_____ LINE_____ CHANGE_____

 8   _____

 9   REASON_____

10   PAGE_____ LINE_____ CHANGE_____

11   _____

12   REASON_____

13   PAGE_____ LINE_____ CHANGE_____

14   _____

15   REASON_____

16   PAGE_____ LINE_____ CHANGE_____

17   _____

18   REASON_____

19   PAGE_____ LINE_____ CHANGE_____

20   _____

21   REASON_____

22

23   _____    _____

24   WITNESS                              Date

25

                                         Page 364
```

# **EXHIBIT 96**
# **Emails between Escrow of the West and Bank of the West re Closing Disclosures**

## Andrea Cross

| | |
|---|---|
| **From:** | Andrea Cross |
| **Sent:** | Monday, March 29, 2021 11:05 AM |
| **To:** | Green, Joddi |
| **Cc:** | Pullum, Eric; Nixon, Kelley |
| **Subject:** | RE: Howlett / 8810555781 / 02-035523-AC |
| **Attachments:** | CD.pdf; OCT Wire.pdf; HOWLETT.pdf; Grant Deed-Warranty Deed.pdf |

HI Joddi, see documents attached to review
*PASSWORD IS PROPERTY ZIPCODE

Thank you!

**WARNING! WIRE FRAUD ADVISORY**
Before sending funds, always call your Escrow team to verify wire information





**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA 90210
P. (310) 402-5555 ext. 2071 | E-Fax. (310) 402-5556
**Direct.** (310) 402-5470
www.escrowofthewest.com

[f] [in] [y]
click here for disclosure

We are always looking for ways to improve our service. Please take a moment to
complete this short survey about your recent experience.



---

**From:** Green, Joddi [mailto:Joddi.Green@bankofthewest.com]
**Sent:** Monday, March 29, 2021 9:24 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Cc:** Pullum, Eric <Eric.Pullum@bankofthewest.com>; Nixon, Kelley <Kelley.Nixon@bankofthewest.com>
**Subject:** RE: Howlett / 8810555781 / 02-035523-AC

1

We do not need the originals to fund...if you just email me a copy of the signed docs I can fund off of those.

*If you are not 100% satisfied with my service or your experience with Bank of the West at any time, please let me or my manager know right away.*
*Our contact information is below. Thank you for choosing Bank of the West.*

If Your Dreams Don't Scare You, They Are Too Small
-Richard Branson

Joddi Green
CRES Funding Specialist, Non-Officer
Consumer Real Estate Services (CRES) Closing

Bank of the West
13505 California Street
Omaha, NE 68154
Joddi.green@bankofthewest.com

BANK OF THE WEST
BNP PARIBAS

Toni Zaiser | Controls and Governance Mgr, Vice President
T: 402.918.2811
C: 402.968.4491
Toni.Zaiser@Bankofthewest.com

**CRES Mission Statement**
**"CRES provides our clients and communities with the best home lending product values in the market, leading digital capabilities and service that builds lasting relationships."**

**From:** Andrea Cross [mailto:andrea@escrowofthewest.com]
**Sent:** Monday, March 29, 2021 11:16 AM
**To:** Green, Joddi <Joddi.Green@bankofthewest.com>
**Cc:** Pullum, Eric <Eric.Pullum@bankofthewest.com>; Nixon, Kelley <Kelley.Nixon@bankofthewest.com>
**Subject:** RE: Howlett / 8810555781 / 02-035523-AC

**Caution:** This email originated from an external sender. Do not click on links or open attachments unless you were expecting this message from this sender.

Good Morning,
We will not receive originals until today (FedEx delivery) – do you require originals to fund? If so, you will not receive until tomorrow.

**WARNING! WIRE FRAUD ADVISORY**
Before sending funds, always call your Escrow team to verify wire information



**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA, 90210
P. (310) 402-5555 ext. 2071 | E-Fax. (310) 402-5556
**Direct.** (310) 402-5470
www.escrowofthewest.com

click here for disclosure

We are always looking for ways to improve our service. Please take a moment to
complete this short survey about your recent experience.



---

**From:** Green, Joddi [mailto:Joddi.Green@bankofthewest.com]
**Sent:** Monday, March 29, 2021 9:04 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Cc:** Pullum, Eric <Eric.Pullum@bankofthewest.com>; Nixon, Kelley <Kelley.Nixon@bankofthewest.com>
**Subject:** Howlett / 8810555781 / 02-035523-AC
**Importance:** High

Good Morning Andrea,

This loan is scheduled to fund today but we are needing the following documents
before we are able to send the wire:

1.Signed Approved CD
2.Signed Seller CD (if applicable)
3.Signed Note
4.Signed Right of Rescission (if applicable)
5.Signed Security Instrument and Riders
6.Signed Grant Deed or Warranty Deed (if applicable)
**7.Completed USA Patriot Act Disclosure**
**8.Tax Payer Consent Form**

--Please include a copy of your wire instructions for accurate account
information.--

3

EOTW_000598

Omnibus Joint Exhibit Part G, page 1718

**PLEASE NOTE: Our wire cut off time is 4:00 pm CST**

Thank you,

Joddi Green
Sr CRES Funder, Non-officer
Consumer Real Estate Services (CRES) Closing

Bank of the West
13505 California Street
Omaha, NE 68154
Joddi.green@bankofthewest.com
Office Hours: M-F 8am to 5pm CST



Toni Zaiser | Controls and Governance Mgr, Vice President
T: 402.918.2811
C: 402.968.4491
Toni.Zaiser@Bankofthewest.com

**CRES Mission Statement**
"CRES provides our clients and communities with the best home lending product values in the market, leading digital capabilities and service that builds lasting relationships."

**IMPORTANT NOTICE:** This message is intended only for the addressee and may contain confidential, privileged information. If you are not the intended recipient, you may not use, copy or disclose any information contained in the message. If you have received this message in error, please notify the sender by reply e-mail and delete the message.

**IMPORTANT NOTICE:** This message is intended only for the addressee and may contain confidential, privileged information. If you are not the intended recipient, you may not use, copy or disclose any information contained in the message. If you have received this message in error, please notify the sender by reply e-mail and delete the message.

EOTW_000599

Omnibus Joint Exhibit Part G, page 1719

**Andrea Cross**

| | |
|---|---|
| **From:** | Andrea Cross |
| **Sent:** | Thursday, March 25, 2021 1:17 PM |
| **To:** | Bauer, Keena |
| **Cc:** | Merrill, Aida |
| **Subject:** | RE: HOWLETT- YOUR FILE NO. 02-035523-AC / OUR LOAN NO. X117994 |
| **Attachments:** | Combined Estimate.PDF |

Revised attached –

Seller is paying the 2nd install taxes and buyer pays prorated portion only

Thanks

**WARNING! WIRE FRAUD ADVISORY**
Before sending funds, always call your Escrow team to verify wire information





**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
**P.** (310) 402-5555 ext. 2071 | **E-Fax.** (310) 402-5556
**Direct.** (310) 402-5470
www.escrowofthewest.com


click here for disclosure

We are always looking for ways to improve our service. Please take a moment to
complete this short survey about your recent experience.



**From:** Bauer, Keena [mailto:Keena.Bauer@bankofthewest.com]
**Sent:** Thursday, March 25, 2021 1:10 PM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Cc:** Merrill, Aida <Aida.Merrill@bankofthewest.com>
**Subject:** RE: HOWLETT- YOUR FILE NO. 02-035523-AC / OUR LOAN NO. X117994

1

EOTW_000600

Hi Andrea.

Attached is my revised CD with signing on 3/27 and funding on 3/29.

Can you confirm that borrower is paying the 2nd installment taxes and there is a tax proration debit for them?

Thanks!

*If you are not 100% satisfied with my service or your experience with Bank of the West at any time, please let me or my manager know right away. Our contact information is below. Thank you for choosing Bank of the West.*

**Keena Bauer**

**CRES Loan Ops Specialist**
Consumer Real Estate Services (CRES)
Regular Hours M-F 8:00 AM Central Time- 5:00 PM Central Time

Bank of the West
13505 California Street
Omaha, NE 68154
T (402) 918-2718 | F (402) 445-6634
keena.bauer@bankofthewest.com



Toni Zaiser, Controls & Governance, Mgr, Vice President
T (402) 918-2811 C (402) 968- 4491 F (402) 918-6818
toni.zaiser@bankofthewest.com

<u>CRES Mission Statement</u>
"CRES provides our clients and communities with the best home lending product values in the market, leading digital capabilities and service that builds lasting relationships."

**From:** Andrea Cross [mailto:andrea@escrowofthewest.com]
**Sent:** Thursday, March 25, 2021 11:01 AM
**To:** Bauer, Keena <Keena.Bauer@bankofthewest.com>
**Cc:** Merrill, Aida <Aida.Merrill@bankofthewest.com>
**Subject:** RE: HOWLETT- YOUR FILE NO. 02-035523-AC / OUR LOAN NO. X117994
**Importance:** High

Caution: This email originated from an external sender. Do not click on links or open attachments unless you were expecting this message from this sender.

Hi Keena, please see estimate attached for review –
Can we have docs today for signing? Buyer would prefer to fund and record tomorrow, 3/26, is that possible?

2

EOTW_000601

Omnibus Joint Exhibit Part G, page 1721

**WARNING! WIRE FRAUD ADVISORY**

Before sending funds, always call your Escrow team to verify wire information



**Andrea Cross**
Senior Escrow Officer

9440 Santa Monica Blvd. Suite 310, Beverly Hills, CA. 90210
P. (310) 402-5555 ext. 2071 | E-Fax. (310) 402-5556
**Direct.** (310) 402-5470
www.escrowofthewest.com

[] [] []
click here for disclosure

We are always looking for ways to improve our service. Please take a moment to
complete this short survey about your recent experience.





**From:** Bauer, Keena [mailto:Keena.Bauer@bankofthewest.com]
**Sent:** Thursday, March 25, 2021 7:13 AM
**To:** Andrea Cross <andrea@escrowofthewest.com>
**Cc:** Merrill, Aida <Aida.Merrill@bankofthewest.com>
**Subject:** RE: HOWLETT- YOUR FILE NO. 02-035523-AC / OUR LOAN NO. X117994

Hello.

Attached are the preliminary Closing Disclosure, lender instructions and HOI for the **HOWLETT** loan tentatively signing on **3/26** Bank of the West will utilize our Closing Disclosure for closing. Please review and confirm all title/escrow fees, proration, taxes and/or any miscellaneous fees associated with the transaction are present and correct.

My wire amount for funding on **3/29** is **$1,077,883.49.** We will have a 15 page DOT to record along with a 2 page 2nd home rider.

Thanks.

*If you are not 100% satisfied with my service or your experience with Bank of the West at any time, please let me or my manager know right away. Our contact information is below. Thank you for choosing Bank of the West.*

**Keena Bauer**

**CRES Loan Ops Specialist**

**Consumer Real Estate Services (CRES)**

EOTW_000602

Omnibus Joint Exhibit Part G, page 1722

**Regular Hours M-F 8:00 AM Central Time- 5:00 PM Central Time**

Bank of the West
13505 California Street
Omaha, NE 68154
T (402) 918-2718 | F (402) 445-6634
**keena.bauer@bankofthewest.com**



Toni Zaiser, Controls & Governance, Mgr, Vice President
T (402) 918-2811 C (402) 968- 4491 F (402) 918-6818
**toni.zaiser@bankofthewest.com**

### CRES Mission Statement
**"CRES provides our clients and communities with the best home lending product values in the market, leading digital capabilities and service that builds lasting relationships."**

**IMPORTANT NOTICE: This message is intended only for the addressee and may contain confidential, privileged information. If you are not the intended recipient, you may not use, copy or disclose any information contained in the message. If you have received this message in error, please notify the sender by reply e-mail and delete the message.**

**IMPORTANT NOTICE: This message is intended only for the addressee and may contain confidential, privileged information. If you are not the intended recipient, you may not use, copy or disclose any information contained in the message. If you have received this message in error, please notify the sender by reply e-mail and delete the message.**

4

# EXHIBIT 97
# Transcript of Deposition of Vicki Crestani (Additional Excerpts)

```
 1                UNITED STATES DISTRICT COURT

 2         CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

 3

 4   GOLDWATER BANK, N.A.,          ) CASE NO.
                                    ) 5:21-cv-00616-JWH-SP
 5          Plaintiff,             )
                                    )
 6   vs.                            )
                                    )
 7   ARTUR ELIZAROV; UNISON AGREEMENT)
     CORP.; SCOTT HOWLETT; BANK OF   )
 8   WEST; and ILYA ALEKSEYEFF,     )
                                    )
 9           Defendants,            )
     _____)
10                                  )
     AND RELATED CROSS-ACTIONS      )
11   _____)

12

13

14

15             DEPOSITION OF VICKIE ROBIN CRESTANI

16                  SAN DIEGO, CALIFORNIA

17               TUESDAY, DECEMBER 6, 2022

18

19

20

21

22

23   REPORTED BY:
     KATHLEEN M. ALONA
24   CSR NO:  14219
     JOB NO:  5603295
25   Pages 1 - 224

                                            Page 1
```

```
 1                  UNITED STATES DISTRICT COURT
 2          CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION
 3
 4   GOLDWATER BANK, N.A.,          ) CASE NO.
                                    ) 5:21-cv-00616-JWH-SP
 5        Plaintiff,               )
                                    )
 6   vs.                           )
                                    )
 7   ARTUR ELIZAROV; UNISON AGREEMENT)
     CORP.; SCOTT HOWLETT; BANK OF  )
 8   WEST; and ILYA ALEKSEYEFF,     )
                                    )
 9        Defendants,              )
     _____)
10                                  )
     AND RELATED CROSS-ACTIONS      )
11   _____)
12
13
14
15
16        The deposition of VICKIE ROBIN CRESTANI, taken
17   on behalf of the Defendant and Cross-Complainant SCOTT
18   HOWLETT and Defendant BANK OF THE WEST, beginning at
19   10:08 a.m., and ending at 4:51 p.m., on Tuesday,
20   December 6, 2022, before Kathleen M. Alona, Certified
21   Shorthand Reporter, No. 14219.
22
23
24
25
                                              Page  2
```

Omnibus Joint Exhibit Part G, page 1726

```
 1    APPEARANCES (ALL APPEARING REMOTELY VIA ZOOM):

 2

 3             FOR PLAINTIFF GOLDWATER BANK N.A.:

 4                  HILBERT & SATTERLY LLP

 5                  BY:  JOSEPH A. LA VOTA, ESQ.

 6                  409 CAMINO DEL RIO SOUTH

 7                  SUITE 104

 8                  SAN DIEGO, CA 92108

 9                  PHONE NUMBER (619) 795-0300

10                  JLEVOTA@HSCALLAW.COM

11

12          PRO HAC VICE ATTORNEYS FOR PLAINTIFF

13          BOLDWATER BANK N.A.:

14                  WAGNER HICKS PLLC

15                  BY:  ABBY KRYSAK, ESQ.

16                  831 EAST MOREHEAD STREET

17                  SUITE 860

18                  CHARLOTTE, NC 28202

19                  PHONE NUMBER (704) 705-7538

20                  ABBY.KRYSAK@WAGNERHICKS.LAW

21

22

23

24

25

                                              Page 4
```

Omnibus Joint Exhibit Part G, page 1727

```
 1    APPEARANCES CONTINUED (ALL APPEARING REMOTELY VIA ZOOM):

 2

 3           FOR DEFENDANT/CROSS-COMPLAINANT SCOTT HOWLETT

 4       AND DEFENDANT BANK OF THE WEST:

 5                 HALL GRIFFIN LLP

 6                 BY:  JEREMY T. KATZ, ESQ.

 7                 1851 EAST FIRST STREET

 8                 10TH FLOOR

 9                 SANTA ANA, CA 92705-4052

10                 PHONE NUMBER (714) 918-7000

11                 JKATZ@HALLGRIFFIN.COM

12

13           FOR DEFENDANT UNISON AGREEMENT CORP.:

14                 ORSUS GATE LLP

15                 BY:  JENNIFER HAIDER, ESQ.

16                 16 N. MARENGO AVENUE

17                 SUITE 316

18                 PASADENA, CA 91101

19                 PHONE NUMBER (213) 973-2052

20                 JHAIDER@ORSUSGATE.COM

21

22

23

24

25

                                              Page 5
```

Omnibus Joint Exhibit Part G, page 1728

```
 1    APPEARANCES CONTINUED (ALL APPEARING REMOTELY VIA ZOOM):

 2

 3            FOR DEFENDANT ARTUR ELIZAROV

 4            AND DEFENDANT ILYA ALEKSEYEFF (IN PRO PER):

 5                 LOIA, INC. (APLC)

 6                 BY:  ILYA ALEKSEYEFF, ESQ.

 7                 8721 SANTA MONICA BOULEVARD

 8                 #119

 9                 WEST HOLLYWOOD, CA 90069

10                 PHONE NUMBER (213) 537-4592

11                 ILYA@LOIA.LEGAL

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page  6

```
 1              SAN DIEGO, CALIFORNIA; TUESDAY, DECEMBER 6, 2022

 2                           10:08 a.m.

 3

 4         MR. KATZ:  Let's go on to the record.

 5         MR. LA VOTA:  This is Joseph LaVota, and I'm in the

 6   same office as the deponent, Vickie Crestani.  I am not on

 7   camera.  I am off camera, but we are in the same room.

 8         MR. KATZ:  Good morning.  This is Jeremy Katz,

 9   counsel for Scott Howlett and Bank of the West in this

10   matter.  I'm the party noticing the deposition.

11         MS. HAIDAR:  This is Jennifer Haidar, counsel for

12   Unison Agreement Corp.

13         MS. KRYSAK:  And this is Abby Krysak, counsel for

14   Goldwater Bank.

15         MR. KATZ:  And as we discussed off the record,

16   Mr. Alekseyeff is logged in but not present.  He will be

17   rejoining us soon, and he's authorized us to proceed in his

18   absence.

19

20                          EXAMINATION

21

22   BY MR. KATZ:

23       Q    Good morning, Ms. Crestani.

24       A    Good morning.

25       Q    Am I pronouncing that correctly?
```

Page 7

Omnibus Joint Exhibit Part G, page 1730

```
 1        A     You are.

 2        Q     Would you please state and spell your name for the

 3    record?

 4        A     Yes.   My complete name is Vickie Robin Crestani.

 5    V-I-C-K-I-E; Robin is R-O-B-I-N; Crestani is

 6    C-R-E-S-T-A-N-I.

 7    BY MR. KATZ:

 8        Q     Thank you.   Ms. Crestani, you understand that you're

 9    testifying today under oath, the same as if you were

10    testifying in a court of law?

11        A     I do.

12        Q     Is there any reason you're not able to give honest

13    and truthful testimony here today?

14        A     No.

15        Q     Are you under the effects of any medications or

16    drugs that would affect your ability to recall information?

17        A     No.

18        Q     You feeling well today?

19        A     Yes.

20        Q     You've been an expert witness before, haven't you?

21        A     Yes, I have.

22        Q     And have you delivered any expert witness testimony

23    in the last four years?

24        A     I have not.

25        Q     Okay.   Prior to that, approximately how many have
```

Page 8

Omnibus Joint Exhibit Part G, page 1731

1    you been designated as an expert witness?

2        A    I would say about 10 to 12.

3        Q    When was the most recent time that you were

4    designated as an expert witness?

5        A    The last time I testified as an expert witness was

6    in -- I have to look at my records so I can tell you that,

7    because it was a case that legally went over almost a

8    three-year period.  We had three trials.

9        Q    Was that the Albert v. Questa Title case?

10       A    That is the Albert and Questa Title case.

11       Q    And is that 2012 through 2015?

12       A    That is correct.

13       Q    And have you ever had the pleasure of having your

14   deposition taken as a nonexpert?

15       A    Yes, I did.  Once.

16       Q    And what was that matter about?

17       A    It was a matter -- at the time I was employed by a

18   company called Westland Title, and it was on a -- I was the

19   escrow administrator for them, and I had a deposition based

20   on the escrow file.

21       Q    And you were a fact witness, a percipient witness in

22   that situation; right?

23       A    I don't quite know what that means.

24            Joseph, is that what I would have been?

25       Q    Were you the person designated on behalf of your

                                                    Page 9

1    Hill or somebody in Goldwater that he's selling the property

2    and to contact the escrow officer to get a demand, that's

3    number one.

4         A review of the preliminary report shows that there

5    is a subordination agreement for a second deed of trust to a

6    senior lien that is not shown on that PR.         I'm

7    wondering why is there a subordination still showing on a

8    preliminary report?

9         If that senior lien holder had reconveyed already,

10   subordination wouldn't matter anymore.  It wouldn't be on the

11   PR.  On the PR -- because no reconveyance of any senior lien

12   holder had been recorded.

13        So one would assume if there's -- if you're senior

14   escrow officer, you're going to look at this and you're going

15   to say I've been told to get a demand from this mortgage

16   company, but I don't have a recorded deed of trust of record,

17   I must investigate.

18        But you know you've been asked to pay a demand or

19   to -- at least obtain a demand.  Not only just obtain it but

20   help the seller negotiate by submitting documents to this

21   Goldwater so that they could quote waive what they're going

22   to waive.

23     Q    I see that you're interpreting this email chain that

24   way.

25     A    I am.

1       Q    Can this same email chain and the fact that -- as

2    you said earlier, normally -- in most normal circumstances a

3    real estate secured lender records their lien.  It's unusual

4    that a real estate lender would not record their lien.

5            It is strange that you would -- normally a real

6    estate secured lender who's told that their lien instrument

7    has not been recorded into the chain of title would normally

8    jump up and down, present a copy of their lien instrument,

9    and then sometimes creditors -- unsecured creditors try to

10   seek payment -- for whatever reason try to seek payment when

11   they know that their unsecured borrower's about to come into

12   a big chunk of money, such as from the sale of a property.

13           Can this March 26 email, and the ones below it, be

14   interpreted as a unsecured creditor seeking payment on an

15   unsecured loan and they've negotiated a short payoff in an

16   unsecured loan and they would -- and they are just keeping

17   escrow in the loop?

18      A    You know this -- looking at this --

19      Q    I'm just asking --

20      A    -- this document --

21           (Simultaneous cross-talk.)

22      Q    -- that way --

23           MR. LA VOTA:  Are you going to let her finish?

24           THE WITNESS:  I'm sorry.  I just want to make sure

25   that you're asking me simply about March 26, 2021, at 11:06

                                                    Page 110

1    a.m., email in and of itself without the chain that has taken

2    place.

3              If someone were to just get that, as an escrow, just

4    to get this single email with nothing else transpiring in

5    this transaction at all, I would say I need to speak with the

6    seller, find out what this is all about.

7    BY MR. KATZ:

8        Q    And at this point, March 26, the seller had told the

9    escrow officer that they're not to pay, that they don't have

10   a lien --

11             MR. LA VOTA:  Where does he say that?  Where does he

12   say that they don't have a lien?

13             MR. KATZ:  Joe, this is not your turn to ask

14   questions.

15             MR. LA VOTA:  Well, I want the record to be

16   accurate.  And if you're going to ask her questions that

17   assumes facts not in evidence, then I'm going to object to

18   that.

19   BY MR. KATZ:

20       Q    So if -- as of March 26, the seller had instructed

21   Andrea Cross not to pay Goldwater; right?

22       A    As of March 26?  I would like to look back to my

23   references when it was.  So I don't know if it was 26, 25.

24             I'm sorry.  I'm not authorized to discuss as

25   you are not a party to the transaction.

Page 111

Omnibus Joint Exhibit Part G, page 1735

1      Q     And here on March 25 an email from Andrea Cross:

2            "Seller has instructed we are not to make

3      payoff to Goldwater."

4      A     Right.  That's what she's telling Pete on the

5      25th.

6            MR. LA VOTA:  You are representing statements are

7      from Elizarov to Andrea Cross and saying that he was saying

8      certain things which are not consistent with the record.

9            MR. KATZ:  That's debatable.  And you're welcome to

10     present whatever evidence you want when it's your turn to ask

11     questions, Joe.

12     BY MR. KATZ:

13     Q     So I'm asking if Elizarov had told -- the seller had

14     told escrow, Andrea Cross, not to pay Goldwater, and if he

15     had said, in whatever capacity, that he doesn't believe that

16     they're a lien holder or that they have an interest in the

17     property, does this March 26 email support a conclusion that

18     Goldwater is merely a creditor seeking payment knowing that

19     its borrower -- unsecured borrower is about to come into a

20     large sum of money?

21           MR. LA VOTA:  I'm objecting to your question as

22     assuming facts not evidence, that are inconsistent with

23     the -- there's no evidence that he said that they are not a

24     secured lender.  There's nowhere -- you can present that and

25     you can ask her a question about that, but otherwise there's

                                               Page 112

```
 1    no evidence of that.

 2            MR. KATZ:  Are you instructing her not to answer?

 3            MR. LA VOTA:  Goldwater Bank is -- is Goldwater Bank

 4    on the title report?  If not this may --

 5            MR. KATZ:  Joe, stating objections are not proper.

 6            Are you instructing her not to answer?

 7            MR. LA VOTA:  If you're not going to give her

 8    accurate facts to consider, then yes.

 9            MR. KATZ:  I can present her every hypothetical I

10    want to.

11            MR. LA VOTA:  Well, if you're going to ask

12    irrelevant hypotheticals, then sure.  Then pose it as a

13    hypothetical.

14            MR. KATZ:  Great.  You can answer the question.

15    MR. LA VOTA:  Can you reask the question as a hypothetical?

16            Do you even know the question that's pending?

17            THE WITNESS:  I'm kind of confused.

18    BY MR. KATZ:

19        Q    Could -- could the March 26 email be interpreted as

20    an unsecured creditor seeking -- letting escrow know that

21    they're willing to take a haircut on the unsecured loan and

22    that there's some deal that they're negotiating with their

23    unsecured borrower, especially since at this point there's

24    been no

25    indication that Goldwater is a lien holder of record, and at
```

Page 113

Omnibus Joint Exhibit Part G, page 1737

1    this point, not withstanding every piece of information

2    conveyed to Goldwater, Goldwater has not come forward and

3    presented documentation to escrow that substantiates its lien

4    interest in the property?

5            From escrow's prospective could this be interpreted

6    as an unsecured creditor talking about ongoing negotiations

7    with the borrower -- with its unsecured borrower?

8      A    So I'm going to -- I believe I understand, but I'm

9    going to have to answer that two ways for you.

10           First of all, we did think this was going to be a

11   hypothetical, and then we turnaround and we talk about the

12   March 26, 11:06 a.m. email from Peter Hill to Andrea as a

13   standalone email, without the benefit of the chain of title

14   or what has already happened in the transaction via phone

15   calls.

16           And so I'm going to say:  Yes.  This email in and of

17   itself, all by itself, coming out of left field to Andrea

18   Cross, I wouldn't know what to think of it.  Okay?  And I

19   would have to then start an investigation.

20           The second part I think of your question -- you

21   started asking about with what you know and with the title

22   that I have, with the emails back and forth, with the phone

23   conversations that appears from the seller to Andrea, with

24   the authorization to obtain a payoff demand, this is not out

25   of left field.

<div align="right">Page 114</div>

1    working.  So I don't know why this escrow officer chose not

2    to put down Goldwater as a placeholder, but she did not.

3    And, again, she didn't have clarity so she was confused.  She

4    did not put this together correctly.

5            MR. KATZ:  So let's -- if there's no further

6    questions, you guys want to go off the record staying for a

7    brief second staying on video to discuss stipulations for the

8    transcript?

9            MR. LA VOTA:  Sure.

10           MR. KATZ:  Let's go off the record.

11           (Off the record.)

12           MR. KATZ:  Jeremy Katz coming back on the record.

13   Off the record we had been discussing stipulations for the

14   transcript.  We're going to do it per Code, but we are

15   stipulating that a certified copy of the transcript can be

16   used for lieu -- in lieu of the original for all purposes.

17           MR. LA VOTA:  Stipulated.

18           (Whereupon, at 4:51 p.m., the examination of VICKIE

19   ROBIN CRESTANI was concluded.)

20

21

22

23

24

25

Page 219

Omnibus Joint Exhibit Part G, page 1739

1          I, VICKIE ROBIN CRESTANI, hereby declare that I am

2     the witness in the within matter, that I have read the

3     foregoing deposition and know the contents thereof, and I

4     declare that the same is true of my own knowledge except as

5     to those matters which are therein stated upon my information

6     and belief, and as to those matters, I believe them to be

7     true.

8          I declare under penalty of perjury that the

9     foregoing is true and correct.

10          Executed on this _____ of _____, 20_____, at

11     _____, California.

12

13

14          _____

15          VICKIE ROBIN CRESTANI

16

17

18

19

20

21

22

23

24

25

                                        Page 220

```
 1              I, KATHLEEN M. ALONA, CSR NO. 14219, do hereby

 2      certify:

 3              That prior to being examined, the witness named in

 4      the foregoing deposition was by me duly sworn to testify the

 5      truth, the whole truth, and nothing but the truth under the

 6      penalty of perjury.

 7              That said deposition was taken remotely at the time

 8      and place herein set forth and was taken down by me in

 9      shorthand and thereafter was transcribed into typewriting

10      under my direction and supervision.

11              I hereby certify the foregoing transcript is a full,

12      true and correct transcript of my shorthand notes so taken.

13              I further certify that I am neither counsel for nor

14      related to any party to said action, nor in any way

15      interested in the outcome thereof.

16              The dismantling, unsealing, unbinding of, or

17      tampering with the original transcript will render this

18      reporter's certificate null and void.

19              IN WITNESS WHEREOF, I have hereunto subscribed my

20      name this 29th day of December, 2022.

21

22

23

24      KATHLEEN M. ALONA, CSR NO. 14219

25
```

Page 221

Omnibus Joint Exhibit Part G, page 1741

1    JOSEPH A. LA VOTA, ESQ.

2    JLEVOTA@HSCALLAW.COM

3                                    DECEMBER 29, 2022

4    RE: GOLDWATER BANK, N.A. v. ARTUR ELIZAROV

5    DECEMBER 6, 2022, VICKIE ROBIN CRESTANI, JOB NO. 5603295

6    The above-referenced transcript has been

7    completed by Veritext Legal Solutions and

8    review of the transcript is being handled as follows:

9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10       to schedule a time to review the original transcript at

11       a Veritext office.

12   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13       Transcript - The witness should review the transcript and

14       make any necessary corrections on the errata pages included

15       below, noting the page and line number of the corrections.

16       The witness should then sign and date the errata and penalty

17       of perjury pages and return the completed pages to all

18       appearing counsel within the period of time determined at

19       the deposition or provided by the Code of Civil Procedure.

20   __ Waiving the CA Code of Civil Procedure per Stipulation of

21       Counsel - Original transcript to be released for signature

22       as determined at the deposition.

23   __ Signature Waived - Reading & Signature was waived at the

24       time of the deposition.

25

                                           Page  222

Omnibus Joint Exhibit Part G, page 1742

1    _X_Federal R&S Requested (FRCP 30(e)(1)(B)) – Locked .PDF

2       Transcript – The witness should review the transcript and

3       make any necessary corrections on the errata pages included

4       below, noting the page and line number of the corrections.

5       The witness should then sign and date the errata and penalty

6       of perjury pages and return the completed pages to all

7       appearing counsel within the period of time determined at

8       the deposition or provided by the Federal Rules.

9    __ Federal R&S Not Requested – Reading & Signature was not

10      requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                        Page  223

Omnibus Joint Exhibit Part G, page 1743

```
 1    GOLDWATER BANK, N.A. v. ARTUR ELIZAROV

 2    VICKIE ROBIN CRESTANI, JOB NO. 5603295

 3                    E R R A T A   S H E E T

 4    PAGE_____ LINE_____ CHANGE_____

 5    _____

 6    REASON_____

 7    PAGE_____ LINE_____ CHANGE_____

 8    _____

 9    REASON_____

10    PAGE_____ LINE_____ CHANGE_____

11    _____

12    REASON_____

13    PAGE_____ LINE_____ CHANGE_____

14    _____

15    REASON_____

16    PAGE_____ LINE_____ CHANGE_____

17    _____

18    REASON_____

19    PAGE_____ LINE_____ CHANGE_____

20    _____

21    REASON_____

22

23    _____     _____

24    WITNESS                             Date

25
```

Page 224